Michael D. Schottland, (MS 4522)
SCHOTTLAND, MANNING, ROSEN,
CALIENDO & MUNSON, P.A.
36 West Main Street
Freehold, New Jersey 07728
(732) 462-4405
Attorneys for National Home Funding, Inc.
and Robert Skowrenski, II

**FILED**

**NOV 28 1997**

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | Civil Action No. CV 97-3496(WGB) |
| Plaintiff, | Hon. William G. Bassler |
| v. | |
| CRISTO PROPERTY MANAGEMENT, LTD., A/K/A G.J.L. LIMITED, DEK HOMES OF NEW JERSEY, INC., OAKWOOD PROPERTIES, INC., NATIONAL HOME FUNDING, INC., CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT CO., INC., CAPITAL ASSETS PROPERTY MANAGEMENT, L.L.C., WILLIAM J. KANE, GARY GRIESER, ROBERT SKOWRENSKI, II, RICHARD CALANNI, RICHARD DIBENEDETTO, JAMES R. BROWN, THOMAS BRODO, RONALD J. PIERSON, STANLEY YACKER, ESQ., MICHAEL ALFIERI, ESQ., RICHARD PEPSNY, ESQ., ANTHONY M. CICALESE, ESQ., LAWRENCE M. CUZZI, ANTHONY D'APOLITO, DAP CONSULTING, INC., COMMONWEALTH LAND TITLE INSURANCE COMPANY, NATIONS TITLE INSURANCE COMPANY OF NEW YORK, INC., FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK and COASTAL TITLE AGENCY, | ANSWER, CROSS-CLAIM, COUNTERCLAIM AND JURY DEMAND OF DEFENDANTS, NATIONAL HOME FUNDING, INC. and ROBERT SKOWRENSKI, II |
| Defendants. | |

## ANSWER

Defendants, National Home Funding, Inc., having its principal place of business at 3443 Highway #9 North, Freehold, Monmouth County, New Jersey, and Robert Skowrenski, II, 2 Michael Court, Oakhurst, Monmouth County, New Jersey, by way of Answer to the Amended Complaint, say:

### PARTIES

1.   National Home Funding, Inc., a New Jersey Corporation (hereinafter referred to as "NHF"), and Robert Skowrenski, II (hereinafter referred to as "Skowrenski"), accepts and admits the description of the parties contained in the Amended Complaint, except paragraphs 22 and 29 in that they did not select the attorney, the title company, nor were the mortgages truly originated with them.

### INTRODUCTION

2.   With respect to the Introduction, they deny the conclusionary statement that NHF and Skowrenski have engaged in a pattern of racketeering activity.

3.   With respect to allegations against certain of the co-defendants, they agree.

4.   With respect to the allegations that Walsh Securities, Inc. remained liable, they wish to point out that Walsh Securities, Inc. has failed to file and record the assignments of mortgages so that NHF, though supposedly a nominal mortgagee, remains mortgagee of record on many of the properties.

2

## AS TO THE FACTUAL ALLEGATIONS

5.   With respect to the factual allegations and the description of the "Mortgage Banking Industry", they agree with most of the factual description through paragraph 51, except they wish to point out that in many respects Walsh Securities, Inc. did not follow that description or the ordinary course of business as mortgage bankers contained in the averments of its Complaint.

6.   They also point out that the mortgage loans were not originated by NHF and Skowrenski.

7.   With respect to "Title Insurance And Its Role In Real Estate Transactions", they agree except to add that in this particular case, the title companies negligently failed to follow the procedures, thereby damaging not only NHF and Skowrenski, but Walsh Securities, Inc. as well.

8.   "The New Jersey Mortgage Loan Frauds."  NHF and Skowrenski agree with the description except to add that there are several more aspects of the frauds that were perpetrated by certain of the co-defendants and that there were certain elements of negligence by certain other co-defendants more particularly described in the cross-claims filed in this matter.

9.   With respect to "The NHF/Cristo Property" Enterprise, NHF and Skowrenski specifically oppose the description of their participation in this matter and suggest that the description more accurately would be the "Kane/Grieser Property" Enterprise.

10.  NHF and Skowrenski deny approving and/or originating

3

the false mortgage loan applications and specifically deny that Walsh relied upon anything contained in those applications in deciding to accept the mortgage loans, and deny that the "Program Participant Loan Purchase and Sale Agreement" was ever intended to apply to the transactions at issue in this matter, and deny receiving profits as described in paragraph 55.

11.   With respect to the "Pattern" as described in the Amended Complaint, once again, NHF and Skowrenski specifically deny any knowing participation in a fraudulent scheme, and to the extent that that is included in the description of the "Pattern", it is denied.

12.   NHF and Skowrenski admit paying DAP Consulting substantial monies, but such payments had nothing to do with this matter, and instead, were legitimate payments based upon the production of certain consultants and mortgage salespersons for NHF.

13.   With respect to the allegations contained in paragraph 58, a review of the file would reveal that Walsh knew or should have known of the unusual circumstances that were taking place pertaining to these two particular mortgage loans, and in the reasonable course, its agents, servants, and employees, upon review of any of the documentation which it had received, would have raised questions as to whether these transactions were being handled and carried out in the ordinary course, and such transactions in that form would have or should have alerted any reasonable mortgagee who is following any pattern of due

4

diligence that the transactions were simply part of an overall
scheme requiring close scrutiny before commitment and appraisal
of final loan closing and documents.

### AS TO COUNT I

14.  As to the specifics in Count I, NHF and Skowrenski deny
any participation in any RICO scheme and leave to the plaintiff
and the court whether or not the allegations are sufficient to
invoke the provisions of 18 U.S.C. § 1961 et seq. to these
circumstances.

15.  They specifically deny "commercial bribery" as is
alleged in paragraph 66 (b).

### AS TO COUNT II

16.  As to the specifics in Count II, NHF and Skowrenski
deny any participation in any conspiracy as alleged and leave to
the plaintiff and the court whether or not the allegations are
sufficient to invoke the provisions of 18 U.S.C. § 1961 et seq.
to these circumstances.

### AS TO COUNT III

17.  As to the specifics in Count III, NHF and Skowrenski
specifically deny that they were part of a fraudulent scheme,
even though they admit that there was a fraudulent scheme
involving others against Walsh, and contend they too were victims
of the same fraudulent scheme.

18.  They specifically deny the allegations of paragraphs 76
and 77 and point out that it is improper for plaintiff to aver a
specific amount of damages in an unliquidated case as plead in

5

paragraph 78.

### AS TO COUNT IV

19.  As to the claim against NHF embodied in paragraphs 79 through 84, they admit the existence of a signed contract a true copy of which is annexed as Exhibit D to plaintiff's Amended Complaint.  However, it is pointed out that that agreement was entered into between GF Mortgage Corporation and National Home Funding, Inc., and until claims were made after the <u>Asbury Park Press</u> publicized the inflated prices late in the spring of 1997, NHF was not even aware that Walsh was participating with NHF under this agreement, had received no notice of assignment, no written extension of the contract, nor any other indication prior to the publication of these events that Walsh was relying on this agreement and never assented to its implication with Walsh.  In fact, it is contended that Walsh violated the spirit and terms of the agreement by not engaging in any proper due diligence and that such agreement is unenforceable against NHF.

### AS TO COUNT V

20.  Count V is not applicable to NHF and Skowrenski and therefore, no answer is provided.

### AFFIRMATIVE DEFENSES

A.  At all material times herein, the plaintiff did not act appropriately and failed to protect its own interests by engaging in due diligence as called for where it commits to loan out millions of dollars as was done in this matter.

B.  Walsh Securities, Inc. did not rely upon any

representations or other statements made by NHF and/or
Skowrenski.

C.    To a large extent, Walsh Securities, Inc. controlled
the circumstances and events of the grant of these mortgages in
that it participated in choosing the appraisers, it participated
directly with William J. Kane in the processing of the mortgages,
and it participated in establishing the methodology for its own
damage.

D.    Walsh Securities, Inc.'s own agent, servants, and
employees were knowledgeable of what was occurring and
participated in facilitating the very fraud that Walsh now
complains of.

E.    The Federal RICO law is inapplicable to the facts and
circumstances of this case.

WHEREFORE, defendant National Home Funding, Inc. and Robert
Skowrenski, II, demand judgment dismissing the plaintiff's
complaint.

<u>COUNTERCLAIM</u>

National Home Funding, Inc. and Robert Skowrenski, II, by
way of Counterclaim against Walsh Securities, Inc., say:

1.    NHF and Skowrenski, repeat the factual allegations
which are contained in their Answer to the Amended Complaint and
incorporate same by reference herein.

2.    At all material times, NHF was a mortgage broker
engaged in the business of employing solicitors and other
employees to assist in obtaining and providing sub-market

7

mortgages as is more particularly described in the plaintiff's
Complaint.

3.    Unbeknownst to NHF and Skowrenski, beginning early in
1996, defendants Kane and Grieser, with the assistance of certain
employees at Walsh Securities, Inc., began a process seeking to
increase the volume of mortgages in the portfolio of Walsh
Securities in order to make Walsh appear to be the holder of a
significantly larger amount of mortgages than in the past.

4.    In this endeavor, Walsh Securities, Inc. failed to
follow the requirements of due diligence that it had established
for itself and its employees so as to protect itself against
being victimized by unscrupulous individuals and fraudulent
activities.

5.    As a result of this failure to follow the appropriate
procedures, Walsh Securities, Inc., placed a large number of
mortgages and took the responsibility of processing the mortgage
applications while positioning NHF as a nominal mortgagee in the
process.  As examples of the departure from the ordinary care,
Walsh created its own list of approved appraisers, then failed to
review the appraisals which were performed by the five named
defendants who appeared on that list, and/or Walsh staff
appraisers and agents did field and/or desk reviews of the
appraisals and credit reports at issue, failed to follow up on
the paperwork, permitted paperwork which was clearly incomplete
and false to be accepted as the basis for committing loans,
committed loans without any proper documentation or based

8

upon incomplete documentation, failed to follow up on closings, so that it knew or should have known that the second mortgage called for in its own commitments were not being recorded and deeds issued by the mortgagors in violation of the Walsh mortgages were being recorded at or about the time of the initial closing, failed to identify and note the dramatic increase in price between the purchase by Kane/Grieser and the sale to third persons on the same day or shortly thereafter, and diverse other ways departed from the ordinary practice and procedures for mortgage companies such as Walsh Securities, Inc. to follow.

6.    Early in the spring of 1997, when the Asbury Park Press and other media began to reveal the exorbitant prices and mortgages, Walsh attempted to place the counterclaimants, NHF and Skowrenski, in a false light, filed a Complaint on July 17, 1997 naming NHF and Skowrenski as parties to a conspiracy and yet never bothered to even attempt to serve the Complaint upon these counterclaimants and did not serve the Complaint upon NHF and Skowrenski, until after the filing of an Amended Complaint, 123 days later, in violation of the Rules of Court, R. 4 (m).

7.    NHF and Skowrenski were established as nominee mortgagee by Walsh in carrying out these numerous loans and mortgages as described in the plaintiff's Amended Complaint.  As nominal mortgagee, Skowrenski and NHF relied upon the due diligence of Walsh and assumed that Walsh was following the ordinary practice and procedure in determining when to lend and the amount to lend on the various properties at issue.  NHF and

9

Skowrenski thereby took a position where they became mortgagee of record in the numerous mortgage complained of by Walsh and thereby became an unwitting victim of a scheme which Walsh either knew of, took no action against, or, failed to adequately protect against.

8.   As a direct result of the negligence of Walsh, through its agents, servants and employees, including Robert Walsh, James Walsh, and Betty Anne DiMola, and other unidentified agents, servants and employees, NHF and Skowrenski have suffered major damage to their reputations, destruction of their business, have been placed in the position as mortgage title holders, of having to expend large sums of money in order to pursue fraudulent mortgagors and defend themselves against criminal allegations and other civil matters.

WHEREFORE, NHF and Skowrenski, seek entry of a judgment on the Counterclaim against Walsh Securities, Inc. for damages plus interest, costs and attorney fees.

CROSS-CLAIM

FIRST COUNT

1.   Cross-claimants, National Home Funding, Inc., hereinafter referred to as "NHF"; and Robert Skowrenski, II, have been made defendants, allegedly as participants in a pyramid type scheme involving other defendants in which "RICO" and other serious fraudulent allegations are made against them.

2.   At all material times herein cross-claimant, Robert Skowrenski, II was the President of NHF, which was a corporation

10

organized under the laws of the State of New Jersey and in other portions of this pleading both have denied any participation in any scheme, fraud or other improper activity against plaintiff.

3.    They allege by these premises that they were unwittingly dragged into a process in which the co-defendants, Cristo/DEK Homes, Oakwood Property/Kane and Capital Assets Property Management & Investment Co., Capital Asset Property Management, L.L.C./Grieser, used them to facilitate a fraudulent scheme intending to enrich themselves at the expense of others. That process began in the spring of 1996 and essentially concluded with the revelation in various articles in the "Asbury Park Press" regarding the unusual inflated prices with respect to the properties at issue.

4.    The other participants chose the services of Coastal Title Agency, Commonwealth Land Title Insurance Company, Nations Title Insurance Company of New York, Inc., Fidelity National Title Insurance Company of New York and Coastal Title Agency, which are a series of title insurance companies chosen by Coastal Title Agency, which is in the business of serving as agent for those companies and obtaining title searches and in issuing attorney approval letters.

5.    Under the procedure that was followed by the co-defendants, Cristo Property Management, Ltd., Capital Assets, Kane and Grieser, the Coastal Title Agency was selected to perform the customary services which a title company practicing in the New Jersey Monmouth County area follows.  In this case,

11

letters were issued to persons who relied upon the contents
through which National Home Funding, Inc. was given an assurance
by Coastal Title Agency, Inc., as agent for the title companies,
as to the conduct of certain of the co-defendant attorneys.  The
co-defendant attorneys, as is more fully described in other
counts of this pleading, failed to properly follow the procedures
to insure that National Home Funding/Skowrenski would receive
notice of the unusual nature of the series of transactions which
would have alerted  NHF/Skowrenski early on as to the fact that
it was being unwittingly used to facilitate an illegal scheme.

6.    As a direct result of such assurances, and in breach of
the contract and assurances thereby, NHF and Skowrenski have
suffered substantial damages including injury to their
reputations, destruction of their business, the incurring of
attorney fees and other completely foreseeable losses flowing
from Coastal's and its companies' failure to adhere to the
assurances and contract for which NHF and Skowrenski were
intended beneficiaries.

WHEREFORE, cross-claimants, NHF/Skowrenski seek entry of a
judgment for damages including reasonable attorney fees against
Commonwealth Land Title Insurance Company, Nations Title
Insurance Company of New York, Inc., Fidelity National Title
Insurance Company of New York and Coastal Title Agency, jointly,
severally and in the alternative.

<u>COUNT TWO</u>

1.   NHF/Skowrenski repeat each of the allegations contained

12

in Count One and incorporate same herein by reference.

2.    Under the terms of Coastal's undertaking individually and on behalf of the various title companies it conducted a title search, received documents, recorded instruments, and issued title policies which insured that NHF as nominal mortgagee, and Walsh Securities, Inc. as the actual mortgagee, would receive proper title and would be alerted to any unusual aspects of the transactions so as to protect NHF, Skowrenski, and Walsh from the type of scheme which has now been revealed involving the other defendants.

3.    Notwithstanding that duty and undertaking, Coastal Title Agency, Inc., individually and as agent for the various title companies, negligently failed to conduct a proper investigation and review and failed to report significant evidence of the improprieties and questionable activities connected with the scheme.  Examples of such negligent conduct involve the issuance of fee and mortgagee policies which did not accurately reflect the actual condition of title at the time of the issuance of the policies, i.e., unrecorded assignments though known to Coastal, unrecorded second mortgages though known to Coastal, and the existence of deeds which conveyed fee simple from the insured fee owner to co-defendants such as Capital Assets Property Management and Investment Co., Inc. for sixty percent.  Many of these deeds were recorded by Coastal, were dated the same as the deed of conveyance to the mortgagor, where such conveyance represented a breach of the mortgage provisions

13

of the insured mortgagee, i.e., National Home Funding and
ultimately Walsh Securities, Inc.

4.    Such negligence exposed NHF and Skowrenski to
allegations as evidenced by the plaintiff's pleading, has damaged
the reputation of NHF/Skowrenski, and has failed to properly
report an accurate chain of title to the detriment and damage of
the mortgagee, nominal and actual.

WHEREFORE, cross-claimants, NHF/Skowrenski seek entry of
judgment for damages against Commonwealth Land Title Insurance
Company, Nations Title Insurance Company of New York, Inc.,
Fidelity National Title Insurance Company of New York and Coastal
Title Agency, jointly, severally and in the alternative.

COUNT THREE

1.    Cross-claimants repeat the contents of Counts One and
Two and incorporate same herein by reference.

2.    Co-defendant Richard Calanni, at all material times
herein was an appraiser licensed by the State of New Jersey,
Board of Real Estate Appraisers.

3.    Beginning early in 1996, he was called upon to appraise
certain properties which were selected by co-defendants,
Cristo/Kane and Capital Assets Property Management/Grieser.  Such
appraiser was asked to render an appraisal far in excess of the
true market value and, in fact, knowing that the appraisal would
be relied upon by NHF as nominal mortgagee and Walsh Securities,
Inc., rendered appraisals which complied with the request, and
participated in artificially inflating the purchase price and

14

mortgages of properties which were purchased by Cristo/Kane, and then immediately, or shortly thereafter, conveyed to an individual chosen by Kane and Grieser, who in many cases then immediately transferred a sixty percent interest to Capital Assets/Grieser.

4.    The actions of Richard Calanni were intentional, willful and fraudulent, and caused damages to nominal mortgagee, NHF, and the final mortgagee, Walsh Securities, Inc.  Such damages included injury to the reputation of NHF and Robert Skowrenski, II, actual business losses, as well as improper and unnecessary implication of NHF and Skowrenski in this damage action as well as criminal investigations, and caused the retention of attorneys to assist in defending the matters, and in diverse ways damaged the said cross-claimants.

WHEREFORE, NHF and Skowrenski seek entry of judgment for general and punitive damages against Richard Calanni as well as against any company of which he was a member and agent in connection with his activities in this matter.

COUNT FOUR

1.    Cross-claimants repeat the allegations contained in the first three counts of this cross-claim and incorporate same herein by reference.

2.    The actions of Richard Calanni were negligent in nature in that he failed to follow the proper standards in providing for his appraisal and estimate of the value of the premises, and in diverse other ways was negligent in his preparation and

15

completion of his task in providing appraisals of various
properties for purposes of establishing value for sale and
mortgage.

3.    As a direct result of such negligence, cross-claimants
NHF and Skowrenski suffered damages.

WHEREFORE, cross-claimants, NHF and Skowrenski, seek entry
of judgment for general damages plus prejudgment interest and
costs against Richard Calanni and any company for which he served
as agent in connection with this matter.

### COUNT FIVE

1.    Cross-claimants repeat the contents of Counts One, Two,
Three and Four and incorporate same herein by reference.

2.    Co-defendant Richard DiBenedetto, at all material times
herein was an appraiser licensed by the State of New Jersey,
Board of Real Estate Appraisers.

3.    Beginning early in 1996, he was called upon to appraise
certain properties which were selected by co-defendants,
Cristo/Kane and Capital Assets Property Management/Grieser.  Such
appraiser was asked to render an appraisal far in excess of the
true market value and, in fact, knowing that the appraisal would
be relied upon by NHF as nominal mortgagee, and Walsh Securities,
Inc., rendered appraisals which complied with the request and
participated in artificially inflating the purchase price and
mortgages of properties which were purchased by Cristo/Kane and
then immediately, or shortly thereafter, conveyed to an
individual chosen by Kane and Grieser, who in many cases then

16

immediately transferred a sixty percent interest to Capital Assets/Grieser.

4.    The actions of Richard DiBenedetto were intentional, willful and fraudulent and caused damages to nominal mortgagee, NHF and the final mortgagee, Walsh Securities, Inc.   Such damages included injury to the reputation of NHF and Robert Skowrenski, II, actual business losses, as well as improper and unnecessary implication of NHF and Skowrenski in this damage action as well as criminal investigations, and caused the retention of attorneys to assist in defending the matters and in diverse ways damaged the said cross-claimants.

WHEREFORE, NHF and Skowrenski seek entry of judgment for general and punitive damages against Richard DiBenedetto as well as against any company of which he was a member and agent in connection with his activities in this matter.

### COUNT SIX

1.    Cross-claimants repeat the allegations contained in the first three counts of this cross-claim and incorporate same herein by reference.

2.    The actions of Richard DiBenedetto were negligent in nature in that he failed to follow the proper standards in providing for his appraisal and estimate of the value of the premises, and in diverse other ways was negligent in his preparation and completion of his task in providing appraisals of various properties for purposes of establishing value for sale and mortgage.

17

3.    As a direct result of such negligence, cross-claimants NHF and Skowrenski suffered damages.

WHEREFORE, cross-claimants, NHF and Skowrenski, seek entry of judgment for general damages plus prejudgment interest and costs against Richard DiBenedetto and any company for which he served as agent in connection with this matter.

COUNT SEVEN

1.    Cross-claimants repeat the contents of Counts One, Two, Three, Four, Five and Six and incorporate same herein by reference.

2.    Co-defendant James R. Brown, at all material times herein was an appraiser licensed by the State of New Jersey, Board of Real Estate Appraisers.

3.    Beginning early in 1996, he was called upon to appraise certain properties which were selected by co-defendants, Cristo/Kane and Capital Assets Property Management/Grieser.  Such appraiser was asked to render an appraisal far in excess of the true market value and, in fact, knowing that the appraisal would be relied upon by NHF as nominal mortgagee and Walsh Securities, Inc., rendered appraisals which complied with the request and participated in artificially inflating the purchase price and mortgages of properties which were purchased by Cristo/Kane and then immediately, or shortly thereafter, conveyed to an individual chosen by Kane and Grieser, who in many cases then immediately transferred a sixty percent interest to Capital Assets/Grieser.

18

4.    The actions of James R. Brown were intentional, willful and fraudulent and caused damages to nominal mortgagee, NHF and the final mortgagee, Walsh Securities, Inc.   Such damages included injury to the reputation of NHF and Robert Skowrenski, II, actual business losses, as well as improper and unnecessary implication of NHF and Skowrenski in this damage action as well as criminal investigations, and caused the retention of attorneys to assist in defending the matters and in diverse ways damaged the said cross-claimants.

WHEREFORE, NHF and Skowrenski seek entry of judgment for general and punitive damages against James R. Brown as well as against any company of which he was a member and agent in connection with his activities in this matter.

COUNT EIGHT

1.    Cross-claimants repeat the allegations contained in the first three counts of this cross-claim and incorporate same herein by reference.

2.    The actions of James R. Brown were negligent in nature in that he failed to follow the proper standards in providing for his appraisal and estimate of the value of the premises, and in diverse other ways was negligent in his preparation and completion of his task in providing appraisals of various properties for purposes of establishing value for sale and mortgage.

3.    As a direct result of such negligence, cross-claimants NHF and Skowrenski suffered damages.

19

WHEREFORE, cross-claimants, NHF and Skowrenski, seek entry of judgment for general damages plus prejudgment interest and costs against James R. Brown and any company for which he served as agent in connection with this matter.

COUNT NINE

1.    Cross-claimants repeat the contents of Counts One, Two, Three, Four, Five, Six, Seven, and Eight and incorporate same herein by reference.

2.    Co-defendant Thomas Brodo, at all material times herein was an appraiser licensed by the State of New Jersey, Board of Real Estate Appraisers.

3.    Beginning early in 1996, he was called upon to appraise certain properties which were selected by co-defendants, Cristo/Kane and Capital Assets Property Management/Grieser.  Such appraiser was asked to render an appraisal far in excess of the true market value and, in fact, knowing that the appraisal would be relied upon by NHF as nominal mortgagee and Walsh Securities, Inc., rendered appraisals which complied with the request and participated in artificially inflating the purchase price and mortgages of properties which were purchased by Cristo/Kane and then immediately, or shortly thereafter, conveyed to an individual chosen by Kane and Grieser, who in many cases then immediately transferred a sixty percent interest to Capital Assets/Grieser.

4.    The actions of Thomas Brodo were intentional, willful and fraudulent and caused damages to nominal mortgagee, NHF and

20

the final mortgagee, Walsh Securities, Inc.  Such damages
included injury to the reputation of NHF and Robert Skowrenski,
II, actual business losses as well as improper and unnecessary
implication of NHF and Skowrenski in this damage action as well
as criminal investigations, and caused the retention of attorneys
to assist in defending the matters and in diverse ways damaged
the said cross-claimants.

WHEREFORE, NHF and Skowrenski seek entry of judgment for
general and punitive damages against Thomas Brodo as well as
against any company of which he was a member and agent in
connection with his activities in this matter.

<u>COUNT TEN</u>

1.   Cross-claimants repeat the allegations contained in the
first three counts of this cross-claim and incorporate same
herein by reference.

2.   The actions of Thomas Brodo were negligent in nature in
that he failed to follow the proper standards in providing for
his appraisal and estimate of the value of the premises, and in
diverse other ways was negligent in his preparation and
completion of his task in providing appraisals of various
properties for purposes of establishing value for sale and
mortgage.

3.   As a direct result of such negligence, cross-claimants
NHF and Skowrenski suffered damages.

WHEREFORE, cross-claimants, NHF and Skowrenski, seek entry
of judgment for general damages plus prejudgment interest and

21

costs against Thomas Brodo and any company for which he served as
agent in connection with this matter.

COUNT ELEVEN

1.    Cross-claimants repeat the contents of Counts One, Two,
Three, Four, Five, Six, Seven, Eight, Nine and Ten and
incorporate same herein by reference.

2.    Co-defendant Ronald J. Pierson, at all material times
herein was an appraiser licensed by the State of New Jersey,
Board of Real Estate Appraisers.

3.    Beginning early in 1996, he was called upon to appraise
certain properties which were selected by co-defendants,
Cristo/Kane and Capital Assets Property Management/Grieser.  Such
appraiser was asked to render an appraisal far in excess of the
true market value and, in fact, knowing that the appraisal would
be relied upon by NHF as nominal mortgagee and Walsh Securities,
Inc., rendered appraisals which complied with the request and
participated in artificially inflating the purchase price and
mortgages of properties which were purchased by Cristo/Kane and
then immediately, or shortly thereafter, conveyed to an
individual chosen by Kane and Grieser, who in many cases then
immediately transferred a sixty percent interest to Capital
Assets/Grieser.

4.    The actions of Ronald J. Pierson were intentional,
willful and fraudulent and caused damages to nominal mortgagee,
NHF and the final mortgagee, Walsh Securities, Inc.  Such damages
included injury to the reputation of NHF and Robert Skowrenski,

22

II, actual business losses, as well as improper and unnecessary implication of NHF and Skowrenski in this damage action as well as criminal investigations, and caused the retention of attorneys to assist in defending the matters and in diverse ways damaged the said cross-claimants.

WHEREFORE, NHF and Skowrenski seek entry of judgment for general and punitive damages against Ronald J. Pierson as well as against any company of which he was a member and agent in connection with his activities in this matter.

COUNT TWELVE

1.    Cross-claimants repeat the allegations contained in the first three counts of this cross-claim and incorporate same herein by reference.

2.    The actions of Ronald J. Pierson were negligent in nature in that he failed to follow the proper standards in providing for his appraisal and estimate of the value of the premises, and in diverse other ways was negligent in his preparation and completion of his task in providing appraisals of various properties for purposes of establishing value for sale and mortgage.

3.    As a direct result of such negligence, cross-claimants NHF and Skowrenski suffered damages.

WHEREFORE, cross-claimants, NHF and Skowrenski, seek entry of judgment for general damages plus prejudgment interest and costs against Ronald J. Pierson and any company for which he served as agent in connection with this matter.

23

## COUNT THIRTEEN

1.    Cross-claimants repeat and incorporate by reference all of the contentions in the cross-claim, counts one through twelve.

2.    At all material times herein, Stanley Yacker, Esq., was an attorney licensed by the New Jersey Supreme Court as an attorney and was engaged in the practice of law, which included participation in what is generally known as real estate closings and title work.

3.    In accordance with the overall descriptive scheme provided by the plaintiff in the Amended Complaint filed in this matter, said Stanley Yacker, Esq. was called upon to prepare the necessary closing and represent various interests including the interests of seller, purchaser, subsequent purchaser, mortgagee and to act in a professional capacity to assist in preparing documents, completing required forms, reviewing title reports, and in closing various transactions of conveyance and mortgage between many of the parties described in the main body of plaintiff's Complaint.

4.    By virtue of the status of Stanley Yacker, Esq. and by virtue of the license granted to him by the Supreme Court, and based upon the ordinary practices and procedures established for the practice of law, the said Stanley Yacker, Esq. had certain duties and obligations to carry out his closing requirements in the ordinary course.  Among them was a duty to alert NHF and Skowrenski, who were within the class of persons relying upon the expertise of Stanley Yacker, Esq., of infirmities which impacted

24

upon the validity of the nominal mortgagee's lien and to alert the said NHF and Skowrenski of any unusual circumstances surrounding the transactions in which Yacker participated.

5.    Notwithstanding this well known duty, the said Stanley Yacker, Esq. negligently failed to adhere to such standards and by virtue of such negligence, and as a direct result thereby, cross-claimants, NHF and Skowrenski, suffered substantial damages, including injury to reputation, unwitting involvement in a scheme to defraud NHF and Walsh and others, and various other losses and damages which will be more specifically set forth in the discovery phase of this litigation.  Amongst the negligence acts relied upon are (a) negligently failing to alert NHF and Skowrenski that deposit monies called for in various transactions were not actually provided by the purchasers; (b) preparation of documents which by their very nature were inconsistent with the terms of the mortgage issued in favor of NHF and/or Walsh Securities, Inc.; (c) failing to record certain documents which were part of the transaction; and (d) generally failing to follow the procedures which in the ordinary closing, fee and mortgagee, should have been followed.

WHEREFORE, cross-claimants, NHF and Skowrenski, seek entry of judgment against defendant, Stanley Yacker, Esq.

COUNT FOURTEEN

1.    Cross-claimants repeat and incorporate by reference all of the contentions in the cross-claim, counts one through twelve.

2.    At all material times herein, Michael Alfieri, Esq.,

25

was an attorney licensed by the New Jersey Supreme Court as an attorney and was engaged in the practice of law, which included participation in what is generally known as real estate closings and title work.

3.    In accordance with the overall descriptive scheme provided by the plaintiff in the Amended Complaint filed in this matter, said Michael Alfieri, Esq. was called upon to prepare the necessary closing and represent various interests including the interests of seller, purchaser, subsequent purchaser, mortgagee and to act in a professional capacity to assist in preparing documents, completing required forms, reviewing title reports, and in closing various transactions of conveyance and mortgage between many of the parties described in the main body of plaintiff's Complaint.

4.    By virtue of the status of Michael Alfieri, Esq. and by virtue of the license granted to him by the Supreme Court, and based upon the ordinary practices and procedures established for the practice of law, the said Michael Alfieri, Esq. had certain duties and obligations to carry out his closing requirements in the ordinary course.  Among them was a duty to alert NHF and Skowrenski, who were within the class of persons relying upon the expertise of Michael Alfieri, Esq., of infirmities which impacted upon the validity of the nominal mortgagee's lien and to alert the said NHF and Skowrenski of any unusual circumstances surrounding the transactions in which Alfieri participated.

5.    Notwithstanding this well known duty, the said Michael

26

Alfieri, Esq. negligently failed to adhere to such standards and by virtue of such negligence, and as a direct result thereby, cross-claimants, NHF and Skowrenski, suffered substantial damages, including injury to reputation, unwitting involvement in a scheme to defraud NHF and Walsh and others, and various other losses and damages which will be more specifically set forth in the discovery phase of this litigation.  Amongst the negligence acts relied upon are (a) negligently failing to alert NHF and Skowrenski that deposit monies called for in various transactions were not actually provided by the purchasers; (b) preparation of documents which by their very nature were inconsistent with the terms of the mortgage issued in favor of NHF and/or Walsh Securities, Inc.; (c) failing to record certain documents which were part of the transaction; and (d) generally failing to follow the procedures which in the ordinary closing, fee and mortgagee, should have been followed.

WHEREFORE, cross-claimants, NHF and Skowrenski, seek entry of judgment against defendant, Michael Alfieri, Esq.

COUNT FIFTEEN

1.    Cross-claimants repeat and incorporate by reference all of the contentions in the cross-claim, counts one through twelve.

2.    At all material times herein, Richard Pepsny, Esq., was an attorney licensed by the New Jersey Supreme Court as an attorney and was engaged in the practice of law, which included participation in what is generally known as real estate closings and title work.

27

3.   In accordance with the overall descriptive scheme
provided by the plaintiff in the Amended Complaint filed in this
matter, said Richard Pepsny, Esq. was called upon to prepare the
necessary closing and represent various interests including the
interests of seller, purchaser, subsequent purchaser, mortgagee
and to act in a professional capacity to assist in preparing
documents, completing required forms, reviewing title reports,
and in closing various transactions of conveyance and mortgage
between many of the parties described in the main body of
plaintiff's Complaint.

4.   By virtue of the status of Richard Pepsny, Esq. and by
virtue of the license granted to him by the Supreme Court, and
based upon the ordinary practices and procedures established for
the practice of law, the said Richard Pepsny, Esq. had certain
duties and obligations to carry out his closing requirements in
the ordinary course.  Among them was a duty to alert NHF and
Skowrenski, who were within the class of persons relying upon the
expertise of Richard Pepsny, Esq., of infirmities which impacted
upon the validity of the nominal mortgagee's lien and to alert
the said NHF and Skowrenski of any unusual circumstances
surrounding the transactions in which Pepsny participated.

5.   Notwithstanding this well known duty, the said Richard
Pepsny, Esq. negligently failed to adhere to such standards and
by virtue of such negligence, and as a direct result thereby,
cross-claimants, NHF and Skowrenski, suffered substantial
damages, including injury to reputation, unwitting involvement in

a scheme to defraud NHF and Walsh and others, and various other losses and damages which will be more specifically set forth in the discovery phase of this litigation.  Amongst the negligence acts relied upon are (a) negligently failing to alert NHF and Skowrenski that deposit monies called for in various transactions were not actually provided by the purchasers; (b) preparation of documents which by their very nature were inconsistent with the terms of the mortgage issued in favor of NHF and/or Walsh Securities, Inc.; (c) failing to record certain documents which were part of the transaction; and (d) generally failing to follow the procedures which in the ordinary closing, fee and mortgagee, should have been followed.

WHEREFORE, cross-claimants, NHF and Skowrenski, seek entry of judgment against defendant, Richard Pepsny, Esq.

COUNT SIXTEEN

1.    Cross-claimants repeat and incorporate by reference all of the contentions in the cross-claim, counts one through twelve.

2.    At all material times herein, Anthony M. Cicalese, Esq., was an attorney licensed by the New Jersey Supreme Court as an attorney and engaged in the practice of law, which included participation in what is generally known as real estate closings and title work.

3.    In accordance with the overall descriptive scheme provided by the plaintiff in the Amended Complaint filed in this matter, said Anthony M. Cicalese, Esq. was called upon to prepare the necessary closing and represent various interests including

29

the interests of seller, purchaser, subsequent purchaser,
mortgagee and to act in a professional capacity to assist in
preparing documents, completing required forms, reviewing title
reports, and in closing various transactions of conveyance and
mortgage between many of the parties described in the main body
of plaintiff's Complaint.

    4.    By virtue of the status of Anthony M. Cicalese, Esq.
and by virtue of the license granted to him by the Supreme Court,
and based upon the ordinary practices and procedures established
for the practice of law, the said Anthony M. Cicalese, Esq. had
certain duties and obligations to carry out his closing
requirements in the ordinary course.  Among them was a duty to
alert NHF and Skowrenski, who were within the class of persons
relying upon the expertise of Anthony M. Cicalese, Esq., of
infirmities which impacted upon the validity of the nominal
mortgagee's lien and to alert the said NHF and Skowrenski of any
unusual circumstances surrounding the transactions in which
Cicalese participated.

    5.    Notwithstanding this well known duty, the said Anthony
M. Cicalese, Esq. negligently failed to adhere to such standards
and by virtue of such negligence, and as a direct result thereby,
cross-claimants, NHF and Skowrenski, suffered substantial
damages, including injury to reputation, unwitting involvement in
a scheme to defraud NHF and Walsh and others, and various other
losses and damages which will be more specifically set forth in
the discovery phase of this litigation.  Amongst the negligence

acts relied upon are (a) negligently failing to alert NHF and
Skowrenski that deposit monies called for in various transactions
were not actually provided by the purchasers; (b) preparation of
documents which by their very nature were inconsistent with the
terms of the mortgage issued in favor of NHF and/or Walsh
Securities, Inc.; (c) failing to record certain documents which
were part of the transaction; and (d) generally failing to follow
the procedures which in the ordinary closing, fee and mortgagee,
should have been followed.

WHEREFORE, cross-claimants, NHF and Skowrenski, seek entry
of judgment against defendant, Anthony M. Cicalese, Esq.

COUNT SEVENTEEN

1.    Cross-claimants, NHF and Skowrenski, repeat certain
allegations of the Amended Complaint which have been made against
defendants, Cristo Property Management, Ltd., a/k/a G.J.L.
Limited, DEK Homes of New Jersey, Inc., Oakwood Properties, Inc.
and William J. Kane.

2.    Early in 1996, the defendant, William J. Kane, came to
the cross-claimants, NHF and Skowrenski, and asked to participate
in the retail mortgage business of NHF and Skowrenski and which,
at the time, was located at 3443 Highway 9 North (Holiday Plaza),
Freehold, New Jersey.

3.    Under arrangements that were established, Kane was
supposed to act on behalf of NHF in assisting with obtaining
customers and clients of NHF in the ordinary course and to enlist
the office staff and personnel of NHF to follow certain

31

established procedures to process mortgage applications, obtain
mortgage commitments, and participate in the closing and mortgage
related transactions for the customers and clients he had
produced.  Under such arrangement, Kane was to receive
appropriate compensation.

4.    Unbeknownst to cross-claimants, Kane in fact had
arranged with Gary Grieser and others presently unknown to obtain
customers and participate in a fraudulent scheme which was
established to enrich the said Kane and his companies and which
scheme is basically set forth in the plaintiff's Amended
Complaint.

5.    At all material times herein, Kane was in fact acting
independently of his obligations to NHF and Skowrenski, and was
acting for his personal benefit, utilizing the support of NHF
staff and Skowrenski in this improper and fraudulent endeavor.
The companies which he owned and/or controlled, i.e., Cristo
Property Management, Ltd., a/k/a G.J.L. Limited, DEK Homes of New
Jersey, Inc., Oakwood Properties, Inc., were all set up to assist
Kane in the scheme and their existence was essentially unknown to
cross-claimants, NHF and Skowrenski.

6.  As a result of the aforesaid improper actions, Kane has
violated the fiduciary duty he owed to NHF, and has, through
various fraudulent acts, caused great damage to and the
destruction of NHF's reputation and business, improperly and
illegally involved NHF, its personnel, and Skowrenski in a
criminal investigation, and in diverse other ways caused

32

substantial damages to NHF and Skowrenski.

WHEREFORE, cross-claimants, NHF and Skowrenski, seek entry
of a judgment for damages, both compensatory and punitive,
against William J. Kane, Cristo Property Management, Ltd., a/k/a
G.J.L. Limited, DEK Homes of New Jersey, Inc., Oakwood
Properties, Inc., jointly, severally and in the alternative, and
requests the Court to enter an order directing that Kane repay
all commissions paid to him by NHF as a result of his breach of
fiduciary duty to NHF.

COUNT EIGHTEEN

1.   Cross-claimants, NHF and Skowrenski, repeat the
contents of Count Seventeen and incorporate same by reference
herein.

2.   Cross-claimants repeat the contentions of their
Counterclaim and the factual averments therein and incorporate
same herein by reference.

3.   At all material times Capital Assets Property
Management, L.L.C. and Capital Assets Property Management &
Investment Co., Inc. were owned and controlled by Gary Grieser,
hereinafter referred to as the "Grieser interest".

4.   Defendants Grieser and Kane arranged for a scheme in
which Grieser succeeded in obtaining customers for purposes of
obtaining sub-market mortgages, with the assistance of Kane,
through NHF as nominal mortgagee, knowing that those mortgages
would all be actually placed with Walsh Securities, Inc.   To the
extent that the factual allegations contained in the Amended

33

Complaint refer to the scheme and Grieser's participation, NHF and Skowrenski incorporate those factual allegations by reference herein.

5. Commencing in early 1996 and concluding in the late spring of 1997, the Grieser interest fraudulently engaged in a scheme to "flip" certain properties, obtain enhanced appraisals of their value, process mortgage applications which were essentially false or misleading, and then acted as seller as well as buyer of the subject properties so that at the end of the transaction, the Grieser interest owned sixty percent of the fee title and after securing monies through Walsh to pay for inflated mortgages and to share the proceeds with the defendant Kane, was not liable for the mortgage.

6. All of these actions were illegal and improper, have damaged NHF and Skowrenski by presenting them in a false light, causing them to be included in the criminal investigation, damaging their reputations and essentially destroying their business and exposing them as nominal mortgagee to various liabilities with respect to the property and the final mortgagee, Walsh Securities, Inc.

WHEREFORE, cross-claimants, NHF and Skowrenski, seek entry of judgment against the defendants, Gary Grieser, Capital Assets Property Management, L.L.C. and Capital Assets Property Management & Investment Co., Inc., for compensatory and punitive damages, jointly, severally and in the alternative.

## JURY DEMAND

Defendants, NHF and Skowrenski hereby demand a trial by a

jury as to all issues.

> SCHOTTLAND, MANNING, ROSEN,
> CALIENDO & MUNSON, P.A.
> Michael D. Schottland, (MS 4522)
> 36 West Main Street
> Freehold, New Jersey 07728
> (732) 462-4405
> Facsimile (732) 409-0347
> Attorneys for Defendants/Counter-
> claimants, National Home Funding,
> Inc. and Robert Skowrenski, II

By: _____

November  25, 1997          MICHAEL D. SCHOTTLAND