Exhibit A

onwealth
ind Title Insurance Company
idit No.

Date: December 19, 1996

To: National Home Funding, Inc., its successors and/or
assigns, as their interest may appear
3443 Highway 9 North
Freehold, New Jersey 07728
Attention: Closing Department

RE: Closing Service Letter
Issuing Agent or Attorney whose conduct is covered:
Stanley Yacker, Esquire
330 Highway 34, Suite 3
Matawan, NJ   07747


File No:
Transaction:
Premises:


Dear Customer:

When title insurance of Commonwealth Land Title Insurance Company is specified for your
protection in connection with the closing of the above described real estate transaction
in which you are to be a lender secured by a mortgage of an interest in land, the
Company, subject to the Conditions and Exclusions set forth below, hereby agrees to re-
imburse you for actual loss incurred by you in connection with that closings when con-
ducted by the above named Issuing Agent (an agent authorized to issue title insurance
for the Company) of Commonwealth Land Title Insurance Company or the above named Attorney
and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instruc-
tions to the extent that they relate to: (a) the title to said interest in land or
the validity, enforceability and priority of the lien of said mortgage on said
interest in land, including the obtaining of documents and the disbursement of funds
necessary to establish such title or lien, or (b) the collection and payment of funds
due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in
connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection
with a loan secured by a mortgage on a one-to-four family dwelling, which is the prin-
cipal residence of the borrower, shall be protected, but only to the extent of the fore-
going paragraph 2, as if this letter were addressed to your borrower. If you are a pur-
chaser of a one-to-four family dwelling, including a condominium unit, which is your
principal residence, and are paying cash for the purchase, you are protected, but only
to the extent of the foregoing paragraph 2.

*NEW JERSEY LAND TITLE*
*INSURANCE RATING BUREAU*

NJRB 6-04
8/1//94

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

1. Failure of the Attorney to comply with your closing instructions which require require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics' and materialmen's liens in connection with a construction loan transaction, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instrutions to the Attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 8 Penn Center, Philadelphia, Pennsylvania 19103. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF COMMONWEALTH LAND TITLE INSURANCE COMPANY.

The protection under this Letter is limited to the closing on the premises described in the caption of this Letter.

Commonwealth Land Title Insurance Company

BY: _____
Robert F. Vogel, President
Coastal Title Agency, Inc.
Agent

*NEW JERSEY LAND TITLE*
*INSURANCE RATING BUREAU*

NJRB 6-04
8/1/94

Exhibit B

~~~y National Title
~~~RANCE COMPANY OF NEW YORK
Park Avenue / New York, New York 10016 / (212) 481-5858 / Fax: (212) 481-8747

Date:  October 25, 1996

To: National Home Funding, Inc., its successors and/or
assigns, as their interest may appear


Attention: Closing Department

RE: Closing Service Letter
Issuing Agent or Attorney whose conduct is covered:
Stanley Yacker, Esquire

330 Highway 34, Suite 3
Matawan, NJ    07747

File No:
Transaction:

Premises:


Dear Customer:

When title insurance of Fidelity National Title Insurance Company of New York is
specified for your protection in connection with the closing of the above described real
estate transaction  in which you are to be a lender secured by a mortgage of an interest
in land, the Company, subject to  the Conditions and Exclusions set  forth below, hereby
agrees to reimburse you for actual loss incurred by you in connection  with that closing
when  conducted  by the  above named Issuing Agent  (an agent authorized to  issue title
insurance for the Company) of Fidelity National Title Insurance  Company of New York or
the above named Attorney and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instruc-
tions to the extent that  they relate to:  (a) the title to said interest  in land or
the  validity,  enforceability and  priority of the  lien of said  mortgage on  said
interest in land, including the obtaining of documents and the  disbursement of funds
necessary to establish such title or lien; or (b) the collection and payment of funds
due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in
connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection
with a loan secured by a mortgage  on a one-to-four family dwelling,  which is the prin-
cipal residence of the borrower, shall be protected, but only to the extent of the fore-
going paragraph 2, as if this letter were addressed to your borrower.  If you are a pur-
chaser of a  one-to-four  family dwelling,  including a condominium unit,  which is your
principal residence, and are paying cash for the purchase,  you are protected,  but only
to the extent of the foregoing paragraph 2.

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

1. Failure of the Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics' and materialmen's liens in connection with a construction loan transaction, except to the extent that protection against such lien is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 2 Park Avenue, New York, N.Y. 10016. When failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F. Liability under this letter is limited to the amount of insurance committed for and is subject to all of the Conditions and Stipulations of the policy or policies committed to be issued by the Company. Any payment of loss under this letter shall constitute a payment under the policy.

THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK.

The protection under this Closing Service Letter is limited to the closing on the premises described in the caption of this Letter.

Fidelity National Title Insurance Company of New York

BY: _____
Robert F. Agel, President
Coastal Title Agency, Inc.
Agent

Exhibit C

ons: Title Insurance of New York Inc.
Shrewsbury Case 2:92-cv-00495-DRD-JAD Document 35-1 Filed 01/16/98 Page 8 of 31 PageID: 286
ne (908) 219-8540

Date:

To: National Home Funding, Inc., its successors and/or its
    assigns
    3443 Highway 9 North
    Freehold, NJ 07728
    Attention: Closing Department

        RE: Closing Service Letter
            Issuing Agent or Attorney whose conduct is covered:
            Richard J. Pepsny, Esquire
            Law Office of Michael A. Alfieri
            187 Route 34
            Matawan, NJ 07747

    File No:
Transaction:

    Premises:


Dear Customer:

When title insurance of Nations Title Insurance of New York Inc. ("Company") is specified
for your protection in connection with the closing of the above described real estate
transaction in which you are to be a lender secured by a mortgage of an interest in
land, the Company, subject to the Conditions and Exclusions set forth below, hereby
agrees to reimburse you for actual loss incurred by you in connection with that closing
when conducted by the above named Issuing Agent (an agent authorized to issue title
insurance for the Company) of Nations Title Insurance of New York Inc. or the above named
Attorney and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instruc-
   tions to the extent that they relate to: (a) the title to said interest in land or
   the validity, enforceability and priority of the lien of said mortgage on said
   interest in land, including the obtaining of documents and the documents and the dis-
   bursement of funds necessary to establish such title or lien; or (b) the collection
   and payment of funds due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in
   connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection
with a loan secured by a mortgage on a one-to-four family dwelling, which is the princi-
pal residence of the borrower, shall be protected, but only to the extent of the fore-
going paragraph 2, as if this letter were addressed to your borrower. If you are a pur-
chaser of a one-to-four family dwelling, including a condominium unit, which is your
principal residence, and are paying cash for the purchase, you are protected, but only
to the extent of the foregoing paragraph 2.

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

1. Failure of the Attorney to comply with your closing instructions which require require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

.2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics' and materialmen's liens in connection with a construction loan transaction, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 6800 College Blvd., Suite 700, Overland Park, Kansas 66211. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F. Liability under this letter is limited to the amount of insurance committed for and is subject to all of the Conditions and Stipulations of the policy or policies committed to be issued by the Company. Any payment of loss under this letter shall constitute a payment under the policy.

THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF NATIONS TITLE INSURANCE OF NEW YORK INC.

The protection under this Letter is limited to the closing on the premises described in the caption of this letter.

Sincerely,

Robert F. Agel, President
Coastal Title Agency, Inc.
Agent

ISSUING OFFICE:
COASTAL TITLE AGENCY, INC.
P.O. BOX 740
FREEHOLD, NEW JERSEY 07728
(908) 308-1660

## PROGRAM PARTICIPANT
## LOAN PURCHASE AND SALE AGREEMENT

THE AGREEMENT is entered into in the State of New Jersey this <u>24</u> day of <u>apr</u>, 199<u>5</u> between GF
Mortgage Corporation, as ("BUYER") having a place of business at 4 Campus Drive, Parsippany, NJ
07054 and <u>National Home</u> as ("SELLER") having a place of business at <u>3443 rt. 9N</u>
<u>Funding, Inc.</u>                     <u>Freehold NJ. 07728</u>.

  WHEREAS, Buyer is the owner of the "90's Middle America"® loan program, by which Buyer
purchases mortgage loans from Program Participants that have been originated by the Program
Participant.

  WHEREAS, Seller is a Program Participant who wishes from time to time to sell and Buyer
wishes from time to time to buy all of Seller's right, title and interest in and to certain promissory notes
secured by first lien on residential real property.

  NOW, THEREFORE, in consideration of the premises and of the mutual covenants and
agreements hereinafter contained, the parties hereto agree as follows:

### ARTICLE 1
### DEFINITIONS

  Whenever used in this agreement, the following words and phrases, unless the context otherwise
requires, shall have the following meaning:

<u>FHLMC</u>:  The Federal Home Loan Mortgage Corporation

<u>FNMA</u>:  The Federal National Mortgage Association

<u>Loan(s)</u>:  Loan (and when plural, the loans) to be purchased by Buyer pursuant to this agreement and
made by Seller to an Obligor evidenced by a Note and secured by a Security Instrument.

<u>Loan Schedule</u>:  A schedule of information with respect to each loan.

<u>Loan File</u>:  All documents of whatever name and nature in any way whatsoever that may
pertain or relate to a Loan.

<u>Note</u>:  Promissory Note payable to Seller evidencing a Loan made by Seller to an Obligor.

<u>Note Rate</u>: The annual interest rate which Buyer shall realize on a Loan.

<u>Obligor</u>:  The person or persons who obtained a Loan and executed a Note and/or a Security
Instrument.

<u>Program</u>:  The "90's Middle America"® loan program, as amended from time to time by Buyer.

<u>Program Documents</u>:  The 90's Middle America® Program Participant's Manual, as amended
from time to time by the Purchaser.

Rev. 3/1094(73)

1

Program Participant: The Seller

Purchase Dates: The dates on which Buyer shall from time to time purchase the Loans.

Purchase Price Schedule: The Purchase Schedule shall be provided from time to time by Buyer to Seller.

Buyer's Underwriting Guidelines: Buyer's Underwriting Guidelines for the Program as amended from time to time by the Buyer in its sole discretion.

Security Instrument: A mortgage or deed of trust securing a Note and creating a first lien on residential real property, securing the Note.

## ARTICLE 2
## PURCHASE AND SALE

Buyer hereby agrees from time to time to buy and Seller hereby agrees from time to time to sell, endorse, transfer and assign to Buyer on the Purchase Dates all of Seller's right, title and interest in the Loans that were acquired or concurrently funded, provided, however, that such purchase and sale shall be subject to the terms of this Agreement. As to each Loan, Seller further agrees to (1) sell, transfer and assign to Buyer each Note properly endorsed by Seller and the beneficial interest under each Security Instrument securing each Note to be evidenced by an assignment in recordable form prepared by the Buyer and reviewed by the Seller for completeness and enforceability and (2) transfer and assign to Buyer all of Seller's interest in each of the policies of title or other insurance with respect to each Loan and any proceeds due or to become due thereunder.

## ARTICLE 3
## PRICE

The purchase price for each Loan shall be calculated as set forth in the Purchase Schedule.

## ARTICLE 4
## PURCHASE DATE

4.01    On each Purchase Date, Seller shall provide to Buyer:

    (a)    A Loan Schedule which shall list each Loan to be purchased on Purchase Date and shall set forth as to each such Loan:

        (i)    the account number of the Loan;

        (ii)    the name of the Obligor;

        (iii)    current interest rate;

        (iv)    the then outstanding principal balance;

        (v)    the premium or discount as agreed between Buyer and Seller;

(b)    if not a newly originated loan, a full and complete payment history of the Loan;

(c)    the Loan File which shall include, but not be limited to the following documentation as to each Loan set forth in the Schedule of Loans:

(i)    the original Note properly endorsed to Buyer and an assignment in a form acceptable to Buyer and in recordable form of all of Seller's right, title and interest thereto;

(ii)    a certified copy of the executed Security Instrument, the original Security Instrument with evidence of recordation thereof to be delivered to Buyer within sixty (60) days of the Date of closing of the Loan; and the original assignment, in recordable form, which assignment shall be an assignment to Buyer of all of Seller's right, title, and interest thereto;

(iii)    the original federal Truth-In-Lending Disclosure Statement and Rescission Notice, if applicable;

(iv)    the original title policy or a title binder or commitment for the same, which has been marked up by the closing agent of the title company with the original title policy to be delivered within sixty (60) days of the Purchase Date.

(v)    the original appraisal; and

(vi)    All Standard Credit Documentation, or, where approved by the Buyer, Alternate Credit Documentation, as described in the Program Documents.

(vii)    All other disclosures required by law, including the RESPA disclosure statements and the closing statement.

4.02    On each Purchase Date, Buyer shall pay to Seller, by draft or wire in immediately available funds, the total purchase price for all acceptable loans (net of Buyer's fees, escrows, prepaid interest, and other deductions) listed on the Purchase Schedule provided on that Purchase Date.

## ARTICLE 5
## BUYER'S UNDERWRITING GUIDELINES

All Loans must comply with the Buyer's Underwriting Guidelines.  Any changes to said underwriting guidelines will not affect Loans previously submitted to Buyer provided they close within 90 days after the underwriting changes. In the event Buyer purchases a Loan which does not comply with said guidelines, the exception must be preapproved in writing by Buyer and Buyer may purchase such Loan at Buyer's option and sole discretion; provided, however, that any such purchase shall not constitute a waiver of the guidelines and shall not obligate Buyer to purchase any other Loan which does not conform to Guidelines.

## ARTICLE 6
### REPRESENTATIONS, WARRANTIES, AND
### COVENANTS OF SELLER

6.01    For each Loan purchased that is a closed loan or a concurrently funded loan by Buyer, Seller for and with respect to itself, and any prior holder of the Notes and Mortgages sold hereby, and any Mortgage Broker, Banker or lender dealing with Seller, or any prior Note Holder hereby represents, warrants and covenants to Buyer that, as of the Purchase Date:

    (a)    All information set forth in any Loan Schedule, is true and correct in all respects, and all other information furnished to Buyer with respect to the Loans is true and correct.

    (b)    Each Security Instrument constitutes a valid first lien on a residential real property securing the related Note subject only to (i) current real property taxes and assessments, (ii) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Security Instrument, such exceptions appearing of record being acceptable to mortgage lending institutions generally or specifically reflected in the title report obtained by Seller, and (iii) other matters to which like properties are commonly subject which do not interfere with the benefits of the security intended to be provided by such Security Instrument. No improvement considered in determining the related appraised value is in violation of any applicable zoning law or regulation where required by law, a certificate of occupancy or other permits have been issued and are included in the mortgage file, and the mortgaged property is lawfully occupied under applicable law. Each Mortgagor is an individual natural person.

    (c)    At the closing date, there was no secondary financing at loan origination except as approved by the Buyer in writing.

    (d)    There is no default, breach, violation or event of acceleration existing under any Note or Security Instrument and no event which, with notice and the expiration of any applicable grace or cure period, would constitute such a default, breach, violations or event of acceleration; and Seller shall not have waived any such default, breach, violations or event of acceleration.

    (e)    There is no delinquent tax or assessment lien against the property subject to a Security Instrument. There are no mechanic's liens or claims for work, labor or material affecting the premises subject to a Security Instrument which are or may be a lien prior to, or equal with, the lien of such Security Instrument except those which are insured against by the title insurance policy referred to in subsection (m) below.

    (f)    There is no valid offset, defense or counterclaim to any Note or Security Instrument, including the obligation of the Obligor to pay the unpaid principal, interest, or other charges on such Note.

    (g)    The residential real property including any improvement, which is subject to a Security Instrument, is free of damage and in good repair. Any and all requirements as to the completion of onsite or offsite improvements and as to the disbursement of any escrow funds therefore have been complied with.

    (h)    Each Note and Security Instrument is valid and enforceable in accordance with its terms and will be valid and enforceable in accordance with its terms by Buyer after Buyer's purchase. Each Note and the related mortgage are genuine.

Rev. 9/30/94[JS]

4

(i)    There shall be no homestead or other exemption available to the Obligor which would interfere with the right to sell at a trustee's sale or the right to foreclosure.

(j)    There shall be no holder in due course claim or any claim against any third party available to the Obligor which would interfere with the Buyer's right to enforce the Security Instrument, to sell at a trustee's sale, or the right to foreclosure.

(k)    With respect to each Security Instrument which is a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated in such deed of trust. Except in connection with a trustee's sale after default by the Obligor, no fees or expenses are payable by Seller to the trustee under any deed of trust.

(l)    Seller shall be responsible for the misfeasance, malfeasance or fraudulent acts in connection with the origination of the mortgage loan.

(m)    A fully paid for lender's title insurance policy regarding each Loan became effective as of the origination of such Loan, is, and shall be, valid and is, and shall remain, in full force and effect; such title insurance shows whether any prior lien secures an open-end obligation requiring future advances; any such insurance policy has been issued by a title insurer qualified to do business in the state in which the real property subject to a Security Instrument is located, insuring the priority of the lien of the Loan in the original principal amount of such Loan, which policy is in the then current American Land Title Association or a state land title association form customarily used in the state in which the insured property is located.  Each title insurance company is acceptable to FNMA.

(n)    The real property under each Security Instrument is insured, under standard homeowners hazard and casualty insurance policies, with appropriate mortgagee clauses, for an amount equal to the full insurable value of the buildings and improvements on the property which shall be an amount at least satisfactory to indemnify Buyer from loss, each such policy having been written by a duly licensed insurance company and in compliance with all applicable federal and state statutes, regulations, or requirements.

(o)    Seller has no knowledge of any condition, term or subject related to the Obligor, the mortgaged property, or the loan file which could reasonably be expected (1) to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment; or (2) to cause the Mortgage Loan to become delinquent; or (3) to adversely affect the value or marketability of the Mortgage Loan; or (4) to violate any of Buyer's Underwriting Guidelines (except as disclosed in the Mortgage File).

(p)    If Seller is a corporation or partnership it is duly organized, validly existing and in good standing under appropriate state laws, and has full power and authority to own its properties and carry on its business as it is now being conducted and is duly qualified to transact business as a foreign corporation in all states where such qualification is required.

(q)    Seller has the power to sell, transfer and assign the Loan, and such sale, transfer and assignment has been duly authorized by Seller and constitutes the legal, valid and binding obligation of Seller, enforceable in accordance with the terms of this Agreement.  Seller has obtained any and all necessary consents of third parties required of it in order to accomplish such sale, transfer and assignment.

Rev. 5/30/94[F3]

5

(r)    Seller has good and marketable title to and is the sole owner of, and has duly and validly perfected its ownership interests in and under the Security Instruments, and there has been no assignment, sale or hypothecation thereof, nor has any portion of the real property securing any Loan been released from the lien created by the Security Instrument, nor have any of the terms of the Security Instrument been modified.  Seller is the owner of, and duly and validly perfected its ownership interests in the proceeds derived from insurance covering the mortgaged premises, free and clear of any and all superior claims, liens or encumbrances of any kind whatsoever, and upon the sale of the Loans to Buyer, Buyer shall be vested with all right, title and interest in and to each such Loan, or the proceeds derived from any title or other insurance policies covering title secured property, free and clear of any and all claims, liens or encumbrances.

(s)    There are no actions, suits or proceedings existing, pending or, threatened against or affecting Seller before any court, arbitrator or governmental or administrative body or agency which affect the validity or enforceability of the Loans or which might result in any adverse change in the value of the Loans.

(t)    Seller has received all necessary federal, state or local licenses, permits, and/or authorizations and approvals required to conduct its business as is presently being conducted and to perform its functions under this Agreement.

(u)    All actions taken by Seller and all agreements, if any, with Obligor, forms letters, notices, statements and other materials used by it in connection with the Loans and all loan documents, comply with all applicable State and Federal laws and regulations including, but not limited to the Federal Consumer Credit Protection Act and Regulation Z under Title I including the Truth in Lending Simplification and Reform Act and Revised Regulation Z, credit discrimination acts and the Real Estate Settlement Procedure Act (including any regulations, judicial decision and/or official opinions relating thereto), any applicable statutes respecting the origination of or the execution of real estate secured loans, including state usury laws, any applicable statutes respecting the obtaining and/or use of credit reports and other information concerning individuals, any applicable statutes respecting the collection of debts, and all other applicable Federal, State and Local statutes, regulations, ordinances or administrative rulings relating thereto, including but not limited to those relating to unfair, deceptive or unconscionable acts and practices.

(v)    All real estate appraisals made in connection with each Loan shall have been performed in accordance with the Buyer's Underwriting Guidelines on a form approved by FNMA or FHLMC and The Uniform Standards of Professional Appraisal Practice, and with industry standards in the appraising industry in the area where the appraised property is located.  Each appraiser has been previously approved by the Buyer.

(w)    Each Loan is a closed loan or a concurrently funded loan by Seller.  The proceeds of each loan have been fully disbursed.

(x)    Each loan conforms with the requirements of the Program Documents.

(y)    Seller shall repurchase any Loan if a subsequent audit determines any fraudulent acts or misrepresentation of Seller, its correspondents, prior Note Holders or any of their agents is contained in the Loan file that supported the credit underwriting decision.

(z)      If the residential property is in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards, a flood insurance policy in a form meeting the requirements of the current guidelines of the Flood Insurance Administration is in effect with respect to such residential property with a generally acceptable carrier in an amount representing coverage not less than the least of (1) the original outstanding principal balance of the loan, (ii) the minimum amount required to compensate for damage or loss on a replacement cost basis or (ii) the maximum amount of insurance that is available under the Flood Disaster Protection Act or that is available under the Flood Disaster Protection Act of 1973.

6.02    Survival of Representations, Warranties and Covenants' Breach of Warranty

It is understood and agreed that the representations and warranties set forth in this Agreement including but not limited to those representations and warranties set forth in this Article shall survive the execution of this Agreement and the purchase of Loans hereunder.  Seller shall be responsible for the acts of its agents, employees, correspondents, brokers, and prior Note Holders.   Upon discovery by either Seller or Buyer of any breach of any said representations and warranties, which in any way adversely affects the Buyer, the party discovering such breach shall give prompt written notice to the other.  Within 60 days of its receipt of notice of breach, Seller shall at Buyer's option cure such breach, or repurchase the Loan from Buyer.  Any such repurchase by Seller shall be at a repurchase price equal to the then outstanding principal balance of such Loan, or, where each loan is purchased by Buyer at a premium over par, the unpaid principal balance multiplied by par plus the premium together with interest at the Note Rate for such Loan for the period from the date to which such interest was last paid and remitted to the date of such repurchase.  It is understood and agreed that the obligation of the Seller to repurchase any Loans as to which a breach has occurred shall not constitute the exclusive remedy respecting such breach available to Buyer, but Buyer shall have recourse to any other remedy for breach of warranty at law or in equity.

### ARTICLE 7
### REPRESENTATIONS, WARRANTIES, AND
### COVENANTS OF BUYERS

Buyer hereby represents, warrants and covenants to Seller as follows:

(a)      Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, and has full corporate power and authority to own its properties and carry on its business as it is now being conducted.

(b)      Buyer has the corporate power to enter into this Agreement, and the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by the necessary corporate action of Buyer, and this Agreement constitutes the legal, valid and binding obligation of Buyer, enforceable in accordance with its terms.  Buyer has obtained any and all necessary consents of third parties required of it in order to enter into this Agreement and to consummate the transactions contemplated hereby, and the execution and delivery of this Agreement and performance by Buyer of the transactions contemplated hereby will not result in Buyer being in default under any of the provisions of its Certificate of Incorporation, By-Laws or of any material credit or other agreement to which it is a party.

## ARTICLE 8
## INDEMNIFICATION

8.01    Seller agrees to protect, indemnify, and hold Buyer and its employees, officers, and directors, harmless against, and in respect of, any and all losses, liabilities, costs and expenses (including attorney's fees), judgments, damages, claims, counterclaims, demands, actions or proceedings, by whomsoever asserted, including but not limited to, the Obligors, any person or persons who prosecute or defend any actions or proceedings as representatives of or on behalf of a class or interested group, or any governmental instrumentality, body, agency department or commission, or any administrative body or agency having jurisdiction pursuant to any applicable statute, rule, regulation, order or decree, or the settlement or compromise of any of the foregoing, providing, however, any of the foregoing arises out of, is connected with or results from any breach of representations, covenants or warranties made by Seller in relation to the Loans sold to Buyer hereunder.

8.02    Provided further, in the event of any legal action, including counterclaims, wherein the claim is based upon alleged facts that would constitute a breach of any one or more of the warranties, covenants, and representations made or assumed by Seller under the terms hereof, Seller shall thereupon, at Buyer's option, repurchase without recourse such Loan at a price equal to the then outstanding principal balance of such Loan, or, where such loan is purchased by Buyer at a premium over par, the unpaid principal balance multiplied by par plus such premium together with interest at the Note Rate for such Loan for the period from the date to which interest was last paid and remitted to the date of repurchase.

## ARTICLE 9
## RESCISSION

9.01    The Seller shall be responsible in the event of a rescission or cancellation by any borrower on any loan submitted by Seller.  The parties specifically agree as follows:

    a.    Should any borrower of a loan sold pursuant to this Agreement exercise its right of rescission under any state or federal law, including but not limited to the borrower's rights under Section 226.23(d) of the Federal Truth-in-Lending (Regulation Z) Law, then without regard for who is the "creditor" or lender of the loan, the Seller, (and not Buyer) shall be responsible for making all payments required by law to the borrower who has exercised its right of rescission.  Buyer will co-operate with the Seller by returning to the borrower all funds paid by the borrower to Buyer in connection with the loan and further by executing such documents as shall reasonably be required by the Seller in order to release the lien of Buyer upon the borrower's Mortgaged Property.

    b.    The Seller shall immediately provide notice to the Buyer, by fax or telephone, in the event that notice of rescission is received.

    c.    Upon exercise of a right of rescission by a borrower, the Seller shall within two (2) business days after it receives notice of the rescission by a borrower, pay to borrower all amounts required in order to comply fully and completely with the law or regulation granting a right of rescission, including but not limited to application fees, commitment fees, title search fees, appraisal fees, credit report fees or costs and counsel fees, with the exception of those amounts which Buyer has received and is obligated to return pursuant to paragraph (a) of this section.

d.       In the event loan proceeds have been disbursed by the Buyer prior to receipt by Buyer
of the borrowers election to exercise a right of rescission, the Seller will make every
effort to recover those proceeds from the payee(s).

## ARTICLE 10

10.01 Buyer is purchasing the Loan(s) without recourse and warranties, other than the representations,
warranties, and covenants of Seller as stated in this Agreement, and Seller is not a guarantor of the
Obligor(s), their assignees or successors in interest.

## ARTICLE 11
### RELIANCE BY BOTH

Seller acknowledges that Buyer, in purchasing Loans from Seller, will rely upon Loan File
documents and information prepared or provided by Seller including but not limited to customer credit data,
account ledger cards, real property appraisals, title insurance policies, insurance policies protecting the
collateral and other data and information provided to Buyer by Seller including but not limited to the
representations, covenants and warranties contained herein, irrespective of any inspection or knowledge on
Buyer's part of any such data and information.

## ARTICLE 12
### PERFORMANCE AND POWER OF ATTORNEY

In order to enforce Buyer's rights hereunder, Seller shall, upon the request of Buyer or its assigns, do
and perform or cause to be done and performed, every reasonable act and thing necessary or advisable to
put Buyer in a position to enforce the payment of the loans and to carry out the intent of this Agreement,
including the execution of a limited power of attorney and, the recordation of additional documents
including separate endorsements and assignments upon request of Buyer.

## ARTICLE 13
### BROKERAGE AND OTHER FEES
### THIRD PARTY

Seller hereby assumes responsibility for any and all brokerage or Finder's fees or agent's
commissions or any similar payments whatsoever called, due on any transaction between Seller and Buyer
or other like payments, that may or can be claimed as a result of this Agreement, it being understood that
the purchase price of the Loans purchased by Buyer from Seller as set forth in Article 3 herein is the full
and complete amount that Buyer is obligated to pay for the Loans, Buyer represents that it has not incurred
any obligation for broker's commissions or finder's fees in connection with this transaction.

## ARTICLE 14
### CORPORATE ACKNOWLEDGEMENT

If applicable, Seller has delivered to Buyer an original certificate of resolution of the Board of
Directors of Seller, authorizing Seller to enter into this Agreement and any and all transactions contemplated
hereunder and stating that said resolution is in full force and effect as of the date of the Agreement.

## ARTICLE 15
### NOTICES

Notices which are required to be given under this Agreement shall be in writing and shall be addressed and served personally or sent by prepaid registered or certified mail as follows:

IF TO BUYER:

GF MORTGAGE CORP.
4 Campus Drive
Parsippany, NJ 07054

IF TO SELLER:

## ARTICLE 16
### GENERAL

16.01   This Agreement constitutes the entire Agreement between the parties hereto and supersedes any and all representations, promises, and statements, oral or written, made in connection with the subject mater of this Agreement an the negotiation hereof, and no such representation, promise, or statement not written herein shall be binding on the parties. This Agreement may not be varied or altered nor its provisions waived except by an agreement in writing executed by duly authorized agents of both parties. This Agreement shall be binding upon and inure to the benefit of the parties and each of their respective successors and assigns.

16.02   This Agreement shall be interpreted, construed, and enforced in accordance with the laws of the State of New Jersey.

16.03   Any provision of this Agreement which is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

16.04   Captions are for reference only and are not to be considered as defining or limiting in any way the scope or intent of the provisions hereof.

16.05   The waiver of any breach, term, provision or conditions of this Agreement shall not be construed to be a waiver of any other or subsequent breach, term provision or conditions. All remedies afforded by this Agreement for a breach hereof shall be cumulative; that is, in addition to all other remedies provided for herein or at law or in equity,

16.06   This agreement may be cancelled by either party by written notice and such cancellation shall be immediately effective as to future transactions. Upon cancellation all loan files for Loans not approved for purchase shall be returned immediately to seller without further liability to Buyer.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date written on page 1.

GF MORTGAGE CORP.
BUYER
BY

ARTHUR E. GILGAR
VICE PRESIDENT

SELLER
BY

Robert W Skowrenski II, Pres.

Exhibit E

# THIS JOINT VENTURE AGREEMENT

made this

BETWEEN:                                             April 1          ,1997

AND:                    CAPITAL ASSETS PROPERTY MANAGEMENT &
                        INVESTMENT CO., LLC  (Hereinafter "Capital Assets")
                        10 WEST BERGEN PLACE, SUITE 201
                        RED BANK, NEW JERSEY 07701

WITNESSETH THAT the parties wish to enter into a form of Joint venture to be known as,

and CAPITAL ASSETS, a Joint Venture, (also designated herein as the "Business"), and to be located at:

10 WEST BERGEN PLACE, SUITE 201
RED BANK, NEW JERSEY 07701

NOW THEREFORE, IT IS AGREED AS FOLLOWS:

1.     The function of Capital Assets and its contribution to the Joint Venture is to manage, improve, maintain and rent real property in the State of New Jersey as per this agreement. The function and contribution of                        is to contribute his good name and credit to the Joint Venture.

2.     The parties recognize that all data of the business and any other information are the property of the partnership and may be confidential in nature.  This information will not be disclosed to the public indiscriminately.

3.     The parties shall divide the profits (or losses) of the business in the following proportion or ratio:

....on the basis of this information, any an election you obtain the information, but are encouraged to do so. The law provides that a Lender may ... read and act on the basis of value .... in connection, if you do not wish to furnish the above information, please check .... under Federal regulations the Lender is ....

01/1997   12:63     904-747-97.10          C.PITN  A .SET .                        PACE   04

Capital Assets      60%

40%

The same ratio shall specifically be reflected in all deeds and other evidence of title; i.e.,
Capital Assets as to a 60% interest and                              as to a  40% interest,
pursuant to agreement dated April 1, 1997          and designated as              and
CAPITAL ASSETS, a Joint Venture

4.      In the event that either party wishes to buy out the interest of the other party on
any particular property, the same 60-40 ratio shall be used to determine the value.
However, Capital Assets shall have the sole right to retain a licensed appraiser for the
purpose of setting the value

5.      The parties understand that Capital Assets shall have total control of all
properties, including the absolute right to obtain financing, and to determine what
properties are bought and sold, for what price, and under what terms and conditions.
They shall cooperate with each other in order to further the purposes of the Joint Venture.

6.                                      shall have the right to attend all closings where property
is being purchased and receive a minimum of $1,000.00 per transaction from Capital
Assets for a minimum of four (4) closings.

7.      None of the parties hereto shall sell, convey, pledge, encumber or assign their
interest in the Joint Venture to any other person or entity

8.      By separate instrument of even date herewith,                              shall
execute a durable POWER OF ATTORNEY to Capital Assets giving the latter full
authority to sell any property and to sign any deeds or other papers consistent with the
terms of the within agreement

CAPITAL  ASSETS

PAGE  05

9.    The parties acknow __  that                                  represents the business entity

known as Capital Assets and __                                    The said

__ specifically has been inf__ ned of his right to retain separate counsel of his own

choosing and at his own expe__

10.    This agreement shall take effect on the date first above written.

IN WITNESS WHEREOF the parties have signed this agreement on the indicated date.

> CAPITAL ASSETS PROPERTY
> MANAGEMENT & INVESTMENT CO.,
> LLC.

By

Exhibit F

RECORD & RETURN TO:

074451

**Coastal Title Agency, Inc.**
21 West Main Street • PO Box 740
Freehold, NJ 07728
1-800-521-0378

Prepared by: *[signature]*
LORRAINE E. KING

# DEED

COUNTY OF MONMOUTH
CONSIDERATION _____
RTF _____ add'l RTF _____
DATE _____ BY _____

## This Deed, made this 8    day of NOVEMBER, 1996

**Between**
located at                                                herein  designated  as
Grantor

**And**                          &   CAPITAL  ASSESTS  PROPERTY  MANAGEMENT  &
INVESTMENT, CO., INC.

, AS TO 40% INTEREST AND CAPITOL ASSESTS
PROPERTY MANAGEMENT & INVESTMENT, CO., INC. AS TO 60%
INETEREST

located at 10 WEST BERGEN PLACE, SUITE 104, RED BANK, NEW JERSEY  07701 herein
designated as the Grantee;

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

**Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the
property described below to the Grantee.  This transfer is made for the sum of  **UNDER ONE
HUNDRED DOLLARS.**  The Grantor acknowledges receipt of this money.

**Tax Map Reference.**  (*N.J.S.A.* 46:15-1.1)  Municipality of **CITY OF ASBURY PARK**
   Block                                   Account No.

____ No Property tax identification number is available on the date of this Deed.  (Check this box
if applicable.)

**Property.**  The Property consists of the land and all the buildings and structures on
the land in the **CITY of ASBURY PARK** County of MONMOUTH the State of New
Jersey, and is commonly known as                          , ASBURY PARK,
 **NEW JERSEY**  The legal description is:

**SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION.**

THE GRANTOR WILL WARRANT, SECURE AND FOREVER DEFEND THE TITLE
TO THE SUBJECT PROPERTY.

A Reliance Group Holdings Company.

### TITLE INSURANCE COMMITMENT

Commitment No.

File No. CT-

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the
City of Asbury Park, County of Monmouth and state of New Jersey,
being more  particularly described as follows:

NOTE:  Being Lot(s)     Block     Tax Map of the City of Asbury
Park.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660   (800) 521-0378   (908) 775-5543   FAX #(908) 308-1881

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997037762
RECORDED ON
Apr 07, 1997
4:14:24 PM
BOOK:OB-5588 PG:625
Total Pages: 4

COUNTY RECORDING    $22.00
FEES
DEDICATED TRUST      $2.00
FUND COMMISSION
TOTAL               $24.00

located in    MONMOUTH COUNTY                          (Street Address, Municipality, County)

_____ and annexed hereto.

**(2) CONSIDERATION** (See Instruction #6)

Deponent states that, with respect to deed hereto annexed, the actual amount of money and the monetary value of any other thing of value constituting the entire compensation paid or to be paid for the transfer of title to the lands, tenements or other realty, including the remaining amount of any prior mortgage to which the transfer is subject or which is to be assumed and agreed to be paid by the grantee and any other lien or encumbrance thereon not paid, satisfied or removed in connection with the transfer of title is $ _____

**(3) FULL EXEMPTION FROM FEE**      Deponent claims that this deed transaction is fully exempt from the Realty Transfer Fee imposed by c.49, P.L. 1968, for the following reason(s): Explain in detail. (See Instruction #7.) Mere reference to exemption symbol is not sufficient.

CONSIDERATION UNDER ONE HUNDRED DOLLARS

_____

**(4) PARTIAL EXEMPTION FROM FEE**      *NOTE: All boxes below apply to grantor(s) only. ALL BOXES IN APPROPRIATE CATEGORY MUST BE CHECKED. Failure to do so will void claim for partial exemption. (See Instructions #8 and #9)*

Deponent claims that this deed transaction is exempt from the increased portion of the Realty Transfer Fee imposed by c.176, P.L. 1975 for the following reason(s):

**a) SENIOR CITIZEN** (See Instruction #8)
- ☐ Grantor(s) 62 yrs. of age or over.*
- ☐ One or two-family residential premises.
- ☐ Owned and occupied by grantor(s) at time of sale.
- ☐ No joint owners other than spouse or other qualified exempt owners.

**b) BLIND** (See Instruction #8)
- ☐ Grantor(s) legally blind.*
- ☐ One or two-family residential premises.
- ☐ Owned and occupied by grantor(s) at time of sale.
- ☐ No joint owners other than spouse or other qualified exempt owners.

**DISABLED** (See Instruction #8)
- ☐ Grantor(s) permanently and totally disabled.*
- ☐ One or two-family residential premises.
- ☐ Receiving disability payments.
- ☐ Owned and occupied by grantor(s) at time of sale.
- ☐ Not gainfully employed.
- ☐ No joint owners other than spouse or other qualified exempt owners.

*IN THE CASE OF HUSBAND AND WIFE, ONLY ONE GRANTOR NEED QUALIFY.

**c) LOW AND MODERATE INCOME HOUSING** (See Instruction #8)
- ☐ Affordable According to H.U.D. Standards.
- ☐ Meets Income Requirements of Region.
- ☐ Reserved for Occupancy.
- ☐ Subject to Resale Controls.

**d) NEW CONSTRUCTION** (See Instruction #9)
- ☐ Entirely new Improvement.
- ☐ Not previously used for any purpose.
- ☐ Not previously occupied.

Deponent makes this Affidavit to induce the County Clerk or Register of Deeds to record the deed and accept the fee submitted herewith in accordance with the provisions of c. 49, P.L. 1

Subscribed and Sworn to before me

this    8th

day of    November    , 19 96

SUZANNE GRIESER
Notary Public of New Jersey
My Commission Expires Jan. 28, 1998

Name of Deponent (sign above line)

Address of Deponent

Name of Grantor (type above line)

Address of Grantor at Time of Sale.

| FOR OFFICIAL USE ONLY This space for use of County Clerk or Register of Deeds. |
|---|
| Instrument Number _____ County _____ |
| Deed Number _____ Book _____ Page _____ |
| Deed Dated _____ Date Recorded _____ |

**IMPORTANT - BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE HEREOF.**
This form is prescribed by the Director, Division of Taxation in the Department of the Treasury, as required by law, and may not be altered or amended without the approval of the Director.
ORIGINAL — White copy to be retained by County.
DUPLICATE — Yellow copy to be forwarded by County to Division of Taxation on partial exemption from fee (N.J.A.C. 18:16—8.12).
TRIPLICATE — Pink copy is your file copy.

WHITE AND YELLOW COPIES MUST BE SUBMITTED WITH DEED TO COUNTY RECORDING OFFICER

### *AFFIDAVIT OF SERVICE BY MAIL*

STATE OF NEW YORK     )
                             ) ss.:
COUNTY OF NEW YORK   )

        ADELE M. TINARO, being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and works in Manhattan, New York. That on the 13th day of January, 1998, deponent served a Notice of Motion and Supporting Affidavit to Stay all Proceedings F.R.Civ,. P. 6(b), 26(c) and Memorandum of Law upon:

The United States Attorney
District of New Jersey
970 Broad Street
Newark, New Jersey 07102

DRAZIN & WARSHAW, P.C.
25 Reckless Place
P.O. Box 8909
Red Bank, New Jersey 07701-8909

RICHARD L. FRIEDMAN, ESQ.
GIORDANO, HALLERAN & CIESLA
P.O. BOX 190
125 Half Mile Road
Middletown, New Jersey 07748

MARK W. CATANZARO, ESQ.
513 South Lenola Road
Moorestown, New Jersey 08057

FOX, ROTHSCHILD, O'BRIEN, & FRANKEL, LLP
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648-2311

AUGUST W. FISCHER, ESQ.
53 Pequot Road
Ringwood, New Jersey 07456

LATHAM & WATKINS
One Newark Center, 16th Floor
Newark, New Jersey 07101-3174

CRUMMY, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE
One Riverfront Plaza
Newark, New Jersey 07102-5497

DAVID KOTT, ESQ.
MCCARTER & ENGLISH
Gateway Four
Newark, New Jersey 07102

CHARLES J. ULIANO, ESQ.
CHAMLIN, ROSEN & ULIANO
268 Norwood Avenue
West Long Branch, New Jersey 07764

MICHAEL D. SCHOTTLAND, ESQ.
36 West Main Street
Freehold, New Jersey 07728

MILES FEINSTEIN, ESQ.
1135 Clifton Avenue
Clifton, New Jersey 07013
Attorney for Defendant Lawrence M. Cuzzi

RICHARD DiBENEDETTO
384 Greenwich Street
Bergenfield, New Jersey 07621

JAMES R. BROWN
1089 Cedar Avenue
Union, New Jersey 07083

ANTHONY M. CICALESE, ESQ.
72 Eagle Rock Avenue
Building 2
East Hanover, New Jersey 07036

COASTAL TITLE INSURANCE
21 West Main Street
Freehold, New Jersey 07728

THOMAS BRODO
139 B Fort Lee Road
Teaneck, New Jersey 07660

RONALD J. PIERSON
Pierson Appraisals
2 Maryland Drive
Jackson, New Jersey 08527

by depositing a true copy of same enclosed in post-paid sealed wrappers, properly addressed, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

ADELE M. TINARO

Sworn to before me this
13th day of January, 1998

_____
Notary Public

RICHARD A. FINKEL
Notary Public, State of New York
No. 24-4645961
Qualified in Nassau County
Commission Expires March 30, 19__