NOT FOR PUBLICATION

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

APR 28 1998

AT 8:30 .............. M
WILLIAM T. WALSH
CLERK

WALSH SECURITIES, INC.,

    Plaintiff,

v.

CRISTO PROPERTY MANAGEMENT,
LTD., et als.,

    Defendants.

Civ. No. 97-3496 (WGB)

O P I N I O N

APPEARANCES:

LATHAM & WATKINS
One Newark Center, 16th Floor
Newark, NJ 07101-3174
By:  Michael Chertoff, Esq.
     Geoffrey S. Berman, Esq.
     Robert A. Magnanini, Esq.
Attorneys for Plaintiff Walsh Securities

MEISSNER, KLEINBERG & FINKEL
275 Madison Avenue, Suite 1000
New York, NY 10016
By:  Ronald M. Kleinberg, Esq.
     Richard A. Finkel, Esq.
Attorneys for Defendant Cristo Property Management, DEK Homes,
    Oakwood Properties and William J. Kane

GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE
One Riverfront Plaza
Newark, NJ 07102
By:  Lawrence S. Lustberg, Esq.
     James I. O'Hern, Esq.
Attorneys for Defendant Stanley Yacker

ENTERED

```
DRAZIN & WARSHAW, PC
25 Reckless Place
P.O. Box 8909
Red Bank, NJ 07701-8909
By:  Ronald L. Reisner, Esq.
Attorneys for Defendants Capital Assets Property Management and
     Gary Greiser

KAUFF AND MENNA
170 Broad Street
P.O. Box 762
Red Bank, NJ 07701
By:  Pasquale Menna, Esq.
     Matthew P. Podracky, Esq.
Attorneys for Defendant Roland J. Pierson

AUGUST W. FISCHER, ESQ.
53 Pequot Road
Ringwood, NJ 07456
Attorney for Defendant Richard Calanni

ANSELL, ZARO, GRIMM & AARON
1500 Lawrence Avenue, CN 7807
Ocean, NJ 07712
By:  James Aaron, Esq.
     and
METHFESSEL AND WERBEL
1308 Pierce
Rahway, NJ 07065
By:  Paul R. Ferreira, Esq.
Attorneys for Defendant Coastal Title Insurance

McCARTER & ENGLISH
Gateway Four
Newark, NJ 07102
By:  Edward Fanning, Esq.
Attorneys for Defendant Commonwealth Land Title Ins. Co.

GIORDANO, HALLERAN & CIESLA
125 Half Mile Road
P.O. Box 190
Middletown, NJ 07749
By:  Richard L. Friedman, Esq.
Attorneys for Defendant Michael Alfieri
```

CHAMLIN, ROSE & ULIANO
268 Norwood Avenue
West Long Branch, NJ 07764
By: Kenneth Chamlin, Esq.
Attorneys for Anthony D'Apolito and DAP Consulting

MILES FEINSTEIN, ESQ.
1135 Clifton Avenue
Clifton, NJ 07013
Attorney for Defendant Lawrence M. Cuzzi

ANTHONY CICALESE, ESQ.
72 Eagle Rock Avenue
Building 2
East Hanover, NJ 07926
Defendant Pro Se

SCHOTTLAND, MANNING, ROSEN, CALIENDO & MUNSON
36 West Main Street
Freehold, NJ 07728
By: Michael D. Schottland, Esq.
Attorneys for Defendants National Home Funding and Robert Skowrenski, II

FAITH S. HOCHBERG, UNITED STATES ATTORNEY
970 Broad Street
Newark, NJ 07102
By: Robert M. Hanna, Esq.

OTHER PARTIES:

RICHARD DIBENEDETTO
384 Greenwich Street
Bergenfield, NJ 07621
Defendant Pro Se

JEROME BALLAROTTO, ESQ.
143 White Horse Avenue
Trenton, NJ 08610
      and
MARK W. CATANZARO
Blason IV - Suite 208
513 S. Lenola Road
Moorestown, NJ 08057
Attorneys for Defendant Richard Pepsny

FOX, ROTHSCHILD, O'BRIEN & FRANKEL, LLP
Princeton Corporate Center
997 Lenox Drive
Building 3
Lawrenceville, NJ 08648-2311
By: Jon C. Martin, Esq.
Attorneys for Nations Title Insurance Company and Fidelity
National Title Insurance Company

THOMAS G. BRODO
139 B Fort Lee Road
Teaneck, NJ 07666
Defendant Pro Se

JAMES R. BROWN
1090 Cedar Avenue
Union, NJ 07083
Defendant Pro Se


BASSLER, DISTRICT JUDGE:

This matter comes before the Court upon the motion of several Defendants to stay the proceedings in this matter pending the outcome of related criminal investigations. Jurisdiction in this Court is pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c). For the reasons set forth below, Defendants' motion is **granted** and all interrogatories and depositions in this matter are **stayed until November 1, 1998**.

I.   BACKGROUND

This lawsuit arises out of a series of allegedly fraudulent real estate transactions. According to Plaintiff Walsh Securities, Inc. ("Walsh"), each fraudulent transaction involved the purchase of a property at a low price that was immediately

4

"flipped" or resold at a much higher price.  In a typical transaction, Defendant William Kane ("Kane"), through his company Cristo Property Management ("Cristo"), purchased a house in a low income neighborhood for a low price.[1]  (Compl., ¶ 57(a).)  Cristo or its principals then located a willing buyer.  (Id. at ¶ 57(b).)  The property was appraised by licensed appraisers (including Defendants Richard Calanni, Richard DiBenedetto, James Brown, Thomas Brodo, or Roland Pierson) at an inflated value.  (Id. at ¶ 57(d).)

A mortgage loan application for the buyer was prepared by Defendant National Home Funding ("NHF") or Cristo and submitted to Plaintiff Walsh Securities, Inc. ("Walsh") for financing.  The applications were submitted through Anthony D'Apolitto ("D'Apolitto"), a Walsh employee.  Walsh asserts that the application contained false information, including the fraudulently inflated appraisal of the property's value, signed leases indicating that the property would be income-producing, statements that the buyer made a down payment, statements that the seller (Cristo) had provided a second mortgage on the property and representations that the buyer would own the entire property, among other things.  These false statements, according to Walsh, were designed to make the loan seem like a better

---

[1] Kane is also a principal of DEK Homes and Oakwood Properties, two other companies that are allegedly involved in the fraud.

credit risk and to thereby induce Walsh into approving the loan. (Id. at ¶ 57(e).) Walsh asserts that in exchange for transmitting the applications, D'Apolitto, through his company DAP Consulting ("DAP"), received cash payments totaling approximately $100,000 from Kane, through Cristo, and from Defendant Robert Skowrenski II, through NHF.

Walsh alleges that on the day of closing, the closing attorney collected and transmitted the proceeds of the mortgage loans, knowing that the preconditions to the loan had not been met. (Id. at ¶ 57(g).) The closing attorney also recorded the various deeds associated with the transaction. (Id. at ¶ 57(h).) Walsh asserts that once the transaction was complete, the buyer secretly transferred 60% of the ownership in the property to Defendant Capital Assets, without notifying Walsh. According to Walsh, this type of reconveyance is a default of the terms of its mortgage loan, and Walsh would not have financed the mortgage loan had it known of the plan to reconvey the interest in the property. (Id. at ¶ 57(I).)

According to Walsh, Capital Assets pooled rental income from several properties to meet its mortgage obligations on each property. (Id. at ¶ 57(j).) Walsh alleges that this same pattern of fraud occurred over two hundred times, with some variations. Some of the owners of these properties have now allegedly become delinquent in payments under the mortgage loans.

6

Walsh claims that due to the false appraisals, Walsh will be unable to recover the full amount of its loans if it forecloses on these properties. (<u>Id.</u> at ¶ 57(m).)

Walsh filed this suit alleging RICO violations against the Defendants (Cristo, NHF, Capital Assets, their principals, the appraisers, closing attorneys, title agents and insurance companies). Walsh also asserts common-law fraud claims against all defendants and breach of contract claims against NHF and the title insurers.

The United States Attorney's Office is also investigating whether these transactions amounted to criminal conduct. Several defendants have confirmed that they are targets of this investigation, including defendants Stanley Yacker ("Yacker", one of the closing attorneys), Cristo, DEK Homes, Oakwood Properties and William Kane. These defendants have moved for a stay of the civil proceedings pending the outcome of the criminal investigation. The individuals argue that they cannot fully participate in civil discovery and protect their Fifth Amendment rights. Defendants Roland Pierson, Richard Pepsny, D'Apolitto, DAP Consulting, Anthony Cicalese, Capital Assets and Gary Grieser (a principal of Capital Assets) join in the motion. Along with Walsh, Defendants NHF and Robert Skowrenski II oppose any stay of this action.

The Court heard oral argument on the motion on March 30,

1998. The United States Attorney's Office, although not a party to this matter, participated in oral argument. The Government has also submitted a sealed, <u>in camera</u> affidavit elaborating on the status of the criminal investigation. The Court has also considered the supplemental letter memoranda submitted by the parties.

II.  <u>DISCUSSION</u>

A court has discretion to stay a case if the interests of justice require it. <u>United States v. Kordel</u>, 397 U.S. 1, 12 n.27 (1970). A stay of a civil case where there are pending criminal proceedings is not constitutionally required, however, it may be warranted in certain circumstances. <u>Trustees of Plumbers Pension Fund v. Transworld Mechanical, Inc.</u>, 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995).

A stay of a civil case is an "extraordinary remedy." <u>Weil v. Markowitz</u>, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987). The factors to be considered in deciding whether to grant a stay include: 1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; 4) the private interests of and burden on defendants; 5) the interests of the court; and 6) the

public interest. <u>Transworld</u>, 886 F. Supp. at 1139. The Court will address each of these factors in turn.

1. <u>Similarity of Issues</u>

The similarity of issues has been termed "the most important issue at the threshold" in determining whether or not to grant a stay. Milton Pollack, <u>Parallel Civil and Criminal Proceedings</u>, 129 F.R.D. 201, 203 (1989). There is no dispute that the civil and criminal cases here involve many of the same issues arising out of these real estate transactions. According to Yacker's attorney, the Government is investigating whether any of the real estate transactions were fraudulent. (Lustberg Aff., ¶ 3.) This is essentially the same allegation made by Walsh in its civil complaint. Therefore, this factor weighs in favor of a stay.

2. <u>Stage of Parallel Criminal Proceeding</u>

The stage of the parallel criminal proceeding may also substantially affect the determination of whether a stay is warranted:

> The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned. The potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act.

<u>Parallel Proceedings</u>, 129 F.R.D. at 203. On the other hand, because there is less risk of self-incrimination, and more

9

uncertainty about the effect of a delay on the civil case, *pre*indictment requests for a stay are generally denied. United States v. Private Sanitation Indus. Ass'n, 811 F. Supp. 802, 805 (E.D.N.Y. 1992).

However, each case must be evaluated individually. Volmar Distributors, Inc. v. New York Post Co., 152 F.R.D. 36, 38 (S.D.N.Y. 1993). It is "still possible" to obtain a stay, even though an indictment or information has not yet been returned, if the Government is conducting an active parallel criminal investigation. Parallel Proceedings, 129 F.R.D. at 204. In this case, no indictments have been handed down, but the Government has executed search warrants and issued subpoenas to several defendants. Defendants have also been informed that they are targets of the criminal investigation. (Lustberg Aff., ¶ 3.) The Government has indicated to the Court that the investigation is continuing.

Although no indictments have been returned, this action presents a strong case for a stay. The Court believes that answers and document discovery present little danger of self-incrimination.[2] However, the defendants have indicated that they will have to assert their Fifth Amendment privileges extensively, especially in interrogatories and depositions. The Court agrees

---

[2] The Government has also indicated to the Court that Fed. R. Civ. P. 26 document disclosures would not interfere with its investigation.

that interrogatory and deposition discovery poses a substantial risk of self-incrimination.

In addition to the Fifth Amendment problems, the defendants (who have filed numerous cross-claims against each other) may be wary of revealing criminal defense strategy to their potential codefendants. The Government has expressed concern that interrogatory and deposition discovery in this matter could harm its investigation by disclosing testimony of potential government witnesses in the criminal action.

Although counsel for Walsh asserted at oral argument that interrogatories could be carefully drafted to avoid Fifth Amendment problems, the Court is not persuaded that this is a feasible alternative to a stay. Even at oral argument, counsel differed sharply on what types of questions would raise Fifth Amendment concerns. For the Court, the debate foreshadowed the many disagreements that will undoubtedly arise to complicate interrogatory discovery.

Counsel for Walsh conceded that depositions would present serious Fifth Amendment concerns, but noted that depositions are not scheduled to begin until October 1998. By that time, individual defendants could have more information about the extent of the Government's investigation and their own exposure to criminal liability. Furthermore, Walsh pointed out that there are numerous defendants who are not faced with self-incrimination

problems.

It is true that the circumstances of this case could change in six months, although it seems unlikely that the criminal investigation into these complex matters would be completed in such a short time. The Fifth Amendment (and other) concerns, however, can be reevaluated at that time. The Court finds that although this case is still at the preindictment stage, a stay of at least some discovery is warranted.

3. Prejudice to Plaintiff

Walsh asserts that it will be prejudiced by a delay because it continues to suffer financial losses. It further alleges that a delay would cause memories to fade and assets to dissipate. A stay could push back the resolution of the civil case by several months or even years. Delays in civil cases are fairly common, however. Walsh has asserted no injury that is particularly unique. Walsh's financial losses are undoubtedly continuing, as with any plaintiff during the pendency of a lawsuit. However, Walsh is protected from monetary harm caused by the delay by its ability to obtain interest as part of its ultimate judgment.

As for the risk of dissipating assets, this case is distinguishable from Citibank, N.A. v. Hakim, 1993 WL 481335, at *2 (S.D.N.Y. 1993), cited by Walsh, in which the court granted a preindictment stay. In Hakim, several defendants had already fled the country with their assets; thus there was a strong risk

12

that the plaintiff would not be able to recover on a judgment. In this case, however, there are no allegations that any of the principals are leaving the country or otherwise attempting to gain an unfair advantage by seeking a stay. The absence of prejudice to Walsh from a delay of the case thus weighs in favor of a stay.

### 4. Burden on Defendants

The Court has already alluded to the burden on the defendants. The individual defendants in this action who are targets of the grand jury investigation must choose between waiving their Fifth Amendment rights and defending themselves in the civil lawsuit or asserting the privilege and probably losing the civil case. Although the Supreme Court has held that it is not unconstitutional to force a defendant into this choice, see Baxter v. Palmigiano, 425 U.S. 308, 318-19 (1976), a court may nevertheless exercise its discretion to stay the civil case in the interests of justice. Brock v. Tolkow, 109 F.R.D. 116, 119 (E.D.N.Y. 1985). In this case, staying all answers, interrogatory and deposition discovery until November 1, 1998 avoids placing the defendants in this position.

### 5. Interests of the Court

The Court also has an interest in judicial efficiency in terms of managing its caseload. A stay in this type of case is often relatively indefinite, because there is no way to predict

when the criminal investigation would end. One court has concluded that this uncertainty weighs against a stay: "[I]t is unrealistic to postpone indefinitely the pending action until criminal charges are brought or the statute of limitations has run for all crimes conceivably committed by [the defendants]." Hakim, 1993 WL 481335, at * 2.

However, the Court also has an interest in resolving individual cases efficiently. Without a stay, interrogatory and deposition discovery would likely cause inefficiency, because several defendants will be forced to assert Fifth Amendment privileges. Not only would this burden the Magistrate Judge and this Court with deciding a constant stream of privilege issues, but if some defendants were forced to assert the privilege while others were not, it would be difficult or impossible to fairly apportion liability because of the differing factual record among defendants.

Although, as the Court has noted, it is not unconstitutional to force defendants into this choice, the Court finds that the strong potential for an unjust result outweighs the efficiencies gained by allowing the case to proceed. Furthermore, the Hakim court's concern about an indefinite stay may be alleviated by allowing the parties the petition the Court to lift or modify the stay if there is a change in circumstances warranting it. See Brock v. Tolkow, 109 F.R.D. 116, 121 (E.D.N.Y. 1985).

6. <u>Public Interest</u>

There is no harm to the public interest in granting a stay of the civil case. Courts have denied stays where the civil case, brought by a government agency, was intended to protect the public by halting the distribution of mislabeled drugs, <u>see</u> <u>United States v. Kordel</u>, 391 U.S. 1, 11 (1970), or the dissemination of misleading information to the investing public, <u>see</u> <u>Securities and Exchange Commission v. Dresser Indus.</u>, 628 F.2d 1368, 1377 (D.C. Cir. 1980). In fact, a stay in this case would benefit the public by allowing the Government to conduct a complete, unimpeded investigation into potential criminal activity. In this case, there is no tangible harm to the public from these alleged frauds that could not be remedied by the criminal investigation. Therefore, the public interest weighs in favor of a stay.

III. <u>CONCLUSION</u>

For the foregoing reasons, the Court **grants** Defendants' motion and **stays** all interrogatory and deposition discovery in this action until November 1, 1998. Any party who has not yet answered the Complaint shall do so within 30 days. An appropriate order follows.

WILLIAM G. BASSLER, U.S.D.J.

Date: *April 28, 1998*

15