## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, DEK HOMES OF NEW JERSEY, INC., OAKWOOD PROPERTIES INC., NATIONAL HOME FUNDING, INC., CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT CO., INC., CAPITAL ASSETS PROPERTY MANAGEMENT, L.L.C., WILLIAM I. KANE, GARY GRIESER, ROBERT SKOWRENSKI, II, RICHARD CALANNI, RICHARD DIBENEDETTO, JAMES R. BROWN, THOMAS BRODO, RONALD J. PIERSON, STANLEY YACKER, ESQ., MICHAEL ALFIERI, ESQ., RICHARD PEPSNY, ESQ., ANTHONY M. CICALESE, ESQ., LAWRENCE M. CUZZI, ANTHONY D'APOLITO, DAY CONSULTING, INC., COMMONWEALTH LAND TITLE INSURANCE COMPANY, NATIONS TITLE INSURANCE OF NEW YORK INC., FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, COASTAL TITLE AGENCY, and STEWART TITLE GUARANTY COMPANY, IRENE DiFEO, DONNA PEPSNY, WEICHERT, REALTORS, AND VECCHIO REALTY, INC. D/B/A MURPHY REALTY BETTER HOMES and GARDENS, <br><br> Defendants. | Civil Action No. 97-3496 <br> Honorable William G. Bassler |

## BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12

**McCusker, Anselmi, Rosen,**
**Carvelli & Walsh, P.C.**
127 Main Street
Chatham, New Jersey 07928
(973)635-6300
Attorneys for Defendant
Weichert, Realtors

On the Brief:
John B. McCusker (JBM 1482)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT .................................................................... 1

STATEMENT OF FACTS ............................................................................ 3

LEGAL ARGUMENT .................................................................................. 7

A.    PLAINTIFF'S CLAIMS AGAINST WEICHERT ARE
      BARRED BY ANY COGNIZABLE STATUTE OF
      LIMITATIONS ........................................................................ 7

     1.    PLAINTIFF FAILED TO FILE ITS CLAIMS
          AGAINST WEICHERT IN A TIMELY FASHION ....... 7

     2.    THE STATUTE OF LIMITATIONS WAS NOT
          TOLLED DURING THE STAY OR THE
          ADMINISTRATIVE DISMISSAL ................................ 13

B.    THE COURT SHOULD STRIKE THE COMPLAINT
      BECAUSE PLAINTIFF HAS EXERCISED UNDUE DELAY
      IN AMENDING ITS CLAIMS ................................................. 17

CONCLUSION ........................................................................................... 19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Behrle v. Olshansky*, 966 F.2d 1458 (8th Cir. 1992) ................................................15

*Cinnaminson Township Board of Education v. U.S. Gypsum*, 552 F.
Supp. 855 (D.N.J. 1982) ....................................................................................8

*Cureton v. Nat'l Collegiate Athletic Asso.*, 252 F.3d 267 (3d Cir.
2001) ..........................................................................................................17, 18

*Doe v. Bobitt*, 698 F. Supp. 1415 (N.D.Ill. 1988) *reversed on other
grounds,* 881 F.2d 510 ....................................................................................15

*Electric Mobility Corp. v. Bourns Sensors/Controls, Inc.*,
87 F. Supp.2d 394 (D.N.J. 2000) ................................................................14,15

*Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir. 1991). ........................10,11

*Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir. 1976) ...........................10

*IP Innovation LLC v. Dell Computer Corp., No. 03-C-3245, 2004* ........................15

*J.C. Mamiye & Sons, Inc. v. Fidelity Bank*,
813  F.2d 610 (3d Cir. 1987) .....................................................................17,18

*Johnson v. Education Testing Serv.*, 754 F.2d 20 (1st Cir. 1985) ...........................13

*Lorenz v. CSX Corp.*, 1 F.3d 1406 (3d Cir. 1993) ...................................................18

*Matthews v. Kidder, Peabody Co*, 260 F.3d 239 (3d Cir. 2001) ..............................12

*Prudential Insurance Co. of Amer. v. U.S. Gypsum Co.*,
359 F.3d 226 (3d Cir. 2004)  ..........................................................................12

*Richman Brothers Records, Inc.*,
943 F.2d at 1438 (3d Cir. 1999) ...................................................................14,16

*Robinson v. Johnson*, 313 F.3d 128 (3d Cir. 2002) .....................................................9

*Rotella v. Woods*, 528 U.S. 549 (2000) .....................................................................12

*Shirsat v. Mutual Pharm. Co., Inc.*,
    1996 WL 273674, at 2 (E.D. Pa. May 15, 1996)............................................13

*Walsh Sec. Inc. v. Cristo Property Management, Ltd.*,
    7 F. Supp.2d 523 (D.N.J. 1998)...........................................................................6

*White v. Williams,* No. 94-C-3836, 1997 WL 261357
    (N.D. Ill. May 8, 1997)  ......................................................................................15

*USX Corp. v. Barnhart*, 395 F.3d 161 (3d Cir. 1993) .............................................18

## STATE CASES

*DiCosala v. Kay*, 91 N.J. 159 (1982)..................................................................10,11

*Gilborges v. Wallace*, 78 N.J. 342 (1978) ...............................................................10

*Lopez v. Swyer*, 62 N.J. 267 (1973) ..........................................................................8

*Martinez v. Cooper University Hospital Ctr.*,
    163 N.J. 45 (2000) ...........................................................................................14

## Preliminary Statement

Plaintiff, a now defunct mortgage company specializing in residential mortgage loans in the sub-prime market ("Plaintiff"), sat on its hands for nearly ten (10) years as the effects of at least 220 of its sub-prime 1995 and 1996 real estate "flipping transactions" unraveled before filing the within time-barred Third Amended Complaint ("Third Amended Complaint"). Multiple criminal, corporate and media investigations were commenced in late 1996 and early 1997, openly targeting Plaintiff as the architect of a massive real estate conspiracy to falsely inflate its mortgage portfolio and entice more profitable entities to merge with Plaintiff. Plaintiff's principal and National Sales Manager, Elizabeth Ann Demola ("Demola") was indicted on charges of conspiracy and wire fraud. She is currently awaiting trial. Additionally, Plaintiff's account manager Anthony D'Appolito ("D'Appolito") was indicted in December 1998 and pleaded guilty to fraud by wire and wire fraud. Moreover, Plaintiff's employee Kellie O'Neill ("O'Neill") was indicted in October 1999 and pleaded guilty to wire fraud. In all, more than a dozen individuals, integral to the Plaintiff's conspiracy, were either convicted or pleaded guilty in Federal District Court in connection with the land flipping transactions. Among them were former Weichert, Realtors ("Weichert") independent contractor Donna Pepsny

("Pepsny"), who was convicted by a federal jury in June 2002 in connection with the land flipping transactions, and non-Weichert employee, Defendant Irene Difeo ("DiFeo") also convicted by a federal jury.  At the same time, multiple media outlets devoted days of coverage to Plaintiff's scheme, highlighting the key players and precise locations of flipped properties, and detailing the activities of and motives behind each transaction.  The Asbury Park Press (the "Press") alone published at least forty (40) feature articles beginning in June 1997, a sampling of which is attached hereto to the Certification of John B. McCusker ("McCusker Cert.") as Exhibit A.

Nearly a decade later, with only convicted felons and defunct businesses at which to point the finger, Plaintiff amended its Complaint and named Weichert as a non-RICO defendant, alleging what can only be characterized as a cryptic, unrecognizable and implausible theory of liability. Plaintiff avers that Weichert is liable under the theory of respondeat superior for Pepsny's (its independent contractor) and DiFeo's (a non-Weichert employee and a non-Weichert independent contractor) involvement in Plaintiff's land flipping scheme.   Both Plaintiff and DiFeo, however, concede and admit respectively, that DiFeo had no relationship, employment or otherwise, with Weichert past 1990. *See e.g.*, McCusker Cert., Exhibit J at ¶ 26.  Weichert's nexus to Plaintiff's scheme is tenuous at best and clearly

arises out of Plaintiff's last ditch efforts to recoup losses it sustained when it knowingly and intentionally underwrote loans secured by false appraisals, false credit and false income information procured by Demola, D'Appolito, O'Neill and other individuals in Plaintiff's employ.   More importantly, Plaintiff's claims are time-barred.

Accordingly, Weichert makes this motion, in lieu of a response to Plaintiff's Third Amended Complaint, pursuant to Rule 12 subparts (b)(6), (e), (f) and (g) of the Federal Rules of Civil Procedure ("Federal Rules"), seeking that the Third Amended Complaint be dismissed because: (1) the causes of action alleged against Weichert are clearly time barred; and (2) Plaintiff has exercised undue delay in filing its Third Amended Complaint such that it should be without legal effect.

## Statement of Facts

The Press published the first segment of its 40-part "House of Cards" series on June 29, 1997. *See* McCusker Cert., Exhibit A.  The widely-circulated series extensively detailed the flipping of dilapidated, vacant homes and properties in depressed New Jersey neighborhoods, in which properties were purchased with sub-prime mortgages issued by Plaintiff and re-sold, in some instances on the same day, for two to eight times the initial purchase price.  The higher sales prices were based on inflated appraisals.

The Press outlined the intricate pattern and major players at the heart of the scheme and identified Plaintiff and its employees as the cornerstone for every sale.  On July 23, 1997, the Press  published the House of Cards segment, "A Guide to Understanding the Real Estate Game" in which it detailed Plaintiff's conspiracy with, among others: 1) the "Flipper," Defendant William J. Kane, owner of Defendant Cristo Property Management (the "Flipper");  2) the "Middle Man," Robert Skowrenski II, owner of National Home Funding Incorporated (the "Middle Man"); 3) appraisers and Defendants Roland Pierson ("Pierson"), Richard Calanni (Calanni), Richard DiBenedetto ("DiBenedetto") and James Brown ("Brown"); 4) lawyers and Defendants Stanley Yacker ("Yacker") and Richard Pepsny; and   5) the "Final Piece," Defendant Gary Grieser, President of Capital Assets Property Management and Investment Company (the "Final Piece").   Tellingly, the Press reported that Plaintiff's account manager who has since pleaded guilty to wire fraud and fraud by wire, D'Appolito, introduced the Flipper, the Middle Man, and the Final Piece and "three months later…the flipping pattern began." *See* McCusker Cert., Exhibit A.

At the same time, or before, the federal government launched an investigation into Plaintiff's transactions.  Additionally, it investigated

4

certain players highlighted in the "House of Cards" series. As demonstrated below, several indictments and guilty pleas followed. In August 1997, the New Jersey Department of Bank and Finance met resistance when it served a subpoena on the Flipper's business, Defendant Cristo Property Management. Still government investigations continued.

Approximately two (2) weeks after the Press began to run the "House of Cards" series, on or about July 17, 1997, Plaintiff chose to call the kettle black and filed racketeering claims against the Flipper, the Middle Man, the Final Piece, their respective companies and others -- the same people Plaintiff, through its accounts manager, brought together. *See* McCusker Cert., Exhibit B. Plaintiff did not name Weichert or any of its employees as parties to the action.

Plaintiff amended the Complaint on or about November 7, 1997 ("Amended Complaint"), but did not add Weichert or any of its employees as parties to the action. *See* McCusker Cert., Exhibit C. Plaintiff filed a Second Amended Complaint on February 11, 1998 ("Second Amended Complaint") and again decided not to name Weichert or any of its employees as parties. *See* McCusker Cert., Exhibit D.

Several of the more than two dozen defendants moved to stay the within proceedings pending the outcome of the government's criminal

investigations. *Walsh Sec. Inc. v. Cristo Property Mgmt, Ltd.*, 7 F. Supp.2d 523 (D.N.J. 1998). Plaintiff objected to a stay, asserting that any further delay "would cause memories to fade and assets to dissipate." *Id.* at 528. The Court rejected Plaintiff's argument and held that all factors weighed in favor of a stay. *Id.* On April 28, 1998, it ordered interrogatory and deposition discovery stayed and document discovery continued (the "Stay of Discovery"). *See* Exhibit E.

Two months later in July 1998, DiBenedetto, Pierson, Calanni and Brown were indicted and the Flipper signed a cooperative agreement with the government. Following two (2) more years of further criminal investigations, indictments and guilty pleas, on May 30, 2000, the Court ordered discovery further stayed and "administratively dismissed" the matter until "further order of the Court" (the "Administrative Dismissal"). *See* McCusker Cert., Exhibit F.

Seven (7) months later, in January 2001, Pepsny was indicted. *See* McCusker Cert., Exhibit G. In June 2002 a federal grand jury convicted her. At or about the same time that Pepsny was convicted, Plaintiff's own principal and National Sales Manager, Demola, was indicted for conspiracy and fraud. *See* McCusker Cert., Exhibit H. She is awaiting trial.

Notwithstanding Pepsny's conviction and Demola's indictment, Plaintiff still did not commence an action against Weichert.

On September 30, 2004 the Court lifted its Administrative Dismissal. Incredibly, Plaintiff still did nothing. Nearly four (4) months later, on January 28, 2005, eight (8) years after Press first identified Plaintiff as the architect of a scheme to defraud often first-time home buyers, four (4) years after Pepsny's indictment, three and a half (3 ½) years after the expiration of the most lenient of limitations periods, two and a half (2 ½) years after Pepsny's conviction, and two and a half (2 ½) years after Plaintiff's principal and National Sales Manager was indicted, Plaintiff, without seeking leave of court, filed the untimely Third Amended Complaint naming for the first time, Weichert as a non-RICO defendant in the within RICO matter.[1] *See* McCusker Cert., Exhibit I.

### Legal Argument

## A. PLAINTIFF'S CLAIMS AGAINST WEICHERT ARE BARRED BY ANY COGNIZABLE STATUTE OF LIMITATIONS.

### 1. Plaintiff Failed to File Its Claims Against Weichert in a Timely Fashion.

Statutes of limitation have long been enforced by courts to promote fairness to defendants and to spare the judiciary from litigating stale claims.

---

[1] As demonstrated below, it is entirely unclear what cause of action Plaintiff is asserting against Weichert.

*See Cinnaminson Township Board of Educ. v. U.S. Gypsum*, 552 F. Supp. 855, 861 (D.N.J. 1982); *Lopez v. Swyer*, 62 N.J. 267, 274 (1973). A dilatory plaintiff will not be rewarded for his decision to voluntarily sleep on his rights and commence an action subsequent to the expiration of the customary limitations period. *See id.* Rather, the untimely action must be dismissed.

As demonstrated above, Plaintiff voluntarily slept on its rights for many years as its land flipping scheme was exposed, before it improperly filed the Third Amended Complaint. Moreover, it is an understatement to characterize the allegations in the Third Amended Complaint, as to Weichert, as deficient. Quite literally, the Third Amended Complaint fails to state a claim upon which relief may be granted. Rather, it alleges a respondeat superior theory of liability, unaccompanied by a viable cause of action.[2]   Nonetheless, any conceivable cause of action Plaintiff may have

---

[2] The Third Amended Complaint states, "Defendant Weichert is, and, was at all relevant times, in an employment or agency relationship with DiFeo and Donna Pepsny who were licensed real estate brokers for Weichert.   The illegal and fraudulent acts and schemes committed by DiFeo and Donna Pepsny described above were committed in the scope of their employment or agency relationship with Weichert and were of a kind for which DiFeo and Donna Pepsny were engaged to perform for Weichert.   Weichert was reckless and/or failed to exercise reasonable care in supervising the actions of DiFeo and Donna Pepsny taken in the illegal and fraudulent acts and schemes described above.   Weichert is vicariously liable for the damages

against Weichert, supported by a theory of respondent superior, is barred by the applicable limitations period.[3]

Without waiving objections to the absence of any cause of action, Weichert assumes that Plaintiff's stream of consciousness pleading regarding respondeat superior liability is rooted in negligence because Plaintiff has not named Weichert as a RICO defendant. Paragraph 37 of the Third Amended Complaint provides, "Since early 1996 defendants Cristo Property, NHF, Capital Assets, Kane, Grieser, Skowrenski, Calanni, DiBenedetto, Brown, Brodo, Pierson, Yacker, Alteri, Richard Pepsny, Cicalese, Cuzzi, D'Apolito, DAP consulting, DiFeo, Donna Pepsny and Coastal Agency (collectively ('the RICO defendants') have engaged in a

---

and losses sustained by plaintiff as a result of the actions of DiFeo and Donna Pepsny." Third Amended Complaint at ¶¶ 108-111.

[3] Rule 12 of the Federal Rules of Civil Procedure demands that affirmative defenses be pleaded in the answer. *Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002). The Third Circuit, however, has adopted the "Third Circuit Rule" which recognizes that affirmative defenses may also be raised by way of a motion to dismiss. *Id.* at n.3 (*citing Hartman v. Times Inc.*, 166 F.2d 127, 139 (3d Cir. 1947)). Accordingly, a statute of limitations defense may be raised in a motion to dismiss where "the complaint facially shows non compliance with the limitations period and the affirmative defense appears on the face of the pleading. *Oshiver v. Levin Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1984); *see also, Robinson*, 313 F.3d at 134 ("if the bar is apparent on the face of the complaint, then it may afford a basis for dismissal under Rule 12(b)(6)").

pattern of racketeering activity…" *See* Exhibit I at ¶37. Plaintiff does not allege that Weichert took part in the alleged racketeering activity.

"The doctrine of respondeat superior has traditionally been thought to render the employer liable for torts of one of its employees only when the latter was acting within the scope of his or her employment." *DiCosala v. Kay*, 91 N.J. 159, 168 (1982); *Gilborges v. Wallace*, 78 N.J. 342, 351 (1978). Conduct may be considered within the scope of employment if: 1) it is of the kind that the employee is employed to perform; 2) it occurs substantially within the authorized time and space limits; and 3) it is actuated, at least in part, by a purpose to serve the master. Restatement (Second) of Agency § 228 (1957); *see also, id.* Claims relating to alleged wrongful acts must be commenced within two years of accrual. NJSA 2A: 14-2; *see also, Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 570 (3d Cir. 1976). The two-year period runs from the time plaintiff knew or should have known of the breach of duty owed to him by the defendant. *See id.* Failure to commence an action within the two year period is fatal to plaintiff's case. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991); *Martinez v. Cooper Univ. Hosp. Ctr.*, 163 N.J. 45 (2000).

Plaintiff avers that the alleged fraudulent activities that are the subject of the Third Amended Complaint were "of a kind for which [Pepsny was]

engaged to perform for Weichert." *See* Third Amended Complaint at ¶ 37. Unlike the RICO claims alleged against the other defendants, Plaintiff's claims against Weichert are subject to a two-year statute of limitations. *DiCosala*, 91 N.J. at 168. The Third Amended Complaint provides that the fraudulent schemes occurred as far back as early 1996. S*ee* Exhibit I at ¶37. Additionally, as reflected above, the Press exposed the land scheme on June 29, 1997. *See* Exhibit A. The latest that Plaintiff may claim that the statute of limitations could possibly have begun to run was on that day. It expired therefore, at the latest, on June 29, 1999, nearly six years before Plaintiff alleged any claim against Weichert. Plaintiff's respondeat superior theory is therefore untimely against Weichert. *See Genty*, 937 F.2d at 919; *see also*, *DiCosala*, 91 N.J. at 168.

It bears repeating that although Plaintiff took nearly a decade to initiate an action against Weichert, Plaintiff does not allege that Weichert committed any RICO violations. McCusker Cert., Exhibit I at ¶37. In the event, however, that Plaintiff attempts to shop for statutes of limitation and employ the RICO limitations period, Plaintiff's claims are still time-barred.

The statute of limitations for a RICO claim is four (4) years. *Rotella v. Woods*, 528 U.S. 549 (2000). The period accrues when plaintiff discovered or should have discovered its injury through reasonable

11

diligence. *Prudential Ins. Co. of Amer. v. U.S. Gypsum Co.*, 359 F.3d 226 (3d Cir. 2004); *Matthews v. Kidder, Peabody Co*, 260 F.3d 239, 247 (3d Cir. 2001) (denying leave to amend); *see also, Dongelewics v. PNC Nat'l Bank Assoc.*, 10 Fed. Appx. 811 (3d Cir. 2004) (denying leave to amend RICO complaint).

Given the vast amount of media coverage in this matter, it cannot be disputed that the latest possible date that the four-year statute of limitations for Plaintiff's cryptic respondeat superior theory arising out of RICO began to run was June 29, 1997, the date the Press exposed Plaintiff's multitude of fraudulent real estate transactions, giving Plaintiff and each defendant, including Pepsny, a dubious period of fame. The four (4) year limitations period, therefore, expired, at the latest, on June 29, 2001, nearly four years before Plaintiff attempted to file a claim against Weichert. *Prudential Ins. Co. of Amer.*, 359 F.3d at 232.

Notwithstanding its participation in the above transactions, its discovery of the same and the barrage of indictments, convictions and guilty pleas, Plaintiff inexplicably waited to commence an action against Weichert until nearly six (6) years after the expiration of the most likely applicable limitations period. This court cannot now entertain Plaintiff's stale claims against Weichert. The Third Amended Complaint must be dismissed. *Id.*

## 2. The Statute of Limitations Was Not Tolled During the Stay or the Administrative Dismissal.

Plaintiff cannot look to case law, the terms of the Stay of Discovery or the Administrative Dismissal to claim the benefit of tolling of any limitations period. There is no constitutional right to stay a civil proceeding on the grounds that there are related pending criminal proceedings. *Walsh Sec. Inc.*, 7 F. Supp.2d at 527 ("a stay of a civil case is an extraordinary remedy"). Although a court may order a stay on motion of a party when the interests of justice so require, a stay does not suspend the limitations period such that the interests of justice are wholly taken away from unnamed, unidentified and unknowing parties, in favor of a dilatory plaintiff. *See id.*; s*ee also, Johnson v. Educ. Testing Serv.*, 754 F.2d 20, 27 (1st Cir. 1985) (although "discovery was suspended, [plaintiff] was always free to move for leave to file [the amended] complaint"); *Shirsat v. Mutual Pharm. Co., Inc.*, CIV. A. 93-3202, 1996 WL 273674, at *2 (E.D.Pa. May 15, 1996) (statute of limitations was not tolled during the stay of a civil matter pending the outcome of parallel criminal investigation). See copy of opinion attached hereto as Exhibit A. Rather, a stay is limited to and interpreted in accordance with the terms of its four corners. *Richman Bros. Records, Inc., v. U.S. Sprint*, 953 F.2d 1431, 1438 (3d Cir. 1991) (citations omitted).

13

In this matter, the Court ordered that document discovery, service and responsive pleadings continue to proceed and that only deposition and interrogatory discovery be stayed. *See* McCusker Cert., Exhibit E. The Stay of Discovery did not toll the running of the statute of limitations. *See id.*; *see also, Shirsat*, 1996 WL 273674, at *2. Plaintiff cannot now ignore the plain meaning of the Stay of Discovery and aver that it operated to toll the limitations period and expose any number of parties to liability for an indeterminable amount of time. *Richman Bros. Records, Inc.*, 943 F.2d at 1438. Such an assumption contravenes the fundamentals of our jurisprudence.

Similarly, the Administrative Dismissal issued on May 28, 2000 did not toll the limitations period such that Plaintiff could sit idly for several years before commencing an action against a previously unidentified party. *See Electric Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F. Supp.2d 394, 397 (D.N.J. 2000) (explaining that leave to amend a complaint to add a new party, five years after the matter was administratively dismissed and several years after the statute of limitations expired, was denied).[4] An

---

[4] Even assuming that Plaintiff misconstrued the plain meaning of the Stay of Discovery and/or the Administrative Dismissal to mean that it could not commence an action against an unidentified party, Plaintiff could have moved the court to lift the Stay of Discovery or Administrative Dismissal so that it could amend its complaint. *Id.*; *IP Innovation LLC v. Dell Computer*

14

administrative dismissal is a housekeeping mechanism employed by the
judiciary to maintain order. It is not a procedural tool governed by or
provided for in the Federal Rules. The Eighth Circuit explained that an
administrative dismissal is issued "in situations where the court has done
everything it can do to get a case off [its] plate." *Behrle v. Olshansky*, 966
F.2d 1458, 1459 (8th Cir. 1992). It is not a mechanism to extend the statute
of limitations. *See Electric Mobility Corp.*, 87 F. Supp.2d at 397; *see also,
Behrle*, 966 F.2d at 1459 ("such orders are sometimes entered by courts...for
statistical purposes").

In its May 30, 2000 Administrative Dismissal, this court ultimately
extended the Stay of Discovery and administratively dismissed the case. *See*
McCusker Cert., Exhibit F. Given the fact that more than a dozen
indictments were filed and cooperative agreements and guilty pleas were

---

*Corp.*, No. 03-C-3245, 2004 WL 784792, at *3 (N.D. Ill. Apr. 9, 2004)
(lifting stay of discovery to allow plaintiff to amend complaint); see copy of
opinion attached hereto as Exhibit B, *White v. Williams*, No. 94-C-3836,
1997 WL 261357, at *3 (N.D.Ill. May 8, 1997) (finding that statute of
limitations was not tolled during stay because plaintiff had knowledge of
defendant's identity such that it could have moved to amend its complaint);
see copy of opinion attached hereto as Exhibit C; s*ee also, Doe v. Bobitt*,
698 F. Supp. 1415, 1419 (N.D.Ill 1988) *reversed on other grounds,* 881 F.2d
510 (7th Cir. 1989) (stay of discovery did not preclude plaintiff from
amending complaint to add new party). Plaintiff declined to do so.
Alternatively, Plaintiff could have commenced a new action against
Weichert, independent of the within matter. Plaintiff declined to pursue
either of these options.

15

being negotiated, the Court postponed the civil proceedings until the federal government concluded its investigation against Plaintiff and others.    As with the Stay of Discovery, the Administrative Dismissal did not provide a tolling period for any statutes of limitation.  *See Richman Bros. Records, Inc.*, 953 F.2d at 1438.   For Plaintiff to aver otherwise is disingenuous because a cursory review of the docket indicates that activity occurred in this matter during the time period the Administrative Dismissal was in effect. Beginning in the spring of 2000 and extending into 2001, several defendants engaged in motion practice regarding, among other things,   the change and/or substitution of counsel and document discovery.    In addition to motion practice, the parties participated in the status conference wherein the Court issued the Administrative Dismissal.    Plaintiff did not employ any of these opportunities to assert that it intended to add any new defendants and/or causes of action.  Moreover, Plaintiff did not act on September 30, 2004, the day the Court lifted the Stay of Discovery.    Rather Plaintiff further pined an additional four (4) months over potential legal strategies. Plaintiff cannot now use the Administrative Dismissal to excuse its inaction. Its claims against Weichert are untimely, and the Third Amended Complaint must be dismissed as to Weichert.

**B.    THE COURT SHOULD STRIKE THE COMPLAINT BECAUSE PLAINTIFF HAS EXERCISED UNDUE DELAY IN AMENDING ITS CLAIMS.**

Weichert recognizes that this court may *sua sponte* treat Plaintiff's Third Amended Complaint as if it had been accompanied by a motion to amend. In the event this court does proceed in such manner, Weichert avers that Plaintiff should be precluded from amending the Second Amended Complaint because Plaintiff has exercised undue delay in naming Weichert as a party.

A district court may in its discretion deny leave to amend a complaint if plaintiff's delay in seeking to amend is undue. *Cureton v. Nat'l Collegiate Athletic Assoc.*, 252 F.3d 267, 273 (3d Cir. 2001). Delay alone does not require that a motion to amend be denied; however, at some point the delay will become undue placing an unwarranted burden on the court or will become prejudicial placing an unfair burden on the opposing party. *Id.* at 273. In addressing the plaintiff's delay in amending its complaint, the court must "focus on the plaintiff's motives for not amending [the] complaint to assert [the] claims earlier." *J.C. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 613 (3d Cir. 1987). A court will find undue delay, warranting denial of a motion to amend, where "a movant has had previous opportunities to amend a complaint" and has declined to do so. *USX Corp. v.*

17

*Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004) (citations omitted) (denying leave to amend where plaintiff had three years to bring claims that were within its knowledge); *Cureton*, 252 F.3d at 274 (leave denied because plaintiff waited three years to file its motion, despite having had knowledge of the claim for more than two and a half years); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (leave to amend denied because "over the three year period between the filing of [plaintiff's] original complaint and the filing of [the] motion to amend, [plaintiff] had numerous opportunities to correct any deficiencies in her RICO claim but failed to take care of them").

Plaintiff's delay in the within matter is more than twice as long as the periods of delay that the Third Circuit previously found wholly unacceptable in the above cases. As demonstrated above, Plaintiff commenced this action in 1997 and amended it several times in the following eight years. Nevertheless, it failed to use those opportunities to assert claims against Weichert. Plaintiff's excessive delay, coupled with its failure to take advantage of earlier opportunities to name Weichert as a defendant, renders Plaintiff's Third Amended Complaint unreasonable and any motion to amend should be denied.

## Conclusion

The Third Amended Complaint, like Plaintiff's land flipping scheme, is inappropriate at every juncture.  It is utterly devoid of a cause of action against Weichert.   In decoding Plaintiff's conjecture regarding respondeat superior, it is clear that any claims Plaintiff may have are time barred.  This Court has not given Plaintiff, by way of the Administrative Dismissal or otherwise, *carte blanche* to target a new deep pocket defendant in place of convicted and/or defunct defendants.  The Third Amended Complaint must be dismissed as to Weichert.

Respectfully submitted,

By: /s/John B. McCusker
John B. McCusker (JBM 1482)

Dated: May 10, 2005

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.                                                                    Page 1

1996 WL 273674 (E.D.Pa.)

(Cite as: 1996 WL 273674 (E.D.Pa.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Nagesh SHIRSAT
v.
MUTUAL PHARMACEUTICAL CO., INC.
**No. CIV. A. 93-3202.**

May 15, 1996.

MEMORANDUM AND ORDER

HUTTON, Judge.

*1 Presently before the Court are plaintiff's motion for leave to file an amended complaint and defendant's opposition.

### I. BACKGROUND

This civil action involves plaintiff's allegations that he was wrongfully discharged from his employment with Mutual Pharmaceutical Co., Inc. ("Mutual") on April 30, 1992. Plaintiff commenced this action on June 15, 1993, naming only Mutual as a defendant. In his complaint, plaintiff alleges that Mutual terminated his employment in retaliation for his complaints and stated intention to report to the authorities certain of Mutual's alleged practices in violation of the Federal Food, Drug, and Cosmetic Act and the rules and regulations of the Federal Food and Drug Administration.

After plaintiff filed this case, attorneys for the government filed a motion to stay plaintiff's civil action pending the government's ongoing criminal investigation of Mutual. Plaintiff did not oppose the stay, and, accordingly, this Court issued a stay in January of 1994.

As a result of the government's criminal investigation, Mutual pleaded guilty to a seven count indictment and entered into a non-appealable plea agreement in which Mutual agreed to pay a fine of $3.25 million. In addition to the government's indictment against Mutual, the government also indicted four employees of Mutual and proceeded to trial against them.

Following the conclusion of the employees' criminal trial, this Court lifted the stay in this case in May of 1995. In July of 1995, plaintiff retained new counsel. Subsequently, in October of 1995, the parties entered into an agreement staying the action once again until January 15, 1996.

Plaintiff now moves to amend his complaint to add Richard Roberts ("Roberts"), the president of Mutual, as a defendant, to add three new counts against Mutual and Roberts, and to "flesh out" his previous factual allegations. The three new counts involve claims for intentional infliction of emotional distress, interference with "financially beneficial employment relations," and interference with prospective contractual relations.

### II. DISCUSSION
#### A. Amendment of Pleadings in General

Rule 15(a) of the Federal Rules of Civil Procedure provides that, when a responsive pleading has already been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Such leave is within the discretion of the court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971); *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1413 (3d Cir.1993).

#### B. Addition of Roberts

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 2

1996 WL 273674 (E.D.Pa.)

**(Cite as: 1996 WL 273674 (E.D.Pa.))**

When an amendment seeks to change or add a party, and the amendment is sought outside of the statute of limitations period (as in this case), Rule 15(c)(3) provides that the amendment relates back to the date of the original pleading when: (1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (2) the party to be brought in by the amendment has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits; (3) the party to be brought in knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party; and (4) the second and third requirements are satisfied within the period provided by Federal Rule of Civil Procedure 4(m).

**\*2** This Court concludes that the third requirement has not been met in this case. In *Advanced Power Systems v. Hi-Tech Systems,* 801 F.Supp. 1450 (E.D.Pa.1992), the court explained that "[t]he 'mistake' condition does not isolate a specific type or form of error in identifying parties, but rather is concerned fundamentally with the new party's awareness that failure to join it was error rather than a deliberate strategy." *Id.* at 1457. In determining whether a party considered its omission from a law suit an error or a deliberate legal strategy, courts may consider the close identity of interest between an omitted party and a named party, *Advanced Power Systems,* 801 F.Supp. at 1457, and the plaintiff's awareness of the omitted party as a potential defendant. *See Kilkenny v. Atlantic Richfield Co.,* 800 F.2d 853, 857 (9th Cir.1986) (no relation back where plaintiff, inter alia, failed to amend her complaint after being informed of potential defendants), *cert. denied,* 480 U.S. 934 (1987); *Potts v. Allis-Chalmers Corp.,* 118 F.R.D. 597 (N.D.Ind.1987) (where plaintiff should have been aware of proper defendant at the outset, delay in amending complaint could be viewed by defendant as strategy, rather than mistake); *Curry v. Johns-Manville Corp.,* 93 F.R.D. 623 (E.D.Pa.1982) (no relation back where third-party defendants were impleaded five months before

plaintiffs moved to add them as direct defendants, because defendants could have interpreted plaintiffs' decision as strategy not error). As the Ninth Circuit has explained, Rule 15(c)(3) "was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation." *Kilkenny,* 800 F.2d at 857-58.

In this case, it was reasonable for Roberts to view his omission as a deliberate legal strategy by plaintiff, not merely an error. Plaintiff's asserted reason for adding Roberts at this time is that testimony elicited during the criminal trial of Mutual's employees revealed facts establishing Roberts' liability for plaintiff's wrongful termination. Specifically, plaintiff allegedly learned that Roberts instructed the director of human resources to offer plaintiff the opportunity to resign, in lieu of termination, if plaintiff agreed not to report Mutual's violations to the appropriate authorities.

The Court finds this reason unconvincing. Obviously, the plaintiff was aware of the offer to resign at the time he was terminated. Indeed, plaintiff states that he "refused to resign under these conditions and was therefore terminated." (Pl.'s Mem. at 11). In addition, at the time of termination, several employees of Mutual were present, including the director of human resources, a private investigator, and at least one management personnel. (Pl.'s Ex. B at 2908). At no time before the present motion was filed, however, did plaintiff attempt to sue any of Mutual's employees individually. Plaintiff did not include in his suit the director of human resources, who allegedly communicated the offer of resignation to him. In addition, despite the obvious involvement of management in plaintiff's termination, plaintiff did not attempt to sue any of Mutual's managers individually before the present motion was filed. Nor did plaintiff include a "John Doe" defendant at any time. Thus, notwithstanding plaintiff's knowledge of potential individual defendants to this action, plaintiff never attempted to sue, or gave any indication that he would sue, such individuals.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1996 WL 273674 (E.D.Pa.)

**(Cite as: 1996 WL 273674 (E.D.Pa.))**

Page 3

*3 Moreover, despite the fact that plaintiff learned of Roberts' involvement in March of 1995, [FN1] that the stay in this case was lifted in May of 1995, and that the parties did not agree to a further stay until October of 1995, plaintiff did not file this motion to amend until a month after the second stay ended. Such a delay provides further indication that plaintiff now seeks to change a legal strategy, rather than correct an error. [FN2]

> FN1. Plaintiff allegedly learned of Roberts' involvement through the trial testimony of Michael Smith, Mutual's director of human resources. A portion of the transcript of Mr. Smith's testimony is attached as plaintiff's exhibit B and dated March 21, 1995.

> FN2. Although plaintiff hired new counsel in July of 1995, and counsel understandably needed time to familiarize themselves with the case, the Court once again notes that the events surrounding plaintiff's termination, except for Roberts' alleged complicity, were clearly established from the beginning. Therefore, if there had been an error in not suing individual employees or managers of Mutual, one would believe that such an error would have been easily spotted early on in counsel's review of the case.

Finally, the Court notes that plaintiff's position before this time is well summarized in his testimony given at the criminal trial of Mutual's employees:
 Q. Okay. Now, you would agree that the management of Mutual is who you're claiming violated your rights; is that correct?
 A. The company on whole as such violated my rights.
(Def.'s Ex. B at 131).

It is clear that, in light of plaintiff's knowledge of pertinent events and potential individual defendants within the statute of limitations period and plaintiff's delay in filing this motion, plaintiff's failure to sue any individual defendants can reasonably be viewed as deliberate legal strategy, not merely error.

Therefore, the Court will not allow the addition of Roberts as a defendant.

*C. Addition of New Claims*

When a new claim is sought to be added, denial of leave may be based upon, among other grounds, the futility of amendment. *Lorenz,* 1 F.3d at 1413 (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Futility of amendment has generally been construed as meaning that a court should refuse to allow an amendment that would not survive a motion to dismiss. *Williams v. Bensalem Racing Assoc., Inc.,* Civ. A. No. 94-5777, 1995 WL 395951, at *2 (E.D.Pa. June 29, 1995); *see Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937 (1983).

As always, when considering a motion to dismiss for failure to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court shall take all allegations contained in the complaint as true and construe them in the light most favorable to the plaintiff. *H.J. Inc. v. Northwest Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). The complaint shall only be dismissed if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Northwest Bell,* 492 U.S. at 249-50 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

In addition, when considering a motion to dismiss for insufficient specificity under Rule 8(a) of the Federal Rules of Civil Procedure, the Supreme Court has held that a complaint must provide the defendants with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957). The Third Circuit has interpreted the fair notice requirement to mean that the "crucial questions are whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Frazier v. Southeastern Penn. Transp. Auth.,* 785 F.2d 65, 68 (3d Cir.1986). Generally, the court explained that a complaint is sufficiently

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                          Page 4

1996 WL 273674 (E.D.Pa.)

(Cite as: 1996 WL 273674 (E.D.Pa.))

specific when it sets forth the conduct complained of, the time, the place, and those responsible. *See id.* at 67-68.

### 1. *Count Two: Intentional Infliction of Emotional Distress*

**\*4** In count two, plaintiff alleges intentional infliction of emotion distress by Mutual. Mutual argues that plaintiff's intentional infliction of emotional distress claim should be dismissed because the Pennsylvania Worker's Compensation Act ("PWCA") provides the exclusive remedy for plaintiff's employment-related claim.

In most cases, the PWCA is the exclusive remedy of an employee for an injury arising in the course of employment. *Price v. Philadelphia Elec. Co.,* 790 F.Supp. 97, 99 (E.D.Pa.-1992). An exception exists, however, for injuries caused to an employee by the intentional conduct of a fellow employee who was motivated by personal animosity towards the other. *Id.* For example, the PWCA does not bar intentional infliction of emotional distress claims for sexual or racial harassment by a fellow employee. *Id.* at 100.

In this case, the plaintiff has not alleged any conduct by an employee of Mutual that was motivated by personal animosity towards the plaintiff. Although plaintiff alleges that the acts of Mutual's employees were willful and malicious, (Am.Compl.¶ 28), it is clear from the complaint that this animosity is related to business considerations, rather than to any personal characteristics of plaintiff (as, for example, sexual or racial harassment would be). *See Whitney v. Xerox Corp.,* C.A. No. 94-CV-3852, 1994 WL 412429, \*6 (E.D.Pa. Aug. 2, 1994) (emotional distress caused as a result of campaign by plaintiff's supervisors to force him out after plaintiff reported the unlawful activities of some fellow employees and thereby embarrassed his supervisors was due to "business related animosity" and barred by the PWCA); *Tiscornia v. Sysco Corp.,* Civ. A. No. 95-3178, 1995 WL 574334, \*4 (E.D.Pa. Sept. 26, 1995) (injuries caused to plaintiff as a result of blowing the whistle on his supervisor's wrongdoing

were motivated by "business related animosity" and barred by PWCA).

Even if the claim were not barred, however, the facts alleged do not support a claim of intentional infliction of emotional distress. A viable claim of intentional infliction of emotional distress must allege conduct that is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988) (quoting *Buczek v. First Nat'l Bank of Mifflintown,* 531 A.2d 1122, 1125 (Pa.Super.1987)).

The Third Circuit in *Cox* noted that:
> At the outset, it must be recognized that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress. In the context of a dismissal, it has been noted that "while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event" and cannot provide the basis for recovery for intentional infliction of emotional distress. Moreover, courts applying Pennsylvania law have failed to find conduct outrageous where an employer deceived an employee into foregoing other employment, or even where the employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult.

**\*5** *Cox,* 861 F.2d at 395 (citations omitted).

In *Cox,* the Third Circuit found that where an employer fired an employee on the first day back to work, knowing that the employee had undergone triple bypass surgery, knowing that the employee's physical and emotional recuperation were not complete, knowing that by firing the employee "it was endangering his chances of collecting medical and disability benefits," and knowing that by firing the employee "it was depriving him of a valuable therapeutic tool and jeopardizing his chances to obtain alternate employment," the dismissal of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 5

1996 WL 273674 (E.D.Pa.)

**(Cite as: 1996 WL 273674 (E.D.Pa.))**

employee, while performed with "an improper motive and notwithstanding the potential effects on [the employee]," did not rise to the level of outrageousness which is required under Pennsylvania law. *Id.* at 395-96.

In this case, plaintiff has merely alleged that his improper termination was the sole cause of his emotional suffering. Plaintiff alleges no circumstances surrounding his termination that would rise to the level of outrageousness as explained in *Cox.* Accordingly, plaintiff has failed to state a cause of action for intentional infliction of emotional distress, and this amendment would be futile.

*2. Count Three: Interference with Employment Relations*

In count three, plaintiff claims Roberts interfered with plaintiff's "financially beneficial employment relations" with Mutual. Even assuming such a cause of action exists, since the Court has not granted leave to add Roberts as a defendant, this count cannot stand.

*3. Count Four: Interference with Prospective Contractual Relations*

In count four, plaintiff alleges that Roberts and Mutual interfered with prospective contractual relationships between plaintiff and other pharmaceutical companies. Mutual argues that plaintiff has failed to allege with adequate specificity such prospective contractual relationships.

In *Advanced Power Systems v. Hi-Tech Systems,* 801 F.Supp. 1450 (E.D.Pa.1992), the court explained that:

> [E]ven at the pleading stage, a plaintiff may not rest a claim for tortious interference with prospective contractual relations on a mere hope that additional contracts ... would have been forthcoming but for defendant's interference. The complaint must allege facts that, if true, would give rise to a reasonable probability that particular anticipated contracts would have been

entered into.
*Id.* at 1459.

In his complaint, the plaintiff merely alleges that "Plaintiff's difficulty in obtaining work in the pharmaceutical industry is directly attributable to the circumstances underlying this matter," (Am.Compl.¶ 44), and "Defendant Mutual and Defendant Roberts have intentionally interfered with prospective contractual relationships between Plaintiff and other pharmaceutical companies with an intent to harm the Plaintiff by preventing any such relationships from accruing." (Am.Compl.¶ 45).

These allegations are inadequately specific to support a claim for interference with prospective contractual relations. Plaintiff does not specify any particular relation that was allegedly interfered with, what conduct by Mutual and Roberts amounted to interference, or facts that would give rise to a reasonable probability that, but for the interference, the particular anticipated contracts would have been entered into. Thus, the Court will not allow this amendment as well.

D. *"Fleshing Out" of Previous Factual Allegations*

**\*6** Plaintiff claims that, in addition to seeking leave to add a defendant and new counts, he is "using this opportunity to provide more specificity to Plaintiff's factual allegations. Defendant should not be heard to challenge Plaintiff's Motion to File an Amended Complaint on this basis insofar as the Amended Complaint simply 'fleshes out' the details of Plaintiff's original pleading." (Pl.'s Mem. at 12-13 n. 5). Mutual has not challenged these amendments.

III. *CONCLUSION*

For the foregoing reasons, plaintiff's motion is granted in part and denied in part. An appropriate Order follows.

*ORDER*

AND NOW, this 13th day of May, 1996, upon consideration of Plaintiff's Motion for Leave to File an Amended Complaint, IT IS HEREBY

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1996 WL 273674 (E.D.Pa.)

**(Cite as: 1996 WL 273674 (E.D.Pa.))**

ORDERED that Plaintiff's Motion is GRANTED in part and DENIED in part.

1996 WL 273674 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:93CV03202 (Docket)
                    (Jun. 15, 1993)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.

Page 1

1997 WL 261357 (N.D.Ill.)

(Cite as: 1997 WL 261357 (N.D.Ill.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois.
Eric WHITE, Plaintiff,
v.
Wilbert WILLIAMS and Michael Sheahan, Sheriff
of Cook County, Defendants.
**No. 94 C 3836.**

May 8, 1997.

MEMORANDUM OPINION AND ORDER

PLUNKETT

*1 In November 1996, Eric White ("White") filed his second amended complaint naming Cook County Sheriff Michael Sheahan ("Sheahan") as a defendant. Sheahan has moved to dismiss on the grounds that the statutes of limitations on the claims asserted against him have expired. For the reasons set forth below, Sheahan's motion is granted in part and denied in part.

*Background*

On March 12, 1994, defendant Wilbert Williams' ("Williams") shot White during a traffic dispute. Williams was employed as a Cook County Deputy Sheriff at the time.

On June 23, 1994, White filed a two-count complaint against Williams. Count I was a 42 U.S.C. § 1983 ("Section 1983") excessive force claim asserted against Williams in his official capacity as a deputy sheriff. Count II was a state law battery claim.

Williams moved to dismiss the official capacity claim because the complaint failed to allege that he acted pursuant to an official custom, policy or practice of the Cook County Sheriff's Department. On December 7, 1994, this Court granted Williams' motion, but stated: "the dismissal in his official capacity is without prejudice and plaintiff may pursue discovery on the issue of whether defendant acted pursuant to an alleged custom or policy or practice."

Shortly thereafter the Court stayed discovery in the case pending completion of Williams' criminal trial. [FN1] On September 12, 1995, the Court lifted the discovery stay "as to matters not directly related to the conduct of the defendant ... on 3/12/94." On April 23, 1996, the stay of discovery was lifted. [FN2]

On September 16, 1996, Williams was deposed. White contends that the deposition testimony finally provided him with an adequate factual basis to allege a Section 1933 policy claim. On November 13, 1996, White filed his second amended complaint adding Sheahan as a defendant and asserting a Section 1983 claim and a state law negligence claim against him. Sheahan contends that White can maintain neither claim because the statute of limitations applicable to each has expired.

*The Legal Standard*

Oddly, Sheahan has styled his motion as Fed.R.Civ.P. ("Rule") 12(b)(2) motion to dismiss for lack of personal jurisdiction. Personal jurisdiction in this case depends upon Sheahan having the requisite minimum contacts with the State of Illinois, not on the timeliness of White's claims. *Rodriguez v. City of Milwaukee,* No. 94 C 7748, 1995 WL 704760, at * 3 (N.D.Ill. Nov. 29, 1995) (citing *Burstein v. State Bar of Cal.,* 693 F.2d 511, 517 (5th Cir.1982)). Given the office ne occupies, there can be little doubt that Sheahan's contacts with this State are sufficient to make him amenable to suit here.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1997 WL 261357 (N.D.Ill.)

**(Cite as: 1997 WL 261357 (N.D.Ill.))**

Page 2

Sheahan's motion should have been styled as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Accordingly, the Court will analyze it as such. On a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

### Discussion

**\*2** The statute of limitations for Section 1983 actions brought in Illinois is two years. *Kalimara v. Illinois Dep't of Corrections,* 879 F.2d 276, 277 (7th Cir.1989); *Farrell v. McDonough,* 966 F.2d 279, 281 (1992), *cert. denied,* 506 U.S. 1084 (1993) (expressing continued adherence to *Kalimara* ). The statute of limitations for state law claims against local government officials is one year. 745 Ill.Comp.Stat. 10/8-101. White did not file his claims against Sheahan until November 1996--two years and eight months after the altercation with Williams Thus, unless these statutes were tolled, both of White's claims against Sheahan are time-barred.

When federal courts borrow state statutes of limitations, as they do for Section 1983 claims, they also borrow any applicable state tolling provisions. *Smith v. City of Chicago Heights,* 951 F.2d 834, 839-40 (7th Cir.1992) (quoting *Johnson v. Railway Express Agency,* 421 U.S. 454, 463-64 (1975)). Moreover, courts in the Seventh Circuit apply federal tolling provisions in addition to--not in place of--state tolling provisions. *Id.* Thus, White can invoke any federal or state tolling provision to try to save his claims. White contends that two such provisions apply: the federal doctrine of equitable tolling and the state "stay of action" tolling statute. (Pl.'s Resp. at 5-9.)

The doctrine of equitable tolling allows a plaintiff to avoid a statute of limitations bar "if despite all due diligence he is unable to obtain vital

information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1991), *cert. denied,* 501 U.S. 1261 (1991) (citations omitted). White claims that despite his diligence, the stay of discovery prevented him from gathering the information necessary to state a Section 1983 policy claim against Sheahan.

The record in this case belies White's claims of diligence. White filed his first complaint in this action in June 1994. Discovery was not stayed until December 1994. Thus, White had six months to conduct discovery on the policy claim before the stay was entered. Unfortunately, he did nothing. Given this six month lapse, White has not demonstrated the diligence necessary for application of the doctrine of equitable tolling.

Even if White had been diligent prior to the stay, equitable tolling would still not save his negligence claim against Sheahan. As noted above, that claim has a one year statute of limitations which started on March 12, 1994. 745 Ill.Comp.Stat. 10/8-101. Thus, even if the statute had been tolled from December 7, 1994 until April 23, 1996, it still would have expired in July 1996--four months before White filed his claim. In short, White cannot rely on the equitable tolling doctrine to save either of his claims against Sheahan.

White also asserts that the state "stay of action" statute tolled the limitations periods on his claims. That statute excludes from the applicable limitations period the time during which an injunction or other court order stays the commencement of an action. 735 Ill.Comp.Stat. 5/1-216. Unlike the doctrine of equitable tolling, the "stay of action" statute does not require a demonstration of diligence. *Id.*

**\*3** Though the statute is not often invoked, at least one court has applied it to a case much like this one. *See Doe v. Bobbitt,* 698 F.Supp. 1415 (N.D.Ill.1988), *rev'd on other grounds,* 881 F.2d 510 (7th Cir.1989). The plaintiff in Doe discovered facts sufficient to file a claim only after the court lifted a two year stay of discovery and the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                   Page 3

1997 WL 261357 (N.D.Ill.)

**(Cite as: 1997 WL 261357 (N.D.Ill.))**

applicable statute of limitations had run. When plaintiff amended her complaint, the newly added defendant moved to dismiss.

The court denied the motion. In the court's view, the discovery stay and the requirements of Rule 11 trapped plaintiff in a procedural Catch-22. She could either file an unfounded claim within the limitations period or a well-grounded one after the limitations period expired. *Id.* at 1419. Recognizing the inequity of the situation, the court held that the applicable limitations period was tolled by the discovery stay by the "stay of action" statute. *Id.* at 1419.

The instant case is very similar to *Doe.* As in *Doe,* White could not gather the facts necessary for his policy claim while discovery was stayed. Nor could he, consistent with Rule 11, file a claim without them. He too faced an unpalatable choice: risk Rule 11 sanctions by filing a claim based only on conjecture or risk losing the claim entirely by amending the complaint after the statute of limitations expired. This is precisely the kind of procedural morass that tolling statutes are designed to prevent. Accordingly, as in *Doe,* this Court holds that the Section 1983 limitations period was tolled during the sixteen month discovery stay. Thus, White's Section 1983 claim against Sheahan was timely filed on November 16, 1996. [FN3]

The Court's holding does not, however, save White's negligence claim. As discussed above, even if the one year limitations period was tolled during the discovery stay, it still expired four months before White filed his claim. With or without tolling, White's negligence claim against Sheahan is time-barred and must be dismissed.

### Conclusion
Sheahan's Rule 12(b)(6) motion to dismiss is granted in part and denied in part. White's negligence claim against Sheahan is time-barred and is dismissed. White's Section 1983 claim against Sheahan was filed timely and stands.

DATED: May 6, 1997

FN1. The court record does not reflect the date the stay was entered nor does it describe the exceptions, if any, to the stay order. White claims that the stay was entered shortly after December 7, 1994 and that all discovery was stayed. Because Sheahan does not dispute these representations, the Court will accept them as true.

FN2. White asserts that the stay was lifted "about [the] time" Williams' criminal trial was completed in July 1996. The court record establishes that the stay was lifted on April 23, 1996.

FN3. In reaching this holding, the Court specifically rejects Sheahan's contention that artful notice pleading can substitute for pre-filing investigation. Contrary to Sheahan's belief, if White had filed his policy claim without an adequate factual basis, he would have been subject to Rule 11 sanctions.

1997 WL 261357 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 1:94CV03836  (Docket)

(Jun. 23, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d

2004 WL 784792 (N.D.Ill.)

(Cite as: 2004 WL 784792 (N.D.Ill.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
IP INNOVATION L.L.C. and Technology
Licensing Corporation, Plaintiff,
v.
DELL COMPUTER CORPORATION, Defendant.
**No. 03 C 3245.**

April 9, 2004.
Raymond P. Niro, Arthur Anthony Gasey, Paul
Christopher Gibbons, Douglas M. Hall, Niro,
Scavone, Haller & Niro, Ltd., Chicago, IL, Melissa
Richards Smith, Baldwin & Baldwin, Marshall, TX,
for Plaintiff.

David L. Witcoff, Jones Day, Chicago, IL, Kenneth
R. Adamo, Robert W. Turner, Thomas R. Jackson,
Mark Reiter, Jones Day, Dallas, TX, for Defendant.

*MEMORANDUM OPINION*

KOCORAS, Chief J.

*1 This matter comes before the court on the
motion of Plaintiffs IP Innovation LLC and
Technology Licensing Corporation (collectively
referred to herein as "IP Innovation") to amend
their complaint against Defendant Dell Computer
Corporation ("Dell"). For the reasons set forth
below, the motion is granted.

BACKGROUND
IP Innovation holds two patents relevant to this
case: U.S. Patent No. 5,424,780 ("the '780 patent")
and U.S. Patent No. 6,529,637 ("the '637 patent").
The patents involve computer imaging technology

that can be used in printing and faxing, among other
applications. In October 2002, IP Innovation filed a
complaint alleging infringement of the '780 patent
by Minolta Corporation ("the manufacturer suit").
This complaint initiated the companion suit to the
instant case ("the Dell suit"), which was originally
filed in December 2002 in the Eastern District of
Texas. As time went on, several other defendants
were added to the companion suit, and the
complaint was amended in March 2003 to add a
claim for infringement of the '637 patent.

In April 2003, Judge Ward of the Eastern District
of Texas transferred this suit to our court at Dell's
request. Originally, it was assigned to Judge
Guzman but was reassigned to our calendar because
of its relation to the manufacturer suit. At a hearing
in August, the parties to the manufacturer suit
reported on their progress in achieving settlement
agreements. The subject of consolidation of the Dell
suit and the manufacturer suit arose, prompting
counsel for Dell to resurrect the motion to stay that
had been before Judge Guzman before
reassignment. At that time, we granted Dell's oral
motion until the cast of characters in the
manufacturer suit could be finalized. *See* August 5,
2003 Tr. at 10. Since then, all but one of the
defendants in the manufacturer suit have reached
settlements with IP Innovation. The remaining
defendant, Lexmark, filed a motion to transfer the
manufacturer suit to Kentucky as well as a motion
for summary judgment of the infringement claims
against it. Both motions were denied. Because no
further impediments remained to commencement of
discovery, we set June 9 as a cut-off date for fact
discovery.

Shortly after the minute order setting the discovery
cut-off date issued, IP Innovation propounded
interrogatories to Dell and filed a motion for leave
to amend their complaint to add claims pertaining to
the '637 patent. Dell opposes the proposed
amendment, claiming that the stay remains in effect

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 784792 (N.D.Ill.)

**(Cite as: 2004 WL 784792 (N.D.Ill.))**

Page 2

and thus precludes any action with regard to the Dell suit, including amendment of the complaint.

### LEGAL STANDARDS

The power and ability of a district court to stay a proceeding stem from the court's inherent power to control disposition of cases before it in an efficient and orderly manner. *See Landis v. North American Corp.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). Deciding how best to accomplish this goal requires an exercise of judgment that must take into account and balance competing interests. *Id.; see also Ingersoll Mill. Mach. Co. v. Granger*, 833 F.2d 680, 686 (7th Cir.1987).

*2 Pursuant to Fed. R. Civ. Proc. 15(a), a plaintiff may amend a complaint once as a matter of course at any time before a responsive pleading is served. Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The decision whether to grant or deny a motion for leave to amend is committed to the sound discretion of the district court. *Perrian v.. O'Grady*, 958 F.2d 192 (7th Cir.1992). With these principles in mind, we turn to the matters at hand.

### DISCUSSION

Although the motion before us is one for leave to amend, Dell focuses nearly all of its attention on the issue of the stay of proceedings. They assert that the stay should continue primarily because of the tendency in patent cases to stay infringement actions against customers pending the outcome of suits against manufacturers of the products sold to those customers. They cite many cases from this jurisdiction and others where this procedure has been used and urge us to follow suit. However, nearly every case upon which they rely involved suits that were pending in different fora. *Katz v. Lear-Siegler, Inc.*, 909 F.2d 1459 (Fed.Cir.1990) (Massachusetts and New York); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735 (1st Cir.1977) (Massachusetts and Kansas); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177 (2nd Cir.1969) (Georgia and New York); *Whelen Tech., Inc. v. Mill Specialties, Inc.*, 741 F.Supp. 715

(N.D.Ill.1990) (Illinois and Arizona); *Andco Environmental Processes, Inc. v. Niagara Environmental Assocs., Inc.*, 211 U.S.P.Q. 544 (W.D.N.Y.1981) (New York and Florida); *Allway Tools, Inc. v. Am. Safety Razor Co.*, 206 U.S.P.Q. 475 (S.D.Tex.1979) (Texas and Virginia); *Wehr Corp. v. Commercial Construction Corp.*, 464 F.Supp. 676 (S.D.Fla.1979) (Florida and Washington); *Kistler Instrumente v. PCB Piezotronics, Inc.*, 419 F.Supp. 120 (W.D.N.Y.1976) (New York and U.S. Court of Claims); *Siemens Aktiengesellschaft v. Sonotone Corp.*, 370 F.Supp. 970 (N.D.Ill.1973) (Illinois and New York); *Coyne & Delany Co. v. G.W. Onthank Co.*, 90 F.Supp. 505 (S.D.Iowa 1955) (New York and Iowa); *Wireless Spectrum Technologies, Inc. v. Motorola Corp.*, 2001 WL 32852 (N.D.Ill. Jan.12, 2001) (Illinois and Patent and Trademark Office); *Indianapolis Motor Speedway Corp. v. Polaris Indus., Inc.*, 2000 WL 777874 (S.D.Ind. June 15, 2000) (Minnesota and Indiana); *T.J. Smith v. Ferris Corp.*, 1987 WL 7496 (N.D.Ill. March 2, 1987) (New York and Illinois). Although the fact that two judges are considering suits that are markedly similar is not dispositive in deciding whether a stay is warranted, clearly it provides a significant basis for circumspection.

By contrast, the manufacturer suit and the Dell suit are both before us, through the efforts of Dell to transfer from the Eastern District of Texas. Thus, there is no danger of inconsistent results or duplicative expenditure of scarce judicial resources arising from simultaneous consideration by different judges. *See Watson Industries, Inc. v. Canon, Inc.*, 2003 WL 23218401, at *1 (W.D.Wis. Nov.24, 2003) (denying motion to stay in patent infringement case against customer because, *inter alia*, manufacturer case was before identical judge). Neither does it promote judicial economy to await for ultimate resolution of the manufacturer case when there is no agreement from IP Innovation or Dell to be bound by the outcome of the issues in the manufacturer suit, enabling later disputes over subjects such as collateral estoppel, patent validity, and the party responsible for the manufacture of the products at issue. *See id.* To put off determination of these questions with respect to Dell runs the risk

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 784792 (N.D.Ill.)

**(Cite as: 2004 WL 784792 (N.D.Ill.))**

Page 3

of the very duplication that Dell says a stay will avoid. At this time, the most sensible course of action is to put the parties on a common track.

*3 In addition, as the August 5, 2003, transcript makes clear, the stay was granted for a limited time and with a limited purpose. It was not intended to extend until the manufacturer suit was completely resolved. The purpose of the stay, to allow time to determine whether and against whom the manufacturer case would proceed, has been accomplished. Thus, there is no reason for it to continue, and we formally acknowledge what was implied in the February 9 minute order: the stay entered on August 5, 2003 is lifted.

We thus turn to the issue of the amendment of the complaint. As stated above, leave to amend is freely given when justice requires. Aside from the stay, Dell has not offered any objection of substance to the proposed amendment. Our review of its contents reveals that the addition of the claims pertaining to the '637 patent will makes the complaint in the Dell suit track the one in the manufacturer suit. Thus, allowing the amendment streamlines the contemporaneous consideration of the two suits and will improve our ability to resolve them in tandem. Neither can we detect any of the usual reasons to disallow an amendment, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman,* 371 U.S. at 182, 83 S.Ct. at 230. Accordingly, the motion for leave to file the amended complaint is granted.

CONCLUSION

Based on the foregoing analysis, the stay initiated on August 5, 2003, in this case is lifted. This case and its companion, *IP Innovation v. Lexmark,* Case No. 02 C 7611, are consolidated for discovery purposes only. IP Innovation's motion for leave to amend the complaint against Dell is granted.

2004 WL 784792 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2174023 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Dell's Counterclaim (May. 18, 2004)

• 2004 WL 2174019 (Trial Pleading) Dell Inc.'s Answer, Affirmative Defenses and Counterclaim to Plaintiffs' Amended Complaint (Apr. 29, 2004)

• 2004 WL 2174015 (Trial Motion, Memorandum and Affidavit) Dell Inc.'s Response to Plaintiffs' Supplemental Submission in Support of Their Motion for Leave to Amend Their Complaint (Mar. 22, 2004)

• 1:03CV03245 (Docket)

(May. 15, 2003)

• 2002 WL 32659698 (Trial Pleading) Answer of Defendant Dell Computer Corporation (Dec. 31, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.