UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | : Civil Action No. CV 97-3496 (WGB) |
| | : |
| Plaintiff, | : Hon. William G. Bassler |
| | : |
| v. | : |
| | : |
| CRISTO PROPERTY MANAGEMENT, | : |
| LTD., a/k/a G.J.L. LIMITED, et al. | : |
| | : |
| Defendants. | : |

---

**PLAINTIFF'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS IRENE DIFEO, STEWART TITLE GUARANTY COMPANY
AND WEICHERT REALTORS' MOTIONS TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT**

---

Robert A. Magnanini (RM 7356)
Christopher Iannicelli (CI 7904)
BOIES, SCHILLER & FLEXNER LLP
150 John F. Kennedy Parkway, Fourth Floor
Short Hills, NJ 07078
973-218-1111

Attorneys for Plaintiff
Walsh Securities, Inc.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................2

PROCEDURAL HISTORY.........................................................................................5

LEGAL ARGUMENT ...............................................................................................7

I.     PLAINTIFF HAS STATED VIABLE CLAIMS AGAINST THE MOVING
DEFENDANTS ..................................................................................................7

A. The Applicable Statutes of Limitations on Plaintiff's Claims Against the
Moving Defendants Have Not Passed. ........................................................9

1.   The Court's April 28, 1998 Stay and Later Extensions and The May 30,
2000 Administrative Dismissal of the Action Tolled the Running of the
Statute of Limitations as to all Claims. ...................................................9

i.   The Stay and Administrative Dismissal Caused the Action to Be
Removed From the Docket and Walsh Securities Was Left Without
Any Opportunity to Move to Amend Until the Action Was Reinstated
on or about September 30, 2004. .....................................................9

2.   The Claims Against the Moving Defendants Relate Back to the Original
Complaint. ............................................................................................14

3.   The Six-Year Statute of Limitations on Plaintiff's Common-Law Fraud
Claims against DiFeo Has Not Passed. ...............................................17

4.   The Statute of Limitations on Plaintiff's *Respondeat Superior* Claim
Against Weichert Has Not Passed. ......................................................18

5.   The Statute of Limitations on Plaintiff's Breach of Contract Claim
Against Stewart Title Has Not Passed. ................................................19

i.   Stewart Title is Estopped From Invoking the Statute of Limitations
Defense it Has Raised. ...................................................................19

a.   The Title Insurance Was Issued by Stewart Title to Protect
Plaintiff From the Very Losses Alleged in the Third Amended
Complaint. ...........................................................................19

b.  Walsh Securities Made Claims to Stewart Title for Coverage Under Various Title Insurance Policies for Losses Alleged in the Third Amended Complaint. ...............................................................20

c.  The Parties Engaged in Extensive and Lengthy Settlement Negotiations Concerning Walsh Securities' Claims for Coverage Which Stewart Title Abruptly Ended When the Court Stayed the Action in 1998. ................................................................20

d.  Stewart Title Lulled Walsh Securities Into A False Sense of Security By Representing That its Claims Would Be Amicably Settled Without the Need for Litigation. ...............................................21

6.  Walsh Securities Could Not Have Brought Separate Proceeding Against the Moving Defendants During the Period Between the Administrative Dismissal and the Reinstatement Given New Jersey's Entire Controversy Doctrine. .......................................................................22

7.  A Finding That Plaintiff's Claims Are Time-Barred Would Not Effectuate the Purposes of a Period of Limitations. ...........................................23

CONCLUSION ...........................................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*ALA v. CCAIR, Inc.*, 29 F.3d 855 (3d Cir. 1994) ...........................................................................7

*Berndt v. Tennessee*, 796 F.2d 879 (6th Cir. 1986) ......................................................................16

*Bougher v. Univ. of Pittsburgh*, 882 F.2d 74 (3d Cir. 1989) .......................................................17

*Cinnaminson Twp. Bd. of Ed. v. U.S. Gypsum Co.*, 552 F. Supp. 855 (D.N.J. 1982) ...................11

*Cito v. Bridgewater Township Police Dep't*, 892 F.2d 23 (3d Cir. 1989).......................................7

*Conley v. Gibson*, 355 U.S. 41 (1957) ...........................................................................................7

*Curry v. Johns-Manville Corp.*, 93 F.R.D. 623 (E.D.Pa. 1982) ....................................................15

*Doe v. Bobbitt*, 698 F. Supp. 1415 (N.D. Ill. 1988).......................................................................13

*Eakins v. Reed*, 710 F.2d 184 (4th Cir. 1983)...............................................................................16

*Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.*,
    87 F. Supp. 2d 394 (D.N.J. 2000) .............................................................................13, 14

*Fields v. Blake*, 349 F. Supp. 2d 910 (E.D.Pa. 2004) ..............................................................14, 15

*IP Innovation L.L.C. v. Dell Computer Corp.*,
    No. 03-C-3245, 2004 WL 784792 (N.D. Ill. 2004) ...........................................................13

*Jones v. Servellon*, No. 94-1038 LFO, 1996 WL 554513, * 3 (D.D.C. Sept. 18, 1996) ...............18

*Kinnally v. Bell of Pa.*, 748 F. Supp. 1136 (E.D.Pa. 1990) ...........................................................16

*Lundy v. Adamar of New Jersey Inc. v. Carlino,*
    34 F.3d 1173 (3d Cir. 1994)..............................................................................................16

*Order of R. Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342 (1944)........................24

*Rotella v. Woods,* 528 U.S. 549 (2000)..............................................................................................10

*Rycoline Prods., Inc. v. C & W Unlimited,* 109 F.3d 883 (3d Cir. 1997) .....................................22

*Shirsat v. Mutual Pharm. Co., Inc.,*
    No. A. 93-3202, 1996 WL 273674 (E.D. Pa. May 15, 1996) ...........................................13

*Singletary v. Pa. Dep't of Corr.,* 266 F.3d 186 (3d Cir. 2001)................................................14, 16

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd,*
    181 F.3d 410 (3d Cir.1999).........................................................................................10, 17

*Swartz v. Gold Dust Casino, Inc.,* 91 F.R.D. 543 (D. Nev. 1981)..................................................16

*The Ctr. for Prof'l Advancement v. Mazzie,* 347 F. Supp. 2d 150 (D.N.J. 2004)..........................22

*Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481 (3d Cir. 1985) ..................................18

*White v. Williams,*
    No. 94-C-3836, 1997 WL 261357 (N.D. Ill. May 8, 1997)................................................13

*Wine v. EMSA Ltd., P'ship.,* 167 F.R.D. 34, 38 n. 7 (E.D.Pa. 1996).............................................17

## STATE CASES

*Falcone v. Middlesex County Med. Soc.,* 47 N.J. 92 (1966)...........................................................22

*Galligan v. Westfield Ctr. Serv., Inc.,* 82 N.J. 188 (1980) ................................................................8

*Joel v. Morrocco,* 147 N.J. 546 (1997) .........................................................................................22

*Lopez v. Swyer,* 62 N.J. 267 (1973) ..............................................................................................17

*Ochs v. Fed. Ins. Co.,* 90 N.J. 108 (1982).......................................................................................8

*Price v. New Jersey Mfrs. Ins. Co.,* 182 N.J. 519 (2005) .................................................................8

*Price v. New Jersey Mfrs. Ins. Co.,* 368 N.J. Super. 356 (App. Div.), *aff'd,*
        182 N.J. 519 (2005) ...........................................................................................................21

*Rivera v. Prudential Prop. & Cas. Ins. Co.,* 104 N.J. 32 (1986) ....................................................23

*W.V. Pangborne & Co., Inc. v. New Jersey Dep't of Transp.,* 116 N.J. 543 (1989) .....................7

*Wm. Blanchard Co. v. Beach Concrete Co., Inc.,*
        150 N.J. Super. 277 (App. Div.), *certif. den.* 75 N.J. 528 (1977).......................................23

## FEDERAL STATUTES

*Fed. R. Civ. P.* 12(b)(6).......................................................................................................................7

*Fed. R. Civ. P.* 15(c) ...................................................................................................................16, 17

*Fed. R. Civ. P.* 15(c)(3).......................................................................................................................14

*Fed. R. Civ. P. 15(c)(3)(A)*...............................................................................................................16

*Fed. R. Civ. P. 15(c)(3)(B)*...............................................................................................................16

*Fed. R. Civ. P. 15(c)(3)(B)*...............................................................................................................17

*L.R. Civ. P. 11.2*...............................................................................................................................22

## STATE STATUTES

*N.J. State. Ann.* § 2A:14-1 ........................................................................................................10, 17

Plaintiff, Walsh Securities, Inc. ("Walsh Securities") respectfully submits this consolidated memorandum of law in opposition to Defendants Irene DiFeo ("DiFeo"), Stewart Title Guaranty Company ("Stewart Title") and Weichert Realtors ("Weichert") motions to dismiss Plaintiff's Third Amended Complaint.[1]

## PRELIMINARY STATEMENT

Defendants DiFeo, Stewart Title and Weichert Realtors (the "Moving Defendants") have filed separate motions to dismiss Plaintiff's Third Amended Complaint claiming that Walsh Securities has failed to state claims for which relief can be granted.

Following the lifting of a nearly seven-year long stay and administrative termination of this action, which precluded Plaintiff from proceeding with the prosecution of the case, Plaintiff asserted claims against the Moving Defendants in January 2005. In particular, Plaintiff asserted the following claims: (1) civil RICO Act and common-law fraud claims against DiFeo for her activities as a realtor and for which she received payments; (2) a breach of contract claim against Stewart Title for its failure to honor closing protection letters which required it to reimburse Walsh Securities for losses arising out of some of the fraudulent actions of Stewart Title's approved Defendant Closing Attorneys and; (3) a vicarious liability claim against Weichert for the fraudulent actions committed by its employee Donna Pepsny ("Pepsny") in the scope of her employment with Weichert and from which Weichert financially benefited.

---

[1] To avoid the inefficiencies and confusion of filing three separate memoranda in opposition to the separate motions filed by DiFeo, Stewart Title and Weichert Realtors, Plaintiff Walsh Securities submits this consolidated memorandum.

1

The validity of the merits of Plaintiff's claims against the Moving Defendants asserted in Third Amended Complaint are not the subject of these motions, rather the Moving Defendants have raised statute of limitations defenses to Plaintiff's Third Amended Complaint. The Court entered the Stay on April 28, 1998, based in part on the benefit to the public of allowing the government to conduct its investigation unimpeded. The Court subsequently extended the stay and administratively dismissed the matter from the active docket, which left Walsh Securities without any opportunity to conduct discovery or to move to amend until the action was reinstated on or about September 30, 2004. Based on federal and New Jersey state law and the doctrines of equitable tolling, relation back and the Entire Controversy Doctrine, the Court's inherent equitable powers, the Moving Defendants' knowledge of the underlying claims and lack of prejudice to the Moving Defendants, and the fact that the Moving Defendants are no worse off now than if they had been named in a previous complaint, the reasons for statutes of limitations to protect litigants and the courts from stale claims are not present here as Plaintiff finally has a chance to prosecute its long-delayed action. The Moving Defendants' motions to dismiss should be denied for the reasons set forth below.

## STATEMENT OF FACTS

In July 1997, Walsh Securities – a wholesale mortgage banker – brought this lawsuit to redress vast financial losses it suffered as a result of fraudulent real estate transactions perpetrated through racketeering activity which became the subject of a criminal investigation by the United States Attorney's Office based on information provided by Walsh Securities and which resulted in, among others, the trial and conviction by a jury of Defendants DiFeo and former Weichert employee Donna Pepsny.

2

Beginning in or about early 1996, the RICO Defendants[2] engaged in a pattern of racketeering activity which resulted in Walsh Securities purchasing approximately two hundred twenty mortgages from National Home Funding ("NHF") for amounts ranging up to eight times the preceding sales prices of the properties at issue. (Compl. ¶ 38). Walsh Securities was induced to purchase these mortgage loans from NHF based on fraudulent misrepresentations contained in the mortgage loan applications, including appraisals of the properties at issue. (Compl. ¶ 38). The proceeds from Walsh Securities' mortgage loans would, among other things, be distributed among the RICO Defendants as their illicit profits. (Compl. ¶ 38).

In a typical transaction, Defendant William Kane ("Kane"), through his company Cristo Property Management ("Cristo"), purchased a house in a low income neighborhood for a low price. (Compl. ¶ 64(a)). Cristo or one or more of the other RICO defendants, including DiFeo and Donna Pepsny acting as a Weichert real estate agent, then located a willing buyer. (Compl. ¶ 64(b)). The property was then appraised by licensed appraisers (hired by NHF and Cristo Property) at an inflated value. (Compl. ¶¶ 64(c)(d)). Thereafter, a mortgage loan application for the buyer was prepared by NHF or Cristo and submitted to Walsh Securities for financing. (Compl. ¶ 64(e)). The mortgage loan applications contained false information, including the fraudulently inflated appraisal of the property's value, signed leases indicating that the property would be income-producing, statements that the buyer made a down payment, statements that the seller (Cristo) had provided a second mortgage on the property and representations that

---

[2] Defendants Cristo Property, NHF, Capital Assets, Kane, Grieser, Skowrenski, Calanni, DiBenedetto, Brown, Brodo, Pierson, Yacker, Alfieri, Richard Pepsny, Cicalese, Cuzzi, D'Apolito, DAP Consulting, DiFeo, Donna Pepsny and Coastal Title Agency (collectively, "the RICO defendants")

3

the buyer would own the entire property, among other things. (Compl. ¶¶ 64(e)(1)-(8)). These false statements were designed to satisfy the loan underwriting criteria and thereby induce Plaintiff into approving the loan. (Compl. ¶ 64(e)(8)).

On the day of the closing, the closing attorney collected and transmitted the proceeds of the mortgage loan, knowing that the preconditions to the loan had not been met and were false. (Compl. ¶ 64(g)). The closing attorney also recorded the various deeds associated with the transaction. (Compl. ¶ 64(h)). Once the transaction was complete, however, the buyer secretly transferred 60% of the ownership in the property to Defendant Capital Assets, without notifying Walsh Securities. (Compl. ¶ 64(i)). This type of reconveyance is a default on the terms of Walsh Securities' mortgage loans and Walsh Securities would not have financed the mortgage loan had it known of the plan to reconvey the buyer's interest in the property. (Compl. ¶ 64(i)). Thereafter, Capital Assets would pool rental income from several properties to meet the mortgage obligations on the property. (Compl. ¶ 64(j)). However, given the nature of the fraud, Capital Assets would soon become delinquent in paying its mortgage obligation unless it continued to obtain mortgage loans to defraud Walsh Securities. (Compl. ¶ 64(m)).

With respect to these fraudulently obtained mortgage loans, the Title Insurance Defendants (including Stewart Title) issued to Walsh Securities, as the mortgage lender, closing service protection letters which required the Title Insurance Defendants to reimburse Walsh Securities for losses arising out of the fraudulent actions of the title companies' approved Defendant Closing Attorneys. (Compl. ¶¶ 93-94). Both of the closing attorneys, Yacker and Cicalese, were selected by Kane and NHF and specifically approved to handle closings by the Title Insurance Defendants. (Compl. ¶ 22).

4

This same pattern of fraud occurred over two hundred twenty times, with slight variations. (Compl. ¶ 66). Walsh Securities remains liable for a substantial portion of the value of these mortgage loans fraudulently obtained by the RICO defendants. (Compl. ¶ 40). Walsh Securities will not be able to recover the full amounts that have been lent through foreclosures on the properties because, due to the fraudulently inflated appraisals of the real properties that secure the mortgage loans, many of the properties are not of value equal to or greater than the amount of the mortgage loans and the fraudulent sales contracts. (Compl. ¶ 40). In addition, this fraud perpetrated against Walsh Securities has injured the business reputation of Walsh Securities and caused Walsh Securities to lose a substantial amount of business and profits, including causing the cancellation of an impending sale of Walsh Securities to a third party. (Compl. ¶ 40).

**PROCEDURAL HISTORY**

On July 17, 1997, Walsh Securities filed its initial Complaint in this action. On or about November 7, 1997, Walsh Securities filed an Amended Complaint. On or about January 16, 1998, several Defendants which were targets of a criminal investigation by the United States Attorneys Office for the District of New Jersey ("U.S. Attorneys Office") "moved for a stay of the civil proceedings pending the outcome of the criminal investigation." *See* June 9, 1998 Opinion of the Court Granting Stay at 7. These defendants argued that they could not fully participate in civil discovery and protect their Fifth Amendment rights. *Id.* The Court heard oral argument on the motion on March 30, 1998 and entertained an *in camera* submission by the U.S. Attorneys Office and entered an order on or about April 28, 1998, *inter alia*, staying all interrogatory and deposition discovery in the action until November 1, 1998 so as not to interfere in the ongoing

5

criminal investigation thereby effectively bringing the litigation to a standstill. *See* April 28, 1998 order of the Court.

Despite several requests by counsel for Plaintiff to the U.S. Attorneys Office and the Court, the stay was extended by the Court because of the continuation of the criminal investigation. *See* Declaration of Robert A. Magnanini (hereinafter, "Magnanini Dec.") at ¶ 3. On or about May 30, 2000, the Court *sua sponte* entered an order administratively terminating and dismissing the action from the active docket because of the ongoing criminal investigation and further staying all discovery in the action pending further order of the Court. *See* May 30, 2000 order of the Court. During the stay and administrative dismissal, Plaintiff was prevented from prosecuting its case including taking discovery or amending its pleadings. The administrative dismissal was reversed and vacated on or about September 30, 2004 when the Court entered an order lifting the "administrative stay" following notification by the U.S. Attorneys Office that the criminal investigation had concluded. *See* September 27, 2004 order of the Court. The Court further ordered that "the stay of discovery in this case is lifted, and this litigation shall proceed forward immediately toward conclusion." *Id.* After a December 20, 2004 Case Management Conference before Judge Arleo, Plaintiff circulated a draft Third Amended Complaint. *See* Magnanini Dec. at ¶ 5. Because none of the defendants objected to filing of a Third Amended Complaint, the Court granted leave to file the Third Amended Complaint which was filed on or about January 28, 2005. *See* Magnanini Dec. at ¶ 6.

### LEGAL ARGUMENT

I.   **PLAINTIFF HAS STATED VIABLE CLAIMS AGAINST THE MOVING DEFENDANTS**

The law is clear that in considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See ALA v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). Thus, the Court cannot dismiss Plaintiff's Third Amended Complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted).

Plaintiff recognizes that it is equally clear that under appropriate circumstances – which are not present in this matter – a Court may grant a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* on statute of limitations grounds. *See Cito v. Bridgewater Township Police Dep't*, 892 F.2d 23 (3d Cir. 1989). However, before doing so, the Third Circuit has directed courts to ask whether the "time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (citations omitted).

Given that three of the four causes of action the Moving Defendants seek to dismiss sound in New Jersey law, this Court should look to New Jersey courts' interpretation and application of statutes of limitations. The New Jersey Supreme Court has held that "[t]he primary purpose of the statute of limitations is to provide defendants a fair opportunity to defend and to prevent plaintiffs from litigating stale claims." *W.V. Pangborne & Co., Inc. v. New Jersey Dep't of Transp.*, 116 N.J. 543, 563 (N.J. Sup. Ct.

7

1989) (citing *Ochs v. Fed. Ins. Co.*, 90 N.J. 108, 112 (1982)).   Consistent with that purpose, "where defendants are on notice of the claims, and no significant prejudice results, the policy reasons for upholding a strict statute of limitations recede." *Id.*   Thus, under varying circumstances, the New Jersey Supreme Court has recognized that tolling of the statute of limitations is the fair and responsible result, because the "[u]nswerving 'mechanistic' application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without advancing [the] legislative purposes." *Price v. New Jersey Mfrs. Ins. Co.*, 182 N.J. 519, 524 (2005) (quoting *Galligan v. Westfield Ctr. Serv., Inc.*, 82 N.J. 188, 192 (1980)).

As demonstrated below, even if the Court determines that the initial stay of discovery, which was later extended and broadened by the Court, and the administrative dismissal of the action did not toll the running of the statutes of limitations, equitable reasons exist which Plaintiff submits preclude the Moving Defendants from raising their limitations claims and tolled the running of the applicable statutes of limitations during this time period.  Accordingly, the motions to dismiss should be denied.

A. **The Applicable Statutes of Limitations on Plaintiff's Claims Against the Moving Defendants Have Not Passed.**

1. **The Court's April 28, 1998 Stay and Later Extensions and The May 30, 2000 Administrative Dismissal of the Action Tolled the Running of the Statute of Limitations as to all Claims.**

   i. **The Stay and Administrative Dismissal Caused the Action to Be Removed From the Docket and Walsh Securities Was Left Without Any Opportunity to Move to Amend Until the Action Was Reinstated on or About September 30, 2004.**

The Moving Defendants named in Plaintiff's Third Amended Complaint are trying to block Plaintiff's attempt to finally get its day in Court after a lengthy delay in this matter. As this Court is aware, the Court stayed this action in June 1998 based substantially in part on in-camera submissions by the U. S. Attorneys Office. The Court was properly concerned that proceeding with civil litigation could impede and interfere with an ongoing criminal investigation. The Court's original Order stayed discovery in this matter until November 1998. As this Court may recall, the stay of the case was extended because of the continuing ongoing criminal investigation by the U.S. Attorneys Office.

The Court administratively dismissed the matter in May 2000 and, despite repeated requests to both the Court and the U.S. Attorneys Office by Plaintiff's counsel, the matter was not reinstated until September 30, 2004 with the consent of the U.S. Attorneys Office. Because of the original stay of discovery which Plaintiff believed was extended and broadened, and the subsequent administrative dismissal by the Court, Plaintiff has been unable to proceed in this litigation since June 1998. Defendants attempt now to turn a ministerial act by the Court after the request of the government (which effectively prevented Plaintiff from prosecuting its case indefinitely) into a bar of

9

Plaintiff's substantive and due process rights. We respectfully submit the Court should deny this request.

A wide ranging RICO fraud and conspiracy was discovered by Walsh Securities at the end of June 1997. Walsh Securities subsequently retained Michael Chertoff of the law firm of Latham & Watkins to conduct an investigation into the fraud. Upon the conclusion of the initial phase of the investigation, Walsh Securities reported the fraud to the U.S. Attorneys Office which began a criminal investigation of the matter based on the information and cooperation provided by Walsh Securities.

The statute of limitations for RICO claims is four years and six years for breach of contract claims and fraud in New Jersey. *See, e.g., Rotella v. Woods,* 528 U.S. 549 (2000); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd,* 181 F.3d 410, 425 (3d Cir.1999); *N.J.S.A.* 2A:14-1. Therefore, Plaintiff would have had until the end of June 2001 to file RICO claims or until the end of June 2003 to file breach of contract or fraud claims; however, because of this Court's initial stay, extension of the stay and administrative dismissal of the case, Plaintiff has been unable to proceed with this action. The Court's original stay came eleven months after Plaintiff's discovery of the fraud leaving three years and one month on the RICO statute of limitations and five years and one month on the breach of contract and fraud statutes of limitations. Even if this Court finds that its original stay of discovery and subsequent extension of the same did not toll the statutes of limitations, the Court administratively dismissed the matter from the active docket in May 2000. At this time, Plaintiff still had one year and one month to file RICO claims and three years and one month to file breach of contract or fraud claims. Plaintiff filed the Third Amended Complaint within four months of the

10

matter having been reinstated to the docket and only after, at the direction of Magistrate Judge Arleo, having circulated a draft of the Third Amended Complaint to be sure that none of the parties which were defendants in the action would object to Plaintiff's motion to amend its pleadings. Because there is no case law in this circuit or elsewhere holding that an administrative dismissal does not toll statute of limitations, Plaintiff's amendment is not untimely and the Court should deny the Moving Defendants' motions and finally let plaintiff proceed to prosecute this action, and vindicate its name and rights.

Statutes of limitations are statutes of repose intended to "spare courts from stale claims." *See Cinnaminson Twp. Bd. of Ed. v. U.S. Gypsum Co.*, 552 F. Supp. 855, 861 (D.N.J. 1982). Plaintiff's claims are not stale because none of plaintiff's claims have had an ability to become ripe because of the stay and administrative termination of the case. Plaintiff has had no opportunity to prosecute this action and, significantly, the Moving Defendants are in no worse position now than if they had been named in any of the prior complaints. Noticeably absent from any of the Moving Defendants' briefs are any claim of prejudice by now being named in the Third Amended Complaint.

Stewart Title was well aware of the claims filed against it by Plaintiff because Plaintiff and Stewart Title engaged in extensive settlement negotiations prior to the Court's stay. At that time it appeared likely that the issues with Stewart Title would be settled and Stewart Title delayed executing the settlement agreement until the Court lifted the stay. *See* Magnanini Dec. at ¶ 9. Therefore, Stewart Title had notice of Plaintiff's claims.

Similarly, Weichert had notice of the underlying fraud. Weichert's rhetorical invective which attempts to paint Walsh Securities in a negative light is baseless.

11

Weichert's argument misconstrues the nature and procedural posture of Plaintiff's claims in the Third Amended Complaint in such important areas as (1) arguing that Plaintiff sued Weichert because it believed that realtor Irene DiFeo was an employee of Weichert or that (2) Plaintiff filed a Third Amended Complaint *sua sponte* without any leave of Court, or the completely unsupported allegations that (3) Plaintiff somehow orchestrated and organized a fraud on itself which cost it more than $25 million and directly lead to the loss of a sale of the business and ultimately of the business itself, which then employed over 250 people in 12 states. Weichert's attempts to distance itself from the criminal acts of its employee Donna Pepsny who sold properties on behalf of Weichert yielding Weichert substantial commissions from the sale of properties, including some of the fraudulent properties, is unavailing. Weichert knew of the fraud and knew of the Government's prosecution of its employee Donna Pepsny for her participation in it.

Defendant DiFeo cannot now disavow knowledge of the underlying fraud since she too was prosecuted by the Government and found guilty of her participation in the sale of numerous fraud properties. Defendant DiFeo's involvement also led her to receive payments in the form of commission for the sales. Defendant DiFeo directly, and Weichert indirectly, benefited from the fraudulent transactions. As such, none of the Moving Defendants can claim that they were prejudiced by now being named in the Third Amended Complaint.

The principles of equity and equitable tolling allow this Court to review this matter in its sound discretion. Because the Moving Defendants knew of the underlying fraud, and because there is no prejudice to them, the only party that will be prejudiced by a dismissal is Plaintiff. The Court should not allow Plaintiff's substantive and due

12

process rights to be prejudiced because of an administrative termination of the case. The claims now asserted against the Moving Defendants all relate back to the original fraud of which they all had knowledge which Plaintiff could not, as a practical matter, been pursued until the criminal aspects of this matter had been resolved. Indeed, had Plaintiff attempted to do so, Moving Defendant's would have objected on the very same grounds that led this Court to stay the matter in the first place.

The Moving Defendants DiFeo and Stewart Title cite no cases holding that a stay or administrative termination of a case does not equitably or otherwise toll the statute of limitations. Moving Defendant Weichert relies on three unreported decisions in its moving papers. However, the procedural posture of the matter before the Court in *Shirsat v. Mutual Pharm. Co., Inc.* did not include an administrative termination and dismissal by the Court. *See* No. A. 93-3202, 1996 WL273674 (E.D. Pa. May 15, 1996). In the second unreported decision cited by Weichert, *White v. Williams*, the Court was again confronted with a case in which a stay had been instituted with no administrative dismissal or termination, and the Court allowed the Plaintiff to amend its pleadings as to certain new parties. *See* No. 94-C-3836, 1997 WL2661357 (N.D. Ill. May 8, 1997). The *White* court relied on the holding in *Doe v. Bobbitt* which also held that a stay extended a statute of limitations for some, but not all, defendants. *See* 698 F. Supp. 1415 (N.D. Ill. 1988). Finally, Weichert relied on the unreported decision of *IP Innovation L.L.C. v. Dell Computer Corp.* in which the Court allowed the Plaintiff to amend its complaint despite a judicially imposed stay of proceedings. *See* No. 03-C-3245, 2004 WL 784792 (N.D. Ill. 2004). Even Judge Orlofsky's decision in *Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.*, is different from the facts and procedural posture of the instant

13

matter in which the case was stayed against the wishes of Walsh Securities and later
administratively terminated until the conclusion of a criminal investigation. *See* 87 F.
Supp. 2d 394 (D.N.J. 2000). The parties in *Elec. Mobility Corp.* had agreed to
administratively dismiss their case while they discussed settlement and entered into
alternative dispute resolution proceedings after taking discovery. The parties only
returned to Court seeking to amend their pleadings several years after the settlement
process failed. Here, Plaintiff has not had the benefit of any discovery and has been
prevented from taking discovery. However, Plaintiff submits that equitable tolling and
equities in this case require the Court to allow Plaintiff to proceed on the Third Amended
Complaint against the Moving Defendants.

### 2. The Claims Against the Moving Defendants Relate Back to the Original Complaint.

The claims asserted against the Moving Defendants in the Third Amended
Complaint are also not barred by the applicable statutes of limitations because they relate
back to the original complaint. *Fed. R. Civ. P.* 15(c)(3) permits claims against newly
added defendants to relate back to the date of the original pleading if the following
conditions are satisfied:

> (1) The claim against the newly named defendants must have arisen "out
> of the conduct, transaction or occurrence set forth or attempted to be set
> forth in the original pleading." (2) The newly named party must have
> "received such notice of the institution of the action [within the 120 day
> period] that the party will not be prejudiced in maintaining a defense on
> the merits." The Third Circuit has interpreted the second condition as
> imposing two requirements, notice and absence of prejudice, each of
> which must be satisfied. (3) The newly named party must have known, or
> should have known [within the 120 day period] that "but for a mistake"
> made by the plaintiff concerning the newly named party's identity, "the

action would have been brought against" the newly named party in the
first place.

*Fields v. Blake*, 349 F. Supp. 2d 910, 917 (E.D. Pa. 2004) (quoting *Singletary v.
Pa. Dep't of Corr.*, 266 F.3d 186, 194 (3d Cir. 2001)).

As to the first requirement, there is no question that the claims asserted against the
Moving Defendants arose out of the same transaction or occurrence as those alleged in
the original Complaint. The substance of the allegations against the Moving Defendants
in the Third Amended Complaint are based upon the mortgage fraud alleged in the
original Complaint.

The second requirement concerning prejudice "is that suffered by one who, for
lack of timely notice that a suit has been instituted, must set about assembling evidence
and constructing a defense when the case is already stale." *Fields v. Blake*, 349 F.
Supp.2d 910, 917 (E.D.Pa. 2004) (quoting *Curry v. Johns-Manville Corp.*, 93 F.R.D. 623,
626 (E.D.Pa. 1982)). It is clear that none of the Moving Defendants will be prejudiced in
their defense of the claims set forth in the Third Amended Complaint. First, given
DiFeo's defense in the criminal proceeding related to the mortgage fraud and Weichert's
involvement in the government's investigation and subsequent indictment and trial of its
former employee Donna Pepsny for her involvement in the mortgage fraud now at issue
in this action, and Stewart Title's settlement negotiations with Walsh Securities related to
closing service protection letters, it is highly likely that evidence has not been lost,
memories have not faded and witnesses have not disappeared. Indeed, the Moving
Defendants do not claim that they have been prejudiced by the stay and dismissal. Thus,
they will be able to mount a vigorous defense to the claims at issue. Second, given the

15

stay of discovery which has only been recently lifted, each of the Moving Defendants will be able to fully participate in all aspects of the case.

*Fed. R. Civ. P.* 15 (c)(3)(A) also requires that the plaintiff demonstrate that the new parties received notice of the institution of the action. The notice requirement of Rule 15(c) is fulfilled if the defendant is aware that the action was commenced and had reason to expect his potential involvement in the action. *See Id.* (citing *Singletary v. Pa. Dep't of Corr.*, 266 F.3d at 195; *Lundy v. Adamar of New Jersey Inc. v. Carlino*, 34 F.3d 1173, 1189 (3d Cir. 1994)). Because of the lack of prejudice to the Moving Defendants demonstrated above, the notice requirement is less important; however, it is clear that the Moving Defendants had at the least constructive notice of the commencement of this action given their respective involvement in the criminal proceedings or the settlement negotiations arising out of the closing service letters. *See, e.g., Kinnally v. Bell of Pa.*, 748 F. Supp. 1136, 1141 (E.D. Pa. 1990) ("The conclusion of a growing number of courts and commentators is that sufficient notice may be deemed to have occurred where a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means.") *see also, Berndt v. Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986) (notice need not be formal); *Eakins v. Reed*, 710 F.2d 184, 187-88 (4th Cir. 1983) (same); *Swartz v. Gold Dust Casino, Inc.*, 91 F.R.D. 543, 547 (D. Nev. 1981) ("The notice of the institution of the lawsuit required by Rule 15(c) need not be formal.").

The final requirement of *Rule 15(c)* is that the newly named party knew or should have known within 120 days after the filing of the plaintiff's complaint that, but for a mistake concerning the identity of the proper party, the action would have been brought

16

against him. *See Fed. R. Civ. P. 15(c)(3)(B)*. However, while the text of Rule 15(c) suggests that the mistake element only applies to misnamed or misdescribed parties, "the Rule is widely-understood to allow the addition of new parties that were never originally named or described." *Wine v. EMSA Ltd., P'ship.*, 167 F.R.D. 34, 38 n. 7 (E.D. Pa. 1996) (citations omitted). Given, the Moving Defendants involvement in the criminal matter and the settlement negotiations discussed above, the Moving Defendants should have known that when Walsh Securities was permitted to do so, it would name them in this action.

Accordingly, all of the requirements of *Rule 15(c)* are met and the Third Amended Complaint adding the Moving Defendants relates back, for the purposes of the applicable statutes of limitations, to the date on which the original Complaint was filed.

### 3. The Six-Year Statute of Limitations on Plaintiff's Common-Law Fraud Claims against DiFeo Has Not Passed.

"Under New Jersey law, the statute of limitations for fraud is six years, see *N.J. State. Ann. § 2A:14-1*, and a cause of action accrues when a plaintiff knows or should know of its existence, *see Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989)." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd*, 181 F.3d 410, 425 (3d Cir.1999). It is clear that "[w]hen the gist of the action is fraud concealed from the plaintiff, the statute begins to run on discovery of the wrong or of facts that reasonably should lead the plaintiff to inquire into the fraud." *Id.* (citing *N.J. State Ann.* § 2A:14-1; *Lopez v. Swyer*, 62 N.J. 267, 300 (1973)). Further, "[w]hen the applicability of the statute of limitations is in dispute, there are usually factual questions as to when a plaintiff discovered or should have discovered the elements of its cause of action, and thus 'defendants bear a heavy burden in seeking to establish as a matter of

17

law that the challenged claims are barred.'" *Id.* (quoting *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985)).

Given the impact of the criminal investigation discussed above, and the inherent nature of concealment of participation in fraud, in this case the "discovery of the wrong or of facts that reasonably should [have] led [] plaintiff to inquire into the fraud" did not occur until DiFeo's criminal indictment was made public. Thus, Plaintiff's common-law fraud claim is well within the six-year statute of limitations period.

### 4. The Statute of Limitations on Plaintiff's *Respondeat Superior* Claim Against Weichert Has Not Passed.

Contrary to Weichert's assertions in its moving papers, Plaintiff has asserted a clear and concise cause of action in its Third Amended Complaint against Weichert under the theory of *respondeat superior* which is in and of itself a viable cause of action. To be absolutely clear, Plaintiff has alleged that Weichert is vicariously liable to it for the damages it has sustained as a result of the actions and conduct of its former employee Donna Pepsny committed in the course and in the scope of her employment with Weichert. (*See* Complaint Count VII). Further, again contrary to Weichert's claim, there is no explicit reference to a statute of limitations for actions for vicarious liability based on the doctrine of *respondent superior*. Rather, the limitations period is the same as that for the underlying tort. Thus, given that Plaintiff has asserted RICO and common law fraud causes of action against Donna Pepsny, the applicable four-year RICO and six-year common law fraud statutes of limitations apply. *See Jones v. Servellon*, No. 94-1038 LFO, 1996 WL 554513, * 3 (D.D.C. Sept. 18, 1996) ("Unlike a claim for negligent hiring or negligent supervision, a claim under respondent superior does not allege a separate and distinct tort by the employer, but rather holds the employer vicariously liable for torts of

the employee. Thus, the applicable statute of limitations for respondeat superior depends upon the nature of the torts alleged to have been committed by the servant.").

**5. The Statute of Limitations on Plaintiff's Breach of Contract Claim Against Stewart Title Has Not Passed.**

    **i. Stewart Title is Estopped From Invoking the Statute of Limitations Defense it Has Raised.**

        **a. The Title Insurance Was Issued by Stewart Title to Protect Plaintiff From the Very Losses Alleged in the Third Amended Complaint.**

Stewart Title, which issued title insurance and closing service protection letters on some properties financed by Walsh Securities to protect it from the losses alleged in the Third Amended Complaint, is estopped from invoking the statute of limitations defense to Walsh Securities' breach of contract claim. As alleged in the Third Amended Complaint, in conjunction with real property transactions involving the NHF/Cristo Property Enterprise, borrowers of mortgage loans from Walsh Securities obtained title insurance from the Title Insurance Defendants, including Stewart Title. (Complaint ¶ 93). The Title Insurance Defendants, in exchange for valuable consideration, provided Walsh Securities with closing service protection letters covering the conduct of the Closing Attorneys, who were specifically approved by the Title Insurance Defendants. (Complaint ¶ 93). Walsh Securities, required such closing service letters as a precondition to its agreeing to fund the mortgage loans. (Complaint ¶ 93). Pursuant to these closing service protection letters, the Title Insurance Defendants are required to reimburse Walsh Securities for losses arising out of, among other things, fraud or misapplication of funds by the Closing Attorneys. (Complaint ¶ 94).

As further alleged in the Third Amended Complaint, the Closing Attorneys
engaged in fraud and misapplication in connection with the NHF/Cristo Property
Enterprise. (Complaint ¶ 95). Among other things, the Closing Attorneys fraudulently
transferred mortgage loan proceeds knowing that pre-conditions to closings imposed by
Walsh Securities had not been satisfied. (Complaint ¶ 95). Walsh Securities has incurred
substantial loss as a result of the fraud and/or misapplication by the Closing Attorneys.
(Complaint ¶ 95).

> ### b. Walsh Securities Made Claims to Stewart Title for Coverage Under Various Title Insurance Policies for Losses Alleged in the Third Amended Complaint.

Although Walsh Securities has duly performed all of its obligations under the
closing service protection letters issued by the Title Insurance Defendants and has
notified the Title Insurance Defendants of its losses as a result of the fraud and/or
misapplication by the Closing Attorneys, the Title Insurance Defendants have failed to
reimburse Plaintiff for the losses it has incurred based on the fraud and/or misapplication
of the approved attorneys as covered by the closing service protection letters. (Complaint
¶ 96).

> ### c. The Parties Engaged in Extensive and Lengthy Settlement Negotiations Concerning Walsh Securities' Claims for Coverage Which Stewart Title Abruptly Ended When the Court Stayed the Action in 1998.

Prior to the Court's stay of this matter in 1998, Counsel for Walsh Securities
engaged in extensive and lengthy settlement negotiations with Stewart Title's Counsel
concerning Walsh Securities' claims for coverage under the closing service letters issued
by Stewart Title. *See* Magnanini Dec. at ¶ 7. These negotiations occurred in or about
April, 1998 and involved multiple closing service protection letters issued by Stewart

20

Title which Stewart Title indicated it would honor. *See* Magnanini Dec. at ¶ 8. Thereafter, on or about April 28, 1998, the Court entered an Order staying all interrogatory and deposition discovery in the action until November 1, 1998 and the settlement negotiations with Stewart Title regarding payments under the closing service letters abruptly ended. *See* Magnanini Dec. at ¶ 9. Following the Court's Order of September 27, 2004 lifting the administrative stay, counsel for Plaintiff contacted Stewart Title's outside legal counsel to discuss renewed settlement negotiations regarding Stewart Title's obligations under the closing service letters. The undersigned counsel was advised that Stewart Title would not be settling this matter and would be filing a motion to dismiss on statute of limitations grounds. *See* Magnanini Dec. at ¶ 10.

### d. Stewart Title Lulled Walsh Securities Into A False Sense of Security By Representing That its Claims Would Be Amicably Settled Without the Need for Litigation.

New Jersey law is clear that an insurer can be estopped from invoking the statute of limitations defense if it has engaged in wrongful conduct causing a plaintiff's claim to be subject to the statute's bar. *See Price v. New Jersey Mfrs. Ins. Co.*, 368 N.J.Super. 356, 363 (N.J. Super. Ct. App. Div.), *aff'd, Price v. New Jersey Mfrs. Ins. Co.*, 182 N.J. 519 (N.J. Sup. Ct. 2005). In order to invoke the application of the doctrine of equitable tolling of the statute of limitations, "an insured must show that the insurer has lulled him into a false sense of security by representing that a claim will be amicably settled without the need for litigation." *Id.* Given Stewart Title's indications prior to the administrative stay of this action that it would settle the claims made against it by Walsh Securities under the closing service letters, Walsh Securities did not amend its Complaint to name Stewart Title until January, 2005, after it was certain that Stewart Title was no longer

21

interested in settling its claims.  Stewart Title cannot now invoke the statute of limitations defense after it led Walsh Securities to believe that it would pay the claims made by Walsh Securities *prior* to the administrative stay and then later refused to pay the claims after the stay was lifted.  Such conduct cannot be judicially countenanced through a mechanical application of the statute of limitations.

### 6.  Walsh Securities Could Not Have Brought Separate Proceeding Against the Moving Defendants During the Period Between the Administrative Dismissal and the Reinstatement Given New Jersey's Entire Controversy Doctrine.

Contrary to the Moving Defendants assertions that Walsh Securities could have brought separate actions against each of them in either federal or state court during the pendency of the administrative dismissal to protect against the running of the statutes of limitations following the Court's administrative dismissal, no such action could have been brought given New Jersey's entire controversy doctrine.

Under the Full Faith and Credit Act, the Third Circuit has required New Jersey federal courts to apply New Jersey's entire controversy doctrine as that doctrine is recognized by New Jersey state courts.  *See Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997).  "The entire controversy doctrine is an equitable preclusionary doctrine that requires the parties to a litigation to assert all known claims that arise from the underlying occurrence or transaction."  *The Ctr. for Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150, 155 (D.N.J. 2004) (citing *Joel v. Morrocco*, 147 N.J. 546, 548 (1997)).  *See also L. Rule Civ. P. 11.2* and comments (requiring parties to certify that the pending action is not the subject of other actions).  The well-stated purposes of the doctrine are to encourage comprehensive and conclusive litigation determination, to avoid fragmentation of litigation, and to promote party fairness and

22

judicial economy and efficiency. *See, e.g., Falcone v. Middlesex County Med. Soc.*, 47 N.J. 92 (1966); *Wm. Blanchard Co. v. Beach Concrete Co., Inc.*, 150 N.J. Super. 277 (App. Div.), *certif. den.* 75 N.J. 528 (1977).

As a result of the foregoing, Plaintiff properly raised its claims against the Moving Defendants in this action rather than instituting separate federal or state actions, in which the moving defendants would have moved to dismiss on Entire Controversy Doctrine grounds or for failing to name necessary parties. The claims asserted in the Third Amended Complaint against the Moving Defendants clearly arise out of the underlying occurrences or transactions which form the basis of the claims asserted by Walsh Securities in the earlier-filed Complaints. Further, the filing of separate actions by Walsh Securities in state or federal courts asserting claims clearly arising out of the underlying mortgage fraud would be contrary to the well-stated purposes of the doctrine. Thus, Plaintiff complied with the entire controversy doctrine by raising its claims against the Moving Defendants in this action.

### 7. A Finding That Plaintiff's Claims Are Time-Barred Would Not Effectuate the Purposes of a Period of Limitations.

A finding that Walsh Securities' claims against the Moving Defendants are barred by the applicable statutes of limitations would not effectuate the stated purposes of having a period of limitations, but would rather unnecessarily work a prejudice upon Plaintiff. The law in New Jersey is clear that statutes of limitations have two purposes. First, "to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims." *Rivera v. Prudential Prop. & Cas. Ins. Co.*, 104 N.J. 32, 39 (N.J. Sup. Ct. 1986). The second purpose of statute of limitations is to penalize delay and serve as a

"measure of repose." *Id.* (citations omitted). The United States Supreme Court articulated similar policies as bases for statutes of limitations in *Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342 (1944). In *Railway Express* the U.S. Supreme Court held that the statute of limitations are:

> Designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*Id.* at 348-49.

Consideration and applications of these principles to this case demonstrates that Plaintiff's claims must not be time-barred. None of the concerns expressed by the United States Supreme Court in *Railway Express* are present and indeed all of the Moving Defendants have had notice of Plaintiff's claims for years. None of the moving defendants have alleged any prejudice in being named in the Third Amended Complaint. Indeed, had the Moving Defendants been named earlier, they would be in no worse position than they are now because Plaintiff has been unable to prosecute its case because of the stay and administrative termination. Thus, the Moving Defendants' motions are based on technical arguments which they should be equitably estopped from raising.

First, given DiFeo's defense in her criminal proceeding and Weichert's involvement in the government's investigation and subsequent indictment and prosecution of its former employee Donna Pepsny, presumably evidence has not been lost, memories have not faded and witnesses have not disappeared. The Moving Defendants also make no such claim. Rather, it is highly-likely that the opposite is true. Second, Plaintiff has not been dilatory in the prosecution of this action. Indeed, Plaintiff

24

vehemently argued against the imposition of a stay and the administrative dismissal of this action on multiple occasions. Plaintiff's counsel also sought to have this Court lift the stay several times before the administrative dismissal but such requests were denied. Finally, Plaintiff made claims to Stewart Title pursuant to the closing service protection letters and engaged in extensive settlement negotiations with Stewart Title to resolve those claims. To now bar Plaintiff's claims from proceeding when the claims are far from "stale," but rather ripe for adjudication, especially when the Moving Defendants are not prejudiced and are in no worse position now that the case has been reinstated, would work an injustice upon the victim of a massive fraud.

## CONCLUSION

For all of the foregoing reasons, Defendants Irene DiFeo, Stewart Title Guaranty Company and Weichert Realtors' motions to dismiss Plaintiff's Third Amended Complaint should be denied in their entirety.

DATED this 3rd day of June, 2005.

BOIES, SCHILLER & FLEXNER LLP

Robert A. Magnanini (RM 7356)
Christopher Iannicelli (CI 7904)

Attorneys for Plaintiff
Walsh Securities, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | : Civil Action No. CV 97-3496 (WGB) |
| Plaintiff, | : Hon. William G. Bassler |
| vs. | : **DECLARATION OF** |
| CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, et al. | : **ROBERT A. MAGNANINI** |
| Defendants. | : |

I, ROBERT A. MAGNANINI, do hereby declare:

1.     I am Of Counsel to the firm Boies, Schiller & Flexner LLP, counsel to Plaintiff Walsh Securities, Inc. ("Walsh Securities") in this matter, and submit this declaration in support of Walsh Securities' Consolidated Memorandum in Opposition to Defendants Irene Difeo, Stewart Title Guaranty Company and Weichert Realtors' Motion to Dismiss Plaintiff's Third Amended Complaint.

2.     Attached to this declaration as Exhibit A are true and correct copies of the decisions in: *IP Innovation L.L.C. v. Dell Computer Corp.*, No. 03-C-3245, 2004 WL 554513 (D.D.C. Sept. 18, 1996); *Jones v. Servellon*, No. 94-1038 LFO, 1996 WL 554513 (D.D.C. Sept. 18, 1996); *Shirsat v. Mutual Pharm. Co., Inc.*, No. A 93-3202, 1996 WL 273674 (E.D.Pa. May 15, 1996); and *White v. Williams*, No. 94 C 3836, 1997 WL 261357 (N.D.Ill.).

3.     Latham & Watkins, prior counsel for Walsh Securities, made several requests both to the U.S. Attorneys Office and the Court both during the stay and

administrative dismissal to allow the case to proceed, but the requests were denied because of the ongoing criminal investigation.

4.      Despite these requests, the matter was not reinstated on the active docket by the Court because of the continuing criminal investigation until September 2004.

5.      After a December 20, 2004 Case Management Conference before Judge Arleo, I circulated a draft Third Amended Complaint pursuant to Judge Arleo's instructions.

6.      Thereafter, because none of the defendants objected to the filing of a Third Amended Complaint, the Court granted leave to file the Third Amended Complaint which was filed on or about January 28, 2005.

7.      Prior to the Court's stay of this matter in 1998, counsel for Walsh Securities engaged in extensive and lengthy settlement negotiations with Stewart Title's Counsel concerning Walsh Securities' claims for coverage under the closing service protection letters issued by Stewart Title.

8.      These negotiations occurred in or about early, 1998 and involved multiple closing service protection letters issued by Stewart Title which Stewart Title indicated it would honor.

9.      Thereafter, on or about April 28, 1998, the Court entered an Order staying all interrogatory and deposition discovery in the action until November 1, 1998 and the settlement negotiations with Stewart Title regarding payments under the closing service letters abruptly ended.

10.     Following the Court's Order of September 27, 2004 lifting the administrative stay, counsel for Plaintiff contacted Stewart Title's outside legal counsel to

discuss renewed settlement negotiations regarding Stewart Title's obligations under the closing service protection letters. The undersigned counsel was advised that Stewart Title would not be settling this matter and would be filing a motion to dismiss on statute of limitations grounds.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration was executed in Short Hills, New Jersey on this 3rd day of June 2005.

By _____ /cf
Robert A. Magnanini (RM 7356)

A



Not Reported in F.Supp.2d
2004 WL 784792 (N.D.Ill.)
(Cite as: 2004 WL 784792 (N.D.Ill.))

Page 1

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
IP INNOVATION L.L.C. and Technology Licensing
Corporation, Plaintiff,
v.
DELL COMPUTER CORPORATION, Defendant.
No. 03 C 3245.

April 9, 2004.

Raymond P. Niro, Arthur Anthony Gasey, Paul Christopher Gibbons, Douglas M. Hall, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL, Melissa Richards Smith, Baldwin & Baldwin, Marshall, TX, for Plaintiff.

David L. Witcoff, Jones Day, Chicago, IL, Kenneth R. Adamo, Robert W. Turner, Thomas R. Jackson, Mark Reiter, Jones Day, Dallas, TX, for Defendant.

*MEMORANDUM OPINION*
KOCORAS, Chief J.

**\*1** This matter comes before the court on the motion of Plaintiffs IP Innovation LLC and Technology Licensing Corporation (collectively referred to herein as "IP Innovation") to amend their complaint against Defendant Dell Computer Corporation ("Dell"). For the reasons set forth below, the motion is granted.

## BACKGROUND

IP Innovation holds two patents relevant to this case: U.S. Patent No. 5,424,780 ("the '780 patent") and U.S. Patent No. 6,529,637 ("the '637 patent"). The patents involve computer imaging technology that can be used in printing and faxing, among other applications. In October 2002, IP Innovation filed a complaint alleging infringement of the '780 patent by Minolta Corporation ("the manufacturer suit"). This complaint initiated the companion suit to the instant case ("the Dell suit"), which was originally filed in December 2002 in the Eastern District of Texas. As time went on, several other defendants were added to the companion suit,

and the complaint was amended in March 2003 to add a claim for infringement of the '637 patent.

In April 2003, Judge Ward of the Eastern District of Texas transferred this suit to our court at Dell's request. Originally, it was assigned to Judge Guzman but was reassigned to our calendar because of its relation to the manufacturer suit. At a hearing in August, the parties to the manufacturer suit reported on their progress in achieving settlement agreements. The subject of consolidation of the Dell suit and the manufacturer suit arose, prompting counsel for Dell to resurrect the motion to stay that had been before Judge Guzman before reassignment. At that time, we granted Dell's oral motion until the cast of characters in the manufacturer suit could be finalized. *See* August 5, 2003 Tr. at 10. Since then, all but one of the defendants in the manufacturer suit have reached settlements with IP Innovation. The remaining defendant, Lexmark, filed a motion to transfer the manufacturer suit to Kentucky as well as a motion for summary judgment of the infringement claims against it. Both motions were denied. Because no further impediments remained to commencement of discovery, we set June 9 as a cut-off date for fact discovery.

Shortly after the minute order setting the discovery cut-off date issued, IP Innovation propounded interrogatories to Dell and filed a motion for leave to amend their complaint to add claims pertaining to the '637 patent. Dell opposes the proposed amendment, claiming that the stay remains in effect and thus precludes any action with regard to the Dell suit, including amendment of the complaint.

## LEGAL STANDARDS

The power and ability of a district court to stay a proceeding stem from the court's inherent power to control disposition of cases before it in an efficient and orderly manner. *See Landis v. North American Corp.,* 299 U.S. 248, 254-55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). Deciding how best to accomplish this goal requires an exercise of judgment that must take into account and balance competing interests. *Id.; see also Ingersoll Mill. Mach. Co. v. Granger,* 833 F.2d 680, 686 (7th Cir.1987).

**\*2** Pursuant to Fed. R. Civ. Proc. 15(a), a plaintiff may amend a complaint once as a matter of course at any time

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



before a responsive pleading is served. Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The decision whether to grant or deny a motion for leave to amend is committed to the sound discretion of the district court. *Perrian v. O'Grady*, 958 F.2d 192 (7th Cir.1992). With these principles in mind, we turn to the matters at hand.

## DISCUSSION

Although the motion before us is one for leave to amend, Dell focuses nearly all of its attention on the issue of the stay of proceedings. They assert that the stay should continue primarily because of the tendency in patent cases to stay infringement actions against customers pending the outcome of suits against manufacturers of the products sold to those customers. They cite many cases from this jurisdiction and others where this procedure has been used and urge us to follow suit. However, nearly every case upon which they rely involved suits that were pending in different fora. *Katz v. Lear-Siegler, Inc.*, 909 F.2d 1459 (Fed.Cir.1990) (Massachusetts and New York); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735 (1st Cir.1977) (Massachusetts and Kansas); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177 (2nd Cir.1969) (Georgia and New York); *Whelen Tech., Inc. v. Mill Specialties, Inc.*, 741 F.Supp. 715 (N.D.Ill.1990) (Illinois and Arizona); *Andco Environmental Processes, Inc. v. Niagara Environmental Assocs., Inc.*, 211 U.S.P.Q. 544 (W.D.N.Y.1981) (New York and Florida); *Allway Tools, Inc. v. Am. Safety Razor Co.*, 206 U.S.P.Q. 475 (S.D.Tex.1979) (Texas and Virginia); *Behr Corp. v. Commercial Construction Corp.*, 464 F.Supp. 676 (S.D.Fla.1979) (Florida and Washington); *Kistler Instrumente v. PCB Piezotronics, Inc.*, 419 F.Supp. 120 (W.D.N.Y.1976) (New York and U.S. Court of Claims); *Siemens Aktiengesellschaft v. Sonotone Corp.*, 370 F.Supp. 970 (N.D.Ill.1973) (Illinois and New York); *Coyne & Delany Co. v. G.W. Onthank Co.*, 90 F.Supp. 505 (S.D.Iowa 1955) (New York and Iowa); *Wireless Spectrum Technologies, Inc. v. Motorola Corp.*, 2001 WL 32852 (N.D.Ill. Jan.12, 2001) (Illinois and Patent and Trademark Office); *Indianapolis Motor Speedway Corp. v. Polaris Indus., Inc.*, 2000 WL 777874 (S.D.Ind. June 15, 2000) (Minnesota and Indiana); *T.J. Smith v. Ferris Corp.*, 1987

WL 7496 (N.D.Ill. March 2, 1987) (New York and Illinois). Although the fact that two judges are considering suits that are markedly similar is not dispositive in deciding whether a stay is warranted, clearly it provides a significant basis for circumspection.

By contrast, the manufacturer suit and the Dell suit are both before us, through the efforts of Dell to transfer from the Eastern District of Texas. Thus, there is no danger of inconsistent results or duplicative expenditure of scarce judicial resources arising from simultaneous consideration by different judges. *See Watson Industries, Inc. v. Canon, Inc.*, 2003 WL 23218401, at *1 (W.D.Wis. Nov.24, 2003) (denying motion to stay in patent infringement case against customer because, *inter alia*, manufacturer case was before identical judge). Neither does it promote judicial economy to await for ultimate resolution of the manufacturer case when there is no agreement from IP Innovation or Dell to be bound by the outcome of the issues in the manufacturer suit, enabling later disputes over subjects such as collateral estoppel, patent validity, and the party responsible for the manufacture of the products at issue. *See id.* To put off determination of these questions with respect to Dell runs the risk of the very duplication that Dell says a stay will avoid. At this time, the most sensible course of action is to put the parties on a common track.

*3 In addition, as the August 5, 2003, transcript makes clear, the stay was granted for a limited time and with a limited purpose. It was not intended to extend until the manufacturer suit was completely resolved. The purpose of the stay, to allow time to determine whether and against whom the manufacturer case would proceed, has been accomplished. Thus, there is no reason for it to continue, and we formally acknowledge what was implied in the February 9 minute order: the stay entered on August 5, 2003 is lifted.

We thus turn to the issue of the amendment of the complaint. As stated above, leave to amend is freely given when justice requires. Aside from the stay, Dell has not offered any objection of substance to the proposed amendment. Our review of its contents reveals that the addition of the claims pertaining to the '637 patent will makes the complaint in the Dell suit track the one in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2004 WL 784792 (N.D.Ill.)
(Cite as: 2004 WL 784792 (N.D.Ill.))

Page 3

manufacturer suit. Thus, allowing the amendment streamlines the contemporaneous consideration of the two suits and will improve our ability to resolve them in tandem. Neither can we detect any of the usual reasons to disallow an amendment, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman,* 371 U.S. at 182, 83 S.Ct. at 230. Accordingly, the motion for leave to file the amended complaint is granted.

### CONCLUSION

Based on the foregoing analysis, the stay initiated on August 5, 2003, in this case is lifted. This case and its companion, *IP Innovation v. Lexmark,* Case No. 02 C 7611, are consolidated for discovery purposes only. IP Innovation's motion for leave to amend the complaint against Dell is granted.

2004 WL 784792 (N.D.Ill.)

#### Motions, Pleadings and Filings (Back to top)

• 2004 WL 2174023 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Dell's Counterclaim (May. 18, 2004)

• 2004 WL 2174019 (Trial Pleading) Dell Inc.'s Answer, Affirmative Defenses and Counterclaim to Plaintiffs' Amended Complaint (Apr. 29, 2004)

• 2004 WL 2174015 (Trial Motion, Memorandum and Affidavit) Dell Inc.'s Response to Plaintiffs' Supplemental Submission in Support of Their Motion for Leave to Amend Their Complaint (Mar. 22, 2004)

• 1:03CV03245 (Docket) (May. 15, 2003)

• 2002 WL 32659698 (Trial Pleading) Answer of Defendant Dell Computer Corporation (Dec. 31, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
1996 WL 554513 (D.D.C.)
(Cite as: 1996 WL 554513 (D.D.C.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, District of Columbia.
William Anthony JONES, Plaintiff,
v.
Dr. Cesar SERVELLON and Gallaudet University,
Defendants.
**Civ. A. No. 94-1038-LFO.**

Sept. 18, 1996.

*MEMORANDUM*

OBERDORFER, District Judge:

*1 This Motion to Dismiss or, in the Alternative, for Summary Judgment arises out of a lawsuit brought by plaintiff William Anthony Jones against defendants Dr. Cesar Servellon and Gallaudet University. Jones alleges in his complaint that Servellon sexually molested him during a medical examination. Servellon previously filed a motion to dismiss, which was granted on the ground that Servellon was a federal employee at the time of the incident and therefore subject to suit only under the terms of the Federal Tort Claims Act. Gallaudet University now files a separate motion to dismiss, contending that it may not be held vicariously liable for the actions of Servellon because Servellon was not employed by Gallaudet University at the time of the incident. Gallaudet University also contends that, insofar as the complaint alleges a sexual battery, the cause of action is barred by the statute of limitations.

For the reasons stated below, the Motion to Dismiss or, in the Alternative, for Summary Judgment is granted in part and denied in part.

I.

At the time of the alleged incident in 1991, Servellon was a physician and psychiatrist employed by the National Health Services Corps of the United States Public Health Service. He was assigned to provide medical services to students at Gallaudet University in Washington, D.C., a specialized school for the deaf. Jones was a student at Gallaudet University.

On March 5, 1991, Jones went to see Servellon to be fitted with a new hearing aid. While he was being treated for excess earwax, Jones claims that Servellon negligently applied a caustic chemical to his ears, rendering him unconscious. Allegedly, as Jones faded in and out of consciousness, Servellon sexually molested him.

On March 4, 1994, approximately three years later, Jones filed suit against Servellon and Gallaudet University. Thereafter, the United States moved to substitute itself for Servellon as a defendant under the Federal Tort Claims Act. An Order dated May 5, 1995 granted the motion to substitute. The United States then filed a motion to dismiss, which was granted on the ground that Jones failed to file an administrative grievance with the Department of Health and Human Services within two years as required by the FTCA. *See* 28 U.S.C. § 2679(d)(5)(A) (1988).

Gallaudet University now moves to dismiss the complaint on two grounds: (1) that it may not be held vicariously liable for the actions of Servellon, and (2) that Jones failed to file his lawsuit within the one-year statute of limitations provided for battery claims.

II.
A.

In his complaint, Jones alleges that Gallaudet University should be held liable for the actions of Servellon under the theories of negligent hiring, negligent supervision, and/or *respondeat superior*. In order to prevail under either of these three theories, however, Jones must first be able to present evidence tending to show that Gallaudet University and Servellon maintained a master-servant relationship. *See Murphy v. Army Distaff Foundation, Inc.*, 458 A.2d 61, 62-63 (D.C.1983). Gallaudet University argues that, since it is undisputed Servellon was an employee of the Federal Government at the time of the incident, he cannot also be considered an employee of the University.

*2 The common law, however, unlike the New Testament, does not prohibit a man from serving two masters at the same time. It is well-established that an individual may be employed simultaneously by two different employers. *See* Restatement (Second) of Agency § § 226, 227 (1958); *see also Dellums v.*

_Powell,_ 566 F.2d 216, 220-22 (D.C.Cir.1978); _Safeway Stores, Inc. v. Kelly,_ 448 A.2d 856, 860-61 (D.C.1982). As expressed in the Restatement, "A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others." Restatement (Second) of Agency § 227. In determining whether a secondary master-servant relationship has been formed, the crucial factor is right of control. _See id._ § 220(2); _Safeway Stores,_ 448 A.2d at 860 & n. 10. [FN1]

> FN1. Other relevant factors that go towards defining the master-servant relationship are (1) whether the employer supplies the instrumentalities, tools, and place of work; (2) the length of employment–Servellon was appointed to serve for three years, _see_ Pl.'s Ex. 6; (3) and whether the work is part of the regular business of the employer– Gallaudet University, as one of its functions, maintained a fully staffed Student Health Service, _see_ Pl.'s Ex. 4.

In this case, although it is undisputed that Servellon was a "general servant" of the Federal Government, there is also evidence to support a finding that he was a "special servant" of Gallaudet University. The record contains deposition testimony by the Deputy Director of the National Health Services Corps explaining that members of the Corps are under the "joint responsibility" of the organization where they are placed and the Federal Government. Pl.'s Ex. 2 at 8. The Deputy Director also stated, "[T]he organization where the person is assigned is the sort of first line supervisor and first line kind of evaluator." _Id._ at 11. Elsewhere in the record are statements made by Gallaudet University acknowledging supervisory responsibility for Servellon. The minutes of a meeting conducted on June 18, 1990 noted that "Dr. Hinds [the Medical Director of Gallaudet University] would supervise Dr. Servellon on medical practice and procedure...." Pl.'s Ex. 8 at 1. Those same minutes also stipulated that "while seeing students on-campus Dr. Servellon is an agent of Gallaudet and will be covered as such (re: insurance) and liable as such...." _Id._ at 2.

In practice, it was Gallaudet University that conducted Servellon's annual performance appraisal, using a form provided by the Federal Government. The appraisal was completed and signed by Dr. Ilnez Hinds, the Medical Director of Gallaudet University. Dr. Hinds also exercised disciplinary authority over

Servellon. At one point, Dr. Hinds suspended Servellon pending the outcome of a University investigation based on the same allegations at issue here. _See_ Pl.'s Ex. 13. Since there is ample evidence in the record to support a finding that Gallaudet University was a "special employer" of Servellon, the University may be held liable for Servellon's tortious conduct.

**B.**

Both parties agree that, under the three-year statute of limitations for negligence and other causes of action, the complaint would be deemed to have been timely filed. [FN2] _See_ D.C.Code Ann. § 12-301(8) (1994). Gallaudet University, however, contends that this cause of action should be characterized as a battery, thus triggering the one-year statute of limitations. _See id._ § 12-301(4) (1994). Such an argument is unpersuasive on two bases. First, insofar as Jones alleges negligent hiring and negligent supervision on the part of Gallaudet University, those torts are independent of Servellon's intentional conduct. The D.C. Circuit has stated that a cause of action for negligent supervision or negligent training has a three-year limitations period, even if the negligent conduct of the employer results in an intentional tort by the employee. _See Hunter v. District of Columbia,_ 943 F.2d 69, 72-73 (D.C.Cir.1991).

> FN2. The alleged incident occurred on March 5, 1991, and Jones filed his complaint on March 4, 1994.

*3 Second, regarding the cause of action under _respondeat superior,_ although the legal analysis is slightly more complicated, the result is substantially the same. Unlike a claim for negligent hiring or negligent supervision, a claim under _respondeat superior_ does not allege a separate and distinct tort by the employer, but rather holds the employer vicariously liable for torts of the employee. Thus, the applicable statute of limitations for _respondeat superior_ depends upon the nature of the torts alleged to have been committed by the servant. In his complaint, Jones alleges four causes of action against Servellon. Count I alleges medical malpractice based on the negligent application of a caustic chemical used to clean Jones's ears. That same count, however, also alleges sexual battery. To the extent that Jones seeks to have Gallaudet University held accountable for battery under _respondeat superior,_ the cause of action is time-barred. Jones may not avoid the statute of limitations by cloaking his battery claim in the language of negligence or

Not Reported in F.Supp.
1996 WL 554513 (D.D.C.)
(Cite as: 1996 WL 554513 (D.D.C.))

Page 3

medical malpractice. *See Maddox v. Bano,* 422 A.2d
763, 764- 65 (D.C.1980) (citing *Morfessis v. Baum,*
281 F.2d 938 (D.C.Cir.1960)). Of course, with
regard to any negligence on the part of Servellon
leading up to the sexual contact, Jones may proceed
against Gallaudet University.

Count II alleges a negligent failure to provide
informed consent regarding the nature of the ear-
cleaning procedure and use of the caustic chemical.
Although the tort of failure to provide informed
consent is one flip-side to the tort of battery, the D.C.
Circuit has held that the two causes of action are
analytically different and are subject to different
statutes of limitations. *See Canterbury v. Spence,* 464
F.2d 772, 793 (D.C.Cir.1972). The Court in
*Canterbury* specifically held that a claim for failure
to provide informed consent is governed by the three-
year provision. *Id.* Again, however, Count II also
includes allegations relating to the sexual battery, and
to the extent that Jones seeks to hold Gallaudet
University liable for Servellon's failure to provide
informed consent to such a battery, the claim is time-
barred.

Count III alleges intentional infliction of emotional
distress, which Jones concedes is time-barred.

Count IV alleges, as an alternative and inconsistent
cause of action, that Jones may have consented to the
sexual contact, but even so, Servellon was negligent
in his actions because he should have known that he
would cause emotional distress. Although it is not
clear that a complaint alleging consensual sexual
relations, even in a doctor-patient relationship, states
a cause of action for negligent infliction of emotional
distress, *see Simmons v. United States,* 805 F.2d
1363, 1366 (9th Cir.1986) ("[C]ourts do not routinely
impose liability upon physicians in general for sexual
contact with patients."), in any event, Gallaudet
University does not raise that issue here. What is
clear is that negligent infliction of emotional distress
arising from consensual sexual relations, if it is a tort,
is one distinct from battery. Therefore, the three-
year statute of limitations applies.

### III.

**\*4** Gallaudet University's Motion to Dismiss or, in
the Alternative, for Summary Judgment is granted in
part insofar as Gallaudet University seeks to avoid
liability under *respondeat superior* for Servellon's
alleged sexual battery and intentional infliction of
emotional distress. In all other respects, the motion
is denied.

### ORDER
It is this 11th day of September 1996 hereby

ORDERED: that defendant Gallaudet University's
Motion to Dismiss or, in the Alternative, for
Summary Judgment is GRANTED IN PART insofar
as Gallaudet University seeks to avoid liability under
*respondeat superior* for Servellon's alleged sexual
battery and intentional infliction of emotional
distress, and is DENIED IN PART with respect to all
other claims; and it is further

ORDERED: that a status conference to discuss
further administration of this case is scheduled for
*October 24, 1996 at 10:00 a.m. in Courtroom 3.*

1996 WL 554513 (D.D.C.)

**Motions, Pleadings and Filings (Back to top)**

•         1:94CV01038         (Docket)
(May. 11, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
1996 WL 273674 (E.D.Pa.)
(Cite as: 1996 WL 273674 (E.D.Pa.))

Page 1

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Nagesh SHIRSAT
v.
MUTUAL PHARMACEUTICAL CO., INC.
No. CIV. A. 93-3202.

May 15, 1996.

MEMORANDUM AND ORDER
HUTTON, Judge.

*1 Presently before the Court are plaintiff's motion for leave to file an amended complaint and defendant's opposition.

### I. BACKGROUND

This civil action involves plaintiff's allegations that he was wrongfully discharged from his employment with Mutual Pharmaceutical Co., Inc. ("Mutual") on April 30, 1992. Plaintiff commenced this action on June 15, 1993, naming only Mutual as a defendant. In his complaint, plaintiff alleges that Mutual terminated his employment in retaliation for his complaints and stated intention to report to the authorities certain of Mutual's alleged practices in violation of the Federal Food, Drug, and Cosmetic Act and the rules and regulations of the Federal Food and Drug Administration.

After plaintiff filed this case, attorneys for the government filed a motion to stay plaintiff's civil action pending the government's ongoing criminal investigation of Mutual. Plaintiff did not oppose the stay, and, accordingly, this Court issued a stay in January of 1994.

As a result of the government's criminal investigation, Mutual pleaded guilty to a seven count indictment and entered into a non-appealable plea agreement in which Mutual agreed to pay a fine of $3.25 million. In addition to the government's indictment against Mutual, the government also indicted four employees of Mutual and proceeded to trial against them.

Following the conclusion of the employees' criminal trial, this Court lifted the stay in this case in May of 1995. In July of 1995, plaintiff retained new counsel. Subsequently, in October of 1995, the parties entered into an agreement staying the action once again until January 15, 1996.

Plaintiff now moves to amend his complaint to add Richard Roberts ("Roberts"), the president of Mutual, as a defendant, to add three new counts against Mutual and Roberts, and to "flesh out" his previous factual allegations. The three new counts involve claims for intentional infliction of emotional distress, interference with "financially beneficial employment relations," and interference with prospective contractual relations.

### II. DISCUSSION

#### A. Amendment of Pleadings in General

Rule 15(a) of the Federal Rules of Civil Procedure provides that, when a responsive pleading has already been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Such leave is within the discretion of the court. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971); Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir.1993).

#### B. Addition of Roberts

When an amendment seeks to change or add a party, and the amendment is sought outside of the statute of limitations period (as in this case), Rule 15(c)(3) provides that the amendment relates back to the date of the original pleading when: (1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (2) the party to be brought in by the amendment has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits; (3) the party to be brought in knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party; and (4) the second and third requirements are satisfied within the period provided by Federal Rule of Civil

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
1996 WL 273674 (E.D.Pa.)
(Cite as: 1996 WL 273674 (E.D.Pa.))

Page 2

Procedure 4(m).

**\*2** This Court concludes that the third requirement has not been met in this case. In _Advanced Power Systems v. Hi-Tech Systems, 801 F.Supp. 1450 (E.D.Pa.1992)_, the court explained that "[t]he 'mistake' condition does not isolate a specific type or form of error in identifying parties, but rather is concerned fundamentally with the new party's awareness that failure to join it was error rather than a deliberate strategy." _Id. at 1457._ In determining whether a party considered its omission from a law suit an error or a deliberate legal strategy, courts may consider the close identity of interest between an omitted party and a named party, _Advanced Power Systems, 801 F.Supp. at 1457_, and the plaintiff's awareness of the omitted party as a potential defendant. See _Kilkenny v. Atlantic Richfield Co., 800 F.2d 853, 857 (9th Cir.1986)_ (no relation back where plaintiff, inter alia, failed to amend her complaint after being informed of potential defendants), _cert. denied, 480 U.S. 934 (1987)_; _Potts v. Allis-Chalmers Corp., 118 F.R.D. 597 (N.D.Ind.1987)_ (where plaintiff should have been aware of proper defendant at the outset, delay in amending complaint could be viewed by defendant as strategy, rather than mistake); _Curry v. Johns-Manville Corp., 93 F.R.D. 623 (E.D.Pa.1982)_ (no relation back where third-party defendants were impleaded five months before plaintiffs moved to add them as direct defendants, because defendants could have interpreted plaintiffs' decision as strategy not error). As the Ninth Circuit has explained, Rule 15(c)(3) "was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation." _Kilkenny, 800 F.2d at 857-58._

In this case, it was reasonable for Roberts to view his omission as a deliberate legal strategy by plaintiff, not merely an error. Plaintiff's asserted reason for adding Roberts at this time is that testimony elicited during the criminal trial of Mutual's employees revealed facts establishing Roberts' liability for plaintiff's wrongful termination. Specifically, plaintiff allegedly learned that Roberts instructed the director of human resources to offer plaintiff the opportunity to resign, in lieu of termination, if plaintiff agreed not to report Mutual's violations to the

appropriate authorities.

The Court finds this reason unconvincing. Obviously, the plaintiff was aware of the offer to resign at the time he was terminated. Indeed, plaintiff states that he "refused to resign under these conditions and was therefore terminated." (Pl.'s Mem. at 11). In addition, at the time of termination, several employees of Mutual were present, including the director of human resources, a private investigator, and at least one management personnel. (Pl.'s Ex. B at 2908). At no time before the present motion was filed, however, did plaintiff attempt to sue any of Mutual's employees individually. Plaintiff did not include in his suit the director of human resources, who allegedly communicated the offer of resignation to him. In addition, despite the obvious involvement of management in plaintiff's termination, plaintiff did not attempt to sue any of Mutual's managers individually before the present motion was filed. Nor did plaintiff include a "John Doe" defendant at any time. Thus, notwithstanding plaintiff's knowledge of potential individual defendants to this action, plaintiff never attempted to sue, or gave any indication that he would sue, such individuals.

**\*3** Moreover, despite the fact that plaintiff learned of Roberts' involvement in March of 1995, [FN1] that the stay in this case was lifted in May of 1995, and that the parties did not agree to a further stay until October of 1995, plaintiff did not file this motion to amend until a month after the second stay ended. Such a delay provides further indication that plaintiff now seeks to change a legal strategy, rather than correct an error. [FN2]

> FN1. Plaintiff allegedly learned of Roberts' involvement through the trial testimony of Michael Smith, Mutual's director of human resources. A portion of the transcript of Mr. Smith's testimony is attached as plaintiff's exhibit B and dated March 21, 1995.

> FN2. Although plaintiff hired new counsel in July of 1995, and counsel understandably needed time to familiarize themselves with the case, the Court once again notes that the events surrounding plaintiff's termination, except for Roberts' alleged complicity, were clearly established from the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



beginning. Therefore, if there had been an error in not suing individual employees or managers of Mutual, one would believe that such an error would have been easily spotted early on in counsel's review of the case.

Finally, the Court notes that plaintiff's position before this time is well summarized in his testimony given at the criminal trial of Mutual's employees:

Q. Okay. Now, you would agree that the management of Mutual is who you're claiming violated your rights; is that correct?

A. The company on whole as such violated my rights. (Def.'s Ex. B at 131).

It is clear that, in light of plaintiff's knowledge of pertinent events and potential individual defendants within the statute of limitations period and plaintiff's delay in filing this motion, plaintiff's failure to sue any individual defendants can reasonably be viewed as deliberate legal strategy, not merely error. Therefore, the Court will not allow the addition of Roberts as a defendant.

### C. Addition of New Claims

When a new claim is sought to be added, denial of leave may be based upon, among other grounds, the futility of amendment. *Lorenz*, 1 F.3d at 1413 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Futility of amendment has generally been construed as meaning that a court should refuse to allow an amendment that would not survive a motion to dismiss. *Williams v. Bensalem Racing Assoc., Inc.*, Civ. A. No. 94-5777, 1995 WL 395951, at *2 (E.D.Pa, June 29, 1995); *see Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937 (1983).

As always, when considering a motion to dismiss for failure to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court shall take all allegations contained in the complaint as true and construe them in the light most favorable to the plaintiff. *H.J. Inc. v. Northwest Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). The complaint shall only be dismissed if " 'it is clear that no

relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Northwest Bell*, 492 U.S. at 249-50 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

In addition, when considering a motion to dismiss for insufficient specificity under Rule 8(a) of the Federal Rules of Civil Procedure, the Supreme Court has held that a complaint must provide the defendants with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The Third Circuit has interpreted the fair notice requirement to mean that the "crucial questions are whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Frazier v. Southeastern Penn. Transp. Auth.*, 785 F.2d 65, 68 (3d Cir.1986). Generally, the court explained that a complaint is sufficiently specific when it sets forth the conduct complained of, the time, the place, and those responsible. *See id.* at 67-68.

### 1. Count Two: Intentional Infliction of Emotional Distress

*4 In count two, plaintiff alleges intentional infliction of emotion distress by Mutual. Mutual argues that plaintiff's intentional infliction of emotional distress claim should be dismissed because the Pennsylvania Worker's Compensation Act ("PWCA") provides the exclusive remedy for plaintiff's employment-related claim.

In most cases, the PWCA is the exclusive remedy of an employee for an injury arising in the course of employment. *Price v. Philadelphia Elec. Co.*, 790 F.Supp. 97, 99 (E.D.Pa.-1992). An exception exists, however, for injuries caused to an employee by the intentional conduct of a fellow employee who was motivated by personal animosity towards the other. *Id.* For example, the PWCA does not bar intentional infliction of emotional distress claims for sexual or racial harassment by a fellow employee. *Id.* at 100.

In this case, the plaintiff has not alleged any conduct by an employee of Mutual that was motivated by personal animosity towards the plaintiff. Although plaintiff alleges that the acts of Mutual's employees were willful and malicious, (Am.Compl.¶ 28), it is clear from the complaint

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



that this animosity is related to business considerations, rather than to any personal characteristics of plaintiff (as, for example, sexual or racial harassment would be). *See Whitney v. Xerox Corp.*, C.A. No. 94-CV-3852, 1994 WL 412429, *6 (E.D.Pa. Aug. 2, 1994) (emotional distress caused as a result of campaign by plaintiff's supervisors to force him out after plaintiff reported the unlawful activities of some fellow employees and thereby embarrassed his supervisors was due to "business related animosity" and barred by the PWCA); *Tiscornia v. Sysco Corp.*, Civ. A. No. 95-3178, 1995 WL 574334, *4 (E.D.Pa. Sept. 26, 1995) (injuries caused to plaintiff as a result of blowing the whistle on his supervisor's wrongdoing were motivated by "business related animosity" and barred by PWCA).

Even if the claim were not barred, however, the facts alleged do not support a claim of intentional infliction of emotional distress. A viable claim of intentional infliction of emotional distress must allege conduct that is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa.Super.1987)).

The Third Circuit in *Cox* noted that:

At the outset, it must be recognized that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress. In the context of a dismissal, it has been noted that "while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event" and cannot provide the basis for recovery for intentional infliction of emotional distress. Moreover, courts applying Pennsylvania law have failed to find conduct outrageous where an employer deceived an employee into foregoing other employment, or even where the employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult.

*5 *Cox*, 861 F.2d at 395 (citations omitted).

In *Cox*, the Third Circuit found that where an employer

fired an employee on the first day back to work, knowing that the employee had undergone triple bypass surgery, knowing that the employee's physical and emotional recuperation were not complete, knowing that by firing the employee "it was endangering his chances of collecting medical and disability benefits," and knowing that by firing the employee "it was depriving him of a valuable therapeutic tool and jeopardizing his chances to obtain alternate employment," the dismissal of the employee, while performed with "an improper motive and notwithstanding the potential effects on [the employee]," did not rise to the level of outrageousness which is required under Pennsylvania law. *Id.* at 395-96.

In this case, plaintiff has merely alleged that his improper termination was the sole cause of his emotional suffering. Plaintiff alleges no circumstances surrounding his termination that would rise to the level of outrageousness as explained in *Cox*. Accordingly, plaintiff has failed to state a cause of action for intentional infliction of emotional distress, and this amendment would be futile.

### 2. Count Three: Interference with Employment Relations

In count three, plaintiff claims Roberts interfered with plaintiff's "financially beneficial employment relations" with Mutual. Even assuming such a cause of action exists, since the Court has not granted leave to add Roberts as a defendant, this count cannot stand.

### 3. Count Four: Interference with Prospective Contractual Relations

In count four, plaintiff alleges that Roberts and Mutual interfered with prospective contractual relationships between plaintiff and other pharmaceutical companies. Mutual argues that plaintiff has failed to allege with adequate specificity such prospective contractual relationships.

In *Advanced Power Systems v. Hi-Tech Systems*, 801 F.Supp. 1450 (E.D.Pa.1992), the court explained that:

[E]ven at the pleading stage, a plaintiff may not rest a claim for tortious interference with prospective contractual relations on a mere hope that additional



contracts ... would have been forthcoming but for defendant's interference. The complaint must allege facts that, if true, would give rise to a reasonable probability that particular anticipated contracts would have been entered into.

*Id.* at 1459.

In his complaint, the plaintiff merely alleges that "Plaintiff's difficulty in obtaining work in the pharmaceutical industry is directly attributable to the circumstances underlying this matter," (Am.Compl.¶ 44), and "Defendant Mutual and Defendant Roberts have intentionally interfered with prospective contractual relationships between Plaintiff and other pharmaceutical companies with an intent to harm the Plaintiff by preventing any such relationships from accruing." (Am.Compl.¶ 45).

These allegations are inadequately specific to support a claim for interference with prospective contractual relations. Plaintiff does not specify any particular relation that was allegedly interfered with, what conduct by Mutual and Roberts amounted to interference, or facts that would give rise to a reasonable probability that, but for the interference, the particular anticipated contracts would have been entered into. Thus, the Court will not allow this amendment as well.

D. *"Fleshing Out" of Previous Factual Allegations*

*6 Plaintiff claims that, in addition to seeking leave to add a defendant and new counts, he is "using this opportunity to provide more specificity to Plaintiff's factual allegations. Defendant should not be heard to challenge Plaintiff's Motion to File an Amended Complaint on this basis insofar as the Amended Complaint simply 'fleshes out' the details of Plaintiff's original pleading." (Pl.'s Mem. at 12-13 n. 5). Mutual has not challenged these amendments.

### III. *CONCLUSION*

For the foregoing reasons, plaintiff's motion is granted in part and denied in part. An appropriate Order follows.

### *ORDER*

AND NOW, this 13th day of May, 1996, upon consideration of Plaintiff's Motion for Leave to File an Amended Complaint, IT IS HEREBY ORDERED that Plaintiff's

Motion is GRANTED in part and DENIED in part.

1996 WL 273674 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:93CV03202 (Docket) (Jun. 15, 1993)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.

1997 WL 261357 (N.D.Ill.)

(Cite as: 1997 WL 261357 (N.D.Ill.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois.
Eric **WHITE**, Plaintiff,
v.
Wilbert **WILLIAMS** and Michael Sheahan, Sheriff
of Cook County, Defendants.
No. 94 C 3836.

May 8, 1997.

MEMORANDUM OPINION AND ORDER

PLUNKETT

*1 In November 1996, Eric White ("White") filed his second amended complaint naming Cook County Sheriff Michael Sheahan ("Sheahan") as a defendant. Sheahan has moved to dismiss on the grounds that the statutes of limitations on the claims asserted against him have expired. For the reasons set forth below, Sheahan's motion is granted in part and denied in part.

*Background*
On March 12, 1994, defendant Wilbert Williams' ("Williams") shot White during a traffic dispute. Williams was employed as a Cook County Deputy Sheriff at the time.

On June 23, 1994, White filed a two-count complaint against Williams. Count I was a 42 U.S.C. § 1983 ("Section 1983") excessive force claim asserted against Williams in his official capacity as a deputy sheriff. Count II was a state law battery claim.

Williams moved to dismiss the official capacity

claim because the complaint failed to allege that he acted pursuant to an official custom, policy or practice of the Cook County Sheriff's Department. On December 7, 1994, this Court granted Williams' motion, but stated: "the dismissal in his official capacity is without prejudice and plaintiff may pursue discovery on the issue of whether defendant acted pursuant to an alleged custom or policy or practice."

Shortly thereafter the Court stayed discovery in the case pending completion of Williams' criminal trial. [FN1] On September 12, 1995, the Court lifted the discovery stay "as to matters not directly related to the conduct of the defendant ... on 3/12/94." On April 23, 1996, the stay of discovery was lifted. [FN2]

On September 16, 1996, Williams was deposed. White contends that the deposition testimony finally provided him with an adequate factual basis to allege a Section 1933 policy claim. On November 13, 1996, White filed his second amended complaint adding Sheahan as a defendant and asserting a Section 1983 claim and a state law negligence claim against him. Sheahan contends that White can maintain neither claim because the statute of limitations applicable to each has expired.

*The Legal Standard*
Oddly, Sheahan has styled his motion as Fed.R.Civ.P. ("Rule") 12(b)(2) motion to dismiss for lack of personal jurisdiction. Personal jurisdiction in this case depends upon Sheahan having the requisite minimum contacts with the State of Illinois, not on the timeliness of White's claims. *Rodriguez v. City of Milwaukee*, No. 94 C 7748, 1995 WL 704760, at * 3 (N.D.Ill. Nov. 29, 1995) (citing *Burstein v. State Bar of Cal.*, 693 F.2d 511, 517 (5th Cir.1982)). Given the office ne occupies, there can be little doubt that Sheahan's contacts with this State are sufficient to make him amenable to suit here.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1997 WL 261357 (N.D.Ill.)

(Cite as: 1997 WL 261357 (N.D.Ill.))

Page 2

Sheahan's motion should have been styled as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Accordingly, the Court will analyze it as such. On a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

### Discussion

**\*2** The statute of limitations for Section 1983 actions brought in Illinois is two years. *Kalimara v. Illinois Dep't of Corrections,* 879 F.2d 276, 277 (7th Cir.1989); *Farrell v. McDonough,* 966 F.2d 279, 281 (1992), *cert. denied,* 506 U.S. 1084 (1993) (expressing continued adherence to *Kalimara* ). The statute of limitations for state law claims against local government officials is one year. 745 Ill.Comp.Stat. 10/8-101. White did not file his claims against Sheahan until November 1996--two years and eight months after the altercation with Williams Thus, unless these statutes were tolled, both of White's claims against Sheahan are time-barred.

When federal courts borrow state statutes of limitations, as they do for Section 1983 claims, they also borrow any applicable state tolling provisions. *Smith v. City of Chicago Heights,* 951 F.2d 834, 839-40 (7th Cir.1992) (quoting *Johnson v. Railway Express Agency,* 421 U.S. 454, 463-64 (1975)). Moreover, courts in the Seventh Circuit apply federal tolling provisions in addition to--not in place of--state tolling provisions. *Id.* Thus, White can invoke any federal or state tolling provision to try to save his claims. White contends that two such provisions apply: the federal doctrine of equitable tolling and the state "stay of action" tolling statute. (Pl.'s Resp. at 5-9.)

The doctrine of equitable tolling allows a plaintiff to avoid a statute of limitations bar "if despite all due diligence he is unable to obtain vital

information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1991), *cert. denied,* 501 U.S. 1261 (1991) (citations omitted). White claims that despite his diligence, the stay of discovery prevented him from gathering the information necessary to state a Section 1983 policy claim against Sheahan.

The record in this case belies White's claims of diligence. White filed his first complaint in this action in June 1994. Discovery was not stayed until December 1994. Thus, White had six months to conduct discovery on the policy claim before the stay was entered. Unfortunately, he did nothing. Given this six month lapse, White has not demonstrated the diligence necessary for application of the doctrine of equitable tolling.

Even if White had been diligent prior to the stay, equitable tolling would still not save his negligence claim against Sheahan. As noted above, that claim has a one year statute of limitations which started on March 12, 1994. 745 Ill.Comp.Stat. 10/8-101. Thus, even if the statute had been tolled from December 7, 1994 until April 23, 1996, it still would have expired in July 1996--four months before White filed his claim. In short, White cannot rely on the equitable tolling doctrine to save either of his claims against Sheahan.

White also asserts that the state "stay of action" statute tolled the limitations periods on his claims. That statute excludes from the applicable limitations period the time during which an injunction or other court order stays the commencement of an action. 735 Ill.Comp.Stat. 5/1-216. Unlike the doctrine of equitable tolling, the "stay of action" statute does not require a demonstration of diligence. *Id.*

**\*3** Though the statute is not often invoked, at least one court has applied it to a case much like this one. *See Doe v. Bobbitt,* 698 F.Supp. 1415 (N.D.Ill.1988), *rev'd on other grounds,* 881 F.2d 510 (7th Cir.1989). The plaintiff in Doe discovered facts sufficient to file a claim only after the court lifted a two year stay of discovery and the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1997 WL 261357 (N.D.Ill.)

(Cite as: 1997 WL 261357 (N.D.Ill.))

Page 3

applicable statute of limitations had run. When plaintiff amended her complaint, the newly added defendant moved to dismiss.

The court denied the motion. In the court's view, the discovery stay and the requirements of Rule 11 trapped plaintiff in a procedural Catch-22. She could either file an unfounded claim within the limitations period or a well-grounded one after the limitations period expired. *Id.* at 1419. Recognizing the inequity of the situation, the court held that the applicable limitations period was tolled during the discovery stay by the "stay of action" statute. *Id.* at 1419.

The instant case is very similar to *Doe.* As in *Doe,* White could not gather the facts necessary for his policy claim while discovery was stayed. Nor could he, consistent with Rule 11, file a claim without them. He too faced an unpalatable choice: risk Rule 11 sanctions by filing a claim based only on conjecture or risk losing the claim entirely by amending the complaint after the statute of limitations expired. This is precisely the kind of procedural morass that tolling statutes are designed to prevent. Accordingly, as in *Doe,* this Court holds that the Section 1983 limitations period was tolled during the sixteen month discovery stay. Thus, White's Section 1983 claim against Sheahan was timely filed on November 16, 1996. [FN3]

The Court's holding does not, however, save White's negligence claim. As discussed above, even if the one year limitations period was tolled during the discovery stay, it still expired four months before White filed his claim. With or without tolling, White's negligence claim against Sheahan is time-barred and must be dismissed.

### Conclusion

Sheahan's Rule 12(b)(6) motion to dismiss is granted in part and denied in part. White's negligence claim against Sheahan is time-barred and is dismissed. White's Section 1983 claim against Sheahan was filed timely and stands.

DATED: May 6, 1997

FN1. The court record does not reflect the date the stay was entered nor does it describe the exceptions, if any, to the stay order. White claims that the stay was entered shortly after December 7, 1994 and that all discovery was stayed. Because Sheahan does not dispute these representations, the Court will accept them as true.

FN2. White asserts that the stay was lifted "about [the] time" Williams' criminal trial was completed in July 1996. The court record establishes that the stay was lifted on April 23, 1996.

FN3. In reaching this holding, the Court specifically rejects Sheahan's contention that artful notice pleading can substitute for pre-filing investigation. Contrary to Sheahan's belief, if White had filed his policy claim without an adequate factual basis, he would have been subject to Rule 11 sanctions.

1997 WL 261357 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 1:94CV03836 (Docket)

(Jun. 23, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | : Civil Action No. CV 97-3496 (WGB) |
| | : |
| Plaintiff, | : Hon. William G. Bassler |
| | : |
| vs. | : |
| | : |
| CRISTO PROPERTY MANAGEMENT, | : |
| LTD., a/k/a G.J.L. LIMITED, et al. | : **PROPOSED ORDER** |
| | : |
| Defendants. | : |
| | : |

**THIS MATTER** having been opened to the Court by Defendants Irene
DiFeo ("DiFeo"), Stewart Title Guaranty Company ("Stewart Title") and Weichert
Realtors ("Weichert") by way of three separate motions to dismiss Plaintiff's Third
Amended Complaint, and the Court having considered the submissions of the parties and
argument of counsel, and for the reasons set forth on the record and for good cause
shown;

**IT IS**, on this _____ day of _____, 2005

**ORDERED** that the motions to dismiss Plaintiff's Third Amended
Complaint filed by Defendants DiFeo, Stewart Title and Weichert are hereby denied with
prejudice; and it is

**FURTHER ORDERED** that copies of the within Order be served upon
all parties in this action within _____ days.

_____
Hon. William G. Bassler, U.S.D.J.

## CERTIFICATE OF SERVICE

I certify that on June 3, 2005, I caused to be served Plaintiff's Consolidated Memorandum in Opposition to Defendants Irene Difeo, Stewart Title Guaranty Company and Weichert Realtors' Motion to Dismiss Plaintiff's Third Amended Complaint, the Declaration of Robert A. Magnanini and a proposed form of Order, via Federal Express and electronic mail (Messrs. Alworth and McCusker only) upon the following parties:

Irene DiFeo, **Pro Se**
5 Leann Court
Old Bridge, NJ 08857

Frederick W. Alworth, Esq.
Gibbons, Del Deo
One Riverfront Plaza
Newark, NJ 07102
**For Stewart Title Insurance Co.**

John B. McCusker, Esq.
McCusker, Anselmi, Rosen, Carvelli & Walsh
127 Main Street
Chatham, NJ 07928
**For Weichert Realtors**

and via Regular Mail upon the parties set forth on the attached Service List.

Dated: June 3, 2005

By: _____
Robert A. Magnanini (RAM 7356)
BOIES, SCHILLER & FLEXNER LLP
150 John F. Kennedy Parkway, 4th floor
Short Hills, New Jersey 07078
(973) 218-1111
Counsel for Plaintiff Walsh Securities

1

WALSH SECURITIES V. CRISTO MANAGEMENT LTD.
Civil Action CV 97-3496 (WGB)

SERVICE LIST

Richard Calanni, **Pro Se**
1 Old Farm Road
Tinton Falls, NJ 07724

Richard DiBenedetto, **Pro Se**
153 Stephens Lane
Matawan, NJ 07430

Mark W. Cantanzaro, Esq.
Blason IV – Suite 208
513 South Lenola Road
Moorestown, NJ 08057
**For Richard Pepsney and Donna Pepsney**

Michael H. Freeman, Esq.
Greenberg Dauber Epstein & Tucker
One Gateway Center – Suite 600
Newark, NJ 07102
**For Anthony M. Cicalese**

Joseph V. Sorrentino, Esq.
404 Manor Road
Staten Island, NY 10314
**For William J. Kane, Cristo Property Management Ltd. a/k/a GJL Ltd., Oakwood
Properties, Inc. and DEK Homes of N.J.**

Martin R. McGowan, Esq.
Methfessel & Werbel
3 Ethel Road, Suite 300
Edison, NJ 08818
**For Coastal Title Insurance Co.**

Theodore Daunno, Esq.
1033 Clifton Avenue
Clifton, NJ 07013
**For Lawrence J. Cuzzi**

Anthony Argiropoulos, Esq.
Fox, O'Brien, Rothschild & Frankel
997 Lenox Drive

2

Lawrenceville, NJ 08648
**For Nations Title Insurance Co. of New York and Fidelity National Title
Insurance Co. of New York**

Thomas Brodo, **Pro Se**
139B Fort Lee Road
Teaneck, NJ 07666

Andrew L. Indeck, Esq.
Scarinci & Hollenbeck
1100 Valleybrook Avenue
Lyndhurst, NJ 07071
**For Garden State Indemnity Company**

Thomas D. Flinn, Esq.
Garrity, Graham, Favetta & Flinn
1 Lackawanna Plaza
Montclair, NJ 07041
**For Anthony M. Cicalese**

Pasquale Menna, Esq.
Kauff & Menna
170 Broad Street
Red Bank, NJ 07701
**For Roland J. Pierson**

Edward C. Bertucio, Jr., Esq.
Hobbie, Corrigan, Bertucio & Tashjy
125 Wyckoff Road
Eatontown, NJ 07724
**For Michael Alfieri**

Robert J. Reilly, III, Esq.
Reilly, Supple & Wischusen, LLC
Murray Hill Officenter
571 Central Avenue
New Providence, N.J. 07974
**For Michael Alfier (as to Count VI Only)**

James R. Brown, **Pro Se**
1089 Cedar Avenue
Union, NJ 07083
212-340-9566

Anthony D'Appolito, **Pro Se**
909 Woodland Avenue
Wall Township, NJ 07719

Stanley Yacker, Esq., **Pro Se**
c/o Monmouth Title
188 East Bergen Place
Red Bank, NJ 07701

4