# B O I E S,    S C H I L L E R    &    F L E X N E R    L L P

150 JOHN F. KENNEDY PARKWAY • 4TH FLOOR • SHORT HILLS, NJ 07078 • PH 973 218 1111 • FAX 973 218 1106

June 3, 2005

## VIA FEDERAL EXPRESS AND ELECTRONIC MAIL

Irene DiFeo
5 Leann Court
Old Bridge, NJ 08857

Frederick W. Alworth, Esq.
Gibbons, Del Deo
One Riverfront Plaza
Newark, NJ 07102

John B. McCusker, Esq.
McCusker, Anselmi, Rosen, Carvelli & Walsh
127 Main Street
Chatham, NJ 07928

> Re:   Walsh Securities, Inc. v. Cristo Property Management, LTD., et al.
>         Civil Action No.: 97-3496 (WGB)

Dear Counsel and Ms. Difeo:

On behalf of Plaintiff Walsh Securities, Inc. ("Walsh Securities"), and pursuant to Local Civil Rule 7.1(b) (Optional Motion Procedure – Appendix N), enclosed please find the following:

1.   Plaintiff's Consolidated Memorandum in Opposition to Defendants Irene Difeo, Stewart Title Guaranty Company and Weichert Realtors' Motion to Dismiss Plaintiff's Third Amended Complaint;

2.   The Declaration of Robert A. Magnanini;

3.   A proposed form of Order; and

4.   A Certificate of Service.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

      Additionally, I have today electronically filed a copy of this letter, without enclosures, with the Court.

Very truly yours,

Robert A. Magnanini

RAM/r
Enclosures

cc: All Parties (Via Regular Mail w/encls.)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | : Civil Action No. CV 97-3496 (WGB) |
| | : |
| Plaintiff, | : Hon. William G. Bassler |
| | : |
| v. | : |
| | : |
| CRISTO PROPERTY MANAGEMENT, | : |
| LTD., a/k/a G.J.L. LIMITED, et al. | : |
| | : |
| Defendants. | : |
| | : |

**PLAINTIFF'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS IRENE DIFEO, STEWART TITLE GUARANTY COMPANY
AND WEICHERT REALTORS' MOTIONS TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT**

Robert A. Magnanini (RM 7356)
Christopher Iannicelli (CI 7904)
BOIES, SCHILLER & FLEXNER LLP
150 John F. Kennedy Parkway, Fourth Floor
Short Hills, NJ 07078
973-218-1111

Attorneys for Plaintiff
Walsh Securities, Inc.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .....................................................................................2

PROCEDURAL HISTORY.....................................................................................5

LEGAL ARGUMENT ...........................................................................................7

I.  PLAINTIFF HAS STATED VIABLE CLAIMS AGAINST THE MOVING
    DEFENDANTS ...........................................................................................7

    A. The Applicable Statutes of Limitations on Plaintiff's Claims Against the
       Moving Defendants Have Not Passed. ..................................................9

       1. The Court's April 28, 1998 Stay and Later Extensions and The May 30,
          2000 Administrative Dismissal of the Action Tolled the Running of the
          Statute of Limitations as to all Claims. ............................................9

          i.  The Stay and Administrative Dismissal Caused the Action to Be
              Removed From the Docket and Walsh Securities Was Left Without
              Any Opportunity to Move to Amend Until the Action Was Reinstated
              on or about September 30, 2004. ............................................9

       2. The Claims Against the Moving Defendants Relate Back to the Original
          Complaint. ...............................................................................14

       3. The Six-Year Statute of Limitations on Plaintiff's Common-Law Fraud
          Claims against DiFeo Has Not Passed. ......................................17

       4. The Statute of Limitations on Plaintiff's *Respondeat Superior* Claim
          Against Weichert Has Not Passed. ............................................18

       5. The Statute of Limitations on Plaintiff's Breach of Contract Claim
          Against Stewart Title Has Not Passed. .......................................19

          i.  Stewart Title is Estopped From Invoking the Statute of Limitations
              Defense it Has Raised. ..........................................................19

              a.  The Title Insurance Was Issued by Stewart Title to Protect
                  Plaintiff From the Very Losses Alleged in the Third Amended
                  Complaint. .....................................................................19

b.   Walsh Securities Made Claims to Stewart Title for Coverage Under Various Title Insurance Policies for Losses Alleged in the Third Amended Complaint. .................................................................20

c.   The Parties Engaged in Extensive and Lengthy Settlement Negotiations Concerning Walsh Securities' Claims for Coverage Which Stewart Title Abruptly Ended When the Court Stayed the Action in 1998. ......................................................................................20

d.   Stewart Title Lulled Walsh Securities Into A False Sense of Security By Representing That its Claims Would Be Amicably Settled Without the Need for Litigation. ..................................................21

6.   Walsh Securities Could Not Have Brought Separate Proceeding Against the Moving Defendants During the Period Between the Administrative Dismissal and the Reinstatement Given New Jersey's Entire Controversy Doctrine. ........................................................................................22

7.   A Finding That Plaintiff's Claims Are Time-Barred Would Not Effectuate the Purposes of a Period of Limitations. ..........................................23

CONCLUSION .....................................................................................................................25

## TABLE OF AUTHORITIES

## FEDERAL CASES

*ALA v CCAIR, Inc*, 29 F.3d 855 (3d Cir. 1994) ................................................................7

*Berndt v. Tennessee*, 796 F.2d 879 (6th Cir. 1986) .......................................................16

*Bougher v. Univ. of Pittsburgh*, 882 F.2d 74 (3d Cir. 1989) .........................................17

*Cinnaminson Twp Bd. of Ed. v. U.S. Gypsum Co.*, 552 F. Supp. 855 (D.N.J. 1982) ...................11

*Cito v. Bridgewater Township Police Dep't*, 892 F.2d 23 (3d Cir. 1989)........................7

*Conley v. Gibson*, 355 U.S. 41 (1957) ...............................................................................7

*Curry v. Johns-Manville Corp.*, 93 F.R.D. 623 (E.D.Pa. 1982) ....................................15

*Doe v. Bobbitt,* 698 F. Supp. 1415 (N.D. Ill. 1988) .........................................................13

*Eakins v. Reed*, 710 F.2d 184 (4th Cir. 1983)................................................................16

*Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.,*
    87 F. Supp. 2d 394 (D.N.J. 2000) ..........................................................................13, 14

*Fields v. Blake*, 349 F. Supp. 2d 910 (E.D.Pa. 2004) ..............................................14, 15

*IP Innovation L.L.C. v. Dell Computer Corp.,*
    No. 03-C-3245, 2004 WL 784792 (N.D. Ill. 2004) ...............................................13

*Jones v. Servellon*, No. 94-1038 LFO, 1996 WL 554513, * 3 (D.D.C. Sept. 18, 1996) ..............18

*Kinnally v. Bell of Pa.*, 748 F. Supp. 1136 (E.D.Pa. 1990) ............................................16

*Lundy v. Adamar of New Jersey Inc. v. Carlino,*
    34 F.3d 1173 (3d Cir. 1994)..................................................................16

*Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342 (1944).......................24

*Rotella v. Woods,* 528 U.S. 549 (2000).......................................................10

*Rycoline Prods., Inc. v. C & W Unlimited,* 109 F.3d 883 (3d Cir. 1997) .....................................22

*Shirsat v. Mutual Pharm. Co., Inc.,*
    No. A. 93-3202, 1996 WL 273674 (E.D. Pa. May 15, 1996) .............................................13

*Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186 (3d Cir. 2001)................................................14, 16

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd,*
    181 F.3d 410 (3d Cir.1999)..................................................................10, 17

*Swartz v. Gold Dust Casino, Inc.*, 91 F.R.D. 543 (D. Nev. 1981)..................................................16

*The Ctr. for Prof'l Advancement v. Mazzie,* 347 F. Supp. 2d 150 (D.N.J. 2004)...........................22

*Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3d Cir. 1985) ...................................18

*White v. Williams,*
    No. 94-C-3836, 1997 WL 261357 (N.D. Ill. May 8, 1997)................................................13

*Wine v. EMSA Ltd., P'ship.*, 167 F.R.D. 34, 38 n. 7 (E.D.Pa. 1996).............................................17

## STATE CASES

*Falcone v. Middlesex County Med. Soc.*, 47 N.J. 92 (1966)............................................................22

*Galligan v. Westfield Ctr. Serv., Inc.,* 82 N.J. 188 (1980) ................................................8

*Joel v. Morrocco,* 147 N.J. 546 (1997) ...................................................................22

*Lopez v. Swyer,* 62 N.J. 267 (1973) .......................................................................17

*Ochs v. Fed. Ins. Co.,* 90 N.J. 108 (1982) ...............................................................8

*Price v. New Jersey Mfrs. Ins. Co.,* 182 N.J. 519 (2005) ...............................................8

*Price v. New Jersey Mfrs. Ins. Co.,* 368 N.J. Super. 356 (App. Div.), *aff'd,*
    182 N.J. 519 (2005) ...................................................................................21

*Rivera v. Prudential Prop. & Cas. Ins. Co.,* 104 N.J. 32 (1986) ....................................23

*W.V. Pangborne & Co., Inc. v. New Jersey Dep't of Transp.,* 116 N.J. 543 (1989) .....................7

*Wm. Blanchard Co. v. Beach Concrete Co., Inc.,*
    150 N.J. Super. 277 (App. Div.), *certif. den.* 75 N.J. 528 (1977) ...................................23

## FEDERAL STATUTES

*Fed. R. Civ. P.* 12(b)(6) ....................................................................................7

*Fed. R. Civ. P.* 15(c) ....................................................................................16, 17

*Fed. R. Civ. P.* 15(c)(3) ..................................................................................14

*Fed. R. Civ. P. 15(c)(3)(A)* ..............................................................................16

*Fed. R. Civ. P. 15(c)(3)(B)* ..............................................................................16

*Fed. R. Civ. P. 15(c)(3)(B)* ..............................................................................17

*L.R. Civ. P. 11.2* .........................................................................................22

# **STATE STATUTES**

*N.J. State  Ann.* § 2A:14-1 ........................................................................................................10, 17

Plaintiff, Walsh Securities, Inc. ("Walsh Securities") respectfully submits this consolidated memorandum of law in opposition to Defendants Irene DiFeo ("DiFeo"), Stewart Title Guaranty Company ("Stewart Title") and Weichert Realtors ("Weichert") motions to dismiss Plaintiff's Third Amended Complaint.[1]

## PRELIMINARY STATEMENT

Defendants DiFeo, Stewart Title and Weichert Realtors (the "Moving Defendants") have filed separate motions to dismiss Plaintiff's Third Amended Complaint claiming that Walsh Securities has failed to state claims for which relief can be granted.

Following the lifting of a nearly seven-year long stay and administrative termination of this action, which precluded Plaintiff from proceeding with the prosecution of the case, Plaintiff asserted claims against the Moving Defendants in January 2005. In particular, Plaintiff asserted the following claims: (1) civil RICO Act and common-law fraud claims against DiFeo for her activities as a realtor and for which she received payments; (2) a breach of contract claim against Stewart Title for its failure to honor closing protection letters which required it to reimburse Walsh Securities for losses arising out of some of the fraudulent actions of Stewart Title's approved Defendant Closing Attorneys and; (3) a vicarious liability claim against Weichert for the fraudulent actions committed by its employee Donna Pepsny ("Pepsny") in the scope of her employment with Weichert and from which Weichert financially benefited.

---

[1] To avoid the inefficiencies and confusion of filing three separate memoranda in opposition to the separate motions filed by DiFeo, Stewart Title and Weichert Realtors, Plaintiff Walsh Securities submits this consolidated memorandum

The validity of the merits of Plaintiff's claims against the Moving Defendants asserted in Third Amended Complaint are not the subject of these motions, rather the Moving Defendants have raised statute of limitations defenses to Plaintiff's Third Amended Complaint. The Court entered the Stay on April 28, 1998, based in part on the benefit to the public of allowing the government to conduct its investigation unimpeded. The Court subsequently extended the stay and administratively dismissed the matter from the active docket, which left Walsh Securities without any opportunity to conduct discovery or to move to amend until the action was reinstated on or about September 30, 2004. Based on federal and New Jersey state law and the doctrines of equitable tolling, relation back and the Entire Controversy Doctrine, the Court's inherent equitable powers, the Moving Defendants' knowledge of the underlying claims and lack of prejudice to the Moving Defendants, and the fact that the Moving Defendants are no worse off now than if they had been named in a previous complaint, the reasons for statutes of limitations to protect litigants and the courts from stale claims are not present here as Plaintiff finally has a chance to prosecute its long-delayed action. The Moving Defendants' motions to dismiss should be denied for the reasons set forth below.

### STATEMENT OF FACTS

In July 1997, Walsh Securities – a wholesale mortgage banker – brought this lawsuit to redress vast financial losses it suffered as a result of fraudulent real estate transactions perpetrated through racketeering activity which became the subject of a criminal investigation by the United States Attorney's Office based on information provided by Walsh Securities and which resulted in, among others, the trial and conviction by a jury of Defendants DiFeo and former Weichert employee Donna Pepsny.

Beginning in or about early 1996, the RICO Defendants[2] engaged in a pattern of racketeering activity which resulted in Walsh Securities purchasing approximately two hundred twenty mortgages from National Home Funding ("NHF") for amounts ranging up to eight times the preceding sales prices of the properties at issue.  (Compl. ¶ 38). Walsh Securities was induced to purchase these mortgage loans from NHF based on fraudulent misrepresentations contained in the mortgage loan applications, including appraisals of the properties at issue. (Compl. ¶ 38).  The proceeds from Walsh Securities' mortgage loans would, among other things, be distributed among the RICO Defendants as their illicit profits.  (Compl. ¶ 38).

In a typical transaction, Defendant William Kane ("Kane"), through his company Cristo Property Management ("Cristo"), purchased a house in a low income neighborhood for a low price.  (Compl. ¶ 64(a)).  Cristo or one or more of the other RICO defendants, including DiFeo and Donna Pepsny acting as a Weichert real estate agent, then located a willing buyer.  (Compl. ¶ 64(b)).  The property was then appraised by licensed appraisers (hired by NHF and Cristo Property) at an inflated value.  (Compl. ¶¶ 64(c)(d)).  Thereafter, a mortgage loan application for the buyer was prepared by NHF or Cristo and submitted to Walsh Securities for financing.  (Compl. ¶ 64(e)).  The mortgage loan applications contained false information, including the fraudulently inflated appraisal of the property's value, signed leases indicating that the property would be income-producing, statements that the buyer made a down payment, statements that the seller (Cristo) had provided a second mortgage on the property and representations that

---

[2] Defendants Cristo Property, NHF, Capital Assets, Kane, Grieser, Skowrenski, Calanni, DiBenedetto, Brown, Brodo, Pierson, Yacker, Alfieri, Richard Pepsny, Cicalese, Cuzzi, D'Apolito, DAP Consulting,  DiFeo, Donna Pepsny and Coastal Title Agency (collectively, "the RICO defendants")

the buyer would own the entire property, among other things.  (Compl. ¶¶ 64(e)(1)-(8)).

These false statements were designed to satisfy the loan underwriting criteria and thereby

induce Plaintiff into approving the loan.  (Compl. ¶ 64(e)(8)).

On the day of the closing, the closing attorney collected and transmitted the

proceeds of the mortgage loan, knowing that the preconditions to the loan had not been

met and were false.  (Compl. ¶ 64(g)).  The closing attorney also recorded the various

deeds associated with the transaction.  (Compl. ¶ 64(h)).  Once the transaction was

complete, however, the buyer secretly transferred 60% of the ownership in the property

to Defendant Capital Assets, without notifying Walsh Securities.  (Compl. ¶ 64(i)).  This

type of reconveyance is a default on the terms of Walsh Securities' mortgage loans and

Walsh Securities would not have financed the mortgage loan had it known of the plan to

reconvey the buyer's interest in the property.  (Compl. ¶ 64(i)).  Thereafter, Capital

Assets would pool rental income from several properties to meet the mortgage

obligations on the property.  (Compl. ¶ 64(j)).  However, given the nature of the fraud,

Capital Assets would soon become delinquent in paying its mortgage obligation unless it

continued to obtain mortgage loans to defraud Walsh Securities.  (Compl. ¶ 64(m)).

With respect to these fraudulently obtained mortgage loans, the Title Insurance

Defendants (including Stewart Title) issued to Walsh Securities, as the mortgage lender,

closing service protection letters which required the Title Insurance Defendants to

reimburse Walsh Securities for losses arising out of the fraudulent actions of the title

companies' approved Defendant Closing Attorneys. (Compl. ¶¶ 93-94).    Both of the

closing attorneys, Yacker and Cicalese, were selected by Kane and NHF and specifically

approved to handle closings by the Title Insurance Defendants. (Compl. ¶ 22).

4

This same pattern of fraud occurred over two hundred twenty times, with slight variations. (Compl. ¶ 66). Walsh Securities remains liable for a substantial portion of the value of these mortgage loans fraudulently obtained by the RICO defendants. (Compl. ¶ 40). Walsh Securities will not be able to recover the full amounts that have been lent through foreclosures on the properties because, due to the fraudulently inflated appraisals of the real properties that secure the mortgage loans, many of the properties are not of value equal to or greater than the amount of the mortgage loans and the fraudulent sales contracts. (Compl. ¶ 40). In addition, this fraud perpetrated against Walsh Securities has injured the business reputation of Walsh Securities and caused Walsh Securities to lose a substantial amount of business and profits, including causing the cancellation of an impending sale of Walsh Securities to a third party. (Compl. ¶ 40).

## PROCEDURAL HISTORY

On July 17, 1997, Walsh Securities filed its initial Complaint in this action. On or about November 7, 1997, Walsh Securities filed an Amended Complaint. On or about January 16, 1998, several Defendants which were targets of a criminal investigation by the United States Attorneys Office for the District of New Jersey ("U.S. Attorneys Office") "moved for a stay of the civil proceedings pending the outcome of the criminal investigation." *See* June 9, 1998 Opinion of the Court Granting Stay at 7. These defendants argued that they could not fully participate in civil discovery and protect their Fifth Amendment rights. *Id.* The Court heard oral argument on the motion on March 30, 1998 and entertained an *in camera* submission by the U.S. Attorneys Office and entered an order on or about April 28, 1998, *inter alia*, staying all interrogatory and deposition discovery in the action until November 1, 1998 so as not to interfere in the ongoing

criminal investigation thereby effectively bringing the litigation to a standstill. *See* April 28, 1998 order of the Court.

Despite several requests by counsel for Plaintiff to the U.S. Attorneys Office and the Court, the stay was extended by the Court because of the continuation of the criminal investigation. *See* Declaration of Robert A. Magnanini (hereinafter, "Magnanini Dec.") at ¶ 3. On or about May 30, 2000, the Court *sua sponte* entered an order administratively terminating and dismissing the action from the active docket because of the ongoing criminal investigation and further staying all discovery in the action pending further order of the Court. *See* May 30, 2000 order of the Court. During the stay and administrative dismissal, Plaintiff was prevented from prosecuting its case including taking discovery or amending its pleadings. The administrative dismissal was reversed and vacated on or about September 30, 2004 when the Court entered an order lifting the "administrative stay" following notification by the U.S. Attorneys Office that the criminal investigation had concluded. *See* September 27, 2004 order of the Court. The Court further ordered that "the stay of discovery in this case is lifted, and this litigation shall proceed forward immediately toward conclusion." *Id.* After a December 20, 2004 Case Management Conference before Judge Arleo, Plaintiff circulated a draft Third Amended Complaint. *See* Magnanini Dec. at ¶ 5. Because none of the defendants objected to filing of a Third Amended Complaint, the Court granted leave to file the Third Amended Complaint which was filed on or about January 28, 2005. *See* Magnanini Dec. at ¶ 6.

## LEGAL ARGUMENT

**I.    PLAINTIFF HAS STATED VIABLE CLAIMS AGAINST THE MOVING DEFENDANTS**

The law is clear that in considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See ALA v. CCAIR, Inc*, 29 F.3d 855, 859 (3d Cir. 1994). Thus, the Court cannot dismiss Plaintiff's Third Amended Complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted).

Plaintiff recognizes that it is equally clear that under appropriate circumstances – which are not present in this matter – a Court may grant a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* on statute of limitations grounds. *See Cito v. Bridgewater Township Police Dep't*, 892 F.2d 23 (3d Cir. 1989). However, before doing so, the Third Circuit has directed courts to ask whether the "time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id* (citations omitted).

Given that three of the four causes of action the Moving Defendants seek to dismiss sound in New Jersey law, this Court should look to New Jersey courts' interpretation and application of statutes of limitations. The New Jersey Supreme Court has held that "[t]he primary purpose of the statute of limitations is to provide defendants a fair opportunity to defend and to prevent plaintiffs from litigating stale claims." *W.V. Pangborne & Co., Inc. v New Jersey Dep't of Transp.*, 116 N.J. 543, 563 (N.J. Sup. Ct.

7

1989) (citing *Ochs v. Fed. Ins. Co*, 90 N.J. 108, 112 (1982)).  Consistent with that purpose, "where defendants are on notice of the claims, and no significant prejudice results, the policy reasons for upholding a strict statute of limitations recede." *Id.*  Thus, under varying circumstances, the New Jersey Supreme Court has recognized that tolling of the statute of limitations is the fair and responsible result, because the "[u]nswerving 'mechanistic' application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without advancing [the] legislative purposes." *Price v. New Jersey Mfrs. Ins. Co.*, 182 N.J. 519, 524 (2005) (quoting *Galligan v. Westfield Ctr. Serv., Inc.*, 82 N.J. 188, 192 (1980)).

As demonstrated below, even if the Court determines that the initial stay of discovery, which was later extended and broadened by the Court, and the administrative dismissal of the action did not toll the running of the statutes of limitations, equitable reasons exist which Plaintiff submits preclude the Moving Defendants from raising their limitations claims and tolled the running of the applicable statutes of limitations during this time period.  Accordingly, the motions to dismiss should be denied.

A. **The Applicable Statutes of Limitations on Plaintiff's Claims Against the Moving Defendants Have Not Passed.**

1. **The Court's April 28, 1998 Stay and Later Extensions and The May 30, 2000 Administrative Dismissal of the Action Tolled the Running of the Statute of Limitations as to all Claims.**

i. **The Stay and Administrative Dismissal Caused the Action to Be Removed From the Docket and Walsh Securities Was Left Without Any Opportunity to Move to Amend Until the Action Was Reinstated on or About September 30, 2004.**

The Moving Defendants named in Plaintiff's Third Amended Complaint are trying to block Plaintiff's attempt to finally get its day in Court after a lengthy delay in this matter. As this Court is aware, the Court stayed this action in June 1998 based substantially in part on in-camera submissions by the U. S. Attorneys Office. The Court was properly concerned that proceeding with civil litigation could impede and interfere with an ongoing criminal investigation. The Court's original Order stayed discovery in this matter until November 1998. As this Court may recall, the stay of the case was extended because of the continuing ongoing criminal investigation by the U.S. Attorneys Office.

The Court administratively dismissed the matter in May 2000 and, despite repeated requests to both the Court and the U.S. Attorneys Office by Plaintiff's counsel, the matter was not reinstated until September 30, 2004 with the consent of the U.S. Attorneys Office. Because of the original stay of discovery which Plaintiff believed was extended and broadened, and the subsequent administrative dismissal by the Court, Plaintiff has been unable to proceed in this litigation since June 1998. Defendants attempt now to turn a ministerial act by the Court after the request of the government (which effectively prevented Plaintiff from prosecuting its case indefinitely) into a bar of

9

Plaintiff's substantive and due process rights. We respectfully submit the Court should deny this request.

A wide ranging RICO fraud and conspiracy was discovered by Walsh Securities at the end of June 1997. Walsh Securities subsequently retained Michael Chertoff of the law firm of Latham & Watkins to conduct an investigation into the fraud. Upon the conclusion of the initial phase of the investigation, Walsh Securities reported the fraud to the U.S. Attorneys Office which began a criminal investigation of the matter based on the information and cooperation provided by Walsh Securities.

The statute of limitations for RICO claims is four years and six years for breach of contract claims and fraud in New Jersey. *See, e.g., Rotella v. Woods,* 528 U.S. 549 (2000); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd,* 181 F.3d 410, 425 (3d Cir.1999); *N.J.S.A.* 2A:14-1. Therefore, Plaintiff would have had until the end of June 2001 to file RICO claims or until the end of June 2003 to file breach of contract or fraud claims; however, because of this Court's initial stay, extension of the stay and administrative dismissal of the case, Plaintiff has been unable to proceed with this action. The Court's original stay came eleven months after Plaintiff's discovery of the fraud leaving three years and one month on the RICO statute of limitations and five years and one month on the breach of contract and fraud statutes of limitations. Even if this Court finds that its original stay of discovery and subsequent extension of the same did not toll the statutes of limitations, the Court administratively dismissed the matter from the active docket in May 2000. At this time, Plaintiff still had one year and one month to file RICO claims and three years and one month to file breach of contract or fraud claims. Plaintiff filed the Third Amended Complaint within four months of the

matter having been reinstated to the docket and only after, at the direction of Magistrate Judge Arleo, having circulated a draft of the Third Amended Complaint to be sure that none of the parties which were defendants in the action would object to Plaintiff's motion to amend its pleadings.  Because there is no case law in this circuit or elsewhere holding that an administrative dismissal does not toll statute of limitations, Plaintiff's amendment is not untimely and the Court should deny the Moving Defendants' motions and finally let plaintiff proceed to prosecute this action, and vindicate its name and rights.

Statutes of limitations are statutes of repose intended to "spare courts from stale claims." *See Cinnaminson Twp. Bd. of Ed. v. U.S. Gypsum Co.,* 552 F. Supp. 855, 861 (D.N.J. 1982)  Plaintiff's claims are not stale because none of plaintiff's claims have had an ability to become ripe because of the stay and administrative termination of the case. Plaintiff has had no opportunity to prosecute this action and, significantly, the Moving Defendants are in no worse position now than if they had been named in any of the prior complaints.  Noticeably absent from any of the Moving Defendants' briefs are any claim of prejudice by now being named in the Third Amended Complaint.

Stewart Title was well aware of the claims filed against it by Plaintiff because Plaintiff and Stewart Title engaged in extensive settlement negotiations prior to the Court's stay.  At that time it appeared likely that the issues with Stewart Title would be settled and Stewart Title delayed executing the settlement agreement until the Court lifted the stay. *See* Magnanini Dec. at ¶ 9.  Therefore, Stewart Title had notice of Plaintiff's claims.

Similarly, Weichert had notice of the underlying fraud.  Weichert's rhetorical invective which attempts to paint Walsh Securities in a negative light is baseless.

Weichert's argument misconstrues the nature and procedural posture of Plaintiff's claims in the Third Amended Complaint in such important areas as (1) arguing that Plaintiff sued Weichert because it believed that realtor Irene DiFeo was an employee of Weichert or that (2) Plaintiff filed a Third Amended Complaint *sua sponte* without any leave of Court, or the completely unsupported allegations that (3) Plaintiff somehow orchestrated and organized a fraud on itself which cost it more than $25 million and directly lead to the loss of a sale of the business and ultimately of the business itself, which then employed over 250 people in 12 states.  Weichert's attempts to distance itself from the criminal acts of its employee Donna Pepsny who sold properties on behalf of Weichert yielding Weichert substantial commissions from the sale of properties, including some of the fraudulent properties, is unavailing.  Weichert knew of the fraud and knew of the Government's prosecution of its employee Donna Pepsny for her participation in it.

Defendant DiFeo cannot now disavow knowledge of the underlying fraud since she too was prosecuted by the Government and found guilty of her participation in the sale of numerous fraud properties.  Defendant DiFeo's involvement also led her to receive payments in the form of commission for the sales. Defendant DiFeo directly, and Weichert indirectly, benefited from the fraudulent transactions.  As such, none of the Moving Defendants can claim that they were prejudiced by now being named in the Third Amended Complaint.

The principles of equity and equitable tolling allow this Court to review this matter in its sound discretion.  Because the Moving Defendants knew of the underlying fraud, and because there is no prejudice to them, the only party that will be prejudiced by a dismissal is Plaintiff.  The Court should not allow Plaintiff's substantive and due

process rights to be prejudiced because of an administrative termination of the case. The claims now asserted against the Moving Defendants all relate back to the original fraud of which they all had knowledge which Plaintiff could not, as a practical matter, been pursued until the criminal aspects of this matter had been resolved. Indeed, had Plaintiff attempted to do so, Moving Defendant's would have objected on the very same grounds that led this Court to stay the matter in the first place.

The Moving Defendants DiFeo and Stewart Title cite no cases holding that a stay or administrative termination of a case does not equitably or otherwise toll the statute of limitations. Moving Defendant Weichert relies on three unreported decisions in its moving papers. However, the procedural posture of the matter before the Court in *Shirsat v. Mutual Pharm. Co., Inc.* did not include an administrative termination and dismissal by the Court. *See* No. A. 93-3202, 1996 WL273674 (E.D. Pa. May 15, 1996). In the second unreported decision cited by Weichert, *White v. Williams*, the Court was again confronted with a case in which a stay had been instituted with no administrative dismissal or termination, and the Court allowed the Plaintiff to amend its pleadings as to certain new parties. *See* No. 94-C-3836, 1997 WL2661357 (N.D. Ill. May 8, 1997). The *White* court relied on the holding in *Doe v. Bobbitt* which also held that a stay extended a statute of limitations for some, but not all, defendants. *See* 698 F. Supp. 1415 (N.D. Ill. 1988). Finally, Weichert relied on the unreported decision of *IP Innovation L.L.C. v. Dell Computer Corp.* in which the Court allowed the Plaintiff to amend its complaint despite a judicially imposed stay of proceedings. *See* No. 03-C-3245, 2004 WL 784792 (N.D. Ill. 2004). Even Judge Orlofsky's decision in *Elec. Mobility Corp. v Bourns Sensors/Controls, Inc.*, is different from the facts and procedural posture of the instant

13

matter in which the case was stayed against the wishes of Walsh Securities and later administratively terminated until the conclusion of a criminal investigation. *See* 87 F. Supp. 2d 394 (D.N.J. 2000).   The parties in *Elec. Mobility Corp.* had agreed to administratively dismiss their case while they discussed settlement and entered into alternative dispute resolution proceedings after taking discovery.   The parties only returned to Court seeking to amend their pleadings several years after the settlement process failed.   Here, Plaintiff has not had the benefit of any discovery and has been prevented from taking discovery. However, Plaintiff submits that equitable tolling and equities in this case require the Court to allow Plaintiff to proceed on the Third Amended Complaint against the Moving Defendants.

### 2.   The Claims Against the Moving Defendants Relate Back to the Original Complaint.

The claims asserted against the Moving Defendants in the Third Amended Complaint are also not barred by the applicable statutes of limitations because they relate back to the original complaint. *Fed. R. Civ. P.* 15(c)(3) permits claims against newly added defendants to relate back to the date of the original pleading if the following conditions are satisfied:

> (1) The claim against the newly named defendants must have arisen "out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading."   (2) The newly named party must have "received such notice of the institution of the action [within the 120 day period] that the party will not be prejudiced in maintaining a defense on the merits." The Third Circuit has interpreted the second condition as imposing two requirements, notice and absence of prejudice, each of which must be satisfied. (3) The newly named party must have known, or should have known [within the 120 day period] that "but for a mistake" made by the plaintiff concerning the newly named party's identity, "the

14

action would have been brought against" the newly named party in the first place.

*Fields v. Blake*, 349 F. Supp. 2d 910, 917 (E.D. Pa. 2004) (quoting *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 194 (3d Cir. 2001)).

As to the first requirement, there is no question that the claims asserted against the Moving Defendants arose out of the same transaction or occurrence as those alleged in the original Complaint. The substance of the allegations against the Moving Defendants in the Third Amended Complaint are based upon the mortgage fraud alleged in the original Complaint.

The second requirement concerning prejudice "is that suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale." *Fields v. Blake*, 349 F. Supp.2d 910, 917 (E.D.Pa. 2004) (quoting *Curry v. Johns-Manville Corp.*, 93 F.R.D. 623, 626 (E.D.Pa. 1982)). It is clear that none of the Moving Defendants will be prejudiced in their defense of the claims set forth in the Third Amended Complaint. First, given DiFeo's defense in the criminal proceeding related to the mortgage fraud and Weichert's involvement in the government's investigation and subsequent indictment and trial of its former employee Donna Pepsny for her involvement in the mortgage fraud now at issue in this action, and Stewart Title's settlement negotiations with Walsh Securities related to closing service protection letters, it is highly likely that evidence has not been lost, memories have not faded and witnesses have not disappeared. Indeed, the Moving Defendants do not claim that they have been prejudiced by the stay and dismissal. Thus, they will be able to mount a vigorous defense to the claims at issue. Second, given the

stay of discovery which has only been recently lifted, each of the Moving Defendants will be able to fully participate in all aspects of the case.

*Fed. R. Civ. P.* 15 (c)(3)(A) also requires that the plaintiff demonstrate that the new parties received notice of the institution of the action.  The notice requirement of Rule 15(c) is fulfilled if the defendant is aware that the action was commenced and had reason to expect his potential involvement in the action.  *See Id.* (citing *Singletary v. Pa. Dep't of Corr.*, 266 F.3d at 195; *Lundy v. Adamar of New Jersey Inc. v. Carlino*, 34 F.3d 1173, 1189 (3d Cir. 1994)).  Because of the lack of prejudice to the Moving Defendants demonstrated above, the notice requirement is less important; however, it is clear that the Moving Defendants had at the least constructive notice of the commencement of this action given their respective involvement in the criminal proceedings or the settlement negotiations arising out of the closing service letters.  *See, e.g., Kinnally v. Bell of Pa.*, 748 F. Supp. 1136, 1141 (E.D. Pa. 1990) ("The conclusion of a growing number of courts and commentators is that sufficient notice may be deemed to have occurred where a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means.") *see also, Berndt v. Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986) (notice need not be formal); *Eakins v. Reed*, 710 F.2d 184, 187-88 (4th Cir. 1983) (same); *Swartz v. Gold Dust Casino, Inc.*, 91 F.R.D. 543, 547 (D. Nev. 1981) ("The notice of the institution of the lawsuit required by Rule 15(c) need not be formal.").

The final requirement of *Rule 15(c)* is that the newly named party knew or should have known within 120 days after the filing of the plaintiff's complaint that, but for a mistake concerning the identity of the proper party, the action would have been brought

against him.  *See Fed. R. Civ. P. 15(c)(3)(B)*.  However, while the text of Rule 15(c) suggests that the mistake element only applies to misnamed or misdescribed parties, "the Rule is widely-understood to allow the addition of new parties that were never originally named or described." *Wine v. EMSA Ltd., P'ship.*, 167 F.R.D. 34, 38 n. 7 (E.D. Pa. 1996) (citations omitted).  Given, the Moving Defendants involvement in the criminal matter and the settlement negotiations discussed above, the Moving Defendants should have known that when Walsh Securities was permitted to do so, it would name them in this action.

Accordingly, all of the requirements of *Rule 15(c)* are met and the Third Amended Complaint adding the Moving Defendants relates back, for the purposes of the applicable statutes of limitations, to the date on which the original Complaint was filed.

### 3. The Six-Year Statute of Limitations on Plaintiff's Common-Law Fraud Claims against DiFeo Has Not Passed.

"Under New Jersey law, the statute of limitations for fraud is six years, see *N.J. State Ann. § 2A:14-1*, and a cause of action accrues when a plaintiff knows or should know of its existence, *see Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989)." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd*, 181 F.3d 410, 425 (3d Cir.1999).  It is clear that "[w]hen the gist of the action is fraud concealed from the plaintiff, the statute begins to run on discovery of the wrong or of facts that reasonably should lead the plaintiff to inquire into the fraud." *Id.* (citing *N.J. State Ann.* § 2A:14-1; *Lopez v. Swyer*, 62 N.J. 267, 300 (1973)).  Further, "[w]hen the applicability of the statute of limitations is in dispute, there are usually factual questions as to when a plaintiff discovered or should have discovered the elements of its cause of action, and thus 'defendants bear a heavy burden in seeking to establish as a matter of

law that the challenged claims are barred.'" *Id.* (quoting *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985)).

Given the impact of the criminal investigation discussed above, and the inherent nature of concealment of participation in fraud, in this case the "discovery of the wrong or of facts that reasonably should [have] led [] plaintiff to inquire into the fraud" did not occur until DiFeo's criminal indictment was made public. Thus, Plaintiff's common-law fraud claim is well within the six-year statute of limitations period.

### 4. The Statute of Limitations on Plaintiff's *Respondeat Superior* Claim Against Weichert Has Not Passed.

Contrary to Weichert's assertions in its moving papers, Plaintiff has asserted a clear and concise cause of action in its Third Amended Complaint against Weichert under the theory of *respondeat superior* which is in and of itself a viable cause of action. To be absolutely clear, Plaintiff has alleged that Weichert is vicariously liable to it for the damages it has sustained as a result of the actions and conduct of its former employee Donna Pepsny committed in the course and in the scope of her employment with Weichert. (*See* Complaint Count VII). Further, again contrary to Weichert's claim, there is no explicit reference to a statute of limitations for actions for vicarious liability based on the doctrine of *respondent superior.* Rather, the limitations period is the same as that for the underlying tort. Thus, given that Plaintiff has asserted RICO and common law fraud causes of action against Donna Pepsny, the applicable four-year RICO and six-year common law fraud statutes of limitations apply. *See Jones v. Servellon*, No. 94-1038 LFO, 1996 WL 554513, * 3 (D.D.C. Sept. 18, 1996) ("Unlike a claim for negligent hiring or negligent supervision, a claim under respondent superior does not allege a separate and distinct tort by the employer, but rather holds the employer vicariously liable for torts of

the employee. Thus, the applicable statute of limitations for respondeat superior depends upon the nature of the torts alleged to have been committed by the servant.").

    **5. The Statute of Limitations on Plaintiff's Breach of Contract Claim Against Stewart Title Has Not Passed.**

      **i. Stewart Title is Estopped From Invoking the Statute of Limitations Defense it Has Raised.**

        **a. The Title Insurance Was Issued by Stewart Title to Protect Plaintiff From the Very Losses Alleged in the Third Amended Complaint.**

  Stewart Title, which issued title insurance and closing service protection letters on some properties financed by Walsh Securities to protect it from the losses alleged in the Third Amended Complaint, is estopped from invoking the statute of limitations defense to Walsh Securities' breach of contract claim. As alleged in the Third Amended Complaint, in conjunction with real property transactions involving the NHF/Cristo Property Enterprise, borrowers of mortgage loans from Walsh Securities obtained title insurance from the Title Insurance Defendants, including Stewart Title. (Complaint ¶ 93). The Title Insurance Defendants, in exchange for valuable consideration, provided Walsh Securities with closing service protection letters covering the conduct of the Closing Attorneys, who were specifically approved by the Title Insurance Defendants. (Complaint ¶ 93). Walsh Securities, required such closing service letters as a pre-condition to its agreeing to fund the mortgage loans. (Complaint ¶ 93). Pursuant to these closing service protection letters, the Title Insurance Defendants are required to reimburse Walsh Securities for losses arising out of, among other things, fraud or misapplication of funds by the Closing Attorneys. (Complaint ¶ 94).

19

As further alleged in the Third Amended Complaint, the Closing Attorneys engaged in fraud and misapplication in connection with the NHF/Cristo Property Enterprise. (Complaint ¶ 95). Among other things, the Closing Attorneys fraudulently transferred mortgage loan proceeds knowing that pre-conditions to closings imposed by Walsh Securities had not been satisfied. (Complaint ¶ 95). Walsh Securities has incurred substantial loss as a result of the fraud and/or misapplication by the Closing Attorneys. (Complaint ¶ 95).

**b.  Walsh Securities Made Claims to Stewart Title for Coverage Under Various Title Insurance Policies for Losses Alleged in the Third Amended Complaint.**

Although Walsh Securities has duly performed all of its obligations under the closing service protection letters issued by the Title Insurance Defendants and has notified the Title Insurance Defendants of its losses as a result of the fraud and/or misapplication by the Closing Attorneys, the Title Insurance Defendants have failed to reimburse Plaintiff for the losses it has incurred based on the fraud and/or misapplication of the approved attorneys as covered by the closing service protection letters. (Complaint ¶ 96).

**c.  The Parties Engaged in Extensive and Lengthy Settlement Negotiations Concerning Walsh Securities' Claims for Coverage Which Stewart Title Abruptly Ended When the Court Stayed the Action in 1998.**

Prior to the Court's stay of this matter in 1998, Counsel for Walsh Securities engaged in extensive and lengthy settlement negotiations with Stewart Title's Counsel concerning Walsh Securities' claims for coverage under the closing service letters issued by Stewart Title. *See* Magnanini Dec. at ¶ 7. These negotiations occurred in or about April, 1998 and involved multiple closing service protection letters issued by Stewart

Title which Stewart Title indicated it would honor. *See* Magnanini Dec. at ¶ 8. Thereafter, on or about April 28, 1998, the Court entered an Order staying all interrogatory and deposition discovery in the action until November 1, 1998 and the settlement negotiations with Stewart Title regarding payments under the closing service letters abruptly ended. *See* Magnanini Dec. at ¶ 9. Following the Court's Order of September 27, 2004 lifting the administrative stay, counsel for Plaintiff contacted Stewart Title's outside legal counsel to discuss renewed settlement negotiations regarding Stewart Title's obligations under the closing service letters. The undersigned counsel was advised that Stewart Title would not be settling this matter and would be filing a motion to dismiss on statute of limitations grounds. *See* Magnanini Dec. at ¶ 10.

> **d. Stewart Title Lulled Walsh Securities Into A False Sense of Security By Representing That its Claims Would Be Amicably Settled Without the Need for Litigation.**

New Jersey law is clear that an insurer can be estopped from invoking the statute of limitations defense if it has engaged in wrongful conduct causing a plaintiff's claim to be subject to the statute's bar. *See Price v. New Jersey Mfrs. Ins. Co.,* 368 N.J.Super. 356, 363 (N.J. Super. Ct. App. Div.), *aff'd, Price v. New Jersey Mfrs. Ins. Co.,* 182 N.J. 519 (N.J. Sup. Ct. 2005). In order to invoke the application of the doctrine of equitable tolling of the statute of limitations, "an insured must show that the insurer has lulled him into a false sense of security by representing that a claim will be amicably settled without the need for litigation." *Id.* Given Stewart Title's indications prior to the administrative stay of this action that it would settle the claims made against it by Walsh Securities under the closing service letters, Walsh Securities did not amend its Complaint to name Stewart Title until January, 2005, after it was certain that Stewart Title was no longer

21

interested in settling its claims. Stewart Title cannot now invoke the statute of limitations defense after it led Walsh Securities to believe that it would pay the claims made by Walsh Securities *prior* to the administrative stay and then later refused to pay the claims after the stay was lifted. Such conduct cannot be judicially countenanced through a mechanical application of the statute of limitations.

### 6. Walsh Securities Could Not Have Brought Separate Proceeding Against the Moving Defendants During the Period Between the Administrative Dismissal and the Reinstatement Given New Jersey's Entire Controversy Doctrine.

Contrary to the Moving Defendants assertions that Walsh Securities could have brought separate actions against each of them in either federal or state court during the pendency of the administrative dismissal to protect against the running of the statutes of limitations following the Court's administrative dismissal, no such action could have been brought given New Jersey's entire controversy doctrine.

Under the Full Faith and Credit Act, the Third Circuit has required New Jersey federal courts to apply New Jersey's entire controversy doctrine as that doctrine is recognized by New Jersey state courts. *See Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997). "The entire controversy doctrine is an equitable preclusionary doctrine that requires the parties to a litigation to assert all known claims that arise from the underlying occurrence or transaction." *The Ctr. for Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150, 155 (D.N.J. 2004) (citing *Joel v. Morrocco*, 147 N.J. 546, 548 (1997)). *See also L. Rule Civ. P. 11.2* and comments (requiring parties to certify that the pending action is not the subject of other actions). The well-stated purposes of the doctrine are to encourage comprehensive and conclusive litigation determination, to avoid fragmentation of litigation, and to promote party fairness and

judicial economy and efficiency. *See, e.g., Falcone v. Middlesex County Med. Soc.*, 47 N.J. 92 (1966); *Wm. Blanchard Co. v. Beach Concrete Co., Inc.*, 150 N.J. Super. 277 (App. Div.), *certif. den.* 75 N.J. 528 (1977).

As a result of the foregoing, Plaintiff properly raised its claims against the Moving Defendants in this action rather than instituting separate federal or state actions, in which the moving defendants would have moved to dismiss on Entire Controversy Doctrine grounds or for failing to name necessary parties. The claims asserted in the Third Amended Complaint against the Moving Defendants clearly arise out of the underlying occurrences or transactions which form the basis of the claims asserted by Walsh Securities in the earlier-filed Complaints. Further, the filing of separate actions by Walsh Securities in state or federal courts asserting claims clearly arising out of the underlying mortgage fraud would be contrary to the well-stated purposes of the doctrine. Thus, Plaintiff complied with the entire controversy doctrine by raising its claims against the Moving Defendants in this action.

### 7. A Finding That Plaintiff's Claims Are Time-Barred Would Not Effectuate the Purposes of a Period of Limitations.

A finding that Walsh Securities' claims against the Moving Defendants are barred by the applicable statutes of limitations would not effectuate the stated purposes of having a period of limitations, but would rather unnecessarily work a prejudice upon Plaintiff. The law in New Jersey is clear that statutes of limitations have two purposes. First, "to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims." *Rivera v. Prudential Prop. & Cas. Ins. Co.*, 104 N.J. 32, 39 (N.J. Sup. Ct. 1986). The second purpose of statute of limitations is to penalize delay and serve as a

"measure of repose." *Id.* (citations omitted). The United States Supreme Court articulated similar policies as bases for statutes of limitations in *Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342 (1944). In *Railway Express* the U.S. Supreme Court held that the statute of limitations are:

> Designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*Id.* at 348-49.

Consideration and applications of these principles to this case demonstrates that Plaintiff's claims must not be time-barred. None of the concerns expressed by the United States Supreme Court in *Railway Express* are present and indeed all of the Moving Defendants have had notice of Plaintiff's claims for years. None of the moving defendants have alleged any prejudice in being named in the Third Amended Complaint. Indeed, had the Moving Defendants been named earlier, they would be in no worse position than they are now because Plaintiff has been unable to prosecute its case because of the stay and administrative termination. Thus, the Moving Defendants' motions are based on technical arguments which they should be equitably estopped from raising.

First, given DiFeo's defense in her criminal proceeding and Weichert's involvement in the government's investigation and subsequent indictment and prosecution of its former employee Donna Pepsny, presumably evidence has not been lost, memories have not faded and witnesses have not disappeared. The Moving Defendants also make no such claim. Rather, it is highly-likely that the opposite is true. Second, Plaintiff has not been dilatory in the prosecution of this action. Indeed, Plaintiff

24

vehemently argued against the imposition of a stay and the administrative dismissal of this action on multiple occasions. Plaintiff's counsel also sought to have this Court lift the stay several times before the administrative dismissal but such requests were denied. Finally, Plaintiff made claims to Stewart Title pursuant to the closing service protection letters and engaged in extensive settlement negotiations with Stewart Title to resolve those claims. To now bar Plaintiff's claims from proceeding when the claims are far from "stale," but rather ripe for adjudication, especially when the Moving Defendants are not prejudiced and are in no worse position now that the case has been reinstated, would work an injustice upon the victim of a massive fraud.

## CONCLUSION

For all of the foregoing reasons, Defendants Irene DiFeo, Stewart Title Guaranty Company and Weichert Realtors' motions to dismiss Plaintiff's Third Amended Complaint should be denied in their entirety.

DATED this 3rd day of June, 2005.

BOIES, SCHILLER & FLEXNER LLP

Robert A. Magnanini (RM 7356)
Christopher Iannicelli (CI 7904)

Attorneys for Plaintiff
Walsh Securities, Inc.