UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | : Civil Action No. CV 97-3496 (WGB) |
| Plaintiff, | : Hon. William G. Bassler |
| vs. | : |
| CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, et al. | : **DECLARATION OF** : **ROBERT A. MAGNANINI** |
| Defendants. | : |

I, ROBERT A. MAGNANINI, do hereby declare:

1.      I am Of Counsel to the firm Boies, Schiller & Flexner LLP, counsel to Plaintiff Walsh Securities, Inc. ("Walsh Securities") in this matter, and submit this declaration in support of Walsh Securities' Consolidated Memorandum in Opposition to Defendants Irene Difeo, Stewart Title Guaranty Company and Weichert Realtors' Motion to Dismiss Plaintiff's Third Amended Complaint.

2.      Attached to this declaration as Exhibit A are true and correct copies of the decisions in: *IP Innovation L.L.C. v. Dell Computer Corp.*, No. 03-C-3245, 2004 WL 554513 (D.D.C. Sept. 18, 1996); *Jones v. Servellon*, No. 94-1038 LFO, 1996 WL 554513 (D.D.C. Sept. 18, 1996); *Shirsat v. Mutual Pharm. Co., Inc.*, No. A 93-3202, 1996 WL 273674 (E.D.Pa. May 15, 1996); and *White v. Williams*, No. 94 C 3836, 1997 WL 261357 (N.D.Ill.).

3.      Latham & Watkins, prior counsel for Walsh Securities, made several requests both to the U.S. Attorneys Office and the Court both during the stay and

administrative dismissal to allow the case to proceed, but the requests were denied because of the ongoing criminal investigation.

4.      Despite these requests, the matter was not reinstated on the active docket by the Court because of the continuing criminal investigation until September 2004.

5.      After a December 20, 2004 Case Management Conference before Judge Arleo, I circulated a draft Third Amended Complaint pursuant to Judge Arleo's instructions.

6.      Thereafter, because none of the defendants objected to the filing of a Third Amended Complaint, the Court granted leave to file the Third Amended Complaint which was filed on or about January 28, 2005.

7.      Prior to the Court's stay of this matter in 1998, counsel for Walsh Securities engaged in extensive and lengthy settlement negotiations with Stewart Title's Counsel concerning Walsh Securities' claims for coverage under the closing service protection letters issued by Stewart Title.

8.      These negotiations occurred in or about early, 1998 and involved multiple closing service protection letters issued by Stewart Title which Stewart Title indicated it would honor.

9.      Thereafter, on or about April 28, 1998, the Court entered an Order staying all interrogatory and deposition discovery in the action until November 1, 1998 and the settlement negotiations with Stewart Title regarding payments under the closing service letters abruptly ended.

10.     Following the Court's Order of September 27, 2004 lifting the administrative stay, counsel for Plaintiff contacted Stewart Title's outside legal counsel to

discuss renewed settlement negotiations regarding Stewart Title's obligations under the

closing service protection letters.   The undersigned counsel was advised that Stewart

Title would not be settling this matter and would be filing a motion to dismiss on statute

of limitations grounds.

       I declare under penalty of perjury that the foregoing is true and correct,

and that this Declaration was executed in Short Hills, New Jersey on this 3rd day of June

2005.

By _____

Robert A. Magnanini (RM 7356)

**A**



Not Reported in F.Supp.2d
2004 WL 784792 (N.D.Ill.)
(Cite as: 2004 WL 784792 (N.D.Ill.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
IP INNOVATION L.L.C. and Technology Licensing
Corporation, Plaintiff,
v.
DELL COMPUTER CORPORATION, Defendant.
**No. 03 C 3245.**

April 9, 2004.
Raymond P. Niro, Arthur Anthony Gasey, Paul Christopher Gibbons, Douglas M. Hall, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL, Melissa Richards Smith, Baldwin & Baldwin, Marshall, TX, for Plaintiff.

David L. Witcoff, Jones Day, Chicago, IL, Kenneth R. Adamo, Robert W. Turner, Thomas R. Jackson, Mark Reiter, Jones Day, Dallas, TX, for Defendant.

*MEMORANDUM OPINION*
KOCORAS, Chief J.

*1 This matter comes before the court on the motion of Plaintiffs IP Innovation LLC and Technology Licensing Corporation (collectively referred to herein as "IP Innovation") to amend their complaint against Defendant Dell Computer Corporation ("Dell"). For the reasons set forth below, the motion is granted.

BACKGROUND
IP Innovation holds two patents relevant to this case: U.S. Patent No. 5,424,780 ("the '780 patent") and U.S. Patent No. 6,529,637 ("the '637 patent"). The patents involve computer imaging technology that can be used in printing and faxing, among other applications. In October 2002, IP Innovation filed a complaint alleging infringement of the '780 patent by Minolta Corporation ("the manufacturer suit"). This complaint initiated the companion suit to the instant case ("the Dell suit"), which was originally filed in December 2002 in the Eastern District of Texas. As time went on, several other defendants were added to the companion suit,

and the complaint was amended in March 2003 to add a claim for infringement of the '637 patent.

In April 2003, Judge Ward of the Eastern District of Texas transferred this suit to our court at Dell's request. Originally, it was assigned to Judge Guzman but was reassigned to our calendar because of its relation to the manufacturer suit. At a hearing in August, the parties to the manufacturer suit reported on their progress in achieving settlement agreements. The subject of consolidation of the Dell suit and the manufacturer suit arose, prompting counsel for Dell to resurrect the motion to stay that had been before Judge Guzman before reassignment. At that time, we granted Dell's oral motion until the cast of characters in the manufacturer suit could be finalized. *See* August 5, 2003 Tr. at 10. Since then, all but one of the defendants in the manufacturer suit have reached settlements with IP Innovation. The remaining defendant, Lexmark, filed a motion to transfer the manufacturer suit to Kentucky as well as a motion for summary judgment of the infringement claims against it. Both motions were denied. Because no further impediments remained to commencement of discovery, we set June 9 as a cut-off date for fact discovery.

Shortly after the minute order setting the discovery cut-off date issued, IP Innovation propounded interrogatories to Dell and filed a motion for leave to amend their complaint to add claims pertaining to the '637 patent. Dell opposes the proposed amendment, claiming that the stay remains in effect and thus precludes any action with regard to the Dell suit, including amendment of the complaint.

LEGAL STANDARDS
The power and ability of a district court to stay a proceeding stem from the court's inherent power to control disposition of cases before it in an efficient and orderly manner. *See Landis v. North American Corp., 299 U.S. 248, 254-55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)*. Deciding how best to accomplish this goal requires an exercise of judgment that must take into account and balance competing interests. *Id.; see also Ingersoll Mill. Mach. Co. v. Granger, 833 F.2d 680, 686 (7th Cir.1987)*.

*2 Pursuant to Fed. R. Civ. Proc. 15(a), a plaintiff may amend a complaint once as a matter of course at any time

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2004 WL 784792 (N.D.Ill.)
(Cite as: 2004 WL 784792 (N.D.Ill.))

Page 2

before a responsive pleading is served. Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The decision whether to grant or deny a motion for leave to amend is committed to the sound discretion of the district court. *Perrian v. O'Grady,* 958 F.2d 192 (7th Cir.1992). With these principles in mind, we turn to the matters at hand.

DISCUSSION

Although the motion before us is one for leave to amend, Dell focuses nearly all of its attention on the issue of the stay of proceedings. They assert that the stay should continue primarily because of the tendency in patent cases to stay infringement actions against customers pending the outcome of suits against manufacturers of the products sold to those customers. They cite many cases from this jurisdiction and others where this procedure has been used and urge us to follow suit. However, nearly every case upon which they rely involved suits that were pending in different fora. *Katz v. Lear-Siegler, Inc.,* 909 F.2d 1459 (Fed.Cir.1990) (Massachusetts and New York); *Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735 (1st Cir.1977) (Massachusetts and Kansas); *William Gluckin & Co. v. Int'l Playtex Corp.,* 407 F.2d 177 (2nd Cir.1969) (Georgia and New York); *Whelen Tech., Inc. v. Mill Specialties, Inc.,* 741 F.Supp. 715 (N.D.Ill.1990) (Illinois and Arizona); *Andco Environmental Processes, Inc. v. Niagara Environmental Assocs., Inc.,* 211 U.S.P.Q. 544 (W.D.N.Y.1981) (New York and Florida); *Allway Tools, Inc. v. Am. Safety Razor Co.,* 206 U.S.P.Q. 475 (S.D.Tex.1979) (Texas and Virginia); *Wehr Corp. v. Commercial Construction Corp.,* 464 F.Supp. 676 (S.D.Fla.1979) (Florida and Washington); *Kistler Instrumente v. PCB Piezotronics, Inc.,* 419 F.Supp. 120 (W.D.N.Y.1976) (New York and U.S. Court of Claims); *Siemens Aktiengesellschaft v. Sonotone Corp.,* 370 F.Supp. 970 (N.D.Ill.1973) (Illinois and New York); *Coyne & Delany Co. v. G.W. Onthank Co.,* 90 F.Supp. 505 (S.D.Iowa 1955) (New York and Iowa); *Wireless Spectrum Technologies, Inc. v. Motorola Corp.,* 2001 WL 32852 (N.D.Ill. Jan.12, 2001) (Illinois and Patent and Trademark Office); *Indianapolis Motor Speedway Corp. v. Polaris Indus., Inc.,* 2000 WL 777874 (S.D.Ind. June 15, 2000) (Minnesota and Indiana); *T.J. Smith v. Ferris Corp.,* 1987

WL 7496 (N.D.Ill. March 2, 1987) (New York and Illinois). Although the fact that two judges are considering suits that are markedly similar is not dispositive in deciding whether a stay is warranted, clearly it provides a significant basis for circumspection.

By contrast, the manufacturer suit and the Dell suit are both before us, through the efforts of Dell to transfer from the Eastern District of Texas. Thus, there is no danger of inconsistent results or duplicative expenditure of scarce judicial resources arising from simultaneous consideration by different judges. See *Watson Industries, Inc. v. Canon, Inc.,* 2003 WL 23218401, at *1 (W.D.Wis. Nov.24, 2003) (denying motion to stay in patent infringement case against customer because, *inter alia,* manufacturer case was before identical judge). Neither does it promote judicial economy to await for ultimate resolution of the manufacturer case when there is no agreement from IP Innovation or Dell to be bound by the outcome of the issues in the manufacturer suit, enabling later disputes over subjects such as collateral estoppel, patent validity, and the party responsible for the manufacture of the products at issue. See *id.* To put off determination of these questions with respect to Dell runs the risk of the very duplication that Dell says a stay will avoid. At this time, the most sensible course of action is to put the parties on a common track.

*3 In addition, as the August 5, 2003, transcript makes clear, the stay was granted for a limited time and with a limited purpose. It was not intended to extend until the manufacturer suit was completely resolved. The purpose of the stay, to allow time to determine whether and against whom the manufacturer case would proceed, has been accomplished. Thus, there is no reason for it to continue, and we formally acknowledge what was implied in the February 9 minute order: the stay entered on August 5, 2003 is lifted.

We thus turn to the issue of the amendment of the complaint. As stated above, leave to amend is freely given when justice requires. Aside from the stay, Dell has not offered any objection of substance to the proposed amendment. Our review of its contents reveals that the addition of the claims pertaining to the '637 patent will makes the complaint in the Dell suit track the one in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2004 WL 784792 (N.D.Ill.)
(Cite as: 2004 WL 784792 (N.D.Ill.))

Page 3

manufacturer suit. Thus, allowing the amendment streamlines the contemporaneous consideration of the two suits and will improve our ability to resolve them in tandem. Neither can we detect any of the usual reasons to disallow an amendment, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman, 371 U.S. at 182, 83 S.Ct. at 230.* Accordingly, the motion for leave to file the amended complaint is granted.

CONCLUSION

Based on the foregoing analysis, the stay initiated on August 5, 2003, in this case is lifted. This case and its companion, *IP Innovation v. Lexmark,* Case No. 02 C 7611, are consolidated for discovery purposes only. IP Innovation's motion for leave to amend the complaint against Dell is granted.

2004 WL 784792 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2174023 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Dell's Counterclaim (May. 18, 2004)

• 2004 WL 2174019 (Trial Pleading) Dell Inc.'s Answer, Affirmative Defenses and Counterclaim to Plaintiffs' Amended Complaint (Apr. 29, 2004)

• 2004 WL 2174015 (Trial Motion, Memorandum and Affidavit) Dell Inc.'s Response to Plaintiffs' Supplemental Submission in Support of Their Motion for Leave to Amend Their Complaint (Mar. 22, 2004)

• 1:03CV03245 (Docket) (May. 15, 2003)

• 2002 WL 32659698 (Trial Pleading) Answer of Defendant Dell Computer Corporation (Dec. 31, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                                          Page 1
1996 WL 554513 (D.D.C.)
**(Cite as: 1996 WL 554513 (D.D.C.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, District of Columbia.
William Anthony JONES, Plaintiff,
v.
Dr. Cesar SERVELLON and Gallaudet University,
Defendants.
**Civ. A. No. 94-1038-LFO.**

Sept. 18, 1996.

*MEMORANDUM*

OBERDORFER, District Judge:

*1 This Motion to Dismiss or, in the Alternative, for Summary Judgment arises out of a lawsuit brought by plaintiff William Anthony Jones against defendants Dr. Cesar Servellon and Gallaudet University. Jones alleges in his complaint that Servellon sexually molested him during a medical examination. Servellon previously filed a motion to dismiss, which was granted on the ground that Servellon was a federal employee at the time of the incident and therefore subject to suit only under the terms of the Federal Tort Claims Act. Gallaudet University now files a separate motion to dismiss, contending that it may not be held vicariously liable for the actions of Servellon because Servellon was not employed by Gallaudet University at the time of the incident. Gallaudet University also contends that, insofar as the complaint alleges a sexual battery, the cause of action is barred by the statute of limitations.

For the reasons stated below, the Motion to Dismiss or, in the Alternative, for Summary Judgment is granted in part and denied in part.

I.

At the time of the alleged incident in 1991, Servellon was a physician and psychiatrist employed by the National Health Services Corps of the United States Public Health Service. He was assigned to provide medical services to students at Gallaudet University in Washington, D.C., a specialized school for the deaf. Jones was a student at Gallaudet University.

On March 5, 1991, Jones went to see Servellon to be fitted with a new hearing aid. While he was being treated for excess earwax, Jones claims that Servellon negligently applied a caustic chemical to his ears, rendering him unconscious. Allegedly, as Jones faded in and out of consciousness, Servellon sexually molested him.

On March 4, 1994, approximately three years later, Jones filed suit against Servellon and Gallaudet University. Thereafter, the United States moved to substitute itself for Servellon as a defendant under the Federal Tort Claims Act. An Order dated May 5, 1995 granted the motion to substitute. The United States then filed a motion to dismiss, which was granted on the ground that Jones failed to file an administrative grievance with the Department of Health and Human Services within two years as required by the FTCA. *See* 28 U.S.C. § 2679(d)(5)(A) (1988).

Gallaudet University now moves to dismiss the complaint on two grounds: (1) that it may not be held vicariously liable for the actions of Servellon, and (2) that Jones failed to file his lawsuit within the one-year **statute** of **limitations** provided for battery **claims.**

II.
A.
In his complaint, Jones alleges that Gallaudet University should be held liable for the actions of Servellon under the theories of negligent hiring, negligent supervision, and/or *respondeat superior*. In order to prevail under either of these three theories, however, Jones must first be able to present evidence tending to show that Gallaudet University and Servellon maintained a master-servant relationship. *See Murphy v. Army Distaff Foundation, Inc.,* 458 A.2d 61, 62-63 (D.C.1983). Gallaudet University argues that, since it is undisputed Servellon was an employee of the Federal Government at the time of the incident, he cannot also be considered an employee of the University.

*2 The common law, however, unlike the New Testament, does not prohibit a man from serving two masters at the same time. It is well-established that an individual may be employed simultaneously by two different employers. *See Restatement (Second) of Agency* § § 226, 227 (1958); *see also Dellums v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 2
1996 WL 554513 (D.D.C.)
**(Cite as: 1996 WL 554513 (D.D.C.))**

*Powell, 566 F.2d 216, 220-22 (D.C.Cir.1978); Safeway Stores, Inc. v. Kelly, 448 A.2d 856, 860-61 (D.C.1982).* As expressed in the Restatement, "A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others." Restatement (Second) of Agency § 227. In determining whether a secondary master-servant relationship has been formed, the crucial factor is right of control. *See id.* § 220(2); *Safeway Stores,* 448 A.2d at 860 & n. 10. [FN1]

> FN1. Other relevant factors that go towards defining the master-servant relationship are (1) whether the employer supplies the instrumentalities, tools, and place of work; (2) the length of employment--Servellon was appointed to serve for three years, *see* Pl.'s Ex. 6; (3) and whether the work is part of the regular business of the employer-- Gallaudet University, as one of its functions, maintained a fully staffed Student Health Service, *see* Pl.'s Ex. 4.

In this case, although it is undisputed that Servellon was a "general servant" of the Federal Government, there is also evidence to support a finding that he was a "special servant" of Gallaudet University. The record contains deposition testimony by the Deputy Director of the National Health Services Corps explaining that members of the Corps are under the "joint responsibility" of the organization where they are placed and the Federal Government. Pl.'s Ex. 2 at 8. The Deputy Director also stated, "[T]he organization where the person is assigned is the sort of first line supervisor and first line kind of evaluator." *Id.* at 11. Elsewhere in the record are statements made by Gallaudet University acknowledging supervisory responsibility for Servellon. The minutes of a meeting conducted on June 18, 1990 noted that "Dr. Hinds [the Medical Director of Gallaudet University] would supervise Dr. Servellon on medical practice and procedure...." Pl.'s Ex. 8 at 1. Those same minutes also stipulated that "while seeing students on-campus Dr. Servellon is an agent of Gallaudet and will be covered as such (re: insurance) and liable as such...." *Id.* at 2.

In practice, it was Gallaudet University that conducted Servellon's annual performance appraisal, using a form provided by the Federal Government. The appraisal was completed and signed by Dr. Ilnez Hinds, the Medical Director of Gallaudet University. Dr. Hinds also exercised disciplinary authority over Servellon. At one point, Dr. Hinds suspended Servellon pending the outcome of a University investigation based on the same allegations at issue here. *See* Pl.'s Ex. 13. Since there is ample evidence in the record to support a finding that Gallaudet University was a "special employer" of Servellon, the University may be held liable for Servellon's tortious conduct.

**B.**

Both parties agree that, under the three-year statute of limitations for negligence and other causes of action, the complaint would be deemed to have been timely filed. [FN2] *See* D.C.Code Ann. § 12-301(8) (1994). Gallaudet University, however, contends that this cause of action should be characterized as a battery, thus triggering the one-year statute of limitations. *See id.* § 12-301(4) (1994). Such an argument is unpersuasive on two bases. First, insofar as Jones alleges negligent hiring and negligent supervision on the part of Gallaudet University, those torts are independent of Servellon's intentional conduct. The D.C. Circuit has stated that a cause of action for negligent supervision or negligent training has a three-year limitations period, even if the negligent conduct of the employer results in an intentional tort by the employee. *See Hunter v. District of Columbia, 943 F.2d 69, 72-73 (D.C.Cir.1991).*

> FN2. The alleged incident occurred on March 5, 1991, and Jones filed his complaint on March 4, 1994.

**\*3** Second, regarding the cause of action under *respondeat superior,* although the legal analysis is slightly more complicated, the result is substantially the same. Unlike a **claim** for negligent hiring or negligent supervision, a **claim** under *respondeat superior* does not allege a separate and distinct tort by the employer, but rather holds the employer vicariously liable for torts of the employee. Thus, the applicable **statute** of **limitations** for *respondeat superior* depends upon the nature of the torts alleged to have been committed by the servant. In his complaint, Jones alleges four causes of action against Servellon. Count I alleges medical malpractice based on the negligent application of a caustic chemical used to clean Jones's ears. That same count, however, also alleges sexual battery. To the extent that Jones seeks to have Gallaudet University held accountable for battery under *respondeat superior,* the cause of action is time-barred. Jones may not avoid the **statute** of **limitations** by cloaking his battery **claim** in the language of negligence or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1996 WL 554513 (D.D.C.)
**(Cite as: 1996 WL 554513 (D.D.C.))**

Page 3

medical malpractice. *See Maddox v. Bano,* 422 A.2d 763, 764- 65 (D.C.1980) (citing *Morfessis v. Baum,* 281 F.2d 938 (D.C.Cir.1960)). Of course, with regard to any negligence on the part of Servellon leading up to the sexual contact, Jones may proceed against Gallaudet University.

Count II alleges a negligent failure to provide informed consent regarding the nature of the ear-cleaning procedure and use of the caustic chemical. Although the tort of failure to provide informed consent is one flip-side to the tort of battery, the D.C. Circuit has held that the two causes of action are analytically different and are subject to different statutes of limitations. *See Canterbury v. Spence,* 464 F.2d 772, 793 (D.C.Cir.1972). The Court in *Canterbury* specifically held that a claim for failure to provide informed consent is governed by the three-year provision. *Id.* Again, however, Count II also includes allegations relating to the sexual battery, and to the extent that Jones seeks to hold Gallaudet University liable for Servellon's failure to provide informed consent to such a battery, the claim is time-barred.

Count III alleges intentional infliction of emotional distress, which Jones concedes is time-barred.

Count IV alleges, as an alternative and inconsistent cause of action, that Jones may have consented to the sexual contact, but even so, Servellon was negligent in his actions because he should have known that he would cause emotional distress. Although it is not clear that a complaint alleging consensual sexual relations, even in a doctor-patient relationship, states a cause of action for negligent infliction of emotional distress, *see Simmons v. United States,* 805 F.2d 1363, 1366 (9th Cir.1986) ("[C]ourts do not routinely impose liability upon physicians in general for sexual contact with patients."), in any event, Gallaudet University does not raise that issue here. What is clear is that negligent infliction of emotional distress arising from consensual sexual relations, if it is a tort, is one distinct from battery. Therefore, the three-year **statute** of **limitations** applies.

### III.
*4 Gallaudet University's Motion to Dismiss or, in the Alternative, for Summary Judgment is granted in part insofar as Gallaudet University seeks to avoid liability under *respondeat superior* for Servellon's alleged sexual battery and intentional infliction of emotional distress. In all other respects, the motion is denied.

*ORDER*
It is this 11th day of September 1996 hereby

ORDERED: that defendant Gallaudet University's Motion to Dismiss or, in the Alternative, for Summary Judgment is GRANTED IN PART insofar as Gallaudet University seeks to avoid liability under *respondeat superior* for Servellon's alleged sexual battery and intentional infliction of emotional distress, and is DENIED IN PART with respect to all other **claims**; and it is further

ORDERED: that a status conference to discuss further administration of this case is scheduled for *October 24, 1996 at 10:00 a.m. in Courtroom 3.*

1996 WL 554513 (D.D.C.)

**Motions, Pleadings and Filings (Back to top)**

•          1:94CV01038          (Docket)
(May. 11, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                Page 1
1996 WL 273674 (E.D.Pa.)
(Cite as: 1996 WL 273674 (E.D.Pa.))

**H**

__Motions, Pleadings and Filings__

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Nagesh SHIRSAT
v.
MUTUAL PHARMACEUTICAL CO., INC.
**No. CIV. A. 93-3202.**

May 15, 1996.

MEMORANDUM AND ORDER
HUTTON, Judge.

*1 Presently before the Court are plaintiff's motion for leave to file an amended complaint and defendant's opposition.

### I. *BACKGROUND*

This civil action involves plaintiff's allegations that he was wrongfully discharged from his employment with Mutual Pharmaceutical Co., Inc. ("Mutual") on April 30, 1992. Plaintiff commenced this action on June 15, 1993, naming only Mutual as a defendant. In his complaint, plaintiff alleges that Mutual terminated his employment in retaliation for his complaints and stated intention to report to the authorities certain of Mutual's alleged practices in violation of the Federal Food, Drug, and Cosmetic Act and the rules and regulations of the Federal Food and Drug Administration.

After plaintiff filed this case, attorneys for the government filed a motion to stay plaintiff's civil action pending the government's ongoing criminal investigation of Mutual. Plaintiff did not oppose the stay, and, accordingly, this Court issued a stay in January of 1994.

As a result of the government's criminal investigation, Mutual pleaded guilty to a seven count indictment and entered into a non-appealable plea agreement in which Mutual agreed to pay a fine of $3.25 million. In addition to the government's indictment against Mutual, the government also indicted four employees of Mutual and proceeded to trial against them.

Following the conclusion of the employees' criminal trial, this Court lifted the stay in this case in May of 1995. In July of 1995, plaintiff retained new counsel. Subsequently, in October of 1995, the parties entered into an agreement staying the action once again until January 15, 1996.

Plaintiff now moves to amend his complaint to add Richard Roberts ("Roberts"), the president of Mutual, as a defendant, to add three new counts against Mutual and Roberts, and to "flesh out" his previous factual allegations. The three new counts involve claims for intentional infliction of emotional distress, interference with "financially beneficial employment relations," and interference with prospective contractual relations.

### II. *DISCUSSION*
#### A. *Amendment of Pleadings in General*

Rule 15(a) of the Federal Rules of Civil Procedure provides that, when a responsive pleading has already been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Such leave is within the discretion of the court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir.1993).

#### B. *Addition of Roberts*

When an amendment seeks to change or add a party, and the amendment is sought outside of the statute of limitations period (as in this case), Rule 15(c)(3) provides that the amendment relates back to the date of the original pleading when: (1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (2) the party to be brought in by the amendment has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits; (3) the party to be brought in knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party; and (4) the second and third requirements are satisfied within the period provided by Federal Rule of Civil

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                                          Page 2
1996 WL 273674 (E.D.Pa.)
(Cite as: 1996 WL 273674 (E.D.Pa.))

Procedure 4(m).

*2 This Court concludes that the third requirement has not been met in this case. In *Advanced Power Systems v. Hi-Tech Systems, 801 F.Supp. 1450 (E.D.Pa.1992)*, the court explained that "[t]he 'mistake' condition does not isolate a specific type or form of error in identifying parties, but rather is concerned fundamentally with the new party's awareness that failure to join it was error rather than a deliberate strategy." *Id. at 1457.* In determining whether a party considered its omission from a law suit an error or a deliberate legal strategy, courts may consider the close identity of interest between an omitted party and a named party, *Advanced Power Systems, 801 F.Supp. at 1457,* and the plaintiff's awareness of the omitted party as a potential defendant. *See Kilkenny v. Atlantic Richfield Co., 800 F.2d 853, 857 (9th Cir.1986)* (no relation back where plaintiff, inter alia, failed to amend her complaint after being informed of potential defendants), *cert. denied, 480 U.S. 934 (1987); Potts v. Allis-Chalmers Corp., 118 F.R.D. 597 (N.D.Ind.1987)* (where plaintiff should have been aware of proper defendant at the outset, delay in amending complaint could be viewed by defendant as strategy, rather than mistake); *Curry v. Johns-Manville Corp., 93 F.R.D. 623 (E.D.Pa.1982)* (no relation back where third-party defendants were impleaded five months before plaintiffs moved to add them as direct defendants, because defendants could have interpreted plaintiffs' decision as strategy not error). As the Ninth Circuit has explained, Rule 15(c)(3) "was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation." *Kilkenny, 800 F.2d at 857-58.*

In this case, it was reasonable for Roberts to view his omission as a deliberate legal strategy by plaintiff, not merely an error. Plaintiff's asserted reason for adding Roberts at this time is that testimony elicited during the criminal trial of Mutual's employees revealed facts establishing Roberts' liability for plaintiff's wrongful termination. Specifically, plaintiff allegedly learned that Roberts instructed the director of human resources to offer plaintiff the opportunity to resign, in lieu of termination, if plaintiff agreed not to report Mutual's violations to the appropriate authorities.

The Court finds this reason unconvincing. Obviously, the plaintiff was aware of the offer to resign at the time he was terminated. Indeed, plaintiff states that he "refused to resign under these conditions and was therefore terminated." (Pl.'s Mem. at 11). In addition, at the time of termination, several employees of Mutual were present, including the director of human resources, a private investigator, and at least one management personnel. (Pl.'s Ex. B at 2908). At no time before the present motion was filed, however, did plaintiff attempt to sue any of Mutual's employees individually. Plaintiff did not include in his suit the director of human resources, who allegedly communicated the offer of resignation to him. In addition, despite the obvious involvement of management in plaintiff's termination, plaintiff did not attempt to sue any of Mutual's managers individually before the present motion was filed. Nor did plaintiff include a "John Doe" defendant at any time. Thus, notwithstanding plaintiff's knowledge of potential individual defendants to this action, plaintiff never attempted to sue, or gave any indication that he would sue, such individuals.

*3 Moreover, despite the fact that plaintiff learned of Roberts' involvement in March of 1995, [FN1] that the stay in this case was lifted in May of 1995, and that the parties did not agree to a further stay until October of 1995, plaintiff did not file this motion to amend until a month after the second stay ended. Such a delay provides further indication that plaintiff now seeks to change a legal strategy, rather than correct an error. [FN2]

> FN1. Plaintiff allegedly learned of Roberts' involvement through the trial testimony of Michael Smith, Mutual's director of human resources. A portion of the transcript of Mr. Smith's testimony is attached as plaintiff's exhibit B and dated March 21, 1995.

> FN2. Although plaintiff hired new counsel in July of 1995, and counsel understandably needed time to familiarize themselves with the case, the Court once again notes that the events surrounding plaintiff's termination, except for Roberts' alleged complicity, were clearly established from the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
1996 WL 273674 (E.D.Pa.)
(Cite as: 1996 WL 273674 (E.D.Pa.))

beginning. Therefore, if there had been an error in not suing individual employees or managers of Mutual, one would believe that such an error would have been easily spotted early on in counsel's review of the case.

Finally, the Court notes that plaintiff's position before this time is well summarized in his testimony given at the criminal trial of Mutual's employees:

> Q. Okay. Now, you would agree that the management of Mutual is who you're claiming violated your rights; is that correct?
>
> A. The company on whole as such violated my rights.

(Def.'s Ex. B at 131).

It is clear that, in light of plaintiff's knowledge of pertinent events and potential individual defendants within the statute of limitations period and plaintiff's delay in filing this motion, plaintiff's failure to sue any individual defendants can reasonably be viewed as deliberate legal strategy, not merely error. Therefore, the Court will not allow the addition of Roberts as a defendant.

*C. Addition of New Claims*

When a new claim is sought to be added, denial of leave may be based upon, among other grounds, the futility of amendment. *Lorenz,* 1 F.3d at 1413 (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Futility of amendment has generally been construed as meaning that a court should refuse to allow an amendment that would not survive a motion to dismiss. *Williams v. Bensalem Racing Assoc., Inc.,* Civ. A. No. 94-5777, 1995 WL 395951, at *2 (E.D.Pa. June 29, 1995); *see Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937 (1983).

As always, when considering a motion to dismiss for failure to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court shall take all allegations contained in the complaint as true and construe them in the light most favorable to the plaintiff. *H.J. Inc. v. Northwest Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). The complaint shall only be dismissed if " 'it is clear that no

relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Northwest Bell,* 492 U.S. at 249-50 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

In addition, when considering a motion to dismiss for insufficient specificity under Rule 8(a) of the Federal Rules of Civil Procedure, the Supreme Court has held that a complaint must provide the defendants with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957). The Third Circuit has interpreted the fair notice requirement to mean that the "crucial questions are whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Frazier v. Southeastern Penn. Transp. Auth.,* 785 F.2d 65, 68 (3d Cir.1986). Generally, the court explained that a complaint is sufficiently specific when it sets forth the conduct complained of, the time, the place, and those responsible. *See id.* at 67-68.

*1. Count Two: Intentional Infliction of Emotional Distress*

**\*4** In count two, plaintiff alleges intentional infliction of emotion distress by Mutual. Mutual argues that plaintiff's intentional infliction of emotional distress claim should be dismissed because the Pennsylvania Worker's Compensation Act ("PWCA") provides the exclusive remedy for plaintiff's employment-related claim.

In most cases, the PWCA is the exclusive remedy of an employee for an injury arising in the course of employment. *Price v. Philadelphia Elec. Co.,* 790 F.Supp. 97, 99 (E.D.Pa.-1992). An exception exists, however, for injuries caused to an employee by the intentional conduct of a fellow employee who was motivated by personal animosity towards the other. *Id.* For example, the PWCA does not bar intentional infliction of emotional distress claims for sexual or racial harassment by a fellow employee. *Id.* at 100.

In this case, the plaintiff has not alleged any conduct by an employee of Mutual that was motivated by personal animosity towards the plaintiff. Although plaintiff alleges that the acts of Mutual's employees were willful and malicious, (Am.Compl.¶ 28), it is clear from the complaint

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
1996 WL 273674 (E.D.Pa.)
(Cite as: 1996 WL 273674 (E.D.Pa.))

Page 4

that this animosity is related to business considerations, rather than to any personal characteristics of plaintiff (as, for example, sexual or racial harassment would be). *See Whitney v. Xerox Corp., C.A. No. 94-CV-3852, 1994 WL 412429, *6 (E.D.Pa. Aug. 2, 1994)* (emotional distress caused as a result of campaign by plaintiff's supervisors to force him out after plaintiff reported the unlawful activities of some fellow employees and thereby embarrassed his supervisors was due to "business related animosity" and barred by the PWCA); *Tiscornia v. Sysco Corp., Civ. A. No. 95-3178, 1995 WL 574334, *4 (E.D.Pa. Sept. 26, 1995)* (injuries caused to plaintiff as a result of blowing the whistle on his supervisor's wrongdoing were motivated by "business related animosity" and barred by PWCA).

Even if the claim were not barred, however, the facts alleged do not support a claim of intentional infliction of emotional distress. A viable claim of intentional infliction of emotional distress must allege conduct that is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir.1988)* (quoting *Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa.Super.1987)*).

The Third Circuit in *Cox* noted that:

> At the outset, it must be recognized that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress. In the context of a dismissal, it has been noted that "while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event" and cannot provide the basis for recovery for intentional infliction of emotional distress. Moreover, courts applying Pennsylvania law have failed to find conduct outrageous where an employer deceived an employee into foregoing other employment, or even where the employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult.

*5 *Cox, 861 F.2d at 395* (citations omitted).

In *Cox,* the Third Circuit found that where an employer

fired an employee on the first day back to work, knowing that the employee had undergone triple bypass surgery, knowing that the employee's physical and emotional recuperation were not complete, knowing that by firing the employee "it was endangering his chances of collecting medical and disability benefits," and knowing that by firing the employee "it was depriving him of a valuable therapeutic tool and jeopardizing his chances to obtain alternate employment," the dismissal of the employee, while performed with "an improper motive and notwithstanding the potential effects on [the employee]," did not rise to the level of outrageousness which is required under Pennsylvania law. *Id.* at 395-96.

In this case, plaintiff has merely alleged that his improper termination was the sole cause of his emotional suffering. Plaintiff alleges no circumstances surrounding his termination that would rise to the level of outrageousness as explained in *Cox.* Accordingly, plaintiff has failed to state a cause of action for intentional infliction of emotional distress, and this amendment would be futile.

*2. Count Three: Interference with Employment Relations*

In count three, plaintiff claims Roberts interfered with plaintiff's "financially beneficial employment relations" with Mutual. Even assuming such a cause of action exists, since the Court has not granted leave to add Roberts as a defendant, this count cannot stand.

*3. Count Four: Interference with Prospective Contractual Relations*

In count four, plaintiff alleges that Roberts and Mutual interfered with prospective contractual relationships between plaintiff and other pharmaceutical companies. Mutual argues that plaintiff has failed to allege with adequate specificity such prospective contractual relationships.

In *Advanced Power Systems v. Hi-Tech Systems, 801 F.Supp. 1450 (E.D.Pa.1992),* the court explained that:

> [E]ven at the pleading stage, a plaintiff may not rest a claim for tortious interference with prospective contractual relations on a mere hope that additional

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                                  Page 5
1996 WL 273674 (E.D.Pa.)
(Cite as: 1996 WL 273674 (E.D.Pa.))

contracts ... would have been forthcoming but for defendant's interference. The complaint must allege facts that, if true, would give rise to a reasonable probability that particular anticipated contracts would have been entered into.

*Id.* at 1459.

In his complaint, the plaintiff merely alleges that "Plaintiff's difficulty in obtaining work in the pharmaceutical industry is directly attributable to the circumstances underlying this matter," (Am.Compl.¶ 44), and "Defendant Mutual and Defendant Roberts have intentionally interfered with prospective contractual relationships between Plaintiff and other pharmaceutical companies with an intent to harm the Plaintiff by preventing any such relationships from accruing." (Am.Compl.¶ 45).

These allegations are inadequately specific to support a claim for interference with prospective contractual relations. Plaintiff does not specify any particular relation that was allegedly interfered with, what conduct by Mutual and Roberts amounted to interference, or facts that would give rise to a reasonable probability that, but for the interference, the particular anticipated contracts would have been entered into. Thus, the Court will not allow this amendment as well.

D. *"Fleshing Out" of Previous Factual Allegations*

*6 Plaintiff claims that, in addition to seeking leave to add a defendant and new counts, he is "using this opportunity to provide more specificity to Plaintiff's factual allegations. Defendant should not be heard to challenge Plaintiff's Motion to File an Amended Complaint on this basis insofar as the Amended Complaint simply 'fleshes out' the details of Plaintiff's original pleading." (Pl.'s Mem. at 12-13 n. 5). Mutual has not challenged these amendments.

### III. *CONCLUSION*
For the foregoing reasons, plaintiff's motion is granted in part and denied in part. An appropriate Order follows.

### *ORDER*
AND NOW, this 13th day of May, 1996, upon consideration of Plaintiff's Motion for Leave to File an Amended Complaint, IT IS HEREBY ORDERED that Plaintiff's

Motion is GRANTED in part and DENIED in part.

1996 WL 273674 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:93CV03202 (Docket) (Jun. 15, 1993)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.

Page 1

1997 WL 261357 (N.D.Ill.)

(Cite as: 1997 WL 261357 (N.D.Ill.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois.
Eric **WHITE**, Plaintiff,
v.
Wilbert **WILLIAMS** and Michael Sheahan, Sheriff
of Cook County, Defendants.
**No. 94 C 3836.**

May 8, 1997.

MEMORANDUM OPINION AND ORDER

PLUNKETT

*1 In November 1996, Eric White ("White") filed his second amended complaint naming Cook County Sheriff Michael Sheahan ("Sheahan") as a defendant. Sheahan has moved to dismiss on the grounds that the statutes of limitations on the claims asserted against him have expired. For the reasons set forth below, Sheahan's motion is granted in part and denied in part.

*Background*
On March 12, 1994, defendant Wilbert Williams' ("Williams") shot White during a traffic dispute. Williams was employed as a Cook County Deputy Sheriff at the time.

On June 23, 1994, White filed a two-count complaint against Williams. Count I was a 42 U.S.C. § 1983 ("Section 1983") excessive force claim asserted against Williams in his official capacity as a deputy sheriff. Count II was a state law battery claim.

Williams moved to dismiss the official capacity

claim because the complaint failed to allege that he acted pursuant to an official custom, policy or practice of the Cook County Sheriff's Department.
On December 7, 1994, this Court granted Williams' motion, but stated: "the dismissal in his official capacity is without prejudice and plaintiff may pursue discovery on the issue of whether defendant acted pursuant to an alleged custom or policy or practice."

Shortly thereafter the Court stayed discovery in the case pending completion of Williams' criminal trial. [FN1] On September 12, 1995, the Court lifted the discovery stay "as to matters not directly related to the conduct of the defendant ... on 3/12/94." On April 23, 1996, the stay of discovery was lifted. [FN2]

On September 16, 1996, Williams was deposed. White contends that the deposition testimony finally provided him with an adequate factual basis to allege a Section 1933 policy claim. On November 13, 1996, White filed his second amended complaint adding Sheahan as a defendant and asserting a Section 1983 claim and a state law negligence claim against him. Sheahan contends that White can maintain neither claim because the statute of limitations applicable to each has expired.

*The Legal Standard*
Oddly, Sheahan has styled his motion as Fed.R.Civ.P. ("Rule") 12(b)(2) motion to dismiss for lack of personal jurisdiction. Personal jurisdiction in this case depends upon Sheahan having the requisite minimum contacts with the State of Illinois, not on the timeliness of White's claims. *Rodriguez v. City of Milwaukee,* No. 94 C 7748, 1995 WL 704760, at * 3 (N.D.Ill. Nov. 29, 1995) (citing *Burstein v. State Bar of Cal.,* 693 F.2d 511, 517 (5th Cir.1982)). Given the office ne occupies, there can be little doubt that Sheahan's contacts with this State are sufficient to make him amenable to suit here.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1997 WL 261357 (N.D.Ill.)

**(Cite as: 1997 WL 261357 (N.D.Ill.))**

Sheahan's motion should have been styled as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Accordingly, the Court will analyze it as such. On a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

*Discussion*

**\*2** The statute of limitations for Section 1983 actions brought in Illinois is two years. *Kalimara v. Illinois Dep't of Corrections,* 879 F.2d 276, 277 (7th Cir.1989); *Farrell v. McDonough,* 966 F.2d 279, 281 (1992), *cert. denied,* 506 U.S. 1084 (1993) (expressing continued adherence to *Kalimara* ). The statute of limitations for state law claims against local government officials is one year. 745 Ill.Comp.Stat. 10/8-101. White did not file his claims against Sheahan until November 1996--two years and eight months after the altercation with Williams Thus, unless these statutes were tolled, both of White's claims against Sheahan are time-barred.

When federal courts borrow state statutes of limitations, as they do for Section 1983 claims, they also borrow any applicable state tolling provisions. *Smith v. City of Chicago Heights,* 951 F.2d 834, 839-40 (7th Cir.1992) (quoting *Johnson v. Railway Express Agency,* 421 U.S. 454, 463-64 (1975)). Moreover, courts in the Seventh Circuit apply federal tolling provisions in addition to--not in place of--state tolling provisions. *Id.* Thus, White can invoke any federal or state tolling provision to try to save his claims. White contends that two such provisions apply: the federal doctrine of equitable tolling and the state "stay of action" tolling statute. (Pl.'s Resp. at 5-9.)

The doctrine of equitable tolling allows a plaintiff to avoid a statute of limitations bar "if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1991), *cert. denied,* 501 U.S. 1261 (1991) (citations omitted). White claims that despite his diligence, the stay of discovery prevented him from gathering the information necessary to state a Section 1983 policy claim against Sheahan.

The record in this case belies White's claims of diligence. White filed his first complaint in this action in June 1994. Discovery was not stayed until December 1994. Thus, White had six months to conduct discovery on the policy claim before the stay was entered. Unfortunately, he did nothing. Given this six month lapse, White has not demonstrated the diligence necessary for application of the doctrine of equitable tolling.

Even if White had been diligent prior to the stay, equitable tolling would still not save his negligence claim against Sheahan. As noted above, that claim has a one year statute of limitations which started on March 12, 1994. 745 Ill.Comp.Stat. 10/8-101. Thus, even if the statute had been tolled from December 7, 1994 until April 23, 1996, it still would have expired in July 1996--four months before White filed his claim. In short, White cannot rely on the equitable tolling doctrine to save either of his claims against Sheahan.

White also asserts that the state "stay of action" statute tolled the limitations periods on his claims. That statute excludes from the applicable limitations period the time during which an injunction or other court order stays the commencement of an action. 735 Ill.Comp.Stat. 5/1-216. Unlike the doctrine of equitable tolling, the "stay of action" statute does not require a demonstration of diligence. *Id.*

**\*3** Though the statute is not often invoked, at least one court has applied it to a case much like this one. *See Doe v. Bobbitt,* 698 F.Supp. 1415 (N.D.Ill.1988), *rev'd on other grounds,* 881 F.2d 510 (7th Cir.1989). The plaintiff in *Doe* discovered facts sufficient to file a claim only after the court lifted a two year stay of discovery and the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3

1997 WL 261357 (N.D.Ill.)

**(Cite as: 1997 WL 261357 (N.D.Ill.))**

applicable statute of limitations had run. When plaintiff amended her complaint, the newly added defendant moved to dismiss.

The court denied the motion. In the court's view, the discovery stay and the requirements of Rule 11 trapped plaintiff in a procedural Catch-22. She could either file an unfounded claim within the limitations period or a well-grounded one after the limitations period expired. *Id.* at 1419. Recognizing the inequity of the situation, the court held that the applicable limitations period was tolled during the discovery stay by the "stay of action" statute. *Id.* at 1419.

The instant case is very similar to *Doe.* As in *Doe,* White could not gather the facts necessary for his policy claim while discovery was stayed. Nor could he, consistent with Rule 11, file a claim without them. He too faced an unpalatable choice: risk Rule 11 sanctions by filing a claim based only on conjecture or risk losing the claim entirely by amending the complaint after the statute of limitations expired. This is precisely the kind of procedural morass that tolling statutes are designed to prevent. Accordingly, as in *Doe,* this Court holds that the Section 1983 limitations period was tolled during the sixteen month discovery stay. Thus, White's Section 1983 claim against Sheahan was timely filed on November 16, 1996. [FN3]

The Court's holding does not, however, save White's negligence claim. As discussed above, even if the one year limitations period was tolled during the discovery stay, it still expired four months before White filed his claim. With or without tolling, White's negligence claim against Sheahan is time-barred and must be dismissed.

### Conclusion

Sheahan's Rule 12(b)(6) motion to dismiss is granted in part and denied in part. White's negligence claim against Sheahan is time-barred and is dismissed. White's Section 1983 claim against Sheahan was filed timely and stands.

DATED: May 6, 1997

FN1. The court record does not reflect the date the stay was entered nor does it describe the exceptions, if any, to the stay order. White claims that the stay was entered shortly after December 7, 1994 and that all discovery was stayed. Because Sheahan does not dispute these representations, the Court will accept them as true.

FN2. White asserts that the stay was lifted "about [the] time" Williams' criminal trial was completed in July 1996. The court record establishes that the stay was lifted on April 23, 1996.

FN3. In reaching this holding, the Court specifically rejects Sheahan's contention that artful notice pleading can substitute for pre-filing investigation. Contrary to Sheahan's belief, if White had filed his policy claim without an adequate factual basis, he would have been subject to Rule 11 sanctions.

1997 WL 261357 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 1:94CV03836  (Docket)

(Jun. 23, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.