WALSH SECURITIES, INC.,

          Plaintiff,

      vs.

CRISTO PROPERTY MANAGEMENT, LTD.,
a/k/a G.J.L. LIMITED, DEK HOMES OF
NEW JERSEY, INC., OAKWOOD PROPERTIES,
INC., NATIONAL HOME FUNDING, INC.,
CAPITAL ASSETS PROPERTY MANAGEMENT &
INVESTMENT CO., INC., CAPITAL ASSETS
PROPERTY MANAGEMENT, L.L.C., WILLIAM
KANE, GARY GRIESER, ROBERT
SKOWRENSKI, II, RICHARD CALANNI,
RICHARD DiBENEDETTO, JAMES R. BROWN,
THOMAS BRODO, ROLAND PIERSON, STANLEY
YACKER, ESQ., MICHAEL ALFIERI, ESQ.,
RICHARD PEPSNY, ESQ., ANTHONY M.
CICALESE, ESQ., LAWRENCE CUZZI,
ANTHONY D'APOLITO, DAP CONSULTING,
INC., COMMONWEALTH LAND TITLE
INSURANCE CO., NATIONS TITLE
INSURANCE OF NEW YORK, INC., FIDELITY
NATIONAL TITLE INSURANCE CO. OF NEW
YORK, COASTAL TITLE AGENCY, and
STEWART TITLE GUARANTY COMPANY, IRENE
DiFEO, DONNA PEPSNY and WEICHERT
REALTORS,

          Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CV 97-3496 (WGB)

Hon. William G. Bassler

*Document Electronically Filed*

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STEWART
TITLE GUARANTY COMPANY'S MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT**

---

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey 07102-5496
(973) 596-4500
Attorneys for Defendant
Stewart Title Guaranty Company

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................. ii

PRELIMINARY STATEMENT ............................................. 1

STATEMENT OF FACTS ................................................ 3

LEGAL ARGUMENT .................................................... 9

I.     THE COMPLAINT SHOULD BE DISMISSED AS TO STEWART TITLE
       GUARANTY COMPANY AS PLAINTIFF HAS FAILED TO STATE A CLAIM
       UPON WHICH RELIEF CAN BE GRANTED ........................... 9

       A.     Plaintiff's Claim Has Been Extinguished By The Passage
              Of The Applicable Statutes of Limitations .............. 10

              1.     Plaintiff's Claim For Breach Of Contract As to
                     Stewart Has Been Extinguished..................... 11

              2.     Plaintiff is not entitled to the benefit of any
                     tolling period ................................... 14

CONCLUSION ....................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alexiou v. Brad Benson Mitsubishi,
  127 F. Supp. 2d 557 (D.N.J. 2000)....................................................9

Amland Properties Corp. v. Aluminum Co. of America,
  808 F. Supp. 1187 (D.N.J. 1992) ....................................................12

Burd v. New Jersey Telephone Co.,
  76 N.J. 284 (1978)..........................................................................12

Camden County Bd. of Chosen Freeholders v. Berretta U.S.A.
  Corp.,
  123 F. Supp. 2d 245 (D.N.J. 2000),
  *aff'd*, 273 F.3d 536 (3d Cir. 2001)..................................................9

Cinnaminson Township Board of Education v. U.S. Gypsum Co.,
  552 F. Supp. 855 (D.N.J. 1982) (citations omitted)..........................10

Conley v. Gibson,
  355 U.S. 41 (1957)...........................................................................9

Farrell v. Vorator Div. Of Chemetron Corp.,
  62 N.J. 111 (1973)..........................................................................11

Gahnney v. State Farm Insurance Co.,
  56 F. Supp. 2d 491 (D.N.J. 1999).............................................11, 12

Galligan v. Westfield Centre Service, Inc.,
  82 N.J. 188 (1980)..........................................................................14

Haardt v. Farmer's Mutual Fire Insurance Company of Salem
  County,
  796 F.Supp. 804 (D.N.J. 1992) ......................................................13

Hanna v. U.S. Veterans' Admin. Hosp.,
  514 F.2d 1092 (3d Cir. 1975)..........................................................10

Harriman v. Internal Revenue Service,
  233 F. Supp. 2d 451 (E.D.N.Y. 2002),
  *reconsideration den.*, 2003 WL 1950254 (E.D.N.Y. 2003).....................9

Keil v. National Westminster Bank, Inc.,
  311 N.J. Super. 473 (App. Div. 1998) (citations omitted)............10

Lopez v. Swyer,
  62 N.J. 267 (1973) ................................................................ 10

McGrogan v. Till,
  327 N.J. Super. 595 (App. Div.);
  *certif. granted*, 165 N.J. 132 (2000),
  *aff'd as modified*, 167 N.J. 414 (2001) ................................ 10

P.T. & L. Construction Company, Inc. v. Madigan and Hyland,
Inc.,
  245 N.J. Super. 201 (App. Div.),
  *certif. den.* 126 N.J. 330 (1991) ..................................... 14, 15

Peloso v. Hartford Fire Insurance Co.,
  56 N.J. 514 (1970) ............................................................ 12, 13

Robinson v. Johnson,
  313 F.3d 128 (3d Cir. 2002),
  *cert. den.*, 540 U.S. 826 (2003) ..................................... 9, 10

Rosenau v. City of New Brunswick,
  51 N.J. 130 (1968) ............................................................ 12

Rowe v. Morgan Stanley Dean Witter,
  191 F.R.D. 398 (D.N.J. 1999) .......................................... 9

Schenck v. Kloster Cruise Limited,
  800 F.Supp. 120 (D.N.J. 1992),
  *aff'd*, 993 F.2d 225 (3d Cir. 1993) ................................. 13

Tortorello v. Reinfeld,
  6 N.J. 58 (1950) ............................................................... 12

Villalobos v. Fava,
  342 N.J. Super. 38 (App. Div.),
  *certif. den.* 170 N.J. 210 (2001) ..................................... 14

**Statutes**

N.J.S.A. 2A:14-1 ............................................................. 11, 13

N.J.S.A. 2A-14:1 ............................................................. 13

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................... 9

## PRELIMINARY STATEMENT

While the genesis of this action, the underlying mortgage fraud scheme, and the tortured procedural history of this matter are fairly complex; the subject matter of this statute of limitations motion is fairly straightforward.

Plaintiff brought this action in July of 1997 alleging that starting in early 1996, numerous co-conspirators engaged in racketeering activity, inducing Walsh to purchase approximately 220 mortgage loans at fraudulently inflated prices. Plaintiff has amended its pleadings three times. In all three amendments plaintiff has not identified any transactions outside of the 220 mortgage loans initially identified in its first pleadings. Accordingly, the time with which any potential cause of action which plaintiff may have had against Stewart Title Guaranty Company ("Stewart") would have accrued some time between early 1996 and July of 1997.

Despite initiating its action in 1997 with numerous title companies listed as defendants, plaintiff failed to assert any claims as to Stewart until filing its Third Amended Complaint on January 31, 2005. Having waited almost eight (8) years since the accrual of its cause of action, plaintiff's claim as against Stewart alleging a breach of contract is time-barred under New Jersey's six-year statute of limitations.

Furthermore, plaintiff is not entitled to the benefit of any equitable tolling period. At no time was plaintiff precluded from enforcing any remedy it may have had as against Stewart. On the contrary, plaintiff had available a panoply of procedural methods in

which to assert a potential claim against Stewart prior to the expiration of the statute of limitations. Plaintiff could have done so either in this action or in a new action.

Plaintiff's election to sit on its rights, permitting its claims to become stale, should not be sanctioned. Rather, considerations of fairness to the defendant and the broader consideration of repose, compel the conclusion that plaintiff's claim as against Stewart Title should be dismissed as being time-barred.

## STATEMENT OF FACTS

### The RICO Defendants

Plaintiff Walsh Securities, Inc. ("Walsh"), filed this action on July 17, 1997 alleging violations of the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"). Walsh is a wholesale mortgage banker which primarily focuses on purchasing mortgage loans from the "sub-prime" market. Third Amended Complaint ("Compl.") at ¶ 2. Walsh alleges that starting in early 1996, defendants Cristo Property Management, Ltd. ("Cristo Property"), National Home Funding, Inc. ("NHF"), Capital Assets Property Management and Investment Company, Inc. ("Capital Assets"), William J. Kane, Gary Grieser, Robert Skowrenski, Richard Calanni, Richard DiBenedetto, James R. Brown, Thomas Brodo, Roland Pierson, Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, Esq., Lawrence Cuzzi, Anthony D'Apolito, DAP Consulting, Inc., Irene Difeo, Donna Pepsny, and Coastal Title Agency, (collectively, the "RICO Defendants") engaged in a pattern of racketeering activity which has resulted in approximately 220 mortgage loans being purchased by Walsh from NHF at fraudulently inflated prices. Compl. ¶ 38.[1]

Walsh alleges that it was induced to purchase these mortgage loans from NHF based on fraudulent misrepresentations contained in the mortgage loan applications, which as explained in greater detail below, included fraudulent appraisals of the properties at issue. Id.

---

[1] Despite Walsh's recently amended pleading, it is clear that no new instances of fraud have been discovered since filing the lawsuit. See Amended Complaint (dated November 7, 1997), ¶ 33 (action involves "approximately two hundred twenty mortgage loans"); c.f. Compl., ¶ 38 (same).

at ¶ 38.  The proceeds from the Walsh mortgages were distributed among the RICO Defendants as their elicit profits.  Id.

### The Title Insurance Defendants

In connection with the above alleged fraudulent transactions, Walsh also named Commonwealth Land Title Insurance Company, Inc. ("Commonwealth Title"), Nations Title Insurance of New York, Inc. ("Nations Title"), Fidelity National Title Insurance Company of New York, Inc. ("Fidelity Title"), and Coastal Title Agency, Inc. ("Coastal Agency") (collectively, the "Title Insurance Defendants") as party defendants as early as November 7, 1997 in its Amended Complaint.[2]  Despite Walsh's apparent understanding that title policies and/or closing service letters existed and may have been applicable, Walsh failed to name Stewart as a party Defendant until January of 2005.

The Title Insurance Defendants are all title insurance brokers or insurers that have issued closing service letters to Walsh as the mortgage lender, which letters, among other things, indemnified Walsh against fraud by the closing attorneys.  Compl., ¶ 35.  Walsh further alleges that Mr. Yacker and Mr. Cicalese were specifically approved by the Title Insurance Defendants to handle the subject closings.  Id. at ¶ 41.

---

[2]  Stewart was not a party to the within action until on or about January 31, 2005, when Plaintiff filed a Third Amended Complaint naming Stewart as a party defendant.

– 4 –

**The Fraudulent Scheme**

Walsh alleges that the RICO Defendants carried out numerous fraudulent transactions through a pattern of frauds. Compl., ¶ 64.[3] Kane, acting through Cristo Property, would purchase real property located in New Jersey. Id. at ¶ 64(a). Individuals were then identified who would be willing to buy these properties and sign the mortgage loans. Id. at ¶ 64(b). The property would then be appraised by a licensed appraiser, which, in all instances resulted in a falsely inflated appraisal above what the properties were actually worth. Id. at ¶ 64(c) through (d). Mortgage loan applications for the borrowers were then compiled by the RICO Defendants and submitted to Walsh. Id. at ¶ 64(e).

The applications were purportedly falsified in several material respects in order to induce Walsh to finance mortgage loans well in excess of the true value of the property. Id. This was done by, inter alia, the use of inflated appraisals; inflated sales prices; fraudulent leases; representations that the buyers had made a down payment on the property when in fact no such down payment was ever made; representations that Cristo Property extended a second mortgage when in fact no bona fide second mortgage was ever given; representations that the buyer would own the entire property when in fact it was agreed prior to the sale that the buyer would transfer a 60 percent interest in the property to Capital Assets immediately

---

[3] Notably, with the exception of Coastal Title Agency, the Title Insurance Defendants are not included within the RICO enterprise.

after the sale under a secret joint venture agreement; and representations that the buyer would pay certain closing expenses when in fact these expenses were paid by the seller, Cristo Property. <u>Compl.</u>, ¶ 64(e).

It is further alleged that the closing attorneys would fraudulent transmit to themselves and certain other RICO Defendants the proceeds of the mortgage loans illicitly obtained from Walsh.   <u>Compl.</u>, ¶ 64(g). Walsh alleges that the closing attorneys transmitted these funds with knowledge that certain requirements and preconditions to the mortgage were not met.   <u>Id.</u>   In addition, the closing attorneys falsely certified at the time of the closing on the HUD-1 Settlement Statement that these preconditions to closing had been met.   <u>Id.</u>

The closing attorneys caused to be recorded certain deeds, which included deeds covering the sale to Cristo Property, the deeds from Cristo Property to the borrowers, and the deeds conveying a 60 percent interest in the properties from the borrowers to Capital Assets.   <u>Id</u>. at ¶ 64(h).  The deeds were never disclosed to Walsh, despite the fact that such conveyances constituted an event of default under the terms and conditions of the Walsh mortgages.   <u>Id.</u> at ¶ 64(i).  Monies from the pooled rents along with funds from new mortgage loans were used to pay the Walsh mortgages when due and to pay other expenses of the properties.   <u>Id.</u> at ¶ 64(j).

Walsh alleges that since on or about June 30, 1997, certain of these properties have become delinquent in the payment of the mortgage loans.   <u>Id.</u> at ¶ 64(m).  Accordingly, due to the inflated appraisals,

Walsh is unable to recoup the full amounts of the outstanding mortgage loans when and if it forecloses on the properties.  Id.

### The Court Administratively Stays the Action

On or about April 28, 1998, the Court entered an order staying all interrogatory and deposition discovery until November 1, 1998 in response to a motion that was filed by certain of the defendants to stay all proceedings pending the outcome of related criminal investigations.[4]  Thereafter, on May 30, 2000, the Court entered a second order, administratively terminating the matter and staying all discovery pending further order of the Court.  It does not appear that the Order prevented Plaintiff from asserting any rights it may have had against Stewart.  Notwithstanding, no action was taken to vacate the stay and file a cause of action until approximately 5 years later.

### Stewart is Named in Walsh's Third Amended Complaint Eight Years After the Accrual Of Any Cause Of Action

On or about September 30, 2004, the stay of discovery was vacated.  Thereafter, on January 31, 2005, for the first time, Plaintiff Walsh asserted a claim as to Stewart in its Third Amended Complaint.

Walsh alleges that in connection with the real property transactions detailed above, the borrowers obtained title insurance from the Title Insurance Defendants.  Compl., ¶ 93.  Additionally, the Title Insurance Defendants provided Walsh with closing service letters covering the conduct of the closing attorneys, which in part, required

---

[4]  Document discovery was permitted to proceed as the stay order was limited solely to interrogatory and deposition discovery.  In fact, the Court expressly provided that all parties that were served and who had not filed an answer, were required to do so within 30 days of the Order.  See April 26, 1998 Order.

the Title Insurance Defendants to reimburse plaintiff for losses arising out of fraud and/or misapplication by the closing attorneys. Id. at ¶¶ 93-94. Walsh alleges that it has duly performed under the closing service letters and has notified the Title Insurance Defendants of its losses as a result of the fraud and/or misapplication by the closing attorneys. Id. at ¶ 96. Walsh further alleges that the Title Insurance Defendants have failed to reimburse plaintiff for the losses it has incurred. Id.

**LEGAL ARGUMENT**

**I.   THE COMPLAINT SHOULD BE DISMISSED AS TO STEWART TITLE GUARANTY COMPANY AS PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

A complaint should be dismissed for failure to state a claim under Rule 12(b)(6) when "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Alexiou v. Brad Benson Mitsubishi, 127 F. Supp. 2d 557, 559 (D.N.J. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In evaluating a motion to dismiss, the court must accept as true the well-pled allegations of the complaint and construe them in the light most favorable to the plaintiff. Camden County Bd. of Chosen Freeholders v. Berretta U.S.A. Corp., 123 F. Supp. 2d 245, 252 (D.N.J. 2000), aff'd, 273 F.3d 536 (3d Cir. 2001). Dismissal is appropriate where, as here, the plaintiff has alleged no set of facts as to Stewart, which, if proven, would entitle plaintiff to the relief requested. Rowe v. Morgan Stanley Dean Witter, 191 F.R.D. 398, 404-05 (D.N.J. 1999).

When an action is barred under the applicable statute of limitations, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate. See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002), cert. den., 540 U.S. 826 (2003); see also Harriman v. Internal Revenue Service, 233 F. Supp. 2d 451, 455 (E.D.N.Y. 2002), reconsideration den., 2003 WL 1950254 (E.D.N.Y. 2003). In fact, the so-called "Third Circuit Rule" expressly permits a limitations defense to be raised by a motion under Rule 12(b)(6), if "the time alleged in

- 9 -

the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson, 313 F.3d at 135 (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). For the reasons set forth below, Walsh has failed to state a claim upon which relief can be granted based on the expiration of the applicable statute of limitations period and, for that reason, the Complaint should be dismissed as to Stewart.

**A. Plaintiff's Claim Has Been Extinguished By The Passage Of The Applicable Statutes of Limitations**

Statutes of limitations are primarily statutes of repose that are designed to stimulate litigants to pursue their actions diligently and "to spare the courts from litigation of stale claims." Cinnaminson Township Board of Education v. U.S. Gypsum Co., 552 F. Supp. 855, 861 (D.N.J. 1982) (citations omitted); McGrogan v. Till, 327 N.J. Super. 595, 605 (App. Div.); certif. granted, 165 N.J. 132 (2000), aff'd as modified, 167 N.J. 414 (2001) (statutes of limitation are designed to protect against the litigation of stale claims). Additionally, the limitations on actions are designed to punish negligence and promote repose by giving security and stability to human affairs. Keil v. National Westminster Bank, Inc., 311 N.J. Super. 473, 489 (App. Div. 1998) (citations omitted). The principle consideration behind a statute of limitations is one of fairness to the defendant. Lopez v. Swyer, 62 N.J. 267, 274 (1973).

Accordingly, "[w]hen a plaintiff knows or has reason to know that he has a cause of action against an identifiable defendant and voluntarily sleeps on his rights so long as to permit the customary

period of limitations to expire, the pertinent considerations of individual justice, as well as the broader considerations of repose, coincide to bar his action." Farrell v. Vorator Div. Of Chemetron Corp., 62 N.J. 111, 115 (1973). This claim must be barred by operation of the applicable statute of limitations.

###### 1. Plaintiff's claim for breach of contract as to Stewart has been extinguished

Plaintiff's only claim as to Stewart is that it "failed to reimburse plaintiff for the losses it has incurred based on the fraud and/or misapplication of the approved attorneys as covered by the closing service letters." Compl., ¶ 97. Plaintiff's claim against Stewart, while sounding in common law breach of an insurance contract, must fail as the statute of limitations has long since passed.

In New Jersey, the general rule is that the statute of limitations applicable to contracts also governs insurance actions. Gahnney v. State Farm Insurance Co., 56 F. Supp. 2d 491, 495 (D.N.J. 1999). New Jersey statute limits the time period in which a claim for a breach of contract can be asserted as follows:

> Every action at law for . . . recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

N.J.S.A. 2A:14-1.

While the limitations period is the same for breach of an insurance contract, the concept of when the cause of action accrues is

slightly different.  Traditionally, a cause of action "accrues" on the date when "the right to institute and maintain a suit" first arises. See Rosenau v. City of New Brunswick, 51 N.J. 130, 137 (1968); see also Amland Properties Corp. v. Aluminum Co. of America, 808 F. Supp. 1187, 1190 (D.N.J. 1992) (statute of limitations begins to run when all of the elements of the cause of action are present); Burd v. New Jersey Telephone Co., 76 N.J. 284, 303 (1978) (a cause of action is deemed to have accrued when the injured party learned or reasonably should have learned of the existence of "a state of facts which equate in law with a cause of action").

> [W]e consider it to be firmly settled that by the "accrual" of a cause of action . . . is meant the time when a right first arises to institute and maintain an action for the invasion of one's rights against the wrong-doer, and the statutory period is computed from that time. . . .  The statute of limitations attaches at once and commences to run from that time irrespective of the time when the injury is discovered or the consequential damages result.

Tortorello v. Reinfeld, 6 N.J. 58, 65 (1950) (citations omitted).

With regard to insurance policies, New Jersey courts have held that "the statute of limitations is to run from the date of the casualty, but to toll it from the time the insured gives notice until liability is formally declined." Gahnney, 56 F. Supp. 2d at 495-96 (quoting Peloso v. Hartford Fire Insurance Co., 56 N.J. 514, 521 (1970)).  The tolling rule set out in Peloso has been the subject of considerable criticism and distinguished by this Court on numerous occasions.

As was explained by Judge Barry, "[t]he rule in <u>Peloso</u> was meant to alleviate the unfair effect of incongruous statutory provisions which would limit the period for an insured to file suit against his or her insurer to one year and at the same time *not enable* an insured to file suit against an insurer for sixty days, effectively reducing the time in which to commence an action from twelve months to ten months." <u>Schenck v. Kloster Cruise Limited</u>, 800 F.Supp. 120, 124 n. 6 (D.N.J. 1992), *aff'd*, 993 F.2d 225 (3d Cir. 1993) (emphasis in original); <u>see</u> <u>also</u> <u>Haardt v. Farmer's Mutual Fire Insurance Company of Salem County</u>, 796 F.Supp. 804, 808 n. 3 (D.N.J. 1992) (concluding that "[t]he <u>Peloso</u> holding is limited to cases involving insurance contracts containing the 'suit limitation' provision and does not affect the statute of limitations analysis applied . . . pursuant to <u>N.J.S.A.</u> 2A-14:1"). As in <u>Schenck</u>, this case does not invoke similar equities, requiring the operation of such a rule. <u>See</u> <u>id.</u> Furthermore, as this motion is predicated on <u>N.J.S.A.</u> 2A:14-1, the <u>Peloso</u> rule is simply inapplicable.

In this case, the first casualties occurred in early 1996 with the last casualty occurring no later than July 17, 1997, the date on which Walsh filed the within action. <u>Compl.</u>, ¶ 38. This is clearly evidenced by Walsh's allegations in its initial pleadings that the action involves approximately 220 mortgage loans. Amended Complaint, ¶ 33. Eight years later, Walsh's Third Amended Complaint makes mention of the same 220 mortgage loans, making it patently clear that no new instances of fraud have been discovered. <u>See</u> Amended Complaint (dated November 7, 1997), ¶ 33 (action involves "approximately two

- 13 -

hundred twenty mortgage loans"); c.f. Compl., ¶ 38 (same).  Plainly, more than six years has elapsed since the accrual of Plaintiff's cause of action.  Therefore, Stewart should be dismissed from the action, as the only cause of action pled against it is untimely under the applicable statute of limitations.

### 2.   Plaintiff is not entitled to the benefit of any tolling period

While New Jersey recognizes the doctrine of equitable tolling in certain limited circumstances, none of those exceptions apply here. Typically, the doctrine applies to relieve a plaintiff who has been induced or tricked by a defendant into missing a deadline.  See Villalobos v. Fava, 342 N.J. Super. 38, 50 (App. Div.), certif. den. 170 N.J. 210 (2001).  Similarly, there is an exception which may equitably toll the statute of limitations based on the commencement of other cognate litigation.  Galligan v. Westfield Centre Service, Inc., 82 N.J. 188 (1980) (rejecting defendant's statute of limitations argument when plaintiff had filed a complaint in federal court within the limitations period on identical grounds, although jurisdictionally improper, and then filed a state court action twenty-two days after the expiration of the limitations period).

"However, the general rule is that in order for the pendency of other proceedings to toll the statute of limitations on a cause of action, the proceedings must be such as to prevent enforcement of the remedy by action."  P.T. & L. Construction Company, Inc. v. Madigan and Hyland, Inc., 245 N.J. Super. 201, 209 (App. Div.), certif. den. 126 N.J. 330 (1991) (emphasis added).  Rejecting plaintiff's tolling

argument, the Court found that "nothing prevented P.T. & L. from filing suit against Madigan-Hyland in 1973, when it knew that the project was improperly designed and that Madigan-Hyland had drawn the designs. Moreover, once a party knows that it has been injured and that the injury is the fault of another, it has the requisite knowledge for the applicable period of limitations to commence running." Id. at 209 (citations omitted).

Here, Plaintiff is not entitled to the benefit of equitable tolling. First, with actual knowledge of a potential fraud in connection with the execution of the subject mortgages, and after naming four other title brokers and/or insurers, Walsh decided to sit on its rights for almost eight years with regard to Stewart. Walsh failed to name Stewart in its initial Complaint. Walsh failed to name Stewart in its Amended Complaint filed on or about November 7, 1997. Walsh failed to name Stewart in its Second Amended Complaint filed on or about February 11, 1998. It was not until nearly eight years later that Stewart was finally named as a party defendant in Walsh's Third Amended Complaint filed on or about January 31, 2005.

Furthermore, Walsh cannot be heard to complain of the administrative stay and dismissal that was entered by the Court on or about May 30, 2000. Plaintiff had available a panoply of procedural methods in which to assert a potential claim against Stewart prior to the expiration of the statute of limitations. As stated above, Walsh could have asserted a claim prior to the May 2000 administrative stay and dismissal. Even after the Court's May 30, 2000 Order administratively dismissing the action, Walsh could have brought a

separate action against Stewart in either federal or state court to protect against the statute of limitations bar. Furthermore, Walsh could have moved to open the matter for the limited purpose of asserting a claim against a non-party in order to prevent the operation of the applicable statute of limitations period. Not having taken any proactive measures in order to protect its rights, Walsh's negligence should bar any claim it may have had against Stewart. Accordingly, the Third Amended Complaint should be dismissed as to Stewart.

## CONCLUSION

For the reasons set forth above, Defendant Stewart Title Guaranty Company respectfully requests that the Court grant its Motion to Dismiss the Plaintiff's Third Amended Complaint with Prejudice as to Stewart for failure to state a claim upon which relief can be granted.

Dated:      March 28, 2005        By: s/ Frederick W. Alworth (FA-6977)
Newark, New Jersey                    Frederick W. Alworth (FA-6977)
                                      Terrence S. Brody (TB-4463)
                                      **GIBBONS, DEL DEO, DOLAN,**
                                      **GRIFFINGER & VECCHIONE**
                                      A Professional Corporation
                                      One Riverfront Plaza
                                      Newark, New Jersey 07102
                                      P 973 596 4500
                                      F 973 596 0545
                                      Falworth@gibbonslaw.com

                                      Attorneys for Defendant
                                      Stewart Title Guaranty Company