## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

WALSH SECURITIES, INC.,

        Plaintiff,

v.

CRISTO PROPERTY MANAGEMENT, LTD., a/k/a
G.J.L. LIMITED, DEK HOMES OF NEW JERSEY,
INC., OAKWOOD PROPERTIES INC., NATIONAL
HOME FUNDING, INC., CAPITAL ASSETS
PROPERTY MANAGEMENT & INVESTMENT
CO., INC., CAPITAL ASSETS PROPERTY
MANAGEMENT, L.L.C., WILLIAM I. KANE,
GARY GRIESER, ROBERT SKOWRENSKI, II,
RICHARD CALANNI, RICHARD DIBENEDETTO,
JAMES R. BROWN, THOMAS BRODO, RONALD J.
PIERSON, STANLEY YACKER, ESQ., MICHAEL
ALFIERI, ESQ., RICHARD PEPSNY, ESQ.,
ANTHONY M. CICALESE, ESQ., LAWRENCE M.
CUZZI, ANTHONY D'APOLITO, DAY
CONSULTING, INC., COMMONWEALTH LAND
TITLE INSURANCE COMPANY, NATIONS TITLE
INSURANCE OF NEW YORK INC., FIDELITY
NATIONAL TITLE INSURANCE COMPANY OF
NEW YORK, COASTAL TITLE AGENCY, and
STEWART TITLE GUARANTY COMPANY, IRENE
DiFEO, DONNA PEPSNY, WEICHERT,
REALTORS, AND VECCHIO REALTY, INC. D/B/A
MURPHY REALTY BETTER HOMES and
GARDENS,

        Defendants.

Civil Action No. 97-3496
Honorable William G. Bassler

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## ALL CROSS CLAIMS AGAINST WEICHERT, REALTORS

**McCusker, Anselmi, Rosen,
Carvelli & Walsh, P.C.**
127 Main Street
Chatham, New Jersey 07928
(973)635-6300
Attorneys for Defendant
Weichert, Realtors

On the Brief:
John B. McCusker (JBM 1482)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

STATEMENT OF FACTS .............................................................................. 1

PRELIMINARY STATEMENT ...................................................................... 1

LEGAL ARGUMENT..................................................................................... 1

A.  THE CROSS CLAIMING DEFENDATS HAVE FAILED TO
    GIVE WIECHERT NOTICE AS TO THE BASIS OF THEIR
    CROSS CLAIMS ........................................................................ 2

B.  THE CROSS CLAIMING DEFENDATS CANNOT SEEK
    CONTRIBUTION FOR BVIOLATIONS OF RICO AND/OR
    OTHER INTENTIONAL WRONGS ........................................... 4

C.  THE CROSS CLAIMING DEFENDANTS CANNOT SEEK
    INDEMNIFICATION FOR VIOLATIONS OF RICO
    AND/OR OTHER INTENTIONAL WRONGS........................... 5

CONCLUSION............................................................................................... 7

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Boone v. Beacon Building Corp.,* 613 F. Supp. 1151 (D.N.J. 1985).............. 4

*Interfaith Community Organization v. Honeywell Intern., Inc.,*
263 F. Supp.2d 796 (D.N.J. 2003) ................................................................. 6

*Roden Properties- Shore Mall, N V. v. Cushman Wakefield of Penn., Inc.,*
49 F. Supp.2d 728 (D.N.J. 1998) .................................................................. 3

*Schanzer v. Rutgers University,* 934 F. Supp. 669 (D.N.J. 1996) .................. 3

*In re Sunrise Securities Litigation,* 793 F. Supp. 1306 (E.D.Pa. 1992).......... 2

## STATE CASES

*Mantilla v. N. C. Mall Assoc.,* 167 N.J. 262 (2001) ....................................... 6

## UNPUBLISHED CASES

*New Jersey Office Supply v. Feldman,* Civ. A. No. 89-3990, 1990 WL
74477 (D.N.J. June 4, 1990) ...................................................................... 4,6

*Vanguard Sav. and Loan Assos. v. Banks,* Civ. A. 93-4627, 1995 WL
70566 (E.D.Pa. February 8, 1995)............................................................. 4-5

*Wilder v. Williams,* Civ. A. No. 87-1043, 1989 WL 108389
(W.D.Pa. June 7, 1992).............................................................................. 4-5

## RULES

Federal Rule of Civil Procedure 12(b).............................................................. 2

## Preliminary Statement

The underlying facts of the within matter, detailed in Weichert, Realtors ("Weichert") Memorandum of Law ("Memorandum of Law") demonstrate unequivocally that Plaintiff, Walsh Securities ("Plaintiff") has failed to state a claim against Weichert upon which relief may be granted. Likewise, Co-Defendants, Commonwealth Land Title Insurance Company ("Commonwealth"), Coastal Title Agency ("Coastal"), Anthony M. Cicalese ("Cicalese"), Irene DiFeo ("DiFeo") and Michael Alferi ("Alferi") (collectively the "Cross Claiming Defendants") have also failed to state cross claims against Weichert upon which relief may be granted because 1) the cross claims fail to comply with even the most liberal acceptable level of pleading; and 2) intentional wrongdoers may not recover contribution or indemnification from those of whom they are alleged to have acted in consort. Similar to Plaintiff's claims against Weichert, all cross-claims for indemnification and contribution must be dismissed.

## Statement of Facts

As set forth in Weichert's Memorandum of Law and Reply to Plaintiff's Opposition to the same, Plaintiff asserts claims arising out of the Racketeering Influenced Corrupt Organizations Act ("RICO") against Coastal, Cicalese, DiFeo and Alteri, as well as against Donna Pepsny

("Pepsny") a former independent contractor at Weichert.   It asserts breach of contract claims, rooted in the alleged RICO land flipping scheme, against Commonwealth.   In connection with its claims against Pepsny, Plaintiff seeks secondary liability, arising out of Respondeat Superior, against Weichert for Pepsny' actions.   *See* Plaintiff's Third Amended Complaint at ¶¶ 108-111.  Commonwealth, Coastal, Cicalese, Difeo and Alferi now allege conclusory cross claims of contribution against all defendants, including Weichert.   Additionally, Cicalese, DiFeo and Alferi allege cross claims of indemnification against Weichert.  Weichert assumes that these contribution and indemnification cross claims, although not well pled, arise out of potential joint tortfeasor liability each may be found to share primarily with Pepsny and accordingly secondarily with Weichert.

## ARGUMENT

### A.    The Cross Claiming Defendants Have Failed to Give Weichert Notice as to the Basis of Their Cross Claims.

It is well settled law that in deciding a motion to dismiss, the court must accept all well pled allegations as true.[1]   It is equally well settled that allegations contained in a cross claim must "give the defendant fair notice of

---

[1] Although motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are most often made against Plaintiffs, such a motion may also be made against a co-defendant asserting unviable cross-claims.  *In re Sunrise Securities Litigation*, 793 F. Supp. 1306, 1312, n. 5 (E.D.Pa. 1992).

what the…claim is and the grounds upon which it rests." *Roden Properties-Shore Mall, N.V. v. Cushman Wakefield of Penn., Inc.*, 49 F. Supp.2d 728 (D.N.J. 1998) (*citing, Schanzer v. Rutgers Univ.*, 934 F. Supp. 669, 673 (D.N.J. 1996).

Without a doubt, the Cross Claiming Defendants have not given Weichert fair notice as to the premise of their cross claims. For example, in asserting its cross claim, Commonwealth states that it "denies any liability to plaintiff or to any other defendant, but if [Commonwealth] is found liable, it demands contribution from … [Weichert.]" Commonwealth's Answer and Cross Claims at p. 13.[2] The Cross Claiming Defendants' pleadings are devoid of any other information upon which Weichert may rely in deciphering the cross claims. A review of the four corners of the pleadings demonstrates that each defendant has failed to set forth the grounds upon which its claim rests. "While the rules do not dictate that a claim must set forth an intricately detailed description" of the allegations, Weichert should

---

[2] Coastal states that it "denies any liability to plaintiff or to any other defendants but if Coastal Title is found liable it demands contribution from …Weichert." Coastal Answer and Cross Claims at p. 15. Defendant Alferi states that he "denies liability with respect to plaintiff's claims. However, if defendant is adjudged liable, then defendant demands contribution [and indemnification] from all co-defendants." Alferi Answer and Cross Claims at pp. 11-12. Cicalese states that that he "denies liability with respect to plaintiff's claims. However, if defendant is adjudged liable, then defendant demands contribution [and indemnification] from…Weichert." Cicalese Answer and Cross Claims at p. 2. DiFeo states that she "denies liability to any party to this matter, but if she is found liable to any party demands contribution [and indemnification] from each and every party." DiFeo Answer and Cross Claims at p. 7.

3

not bear the burden of identifying criteria absent from these deficient pleadings. *See id.* Accordingly, the cross claims against Weichert must be dismissed.

Even if this Court is somehow able to glean some notice regarding the underpinnings of these cross claims against Weichert, the cross claims against Weichert still fail to state any claim upon which relief may be granted because the Cross Claiming Defendants' reliance on contribution and indemnification as viable causes of action is entirely misplaced.

## B.     The Cross Claiming Defendants Cannot Seek Contribution For Violations of RICO and/or Other Intentional Wrongs.

RICO cannot be used as a shield to "ameliorate the liability of wrongdoers." *Boone v. Beacon Building Corp.,* 613 F. Supp. 1151, 1154 (D.N.J. 1985). Accordingly, cross claims seeking a right of contribution for RICO violations must be summarily dismissed because "those found liable for RICO violations have no right of contribution against those alleged to have acted in conjunction with them." *Wilder v. Williams*, Civ. A. No. 87-1043, 1989 WL 108389, at *1-2 (W.D.Pa. June 7, 1989). Rather, RICO is a statutory scheme intended to punish past, and to deter future, unlawful conduct. *See New Jersey Office Supply v. Feldman*, Civ. A. No. 89-3990, 1990 WL 74477, at *2 (D.N.J. June 4, 1990); *Vanguard Sav. and Loan Assos. v. Banks*, Civ. A. 93-4627, 1995 WL 70566, at *3 (E.D.Pa. February

4

8, 1995) ("courts have consistently held that defendants in a civil RICO action have no right to seek indemnity or contribution from a third party"); *Wilder*, 1989 WL 108389, at \*1-2 ("contribution among joint tort-feasors is based upon equitable principles which preclude an intentional tort-feasor from obtaining contribution from his own willful wrongdoing").

Plaintiff alleges that defendants acted in conjunction with Pepsny (among others) in committing violations of RICO. The Cross Claiming Defendants now attempt to deflect liability and seek contribution from Weichert for their own alleged wrongdoing. The cross claims against Weichert, however, must be dismissed because the Cross Claiming Defendants cannot recover from Weichert due to the fact that Plaintiff alleges that each of them acted in conjunction with Weichert (through Pepsny) in violating RICO. *See Wilder*, 1990 WL 74477, at \*2. The Cross Claiming Defendants are not entitled to seek contribution for their acts from other alleged wrongdoers. *See Vanguard Sav. and Loan Assoc.,* 1995 WL at \*3. Rather, if found liable, each defendant must be guided by RICO's intent to punish past conduct and deter future wrongdoing. *See Wilder*, 1989 WL 108389, \*1-2.

## C.     The Cross Claiming Defendants Cannot Seek Indemnification For Violations of RICO and/or Other Intentional Wrongs.

5

Similar to contribution, a party may not seek indemnification where liability is premised on that party's intentional wrongdoing.[3] *See Interfaith Community Organization v. Honeywell Intern., Inc.*, 263 F. Supp.2d 796, 971 (D.N.J. 2003). More simply stated, intentional wrongdoers cannot seek indemnification. *New Jersey Office Supply, Inc.,* 1990 WL 74477, at *4. Accordingly, cross claims for indemnification must be summarily dismissed because "an indemnitee who has defended against allegations of its independent fault may not recover its costs." *Mantilla v. N.C. Mall Assoc.*, 167 N.J. 262, 168 (2001) (citations omitted).

Plaintiff alleges that Cicalese, DiFeo and Alferi committed intentional wrongs. *See generally*, Third Amended Complaint. Given the premise of Plaintiff's claims against them, controlling case law precludes them from recovering costs for such intentional wrongdoings. *See New Jersey Office Supply, Inc.,* 1990 WL 74477, at *4. As indemnities, Cicalese, DiFeo and Alferi are precluded from recovering costs from Weichert. Accordingly, their claims for indemnification must be dismissed.

---

[3] Cicalese, DiFeo and Alferi have not asserted claims of contractual indemnification. Accordingly, Weichert, assumes that the deficient pleadings are related to common law indemnification.

6

## Conclusion

The conclusory allegations contained in the cross claims against Weichert are not only devoid of an acceptable level of notice as to the basis of the claims, but in alleging cross claims of contribution and indemnification, the Cross Claiming Defendants contravene the widely accepted intent to punish wrongdoers and deter future wrongdoing. The cross claims against Weichert must, therefore, be dismissed with prejudice.

> **McCusker, Anselmi, Rosen,**
> **Carvelli & Walsh, P.C.**
> 127 Main Street
> Chatham, New Jersey 07928
> (973)635-6300
> Attorneys for Defendant
> Weichert, Realtors
>
>
> By: /s/John B. McCusker
> John B. McCusker (JBM 1482)

Dated: June 17, 2005

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1989 WL 108389, Fed. Sec. L. Rep. P 94,777, RICO Bus.Disp.Guide 7269
**(Cite as: Not Reported in F.Supp.)**

Page 1

**H**
Not Reported in F.Supp., 1989 WL 108389, Fed. Sec. L. Rep. P 94,777, RICO Bus.Disp.Guide 7269

United States District Court, W.D. Pennsylvania.
Duane WILDER, Ted D. Taubeneck, William D. Witter, and William T. Murray, Wilder Deem Associates, Inc., and Roy Babitt, Trustee for ALWILCO, Inc., Plaintiffs
v.
Charles G. WILLIAMS, Jr., Carl V. Trosch, Mary Ellen Johnson, Roman Iwanyshyn, John Kesich, Gary J. Zanotto, John G. Lockovich, Robert Griffin, Nelson Boone, Paul Dodson, and Thomas Pennavaria, Defendants and Third-Party Plaintiffs
v.
James RICH and Ernst & Whinney, Third-Party Defendants.
**CIV. A. No. 87-1043.**

June 7, 1989.

Memorandum Opinion

BLOCH, District Judge:
In this complex case involving allegations of securities fraud and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (RICO), defendant Charles G. Williams, Jr., has filed a third-party complaint against James H. Rich. Rich has moved to dismiss the third-party complaint for failure to state a claim upon which relief can be granted. FN1

In reviewing such a motion, this Court must take all allegations of the pleadings as true. *Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985). This Court may dismiss the third-party complaint only if it appears with certainty that the third-party plaintiff cannot prove a set of facts entitling him to relief. *D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943 (3rd Cir.1984). This Court will grant Rich's

motion.

Williams is named as a defendant in ten counts of plaintiffs' 14-count third amended complaint in this matter. Specifically, Williams is a defendant at Count I (securities fraud); Count II (breach of warranty); Count III (common-law fraud); Count IV (breach of contract); Counts VIII through XII (RICO); and Count XIV (civil conspiracy). He indicates to this Court that he does not intend to implead third-party defendant Rich as to any liability found against him at Count IV. (Memorandum in opposition to motions of third-party defendant James H. Rich to dismiss and for summary judgment, p. 2).

Williams' third-party complaint contains four counts. Williams agrees with Rich that Counts I and IV should be dismissed. (*Id.* at 3). Therefore, with the third-party plaintiff's consent, this Court will grant Rich's motion to dismiss as to those two counts.

Count II of Williams' third-party complaint seeks "a finding that Rich is jointly liable with him to the plaintiffs." (Third-party complaint ¶ 10). Fed.R.Civ.P. 14, which governs joinder of third-party defendants, clearly provides that "a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person ... who is or may be liable *to the third-party plaintiff* for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a) (emphasis added). Count II clearly contemplates a finding of liability, albeit joint, directly to the plaintiffs, not to third-party plaintiff Williams, as is required under the Rule. Rich's motion to dismiss is granted as to Count II of the third-party complaint.

Count III of Williams' third-party complaint remains. At Count III, Williams seeks "a finding that Rich is liable to him for contribution and to a judgment in an appropriate amount." Fed.R.Civ.P. 14 is merely procedural; it does not give Williams

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 2

Not Reported in F.Supp., 1989 WL 108389, Fed. Sec. L. Rep. P 94,777, RICO Bus.Disp.Guide 7269
**(Cite as: Not Reported in F.Supp.)**

a substantive right to contribution. *Tesch v. United States,* 546 F.Supp. 526, 529 (E.D.Pa.1982). That right must be determined by the applicable substantive law. *Pennine Resources, Inc. v. Dorwart Andrew & Co.,* 639 F.Supp. 1071, 1074 n. 5 (E.D.Pa.1986). Thus, this Court must examine each count asserted by the plaintiffs against Williams in order to determine whether Williams has a right of contribution as to that count. *Cf. Minpeco, S.A. v. ContiCommodity Services, Inc.,* 677 F.Supp. 151 (S.D.N.Y.1988).

### I. *Intentional torts*

Plaintiffs have asserted that Williams committed two intentional torts: common-law fraud (third amended complaint Count III) and civil conspiracy (third amended complaint Count XIV). Under Pennsylvania law, "contribution among joint tort-feasors is based upon equitable principles which preclude an intentional tort-feasor from obtaining contribution for his own willful wrongdoing." *Canavin v. Naik,* 648 F.Supp. 268, 269 (E.D.Pa.1986). Williams has no right of contribution as to these claims. FN2

### II. *RICO claims*

Plaintiffs assert RICO claims against defendant/third-party plaintiff Williams at Counts VIII through XII of the third amended complaint. Those found liable for RICO violations have no right of contribution against those alleged to have acted in conjunction with them. *Minpeco,* 677 F.Supp. at 154-55 (citing cases and applying analysis of *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630 (1981)). See also *Nelson v. Bennett,* 662 F.Supp. 1324, 1338 n. 23 (E.D.Cal.1987).

Williams distinguishes the *Nelson* case, and is quite correct in his distinction that in *Nelson,* unlike this case, the determination of whether a right to contribution exists in a RICO case was not the Court's major focus. Williams does not even attempt to distinguish *Minpeco,* however, and cites no authority indicating that contribution is available

in a RICO case. Williams has no right to contribution as to the RICO claims asserted against him.

### III. *Securities fraud*

At Count I of the third amended complaint, plaintiffs allege that Williams committed federal securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder. This Court is aware that, although the weight of authority indicates that a right of contribution exists in a Rule 10b-5 case, the reasoning behind such rulings has been questioned. See *In Re Professional Financial Management, Ltd.,* 683 F.Supp. 1283 (D.Minn.1988).

For purposes of this motion, this Court need not decide whether a defendant found liable for a Rule 10b-5 violation may claim contribution from a co-or third-party defendant, however. Even if this Court were to rule that contribution is available, Williams would have to show Rich's "knowledge of the wrong and substantial assistance to it." *Ahern v. Gaussoin,* 104 F.R.D. 37, 40-41 (D.Ore.1984). See also *Professional Financial Management,* 683 F.Supp. at 1287 n. 8. Williams fails to allege any intent or knowledge on Rich's part. Therefore, Williams cannot receive contribution as to the securities fraud claim asserted against him.

### IV. *Breach of contract claim*

At Count II of the third amended complaint, plaintiffs allege that Williams breached the warranty provisions of the Amended and Restated Stock Purchase Agreement entered into between the plaintiffs, Williams and Rich. Williams seeks contribution on this claim, which is in essence a breach of contract claim, from Rich.

As a breach of contract claim, any right of contribution pursuant thereto would be governed by state law. Thus, even if this Court were to find that Williams has a right of contribution against third-party defendant Rich on this claim, there

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                  Page 3

Not Reported in F.Supp., 1989 WL 108389, Fed. Sec. L. Rep. P 94,777, RICO Bus.Disp.Guide 7269
**(Cite as: Not Reported in F.Supp.)**

would be no federal claims left in the third-party
complaint. Absent extraordinary circumstances,
this Court is powerless to hear claims lacking an
independent        jurisdictional        basis.        *Lovell
Manufacturing v. Export-Import Bank of the United
States,* 843 F.2d 725, 734 (3d Cir.1988). No
extraordinary circumstances exist in this case. This
Court has no jurisdiction to hear Williams' claim for
contribution as to the breach of contract claim
asserted against him. See also *Professional
Financial Management,* 683 F.Supp. at 1287-88.

An appropriate Order will be issued.

> FN1. Rich's motion is actually a
> combination motion to dismiss/motion for
> summary judgment. Because this Court
> never reached the stage at which it had to
> consider the effect of Rich's settlement
> agreement with the plaintiffs on the
> validity of the third-party complaint, this
> Court did not have to go outside the
> pleadings in deciding this motion.
> Therefore, the motion will be considered
> as one to dismiss.

> FN2. This Court notes, however, that
> plaintiffs have voluntarily withdrawn their "
> allegations of intentional fraud in Count III.
> "     (Plaintiffs'     motion     for     voluntary
> dismissal and this Court's order pertaining
> thereto dated May 19, 1989). It is unclear
> to this Court how plaintiffs can prevail on
> a     common-law     fraud     claim     without
> proving intent. To the extent that they
> would do so, however, Williams would
> not, under state law, be precluded from
> asserting a claim for contribution as to
> such non-intentional fraud. Because such
> a claim would be a state-law claim,
> however, the presence of such claim in this
> action would not save Williams' third-party
> complaint from dismissal for lack of
> jurisdiction. *See* Section IV, *infra.*

W.D.Pa.,1989.
Wilder v. Williams
Not Reported in F.Supp., 1989 WL 108389, Fed.
Sec. L. Rep. P 94,777, RICO Bus.Disp.Guide 7269

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                           Page 1

Not Reported in F.Supp., 1990 WL 74477
**(Cite as: Not Reported in F.Supp.)**


**H**

Not Reported in F.Supp., 1990 WL 74477
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.
NEW JERSEY OFFICE SUPPLY, INC., Plaintiff,
v.
Allan FELDMAN and Paper Mart, Inc., Defendants.
Allan FELDMAN, Third Party Plaintiff,
v.
Craig C. SERGEANT, et al., Third Party
Defendants.
**CIV.A. No. 89-3990.**

June 4, 1990.


Donald Goldman , Harkavy, Goldman, Goldman &
Caprio, West Orange, N.J., for defendant and third
party plaintiff Allan Feldman.
Morrill J. Cole , Cole, Schotz, Bernstein, Meisel &
Forman, Hackensack, N.J., for third party
defendants Forgione, Barry, Hoppock, Glaser,
Gray, Gentile, Heyman, Flynn, Bimonte, Dresher,
Post, Darr, Wolff, Bouthllier and O'Hare.
Roger B. Kaplan , Wilentz, Goldman & Spitzer ,
Woodbridge, N.J. -and- Irwin Warren , Weil,
Gotshal & Manges, New York City, for plaintiff
and third party defendants, Sergeant, Hempstead,
Raos, Landuyt, Mooney, White, Hanson Indus., and
Cont. Ill.
Lucille Rosano , Fox & Fox, Newark, N.J., for third
party defendant Irving Lester.
Peter R. Sarasohn , Ravin, Sarasohn, Cook,
Baumgarten, Fisch & Baime, Roseland, N.J., for
third party defendant Bernard Fingerhut.
David J. Reich , Wolff & Samson, Roseland, N.J.,
for third party defendant Shirley Weiner.
William F. Thompson, Jr. , Ralf Gilbert Law
Offices, Lawrenceville, N.J., for third party
defendant Jack Ringel.
Albert S. Lipkin, third party defendant pro se.
Samuel Feldman , Orloff, Lowenbach, Stifelman &
Siegel, Roseland, N.J., for defendant Paper Mart,

Inc.

### OPINION

WOLIN, District Judge.
Before the Court is a consolidated motion for
dismissal by all third party defendants named in
Counts One, Two and Three of the Third Party
Complaint. FN1 Defendants collectively assert that
Feldman's claims for contribution and
indemnification under federal and state racketeering
statutes, and for indemnification and contribution
under common law claims of fraud, conversion and
breach of fiduciary duty, are barred as a matter of
law. The Court agrees. For the reasons that
follow, the Court will dismiss the allegations
contained in Counts One, Two and Three with the
exception of Feldman's claim for contribution for
any liability under the common law claims recited
in Counts Nine through Eleven of the Complaint.
Although that claim is dismissable for lack of
factual specificity, Feldman will be given a
reasonable opportunity to cure the defect, if he can,
by amendment of the complaint.

Also before the Court is a motion by third party
defendant Fingerhut for attorney's fees pursuant to
Rule 11 of the Federal Rules of Civil Procedure.
That motion will be denied.


### I. *BACKGROUND*

On September 20, 1989, plaintiff New Jersey Office
Supply, Inc. ("NJOS") filed a complaint ("the
Complaint") against defendants Allan Feldman and
Paper Mart, Inc. seeking damages for alleged
violations of the Racketeer Influenced and Corrupt
Organization Act, 18 U.S.C. § 1961 *et seq.* ("RICO"
), the New Jersey Anti-Racketeering Act,
N.J.Stat.Ann. 2C:41-1 *et seq.* ("2C RICO"), and for
common law fraud, conversion and breach of
fiduciary duty. NJOS alleges that Feldman
committed fraud while holding the position of Chief

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1990 WL 74477
(Cite as: Not Reported in F.Supp.)

Executive Officer of NJOS from 1986 to August
1989. The specific fraudulent schemes alleged to
have occurred over that time period, include: 1)
receipt of illegal kickbacks from defendant Paper
Mart; 2) diversion of cash proceeds from NJOS to
personal use; 3) barter of NJOS property in
exchange for personal benefits. As a result of the
schemes, Feldman is alleged to have systematically
converted more than one million dollars from NJOS
to his personal use. Complt., ¶¶ 1, 2.

Feldman filed an Answer, Counterclaim and Third
Party Complaint on December 27, 1989. The
Third Party Complaint impleads thirty-eight
defendants, primarily current and former employees
of NJOS or its parent company, Hanson Industries,
Inc. Only the first three counts are the subject of
this motion. Counts One and Two assert that
Feldman is entitled to contribution from each
defendant under one of the following theories: the
defendants "initiated and authorized" his conduct,
or his acts were "done with their knowledge and
approval," or the defendants substantially benefitted
from his wrongdoing. Count Three seeks
indemnification from each defendant on the ground
that Feldman's liability is of a derivative or
secondary nature.

The Court will address the issues of contribution
and indemnification by the third party defendants
according to the order the counts are asserted
against Feldman in the Complaint.

## II. DISCUSSION

### A. Counts One through Four

The first four counts of the Complaint allege
violations of the federal RICO statutes. The Court
finds that there is no right to contribution or
indemnification under the RICO statutes and will
dismiss the Third Party Complaint in so far as it
seeks indemnification or contribution under the
RICO statutes.

1. Contribution

The right to contribution under a federal statute may
arise: through the affirmative creation of a right of
action by Congress, either expressly or by clear
implication; or, through the power of federal courts
to fashion a federal common law of contribution.
*Texas Industries v. Radcliff Materials,* 451 U.S.
630, 638, 101 S.Ct. 2061, 2066 (1981) ; *Northwest
Airlines v. Transport Workers,* 451 U.S. 77, 90, 101
S.Ct. 1571, 1580 (1981).

Courts that have applied this analysis to a
defendant's right to contribution for violations of
RICO have determined that no such right exists.
*Boone v. Beacon Bldg. Corp.,* 613 F.Supp. 1151
(D.N.J.1985); *see also, Minpeco, S.A. v.
Conticommodity Services, Inc.,* 677 F.Supp. 151
(S.D.N.Y.1988) ; *In re Olympia Brewing Company
Securities Litigation,* 674 F.Supp. 597
(N.D.Ill.1987) ; *Jacobson v. Western Montana
Production Credit Ass'n,* 643 F.Supp. 391
(D.Mont.1986) ; *Seminole Electric Cooperative,
Inc. v. Tanner,* 635 F.Supp. 582 (M.D.Fla.1986) ;
*Miller v. Affiliated Financial Corp.,* 624 F.Supp.
1003 (N.D.Ill.1985).

Chief Judge Gerry, in a well-reasoned opinion in
the seminal case, was guided by the reasoning set
forth in *Texas Industries* where the Supreme Court
rejected defendant's claim for contribution under the
Clayton Anti-Trust Act. *Boone,* 613 F.Supp. at
1154. The Court found the statutory scheme of the
Clayton Act sufficiently similar to the civil
provisions of RICO ("civil RICO") to warrant the
same result. Not only does the language of civil
RICO closely track that of § 4 of the Clayton Act,
but both statutory schemes provide for assessment
of treble damages and attorneys' fees, indicative of "
an intent to punish past, and to deter future,
unlawful conduct, not to ameliorate the liability of
wrongdoers." *Boone,* 613 F.Supp. at 1154
(quoting *Texas Industries,* 451 U.S. at 639, 101
S.Ct. at 2066). Judge Gerry also noted, as the
Court had in *Texas Industries,* that "the absence of
any reference to contribution in the legislative
history or of any possibility that Congress was
concerned with softening the blow on joint
wrongdoers in this setting makes examination of
other factors unnecessary." *Id.* He concluded that
Congress did not intend to create an implied right

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 3

Not Reported in F.Supp., 1990 WL 74477
**(Cite as: Not Reported in F.Supp.)**

where the express right was not created. *Boone,*
613 F.Supp. at 1155.

This Court agrees with Judge Gerry and does not
find any affirmative creation by Congress of a right
to contribution under RICO. Nor, is this Court
inclined to fashion a right to contribution as an
exercise of the court's inherent power to develop
substantive law under the rationale that it is "
necessary to protect uniquely federal interests."
*Texas Industries,* 451 U.S. at 640, 101 S.Ct. at 2067
(citations omitted). It is obvious to the Court that
contribution among RICO wrongdoers does not
involve "the duties of the Federal Government, the
distribution of powers in our federal system, or
matters necessarily subject to federal control even
in the absence of statutory authority." *Texas
Industries,* 451 U.S. at 642, 101 S.Ct. at 2068
(citation omitted). Thus, the Court finds there is no
right to contribution under RICO. The Third Party
Complaint will be dismissed to the extent that it
seeks contribution from defendants for any liability
under RICO.

### 2. *Indemnification*

The right to indemnification under a federal statute
is governed by the same analysis as that which
applies to the right to contribution. *Boone,* 613
F.Supp. at 1154; *In re Olympia Brewing Co.,* 674
F.Supp. at 616-17. To determine whether a federal
statute implicitly creates a particular private right
not expressly provided for, the intent of Congress is
controlling. *Northwest Airlines,* 451 U.S. at 91,
101 S.Ct. at 1580; *see also Texas Industries,* 451
U.S. at 638-39, 101 S.Ct. at 2066.

Congressional intent may be discerned from several
sources: the legislative history and purposes of the
statute; a determination of the identity of the class
intended to benefit from the legislation; the
existence of express statutory remedies deemed
adequate to serve the legislative purpose; and relief
available under state law. *Daily Income Fund v.
Fox,* 464 U.S. 523, 536, 104 S.Ct. 831, 838 (1984).
Applying these factors to the RICO statute reveals
no suggestion of a right to indemnity in favor of
RICO defendants. It does not require a
constitutional scholar to determine that RICO was

not enacted to benefit a special class consisting of
RICO defendants; RICO was enacted to protect
society from their destructive conduct. Nor may
the Court infer that the treble damages provision
indicates anything other than Congress' intent to
punish and not to diminish the liability of
wrongdoers. *Texas Industries,* 451 U.S. at 639, 101
S.Ct. at 2066. The Court concludes that to allow
Feldman to seek indemnification would contravene
the clear Congressional intent displayed by the
RICO statutory scheme. The Third Party
Complaint will be dismissed to the extent that it
seeks indemnification for any liability under RICO.

### B. *Counts Five through Eight*

The second four counts of the Complaint allege
violations of the New Jersey's anti-racketeering
statute, 2C RICO. Although New Jersey courts
have not faced the issue of whether there is a right
to contribution or indemnification for violations of
2C RICO, this Court anticipates that when the
occasion arises they would reject such a notion. 2C
RICO was patterned after and virtually mirrors the
federal RICO statutes. *State v. Passante,* 225
N.J.Super. 439, 441 (Law Div.1987); *see also
Curley v. Cumberland Farms Dairy, Inc.,* 728
F.Supp. 1123, 1138-39 (D.N.J.1989) (denying
injunctive relief under 2C RICO because injunctive
relief is not available under federal RICO and the "
New Jersey RICO provisions parrot those of the
federal statute"). The Court sees no reason not to
apply the same reasoning and analysis it applied in
the federal context and reaches the same conclusion
in the state context. FN2 Because the New Jersey
Legislature did not intend to create a right to
contribution or indemnification under 2C RICO, the
Third Party Complaint will be dismissed in so far as
it seeks contribution or indemnification for liability
under 2C RICO.

### C. *Counts Nine through Eleven*

The remaining counts of the Complaint set forth
causes of action against Feldman for fraud,
conversion and breach of fiduciary duty. Each of
the common law causes of action is premised upon

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 4

Not Reported in F.Supp., 1990 WL 74477
**(Cite as: Not Reported in F.Supp.)**

allegations of intentional wrongdoing by Feldman.
Thus, Feldman's claim for indemnification must fail,
as a matter of law, because an intentional
wrongdoer cannot be indemnified. In addition,
Feldman has failed to state a legally sufficient claim
for contribution.

### 1. *Indemnification*

In Count Three of the Third Party Complaint,
Feldman seeks indemnification from third party
defendants on the ground that the "primary
wrongful conduct," if any, was that of movants,
while his liability, if any, was only of a "derivative
or secondary" nature. It is well settled under New
Jersey law that "[t]o be entitled to indemnification,
as one who is secondarily or vicariously liable, a
party must be without fault," *Promaulayko v. Johns
Manville Sales Corp.,* 116 N.J. 505, 511 (1989) ;
*Ramos v. Browning Ferris Industries,* 103 N.J. 177,
190-91 (1986); or must have a contractual
understanding that provides the right to indemnity.
*Cartel Capital Corp. v. Fireco,* 81 N.J. 548, 566
(1980) ("[i]t would be inequitable to permit an
active wrongdoer in the absence of a contractual
understanding between the parties to obtain
indemnity from another wrongdoer and thus escape
any responsibility").

In the case at bar, Feldman cannot recover under
either theory. There is no contract alleged that
would entitle him to indemnification. Nor, can he
recover under a theory of implied indemnity. To
raise the inference that a right to indemnification
exists, Feldman would have to demonstrate: 1) the
existence of a special relationship between himself
and the movants; and 2) that he is without fault, *i.e.,*
that his liability is merely vicarious. *Ramos,* 103
N.J. at 188-90. Feldman has neither alleged a
special relationship that would render him
vicariously liable for any conduct by movants, nor
the facts to support such a claim.

Moreover, he has not alleged that he is without
fault. Indeed, he cannot. Feldman can only be
found liable, and then seek indemnification, if he
acted with the intent to defraud NJOS and convert
its property to his own use; the requirement of
scienter is common to each count. As an

intentional wrongdoer, he is not the kind of passive
or vicarious actor generally entitled to indemnity.
Nor has Feldman raised any equitable
considerations that require a different result. For
all these reasons, the Court will dismiss the Third
Party Complaint in so far as it seeks indemnification
for any liability under the common law claims
contained in Counts Nine through Eleven.

### 2. *Contribution*

In Counts One and Two of the Third Party
Complaint Feldman alleges that, if found liable, he
is entitled to contribution from each defendant
under one of the following theories: the defendants
"initiated and authorized" his conduct, or his acts
were "done with their knowledge and approval," or
the defendants "substantially benefitted" from his
wrongdoing. These allegations, however, fail to set
forth any basis upon which Feldman may receive
contribution from movants for his intentional torts
of fraud, conversion, and breach of fiduciary duty.
They are insufficient, as a matter of law, and require
dismissal.

The Joint Tortfeasors Act establishes a right to
contribution among joint tortfeasors. N.J.Stat.Ann.
§ 2A:53A-2 (West 1987). To state a legally
sufficient claim for anticipatory relief, that is prior
to a determination of liability and actual payment, "
the party asserting [the right to contribution] must
allege and prove that the party against whom he
makes it is a joint tortfeasor within the meaning of
the act." *Mijon v. Acquaire,* 51 N.J.Super 426,
439-40 (App.Div.), *cert. denied,* 28 N.J. 146 (1958)
; *see also Sattelberger v. Telep,* 14 N.J. 353, 367
(1954) (the onus of proof of the common burden is
on the person demanding a share of the burden).
Feldman has failed to carry his burden.

Not only has Feldman neglected to allege that any
of the third-party defendants were joint tortfeasors
with him, but he has failed to plead with the
particularity required under Rule 9(b) of the Federal
Rules of Civil Procedure. To establish joint
liability Feldman is required to plead more than
mere knowledge by movants of his wrongdoing. "A
person is liable with another if he knows that the
other's conduct constitutes a breach of duty and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                     Page 5

Not Reported in F.Supp., 1990 WL 74477
**(Cite as: Not Reported in F.Supp.)**

gives substantial assistance or encouragement to the other...." *Judson v. Peoples Bank & Trust Co.,* 25 N.J. 17, 29 (1957) (quotations and citation omitted). Mere inaction is not substantial assistance. *Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793, 799-800 (3d Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318 (1978) ; *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 886-89 (3d Cir.1975).

He must plead more than the mere fact that movants "substantially benefitted" from his wrongdoing, or that his wrongdoing was "initiated and authorized" by movants. Allegations describing fraud must contain detail, including specific conduct or individual acts which would entitle him to seek contribution. Rule 9(b) provides,

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Fed.R.Civ.P. 9(b). Third party defendants have been given no notice of the precise misconduct with which they are charged that gives rise to any liability under fraud, conversion or breach of fiduciary duty. Group allegations without any factual recitations are insufficient as a matter of law. *Saporito v. Combustion Engineering, Inc.,* 843 F.2d 666, 675 (3d Cir.1988).

Although Counts One and Two of the Third Party Complaint are dismissable for lack of factual specificity, Feldman should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint. *District Council 47, American Federation v. Bradley,* 795 F.2d 310, 316 (3d Cir.1986). Although leave to amend is granted freely, *see* Fed.R.Civ.P. 15, it should not be interpreted as license to replead insufficient allegations. Without commenting on the merits of Feldman's claims, the Court remains dubious, however, as to Feldman's ability to state a claim for contribution against a number of third party defendants. For example, Feldman has sued the estate of Gerald Weiner despite the fact that NJOS seeks recovery for Feldman's wrongdoing in his capacity of and exclusively during his tenure as NJOS' Chief Executive Officer, a period of time which followed the death of Weiner. He has also

sued four officers and/or directors of Hanson Industries, Inc., Sergeant, Hempstead, Landuyt and Raos, despite the fact that, according to his own pleadings, Hanson did not purchase NJOS until January 1988, *well after* the alleged schemes began. Yet, Feldman has alleged that the Hanson executives "initiated" the wrongdoing.

Nevertheless, the Court will grant Feldman leave to amend the third Party Complaint within 21 days of this order, however, application for dismissal of this action may be made by third party defendants if a timely amendment is not forthcoming within that time. If Feldman does not wish to amend, he may file an appropriate notice with the Court asserting his intent to stand on the complaint, at which time an order to dismiss will be entered.

### D. *Request for Sanctions*

Third party defendant Fingerhut has requested the Court to impose sanctions against counsel for Feldman because the Third Party Complaint is devoid of factual background in support of the allegations against the thirty-eight third party defendants. Moreover, Fingerhut contends that the claims for indemnification and contribution were groundless and that a cursory review of the applicable law would have revealed Feldman's lack of entitlement. Although the Court partially agrees with Fingerhut assertions, no sanctions will be imposed at this time.

This Court is cognizant of the Third Circuit's caution that "Rule 11 is intended for only exceptional circumstances." *Morristown Daily Record v. Graphic Communications Union,* 832 F.2d 31, 32 n. 1 (3d Cir.1987). A review of the record does not reveal this to be an exceptional case. Contrary to Fingerhut's assertions, Feldman's claims may not be entirely groundless. Although the Court has held that there is no right to contribution or indemnification under both federal and 2C RICO, no New Jersey court has addressed the availability of those rights under 2C RICO. The request for contribution under 2C RICO cannot be considered contrary to established law and therefore irresponsible pleading. The Court has

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 6

Not Reported in F.Supp., 1990 WL 74477
**(Cite as: Not Reported in F.Supp.)**

provided Feldman the right to replead his request
for contribution for liability under the common law
counts, Nine through Eleven. Should Feldman
accept the Court's offer to amend and fail to replead
with sufficient particularity pursuant to Rule 9(b),
Fingerhut, or any other third party defendant, is free
to reassert a claim for sanctions at that time.

### III. *CONCLUSION*

For the reasons provided herein, the Court will
dismiss all the allegations contained in Counts One,
Two and Three of the Third Party Complaint with
the exception of Feldman's claim for contribution
for any liability under the common law claims
recited in Counts Nine through Eleven of the
Complaint. Although that assertion is dismissable
for lack of factual specificity, Feldman will be given
21 days from the date of this order to cure the
defect, if he can, by amendment of the complaint.
The motion for sanctions brought by third party
defendant Fingerhut is denied without prejudice to
reassertion at a future date.

An appropriate order is attached.

### *ORDER*

In accordance with an Opinion of this Court filed
herewith,

It is on this 4th day of June, 1990

ORDERED that all allegations contained in Counts
One, Two and Three of the Third Party Complaint
are dismissed with prejudice as to all Third Party
Defendants, with the exception of Third Party
Plaintiff Feldman's claim for contribution for any
liability under the common law claims recited in
Counts Nine through Eleven of the original
Complaint; and it is further

ORDERED that Third Party Plaintiff shall have 21
days from the date of this Order to cure all pleading
defects, if he can, by amendment of the Third Party
Complaint; and it is further

ORDERED that third party defendants may bring
an application for dismissal if a timely amendment
is not forthcoming within that time; and it is further

ORDERED that if Third Party Plaintiff files an
appropriate notice with the Court asserting his
intent to stand on the Third Party Complaint, an
Order to dismiss will be entered; and it is further

ORDERED that Third Party Defendant Fingerhut's
motion for sanctions is denied without prejudice to
reassertion at a future date.

> FN1. Thirty-three defendants are named in
> the first three counts of the Third-Party
> Complaint. All defendants have joined in
> this consolidated motion with the single
> exception of Vincent J. Mamone. No
> appearance has been entered for Mr.
> Mamone, nor does it appear that he was
> sent the Magistrate's Case Management
> Order of April 9, 1990 in regards to the
> consolidation of third-party defendants'
> motions.

> FN2. Feldman argues that the New Jersey
> Joint Tortfeasors Contribution Law, ("
> Joint Tortfeasors Act") N.J.Stat.Ann.
> 2A:53A-1 *et seq.* should be construed to
> permit contribution among racketeering
> violators. The Court finds this argument
> without merit. To interpret the Joint
> Tortfeasors Act as Feldman suggests
> would put it in direct conflict with the
> penalty and other penal sections of 2C
> RICO. That reading would eviscerate the
> statute's dual objectives of deterrence and
> punishment. This Court will not render
> impotent the New Jersey legislature's most
> important weapon against organized crime.

D.N.J.,1990.
New Jersey Office Supply, Inc. v. Feldman
Not Reported in F.Supp., 1990 WL 74477

Briefs and Other Related Documents (Back to top)

• 2:89CV03990 (Docket) (Sep. 20, 1989)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 7

Not Reported in F.Supp., 1990 WL 74477
**(Cite as: Not Reported in F.Supp.)**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                                  Page 1

Not Reported in F.Supp., 1995 WL 70566
**(Cite as: Not Reported in F.Supp.)**

**H**
Not Reported in F.Supp., 1995 WL 70566
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
VANGUARD SAVINGS AND LOAN
ASSOCIATION and VSL Service Corp., Plaintiffs,

v.

Barton M. BANKS, et al., Defendants/Third Party
Plaintiffs.
Barton M. BANKS, David Banks, Debra Weidman
and Banks, Banks, & Weidman, Third Party
Plaintiffs,

v.

The PENNSYLVANIA SAVINGS
ASSOCIATION INSURANCE CORP., Donald G.
Whyte, Jeffrey J. Idler, Peter J. Marcolina, Herbert
J. Blair, Kathleen A. Kunyczka, Fox, Rothschild,
O'Brien & Frankel Herbert Bass, Ira Silverstein,
Cecil Maidman and Kopple & Gottleib, CPA, Third
Party Defendants.
**CIV.A. 93-4627.**

Feb. 8, 1995.

MEMORANDUM

KELLY
Presently before the court is the Motion of
Third-Party Defendant Kopple & Gottlieb to
dismiss the Third-Party Complaint. Plaintiffs
commenced this action on August 26, 1993.
Defendants filed the third-party complaint on
October 11, 1994. For the reasons that follow,
Kopple and Gottlieb's Motion is granted.

BACKGROUND

Vanguard Savings and Loan Association ("
Vanguard"), the plaintiff, is a savings and loan
institution organized under the laws of the
Commonwealth of Pennsylvania. The defendants
are former directors, officers and attorneys of

Vanguard (the "defendants"). Defendants operated
Vanguard until they resigned in 1991. The
complaint contends they managed the institution in
a manner that caused Vanguard to lose a significant
amount of money.

First, plaintiffs argue that defendants issued loans in
a manner that was negligent, fraudulent, and in
violation of fiduciary duties. Defendants allegedly
approved loans without obtaining borrowers' credit
reports, without verifying bank deposits, and
without verifying borrowers' employment status.
*Complaint* ¶¶ 55-66.

Plaintiffs further contend that the defendants'
method of appraising mortgage property was
negligent, and violated the defendants' duty of
loyalty to Vanguard. *Complaint* at ¶¶ 50-54.
Apparently, many borrowers defaulted on these
risky and under-collateralized loans. These defaults
caused Vanguard to incur substantial losses.
Plaintiffs also contend that defendants utilized
deceptive and fraudulent accounting tactics to cover
up losses and mislead depositors. *Complaint* ¶ 62.
These techniques allegedly caused Vanguard further
financial injury.

In addition to these accusations, plaintiffs claim that
defendants engaged in a number of other schemes,
all designed to use Vanguard's assets to serve the
defendants' needs. These alleged schemes included:
1) causing Vanguard to reimburse defendants for
excessive personal "expenses" that were unrelated
to business affairs; 2) employment of individuals
who did not do any work for Vanguard; 3)
operation of a law firm that shared office space with
Vanguard, but caused Vanguard to pay a
disproportionate amount of the rent and expenses;
4) retention of the same law firm without approval
by a disinterested majority of the board; and 5)
causing Vanguard to pay excessive fees to the law
firm. *Complaint* ¶¶ 84-121.

Plaintiffs seek relief under both federal and state

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                        Page 2

Not Reported in F.Supp., 1995 WL 70566
**(Cite as: Not Reported in F.Supp.)**

law. First, they claim that these various schemes, when taken together, amount to a violation of the Racketeer Influenced and Corrupt Organizations Act (the "Civil RICO claim"). 18 U.S.C. § 1961 *et seq.* The complaint also seeks relief under Pennsylvania state law for defendants': 1) breach of fiduciary duty; 2) self-dealing; 3) breach of contract; and 4) common law fraud.

Defendants filed a third-party complaint against Kopple & Gottlieb ("Kopple"). As noted before, the complaint alleged that defendants utilized deceptive accounting methods to conceal losses incurred from loan defaults. Defendants claim that if they are liable for these accounting errors, they are entitled to contribution or indemnity from Kopple. They specifically allege that Kopple provided incompetent accounting services, which defendants relied on to their detriment. Defendants maintain that this malpractice was the actual source of the alleged accounting fraud and negligence set forth in plaintiff's complaint. Kopple moved to dismiss the third-party complaint for failure to state a claim.

### DISCUSSION

Before this court decides whether defendants have stated a claim, it must decide whether it has subject matter jurisdiction over the claim presented. Because the malpractice claim is grounded in state law, there is no federal question jurisdiction. 28 U.S.C.A. § 1331. Furthermore, the court lacks diversity jurisdiction because Kopple and the defendants are both citizens of Pennsylvania. 28 U.S.C.A. § 1332. Defendants contend that the court has jurisdiction based on supplemental jurisdiction. 28 U.S.C.A. § 1367.

Courts have supplemental jurisdiction over a state law claim if it is part of the same "case or controversy" as claims already before the court, and that are within the court's original jurisdiction. 28 U.S.C.A. § 1367. Separate claims are part of the same case or controversy if they derive from a common nucleus of operative fact, or if they are so intertwined that they should be tried together in a single judicial proceeding. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966). Finally, the

decision to exercise supplemental jurisdiction rests within the court's sound discretion. *Id.* at 726; *James v. Sun Glass Hut of California, Inc.,* 799 F.Supp. 1083 (D.Colo.1992).

In this case, the only claims before the court that fall within its original jurisdiction are the RICO counts. To prove the RICO claims, plaintiffs must establish that defendants conducted a RICO enterprise through a pattern of racketeering activity that injured the plaintiffs. *Sedima S.P.R.L. v. Imrex,* 473 U.S. 479 (1985). Clearly, plaintiffs could prove that defendants violated RICO without any evidence of the alleged accounting malpractice. Likewise, defendants could independently prove that Kopple committed malpractice irrespective of the RICO action. Accordingly, the claims do not arise from a common nucleus of operative fact, nor are they so intertwined that they should be tried together in one proceeding.

Therefore, plaintiffs' RICO claims and defendants' accounting malpractice claim simply do not form part of the same case or controversy. Therefore, the court declines to exercise any discretion granted under 28 U.S.C. § 1367 to extend the court's supplemental jurisdiction over defendants' state law claim against Kopple. Consequently, the third-party complaint is dismissed.

An appropriate Order follows.

Actually, this court must resolve two issues to decide the instant motion. The first is whether defendants have stated a claim against Kopple. Secondly, the court must determine whether it has subject matter jurisdiction over any properly stated claims against Kopple.

### *1. The third-party complaint does state a claim.*

Rule 14 of the Federal Rules of Civil Procedure permits a defendant to implead any party who may be liable for indemnity or contribution. Fed.R.Civ.P. 14(a) ; 42 Pa.C.S.A. § 8321 *et seq; Pennine Resources v. Dorwart Andrew & Co.,* 639 F.Supp. 1071, 1074 (E.D.Pa.1986). Therefore, to survive this motion, the third-party complaint must

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3

Not Reported in F.Supp., 1995 WL 70566
**(Cite as: Not Reported in F.Supp.)**

state a claim for indemnity or contribution. *Id.*

Courts have consistently held that defendants in a civil RICO action have no right to seek indemnity or contribution from a third party. *See e.g. Friedman v. Hartman,* 787 F.Supp. 411 (S.D.N.Y.1992) ; *Epstein v. Haas Securities Corp.,* 731 F. Sup. 166, 1187 (S.D.N.Y.1990) ; *Wilder v. Williams,* 1989 WL 108389 (W.D.Pa.1989). Accordingly, defendants have not stated a claim for indemnity or contribution against Kopple based on the plaintiffs' civil RICO charge.

However, defendants also face state law claims for breach of fiduciary duties, self-dealing and professional malpractice. They seek contribution and indemnity on these claims. Under Pennsylvania law, a party who is secondarily liable may seek indemnity from one who is primarily liable. *Eagle Picher Industries, Inc. v. U.S.,* 846 F.2d 888 (3d Cir.1988). Generally, a party is primarily liable if he actively caused plaintiff's injury, while the passive wrongdoer is only secondarily liable. *In re One Meridian Plaza Fire Litigation,* 820 F.Supp. 1492 (E.D.Pa.1993). Defendants allege that Kopple was the active tortfeasor because it committed the accounting malpractice. Defendants further contend that if they are at fault, it is merely because they passively relied on Kopple's active malpractice. These allegations, viewed in the light most favorable to the defendants, state a claim for indemnity.

Defendants have also stated a claim for contribution. In Pennsylvania, a defendant may seek contribution from a third party if the two are jointly liable to the plaintiff. *See* 42 Pa.C.S.A. § 8321 *et seq.; Allen Organ Co. v. Gallanti Organ Builders, Inc.,* 798 F.Supp. 1162 (E.D.Pa.1992). Parties are jointly liable to a plaintiff if their wrongful actions united to cause a single, indivisible injury. *Id.* Viewing the third-party complaint broadly, it seems that both Kopple and defendants may have performed their accounting duties in a negligent manner. It also appears that these joint wrongful actions may have united to cause a single financial harm to Vanguard. Accordingly, defendants have stated a claim for contribution.

ORDER

AND NOT, on this 7th day of February, 1995, upon careful consideration of the Motion of Third-Party Defendant Kopple & Gottlieb ("Kopple") to Dismiss the Third-Party Complaint, the Response of Third-Party Plaintiffs, and all replies thereto, it is hereby ORDERED that Kopple's Motion is GRANTED, and the Third-Party Complaint is DISMISSED as to Kopple & Gottlieb.

E.D.Pa. 1995
Vanguard Sav. and Loan Ass'n v. Banks
Not Reported in F.Supp., 1995 WL 70566

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.