UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

WALSH SECURITIES, INC.,                    :

    Plaintiff,                            :        Civil Action No. 97-3496
                                            (WGB)

v.                                         :

CRISTO PROPERTY MANAGEMENT, LTD.,          :        OPINION
a/k/a G.J.L. LIMITED, DEK HOMES OF
NEW JERSEY, INC., OAKWOOD                   :
PROPERTIES INC., NATIONAL HOME
FUNDING, INC., CAPITAL ASSETS              :
PROPERTY MANAGEMENT & INVESTMENT
CO., INC., CAPITAL ASSETS                   :
PROPERTY MANAGEMENT, L.L.C.,
WILLIAM J. KANE, GARY GRIESER,             :
ROBERT SKOWRENSKI, II, RICHARD
CALANNI, RICHARD DIBENEDETTO, JAMES:
R. BROWN, THOMAS BRODO, RONALD J.
PIERSON, STANLEY YACKER, ESQ.,             :
MICHAEL ALFIERI, ESQ., RICHARD
PEPSNY, ESQ., ANTHONY M. CICALESE,         :
ESQ., LAWRENCE M. CUZZI, ANTHONY
D'APOLITO, DAP CONSULTING, INC.,           :
COMMONWEALTH LAND TITLE INSURANCE
COMPANY, NATIONS TITLE INSURANCE           :
OF NEW YORK INC., FIDELITY NATIONAL
TITLE INSURANCE COMPANY OF NEW             :
YORK, COASTAL TITLE AGENCY, and
STEWART TITLE GUARANTY COMPANY,            :
IRENE DiFEO, DONNA PEPSNY,
WEICHERT REALTORS, AND VECCHIO             :
REALTY, INC. D/B/A MURPHY REALTY
BETTER HOMES and GARDENS,                   :

    Defendants.                           :

                                           :

_____

Robert A. Magnanini, Esq.
Christopher Iannicelli, Esq.
BOIES, SCHILLER & FLEXNER, LLP
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
**For Walsh Securities and Robert Walsh**

Michael D. Schottland, Esq.
36 West Main Street
Freehold, New Jersey 07728
**For National Home Funding and Robert Skowrenski, III**

Richard Calanni
One Old Farm Road
Tinton Falls, New Jersey 07724
**Pro Se**

Richard DiBenedetto
153 Stephens Lane
Mahwah, New Jersey 07430-3863
**Pro Se**

James R. Brown
1089 Cedar Avenue
Union, New Jersey 07083
**Pro Se**

Stanley Yacker
33 Broadway, #1
Ocean Grove, New Jersey 07756
**Pro Se**

Edward C. Bertucio, Esq.
HOBBIE, CORIGAN, BERTUCIO & TASHJY, PC
125 Wyckoff Road
Eatontown, New Jersey 07724
**For Michael Alfieri**

Richard Lloyd Friedman, Esq.
GIORDAN, HALLERAN & CIESLA, P.C.
125 Half Mile Road
P.O. Box 190
Middletown, New Jersey 07748
**For Michael Alfieri**

Robert J. Reilly, III, Esq.
REILLY, SUPPLE & WISCHUSEN, LLC
Murray Hill Office Center
571 Central Avenue
New Providence, New Jersey 07974
**For Michael Alfieri**

Jerome A. Ballarotto, Esq.
143 White Horse Avenue
Trenton, New Jersey 08610
**For Richard Pepsny**

Mark W. Catanzaro, Esq.
Blason IV - Suite 208
513 South Lenola Road
Mooresetown, New Jersey 08057
**For Richard Pepsny and Donna Pepsny**

Thomas D. Flinn, Esq.
GARRITY, GRAHAM & FAVETTA, P.C.
One Lackawanna Plaza
P.O. Box 4205
Montclair, New Jersey 07042-4205
**For Anthony M. Cicalese**

Anthony D'Apolito
909 Woodland Avenue
Wall, New Jersey 07719
**Pro Se**

Pasquale Menna, Esq.
KAUFF & MENNA, ESQS.
170 Broad Street
P.O. Box 762
Red Bank, New Jersey 07701
**For Ronald J. Pierson**

Theodore Daunno, Esq.
1033 Clifton Avenue
Clifton, New Jersey 07103
**For Lawrence J. Cuzzi**

Frederick W. Alworth, Esq.
Terrence S. Brody, Esq.
GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE, PC
One Riverfront Plaza
Newark, New Jersey 07102-5496
**For Stewart Title Guarantee Company**

John B. McCusker, Esq.
MCCUSKER, ANSELMI, ROSEN, CARVELLI & WALSH, PA
127 Main Street
Chatham, New Jersey 07928
**For Weichert**

David R. Kott, Esq.
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, New Jersey 07101-0652
**For Commonwealth Land Title Insurance Company**

Jon C. Martin, Esq.
Anthony Argiropoulos, Esq.
Edward J. Hayes, Esq.
FOX ROTHCHILD LLP
Princeton Pike Corporate Center
997 Lenox Drive
Building 3
Lawrenceville, New Jersey 08648-2311
**For Nations Title Insurance Company and Fidelity National Title Insurance Company**

Martin M. McGowan, Esq.
METHFESSEL & WERBEL
3 Ethel Road
Edison, New Jersey 08818
**For Coastal Title Agency**

Thomas G. Brodo
319 Queen Anne Road #B
Teaneck, New Jersey 07666
**Pro Se**

4

Bassler, Senior District Judge

The defendants Stewart Title Guaranty Company ("Stewart Title") and Weichert Realtors ("Weichert") move to dismiss the complaint of Walsh Securities, Inc. ("Walsh Securities") on the ground that the applicable statute of limitations has run.  The Court heard oral argument on January 12, 2006 regarding the dismissal of the complaint.

INTRODUCTION

Walsh Securities brought this action alleging that in early 1996 numerous co-conspirators engaged in racketeering activity inducing Walsh Securities to purchase about two hundred twenty mortgage loans at fraudulently inflated prices.  For background see Walsh Sec., Inc. v. Christo Prop. Mgmt., 7 F. Supp. 2d 523 (D.N.J. 1998).  Because of the fraud of individuals, including the collaboration of appraisers with inflated appraisals and fraudulent transmittal of deeds by closing attorneys to themselves and certain other defendants, when Walsh Securities, a wholesale mortgage banker, began to foreclose mortgages with delinquent loans, it was unable to recoup the full amounts of the outstanding mortgage loans.

There are thirty-four named defendants.  Defendants Commonwealth Land Title Insurance Company ("Commonwealth Land Title"), Nations Title Insurance of New York, Inc. ("Nations Title"), Fidelity National Title Insurance Company ("Fidelity

5

National Title"), and Stewart Title collectively are referred to in the Third Amended Complaint as the "Title Insurance Defendants."  (See 3d Amend. Compl. ¶¶ 33, 34).[1]

## JURISDICTION

With allegations that defendants other than Stewart Title and Weichert violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act, the Court has jurisdiction according to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

## BACKGROUND

Stewart Title issued title insurance and closing service protection letters on some properties financed by Walsh Securities to protect it from losses.  In conjunction with real property transactions involving National Home Funding ("NHF") and Cristo Property Management, Inc. ("Cristo Property"), borrowers of mortgage loans from Walsh Securities obtained title insurance from the Title Insurance Defendants, including Stewart Title.  In exchange, they provided Walsh Securities with closing service protection letters covering the conduct of the Closing Attorneys, who were specifically approved by the Title Insurance Defendants. (See 3d Amend. Compl. ¶ 94).

Walsh Securities brought this action in July 1997, alleging it suffered losses as a result of fraudulent real estate transactions perpetrated through racketeering activity which

---

[1]References are to paragraphs in Walsh Securities, Inc. Third Amended Complaint

became the subject of a criminal investigation by the United States Attorney's Office.  The investigation resulted in numerous convictions,[2] including that of a former Weichert employee, Donna Pepsny.

In its complaint and amended complaints, Walsh Securities alleges that it was induced to purchase these mortgage loans from NHF based on fraudulent misrepresentations contained in the mortgage loan applications, including appraisals of the properties at issue.  (3d Amend. Compl. ¶ 38).  The proceeds from Walsh Securities' mortgage loans would, among other things, be distributed among the RICO defendants as their illicit profits. (3d Amend. Compl. ¶ 38).

In a typical transaction, Walsh Securities alleges that defendant William Kane ("Kane"), through his company, Cristo Property, purchased a house in a low income neighborhood for a low price.  (3d Amend. Compl. ¶ 64(a)).  Cristo Property, or one or more of the other RICO defendants, including Donna Pepsny, acting as a Weichert real estate agent, then located a willing buyer.  (3d Amend. Compl. ¶ 64(b)).  The property was then appraised by licensed appraisers (hired by NHF and Cristo - Property) at an inflated value.  (3d Amend. Compl. ¶¶ 64 (c)(d)).

---

[2]Reportedly there were twenty-one convictions, which included appraisers, lawyers, real estate investors and mortgage brokers. See Asbury Park Press (Jan. 10, 2006) reporting that Elizabeth Ann Demola, "a principal in the now-defunct Walsh Securities . . . is now awaiting sentencing for her role in the scheme . . . "

Thereafter, a mortgage loan application for the buyer was prepared by NHF or Cristo Property and submitted to Walsh Securities for financing. (3d Amend. Compl. ¶ 64(e)). The mortgage loan applications, in addition to inflated appraisals, contained false information: leases indicating that the property would be income-producing; statements that the buyer made a down payment; statements that the seller, Cristo Property, had provided a second mortgage on the property; and representations that the buyer would own the entire property. (3d Amend. Compl. ¶¶ 64(e)(1)-(8)). These false statements were designed to satisfy the loan underwriting criteria and thereby induce Walsh Securities into approving the loan. (3d Amend. Compl. ¶ 64(e)(8)).

On the day of the closing, the closing attorney would collect and transmit the proceeds of the mortgage loan, knowing that the preconditions to the loan had not been met and were false. (3d Amend. Compl. ¶ 64(g)). The closing attorney also would record the various deeds associated with the transactions. (3d Amend. Compl. ¶ 64(h)). Once the transaction was complete, however, the buyer would transfer sixty percent of the ownership in the property to defendant Capital Assets Property Management, L.L.C. ("Capital Assets") without notifying Walsh Securities. (3d Amend. Compl. ¶ 64(i)). This type of reconveyance is a default on the terms of Walsh Securities mortgage loans and Walsh

8

Securities would not have financed the mortgage loan had it known of the plan to reconvey the buyer's interest in the property. (3d Amend. Compl. ¶ 64(i)).

Capital Assets would then pool rental income from several properties to meet the mortgage obligations on the property. (3d Amend. Compl. ¶ 64(j)). However, given the nature of the fraud, Capital Assets would soon become delinquent in paying its mortgage obligation unless it continued to obtain mortgage loans to defraud Walsh Securities. (3d Amend. Compl. ¶ 64(m)).

With respect to these fraudulently obtained mortgage loans, the Title Insurance Defendants, including Stewart Title, issued to Walsh Securities, as the mortgage lender, closing service protection letters, which required the Title Insurance Defendants to reimburse Walsh Securities for losses arising out of the fraudulent actions of the title companies' approved Defendant closing attorneys. (3d Amend. Compl. ¶¶ 93, 94). Walsh Securities alleges that two of the closing attorneys, Stanley Yacker and Anthony Cicalese, were selected by Kane and NHF and specifically were approved to handle closings by the Title Insurance Defendants. (3d Amend. Compl. ¶ 22).

This same pattern of fraud, with slight variations, occurred over two hundred twenty times. (3d Amend. Compl. ¶ 66). Walsh Securities remains liable for a substantial portion of the value of these mortgage loans fraudulently obtained by the RICO

defendants.  (3d Amend. Compl. ¶ 40).  It will not be able to recover through foreclosures the full amounts that have been lent on the properties because of the fraudulently inflated appraisals of the real properties that secure the mortgage loans; many of the properties are not of value equal to or greater than the amount of the mortgage loans and the fraudulent sales contracts. (3d Amend. Compl. ¶ 40).  In addition, it is alleged that this fraud perpetrated against Walsh Securities has injured the business reputation of Walsh Securities and caused Walsh Securities to lose a substantial amount of business and profits, including the cancellation of an impending sale of Walsh Securities to a third party.  (3d Amend. Compl. ¶ 40).

On July 17, 1997, Walsh Securities filed its initial complaint in this action, followed by an amended complaint on November 7, 1997.  On January 16, 1998, several defendants, who were targets of the criminal investigation by the United States Attorneys Office for the District of New Jersey ("U.S. Attorneys Office"), moved for a stay of the civil proceedings pending the outcome of the criminal investigation.  These defendants argued that they could not fully participate in civil discovery and, at the same time, protect their Fifth Amendment rights.

The Court heard oral argument on the motion on March 30, 1998, entertained an *in camera* submission by the U.S. Attorneys Office, and entered an order on April 28, 1998, *inter alia,*

10

staying all interrogatory and deposition discovery in the action
until November 1, 1998.  The order did not stay the action nor
did it preclude document discovery.  (See Op. of the Ct. (Apr.
28, 1998)).

In early 1998, counsel for Walsh Securities was engaged in
extensive and lengthy settlement negotiations with Stewart
Title's counsel concerning Walsh Securities' claims for coverage
under the closing service protection letters issued by Stewart
Title.  (See Decl. of Robert A. Magnanini ("Magnanini Decl.")¶ 8
(June 3, 2005)).  No agreement was signed tolling the statute of
limitations and current counsel Magnanini states that
negotiations "abruptly ended" after the April 28, 1998 order.
(See Magnanini Dec. at ¶¶ 8,9).

Walsh Securities contends that despite several requests to
the U.S. Attorneys Office and to the Court to lift the stay, the
stay was extended by the Court because of the continuation of the
criminal investigation.  (See Magnanini Dec. ¶ 3).  The docket
reflects no application to the Court and the Court's file
contains no indication of any request by Walsh Securities.  In
any event, the order only stayed interrogatory and deposition
discovery, not the litigation itself; the case remained on the
Court's active docket until May 30, 2000 when the Court, *sua
sponte,* entered an order administratively terminating and
removing the case from the active docket because of the ongoing

11

criminal investigation.  The Court's Order of May 30, 2000 did
not provide for tolling the statute of limitations.  After being
notified by the U.S. Attorney's Office that the criminal matter
was ended, the Court entered an Order dated September 27, 2004
terminating the administrative stay and directing that the
"litigation shall proceed forward immediately toward conclusion."

After a Case Management Conference before Judge Madeline Cox
Arleo on December 20, 2004, Walsh Securities circulated a draft
Third Amended Complaint.  (<u>See</u> Magnanini Dec. ¶ 5.)  Because none
of the defendants objected to the filing of the Third Amended
Complaint, the Court granted leave to file it, and it was filed
on January 28, 2005.  (<u>See</u> Magnanini Dec. ¶ 6).

ANALYSIS

Walsh Securities' claim against Stewart Title is grounded on
its title insurance policies and the multiple closing service
protection letters.  The claim against Weichert is grounded on
vicarious liability for the fraud of its employee, Donna Pepsny.

STEWART TITLE'S MOTION TO DISMISS

Stewart Title moves to dismiss the complaint under Fed. R.
Civ. P. 12(b)(6) because it is barred by the applicable statute
of limitations: N.J. Stat. Ann. § 2A:14-1.[3]  This statute, which
bars fraud and breach of contract actions instituted six years
after the cause has accrued, applies to insurance actions.  (<u>See</u>

---

[3] The parties agree that the New Jersey law governs the common law actions.

Gahnney v. State Farm Ins. Co., 56 F. Supp. 2d 491 (D.N.J. 1999).
No one disputes that the motion to dismiss on grounds that the
statute of limitations has run, as it has here, is procedurally
proper.  See Robinson v. Johnson, 313 F.3d 128, 125 (3d Cir.
2002), *cert. denied*, 540 U.S. 826 (2003).

Walsh Securities' Third Amended Complaint, with claims for
the first time against Stewart Title, was not filed until January
28, 2005, beyond the time permitted by the statute of
limitations.  Because the claims against Stewart Title were not
filed within the statutory period, they must be dismissed unless
saved by equitable estoppel or the provisions of Fed. R. Civ. P.
15(c)that provide for relation back to the date of the original
complaint.

The response of Walsh Securities to the defense of the
running of the statute of limitations is, essentially, that it is
unfair because Stewart Title and Weichert knew about the
fraudulent scheme of the RICO defendants and their potential
liability, and they are no worse off now than if the complaint
had been filed earlier.

Of course, that is not a winnable argument, for it would
eviscerate the legislative determination underpinning all
statutes of limitations that they are statutes of repose and,
while the time periods are arbitrary, absent exceptions,
defendants are entitled to rely on them.  The Court is aware that

often claims by the parties cannot be wholly reconciled and, as Justice Mountain observed in addressing the role of the discovery rule, the "equitable claims of opposing parties must be identified, evaluated and weighed." See Lopez v. Swyer, 62 N.J. 267 (1973).  Other jurisdictions (no New Jersey case could be found) provide, "[w]henever suit is filed after the limitations period, as it had been in this case, the burden is on the plaintiff to establish that the statute has been tolled." Swietlowich v. County of Bucks, 610 F.2d 1157, 1162 (3d Cir. 1979).  See also Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 487 (3d Cir. 1985); Courtney v. La Salle U.,124 F.3d 499, 505 (3d Cir. 1997).

With these guideposts in mind, the Court turns to the question of whether equitable tolling can save Walsh Securities from the bar of the statute of limitations.

EQUITABLE TOLLING

Walsh Securities can be saved from the statutory bar if the statute of limitations tolled during the four year period from the time of the Court's administrative dismissal on May 30, 2000 until the case was reactivated on September 30, 2004.

Walsh Securities recognizes that it had until the end of June 2003 to file breach of contract claims, but argues that, because of this Court's initial stay, extension of the stay, and administrative dismissal of the case, it has been unable to

proceed with this action.  Walsh Securities further argues that,
even if the discovery stay did not toll the statute of
limitations, the May 2000 administrative dismissal did.
Therefore, it "still had . . . [t]hree years and one month to
file breach of contract . . . claims." (<u>See</u> Walsh Securities'
Consol. Memo. of Law in Op. to D.s' Mot. to Dismiss p. 10).

In response, Stewart Title points out that where New Jersey
recognizes the doctrine of equitable tolling it often involves
situations where a plaintiff has been induced or tricked by a
defendant into missing a deadline.  <u>See</u> <u>Villalobos v. Fava</u>, 342
N.J. Super. 38, 50 (App. Div.), *cert. denied,* 170 N.J. 210
(2001); <u>Dunn v. Borough of Mountainside</u>, 301 N.J. Super. 262,
276-278 (App. Div.) *cert. denied,* 153 N.J. 402 (1998); <u>see</u> <u>also</u>
<u>generally</u> <u>Pressler</u>, <u>Current N.J. Court Rules</u>,(Gann 2005) Comment
36.4.1 on R. 4:5-4 at 1161-1162.  New Jersey also recognizes the
doctrine of equitable tolling in situations where the claim is
based on the commencement of other cognate litigation.  <u>See</u>
<u>Galligan v. Westfield Centre Service, Inc.</u>, 82 N.J. 188 (1980);
<u>see</u> <u>also</u> <u>generally</u> <u>Pressler</u>, <u>Current N.J. Court Rules</u>, (Gann
2005) Comment 36.4.2.b. on R. 4:5-4 at 1162-1163.

The Court accepts the parties' assumption that state law
provides the governing rule, but notes that, in the Seventh
Circuit at least, a plaintiff can invoke any federal or state

15

tolling provision to save its claims.   See White v. Williams, No.
94-C-3836, 1997 WL 261357, at *2 (N.D. Ill. May 8, 1997).   New
Jersey cases, however, do not provide any guidance on the real
question here: should the statute of limitations be tolled when a
case is administratively terminated.   Administrative termination
is a procedural device that allows a district court judge to get
an inactive case (for example, a case stalled by bankruptcy) off
the list of pending cases.   As explained by the Eighth Circuit,
an administrative dismissal is issued in situations where the
court has done everything it can to get a case off its "plate."
See Behrle v. Olshanski, 966 F.2d 1458, 1459 (8th Cir. 1992).
"[S]uch orders are sometimes entered by courts . . . for
statistical purposes."   Id.   The case then can be reactivated
when the court is notified, as here, that there is no longer a
reason for the stay.

     The federal doctrine of equitable tolling has been
articulated by the Third Circuit in Podobnik v. U.S. Postal
Serv., 409 F.3d 584 (2005).   There are three principal situations
in which equitable tolling is appropriate: (1) where the
defendant has actively misled the plaintiff respecting the
plaintiff's cause of action and that deception causes non-
compliance with an applicable limitations provision; (2) where
the plaintiff in some extraordinary way has been prevented from

16

asserting his rights; or, (3) where the plaintiff has timely asserted his rights mistakenly in the wrong forum.

The circumstances here do not justify equitable tolling. Walsh Securities had in its possession from the very beginning the title insurance policies and the attorney closing service protection letters from Stewart Title.  No discovery was needed to identify Stewart Title as a potential responsible party. Further, Walsh Securities knew, within the limitations period, of the facts forming the basis of its claims against the insurance companies, including Stewart Title.  That knowledge, and the delay of eight years before suing Stewart Title, undercuts its appeal to equity.

Walsh Securities failed to name Stewart Title in its original complaint and in its Amended Complaint filed November 7, 1997.  Nor did Walsh Securities move against Stewart Title before the administrative dismissal.  Nothing prevented Walsh Securities from moving to return the case to the active docket for the limited purpose of asserting a claim against a non-party in order to prevent the statute from running.  In fact, it did not file the Third Amended Complaint until four months after the administrative dismissal was vacated.

A plaintiff is not entitled to equitable tolling where the plaintiff has not been diligent.  See White, 1997 WL 261357 at

17

*2.  A stay of discovery does not automatically toll the statute of limitations.  The Court does not see why an administrative dismissal should.  Tolling would be appropriate if Walsh Securities did not know of the existence of its claim against Stewart Title.  See Id. at *3 (statute of limitations was not tolled during stay because plaintiff had knowledge of defendant's identity such that it could have moved to amend its complaint).  Walsh Securities knew or should have known of the mortgages insured by its own title company.  Certainly it knew in early 1998 since it was engaged in settlement discussions with Stewart Title.  Even after settlement discussions apparently fell apart, Walsh Securities did not pursue a cause of action against Stewart Title.

The administrative dismissal had no more bite than a stay. It is the functional equivalent of a stay.  The purpose of the stay was to protect the privilege of the criminal defendants against self incrimination.  Walsh Securities could have applied to the Court at any time to lift the stay in order to amend the complaint to include Stewart Title.  In fact, in issuing its opinion regarding the Stay of Discovery, the Court specifically addressed the fact that the Stay of Discovery was not indefinite and invited "the parties [to] petition the Court to lift or modify the stay if there was a change warranting it."  See 7 F.

18

Supp 2d at 529.  That is exactly what defendant Michael Alfieri
did by filing a motion to lift the stay.  On another occasion,
the Court permitted a defendant who had filed an answer to assert
a cross claim.  Again, on another occasion, the Court permitted
the law firm representing Walsh Securities to submit a letter
in which it sought to withdraw as counsel.

Walsh Securities says it could not file a complaint against
Stewart Title in the state court because it was prevented from
doing so by New Jersey's entire controversy doctrine.  However,
the entire controversy doctrine did not stand in the way of Walsh
Securities bringing an action in the state court on its
independent claim for breach of contract.  Stewart Title was not
a part of the RICO conspiracy or a joint insurer with the other
Title Insurance Defendants.  New Jersey's entire controversy
doctrine would not have required dismissal when multiple actions
involving the same or related claims were pending.  See Kaselaan
& D'Angelo Assoc., Inc. v. Soffian, 290 N.J. Super. 293, (App.
Div. 1996).

Moreover, New Jersey Court Rule 4:30A, institutionalizing
the entire controversy doctrine, was amended in September 1998 to
permit non-joinder of claims.  See Rycoline Prods., Inc. v. C & W
Unltd. 109 F.3d 883, 888-889 (3d Cir. 1997).  Walsh Securities
could have, but did not, avail itself of this rule.

Moreover, there is no evidence to support Walsh Securities'
argument that, by engaging in claim settlement negotiations with
Stewart Title, it was lulled into a false sense of security by
Stewart Title, which then sprung the statute of limitations.  But
settlement negotiations alone do not constitute the wrongful
conduct necessary for estoppel.  See Price v. N. J. Mfrs. Ins.
Co., 182 N.J. 519 (2005).  Certainly when, as Walsh Securities
contends, Stewart Title "abruptly ended" the settlement
discussions in April 1998, it was then apparent, if not before,
that Stewart Title was not going to pay the claim.

Contrary to Walsh Securities appeal to equity, New Jersey
law is not so forgiving about non-compliance with the statute of
limitations.  See Nativo v. Grand Union Co., 315 N.J. Super. 185
(App. Div. 1998).

Under these circumstances, Walsh is not entitled to
equitable tolling.  When it comes to seeking relief from statutes
of limitations, victory goes to the diligent, not the dilatory.

                          RELATION BACK

In reliance on Fed. R. Civ. P. 15(c), Walsh Securities also
argues that the claims against Stewart Title are not barred
because they relate back to the original complaint.

Fed. R. Civ. P. 15(c) provides that an amended complaint
relates back to the date of the original pleading when: (1)

relation back is permitted by the applicable statute of
limitations; or, (2) the claim asserted in the amended complaint
"arose out of the conduct, transaction, or occurrence set forth
or attempted to be set forth in the original pleading;" or, (3)
the amendment changes the party or the name of the charged party.
If (2), above, is satisfied within the time provided by Fed. R.
Civ. P. 4(m), and the new party has received sufficient notice so
as not to be prejudiced in defending on the merits and <u>knew or
should have known that "but for the mistake concerning the
identity of the proper party, the action would have been brought
against the party</u>." (Emphasis added).

In <u>Bryan v. Assoc. Container Transp.</u>, 837 F. Supp. 633
(D.N.J. 1993), Judge Simandle carefully analyzed how the relation
back doctrine should be analyzed under federal law and under
state law. In a nutshell, where the state law provides the
statute of limitations, and state law permits a more forgiving
principle of relation back than the one provided by Fed. R. Civ.
P. 15(c), then the state law applies. Fed. R. Civ. P. 15(c)(1)
would permit Walsh Securities to look to New Jersey state law to
determine whether New Jersey state law would permit the statute
of limitations to be extended. N.J. R. Civ. P. 4:9-3 governs
when amendments relate back.

Neither party, though, has argued that the New Jersey rule

is more liberal, and the Court, therefore, assumes that it is

not.  Moreover, even a cursory reading of the rule supports the

conclusion that it is not more liberal than the federal rule.

Under the New Jersey rule, the claim against a new party must

arise out of the original "conduct, transaction or occurrence set

forth or attempted to be set forth in the original pleading,"

and, in addition to the new party not being prejudiced, the new

party must have known, or should have known, that "but for <u>a</u>

<u>mistake concerning the identity</u> of the proper party, the action

would have been brought against the party to be brought in by the

amendment." (N.J. R. Civ. P. 4:9-3).  (Emphasis added).  <u>Cf.</u>

<u>Notte v. Merch. Mut. Ins. Co.</u>, --- A.2d ----, 2006 WL 59594

(N.J.) (when a period of limitation has expired, a distinctly new

or different claim or defense is barred).

    As Stewart Title has observed, "noticeably absent from Walsh

Securities' submission is any allegation that Walsh Securities

was mistaken as to Stewart's identity."

    There are circumstances that would allow a claim barred by

the statute of limitations to be saved by equitable tolling or by

relation back under Fed. R. Civ. P. 15(c).  Those circumstances

are not present here.

### WEICHERT'S MOTION TO DISMISS

Walsh Securities sues Weichert under the theory of

respondeat superior seeking to hold Weichert liable for the tort
of the fraud (RICO and common law) committed by Weichert's
employee, Donna Pepsny, who, after trial, was found guilty and is
now serving her sentence in a federal prison.

The statute of limitations for RICO claims is four years and
for common law fraud and for breach of contract claims is six
years.  See N.J. Stat. Ann. § 2A:14-1.  See also S. Cross
Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181
F.3d 410, 425 (3d Cir. 1999).

Although another realtor, Roland Peirson, and Donna Pepsny's
husband, Richard Pepsny, were named in the original complaint,
neither Donna Pepsny, nor her employer, Weichert, were named
until the Third Amended Complaint.  Walsh Securities has given no
explanation for absenting them from their earlier complaints.
The involvement of the realtors in the fraudulent scheme was not
a secret.  There was extensive newspaper coverage in June 1997.
(See Cert. of John B. McCusker, ("McCusker Cert.") Ex. A, May 10,
2005).  Surely, Walsh Securities knew of her participation in the
scheme when she was indicted along with Stanley Yacker and Irene
DiFeo on January 26, 2001.  (See McClusker Cert., Ex. F).  Walsh
Securities does not dispute the statement in Weichert's brief
that Donna Pepsny was convicted in June 2002.  (See Weichert's
Br. in Support of Mot. to Dismiss p. 6).

The question of exactly when Walsh Securities knew or should have known of Donna's Pepsny's involvement in the scheme need not detain us; counsel candidly acknowledged at oral argument that Walsh Securities knew of her involvement as early as July 1997.

Walsh Securities acknowledges in its brief at page 10 that it would have had until the end of June 2003 to file its fraud claims. Because it filed its Third Amended Complaint against Weichert Realty on January 28, 2005, it is barred by the statute of limitations unless Walsh Securities can benefit from equitable tolling or relation back under Fed. R. Civ. P. 15(c).

Just as Walsh Securities could not benefit from these doctrines to save its claim for breach of contract against Stewart Title, neither can Walsh Securities save its claim against Weichert for the fraud of its employee, Donna Pepsny.

The original stay of deposition and interrogatory discovery did not the stay the action. The administrative dismissal did not prevent Walsh Securities from asking the Court to reinstate the case, so that the complaint could be amended to include Weichert in order to stop the running of the statute of limitations. The administrative dismissal did not involve Weichert, so nothing prevented Walsh Securities from filing a complaint in the state court. As we have previously seen, the New Jersey entire controversy doctrine was not an impediment.

There was ample opportunity within the statute of limitations to amend the complaint.  When that is the case, as here, the statute of limitations works to prejudice a party who amends after the statute of limitations has run.  For cases denying leave to amend a complaint where there has been undue delay, see Cureton v. Natl. Collegiate Athletic Assoc., 252 F.3d 267, 273 (3d Cir. 2001); J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 613 (3d Cir. 1987); USX Corp. v. Barnhart, 395 F.3d 161, 168 (3d Cir. 2004); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993).

There is no legal or equitable ground to permit Walsh Securities in the face of a six year statute of limitations to now sue Weichert in 2005 for liability under respondeat superior for acts of an employee committed in 1996.

CONCLUSION

For the foregoing reasons "Count V, Breach of Contract by the Title Insurance Defendants," asserting a claim against Stewart Title and "Count VII, Respondeat Superior - Weichert," asserting a claim against Weichert is dismissed with prejudice.

An appropriate order follows.


January 20, 2006
                              /s/ William G. Bassler
_____
                              William G. Bassler, U.S.S.D.J.


25