Frederick W. Alworth, Esq. (FA-6977)
Terrence S. Brody, Esq. (TB-4463)
**GIBBONS, DEL DEO, DOLAN,**
**GRIFFINGER & VECCHIONE**
A Professional Corporation
One Riverfront Plaza
Newark, NJ  07102
973-596-4500
Attorneys for Cross-Claim Defendant
Stewart Title Guaranty Company

| | |
|---|---|
| WALSH SECURITIES, INC., | |
| Plaintiff, | |
| vs. | |
| CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, DEK HOMES OF NEW JERSEY, INC., OAKWOOD PROPERTIES, INC., NATIONAL HOME FUNDING, INC., CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT CO., INC., CAPITAL ASSETS PROPERTY MANAGEMENT, L.L.C., WILLIAM KANE, GARY GRIESER, ROBERT SKOWRENSKI, II, RICHARD CALANNI, RICHARD DiBENEDETTO, JAMES R. BROWN, THOMAS BRODO, ROLAND PIERSON, STANLEY YACKER, ESQ., MICHAEL ALFIERI, ESQ., RICHARD PEPSNY, ESQ., ANTHONY M. CICALESE, ESQ., LAWRENCE CUZZI, ANTHONY D'APOLITO, DAP CONSULTING, INC., COMMONWEALTH LAND TITLE INSURANCE CO., NATIONS TITLE INSURANCE OF NEW YORK, INC., FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK, COASTAL TITLE AGENCY, and STEWART TITLE GUARANTY COMPANY, IRENE DiFEO, DONNA PEPSNY and WEICHERT REALTORS, | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>CV 97-3496 (WGB)<br><br>Hon. William G. Bassler<br><br>***Document Electronically Filed***<br><br>**CERTIFICATION OF COUNSEL**<br><br>Oral Argument Requested |
| Defendants | |

I, TERRENCE S. BRODY, do hereby certify as follows:

1.    I am an attorney-at-law of the State of New Jersey and

associated with the firm of Gibbons, Del Deo, Dolan, Griffinger &

Vecchione, a Professional Corporation, attorneys for cross-claim

defendant, Stewart Title Guaranty Company (hereinafter referred to as "Stewart").

2.   I make this Certification in support of Stewart Title's motion for entry of an Order dismissing all cross-claims pursuant to Fed. R. Civ. P. 12(b)(6).

3.   Attached hereto as Exhibit "A" is a true and correct copy of the Court's decision in Resolution Trust Corp. v. Moskowitz, Civ. A. No. 93-2080, 1994 WL 475811 (D.N.J. Aug. 31, 1994).

4.   Attached hereto as Exhibit "B" is a true and correct copy of the Court's decision in Longport Ocean Plaza Condominium, Inc. v. Robert Cato & Associates, Inc., Civ. A. No. 00-CV-2231, 2002 WL 2013925 (E.D. Pa. 2002).

5.   Attached hereto as Exhibit "C" is a true and correct copy of the Court's decision in New Jersey Office Supply, Inc. v. Feldman, 1990 WL 74477 (D.N.J. Jun. 4, 1990).

I further certify that all of the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated: January 26, 2006            By:s/ Terrence S. Brody (TB-4463)
        Newark, New Jersey            Frederick W. Alworth (FA-6977)
                                      Terrence S. Brody (TB-4463)
                                      **GIBBONS, DEL DEO, DOLAN,**
                                      **GRIFFINGER & VECCHIONE**
                                      A Professional Corporation
                                      One Riverfront Plaza
                                      Newark, New Jersey 07102
                                      P 973 596 4500
                                      F 973 596 0545
                                      Falworth@gibbonslaw.com
                                      Tbrody@gibbonslaw.com

                                      Attorneys for Defendant
                                      Stewart Title Guaranty Company

#1051471 v1
081111-53415

# EXHIBIT A



Not Reported in F.Supp.                                                                                    Page 1
Not Reported in F.Supp., 1994 WL 475811 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

Only the Westlaw citation is currently available.
United States District Court,D. New Jersey.
RESOLUTION TRUST CORPORATION, in its
capacity as Receiver of United Savings Bank, F.S.B.,
Plaintiff,
v.
Donald J. MOSKOWITZ, et al., Defendants.
**Civ. A. No. 93-2080.**

Aug. 31, 1994.

Daniel Kinburn, Susan Hall, Williams, Caliri, Miller
& Otley, Wayne, NJ, for plaintiff Resolution Trust
Corp.
James Mulvaney, Nancy McDonald, McElroy,
Deutsch & Mulvaney, Morristown, NJ, for defendant
Fidelity & Deposit Co. of Maryland.

OPINION

WOLIN, District Judge.
**\*1** The Resolution Trust Corporation ("RTC"), as
receiver of United Savings Bank of Paterson
("United"), filed this lawsuit against thirty-five
defendants, who include former officers and directors
of United, along with certain of United's former
accountants, appraisers, attorneys, and borrowers,
alleging breach of duties owed to the failed bank.
Also included as a defendant in this blunderbuss
lawsuit is United's bonding company, Fidelity and
Deposit Company of Maryland ("F & D"). The RTC
seeks to recover under a fidelity bond issued by F &
D for alleged employee dishonesty. Many of the
defendants filed cross-claims for contribution and/or
indemnification against F & D.

F & D's motion for dismissal of all the cross-claims
for contribution and indemnification by the
codefendants was heard on February 14, 1994. The
RTC did not oppose F & D's motion as no part of it
was directed against the RTC. On March 14, 1994,
the Court issued a written opinion which dismissed
all of these claims, 845 F.Supp. 247. In dicta, this
opinion went on to raise and answer the following:
What is unclear is whether RTC as the receiver of
United is covered by the Bond.

While it may be contested exactly when discovery
occurred, Section 12, 'Termination or Cancellation,'
provides that '[t]ermination of the bond ... terminates
liability for any loss sustained by such Insured which
is discovered after the effective date of such
termination.'
RTC was not appointed receiver until three months
after the Bond was cancelled. At best, then, RTC
could not have discovered a loss until that time.
Accordingly, RTC cannot step into the shoes of
United to recover under the Bond.

The RTC now seeks reconsideration of this portion of
the opinion. The RTC argues that in light of the
nature and scope of F & D's motion, the Court was
legally and factually mistaken in the conclusion it
reached. F & D submits that the Court's conclusion
merely reflects a review of the pleadings and the
plain language of the Bond, coupled with the
application of simple logic and thus reconsideration
is unnecessary. As what they would deem as a *fait
accompli,* F & D now cross moves for summary
judgment.

Thus, before the Court is the RTC's motion for
reconsideration and F & D's cross-motion for
summary judgment. For the reasons that follow, the
Court will grant both the RTC's and F & D's motions.

DISCUSSION

**I. Motion to Reconsider**

Motions to reconsider or reargue must be filed within
ten days after the judge files the order as to which
reargument is sought. Local Rule 12(I) requires that
the moving party "set forth concisely the matters or
controlling decisions which counsel believes the
Court has overlooked." This Rule "does not
contemplate a Court looking to matters which were
not originally presented." *Florham Park Chevron,
Inc. v. Chevron U.S.A., Inc.,* 680 F.Supp. 159, 162
(D.N.J.1988). Thus, a party "must show more than a
disagreement with the court's decision." *Panna v.
Firstrust Savings Bank,* 760 F.Supp. 432, 435
(D.N.J.1991). A mere "recapitulation of the cases
and arguments considered by the court before
rendering its original decision fails to carry the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 2
Not Reported in F.Supp., 1994 WL 475811 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

moving party's burden." *Carteret Savings Bank, F.A. v. Shushan,* 721 F.Supp. 705, 709 (D.N.J.1989).

**\*2** Further, there is a strong policy against entertaining reconsideration motions based on evidence that was readily available at the time that the original motion was heard; the court may, in its discretion, refuse to consider such evidence. *Florham Park Chevron,* 680 F.Supp. at 162-63. Nevertheless, if the court finds that its consideration of evidence offered for the first time on motion for reargument may lead to a different result than was reached originally, the court has discretion to consider it. *Panna,* 760 F.Supp. at 435.

Discovery is a prerequisite to coverage under the Bond. In examining the Amended Complaint and the language of the Bond, the Court found it impossible for the RTC to have discovered any insurable loss given that the RTC was appointed receiver several months after the Bond was cancelled. The RTC was appointed receiver of United on May 15, 1990. Thus, it stepped into the shoes of United and became the insured on that date. The Bond, however, was cancelled effective February 17, 1990. Simple logic dictates that the RTC, then, could not have discovered the loss prior to that date.

While the Court's Opinion of March 14, 1994 correctly states the conclusion that the RTC is precluded from discovering an insurable loss, as the RTC notes, the issue concerning coverage is not when the RTC discovered the loss. The issue is when the insured discovered the loss. (Indeed, it is precisely this question that has spawned the current cross-motion for summary judgment.)

What the Court overlooked in its March 14th Opinion was that discovery could have occurred prior to the RTC's appointment. United was the insured prior to the RTC's appointment and *it* could have discovered the loss. The RTC's Amended Complaint infers just that. The Amended Complaint states that United suffered losses covered under the Bond, that claims have been made against F & D for such losses, and that such claims have been denied in breach of F & D's contractual obligations under the Bond. By alleging that the loss is covered, the RTC has alleged compliance with the discovery provision of the Bond, which means that the RTC is entitled to the inference from the allegations that discovery occurred within the Bond period. When the RTC later learned of that same dishonesty is irrelevant.

Because the Court overlooked this inference from the

Amended Complaint, the RTC's motion for reconsideration is granted. The portion of the March 14, 1990 opinion regarding the RTC and discovery of loss will be vacated.

## II. Cross-Motion for Summary Judgment

In light of the dicta in the Court's original opinion, F & D now cross-moves for summary judgment that the RTC has no right to make a claim under the Bond because discovery of loss did not occur during the Bond period.

The Court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Products Co.,* 789 F.2d 230, 232 (3d Cir.1986). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. 225 Cartons,* 871 F.2d 409, 419 (3d Cir.1989).

**\*3** "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Id.*

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'-that is, pointing out to the District Court-that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the non-moving party's evidence in opposition to a properly-supported

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                        Page 3
Not Reported in F.Supp., 1994 WL 475811 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

motion for summary judgment is merely "colorable" or "not significantly probative," the Court may grant summary judgment. *Anderson,* 477 U.S. at 249-50, 106 S.Ct. at 2511.

Further, when a non-moving party who bears the burden of proof at trial has failed, in opposition to a motion for summary judgment, to raise a disputed fact issue as to any essential element of his or her claim, summary judgment should be granted because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322-233, 106 S.Ct. at 2552.

In opposing summary judgment, a non-movant may not "rest upon mere allegations, general denials, or ... vague statements." *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.), *cert. denied,* 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991); *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990) ("unsupported allegations in [a nonmovant's] memorandum and pleadings are insufficient to repel summary judgment"); *see* Fed.R.Civ.P. 56(e). The summary judgment procedure enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888-89, 110 S.Ct. 3177, 3188-89, 111 L.Ed.2d 695 (1990). The "unsupported statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are unsupported allegations in the pleadings." *Schoch,* 912 F.2d at 657.

An affidavit filed in opposition to a properly-supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A non-movant "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan,* 497 U.S. at 888, 110 S.Ct. at 3188. The Court is not to presume the existence of specific facts from general averments. *Lujan,* 497 U.S. at 887, 110 S.Ct. at 3188. Such an affidavit must: (1) "show affirmatively that the affiant is competent to testify to the matters stated therein;" (2) be based on "personal knowledge;" and (3) establish facts that "would be admissible at trial." Fed.R.Civ.P. 56(e); *see Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 282 (3d Cir.1988). In sum, an affidavit offered in opposition to a motion for

summary judgment must establish a proper evidentiary foundation for the facts stated within it. *Williams v. Borough of West Chester,* 891 F.2d 458, 471 (3d Cir.1989) (Garth, J., concurring). Affidavits that fail to satisfy these requirements "may not be considered" on a motion for summary judgment. *Hlinka,* 863 F.2d at 282-83. Moreover, "[w]hen, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists." *Hackman v. Valley Fair,* 932 F.2d 239, 241 (3d Cir.1991); *see also Martin v. Merrell Dow Pharmaceuticals, Inc.,* 851 F.2d 703 (3d Cir.1988).

**\*4** This is a matter of contract construction. When the terms of an insurance contract are clear and unambiguous, it is the court's duty to enforce the contract as written and in accordance with its plain and commonly understood meaning. *State, DEP v. Signo Trading International, Inc.,* 235 N.J.Super 321, 332, 562 A.2d 251 (App.Div.1989), *aff'd,* 130 N.J. 51, 612 A.2d 932 (1992). The plain and unambiguous language of the Bond provides that there are three conditions precedent to coverage: discovery of an insurable loss, notice of the loss, and proof of loss.

## A. Discovery

Section 3 of the Bond-entitled "Discovery"-provides that coverage "applies to loss discovered by the Insured during the Bond Period." Affidavit of Mark P. Pessolano, Esq., Exhibit A (hereinafter "Fidelity Bond"). The Bond goes on to more fully define "discovery."

Discovery occurs when the Insured first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

*See* Fidelity Bond § 3.

Once an insurable event is discovered, pursuant to the notice of loss section, the insured must give notice of the loss "at the earliest practicable moment, not to exceed 30 days, after discovery of loss." *Id.* 5(a). The proof of loss provision provides that "[w]ithin 6 months after such discovery, the insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars." *Id.* § 5(b).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 4
Not Reported in F.Supp., 1994 WL 475811 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

Relying on the March 14, 1994 opinion, F & D argues that the undisputed facts demonstrate that the RTC has no claim under the Bond because it did not discover the loss within the Bond period. As discussed *supra*, whether and when the RTC discovered the loss is irrelevant; the issue is when United or one of its employees discovered the loss. The RTC has demonstrated the existence of genuine issues of material fact with respect to discovery. Drawing all inferences in favor of the RTC, the affidavit of William J. Marotta, III suggests that discovery occurred during the Bond period. As Marotta was an officer of the bank and hence an employee of the bank as defined in the Bond, the trier of fact could find that Marotta was a person in authority whose knowledge would be imputed to the Bank. Accordingly, the RTC has met its burden of demonstrating that there is a genuine issue of fact in dispute regarding whether Moskowitz' dishonest acts were discovered within the term of the Bond.

Moreover, the trier of fact could find that discovery took place in January, 1990. The RTC has submitted the Board of Director's Meeting Minutes of January 17, 1989, which contain Moskowitz' description to the Board of his visit by federal agents in December, 1989, and his decision to retain independent personal counsel. With this submission, the RTC has again met its burden. [FN1]

**\*5** F & D replies that even if the Court could determine "when" discovery allegedly took place, the Court must hold as a matter of law that "what" Marotta and the Board knew was not sufficient to constitute discovery under New Jersey's law. Discovery is deemed to occur when the insured actually becomes aware of sufficient facts which would lead a reasonable person to charge another with fraud or dishonesty. *National Newark & Essex Bank v. American Insurance Co., 76 N.J. 64, 80, 385 A.2d 1216 (1978)*; *Fidelity & Deposit Company of Maryland v. Hudson United Bank, 653 F.2d 766, 774 (3d Cir.1981)*. They correctly argue that suspicion is not sufficient for "discovery." Hence, there must be sufficient evidence for a careful and prudent person to conclude that a covered loss occurred. *Id.* at 80, *385 A.2d 1216*; *Midland Bank & Trust Co. v. Fidelity & Deposit Company of Maryland, 442 F.Supp. 960, 970 (D.N.J.1977)*.

What Marotta and the Board knew (and when each knew it) are genuine issues of material fact. By submitting the Marotta affidavit and the Board's minutes, the RTC has raised questions concerning the

underlying facts each had that cannot be resolved via summary judgment.

Nevertheless, F & D argues that since neither Marotta nor the Board did anything to report their discovery, they did not act reasonably and hence there was no discovery. The Court notes that what either Marotta or the Board did in response is irrelevant. The issue is what would a reasonable person have done with the knowledge each had.

### B. Proof of Loss Versus Notice of Loss

It is uncontested that *notice* of loss, the second requirement for coverage, was untimely. Neither party focusses on this as a reason to deny coverage. Rather, F & D contends that Section 5 of the Bond required that "within 6 months of [discovery of loss], the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars." *See* Fidelity Bond § 5. Assuming that Marotta's discovery occurred on December 30, 1989, F & D continues, the RTC was required to submit a proof of loss by June 30, 1990. Under the terms of the Bond, the absolute latest date that proof of loss could be provided was six months from the termination of the Bond. That is, even if the RTC discovered a loss on the final day of the Bond, it was required to submit proof of loss by August 17, 1990. F & D concludes that summary judgment is appropriate because by August 17, 1990, the RTC had failed to file a proof of loss and such failure "in and of itself bars a claim on the bond." *See* F & D Brief in Opposition to Motion for Reargument and in Support of Cross-Motion for Summary Judgment ("F & D Brief") at 18.

The RTC retorts that the answer to the question of whether proof of loss was timely is unclear. RTC Brief at 4. The RTC alleges late filing of the proof of loss is not fatal to its claims since New Jersey follows the appreciable prejudice rule.

The appreciable prejudice rule, both sides acknowledge, is applicable with regard to late *notice* of loss. Under this rule, an insurer must demonstrate "appreciable prejudice" to support an avoidance of a policy as a result of late notice of a claim. *Cooper v. Government Employees Insurance Co., 51 N.J. 86, 94-95, 237 A.2d 870 (1968)*; *see also Costagliola v. Lawyers Title Insurance Co., 234 N.J.Super. 400, 406, 560 A.2d 1285 (Ch.Div.1988)* (insurer cannot avoid coverage based on untimely notice without showing appreciable harm); *Solvents Recovery Service v. Midland Insurance Co., 218 N.J.Super. 49,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 5
Not Reported in F.Supp., 1994 WL 475811 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

54, 526 A.2d 1112 (App.Div.1987) (late notice defenses require a showing by the carrier of prejudice). Prejudice will not be presumed. *Costagliola,* 234 N.J.Super. at 406, 560 A.2d 1285. Rather, the insurer has the burden of showing appreciable prejudice. *Morales v. National Grange Mutual Insurance Co.,* 176 N.J.Super. 347, 351-353, 423 A.2d 325 (Law Div.1980), *citing Cooper,* 51 N.J. at 94, 237 A.2d 870.

**\*6** RTC relies upon *Oritani Savings & Loan Association v. Fidelity & Deposit Company of Maryland,* 744 F.Supp. 1311 (D.N.J.1990), *rev'd on other grounds,* 989 F.2d 635 (3d Cir.1993), for the proposition that the appreciable prejudice rule should govern late *proof* of loss, too. In *Oritani,* which dealt with a fidelity bond claim similar to the one *sub judice,* one of the defenses F & D raised was that the bank had failed to timely file its proof of loss and that as a consequence, Oritani's claims should be barred. The court ruled for Oritani premised on the assumption that the holding in *Cooper* and its progeny extends to late proof of loss situations.

No New Jersey court has extended the "appreciable prejudice" doctrine to the proof of loss context. Indeed, New Jersey courts have instructed that there is a distinction between "notice of loss" and "proof of loss." In *National Newark & Essex Bank v. American Insurance Co.,* 76 N.J. at 83, 385 A.2d 1216, the New Jersey Supreme Court recognized that the two constitute independent conditions, when commenting on a lower court's reading of its decision in *Peloso v. Hartford Fire Insurance Co.,* 56 N.J. 514, 267 A.2d 498 (1970), it said:

Nowhere in *Peloso* did we indicate that notice of loss and proof of loss are one and the same. As several cases have noted: '[T]he purpose of the notice of loss is to acquaint the insurer with the occurrence of the loss, while the requirement of proof of loss gives the insured [sic] the necessary data to determine liability.... Proof of loss is distinguishable from 'notice of loss.'

(Citations omitted).

*National Newark & Essex,* 76 N.J. at 83, 385 A.2d 1216.

This Court cannot extend the "appreciable prejudice" requirement to include late proof of loss. *Cooper* and its progeny concerned late notice-a separate and distinct condition from proof of loss.[FN2]

The consequences of late proof of loss are vastly

different than those concerning late notice. Failure to timely provide a proof of loss "is fatal to recovery in the absence of a showing of waiver or at least of substantial compliance." *Brindley v. Fireman's Insurance Co. of Newark,* 35 N.J.Super 1, 9-10, 113 A.2d 53 (App.Div.1955); *see also National Newark & Essex,* 76 N.J. at 83, 385 A.2d 1216, *quoting Sterling State Bank v. Virginia Surety Co.,* 285 Minn. 348, 353, 173 N.W.2d 342 (1969).

An insurer may waive the provisions of its policy. *Peloso v. Hartford Fire Insurance Co.,* 102 N.J.Super. 357, 367, 246 A.2d 52 (Law Div.1968), *rev'd on other grounds, Peloso,* 56 N.J. 514, 267 A.2d 498. Waiver requires that the insured voluntarily and intentionally waive any of its rights under the policy. *Id.* at 368, 246 A.2d 52; Black's Law Dictionary 1580 (6th ed. 1990). The RTC submits that F & D's failure to formally deny the former's request for an extension of time to file its proof of loss until February 15, 1991 when it made its initial request for an extension on October 30, 1990 constitutes such a waiver.

The facts stated are insufficient to raise a triable issue as to waiver. There is no proof that F & D did anything which waived its rights. F & D asserted its rights at every available opportunity. *See* Affidavit of Mark P. Pessolano, Esq., Exhibit C ("F & D's Letter of 5/30/90") (notifying RTC that bond was cancelled effective February 15, 1990); *id.,* Exhibit E ("F & D's Letter of 11/8/90") ("This response to your letter and our further handling of this matter are not to be construed as an admission of liability under the bond and are without waiver of or prejudice to all of our rights and defenses ..."); *id.,* Exhibit G ("F & D's Letter of 2/15/91") (same). Notwithstanding the fact that in its November 8, 1990 letter, *see* F & D's Letter of 11/8/90, F & D requested additional "information as to when the alleged wrongdoing was discovered" so that it could "fully respond" to the request for an extension to file a proof of loss, there is no indication that the RTC was misled or lulled into inactivity due to F & D's statement. To so find would require the Court to ignore F & D's express denials and reservations contained in the very same letter. Thus, under these facts, an unanswered request for an extension does not constitute waiver.

**\*7** According to *Brindley,* the Court's analysis should not stop here. That case suggests that a technical breach may not prevent coverage as long as there was substantial compliance with the policy requirements. *See also Tell v. Cambridge Mutual Fire Insurance Co.,* 150 N.J.Super. 246, 254 (Dist.Ct.1977)

Not Reported in F.Supp.                                                                Page 6
Not Reported in F.Supp., 1994 WL 475811 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

(technical breach will not prevent coverage where circumstances make strict compliance unreasonable or impossible and the lapse is not due to insured's lack of due diligence). However, as the Court now views New Jersey law, the substantial compliance test is eschewed because of the difference between claims-made policies and occurrence policies.

New Jersey courts strictly construe the time periods for giving notice of loss in claims-made policies. *Zuckerman v. National Union Fire Insurance Co.,* 100 N.J. 304, 324, 495 A.2d 395 (1985). This is so because:

[T]he event that invokes coverage under a 'claims made' policy is transmittal of notice of the claim to the insurance carrier.... Thus, an extension of the notice period in a 'claims made' policy constitutes an unbargained-for expansion of coverage, *gratis,* resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy.

*Id.* at 324, 495 A.2d 395.

By contrast, in an occurrence policy, "the peril insured is the 'occurrence' itself. Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter." *Id.* at 310-311, 495 A.2d 395 (citation omitted). Occurrence policies have a "tail" as there may be coverage beyond the policy period as long as the loss was sustained during the bond period. *Id.* at 311, 495 A.2d 395. Based on this distinction, New Jersey courts have liberally construed notice of loss requirements in occurrence policies.

While New Jersey law on extension of time periods talks in terms of *notice* of loss, and, as discussed *supra,* there is a difference between *notice* and *proof* of loss, the Court finds that the rationale for interpreting time periods for notice of loss are equally as applicable for proof of loss. Thus, the Court must determine whether the instant Bond is a claims-made policy or an occurrence policy to evaluate if the substantial compliance doctrine is available.

What United bargained for was a claims-made policy. Section 3 of the Bond clearly and unambiguously states that the Bond covered losses discovered during the effective period of the Bond. *See Fidelity & Deposit of Maryland v. Hudson United Bank,* 653 F.2d 766, 769 n. 1. That is, the Bond covers losses sustained at any time, provided the losses were discovered during the Bond period. Accordingly, this Court cannot invoke the substantial

compliance doctrine here to remove the RTC from the technical breach of the Bond. Failure to strictly enforce the proof of loss provision as written would blur the distinction between claims-made and occurrence policies. Not only would the purpose of the proof of loss condition be negated and thereby render the provision meaningless, a substantial compliance argument if permitted would, in effect, rewrite the Bond contrary to the intent of the parties as expressed therein. *Last v. West American Insurance Co.,* 139 N.J.Super. 456, 354 A.2d 364 (App.Div.1976) (courts may not rewrite insurance policies to provide better or different coverage than the insured purchased).

CONCLUSION

**\*8** The Court will grant the RTC's motion to reconsider its Opinion of March 14, 1994. The portion of the March 14, 1990 Opinion regarding the RTC and discovery of loss will be vacated.

The Court will also grant F & D's motion for summary judgment. Regardless of when discovery occurred, the untimely submission of the proof of loss is fatal to coverage. No waiver was given. And, because this is a claims-made policy, the Court must strictly construe the time periods established in the Bond. The RTC is unable to overcome the language of the Bond or the state of the law. Thus, as a matter of law summary judgment against the RTC is appropriate.

FN1. Given that the Court finds that discovery could have occurred with Marotta and/or the Board, the Court need not address the RTC's third argument-namely, that any discovery by United's attorney Michael Lerner should be attributed to United because Lerner was an "employee" of the Bank within the meaning of the Bond-at this juncture.

FN2. Moreover, *Zuckerman v. National Union Fire Insurance Co.,* 100 N.J. 304, 322-324, 495 A.2d 395 (1985), indicates that the appreciable prejudice rule is not applicable to claims-made policies, such as the one involved here. *See* discussion *infra* concerning claims-made policies.

D.N.J.,1994.
Resolution Trust Corp. v. Moskowitz
Not Reported in F.Supp., 1994 WL 475811 (D.N.J.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 7
Not Reported in F.Supp., 1994 WL 475811 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**


END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B



Not Reported in F.Supp.2d                                                         Page 1
Not Reported in F.Supp.2d, 2002 WL 2013925 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
LONGPORT OCEAN PLAZA CONDOMINIUM,
INC., Plaintiff,
v.
ROBERT CATO & ASSOCIATES, INC.,
(Consolidated with 02-CV-1724) et al.
and The Window Associates, Inc., et al., Defendants.
**No. CIV.A.00-CV-2231.**

Aug. 29, 2002.

Operator and manager of residential ocean front
condominium brought action against designer and
manufacturer of windows and doors alleging breach
of warranty over products used in renovation project.
Suit was consolidated with suit brought by operator
against general contractor. Manufacturer brought
third party claim against operator's board of trustees.
On operator's motion to dismiss manufacturer's
claim, the District Court, Buckwalter, J., held that:
(1) manufacturer could not assert right of
contribution under New Jersey law against board, and
(2) manufacturer did not have right to
indemnification against board.

Motion granted.

West Headnotes

[1] Contribution 96 ⟵5(5)

96 Contribution
    96k2 Common Interest or Liability
        96k5 Joint Wrongdoers
            96k5(5) k. Common Liability. Most Cited
Cases
Window manufacturer could not assert right of
contribution under New Jersey law against board of
trustees of condominium operator, to condominium
operator's breach of warranty claim over products
used in renovation project, since no personal injuries
were asserted, manufacturer could not be held liable
or hold operator liable as joint tortfeasor, and
contractual duties imposed on manufacturer were in
no way similarly parallel to fiduciary duties imposed
on board. N.J.S.A. § § 2A:53A-, 2A:53A-2,
2A:53A-3.

[2] Indemnity 208 ⟵64

208 Indemnity
    208III Indemnification by Operation of Law
        208k63 Particular Cases and Issues
            208k64 k. In General. Most Cited Cases
Window manufacturer did not have right to
indemnification under New Jersey law against board
of trustees of condominium operator, with respect to
condominium operator's breach of warranty claim
over products used in renovation project, since
manufacturer was not subject to tort liability due to
any fault by board, and relationship between
manufacturer and board was not kind of special legal
relationship that could support claim for common law
indemnification. Restatement, Restitution § 96.

MEMORANDUM

BUCKWALTER.
*1 Presently before the Court is Plaintiff Longport
Ocean Plaza Condominium, Inc.'s ("Longport's")
Motion to Dismiss the Third Party Complaint filed by
Defendant/Third Party Plaintiff EFCO Corporation,
Inc. ("EFCO") against Jack Cooney, Harvey
Brodsky, George Hamid, Robert Ford, Albert
Kofsky, Lorraine Robins, Neil Glickman, and Donald
Marino, in their capacity as the 1996-98 Board of
Trustees of Longport Ocean Plaza Condominium
Association ("the Board" or the "Third Party
Defendants"). For the reasons stated below, the
Motion is GRANTED.

I. FACTS AND PROCEDURAL HISTORY

The facts of this dispute regarding a construction-
renovation project were set forth by the Court in its
Memorandum granting summary judgment in favor
of EFCO in the first lawsuit filed by Longport (the
"first lawsuit"). *See Longport Ocean Plaza
Condominium, Inc. v. Robert Cato & Assoc.,* 2002
WL 436742 (E.D.Pa. Mar.18, 2002). Therefore, the
Court need not repeat them fully here. In that action,
docketed at 00-CV-2231, Longport asserts claims for
breach of construction contracts and warranties
therein against its general contractor, Robert Cato &
Associates, Inc. ("Cato"). Cato, in turn, asserts
various tort and contract claims against numerous
additional parties. Until March 2002, those parties

included EFCO, the designer and manufacturer of windows and doors used in the renovation project. However, on March 18, 2002, the Court granted summary judgment in favor of EFCO on the basis of the economic loss doctrine, since Cato's claims against EFCO sounded only in tort, and the damages sought did not include harm to "other property." *Id.* The Court also granted summary judgment on other parties' claims for contribution and indemnification against EFCO, since these claims were premised upon EFCO's status as a tortfeasor. *Id.*

Subsequently, Longport filed another action pertaining to the same dispute, asserting contract-based claims for breach of warranty directly against EFCO (the "second lawsuit"). The second lawsuit, docketed at 02-CV-1724, was consolidated with the first lawsuit, as reflected in the caption above. EFCO then filed a Third Party Complaint asserting claims for contribution and indemnification against the Board. EFCO asserts, *inter alia,* that the Board intentionally, recklessly or negligently failed to discharge its responsibilities to Longport and its individual condominium owners when it failed to properly evaluate the scope of the renovation project and failed to hire an appropriate contractor to manage the project. As a result, EFCO contends, it has wrongfully incurred damages and costs associated with the instant litigation.

Longport now moves to dismiss EFCO's complaint against the Board, arguing that EFCO may not seek contribution or indemnification as a matter of law. [FN1]

FN1. Longport also contends that EFCO should be judicially estopped from asserting its claims for contribution and indemnification. The New Jersey Supreme Court recently "summarized the contours" of the judicial estoppel doctrine: "The purpose of the judicial estoppel doctrine is to protect 'the integrity of the judicial process.' A threat to the integrity of the judicial system sufficient to invoke the judicial estoppel doctrine only arises when a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding." *Ali v. Rutgers,* 166 N.J. 280, 287, 765 A.2d 714, 718 (2000) (footnotes and citations omitted). The doctrine is "designed to prevent litigants from 'playing fast and loose with the courts.' " *Cummings v. Bahr,* 295 N.J.Super. 374, 387, 685 A.2d 60, 67 (App.Div.1996)

(quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 358 (3d Cir.1996).

At a minimum, EFCO's claim for contribution comes very close to the type of conduct that the doctrine of judicial estoppel is intended to prevent. In the first lawsuit, EFCO argued, and this Court agreed, that (1) in order for EFCO to be held liable under a theory of contribution, it must be a joint tortfeasor, and (2) because it could not be a joint tortfeasor by operation of the economic loss doctrine, summary judgment was appropriate as to the contribution claims against it. Now, in connection with the second lawsuit, EFCO asserts precisely the opposite: that, although it and the Board are not joint tortfeasors, it may nonetheless *assert* a claim for contribution against the Board.

However, the New Jersey Supreme Court also cautioned that judicial estoppel is an "extraordinary remedy," which should be invoked only "when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Ali,* 166 N.J. at 288, 765 A.2d at 718 (quoting *Ryan Operations,* 81 F.3d at 365). Therefore, because EFCO's claims for contribution and indemnification may not be maintained as a matter of law on their merits, the Court not need invoke the doctrine of judicial estoppel.

## II. LEGAL STANDARD

*2 Under Fed.R.Civ.P. 12(b)(6), the party moving for dismissal has the burden of proving that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). To prevail, the movant must show 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957). In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must only consider those facts alleged in the complaint. *See ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994). The reviewing court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The pleader must provide sufficient information to outline the elements

of the claim, or to permit inferences to be drawn that these elements exist. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### III. DISCUSSION

#### A. Contribution

[1] Longport argues that EFCO may not assert a claim for contribution against the Third Party Defendants because, by its own admission, it cannot be a joint tortfeasor in this case. Under the New Jersey Joint Tortfeasor Contribution Law, the right of contribution "exists among joint tortfeasors." N.J Stat. Ann. § 2A:53A -2 (2001). More specifically, the right arises when "injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors." NJ Stat. Ann. § 2A:53A-3 (2001). In such circumstances, one tortfeasor is "entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share." *Id.* A tortfeasor is one of "two or more persons jointly or severally liable *in tort.*" N.J Stat. Ann. § 2A:53A-1 (2001)(emphasis added).

Given the rather straightforward language of the statute, it is not surprising that courts dismiss contribution claims when the party against whom the claim is asserted may not, as a matter of law, be held liable as a joint tortfeasor. *See, e.g., Resolution Trust Corp. v. Moskowitz*, 845 F.Supp. 247, 251 (D.N.J.1994) (dismissing cross-claims for contribution against defendant because the only claim asserted against it by plaintiff was grounded in contract, not tort), *vacated, in part, on other grounds*, 1994 WL 475811 (D.N.J. Aug.31, 1994). EFCO advanced this exact argument in its motion to dismiss the claims and cross-claims for contribution against it in the first lawsuit. The Court agreed with this reasoning. *See Longport Ocean Plaza Condominium, Inc. v. Robert Cato & Assoc.*, 2002 WL 436742 at *7 (E.D.Pa. Mar.18, 2002).

As the term "*joint* tortfeasors" and the language of the statute indicate, both the party against whom a claim for contribution is asserted as well as the party *asserting* the claim must be tortfeasors. However, the only claims asserted against EFCO are grounded in contract, and EFCO itself admits that it may not be held liable as a joint tortfeasor in this case. Therefore, just as contribution claims *against* EFCO may not be maintained, contribution claims *by* EFCO may also not be maintained.

**\*3** EFCO argues that the New Jersey Supreme Court's decision in *Dunn v. Praiss*, 139 N.J. 564, 656 A.2d 413 (1995), is controlling, and permits a claim for contribution in this case. The Court disagrees. In that case, a physician-provider who was guilty of medical malpractice sought contribution from his health maintenance organization ("HMO") on the basis of the HMO's independent breach of contractual duty to the patient. The court, carving out an exception to the general rule that contribution must be sought between parties jointly liable in tort, held that such claims were permitted. However, it did so carefully limiting its holding based on (1) the harm suffered and (2) the particular nature of the breach of contractual duty in that case. The instant case is dissimilar from *Dunn* on these matters, and therefore *Dunn* is inapposite.

First, the *Dunn* court limited its holding to cases in which the harm suffered by the plaintiff was personal injury. The court defined the question before it as: "Can there be contribution between a party whose breach of contract is the proximate cause *of personal injury* and another party whose negligence is a proximate cause of the same injury?" *Dunn*, 139 N.J. at 575, 656 A.2d at 419 (emphasis added). It went on to "agree ... that it is appropriate *in this case* to apportion responsibility based on a breach of contract that is alleged to have proximately caused *personal injury.*" *Dunn*, 139 N.J. at 577, 656 A.2d at 420 (emphasis added). In the instant case, there is no similar allegation of personal injury by any party.

Second, the court stressed the fact that the HMO's contractual duty was closely analogous to the tort duties imposed on the physician-provider. The court held that "[i]n the context of this case in which the breach of contractual duty appears to parallel closely the fault-based duty of care imposed on a health care provider, it is appropriate to allow for contribution ... In this case, the alleged failure of the HMO is more like a negligent act." *Id.* In the case at bar, the contractual duties imposed on EFCO are in no way similarly parallel to the fiduciary duties imposed on the Board.

As a result, EFCO's claims for contribution against the Board must be dismissed.

### B. Indemnification

**\*4** [2] Longport also contends that EFCO may not assert a claim for indemnification against the Board because EFCO (1) cannot be liable in tort; and (2) does not have a "special legal relationship" with the Board necessary to support such a claim. Common law indemnification "is available under New Jersey law to a person who is not at fault, but has become responsible *in tort* for the conduct of another." [FN2] *Ronson v. Talesnick,* 33 F.Supp.2d 347, 357 (D.N.J.1999) (emphasis added). *See Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 N.J. 55, 80, 159 A.2d 97, 110 (1960);* Restatement, Restitution § 96 (1937) (stating that "[a] person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity"). Furthermore, common law indemnification must be based on a "special legal relationship between the parties [that] creates an implied right of indemnification," since the party asserting such a claim must only be liable in a "constructive, secondary or vicarious" manner. *Allied Corp. v. Frola,* 730 F.Supp. 626, 639 (D.N.J.1990). *See Moskowitz,* 845 F.Supp. at 251-52;* Ruvolo v. United States Steel Corp.,* 133 N.J.Super. 362, 367, 336 A.2d 508, 510-11 (Law Div.1975).

> FN2. Contractual indemnification is not asserted by EFCO.

In order to assert its claim for indemnification, then, EFCO must be subject to tort liability that is actually the Board's fault. However, the only claims asserted against EFCO are contract claims. Indeed, in connection with the first lawsuit, EFCO argued, and the Court agreed, that it could not be held liable in tort under the economic loss doctrine. As a matter of law, then, EFCO cannot be subject to tort liability for the Board's conduct. As a result, EFCO's claims for indemnification must be dismissed on this basis alone.

EFCO cites *Henry Heide, Inc. v. WRH Products Co.,* 766 F.2d 105 (3d Cir.1985) and cases cited therein for the proposition that a defendant may possess a claim for indemnification against a co-defendant even if the plaintiff's claim against it is based solely on contract or quasi-contract under the U.C.C. *See Henry Heide,* 766 F.2d at 112. However, these cases - like *Dunn*-demonstrate only a limited exception to the general rule that is not applicable here. They permit such indemnification only "between parties in a product distribution chain." *Id.* In this case, the Board is obviously not part of such a chain.

Just as importantly, as noted above, in order to maintain a claim for common law indemnification, EFCO must also demonstrate a special legal relationship with the Board such that a claim for common law indemnification is proper. The types of relationships that New Jersey courts have held fulfill this requirement are those of lessor-lessee, bailor-bailee, principal-agent, employer-employee, and union-member. *See Moskowitz,* 845 F.Supp. at 251-52;* Allied Corp.,* 730 F.Supp. at 639 n. 7. However, EFCO had no such relationship with the Board. Longport, by and through the Board, contracted with Cato to oversee the renovation project. Cato then contracted with a third party to supply and install new windows and doors. That party then arranged to use EFCO products. Regardless of the existence of any warranties which may run from EFCO to Longport, the relationship between the EFCO and the Board is extremely attenuated, and it is not a special legal relationship that supports a claim for common law indemnification.

As a result, EFCO's claims for indemnification against the Board must similarly be dismissed.

### IV. CONCLUSION

**\*5** EFCO may not maintain its claims for contribution or indemnification against the Board. As a result, its Third Party Complaint based on these claims is properly dismissed. An appropriate Order follows.

### ORDER

AND NOW, upon this 29th day of August 2002, upon consideration of Plaintiff Longport's Motion to Dismiss EFCO's Third Party Complaint (Docket No. 208), EFCO's opposition thereto (Docket No. 52), and Longport's Reply (Docket Nos. 55 and 56), it is hereby ORDERED that Longport's Motion is GRANTED, and EFCO's Third Party Complaint is DISMISSED.

As a result, the Third Party Defendants' Motion to Enlarge the Time for Filing An Answer or Otherwise Move (Docket No. 54) and the Third Party Defendants' Motion to Dismiss EFCO's Third Party Complaint (Docket No. 57) are DENIED AS MOOT.

Not Reported in F.Supp.2d                                                                        Page 5
Not Reported in F.Supp.2d, 2002 WL 2013925 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

E.D.Pa.,2002.
Longport Ocean Plaza Condominium, Inc. v. Robert
Cato & Associates, Inc.
Not Reported in F.Supp.2d, 2002 WL 2013925
(E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:00cv02231 (Docket) (May. 01, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C



Not Reported in F.Supp.                                                                                                          Page 1
Not Reported in F.Supp., 1990 WL 74477 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

[H]
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.
NEW JERSEY OFFICE SUPPLY, INC., Plaintiff,
v.
Allan FELDMAN and Paper Mart, Inc., Defendants.
Allan FELDMAN, Third Party Plaintiff,
v.
Craig C. SERGEANT, et al., Third Party Defendants.
**CIV.A. No. 89-3990.**

June 4, 1990.

Donald Goldman, Harkavy, Goldman, Goldman &
Caprio, West Orange, N.J., for defendant and third
party plaintiff Allan Feldman.
Morrill J. Cole, Cole, Schotz, Bernstein, Meisel &
Forman, Hackensack, N.J., for third party defendants
Forgione, Barry, Hoppock, Glaser, Gray, Gentile,
Heyman, Flynn, Bimonte, Dresher, Post, Darr, Wolff,
Bouthllier and O'Hare.
Roger B. Kaplan, Wilentz, Goldman & Spitzer,
Woodbridge, N.J. -and- Irwin Warren, Weil, Gotshal
& Manges, New York City, for plaintiff and third
party defendants, Sergeant, Hempstead, Raos,
Landuyt, Mooney, White, Hanson Indus., and Cont.
Ill.
Lucille Rosano, Fox & Fox, Newark, N.J., for third
party defendant Irving Lester.
Peter R. Sarasohn, Ravin, Sarasohn, Cook,
Baumgarten, Fisch & Baime, Roseland, N.J., for third
party defendant Bernard Fingerhut.
David J. Reich, Wolff & Samson, Roseland, N.J., for
third party defendant Shirley Weiner.
William F. Thompson, Jr., Ralf Gilbert Law Offices,
Lawrenceville, N.J., for third party defendant Jack
Ringel.
Albert S. Lipkin, third party defendant pro se.
Samuel Feldman, Orloff, Lowenbach, Stifelman &
Siegel, Roseland, N.J., for defendant Paper Mart, Inc.

OPINION

WOLIN, District Judge.
**\*1** Before the Court is a consolidated motion for
dismissal by all third party defendants named in
Counts One, Two and Three of the Third Party
Complaint. [FN1] Defendants collectively assert that
Feldman's claims for contribution and

indemnification under federal and state racketeering
statutes, and for indemnification and contribution
under common law claims of fraud, conversion and
breach of fiduciary duty, are barred as a matter of
law. The Court agrees. For the reasons that follow,
the Court will dismiss the allegations contained in
Counts One, Two and Three with the exception of
Feldman's claim for contribution for any liability
under the common law claims recited in Counts Nine
through Eleven of the Complaint. Although that
claim is dismissable for lack of factual specificity,
Feldman will be given a reasonable opportunity to
cure the defect, if he can, by amendment of the
complaint.

Also before the Court is a motion by third party
defendant Fingerhut for attorney's fees pursuant to
Rule 11 of the Federal Rules of Civil Procedure.
That motion will be denied.

I. BACKGROUND

On September 20, 1989, plaintiff New Jersey Office
Supply, Inc. ("NJOS") filed a complaint ("the
Complaint") against defendants Allan Feldman and
Paper Mart, Inc. seeking damages for alleged
violations of the Racketeer Influenced and Corrupt
Organization Act, 18 U.S.C. § 1961 et seq.
("RICO"), the New Jersey Anti-Racketeering Act,
N.J.Stat.Ann. 2C:41-1 et seq. ("2C RICO"), and for
common law fraud, conversion and breach of
fiduciary duty. NJOS alleges that Feldman
committed fraud while holding the position of Chief
Executive Officer of NJOS from 1986 to August
1989. The specific fraudulent schemes alleged to
have occurred over that time period, include: 1)
receipt of illegal kickbacks from defendant Paper
Mart; 2) diversion of cash proceeds from NJOS to
personal use; 3) barter of NJOS property in exchange
for personal benefits. As a result of the schemes,
Feldman is alleged to have systematically converted
more than one million dollars from NJOS to his
personal use. Complt., ¶¶ 1, 2.

Feldman filed an Answer, Counterclaim and Third
Party Complaint on December 27, 1989. The Third
Party Complaint impleads thirty-eight defendants,
primarily current and former employees of NJOS or
its parent company, Hanson Industries, Inc. Only
the first three counts are the subject of this motion.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1990 WL 74477 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

Counts One and Two assert that Feldman is entitled to contribution from each defendant under one of the following theories: the defendants "initiated and authorized" his conduct, or his acts were "done with their knowledge and approval," or the defendants substantially benefitted from his wrongdoing. Count Three seeks indemnification from each defendant on the ground that Feldman's liability is of a derivative or secondary nature.

The Court will address the issues of contribution and indemnification by the third party defendants according to the order the counts are asserted against Feldman in the Complaint.

II. DISCUSSION

A. *Counts One through Four*

**\*2** The first four counts of the Complaint allege violations of the federal RICO statutes. The Court finds that there is no right to contribution or indemnification under the RICO statutes and will dismiss the Third Party Complaint in so far as it seeks indemnification or contribution under the RICO statutes.

1. *Contribution*

The right to contribution under a federal statute may arise: through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, through the power of federal courts to fashion a federal common law of contribution. *Texas Industries v. Radcliff Materials,* 451 U.S. 630, 638, 101 S.Ct. 2061, 2066 (1981); *Northwest Airlines v. Transport Workers,* 451 U.S. 77, 90, 101 S.Ct. 1571, 1580 (1981).

Courts that have applied this analysis to a defendant's right to contribution for violations of RICO have determined that no such right exists. *Boone v. Beacon Bldg. Corp.,* 613 F.Supp. 1151 (D.N.J.1985); *see also, Minpeco, S.A. v. Conticommodity Services, Inc.,* 677 F.Supp. 151 (S.D.N.Y.1988); *In re Olympia Brewing Company Securities Litigation,* 643 F.Supp. 597 (N.D.Ill.1987); *Jacobson v. Western Montana Production Credit Ass'n,* 643 F.Supp. 391 (D.Mont.1986); *Seminole Electric Cooperative, Inc. v. Tanner,* 635 F.Supp. 582 (M.D.Fla.1986); *Miller v. Affiliated Financial Corp.,* 624 F.Supp. 1003 (N.D.Ill.1985).

Chief Judge Gerry, in a well-reasoned opinion in the seminal case, was guided by the reasoning set forth in *Texas Industries* where the Supreme Court rejected defendant's claim for contribution under the Clayton Anti-Trust Act. *Boone,* 613 F.Supp. at 1154. The Court found the statutory scheme of the Clayton Act sufficiently similar to the civil provisions of RICO ("civil RICO") to warrant the same result. Not only does the language of civil RICO closely track that of § 4 of the Clayton Act, but both statutory schemes provide for assessment of treble damages and attorneys' fees, indicative of "an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." *Boone,* 613 F.Supp. at 1154 (quoting *Texas Industries,* 451 U.S. at 639, 101 S.Ct. at 2066). Judge Gerry also noted, as the Court had in *Texas Industries,* that "the absence of any reference to contribution in the legislative history or of any possibility that Congress was concerned with softening the blow on joint wrongdoers in this setting makes examination of other factors unnecessary." *Id.* He concluded that Congress did not intend to create an implied right where the express right was not created. *Boone,* 613 F.Supp. at 1155.

This Court agrees with Judge Gerry and does not find any affirmative creation by Congress of a right to contribution under RICO. Nor, is this Court inclined to fashion a right to contribution as an exercise of the court's inherent power to develop substantive law under the rationale that it is "necessary to protect uniquely federal interests." *Texas Industries,* 451 U.S. at 640, 101 S.Ct. at 2067 (citations omitted). It is obvious to the Court that contribution among RICO wrongdoers does not involve "the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority." *Texas Industries,* 451 U.S. at 642, 101 S.Ct. at 2068 (citation omitted). Thus, the Court finds there is no right to contribution under RICO. The Third Party Complaint will be dismissed to the extent that it seeks contribution from defendants for any liability under RICO.

**\*3** 2. *Indemnification*

The right to indemnification under a federal statute is governed by the same analysis as that which applies to the right to contribution. *Boone,* 613 F.Supp. at 1154; *In re Olympia Brewing Co.,* 674 F.Supp. at 616-17. To determine whether a federal statute implicitly creates a particular private right not expressly provided for, the intent of Congress is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 3
Not Reported in F.Supp., 1990 WL 74477 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

controlling.  *Northwest Airlines,* 451 U.S. at 91, 101
S.Ct. at 1580;  *see also Texas Industries,* 451 U.S. at
638-39, 101 S.Ct. at 2066.

Congressional intent may be discerned from several
sources:  the legislative history and purposes of the
statute;  a determination of the identity of the class
intended to benefit from the legislation;  the existence
of express statutory remedies deemed adequate to
serve the legislative purpose;  and relief available
under state law.  *Daily Income Fund v. Fox,* 464 U.S.
523, 536, 104 S.Ct. 831, 838 (1984).  Applying these
factors to the RICO statute reveals no suggestion of a
right to indemnity in favor of RICO defendants.  It
does not require a constitutional scholar to determine
that RICO was not enacted to benefit a special class
consisting of RICO defendants;  RICO was enacted
to protect society from their destructive conduct.
Nor may the Court infer that the treble damages
provision indicates anything other than Congress'
intent to punish and not to diminish the liability of
wrongdoers.  *Texas Industries,* 451 U.S. at 639, 101
S.Ct. at 2066.  The Court concludes that to allow
Feldman to seek indemnification would contravene
the clear Congressional intent displayed by the RICO
statutory scheme.  The Third Party Complaint will
be dismissed to the extent that it seeks
indemnification for any liability under RICO.


### B. *Counts Five through Eight*

The second four counts of the Complaint allege
violations of the New Jersey's anti-racketeering
statute, 2C RICO.  Although New Jersey courts have
not faced the issue of whether there is a right to
contribution or indemnification for violations of 2C
RICO, this Court anticipates that when the occasion
arises they would reject such a notion.  2C RICO
was patterned after and virtually mirrors the federal
RICO statutes.  *State v. Passante,* 225 N.J.Super.
439, 441 (Law Div.1987);  *see also Curley v.
Cumberland Farms Dairy, Inc.,* 728 F.Supp. 1123,
1138-39 (D.N.J.1989) (denying injunctive relief
under 2C RICO because injunctive relief is not
available under federal RICO and the "New Jersey
RICO provisions parrot those of the federal statute").
The Court sees no reason not to apply the same
reasoning and analysis it applied in the federal
context and reaches the same conclusion in the state
context. [FN2]  Because the New Jersey Legislature did
not intend to create a right to contribution or
indemnification under 2C RICO, the Third Party
Complaint will be dismissed in so far as it seeks
contribution or indemnification for liability under 2C

RICO.


### C. *Counts Nine through Eleven*

**\*4** The remaining counts of the Complaint set forth
causes of action against Feldman for fraud,
conversion and breach of fiduciary duty.  Each of the
common law causes of action is premised upon
allegations of intentional wrongdoing by Feldman.
Thus, Feldman's claim for indemnification must fail,
as a matter of law, because an intentional wrongdoer
cannot be indemnified.  In addition, Feldman has
failed to state a legally sufficient claim for
contribution.

### 1. *Indemnification*

In Count Three of the Third Party Complaint,
Feldman seeks indemnification from third party
defendants on the ground that the "primary wrongful
conduct," if any, was that of movants, while his
liability, if any, was only of a "derivative or
secondary" nature.  It is well settled under New
Jersey law that "[t]o be entitled to indemnification, as
one who is secondarily or vicariously liable, a party
must be without fault,"  *Promaulayko v. Johns
Manville Sales Corp.,* 116 N.J. 505, 511 (1989);
*Ramos v. Browning Ferris Industries,* 103 N.J. 177,
190-91 (1986);  or must have a contractual
understanding that provides the right to indemnity.
*Cartel Capital Corp. v. Fireco,* 81 N.J. 548, 566
(1980) ("[i]t would be inequitable to permit an active
wrongdoer in the absence of a contractual
understanding between the parties to obtain
indemnity from another wrongdoer and thus escape
any responsibility").

In the case at bar, Feldman cannot recover under
either theory.  There is no contract alleged that
would entitle him to indemnification.  Nor, can he
recover under a theory of implied indemnity.  To
raise the inference that a right to indemnification
exists, Feldman would have to demonstrate:  1) the
existence of a special relationship between himself
and the movants;  and 2) that he is without fault, *i.e.,*
that his liability is merely vicarious.  *Ramos,* 103
N.J. at 188-90.  Feldman has neither alleged a
special relationship that would render him vicariously
liable for any conduct by movants, nor the facts to
support such a claim.

Moreover, he has not alleged that he is without fault.
Indeed, he cannot.  Feldman can only be found
liable, and then seek indemnification, if he acted with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                            Page 4
Not Reported in F.Supp., 1990 WL 74477 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

the intent to defraud NJOS and convert its property to his own use;  the requirement of scienter is common to each count.   As an intentional wrongdoer, he is not the kind of passive or vicarious actor generally entitled to indemnity.   Nor has Feldman raised any equitable considerations that require a different result.   For all these reasons, the Court will dismiss the Third Party Complaint in so far as it seeks indemnification for any liability under the common law claims contained in Counts Nine through Eleven.

2. *Contribution*

In Counts One and Two of the Third Party Complaint Feldman alleges that, if found liable, he is entitled to contribution from each defendant under one of the following theories:  the defendants "initiated and authorized" his conduct, or his acts were "done with their knowledge and approval," or the defendants "substantially benefitted" from his wrongdoing. These allegations, however, fail to set forth any basis upon which Feldman may receive contribution from movants for his intentional torts of fraud, conversion, and breach of fiduciary duty.   They are insufficient, as a matter of law, and require dismissal.

**\*5** The Joint Tortfeasors Act establishes a right to contribution among joint tortfeasors.   N.J.Stat.Ann. § 2A:53A-2 (West 1987).   To state a legally sufficient claim for anticipatory relief, that is prior to a determination of liability and actual payment, "the party asserting [the right to contribution] must allege and prove that the party against whom he makes it is a joint tortfeasor within the meaning of the act." *Mijon v. Acquaire,* 51 N.J.Super 426, 439-40 (App.Div.), *cert. denied,* 28 N.J. 146 (1958);  *see also* Sattelberger v. Telep, 14 N.J. 353, 367 (1954) (the onus of proof of the common burden is on the person demanding a share of the burden).   Feldman has failed to carry his burden.

Not only has Feldman neglected to allege that any of the third-party defendants were joint tortfeasors with him, but he has failed to plead with the particularity required under Rule 9(b) of the Federal Rules of Civil Procedure.   To establish joint liability Feldman is required to plead more than mere knowledge by movants of his wrongdoing. "A person is liable with another if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other...." *Judson v. Peoples Bank & Trust Co.,* 25 N.J. 17, 29 (1957) (quotations and citation omitted).   Mere inaction is not substantial assistance. *Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793, 799-800 (3d Cir.),

*cert. denied,* 439 U.S. 930, 99 S.Ct. 318 (1978); *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 886-89 (3d Cir.1975).

He must plead more than the mere fact that movants "substantially benefitted" from his wrongdoing, or that his wrongdoing was "initiated and authorized" by movants.   Allegations describing fraud must contain detail, including specific conduct or individual acts which would entitle him to seek contribution.   Rule 9(b) provides,

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Fed.R.Civ.P. 9(b).   Third party defendants have been given no notice of the precise misconduct with which they are charged that gives rise to any liability under fraud, conversion or breach of fiduciary duty.   Group allegations without any factual recitations are insufficient as a matter of law. *Saporito v. Combustion Engineering, Inc.,* 843 F.2d 666, 675 (3d Cir.1988).

Although Counts One and Two of the Third Party Complaint are dismissable for lack of factual specificity, Feldman should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint. *District Council 47, American Federation v. Bradley,* 795 F.2d 310, 316 (3d Cir.1986).   Although leave to amend is granted freely, *see* Fed.R.Civ.P. 15, it should not be interpreted as license to replead insufficient allegations.   Without commenting on the merits of Feldman's claims, the Court remains dubious, however, as to Feldman's ability to state a claim for contribution against a number of third party defendants.   For example, Feldman has sued the estate of Gerald Weiner despite the fact that NJOS seeks recovery for Feldman's wrongdoing in his capacity of and exclusively during his tenure as NJOS' Chief Executive Officer, a period of time which followed the death of Weiner.   He has also sued four officers and/or directors of Hanson Industries, Inc., Sergeant, Hempstead, Landuyt and Raos, despite the fact that, according to his own pleadings, Hanson did not purchase NJOS until January 1988, *well after* the alleged schemes began. Yet, Feldman has alleged that the Hanson executives "initiated" the wrongdoing.

**\*6** Nevertheless, the Court will grant Feldman leave to amend the third Party Complaint within 21 days of this order, however, application for dismissal of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                           Page 5
Not Reported in F.Supp., 1990 WL 74477 (D.N.J.)
**(Cite as: Not Reported in F.Supp.)**

action may be made by third party defendants if a timely amendment is not forthcoming within that time. If Feldman does not wish to amend, he may file an appropriate notice with the Court asserting his intent to stand on the complaint, at which time an order to dismiss will be entered.

#### D. *Request for Sanctions*

Third party defendant Fingerhut has requested the Court to impose sanctions against counsel for Feldman because the Third Party Complaint is devoid of factual background in support of the allegations against the thirty-eight third party defendants. Moreover, Fingerhut contends that the claims for indemnification and contribution were groundless and that a cursory review of the applicable law would have revealed Feldman's lack of entitlement. Although the Court partially agrees with Fingerhut assertions, no sanctions will be imposed at this time.

This Court is cognizant of the Third Circuit's caution that "Rule 11 is intended for only exceptional circumstances." *Morristown Daily Record v. Graphic Communications Union,* 832 F.2d 31, 32 n. 1 (3d Cir.1987). A review of the record does not reveal this to be an exceptional case. Contrary to Fingerhut's assertions, Feldman's claims may not be entirely groundless. Although the Court has held that there is no right to contribution or indemnification under both federal and 2C RICO, no New Jersey court has addressed the availability of those rights under 2C RICO. The request for contribution under 2C RICO cannot be considered contrary to established law and therefore irresponsible pleading. The Court has provided Feldman the right to replead his request for contribution for liability under the common law counts, Nine through Eleven. Should Feldman accept the Court's offer to amend and fail to replead with sufficient particularity pursuant to Rule 9(b), Fingerhut, or any other third party defendant, is free to reassert a claim for sanctions at that time.

### III. CONCLUSION

For the reasons provided herein, the Court will dismiss all the allegations contained in Counts One, Two and Three of the Third Party Complaint with the exception of Feldman's claim for contribution for any liability under the common law claims recited in Counts Nine through Eleven of the Complaint. Although that assertion is dismissable for lack of

factual specificity, Feldman will be given 21 days from the date of this order to cure the defect, if he can, by amendment of the complaint. The motion for sanctions brought by third party defendant Fingerhut is denied without prejudice to reassertion at a future date.

An appropriate order is attached.

### ORDER

In accordance with an Opinion of this Court filed herewith,

It is on this 4th day of June, 1990

ORDERED that all allegations contained in Counts One, Two and Three of the Third Party Complaint are dismissed with prejudice as to all Third Party Defendants, with the exception of Third Party Plaintiff Feldman's claim for contribution for any liability under the common law claims recited in Counts Nine through Eleven of the original Complaint; and it is further

**\*7** ORDERED that Third Party Plaintiff shall have 21 days from the date of this Order to cure all pleading defects, if he can, by amendment of the Third Party Complaint; and it is further

ORDERED that third party defendants may bring an application for dismissal if a timely amendment is not forthcoming within that time; and it is further

ORDERED that if Third Party Plaintiff files an appropriate notice with the Court asserting his intent to stand on the Third Party Complaint, an Order to dismiss will be entered; and it is further

ORDERED that Third Party Defendant Fingerhut's motion for sanctions is denied without prejudice to reassertion at a future date.

FN1. Thirty-three defendants are named in the first three counts of the Third-Party Complaint. All defendants have joined in this consolidated motion with the single exception of Vincent J. Mamone. No appearance has been entered for Mr. Mamone, nor does it appear that he was sent the Magistrate's Case Management Order of April 9, 1990 in regards to the consolidation of third-party defendants' motions.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> FN2. Feldman argues that the New Jersey
> Joint Tortfeasors Contribution Law, ("Joint
> Tortfeasors Act") N.J.Stat.Ann. 2A:53A-1 *et
> seq.* should be construed to permit
> contribution among racketeering violators.
> The Court finds this argument without merit.
> To interpret the Joint Tortfeasors Act as
> Feldman suggests would put it in direct
> conflict with the penalty and other penal
> sections of 2C RICO.   That reading would
> eviscerate the statute's dual objectives of
> deterrence and punishment.   This Court will
> not render impotent the New Jersey
> legislature's most important weapon against
> organized crime.

D.N.J.,1990.
New Jersey Office Supply, Inc. v. Feldman
Not Reported in F.Supp., 1990 WL 74477 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2:89cv03990 (Docket) (Sep. 20, 1989)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.