

**M<sup>c</sup>CARTER ENGLISH**
ATTORNEYS AT LAW

July 2, 2008

**BY ELECTRONIC FILING AND BY REGULAR MAIL**

Honorable Michael A. Shipp
U.S. Magistrate, United States District Court
Martin Luther King Building & US Courthouse
50 Walnut Street
Newark, NJ 07102

David R. Kott
Partner
T. 973.622.4444
F. 973.624.7070
dkott@mccarter.com

Re: <u>Walsh Securities, Inc. v. Cristo Property Management, et al.</u>
United States District for the District of New Jersey
Civil Action No. 97-3496 (DRD)

Dear Judge Shipp:

We represent the defendant Commonwealth Land Title Insurance Company in this case.

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

I write about a discovery matter. Specifically, by this letter, pursuant to Rules 30(d)(1) and 26(b)(2), we request that the Court allow the defendants to depose plaintiff for longer than seven hours.

We have served upon the plaintiff the enclosed Rule 30(b)(6) Notice to Take Oral Deposition of Plaintiff Walsh Securities, Inc. The deposition of plaintiff Walsh Securities, Inc. is scheduled for July 16, 2008. For the reasons set forth below, we believe that more than one day/seven hours is needed "to fairly examine" the deponent produced by Walsh Securities, Inc. for the deposition.

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

By way of background, the Third Amended Complaint filed by the plaintiff in this case is approximately 40 pages, and includes over 110 allegations. In fact, a Motion was just filed seeking leave to file a Fourth Amended Complaint adding three new counts to Walsh's case. Generally, the Complaint alleges that a fraud occurred with respect to the issuance of approximately 223 residential mortgages. The Third Amended Complaint further alleges that various defendants played different roles in the fraud. Specifically, the Third Amended Complaint alleges that defendants Cristo Property Management, Ltd. and National Home Funding engaged in fraud in originating mortgages that were sold by National Home Funding to Walsh Securities. Another Group of defendants -- all appraisers -- were alleged to have participated in the fraud. Yet another group of defendants -- all attorneys -- were also alleged to have participated in the fraud. Yet another group of defendants -- all realtors -- were alleged to have participated in the fraud. In addition, certain individuals who ultimately purchased the property (defendants Capital Assets Property Management, LLC/Gary Grieser) after the mortgages were issued are

WILMINGTON

ME1 7475162v.1

Honorable Michael A. Shipp
July 2, 2008
Page 2

alleged to have participated in the fraud. The Third Amended Complaint asserts RICO and common-law fraud causes of action against those defendants, as well as against defendant Coastal Title Agency, an insurance agency that is alleged to have issued certain title insurance policies insuring the mortgages at issue.

In addition, the Third Amended Complaint asserts a breach of contract cause of action against National Home Funding, which originated the mortgages and sold them to the plaintiff. The Third Amended Complaint also asserts a claim for breach of contract against the title insurance defendants, Commonwealth Land Title Insurance Co., Fidelity National Title Insurance Co. of New York and Nations Title Insurance of New York. The Third Amended Complaint also alleges that certain of the attorneys were negligent in connection with legal services provided relating to the real estate closings and title work. We understand from discovery exchanged to date that plaintiff alleges that there are approximately 220 loans that were purchased by the plaintiff from defendant National Home Funding which are part of this lawsuit. It is also our understanding from the discovery to date that all of those loans, or virtually all of those loans, were sold by the plaintiff to third parties. Specifically, the loans were packaged as securitizations and sold as securities, or were sold to other lenders by the plaintiff for other lenders to hold in their portfolios. In fact, there was litigation brought by one of the purchasers of mortgages from Walsh (an entity known as Cityscape) against Walsh, which went to Judgment in the Southern District of New York.

On damages, Walsh has indicated that in this case it claims a variety of damages -- damages for loan losses, for lost interest, for lost residuals and securities, for an investment made by Robert Walsh in the company, and for legal fees. It also alleges that at the time that the mortgage frauds became public, it had agreed to be acquired by a company called Resource Bankshares (of South Carolina). Walsh seeks damages in excess of $640 million in this lawsuit, as follows:

| Amount | Description |
|---|---|
| $ 24,000,000 | in loan losses |
| $ 50,000,000 | in lost interest |
| $ 7,500,000 | in lost residuals and securities |
| $ 6,000,000 | in RW investment |
| $ 5,000,000 | in legal fees |
| $420,000,000 | in losses resulting from the failure of Walsh Securities to be acquired by Resource Bankshares |
| $131,000,000 | in interest on the losses resulting from the failure of Walsh Securities to be acquired |
| $643,500,000 | |

Honorable Michael A. Shipp
July 2, 2008
Page 3

There is no question that this is an extremely complex case, and also a case in which the plaintiff seeks significant damages. Among the liability issues are:

1. For each of the 223 loans at issue, were any employees of Walsh Securities, Inc. (including its senior management) involved in the fraud or aware of the fraud, and if so, to what extent?

2. For each of the 223 loans at issue, what was the involvement, if any, of the appraisers who appraised the loan, and if the appraisers were involved, to what extent?

3. For each of the 223 loans at issue, what was the involvement, if any, of the lawyers with respect to the loans, and if the lawyers were involved, to what extent?

4. For each of the 223 loans at issue, were any of the lawyers negligent in providing services with respect to the closing or the title, and if so, to what extent?

5. For each of the 223 loans at issue, was the originator of those loans (defendants National Home Funding and Robert Skowrenski) involved in the fraud or aware of the fraud, and if so, to what extent?

6. For each of the 223 loans at issue, were the real estate agents involved in the fraud or aware of the fraud, and if so, to what extent?

7. For each of the 223 loans at issue, what were the relationships (business and social) between and among employees of the plaintiff (including senior management) and others alleged by the plaintiff to be involved in the fraud, including the appraisers, the attorneys, the mortgage originators, and the real estate agents?

8. For each of the 223 loans at issue, whether irrespective of any fraud Walsh would have purchased the loans in any event, either because of the underwriting standards of Walsh in effect at the time or because Walsh has incentive to have significant revenues to make it more attractive as a company to be purchased by other lending institutions such as Resource Bankshares?

9. For each of the 223 loans at issue, exactly what acts of fraud were committed by what persons involved in the process (appraisers, attorneys, mortgage originators, purchasers of the property and/or realtors)?

Honorable Michael A. Shipp
July 2, 2008
Page 4

10. For each of the 223 loans at issue, whether Walsh adequately serviced the loan (i.e., made efforts to collect the loan), whether Walsh mitigated its damages (by seeking timely foreclosure of the loans) and whether Walsh took steps to maintain the real property that were secured by the mortgages?

11. For each of the 223 loans at issue, whether the parties to whom Walsh sold the loans (by securitization or by sale of loans to other lenders to be held in inventory) took adequate steps to mitigate its damages (by seeking timely foreclosure of the loans), whether Walsh took steps to maintain the real property that were secured by the mortgages, and whether Walsh took any actions to pay property taxes and thereby preserve the priority of its lien on the property?

12. For each of the 223 loans at issue, what was the liability vel non of Walsh to parties to whom it sold the loans as a result of the loans having been fraudulent or having gone into default?

13. For each of the 223 loans at issue, were the appraisals adequate or inadequate?

14. For each of the 223 loans at issue, did Walsh follow its own underwriting standards in underwriting those loans?

15. For each of the 223 loans at issue, did Walsh perform any due diligence in determining the quality of the loans before it purchased them from the mortgage originator, National Home Funding?

16. For each of the 223 loans at issue, were the procedures followed by Walsh in purchasing the loans, underwriting the loans, servicing the loans and/or selling the loans the same procedures followed by Walsh for other loans it purchased in the time period in question, including other prime and subprime mortgages it purchased during the relevant time period?

17. What is the basis for Walsh's claim that it has $24 million in loan losses, and in particular the amount of loan loss on each of the 223 loans?

18. What is the basis for Walsh's claim that it has $50 million in loan interest, including the loan interest on each of the 223 loans?

Honorable Michael A. Shipp
July 2, 2008
Page 5

19. What is the basis for Walsh's claim that it has $75 million in lost residuals and securities, including the specific amount of residual lost on each of the 223 loans?

20. What is the basis for Walsh's claim that it has $5 million in legal fees claims as damages, and in particular what legal services were provided for those fees and were any of those fees attributable to the criminal investigation undertaken with respect to senior management of Walsh?

21. What is the basis for Walsh's claim that it has $420 million in losses resulting from the failure of Walsh Securities to be acquired?

22. What is the reason why the Resource Bankshares acquisition of Walsh Securities did not occur?

23. What is the basis for the $131 million claimed in interest on the losses resulting from the failure of Walsh Securities to be acquired by Resource Bankshares?

In addition, this is a very "heavy" document case. At the beginning of the case the Court set up a document repository in which documents were placed by each party into the repository. While I do not have a precise count on the number of documents in the document repository, my rough estimation is that there are in excess of 10,000 documents in the document repository. At the deposition of the plaintiff, a number of documents will be used.

I have spoken with plaintiff's attorneys in an effort to avoid this discovery dispute and have been unable to resolve this dispute with them. The plaintiff's attorneys have indicated to me that they will not agree at this time that the deposition of the plaintiff can extend beyond one day/seven hours. Rather, they have indicated to me that we should go forward with the deposition and at the conclusion of seven hours, they will then inform us whether they will consent to the deposition continuing beyond one day/seven hours. However, this approach simply is not realistic in this case. First, if we are going to be limited to a seven-hour deposition, that is something that we need to know before beginning the deposition, because it will surely affect what questions will be asked during the seven hours of the deposition. Second, at least three of the other significant defendants (Coastal Title, Nations Title and Fidelity National) will have questions on issues relating to their clients at the deposition, and it may be that one–two of the appraiser defendants (who have participated from time to time in the litigation) will also have questions. If the deposition is limited to one day/seven hours, that will affect the division of time taken during the deposition by the defendants.

ME1 7475162v.1

Honorable Michael A. Shipp
July 2, 2008
Page 6

Rule 30 contemplates that a deposition can take longer than one day/seven hours. Indeed, Rule 30(d)(1) specifically states that the Court "must" allow additional time for the deposition beyond one day/seven hours if additional time is "needed to fairly examine the deponent". The 2000 Amendment Advisory Committee Notes state that the Court is to consider a variety of factors when a party asked to extend the time for a deposition beyond one day/seven hours. While that Note also states that in most instances the parties and the witnesses "will make reasonable accommodations to avoid the need for resort to the Court", as noted above we have been unable to do so with plaintiff's counsel.

This is an exceedingly complex case. The case involves different legal and factual claims against numerous parties, involves numerous causes of action, involves over 223 transactions, and involves complicated financial instruments (securitizations of certain of the mortgages). The case also involves a number of different types of damages sought, and a significant amount of damages sought from the defendants. Some cases are straightforward and a deposition can easily be done in less than seven hours. (A slip and fall at a post office.) Other cases (such as this one) do not realistically allow an adequate deposition to be done in one day/seven hours. The plaintiff has filed this lawsuit, seeking significant damages, and surely cannot complain if it needs to produce a corporate deponent on more than one day for more than seven hours for a deposition. We would also note that if the Court grants our application, and if the plaintiffs feel that the questioning during the deposition is somehow burdensome or oppressive, the Court always retains the inherent power to limit the questioning upon application of the plaintiff.

For the foregoing reasons, we respectfully request that the Court enter an Order pursuant to Rules 26 & 30 that the deposition of the plaintiff can take up to four days/28 hours. This will give all of the defendants ample opportunity to take a fair deposition of the plaintiff on both liability and damages.

Respectfully submitted,

David R. Kott

DRK:lfj

Enclosures

cc: Robert A. Magnanini, Esq. (w/encs.) (by electronic filing and by fax)
    Edward J. Hayes, Jr., Esq. (w/encs.) (by electronic filing and by fax)
    Martin R. McGowan, Jr., Esq. (w/encs.) (by electronic filing and by fax)
    All Counsel on the Attached Service List

## SERVICE LIST

## WALSH SECURITIES, INC. V. CRISTO PROPERTY MANAGEMENT, ET AL
## CIVIL ACTION NO. 97-3496(WGB)

Robert A. Magnanini, Esq.
Boies, Schiller & Flexner LLP
150 John F. Kennedy
Short Hills, NJ 07078
**Attorney for plaintiff Walsh Securities, Inc. and for third-party defendant Robert Walsh**

Ronald M. Kleinberg, Esq.
Richard A. Finkel, Esq.
Meissner, Kleinberg & Finkel, LLP
275 Madison Ave., Suite 1000
New York, New York 10016
**Attorney for defendants Cristo Property Management, LTD, DEK Homes of NJ, Inc., Oakwood Properties, Inc., and William J. Kane**

Michael D. Schottland, Esq.
Lomurro, Davison, Eastman & Muñoz, P.A.
100 Willowbrook Road
Freehold, NJ 07728
**Attorney for Defendants National Home Funding, Inc. and Robert Skowrenski, II**

Martin R. McGowan, Jr., Esq.
Methfessel & Werbel
3 Ethel Road
Suite 300
Edison, New Jersey 08818
**Attorneys for Defendant Coastal Title Agency**

Edward C. Bertucio, Jr., Esq.
Hobbie, Corrigan, Bertucio & Tashjy, P.C.
125 Wyckoff Road
Eatontown, NJ 07724
**Attorney for Defendant Michael Alfieri, Esq.**

Robert J. Reilly, III, Esq.
Reilly, Supple & Wischusen, LLC
571 Central Avenue
New Providence, NJ 07974
**Attorney for defendant Michael Alfieri, Esq. on the Sixth Count**

Theodore W. Daunno, Esq.
1033 Clifton Avenue
Clifton, New Jersey 07013
**Attorney for Defendant Lawrence M. Cuzzi**

Mark W. Catanzaro, Esq.
Blason IV
Suite 208
513 Lenola Road
Moorestown, New Jersey 08057
**Attorney for defendants Richard Pepsny and Donna Pepsny**

ME1 2304466v.1

Thomas D. Flinn, Esq.
Garrity, Graham, Favette & Flinn
1 Lackawanna Plaza, Box 4205
Montclair, NJ 07042
**Attorney for Defendant Anthony M. Ciccalese (on certain counts of the Complaint)**

Anthony M. Cicalese, Esq.
467 Long Hill Drive
Short Hills, NJ 07078
**Pro se (on certain counts of the Complaint)**

Anthony M. Cicalese
74C Manatiales de Belen
200 Mtrs Norte de igleseis de Ascen
San Antonio de Belen
Heredia, Costa Rica
**Pro se (on certain counts of the Complaint)**

Anthony Argiropoulos, Esq.
Fox, Rothschild, O'Brien & Frankel
997 Lenox Drive, Bldg. 3
Lawrenceville, New Jersey  08648
**Attorney for Defendants Fidelity National Title Insurance and Nations Title Insurance**

Edward J. Hayes, Jr., Esq.
Fox, Rothschild, O'Brien & Frankel
2000 Market Street
10th Floor
Philadelphia, Pennsylvania  19103-3291
**Attorney for Defendants Fidelity National Title Insurance and Nations Title Insurance**

Pasquale Menna, Esq.
Kauff and Menna
170 Broad Street
P.O. 762
Red Bank, New Jersey  07701
**Attorneys for defendant Roland J. Pierson**

Marc D. Freedman, Esq.
Freedman & Gersten, LLP
777 Terrace Avenue, 5th Floor
Hasbrouck Heights, NJ  07604
**Attorney for Third Party Defendant Elizabeth Ann DeMola**

2

ME1 2304466v.1

Thomas Brodo, Pro Se
139B Fort Lee Road
Teaneck, New Jersey  07666

James R. Brown, Pro Se
1089 Cedar Avenue
Union, New Jersey  07083

Richard Calanni, Pro Se
One Old Farm Road
Tinton Falls, New Jersey 07724

Anthony D'Apolito, Pro Se
909 Woodland
Wall Township, NJ 07719

Richard DiBenedetto, Pro Se
3 Loller Drive
Martinsville, New Jersey  08836

Stanley Yacker, Esq., Pro Se
33 Broadway, #1
Ocean Grove, NJ  07756-1397

William Kane, Pro Se
6119 Kipps Colony Drive
Gulfport, Florida 33707

Capital Assets Property Management, LLC
10 West Bergen Place
Red Bank, NJ 07701

Andrew I. Indeck, Esq.
Scarinci & Hollenbeck, LLC
1100 Valleybrook Avenue
P.O. Box 790
Lyndhurst, NJ 07071
**Attorney for Garden State Indemnity Co. (Legal Malpractice carrier for defendant Michael Alfieri)**

3

ME1 2304466v.1