# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| CRISTO PROPERTY MANAGEMENT, LTD., a/k/a | :   Civ. A. No. 97-3496 |
| G.J.L. LIMITED; DEK HOMES OF NEW JERSEY, INC.; | : |
| OAKWOOD PROPERTIES, INC.; NATIONAL HOME | : |
| FUNDING, INC.; CAPITAL ASSETS PROPERTY | : |
| MANAGEMENT & INVESTMENT CO., INC.; CAPITAL | : |
| ASSETS PROPERTY MANAGEMENT, LLC; WILLIAM | : |
| KANE; GARY GRIESER; ROBERT SKOWRENSKI, II; | : |
| RICHARD CALANNI; RICHARD DiBENEDETTO; | : |
| JAMES R. BROWN; THOMAS BRODO; ROLAND | : |
| PIERSON; STANLEY YACKER, ESQ.; MICHAEL | : |
| ALFIERI, ESQ.; RICHARD PEPSNY, ESQ.; ANTHONY | : |
| M. CICALESE, ESQ.; LAWRENCE CUZZI; ANTHONY | : |
| D'APOLITO; DAP CONSULTING, INC.; | : |
| COMMONWEALTH LAND TITLE INSURANCE CO.; | : |
| NATIONS TITLE INSURANCE OF NEW YORK, INC.; | : |
| FIDELITY NATIONAL TITLE INSURANCE CO. OF | : |
| NEW YORK; COASTAL TITLE AGENCY; STEWART | : |
| TITLE GUARANTY COMPANY; IRENE DiFEO; | : |
| DONNA PEPSNY; WEICHERT REALTORS; and | : |
| VECCHIO REALTY, INC., d/b/a MURPHY REALTY | : |
| BETTER HOMES AND GARDENS, | : |
| | : |
| Defendants. | : |
| | : |

# BRIEF OF DEFENDANTS NATIONS TITLE
# INSURANCE OF NEW YORK, INC. AND FIDELITY
# NATIONAL TITLE INSURANCE CO. OF NEW YORK IN OPPOSITION TO
# PLAINTIFF'S MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

Edward J. Hayes, Esquire
David H. Colvin, Esquire
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103
(215) 299-2092/2139
(215) 299-2150 (facsimile)

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................... 3

III.   LEGAL ARGUMENT.................................................................... 5

    A.   The Court Should Deny Walsh's Motion For Leave To Amend
        *Because Walsh's Proposed Claims For Common Law Fraud*
        And Tortious Interference Are Barred By Undue Delay And
        Futility ............................................................................... 5

        1.   The General Standard For Amendment Of A Pleading. ............ 6

        2.   Walsh's Proposed Claims For Common Law Fraud And
              Tortious Interference Are The Product Of Undue Delay. ......... 7

            a.   There Is Simply No Justification For The Untimely
                Attempt To Assert A Fraud Claim Against
                Fidelity. .................................................................. 8

            b.   There Is Also No Justification For The Untimely
                Attempt To Assert A Tortious Interference Claim
                Against Fidelity.............................................................. 11

        3.   The Proposed Claims For Common Law Fraud And For
              Tortious Interference Should Also Be Denied As Futile. ......... 12

        4.   Fidelity Will Be Prejudiced If The Court Permits Walsh's
              Proposed Amendments.............................................................. 15

    B.   The Court Should Deny Walsh's Motion For Leave To Amend
        Because Walsh's New Claims For Common Law Fraud And
        Tortious Interference Do Not Relate Back To The Core
         Allegations In Walsh's Original Complaint......................................... 17

    C.   The Court Should Deny Walsh's Motion For Leave To Amend
        Because Walsh Improperly Seeks To Effectuate A Dismissal Of
        Parties Who Are Defendants And Subject To Cross-Claims By
        Fidelity.......................................................................... 22

IV.    CONCLUSION................................................................................. 23

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Aetna Ins. Co. v. Newton,
398 F.2d 729 (3d Cir. 1968)................................................................. 23

Arthur v. Maersk, Inc.,
434 F.3d 196 (3d Cir. 2006)................................................................... 6

Bensel v. Allied Pilots Ass'n,
387 F.3d 298 (3d Cir. 2004)................................................................... 6

Blatt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
916 F. Supp. 1343 (D.N.J. 1996) ......................................................... 17

Construction Interior Systems, Inc. v. Donohoe Companies, Inc.,
813 F. Supp. 29 (D.D.C. 1992) ....................................................... 21, 22

Cornell & Co. v. Occupational Safety and Health Review Comm'n,
573 F.2d 820 (3d Cir. 1978)................................................................. 15

Cummings v. City of Philadelphia,
2004 WL 906259 (E.D. Pa. April 26, 2004)......................................... 16

Cureton v. Nat'l Collegiate Athletic Ass'n,
252 F.3d 267 (3d Cir. 2001)............................................................. 7, 14

Farrell v. Einemann,
2006 WL 5164064 (D.N.J. Aug. 28, 2006) .......................................... 18

Foman v. Davis,
371 U.S. 178 (1962)............................................................................... 6

Fraser v. Bovino,
721 A.2d 20 (App. Div. 1998) ............................................................. 12

Impex Agricultural Commodities v. Leonard Parness Trucking Corp.,
582 F. Supp. 260 (D.N.J. 1984) ........................................................... 23

In re NAHC, Inc. Sec. Litig.,
306 F.3d 1314 (3d Cir. 2002)............................................................... 13

ii

<u>In re PDI Sec. Litig.</u>,
   2005 WL 2009892 (D.N.J. Aug. 17, 2005) ...................................................... 15

<u>Lorenz v. CSX Corp.</u>,
   1 F.3d 1406 (3d Cir. 1993)...................................................... 6, 7, 11, 15

<u>Massarsky v. General Motors Corp.</u>,
   706 F.2d 111 (3d Cir. 1983)...................................................... 14

<u>Mayle v. Felix</u>,
   545 U.S. 644, 125 S. Ct. 2562 (2005)...................................................... 18

<u>Nittoli v. Morris County Board of Chosen Freeholders</u>,
   2007 WL 1521490 (D.N.J. May 22, 2007) ...................................................... 15

<u>Rolo v. City Investing Co. Liquidating Trust</u>,
   155 F.3d 644 (3d Cir. 1998)...................................................... 12

<u>Solomon v. Passaic County Educational Servs. Comm'n</u>,
   2005 WL 2237632 (D.N.J. Sept. 13, 2005) ...................................................... 13

<u>Unicure v. Thurman</u>,
   97 F.R.D. 1 (W.D.N.Y. 1982)...................................................... 19, 20

<u>USX Corp. v. Barnhart</u>,
   395 F.3d 161 (3d Cir. 2004)...................................................... 12

## <u>STATUTES</u>

N.J.S.A. 2A:14-1 ...................................................... 12

Defendants, Nations Title Insurance of New York, Inc. and Fidelity National Title Insurance Co. of New York (collectively, "**Fidelity**"), by and through their undersigned counsel, Fox Rothschild LLP, respectfully submit this brief in opposition to the motion of plaintiff, Walsh Securities, Inc. ("**Walsh**"), for leave to file a fourth amended complaint. For the reasons that follow, the Court should deny Walsh's motion.

## I.   **INTRODUCTION**

Although Walsh attempts to minimize the import of its motion by characterizing its proposed fourth amended complaint as merely clarifying or amplifying the factual allegations set forth in the four complaints that Walsh previously filed in these proceedings, Walsh's characterization is not accurate. The proposed amendments add two entirely new causes of action which materially change the nature of the claim previously asserted against Fidelity. Only now, when Walsh appears to recognize the shortcomings of the contract claim it has raised against Fidelity for the last eleven years, does it seek to create new causes of action against Fidelity. There are several problems with Walsh's request, all of which justify denial of the request to amend a fourth time.

First, Walsh's proposed "new" claims against Fidelity for common law fraud and tortious interference with prospective economic advantage fail to satisfy Federal Rule of Civil Procedure 15 because (i) Walsh waited 11 years to file its

proposed claims, (ii) the proposed claims are barred by the applicable six-year statute of limitations, and (iii) the proposed claims do not relate back to any of the core allegations against Fidelity in any of Walsh's prior complaints.

Second, without a single mention of this fact in its memorandum of law in support of its motion, Walsh proposes to file a fourth amended complaint that does not include the following thirteen (13) defendants as parties in these proceedings: Capital Assets Property Management & Investments Co., Inc., Capital Assets Property Management, LLC, DAP Consulting, Inc., DEK Homes of New Jersey, Inc., National Home Funding, Inc., Oakwood Properties, Inc., Weichert Realtors, Michael Alfieri, Irene DiFeo, Donna Pepsny, Richard Pepsny, Ronald J. Pierson and Robert Skowrenski, II.   Walsh's proposed fourth amended complaint, if allowed by the Court, will prejudice Fidelity because Fidelity currently has cross-claims pending against each of these defendants.

Accordingly, the Court should deny Walsh's motion for leave to amend to the extent that Walsh proposes to file a fourth amended complaint that (i) contains claims for common law fraud and tortious interference against Fidelity, and (ii) unilaterally dismisses those defendants against whom Fidelity has cross-claims pending as parties in these proceedings.

2

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

In all of the complaints that it has filed in these proceedings, Walsh alleges that it was the victim of a fraudulent scheme perpetrated by a vast number of mortgage companies, real estate appraisers, and attorneys to induce Walsh to purchase approximately 223 mortgage loans at artificially inflated prices.  Walsh has set forth a variety of claims against those other defendants, ranging from negligence to fraud to RICO violations.   It is important to note that in every complaint filed to date, Fidelity was never alleged to be a participant in the scheme, directly or indirectly.  Instead, the sole claim asserted by Walsh has been limited to a breach of contract claim.  Walsh alleged that Fidelity, as well as defendant Commonwealth Land Title Insurance Company, breached the terms of certain closing service letters that were allegedly issued by title agents in connection with the fraudulent transactions.

This case was initiated on July 17, 1997, when Walsh filed its original complaint not naming Fidelity.   On November 7, 1997, the complaint was amended to include a claim for breach of contract against Fidelity and the other title insurance defendants.  Several other amendments have taken place, all of which have only asserted a contract claim against Fidelity.

---

[1]     In view of the opinions previously issued by the Court in this matter, Fidelity states here only those facts that are relevant to Walsh's motion for leave to file a fourth amended complaint.

On August 12, 1997, Fidelity issued a memorandum to its "Agents and Approved Attorneys" regarding an article that appeared in the Asbury Park Press that described a "pattern of mortgage loans made by Walsh Securities, Inc. in which the values of the mortgaged properties were artificially inflated prior to the mortgage transaction", as well as the fact that "[o]ur company is currently facing claims in New Jersey as a result of insuring the title to these mortgage transactions". A true and correct copy of Fidelity's memorandum, dated August 12, 1997, is attached hereto as **Exhibit "A"**. The Fidelity memorandum further advised Fidelity's agents and approved attorneys not to issue any "binders, commitments or title insurance policies" to Walsh "without the prior approval of Fidelity". Walsh seeks to assert in its proposed amended pleading that the issuance of this memorandum was somehow improper. Significantly, for purposes of determining whether such a claim should be permitted eleven years after the issuance of the memorandum, it should be noted that on August 21, 1997 – just nine days after Fidelity issued the memorandum– Walsh sent a letter to Fidelity (i) acknowledging receipt of Fidelity's memorandum, (ii) stating that Walsh "will not be coerced into dropping its legitimate claims against Fidelity", and (iii) advising Fidelity that Walsh "intends to pursue those claims in all appropriate forums". A true and correct copy of the letter from Walsh to Fidelity, dated August 21, 1997, is attached hereto as **Exhibit "B"**. Clearly, Walsh was aware of the issuance of the

4

memorandum at the time of its issuance yet filed four complaints in this action with no reference to the memorandum and no allegations that it was somehow improper or actionable.

As a result of certain criminal proceedings, the Court administratively dismissed this case from May 2000 until September 2004. In January 2005, Walsh filed its third amended complaint, which asserts exactly the same claim against Fidelity for breach of contract as previously alleged by Walsh in its first and second amended complaints. Thereafter, the parties proceeded to mediation which ultimately was not successful. Now, almost 11 years after it instituted these proceedings, Walsh seeks leave to file a fourth amended complaint. It is Fidelity's position that this Court should not permit the amendment.

## III.  LEGAL ARGUMENT

### A.  The Court Should Deny Walsh's Motion For Leave To Amend Because Walsh's Proposed Claims For Common Law Fraud And Tortious Interference Are Barred By Undue Delay And Futility

The Court should deny Walsh's motion for leave to file a fourth amended complaint that contains claims against Fidelity for common law fraud and tortious interference because these claims are barred by Walsh's undue delay in pursuing such claims and by the applicable statutes of limitations. As a result, Walsh's proposed fourth amended complaint does not satisfy the requirements of Federal Rule of Civil Procedure 15.

## 1. The General Standard For Amendment Of A Pleading.

It is well-established that Federal Rule of Civil Procedure 15 "embodies a liberal approach to pleading". <u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, 202 (3d Cir. 2006) (citing <u>Bensel v. Allied Pilots Ass'n</u>, 387 F.3d 298, 310 (3d Cir. 2004)). Federal Rule of Civil Procedure 15 provides, in relevant part, as follows:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and <u>leave shall be freely given when justice so requires</u>.

<u>See</u> Fed. R. Civ. P. 15(a) (emphasis added). Generally, a court should grant leave to amend "unless equitable considerations render it otherwise unjust". <u>Arthur v. Maersk, Inc.</u>, 434 F.3d at 204 (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)). The equitable considerations that weigh in favor of denying a motion to amend include "bad faith or dilatory motives, <u>truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment</u>". <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1414 (3d Cir. 1993) (emphasis added). Although prejudice to the defendant is a factor that courts consider on a motion to amend, a court need not determine that a defendant will be prejudiced as a result of a proposed amendment where the plaintiff "had numerous opportunities

to correct any deficiencies in her [] claim but failed to take advantage of them".

Lorenz v. CSX Corp., 1 F.3d at 1414.  To the extent that a court considers whether

an amendment will prejudice a defendant, courts generally focus on the hardship to

a defendant if an amendment is permitted, including "whether allowing an

amendment would result in additional discovery, cost and preparation to defend

against new facts or new theories."   Cureton v. Nat'l Collegiate Athletic Ass'n,

252 F.3d 267, 273 (3d Cir. 2001).

Here, pursuant to Federal Rule of Civil Procedure 15(a), the Court should

deny Walsh's motion for leave to amend to state a claim against Fidelity for

common law fraud and tortious interference on the basis of Walsh's undue delay,

futility of its proposed claims and prejudice to Fidelity if the Court permits the

amendments.

### 2.    Walsh's Proposed Claims For Common Law Fraud And Tortious Interference Are The Product Of Undue Delay.

A review of the motion filed by Walsh establishes that there is no excuse for

its failure to assert its claims for fraud and tortious interference in a timely manner

as part of the four prior complaints filed in this case.  Even using a liberal approach

to the amendment of pleadings, Walsh's attempts must still be denied.[2]

---

[2]    Even if the Court decides not to consider the period of time during which these proceedings were administratively stayed (May 30, 2000 through September

**a.     There Is Simply No Justification For The Untimely
Attempt To Assert A Fraud Claim Against Fidelity.**

In Count III of its proposed fourth amended complaint, Walsh now alleges

for the first time, in a complaint strewn with allegations of fraud and improper

conduct on the part of other parties, that Fidelity, as well as the other Title

Insurance Defendants (as defined in Walsh's fourth amended complaint),

defrauded Walsh as follows:

> 70.   By the illegal and fraudulent acts and schemes
> described above, the RICO Defendants and Coastal Title
> defrauded Walsh Securities.   **Further, insofar as
> Coastal Title was acting for or on behalf of the Title
> Insurance Defendants, such conduct was imputed to
> the Title Insurance Defendants . . . .**
>
> * * * * *
>
> 76.   Coastal Title knew that the loan transactions at
> issue were fraudulent and that the closing documents
> were not timely and properly recorded. Under principles
> of agency, such knowledge is imputed to the Title
> Insurance Defendants. The fraudulent nature of the loan
> transactions and the untimely and/or improper recording
> of the closing documents constitute material facts in the
> relationship between Walsh Securities, Coastal Title, and
> the Title Insurance Defendants.
>
> 77.   **Coastal Title issued, on behalf of the Title
> Insurance Defendants, closing service letters and title
> insurance commitments with the intent and purpose
> that Walsh Securities would rely on the same. In
> doing so, Coastal Title and the Title Insurance**

30, 2004), Walsh's delay remains undue because Walsh waited seven years to
assert its proposed claims.

**Defendants failed to disclose that the loan transactions at issue were fraudulent and that the closing documents were not timely and properly recorded.**

78.   **Walsh Securities, in fact, relied upon the issuance of the closing service letters and the title insurance commitments to its detriment and thereafter funded the transactions.**

79.   **As a direct and proximate result of the RICO Defendants' material misrepresentations and omissions, and the fraudulent omissions of Coastal Title and the Title Insurance Defendants, plaintiff suffered damages substantially in excess of $1,000,000.00.**

See Proposed Fourth Amended Complaint at ¶¶ 70-79 (emphasis added).

Putting aside that Walsh does not actually seek relief against Fidelity (or the other Title Insurance Defendants) in its "WHEREFORE clause" at the end of Count III, the Court should deny Walsh's attempt to include a claim against Fidelity for common law fraud because (i) it is undisputed that Walsh was aware of all the factual allegations regarding Fidelity's alleged fraud at the time that Walsh filed its original complaint, as well as the first, second and third amended complaints, (ii) Walsh's purported fraud claim is not based on newly discovered facts or evidence, and (iii) Walsh has not offered any reasonable explanation or justification for its failure to assert its claim for fraud as part of its three previous

efforts to amend its complaint.[3]  Walsh does nothing more than attempt to use the liberal approach to the amendment of pleadings as its support for yet another amended complaint.   This is simply not enough for this Court to grant the requested relief.

At some point in time, a party should be able to feel comfortable that the claims asserted against it have been set forth in detail and are not subject to change.   It is unreasonable to put Fidelity in a position where, without any reasonable justification whatsoever, Walsh can change the entire landscape of the claims being asserted against Fidelity for eleven years, and in four complaints. The fact that the breach of contract claim asserted by Walsh is not going as well as it planned is not a basis to permit Walsh to contend, for the first time, that despite its failure for eleven years and four complaints to allege that Fidelity participated in the fraud, Fidelity should have been on notice that such a claim was coming. Quite to the contrary, if Walsh intended to pursue such claims, it should have raised them long before eleven years after it initiated the proceedings, particularly when it acknowledges that there are no newly discovered facts to support such claims.  If there was ever an example of inexcusable undue delay, this request is it.

---

[3]   Notably, in its memorandum of law in support of its motion for leave to amend, Walsh concedes that its proposed fourth amended complaint does "not seek to expand the action to encompass different conduct".  See Walsh's memorandum of law at 5.

**b.    There Is Also No Justification For The Untimely Attempt To Assert A Tortious Interference Claim Against Fidelity.**

Walsh's alleged claim for tortious interference arose, if at all, on August 12, 1997, when Fidelity sent a memorandum to its "Agents and Approved Attorneys". As stated earlier, the Fidelity memorandum further advised Fidelity's agents and approved attorneys not to issue any "binders, commitments or title insurance policies" to Walsh "without the prior approval of Fidelity". There can be no question that the issuance of this memorandum was not recently discovered by Walsh as on August 21, 1997 – just nine days after Fidelity issued the memorandum– Walsh sent a letter to Fidelity regarding the memorandum  As a result, by its own admission, Walsh has been on notice of its "claim" for tortious interference since August 1997.

As Walsh was aware of this alleged claim for eleven years, it is inexplicable that Walsh did not pursue its "new" claims against Fidelity when Walsh filed its first amended complaint (November 7, 1997; Doc. No. 3), its second amended complaint (February 11, 1998; Doc. No. 55), or its third amended complaint (January 28, 2005; Doc. No. 108).  Because Walsh was aware of the facts concerning its proposed claims for fraud and tortious interference at the time that it filed its first, second and third amended complaints, the Court should conclude that Walsh's 11-year delay is unreasonable.  See, e.g., Lorenz v. CSX Corp., 1 F.3d at

11

1414 (holding that plaintiff exercised undue delay in seeking to amend allegations in complaint where plaintiff had numerous opportunities to correct any deficiencies in claim, including the filing of an amended complaint, but failed to take advantage of them); USX Corp. v. Barnhart, 395 F.3d 161, 169 (3d Cir. 2004) (rejecting proposed second amended complaint where plaintiff waited over three years to seek amendment and amendment based on facts about which plaintiff had notice at time plaintiff filed original complaint and first amended complaint); Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654-55 (3d Cir. 1998) (rejecting proposed second amended complaint because plaintiffs sought to add factual allegations that could have been pled earlier).

It is respectfully suggested that Walsh's request to amend is even more egregious than the requests made in the above referenced cases and should be denied.

### 3. The Proposed Claims For Common Law Fraud And For Tortious Interference Should Also Be Denied As Futile.

Not only are the claims proposed by Walsh barred by the doctrine of undue delay, but the Court should also deny Walsh's proposed amendments as futile. Under New Jersey law, claims for common law fraud and tortious interference with prospective economic advantage are governed by a six-year statute of limitations. See N.J.S.A. 2A:14-1; see also Fraser v. Bovino, 721 A.2d 20, 25

(App. Div. 1998) (noting that claim for tortious interference subject to six-year statute of limitations). Walsh's alleged claim for fraud arose, if at all, 11 years ago when the allegedly fraudulent conduct occurred.[4] Walsh's alleged claim for tortious interference arose, if at all, in August 1997 when Fidelity issued the memorandum to its agents and approved attorneys and Walsh acknowledged receipt of the memorandum. As a result, in order to satisfy its obligations under the applicable statutes of limitation, Walsh was required to file its proposed claims in 2003. Despite filing two amended complaints between 1997 and 2003, both of which would have satisfied Walsh's obligations under the statutes of limitation, Walsh did not include a claim against Fidelity for common law fraud or tortious interference. Instead, it seeks to assert those claims now, five years after the time required by law to do so. As the statutes of limitation bar such claims, the Court must conclude that Walsh's proposed amendment is futile and deny Walsh's motion. See, e.g., Solomon v. Passaic County Educational Servs. Comm'n, Civ. A. No. 04-5879, 2005 WL 2237632, at *5 (D.N.J. Sept. 13, 2005) (Debevoise, J.) (justice does not require allowing amendment of pleadings where statute of

---

[4]    As Walsh has set forth in detail the alleged fraud in its earlier versions of the Complaint, it cannot allege that it just learned of the facts supporting its proposed claim against Fidelity. In fact, as stated earlier, Walsh has admitted that there are no newly discovered facts which support its belated request to amend.

limitations bars claim) (citing In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (futile to allow amendment on time-barred claim)).

In addition, Walsh's proposed claim for tortious interference is futile because it would not survive a motion to dismiss. A court may deny a request to file an amended complaint on the basis that the amendment fails to state a cause of action. See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (citing Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983)). Walsh's proposed claim for tortious interference fails as a matter of law because, on its face, the memorandum upon which Walsh bases its claim directly contradicts Walsh's allegations. Specifically, Walsh alleges that "as a direct and proximate result of this Memorandum, mortgage brokers quickly learned that Fidelity Title would not insure loans by Walsh Securities and, foreseeably, steered business away from Walsh Securities, all of which had a substantial impact on Walsh Securities' business." See Proposed Fourth Amended Complaint at ¶ 103. A closer review of Fidelity's memorandum reveals that Walsh cannot make those allegations. Fidelity's memorandum does not provide that Fidelity would not insure loans issued by Walsh. Instead, Fidelity's memorandum merely requested that Fidelity's "Agents and Approved Attorneys" receive Fidelity's approval before issuing title insurance policies to Walsh, a reasonable response to the fact that many of the Walsh loans were now cloaked with a suspicion of fraud.

14

"When allegations contained in a complaint are contradicted by the document it cites, the document controls". In re PDI Sec. Litig., Civ. A. No. 02-211, 2005 WL 2009892, at *21 (D.N.J. Aug. 17, 2005); see also Nittoli v. Morris County Board of Chosen Freeholders, Civ. A. No. 05-4007, 2007 WL 1521490, at *6 n.21 (D.N.J. May 22, 2007) (when considering a motion to dismiss court need not accept bald assertions and unsupported conclusions when faced with documents that contradict allegations in complaint). Because Walsh's claim for tortious interference is contradicted by the memorandum on which Walsh's claim is premised, the Court should conclude that Walsh's claim is futile and deny the motion for leave to assert such claim.

> **4.  Fidelity Will Be Prejudiced If The Court Permits Walsh's Proposed Amendments.**

The Court should also deny Walsh's motion for leave to file a fourth amended complaint because the filing of Walsh's proposed amendments will prejudice Fidelity.  In addition to undue delay and futility, it is well-settled that "prejudice to the non-moving party is the touchstone for the denial of an amendment". Lorenz v. CSX Corp., 1 F.3d at 1414 (citing Cornell & Co. v. Occupational Safety and Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)).  Specifically, "courts have found undue prejudice to the non-moving party and denied leave to amend where the amendment would have asserted new claims, where new discovery would have been necessary, where the motion for leave was

filed months after the factual basis of the amendment was discovered by the moving party, and where the motion for leave was brought after summary judgment motions were filed". Cummings v. City of Philadelphia, Civ. A. No. 03-0034, 2004 WL 906259, at *4 (E.D. Pa. April 26, 2004).

Fidelity will be prejudiced if the Court permits Walsh's amendment because Walsh's amended claims will require Fidelity to alter its strategy in defense of Walsh's claims. Hundreds of files will now need to be reviewed to search for evidence of fraud on the part of Fidelity or Coastal Title. Fidelity would be required to search for potential witnesses and documents regarding the facts alleged in Walsh's proposed claims. Given that the events underlying Walsh's proposed claims occurred eleven years ago, Fidelity may not be able to locate such witnesses and/or documents and its defense of these claims would be prejudiced as a result. Had Walsh sought to pursue these claims at the time that they accrued eleven years ago, then admittedly Fidelity would have been in a better position to defend against Walsh's proposed claims. Walsh failed to do so, and the Court should not require Fidelity to suffer the consequences of Walsh's decision. There must be some consequences to Walsh for failing to timely assert the claims it now seeks to raise in this case. Accordingly, the Court should deny Walsh's motion for leave to file a fourth amended complaint on the basis that Fidelity would be prejudiced by the filing of such an amendment.

**B.** **The Court Should Deny Walsh's Motion For Leave To Amend Because Walsh's New Claims For Common Law Fraud And Tortious Interference Do Not Relate Back To The Core Allegations In Walsh's Original Complaint**

Despite Walsh's assertions to the contrary, the Court should deny Walsh's motion for leave to file a fourth amended complaint because the claims now sought to be asserted do not relate back to the core allegations set forth in Walsh's original complaint against Fidelity.   Federal Rule of Civil Procedure 15(c) provides, in relevant part, as follows:

> An amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . .

See Fed. R. Civ. P. 15(c).  A proposed amendment will be deemed to relate back to the original pleading if "the factual situation upon which the action depends remains the same and has been brought to the defendant's attention by the original pleading . . . Indeed, an amendment that states an entirely new claim for relief will relate back as long as it satisfies the test [same conduct, transaction or occurrence] embodied in the first sentence of Rule 15(c)".  Blatt v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 916 F. Supp. 1343, 1351 (D.N.J. 1996) (quoting 6A Charles A. Wright, Arthur R. Miller, *Federal Practice and Procedure* § 1497, at 94-99 (2d Ed. 1990)).  An amendment does not relate back to the original pleading if "it

asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." <u>Farrell v. Einemann</u>, Civ. A. No. 04-2088, 2006 WL 5164064, at *1 (D.N.J. Aug. 28, 2006) (quoting <u>Mayle v. Felix</u>, 545 U.S. 644, 125 S. Ct. 2562, 2566 (2005)).

Walsh's proposed claims against Fidelity for common law fraud and tortious interference clearly do not relate back to Walsh's original claim against Fidelity for breach of contract. In its first amended complaint, in which Walsh first included Fidelity as a party to these proceedings, Walsh asserted a claim against Fidelity solely for breach of contract. The facts asserted <u>with respect to Fidelity</u> were that at the time of the closings, title agents allegedly issued closing service letters covering the conduct of the closing attorneys, that well after the frauds has occurred, demands were made by Walsh under those closing service letters for reimbursement of the losses resulting from the alleged conduct of the closing attorneys and that Fidelity has refused to pay monies to Walsh. Based on these allegations, its can be seen that the claim asserted against Fidelity arose solely out of Fidelity's failure to reimburse Walsh for losses which Walsh contends are covered under the terms of closing service letters. <u>See, e.g.</u>, Walsh's First Amended Complaint at ¶¶ 85-91.

In its proposed fourth amended complaint, Walsh seeks to assert a claim for fraud against Fidelity based on conduct that is distinct from the conduct that forms

the basis for Walsh's breach of contract claim. The conduct that forms the basis for Walsh's fraud claim is not based on the issuance of the closing service letters but is instead based on Fidelity's alleged participation in a fraudulent scheme by failing to disclose certain material information to Walsh in specific real estate transactions. As such, Walsh's new claim for fraud does not arise out of the same conduct, transaction or occurrence as Walsh's original claim against Fidelity for breach of contract.

Moreover, despite Walsh's argument that the claims relate back because allegations of fraud were made against other parties in the earlier complaints, Walsh's claim for fraud against Fidelity will not "relate back" merely because of those allegations against other defendants. See Unicure v. Thurman, 97 F.R.D. 1 (W.D.N.Y. 1982). In Unicure, the plaintiff filed an original complaint that contained ten causes of action against four defendants, including claims for conspiracy, failure to disclose material information, conversion and unfair business practices. Significantly, Unicure did not originally assert a claim for conspiracy, failure to disclose material information, conversion against defendant-Nelson. Instead, Unicure originally sought relief from defendant-Nelson solely on a claim for unfair business practices. Thereafter, Unicure moved for leave to amend its complaint against defendant-Nelson to also include claims against him for conspiracy, failure to disclose material information and conversion. The Court

19

rejected Unicure's proposed amendment on the basis that its proposed new claims did not relate back to Unicure's original claim against defendant-Nelson for unfair business practices even though Unicure mentioned defendant-Nelson throughout the factual allegations that supported its claims for conspiracy, failure to disclose material information and conversion. The Court concluded that Unicure's proposed amendment did not satisfy the same transaction requirement because Unicure's claims for conspiracy, failure to disclose material information and conversion "were not previously asserted as a basis for *Nelson's* liability". Unicure v. Thurman, 97 F.R.D. at 4 (emphasis in original); see also 3 James Wm. Moore, et al., *Moore's Federal Practice* – Civil § 15.19 (3d ed. 1997) ("a conscious choice to sue one party and not another does not constitute a mistake and is not a basis for relation back").

The logic of the Unicure court is equally applicable here. Because Walsh did not previously assert a claim for fraud as the basis for Fidelity's alleged liability, Walsh's proposed claim for fraud does not relate back to the original basis for liability against Fidelity: breach of contract.

The same can be said about the issuance of the later memorandum by Fidelity which Walsh seeks to use to assert a tortious interference claim. It could not be any clearer that the issuance of this memorandum is in no way connected to the facts set forth in any of the underlying complaint. Even if Fidelity's issuance

of the memorandum somehow constitutes tortious interference with Walsh's prospective economic advantage in the mortgage industry, Fidelity's issuance of the memorandum is completely unrelated to Fidelity's alleged breach of closing service letters.[5]

In <u>Construction Interior Systems, Inc. v. Donohoe Companies, Inc.</u>, 813 F. Supp. 29 (D.D.C. 1992), the United States District Court for the District of Columbia considered a motion for leave to amend under similar circumstances. By way of background, the plaintiff and defendant entered into a contract whereby plaintiff agreed to refurbish 262 guest rooms at a hotel on behalf of defendant. <u>Id.</u> at 30. Plaintiff originally filed a complaint that stated causes of action against defendant for breach of contract and unjust enrichment as a result of defendant's alleged failure to provide plaintiff with an adequate number of hotel rooms to renovate as required under the terms of the parties' contract. <u>Id.</u> The defendant filed counterclaims alleging that plaintiff failed to deliver renovated hotel rooms in a timely manner. <u>Id.</u> Almost two years later, plaintiff filed a motion for leave to amend its complaint to state a claim for tortious interference arising out of defendant's alleged communications to a third-party that plaintiff failed to timely perform under the contract. Although the court acknowledged that plaintiff's

---

[5]     Notably, apart from conclusory statements, Walsh does not provide any analysis of how its proposed claims for common law fraud and tortious interference relate back to its claim for breach of contract.

claim for tortious interference was "factually connected" to the claims and counterclaims set forth in the original pleadings, the court denied plaintiff's motion on the basis that the claim for tortious interference did not arise out of the conduct alleged in the original complaint. Id. at 36.

Accordingly, because Walsh's allegations of fraud and tortious interference are based on conduct that is unrelated to the conduct that forms the basis for its original breach of contract claim against Fidelity, the Court should conclude that Walsh's proposed claims do not relate back and deny Walsh's motion.

**C.    The Court Should Deny Walsh's Motion For Leave To Amend Because Walsh Improperly Seeks To Effectuate A Dismissal Of Parties Who Are Defendants And Subject To Cross-Claims By Fidelity**

In its proposed fourth amended complaint, Walsh has improperly omitted at least thirteen (13) defendants as parties to these proceedings even though Fidelity (and the other title insurance defendants) has cross-claims pending against them. Specifically, Walsh did not name as parties the following defendants: Capital Assets Property Management & Investments Co., Inc., Capital Assets Property Management, LLC, DAP Consulting, Inc., DEK Homes of New Jersey, Inc., National Home Funding, Inc., Oakwood Properties, Inc., Weichert Realtors, Michael Alfieri, Irene DiFeo, Donna Pepsny, Richard Pepsny, Ronald J. Pierson and Robert Skowrenski, II.  Presumably, Walsh did not include these entities and individuals as parties to its fourth amended complaint because Walsh secured

stipulations of dismissal as to its affirmative claims against them.  See, e.g., Stipulation and Order of Dismissal as to defendants Robert Skowrenski, II and National Home Funding, Inc. [Doc. No 218].

Under well-established precedent in the Third Circuit, however, "a dismissal of the original Complaint as to one of the defendants named therein does not operate as a dismissal of a cross-claim filed against such defendant by a co-defendant".  Aetna Ins. Co. v. Newton, 398 F.2d 729, 734 (3d Cir. 1968); see also Impex Agricultural Commodities v. Leonard Parness Trucking Corp., 582 F. Supp. 260, 262 (D.N.J. 1984) (Debevoise, J.) ("When, however, the original claim against a party is dismissed on the merits, crossclaims previously interposed against the same party remain").  Here, Fidelity stated cross-claims against each of the above-mentioned defendants when it filed its answer to Walsh's third amended complaint and before Walsh agreed to dismiss its affirmative claims against them. As a result, Fidelity's cross-claims remain pending and Walsh's attempt to silently dismiss these defendants as parties to these proceedings should be rejected by the Court.

## IV.  **CONCLUSION**

For all of the foregoing reasons and authority, defendants, Nations Title Insurance of New York, Inc. and Fidelity National Title Insurance Co. of New

York, respectfully request that the Court deny Walsh's motion for leave to file a fourth amended complaint.

Respectfully submitted,

_____

Edward J. Hayes, Esquire
David H. Colvin, Esquire
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103
(215) 299-2092/2139
(215) 299-2150 (facsimile)

Attorneys for Defendants, Nations
Title Insurance of New York, Inc. and
Fidelity National Title Insurance Co. of New
York

Dated:  July 31, 2008

24

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a true and correct copy of the foregoing brief in opposition to plaintiff's motion for leave to file a fourth amended complaint upon the following individuals by first class mail, postage prepaid:

Robert A. Magnanini, Esq.
Boies, Schiller & Flexner LLP
150 John F. Kennedy
Short Hills, NJ 07078
**Attorney for plaintiff Walsh Securities, Inc. and for third-party defendant Robert Walsh**

Ronald M. Kleinberg, Esq.
Richard A. Finkel, Esq.
Meissner, Kleinberg & Finkel, LLP
275 Madison Ave., Suite 1000
New York, New York 10016
**Attorney for defendants Cristo Property Management, LTD, DEK Homes of NJ, Inc., Oakwood Properties, Inc., and William J. Kane**

Michael D. Schottland, Esq.
Lomurro, Davison, Eastman & Muñoz, P.A.
100 Willowbrook Road
Freehold, NJ 07728
**Attorney for Defendants National Home Funding, Inc. and Robert Skowrenski, II**

Martin R. McGowan, Jr., Esq.
Methfessel & Werbel
3 Ethel Road
Suite 300
Edison, NJ 08818
**Attorneys for Defendant Coastal Title Agency**

Edward C. Bertucio, Jr., Esq.
Hobbie, Corrigan, Bertucio & Tashjy, P.C.
125 Wyckoff Road
Eatontown, NJ 07724
**Attorney for Defendant Michael Alfieri, Esq.**

Robert J. Reilly, III, Esq.
Reilly, Supple & Wischusen, LLC
571 Central Avenue
New Providence, NJ 07974
**Attorney for defendant Michael Alfieri, Esq. on the Six Count**

Theodore W. Daunno, Esq.
1033 Clifton Avenue
Clifton, NJ  07013
**Attorney for Defendant Lawrence M. Cuzzi**

Mark W. Catanzaro, Esq.
Blason IV
Suite 208
513 Lenola Road
Moorestown, NJ  08057
**Attorney for defendants Richard Pepsny and Donna Pepsny**

Thomas D. Flinn, Esq.
Garrity, Graham, Favette & Flinn
1 Lackawanna Plaza, Box 4205
Montclair, NJ  07042
**Attorney for Defendant Anthony M. Ciccalese (on certain counts of the Complaint)**

Anthony M. Cicalese, Esq.                Anthony M. Cicalese
467 Long Hill Drive                      74C Manatiales de Belen
Short Hills, NJ  07078                    200 Mtrs Norte de igleseis de Ascen
**Pro se (on certain counts of the Complaint)**   San Antonio de Belen
                                         Heredia, Costa Rica
                                         **Pro se (on certain counts of the Complaint)**

Pasquale Menna, Esq.
Kauff and Menna
170 Broad Street
P.O. 762
Red Bank, NJ  07701
**Attorneys for defendant Roland J. Pierson**

Marc  D. Freedman, Esquire
Freedman & Gersten, LLP
777 Terrace Avenue, 5th Floor
Hasbrouck Heights, NJ  07604
**Attorney for Third Party Defendant Elizabeth Ann DeMola**

Thomas Brodo, Pro Se
139B Fort Lee Road
Teaneck, NJ  07666

James R. Brown, Pro Se
1089 Cedar Avenue
Union, NJ  07083

2

Richard Calanni, Pro Se
One Old Farm Road
Tinton Falls, NJ  07724

Anthony D'Apolito, Pro Se
909 Woodland
Wall Township, NJ  07719

Richard DiBenedetto, Pro Se
P.O. Box 243
Liberty Corner, NJ  07938-0243

Stanley Yacker, Esq., Pro Se
33 Broadway, #1
Ocean Grove, NJ  07756-1397

William Kane, Pro Se
6119 Kipps Colony Drive
Gulfport, FL  33707

Capital Assets Property Management, LLC
10 West Bergen Place
Red Bank NJ  07701

Andrew I. Indeck, Esq.
Scarinci & Hollenbeck, LLC
1100 Valleybrook Avenue
P.O. Box 790
Lyndhurst, NJ  07071

**Attorney for Garden State Indemnity Co. (Legal Malpractice carrier for defendant Michael Alfieri)**

David R. Kott, Esquire
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102

**Attorney for Commonwealth Land Title Insurance Company**

DAVID H. COLVIN, ESQ.

Dated:  July 31, 2008

3