Robert A. Magnanini, Esq.
BOIES, SCHILLER & FLEXNER LLP
150 John F. Kennedy Parkway, Fourth Floor
Short Hills, New Jersey 07078
973-218-1111
Attorneys for Walsh Securities, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | : |
| Plaintiff, | : Civil Action No. 97-cv-3496 (DRD) |
| vs. | : Hon. Dickinson R. Debevoise, U.S.D.J. |
| CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED; DEK HOMES OF NEW JERSEY, INC.; OAKWOOD PROPERTIES, INC.; NATIONAL HOME FUNDING, INC.; CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT CO., INC.; CAPITAL ASSETS PROPERTY MANAGEMENT, L.L.C.; WILLIAM KANE; GARY GRIESER; ROBERT SKOWRENSKI, II; RICHARD CALANNI; RICHARD DiBENEDETTO; JAMES R. BROWN; THOMAS BRODO; ROLAND PIERSON; STANLEY YACKER, ESQ.; MICHAEL ALFIERI, ESQ.; RICHARD PEPSNY, ESQ.; ANTHONY M. CICALESE, ESQ.; LAWRENCE CUZZI; ANTHONY D'APOLITO; DAP CONSULTING, INC.; COMMONWEALTH LAND TITLE INSURANCE CO.; NATIONS TITLE INSURANCE OF NEW YORK, INC.; FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK; COASTAL TITLE AGENCY; STEWART TITLE GUARANTY COMPANY; IRENE DiFEO; DONNA PEPSNY; WEICHERT REALTORS; and VECCHIO REALTY, INC. d/b/a MURPHY REALTY BETTER HOMES AND GARDENS, | : **WALSH SECURITIES, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND ITS COMPLAINT** |
| Defendants. | : |

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION .................................................................................................... 1

LEGAL ARGUMENT .............................................................................................. 1

I.     WALSH SECURITIES' MOTION FOR LEAVE TO FILE A
FOURTH AMENDED COMPLAINT SHOULD BE GRANTED ................... 1

        A.  Walsh Securities' Motion For Leave To Amend Is Not
Untimely Or The Result Of Undue Delay. .................................................... 2

        B.   The Granting Of Walsh Securities' Motion For Leave To
Amend Would Not Prejudice Defendants ...................................... 6

II.    THE PROPOSED AMENDMENTS ARE NOT FUTILE. ............................... 7

        A.   The Meaning of Futility. ............................................................................. 8

        B.   Because the Proposed Amendment Relates Back to the
Original Date of Filing, It is Deemed As Having Been Filed
Within the Statute of Limitations and Therefore Is Not Futile. ............... 8

             1.   Relation Back is Appropriate Because the Claims
Asserted in the Proposed Amendment Arise out of the
Same Conduct Alleged in the Original Pleading. ................................ 10

             2.   Relation Back is Not Barred by the Assertion of
"New" Legal Theories. ........................................................................ 12

        C.   Because the Tortious Interference Claim Would Survive
a Motion to Dismiss, the Amendment is Not Futile. ................................ 14

III.   LEAVE TO AMEND IS JUSTIFIED BECAUSE WALSH SECURITIES
HAS APPROPRIATELY COMPLIED WITH FED. R. CIV. P. 41 ................ 16

CONCLUSION ...................................................................................................... 17

# TABLE OF AUTHORITIES

## Federal Cases

*Barthel v. Stamm,*
   145 F.2d 487 (5th Cir.), cert. denied, 324 U.S. 878 (1944) ....................................................10

*Bell Atlantic Corp. v. Twombly,*
   --- U.S. ----, 127 S.Ct. 1955 (2007) ......................................................................................8

*Bensel v. Allied Pilots Ass'n,*
   387 F.3d 298 (3d Cir. 2004).....................................................................................................9

*Blatt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   916 F. Supp. 1343 (D.N.J. 1996) ..........................................................................................13

*Brown v. Providence Gas Co.,*
   445 F. Supp. 459 (D.R.I. 1976) .......................................................................................10, 12

*Commonwealth Interior Sys. v. Donohoe Cos., Inc.,*
   813 F. Supp. 29 (D.D.C. 1992) ..............................................................................................13

*Cureton v. Nat'l Collegiate Athletic Ass'n,*
   252 F.3d 267 (3d Cir. 2001)..................................................................................................5, 6

*Evans Products Co. v. West American Ins. Co.,*
   736 F.2d 920 (3d Cir. 1984).....................................................................................................9

*In re Burlington Coat Factory Sec. Lit.,*
   114 F.3d 1410 (3d Cir. 1997)...................................................................................................8

*In re PDI Sec. Lit.,*
   Civ. No. 02-211, 2005 WL 2009892, *21 (D.N.J. Aug. 17, 2005) ......................................15

*In re Rockefeller Center Prop., Inc.,*
   311 F.3d 198 (3d Cir. 2002).....................................................................................................8

*Levin v. Weissman,*
   594 F. Supp. 322 (E.D. Pa. 1984) ............................................................................................2

*Lind v. Vanguard Offset Printers, Inc.,*
   857 F. Supp. 1060 (S.D.N.Y. 1994) ..................................................................................10, 12

*Lorenz v. CSX Corp.,*
   1 F.3d 1406 (3d Cir. 1993)...................................................................................... 5

*Morse v. Lower Merion Sch. Dist.,*
   132 F.3d 902 (3d Cir.1997)........................................................................................8

*Muhammad v. U.S.,*
   2008 WL 2355518, *1 -2 (D.N.J. June 4, 2008).............................................8, 16

*Newark Branch, NAACP v. Town of Harrison,*
   907 F.2d 1408 (3d Cir. 1990)....................................................................................2

*Nittolo v. Morris Cty Bd. of Chosen Freeholders,*
   Civ. No. 05-4007, 2007 WL 1521490, *6 n.21 (D.N.J. May 22, 2007) ...............15

*Pepi, Inc. v. Helcar Corp.,*
   458 F.2d 1062 (3d Cir. 1972)....................................................................................2

*Percy v. San Francisco Gen'l Hosp.,*
   841 F.2d 975 (9th Cir. 1988) ....................................................................................9

*Phillips v. County of Allegheny,*
   515 F.3d 224 (3d Cir. 2008)......................................................................................8

*RTC Mortg. Trust 1994 N-1 v Fidelity Nat'l Title Ins. Co.,*
   58 F. Supp. 2d 503 (D.N.J. 1999) ..........................................................................11

*Thomas v. American Cytoscope Makers, Inc.,*
   414 F. Supp. 255 (E.D. Pa. 1976) ............................................................................2

*Tiller v. Atlantic Coast Line R. Co.,*
   323 U.S. 574 (1945)..................................................................................................9

*Unicure, Inc. v. Thurman,*
   97 F.R.D. 1 (W.D.N.Y. 1982)................................................................................13

*United States v. Hougham,*
   364 U.S. 310 (1960)..................................................................................................9

## Federal Statutes

Fed. R. Civ. P. 15(a) .........................................................................................1, 2, 17

Fed. R. Civ. P. 15(c)(2)........................................................................................9, 17

Fed. R. Civ. P. 41(a)(2)...........................................................................................16

## **Miscellaneous**

6 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1488 ...............................2

## INTRODUCTION

Plaintiff Walsh Securities, Inc. ("Walsh Securities") submits this Reply Memorandum in further support of its motion pursuant to Fed. R. Civ. P. 15(a) for leave to file a Fourth[1] Amended Complaint in substantially the form as amended and attached as Exhibit 1 to the Declaration of Robert A. Magnanini ("Magnanini Decl.") filed on June 27, 2008.  This amendment restates and clarifies certain facts and legal theories alleged in prior complaints or asserts new legal theories based on the same facts previously alleged.  The case law is clear that parties can amend their pleadings even after trial and there are good reasons for Walsh Securities amending its pleading at this time, including complying with this Court's orders.  For the majority of time, this case has been in a state of repose, including a stay and administrative termination pending extensive criminal proceedings and a mediation requested by the Defendants.   Walsh Securities amendments are timely, proper and relate back to the initial Complaint filed against the respective Defendants as to whom the new legal theories are asserted.

## LEGAL ARGUMENT

## I.      WALSH SECURITIES' MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT SHOULD BE GRANTED.

The Federal Rules of Civil Procedure provide that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  In light of this liberal standard, the arguments offered by Defendants Commonwealth Land Title Insurance Company ("Commonwealth"),

---

[1] The Complaint was originally amended in November 1997 to add the Title Companies. A ministerial Amendment to the Amended Complaint was filed in February 1998 deleting an individual and correcting the middle initial of a party. (*See* Docket Entry No. 55.) The Third Amended Complaint was filed in January 2005 and added new parties after the case had been restored to the docket.  (*See* Docket Entry No. 108.)  This amendment would be only the *second* substantive amendment to Walsh Securities' pleading.

- 1 -

Coastal Title Agency ("Coastal"), Nations Title Insurance of New York, Inc. and Fidelity National Title Insurance Co. of New York ("Fidelity") (collectively, "Defendants") for the denial of the instant motion are untenable.  For the reasons set forth herein and in its moving papers, Walsh Securities' motion for leave to file a Fourth Amended Complaint should be granted.

### A. Walsh Securities' Motion For Leave To Amend Is Not Untimely Or The Result Of Undue Delay.

Defendants contend that because eleven years have elapsed since the filing of the initial Complaint in this matter, and that because Walsh Securities has previously amended its Complaint, the instant motion should be summarily denied.  That contention lacks support in law and in fact.

This argument wholly ignores the fact that pleadings may be amended virtually at any time -- before trial, during trial, and even post-judgment.  *See Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408, 1417 (3d Cir. 1990); *Pepi, Inc. v. Helcar Corp.*, 458 F.2d 1062, 1063-64 (3d Cir. 1972); *Levin v. Weissman*, 594 F. Supp. 322, 329 (E.D. Pa. 1984); *Thomas v. American Cytoscope Makers, Inc.*, 414 F. Supp. 255, 267 (E.D. Pa. 1976).  This liberal approach to motions filed pursuant to Fed. R. Civ. P. 15(a) is guided by the general principle that "[i]t would be unreasonable to restrict a party's ability to amend to a particular stage of the action inasmuch as the need to amend may not appear until after discovery has been completed or testimony has been taken at trial." 6 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1488.

Moreover, Defendants also ignore the procedural history of this matter, which, though filed on July 17, 1997, has remained inactive for the *vast majority* of the intervening years.  Those lengthy periods of inactivity were outside Plaintiffs' control or were ordered to facilitate settlement discussions.  When active, Plaintiff has vigorously prosecuted this case.  Indeed, if

any party has suffered prejudice from the passage of time, it is Walsh Securities, which has yet to be compensated for its losses.

Less than four months after the action was filed, Walsh Securities amended its Complaint a first time to assert claims against certain title insurance companies that had refused to honor their contractual obligations. (*See* Docket Entry No. 3.) After minimal discovery was conducted, the action was stayed on April 28, 1998 and then administratively terminated for more than four years--from May 26, 2000 until September 30, 2004--pending completion of the related criminal prosecutions. (*See* Docket Entry Nos. 77, 82, 94, and 102.) Shortly after the matter was reactivated, on January 28, 2005, a Third Amended Complaint was filed in order to add additional parties. (*See* Docket Entry No. 108.) The filing of the Third Amended Complaint resulted in extensive and lengthy motion practice by the new parties, as well as motions concerning certain resulting cross-claims and third-party complaints. (*See, e.g.*, Docket Entry Nos. 131, 133, 142, 160-69, 174-75, 181-2, 192-98.)

On March 16, 2006, at Defendants' request, the Hon. Madeline Cox Arleo, U.S.M.J. referred this case to mediation and stayed all proceedings pending its outcome. (*See* Docket Entry Nos. 210 and 212.) After three mediation sessions were held with the Hon. John M. Boyle, J.S.C. (Ret.) during the summer of 2006, Defendants requested that nine individuals be deposed in order for the mediation to proceed. (*See* Docket Entry No. 217.) By Stipulation and Order entered August 30, 2006, the stay was partially lifted for the sole purpose of conducting "a limited number of depositions on limited topics for the purpose of furthering the mediation process." (*See id.*) These nine individuals were deposed over the course of seven months in late 2006 and early 2007. Still unable to reach a resolution to this matter, the parties' mediation efforts ended on January 7, 2008. Immediately thereafter, on January 17, 2008, the Court

ordered that the stay of discovery be lifted. (*See* Docket Entry No. 243.)  On March 17, 2008, the Court entered a Scheduling Order that specifically provided that any motions to amend the pleadings be returnable no later than July 31, 2008.[2]  (*See* Docket Entry No. 247.)  To date, the parties have exchanged some written discovery and produced a number of loan-related documents to a document repository.  However, additional written and paper discovery remains outstanding and all depositions remain to be taken.

Walsh Securities' ability to prosecute this action has been hampered by the numerous periods during which the matter was stayed and/or administratively dismissed.  From April 28, 1998 through September 30, 2004, in deference to the related criminal proceedings, Walsh Securities was prohibited from conducting discovery relating to its claims.  When the case was reinstated in 2004, the parties engaged in lengthy motion practice relating to the Third Amended Complaint, which essentially held discovery at a standstill through much of 2005 and early 2006. Immediately after the resolution of this motion practice, the Court ordered -- at Defendants' request -- that discovery be stayed *again* so that the parties could engage in mediation.  During this mediation, limited discovery was held; that was the first time that certain defendants, having completed their criminal sentences, were willing or able to testify about their role in the underlying fraud.

These depositions enabled Walsh Securities finally to start piecing together the vast conspiracy among Defendants and others who sought to defraud it, and understand each of Defendants' roles.  Walsh Securities now seeks to assert these new claims within the deadline set by the Court.  Each such claim arises out of the operative facts found in previous versions of

---

[2] Walsh Securities complied with the Court's order and filed this motion so that it would have been returnable before the end of July.  At Defendants' request, however, Walsh Securities consented to an adjournment of this motion such that it is now returnable on August 18, 2008.

Walsh Securities' complaints and represents only the clarification of the legal theories related to those facts. The argument that Walsh Securities has been dilatory in prosecuting this action and in seeking leave to amend its pleading is little more than a distortion of the record.

Further, the facts of the cases upon which Defendants rely are readily distinguishable from those of the present matter. For example, Defendants rely heavily on *Lorenz v. CSX Corp.*, 1 F.3d 1406 (3d Cir. 1993), to suggest that Walsh Securities' delay in bringing this motion was unreasonable. (Commonwealth Br. at 11, 15; Coastal Br. at 3.) In *Lorenz*, which involved RICO claims against a railroad company related to its issuance of convertible debentures, one of the plaintiffs moved to amend her complaint to add factual allegations to her RICO claim. 1 F.3d at 1413. Although the plaintiff's initial complaint had been filed in 1986, she sought to add facts that largely concerned the railroad's history in the decades prior to that date. *Id.* at 1414. The District Court based its denial of the plaintiff's motion on the fact that "most of the facts were available to [the plaintiff] before she filed her original complaint in 1986, and probably all of them were available when she amended her complaint in May and August 1987 . . . ." *Id.* Here, however, Walsh Securities' proposed amendment does not seek to add facts that were available to it when the Complaint was initially filed; rather, the proposed Fourth Amended Complaint clarifies Walsh Securities' some facts and legal theories, conforms to the facts developed to date, and adds additional legal theories based upon the facts contained in prior versions of the pleading.

Defendants' reliance on *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267 (3d Cir. 2001) (Commonwealth Br. at 14.) is similarly misplaced. *Cureton* concerned a challenge by African-American student-athletes to the eligibility requirements of the National Collegiate Athletic Association (the "NCAA") as violative of Title VI. 152 F.3d at 269. The plaintiffs,

who alleged that the eligibility requirements had a disparate impact on African-Americans, were granted summary judgment on their claim only to have the same reversed (and remanded for judgment on the defendants' cross-motion for summary judgment) on appeal. *Id.* at 272. Thereafter, the plaintiffs filed a motion to alter or amend the summary judgment and a motion for leave to amend their complaint to assert intentional discrimination claims, which was ultimately denied. *Id.*

Clearly, the facts and circumstances currently now before this Court are nothing like those before the court in *Cureton*. The parties in *Cureton* had litigated the case to judgment; here, however, the parties have only engaged in initial written discovery and a limited number of depositions for use in the mediation. Thus, the interests "in judicial economy and finality of litigation" that may arise when "a party delays making a motion to amend until after summary judgment has been granted to the adverse party," *id.* at 273-74, which were of such importance in *Cureton*, are not present here.

Any "delay" in bringing this motion resulted from stays enacted at the Defendants' requests or the Administrative Termination of the case, and their effects on Walsh Securities' ability to uncover the fraud perpetrated upon it. As such, this delay, amounting to approximately 8 years and 3 months, which has served as a shield for Defendants, should not also be allowed to serve as a sword and a basis for denying Walsh Securities' motion for leave to amend its pleading.

### B. The Granting Of Walsh Securities' Motion For Leave To Amend Would Not Prejudice Defendants.

Despite their contentions, the Defendants will not be unfairly prejudiced by the granting of Walsh Securities' motion for leave to amend because they have had notice of the vast majority of the facts in prior pleadings or discovery underlying the legal theories now proposed.

Specifically, much of the amendment charges some Defendants with liability for the acts of their agents alleged in prior pleadings. Fidelity claims that the amendment "will require [it] to alter its strategy in defense of Walsh's claims" (Fidelity Br. at 16), while Coastal alleges that they "will require [it] to alter its defense strategy at this late hour and at a time when all parties are under very strict time requirements from the Court . . . ." (Coastal Br. at 5.) Simply put, this is not the case.

As discussed more fully herein, the proposed amendment does little more than clarify the legal theories upon which Walsh Securities seeks to recover against Defendants. These theories of recovery stem from the facts already contained in Walsh Securities' previous pleadings and clarified through the limited discovery based on the original pleadings that has already taken place. As such, these proposed claims, and the factual allegations underlying the same, could not reasonably cause any alteration in Defendants' defense strategy, especially in light of the limited discovery conducted to date. Should Defendants feel the need to alter the manner in which they are defending themselves, they will have the opportunity to do so through the remainder of the litigation process. Accordingly, as Defendants have not established that they will be prejudiced, Walsh Securities should be permitted to amend its pleading.

## II.    THE PROPOSED AMENDMENTS ARE NOT FUTILE.

Defendants also argue that Walsh Securities should be denied the opportunity to amend its complaint because the proposed amendment would be futile. (Commonwealth Br. at 15-16; Fidelity Br. at 12-15; Coastal Br. at 6.) In so doing they make two primary arguments: (1) that the claims presented are barred by the statute of limitations because the relation back doctrine does not apply (Commonwealth Br. at 16-17, 18-23; Fidelity Br. at 12-14, 17-22; Coastal Br. at 5-6); and (2) that the tortious interference claim fails as a matter of law (Fidelity Br. at 14-15).

- 7 -

First, the proposed amendment properly relates back to the date of the original complaint thereby eliminating any statute of limitations arguments. Second, although Defendants are correct that futile amendments need not be permitted, the tortious interference claim is not futile because advancement of that claim to the next stage of litigation is justified.

### A.  The Meaning of Futility.

Under Third Circuit precedent, "'futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1434 (3d Cir. 1997). In assessing whether a proposed amendment would be futile, the Third Circuit "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* Thus, Walsh Securities' proposed amendment is not futile if it could withstand a motion to dismiss wherein "the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Muhammad v. U.S.,* 2008 WL 2355518, *1-2 (D.N.J. June 4, 2008) (Debevoise, U.S.D.J.) (quoting *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997)).

This Court's inquiry "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *Id.* (quoting *In re Rockefeller Center Prop., Inc.,* 311 F.3d 198, 215 (3d Cir. 2002)). More specifically, the Court must determine that "the allegations of the complaint [are] enough to 'raise a reasonable expectation that discovery will reveal evidence of the necessary element,' thereby justifying the advancement of 'the case beyond the pleadings to the next stage of litigation.'" *Id.* (quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 234-35 (3d Cir. 2008)).[3]

---

[3]     In enunciating this standard, the Third Circuit relied directly upon *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955 (2007).

**B.**   **Because the Proposed Amendment Relates Back to the Original Date of Filing, It is Deemed As Having Been Filed Within the Statute of Limitations and Therefore Is Not Futile.**

Under Fed. R. Civ. P. 15(c)(2), claims asserted in an amended pleading will relate back to the original date of filing if the new allegations arise out of the same conduct, transaction or occurrence as that alleged in the original pleading. The primary policy underlying this rule is avoiding prejudice to the defendant. *Evans Products Co. v. West American Ins. Co.*, 736 F.2d 920, 924 (3d Cir. 1984) (citing *United States v. Hougham,* 364 U.S. 310, 315 (1960)). To avoid prejudice to the defendant, it is necessary "that the defendant be able to anticipate claims that might follow from the facts alleged by the plaintiff." *Percy v. San Francisco Gen'l Hosp.,* 841 F.2d 975, 979 (9th Cir. 1988). Notice to the defendant "of the facts that caused the injury alleged in the amended pleading" is therefore paramount. *Id.* at 980. Such notice is provided whenever the new claim is "related to same *general* conduct" as alleged in the original pleading. *Tiller v. Atlantic Coast Line R. Co.,* 323 U.S. 574, 581 (1945)(emphasis added). When such notice has been provided, an amendment should be permitted "to facilitate a fair trial of the existing issues between plaintiff and defendant." *Id.* Defendants cannot deny that they had "fair notice of the general fact situation . . . upon which the amending party proceeds." *Bensel v. Allied Pilots Ass'n,* 387 F.3d 298, 310 (3d Cir. 2004).

Each of the Defendants argues that the proposed Fourth Amended Complaint would be futile because the claims found therein would be barred by the statute of limitations. (Commonwealth Br. at 16-17, 18-23; Fidelity Br. at 12-14, 17-22; Coastal Br. at 5-6.) Their arguments fall into three categories: (1) the facts upon which the new claims are based are different from those previously asserted; (2) while the facts underlying the new claim were previously asserted, those facts were asserted against other defendants; and (3) the new claims

are legally distinct from those previously asserted.  These arguments, however, are simply unsupported by either the law or the facts, and the proposed amendment properly relates back to the original date of filing.

### 1.  Relation Back is Appropriate Because the Claims Asserted in the Proposed Amendment Arise out of the Same Conduct Alleged in the Original Pleading.

Whether a proposed amendment "arises out of the same conduct" as that alleged in an original pleading is a question of whether the amendment arises "out of the transaction or occurrence which spawned the litigation." *Lind v. Vanguard Offset Printers, Inc.,* 857 F. Supp. 1060, 1068 (S.D.N.Y. 1994).  Where the original pleading involved an agreement between the parties, claims arising out of "the entry into the Agreement" or "revolving around the consummation of the Agreement" will be considered to have arisen from the same conduct under Rule 15(c).  *Id.; see also Brown v. Providence Gas Co.,* 445 F. Supp. 459, 462-63 (D.R.I. 1976) (allegations that party violated certain regulations asserted for first time in proposed amendment related back because the violations related to the contract underlying the initial complaint).  This is because "[w]hen a suit is filed…, the defendant knows that the whole transaction described in [the complaint] will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to [plaintiff's] first statement." *Brown,* 445 F. Supp. at 462-63 (quoting *Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir.)).

Defendants all join in the argument that the new claims do not relate back because they are based on facts which are different from those previously asserted.  However, none explains precisely how the facts are different, instead resting this argument on bald conclusory statements.  Perhaps this is because the facts previously alleged and the new claims are intimately related: the claims in the proposed amendment are related to, or revolve around, the entry into and the

consummation of the agreements between Walsh Securities and Defendants and the actions of the Defendants agents.

In its previous pleadings, Walsh Securities described the real estate purchase process and its role, as well as the role of Defendants and their agents, in that process. It detailed how it lent money for others to acquire mortgages and the steps it took to protect itself in these transactions, namely through the receipt of closing service protection letters issued in conjunction with certain title insurance policies, without which Walsh Securities would never have wired the mortgage proceeds to the Defendants' closing agents. The new claims are related directly to Defendants' execution of their obligations under the closing service protection letters and title insurance policies.

Indeed, Commonwealth has conceded that "[t]he transaction at issue in the previous Complaints is the consummation of a purported agreement by Commonwealth to provide title insurance for plaintiff." (Commonwealth Br. at 20.) It is precisely this "consummation" which underlies and forms the basis for the new claims: by entering into the agreements with Walsh Securities, Defendants and their agents were under an obligation to discharge certain duties, including the duty to ensure that its agents did not act negligently. *See RTC Mortg. Trust 1994 N-1 v. Fidelity Nat'l Title Ins. Co.,* 58 F. Supp. 2d 503, 535-42 (D.N.J. 1999). Defendants assumed those duties beyond any duties or obligations that may have been created by the closing protection letter and/or the title insurance policies themselves. *See id.*[4]

Having failed to abide by those duties, Defendants cannot now seek to avoid liability for

---

[4] In *RTC Mortg. Trust*, the court granted partial summary judgment against a title insurer, found that the insurer assumed the duty, through its contractually authorized and apparent agent, to close the transaction in compliance with the lender's closing requirements, to timely record the closing documents, and to ensure that the lenders' lien was given first priority. *Id.* The court held that the title insurer assumed this duty "independent of the terms of the title insurance policy." 58 F. Supp. 2d at 539.

them based on bald assertions that the prior claims and the new claims are unrelated. Moreover, Defendants are charged with the knowledge that Walsh Securities would seek to modify its claims against them arising out of the agreements between the parties once Defendants' roles in the previously alleged loan process had been "fully sifted." *Brown,* 445 F. Supp. at 462-63. In conclusion, because "the entry into the Agreement" and the conduct "revolving around the consummation of the Agreement" form the basis for the new claims, and the details regarding these agreements were previously alleged, relation back is proper. *Lind,* 857 F. Supp. at 1068.

### 2.   Relation Back is Not Barred by the Assertion of "New" Legal Theories.

Both Commonwealth and Fidelity argue that the fraud claims asserted in the proposed amendment do not relate back because Walsh Securities did not previously assert against Commonwealth and Fidelity the facts related to the fraud claims, instead directing those allegations against other defendants. (Commonwealth Br. at 19-21; Fidelity Br. at 19-22.) These parties' arguments are misplaced and the cases upon which they rely are utterly disconnected from the posture of this case. The proposed amendment is based on facts alleged against these Defendants in prior pleadings, namely that their agents committed fraud in connection with transactions for which Walsh Securities loaned money, and are intimately related to Commonwealth and Fidelity's contractual relations with Walsh Securities. The fraud now being alleged is not simply, as Commonwealth contends, the same as that previously alleged against other defendants (Commonwealth Br. at 19), but is directly related to Defendants' consummation of their agreements with Walsh Securities.

Unlike the cases cited by the Defendants, this is not a situation where Walsh Securities is attempting to "expand the scope of the factual allegations against" these parties or to hold them accountable for the actions of another, or seeking to assert notice via some informal means. *See*

*Unicure, Inc. v. Thurman,* 97 F.R.D. 1, 4-5 (W.D.N.Y. 1982) (finding no relation back where prior pleadings did not include any allegations against the specific defendant which would support claims made against that defendant in the proposed amendment); *Commonwealth Interior Sys. v. Donohoe Cos., Inc.,* 813 F. Supp. 29, (D.D.C. 1992) (finding no relation back where plaintiff claimed defendant was on notice of proposed claim by virtue of supposed oral notice, not of contents of prior pleading). Instead, Walsh Securities is asserting a new legal theory based on facts previously alleged or reasonably inferable from facts previously alleged; a practice which is explicitly permitted in this District. *See, e.g., Blatt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 916 F. Supp. 1343, 1351 (D.N.J. 1996). As a case cited by Defendants provides, it is not a connection between claims that must be shown, but rather a connection between the facts forming the basis for those claims. *Unicore,* 97 F.R.D. at 4-5.

Finally, Defendants argue that the proposed amendment should not be permitted because it does more than restate a prior claim by setting forth a new legal theory unrelated to prior legal theories. (Coastal Br. at 6; Commonwealth Br. at 20; Fidelity Br. at 21.) While Defendants are correct that an amendment which restates a prior claim will relate back, they fail to cite any case law for the premise that new legal theories do not relate back simply because they are legally distinct from theories already contained in the complaint. Indeed, Defendants could not provide any such authority because a party may amend its pleadings to assert new legal theories of relief. *See, e.g., Unicore,* 97 F.R.D. at 4-5. The question is not whether a new legal theory has been alleged, but whether the facts underlying the new theory are related to those originally plead. *See, e.g., id.; Tiller,* 323 U.S. at 581. As discussed above, the claims in the proposed amendment are related to the facts previously alleged and information uncovered since the last amendment. Thus, the claims in the proposed amendment relate back regardless of whether they are new legal

- 13 -

theories. Accordingly, the Court should grant Walsh Securities' Motion, allow the amendment, and order that all claims therein be deemed as relating back to the original date of filing.

### C. Because the Tortious Interference Claim Would Survive a Motion to Dismiss, the Amendment is Not Futile.

Fidelity argues that Walsh Securities' proposed tortious interference claim, even if deemed to relate back, is nevertheless futile because it is fails as a matter of law. (Fidelity Br. at 14.) It rests its position entirely on what it calls a contradiction between allegations in the proposed paragraphs 52 and 102 of the amendment regarding a document upon which the claim is based and the actual content of that document. (*Id.*) Not only is there no such contradiction, the facts as alleged support a claim upon which relief can be granted. As such, the tortious interference claim is not futile and the amendment should be permitted.

More specifically, Fidelity claims that the allegations in the proposed amendment are contradicted by the document cited therein. The proposed paragraph 52 quotes the actual language of Fidelity's letter to its "Agents and Approved Attorneys" that "no binders, commitments or title insurance policies should be issued to Walsh Securities, Inc. covering property in any state, without the prior written approval of Fidelity." Walsh Securities alleges that "as a direct and proximate result of this Memorandum, mortgage brokers quickly learned that Fidelity Title would not insure loans by Walsh Securities . . . ." (Proposed Fourth Amended Complaint, ¶ 103).

Fidelity argues that this allegation is contradictory to the contents of the document because the document states that loans issued by Walsh Securities only require Fidelity's pre-approval. Fidelity appears to be taking issue with Walsh Securities' allegation concerning the effect of the Memorandum, which is a factual issue for the jury to decide. Fidelity is equating content with effect, perhaps because it cannot deny that it issued the Memorandum and does not

deny that it had the effect Walsh Securities alleges.   In short, Fidelity is attempting to manufacture a contradiction where none exists and any such contradiction is an issue of fact which must be resolved by a jury.

Further, the cases relied upon by Fidelity with respect to the contradiction issue provide no support for its position.  In *In re PDI Sec. Lit.,* Civ. No. 02-211, 2005 WL 2009892, *21 (D.N.J. Aug. 17, 2005), the Court found an explicit contradiction: the document cited by the plaintiff did not state that which the plaintiff specifically alleged it did.  2005 WL 2009892 at *21.   The plaintiff claimed the document referred to losses in a "fourth quarter" but the document actually referred to losses in the "first quarter."  *Id.*  In *Nittolo v. Morris Cty Bd. of Chosen Freeholders*, Civ. No. 05-4007, 2007 WL 1521490, *6 n.21 (D.N.J. May 22, 2007), the contradiction was found within the pleading itself: in one paragraph the plaintiff claimed to have held a certain position and in another admitted having no contract for any such position.

Here, Walsh Securities has not contradicted the document or itself, nor has it made the type of "bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations" that courts generally may discount.  *Id.* Instead, Walsh Securities quoted directly from the Memorandum issued by Fidelity and the alleged contradictory statement in ¶ 103 of the Proposed Fourth Amended is a reasonable inference drawn from those facts: the document expressly restricts the previously unrestricted authority of Fidelity's agents; a reasonable inference is that this restriction was akin to the removal of authority, thereby causing mortgage brokers to steer business away from and causing damages to Walsh Securities. Because Walsh Securities is permitted to offer evidence in support of this claim, *see Muhammad*, 2008 WL 2355518 at *1 -2, and has stated a claim upon which relief can be granted, it should be permitted to amend its pleading to properly put this claim

before the Court.

**III.   LEAVE TO AMEND IS JUSTIFIED BECAUSE WALSH SECURITIES HAS
APPROPRIATELY COMPLIED WITH FED. R. CIV. P. 41**

The proposed amendment seeks to streamline the Complaint and narrow the focus of the

case for trial. This was specifically discussed at the Case Management Conference on March 14,

2008 and counsel indicated to the Court that parties that had been dismissed would be removed

from the proposed Fourth Amended Complaint. In this vein, Walsh Securities has proposed to

remove, from the caption and the causes of action, any Defendants that have already been

dismissed from this case by way of Court Order. As Fidelity has recognized: "Walsh did not

include these entities and individuals as parties to its fourth amended complaint because Walsh

secured stipulations of dismissal as to its affirmative claims against them." (Fidelity Brief at 22-

23). More specifically, these defendants were dismissed either by the Court on a motion to

dismiss, on default judgment, or voluntary dismissal approved by the Court for the reasons

grounded in an Order on a motion to dismiss or through a settlement. [5] Thus, Walsh Securities

has abided by Fed. R. Civ. P. 41(a)(2) as to its own claims against these dismissed defendants.

In any event, at no time was Walsh Securities attempting to circumvent or negate the

cross-claims that may have been asserted by the Title Insurance Defendants. If the Court prefers,

these claims can be added back into the proposed amendment so as to avoid any further

---

[5] *See* Docket Entry Nos. 195-96 (1/23/06 Opinion and Order dismissing Stewart Title
Guaranty Company and Weichert Realtors with prejudice); Docket Entry No. 234 (1/24/07
Default Judgment Against DEK Homes of New Jersey, Inc., Oakwood Properties, Inc., Capital
Assets Property Management & Investment Co., Inc., Capital Assets Property Management,
LLC, and DAP Consulting, Inc.); Docket Entry No. 200 (1/30/06 Order of Dismissal as to Irene
DiFeo); Docket Entry No. 253 (5/8/08 Stipulation and Order of Dismissal as to Donna Pepsny);
Docket Entry No. 189 (11/28/05 Stipulation of Dismissal as to Roland Pierson); *See* Docket
Entry No. 218 (9/7/06 Stipulation and Order of Dismissal as to National Home Funding, Inc. and
Robert Skowrenski, II). Further, a Stipulation of Dismissal was entered into with Michael
Alfieri, Richard Pepsny and Anthony Cicalese as a result of the mediation.

confusion.[6]  The motion for leave to amend should not be denied because no such violation of Rule 41 has occurred.

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in its moving papers, Walsh Securities, Inc. respectfully requests that the Court grant its Motion for Leave to File a Fourth Amended Complaint with Right of Relation Back pursuant to Fed. R. Civ. P. 15(a) and 15(c)(2).

Respectfully submitted,

_____/s/_____
Robert A. Magnanini
**BOIES, SCHILLER & FLEXNER LLP**
150 John F. Kennedy Parkway, 4th floor
Short Hills, New Jersey 07078
(973) 218-1111
Counsel for Plaintiff Walsh Securities, Inc.

Dated: August 11, 2008

---

[6] In addition, counsel for the Defendants have been informed that Walsh Securities intends to correct its proposed amendment that inadvertently omitted them from the wherefore clause in Count III.