# EXHIBIT D

PROGRAM PARTICIPANT
LOAN PURCHASE AND SALE AGREEMENT

THE AGREEMENT is entered into in the State of New Jersey this 24 day of apr, 1998, between GF Mortgage Corporation, as ("BUYER") having a place of business at 4 Campus Drive, Parsippany, NJ 07054 and National Home Funding, Inc. as ("SELLER") having a place of business at 3443 rt. 9N Freehold NJ. 07728.

WHEREAS, Buyer is the owner of the "90's Middle America"® loan program, by which Buyer purchases mortgage loans from Program Participants that have been originated by the Program Participant.

WHEREAS, Seller is a Program Participant who wishes from time to time to sell and Buyer wishes from time to time to buy all of Seller's right, title and interest in and to certain promissory notes secured by first lien on residential real property.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter contained, the parties hereto agree as follows:

## ARTICLE 1
## DEFINITIONS

Whenever used in this agreement, the following words and phrases, unless the context otherwise requires, shall have the following meaning:

**FHLMC:** The Federal Home Loan Mortgage Corporation

**FNMA:** The Federal National Mortgage Association

**Loan(s):** Loan (and when plural, the loans) to be purchased by Buyer pursuant to this agreement and made by Seller to an Obligor evidenced by a Note and secured by a Security Instrument.

**Loan Schedule:** A schedule of information with respect to each loan.

**Loan File:** All documents of whatever name and nature in any way whatsoever that may pertain or relate to a Loan.

**Note:** Promissory Note payable to Seller evidencing a Loan made by Seller to an Obligor.

**Note Rate:** The annual interest rate which Buyer shall realize on a Loan.

**Obligor:** The person or persons who obtained a Loan and executed a Note and/or a Security Instrument.

**Program:** The "90's Middle America"® loan program, as amended from time to time by Buyer.

**Program Documents:** The 90's Middle America® Program Participant's Manual, as amended from time to time by the Purchaser.

Rev. 7/10/94 (73)

1

Program Participant: The Seller

Purchase Dates: The dates on which Buyer shall from time to time purchase the Loans.

Purchase Price Schedule: The Purchase Schedule shall be provided from time to time by Buyer to Seller.

Buyer's Underwriting Guidelines: Buyer's Underwriting Guidelines for the Program as amended from time to time by the Buyer in its sole discretion.

Security Instrument: A mortgage or deed of trust securing a Note and creating a first lien on residential real property, securing the Note.

## ARTICLE 2
## PURCHASE AND SALE

Buyer hereby agrees from time to time to buy and Seller hereby agrees from time to time to sell, endorse, transfer and assign to Buyer on the Purchase Dates all of Seller's right, title and interest in the Loans that were acquired or concurrently funded, provided, however, that such purchase and sale shall be subject to the terms of this Agreement. As to each Loan, Seller further agrees to (1) sell, transfer and assign to Buyer each Note properly endorsed by Seller and the beneficial interest under each Security Instrument securing each Note to be evidenced by an assignment in recordable form prepared by the Buyer and reviewed by the Seller for completeness and enforceability and (2) transfer and assign to Buyer all of Seller's interest in each of the policies of title or other insurance with respect to each Loan and any proceeds due or to become due thereunder.

## ARTICLE 3
## PRICE

The purchase price for each Loan shall be calculated as set forth in the Purchase Schedule.

## ARTICLE 4
## PURCHASE DATE

4.01   On each Purchase Date, Seller shall provide to Buyer:

    (a)   A Loan Schedule which shall list each Loan to be purchased on Purchase Date and shall set forth as to each such Loan:

        (i)   the account number of the Loan;

        (ii)   the name of the Obligor;

        (iii)   current interest rate;

        (iv)   the then outstanding principal balance;

        (v)   the premium or discount as agreed between Buyer and Seller;

2

(b) if not a newly originated loan, a full and complete payment history of the Loan;

(c) the Loan File which shall include, but not be limited to the following documentation as to each Loan set forth in the Schedule of Loans:

    (i) the original Note properly endorsed to Buyer and an assignment in a form acceptable to Buyer and in recordable form of all of Seller's right, title and interest thereto;

    (ii) a certified copy of the executed Security Instrument, the original Security Instrument with evidence of recordation thereof to be delivered to Buyer within sixty (60) days of the Date of closing of the Loan; and the original assignment, in recordable form, which assignment shall be an assignment to Buyer of all of Seller's right, title, and interest thereto;

    (iii) the original federal Truth-In-Lending Disclosure Statement and Rescission Notice, if applicable;

    (iv) the original title policy or a title binder or commitment for the same, which has been marked up by the closing agent of the title company with the original title policy to be delivered within sixty (60) days of the Purchase Date.

    (v) the original appraisal; and

    (vi) All Standard Credit Documentation, or, where approved by the Buyer, Alternate Credit Documentation, as described in the Program Documents.

    (vii) All other disclosures required by law, including the RESPA disclosure statements and the closing statement.

4.02 On each Purchase Date, Buyer shall pay to Seller, by draft or wire in immediately available funds, the total purchase price for all acceptable loans (net of Buyer's fees, escrows, prepaid interest, and other deductions) listed on the Purchase Schedule provided on that Purchase Date.

## ARTICLE 5
## BUYER'S UNDERWRITING GUIDELINES

All Loans must comply with the Buyer's Underwriting Guidelines. Any changes to said underwriting guidelines will not affect Loans previously submitted to Buyer provided they close within 90 days after the underwriting changes. In the event Buyer purchases a Loan which does not comply with said guidelines, the exception must be preapproved in writing by Buyer and Buyer may purchase such Loan at Buyer's option and sole discretion; provided, however, that any such purchase shall not constitute a waiver of the guidelines and shall not obligate Buyer to purchase any other Loan which does not conform to Guidelines.

3

Rev. 9/30/94(JTS)

## ARTICLE 6
## REPRESENTATIONS, WARRANTIES, AND COVENANTS OF SELLER

6.01  For each Loan purchased that is a closed loan or a concurrently funded loan by Buyer, Seller for and with respect to itself, and any prior holder of the Notes and Mortgages sold hereby, and any Mortgage Broker, Banker or lender dealing with Seller, or any prior Note Holder hereby represents, warrants and covenants to Buyer that, as of the Purchase Date:

(a)  All information set forth in any Loan Schedule, is true and correct in all respects, and all other information furnished to Buyer with respect to the Loans is true and correct.

(b)  Each Security Instrument constitutes a valid first lien on a residential real property securing the related Note subject only to (i) current real property taxes and assessments, (ii) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Security Instrument, such exceptions appearing of record being acceptable to mortgage lending institutions generally or specifically reflected in the title report obtained by Seller, and (iii) other matters to which like properties are commonly subject which do not interfere with the benefits of the security intended to be provided by such Security Instrument. No improvement considered in determining the related appraised value is in violation of any applicable zoning law or regulation where required by law, a certificate of occupancy or other permits have been issued and are included in the mortgage file, and the mortgaged property is lawfully occupied under applicable law. Each Mortgagor is an individual natural person.

(c)  At the closing date, there was no secondary financing at loan origination except as approved by the Buyer in writing.

(d)  There is no default, breach, violation or event of acceleration existing under any Note or Security Instrument and no event which, with notice and the expiration of any applicable grace or cure period, would constitute such a default, breach, violations or event of acceleration; and Seller shall not have waived any such default, breach, violations or event of acceleration.

(e)  There is no delinquent tax or assessment lien against the property subject to a Security Instrument. There are no mechanic's liens or claims for work, labor or material affecting the premises subject to a Security Instrument which are or may be a lien prior to, or equal with, the lien of such Security Instrument except those which are insured against by the title insurance policy referred to in subsection (m) below.

(f)  There is no valid offset, defense or counterclaim to any Note or Security Instrument, including the obligation of the Obligor to pay the unpaid principal, interest, or other charges on such Note.

(g)  The residential real property including any improvement, which is subject to a Security Instrument, is free of damage and in good repair. Any and all requirements as to the completion of onsite or offsite improvements and as to the disbursement of any escrow funds therefore have been complied with.

(h)  Each Note and Security Instrument is valid and enforceable in accordance with its terms and will be valid and enforceable in accordance with its terms by Buyer after Buyer's purchase. Each Note and the related mortgage are genuine.

4

(i) There shall be no homestead or other exemption available to the Obligor which would interfere with the right to sell at a trustee's sale or the right to foreclosure.

(j) There shall be no holder in due course claim or any claim against any third party available to the Obligor which would interfere with the Buyer's right to enforce the Security Instrument, to sell at a trustee's sale, or the right to foreclosure.

(k) With respect to each Security Instrument which is a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated in such deed of trust. Except in connection with a trustee's sale after default by the Obligor, no fees or expenses are payable by Seller to the trustee under any deed of trust.

(l) Seller shall be responsible for the misfeasance, malfeasance or fraudulent acts in connection with the origination of the mortgage loan.

(m) A fully paid for lender's title insurance policy regarding each Loan became effective as of the origination of such Loan, is, and shall be, valid and is, and shall remain, in full force and effect; such title insurance shows whether any prior lien secures an open-end obligation requiring future advances; any such insurance policy has been issued by a title insurer qualified to do business in the state in which the real property subject to a Security Instrument is located, insuring the priority of the lien of the Loan in the original principal amount of such Loan, which policy is in the then current American Land Title Association or a state land title association form customarily used in the state in which the insured property is located. Each title insurance company is acceptable to FNMA.

(n) The real property under each Security Instrument is insured, under standard homeowners hazard and casualty insurance policies, with appropriate mortgagee clauses, for an amount equal to the full insurable value of the buildings and improvements on the property which shall be an amount at least satisfactory to indemnify Buyer from loss, each such policy having been written by a duly licensed insurance company and in compliance with all applicable federal and state statutes, regulations, or requirements.

(o) Seller has no knowledge of any condition, term or subject related to the Obligor, the mortgaged property, or the loan file which could reasonably be expected (1) to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment; or (2) to cause the Mortgage Loan to become delinquent; or (3) to adversely affect the value or marketability of the Mortgage Loan; or (4) to violate any of Buyer's Underwriting Guidelines (except as disclosed in the Mortgage File).

(p) If Seller is a corporation or partnership it is duly organized, validly existing and in good standing under appropriate state laws, and has full power and authority to own its properties and carry on its business as it is now being conducted and is duly qualified to transact business as a foreign corporation in all states where such qualification is required.

(q) Seller has the power to sell, transfer and assign the Loan, and such sale, transfer and assignment has been duly authorized by Seller and constitutes the legal, valid and binding obligation of Seller, enforceable in accordance with the terms of this Agreement. Seller has obtained any and all necessary consents of third parties required of it in order to accomplish such sale, transfer and assignment.

5

(r) Seller has good and marketable title to and is the sole owner of, and has duly and validly perfected its ownership interests in and under the Security Instruments, and there has been no assignment, sale or hypothecation thereof, nor has any portion of the real property securing any Loan been released from the lien created by the Security Instrument, nor have any of the terms of the Security Instrument been modified. Seller is the owner of, and duly and validly perfected its ownership interests in the proceeds derived from insurance covering the mortgaged premises, free and clear of any and all superior claims, liens or encumbrances of any kind whatsoever, and upon the sale of the Loans to Buyer, Buyer shall be vested with all right, title and interest in and to each such Loan, or the proceeds derived from any title or other insurance policies covering title secured property, free and clear of any and all claims, liens or encumbrances.

(s) There are no actions, suits or proceedings existing, pending or, threatened against or affecting Seller before any court, arbitrator or governmental or administrative body or agency which affect the validity or enforceability of the Loans or which might result in any adverse change in the value of the Loans.

(t) Seller has received all necessary federal, state or local licenses, permits, and/or authorizations and approvals required to conduct its business as is presently being conducted and to perform its functions under this Agreement.

(u) All actions taken by Seller and all agreements, if any, with Obligor, forms letters, notices, statements and other materials used by it in connection with the Loans and all loan documents, comply with all applicable State and Federal laws and regulations including, but not limited to the Federal Consumer Credit Protection Act and Regulation Z under Title 1 including the Truth in Lending Simplification and Reform Act and Revised Regulation Z, credit discrimination acts and the Real Estate Settlement Procedure Act (including any regulations, judicial decision and/or official opinions relating thereto), any applicable statutes respecting the origination of or the execution of real estate secured loans, including state usury laws, any applicable statutes respecting the obtaining and/or use of credit reports and other information concerning individuals, any applicable statutes respecting the collection of debts, and all other applicable Federal, State and Local statutes, regulations, ordinances or administrative rulings relating thereto, including but not limited to those relating to unfair, deceptive or unconscionable acts and practices.

(v) All real estate appraisals made in connection with each Loan shall have been performed in accordance with the Buyer's Underwriting Guidelines on a form approved by FNMA or FHLMC and The Uniform Standards of Professional Appraisal Practice, and with industry standards in the appraising industry in the area where the appraised property is located. Each appraiser has been previously approved by the Buyer.

(w) Each Loan is a closed loan or a concurrently funded loan by Seller. The proceeds of each loan have been fully disbursed.

(x) Each loan conforms with the requirements of the Program Documents.

(y) Seller shall repurchase any Loan if a subsequent audit determines any fraudulent acts or misrepresentation of Seller, its correspondents, prior Note Holders or any of their agents is contained in the Loan file that supported the credit underwriting decision.

6

(z) If the residential property is in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards, a flood insurance policy in a form meeting the requirements of the current guidelines of the Flood Insurance Administration is in effect with respect to such residential property with a generally acceptable carrier in an amount representing coverage not less than the least of (1) the original outstanding principal balance of the loan, (ii) the minimum amount required to compensate for damage or loss on a replacement cost basis or (ii) the maximum amount of insurance that is available under the Flood Disaster Protection Act or that is available under the Flood Disaster Protection Act of 1973.

6.02   <u>Survival of Representations, Warranties and Covenants' Breach of Warranty</u>

It is understood and agreed that the representations and warranties set forth in this Agreement including but not limited to those representations and warranties set forth in this Article shall survive the execution of this Agreement and the purchase of Loans hereunder. Seller shall be responsible for the acts of its agents, employees, correspondents, brokers, and prior Note Holders. Upon discovery by either Seller or Buyer of any breach of any said representations and warranties, which in any way adversely affects the Buyer, the party discovering such breach shall give prompt written notice to the other. Within 60 days of its receipt of notice of breach, Seller shall at Buyer's option cure such breach, or repurchase the Loan from Buyer. Any such repurchase by Seller shall be at a repurchase price equal to the then outstanding principal balance of such Loan, or, where each loan is purchased by Buyer at a premium over par, the unpaid principal balance multiplied by par plus the premium together with interest at the Note Rate for such Loan for the period from the date to which such interest was last paid and remitted to the date of such repurchase. It is understood and agreed that the obligation of the Seller to repurchase any Loans as to which a breach has occurred shall not constitute the exclusive remedy respecting such breach available to Buyer, but Buyer shall have recourse to any other remedy for breach of warranty at law or in equity.

### ARTICLE 7
### REPRESENTATIONS, WARRANTIES, AND COVENANTS OF BUYERS

Buyer hereby represents, warrants and covenants to Seller as follows:

(a)   Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, and has full corporate power and authority to own its properties and carry on its business as it is now being conducted.

(b)   Buyer has the corporate power to enter into this Agreement, and the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by the necessary corporate action of Buyer, and this Agreement constitutes the legal, valid and binding obligation of Buyer, enforceable in accordance with its terms. Buyer has obtained any and all necessary consents of third parties required of it in order to enter into this Agreement and to consummate the transactions contemplated hereby, and the execution and delivery of this Agreement and performance by Buyer of the transactions contemplated hereby will not result in Buyer being in default under any of the provisions of its Certificate of Incorporation, By-Laws or of any material credit or other agreement to which it is a party.

Rev. 2/3094(73)

7

## ARTICLE 8
## INDEMNIFICATION

8.01   Seller agrees to protect, indemnify, and hold Buyer and its employees, officers, and directors, harmless against, and in respect of, any and all losses, liabilities, costs and expenses (including attorney's fees), judgments, damages, claims, counterclaims, demands, actions or proceedings, by whomsoever asserted, including but not limited to, the Obligors, any person or persons who prosecute or defend any actions or proceedings as representatives of or on behalf of a class or interested group, or any governmental instrumentality, body, agency department or commission, or any administrative body or agency having jurisdiction pursuant to any applicable statute, rule, regulation, order or decree, or the settlement or compromise of any of the foregoing, providing, however, any of the foregoing arises out of, is connected with or results from any breach of representations, covenants or warranties made by Seller in relation to the Loans sold to Buyer hereunder.

8.02   Provided further, in the event of any legal action, including counterclaims, wherein the claim is based upon alleged facts that would constitute a breach of any one or more of the warranties, covenants, and representations made or assumed by Seller under the terms hereof, Seller shall thereupon, at Buyer's option, repurchase without recourse such Loan at a price equal to the then outstanding principal balance of such Loan, or, where such loan is purchased by Buyer at a premium over par, the unpaid principal balance multiplied by par plus such premium together with interest at the Note Rate for such Loan for the period from the date to which interest was last paid and remitted to the date of repurchase.

## ARTICLE 9
## RESCISSION

9.01   The Seller shall be responsible in the event of a rescission or cancellation by any borrower on any loan submitted by Seller. The parties specifically agree as follows:

a.   Should any borrower of a loan sold pursuant to this Agreement exercise its right of rescission under any state or federal law, including but not limited to the borrower's rights under Section 226.23(d) of the Federal Truth-in-Lending (Regulation Z) Law, then without regard for who is the "creditor" or lender of the loan, the Seller, (and not Buyer) shall be responsible for making all payments required by law to the borrower who has exercised its right of rescission. Buyer will co-operate with the Seller by returning to the borrower all funds paid by the borrower to Buyer in connection with the loan and further by executing such documents as shall reasonably be required by the Seller in order to release the lien of Buyer upon the borrower's Mortgaged Property.

b.   The Seller shall immediately provide notice to the Buyer, by fax or telephone, in the event that notice of rescission is received.

c.   Upon exercise of a right of rescission by a borrower, the Seller shall within two (2) business days after it receives notice of the rescission by a borrower, pay to borrower all amounts required in order to comply fully and completely with the law or regulation granting a right of rescission, including but not limited to application fees, commitment fees, title search fees, appraisal fees, credit report fees or costs and counsel fees, with the exception of those amounts which Buyer has received and is obligated to return pursuant to paragraph (a) of this section.

8

Rev. 9/30/94[FS]

    d.    In the event loan proceeds have been disbursed by the Buyer prior to receipt by Buyer of the borrowers election to exercise a right of rescission, the Seller will make every effort to recover those proceeds from the payee(s).

## ARTICLE 10

10.01 Buyer is purchasing the Loan(s) without recourse and warranties, other than the representations, warranties, and covenants of Seller as stated in this Agreement, and Seller is not a guarantor of the Obligor(s), their assignees or successors in interest.

## ARTICLE 11
## RELIANCE BY BOTH

Seller acknowledges that Buyer, in purchasing Loans from Seller, will rely upon Loan File documents and information prepared or provided by Seller including but not limited to customer credit data, account ledger cards, real property appraisals, title insurance policies, insurance policies protecting the collateral and other data and information provided to Buyer by Seller including but not limited to the representations, covenants and warranties contained herein, irrespective of any inspection or knowledge on Buyer's part of any such data and information.

## ARTICLE 12
## PERFORMANCE AND POWER OF ATTORNEY

In order to enforce Buyer's rights hereunder, Seller shall, upon the request of Buyer or its assigns, do and perform or cause to be done and performed, every reasonable act and thing necessary or advisable to put Buyer in a position to enforce the payment of the loans and to carry out the intent of this Agreement, including the execution of a limited power of attorney and, the recordation of additional documents including separate endorsements and assignments upon request of Buyer.

## ARTICLE 13
## BROKERAGE AND OTHER FEES
## THIRD PARTY

Seller hereby assumes responsibility for any and all brokerage or Finder's fees or agent's commissions or any similar payments whatsoever called, due on any transaction between Seller and Buyer, or other like payments, that may or can be claimed as a result of this Agreement, it being understood that the purchase price of the Loans purchased by Buyer from Seller as set forth in Article 3 herein is the full and complete amount that Buyer is obligated to pay for the Loans, Buyer represents that it has not incurred any obligation for broker's commissions or finder's fees in connection with this transaction.

## ARTICLE 14
## CORPORATE ACKNOWLEDGEMENT

If applicable, Seller has delivered to Buyer an original certificate of resolution of the Board of Directors of Seller, authorizing Seller to enter into this Agreement and any and all transactions contemplated hereunder and stating that said resolution is in full force and effect as of the date of the Agreement.

Rev. 3/30/94[F3]

## ARTICLE 15
## NOTICES

Notices which are required to be given under this Agreement shall be in writing and shall be addressed and served personally or sent by prepaid registered or certified mail as follows:

IF TO BUYER:

GF MORTGAGE CORP.
4 Campus Drive
Parsippany, NJ 07054

IF TO SELLER:

## ARTICLE 16
## GENERAL

16.01   This Agreement constitutes the entire Agreement between the parties hereto and supersedes any and all representations, promises, and statements, oral or written, made in connection with the subject matter of this Agreement an the negotiation hereof, and no such representation, promise, or statement not written herein shall be binding on the parties. This Agreement may not be varied or altered nor its provisions waived except by an agreement in writing executed by duly authorized agents of both parties. This Agreement shall be binding upon and inure to the benefit of the parties and each of their respective successors and assigns.

16.02   This Agreement shall be interpreted, construed, and enforced in accordance with the laws of the State of New Jersey.

16.03   Any provision of this Agreement which is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

16.04   Captions are for reference only and are not to be considered as defining or limiting in any way the scope or intent of the provisions hereof.

Rev. 9/30/94[F3]

10

16.05  The waiver of any breach, term, provision or conditions of this Agreement shall not be construed to be a waiver of any other or subsequent breach, term provision or conditions. All remedies afforded by this Agreement for a breach hereof shall be cumulative; that is, in addition to all other remedies provided for herein or at law or in equity.

16.06  This agreement may be cancelled by either party by written notice and such cancellation shall be immediately effective as to future transactions. Upon cancellation all loan files for Loans not approved for purchase shall be returned immediately to seller without further liability to Buyer.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date written on page 1.

GF MORTGAGE CORP
BUYER
BY _____
ARTHUR E. GILGAR
VICE PRESIDENT

SELLER
BY _____
Robert W Skowrenski II, Pres.

11