IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED; DEK HOMES OF NEW JERSEY, INC.; OAKWOOD PROPERTIES, INC.; NATIONAL HOME FUNDING, INC.; CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT CO., INC.; CAPITAL ASSETS PROPERTY MANAGEMENT, LLC; WILLIAM KANE; GARY GRIESER; ROBERT SKOWRENSKI, II; RICHARD CALANNI; RICHARD DiBENEDETTO; JAMES R. BROWN; THOMAS BRODO; ROLAND PIERSON; STANLEY YACKER, ESQ.; MICHAEL ALFIERI, ESQ.; RICHARD PEPSNY, ESQ.; ANTHONY M. CICALESE, ESQ.; LAWRENCE CUZZI; ANTHONY D'APOLITO; DAP CONSULTING, INC.; COMMONWEALTH LAND TITLE INSURANCE CO.; NATIONS TITLE INSURANCE OF NEW YORK, INC.; FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK; COASTAL TITLE AGENCY; STEWART TITLE GUARANTY COMPANY; IRENE DiFEO; DONNA PEPSNY; WEICHERT REALTORS; and VECCHIO REALTY, INC., d/b/a MURPHY REALTY BETTER HOMES AND GARDENS, <br><br> Defendants. | Civ. A. No. 97-3496 <br><br> *Motion Return Date:* <br> *October 5, 2009* |

**BRIEF OF DEFENDANTS/THIRD-PARTY PLAINTIFFS
NATIONS TITLE INSURANCE OF NEW YORK, INC. AND FIDELITY
NATIONAL TITLE INSURANCE CO. OF NEW YORK IN OPPOSITION TO
THIRD-PARTY DEFENDANTS' MOTION TO DISMISS THIRD-PARTY COMPLAINT**

Edward J. Hayes, Esquire
David H. Colvin, Esquire
Amy C. Purcell, Esquire
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103
(215) 299-2092
(215) 299-2150 (facsimile)

Defendants/Third-Party Plaintiffs, Nations Title Insurance of New York, Inc. and Fidelity National Title Insurance Co. of New York (collectively, "**Fidelity**"), by and through their undersigned counsel, Fox Rothschild LLP, respectfully submit this brief in opposition to the motion of third-party defendant, Robert Walsh, which was joined by third-party defendants, James Walsh and Elizabeth DeMola (the "**Third-Party Defendants**"), to dismiss Fidelity's third-party complaint (the "**Third-Party Complaint**"). For the reasons that follow, the Court should deny the Third-Party Defendants' motion.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Over ten years ago, plaintiff, Walsh Securities ("**Walsh**"), instituted this action. In various reiterations of its complaint, Walsh alleges that it was the victim of a fraudulent scheme perpetrated by a vast number of mortgage companies, real estate appraisers, and attorneys to induce Walsh to purchase approximately 223 mortgage loans on real properties with artificially inflated prices. Walsh has set forth a variety of claims against those defendants ranging from negligence to fraud to RICO violations. Walsh has never alleged in any of the prior versions of its complaints that Fidelity was in any way a participant in the scheme, directly or indirectly. Instead, the sole allegations against Fidelity and another title insurance company defendant, Commonwealth Land Title Insurance Company ("**Commonwealth**") (collectively, the "**Title Insurance Defendants**"), are that the Title Insurance Defendants committed a breach of contract when not honoring Walsh's claims under closing service letters allegedly issued for Walsh's benefit.

Now, for the first time, Walsh has attempted to raise the stakes with respect to its claims against the Title Insurance Defendants. In its fourth (and most recent) amended complaint, Walsh seeks damages and declaratory relief against the Title Insurance Defendants not only for alleged breach of contract, but also for wrongful delay and/or denial of insurance claims. See

2

Fourth Amended Complaint (docket no. 302), Counts V, VII and VIII. In addition, for purposes of this motion, it is important to note that Walsh has attempted to expand its breach of contract claim to include allegations that the Title Insurance Defendants "breached their respective duties of good faith and fair dealing." Id. at ¶ 99.

Significantly, Walsh's claim for wrongful delay and/or denial or insurance claims states:

> The Title Insurance Defendants' failure to process and pay covered claims in a reasonable time was done intentionally without debatable reason and/or in reckless disregard of the fact that they had no valid reason for doing so.

Id. at ¶ 112. In addition, Walsh's breach of contract claim now alleges:

> The Title Insurance Defendants breached their respective duties of good faith and fair dealing by failing to process and pay covered claims in a reasonable time. In connection therewith, the Title Insurance Defendants knew or recklessly disregarded the fact that they lacked a reasonable basis for denying the claims. This is evidenced, in part, by the Title Insurance Defendants' reckless indifference to facts or proofs submitted by Walsh Securities . . . .

Id. at ¶ 99. By making these allegations, Walsh has altered dramatically the nature of the claims being asserted against the Title Insurance Defendants.

On July 31, 2009, Fidelity filed its answer to Walsh's fourth amended complaint, as well as a complaint against the Third-Party Defendants. See Fidelity's Answer To Fourth Amended Complaint, Separate Defenses, Answers to Cross Claims, Cross Claim, Third-Party Complaint And Jury Demand (docket no. 308). Fidelity's Third-Party Complaint alleges that the Third-Party Defendants were officers, directors and/or employees of Walsh. Id. at ¶ 1. Based on various information discovered to date, Fidelity alleges that in their capacity as officers, directors and/or employees of Walsh, the Third-Party Defendants "participated" in the fraud alleged by Walsh or were "negligent and/or breached their duties" to Walsh. Id. at ¶¶ 2, 3. Fidelity denies any liability to Walsh, as well as any joint and several liability, Id. at ¶ 4 but states, however,

3

that if the Court finds that it is liable to Walsh, Fidelity demands contribution and/or indemnification with respect to any and all damages that may be assessed against Fidelity (including costs of suit) from all Third-Party Defendants. Id. Commonwealth also filed a complaint against the Third-Party Defendants.

Third-party defendant, Robert Walsh, filed a motion to dismiss the Third-Party Complaints of Fidelity and Commonwealth under Federal Rule of Civil Procedure 12(b)(6). Third-party defendants, James Walsh and Elizabeth DeMola, joined Robert's Walsh's motion. In addition, the Third-Party Defendants argue that Fidelity and Commonwealth have not met the basic pleading requirements of the Federal Rules of Civil Procedure 8(a)(2) or 9(b). The contentions made by the Third-Party Defendants are without merit. Accordingly, the Court should deny the Third-Party Defendants' motion to dismiss the Third-Party Complaints of Fidelity and Commonwealth. In support of its argument, Fidelity relies on this brief, as well as the brief submitted by Commonwealth, which is incorporated herein by reference.

### III.   LEGAL ARGUMENT

#### A.   Standard For A Motion To Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), "a motion to dismiss for failure to state a claim upon which relief may be granted must be denied 'unless it appears <u>beyond doubt</u> that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" NN&R, Inc. v. One Beacon Ins. Group, 362 F. Supp. 2d 514, 517 (D.N.J. 2005) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)) (emphasis added). Further, in deciding a motion to dismiss, "the court must view all allegations in the Complaint in the light most favorable to the plaintiff." Id. at 518; see also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998) (dismissal only appropriate where, "after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no

4

relief could be granted under any set of facts consistent with the allegations of the complaint"). "The question before the court is not whether plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief." NN&R, 362 F. Supp. 2d at 518 (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)). Here, Fidelity's Third-Party Complaint easily satisfies these requirements and states a claim against the Third-Party Defendants for their participation in the fraud alleged by Walsh. Accordingly, the Court should deny the Third-Party Defendants' motion, and permit Fidelity's claim to proceed.

### B. The Court Should Deny The Third-Party Defendants' Motion To Dismiss Because Fidelity's Third-Party Complaint States A Claim For Contribution.

Third-Party Defendants in essence argue that Walsh is asserting only contractual claims against Fidelity and that when only contractual claims are asserted, contribution is not available under New Jersey law. While that argument may have had some appeal under prior versions of the complaint, it cannot be ignored that the most recent complaint dramatically changes the nature of the allegations made against Fidelity and expands the nature of the claims asserted beyond simple claims of breach of contract. It is respectfully suggested that when one considers the manner in which Walsh has changed its allegations against Fidelity, the claim for contribution made against the Third-Party Defendants is proper.

#### 1. The General Principles Of Contribution.

New Jersey's Legislative and Judicial branches have long recognized that the "the guiding principle of comparative fault [is] to distribute the loss in proportion to the respective faults of the parties causing that loss." Blazovic v. Andrich, 124 N.J. 90, 107 (1991). New Jersey's Joint Tortfeasor's Contribution Law provides that:

> Where injury or damage is suffered by any person as a result of the wrongful act, neglect, or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damages against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share . . . .

N.J.S.A. 2A:53A-3. The Joint Tortfeasor's Contribution Act was modified by the Legislature in 1973 with the passage of the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq. Although the Comparative Negligence Act modified the apportionment of liability in accordance with the "basic principle" that "a defendant contributing to an injury caused by multiple factors should bear no more of the ultimate liability than is proportionate to that defendant's relative share of the assigned fault," Lee v. Kiku Restaurant, 127 N.J. 170, 186 (1992), it left untouched the principle that loss should be distributed amongst all of those responsible for the loss.

Under New Jersey law, a common "thread" in decisions regarding the Joint Tortfeasor's Contribution Law "is a concept of fault, whether based on the failure to insure that a product fulfills its warranty, an absolute liability for ultra-hazardous activity imposed by statute, or the intentional infliction of injury on another." Dunn v. Praiss, 139 N.J. 564, 577 (1995) (citations omitted). Specifically, in Dunn, the New Jersey Supreme Court held that "[i]n the context of this case in which the breach of contractual duty appears to parallel closely the fault-based duty of care imposed . . . it is appropriate to allow for contribution. Id. (court allowed claim for contribution between doctor and HMO on breach of contract claim); see also Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566-68 (1980) (a court may apportion contribution between parties even if the parties are liable on entirely different bases); Blazovic, 124 N.J. at 107 (permitting apportionment of fault between negligent and intentional tortfeasors). In this

case, only by permitting the joinder of the Third-Party Defendants can this Court assure that the loss is distributed amongst all of those allegedly responsible.

      2.      **Entitlement To Contribution Is Not Dependent On What A Party Labels The Cause Of Action But Is Instead Based On <u>The Nature Of The Action And Injury Alleged By The Claimant.</u>**

As stated previously, the Third-Party Defendants assert that contribution is not available in this matter because Walsh has only asserted a breach of contract claim against Fidelity. Regardless of what label Walsh or the Third-Party Defendants seek to put on the claims asserted in the fourth amended complaint, it is not their characterization of the claims that controls this Court's analysis, but is instead the nature of the allegations made in the complaint. In "recogniz[ing] a cause of action for bad-faith failure to pay an insured's claim[,]" the Supreme Court explained that "[c]ompensation should not be dependent on what label we place on an action but rather on the nature of the injury inflicted on the plaintiff and the remedies requested." Pickett v. Lloyds, 131 N.J. 457, 470 (1993)[1]. A review of the fourth amended complaint shows that the new claims asserted by Walsh are far more than just straight breach of contract claims.

---

[1] In Pickett, the insured, an owner-operator truck driver, sought damages in tort for his insurer's fault-based conduct in violation of the duty of good faith and fair dealing for failing to promptly pay a claim for the insured's totaled truck, causing the insured to lose his seniority at work along with substantial income and to prevent the insured from being able to purchase a new truck due to an outstanding loan on the totaled truck. Pickett v. Lloyds, 252 N.J. Super. 477, 481-84 (App. Div. 1991), aff'd, 131 N.J. 457 (1993). The Appellate Division stated that "a negligent delay [on the part of the insurer] in failing to investigate leading to further property damage will create liability." Id. at 489-90 (quoting J. Appleman, 16A Insurance Law & Practice § 8878.35 at 434 (1981)).

### 3. The Allegations Of Breach Of Fiduciary Obligation, Lack Or Reasonable Basis To Deny Claim, Reckless Indifference To Facts Or Proofs And Reckless Disregard Of Lack Of Reasonable Basis For Denial All Sound In Both Contract And Tort.

Walsh has filed a far different complaint against the Title Insurance Defendants than any of its prior complaints. As stated previously, in addition to the allegations of breach of contract under the closing service letters, Walsh now makes claims based on the title insurance policies issued at the various closings. In addition to claiming that the conduct in this case is allegedly covered by those policies, Walsh goes much further and alleges that the Title Insurance Defendants have breached their fiduciary obligations to Walsh, lack any reasonable basis to deny the claims submitted by Walsh under those policies and are acting in reckless disregard of the facts, the law and the rights of Walsh. It is respectfully suggested that the fact that the Third-Party Defendants choose to label these claims as merely contractual in nature does not change the fact that these claims also sound in tort.

In Pickett, the court noted that "[a]n insurance company's breach of the fiduciary obligation imposed by virtue of its policy . . . 'sounds in both tort and contract.'" Pickett, 131 N.J. at 470. (quoting Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 504 (1974)). As a result, in Pickett, while the Court found that the cause of action for bad-faith failure to pay an insured's claim "is best understood as one that sounds in contract[,]" ibid., it focused on fault in crafting a remedy, permitting extra-contractual consequential damages. Id. at 481. Once a tort claim is asserted, Fidelity's right to contribution arises and a fault analysis needs to be performed in order to properly distribute the loss alleged to be suffered by Walsh. In undertaking this analysis, the Dunn court held that "[a] breach of a contractual duty which is a proximate cause of a personal injury can easily be balanced against the negligence of another party so that their

percentage responsibilities can be assessed and contribution directed as comparative fault." Dunn, 139 N.J. at 578 (internal citations omitted).

Not only do breach of fiduciary obligation claims sound in part in tort, but claims for a breach of the contractual duty of good faith and fair dealing but can also extend to tort. Courts within this District have explicitly found that "when a breach of the duty of good faith and fair dealing can be shown, liability may be had in tort as well as in contract under New Jersey common law." NN&R, 362 F. Supp. 2d at 523-24 (in the context of an insurance policy and claims); Paul Revere Life Ins. Co. v. Unumprovident Corp., No. 02-3423, 2004 U.S. Dist. LEXIS 7769, at *6-7 (Apr. 1, 2004). With respect to the denial of insurance benefits, "New Jersey applies the 'fairly debatable' standard -- if a claim is 'fairly debatable,' no liability in tort will arise." NN&R, 362 F. Supp. 2d at 523-24 (quoting Pickett v. Lloyd's, 621 A.2d 445 (N.J. 1993)). On other hand, in order to show a claim for bad faith, a plaintiff must show:

> The absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. * * * implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless * * * indifference to facts or to proofs submitted by the insured.

Id. at 524 (quoting Pickett v. Lloyd's, 621 A.2d 445 (N.J. 1993)). If one reviews the allegations made by Walsh in the fourth amended complaint, it can be seen that while Walsh does not label its claim as one for bad faith, it has made all of the allegations that are required for an action for insurance bad faith. Again, a fair reading of the complaint establishes that Walsh has asserted more than just claims that sound in contract. Once it did so, a claim for contribution arises and the joinder of the Third-Party Defendants was proper.

9

### 4. The Law Of The Case Does Not Support the Third-Party Defendants' Motion To Dismiss.

In their motion, the Third-Party Defendants argue that "it is the law of this case that Commonwealth and Fidelity/Nations cannot maintain a claim for contribution against Mr. Walsh." See Motion To Dismiss Third-Party Complaint (docket no. 327), p. 7. It is respectfully suggested that this position is not correct for several reasons. First, there is some question as to what the law of this case is on the contribution issue. While Judge Debevoise has issued an opinion favorable to the position now asserted by the Third-Party Defendants, see Walsh Secs. v. Cristo Prop. Mgmt., Ltd., No. 97-3496 (Mar. 28, 2007), one cannot overlook the previous decision on the same issue by Judge Bassler in which Commonwealth's claim for contribution against a different third-party defendant was permitted to continue. See Order Dated Jan. 20, 2006 (docket no. 197). Therefore, there are conflicting opinions within this very case on the propriety of an asserted claim of contribution.

Second, and more importantly, the prior decision of Judge Debevoise on this issue was issued by the Court prior to the time Walsh filed its fourth amended complaint expanding the nature of the claims asserted against the Title Insurance Defendants. In his earlier opinion, Judge Debevoise, reviewing a complaint that did not include tort allegations against Commonwealth, distinguished the Dunn case by relying on Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assoc., No. Civ. A. 00-CV-2231, 2002 U.S. Dist. LEXIS 16334 (E.D. Pa. Aug. 29, 2002). The Longport case limited Dunn by stating that Dunn's holding was limited to personal injury actions and stressed the fact that the HMO's contractual duty was "closely analogous" to the tort duties imposed on the physician-provider. Longport, 2002 U.S. Dist. LEXIS, at *3. That distinction made by Judge Debevoise in dismissing Commonwealth's claim no longer works in this case.

As stated above, the fourth amended complaint adds new claims for breach of the duty of good faith and fair dealing and wrongful delay and/or denial of insurance claims, including specific allegations that the Title Insurance Defendants failed to pay covered claims "intentionally without debatable reason and/or in reckless disregard of the fact that they had no valid reason for doing so." See Fourth Amended Complaint, ¶ 112. Moreover, in the latest complaint, Walsh alleges that Fidelity "knew or recklessly disregarded the fact that they lacked a reasonable basis for denying the claims" and Fidelity showed "reckless indifference to facts or proofs submitted by Walsh." Id. at ¶ 99. Notwithstanding any "title/label" that Walsh places on its claims, Walsh's claims against the Title Insurance Defendants are claims that sound in "bad faith" -- an intentional tort. Although Fidelity specifically denies that it engaged in "bad faith," the allegations in paragraphs 99 and 112 of Walsh's fourth amended complaint mimic almost identically the standard for a tort claim of "bad faith" as set forth in Pickett v. Lloyd's, 621 A.2d 445 (N.J. 1993) and relied upon by NN&R, Inc.v. One Beacon Ins. Group, 362 F. Supp. 2d 514, 517 (D.N.J. 2005). Because Walsh has now amended its complaint to include tort claims, Judge Debevoise's previous opinion no longer applies, since at the time of the issuance of the opinion, Judge Debevoise was dealing with a far different type of claim than now asserted by Walsh.

5. **If Walsh Is Able To Establish A Claim For Relief, The Third-Party Defendants Must Bear Responsibility For Their Participation In, And Responsibility For, The Alleged Loss.**

Fidelity asserts that if Walsh is able to establish any right to recovery in this matter, the Third-Party Defendants must be held responsible for Walsh Securities' injuries, if any, in whole or in part, due to their fraudulent conduct and negligence. Focusing on the nature of the injury inflicted due to the Third-Party Defendants' fraudulent and negligent conduct, the Third Party Defendants' literal reading of the Joint Tortfeasor's Contribution Law would end up placing the

11

full burden of fault on the Title Insurance Defendants despite the "the nature of the injury inflicted on the plaintiff and the remedies requested." See Pickett, supra, 131 N.J. at 470. Such a reading runs afoul of "the guiding principle of comparative fault" by placing the full burden of the loss on the Title Insurance Defendants instead of distributing it "in proportion to the respective faults of the parties causing that loss." See Blazovic, supra, 124 N.J. at 107; Lee, supra, 127 N.J. at 186. This is not an abstract contractual dispute where fault cannot be quantified; it is a case where intentional and negligent acts by Third-Party Defendants, Robert Walsh, James Walsh, and Elizabeth Ann DeMola, allegedly resulted in the very damages claimed to have been suffered by Walsh, and now the Third-Party Defendants seek to saddle the Title Insurance Defendants with the damages resulting from their own actions. In short, this is one of the narrow situations contemplated by courts applying New Jersey law where application of tort principles are warranted despite pleadings that sound primarily in contract. See NN&R, Inc., supra, 362 F. Supp. 2d at 523-24; Paul Revere Life Ins. Co., supra, No. 02-3423, 2004 U.S. Dist. LEXIS 7769, at *6-*7; cf. Dunn, supra, 139 N.J. at 578.

Accordingly, Fidelity's Third-Party Complaint asserts a valid claim for contribution against the Third-Party Defendants and the Court should deny the Third-Party Defendants' motion to dismiss.

    **C.    The Court Should Deny The Third-Party Defendants' Motion To Dismiss Because Fidelity's Third-Party Complaint Satisfies The Requirements Of Federal Rules Of Civil Procedure 8(a)(2) And 9(b).**

        **1.    The General Requirements For Pleadings.**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading, which states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). A complaint does not require "a detailed recitation of the

proof that will in the end establish such a right." Pryor v. National Coll. Athletic Assoc., 288 F.3d 548, 564 (3d Cir. 2002) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." See Fed. R. Civ. P. 9(b). In order to satisfy the requirements of Rule 9(b), a plaintiff "must plead with particularity the circumstances of the alleged fraud in order to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004) (citations omitted). As such, a plaintiff may plead the "date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud. Id. at 224.

These general pleading principles, and the concept that proper pleading is aimed at providing a party with notice of the claims asserted against them, must be reviewed in the very unique situation existing in this case.

### 2. Based On The History Of This Case, The Third-Party Defendants Are Well Aware Of The Nature Of The Claims Being Asserted Against Them.

It is respectfully suggested to this Court that in this unique case, the Third-Party Defendants are fully aware of the nature of the claims asserted against them, much more than parties in most cases at the pleading stage. That awareness arises from all of the activity that has taken place since the inception of the fraud alleged to have occurred.

First, this Court should be aware that the underlying transactions which form the basis for this litigation have been the subject of numerous indictments and guilty pleas, with plea hearings at which various parties have made public allegations regarding the Third-Party Defendants'

participation in the conduct alleged by Walsh. In fact, the Third-Party Defendant, DeMola, has been indicted and pled guilty to participation in the scheme alleged by Walsh.

Second, as part of the mediation process, numerous depositions were taken of many of the participants in the underlying transactions, which depositions resulted in the disclosure of very detailed and specific accusations regarding the conduct of the Third-Party Defendants. That conduct is set forth in some detail in the submission made by Commonwealth in opposition to the motion to dismiss. Unlike most cases, the joinder in this case has occurred after the substantial disclosure of facts which support the claim for contribution being made by the Title Insurance Defendants. There can be little question that at this stage of the case more than ten years after the events leading up to it, Third Party Defendants are fully aware of the detailed facts which form the basis of the claims for contribution.

### 3. Against This Background, The Pleadings Are More Than Adequate To Provide The Third-Party Defendants With Notice Of The Claims Asserted Against Them.

Fidelity's Third-Party Complaint clearly states that the Third-Party Defendants are liable for contribution to Fidelity because of their participation, as officers, directors and/or employees of Walsh, in the fraud alleged by Walsh. With the background referred to above, these allegations are sufficient to provide the Third-Party Defendants with "notice" of the claim asserted against them. Due, in part, to the exceptional circumstances of this case, Fidelity has satisfied the requirements of Federal Rules of Civil Procedure, and the Court should permit its claim to proceed against the Third-Party Defendants.

4.   **If The Court Determines That Additional Pleadings Are Required, The Court Should Permit Fidelity To Amend Its Third-Party Complaint.**

If the Court determines that Fidelity has failed to establish the pleading requirements of Federal Rules of Civil Procedure 8(a)(2) or 9(b), the Court should grant Fidelity leave to amend the Third-Party Complaint. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[e]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment unless an amendment would be inequitable or futile"); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (dismissal without leave to amend is warranted only on grounds of bad faith, prejudice, or futility). As it is clear that facts exist which support the claims against the Third-Party Defendants, Fidelity is prepared to set forth those facts in great detail should the Court find it necessary.

### III.   CONCLUSION

For all of the foregoing reasons, as well as the reasons set forth in Commonwealth's brief in opposition to the Third-Party Defendants' motion to dismiss, the Court should deny the Third-Party Defendants' motion to dismiss the Third-Party Complaint.

Respectfully submitted,

*signature*

Edward J. Hayes, Esquire
David H. Colvin, Esquire
Amy C. Purcell, Esquire
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103
(215) 299-2092
(215) 299-2150 (facsimile)
*Attorneys for Defendants/Third-Party Plaintiffs Nations Title Insurance of New York, Inc. and Fidelity National Title Insurance Co. of New York*

Dated: September 21, 2009