# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WALSH SECURITIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CRISTO PROPERTY MANAGEMENT,<br>LTD., a/k/a G.J.L. LIMITED, et al.,<br><br>Defendants. | Civil Action No. 97-cv-3496 (DRD)(MAS)<br><br>Hon. Dickinson R. Debevoise, U.S.S.D.J.<br>Hon. Michael A. Shipp, U.S.M.J. |

---

## BRIEF OF DEFENDANT/THIRD-PARTY PLAINTIFF COMMONWEALTH LAND TITLE INSURANCE COMPANY IN OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO DISMISS COMMONWEALTH'S THIRD-PARTY COMPLAINT

---

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant/Third-Party
   Plaintiff Commonwealth Land Title
   Insurance Company

Of Counsel
  David R. Kott

On the Brief
  David R. Kott
  Sara F. Merin

ME1 8961564v.1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

PROCEDURAL HISTORY.................................................................................................3

LEGAL ARGUMENT

POINT I

      COMMONWEALTH'S THIRD-PARTY COMPLAINT ASSERTS A VALID CLAIM
      FOR CONTRIBUTION AGAINST WALSH....................................................................6

POINT II

      COMMONWEALTH'S COMPLAINT SATISFIES THE RULE 12(b)(6) PLEADING
      STANDARD, BECAUSE THE EXTENSIVE FACTUAL DEVELOPMENT WITHIN
      THIS CASE HAS PLACED THIRD-PARTY PLAINTIFFS ON NOTICE OF THE
      CONDUCT UNDERPINNING THE THIRD-PARTY COMPLAINT ...........................10

CONCLUSION.................................................................................................................13

ME1 8961564v.1

# TABLE OF AUTHORITIES

Alston v. Parker,
    363 F.3d 229 (3d Cir. 2004)...................................................................12

Ashcroft v. Iqbal,
    129 S. Ct. 1939 (2009)..................................................................10, 11

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)......................................................................10, 11

Blazovic v. Andrich,
    124 N.J. 90 (1991) ........................................................................7, 8, 9

Cartel Capital Corp. v. Fireco of New Jersey,
    81 N.J. 548 (1980) ..............................................................................7

Dunn v. Praiss,
    139 N.J. 564 (1995) ..........................................................4, 6, 8, 9, 10

In re Burlington Coat Factory Sec. Litig.,
    114 F.3d 1410 (3d Cir. 1997)...............................................................12

Lee v. Kiku Restaurant,
    127 N.J. 170 (1992) ...........................................................................8, 9

Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assocs.,
    No. Civ. A. 00-CV-2231, 2002 WL 2013925 (E.D. Pa. Aug. 29, 2002)............................4

McTernan v. City of York,
    564 F.3d 636 (3d Cir. 2009)...............................................................10

NN&R, Inc. v. One Beacon Ins. Group,
    362 F. Supp. 2d 514 (D.N.J. 2005) ......................................................7, 9

Paul Revere Life Ins. Co. v. Unumprovident Corp.,
    No. 02-3423, 2004 U.S. Dist. LEXIS 7769 (D.N.J. Apr. 1, 2004).................................8, 9

Pickett v. Lloyds,
    131 N.J. 457 (1993) .........................................................................7, 9

Walsh Sec. v. Cristo Prop. Mgmt., Ltd.,
    No. 97-cv-3496, 2007 WL 951955 (D.N.J. Mar. 28, 2007) ...........................................4, 8

ME1 8961564v.1

## RULES

Rule 8(a)............................................................................................................11

Rule 12(b)(6)................................................................................................10, 12

## STATUTES

N.J.S.A. 2A:15-5.1.............................................................................................8

N.J.S.A. 2A:53A-3..............................................................................................8

ME1 8961564v.1

## PRELIMINARY STATEMENT

This brief is submitted on behalf of Defendant Commonwealth Land Title Insurance Company ("Commonwealth") in opposition to Robert Walsh's motion to dismiss Commonwealth's Third-Party Complaint [document 327], which was joined by James Walsh [document 329] and Elizabeth Ann DeMola [document 330]. Additionally, for purposes of Robert Walsh's motion to dismiss, we join in and adopt co-defendant Fidelity National Title Insurance Company of New York's brief.

Plaintiff's Fourth Amended Complaint enters new territory by alleging violation of conduct-based duties by Commonwealth. Specifically, it alleges that Commonwealth breached the duty of good faith and fair dealing and engaged in a wrongful delay in processing Walsh Securities' claims. These claims implicate both intentional and negligent acts by Third-Party Defendants Robert Walsh, James Walsh, and Elizabeth Ann DeMola that closely parallel tort claims. Under New Jersey law as applied by courts within this District, conduct-based violations of contracts – such as claims for breach of the duty of good faith and fair dealing – can result in liability in tort along with that in contract. As such, Commonwealth – while denying any liability – filed a Third-Party Complaint seeking contribution, pursuant to New Jersey's Joint Tortfeasors Contribution Law, from Third-Party Defendants Robert Walsh, James Walsh, and Elizabeth Ann DeMola for their responsibility for Plaintiff's injury, in the event that Commonwealth is found liable to Plaintiff.

Now, Third-Party Plaintiffs allege that the allegations within that Complaint are insufficiently specific, despite the facts of this case being so well-developed as to place Third-Party Plaintiffs on clear notice of the actions to which the Third-Party Complaint refers. If, however, this Court finds the Third-Party Complaint to be insufficiently specific and grants Third-Party Plaintiff's motion to dismiss, Commonwealth requests that the dismissal be without

prejudice and that the Court grant Commonwealth leave to file a First Amended Third-Party

Complaint to offer more specific allegations.

ME1 8961564v.1

# PROCEDURAL HISTORY[1]

The arguments made by Robert Walsh in the motion to dismiss Commonwealth's Third-Party Complaint and joined in by James Walsh and Elizabeth DeMola are not novel. They were first made before the Honorable William G. Bassler in a motion to dismiss all cross-claims against it by Weichert Realtors ("Weichert") [document 160], where the Court found that a contribution claim can exist between a defendant whose liability arises out of an alleged breach of contract and another defendant who is an alleged tortfeasor. (See Certification of Sara F. Merin in Support of Commonwealth's Brief in Opposition to Third-Party Defendants' Motion to Dismiss the Third Party Complaint and for Leave to File A First Amended Complaint ("Merin Certif."), Exhibit B: Walsh Sec. v. Christo Prop. Mgmt., Ltd., 97-cv-3496 (WGB), Motion Tr. 7:25-12:6 (Jan. 13, 2006).) There, although the Court did not issue a detailed explanation of its decision, it explicitly stated that it gave the issue considerable thought and attention. (See id. at 16:6-9.) In that situation, Commonwealth, which was sued by Plaintiff for an alleged breach of contract, filed cross-claims for contribution against Weichert and certain other defendants, pursuant to the New Jersey Tortfeasors Contribution Act. (See Answer to Am. Compl. & Cross-Claim for Contribution & Indemnification by Commonwealth (Feb. 15, 2005) [document 118].) Commonwealth – while denying any breach of contract – sought contribution from Weichert because any damages that Plaintiff Walsh Securities ("Plaintiff") claims to have suffered were derived from damages caused by the negligent acts of Weichert and others. Weichert argued that the intentional acts upon which Commonwealth's motion was based sounded solely in contract, immunizing Weichert from any tort liability. (See Weichert Realtor's Opposition to

---

[1] Although there are numerous defendants in this lawsuit, this brief only presents argument and relevant background as related to Defendant Commonwealth.

ME1 8961564v.1

Commonwealth Land Title Ins. Co'.s Motion to Amend Its Cross Claims Against Weichert 4-6

[document 175]; Merin Certif., Exhibit A: Walsh Sec., 97-cv-3496 (WGB), Motion Tr. 47:17-

53:8 (Jan. 12, 2006); Exhibit B: Walsh Sec., 97-cv-3496 (WGB), Motion Tr. 9:1-10:4, 10:21-

12:6 (Jan. 13, 2006).) Relying upon law from New Jersey state courts and elsewhere, the Court

focused on fault, and found that Weichert's fault in this situation sufficiently paralleled tort to

permit the counter-claims for contribution to stand. (See id. at 7:25-12:6.)

Subsequently, after this case was reassigned to the present Court, a similar issue was

raised again. In dismissing Commonwealth's cross-claims for contribution against Irene DiFeo,

against whom Plaintiff's claims sounded in tort, this Court found that Commonwealth's cross-

claims failed, because Commonwealth – which was sued in contract – was not a joint tortfeasor

and "the facts of this case are readily distinguishable from Dunn[v. Praiss, 139 N.J. 564 (1995)]."

Walsh Sec. v. Cristo Prop. Mgmt., Ltd., No. 97-cv-3496, 2007 WL 951955 (D.N.J. Mar. 28,

2007) [document 237]. In coming to this conclusion, the Court relied upon Longport Ocean

Plaza Condo., Inc. v. Robert Cato & Assocs., No. Civ. A. 00-CV-2231, 2002 WL 2013925 (E.D.

Pa. Aug. 29, 2002), which reasoned that the New Jersey Supreme Court's reasoning in Dunn

only permitted a third-party claim for contribution by a defendant named in contract in the

narrow situation where personal injury was suffered by the plaintiff and where the contractual

duty owed "was closely analogous to the tort duties" for which the cross-claimed defendant was

liable. See Walsh Secs., supra, 2007 WL 951955, at * 2.

Plaintiff then re-amended its complaint, submitting a Fourth Amended Complaint on July

10, 2009 [document 302]. In this latest version of the Complaint, Plaintiff expanded its claims

against Commonwealth to include never before pled allegations: an alleged violation of the duty

- 4 -

of good faith and fair dealing and an alleged wrongful delay and/or denial of Plaintiff's insurance claims. (*See* Compl. ¶¶ 98-100; 111-113.)  Specifically, Plaintiff alleges that Commonwealth

> breached [its] . . . dut[y] of good faith and fair dealing by failing to process and pay covered claims in a reasonable time.  In connection therewith, [Commonwealth] knew or recklessly disregarded the fact that [it] lacked a reasonable basis for denying the claims.  This is evidenced, in part, by [Commonwealth's] reckless indifference to facts or proofs submitted by Walsh Securities and by [Commonwealth's] premature termination[] of [its] investigation upon the filing of this action against them seeking coverage.

(Fourth Am. Compl. ¶ 99 [document 302].)  Plaintiff further asserts that

> [Commonwealth's] failure to process and pay covered claims in a reasonable time was done intentionally without debatable reason and/or in reckless disregard of the fact that they had no valid reason for doing so.

(Fourth Am. Compl. ¶ 112.)  Because the new allegations implicate contractual duties that are "closely analogous to the tort duties[,]" Commonwealth filed a Third-Party Complaint seeking contribution from Third-Party Defendants Robert Walsh, James Walsh, and Elizabeth Ann DeMola, in recognition that – if Commonwealth were found liable for the new allegations – its fault is far from independent and is shared with the Third-Party Defendants.

ME1 8961564v.1

# LEGAL ARGUMENT

## POINT I

## COMMONWEALTH'S THIRD-PARTY COMPLAINT ASSERTS A VALID CLAIM FOR CONTRIBUTION AGAINST WALSH

Every contract contains an implied duty of good faith and fair dealing. For the first time in this protracted litigation, in the Fourth Amended Complaint, Plaintiff alleges a violation of that duty along with wrongful delay and/or wrongful denial of insurance claims by Commonwealth. Commonwealth denies liability for such a breach and for wrongful delay; however, if it were found liable for the alleged conduct, it does not stand alone. The duties owed under the duty of good faith and fair dealing and those implicated by Plaintiff's wrongful delay claim are all conduct-based contractual duties that are closely analogous to tort duties for which evidence demonstrates that Third-Party Defendants Robert Walsh, James Walsh, and Elizabeth Ann DeMola violated. Specifically, evidence exists that Third-Party Defendants Robert Walsh, James Walsh, and Elizabeth Ann DeMola were negligent and committed fraud and were thus a proximate cause of harm to Plaintiff and Commonwealth. The resulting damages sought stem from a breach of good faith and fair dealing and an alleged wrongful delay – contractual duties that are analogous to tort duties; therefore, Commonwealth's Third-Party Complaint asserts a valid claim for contribution under New Jersey's Joint Tortfeasor's Contribution Law.

Within New Jersey, a common denominator in decisions regarding the Joint Tortfeasor's Contribution Law "is a concept of fault, whether based on the failure to insure that a product fulfills its warranty, an absolute liability for ultra-hazardous activity imposed by statute, or the intentional infliction of injury on another." Dunn v. Praiss, 139 N.J. 564, 577 (1995) (citations omitted). In "recogniz[ing] a cause of action for bad-faith failure to pay an insured's claim[,]" the Supreme Court explained that "[c]ompensation should not be dependent on what label we

place on an action but rather on the nature of the injury inflicted on the plaintiff and the remedies requested." Pickett v. Lloyds, 131 N.J. 457, 470 (1993)[2]; see also Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566-68 (1980) (a court may apportion contribution between parties even if the parties are liable on entirely different bases); Blazovic v. Andrich, 124 N.J. 90, 107 (1991) (permitting apportionment of fault between negligent and intentional tortfeasors). In Pickett, the court noted that "[a]n insurance company's breach of the fiduciary obligation imposed by virtue of its policy . . . 'sounds in both tort and contract.'" Pickett, 131 N.J. at 470. (quoting Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 504 (1974)). As a result, in Pickett, while the Court found that the cause of action for bad-faith failure to pay an insured's claim "is best understood as one that sounds in contract[,]" ibid., it focused on fault in crafting a remedy, permitting extra-contractual consequential damages, id. at 481.

Moreover, liability for a breach of the contractual duty of good faith and fair dealing is not solely contractual but can extend to tort. Courts within this District have explicitly found that "when a breach of the duty of good faith and fair dealing can be shown, liability may be had in tort as well as in contract under New Jersey common law." NN&R, Inc. v. One Beacon Ins. Group, 362 F. Supp. 2d 514, 523-24 (D.N.J. 2005) (in the context of an insurance policy and

---

[2] In Pickett, the insured, an owner-operator truck driver, sought damages in tort for his insurer's fault-based conduct in violation of the duty of good faith and fair dealing for failing to promptly pay a claim for the insured's totaled truck, causing the insured to lose his seniority at work along with substantial income and to prevent the insured from being able to purchase a new truck due to an outstanding loan on the totaled truck. Pickett v. Lloyds, 252 N.J. Super. 477, 481-84 (App. Div. 1991), aff'd, 131 N.J. 457 (1993). The Appellate Division stated that "a negligent delay [on the part of the insurer] in failing to investigate leading to further property damage will create liability." Id. at 489-90 (quoting J. Appleman, 16A Insurance Law & Practice § 8878.35 at 434 (1981)).

claims); <u>Paul Revere Life Ins. Co. v. Unumprovident Corp.</u>, No. 02-3423, 2004 U.S. Dist.

LEXIS 7769, at *6-*7 (D.N.J. Apr. 1, 2004) (Rodriguez, U.S.D.J.).

New Jersey's legislative and judicial branches have long recognized that the "the guiding

principle of comparative fault [is] to distribute the loss in proportion to the respective faults of

the parties causing that loss." <u>Blazovic v. Andrich</u>, 124 N.J. 90, 107 (1991).  New Jersey's Joint

Tortfeasor's Contribution Law provides that:

> Where injury or damage is suffered by any person as a result of the
> wrongful act, neglect, or default of joint tortfeasors, and the person
> so suffering injury or damage recovers a money judgment or
> judgments for such injury or damages against one or more of the
> joint tortfeasors, either in one action or in separate actions, and any
> one of the joint tortfeasors pays such judgment in whole or in part,
> he shall be entitled to recover contribution from the other joint
> tortfeasor or joint tortfeasors for the excess so paid over his pro
> rata share . . . .

N.J.S.A. 2A:53A-3.  The Joint Tortfeasor's Contribution Act was modified by the Legislature in

1973 with the passage of the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 <u>et seq.</u>  The

Comparative Negligence Act modified the apportionment of liability in accordance with the

"basic principle" that "a defendant contributing to an injury caused by multiple factors should

bear no more of the ultimate liability than is proportionate to that defendant's relative share of

the assigned fault." <u>Lee v. Kiku Restaurant</u>, 127 N.J. 170, 186 (1992).

Moreover, while this Court distinguished <u>Dunn</u> – which dealt with a physician found

liable for personal injury seeking contribution from plaintiff's HMO – in an opinion relating to a

prior version of the present Fourth Amended Complaint, that prior Complaint did not allege the

duty of good faith and fair dealing or wrongful denial of benefits – both of which are duties that

are analogous to tort duties in that they implicate negligence and intentional conduct.  <u>See</u> <u>Walsh</u>

Secs., supra, No. 97-3496, 2007 WL 951955.  In accord with the pragmatism applied in cases like Pickett, the Dunn Court held that

> [a] breach of a contractual duty which is a proximate cause of a personal injury can easily be balanced against the negligence of another party so that their percentage responsibilities can be assessed and contribution directed as comparative fault.

Dunn, 139 N.J. at 578 (internal citations omitted).

In the case at hand, Commonwealth asserts that Third-Party Defendants Robert Walsh, James Walsh, and Elizabeth Ann DeMola are responsible for Walsh Securities' injuries, if any, in whole or in part, due to their fraudulent conduct and negligence.  Focusing on the nature of the injury inflicted – the fraudulent and negligent conduct by Third-Party Defendants Robert Walsh, James Walsh, and Elizabeth Ann DeMola – a literal reading of the Joint Tortfeasor's Contribution Law places the full burden of fault on Commonwealth despite the "the nature of the injury inflicted on the plaintiff and the remedies requested."  See Pickett, supra, 131 N.J. at 470.  Such a reading runs afoul of "the guiding principle of comparative fault" by placing the full burden of the loss on Commonwealth instead of distributing it "in proportion to the respective faults of the parties causing that loss."  See Blazovic, supra, 124 N.J. at 107; Lee, supra, 127 N.J. at 186.  This is not an abstract contractual dispute where fault cannot be quantified; it is a case where intentional and negligent acts by Third-Party Defendants Robert Walsh, James Walsh, and Elizabeth Ann DeMola allegedly resulted in damages to Plaintiffs, and now Third-Party Defendants Robert Walsh, James Walsh, and Elizabeth Ann DeMola seek to saddle Commonwealth with the damages resulting from their own actions.  In short, this is one of the narrow situations contemplated by courts applying New Jersey law where application of tort principles are warranted despite pleadings that sound primarily in contract.  See NN&R, Inc.,

- 9 -

supra, 362 F. Supp. 2d at 523-24; Paul Revere Life Ins. Co., supra, No. 02-3423, 2004 U.S. Dist. LEXIS 7769, at *6-*7; cf. Dunn, supra, 139 N.J. at 578.

In sum, Commonwealth's cross-claims comport with both New Jersey and federal law, and Third-Party Defendants Robert Walsh, James Walsh, and Elizabeth Ann DeMola's motion to dismiss should be denied.

### POINT II

### COMMONWEALTH'S COMPLAINT SATISFIES THE RULE 12(b)(6) PLEADING STANDARD, BECAUSE THE EXTENSIVE FACTUAL DEVELOPMENT WITHIN THIS CASE HAS PLACED THIRD-PARTY PLAINTIFFS ON NOTICE OF THE CONDUCT UNDERPINNING THE THIRD-PARTY COMPLAINT

Commonwealth has articulated a valid claim for contribution against DeMola, Robert Walsh, and James Walsh based upon their intentional and negligent actions due to the extensive proofs already existing in this case. As such, Third-Party Defendants' claims that the Third-Party Complaint should be dismissed are without merit.

Under the pleading standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and recently confirmed in Ashcroft v. Iqbal, 129 S. Ct. 1939 (2009), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, supra, 129 S. Ct. at 1949 (quoting and citing Twombly, supra, 550 U.S. at 556, 570); see also McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (stating that, in reviewing a motion to dismiss, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief"). A purpose of this pleading requirement is to show "enough fact to raise a reasonable expectation

ME1 8961564v.1

that discovery will reveal evidence of [the claimed wrong]." Bell Atl., supra, 550 U.S. at 556. The Twombly/Iqbal standard, therefore, provides for satisfaction of Rule 8(a)'s requirement that "a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. at 556, n.3.

Unlike most cases, discovery in this case and prior proceedings has already revealed evidence of DeMola, Robert Walsh, and James Walsh's fraud, breach of legal and fiduciary duties, and negligence. Specifically, the record contains indictments and plea agreements that set forth the fraud, and it also contains deposition testimony from the following individuals: Anthony D'Apolito, an employee of Walsh Securities; Kellie O'Neill, another employee of Walsh Securities; William Kane, the ringleader of the fraud at issue; Gary D. Greiser, another leader of the fraud; Thomas Brodo, an appraiser; James Brown, also an appraiser, Richard Calanni, another appraiser, and Richard DiBenedetto, yet another appraiser. This information, which is known to all of the parties to this action, demonstrates that the Third-Party Complaint states "a claim to relief that is plausible on its face." See Iqbal, supra, 129 S. Ct. at 1949. The Third-Party Plaintiffs therefore already have "'fair notice' of the nature of the claim" along with knowledge of the "'grounds' on which the claim rests[,]" due to the highly developed state of the facts. See Bell Atl., supra, 550 U.S. at 556, n.3.

If, however, this Court deems Commonwealth's Third-Party Complaint to be insufficiently specific, and, in turn, decides that the Third-Party Complaint fails to state a claim upon which relief may be granted, then Commonwealth requests that this Court dismiss the Third-Party Complaint without prejudice and permit Commonwealth to amend the pleading. While Commonwealth does not believe it necessary to amend the Third-Party Complaint, a

MEI 8961564v.1

proposed First Amended Complaint is attached as Exhibit A to this brief for the Court's reference.

Dismissing the case without prejudice to permit a curative amendment of the Third-Party Complaint is in accord with Third Circuit precedent that liberally allows amendments to pleadings. Pursuant to the Third Circuit's opinion in <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004), [e]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment unless an amendment would be inequitable or futile." Moreover, dismissal without leave to amend is only warranted on grounds of bad faith, prejudice, or futility. <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997).

DeMola, Robert Walsh, and James Walsh will experience no prejudice by an amendment. Commonwealth's initial Third-Party Complaint – filed less than three months ago on July 10, 2009 – put DeMola, Robert Walsh, and James Walsh on notice that they could be held liable for damages to Walsh Securities caused by their actions. Additionally, the federal investigations of the Walsh siblings should have put him on notice as well. Given the liberal policy of allowing the amendment of pleadings, the lack of any risk of prejudice to Elizabeth Ann DeMola, Robert Walsh, and/or James Walsh in allowing an amendment, and the interests of justice, Commonwealth respectfully requests, if this Court grants Third-Party Plaintiffs' motion to dismiss, that dismissal be without prejudice to permit Commonwealth to amend its Complaint.

- 12 -

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Commonwealth's Third-Party

Complaint should be denied; however, if it is granted, dismissal should be without prejudice and

Commonwealth should be permitted to amend its Third-Party Complaint.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

Attorneys for Defendant/Third-Party
Plaintiff Commonwealth Land Title
Insurance Company

By:      *s/David R. Kott*
        David R. Kott
        A Member of the Firm

Dated: September 21, 2009

# **EXHIBIT A**

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant/Third-Party Plaintiff,
  Commonwealth Land Title Insurance Company

|  |  |
|---|---|
| | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |

WALSH SECURITIES, INC.,

                  Plaintiff,

v.

CRISTO PROPERTY MANAGEMENT, LTD., a/k/a
G.J.L. LIMITED, DEK HOMES OF NEW JERSEY,
INC., OAKWOOD PROPERTIES INC.,
NATIONAL HOME FUNDING, INC., CAPITAL
ASSETS PROPERTY MANAGEMENT &
INVESTMENT CO., INC., CAPITAL ASSETS
PROPERTY MANAGEMENT, L.L.C., WILLIAM J.
KANE, GARY GRIESER, ROBERT
SKOWRENSKI, II, RICHARD CALANNI,
RICHARD DIBENEDETTO, JAMES R. BROWN,
THOMAS BRODO, RONALD J. PIERSON,
STANLEY YACKER, ESQ.,  MICHAEL ALFIERI,
ESQ., RICHARD PEPSNY, ESQ., ANTHONY M.
CICALESE, ESQ., LAWRENCE M. CUZZI,
ANTHONY D'APOLITO, DAP CONSULTING,
INC., COMMONWEALTH LAND TITLE
INSURANCE COMPANY, NATIONS TITLE
INSURANCE OF NEW YORK INC., FIDELITY
NATIONAL TITLE INSURANCE COMPANY OF
NEW YORK, COASTAL TITLE AGENCY,
DONNA PEPSNY, WEICHERT REALTORS, and
VECCHIO REALTY, INC. D/B/A MURPHY
REALTY BETTER HOMES and GARDENS,

                  Defendants.

and

COMMONWEALTH LAND TITLE INSURANCE
COMPANY

              Defendant/Third-Party Plaintiff,

v.

ROBERT WALSH, JAMES WALSH and
ELIZABETH ANN DeMOLA,

              Third-Party Defendants.

Civil Action No. 97-cv-3496 (DRD) (MAS)
Honorable Dickinson R. Debevoise

**FIRST AMENDED THIRD-PARTY
COMPLAINT AGAINST ROBERT WALSH,
JAMES WALSH AND ELIZABETH ANN
DEMOLA**

ME1 8975557v.1

Defendant/Third-Party Plaintiff Commonwealth Land Title Insurance Company (hereinafter "Commonwealth"), a corporation of the Commonwealth of Pennsylvania, having its principal place of business in the Commonwealth of Virginia, by way of First Amended Third-Party Complaint, says:

1.    Plaintiff has commenced an action against Defendant/Third-Party Plaintiff Commonwealth for the causes set forth in the Fourth Amended Complaint, a copy of which is attached hereto as Exhibit A.

2.    At all material times herein, Third-Party Defendants, Robert Walsh, James Walsh and Elizabeth Ann DeMola were officers, directors and/or employees of Walsh Securities, Inc.

3.    The Third-Party Defendants were negligent, or engaged in fraud, or breached their legal and/or fiduciary duties, or otherwise were engaged in wrongdoing or fault, which caused or contributed to the losses claimed by Plaintiff in this case.

4.    As a direct result of the negligence or fraud or breach of their legal and/or fiduciary duties or the wrongdoing or the fault of Third-Party Defendants, while Defendant/Third-Party Plaintiff Commonwealth denies any liability to Plaintiff or to any other defendant, if Defendant/Third-Party Plaintiff Commonwealth is found liable, it is entitled to contribution from Third-Party Defendants Robert Walsh, James Walsh and/or Elizabeth Ann DeMola pursuant to the New Jersey Tortfeasors Contribution Act.

## FACTUAL ALLEGATIONS

### Elizabeth Ann DeMola's Involvement & Wrongdoing

5.    Elizabeth Ann DeMola ("DeMola") was a Senior Mortgage Underwriting Officer at Walsh Securities, Inc.

6.    DeMola was a shareholder of Walsh Securities.

MEI 8975557v.1

7.     On September 9, 2005, DeMola entered a guilty plea to the felony offense of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371 before the Honorable Katharine S. Hayden, U.S.D.J., of the District of New Jersey.

8.     The essential elements of the felony offense of conspiracy to commit wire fraud to which DeMola pled guilty are, pursuant to 18 U.S.C. § 371, (a) the existence of an unlawful agreement between two of more persons, (b) the defendant knowingly and willfully became a member of the conspiracy or unlawful agreement, and (c) that one of the co-conspirators committed at least one overt act in furtherance of some object or purpose of the conspiracy.

9.     DeMola therefore admits knowledge of and participation in the fraudulent conduct.

10.    William Kane ("Kane") and DeMola met, on average, two to three times a month.

11.    DeMola was aware that Kane owned Cristo Properties, because Kane informed her of this.

12.    DeMola had conversations with Kane in the presence of other Walsh employees wherein it was explained the fraud worked by Cristo contracting to buy a property by finding creditors with good credit, whom they paid to sign the mortgages and who then turned sold the deed to Capital Assets for one dollar for Capital Assets to maintain the property.

13.    Kane believes DeMola was aware that Kane originated the loans and was working for Skowrenski, because he believes his name was on all of the applications.

14.    During her plea hearing, DeMola admitted that she was aware that fraudulent documents were used to support loans made by Walsh Securities, and she acted with others with a conscious purpose of avoiding learning the truth in order to permit the loans to be closed.

15.    DeMola was therefore aware of the fraud.

-3-

16.     DeMola instructed the appraisers to ignore the inside of the properties and not to mention any work that needed to be done.

17.     DeMola instructed the appraisers on which comparables to use.

18.     DeMola verbally abused Thomas Brodo ("Brodo"), an appraiser, in an effort to cause him to raise the appraised values he assigned to the properties to which Walsh was lending money and DeMola stated that, if Brodo could not bring in the figure she desired, then Brodo would not get appraisal assignments on Walsh loans.

19.     Despite being told by D'Apolito, who was from the area where the homes were located, that the appraisals were not proper, DeMola ignored this advice.

20.     At her plea hearing, DeMola admitted to "the use of appraisals whose valuations were inaccurate and were used to qualified borrowers[and] the use of appraisals which valued properties in their 'as is' condition when many of the subject properties required substantial improvement."

21.     As such, DeMola knew that the appraisals were false.

22.     On various occasions, DeMola directed that mortgage loans that Walsh Securities employee Kellie O'Neill ("O'Neill") processed be approved and funded without Walsh Securities receiving a written appraisal report – some did not have an appraisal at all despite an appraisal being required under Walsh Securities criteria.

23.     DeMola was aware that Walsh Securities was funding loans prior to written appraisals arriving at the bank, because Kane had to call the value of the appraisals into her.

24.     At her plea hearing, DeMola also admitted to have "concur[red] in the funding of loans without first having obtained an accurate written appraisal[.]"

-4-

25.   DeMola therefore knew that appraisals were lacking yet closed on loans regardless.

26.   On one occasion, quality control called to verify a borrower's income and current employment status as working for a particular company, and the borrower was not working at the listed company.  DeMola called Kane, who let her know the problem would be resolved.  It was resolved by, through Kane's connections, having the company call quality control back to say that the borrower was there and worked at the company.

27.   DeMola was aware that this was false information and therefore falsified documents in connection with a loan.

28.   DeMola also directed underwriters to overlook suspicious loan applications -- for example, where a pay stub did not match the necessary income or where a W-2 forms was incorrect -- she would change the loan to a no income verification loan and tell someone to overlook the pay stub and get rid of it.

29.   According to O'Neill, when Paul DelRosso questioned some of the pay stubs and W-2 forms that did not appear correct, at times, DeMola instructed DelRosso to go ahead with the mortgage anyway.

30.   As such, DeMola was aware that certain W-2 forms and pay stubs were false and/or incorrect.

31.   DeMola was also aware that leases and the escrow letters were fraudulent, because she was informed of those facts by Walsh Securities, Inc., employee.

32.   DeMola assigned O'Neill and other Walsh employees to clean closed files.

33.   DeMola gave O'Neill and other Walsh employees a list of things that needed to be in the files and that had to be removed from the files and instructed them to go through

batches of loans and put exactly what had been written out for them as to what should and should not be in the loans.

34.     The checklist used for cleaning the files was not a checklist ordinarily used in determining which documents should be in or out of a file.

35.     During the file cleaning process, where there were commitment letters that went out under DeMola's signature, evidence of her waiving off conditions was removed, because they did not want DeMola's signature on the signing off of conditions, since it was the underwriters' job to sign off conditions, not DeMola's.

36.     Notes from the underwriters were removed from the files.

37.     At her plea hearing, DeMola admitted that she "direct[ed] persons at Walsh to participate in efforts with respect to closed funded loans which were to be reviewed by representatives of Greenwich Capital, which efforts included altering certain documents in those files and placing other documents, such as written appraisals, in the files."

38.     As such, DeMola deliberately concealed information regarding the mortgages issued.

39.     DeMola instructed D'Apolito to tell Kane to have the make the properties appear lived in just before the investor, Greenwich Capital, came to inspect the properties.

40.     DeMola also sent Ronnie Gonzales, a Walsh employee, to properties that were to be inspected by Greenwich Capital to put in curtains and lamps and make it appear as if the houses were being lived in.

41.     DeMola gave Kane and Grieser were given a list of approximately ten houses – all of which allegedly had leases on them – to fix so they appeared lived in, and Kane took North Jersey, Grieser took South Jersey, and they sent crews out to fix the homes.  Once it was done,

ME1 8975557v.1

they told DeMola that it was okay to send the person from Greenwich Capital to see the properties.

42.     Kane testified that a representative from Walsh warehouse lender came unannounced to look at the houses, and DeMola sent the quality control person to take the representative out to lunch while DeMola gave Kane and D'Apolito a list of properties to make sure they were in drive-by condition, including having no boards on the windows.

43.     DeMola also agreed to conceal the true conditions of properties from representatives of Walsh's warehouse credit facility.

44.     As such, due to her actions upon learning that the properties were to be inspected, DeMola was aware that the properties were not being repaired after purchase.

45.     DeMola created the underwriting guidelines and had the power to make exceptions on any loan.

46.     On multiple occasions, Kane pushed D'Apolito and then D'Apolito pushed DeMola to override the underwriting guidelines where one borrower had too many loans out, so the deal could be closed.

47.     Non-NHF loans took three to five days to close, while the NHF loans took three days, and, towards the end of the month, could close in a day.

48.     At her plea hearing, DeMola admitted that she "concur[red] in decisions improperly to eliminate underwriting conditions that were not met[.]"

49.     As such, DeMola actively eliminated and disregarded underwriting conditions.

50.     At her plea hearing, DeMola also admitted to "he use of second mortgages which were designed to match shortfalls in the funds available to the borrowers, but which were not intend[ed] to be filed or collected upon[.]"

ME1 8975557v.1

51.     DeMola was aware that D'Apolito received money from Kane, through DAP, Inc., to bring loans in, because D'Apolito informed her of this.

52.     DeMola was a knowing and active participant in seeking to obtain high risk mortgagors for purposes of profiting by securitization and the sale of Walsh Securities, Inc. assets.

### Robert Walsh's Involvement And Wrongdoing

53.     Robert Walsh was the President of Walsh Securities, Inc.

54.     Robert Walsh was a shareholder of Walsh Securities.

55.     Robert Walsh worked in the same building as DeMola at Walsh Securities.

56.     DeMola worked for Robert Walsh.

57.     Robert Walsh had frequent conversations with Bill Kane and Robert Skowrinski prior to the frauds becoming public.

58.     While Walsh Securities employees were altering the files in the conference room -- as set forth above -- Robert Walsh repeatedly entered and left the room.

59.     As such, Robert Walsh was aware that DeMola was waiving conditions and altering documents.

60.     A few months before the fraud became publicly known, Robert Walsh attending a meeting with Grieser, Kane, DeMola, and D'Apolito where Grieser said that, unless Walsh funded more loans, Grieser would stop making payments.

61.     Greiser told Walsh that, by stopping payment on Greiser's loans, all of the other loans, numbering approximately 140 to 200 – regardless of their amount – would go under.

ME1 8975557v.1

62.    After the meeting, Robert Walsh approved closing of five loans that were in the pipeline based on DeMola telling him that the Grieser and others were going to make a payment, it was just a misunderstanding, not to worry about it, and everything was under control.

63.    Robert Walsh was aware of the fraud yet continued to fund Greiser's loans at this point.

64.    After the subpoenas were issued, Robert Walsh said that, "[o]nly if I claim a victim, then the government can claim a victim" and that "it's our money and if we don't say it's fraud, it's not fraud."

65.    As President of Walsh Securities, Robert Walsh was ultimately responsible for the company's actions.

66.    Richard DiBenedetto, an appraiser, testified that Walsh Securities had no guidelines and did not check to see if there was a down payment, if the income tax was correct, or if you have a job; it also did not give you an appraisal.

67.    Robert Walsh was aware that Walsh Securities was not looking at the appraisals provide by DiBenedetto.

68.    No checks being done during the underwriting process at Walsh Securities.

### James Walsh's Involvement and Wrongdoing

69.    James Walsh was a vice president at Walsh Securities.

70.    James Walsh was a shareholder of Walsh Securities.

71.    James Walsh's responsibility was to sell the loans.

72.    James Walsh met with Kane on multiple occasions.

73.    James Walsh was present during the process of altering files to "clean" them, as set forth above.

-9-

74.     In December 1995 or January or February 1996, Kane met with Grieser, D'Apolitio, DeMola, and James Walsh over lunch during which DeMola explained what needed to be in the loans and how to get the loans done, specifically that Walsh Securities had to find a way to accommodate the volume of buyers.

75.     After the meeting, James Walsh said he would see what he could do and would get back to them.

76.     A few weeks after the meeting, the loans, which had temporarily stopped, were re-started.

77.     Grieser met with James Walsh in June 1997.  He told James Walsh about how the transactions were structured, namely that they went form Kane to Cristo to a joint venture and then to Capital Assets.  He stated that he was acquiring the properties and would bundle them into an REIT.

78.     Walsh Securities funded loans after the meeting between Grieser and James Walsh where he explained the structure of the transactions.

79.     Richard Calanni, an appraiser, met with James Walsh long before the fraud became publicly known and James Walsh urged him to use a different method of calculating his appraisals as to increase the values he placed on the Walsh properties; at the same meeting, James Walsh also expressed a view that the appraisals as-is may have been too high.

## COUNT I

### FRAUD AND BREACH OF LEGAL AND/OR FIDUCIARY DUTIES
### BY ELIZABETH ANN DEMOLA

80.     Defendant/Third-Party Plaintiff Commonwealth repeats and realleges each and every allegation of paragraphs 1 through 79 as if fully set forth herein.

-10-

81.     Under New Jersey law, fraud exists where a party (1) makes a material misrepresentation of a presently existing or past fact; (2) has knowledge or belief of its falsity; (3) has an intention that the other person rely on it; (4) the other person reasonably relies on that material misrepresentation; and (5) harm results.

82.     DeMola owed a duty of good faith and fair dealing to Defendant/Third-Party Plaintiff Commonwealth pursuant to the title insurance contract between Walsh Securities, Inc. and Defendant/Third-Party Plaintiff Commonwealth.

83.     DeMola's participation in the conduct set forth above constituted fraud and a breach of legal and/or fiduciary duties, as Defendant/Third-Party Plaintiff Commonwealth, if found liable under the Fourth Amended Complaint, will be harmed by DeMola's material misrepresentations as to her business dealings on behalf of Walsh Securities not being part of a fraudulent scheme.

84.     By reason of the foregoing facts, while Defendant/Third-Party Plaintiff Commonwealth denies any liability to Plaintiff, if Defendant/Third-Party Plaintiff Commonwealth is found to be liable under the Fourth Amended Complaint, it will be substantially damaged.

WHEREFORE, on this COUNT, Defendant/Third-Party Plaintiff Commonwealth is entitled to contribution from Third-Party Defendant Elizabeth Ann DeMola pursuant to the New Jersey Joint Tortfeasors Contribution Act.

## COUNT II

## NEGLIGENCE BY ELIZABETH ANN DEMOLA

85.     Defendant/Third-Party Plaintiff Commonwealth repeats and realleges each and every allegation of paragraphs 1 through 84 as if fully set forth herein.

ME1 8975557v.1

86.    DeMola's conduct, as set forth above, was negligent and resulted in harm to Walsh Securities.

87.    By reason of the foregoing facts, while Defendant/Third-Party Plaintiff Commonwealth denies any liability to Plaintiff, if Defendant/Third-Party Plaintiff Commonwealth is found to be liable under the Fourth Amended Complaint, it will be substantially damaged.

WHEREFORE, on this COUNT, Defendant/Third-Party Plaintiff Commonwealth is entitled to contribution from Third-Party Defendant Elizabeth Ann DeMola pursuant to the New Jersey Joint Tortfeasors Contribution Act.

## COUNT III

### FRAUD AND BREACH OF LEGAL AND/OR FIDUCIARY DUTIES BY ROBERT WALSH

88.    Defendant/Third-Party Plaintiff Commonwealth repeats and realleges each and every allegation of paragraphs 1 through 87 as if fully set forth herein.

89.    Under New Jersey law, fraud exists where a party (1) makes a material misrepresentation of a presently existing or past fact; (2) has knowledge or belief of its falsity; (3) has an intention that the other person rely on it; (4) the other person reasonably relies on that material misrepresentation; and (5) harm results.

90.    Robert Walsh owed a duty of good faith and fair dealing to Defendant/Third-Party Plaintiff Commonwealth pursuant to the title insurance contract between Walsh Securities, Inc. and Defendant/Third-Party Plaintiff Commonwealth.

91.    Robert Walsh's participation in the conduct set forth above constituted fraud and a breach of legal and/or fiduciary duties, as Defendant/Third-Party Plaintiff Commonwealth, if found liable under the Fourth Amended Complaint, will be harmed by Robert Walsh's material

misrepresentations as to her business dealings on behalf of Walsh Securities not being part of a fraudulent scheme.

92.     By reason of the foregoing facts, while Defendant/Third-Party Plaintiff Commonwealth denies any liability to Plaintiff, if Defendant/Third-Party Plaintiff Commonwealth is found to be liable under the Fourth Amended Complaint, it will be substantially damaged.

WHEREFORE, on this COUNT, Defendant/Third-Party Plaintiff Commonwealth is entitled to contribution from Third-Party Defendant Robert Walsh pursuant to the New Jersey Joint Tortfeasors Contribution Act.

## COUNT IV

## NEGLIGENCE BY ROBERT WALSH

93.     Defendant/Third-Party Plaintiff Commonwealth repeats and realleges each and every allegation of paragraphs 1 through 92 as if fully set forth herein.

94.     Robert Walsh's conduct, as set forth above, was negligent and resulted in harm to Walsh Securities.

95.     By reason of the foregoing facts, while Defendant/Third-Party Plaintiff Commonwealth denies any liability to Plaintiff, if Defendant/Third-Party Plaintiff Commonwealth is found to be liable under the Fourth Amended Complaint, it will be substantially damaged.

WHEREFORE, on this COUNT, Defendant/Third-Party Plaintiff Commonwealth is entitled to contribution from Third-Party Defendant Robert Walsh pursuant to the New Jersey Joint Tortfeasors Contribution Act.

ME1 8975557v.1

## COUNT V

### FRAUD AND BREACH OF LEGAL AND/OR FIDUCIARY DUTIES
### BY JAMES WALSH

96.     Defendant/Third-Party Plaintiff Commonwealth repeats and realleges each and every allegation of paragraphs 1 through 95 as if fully set forth herein.

97.     Under New Jersey law, fraud exists where a party (1) makes a material misrepresentation of a presently existing or past fact; (2) has knowledge or belief of its falsity; (3) has an intention that the other person rely on it; (4) the other person reasonably relies on that material misrepresentation; and (5) harm results.

98.     James Walsh owed a duty of good faith and fair dealing to Defendant/Third-Party Plaintiff Commonwealth pursuant to the title insurance contract between Walsh Securities, Inc. and Defendant/Third-Party Plaintiff Commonwealth.

99.     James Walsh's participation in the conduct set forth above constituted fraud and a breach of legal and/or fiduciary duties, as Defendant/Third-Party Plaintiff Commonwealth, if found liable under the Fourth Amended Complaint, will be harmed by James Walsh's material misrepresentations as to her business dealings on behalf of Walsh Securities not being part of a fraudulent scheme.

100.     By reason of the foregoing facts, while Defendant/Third-Party Plaintiff Commonwealth denies any liability to Plaintiff, if Defendant/Third-Party Plaintiff Commonwealth is found to be liable under the Fourth Amended Complaint, it will be substantially damaged.

WHEREFORE, on this COUNT, Defendant/Third-Party Plaintiff Commonwealth is entitled to contribution from Third-Party Defendant James Walsh pursuant to the New Jersey Joint Tortfeasors Contribution Act.

-14-

ME1 8975557v.1

## COUNT VI

## NEGLIGENCE BY JAMES WALSH

101.   Defendant/Third-Party Plaintiff Commonwealth repeats and realleges each and every allegation of paragraphs 1 through 100 as if fully set forth herein.

102.   James Walsh's conduct, as set forth above, was negligent and resulted in harm to Walsh Securities.

103.   By reason of the foregoing facts, while Defendant/Third-Party Plaintiff Commonwealth denies any liability to Plaintiff, if Defendant/Third-Party Plaintiff Commonwealth is found to be liable under the Fourth Amended Complaint, it will be substantially damaged.

WHEREFORE, on this COUNT, Defendant/Third-Party Plaintiff Commonwealth is entitled to contribution from Third-Party Defendant James Walsh pursuant to the New Jersey Joint Tortfeasors Contribution Act.

## PRAYER FOR RELIEF

WHEREFORE, defendant/third-party plaintiff Commonwealth demands judgment against third-party defendants Robert Walsh, James Walsh and Elizabeth Ann DeMola, jointly and severally.

McCARTER & ENGLISH, LLP
Attorneys for Defendant/Third-Party
  Plaintiff Commonwealth Land Title
  Insurance Company

By:   *s/David R. Kott*
      David R. Kott
      A Member of the Firm

Dated:  September 21, 2009

-15-