**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant/Third Party Plaintiff
     Commonwealth Land Title Insurance Company

|  |  |
|---|---|
| WALSH SECURITIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRISTO PROPERTY MANAGEMENT, LTD., A/K/A G.J.L. Limited, ET AL., <br><br> Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY <br><br> Civil Action No. 97-cv-3496 (DRD)(MAS) <br><br> Hon. Dickinson R. Debevoise, U.S.S.D.J. <br> Hon. Michael A. Shipp, U.S.M.J. <br><br> **CERTIFICATION OF SARA F. MERIN IN SUPPORT OF DEFENDANT/THIRD-PARTY PLAINTIFF COMMONWEALTH LAND TITLE INSURANCE COMPANY IN OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO DISMISS COMMONWEALTH'S THIRD-PARTY COMPLAINT** |

**SARA F. MERIN**, hereby certifies as follows:

    1.    I am an attorney at law of the State of New Jersey and am associated with the firm of McCarter & English, LLP, attorneys for Defendant/Third-Party Plaintiff Commonwealth Land Title Insurance Company in this case. I make this Certification in support of Defendant/Third-Party Plaintiff's brief in opposition to Third-Party Defendants' motion to dismiss Commonwealth's Third-Party Complaint. I am fully familiar with the facts and information set forth herein.

2.      Attached hereto as Exhibit A is a true and accurate copy of a January 12, 2006 Transcript of a motion hearing before the Honorable William G. Bassler, U.S.S.D.J., in <u>Walsh Securities v. Christo Property Management, Ltd.</u>, 97-cv-3496.

3.      Attached hereto as Exhibit B is a true and accurate copy of a January 13, 2006 Transcript of a motion hearing before the Honorable William G. Bassler, U.S.S.D.J., in <u>Walsh Securities v. Christo Property Management, Ltd.</u>, 97-cv-3496.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


_____*s/ Sara F. Merin*_____
SARA F. MERIN

Dated:  September 21, 2009

-2-

# <u>**EXHIBIT A**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL NO: 97-3496

- - - - - - - - - - - - - WALSH
SECURITIES, INC.,          :
                                      :
              Plaintiff,   :
                                      :
         vs.               :
                                      :
CRISTO PROPERTY MANAGEMENT, :
LTD., et als.,             :
                                      :
              Defendants.  :
- - - - - - - - - - - - -


Newark, New Jersey Thursday,

January 12, 2006

B E F O R E:

HONORABLE WILLIAM G. BASSLER, U.S.D.J. A

P P E A R A N C E S:
BOIES, SCHILLER & FLEXNER, ESQS.,
BY:  ROBERT A. MAGNANINI, ESQ.
For the Plaintiff.

  MC CUSKER, ANSELMI, ROSEN, CARVELLI &
WALSH, ESQS.,
BY:  JOHN B. MC CUSKER, ESQ.,
For the Defendant.

GREENBERG TRAURIG, ESQS.,
BY:  TERRENCE S. BRODY, ESQ.,
For the Defendant.

---

Pursuant to Section 753 Title 28 United States Code, the following transcript is certified to be an accurate record taken stenographically in the above entitled proceedings.

---

IRA N. RUBENSTEIN, C.S.R.
Official Court Reporter


IRA N. RUBENSTEIN, CSR, Official Court

Reporter, Newark, N.J.

A p p e a r a n c e s (cont'd)

```
            MC CARTER & ENGLISH, ESQS.,
            BY:  DAVID R. KOTT, ESQ.,
                 NATALIE WATSON, ESQ.,
            For the Defendant.
  IRA N. RUBENSTEIN, CSR, Official Court Reporter, Newark, N.J.
```

```
1        THE COURT:  When we're arguing statute of limitations
2    it's best to be seated.
3        May I have appearances please.
4        MR. MAGNANINI:  Yes, your Honor.
5        Robert Magnanini from Boies, Schiller and Flexner for
6    plaintiff Walsh Securities.
7        MR. BRODY:  Good afternoon.
8        MR. MC CUSKER:  John McCusker of McCusker, Anselmi,
9    Rosen, Carvelli and Walsh on behalf of Weichert.
10       MR. BRODY:  Good afternoon, your Honor, Terrence Brody
11   of Greenberg Traurig for Stewart Title Guaranty Company.
12       MR. KOTT:  David Kott and Natalie Watson of McCarter
13   and English for the Commonwealth Land Title Insurance Company.
14       THE COURT:  All right.  I know there are some attorneys
15   and individuals interested in this case.  Maybe even defendants
16   in this case.
17       Could I have everybody identify themselves over here?
18       MR. RALPH:  I'm Robert J. Ralph.  I filed an answer to
19   Michael Alfieri on Tab 6 of the complaint only.
20       THE COURT:  And you also filed the cross claim?
21       MR. RALPH:  Yes, your Honor.
22       MR. MADUCLER (phonetic):  Good afternoon, your Honor,
23   Edward C. Maducler, Hobbie, Corrigan, Bertucio and Tashjy.  We
24   represent Mr. Alfieri, Esquire in Counts 1 through 5.  Those are
25   the crossclaims genrally.
```

1          THE COURT:  It's Michael?

2          MR. MADUCLER:  Michael Alfieri.  Five counts allege

3     fraud, the sixth count is a styled professional magnitude count.

4          THE COURT:  Who did you say you represent on --

5          MR. MADUCLER:  Michael Alfieri.

6          THE COURT:  I have him on the upper count.

7          MR. MADUCLER:  That's A different motion for A

8     different day.

9          THE COURT:  All right.

10         MS. DEBBER (phonetic):  Cathline Debber from

11    Hollenbeck.  We represent Garden State Indemnity.

12         THE COURT:  Okay.  Starting over here?

13         MR. DELLANE (phonetic):  Your Honor, James Dellane from

14    Fox for Fidelity National and Nations Title Insurance Company of

15    New York.

16         THE COURT:  All right.

17         MR. COGMAN (phonetic):  I'm Paul Cogman, general

18    counsel for defendant Weichert.

19         THE COURT:  The gentleman sitting here.

20         MR. COUZSESKI (phonetic):  Yes, Warren Couzseski.

21    Irene Difeo is my wife.

22         THE COURT:  All right.  I have been through the papers

23    and I think this will be more helpful for me if we first focused

24    on some things that I'd like answered, and if there's anything

25    you'd like to supplement in the papers you certainly will have

5

1    the opportunity.

2          Mr. Magnanini, tell me, I want to start with Stewart

3    Title first.  I don't want to --

4          MR. MAGNANINI:  I understand, your Honor.

5          THE COURT:  Easier for me to do the analysis

6    independently.

7          How do I have jurisdiction against Stewart?

8          MR. MAGNANINI:  Your Honor, we believe you have

9    jurisdiction against Stewart Title because we believe that the,

10   if not the state, but the administrative dismissal told the

11   statute of limitations.

12         THE COURT:  I'm not talking about jurisdiction.

13         How do I have the authority to enter, to do anything in

14   this case?  What is the basis?

15         MR. MAGNANINI:  Sorry, your Honor.

16         Stewart, each of the closing attorneys involved in the,

17   in this scheme were insured by Stewart Title Insurance Company.

18   Each property that was purchased from the funds wired from Walsh

19   Securities came with title insurance.  Title insurance was

20   provided predominantly by Commomwealth.

21         THE COURT:  I just want to know, I don't -- I just want

22   to know about Stewart, how do I have jurisdiction?

23         MR. MAGNANINI:  Stewart had insured two of those fraud

24   properties.

25         THE COURT:  Let me start again.

1          MR. MAGNANINI:  Okay.

2          THE COURT:  Walsh Securities is incorporated where?

3          MR. MAGNANINI:  Delaware, your Honor.

4          THE COURT:  Stewart Title?

5          MR. BRODY:  Your Honor, I believe it's Essex.

6          THE COURT:  Does anybody have any doubt that I have

7    diversity jurisdiction over Stewart?

8          MR. BRODY:  It has not been briefed, your Honor

9          THE COURT:  I know it hasn't been briefed.  But

10   certainly THE first thing you ought to know when you come into

11   Court is if that Court has jurisdiction.  This can take -- I

12   want to try and try it.  It's one of my oldest cases.  When it

13   goes down to the Third Circuit, we find out I don't have

14   jurisdiction, we're all going to look pretty stupid.

15         So my question is this; is there any doubt from anybody

16   here that I have diversity jurisdiction over Stewart?

17         MR. MAGNANINI:  I don't, your Honor.

18         MR. BRODY:  Assuming, your Honor, that --

19         THE COURT:  I want a yes or no.

20         MR. BRODY:  I'm really not positive.

21         THE COURT:  It looks like I do.  In any event, at this

22   stage of the game there's a federal RICO count?

23         MR. MAGNANINI:  Correct.

24         THE COURT:  So I would have supplemental jurisdiction
25   under -- okay.

1          The next thing I want to know, Mr. Magnanini -- sit

2    down, it's a long afternoon.  Pull the microphone up.  This is

3    going to take us a couple hours so I mean, I read it but I want

4    to give everyone an opportunity to talk before the hammer falls.

5          It is my understanding, God knows how, but I think my

6    Deputy Clerk told me that you are dismissing the claim against

7    the defendant Irene Difeo.

8          MR. MAGNANINI:  Yes, your Honor, we're in the process

9    of resolving that now.

10          THE COURT:  I'll enter a 60 day order.

11          MR. MAGNANINI:  Okay.

12          THE COURT:  I'm sorry, I forgot your name but your the

13    husband of Mrs. Defeo.  You're welcome to stay here.

14          What's happening here, the plaintiff I guess is working

15    out a settlement arrangement with your wife and I'm dismissing

16    the complaint to give the parties 60 days to work it out.  Okay.

17    You're welcome to stay.  It's going to be a long afternoon

18          MR. DIFEO:  Because she does call me every day from

19    prison.  Just like to keep her updated.

20          THE COURT:  You can tell her the Court today is

21    entering what is called a 60 day order dismissing the case.

22    Gives you a 60 day window to wrap up the settlement.  If it

23    blows up I guess everybody will be back here.

24          MR. DIFEO:  Thank you very much.
25          THE COURT:  You're welcome.

1          Okay.  Now, the claim against Stewart Title is, is

2     based on a breach of contract theory, is it not?

3          MR. MAGNANINI:  Correct.

4          THE COURT:  I guess to be more accurate, it not only is

5     a breach of I guess of the title insurance contract -- is that

6     the issue?

7          MR. MAGNANINI:  Yes.

8          THE COURT:  On closing protection lines?

9          MR. MAGNANINI:  Yes.

10         THE COURT:  Not fraud?

11         MR. MAGNANINI:  No, no.  None of the title companies

12    were fraud.

13         THE COURT:  Six year statute OF limitations?

14         MR. MAGNANINI:  Correct, your Honor.

15         THE COURT:  Everybody agree with that?

16         MR. BRODY:  Yes, your Honor.

17         THE COURT:  Now, since you filed the lawsuit, this is,

18    you filed the third -- let me back up for a minute with this.

19         I know there's a little conflict about whether counsel

20    filed the third party complaint without permission of the Court.

21    Mr. Magnanini, you responded, you actually did it in response to

22    the conference with the Magistrate.  That was his understanding.

23    Certainly the third party weren't playing around.  Magistrate

24    Judge called a few minutes ago, said usually her process is to

25    file an order permitting it but it could very easily have been

1   pursuant to her instructions and that -- may be there was a

2   miscommunication.  But for purposes of getting to the merits, it

3   doesn't make any difference, does it?

4           MR. BRODY:  No, your Honor.

5           THE COURT:  I didn't think so.  So, we'll assume I

6   guess -- one thing, was there consent to filing your third party

7   complaint or not?

8           MR. BRODY:  Your Honor, we were not involved in the

9   case at that time.  No one ever, to the best of my knowledge,

10  ever prior to filing of the third amended complaint contacted my

11  office.

12          MR. MAGNANINI:  Your Honor, what happened was we had a

13  case management conference in December.

14          THE COURT:  December.  Right.

15          MR. MAGNANINI:  And Judge Arleo came in and I explained

16  that we had an amended complaint filed in '98 that should have

17  been stayed.  She had told me, I believe it was a management

18  order, to circulate a copy of the complaint with all parties in

19  the case.  Right.  Because they were the ones who would then

20  file a motion to object.

21          So, no one objected.  I waited until a day -- but we

22  did send it to all the parties in the case.  We didn't get back

23  any objections on the amendments.  Then on January 28th, Judge

24  Arleo told us okay we haven't had, two weeks have expired.  No

25  one objected.  Here's the complaint.  Serve it.  That's what we

1    did but we did not know any of the new parties, Weichert or

2    defendants because they were not in the case at that point.

3            THE COURT:  All right.  Okay.  So they the new

4    defendants did not consent to the third party?

5            MR. MAGNANINI:  Correct.  They didn't get notice.

6    Everyone was in the case, did not object.

7            THE COURT:  Okay.  Since you filed the lawsuit, that

8    was January of -- since you filed the third amended complaint,

9    that was January 2005?

10           MR. MAGNANINI:  I believe it was -- January 28th, your

11   Honor.

12           THE COURT:  Have you discovered any new instances of

13   fraud?

14           MR. MAGNANINI:  Of fraud?

15           THE COURT:  Strike that.  That doesn't make any sense.

16   Let my ask this question.

17           As to Weichert, you're suing Weichert under a

18   respondeat superior theory of the fraud.  I guess of --

19           MR. MAGNANINI:  She was a Weichert realtor.

20           THE COURT:  That becomes --

21           MR. MAGNANINI:  Both common law and RICO.

22           THE COURT:  I know she's included in the RICO but

23   under, under -- I know you have a count against her for RICO.

24   Weichert can't be responsible under agency security for her
25   RICO.

1          MR. MAGNANINI:  Actually they can, your Honor.

2          When we look at the RICO law throughout the Third

3    Circuit, around the country, you can proceed against an employee

4    who's a member of a RICO conspiracy and if you're going to

5    proceed against the employer, you have a choice by proceeding in

6    a respondeat superior complaint or naming them, naming the

7    employer as part of the RICO scheme.  But if you do that you're

8    prohibited from proceeding against the employee separately.

9          What we believed that Miss Pepsny was involved in the

10   scheme and thus any of the proceeds she received from the sale

11   would benefit Weichert.  So we chose not to include Weichert as

12   part of the RICO scheme but --

13         THE COURT:  Look --

14         MR. MAGNANINI:  Weichert respondeat superior,

15   respondeat.

16         THE COURT:  I appreciate that.  But doesn't that

17   mean -- I understand that the allegations are, if true, that

18   could be a respondeat superior liability on Weichert's part for

19   the fraud she committed, common law fraud.  But if the jury

20   comes in and finds that she is a coconspirator in the RICO case

21   why can't they be held responsible?  Can they, for the RICO?

22         MR. MAGNANINI:  Not for the RICO.

23         THE COURT:  That's what I'm saying.

24         MR. MAGNANINI:  Not for the RICO, just for her acts.
25         THE COURT:  Okay.  When it comes to the equitable

1    pooling argument against Stewart is the -- do I find federal

2    document or state document or both?  Good question?

3           MR. MAGNANINI:  It is, your Honor.

4           THE COURT:  Not briefed.  What do you say?

5           MR. BRODY:  My understanding is that you apply both.

6    It's basically a common law issue.  The equitable issue you

7    borrow from state court and federal court.

8           THE COURT:  I'm not sure the Third Circuit has opined

9    on that but I think you're right.  If the state law were more

10    favorable I would apply the more favorable law.  But, that

11    hasn't been briefed and I think you briefed in the state law,

12    did you not?

13           MR. MAGNANINI:  We did, your Honor.  We didn't find any

14    in the Third Circuit law on the public distinction.

15           THE COURT:  All right.  So, at least for a portion, if

16    I'm going to look at equitable pooling, it's under New Jersey

17    law.  Everybody does agree as to the state law, it's New Jersey

18    that applies?

19           MR. BRODY:  Yes, your Honor.

20           THE COURT:  Mr. Magnanini, isn't it a fact that when

21    you filed the original complaint or -- well, you didn't, your

22    predecessor.

23           MR. MAGNANINI:  July of 1997.

24           THE COURT:  Yes, July 1997.  Walsh had in its

25    possession both, they would have had in its posession, both the

1   title and even policies as well as the closing -- letters, you

2   don't call them closing letters.

3            MR. MAGNANINI:   Closing service protection letters.

4            THE COURT:   Closing service protection letters.   You

5   would have had those in your possession, wouldn't you?

6            MR. MAGNANINI:   I believe they did have all of them.

7            THE COURT:   I'm sorry?

8            MR. MAGNANINI:   I believe they had all of them.   They

9   were part of a file that was Walsh Securities.

10           THE COURT:   What?

11           MR. MAGNANINI:   The way Walsh Securities operated, they

12   didn't have enough capital to fund the mortgage then hold on to

13   it.   So Walsh would fund it then they would turn around and sell

14   the loan file.   So within the loan file package that was

15   purchased, I believe all of them did have title policies and

16   closing service protection letters.   They were the requirements

17   in order for the transaction to close.

18           THE COURT:   Okay.   You just said something that puzzles

19   me.   If Walsh signed and transferred the mortgages to somebody

20   else, how is the law going to apply?

21           MR. MAGNANINI:   Despite the price on this case nobody

22   seemed to ever got to that.   Walsh Securities, about a billion

23   five of mortgage loans throughout its operation, on each of the

24   securities, Walsh Securities was a loss so that meant as soon as
25   fraud was discovered on a piece of property there were five

1     separate security acquisitions.  Each one had $2 million

2     requirements for Walsh Securities to buy the loans back.

3              So each of the securities, Walsh was out $10 million.

4     Had to buy its own properties back.  The remaining properties

5     were sold.  What they called home loan buyers.  Where the Money

6     Store, a lot of entities no longer exist because people don't

7     want to pay 12 perecent for a mortgage.

8              So again Walsh sold those properties and each of the

9     contract sales had warranty representation that if there was any

10    fraud within the underlying property Walsh Securities was

11    obligated to repurchase them.  That's what eventually killed the

12    company.  All this capital was expected to be purchased by

13    Walsh.

14            THE COURT:  Thank you.

15            How many mortgages were for the Stewart group?

16            MR. MAGNANINI:  Just two, your Honor.  The property --

17    I believe were less than two properties, were less than 400,000

18    at any rate, interest and everything else.  When we discovered

19    these Stewart properties back in 1998, we called them up said we

20    prefer federal than --

21            THE COURT:  We'll get into that.

22            MR. MAGNANINI:  Those are the two.  Not sure what three

23    would be now with the interest and everything else.

24            THE COURT:  Let take a look at the original complaint.
25            (Pause.)

1          THE COURT:  Looking at the defendant -- are the kind of

2   insurance companies listed or not?

3          MR. MAGNANINI:  In the original complaint, no they're

4   not, your Honor.

5          THE COURT:  Let me go to the second amended --

6          (Pause.)

7          THE COURT:  The first amended complaint.

8          (Pause.)

9          THE COURT:  Upgrade.  Am I correct, Title Insurance

10  Company -- Fidelity National Title Insurance Company and

11  Joseph --

12         MR. MAGNANINI:  Yes, your Honor, I believe Coastal

13  Title Insurance Company was in the original complaint.  I

14  believe it was.

15         THE COURT:  I don't see it.  In any even, going back to

16  the first amended complaint --

17         MR. MAGNANINI:  Yes.

18         THE COURT:  Agents title.

19         MR. MAGNANINI:  Yes.

20         THE COURT:  The amended complaint was filed before --

21         MR. MAGNANINI:  November of 1997.

22         THE COURT:  I'm sorry?

23         MR. MAGNANINI:  November of 1997.

24         (Pause.)
25         THE COURT:  Why didn't Walsh Securities sue Stewart

1  Title Insurance Company when it filed the amended complaint?

2       MR. MAGNANINI:  My recollection is, your Honor, they

3  did not know there were a couple of other properties that were

4  involved in the fraud and two of those properties turned out to

5  be the one that Stewart Title insured.  So Walsh Securities on

6  July 28th of 1997, issued, they wrote letters requesting

7  coverage.

8       THE COURT:  What was that?

9       MR. MAGNANINI:  July 28, 1997, for three title

10  companies; I believe Commonwealth, Nations and Fidelity.  Then

11  when they refused to provide coverage the complaint was amended

12  to add a contract claim against title companies and I believe

13  that's when Coastal Title, my recollection was it's not in the

14  first complaint but it's not listed as a defendant on that cover

15  page.

16       THE COURT:  I mean this is what you're telling me the

17  reason for not suing Stewart Title, you don't know that yourself

18  because you weren't the attorney of record at that time?

19       MR. MAGNANINIB:  Yes, I actually do, your Honor.  I

20  handled most of the aspects of the case at Lathan Watkins.  So I

21  remember finding these other three because we kept, we kept I

22  think the first waive.  We said there were about 220 properties.

23  I came up with three more.

24       THE COURT:  I'm sorry?
25       MR. MAGNANINI:  Three more properties had the hallmark

1     for pruchase by Cristo.  Sold to one of these particular buyers

2     60-40.  Was recorded.  Walsh Securities, mortgages, were not --

3     I believe the closing one would be Stanley and one was Anthony

4     Cicalese.  All the same entities involved in what we considered

5     fraud.  That's the end of the three.  We had three properties.

6     We had amended the complaint and the end discussion with Stewart

7     Title was to see if we could resolve the two properties rather

8     than having togo into the litigation.

9              THE COURT:  So you knew in 1997 --

10             MR. MAGNANINI:  And 1998.

11             THE COURT:  -- that there were two missing properties.

12    You say two?

13             MR. MAGNANINI:  We added three but only two of them

14    were insured by Stewart.

15             THE COURT:  So 1998 you knew that there were two

16    properties, two mortgage loans that went sower, that where

17    insured by Stewart?

18             MR. MAGNANINI:  Correct.

19             THE COURT:  And you were with Latham and Watkins?

20             MR. MAGNANINI:  Correct.

21             (Pause.)

22             THE COURT:  February 11, 1998, you filed the second

23    amended complaint.  Right?

24             MR. MAGNANINI:  Correct, your Honor.
25             THE COURT:  Did you know then that Stewart Title was a

1    potential defendant?

2         MR. MAGNANINI:  I don't think we did until March when I

3    came upon this and we began discussions with -- it wasn't the

4    Gibbons firm.  I'm not sure who represented Stewart Title.

5         THE COURT:  Well, if you knew March 8th, 1998, that

6    Stewart Title insured two properties, why did you not file

7    another amended complaint against Stewart Title?

8         MR. MAGNANINI:  I believe we were engaged in settlement

9    discussions with Stewart and then in March '98, counsel Gibbons

10    Del Deo, then counsel for Stanley Cracker (phonetic) filed a

11    motion to stay the case.  Judge Cavanaugh issued an order.

12         THE COURT:  I'm sorry.  Go ahead.

13         MR. MAGNANINI:  So, what we did --

14         THE COURT:  I just -- that's not quite accurate.  The

15    case wasn't stayed April of '98.

16         MR. MAGNANINI:  No, I believe the motions were filed

17    originally in January, your Honor.  We had a hearing before your

18    Honor in March of '98.  I believe your Honor's order was April

19    28th, '98.

20         THE COURT:  Let's look at that.  That is in somebody's

21    affidavit.

22         MR. MC CUSKER:  Looks like the 26th or 27th of April

23    '98.

24         THE COURT:  I want to get with the order.  Problem with

25    electronic filing, when I get these packages I have no tabs to

1    find the exhibit numbers.  The order is in here, is it not?

2              MR. MC CUSKER:  Yes, sir.

3              THE COURT:  What exhibit numbe?

4              MR. MC CUSKER:  Exhibit E, your Honor.

5              THE COURT:  E?

6              MR. MC CUSKER:  E.

7              THE COURT:  E like Edward.

8              (Pause.)

9              THE COURT:  April 28th, '98.  I stayed discovery and

10   deposition -- I stayed interrogatory deposition discovery but I

11   didn't stay the case.

12             MR. MAGNANINI:  No, your Honor, you didn't.

13             THE COURT:  So my question then is, why didn't you file

14   another amended complaint?  Your answer to me, I stayed the case

15   isn't really accurate.

16             MR. MAGNANINI:  Well, no.

17             THE COURT:  I didn't stay the case.

18             MR. MAGNANINI:  You stayed discovery.

19             THE COURT:  That's not staying the case.

20             MR. MAGNANINI:  No, no, your Honor.  But you stayed

21   discovery until November of 1998.

22             THE COURT:  Yes, you already knew Stewart was a target

23   in March of '98.

24             MR. MAGNANINI:  In March of 98, right.  Then my
25   understanding of it was that Mr. Chertoff had a conversation

1    with the United States Attorney's Office and the Court and was

2    told that because the criminal investigation had not concluded

3    because your Honor, after the briefing on the motion to stay

4    there was an -- I don't know if you recall, it was an in camera

5    presentation by the United States Attorney's Office.  Then you

6    issued the order, stayed discovery until November so as to not

7    interrupt the early criminal investigation.

8              THE COURT:  But I let the documents discovery go ahead.

9              MR. MAGNANINI:  Yes, your Honor everyone who was in the

10   case at that time, produce documents.

11             MR. KOTT:  Depositories.  That was our understanding of

12   what was to be done.  Come November 1998, we were prepared to

13   pick up again.  But my understanding there was, after a

14   conversation with Mr. Chertoff, the U.S. Attorney's Office and

15   the Court, the criminal investigation was not concluded and was

16   going to continue.  Therefore, the stay --

17             THE COURT:  But there was never a stay of the case.

18   You keep saying there was a "stay."  There was a stay of

19   discovery in April of 1998 not a stay of the case.

20             MR. MAGNANINI:  Yes, sir.  I know Latham and Watkins,

21   we believed there was a stay of the case.

22             THE COURT:  Well, let's take a look at the order

23   together.  Do you have it in front of you?

24             MR. MAGNANINI:  I don't have it in front of me.  I know

25   what this says, your Honor.

1          THE COURT:  You know what it says and that it is -- I

2     don't know how it can be any clearer.  In fact I remember some

3     time ago, I remember a courtroom full of attorneys and wrestling

4     with the issue about staying the case, and I was trying to find

5     a way in which the criminal investigation wouldn't completely

6     stop the civil case and in light of the objections from some of

7     the defendants about taking the Fifth Amendment and the

8     government wanted the case stayed, I didn't stay the case.  What

9     I did do, I stayed interrogatories and deposition discovery

10    until November 1998, and it is further ordered that document

11    discovery in the case proceed.  Then you triggered my memory

12    too, I think there was a hassle over the form of the documents,

13    who was the depository.

14         MR. MAGNANINI:  Correct, your Honor, Latham and

15    Watkins.

16         THE COURT:  There's no question.  I guess the answer is

17    candidly given to me that it was Latham and Watkins

18    understanding the case was stayed and at that time the reason

19    the complaint wasn't --

20         MR. MAGNANINI:  Correct, your Honor.  Was once November

21    1st, 1998 came and the criminal investigation had not concluded,

22    what I received was the reason the Court had stayed the case was

23    the request of the government and its investigation was still

24    going on.

25         THE COURT:  So the stay, I never stayed -- April of

1    '98, I never stayed the case itself.  There was nothing to

2    prevent Stewart -- nothing to prevent Walsh Securities from

3    coming in, saying Judge, you know, we want to file an amended

4    complaint naming Stewart Title as the  Other title insurance

5    company defendant.

6                That's true.  Right?

7                MR. MAGNANINI:  Okay.  Yeah, I guess, your Honor.

8                THE COURT:  I guess what?

9                MR. MAGNANINI:  That wasn't Latham and Watkins.

10               THE COURT:  Didn't think about it.  It wasn't your

11   understanding what the order says, but we don't go on

12   understanding, we go on what the order says.

13               MR. MAGNANINI:  Yes, your Honor.

14               THE COURT:  The order did not stay the action.  Nothing

15   to prevent you from suing them here at all at that time.

16               MR. MAGNANINI:  Yes.

17               THE COURT:  All right.

18               With respect to Stewart Title, what do you know now

19   that you didn't know when you filed the amended complaint

20   bringing in the other title insurance companies, the first

21   amendment?

22               MR. MAGNANINI:  Yes, sir.

23               Well, after that time, your Honor, we discovered that

24   Stewart Title did issue title insurance on two properties and
25   issued closing service protection letters to National Home and

1    signed, which Walsh Securities, they wired the money.   So

2    that's --

3            THE COURT:   Walsh Securities may not have proached upon

4    it but you have that information when you filed the first -- if

5    anybody had gone through all the titles, looked at all the title

6    insurance, company title insurance would have been there?

7            MR. MAGNANINI:   Yes, your Honor, it was within the

8    document.

9            THE COURT:   What I'm driving at, in all this it's

10   addressing -- I know we have a lot of items but let me just deal

11   with this one.

12           There's language in, I think it's loose language in the

13   brief that says we're really being prejudiced here because this

14   document was stayed which eventually, all discovery was stayed

15   and that has been prejudicial.   But as far as Stewart Title

16   Company is concerned, staying the discovery wasn't prejudicial.

17           Well I look at your face but you can't respond to that,

18   can you?   You respond how you were prejudiced with respect to

19   Stewart Title Company by the eventual stay.   We know now there

20   certainly was no prejudice by the stay of depositions and

21   interrogatories because I allowed document discovery.   If

22   everybody had done that it have sufficed.   Stewart Title had

23   issues as to the policy according to the service protection

24   letter.   All I'm addressing, rationally and reasonably is, that

25   argument about being prejudiced for the stay of discover doesn't

1    hold up, does it?

2          MR. MAGNANINI:  I'm not sure what we would have learned

3    in discovery.

4          THE COURT:  That's the point, that's the point.  All

5    the cases that you've cited about where discovery has been told

6    and as a result of tolling of discovery, the plaintiff did not

7    realize another defendant and so by the staying of discovery

8    that defendant was not named and then when it's discovered,

9    other things being correct, the Court allowed an amended

10    complaint.  In this case with Stewart Title, that wasn't the

11    case.  You always knew that Stewart Title was on the same hook

12    as the other title insurance companies.

13          MR. MAGNANINI:  Once we found those properties we did,

14    your Honor, yes.

15          THE COURT:  Right.  That would have been at least --

16          MR. MAGNANINI:  March of '98.

17          THE COURT:  The reason you're now adding Stewart Title

18    to -- is because they were never added before they issued

19    insurance policies on these two properties and the mortgages had

20    gone sower.  You're looking to them to honor their commitment?

21          MR. MAGNANINI:  Correct, your Honor.

22          THE COURT:  When you were negotiating with Stewart

23    Title that was in I think you said, and correct my if I'm wrong,

24    early April of '98?

25          MR. MAGNANINI:  April of '98, yes, your Honor.

1           THE COURT:  Did you get a pooling agreement from

2   Stewart Title?

3           MR. MAGNANINI:  I don't think so, your Honor.

4           THE COURT:  If you did, I would have it?

5           MR. MAGNANINI:  We would have found it and I have not

6   found one in the file.

7           THE COURT:  It's difficult for me at the moment to nail

8   down --

9           (Pause.)

10          THE COURT:  The substance of the -- well, there's no

11  question that if you don't have the benefit of equitable tolling

12  for relation to the document of Rule 15C, the statute of

13  limitations run?

14          MR. MAGNANINI:  Yes.

15          THE COURT:  So, on the first leg of this thing the

16  equitable tolling argument substantially rests on whether the

17  administrative dismissal in May of -- May 3rd, 2000, whether

18  that period of May 30 to when I lifted the -- when I vacated the

19  administrative determination, reinstated it in 2005.  Right?

20          MR. MAGNANINI:  I believe it was actually 2004, your

21  Honor.

22          THE COURT:  I think you're right.

23          MR. MAGNANINI:  We hadn't been here.

24          THE COURT:  All right.
25          (Pause.)

1          THE COURT:  The law is quite clear that a stay of

2    discovery, absent prejudice to the plaintiff, doesn't toll the

3    statute of limitations.  Seems pretty clear to me.

4          So the question is, well, what does administrative

5    dismissal mean and why is administrative dismissal -- first of

6    all, we're never going to find an administrative dismissal in

7    the State of New Jersey because there is no such animal.  You

8    practiced in state court.

9          MR. MAGNANINI:  Correct, your Honor.

10         THE COURT:  Administrative dismissal, I don't even know

11   if it's even recognized in the rules.  You practice in the

12   federal system?

13         MR. MAGNANINI:  Yes, your Honor.

14         THE COURT:  Basically it's a manuever Where a judge

15   sees a case that for one reason or another is going to move

16   forward for a while in -- maybe because well, it's bankruptcy --

17   but any number of reasons the Court simply doesn't want it on

18   its docket for case reporting purposes.  So usually the letter

19   gets out and the case is administratively dismissed.  The action

20   is going to be reinstated upon application of the Court or

21   letter of your adversaries.  When the bankruptcy is finished it

22   goes back on the docket.

23         So, when I administratively dismissed it because I

24   didn't want the thing sitting on my docket, civilly while the
25   criminal case went ahead, why is that anything different than

1   polling the discovery?  I mean staying discovery.  Doesn't

2   tolling the statute, why does administrative dismissal, tolling

3   it --

4        MR. MAGNANINI:  We believe the administrative dismissal

5   was a different animal than the stay of discovery.

6            Again, it may laugh been an understanding after the

7   stay ended because the case was, was still stayed.  Discovery

8   was still stayed.  Nothing happened from November of 1998 until

9   May 2000 when your Honor administratively dismissed it.  At that

10  point it was again Latham and Watkins understanding the case was

11  dormant, stay, terminated until it was back on the docket and we

12  would pick it up at this point in time.  Whenever it was

13  reinstated and throughout, one of the things I know, throughout

14  the papers is the unsubstantiated claims by Walsh Securities

15  lawyers that we didn't do anything.  We had a number of

16  conversations.

17       THE COURT:  You don't mean Walsh.

18       MR. MAGNANINI:  Yes, your Honor.  With U.S. Attorney's

19  both Mr. Chertoff, Jeff Berman, who was at Latham and Watkins on

20  the case before he left.  Which we're told the Court, I know I

21  drafted case letter trying to keep the case open.

22           We were told in turn by the government they would

23  object to us interfering with a criminal investigation so we

24  let the case or Latham and Watkins -- the thing sat, was boxed

25  up.  Waited for the administrative termination or dismissal to

1    be reversed.

2         Actually, Mr. Carluccio was the one who filed the

3    motion to get the stay lifted.  When he filed the motion I

4    myself called the U.S. Attorneys' Office, talked to them.  I was

5    told they wouldn't act because the criminal investigation was

6    nearing.  The day we had a hearing before your Honor I was told

7    they were going to come in and object.  So I had an meeting in

8    Boston.  I didn't appear for that, I sent somebody.  The U.S.

9    Attorney came in, said we know longer object.  That was a great

10   surprise to us.  Then the case got put back on the docket.  We

11   were able, I thought then, to proceed.  Then we went to Court,

12   filed three the amended complaint.

13        Now, I understand subsequent things happened while the

14   case was administratively terminated.  One attorney was

15   appointed as a Judge in Monmouth County.  Your Honor let him

16   withdraw his representations so he could go on the bench.  Mr.

17   Schottland's office changed.  He had to get rid of the

18   depository.  One thing, we never got notice of any of this.  I

19   found this out from reading the papers.  There were events that

20   occurred during the administrative dismissal, but --

21        THE COURT:  You didn't get notice from --

22        MR. MAGNANINI:  That was the first time I saw it on the

23   docket.

24        THE COURT:  That's Cicalese, didn't he apply to me to

25   file.  You have a cross claim?

1          MR. MAGNANINI:  He did, your Honor, but that was back

2     in July of 1998.  Your Honor had Judge Cavanaugh set dates first

3     for answers and document protection to begin and your Honor's

4     April 28th stay order, it said everybody has to file an answer.

5     Cicalese didn't do it.  So he filed a motion, I think concurrent

6     with the stay where I remember because they called me, asked if

7     we would consent.

8          I talked to Mr. Chertoff, I was concerned.  We opposed

9     it.  Your Honor granted it.  He filed his cross claim but that

10    was right at the time the stay was happening.  The next thing we

11    knew was, Mr. Carluccio had filed the motion and I told him,

12    although I talked to the government, good luck.

13         THE COURT:  Well, the government could have opposed

14    your application to reinstate the case, to litigate it but you

15    say, we went to file a mini complaint.  Do you have any --

16         MR. MAGNANINI:  Honestly, your Honor, I never said that

17    to him.  I asked that we, we wanted to reopen the case.  We have

18    other things that -- we wanted to get the case going.

19         THE COURT:  I mean, the whole thrust of case, case

20    management, inaffective as it was, in light of the ongoing

21    criminal investigation -- I'm getting very clear the purpose of

22    the stay.  The original stay of discovery was to avoid a

23    conflict coming between the criminal investigation and

24    discovery.  It had, you know, never dawned on me.  I never
25    intended to prevent you from filing an amended complaint.  Okay.

1    Nor, as a matter of fact, since Stewart wasn't a defendant there

2    was nothing to prevent you from suing them in the state court

3    under the statute.

4         (Pause.)

5         MR. MAGNANINI:  I again, your Honor, thinking back.

6    Latham and Watkins, we thought there was and we had -- there was

7    discussion because there was attempts to file something.  State

8    court back then.  I reviewed the --

9         THE COURT:  I'm sorry.

10        MR. MAGNANINI:  I said, I believe Latham and Watkins

11   read the entire controversy doctrine which I know was amended

12   some time in '98.  That you had to file these claims in the same

13   court and we had the entire nucleous of operative facts that

14   underweigh any claim for title insurance that was there in RICO.

15        THE COURT:  I think it's pretty clear.  I need to

16   double check it myself, but it's pretty clear Third Circuit

17   juris prudence has been -- the old Pru or existing New Jersey

18   Controversy Doctrine has not precluded a simultaneous suit in

19   the state court.  I don't think that would have stopped you or

20   blocked you at all.

21        In any event it wasn't done.  And the stay would not

22   have blocked -- the stay wouldn't have been in violation of my

23   order because Stewart Title was never a party.  The suit against

24   Stewart would have been on its refusal to honor the closing

25   service letters issued to -- who was it, Stanley Yacker, was

31

1    involved?

2          MR. MAGNANINI:  I believe Mr. Yacker was one, Mr.

3    Cicalese was the other.

4          THE COURT:  So I mean, Stewart Title is not part of

5    this RICO conspiracy?

6          MR. MAGNANINI:  No.

7          THE COURT:  I don't know whether you could even argue

8    under the facts.  Anyway, the amendment, rule amended and the

9    plaintiff still is not filing against Stewart.

10         Let's move on.

11         (Pause.)

12         THE COURT:  I can't tell, it looks like Weichert --

13    umm.  Donna Pepsy is not a defendant in the original complaint,

14    first amended complaint or the second amended complaint.  Right?

15         MR. MAGNANINI:  Correct, your Honor.

16         THE COURT:  Surfaces in the third amended complaint?

17         MR. MAGNANINI:  Right.

18         THE COURT:  Now, is it her husband who's named in the

19    first complaint?

20         MR. MAGNANINI:  Yes, your Honor, Richard Pepsny was an

21    attorney who participated in buying and the purchase and the

22    sale of properties.

23         THE COURT:  What discovery took place from the filing

24    of the complaint to the order staying deposition and

25    interrogatories?

1          MR. MAGNANINI:   Nothing was done, your Honor, but

2     documents were produced.

3          THE COURT:   Actor, he didn't depose the actor?

4          MR. MAGNANINI:   No, your Honor.   Everybody initially --

5          THE COURT:   Didn't propose him?

6          MR. MAGNANINI:   I don't recall, your Honor.   We're in a

7     courtroom, other stay motion.   The first theories were full of

8     the defendants and you asked, and you can shortcut this -- they

9     all sued up.   Said we are -- that's why Mr. Lustberg said I had

10    to file the stay motion.

11         THE COURT:   Right.

12         MR. MAGNANINI:   Because I couldn't --

13         THE COURT:   Right.

14         MR. MAGNANINI:   So that is what happened everyone --

15    and we had pushed initially.   I believe Mr. Chertoff argued not

16    to have -- give us the documents.   Let us take depositions.

17    There was arguments back before Judge Cavanaugh about suing the

18    state with paper discovery.   Dates were put in place with the

19    paper discovery then we were all going to start depositions.   In

20    the interim the state stay motions were filed.

21         So we never -- at that point everybody was -- some

22    people had cooperated but nobody was willing to talk to us at

23    all.

24         THE COURT:   But what is Donna Pepsny's involvement

25    here?

1        MR. MAGNANINI:  We understand, your Honor, that she

2    was -- there were two realtors who shepard in some of the straw

3    buyers in the claims actions.  So they were then -- be paid a

4    commission.

5        THE COURT:  Did that show up on the closing statements?

6        MR. MAGNANINI:  It doesn't -- what we see in Mr.

7    Yafro's (phonetic) closing statements and Mr. Cicalese's

8    concerns is, the money comes in, it's distributed out three

9    ways.  Mr. King gets a chunk, Mr. Reisner would get a chunk.  He

10   would take mortgages on the other properties that were purchased

11   and then Mr. Pepsny would get an amount of money.  It's much

12   larger than his $600 closing fee.

13       So we had been working our way back through the

14   documents to see if we could, we could nail something down.  We

15   knew Pepsny was involved with certain transactions.  You know,

16   I've had discussions with counsel for Weichert that, you know, I

17   can't find something you have ranging -- the payments that --

18   and Weichert didn't receive the money, I would agree to let them

19   out of the case.  At this point we're, we're still working

20   through the documents but I have, I got payments to Mr. Pepsny.

21       Honestly, my assumption is, if he was going to pay his

22   wife she was going to take the money and pocket it and not turn

23   it over to Weichert so they could take a commission.

24       THE COURT:  When did you find out that Donna Pepsny was
25   involved in this?

1          MR. MAGNANINI:  I think it was -- you have -- it was --

2     I remember being focused on when she went -- she was tried but

3     as part of the initial thing we received -- we, we called, went

4     to our people investigating this.  Told by people they didn't

5     remember anybody at a closing.  Really not the reverse

6     strawberries.  I believe we may have had her name in, in, in

7     July of '97, but at least initially our focus wasn't on them, on

8     the realtor.  But then we really focused on them once they were

9     indicted.

10         THE COURT:  Yes.

11         MR. MAGNANINI:  Is that 1999, your Honor?

12         THE COURT:  I saw there is some question.

13         MR. MC CUSKER:  1991, Judge.

14         THE COURT:  That's what I thought.

15         (Pause.)

16         THE COURT:  You waited until 2001?

17         MR. MAGNANINI:  We ordered the transcripts of the

18    trial, your Honor, haven't received them but that was when I

19    remember Mr. Yacker testifying.  Part of the purpose was to

20    defraud the mortgage bank which, at this time, was Walsh

21    Securities.  That was the Star Ledger.

22         That's when we knew Miss Pepsny, Donna, certain files

23    Mr. DiFeo had done certain deals.  We then began proceeding

24    through everybody's documents we had in the discovery.  Nothing
25    indicating payments to Weichert.

1          THE COURT:  But DeFio, was she a Weichert employee?

2          MR. MAGNANINI:  We had, in the draft complaint we sent

3     around, your Honor, we had her listed as a Weichert employee.

4     She actually had this time, 1996 to 1997, worked for a title

5     company called Murphy Better Homes and Garden Entity which no

6     longer exists.  I know Mr. McCusker's papers had a quote saying

7     she was a Weichert employee but I know the complaint filed had

8     her listed as Murphy Better Homes and Gardens and --

9          MR. MC CUSKER:  Judge, the only quote would be,

10     Weichert employee would fall into play.  It was not accurate.

11     She was not --

12          THE COURT:  She's not a Weichert employee?

13          MR. MC CUSKER:  She had been at a much earlier time.

14     Nowhere near the time frame.

15          THE COURT:  So, the only basis for you not suing

16     Weichert once you knew she was involved is, the administrative

17     dismissal?

18          MR. MAGNANINI:  Actually I think because we never spoke

19     to her.  We didn't know if she worked alone or if she worked for

20     a company.

21          THE COURT:  Well --

22          MR. MAGNANINI:  That's when I saw that file.  I said

23     oh, she was a Weichert employee.  So she got money.  I --

24     somebody would get paid.

25          THE COURT:  But you didn't move to amend the complaint

1    to sue her and sue Weichert?

2              MR. MAGNANINI:  No, your Honor, at that point.

3              THE COURT:  We're back to where we were?

4              MR. MAGNANINI:  Back to where we were.

5              THE COURT:  All right.  So you didn't need discovery in

6    from Weichert.  You knew certainly that she was the realtor

7    involved in the scam.

8              You mentioned page 7 of your brief, three of the four

9    causes of action sound in New Jersey law.  Just -- I didn't --

10   the complaint is home but what are the four causes of action

11   that are sound in New Jersey law?

12             MR. MAGNANINI:  I apologize, your Honor, I don't have

13   the complaint in front of me.  I think the federal count was

14   RICO.

15             THE COURT:  Right.

16             MR. MAGNANINI:  And there was fraud --

17             (Pause.)

18             MR. MAGNANINI:  I think that's an error on my part,

19   your Honor.

20             THE COURT:  What's that?

21             MR. MAGNANINI:  Well, the counts against Miss Pepsny

22   are RICO conspiracy to the common law fraud.  Then the remaining

23   counts were breach of contract, breach of contract by the title

24   companies, negligence by the attorneys and respondeat superior.
25   We may have put it the wrong way.

1           THE COURT:  Just wanted to make sure I wasn't missing

2      that.

3           Mr. Bordy, let me ask you this.

4           (Pause.)

5           MR. MAGNANINI:  Oh, your Honor, sorry, I didn't read

6      that sentence.  Given that we and the four causes of action,

7      moving defendants which were; Stewart Title, Weichert and Miss

8      DiFeo, all three of them, that's the contract respondeat

9      superior and the fraud.  But was not just for Weichert but it

10     was for all the moving defendants.

11          THE COURT:  Actually I -- the equitable tolling

12     argument rests on your affidavit that there were discussions

13     with Stewart Title regarding settlement and Stewart Title

14     represented that it would pay on its title policy and closing

15     service protection loss.

16          Now, your affidavit is carefully structured.  It

17     doesn't, as I read it -- are you telling me that a

18     representative of Stewart Title said yes we're liable under our

19     closing service protection letters and we're obligated to pay

20     under them.  We don't think we should pay, whatever, but we'll

21     pay.  Is that what was going on?

22          MR. MAGNANINI:  I don't think they said -- I think in

23     order to resolve the case without being dragged into the RICO

24     litigation.

25          THE COURT:  But they were never part of the RICO suit.

1    They weren't RICO defendants?

2          MR. MAGNANINI:  No, no, no, your Honor.  But what they

3    used, the case, what they said at least at the time was that we

4    don't want to get stuck in this case which is not going to be

5    resolved until all the RICO claims are resolved.  So they were

6    going to pay.

7          THE COURT:  To get out of the lawsuit?

8          MR. MAGNANINI:  The two policies I believe Mr. Berman

9    negotiated.

10         THE COURT:  Wait a minute.  What you believe isn't

11   going to cut the muscle here on a motion to dismiss on the of

12   your representation that you were defrauded.  That's what you're

13   saying.

14         Stewart Title Company in fact said we're going to pay.

15   Then they sat back and lulled us into a false sense of security

16   until the statute of limitations ran.  That's what you're

17   saying, aren't you?  Isn't that what you're saying?

18         (Pause.)

19         MR. MAGNANINI:  No, your Honor.

20         THE COURT:  Isn't that what you're arguing?

21         Is there any evidence in this record like that, Stewart

22   Title other than negotiating to settle a claim ever said look we

23   know we're stuck on this Stanley Yacker, whoever was our

24   attorney, and he committed fraud and we're on the hook.  Ever
25   say that?

1        MR. MAGNANINI:  Not to me, your Honor.

2        THE COURT:  Well, it's got to be somebody and I don't

3  have anybody else here.  You filed an affidavit which is a

4  little peculiar.  If this thing were going to go to trial or if

5  I took testimony on the issue of being lulled into a false sense

6  of security, how could you represent -- you'd have to be a

7  witness.  Right?

8        MR. MAGNANINI:  Yes, your Honor.  I'm the only guy

9  left, only guy here.

10       THE COURTI:  I don't have any affidavit from anybody

11  else other than what you say and what you say somebody else told

12  you is clearly hearsay, and it's only based on your personal

13  knowledge.

14       You're not telling me that Stewart Title said we're

15  going to pay on this but, you know, we don't think it's

16  $500,000, it's 350.

17       MR. MAGNANINI:  We weren't -- even if it was a grand

18  settlement with an amount --

19       THE COURT:  Okay.  But it was never signed?

20       MR. MAGNANINI:  No, your Honor.

21       THE COURT:  Well, how can you be lulled -- this is a

22  sophisticated law firm.  You're a bright sophisticated attorney.

23  When a potential targeted defendant doesn't sign a settlement

24  agreement what does that tell you, they're not going to pay?

25       MR. MAGNANINI:  Not going to pay.

1        THE COURT:  Isn't that a red flag we better get this

2   lawsuit filed?  You guys didn't do anything.

3        Why isn't, why isn't the administrative dismissal

4   something that I should take into consideration and say look

5   sure they have filed with the state court and could have come in

6   here but, but I realize this thing is on hold until the criminal

7   case --

8        MR. BRODY:  We would, your Honor, be alluding to

9   previously what was the administrative dismissal judicially

10  considered and not something that was promulgated by the Federal

11  Rules of Civil Procedure.

12       The point being that just as much as you can create

13  this you can open it, permit them to file a motion to open it

14  for a limited purpose.  They never did that.  That's why I

15  believe there's another element involved and that's the degree

16  of diligence.  We don't have any evidence this was ever tested.

17  This if your Honor depended on closing any other --

18       THE COURT:  I'm a little perturbed by the statement in

19  the plaintiff's brief that there were discussions with the Court

20  in which the Court indicated it did not open the case up.  I,

21  this afternoon, I -- doesn't mean I haven't, but what I have I

22  went through.  There isn't a single letter from anybody saying

23  open this case up so that we can file against Weichert and

24  Stewart nor is there any letter saying we want this case
25  reinstated.

41

1         So, Mr. Magnanini, what you say to me, there were

2    discussions with U.S. Attorney's Office and the Court.  I have

3    absolutely not a scrap of paper to substantiate that.  I don't

4    have a letter from you or from Latham and Watkins saying,

5    pursuant to our conversations with the U.S. Attorney's Office

6    and you we understand your Honor will not undertake reinstatment

7    of this case.  I don't have anything like that.

8         MR. MAGNANINI:  That's correct, your Honor.  We didn't,

9    Latham and Watkins, never sent a letter like that.

10        THE COURT:  Well, you say there were conversations with

11   THE Court and -- I don't have any.  And correct me if I'm wrong,

12   I'm going to put into the record C-1 which is the Court's docket

13   and I do not see anything in here in which there was an

14   application to me formal or informal to reinstate this case.

15        So, when there's stuff in the brief about it was to THE

16   affect it was futile for us to move because the Court indicated

17   it wouldn't even entertain it, in fact, when Mr. Cicalese came

18   in to open up, said can I file a cross claim I said sure, a

19   cross claim isn't going to stop anything.

20        Anyway, back to Weichert.  All right.  The argument is

21   done.  There's no diligence.  That's got to be a factor in

22   considering whether we're going to toll the statute of

23   limitations.

24        MR. MC CUSKER:  Only thing I would point out the Court

25   before pointed to that door for 1998, where the Court stated --

1    if there's any --

2             THE COURT:  What was --

3             MR. MC CUSKER:  I say, in conjunction with this report

4    your Honor wrote an opinion.  You wrote in quite detail why

5    you're staying only interrogatories that have been admitted,

6    note filing and answers or even document production not in any

7    way voiding a First Amendment right.  I don't know how anyone

8    could have let this come away with any doubt this Court was not

9    precluding filing.  The plaintiff in amending the answers --

10             THE COURT:  Do I use New Jersey law or use Rule 15B?

11             MR. MC CUSKER:  I think we all under --

12             MR. MAGNANINI:  Item was briefed, your Honor, New

13   Jersey law.

14             THE COURT:  I think it's 15C too.  I don't think New

15   Jersey law is any more liberal.  All right.

16             (Pause.)

17             THE COURT:  Mr. McCusker, do you have anything else to

18   say?

19             MR. MC CUSKER:  Your Honor, the Court was asking before

20   when it first had notice of impediment.  I thought I heard him

21   say early on the complaint was filed in 2005 was in fact

22   prepared in 1998.  So certainly it seems at a minimum in 1998

23   that was legible in these transactions.  The other thing I

24   should point out --

25             THE COURT:  How does that overcome the six years that

1    would have run?

2           MR. MC CUSKER:  Right.  Other thing that there was

3    extensive press coverage, set forth who all the players were and

4    Mr. Magnanini says in his papers that they didn't do an internal

5    investigation also because of the government prosecution in this

6    case.  Given that we're not in a position to say whether who the

7    instructor was.  Even at an earlier date we --

8           MR. MAGNANINI:  Your Honor, just for the record, it's

9    clear there was no complaint prepared in 1998 that just sat on

10   the shelf.

11          THE COURT:  Anything else from your side?

12          MR. BRODY:  Basically, your Honor, plaintiff is seeking

13   an equitable remedy here.  I think that it's clear already --

14   all the equitable maximum I'm sure the Court is very familiar

15   with.

16          Because plaintiff slept on their rights for so long I

17   think that justifies alone granting of the motion.

18          THE COURT:  All right.  I'm going to take a break and

19   I'm going to find those cross motions.  Okay

20          (Pause.)

21          THE COURT:  Okay.  I'm going to reserve decision on the

22   motions and you'll hear from me some time next week.  Let's get

23   to the cross motions.

24          Quite frankly, I have been using my time with the
25   session, I really haven't focused on these motions.  You have,

1     Mr. Brody, I have a motion by you?

2              MR. BRODY:  Yes, your Honor.  We did submit a brief, a

3     reply brief on the issue of the cross claims in opposition

4     papers.

5              THE COURT:  The cross claim by Alfieri?

6              MR. BRODY:  Yes, that's right your Honor.

7              THE COURT:  And Alfieri is the attorney -- are you

8     involved?

9              A VOICE:  I represent Mr. Alfieri but I didn't file any

10    motions.  Nobody filed any motions against me.

11             THE COURT:  You don't have a motion to dismiss by

12    Stewart Title dismissing the cross claim?

13             MR. BRODY:  Your Honor, I believe what happened was we

14    finished our 12(b)(6) on statute of limitations and I know

15    Commomwealth submitted their opposition papers not as to us but

16    as to others.  They wanted to clarify the cross claim in the

17    event another moving defendant was dismissed, the cross claims

18    would survive that dismissal.  I believe there is a, a similar

19    opposition to that effect from Alfieri.  I believe your

20    co-counsel --

21             A VOICE:  Apparently McCusker filed, represents Mr.

22    Alfieri in the other claim.

23             THE COURT:  Where did he go?

24             A VOICE:  We didn't -- he left.  We didn't think there
25    was any formal hearing.  Why we don't have the statute is

1      because our cross claim is surviving, we don't have to file.

2              THE COURT:   It's a motion to dismiss which has been

3      pending for a long time.   So you got somebody -- is he still

4      here?

5              A VOICE:   He left.

6              THE COURT:   How can you argue if he's not here?

7              A VOICE:   Commomwealth has a similar opposition.

8              THE COURT:   I'll deal with Commonwealth.

9              You know, maybe you can chew gum and talk at the same

10     time but I can only do one thing at a time.

11             We got a problem.   Apparently he didn't know I was

12     going to deal with the motion to dismiss.

13             MR. BRODY:   Your Honor, we would be happy to rest on my

14     papers.   We believe at least --

15             THE COURT:   But I don't know if he wants to argue?

16             MR. BRODY:   I'd be happy --

17             THE COURT:   I'll tell you what I'll do.   We'll argue it

18     tomorrow morning ten o'clock.   If he's around or some time in

19     the afternoon.   I don't see how that -- there's any merit to the

20     cross claim but I don't want to --

21             MR. BRODY:   I'd be happy to arrange that.

22             THE COURT:   We'll try it, ten o'clock.

23             MR. MC CUSKER:   I'm not available.   I can do the

24     afternoon.

25             THE COURT:   Two o'clock.   This is Stewart's motion to

1    dismiss -- by the way, the motion of, the motion to dismiss the

2    motion to dismiss on the merits, the cross claims doesn't set

3    forth a cause of action.

4           MR. BRODY:  That's correct, your Honor.

5           THE COURT:  Who's going to be arguing?

6           A VOICE:  Edward Bertucio, Judge, he may submit on the

7    papers.  I'd like to try to reach him.

8           THE COURT:  Yes.  I'd rather have everybody here.  I

9    don't have to write an opinion if I -- to be honest.  We can do

10    it on the phone.

11           A VOICE:  I thought the motion was on statute of

12    limitations.

13           THE COURT:  I can understand why you feel that way

14    because I don't think we specifically sent out notice to anybody

15    saying --

16           A VOICE:  I'll make that phone call right now, your

17    Honor.

18           THE COURT:  Okay.

19           (Pause.)

20           THE COURT:  Next motion is what, who has the next

21    motion?

22           MR. MAGNANINI:  It's mine, your Honor.  We had a motion

23    to dismiss the third party complaint against Robert Walsh.

24           THE COURT:  That has totally escaped me.  I didn't see

25    that anywhere.

1          MR. MAGNANINI:  Yes, your Honor.  I guess we're down to

2     Commomwealth Title Company has filed a third party complaint

3     against Mr. Walsh individually asking for contribution and we

4     had submitted papers.  I guess it was September.

5          THE COURT:  We have the Commonwealth attorney here?

6          MR. KOTT:  Yes, your Honor.

7          THE COURT:  Before I get to that are there any other

8     motions to dismiss any other cross claims?  Is that the only

9     motion on the cross claims?

10         MR. MC CUSKER:  Judge, also a motion to, I believe we

11    filed a motion to dismiss cross claims of Commowealth.  They in

12    turn filed a motion to amend the complaint.  I think that's

13    there as well.

14         THE COURT:  But you're going to have to spell it out

15    for me because that has slipped through the cracks.  It's a

16    motion to dismiss Commonwealth's cross claim?

17         MR. KOTT:  Judge, we had filed a cross claim against

18    Weichert for contribution.

19         THE COURT:  Right.

20         MR. KOTT:  I don't think there were actual motions.

21    Weichert moved to dismiss the complaint.  We brought in the

22    papers, the dismissal of the complaint, would bring cross

23    claims.  Weichert then put in a brief.  They wanted the cross

24    claim dismissed anyway.  Then we put in the brief so you got a
25    couple briefs.

1         THE COURT:  Okay.

2         MR. KOTT:  The issue before the Court is Weichert's

3    motion, not a motion but Weichert's arguments.  If the Court

4    dismisses plaintiffs complaint against Weichert it would also

5    dismiss our cross claim.

6         THE COURT:  That doesn't -- but that --

7         MR. KOTT:  We argued in our brief --

8         THE COURT:  I'll make it quick.  I agree with your

9    position on that but I don't see where you have a valid cross

10   claim.

11        MR. KOTT:  Let me try to lay it out, Weichert's

12   contribution.  We would have a right to cross claim against

13   Weichert.  That is, assuming there's a meritorious case against

14   Weichert.

15        THE COURT:  Let me ask you this.  You're sued by Walsh

16   Securities?

17        MR. KOTT:  In the contract.

18        THE COURT:  Under Title A agreement --

19        MR. KOTT:  Correct.

20        THE COURT:  How do you have both as a joint tort

21   feature?

22        MR. KOTT:  The joint tort features refer to people

23   jointly liable in tort.  Here plaintiffs complaint against

24   Weichert may not be in tort but in our brief we've laid out

25   about five or six reported New Jersey cases.  Goes back to one

49

1    the Court -- remember from the statute in the state court the

2    first one that says even through the joint tort feature

3    contribution act says jointly liable in tort we really look at

4    default.

5            If there's fault -- I'll give you an example.  A lawyer

6    is negligent but there's a breach of contract against a trailer

7    company or someone else.  Even though one is a tort and one is

8    contract there's five or six reported cases, pretty well subject

9    the state court contribution obtains between the tort defendant

10   and contract defendant.

11           I'm anticipating the issue the Court may be asking

12   about, but if the Court is asking a different issue I'll respond

13   to it.  So the fact that I sue the contractor, the fact that

14   Weichert is sued as say in some other theory, RICO, responding

15   to RICO, that doesn't bar me from obtaining contribution from

16   Weichert.

17           THE COURT:  You mean to tell me if Weichert is out of

18   the case as a defendant --

19           MR. KOTT:  On statute of limitation.

20           THE COURT:  On statute of limitation, jury returns a

21   verdict against the employee and finds that he was acting within

22   the scope of the agency, Commomwealth and Weichert are jointly

23   responsible for the damages?

24           MR. KOTT:  Well whether jointly responsible may be a

25   different issue.  It's going to get very complicated when the

1    case is tried as to what the special interrogatories are going

2    to look like and more complicated based on how the Court is

3    going to mold the verdict.

4           Because let me give you an example.  The Court, the

5    jury that I want -- but the jury concludes on the same level

6    that Weichert is respondeat superior for the actions of their

7    agents.  Then we're going to have a question of, are we going to

8    submit to the jury percentages as we normally do in a multi

9    defendant case?  How is the Court going to mold the verdict?

10   We're not there.  We haven't even done discovery yet.  But we

11   could have a situation where, depending on the rulings, the

12   Court molds the verdict giving it to the jury and we could have

13   a situation where an individual ends up paying more than my

14   percentage share.  That's why I want Weichert in the case.  I

15   think I have a right under the law.

16          So if you fast forward, Judge, to what --

17          THE COURT:  Well, okay.

18          MR. KOTT:  Fast forward to when you give it to the

19   jury.  I'm not sure that the Court could even consider this,

20   what the special interrogatories are going to look like.  Are we

21   going TO ask percentages and how are you going to mold the

22   verdict when this comes in?  Assuming a hundred dollars.  Let

23   me do this.  Again, a hundred dollars, only suffered a hundred

24   dollar loss.  There's coverage by me but there's also RICO

25   violations of common law fraud by the Weichert agent but put

51

1    that in context, you can see what the problem will be when we

2    fast forward to the verdict.

3            THE COURT:  Weichert is only the responsible for the

4    fraud?

5            MR. KOTT:  Agreed.

6            THE COURT:  If he was involved in one transaction it

7    would be one transaction?

8            MR. KOTT:  Correct.  That's why I gave you the example.

9            THE COURT:  On this issue has there been any settlement

10   discussion?

11           MR. KOTT:  Between Weichert and the United States?

12           THE COURT:  He's in jail right now.  That's a slam

13   dunk.  So then the issue was she -- it doesn't make any

14   difference if Weichert has money or not, she's acting within the

15   scope of her agency.

16           MR. KOTT:  I think that's probably going to be correct.

17           THE COURT:  That's going to be difficult to find.  She

18   wasn't working for some other -- the fact she committed a --

19           MR. KOTT:  I'm assuming Weichert's is going to --

20   committed the fraud, they're out outside the scope.  But as the

21   Court knows theirs an amount of law on that as well.

22           THE COURT:  Okay.  Let me be very candid.  I haven't

23   really focused on this and it's 4:20 in the afternoon.  I'm

24   going to take a look at the briefs, but what is your response to
25   the common law argument?

1      MR. MC CUSKER:  Judge, first we're not really saying if

2  you were to dismiss under the cases, I understand that's not an

3  automatic dismissal on the cross claims.  We, we don't agree

4  with the Commomwealth attorneys at law.  We think we cannot be

5  held responsible.

6      THE COURT:  Why is that?

7      MR. MC CUSKER:  Because there's, there's cases that we

8  cite for the proposition that people that are found liable under

9  RICO violations have a right to the Constitution, number one.

10     THE COURT:  Well, let's stop there for a minute.  I

11  understand that.  But we also have fraud in the case.

12     MR. MC CUSKER:  Right, that's right.

13     THE COURT:  So that factor doesn't help you.

14     MR. MC CUSKER:  Also, I don't agree with the fact you

15  can have one party responsible for the contract theory and one

16  responsible on the tort theory.

17     THE COURT:  Can't do that?

18     MR. MC CUSKER:  Can't do.

19     THE COURT:  His response says there are cases that say

20  they can.

21     MR. MAGNANINI:  I cited a case that says you can't.

22     THE COURT:  Is that one of those things up in the area

23  in New Jersey?

24     MR. KOTT:  This may be a little -- I have a fair amount

25  of confidence when the Court reads the cases the Court will rule

1    my way.  I just wanted to make one comment.

2              It might be true RICO defendant contribution -- I'm not

3    a RICO defendant.  They're only here on breach of contract.  So,

4    the question of whether -- the Court doesn't need to reach that

5    issue.

6              THE COURT:  I've got a claim of fraud so it depends on

7    who is right on the cases.  I'll take a look at it.

8              Yes sir.

9              A VOICE:  I spoke to Mr. Bertucio.  He informs me that

10   he will be before a Judge in Somerset County at two o'clock

11   tomorrow but he is available at 2:30 or four o'clock.

12             THE COURT:  3:30 is fine.

13             A VOICE:  I have his cell phone number.  I can give the

14   Court, counsel that.  He can be reached on --

15             THE COURT:  I'm going to have counsel set up a

16   telephone conference call 3:30 tomorrow.  This will be on the

17   record.

18             A VOICE:  I'll write his cell phone fine number down,

19   Judge.

20             THE COURT:  I want to do another exercise for the

21   parties here.

22             Mr. Magnanini, do you have a list of who are the

23   current defendants in the case?

24             MR. MAGNANINI:  Yes, your Honor, I know who they are.
25             THE COURT:  Management, are they in?

1          MR. MC CUSKER:  They're in default.   Their attorney

2    withdrew, did not get replacement counsel so they're in default.

3          THE COURT:  Are they in default?

4          MR. MAGNANINI:  They're in default.

5          THE COURT:  Sued?

6          MR. MAGNANINI:  We're doing that now.

7          THE COURT:  How on earth would I have determined

8    damages?

9          MR. MAGNANINI:  We have 223 -- that's what I'm doing,

10   calculating, your Honor.

11         There was basically loans that the had to buy back the

12   interest, attorneys fees.  Because of this whole fraud the

13   company was being sold for $400 million.   The sale collapsed.

14   So I'm trying the interest exercise.

15         THE COURT:  Are they the main actors here?

16         MR. MAGNANINI:  RICO --

17         THE COURT:  What are the default judgments going to do?

18   Well, never mind.  Listen.  But I just want to get this thing on

19   track.   Open properties, are they still in?

20         MR. MAGNANINI:  Open properties, all of those or

21   Crystal Property.

22         THE COURT:  I just want to know --

23         MR. MAGNANINI:  Default as well.

24         THE COURT:  Nation Home?
25         MR. MAGNANINI:  They're still in.

1          THE COURT:  Do they have an attorney?

2          MR. MAGNANINI:  They do, Michael Gallon.

3          THE COURT:  He's got his work cut out for him.

4          Capital Assets?

5          MR. MAGNANINI:  They're represented.  Counsel did not

6     replace him.  He's also in default, your Honor.

7          THE COURT:  Did you get an entry of default?

8          MR. MAGNANINI:  No, I'm doing --

9          THE COURT:  How about Mr. Cain?

10         MR. MAGNANINI:  Mr. Cain, he was served.  His counsel

11    withdraw.  He's not entered.  He's also in default.

12         THE COURT:  Gary?

13         MR. MAGNANINI:  Reisner, same thing, your Honor.

14         THE COURT:  Default?

15         MR. MAGNANINI:  Default.  He's owner of Capital

16    Properties, Capital Assets.

17         THE COURT:  Robert Skowrenski?

18         MR. MAGNANINI:  He's represented by Mr. Schottland.

19         THE COURT:  Richard Calanni?

20         MR. MAGNANINI:  He's one of the appraisers.  We're

21    going to have discussion with many.

22         Now, he's filed an answer.  He's in the case.

23         THE COURT:  Richard DiBenedetto?

24         MR. MAGNANINI:  He's been served, your Honor.  Never

25    bothered to answer.  He's one of the people we're going to move

1    default as well.

2              THE COURT:  You're going to say you're "going to move."

3    Do that within a week.

4              MR. MAGNANINI:  Yes, your Honor.

5              THE COURT:  James R. Brown?

6              MR. MAGNANINI:  Same thing, your Honor.  He was served

7    not yet filed an answers.  He's a disbared attorney and he was

8    representing himself as well but we're going to move, default.

9              THE COURT:  Roland Pierson?

10             MR. MAGNANINI:  Mr. Pierson, we dismissed, your Honor.

11             THE COURT:  What about Stanley Yacker?

12             MR. MAGNANINI:  Mr. Yacker is representing himself.

13   I'll have to look at the docket, your Honor, I'm not sure if

14   he's filed an answer.  He was represented by Mr. Lustburg then

15   Mr. Lustburg withdrew.  My understanding he did not file an

16   answer after counsel.

17             THE COURT:  Michael Alfieri?

18             MR. MAGNANINI:  He's represented by Mr. Bertucio.

19             THE COURT:  Richard Pepsny?

20             MR. MAGNANINI:  He's represented by Mark Catanzaro.

21             THE COURT:  Anthony Cicalese?

22             MR. MAGNANINI:  He's in, your Honor.  He's represented

23   by Gary Graham.

24             THE COURT:  Mr. Cuzzi?

25             MR. MAGNANINI:  He wasn't served, able to locate or

1    contact him.

2              THE COURT:  Defaulted?

3              MR. MAGNANINI:  Yes.

4              THE COURT:  Anthony D'Apolito?

5              MR. MAGNANINI:  Mr. D'Apolito, your Honor, was served.

6    He filed a motion.  We filed opposition.  He filed a motion to

7    dismiss the complaint because he claimed he was defrauded and

8    the RICO counts were discharged.  A personal bankruptcy.  He had

9    filed a motion.  We had answered it.  I'll track that down.

10             THE COURT:  Do you think there's a motion pending by

11   D'Apolito in front of me?  It could be but I don't have any

12   record.

13             MR. MAGNANINI:  Okay.  Your Honor, I know he sent --

14             (Pause.)

15             THE COURT:  I mean, you know, we got a lot of paper

16   here on this case.

17             MR. MAGNANINI:  I'll run that.

18             THE COURT:  Double check and give us a call on Monday.

19             MR. MAGNANINI:  Sure.

20             THE COURT:  DAP Consulting.

21             MR. MAGNANINI:  That's Mr. D'Apolito's company, your

22   Honor.  His cousel withdrew.  He never got a replacement.

23   Defaulted then.

24             THE COURT:  Default?
25             MR. MAGNANINI:  Yes.

1          THE COURT:  You need to file?

2          MR. MAGNANINI:  I need to file.  Wouldn't allow counsel

3    to withdraw.  They were given a certain amount of time to find

4    counsel.

5          THE COURT:  Stewart Title Insurance.

6          MR. MAGNANINI:  They're represented.

7          THE COURT:  Fidelity National Title?

8          MR. MAGNANINI:  Same.  Represented by Methfessel and

9    Werbel.

10          THE COURT:  What kind of defense can there be on the

11    closing if the jury determines the attorney commits fraud?  Why

12    quible on the title insurance?

13          A VOICE:  Your Honor, I'm just covering.

14          THE COURT:  What are they saying here?

15          MR. MAGNANINI:  Walsh Securities have been defrauded.

16    These are the attorneys, here are the addresses.  The closing

17    service protection letter actually provides protection for the

18    mortgagor, the mortgage banker, for two things.  The first one

19    is that the title closing attorneys failed to properly file the

20    document to protect the then security and in this case they

21    filed, never filed --

22          THE COURT:  Question, what is their defense?

23          MR. MAGNANINI:  Defense is -- what's your defense?

24          MR. KOTT:  There are a number of defenses.  Let me
25    throw one up to the Court.

1           When you look at the closing protection letter it is to

2      protect the innocent lender.  Historically what happened was

3      that the banks were relying upon the lawyer and the lawyer was

4      committing fraud.  The bank would be asked to give protection

5      because here, when you read Walsh's complaint, Walsh is not --

6      the instant letter, their own complaint -- their own employees

7      were involved in the fraud, in the RICO.

8           Our protection letter, I think was issued to one of the

9      defendants, National Home Funding.  When you read the Walsh

10     complaint allegation, National Home Funding and its principals

11     were involved in a RICO fraud.

12          Accepting as true plaintiffs complaint, their own

13     employees -- when engaged in the fraud, we would say chosing the

14     protection letter only covered the innocent lenders, does not

15     cover the lender involved in the fraud itself.  That's going to

16     be one --

17          THE COURT:  Let me ask you, have there been any

18     settlement discussions at all?

19          MR. KOTT:  Last case management conference Judge Arleo

20     said the next case management conference she's going to discuss

21     with counsel, meaning the agents, whether counsel needs to be

22     here.  As it turns out, although there are still ome defendants

23     here, you only need somewhere between four and six to satisfy

24     this kind of judgment.

25          Really comes down to whether as a group the title

1   company here, I'm not referring to Stewart, they have a claim,

2   but I'm referring to whether Fidelity and Nation on the one

3   hand, my client on the other.

4       Other pockets available under the last amended

5   complaint; any plaintiff alleged negligence on behalf of some of

6   the attorneys -- I'm guessing negligence would be covered.   I

7   don't know if we're or we're not negligent.   I know the insurers

8   for the attorneys said we're not covering you on the fraud.

9   They can speak.

10      A VOICE:  Obviously if they're involved in a RICO

11  conspiracy to defraud people, that's not anything -- there would

12  be no coverage.   The carrier is taking the position this is a no

13  liability case.   We're all counting on what he's alleged in the

14  case.   We're sitting back waiting for counsel to go out prove a

15  case.

16      THE COURT:  Sounds like a lot of work could be avoided

17  by sitting down and --

18      A VOICE:  That's a different issue.   Hope counsel

19  realizes his problems would be a reason to talk.   That's more of

20  a --

21      THE COURT:  I know.   Okay.

22      Donna Pepsny, is she in or out?

23      MR. MAGNANINI:  Donna Pepsny is in, your Honor.   She's

24  currently down in prison, West Virginia, though she's
25  represented by Mr. Catanzaro.

1           THE COURT:  Okay.  I guess I covered everybody.

2           MR. MAGNANINI:  Yes.  The last, you were going to

3   dismiss Vecchione Realty doing business as Murphy Realty Better

4   Homes and Gardens.

5           They no longer exist.

6           THE COURT:  Give me an order on that.

7           MR. MAGNANINI:  Give you an order to dismiss on that,

8   on them?

9           THE COURT:  You'll hear from me soon.  I just need to

10  check a couple things.

11          Thank you very much.  I appreciate all your briefs and

12  the arguments.

13          MR. KOTT:  Judge, can I -- tomorrow is the Court going

14  to dial with the motion to dismiss --

15          THE COURT:  I hadn't even seen that.

16          MR. KOTT:  The motion looks to me, Judge, it's Number

17  133 on the docket sheet.  I can't tell --

18          MR. MAGNANINI:  I had it as Document 181.  It's 181

19  filed September 15th.

20          MR. KOTT:  Did you file an opposition brief?  My brief

21  182.  So the papers on that are 181 and 182, Judge.

22          THE COURT:  Right.  Well, let's talk about it now.

23  This it is Walsh's motion?

24          MR. MAGNANINI:  Yes, your Honor.
25          THE COURT:  To dismiss Commonwealth?

1          MR. MAGNANINI:  It's the third party complaint against

2    Mr. Walsh.

3          THE COURT:  Individually.  Why would I dismiss it?

4          MR. MAGNANINI:  We believe, your Honor, it fails to

5    state a claim against Mr. Walsh in the complaint.

6          THE COURT:  Can I see that, can someone give me the

7    claim?

8          (Pause.)

9          THE COURT:  Wait a minute, you were going to request

10   leave to amend.

11         MR. KOTT:  Well, I put, closed it but I did at the end

12   of the brief say if the Court would grant the motion we would

13   grant leave to amend.

14         THE COURT:  Let me take a look.

15         (Pause.)

16         MR. KOTT:  Tomorrow at 3:30 is the Court also going to

17   have oral argument between Weichert and me to settle my cross

18   claims?  If you want me here I'll be here.

19         THE COURT:  Yes, that would be good.

20         MR. KOTT:  Our briefs on that issue, 166 to 174.

21         THE COURT:  No.  I appreciate unless you have an extra

22   set.

23         MR. KOTT:  I could have one of my colleague's, if we

24   could get access to a photocopy --

25         THE COURT:  Let me have a copy.

1          MR. KOTT:  May I approach, Judge?

2          MR. MAGNANINI:  Your Honor, I apologize, I don't have

3     the electronic but I can --

4          THE COURT:  Can you tell me, is there one key case I

5     can look at to hit on the issue, Mr. Kott?  It's your motion.

6     Would the motion to dismiss for Stewart and Weichert, would that

7     be the same?

8          MR. KOTT:  I'm not in the Stewart fight.

9          THE COURT:  It's Weichert?

10         MR. KOTT:  Weichert.

11         THE COURT:  Same issue.

12         MR. KOTT:  It is going to be the same issue, Judge.

13         THE COURT:  It's your brief.

14         MR. KOTT:  Brief is like six, seven pages.  Forget

15    which one of those two, but one of them has cites the cases

16    where --

17         THE COURT:  Let me have yours.

18         Scott, would you mind making copies of this.  This is

19    the 3:30 motion tomorrow.

20         MR. KOTT:  On THE phone, Judge?

21         THE COURT:  Yes.

22         MR. MC CUSKER:  I'm happy to stay in my office.

23         THE COURT:  Sorry about that.  Just when the meetings

24    were brought up from the electronic filing I didn't get them

25    all.  I apologize.  So the Magistrate has a time schedule for

1    the next meeting to.

2            A VOICE:  Supposed to be case management time.

3    Cancelled because of these pending motions.  The new date --

4            MR. MAGNANINI:  February 28th.

5            A VOICE:  February 28th.

6            MR. KOTT:  What she asks if we would inform her if we

7    wanted to go to mitigation.

8            THE COURT:  This would be some case to try.

9            (Pause.)

10            THE COURT:  Do you have, Mr. Kott, any pleading against

11    Mr. Walsh?

12            MR. KOTT:  I do not, Judge, but I can briefly tell you

13    what it says.

14            THE COURT:  Okay.

15            MR. MAGNANINI:  Five sentences?

16            THE COURT:  Okay.  Fine.

17            Mr. Magnanini, is there any doubt in your mind what the

18    thrust of the third party complaint is against Mr. Walsh?

19            MR. MAGNANINI:  Well, I know, I think I know what

20    they're trying to do, your Honor.  It's saying Mr. Walsh was

21    president of the company.  The company was, it alleges involved

22    in the fraud.  Therefore, any losses the company suffered were

23    because the company was involved in the fraud or intentional, it

24    was negligent.  Therefore, there should be some comparative

25    negligence.  I don't mind the complaint against the company but

1   they sued Mr. Walsh individually.

2           THE COURT:  Have to do the whole piercing corporate

3   veil thing.

4           MR. MAGNANINI:  Your Honor, Mr. Walsh, president of

5   Walsh Securities, P.A., I should be able to follow due diligence

6   procedures.  Brief duty of fair duty.  Their five allegations,

7   Commomwealth Title, contribution of Mr. Walsh individually --

8           MR. KOTT:  Reason I put in to amend is because --

9   here's what's going on.  In guilty pleas of each of the people

10  that pled guilty, said that Mr. Walsh himself was involved in

11  the fraud in one sense or another.  He's the president of the

12  company.

13          He would have, the argument would be two reasons;

14  number one, he was trying to sell the company and then a company

15  in South Carolina purchased them.  Obviously fixed the books,

16  those kind of things, higher value the company would have.  Also

17  trying to secure a company for the loans.

18          THE COURT:  So he went out for the personal benefit of

19  doing that so the argument is not just --

20          MR. KOTT:  The argument is as president of the company

21  he owes fiduciary and other duties.  He's an active -- I don't

22  know if I can prove that, I haven't had much discovery.

23          THE COURT:  All right.  Why don't you at least under

24  those put him on notice as to what's going on here.

25          MR. MAGNANINI:  The third party complaint they wanted

1   me to answer is that Walsh didn't follow some diligent

2   procedure.  Mr. Walsh personally breached the duty of good faith

3   and fair dealing and is therefore --

4          THE COURT:  I'll give you 30 days from now to file a

5   complaint.

6          So what I'm doing, I'm going, just for the record, I'll

7   deny the motion without prejudice with the understanding you're

8   going to file an amended complaint in 30 days.

9          Is that fine for now?

10          MR. MAGNANINI:  Yes, your Honor.

11          MR. KOTT:  Would the Court want one of us to file an

12   order?

13          THE COURT:  Yes.

14          MR. KOTT:  I'll get you an order next week, early next

15   week.

16          THE COURT:  Thank you.

17          MR. MAGNANINI:  That's all of it, your Honor.

18          THE COURT:  I'm going to put into the record as C-1 the

19   Clerk's Docket Sheet.  Okay.

20          (Exhibit C-1 is so marked in evidence.)

21          THE COURT:  Thank you very much.

22          (Court adjourned.)

23

24
25

# EXHIBIT B

```
 1                    IN THE UNITED STATES DISTRICT COURT.
                     FOR THE DISTRICT  OF NEW JERSEY
 2                   Civil  97-3496 (WGB)

 3      WALSH SECURITIES

 4                        PLAINTIFF,
                  V.
 5
        CRISTO PROPERTIES, et al,
 6
                     DEFENDANT.
 7      - - - - - - - - - - - - -  - - - -  - - - - - - -
                                    Newark, New Jersey
 8                                  January 13, 2006

 9      B E F O R E:   HONORABLE WILLIAM G. BASSLER,
                         UNITED STATES DISTRICT JUDGE
10
                       A P P E A R A N C E S:
11
             BOIES, SCHILLER & FLEXNER, LLP
12           BY:  ROBERT A. MAGNANINI, ESQ.
             For the Plaintiff.
13
             GIBBONS, PC
14           BY:  FREDERICK W. ALWORTH, ESQ.
             And:  TERRENCE S. BRODY, ESQ.
15           For Stewart Title Guaranty Company

16           MC CARTER & ENGLISH. LLP
             BY:  DAVID R. KOTT, ESQ.
17           For Commonwealth Land Title Insurance Co.

18           MARITZA D. BERDOTE BYRNE, ESQ.
             For Defendant Weichert.
19
             EDWARD BERTUCIO, ESQ.
20           For Defendant Alfieri.
        - - - - - - - - - - -  - - - - - - - - - - - -
21
             LYNNE JOHNSON, CSR, CM, CRR
22           OFFICIAL COURT REPORTER
             UNITED STATES DISTRICT COURT
23           P.O. BOX 6822
             LAWRENCEVILLE, NEW JERSEY  08648
24           PHONE:  973-645-2513
             Email:   CHJLAW@AOL.COM.
25
```

```
 1                 (Off-the-record discussion)

 2                 (TELEPHONE CONFERENCE)

 3                 THE COURT:  Good afternoon.  We are on the record,

 4      I believe.

 5                 THE COURT:  Counsel, can we start with the

 6      plaintiff, with the apartments, please?

 7                 MR. MAGNANINI: Yes, your Honor.  Robert Magnanini,

 8      Boies,  Schiller, Flexner, for plaintiff Walsh Securities,

 9      Inc.

10                 MR. BRODY:  Terence Brody, Gibbons Del Deo,  on

11      behalf of Stewart Title Guarantee Company.

12                 MS. BYRNE: Maritza Byrne on behalf of Weichert

13      Realtors.

14                 THE COURT:  May I have have the spelling of your

15      name?

16                 MS. BYRNE: M A R I T Z A, last name B Y R N E.

17                 MR. BERTUCIO:  Good afternoon.  Edward Bertucio,

18      Hobbie, Corrigan, Bertucio & Tashjy, on behalf of Mr. Alfieri

19      on counts 1 through 5.

20                 MR. KOTT: David Kott.  K O T T, McCarter and

21      English, for the defendant third-party plaintiff,

22      Commonwealth Land.

23                 THE COURT:  Counsel, one of the difficulties that

24      the deputy clerk had is that these various motions on the

25      crossclaims apparently were never actually independently
```

```
 1    docketed, and we have no record of it.  But let me go through
 2    what I think are the motions.  Perhaps why we don't have them
 3    docketed is the issue surfaced in the briefs.  I am not sure.
 4    But according to my notes, I have Commonwealth motion to
 5    amend the crossclaim against Weichert.  Is that the only
 6    Commonwealth motion?
 7              MR. MAGNANINI: No, Judge.
 8              Well, that only arises if the Court concludes that
 9    my crossclaim needs to be pled with greater specificity.  One
10    of the arguments, Weichert made a number of arguments with
11    respect to my crossclaim.  One of the arguments was it simply
12    said in accordance with the joint tortfeasors contribution
13    act we demand contribution.  One of the things they said was
14    that was insufficiently pleaded.  That is their argument.  We
15    disagree.  That only needs to be decided if the Court agrees
16    with us.
17              THE COURT:  All right.  Then I have Stewart Title's
18    motion to dismiss the crossclaim by Alfieri, by Commonwealth.
19    Is that right?
20              MR. BRODY: Correct, to dismiss the crossclaims.
21              THE COURT:  According to my records, that is all of
22    the motions have to deal with this afternoon.  Am I missing
23    anybody?
24              MS. BYRNE: Your Honor, this is Maritza Byrne on
25    behalf of Weichert.
```

1          This is part of the larger motion that your Honor

2     heard testimony on yesterday.

3          THE COURT:  I didn't hear testimony.

4          MS. BYRNE: I am sorry.  Argument.  We moved to

5     dismiss the complaint as against Weichert and the crossclaim.

6          THE COURT:  All right.  So there is Weichert's

7     motion to dismiss crossclaim.

8          MR. KOTT: Judge, that was the issue I set up for

9     you at the end of the day, whether there can be a

10    contribution crossclaim between a contract defendant and a

11    tort defendant.

12         THE COURT:  Isn't this Weichert motion the one that

13    -- no, oh, all right.   That is different than the order you

14    were going to prepare for me.

15         MR. KOTT: Correct.  The order I am preparing which

16    I will send in next week deals with my third-party complaint

17    against Robert Walsh.

18         THE COURT:  All right.  I am going to deal with it

19    this afternoon.  The future motions dealing with motions to

20    -- motions to amend should be addressed to the Magistrate

21    Judge.

22         All right.  Let's start with the Commonwealth's

23    motion to amend, the issue about whether the crossclaim of

24    Commonwealth is sufficient.

25         Whose motion is that?

1        MR. MAGNANINI: That is Mr. Kott's.

2        MR. KOTT:  Let me tell you what happened. When

3    Weichert sought dismissal of the crossclaim, they made a

4    number of different arguments.  One of the arguments they

5    made was we had not pled the crossclaim for contribution with

6    specificity.

7        So what I would like to argue first with the

8    Court's indulgence is whether a cross claim for contribution

9    needs to be pled with specificity under the Federal Rules.

10        THE COURT:  That is fine.

11        Go ahead on that.

12        MR. KOTT:   I can be very brief on that.  There is

13    nothing in the Federal Rules that requires a cross claim for

14    contribution to be pled with specificity.  Indeed, in both

15    the state and federal court it never is pled with specificity

16    because by the -- it is not required to be pled with

17    specificity and by the very nature of a cross claim for

18    contribution, I am essentially relying on the plaintiff's

19    complaint where the plaintiff is alleging that others were

20    either liable in tort or committed RICO violations or liable

21    in contract, and I am relying upon whatever allegations the

22    plaintiff itself making.

23        So crossclaims for contribution, I quite frankly

24    have not seen this argument, are always pled the way I pled

25    it, and to paraphrase the way I pled it, Judge, it was while

1   we believe we have no responsibility or liability to the

2   plaintiff whatsoever, if we are found liable we demand

3   contribution from co-defendant Weichert.  That is all I have

4   to say on that, Judge.

5           THE COURT:  Is there a response?

6           MS. BYRNE: Yes, your Honor.  This is Maritza Byrne

7   on behalf of Weichert.

8           I would like to set up the context in which this

9   argument came up.  Weichert moved to dismiss the complaint

10  and all crossclaims against it.  As a result of that, Mr.

11  Kott came back and said the crossclaims survived the statute

12  of limitations.  That is correct.  We do not dispute that the

13  crossclaim survived.  Because they are, they only accrue at

14  the time that the crossclaim in and of itself begins.

15  However, even though a cross claim can be pled quite

16  liberally, there is simply no cause of action here whereby

17  Weichert could be a joint tortfeasor with Commonwealth.  And

18  the reason for that is that, to the extent that Weichert --

19  to the extent that Commonwealth may be found liable, it would

20  be found liable in contract.

21          THE COURT:  All right.  Can I put that issue aside

22  for just a minute?  I just want to address, if it is still a

23  concern, that Commonwealth crossclaim is not pled with

24  specificity.

25          MS. BYRNE: Your Honor, that was an alternative

1    argument that Commonwealth made, if in fact your Honor

2    believed that the claim has not been made with specificity,

3    they moved to amend.

4            THE COURT:  I know.  But I am trying to resolve the

5    issue whether specificity --

6            MS. BYRNE:  I don't see how pursuant to the claims

7    that are asserted in the complaint, there would be a

8    situation where Weichert and --

9            THE COURT:  No, you are missing my point.  I am not

10   getting to the issue of whether you can mix and match.  I

11   just resolve the issue of specificity.  That is all.  Is that

12   now off the table?  Is that off the table?

13           MS. BYRNE:  I don't have, your Honor, I do not

14   dispute that the crossclaim itself, the crossclaim that is

15   pled, if there is a cause of action, is pled correctly.  It

16   is --

17           THE COURT:  All right.  That is all I want to know.

18           Mr. Kott, the issue that came up about specificity

19   is, if it came up, I, if it did come up, it is no longer an

20   issue.

21           MR. KOTT:  That is how I hear it, Judge.

22           THE COURT:  You are going to draft the order, so

23   write it down.

24           MR. KOTT:  Okay.

25           THE COURT:  Now we move on to what is the

1    substantive argument of Weichert, I believe.  That is there

2    can't, under any circumstances under New Jersey law, there

3    can't be contribution.  Is that it?

4            MS. BYRNE: That's correct, your Honor.

5            THE COURT:  I am listening.  Ms. Byrne.

6            MS. BYRNE: Yes, your Honor.  RICO does not allow

7    crossclaims for intentional acts.  There are a number of

8    claims made in the complaint proper.  Those claims are RICO,

9    and breach of contract claim.  With respect to the RICO

10   claims, RICO specifically does not allow crossclaims for

11   intentional acts.

12           Wiser versus Williams, which is a western District

13   of Pennsylvania case, says that those found liable for RICO

14   violations have no right of contribution against those

15   alleged to have acted in conjunction with them.

16           THE COURT:  Wait a minute.  Hold on a minute.

17   Commonwealth is not charged with a RICO violation.

18           UNIDENTIFED ATTORNEY:  That's correct, your Honor.

19   It is breach of contract.

20           THE COURT:  Identify yourself for the Court.

21           MR. MAGNANINI:  Bob Magnanini for plaintiff Walsh.

22   Our complaint, I believe it was in the second amended

23   complaint, but the complaint stays the same throughout,

24   Commonwealth Title Company, for a breach of contract not as a

25   breach of --

1          MS. BYRNE: The sole issue before your Honor is

2    whether someone who is liable for breach of contract can

3    maintain tortfeasor status with someone who is not liable

4    pursuant to breach of contract.

5          THE COURT:  Right.

6          MS. BYRNE: And our position is that the case law is

7    clear on this point.  If your Honor looks at Long Port Ocean

8    Plaza Condo v.  Kado (phonetic) which is an Eastern District

9    of Pennsylvania case, that case states that one who is

10   potentially liable only for breach of contract cannot

11   maintain a joint tortfeasor relationship with a party liable

12   in tort.

13         THE COURT:  Can I stop you for a minute.

14         MS. BYRNE: Yes.

15         THE COURT:  It was established at the argument

16   yesterday that the decision comes from New Jersey, that that

17   decision comes from New Jersey law.   Does the Eastern

18   District of Pennsylvania, is that applying New Jersey law or

19   Pennsylvania law?

20         MS. BYRNE: Your Honor, I would have to get back on

21   that.

22         But I do have another case from the District of New

23   Jersey that was decided in 1994.  That case is Resolution

24   Trust Corporation versus Moskowitz.  The cite is 845 F. Supp

25   247.  And that case specifically dismissed crossclaims for

1    contribution against the defendant because the defendant was

2    liable in tort, not contract.

3              THE COURT:  What is the year of the case?

4              MR. BYRNE: 1994, your Honor.

5              Did the Court get disconnected?

6              THE COURT:  No, we are on board.

7              MR. BYRNE:  I think, Ed, we are getting feedback

8    from your cell phone.

9              THE COURT:  Who is on a cell phone?

10             MR. BERTUCCIO: Ed Bertucio, your Honor.

11             THE COURT:  We can't do this on a cell phone.

12             MR. BERTUCCIO: Unfortunately, your Honor, I had a

13   court appearance, and that is where I was when the call came

14   in.

15             THE COURT:  I think I said I --  all right.  I

16   don't want to get into a hassle at this hour of the day.  It

17   seems to me I was setting this up to accommodate you.

18             MR. BERTUCIO:  I understand that, your Honor.  I

19   had a court appearance in Somerville and it ran late and I am

20   stuck.  I am stuck.  I can hear you all clearly.

21             THE COURT:  All right.  Mr. Kott, hello.

22             MR. KOTT: Yes, David here, Judge.  When I say,

23   Judge, and we had given you a brief on that, there are four

24   or five reported cases and they are on page 5 of 1 of our two

25   briefs, Judge, that say that you -- and they are Jersey cases

1   that say what you are really comparing under the joint

2   tortfeasors contribution act is fault of parties.  And

3   whether -- and the responsibility and liability.  And

4   therefore, it doesn't turn on what the cause of action is,

5   that is, it doesn't turn on whether it is contract, RICO, or,

6   you know, fraud.  And that is why I believe in New Jersey a

7   contract defendant such as me can obtain indemnification from

8   somebody who is alleged to be a RICO defendant or a common

9   law defendant.

10          Now, here, Weichert is not alleged to be a RICO or

11  common law defendant other than by vicarious liability.  But

12  I think the vicarious liability puts them there.

13          THE COURT:  Is anybody else need to weigh in on

14  this one?

15          MR. BRODY:  Your Honor, this is Terrence Brody from

16  Gibbons.

17          I feel that we are in a slightly different position

18  as that, in that we are adverse parties who are seeking

19  contribution from us, and we are only alleged to have

20  breached the --

21          THE COURT:  Wait a minute.  Are you on board on

22  this issue?  Is this, I only want to do one issue at a time.

23          MR.  BRODY:   I feel they are somewhat connected.

24          THE COURT:  Then let's wait.

25          MR. BRODY:  Okay, your Honor.

1          THE COURT:  Let me make a call on this, counsel.

2          I am satisfied after a review of the cases that Mr.

3   Kott has got it right, and so Weichert's motion to dismiss

4   the crossclaim is denied.  See, among -- in addition to the

5   cases cited in Mr. Kott's brief, Dunn v. Praiss, 139 NJ 564,

6   577, 578.

7          All right.  Now, let us go to -- we have a motion

8   by Stewart Title, do we not?

9          MR. BRODY:  Yes, your Honor.

10          THE COURT:  That is to dismiss the crossclaim by

11   Alfieri.

12          MR. BRODY:  Yes, your Honor.

13          THE COURT:  What is that all about?

14          MR. BRODY:  Well, your Honor, the right of

15   contribution exists among joint tortfeasors.  A joint

16   tortfeasor is defined under the Joint Tortfeasors

17   Contribution Act as two or more persons jointly or severally

18   liable in tort for the same jury to person or property.  We

19   take out two elements from that, and that is you have to be

20   jointly or severally liable in tort.

21          We submit that we are not because the allegations

22   by the plaintiff state that we are alleged that we are liable

23   in breach of contract.

24          Additionally, it has to be for the same injury, the

25   Dunn versus Praiss case which your Honor cited arguably

1   states that the HMO in that case was liable on the

2   contribution theory for an intentional breach of contract.

3   We feel that the facts of this case are easily

4   distinguishable from Dunn.  Specifically, in Dunn, the HMO

5   made an intentional breach of contract to provide care.

6             THE COURT:  Can I just stop you for just one

7   minute?

8             MR. BRODY:  Yes, your Honor.

9             THE COURT:  Did you brief this?

10            MR. BRODY:  No, your Honor.  This issue was, the

11  Dunn case was actually raised in --

12            THE COURT:  Here is what I am going to do.  This is

13  your  motion.

14            MR. BRODY:  Yes, your Honor.  If I just may

15  clarify.  We did submit a supplemental brief as to this

16  issue, and which we stated that contribution cannot be

17  asserted as to a nontortfeasor, so this specific issue was

18  briefed, but however, there was no discussion on our part on

19  the Dunn case.

20            THE COURT:  All right.  I am going to dismiss the

21  motion without prejudice.  You can renew it.  I want the

22  motion filed as an independent motion so it shows up in my

23  docket.  I will handle the motion personally.  Please brief

24  the cases, not only the Dunn case but the other issues -- I

25  am sorry, the other cases cited by Mr. Kott.

1     MR. BRODY:  Yes, your Honor.

2     THE COURT:  Mr. Bertucio.

3     MR. BERTUCCIO: Yes, your Honor.

4     THE COURT:  First let me ask Mr. Brody, how much

5 time do you need to do that?

6     MR. BRODY:  Could we have two weeks, your Honor?

7     THE COURT:  Two weeks is fine.  Mr. Bertucio, how

8 much time do you need?

9     MR. BERTUCCIO: Well, your Honor, I can respond in

10 the same amount of time.  But I would suggest to counsel

11 before he refiles the motion maybe to call me because I am

12 anticipating another development in this case that may make

13 this motion unnecessary for him.

14     THE COURT:  Okay.  I will give you two weeks.  And

15 when I get the -- a week for reply.  And if necessary, Scott

16 will schedule the motion for oral argument in front of me.

17 Okay?

18     MS. BYRNE: Your Honor, this is Maritza Byrne.  For

19 purposes of clarifying the record, I don't see a difference

20 between this issue and the issue that we just discussed.

21     THE COURT:  Then you don't need to worry about it

22 because I have already decided the issue against you.  I just

23 haven't had the issue specifically briefed by Stewart Title

24 and I am giving him that opportunity.  You have lost.  You

25 are gone.  I may be wrong, I may be right.  Anyway, it is a

1   decision.   I am satisfied I am correct on it.

2              MS. BYRNE: Okay.

3              THE COURT:   Now, is there a motion -- yeah, there

4   is another motion by Stewart Title to dismiss the crossclaim

5   by Commonwealth, right?

6              MR. KOTT: Judge, Judge.   This is David Kott.

7   Commonwealth is not cross claimed against Stewart.   What you

8   have open on your docket is what we argued yesterday.   Two

9   arguments you had not made a decision on.   One is Weichert's

10  motion to dismiss the complaint based on the statute of

11  limitation.

12             THE COURT:   Yeah.   I got that under control.

13  Right.

14             MR. KOTT: The other is Stewart's motion against the

15  plaintiff on the statute of limitations.   The reason I raise

16  that is do you want me to submit an order on Weichert's

17  motion concerning our crossclaim now, Judge?

18             THE COURT:   On the crossclaim?

19             MR. KOTT: Yes.

20             THE COURT:   Sure.

21             MR. KOTT: Okay.

22             THE COURT:   I will have by Monday the decision on

23  the critical motions on the statute of limitation.

24             MR. KOTT:   Okay.

25             THE COURT:   Well, Mr. Magnanini, are you on board?.

1          MR. MAGNANINI: Yes, your Honor.

2          THE COURT:  No need to keep anybody in surprise.  I

3     am dismissing the complaint based upon the -- the complaints

4     based upon the statute of limitations.

5          MR. MAGNANINI: Okay, your Honor.

6          THE COURT:  I have given it a lot of thought.  I

7     spent about three days on this myself, and I am pretty

8     confident I have got it right.  And any way, right or wrong,

9     you will be hearing from me Monday or Tuesday.

10         MR. MAGNANINI: Okay.

11         MR. BRODY:  This is Terence Brody.  Would you like

12    me to submit an order on Stewart Title's motion to dismiss

13    the crossclaims?

14         THE COURT:  That would be helpful.

15         MR. BRODY:  Will do, your Honor.

16         THE COURT:  Counsel, is there anything else?

17         MR. KOTT:  Nothing, your Honor.

18         MR. MAGNANINI: You asked me questions, we will get

19    our answers on Tuesday.

20         THE COURT:  Questions about what?

21         MR. MAGNANINI: The status of whether people had

22    answered.

23         THE COURT:  No, no, please do that.  Would you?

24         MR. MAGNANINI: Yes, I will send you a letter.

25         THE COURT:  The magistrate has put a lot of time on

1    this, but not a heck of a lot has got accomplished.

2             Thank you very much.  Have a good weekend,

3    everybody.  Thank you.

4

5                 (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25