**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC.,<br><br>         Plaintiff,<br><br>    v.<br><br>CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, DEK HOMES OF NEW JERSEY, INC., OAKWOOD PROPERTIES INC., NATIONAL HOME FUNDING, INC., CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT CO., INC., CAPITAL ASSETS PROPERTY MANAGEMENT, L.L.C., WILLIAM J. KANE, GARY GRIESER, ROBERT SKOWRENSKI, II, RICHARD CALANNI, RICHARD DiBENEDETTO, JAMES R. BROWN THOMAS BRODO, RONALD J. PIERSON, STANLEY YACKER, ESQ., MICHAEL ALFIERI, ESQ., RICHARD PEPSNY, ESQ., ANTHONY M. CICALESE, ESQ., LAWRENCE M. CUZZI, ANTHONY D'APOLITO, DAP CONSULTING, INC., COMMONWEALTH LAND TITLE INSURANCE CO., NATIONS TITLE INSURANCE OF NEW YORK, INC., FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK, COASTAL TITLE AGENCY, and STEWART TITLE GUARANTY COMPANY, IRENE DiFEO, DONNA PEPSNY, WEICHERT REALTORS, and VECCHIO REALTY, INC. d/b/a MURPHY REALTY BETTER HOMES and GARDENS,<br><br>         Defendants. | Civ. No. 97-cv-3496 DRD<br><br>**O P I N I O N** |

*Appearances by:*

STONE & MAGNANINI LLP
by: Robert A. Magnanini, Esq.
Amy Walker Wagner, Esq.
Jeffery A. Shooman, Esq.
150 John F. Kennedy Parkway, Fourth Floor
Short Hills, NJ 07078

   *Attorneys for Plaintiff Walsh Securities, Inc., and Third-Party Defendant Robert Walsh*

McCARTER & ENGLISH, LLP
by: David R. Kott, Esq.
Sara F. Merin, Esq.
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07102

   *Attorneys for Defendant/Third-Plaintiff Commonwealth Land Title Insurance Co.*

FOX ROTHSCHILD LLP
by: Edward J. Hayes, Esq.
David H. Colvin, Esq.
Amy C. Purcell, Esq.
2000 Market Street, Tenth Floor
Philadelphia, PA 19103

   *Attorneys for Defendants/Third-Plaintiffs Nations Title Insurance of New York, Inc. and Fidelity National Title Insurance Co. of New York*


**DEBEVOISE, Senior District Judge**

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Walsh Securities ("Plaintiff" or "Walsh Securities"), brought this action in July 1997, alleging that in early 1996, numerous co-conspirators engaged in racketeering activity

which induced Walsh Securities to purchase mortgage loans at fraudulently inflated prices.[1]  In addition to naming the alleged perpetrators of the fraud, Walsh Securities sued three title insurance companies – Commonwealth Land Title Insurance Co. ("Commonwealth") and Fidelity National Title Insurance Co. of New York, and Nations Title Insurance of New York, Inc. ("Fidelity-Nations") (collectively, "Third-Party Plaintiffs" or "Title Insurance Company Defendants").  Walsh Securities alleged in the early versions of the Complaint that the Title Insurance Company Defendants breached their duties to Walsh Securities by failing to provide coverage under Closing Service Protection Letters and Title Insurance Policies.  Commonwealth filed a Third-Party Complaint against Walsh Securities's officers Robert Walsh ("R. Walsh") and Elizabeth Ann DeMola ("Ms. DeMola") with respect to the earlier versions of the Complaint, seeking contribution.

      Walsh Securities filed a Fourth Amended Complaint.  It embellished its claims against the Title Insurance Company Defendants.  Adding to the charge of failing to provide coverage under the Closing Service Protection Letters and Title Insurance Policies, the Fourth Amended Complaint alleged that the Title Insurance Company Defendants breached the duty of good faith and fair dealing and engaged in a wrongful delay in processing Walsh Securities's claims.

      Thereafter, Commonwealth filed a new Third-Party Complaint, seeking contribution from James Walsh ("J. Walsh") as well as from R. Walsh and Ms. DeMola.  Fidelity-Nations filed its first Third-Party Complaint seeking contribution and also indemnification from R. Walsh, J. Walsh and Ms. DeMola (hereinafter sometimes referred to as the "Third-Party Defendants").  Commonwealth's Third-Party Complaint is typical of these Third-Party Complaints.  It reads in its entirety as follows:

---

[1] For a full factual background, see Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd, 7 F. Supp. 2d 523 (D.N.J. 1998); see also Walsh Secs., Inc. v. Cristo Prop. Mgmt., 2007 U.S. Dist. LEXIS 22244 (D.N.J. Mar. 28, 2007).

> Defendant/third-party plaintiff Commonwealth Land Title Insurance Company ("Commonwealth"), by way of Third Party Complaint against third-party defendants Robert Walsh, James Walsh and Elizabeth Ann DeMola says:
> 1. Plaintiff has commenced an action against defendant/third-party plaintiff Commonwealth for the causes set forth in the Fourth Amended Complaint, a copy of which is attached hereto as Exhibit A.
> 2. At all material times herein, third-party defendants, Robert Walsh, James Walsh and Elizabeth Ann DeMola were officers, directors and/or employees of Walsh Securities, Inc.
> 3. The third-party defendants were negligent, or engaged in fraud, or breached their legal and/or fiduciary duties, or otherwise were engaged in wrongdoing or fault, which caused or contributed to the losses claimed by plaintiff in this case.
> 4. As a direct result of the negligence or fraud or breach of their legal and/or fiduciary duties or the wrongdoing or the fault of third-party defendants, while defendant/third-party plaintiff Commonwealth denies any liability to plaintiff or to any other defendant, if defendant/third-party plaintiff Commonwealth is found liable, it is entitled to contribution from third-party defendants Robert Walsh, James Walsh and/or Elizabeth Ann DeMola pursuant to the New Jersey Tortfeasors Contribution Act.
> WHEREFORE, defendant/third-party plaintiff Commonwealth demands judgment against third-party defendants Robert Walsh, James Walsh and Elizabeth Ann DeMola, jointly and severally.

(Commonwealth Third-Party Compl. ¶ 3.)

Commonwealth and Fidelity/Nations[2] asserted third-party complaints for contribution under New Jersey's Joint Tortfeasors Contribution Act, N.J.S.A. § 2A:53A-1, et seq., and for common law indemnification against the Third-Party Defendants as officers, directors or employees of Walsh Securities. In lieu of an answer R. Walsh moved to dismiss each of the Third-Party complaints pursuant to Fed. R. Civ. P. (12)(b)(6) for failure to state a claim upon which relief can be granted, for failure to meet the notice pleading requirements of Fed. R.Civ. P. 8(a)(2), and for failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). Ms. DeMola and J. Walsh joined in this motion.

The Title Insurance Company Defendants opposed the motions to dismiss and, in the alternative, moved for leave to file First Amended Third-Party Complaints against the Third-

---

[2] Several defendants have settled with Walsh Securities, and a default judgment was entered against several other defendants in the amount of $493,035,603.00. Six defendants remain in the case.

4

Party Defendants. The Third-Party Defendants' motion to dismiss will be granted; the Title Insurance Company Defendants' motion for leave to file a First Amended Third-Party Complaint will be denied as futile because it fails to state a claim for contribution or indemnification.

## III. DISCUSSION

**A. Standard for Dismissal under Fed. R. Civ. P. 12(b)(6):** Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to

dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

In the present case the allegations of the Third-Party Complaints fail to state valid claims upon which relief can be granted.

**B. Sufficiency of the Third-Party Complaints:** In its four paragraph Third-Party Complaint, Commonwealth charges that the three Third-Party Defendants "were negligent, or engaged in fraud, or breached their legal and/or fiduciary duties, or otherwise were engaged in wrongdoing or fault, which caused or contributed to the losses claimed by plaintiff in this case." (Commonwealth Third-Party Compl. ¶ 3.) Fideltiy-Nations assert that the three Third-Party Defendants "participated in the fraud alleged to have occurred by Plaintiff … Alternatively, … were negligent and/or breached their duties to Plaintiff as officers, directors and/or employees." (Fidelity-Nations Third-Party Compl. ¶¶ 2-3.) The underlying wrongdoing out of which this case arises is set forth in the Fourth Amended Complaint in which a large number of individuals,

6

corporations and other entities are alleged to have engaged in a massive mortgage fraud scheme. Defendants in that case, other than the Title Insurance Company Defendants, are charged with (1) § 1962(c) RICO fraud, (2) § 1962(d) RICO fraud and (3) common law fraud. The alleged fraudulent conduct is set forth in the Complaint in great detail.

The allegations in the Third-Party Complaints of the Title Insurance Company Defendants are so deficient by the standards set forth in Fed. R. Civ. P. 12(b)(6) and 9(b), as applied in Twombly and Iqbal, that nothing further need be said. These complaints must be dismissed out of hand. The Title Insurance Company Defendants offer a pathetic excuse for this deficiency, asserting that there has been so much discovery in the past twelve years that the Third-Party Defendants must know what it is all about.

Recognizing the absurdity of that proposition, Commonwealth has attached to its brief opposing the motion to dismiss a proposed First Amended Complaint Against Robert Walsh, James Walsh and Elizabeth Ann DeMola. This too is a strange document. It includes the generalized allegations of fraud, negligence and breach of legal and/or fiduciary duties as officers, directors and/or employees of Walsh Securities. Instead of setting forth a systematic account of their alleged conduct, the "FACTUAL ALLEGATIONS" appear to be largely a collection of Ms. DeMola's allocution statements at the time she entered her plea of guilty in the criminal case against her. There follows a jumble of miscellaneous factual allegations concerning R. Walsh, J. Walsh and Ms. DeMola which might or might not have relevance at a trial. Rather than invite the parties to address the question whether this proposed First Amended Third-Party Complaint could survive a motion, to dismiss, the court will turn to the question whether the Title Insurance Company Defendants can assert a claim against the Third-Party

7

Defendants for contribution or indemnification.  If they cannot, the motions for leave to file a First Amended Third-Party Complaint would have to be denied as futile.

**C. Claims For Contribution:**  Under New Jersey law, the right of contribution exists among joint tortfeasors. N.J.S.A. § 2A:53A-2.  The term "joint tortfeasors" is defined as "two or more persons jointly or severally liable in tort for the same injury to person or property . . . ." N.J.S.A. § 2A:53A-1.

In Count V of the Fourth Amended Complaint, Walsh Securities alleges that the title insurance defendants, including Commonwealth and Fidelity-Nations:

> breached their respective duties of good faith and fair dealing by failing to process and pay covered claims in a reasonable time.  In connection therewith, the [Title Insurance Company Defendants] knew or recklessly disregarded the fact that they lacked a reasonable basis for denying the claims.  This is evidenced[.… by the [Title Insurance Company Defendants] reckless indifference to facts or proofs submitted by Walsh Securities and the [Title Insurance Company Defendants] premature terminations of [their] investigation upon the filing of this action against them seeking coverage.

(Fourth Am. Compl. ¶ 99.)  In addition, in Count VII, Walsh Securities raises a claim for wrongful delay and/or denial of insurance claims by Title Insurance Company Defendants, whereby it asserts that:

> [The Title Insurance Company Defendants] failure to process and pay covered claims in a reasonable time was done intentionally without debatable reason and/or in reckless disregard of the fact that they had no valid reason for doing so.

(Fourth Am. Compl. ¶ 112.)  In their Third-Party Complaints, Commonwealth and Fidelity-Nations seek contribution from the Third-Party Defendants as joint tortfeasors who contributed to the damages sought by Walsh Securities.[3] (Commonwealth Third-Party Compl. ¶ 4; see also Fidelity-Nations Third-Party Compl. ¶ 4.)  Despite the Court's earlier ruling in Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd., Civ. No. 97-3496(DRD), 2007 WL 951955 (D.N.J. March 28,

---

[3] Fidelity-Nations additionally seeks indemnification and other common law relief as the Court may deem equitable and just. (Fidelity-Nation's Third-Party Compl. ¶ 4.)

8

2007), the Title Insurance Company Defendants argue that Walsh Securities's claims sound in tort and thus they are entitled to contribution from the Third-Party Defendants. (Commonwealth Br. at 6; see also Fidelity-Nations Br. at 8.) Specifically, they argue that the charges found in Walsh Securities's Fourth Amended Complaint, including the addition of the breach of good faith and fair dealing claim and wrongful delay claim, alter the nature of Walsh Securities's claim against the Title Insurance Company Defendants to one grounded in tort giving rise to contribution. (Commonwealth Br. at 8.) To support this proposition, the Title Insurance Company Defendants urge this Court to look to the remedies sought rather than the labels attached to the claim. (Fidelity-Nations Br. at 8.)

The court on a prior occasion addressed the contribution issue raised in the present motions. Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd., Civ. No. 97-3496 (DRD), 2007 WL 95J955 (D.N.J. March 28, 2007). In its Third Amended Complaint Walsh Securities named Stuart Title Guaranty Company ("Stuart Title") and Irene Di Feo ("Di Feo) as defendants, claiming that Stewart title had failed to reimburse Walsh Securities for losses it incurred "based on the fraud and/or misapplication of the approved attorneys as covered by the closing service letters." Walsh Securities sought damages associated with Stuart Title's alleged breach of contract. Commonwealth, among other defendants, filed cross-claims for contribution. On DiFeo's motion to dismiss, the court held:

> In the present case, as the Third Party complaint indicates, and as Commonwealth concedes, Commonwealth has been sued in contract by Walsh. Thus, there are no claims that Commonwealth is a joint tort-feasor. Because it is not a joint tortfeasor, and because the facts of this case are readily distinguishable from Dunn, Commonwealth's contribution claim may not be maintained.

In Dunn v. Praiss, 139 N.J. 564 (1995), a physician found liable for medical malpractice sought contribution from his HMO on the basis of its independent breach of contractual duty to

9

the patient-subscriber of the HMO. The Court held in that case that "it is appropriate in this case to apportion responsibility based on breach of contract that is alleged to have proximately caused personal injury." Id. At 577.

In Cristo the court cited Longport Ocean Plaza Condo, Inc. v. Robert Cato & Assocs., Civ. No. 00-cv-2231, 2002 U.S. Dist. LEXIS 16334, 2002 WL 2013925 (ED. Pa. Aug. 29, 2002). There the court limited the ruling in Dunn, holding that (1) it was limited "to cases in which harm suffered by plaintiff was personal injury," and (2) it "stressed the fact that the HMO's contractual duty was closely analogous to the tort duties imposed on the physician provider." 2002 U.S. Dist. LEXIS 16334 [WL] at *3. The court, applying New Jersey law, dismissed a contract defendant's third party claim for contribution grounded in tort.

The Title Insurance Company Defendants argue that Walsh Securities's Fourth Amended Complaint seeks damages against them not only for alleged breach of contract but also for what are, in effect, tort claims – wrongful delay and/or denial of insurance claims and breach of their respective duties of good faith and fair dealing. Consequently, they contend that Cristo is no longer good law, if it ever was.

Claims against insurance companies for breach of the duty of good faith and fair dealing and for wrongful delay "sound[ ] in both tort and contract." Pickett v. Lloyd's (A Syndicate of Underwriting Members), 131 N.J. 457, 470 (1993) quoting Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 504 (1974). Moreover, compensation is not "dependent on what label [is] place[d] on an action but rather on the nature of the injury inflicted on the plaintiff and the remedies requested." Pickett, at 470. Therefore, for contribution purposes, the crux of the analysis of whether a claim is grounded in tort or contract must focus on the nature of the injury inflicted and the remedy sought. If the damages sought are ones normally flowing from breach

10

of contract claims (i.e., consequential damages, lost profits, etc.) then the claim is more likely contractual in nature. Id. at 475. Treble damages and punitive damages are unlikely to be available in contract cases.

Both Dunn and Longport emphasized that the answer to the question whether a contract claim will be considered to be a tort claim for contribution purposes depends upon the circumstances of the individual case. Longport emphasized that Dunn "stressed the fact that the HMO's contractual duty was closely analogous to the tort duties imposed on the physician – provider." Dunn noted:

> In the context of this case in which the breach of contractual duty appears to parallel closely the fault based duty of care imposed on a healthcare provider it is appropriate to allow for contribution. In another case the issue might be less clear." Id. at 577. (emphasis added)

Here, Walsh Securities is pleading breach of good faith and fair dealing in conjunction with the Third-Party Plaintiffs' alleged breach of contract. (Fourth Am. Compl. ¶ 100.) In this setting, the good faith and fair dealing claim is only belatedly being pled as a supplement to the breach of contract claim. (Third Party Defs. Br. at 5.) The damages sought under this claim are identical to those sought for breach of contract and if a court were to find the existence of a breach of contract, the good faith claim would be redundant.

As for Walsh Securities's claims for wrongful delay and/or denial of insurance, the damages sought are "consequential" and are for "diminution and/or complete loss of … going concern value." (Fourth Am. Compl. ¶ 113.) These damages are closely analogous to contract damages and are the natural and probable consequences of a breach of contract, suggesting that the wrongful delay claims against the Third-Party Plaintiffs are also contractual in nature.

For approximately 12 years, during which the Title Insurance Companies have been named as defendants in the various complaints (and the Third-Party Defendants have not), Walsh

11

Securities has proceeded against the Title Insurance Company Defendants on strictly contract claims. As Fidelity-Nations points out in its brief, awareness of the nature of this case "arises from all of the activity that has taken place since the inception of the fraud alleged to have occurred" (Fidelity-Nations Br. at 13), and "as part of the mediation process, numerous depositions were taken of the participants in the underlying transactions, which depositions resulted in the disclosure of the very detailed and specific accusations regarding the conduct of the Third-Party Defendants." Yet only now, in the twelfth year of this case, two of the Title Insurance Company Defendants seek to assert a claim against the Third-Party Defendants.

More important is the total disparity between the general claims that Walsh Securities is asserting against the non-Title Insurance Company Defendants and the embellished contract claims that it asserts against the Title Insurance Defendants in its Fourth Amended Complaint. Fidelity-Nations describes the general nature of Walsh Securities's allegations against the non-Title Insurance Company Defendants'.

> Over ten years ago, plaintiff, Walsh Securities ("Walsh"), instituted this action. In various reiterations of its complaint, Walsh alleges that it was the victim of a fraudulent scheme perpetrated by a vast number of mortgage companies, real estate appraisers, and attorneys to induce Walsh to purchase approximately 223 mortgage loans on real properties with artificially inflated prices. Walsh has set forth a variety of claims against those defendants ranging from negligence to fraud to RICO violations.

(Fidelity-Nations's Br. at 2)

These wide-ranging fraudulent activities are to be contrasted to the contractual and related duties that Walsh Securities alleges the Title Insurance Company Defendants breached. In Dunn contribution was allowed because "the HMO's contractual duty was closely analogous to the tort duties imposed on the physician-provider." There is nothing analogous between the Walsh Securities fraud, negligence and RICO claims against the other defendants and its contract and related claims against the Title Insurance Company Defendants. It would be impossible to

12

allocate responsibility and damages in such disparate claims that have such different elements and such different measures of damages.

Although under New Jersey law there are occasions when a contract claim may have attributes that will permit it to give rise to a claim for contribution, this is not one of them. Walsh Securities's claims against the Title Insurance Company Defendants, even as amplified in the Fourth Amended Complaint, are essentially contractual in nature and they are so totally dissimilar from the negligence, fraud and RICO claims asserted against the other defendants, they are an inappropriate basis for a claim for contribution.

**D. Claims For Common Law Indemnification:** Only Fidelity-Nations also brings a claim for indemnification against the Third-Party Defendants. "The right of indemnity rests upon a difference between the primary and secondary liability of two persons, each of whom is made responsible under the law to an injured person." In re: Lead Paint Litigation, No. A-1946-02T3, 2005 WL 1994172, at *17 (N.J. App. Div. Aug. 17, 2005). "Indemnity is a mechanism for shifting the cost of liability from one joint tortfeasor to another." Id. "A party is not entitled to common-law indemnity from another unless it and the other party have been found liable in tort to a third party for the same harm." Id. (citing U.S. v. Manzo, 182 F. Supp. 2d 385, 411 (D.N.J. 2000)).

As stated above, the Third-Party Defendants are not joint tortfeasors, and thus, cannot be liable for common law indemnity. Furthermore, there has been no opposition to the Third-Party Defendants' motions to dismiss the Third-Party Complaint claim for indemnification.

## IV. CONCLUSION

For the reasons set forth above the Third-Party Complaints of Commonwealth and Fidelity-Nations will be dismissed for failing to comply with the pleading requirements of Fed.

13

R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). The motions of Commonwealth and Fidelity-Nations for leave to file an amended complaint seeking contribution and indemnification will be denied as futile. The Court will file an order implementing this opinion.

                                                *s/Dickinson R. Debevoise*
                                                DICKINSON R. DEBEVOISE,
                                                       U.S.S.D.J.

Dated: December 16, 2009