# STONE MAGNANINI LLP

COMPLEX COMMERCIAL LITIGATION

**NEW JERSEY OFFICES**   150 JFK Parkway, Short Hills, NJ 07078   P 973.218.1111   F 973.218.1106

June 11, 2010

*Via Electronic Filing and Facsimile*

Honorable Michael A. Shipp
United States Magistrate Judge
M.L. King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

      Re:    **Walsh Securities, Inc. v. Cristo Property Management, Ltd., et al.**
              **Civil Action No.: 97-3496 (DRD/MAS)**

Dear Judge Shipp:

      This firm represents Plaintiff Walsh Securities, Inc. ("Walsh Securities") in the above-referenced matter. Please accept this letter in response to David Kott's June 4, 2010 letter to the Court on behalf of Defendant Commonwealth Land Title Insurance Co. ("Commonwealth"). Commonwealth's representations to the Court about the agreements between Walsh Securities and Robert Skowrenski and Walsh Securities and Michael Alfieri, Esq. are inaccurate and outrageous, and based on nothing but counsel's unhappiness with answers provided under oath to his questions. Furthermore, the agreement with Mr. Alfieri was brokered by retired New Jersey Chancery Judge John M. Boyle during a court-ordered mediation that was requested by Commonwealth.

**A.   Settlement Agreements**

      Commonwealth portrays these agreements as containing illicit arrangements that require the parties to collude and hide discoverable evidence from other parties to the litigation. Not only is this incorrect, as will be seen from the two agreements that can be provided to the Court, but it is offensive that Commonwealth would suggest, without *any* evidence, such dishonest conduct on the part of Plaintiff or Plaintiff's counsel. It is inconceivable how Commonwealth can make the inferential leap from counsel's attempt to protect the confidentiality of its client's agreements to Commonwealth's unfounded allegation that these defendants "'flipped' in return for dismissal of the lawsuit."

      As Walsh Securities has consistently maintained, the terms of these agreements are not relevant to this litigation and both agreements contain confidentiality provisions. The existence of a settlement is the *only* fact that may be remotely relevant to this litigation. Indeed, that may be established by documents that were publicly filed on this case's docket. Therefore, there is no reason for the confidential terms of either agreement to be disclosed.

As to the agreement with Mr. Alfieri, Plaintiff's counsel never spoke to Mr. Alfieri, and as far as we know, neither has Mr. Kott nor any of his agents. Mr. Alfieri's attorneys have maintained that Mr. Alfieri's testimony has never changed throughout the litigation, so we cannot understand the unstated basis of Mr. Kott's claims that Mr. Alfieri "flipped." Also, because this agreement was brokered by Judge Boyle, it appears as if Mr. Kott is accusing him of participating in some improper conspiracy to subvert perjury.

It is also astonishing that Commonwealth continues to characterize the Fourth Amended Complaint as containing "very specific allegations" against Skowrenski and Alfieri. Commonwealth knows well that in an effort to make it unquestionably clear that nothing in the Fourth Amended Complaint asserted new allegations against settling defendants, such as Skowrenski and Alfieri, and defendants against whom default judgments were obtained, Walsh Securities provided counsel for Commonwealth (and the remaining parties) with a draft Fourth Amended Complaint that only included active allegations in the case against the title companies, Coastal Title Agency, and appraisers Richard Calanni and Richard DiBenedetto. All other claims against the other Defendants have either been settled and dismissed, or judgments have been entered against those parties. Counsel for the title companies objected vociferously, claiming that Plaintiff could not unilaterally change the caption and body of the Complaint because of alleged cross-claims asserted by the title companies. To avoid further motion practice and delay, Plaintiff filed the Fourth Amended Complaint as is and included prior claims and parties that Plaintiff obtained judgments against or dismissed via settlements. Thus, Commonwealth continues to use a problem of its own creation to sandbag Walsh Securities. This is especially outrageous as not one, but both, District Court Judges have issued opinions dismissing Commonwealth's crossclaims sounding in tort against Defendants because Plaintiff's claims against Commonwealth sound in contract.

Walsh Securities was a victim of the frauds at issue in this litigation and through the course of discovery there have been questions raised about whether Mr. Skowrenski was involved in personally committing these frauds. Consequently, there is nothing inconsistent about the Walsh Securities Rule 30(b)(6) deponent's testimony that the company is unsure if Mr. Skowrenski was involved in the frauds. In addition, if Commonwealth believes that Mr. Skowrenski's former counsel has information concerning the Walsh family's involvement in the frauds, then it is for Commonwealth to depose his former counsel.[1]

Since the contents of the agreements are confidential, Walsh Securities requests the Court deny Commonwealth's request for an Order compelling Mr. Alfieri and Mr. Skowrenski to respond to questions at depositions about the terms of the agreements or their negotiations.

---

[1] Commonwealth had previously argued at length to the Court that it needed unlimited depositions in this case and, notwithstanding the Court ordering that it could take up to twenty-five (25) depositions, it has only noticed four (4) depositions, so it still has an ample number of available depositions.

B.   **Streamlining the Case**

To avoid any further disputes or confusion, Walsh Securities respectfully requests permission to file an amended complaint that is tailored to the remaining claims in this case. To that end, Walsh Securities also requests that Your Honor recommend to Judge Debevoise that the cross-claims asserted by Defendants Commonwealth, Fidelity National Title Insurance Company of New York, and Nations Title Insurance of New York, Inc. ("Title Insurance Company Defendants") against the non-Title Insurance Company Defendants be dismissed *sua sponte* for the same reasons set forth in the Opinions issued in this matter on March 28, 2007 and December 16, 2009. *See Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd.*, Civ. No. 97-3496 (DRD), 2007 U.S. Dist. LEXIS 22244 (D.N.J. March 28, 2007), and *Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd.*, Civ. No. 97-3496 (DRD), 2009 U.S. Dist. LEXIS 116942 (D.N.J. Dec. 16, 2009).

In the most recent decision holding that the contribution and indemnification claims must be dismissed, Judge Debevoise distinguished the contract claims against the Title Insurance Defendants from the tort claims against the non-Title Insurance Defendants as follows:

> More important is the total disparity between the general claims that Walsh Securities is asserting against the non-Title Insurance Company Defendants and the embellished contract claims that it asserts against the Title Insurance Defendants in its Fourth Amended Complaint. Fidelity-Nations describes the general nature of Walsh Securities's allegations against the non-Title Insurance Company Defendants'.
>
>> Over ten years ago, plaintiff, Walsh Securities ("Walsh"), instituted this action. In various reiterations of its complaint, Walsh alleges that it was the victim of a fraudulent scheme perpetrated by a vast number of mortgage companies, real estate appraisers, and attorneys to induce Walsh to purchase approximately 223 mortgage loans on real properties with artificially inflated prices. Walsh has set forth a variety of claims against those defendants ranging from negligence to fraud to RICO violations.
>
> (Fidelity-Nations's Br. at 2)
>
> These wide-ranging fraudulent activities are to be contrasted to the contractual and related duties that Walsh Securities alleges the Title Insurance Company Defendants breached. In *Dunn* contribution was allowed because "the HMO's contractual duty was closely analogous to the tort duties imposed on the physician-provider." There is nothing analogous between the Walsh Securities fraud, negligence and RICO claims against the other defendants and its contract and related claims against the Title Insurance Company Defendants. It would be impossible to allocate responsibility and damages in such disparate claims that have such different elements and such different measures of damages.

Honorable Michael A. Shipp
June 11, 2010
Page 4 of 4

>Walsh Securities's claims against the Title Insurance Company Defendants, even as amplified in the Fourth Amended Complaint, are essentially contractual in nature and they are so totally dissimilar from the negligence, fraud and RICO claims asserted against the other defendants, they are an inappropriate basis for a claim for contribution.

*Walsh Securities*, 2009 U.S. Dist. LEXIS 116942, at *21-22.

Similarly, the Court dismissed the indemnification claims because the parties were not joint tortfeasors. Id. at *22-23. The Title Insurance Company Defendants are not being sued in tort and cannot be joint tortfeasors. Thus, any claims they have against another defendant for contribution or indemnification must be dismissed with prejudice.

For the forgoing reasons, Walsh Securities respectfully requests that Commonwealth's request for an Order compelling deposition testimony about the confidential agreements be denied and for the Court to make a recommendation to Judge Debevoise to entertain a *sua sponte* dismissal of the Title Insurance Company Defendants' cross-claims for contribution and indemnification against the non-Title Insurance Company Defendants.

Respectfully submitted,

_____s/_____
Robert A. Magnanini

cc: All Counsel of Record (via e-filing)
Richard Calanni, *pro se* (via regular mail)
Richard DiBenedetto, *pro se* (via regular mail)