

August 16, 2010

**VIA ELECTRONIC FILING & REGULAR MAIL**

Honorable Michael A. Shipp
Magistrate Judge
U.S. District Court, District of New Jersey
Martin Luther King Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ  07102

David R. Kott
Partner
T. 973.639.2056
F. 973.297.3709
dkott@mccarter.com

Re:  Walsh Securities, Inc. v. Cristo Property Management, et al.
     United States District Court for the District of New Jersey
     Civil Action No. 97-3496 (DRD/MAS)

Dear Judge Shipp:

We represent defendant/third-party plaintiff Commonwealth Land Title Insurance Company ("Commonwealth") in this case.  As Your Honor ordered during the July 20, 2010 case management conference, this letter brief addresses the open discovery dispute as to whether Commonwealth and the other title insurance defendants should be allowed to question plaintiff's witness, Mr. Walsh, and two former co-defendants, Messrs. Skowrenski and Alfieri, regarding the terms of their settlement agreements.  Commonwealth seeks to obtain information regarding the terms of those agreements for entirely proper purposes and Your Honor's prior Orders sealing the written agreements do not preclude inquiry into their terms at depositions.

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102-4056
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

**COMMONWEALTH IS ENTITLED TO QUESTION PLAINTIFF AND CO-DEFENDANTS IN DEPOSITIONS ABOUT THE TERMS OF THEIR SETTLEMENT AGREEMENTS.**

BOSTON

**A.      Commonwealth Has Two Compelling and Proper Reasons for Inquiring into the Terms of the Settlement Agreements.**

HARTFORD

NEW YORK

The propriety of Commonwealth's interests in inquiring into the terms of the settlement agreements is beyond dispute.  One "factor to consider" when determining the propriety of disclosing information "is whether the information is being sought for a legitimate purpose or for an improper purpose."  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994).  Commonwealth's legitimate and appropriate purpose for inquiring into the terms of the settlement agreements is twofold.

NEWARK

PHILADELPHIA

STAMFORD

First, it is entirely "permissible" to introduce evidence relating to the terms of settlement agreements for the purpose of "proving a witness's bias or prejudice."

WILMINGTON

Honorable Michael A. Shipp
August 16, 2010
Page 2

Fed. R. Evid. 408(b); *see also John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632, 634-35 (3d Cir. 1977) (permitting reference to an agreement by which the plaintiff released one company from liability in exchange for its employee's testimony, because the agreement "cast doubt upon [the employee-witness's] impartiality"); *CFTC v. Rosenberg*, 85 F. Supp.2d 424, 435 (D.N.J. 2000) ("'[T]he existence of a settlement agreement goes directly to the issue of credibility . . . .'" quoting *Reichenbach v. Smith*, 528 F.2d 1072, 1075 (5th Cir. 1976)).  Thus, there is nothing objectionable about inquiring into the terms of a settlement agreement in an effort to demonstrate a witness's bias or prejudice.

Second, inquiry into the terms of the settlement agreements is proper because Commonwealth is entitled to a credit against any potential adverse verdict to the extent of the proceeds plaintiff received from co-defendants under those agreements.  A successful plaintiff in a breach-of-contract case "is entitled to the amount of damages . . . which . . . will put that party in the same position it would have been in if the breaching party had performed the contract in accordance with its terms, no better position and no worse." *Magnet Resources, Inc. v. Summit MRI, Inc.*, 318 N.J. Super. 275, 293 (App. Div. 1998) (citing *In re Liquidation of Integrity Ins. Co.*, 147 N.J. 128, 135-36 (1996)).  The breaching party is obligated to compensate the plaintiff for losses flowing from its breach of the contract, "minus any cost that has been mitigated."  Brent A. Olson, Kristina K. Pappa, & Elga A. Goodman, 49 *N.J. Prac. Series:  Business Law Deskbook* § 7:37 at 263 (2007). Therefore, any verdict against Commonwealth must account for the consideration plaintiff received in settlements with co-defendants.

Here, as demonstrated during the depositions of Messrs. Walsh, Skowrenski, and Alfieri, Commonwealth's inquiry into the terms of the settlement agreements would serve precisely those two legitimate purposes.  During the deposition of Mr. Walsh, it became apparent that since settling with Mr. Skowrenski plaintiff has retreated from the specificity with which it initially described Mr. Skowrenski's culpability in the frauds at issue here:

> Q      Your company sued Mr. Skowrenski, correct?
>
> A      That's correct.
>
> Q      Your company settled with him?
>
> A      Yes.
>
> Q      What [were] the terms of the settlement?
>
> [Discussion regarding confidentiality of the settlement.]
>
> Q      Tell me what facts, if any, Walsh Securities has

Honorable Michael A. Shipp
August 16, 2010
Page 3

with respect to Mr. Skowrenski's involvement in the fraud?

A       The company does not have any direct facts about Mr. Skowrenski.  We read certain things in the deposition.  We know that National Home Funding was sending in loans.  The paper of National Home Funding was sending in loans, and we knew that Mr. Kane was delivering loans.

. . . .

Q       Well, in the fourth amended complaint there is some fairly specific allegations against Mr. Skowrenski, is that true?

A       That is correct.

Q       And those allegations essentially allege that he was an integral part of these mortgage frauds, is that correct?

A       That's correct.

Q       And you have no reason to believe that what is stated in the fourth amended complaint is untrue, is that correct?

A       That's correct.

(Certification of Gary R. Tulp ("Tulp Certif."), Exhibit A: Deposition of Robert C. Walsh, April 9, 2010, at 109:16 to 112:3.)  Precluding Commonwealth from questioning plaintiff regarding the terms of the settlement agreement would yield the incomplete and inaccurate inference that plaintiff released Mr. Skowrenski from liability merely because it came to light that he was not involved in the events at issue.   Commonwealth is entitled to demonstrate that, to the contrary, Mr. Skowrenski was dismissed from this case in exchange for a monetary payment. *See John McShain, Inc.*, *supra*, 563 F.2d at 634-35; Fed. R. Evid. 408(b). Moreover, Commonwealth has the right to inquire into the terms of the settlement agreement because Commonwealth is entitled to a credit to the extent of any settlement proceeds paid by Mr. Skowrenski to plaintiff.  *See In re Liquidation of Integrity Ins. Co.*, *supra*, 147 N.J. at 135-36; *Magnet Resources, Inc.*, *supra*, 318 N.J. Super. at 293.

Precluding Commonwealth from questioning Mr. Skowrenski regarding the terms of the settlement agreements likewise would impede Commonwealth's substantial

Honorable Michael A. Shipp
August 16, 2010
Page 4

rights:

[Q]    At some point did you reach an agreement with the plaintiff in this case that the plaintiff would drop the lawsuit against you?

A    Yes.

[Discussion regarding confidentiality of the settlement.]

[Q]    Why don't I pose the questions and you can instruct him not to answer?

Q    Can you tell me what the agreement was you reached with the plaintiffs in connection with the plaintiff agreeing to dismiss the case[?]

. . . .

[Skowrenski's counsel]    I instruct you not to answer, Mr. Skowrenski, until the issues relating to that document have been resolved.

Q    Can you tell me whether you agreed to give testimony or not give any testimony in this case concerning the case as part of that agreement?

[Skowrenski's counsel]    I give you the same instruction.

[Q]    I have some other questions along that line, but I don't want to burden the record with that. I think we know where we are on that.

. . . .

Q    . . . . Do you know why Walsh made the decision to dismiss you from this lawsuit?

. . . .

A    I believe because of our settlement.

Q    Walsh had made some very serious allegations against you, is that correct?

Honorable Michael A. Shipp
August 16, 2010
Page 5

A      I definitely agree.

Q      You have not given a deposition in this case, is
that correct?  This is your first deposition in this case?

A      Yes.

Q      You told us earlier you never have spoken with
Walsh Securities lawyers or given a statement with
respect to whether or not you were involved in these
frauds, right?

A      Correct.

Q      So Walsh for some period of time believed you
were involved in the fraud and so stated in the
pleadings that they filed, correct?

A      Okay.  Yes.

Q      At some point Walsh agreed to settle the case
and dismiss the Complaint against you, is that
correct?

A      Correct.

Q      Do you know why it was that Walsh agreed to
settle the case and dismiss the Complaint against
you?

. . . .

A      No.  I don't know.

Q      So [as] far as you know, they filed these
Complaints, alleged very serious allegations against
you and then, without ever hearing your side of the
story, on their own they decided to dismiss this case;
is that what you're saying to me?

A      Yes.

(Tulp Certif., Exhibit B: Deposition of Robert Walter Skowrenski, II, May 25, 2010, at
29:15 to 32:6.)   In the absence of probing into the terms of the settlement
agreement between plaintiff and Mr. Skowrenski, Commonwealth would be deprived
of  its  right  to  important  evidence  regarding  Mr.  Skowrenski's  bias  and

Honorable Michael A. Shipp
August 16, 2010
Page 6

Commonwealth's right to a credit for the settlement proceeds.  *See John McShain, Inc.*, *supra*, 563 F.2d at 634-35; *In re Liquidation of Integrity Ins. Co.*, *supra*, 147 N.J. at 135-36; *Magnet Resources, Inc.*, *supra*, 318 N.J. Super. at 293.

Similar questions arose during Commonwealth's deposition of Mr. Alfieri but never were answered due to counsel's objections:

> Q       . . . . You were named as a defendant by Walsh Securities in the original complaint and a number of other complaints.  Correct?
>
> A       The original complaint and I think the amended complaint.
>
> Q       At some point did Walsh Securities dismiss its complaint against you?
>
> A       It did.
>
> Q       Was that part of a settlement you reached with Walsh Securities?
>
> . . . .
>
> A       Correct.
>
> Q       Was there any more to your settlement with Walsh other than you paid them money and they gave you a release, any other agreements as part of the settlement?
>
> [Discussion regarding confidentiality and objections to questions regarding the terms of the settlement agreement.]
>
> Q       Are there any other terms other than the payment of money?
>
> A       Yes.
>
> Q       What are the other terms?
>
> [Objection.]
>
> Q       Can you tell me how much was paid by you or on your behalf as part of the settlement with Walsh?

Honorable Michael A. Shipp
August 16, 2010
Page 7


[Objection.]

(Tulp Certif., Exhibit C: Deposition of Michael Alfieri, June 2, 2010, at 120:3 to 123:16.)  Commonwealth should be permitted to inquire into the terms of Mr. Alfieri's settlement with plaintiff as well.  As a released co-defendant, Mr. Alfieri's testimony would be accompanied by the same implications of bias as those accompanying Mr. Skowrenski's.  *See John McShain, Inc.*, *supra*, 563 F.2d at 634-35.  Additionally, Commonwealth is entitled to demonstrate the amount of the credit it deserves by virtue of the settlement proceeds paid by Mr. Alfieri to plaintiff in the event a verdict is rendered against Commonwealth.  *In re Liquidation of Integrity Ins. Co.*, *supra*, 147 N.J. at 135-36; *Magnet Resources, Inc.*, *supra*, 318 N.J. Super. at 293.

**B.     This Court's Prior Orders Sealing the Settlement Agreements from Public Access Have No Bearing on Commonwealth's Right to Inquire into the Terms Thereof in Depositions.**

Commonwealth's right to inquire into the terms of the settlement agreements is not affected by any sealing or protective orders entered by this Court over those agreements.[1]  Those Orders serve only to shield the agreements from *public* access, not from active litigants such as Commonwealth.  Moreover, under the applicable Local Rule, an earlier sealing order does not control disposition of a subsequent application brought by a litigant with a substantial interest in disclosure of related information at a different point in time.

**(1)     The Terms of the Settlement Agreements Are Not Shielded from Commonwealth's Legitimate Inquiries at Depositions.**

Your Honor's Order sealing the settlement agreements from public access does not foreclose Commonwealth, an active litigant in this matter, from inquiring into the terms of those agreements at depositions.  The Rule governing such orders sets forth the criteria that a moving party must satisfy before obtaining an order sealing or restricting public access to court documents and proceedings:

> Any motion to seal or otherwise restrict public access
> shall be available for review by the public.  The motion
> papers shall describe (a) the nature of the materials or
> proceedings at issue, (b) the legitimate private or
> public interests which warrant the relief sought, (c) the
> clearly defined and serious injury that would result if

---

[1] Pursuant to Local Civil Rule 5.3(c)(2), on June 30, 2010, this Court granted defendants Skowrenski and National Home Funding, Inc.'s motion to seal the confidential settlement agreement entered into between those defendants and plaintiff.  *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, No. 97-3496, 2010 U.S. Dist. LEXIS 66399, at *8 (D.N.J. June 30, 2010).

Honorable Michael A. Shipp
August 16, 2010
Page 8

> the relief sought is not granted, and (d) why a less
> restrictive alternative to the relief sought is not
> available. . . . .

L.Civ.R. 5.3(c)(2).  Local Civil Rule 5.3 "was adopted to govern all requests by a
party to seal or otherwise restrict public access to materials filed with or used by the
Court and judicial proceedings themselves."  *Stasicky v. S. Woods State Prison*, No.
03-369 (FLW), 2006 U.S. Dist. LEXIS 86461, at *6 (D.N.J. Nov. 29, 2006) (citing
Allyn Z. Lite, *New Jersey Federal Practice Rules*, Comment 1 to L.Civ.R. 5.3, at 28
(2010)).

As its plain language establishes, "[t]he scope of the rule specifically governs a
litigant['s] necessity to seal materials from the public, not from an adverse party."
*Ibid.*  "[T]he rule is limited in its scope to public access to documents; ***it does not
authorize the Court to seal documents so as to prevent access by other
litigants.***"  Lite, *supra*, Comment 1 to L.Civ.R. 5.3 (emphasis added).

*Stasicky* is illustrative.  That case involved a former inmate's allegations that he was
assaulted by officers in the Emergency Care Unit while he was held there for
treatment for panic attacks.  *Id.* at *2-*3.  The plaintiff's medical and mental-health
treatment records were released to the defendants during discovery because "the
crux of [the plaintiff's] allegations center[ed] on the mental health treatment he
received."  *Id.* at *3.  The defendants and the court drafted and signed a protective
order that stated that the plaintiff would not be permitted to "'view, inspect, copy, or
have a copy of [his psychological or mental health records].'"  *Ibid.* (quoting
protective order) (alteration in original).   When a defendant filed a motion for
summary judgment, he excluded the exhibits to that motion that included the
plaintiff's mental-health records from the copy that was served on the plaintiff and
moved to seal those exhibits pursuant to Local Civil Rule 5.3(c), citing the protective
order.  *Id.* at *4.  The court granted the defendant's motion to seal the mental-health
records "from public access [but] noted that a complete copy of all Exhibits were to
be supplied to Plaintiff."  *Ibid.*  The defendant moved for reconsideration of that
portion of the court's order that required production of the mental-health records to
the plaintiff.  *Id.* at *7 ("[The defendant's] motion for reconsideration does not
challenge the Court's determination of sealing the Exhibits from public access[;]
rather, it specifically questions the Court's instruction to provide Plaintiff with copies
of the Exhibits.").

Judge Bongiovanni held that "the plain language of Local Rule 5.3 states that its
procedure can only be used to seal documents from public access."  *Ibid.*  The court
thus denied the motion for reconsideration and observed that the Rule providing for
limits on public access did not impede the plaintiff's right to the important information
at issue.  *Id.* at *7; *see also id.* at *11-*12 ("Local Rule 5.3 was designed to seal
documents from public access, not access by other litigants . . . .").

Honorable Michael A. Shipp
August 16, 2010
Page 9

Here, Commonwealth -- an active litigant in this matter -- is not barred from inquiring at depositions into the terms of settlement agreements between plaintiff and co-defendants. Like the plaintiff in *Stasicky* who sought access to medical records sealed by a protective order, Commonwealth's interests in discovering the terms of the sealed settlement agreements trump the agreements' signatories' desire for confidentiality. *See id.* at *6-*7. Those agreements are confidential only insofar as they prevent their outright disclosure to the public. *Walsh Sec., Inc., supra*, No. 97-3496, 2010 U.S. Dist. LEXIS 66399, at *7; *see Stasicky, supra*, No. 03-369 (FLW), 2006 U.S. Dist. LEXIS 86461, at *6; Lite, *supra*, Comment 1 to L.Civ.R. 5.3. The parties to those agreements should not be permitted to hide behind that confidentiality at the expense of Commonwealth's right to highlight the significance of the settlement agreements, i.e., that plaintiff likely has released co-defendants from liability in exchange for money, *see John McShain, Inc., supra*, 563 F.2d at 635, and that Commonwealth would be entitled to a credit for any consideration paid to plaintiff by settled defendants in the event a jury renders a verdict against Commonwealth, *see In re Liquidation of Integrity Ins. Co., supra*, 147 N.J. at 135-36; *Magnet Resources, Inc., supra*, 318 N.J. Super. at 293.

### (2)   The Court's Prior Orders Do Not Control Commonwealth's Current Application.

"[T]he fact that an earlier sealing order was entered does not control the decision on any subsequent application, ***even as to the same or similar information***." Lite, *supra*, Comment 2(b) to L.Civ.R. 5.3, at 31 (emphasis added) (citing *Emmanouil v. Roggio*, No. 06-1068 (FLW), 2007 U.S. Dist. LEXIS 28831, at *7 (D.N.J. April 19, 2007) ("*Emmanouil I*")). "The Court must determine whether the sensitivity of the information meets the high burden of sealing under the conditions of [the] case ***as they currently exist***, rather than blindly relying on a prior sealing order." *Emmanouil I, supra*, No. 06-1068 (FLW), 2007 U.S. Dist. LEXIS 28831, at *7-*8 (emphasis added).

To satisfy the high burden warranting an order of confidentiality, at "any . . . stage of litigation, including settlement, good cause must be demonstrated to justify the order." *Pansy, supra*, 23 F.3d at 786 (citing *City of Hartford v. Chase*, 942 F.2d 130, 136 (2d Cir. 1991)). "'Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.'" *Ibid.* (quoting *Publicker Indus., Inc. v. Cohen*, 773 F.2d 1059, 1071 (3d Cir. 1984)). "'The court . . . must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled.'" *Id.* at 787 (alteration in original) (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 *Harv. L. Rev.* 427, 433-35 (1991)). When conducting that "balancing process" in the context of settlement agreements, "[d]istrict courts should not rely on the general interest in encouraging settlement, and should require a particularized showing of the need for confidentiality in reaching a settlement." *Id.* at 788 (citing *Bank of Am. Nat'l Trust*

Honorable Michael A. Shipp
August 16, 2010
Page 10

*and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 346 (3d Cir. 1986)). Moreover, when the "contents [of sealed materials are] at issue in the current litigation, sealing under L.Civ.R. 5.3(c)(2) is not appropriate." Lite, *supra*, Comment 2(b) to L.Civ.R. 5.3, at 31 (citing *Emmanouil v. Roggio*, No. 06-1068, 2008 U.S. Dist. LEXIS 32084, at *15-*17 (D.N.J. April 18, 2008) ("*Emmanouil II*")).

Here, Commonwealth's interests in deposing plaintiff and co-defendants regarding the terms of their settlement agreements substantially outweigh any purported interest in maintaining confidentiality. Plaintiff's only asserted basis for precluding inquiry into the terms of those agreements is that "both agreements contain confidentiality provisions." (*Pl. Ltr. Br.*, June 11, 2010 [document 393].) However, the existence of those confidentiality provisions is immaterial to this Court's determination at this stage. *See Pansy*, *supra*, 23 F.3d at 786 ("'[T]he trial court -- not the parties themselves -- should scrutinize every such agreement . . . and [determine] what, if any, of them are to be sealed, and it is only after very careful, particularized review by the court that a Confidentiality Order may be executed.'" (third alteration in original) (quoting *City of Hartford*, *supra*, 942 F.2d at 136)). Plaintiff fails to offer any "particularized showing of [its] need for confidentiality." *Id.* at 788. That lack of "specificity" is fatal to plaintiff's attempt to thwart Commonwealth's right to inquire into the terms of the agreements. *Id.* at 786; *see also id.* at 788 (requiring more than reliance "on the general interest in encouraging settlement" as a basis for maintaining confidentiality (citation omitted)).

On the other side of the scale is Commonwealth's compelling interest in inquiring into the terms of the settlement agreements. First, Commonwealth is entitled to impeach the credibility of Messrs. Walsh, Alfieri, and Skowrenski by revealing the biases arising out of agreements releasing Alfieri and Skowrenski from liability for damages that plaintiff initially attributed to them. *See* Fed. R. Evid. 408(b); *see, e.g.*, *John McShain, Inc.*, *supra*, 563 F.2d at 634-35 (holding that Rule 408(b) "by its terms does not require the exclusion [of] evidence when offered for the purpose of proving bias or prejudice of a witness" (citation and internal quotation marks omitted)). Moreover, Commonwealth is entitled to disclosure of the settlement agreements' terms because, in the event the jury reaches a verdict against Commonwealth, it would be entitled to a monetary credit to the extent of any settlement proceeds paid to plaintiff by former co-defendants. *See In re Liquidation of Integrity Ins. Co.*, *supra*, 147 N.J. at 135-36; *Magnet Resources, Inc.*, *supra*, 318 N.J. Super. at 293; *see also* Lite, *supra*, Comment 2(b) to L.Civ.R. 5.3, at 31" ("[When the] contents [of sealed materials are] at issue in the current litigation, sealing under L.Civ.R. 5.3(c)(2) is not appropriate.").

Plaintiff fails to identify any specific injury that it would suffer if Commonwealth is permitted to inquire into the terms of the settlement agreements. Commonwealth's compelling interests in disclosure therefore outweigh plaintiff's attempt to prevent Commonwealth from questioning Messrs. Walsh, Skowrenski, and Alfieri about the terms of those agreements.

ME1 10330946v.1

Honorable Michael A. Shipp
August 16, 2010
Page 11

## CONCLUSION

This dispute does not implicate the dangers of disclosing confidential settlement negotiations. Nor does it involve the general public's interest in unfettered access to a settlement agreement between private litigants. Those considerations already have been addressed by Your Honor's order to "permanently remove [the settlement agreement] from the docket." *Walsh Sec., Inc., supra*, No. 97-3496, 2010 U.S. Dist. LEXIS 66399, at *8.

Rather, at issue here is Commonwealth's right as a non-settling defendant to present evidence of the biases arising out of settlement agreements between plaintiff and co-defendants, as well as the amount of the judgment credit to which Commonwealth is entitled by virtue of those settlements. There is no warrant for precluding inquiry into to the terms of the settlement agreements between plaintiff and Messrs. Skowrenski and Alfieri. Accordingly, this Court should permit Commonwealth to question those witnesses about the terms of the agreements, notwithstanding the previous sealing of the actual agreements.

Respectfully Submitted,


*s/ David R. Kott*
David R. Kott, Esq.

cc:   Robert A. Magnanini, Esq. (via electronic filing & fax)
      Edward J. Hayes, Jr., Esq. (via electronic filing & fax)
      Martin R. McGowan, Jr., Esq. (via electronic filing & fax)
      Vincent P. Manning, Esq. (via electronic filing & fax)
      Edward C. Bertucio, Esq. (via electronic filing & fax)
      All persons and entities on attached Service List (via regular mail)

Revised 5/10/10

**<u>SERVICE LIST</u>**

**<u>WALSH SECURITIES, INC. V. CRISTO PROPERTY MANAGEMENT, ET AL</u>**
**<u>CIVIL ACTION NO. 97-3496 (DRD)</u>**

Robert A. Magnanini, Esq.
Stone Magnanini, LLP
150 John F. Kennedy
Short Hills, NJ 07078
**Attorney for plaintiff Walsh Securities, Inc. and for third-party defendant Robert Walsh**

Vincent P. Manning, Esq.
Manning, Caliendo & Thomson
36 West Main Street
Freehold, NJ 07728
**Attorney for Defendants National Home Funding, Inc. and Robert Skowrenski, II**

Martin R. McGowan, Jr., Esq.
Methfessel & Werbel
3 Ethel Road
Suite 300
Edison, New Jersey 08818
**Attorneys for Defendant Coastal Title Agency**

Edward C. Bertucio, Jr., Esq.
Hobbie, Corrigan, Bertucio & Tashjy, P.C.
125 Wyckoff Road
Eatontown, NJ 07724
**Attorney for Defendant Michael Alfieri, Esq.**

Robert J. Reilly, III, Esq.
Reilly, Supple & Wischusen, LLC
571 Central Avenue
New Providence, NJ   07974
**Attorney for defendant Michael Alfieri, Esq. on the Sixth Count**

Mark W. Catanzaro, Esq.
Blason IV
Suite 208
513 Lenola Road
Moorestown, New Jersey  08057
**Attorney for defendants Richard Pepsny and Donna Pepsny**

Stephen Balsamo, Esq.
Garrity, Graham, Murphy, Garofalo & Flinn, P.C.
72 Eagle Rock Avenue, Suite 350
P.O. Box 438
East Hanover, NJ 07936
**Attorney for Defendant Anthony M. Ciccalese (on certain counts of the Complaint)**

Anthony M. Cicalese
74C Manatiales de Belen
200 Mtrs Norte de igleseis de Ascen
San Antonio de Belen
Heredia, Costa Rica
**Pro se (on certain counts of the Complaint)**

Edward J. Hayes, Jr., Esq.
Fox, Rothschild, O'Brien & Frankel
2000 Market Street
10th Floor
Philadelphia, Pennsylvania  19103-3291
**Attorney for Defendants Fidelity National Title Insurance and Nations Title Insurance**

Pasquale Menna, Esq.
Menna, Supko & Nelson, LLC
830 Broad Street, Suite B
Shrewsbury, NJ 07702
**Attorneys for Defendant Roland J. Pierson**

John B. McCusker, Esq.
McCusker, Anselmi, Rosen & Carvelli
210 Park Avenue, #3
Florham Park, NJ 07932-1012
**Attorneys for Defendant Weichert Realtors**

Thomas Brodo, Pro Se
139B Fort Lee Road
Teaneck, New Jersey  07666

James R. Brown, Pro Se
7 Pamela Road
East Brunswick, NJ 08816-4418

Richard Calanni, Pro Se
One Old Farm Road
Tinton Falls, New Jersey 07724

Anthony D'Apolito, Pro Se
909 Woodland
Wall Township, NJ 07719

Richard DiBenedetto, Pro Se
3 Loller Drive
Martinsville, NJ  08836

Stanley Yacker, Esq., Pro Se
6 Swimming River Court
Barnegat, NJ  08005-5624

William Kane, Pro Se
6119 Kipps Colony Drive
Gulfport, FL 33707

ME1 2304466v.1