1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
2

3   _____

    WALSH SECURITIES, INC.,        : Case No. 2:97-cv-03496-DRD-MAS
4                                   :
              Plaintiff,            :
5                                   :
         vs.                        :
6                                   :
    CRISTO PROPERTY MANAGEMENT,     : Newark, New Jersey
7   LTD., et al.,                   : Wednesday, July 21, 2010
                                    : 11:37 a.m.
8             Defendants.           :
    _____

9                 TRANSCRIPT OF TELEPHONE CONFERENCE
               BEFORE THE HONORABLE MICHAEL A. SHIPP
10                UNITED STATES MAGISTRATE JUDGE

11  APPEARANCES (Telephonically):

12  For the Plaintiff:          Stone & Magnanini, LLP
                                By:  ROBERT A. MAGNANINI, ESQ.
13                                   AMY WALKER WAGNER, ESQ.
                                     DANIEL IAN MEE, ESQ.
14                              150 JFK Parkway, 4th Floor
                                Short Hills, NJ  07078
15

16  For Defendant Commonwealth
    Land Title Insurance Co.:   McCarter & English, LLP
17                              By:  DAVID R. KOTT, ESQ.
                                Four Gateway Center
18                              100 Mulberry Street
                                Newark, NJ  07101-0652
19

20

21  Transcription Company:      KLJ Transcription Service, LLC
                                P.O. Box 8627
22                              Saddle Brook, NJ  07663
                                (201)703-1670 - Fax (201)703-5623
23

24  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.
25

```
 1   APPEARANCES (Cont.):

 2   For Defendants Fidelity
     National Title Ins. and
 3   Nations Title Ins.:           Fox Rothschild, LLP
                                   By:  EDWARD J. HAYES, ESQ.
 4                                 2000 Market Street, Tenth Floor
                                   Philadelphia, PA  19103-3291
 5
 6   For Defendant Coastal
     Title Agency:                 Methfessel & Werbel, ESQS.
 7                                 By:  MARTIN R. McGOWAN, JR., ESQ.
                                   3 Ethel Road, Suite 300
 8                                 Edison, NJ 08818

 9   For Defendants
     Robert Skowrenski and
10   National Home Funding:        Manning, Caliendo & Thomson
                                   By:  VINCENT P. MANNING, ESQ.
11                                 36 West Main Street
                                   Freehold, NJ  07728
12
13   Pro Se Defendant              RICHARD CALANNI, PRO SE
                                   1 Old Farm Road
14                                 Tinton Falls, NJ  07724

15

16

17

18

19

20

21

22

23

24

25
```

1                        I N D E X

2              (NOTE:   Counsel were on telephone and some had static

3    or interruptions in their connection, thereby resulting in

4    indiscernible portions of their comments.)

5

6    COLLOQUY RE:                                          PAGE

7    Depositions . . . . . . . . . . . . . . . . . . . . 6

8    Outstanding Discovery Requests  . . . . . . . . . . .  12

9    Transcription Errors in 30(b)(6) Depositions  . . . . .  16

10

11   DISPUTES RE CASE MANAGEMENT ORDER OF MAY 17, 2010:    PAGE

12        RE PARAGRAPH 4

13        Argument  . . . . . . . . . . . . . . . . . . . 18

14        Ruling  . . . . . . . . . . . . . . . . . . . . 24

15        RE PARAGRAPHS 5 & 24

16        Argument  . . . . . . . . . . . . . . . . . . . 24

17        Ruling  . . . . . . . . . . . . . . . . . . . . 28

18        RE INQUIRY INTO SETTLEMENT TERMS

19        Argument  . . . . . . . . . . . . . . . . . . . 29

20        Ruling  . . . . . . . . . . . . . . . . . . . . 36

21        RE SUA SPONTE DISMISSAL OF CROSS-CLAIMS

22        Argument  . . . . . . . . . . . . . . . . . . . 37

23        Ruling  . . . . . . . . . . . . . . . . . . . . 41

24        RE LEAVE TO FILE DISPOSITIVE MOTIONS

25        Argument  . . . . . . . . . . . . . . . . . . . 42

1                    I N D E X  (Cont.)

2    DISPUTES RE CASE MANAGEMENT ORDER OF MAY 17, 2010:      PAGE

3        RE LEAVE TO FILE DISPOSITIVE MOTIONS

4        Ruling  . . . . . . . . . . . . . . . . . . . .  43

5        RE LEAVE TO FILE DISPOSITIVE MOTIONS

6        Argument  . . . . . . . . . . . . . . . . . . .  44

7        Ruling  . . . . . . . . . . . . . . . . . . . .  45

8        Colloquy re Clarification . . . . . . . . . . .  46

9    COLLOQUY RE:                                            PAGE

10   Briefing Schedule re Witness Statements . . . . . . . .  48

11   Any Remaining Issues/Comments . . . . . . . . . . . .  50

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                                    5

1                (Hearing commenced at 11:37 a.m.)

2           THE COURT:  Good morning, counsel.

3           THE ATTORNEYS:  (In unison)  Good morning, Your Honor.

4           THE COURT:  This is the matter of <u>Walsh Securities</u>

5    <u>versus Cristo Property Management</u>, Docket Number 97-3496.

6           Who is on the line for the plaintiff?

7           MR. MAGNANINI:  Your Honor, we have Bob Magnanini,

8    Amy Wagner and Daniel Mee from Stone and Magnanini for the

9    plaintiffs.

10          THE COURT:  Okay.  Good morning.  And --

11          MR. MAGNANINI:  Good morning.

12          THE COURT:  And the defendants, just please enter

13   your appearances in no particular order?

14          MR. KOTT:  Dave Kott, K-O-T-T, McCarter and English,

15   for the Defendant Commonwealth Land Title Insurance Company.

16          MR. HAYES:  Edward Hayes for Defendants Fidelity

17   National Title and Nations Title Insurance Company.

18          MR. McGOWAN:  Martin McGowan, Methfessel and Werbel,

19   for the Defendant Coastal Title Agency.

20          MR. CALANNI:  Richard --

21          MR. MANNING:  I'm sorry, go ahead.

22          MR. CALANNI:  Richard Calanni, pro se.

23          MR. MANNING:  Vincent Manning, Manning, Caliendo and

24   Thomson, for Robert Skowrenski and National Home Funding.

25          THE COURT:  Is there anyone else on the line this

1   morning who has not entered an appearance?

2           UNIDENTIFIED MALE:  No, Your Honor.

3           THE COURT:  Okay.  Well, folks, we are on the record

4   in this matter, because there are a number of issues that have

5   been put before the Court that require precise action, so I

6   thought that this is a conference that needed to be done more

7   formally than some of our previous conferences.

8           I have a few issues that I want to go through and

9   then, after we're all done, we'll kind of go around the room

10  and see what's left; and, if there are other issues that the

11  Court has not raised, feel free to raise them at that time.

12          There are a number of issues that are procedural in

13  nature that somewhat deal with our schedule.  So, I'm going to

14  start off with, before getting into any of the disputes,

15  talking a little bit about the depositions.

16          Apparently, there are depositions that are scheduled

17  through mid-August and that there is still an attempt to try

18  and schedule maybe five or six more depositions, and that

19  there has been a representation that you're trying to conclude

20  all deps by the end of September.  Is that accurate and true?

21          MR. MAGNANINI:  From the plaintiff's side it is, Your

22  Honor.  We've -- I think we've conducted about 12 deps since

23  we last spoke to you.

24          We did two days of Walsh Securities' 30(b)(6) deps.

25  We did two days of Betty Ann DeMola's deposition.  We did a

Colloquy                                    7

1    day of James Walsh's deposition.

2         We fully concluded the deposition of Mr. Skowrenski

3    and National Home Funding, pending the issue of the settlement

4    agreement that the defendants had raised.

5         We also concluded -- well, depending on what we

6    receive in documents, we did a day of Commonwealth's 30(b)(6)

7    depositions.  We did a very long day of Stanley Yacker's

8    deposition.

9         We did two days of Lorraine King's, who is Mr. Yacker

10   and Mr. Cicalese, is the two closing attorneys.  She was the

11   secretary paid by Mr. Kane to process the loans.

12        We've done a day of Kelly O'Neill's deposition and

13   one day of Bob Agel, who is the head of -- the owner of

14   Coastal Title Agency.  And we had deposed Mike Alfieri, one of

15   the other attorneys involved in the case.

16        And then, I think currently we've locked down Mr.

17   Pepsny's deposition.  He was an attorney for Mr. Kane, Your

18   Honor, who was involved in the purchase and sale of the

19   properties.  We actually had his dep locked in about a month

20   ago and then, the day before the deposition, he retained his

21   former criminal counsel, Mark Catanzaro.

22        So, between all of the lawyers' schedules:  we've got

23   Mr. Pepsny scheduled for deposition on August 4th; and then,

24   pending Mr. Agel's personal counsel's ability to appear on

25   August 5th -- which, to show you the efforts we're doing to

Colloquy                                                8

1    get this case done; that's my birthday and I doubt I'll be

2    getting any cake from Mr. Kott or Mr. Hayes.

3              THE COURT:  I'm sure Mr. Kott will at least have a

4    slice of birthday cake for you.

5                   (Indiscernible - multiple speakers)

6              THE COURT:  Remember, we're on the record, counsel.

7    Be careful about making those kinds of accusations.

8              MR. KOTT:  Have a nice piece of cake as an out-of-

9    court settlement.

10             MR. MAGNANINI:  So, that's scheduled for the 5th,

11   Your Honor, and then we've got a couple of other depositions.

12             We had tracked down Mr. Cuzzi, who was an individual

13   responsible for getting the straw buyers for Mr. Grieser.  And

14   he resides in Edison, so his dep was scheduled -- his mother

15   apparently is 84; fell and broke her hip in Florida -- and

16   we'll have his deposition concluded by the end of August.

17             We also managed to serve Mr. Kane.  After numerous

18   attempts, we finally got an attractive process server in

19   short-shorts to get him at a gas station, of all places.  He

20   now has called me several times and, so, we'll be able to

21   schedule his deposition.

22             And then, we've got -- Mr. Hayes and I and other

23   counsel will work out a date for Nations' deposition.

24   Fidelity's 30(b)(6) deposition is scheduled for August 13th.

25             And then we've -- and the reason we put September

1   30th, Your Honor, is I think we had two names come up in the

2   30(b)(6)'s of Commonwealth, who I had not known before.  One

3   of them is an in-house attorney who conducted the

4   investigation of the Walsh Securities claims.  Her name is

5   Nancy Cook.  And I'll speak with Mr. Kott about whether or not

6   he'd represent her as a former employee.

7           And so, the re -- like I said, the reason we put

8   September 30th, I think, in order -- we had -- we retrieved

9   all the documents we had from Latham and Watkins and from

10  Walsh Securities that we're reviewing for privilege and things

11  like that.  So, it's probably going to take, with vacation

12  schedules, you know, the summer kind of stuff, and getting

13  these things reviewed, for privilege, copied.

14          We actually sent out all of the loan files and other

15  documents that we  have been requested by the title companies

16  and I think they're all copied and ready to be sent to the

17  title companies.  And then, people are going to have to review

18  these documents.  I think there's, I don't know how many

19  pages; we're looking at a hundred thousand or --

20          UNIDENTIFIED MALE:  A lot (indiscernible) --

21          MR. MAGNANINI:  A lot of -- yeah, I think the -- just

22  the loan files were about 26 boxes and we --

23          THE COURT:  But suffice it to say, Mr. Magnanini,

24  that all of the depositions that have been brought to the

25  attention of this Court thus far will be completed by

Colloquy                                          10

1    September 30th?

2           MR. MAGNANINI:  Yes, Your Honor.  Yeah.  And these --

3    the couple of people who we've had the most trouble with, who

4    will -- shall remain nameless, but I think we've convinced

5    them that they'd much rather appear voluntarily than pursuant

6    to an order from Your Honor and handcuffs with the marshals

7    present.   So, I think we've got any cooperation necessary, as

8    the groundwork laid, so we'll be able to get the deps

9    scheduled and finished by then.

10          MR. KOTT:  Your Honor, it'd David Kott.  If I can

11   just put a little fire report on that.

12          The answer to Your Honor's question is, yes,

13   September 30.  The defendants have a few depositions where

14   we're awaiting resolution of some of the matters before Your

15   Court, before Your Honor.

16          We need to complete the Rule 30(b)(6) deposition of

17   the plaintiff.  We're waiting for a ruling on one thing with

18   that.

19          We may or may not need to take some depositions,

20   depending upon the Court's ruling on whether we can use the

21   witness statements.

22          We have an application before Your Honor or we may in

23   the future for an individual deposition of Robert Walsh,

24          THE COURT:  Okay.

25          MR. KOTT:  -- who also appeared a few times as the

1   Rule 30(b)(6).

2           And putting aside experts' deps, which we're not at

3   that stage, coming back to where I started, but the

4   contemplation is we'll get that done by September 30.  I only

5   chime in, because I wanted to give the Court an inventory of

6   what the defendants might have left.

7           THE COURT:  Okay.  Anyone else want to chime on the

8   completion of the deps?  I do have some issues that we're

9   going to get to that may impact some of this, so if --

10          MR. CALANNI:  Yes, Your Honor.

11          THE COURT:  -- anyone else wants to speak on that,

12  now is the time, in terms of just the deposition schedule.

13          MR. CALANNI:  Yes, Your Honor.  This is Richard

14  Calanni.

15          Did I hear that Betty Ann DeMola was deposed?  The

16  last I heard, that Betty Ann DeMola had cancelled, because she

17  was going to a Yankee game.  I don't know if --

18          MR. MAGNANINI:  We had sent you letters on that, Mr.

19  Calanni.  She was deposed twice, two days separately.  I know

20  we had called you and e-mailed you about the second date,

21  definitely.

22          MR. CALANNI:  Hmm.  I don't recall any calls.

23          THE COURT:  Well, Mr. Calanni, if that's of --

24          MR. CALANNI:  As a matter of fact, (indiscernible)

25  she was at a baseball game.

1        THE COURT:  If that is of interest to you, you should

2   contact counsel and see if perhaps you can get a transcript or

3   -- or if you, in fact, missed it, at least you'll have an

4   opportunity to see exactly what was posed to Ms. DeMola and

5   the like.

6        But let's move on, counsel.  Is there anyone else

7   that needed to speak on the deposition schedule?  We have a

8   lot of issues to discuss today.

9        Let's talk about the outstanding discovery requests

10  next.  The parties intend to request Court-set deadlines.

11  Apparently, you are seeking deadlines:

12        A.   For the defendants -- well, let me say it.

13  Deadlines for the production of documents, pursuant to 14

14  outstanding requests.

15        And the plaintiffs want a deadline for the 19

16  requests and the plaintiff also wants a Court-imposed deadline

17  against Defendant Fidelity due to the pending 30(b)(6)

18  deposition to be completed by Fidelity.

19        Let me hear from you folks on this.  I want anything

20  that's outstanding turned over immediately.  So, the first

21  question is, you know, how soon can we get this?  Are we

22  talking about documents that are going to take a while to

23  secure?  Or are they going to be pretty much readily available

24  within, like, a one-week or a ten-day period?  Let me hear

25  from defendants first.

1          MR. KOTT:  Yeah, it's David Kott again, Your Honor.

2          Speaking for Commonwealth, I don't think it's going

3   to take forever, because we've had the client pulling

4   documents since Mr. Magnanini has asked for them.  So, the

5   other thing is, our firm has to go through some of those

6   documents, which I will confess we haven't gotten to.

7          But to answer your question, I would think in three

8   weeks we would be in a position to produce -- and I don't want

9   to represent all, but a good deal of -- to the extent we have

10  it, to produce a good deal of what Mr. Magnanini has asked

11  for.  And the reason I say three weeks is it's a fair amount

12  of paper that I've got to find somebody who works for me to go

13  through.

14         THE COURT:  Mr. Magnanini, what about on the

15  plaintiff's side?  You're requesting about 19 outstanding

16  requests here.

17         MR. MAGNANINI:  Yes, Your Honor.  Those are the --

18  yeah, the documents we had requested were all -- from

19  Commonwealth, were all documents that had come up during the

20  30(b)(6) witness, in which their -- Commonwealth's corporate

21  representative had said she had consulted or reviewed or seen

22  documents in preparation for her testimony and couldn't give

23  me specific answers, because they were contained in the

24  documents.

25         And then, similarly, we had sent a letter to Mr.

1  Hayes, I guess.  He had told me that there were some attempts

2  at foreclosing on some of the properties by another law firm,

3  (indiscernible) Stern Lavinthal, and that they had certain

4  files on some of these form loans.  And I had requested from

5  Mr. Hayes prior to deposing the -- Ms. Sullivan, who is

6  actually -- she was the Commonwealth 30(b)(6) witness, but

7  she's also, I think, going to serve as the 30(b)(6) for

8  Fidelity and Nations, since she's currently employed by -- or

9  since they're all owned by the same entity, you know, Fidelity

10  something or other.

11        And so, what I was trying to get from Mr. Hayes was

12  the documents that he had prior to those depositions.  And

13  then, we also had been -- had a list of document requests we

14  received from the defendants that we had listed in the letter,

15  Your Honor, and we had gone back and pulled documents that my

16  firm, Stone and Magnanini, had.  We had gotten documents that

17  were -- Boies, Schiller and Flexner had in storage, that I

18  have gotten back.  We've gone back and gotten the documents

19  from Latham and Watkins and we have those documents now.

20        And then, as Mr. Kott said, it's probably going to

21  take me three to four weeks to go through them, mostly because

22  my two associates, while some people may think they don't work

23  hard enough, they're working pretty hard, as (indiscernible).

24  And just to go through the documents -- because we have, like

25  I said, I think it's about another 100,000 pages of things

1  and the -- they -- none of the documents we have were

2  specifically in the categories that have been requested.  They

3  were all pursuant to other requests made back in '97-98 time

4  frame and, so --

5           THE COURT:  Okay.  Then, is it fair to say, if the

6  Court sets a deadline of August 13th, which is a little bit

7  more than three weeks and a few days, that that's sufficient

8  enough time for both sides to come into compliance with any

9  outstanding discovery requests for the production of documents

10 on these two requests here?

11          MR. KOTT:  It's David.  The answer from me is almost

12 100 percent yes.  I'm just leaving myself a little

13 (indiscernible).  There's a document here, although it's a

14 little harder for the client to get their hands on --

15          THE COURT:  Okay.

16          MR. KOTT:  -- and I don't know that I can do that by

17 the 13th, but I -- but --

18          THE COURT:  Well, notwithstanding the one or two

19 straggler documents --

20          MR. KOTT:  Right.  Right.

21          THE COURT:  -- that may be difficult, I'd like to

22 have August 13th be the date by which both sides come into

23 compliance here.

24          MR. KOTT:  That will work for Commonwealth.

25          MR. HAYES:  That's acceptable for Fidelity and

 1  Nations, Judge.

 2          MR. MAGNANINI:  Yeah, we'll give it a try, Your

 3  Honor.  My -- Mr. Mee and Ms. Wagner are looking at me like

 4  I'm not.  But I -- we -- I think we can get through most of

 5  the stuff.

 6          And, in any event, one issue we may have, Your Honor.

 7  We sent out, like I said, the 26th we sent out about 44 boxes

 8  of stuff for copying, which I understand is ready now.  So, it

 9  may take a little bit to get all this stuff copied, but I

10  think we can (indiscernible) everything and identify what we

11  have that's responsive by the 13th.

12          THE COURT:  Okay. Let me move on here a little bit

13  here.  I'm going to shift gears and move a little bit quicker

14  through some of these other issues.

15          There was another dispute -- well, I guess it's a

16  dispute here -- pertaining to transcription errors.  The

17  defendants wanted to ask the Court to set a deadline for

18  plaintiff to respond to letters dated April 27th and May 27th

19  concerning possible transcription errors.

20          Now, I'm not really sure that this is something the

21  Court needs to be involved in at this point.  I would seem to

22  me that the parties are trying to resolve this issue.  But is

23  there anything that you believe that the Court needs to

24  address at this time on this particular topic?

25          MR. KOTT:  Yeah, it -- it's David Kott.  The

1    transcription errors relate to the Rule -- the two days of the

2    Rule 30(b)(6) deposition of the plaintiff.  And we want just a

3    deadline for the plaintiff -- I think we can agree on most of

4    the errors, Judge, but we just want a deadline for the

5    plaintiff to either agree or disagree with us on the errors

6    before we take the last or the next day of the Rule 30(b)(6).

7            THE COURT:  When is the next day --

8            MR. KOTT:  And that's not going to --

9            THE COURT:  Do we have a date --

10           MR. KOTT:  Well, that --

11           THE COURT:  -- or is that one of the issues for the

12   Court later on here?

13           MR. KOTT:  Right, that's one of the issues for the

14   Court later on.

15           THE COURT:  Yeah.  Okay.

16           MR. KOTT:  So, we don't need that right away, but we

17   would like a deadline for them just to respond.  And, as I

18   said, I think we'll work it out, but I need to hear back from

19   them saying, yeah, we agree with your errors that they are

20   errors.

21           MR. MAGNANINI:  Yeah.  Your Honor, we'll actually get

22   that done in the beginning of next week.  We're -- our client

23   is looking at the errors identified by the defendants and then

24   I'm going to -- and Ms. Wagner, we'll take a lead on it and at

25   the beginning of --

1          THE COURT:  By no later than July 28th, that's one

2    week from today, I'm going to expect that this issue will be

3    resolved and that they will, the plaintiffs will respond to

4     the defendants with regard to the transcription errors.

5          MR. KOTT:  Okay.  Good.  Thank you, Your Honor.

6          THE COURT:  Let's move now into some of the disputes

7    that have been put before the Court, especially in this case

8    management order that was submitted on May 17th.  There were,

9    I guess, some distinctions in the two proposed or competing

10   orders.

11         Starting with paragraph 4, which required the

12   plaintiff to identify all properties on which it intends to

13   pursue a claim under a title insurance policy and set forth,

14   with specificity for each property, the basis for the title

15   claim and the date and matter or notice to the defendants of

16   the title claim.

17         Now, let me hear very briefly from plaintiff and then

18   I'll hear very briefly from the defendants.

19         MR. MAGNANINI:  Yes, Your Honor.  We weren't -- I

20   were -- were concerned with the language of the "with

21   specificity" here as some sort of, you know, sand trap that's

22   being erected to say if we don't identify things with such

23   specificity, that the claims cannot continue.

24         It's our contention that the -- we have -- Walsh

25   Securities has claims under the closing protection letters

1   which were issued with each title insurance policy, according

2   to Mr. Agel's testimony for the title agency that issued the

3   title insurance.  He said, if there was a mortgage on the

4   property, we would always issue a closing protection letter.

5   And then, Mr. Yacker, the closing lawyer on the majority of

6   the transactions said the same thing.  So that these closing

7   protection letters were issued by the title companies for the

8   benefit of the mortgage banker and provided protection against

9   either fraud of the closing agents or failure to follow the

10  mortgage banker's closing instructions.

11         So, what we had alleged, I thought, in that complaint

12  again and again and again was, we were making a claim on 223

13  properties, pursuant to the closing protection letter.  Then

14  there was a subset of those properties which amount to about

15  $10 million dollars worth of claims of properties that Walsh

16  Securities repurchased from various whole loan purchasers or

17  that had been securitized, and those properties were brought

18  back.  And because the properties were eventually lost in the

19  tax sales, we were making other title insurance claims on

20  those properties.

21         Now, the closing protection letters and the title

22  insurance policies I think are pretty specific and were not --

23  there's no way we're intending to make a windfall on this by

24  making a claim under both the CPL and the title insurance,

25  there's just different I guess legal routes to pursue the

1   claims from one from the other.

2          And relating to the specific title insurance claims,

3   we have gone back through the various files and located I

4   guess the majority of the closing protection letters and the

5   title policies; and then, what we've been doing is actually

6   tracking through the county records systems what had happened

7   to the properties when they were lost to tax sales, things

8   like that.  That's been a fairly arduous process.

9          It's somewhat automated in Monmouth and Passaic

10  Counties.  In some counties, like Ocean, they actually require

11  you to identify when these deeds were filed and, you know,

12  without -- with the paperwork we have in the various loan

13  files, we haven't been able to do that.  So, we're actually

14  going to have to send people down to the county recorder's

15  offices and dig through these properties.  And I think the

16  properties are in Essex, Hudson, Ocean --

17          THE COURT:  Well, counsel, let me shift gears and do

18  this differently.  Let me talk to the defendants and let me

19  hear from the defendants as to what it is that you are seeking

20  as to the more or greater degree of specificity here, so that

21  Mr. Magnanini can address your concerns directly.

22          MR. KOTT:  Yeah, it's David Kott.  I'm going -- I

23   know Mr. Hayes wants to be heard, also.

24          This is a fairly simple Rule 26 discovery request.

25  And that is, the plaintiffs on all the loans are making a

1   claim over something called a closing protection letter, which

2   covers -- in very general exceptions, Judge -- covers an act

3   of dishonesty of a lawyer or a failure of a lawyer to follow

4   what are called written closing instructions.

5        Second claim one some of the loans they're making

6   under a different document, which is the title insurance

7   policy.  We sent Mr. Magnanini for your loans, each of your

8   loans -- Smith loan, Jones loan, Cullen loan -- tell us what

9   the act of dishonesty was of the lawyer or tell us how he

10  failed to follow the written closing instructions or, if it's

11  a policy claim, these policies got a lot of different things,

12  tell us what your policy claim is; meaning, tell us exactly

13  what this lawyer did or tell us exactly why you don't have

14  good title.  Which, in a coverage action, is the most basic of

15  discovery.

16       So, what we're seeking is to have the plaintiff, for

17  each loan, say, look, under the closing protection letter on

18  the Smith loan, here is the act of dishonesty of the lawyer

19  and/or here is the (indiscernible) closing instructions and

20  how he failed to follow them.  Or, if on the same or a

21  different loan they're making it under (indiscernible) under

22  the policy, here's why we have coverage under the policy.

23       And as I said, Judge, we're 12-14 years in the

24  litigation, this is every day basic discovery in insurance

25  coverage disputes.  So, answering the Court's question

1    directly, that's what we're looking for.

2            I'll yield to my friend, Mr. Hayes.

3            MR. HAYES:  Yeah, Judge, and this is Ed Hayes.

4            Part of the reason why we asked that it be done this

5    way is our alternative was to have asked the Rule 30(b)(6)

6    witness these questions on 220 different transactions to try

7    to figure out whether they were making Type A Claim, the Type

8    B Claim, and what the evidence was to support it.  And as Mr.

9    Kott I believe submitted in some of his letters to the Court,

10   it appears that there was an agreement by plaintiff's counsel

11   that it was better that this information be supplied the way

12   Mr. Kott and I suggested, rather than having to actually ask

13   the witnesses about 220 different loan files.

14           So, not only do we think we're entitled to this

15   information, but we think the mechanism that we proposed to

16   plaintiffs and to the Court is a mechanism that will save

17   everyone a lot of time and money.  And we shouldn't left to be

18   guessing, as was suggested to us at one point in time, at the

19   time of trial, well, these are the claims we intend to present

20   on these particular properties.

21           And the fact that they are now going out to the

22   public records, Judge, to try to figure out on which

23   properties they have a title claim is really evidence of why we

24   need that information.

25           THE COURT:  Mr. Magnanini?

1            MR. MAGNANINI:  Yes, Your Honor.  Well, we're not

2   going out to the public records to get evidence of this, we

3   knew what we had repurchased and, as a matter of fact, all

4   this information was previously provided to the defendants

5   during the mediation.  We gave them a list upon list of here's

6   the loans insured.  And the loans insured by Commonwealth and

7   Fidelity were done -- you know, they were -- claims were made

8   back in July of 1997, the loans were listed.

9            And the specificity, the thing that's confusing to

10  me, I mean, the specificity is what -- in our complaint, that

11  all of these loans were part of the same fraudulent scheme.

12  We deposed Mr. Yacker on his closings and we had his ledger;

13  and so, after each transaction, checks were cut to file and

14  record the deeds and the mortgages in Monmouth County and each

15  one of those were then voided.

16           So, the properties, the deeds, the mortgages were

17  never recorded and then we found out that Mr. Agel and Coastal

18  Title had recorded 200 and -- well, 150 deeds and mortgages

19  out of 300 recorded in Monmouth County over a three-day period

20  in April of 1997.  So, the claim about the dishonesty of the

21  lawyers -- and we haven't deposed Mr. Cicalese yet -- is laid

22  out in our complaint and then -- and the specific loans

23  themselves have been identified to the defendants.

24           And so what we're doing now is going through, in

25  order to prep for summary judgment for trial, to go through

1   and actually have the documentation showing that -- you know,

2   that the tax sale occurred in 2000 in Asbury Park.  And, you

3   know, and as title companies, they've got much quicker access

4   to this public information than we do.  We're having to kind

5   of plod through it with associates and paralegals.

6          But that's -- that's why I'm saying, I looked --

7          THE COURT:  Okay.  Well, counsel, thank you.

8          After having heard from both sides and having

9   reviewed your submissions, I find that it is proper discovery

10  and that the plaintiff shall provide with specificity -- now,

11  I agree and I understand the concerns by plaintiff that this

12  should not be a sand trap that, to the extent that the

13  plaintiff needs to supplement this response later, you are

14  free and certainly entitled to do so.  But at this time, I do

15  believe that the defendants need to and are recommending a

16  more efficient mechanism to get through some of this by

17  requesting greater specificity.

18         So, I am going to order that the plaintiff provide

19  the discovery that's being sought with regard to this

20  particular request.

21         I want to move on and talk about what was set forth

22  under paragraph 5, which requires the plaintiff to identify

23  all loan transactions on which it is asserting a breach of

24  contract claim under closing service letters and supply as to

25  each such loan a copy of the application closing service

1   letter and the closing instructions supplied by plaintiff in

2   connection with the loan, as well as a specific bases for the

3   claim that the defendants are liable under the closing service

4   letter.

5           Let me hear from defendants on this.

6           MR. KOTT:  Yeah, I think the argument is the same.

7           THE COURT:  I think it's the same, too, --

8           MR. KOTT:  I don't have any --

9           THE COURT:  -- as well, counsel.  I don't see

10  anything really different here and I believe that it is proper

11  discovery here.  And for the reasons set forth as to the

12  previous request, I find that this too should be complied with

13  as requested by the defendants.

14          MR. MAGNANINI:  Your Honor, and is there a deadline,

15  Judge, for that to be done?

16          THE COURT:  One -- let me finish going through these,

17  counsel, first.  Let me take another look here.

18          Under paragraph 24, there is a request that the, at

19  the next status conference the Court will set a date for the

20  continued deposition, the 30(b)(6) deposition of Robert Walsh,

21  in his individual capacity, shall be dispose -- deposed and,

22  if so, we need a date for the deposition.

23          Okay.  Mr. Magnanini, what are we talking about in

24  terms of having to do this supplementation with the greater

25  specificity and also complying with paragraph 5?  How much

1   time do you believe that this is going to take?

2          MR. MAGNANINI:  Probably, like 45 days, Your Honor.

3   We -- one of the things with paragraph 5 is that the documents,

4   while some of them were Walsh Securities' files, some we've

5    had to pull from Mr. Yacker's files, from Mr. Kane's files,

6   from Fidelity's files, from Commonwealth's files.  And

7   Commonwealth did not have a lot of -- had about 197 pages of

8   documents they produced, but there were some closing service

9   protection letters in there, under Commonwealth.

10         And then, so one of things we got to do was actually

11  go through the entire repository of documents from Mr. Pepsny

12  and Mr. -- like I said, Mr. Yacker, Cicalese's documents, Mr.

13  Kane's -- and go through everybody's to make sure we have been

14  able to identify all these closing service protection letters.

15         THE COURT:  Okay.  So, you're saying 45 days.  Mr.

16  Kott and Mr. Hayes, does that present a problem, 45 days?

17         MR. KOTT:  It does not, and I'm assuming with that,

18  the Court will build that into the schedule so we'll have a

19  little time to react to it.  But assuming that that -- the

20  Court builds that into the schedule, giving us a little time

21  to react, that is not a problem on my end, Your Honor.

22         MR. HAYES:  And this is Ed Hayes.  It's fine by me,

23  too, Judge.

24         THE COURT:  Okay.

25         MR. KOTT:  Okay.

1          THE COURT:  Well, let's move on and talk about this

2    30(b)(6) dep of Robert Walsh.  Mr. Magnanini, let me hear from

3    you first on this.

4          MR. MAGNANINI:  Yeah, I'm not quite sure why it's in

5    there, Your Honor.  We -- Mr. Walsh was -- has been deposed

6    for two days already and I'm -- I can't tell you how many out

7    of the 14 hours we've used up.  So, whatever time is left,

8    he's going to come back for a third day.

9          I think Mr. Kott and Mr. Hayes are going to want, you

10   know, what's in paragraph 4 and 5 ahead of that time and we

11   figured that Mr. Walsh has  been making himself available for

12   the deposition.  So, I think once we get him, the -- or the

13   defendants sees -- they sent from --excuse me, Your Honor, I

14   got the Jersey summer crud here.  Once we get them this

15   information, we'll schedule Mr. Walsh's deposition in

16   September, and then that'll be taken care of.

17         At that point, though, I don't think they have --

18   they need an individual day of Mr. Walsh, I think they'll

19    have, like, three days of 30(b)(6).  A number of questions

20   that have already been asked concerned Mr. Walsh's personal

21   experience in the mortgage business, in this industry, things

22   like that, and we have not been objecting or instructing Mr.

23   Walsh not to answer any sort of question in his personal

24   capacity.

25         So, from the plaintiff's side, Judge, once I think the

1    defendants get the information they have requested, we'll

2    schedule the deposition in September and that will occur and

3    that will be that.

4              MR. KOTT:  Your Honor, it's David.  I think what the

5    dispute here -- and I'm not sure it's ripe for Your Honor

6    right now, although you may want to deal with it.  We are

7    entitled to a third day of the Rule 30(b)(6).  I have said to

8    Mr. Magnanini we may also want to depose Robert Walsh, who was

9    the principal, if not -- you know, owned the company for the

10   most part.  Didn't own all the stock, but owned most of it.

11   And ran the company.  He was the head guy at the company.  And

12   I said we might want to depose him in his individual capacity,

13   as well.

14             And the reason I say that might not be ripe, and

15   unless Mr. Hayes disagrees, if maybe we'll do the third day as

16   in his Rule 30(b)(6) and not ask Your Honor to let us depose

17   him individually.  So, if the Court is comfortable awaiting on

18   that issue, then I think we don't have to deal with it now.

19   On the other hand, if Your Honor wants to get everything in

20   one order, maybe you do need to deal with it, Your Honor, so

21   that way the parties know --

22             THE COURT:  I actually, I agree with the prior course

23   of action here.  I think that it is not ripe.  I think that

24   it's not even properly in front of the Court, because you

25   don't know if you are, in fact, looking to take this

1   deposition.  So, I think, at the conclusion of the 30(b)(6)

2   deposition, if in fact you are seeking to depose him in his

3   individual capacity, that the appropriate time to make that

4   request would be when, in fact, it is a request.  And right

5   now, from what I'm hearing and what I've read so far, you are

6   not really seeking that, that you're looking to complete the

7   third day of the 30(b)(6).

8          So, I am going to defer ruling on any individual

9   capacity deposition until such time that one is put before the

10  Court.

11         The next issue --

12         MR. KOTT:  Your Honor?

13         THE COURT:  Yeah.  Go ahead, I'm sorry.

14         MR. KOTT:  Oh, I'm sorry, I thought you were moving

15  from Walsh, because I -- you might hit what I thought was

16  going to be the next issue and I'll wait until Your Honor

17  talks.

18         THE COURT:  Okay.  I'm going to run through my

19  issues, Mr. Kott, and then --

20         MR. KOTT:  Okay.

21         THE COURT:  -- you can run through yours.

22         Let's finish with this -- well, I want to move into

23  this whole issue of whether the parties can inquire at the

24  deposition as to the terms of the settlement between the

25  plaintiff and co-defendants, Robert Skowrenski and National

1    Home Funding.  Let me hear from defendants first on this and

2    then I'll hear from plaintiffs.

3            MR. KOTT:  Yeah, it's David Kott again.

4            It's our position this is a discovery dispute and the

5    question is whether, under Rule 26, this is discoverable.  And

6    beyond that, for -- whether there's any privilege that applies

7    to it.

8            A.  It's discoverable, because the plaintiffs sued in

9    a number of complaints -- the original, first, second -- a

10   number of defendants with very serious allegations.  I mean,

11   RICO, intentional fraud; very serious allegations alleging

12   that many of these people were at the center of the fraud.

13   And now the plaintiff has dismissed it against them and,

14   apparently -- I say apparently -- released them.  And that --

15   I think, under Rule 26, that's proper discovery.

16           Meaning, what was the reason you let these defendants

17   out?  Was there an agreement that they were going to testify

18   one way or the other?  And I'm not -- let me underline the

19   word not -- suggesting any impropriety on the part of

20   plaintiff's counsel when I say that, but this is potentially --

21   and I'm not a criminal lawyer -- this is essentially, in my

22   view, a flip situation where, of course, the criminal

23   defendant is entitled to know the terms of the prosecutor

24   agreeing to drop the indictment against a witness.

25           As to any privilege, when we inventory the privilege,

Argument                                                    31

1    they may have decided that they were going to keep that

2    confidential and it might be that someone who has no interest

3    in this would not be able to get to it, meaning some third

4    party would want to come in and (indiscernible).

5         But this is us, this is the parties, remaining

6    parties, who want it, and I don't see any privilege that would

7    apply as attorney-client or otherwise, that would take away

8    our Rule 26 right to the information.

9         MR. HAYES:  And Judge -- this is Ed Hayes speaking.

10   And one of the reasons it becomes particularly important as to

11   National Home Funding is that all of the closing protection

12   letters upon which Walsh brings its claim were actually issued

13   not to Walsh, but to National Home Funding.

14        And one of the defenses that had been raised by the

15   title defendants in this case is that you, Walsh, as the

16   assignee, stand in the shoes of the assignor here, the very

17   person that in all of your complaints you had alleged was

18   intricately involved in the fraud.  Now, all of a sudden, when

19   that defense has been raised, there has been a resolution with

20   NHF, witnesses sort of backing off of what they believe NHF

21   did or didn't do.

22        And, as Mr. Kott said, I think this is a credibility

23   question where we should be able to explore what discussions

24   took place and what settlement was reached when it affects

25    part of the defenses that we've asserted in this case.

1          THE COURT:  Okay.  Let me hear from plaintiff's

2     counsel.

3          MR. MAGNANINI:  Yes, Your Honor.  Yeah, we were

4     actually a little taken aback by this one, because I think

5     they are alleging improper conduct on the part of us.

6          Mr. Kott's letter that he sent to you has the word

7     flipped in there twice and, you know, I think it's because the

8     testimony that they expected they would get they didn't get.

9     Now, we had -- you know, and for Mr. Skowrenski, Mr. Manning

10    will tell you, I have never spoken to him.  We didn't talk to

11    him.  We had settled with various people in this case, because

12    of, you know, the reasons people settle cases:  no assets,

13    people living in their parents' basement and things like that.

14         And but we had offered, Your Honor, to do was to send

15    you the settlement agreements, which are very simple, very

16    straightforward.  They each have a bargain for confidentiality

17    provision.  And you can look at them yourselves and see if

18    there's anything about testimony flipping, any of this sort of

19    stuff.  So, we thought it was simply a way the defendants were

20    trying to cast not only aspersions on counsel, but on our

21    client, as a way of proceeding in the litigation.

22         Furthermore, this I think ties into our request for

23    these various cross-claims.  Mr. Kott's letter to Your Honor

24    had listed that one of the reasons he thought they were

25    entitled to this information, that even though the parties had

1   bargained for confidentiality, which was one of the reasons

2   Your Honor found that the record should be sealed on the

3   settlement agreements that had been filed, was that they were

4   entitled to some sort of offset for any sort of -- any monies

5   paid by these parties.  And, again, I don't think that's

6   correct.

7          The claims against the title companies are based on

8   the contract, the title insurance policies and the closing

9   protection letters issued by the title companies to protect

10  the mortgage banker from the acts of their closing agents.

11  They've got nothing to do with any of the tort claims that

12  were asserted against people for fraud or RICO.  So, I don't

13  think they have any sort of basis to get these settlement

14  agreements, because of the confidentiality provisions that the

15  parties bargained for and obtained and the fact that there

16  isn't any type of offset that are due them.

17         And like I said, what we did offer was, we'll send

18  them to Your Honor and you'll look at the things.  There's

19  nothing in there about anybody flipping or anything like that.

20  So, the fact that the defendants are unhappy with the

21  testimony that's ben given in this case, you know, they're

22  competent attorneys, they have ways of attacking it and

23  twisting this thing.

24         And the other thing I do want to point out is that,

25  as Mr. Hayes said, you know, it seems strange that to them

1    that these closing protection letters were issued in the name

2    of National Home Funding, but they were actually issued to

3    National Home Funding and their assigns.  And the expectation

4    was these mortgages would be assigned and concurrent with the

5    transactions (indiscernible) by National Home Funding to Walsh

6    Securities.

7           So, it -- you know, there was never any sort of plan

8    or anything like that back in 1996 and '97 that somehow NHF

9    would receive the closing protection letter and it was a front

10   for Walsh Securities.  These properties were -- National Home

11   Funding was the mortgage broker.  They got the buyer and then

12   Walsh Securities funded these loans with its money being wired

13   to the closing agents of the title companies at their offices

14   in order for the loans to close.

15          So, the settlement agreements which occurred some

16   during the mediation that was ordered by Judge Arleo under the

17   auspices of retired New Jersey Superior Court Judge John

18   Boyle, you know, are what they are.  There's confidentiality

19   provisions.  We don't think they should be turned over.  We

20   don't think there's any credit that should be given and, if

21   Your Honor wants, we'll send them to you and you can look at

22   them *in camera* and make your decision that way.

23          THE COURT:  Okay.

24          MR. CALANNI:  May I --

25          MR. KOTT:  Judge, I --

Argument                                                    35

1          MR. CALANNI:  May I speak?  This is Richard Calanni.

2          THE COURT:  Okay, Mr. Calanni, go ahead.

3          MR. CALANNI:  I'm not an attorney, I can't quote all

4     the law that is involved; but basically speaking, on a

5     layman's term from my mouth, if claims were made such as the

6     plaintiff has made and deals are now being made where they are

7     closed, eliminating them from the lawsuit doesn't make a bad

8     guy go away.  And by not seeing what the deals were made, how

9     are the defendants supposed to defend themselves if supposedly

10    a bad guy isn't now a bad guy anymore in the claim?

11         So, while deals are made all the time in court, of

12    course, in this particular case, 15 years have gone by.  As

13    the plaintiff starts saying, well, we'll make a deal here and

14    you're now out of the case, how does that bring out the truth?

15    Is the truth now part of the picture which benefits the

16    plaintiff to see it this way or see it that way?  Do you watch

17    half of a screen?

18         Now, either the case is what it is or the case isn't

19    what it is.  And with this kind of a deal and then closing the

20    deal where the defendants can't see what the deal was, how do

21    defend yourself?  Just because the plaintiff says, well,

22    you're not included no more?  So, personally, that's how I see

23    it.

24         MR. HAYES:  Judge, if I may?  This is Ed Hayes.  The

25    offer to simply submit the settlement agreement to Your Honor

1   for review doesn't really address the issue that Mr. Kott and

2   I are talking about.  We're talking about not just what's in

3   the settlement agreement, but what the negotiations were, what

4   discussions there were between the parties, what may not have

5   been included in the settlement agreement.

6        And it may be that that discovery, Judge, discloses

7   exactly what Mr. Magnanini says we will end up finding in this

8   case, which is nothing.  But I think we are entitled to make

9   that exploration in order to determine if there is anything

10  going on here that is available as a defense to the defendants

11  in this case.

12        MR. MAGNANINI:  Well, the problem with that, Your

13  Honor, is the --

14        THE COURT:  Well, counsel, actually I have heard --

15        MR. MAGNANINI:  -- the negotiations --

16        THE COURT:  -- enough on this.  And I think --

17        MR. MAGNANINI:  Okay.

18        THE COURT:  Mr. Hayes, I think that you're right that

19  turning these things over to the Court is not going to be of

20  any assistance to you for the reasons that you're seeking the

21  documents.  However, I disagree with you, I don't think you're

22  entitled to them.  I am not going to compel them.

23        And I think that Pansy versus The Borough of

24  Stroudsburg made very clear that, where private litigants enter

25  into a legitimate settlement agreement and there is a

1    confidentiality provision where there is no real public

2    interest at issue, that the Court should uphold that and

3    respect it.  I am not seeing anything and certainly nobody has

4    put forth any case law that would militate in favor of

5    compelling this disclosure under Rule 26.

6            As I look at it, I think that Mr. Magnanini has set

7    forth and entered into a bonafide settlement agreement and

8    that settlement agreement has -- it contains a confidentiality

9    provision.  And nothing that I have heard thus far persuades

10   me that that should be broken.

11           So, accordingly, I am not going to compel that those

12   settlement agreements be turned over as part of any discovery.

13           I want to move on and talk about dispute number 3.

14   And Mr. Magnanini kind of forayed into this as it deals with

15   the re -- plaintiff's proposal that the Court dismiss *sua*

16   *sponte* all the cross-claims of indemnification and

17   contribution.  Let me hear from you folks on this issue.  Mr.

18   Magnanini, --

19           MR. CALANNI:  Yeah, Richard -- oh.

20           THE COURT:  -- let me hear from you first.

21           MR. MAGNANINI:  Yes, Your Honor.  We had -- yeah, as

22   I've said, I kinda meandered into that.  We had -- when we had

23   amended our complaint to the four (indiscernible) actually

24   streamlined the complaint and taken out all the various

25   parties who we -- against whom Walsh Securities has either

1    retained a judgment or a settlement.  And that actually left

2    just a number of -- I think it left us with five parties or

3    six parties, and then it was very kind of streamlined case.

4         At that point in time, the defendants objected saying

5    they had cross-claims against the various parties, and so we

6    went back and forth.  And rather than engage in some more

7    motion practice, we left everybody in the caption and in the

8    case.  Since then, the defendants have sought to use our

9    leaving the parties against whom we've dismissed claims or we

10   settled claims in the case as a sword and kind of bludgeon us

11   with it, and it has come up in depositions and in

12   correspondence to the Court.

13        And as we were looking at this, like I said, our kind

14   of stake in the matter as the plaintiff is that the law in the

15   case seems very clear.  Both Judge Bassler and Judge Debevoise

16   had previously ruled on efforts by the title companies to

17   assert contribution and indemnification claims against parties

18   against from whom the plaintiff was only seeking recovery in

19   tort.

20        And of the parties like that, that would be Mr.

21   Calanni; I guess Coastal Title we only have the RICO claim

22   against; and then, they had actually sought it in the context

23   of a third-party complaint against Mr. Walsh, Mr. DeMola and

24   James Walsh, saying that they have -- they owed a duty to the

25   title companies and they had run Walsh Securities in a

1   negligent manner, allowing it to be defrauded and, therefore,

2   they were entitled to contribution and indemnification.

3           And we think, though, the Third Circuit law, the

4   District of New Jersey law and the law of this case is very

5   clear that, because the only claims the plaintiff has asserted

6   against the title companies are for contract, they don't have

7   any sort of cross-claim for indemnification or contribution

8   against parties against whom Walsh Securities has asserted

9   tort claims.  So, -- and Judge Debevoise recently agreed with

10  us and dismissed the third-party claims and then -- and Judge

11  Bassler had previously dismissed claims against Ms. Difeo and

12  Ms. Pepsny and a couple of other entities.

13          And we thought, by -- it's kind of a strange --

14  because of our kind of interest in that, you know, we don't

15  think they're entitled to any sort of setoff.  We were in a

16  somewhat difficult position.  Now we actually have parties --

17  I know Mr. Calanni, I know Coastal Title, I know NHF have all

18  requested the ability to file a motion on this to get a ruling

19  a ruling saying there are no cross-claims that can be, you

20  know, continued by the defendants against whom the plaintiff

21  only asserts claims in contract.

22          So, that would streamline the case considerably,

23  clear out a lot of deadwood and prevent kind of future

24  disputes about the allegations that you heard Mr. Kott use

25  before, the really serious allegations for RICO and fraud and

1   things like that.  And they were asserted and either Walsh

2   Securities has obtained judgments or settled with the people

3   on almost all of those allegations.  And that's what we are

4   trying to do, is present the Court with a much narrower

5   streamlined case for resolution.  And like I said, --

6              THE COURT:  All right.  Let me hear from --

7              MR. MAGNANINI:  -- at this point, though --

8              THE COURT:  Let me hear from defendants on this.

9              MR. KOTT:  Yeah, I -- let me run through it.  It's

10  David Kott.  I'll run through the inventory, and there is an

11  inventory.

12             First of all, this is a dispositive motion and I

13  don't believe, under the federal statutes, anybody other than

14  a district court judge can grant a dispositive motion.

15             Second, it is motion done on a letter; meaning, it

16  doesn't meet the local rule requirement (indiscernible)

17  briefed where -- and the reason I'm relying on that formality

18  is I and Mr. Hayes would normally brief it on the merits.

19             Third, I don't believe Mr. Magnanini, as attorney for

20  the plaintiff, has standing to ask the Court to dismiss a

21  cross-claim we filed that's not against his client.

22             Fourth -- let me just look at my notes here, Your

23  Honor.  Fourth, let me give you the --

24             MR. MAGNANINI:  (Indiscernible) procedural stuff,

25  David.

1        MR. KOTT:  Yeah, let me -- fourth, he is wrong on the

2   merits and I'd like to be able to submit a brief on that.

3        And fifth, let me just address a practical thing, if

4   the legal arguments I had given you don't carry the day, Your

5   Honor.  If our cross-claims are dismissed, then we would file

6   a third-party complaint.  Because, if there's something

7   procedurally deficient -- meaning, we're not allowed to file

8   cross-claims -- assuming we have an argument on the merits,

9   we'll file a third-party complaint against these same

10  defendants.

11       And in sum, what's occurred here, Your Honor has a

12  letter from Mr. McGowan and Your Honor also has a letter from

13  Mr. Manning -- both of whom are on the phone call --

14  requesting relief to file motions to dismiss our cross-claims;

15  meaning motions on the merits.  Obviously, that would be a

16  motion addressed to the district court judge and that is the

17  procedure we should be using.  Meaning, if our cross-claims

18  are going to be dismissed, Your Honor should allow whoever

19  wants to dismiss our cross-claims to file a motion and then

20  we'll brief it and we'll tee it up for the district judge.

21       THE COURT:  Okay.  Thank you, counsel.

22       Well, you know what?  There's no really need to have

23  a lengthy discussion here, I think this is almost clearer as a

24  matter of course that this Court is not going to issue any

25  kind of *sua sponte* dismissal here.  And if any motions to

1   dismiss are to be made here, they should be made by way of a

2   formal motion, and Mr. Kott is correct that that should be

3   made to Judge Debevoise here.  That's not the kind of even

4   report and recommendation that this Court would support,

5   because clearly there are issues here that require briefing in

6   the form of dispositive motions.

7           So, I'm going to put that to rest by denying any

8   request for any kind of *sua sponte* dismissal of any cross-

9   claims or -- for indemnification or contribution.

10          MR. McGOWAN:  Your Honor, if I --

11          THE COURT:  And --

12          MR. McGOWAN:  Your Honor, if I may?  Martin McGowan

13  from Methfessel's office.  I represent Coastal and I'm one of

14  the two that has a letter with the proposed form of order

15  permitting me to file such a motion --

16          THE COURT:  That's the next issue, --

17          MR. McGOWAN:  -- sent to Your Honor.

18          THE COURT:  -- counsel, that I wanted to get to.  And

19  the question for you and anyone else on the line is:  are we

20  done with any discovery that might impact a motion for summary

21  judgment with regard to this -- your claims?

22          MR. McGOWAN:  I think we are, because it's very

23  clear.  My application is going to be really addressed to the

24  pleadings as they presently stand.  I am a tortious -- you

25  know, albeit close to an intentional tortious -- direct

1    defendant.   There is no negligence claim against me as a

2    defendant.   The title insurance companies are contract

3    defendants, they are not tort defendants.   That's not going to

4    change, Your Honor.

5          And because of the applications that have already

6    been made in this case -- a year, a year, two years ago even --

7    I think that, A, is the law of the case; and B, you  can't mix

8    the apples and the oranges.   And, again, and the

9    (indiscernible) proof here is not going to change no matter

10   how many depositions you take.   That would be my position.

11         MR. CALANNI:   This is Richard Calanni.   I am not

12   perfectly sure what kind of a motion I might deposit, because

13   I have just gone through all the depositions and what

14   discovery I've gotten from that and I'm just finalizing after

15   this conference.

16         THE COURT:   Okay.  Well, I --

17         MR. CALANNI:   I think (indiscernible) but like --

18         THE COURT:   -- I think what we should do here is I

19   want the parties to meet and confer and come up with a

20   briefing schedule.   I think it is appropriate, if all of the

21   discovery is done and it is, as counsel has presented to the

22   Court, certainly there is no interest to be or greater good to

23   be achieved by keeping parties in if they, in fact, have a

24   legitimate grounds to be heard, on which they could be out of

25   the case.

1           So, was it Mr. McGowan that just spoke?

2           MR. McGOWAN:  Yes, sir.

3           THE COURT:  Mr. McGowan, you should --

4           MR. CALANNI:  And Mr. Cal --

5           THE COURT:  -- confer with your adversary and present

6    to the Court a briefing schedule for a dispositive motion on

7    behalf of your clients.

8           MR. KOTT:  And Your Honor, the -- it's David Kott.  I

9    just wanted to say one thing, just so we have a full record.

10          If Mr. Manning and Mr. McGowan are going to move on a

11   purely legal basis, as Mr. McGowan -- and that's what Mr.

12   McGowan just articulated -- then I don't think we need any

13   other discovery.  However, if they're going to include in part

14   of their motion -- I'm going to use vernacular -- "my guy

15   didn't do anything wrong," then we do need to complete the

16   discovery to do that.  I don't think that's Mr. McGowan's

17   intent.  But I had some conversations with Mr. Manning, who

18   can speak for himself; I don't know whether that's his intent.

19          Mr. Manning --

20          THE COURT:  Counsel, that is precisely -- Mr. Kott,

21   that is exactly the question that I just asked before saying

22   that, if there -- if it is strictly a legal issue; then, yes.

23   But I asked if there was any other discovery.  And if there is

24   fact discovery, --

25          MR. KOTT:  Well, I'm not --

1      THE COURT:  -- and, Mr. Manning, if you want to speak

2   -- if Mr. Manning on the line here?

3      MR. MANNING:  Yes I am, Your Honor.

4      THE COURT:  Do you -- is it your position that there

5   is additional fact discovery that needs to be done here?

6      MR. MANNING:  No, that's not my position, I think

7   that's Mr. Kott's position.

8      THE COURT:  Okay.

9      MR. McGOWAN:  Yeah, and it's -- this is McGowan --

10  it's not my position either.

11     THE COURT:  All right.  Well, in that case -- Mr.

12  Kott, I appreciate you raising the issue -- if there is no

13  additional fact discovery here, then I think that the matter

14  is ripe to be presented to the Court for a dispositive motion.

15  If, in fact, there is additional discovery, I'd like to know

16  about it.  So, I want to -- I want some kind of correspondence

17  if any of the parties here believe that there's additional

18  fact discovery that weighs in.

19      If not, I think that the parties should meet and

20  confer and present to this Court a proposed briefing schedule

21  for the dispositive motions.

22     MR. KOTT:  Right.  And, Your Honor, that will turn,

23  whether additional discovery is needed, will turn on what the

24  arguments Mr. McGowan and Mr. Manning are going to make.  So,

25  they can just let Mr. Hayes and I know are they only arguing

1    purely legal; then we might be able to tee this up for the

2    district judge.

3            THE COURT:  Well, we're on the record and that's the

4    representation that they've made to this Court.

5            MR. KOTT:  All right.

6            MR. McGOWAN:  I'm looking at my brief right now, it

7    doesn't say anything about "my guy did nothing wrong," it's

8    simply --

9            MR. KOTT:  Okay.

10           MR. McGOWAN:  -- cross-claims.

11           MR. KOTT:  Okay.

12           MR. MANNING:  It's the same for my position, Your

13   Honor.  This is Mr. Manning --

14           THE COURT:  Okay.

15           MR. MANNING:  -- for Skowrenski and NHF.

16           THE COURT:  All right.

17           MR. CALANNI:  And this is Richard Calanni.  As far as

18   possibly going forward asking for leave, we're talking no

19   deadline at this point, Your Honor?  This is to go forward?

20           THE COURT:  I'm not sure I understand what you're

21   saying.  As to Mr. Calanni.

22           MR. CALANNI:  Well, from the discovery, if one feels

23   discovery has shown that a request for leave of dismissal of

24   charges against the individual, is there a deadline based on

25   that or -- or --

1           THE COURT:  Well, I think what -- what I want to know

2    -- well, and it is -- I think Mr. Kott is correct that it's

3    going to turn on what legal arguments are being made.  If, in

4    opposition or in response, there are issues of fact that still

5    have not been fully fleshed out through discovery, then I want

6    to know about it.

7           Now, I'm not sure if you're speaking about the

8    previous requests or if you have a separate interest that

9    you're asking about.

10          MR. CALANNI:  I have a separate interest on discovery

11   of the cross -- of the -- of deposing the witnesses and the

12   defendants that have just taken place within the last couple

13   of months.  And personally, from my cross-examining witnesses,

14   there are none that have implicated me and I would like to go

15   forward and --

16          THE COURT:  Well, again, I think you should talk with

17   plaintiff's counsel, talk to your adversary, and if he agrees

18   that you -- that there is purely simply a legal issue that

19   remains that could resolve the issue as it relates to you,

20   then you too might be ripe for a summary judgment motion.  But

21   I need a joint briefing schedule here indicating that both

22   parties agree that this matter is ripe for adjudication by way

23   of a summary judgment motion.

24          MR. McGOWAN:  And Your Honor, we'll send that letter

25   to you?

Colloquy                                        48

1          THE COURT:  Yeah.

2          MR. McGOWAN:  Okay.

3          THE COURT:  Everything comes to me, except for the

4   actual motion itself, which will go to Judge Debevoise.

5          MR. CALANNI:  Fine, thank you.

6          THE COURT:  All right.  Let's go over everything very

7   quickly and see what else is left on your agendas.  I've kind

8   of run through what I gleaned from the letters here.

9          Let me start with Mr. Magnanini.  Is there anything

10  left on your agenda that we need to discuss today?

11         MR. MAGNANINI:  I think the only thing we have left,

12  Your Honor, was the question of these witness statements.

13  That I think we just need to set up a briefing schedule.

14         We had thought that the -- during the internal

15  investigation that Latham and Watkins conducted at Walsh

16  Securities, we had interviewed a number of Walsh employees and

17  we had provided those witness statements for the purposes of a

18  mediation to the defendants.  When the mediation did not

19  conclude the case, we had asked all statements to be returned.

20  The defendants have not wanted to return the statements and I

21  think they may have already been used during some of the Walsh

22  30(b)(6) depositions.

23         But we had thought that they -- that the majority of

24  the statements are attorney work product.  Some of this stuff

25  I had -- or we had redacted out of the statements, but not

Colloquy                                    49

1    everything.  We had wanted the witness statements returned.

2              I think on that one, we just need a briefing schedule

3    for Your Honor on the discovery dispute.  We can, you know,

4    submit something in ten days or two weeks and then --

5              THE COURT:  All right.  Well, let's go through it

6    right now.

7              MR. MAGNANINI:  -- then they can put in their

8    opposition on --

9              THE COURT:  Mr. Magnanini, you're going to be the

10   moving party here, correct?

11             MR. MAGNANINI:  Yes, Your Honor.

12             THE COURT:  Today is July 21st.  How soon can you get

13   the moving papers in?

14             MR. MAGNANINI:  August?  If we got these deps, we had

15   the -- oh, you're out next --

16             THE COURT:  Look, we're in the thick of the summer.

17   I recognize that a lot of folks have vacations scheduled.  So,

18   I would much rather hear from you than me just issue some

19   arbitrary dates.

20             MR. MAGNANINI:  Yeah, how about August 16th, Your

21   Honor?

22             THE COURT:  Okay.  How about opposition?  How soon

23   can the opposition be made on this?

24             MR. KOTT:  It's David.  I'm thinking two weeks, Your

25   Honor?

1          THE COURT:  I couldn't hear you too well, Mr. Kott.

2          MR. KOTT:  I'm sorry.  I'm thinking two weeks?

3          THE COURT:  Two weeks from August 16th would put us

4    at August 30th.  And then we'll do one week for a reply, which

5    would put us at that Labor Day Monday, so how about we give

6    you two extra days and say Wednesday, September 8th for a

7    reply?

8          MR. KOTT:  Right.  And Your Honor -- Your Honor, it's

9    David Kott -- I am not sure on a discovery dispute that a

10   reply is allowed, but I'm not --

11         THE COURT:  Yeah, you know, we really -- and this --

12   Mr. Kott, you're right.  We're trying to streamline it.  We

13   really don't even need a reply here.  This isn't -- this is a

14   simple discovery dispute.  Those -- that's all we really need

15   here, the moving and the opposition.

16         What else do you have, Mr. Magnanini?  Anything else?

17         MR. MAGNANINI:  The only thing we actually have, Your

18   Honor, is -- it's not so much a discovery dispute.  Let me

19   talk to counsel.  It may come up.

20         We have one witness who is in Costa Rica, who is

21   going to cost about $8,000 to depose and I wanted to discuss

22   cost sharing, but I think -- I'm not sure if the defendants

23   are going to want to share the cost.  He's actually their

24   other closing agent, Mr. Anthony Cicalese, who will not come

25   back to America, because there's several pending indictments I

1    think.  But that's the only thing I think we have, but let me

2    try and -- we'll resolve it with the defendants.

3              THE COURT:  Okay.  Then I am not going to address

4    that.

5              Let me hear from defense counsel.  I'm going to go

6    down the list that I have.  Mr. Kott?

7              MR. KOTT:  Yes, just two things.

8              On the witness statements, I just wanted to remind

9    Your Honor, since I know you're conscious of the schedule,

10   that depending on how the Court rules on the witness

11   statements, we may or may not need to take some additional

12   depositions.  And what I mean specifically, Your Honor, is, if

13   the Court rules that we're not entitled to use the witness

14   statements, then some of the people who gave witness

15   statements we're going to make -- we're going to need to

16   depose.  There's nothing for Your Honor to do on that today, I

17   just wanted you to have a complete record.

18             The second thing is, I -- just so we don't have a

19   discovery dispute down the road.  Your Honor has ruled that we

20   cannot get access to the settlement agreement between the

21   plaintiffs and these various defendants.  And I don't want to

22   re-litigate that, we lost that.  My question, which I am

23   unclear on, is does that mean that we can't ask witnesses at

24   depositions what were the terms of the settlement?  And I know

25   we don't pose questions to courts, but I'm trying to move it

1    along for Your Honor.

2          THE COURT:  Yeah, I think -- let's just reserve on

3    that, because it depends on how it comes up here and what the

4    objection will be.

5          I don't think it's appropriate right now to address,

6    you know, the preliminary "what if" or "if I ask this, what

7    the response should be."  If, during the course of your

8    deposition, that question is posed and there is an objection,

9    you should contact the chambers and let's address the

10   objection at that time.

11         MR. KOTT:  Right.  And we already proposed that

12   question and there was an objection and instruction not to

13   answer.  So, does Your Honor want me to write a letter sending

14   you that portion of the transcript?

15         THE COURT:  What was the objection?  On what grounds?

16         MR. KOTT:  Well, the --

17         THE COURT:  What was the --

18         MR. KOTT:  Well, as I --

19         THE COURT:  The instruction to answer was for what --

20   on what grounds?  Because I had not ruled at that time, right?

21         MR. KOTT:  Right, you had not ruled on that.  And Mr.

22   -- there was -- the question was posed to the Rule 30(b)(6)

23   deponent and Mr. Magnanini told him not to answer.  It was

24   also posed to Mr. Manning's client, Mr. Skowrenski, and Mr.

25   Manning indicated he didn't have an objection; however,

1   because the plaintiff was making an objection, he had an

2   objection.  It was also posed to one of the other witnesses, a

3   Mr. Cicalese; same thing, Mr. Cicalese's attorney seemed to

4   say he didn't have an objection, but because Mr. Magnanini was

5   making objections, he instructed his client not to answer.

6           THE COURT:  All right.  Counsel, I --

7           MR. MAGNANINI:  And I believe this was because --

8           THE COURT:  I think we need to set forth the proper

9   record for that and let's -- let me have a letter on it, okay?

10          MR. KOTT:  Okay.  We'll do that, Your Honor.

11          THE COURT:  Next on the list is Mr. Hayes.  Do you

12  have anything else on your list?

13          MR. HAYES:  Nothing additional, Judge.  Thank you.

14          THE COURT:  All right.  Mr. McGowan?

15          MR. McGOWAN:  No, sir.

16          THE COURT:  Mr. Calanni?

17          MR. CALANNI:  Only the -- using discovery on previous

18  testimony and still on date for possibility of asking for

19  dismissal of charges against myself.

20          THE COURT:  Well, as I said, Mr. Calanni, you're

21  going to meet and confer with --

22          MR. CALANNI:  I understand.  I understand.  I'm just

23  making them for the record, Your Honor.

24          THE COURT:  Okay.  Mr. Manning?

25          MR. CALANNI:  As you say.

Colloquy                                              54

1        MR. MANNING:  Nothing further.

2        THE COURT:  Okay.  Did I miss anyone inadvertently?

3   Okay.  So, there are no further issues, counsel.  Thank you

4   very much.

5        We are going to do a master rework of the schedule

6   and get something generated electronically within the next day

7   or so.  Thank you very much.  Have a great day.

8        MR. MAGNANINI:  All right.  Thank you, Judge.

9        MR. KOTT:  Have a good day.  Take care.

10       (Conference adjourned at 12:44 p.m.)

11            C E R T I F I C A T I O N

12       I, TERRY L. DeMARCO, court-approved transcriber,

13   certify that the foregoing is a correct transcript from the

14   electronic sound recording of the proceedings in the above-

15   entitled matter.

16

17   ____08/26/10_____          *S / Terry L. DeMarco*_____
____       Date                   Terry L. DeMarco, AD/T 566
18                                 KLJ Transcription Service

19

20

21

22

23

24

25