LAW OFFICES
# MANNING, CALIENDO & THOMSON
A PROFESSIONAL ASSOCIATION
36 WEST MAIN STREET
FREEHOLD, NEW JERSEY 07728

TELEPHONE: (732) 462-4405
FACSIMILE: (732) 409-0347

WWW.FREEHOLDLAWYERS.COM

VINCENT P. MANNING*
NICHOLAS C. CALIENDO
KENNETH L. THOMSON

DANIEL J. EASTMOND
JOHN D. TORESCO+

EDWARD ROY ROSEN
OF COUNSEL

* CERTIFIED BY THE SUPREME COURT
OF NEW JERSEY AS A CIVIL TRIAL ATTORNEY

+ MEMBER NEW JERSEY AND NEW YORK BAR

REAL ESTATE DEPT.:
TEL: (732) 462-4264
FAX: (732) 462-7766

August 30, 2010

Via Electronic Filing & Lawyers Service

Motions Clerk, United States District Court – Newark
Martin Luther King Jr. Blvd.
Federal Building and U.S. Court
Newark, New Jersey  07101

RE:   Walsh Securities v. Cristo Property Management, et al.
      USDC, District of New Jersey
      Civil Action No.: 97-3496 (DRD)(MAS)

Dear Sir/Madam:

Enclosed please find the following documents:

| | | | |
|---|---|---|---|
| ( ) | Complaint & Jury Demand & C.I.S. (O&2) | ( ) | Affidavits of Merit |
| (X) | Order | ( ) | Stipulation of Dismissal |
| ( ) | Summons | ( ) | Affidavit of Service/Filing |
| (X) | Notice of Motion | ( ) | Substitution of Attorney |
| (X) | Certification/Affidavit | ( ) | Stipulation of Extending Time |
| (X) | Brief | ( ) | Our Check for $ |
| ( ) | Interrogatories | ( ) | Return envelope |
| | | ( ) | Proposed form of Order |

Kindly advise as to the Court's decision in this regard.

Very truly yours,

VINCENT P. MANNING

VPM/vt
Encl.

Cc:   (See attached list)

LAW OFFICES
**MANNING, CALIENDO & THOMSON, P.A.**
**August 30, 2010**
**Page 2 of 2**

Cc:     Via Electronic Filing

Martin R. McGowan, Jr., Esq.
Methfessel & Werbel, Esqs.
3 Ethel Road
Suite 300 Edison, NJ 08818

Robert A. Magnanini, Esq.
Stone & Magnanini, LLP
150 John F. Kennedy Parkway, 4th Floor
Short Hills, New Jersey 07078

David R. Kott, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Anthony Argiropoulos, Esq.
Fox, Rothschil, O'Brien & Frankel, LLP
P.O. Box 5231
Princeton, New Jersey 08543-5231

Joseph G. LePore, Esq.
LePore, Luizzi & Rossi, P.C.
489 Aurora Place
Brick, NJ 08723

Thomas D. Flinn, Esq.
Garrity, Graham, Favetta & Flinn
72 Eagle Rock Avenue, 3rd Fl.
East Hanover, NJ 07936
Michael D. Schottland, Esq.
Lomurro, Davison, Eastman & Munoz, P.A.
100 Willowbrook Road, Bldg. 1
Freehold, NJ 07728

John B. McCusker, Esq.
McCusker, Anselmi, Rosen & Carvelli
210 Park Avenue, Suite 301
Florham Park, NJ 07932

James C. Aaron, Esq.
Ansell, Zaro, Grimm & Aaron, P.C.
1500 Lawrence Avenue
CN 7807
Ocean, NJ 07712

**Manning, Caliendo & Thomson, P.A.**
36 West Main Street
Freehold, New Jersey 07728
Telephone: 732-462-4405
Facsimile: 732-409-0347
Attorneys for defendants Robert Skowrenski, II and
National Home Funding, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WALSH SECURITIES, INC.,   :     Civil Action No. 97-cv-3496 (DRD)(MAS)

         Plaintiff,     :     Hon. Dickinson R. Debevoise

vs.     :

CRISTO PROPERTY     :
MANAGEMENT, a/k/a G.J.L.
LIMITED; DEK HOMES OF NEW     :
JERSEY, INC.; OAKWOOD
PROPERTIES, INC.; NATIONAL     :
HOME FUNDING, INC.; CAPITAL
ASSETS PROPERTY     :
MANAGEMENT, L.L.C.;
WILLIAM KANE; GARY     :
GRIESER; ROBERT
SKOWRENSKI, II; RICHARD : 
CALANNI; RICHARD
DiBENEDETTO; JAMES R.     :     **NOTICE OF MOTION TO DISMISS**
BROWN; THOMAS BRODO;          **PURSUANT TO RULE 12(b)(6)**
ROLAND PIERSON; STANLEY     :
YACKER, ESQ.; MICHAEL
ALFIERI, ESQ.; RICHARD     :
PEPSNY, ESQ.; ANTHONY M.
CICALESE, ESQ.; LAWRENCE     :
CUZZI; ANTHONY D'APOLITO;
DAP CONSULTING, INC.;     :
COMMONWEALTH LAND TITLE
INSURANCE CO.; NATIONS : 
TITLE INSURANCE OF NEW
YORK, INC.; FIDELITY     :
NATIONAL TITLE INSURANCE
CO. OF NEW YORK; COASTAL     :
TITLE AGENCY; DONNA
PEPSNY; WEICHERT : 
REALTORS; and VECCHIO
REALTY, INC., D/B/A MURPHY     :
REALTY BETTER HOMES and

GARDENS,                                    :

              Defendants.              :

                                            :
_____ :

TO:                          United States District Court
                             U.S. Courthouse
                             50 Walnut Street
                             Newark, New Jersey 07101

                             All Counsel of Record

MOVING PARTY:                Vincent P. Manning, Esq. (VMP 7005)
                             Manning, Caliendo & Thomson, P.A.
                             36 West Main Street
                             Freehold, New Jersey 07728
                             Attorneys for National Home Funding, Inc.
                             And Robert Skowrenski, II

RETURN DATE:                 October 4, 2010

RELIEF SOUGHT:               For an Order as follows:

                             (1) Dismissing the Title Insurance Defendants' Cross Claims
                             for indemnification and contribution against Defendants,
                             Robert Skowrenski, II and National Home Funding, Inc.

SUPPORTING
DOCUMENTATION:               Certification of Counsel with Exhibits, Proposed Order &
                             Legal Brief

## ORAL ARGUMENT IS RESPECTFULLY REQUESTED IF OPPOSITION IS FILED

                          MANNING, CALIENDO & THOMSON, P.A.


Dated: August **30**, 2010          By: _____
                                        VINCENT P. MANNING
                                        Attorney for Defendants
                                        Robert Skowrenski, II and
                                        National Home Funding, Inc.

**Manning, Caliendo & Thomson, P.A.**
36 West Main Street
Freehold, New Jersey 07728
Telephone: 732-462-4405
Facsimile: 732-409-0347
National Home Funding, Inc., and Robert Skowrenski, II

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

WALSH SECURITIES, INC.,                  :        Civil Action No. 97-cv-3496 (DRD)(MAS)

            Plaintiff,                   :        Hon. Dickinson R. Debevoise

vs.                                      :

CRISTO PROPERTY                          :
MANAGEMENT, a/k/a G.J.L.
LIMITED; DEK HOMES OF NEW :
JERSEY, INC.; OAKWOOD
PROPERTIES, INC.; NATIONAL   :
HOME FUNDING, INC.; CAPITAL
ASSETS PROPERTY                          :
MANAGEMENT, L.L.C.;                               **PROOF OF SERVICE**
WILLIAM KANE; GARY           :
GRIESER; ROBERT
SKOWRENSKI, II; RICHARD      :
CALANNI; RICHARD
DiBENEDETTO; JAMES R.        :
BROWN; THOMAS BRODO;
ROLAND PIERSON; STANLEY      :
YACKER, ESQ.; MICHAEL
ALFIERI, ESQ.; RICHARD       :
PEPSNY, ESQ.; ANTHONY M.
CICALESE, ESQ.; LAWRENCE     :
CUZZI; ANTHONY D'APOLITO;
DAP CONSULTING, INC.;        :
COMMONWEALTH LAND TITLE
INSURANCE CO.; NATIONS       :
TITLE INSURANCE OF NEW
YORK, INC.; FIDELITY         :
NATIONAL TITLE INSURANCE
CO. OF NEW YORK; COASTAL     :

TITLE AGENCY; DONNA
PEPSNY; WEICHERT                  :
REALTORS; and VECCHIO
REALTY, INC., D/B/A MURPHY    :
REALTY BETTER HOMES and
GARDENS,                         :

        Defendants.            :

_____

      Vincent P. Manning, Esq., hereby certifies as follows:

      1.     On August 30, 2010, I caused the Notice of Motion to Dismiss as to Defendants, Robert Skowrenski II and National Home Funding, Inc., Certification of Counsel, Material Statement of Undisputed Facts, Legal Brief, and Proposed Form of Order to be served via regular mail to the following parties:

      Martin R. McGowan, Jr., Esq.
      Methfessel & Werbel, Esqs.
      3 Ethel Road
      Suite 300 Edison, NJ 08818

      Robert A. Magnanini, Esq.
      Stone & Magnanini, LLP
      150 John F. Kennedy Parkway, 4th Floor
      Short Hills, New Jersey 07078

      David R. Kott, Esq.
      McCarter & English, LLP
      Four Gateway Center
      100 Mulberry Street
      Newark, New Jersey 07102

      Anthony Argiropoulos, Esq.
      Fox, Rothschil, O'Brien & Frankel, LLP
      P.O. Box 5231
      Princeton, New Jersey 08543-5231

      Joseph G. LePore, Esq.
      LePore, Luizzi & Rossi, P.C.
      489 Aurora Place
      Brick, NJ 08723

      Thomas D. Flinn, Esq.
      Garrity, Graham, Favetta & Flinn
      72 Eagle Rock Avenue, 3rd Fl.
      East Hanover, NJ 07936
      Michael D. Schottland, Esq.

Lomurro, Davison, Eastman & Munoz, P.A.
100 Willowbrook Road, Bldg. 1
Freehold, NJ 07728

John B. McCusker, Esq.
McCusker, Anselmi, Rosen & Carvelli
210 Park Avenue, Suite 301
Florham Park, NJ 07932

James C. Aaron, Esq.
Ansell, Zaro, Grimm & Aaron, P.C.
1500 Lawrence Avenue
CN 7807
Ocean, NJ 07712

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: August 30, 2010                    MANNING, CALIENDO & THOMSON

                              BY: _____
                                    VINCENT P. MANNING

**Manning, Caliendo & Thomson, P.A.**
36 West Main Street
Freehold, New Jersey 07728
Telephone: 732-462-4405
Facsimile: 732-409-0347
National Home Funding, Inc., and Robert Skowrenski, II

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WALSH SECURITIES, INC., | : | Civil Action No. 97-cv-3496 (DRD)(MAS) |
| Plaintiff, | : | Hon. Dickinson R. Debevoise |
| vs. | : | |
| CRISTO PROPERTY MANAGEMENT, a/k/a G.J.L. LIMITED; DEK HOMES OF NEW JERSEY, INC.; OAKWOOD PROPERTIES, INC.; NATIONAL HOME FUNDING, INC.; CAPITAL ASSETS PROPERTY MANAGEMENT, L.L.C.; WILLIAM KANE; GARY GRIESER; ROBERT SKOWRENSKI, II; RICHARD CALANNI; RICHARD DiBENEDETTO; JAMES R. BROWN; THOMAS BRODO; ROLAND PIERSON; STANLEY YACKER, ESQ.; MICHAEL ALFIERI, ESQ.; RICHARD PEPSNY, ESQ.; ANTHONY M. CICALESE, ESQ.; LAWRENCE CUZZI; ANTHONY D'APOLITO; DAP CONSULTING, INC.; COMMONWEALTH LAND TITLE INSURANCE CO.; NATIONS TITLE INSURANCE OF NEW YORK, INC.; FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK; COASTAL TITLE AGENCY; DONNA PEPSNY; WEICHERT REALTORS; and VECCHIO | : : : : : : : : : : : | **ORDER** |

REALTY, INC., D/B/A MURPHY   :
REALTY BETTER HOMES and
GARDENS,                     :

       Defendants.          :

_____

**THIS MATTER** having been brought before the Court on application of Vincent P. Manning from the Law firm of Manning, Caliendo, and Thomson, attorneys for the defendants, Robert Skowrenski, II and National Home Funding, Inc., seeking an order dismissing, with prejudice, the Cross Claims of Commonwealth Land Title Insurance Co., Fidelity National Title Insurance Co. of New York, and Nations Title Insurance of New York for Contribution and Indemnification for failure to state a claim pursuant to Rule 12(b)(6), and the Court having considered the matter, and for good cause shown,

      **IT IS ON THIS**_____ day of _____, 2010, hereby

      **ORDERED** that the application of the defendants, Robert Skowrenski, II and National Home Funding, Inc., is hereby granted and that any and all Cross Claims asserted by Commonwealth Land Title Insurance Co., Fidelity National Title Insurance Co. of New York, and Nations Title Insurance of New York for Indemnification and Contribution against Defendants, Robert Skowrenski, II and National Home Funding, Inc. are hereby dismissed with prejudice; and it is further

      **ORDERED** that this Order shall be served on all parties within seven (7) days of the date herein.

                        _____
                      Hon. Dickinson R. Debevoise, U.S.S.D.J.

(  ) OPPOSED
(  ) UNOPPOSED

**Manning, Caliendo & Thomson, P.A.**
36 West Main Street
Freehold, New Jersey  07728
Telephone: 732-462-4405
Facsimile: 732-409-0347
National Home Funding, Inc., and Robert Skowrenski, II

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| WALSH SECURITIES, INC., | : | Civil Action No. 97-cv-3496 (DRD)(MAS) |
| Plaintiff, | : | Hon. Dickinson R. Debevoise |
| vs. | : | **MOTION RETURN DATE:  10/04/2010** |
| CRISTO PROPERTY | : | |
| MANAGEMENT, a/k/a G.J.L. | | |
| LIMITED; DEK HOMES OF NEW | : | |
| JERSEY, INC.; OAKWOOD | | |
| PROPERTIES, INC.; NATIONAL | : | |
| HOME FUNDING, INC.; CAPITAL | | |
| ASSETS PROPERTY | : | |
| MANAGEMENT, L.L.C.; | | |
| WILLIAM KANE; GARY | : | |
| GRIESER; ROBERT | | |
| SKOWRENSKI, II; RICHARD | : | |
| CALANNI; RICHARD | | |
| DiBENEDETTO; JAMES R. | : | |
| BROWN; THOMAS BRODO; | | |
| ROLAND PIERSON; STANLEY | : | |
| YACKER, ESQ.; MICHAEL | | |
| ALFIERI, ESQ.; RICHARD | : | |
| PEPSNY, ESQ.; ANTHONY M. | | |
| CICALESE, ESQ.; LAWRENCE | : | |
| CUZZI; ANTHONY D'APOLITO; | | |
| DAP CONSULTING, INC.; | : | |
| COMMONWEALTH LAND TITLE | | |
| INSURANCE CO.; NATIONS | : | |
| TITLE INSURANCE OF NEW | | |
| YORK, INC.; FIDELITY | : | |
| NATIONAL TITLE INSURANCE | | |
| CO. OF NEW YORK; COASTAL | : | |

TITLE AGENCY; DONNA
PEPSNY; WEICHERT                    :
REALTORS; and VECCHIO
REALTY, INC., D/B/A MURPHY    :
REALTY BETTER HOMES and
GARDENS,                           :

      Defendants.            :

                    :

---

**BRIEF IN SUPPORT OF DEFENDANT, ROBERT SKOWRENSKI, II AND DEFENDANT, NATIONAL HOME FUNDING, INC.'S MOTION TO DISMISS THE CROSS CLAIMS OF THE TITLE INSURANCE DEFENDANTS' FOR CONTRIBUTION AND INDEMNIFICATION WITH PREJUDICE PURSUANT TO RULE 12(b)(6).**

---

**MOTION RETURN DATE:   10/04/2010**

VINCENT P. MANNING, ESQ. OF COUNSEL

JOHN D. TORESCO, ESQ. ON THE BRIEF

# TABLE OF CONTENTS

TABLE OF CITATIONS.................................................................................4

PRELIMINARY STATEMENT ....................................................................5

LEGAL ARGUMENT....................................................................................6

POINT I.........................................................................................................6

> **DEFENDANT'S MOTION TO DISMISS THE TITLE INSURANCE COMPANY DEFENDANTS' CROSS CLAIMS FOR CONTRIBUTION AND INDEMNIFICATION PURSUANT TO RULE 12(B)(6) SHOULD BE GRANTED SINCE THIS COURT HAS PREVIOUSLY DECIDED THAT THE PLAINTIFF'S CLAIMS AGAINST THE TITLE INSURANCE COMPANY DEFENDANTS SOUND ONLY IN CONTRACT AND THUS CANNOT SUPPORT A FINDING THAT THE TITLE INSURANCE COMPANY DEFENDANTS ARE LIABLE IN TORT.**

POINT II.......................................................................................................9

> **THIS COURT'S OPINION DATED DECEMBER 16, 2009 CONSTITUTES LAW OF THE CASE, WHICH SHOULD CONTINUE TO GOVERN IDENTICAL ISSUES THAT ARISE IN SUBSEQUENT STAGES OF THE SAME CASE AND AS SUCH SHOULD RESULT IN THE DISMISSAL OF ANY AND ALL CROSS CLAIMS FOR CONTRIBUTION AND INDEMNIFICATION AGAINST THE DEFENDANTS ROBERT SKOWRENSKI, II AND NATIONAL HOME FUNDING, INC.**

CONCLUSION.............................................................................................10

# TABLE OF CITATIONS

**Cases:**                                          **Page:**

Conley v. Gibson, 355 U.S. 41 (1957).                    4

Umland v. Planco Fin. Servs., 542 F.3d 59,               4
(3d Cir. Pa. 2008).

Arizona v. California, 460 U.S. 605 (1983)               7

Casey v. Planned Parenthood of Se. PA., 14               8
F.3d 848, 856 (3d Cir. 1994).

Bellevue Drug Co. v. CaremarksPCS, 582 F.3d              8
432, 439 (3d Cir. Pa. 2009).


**Federal Rules of Procedure:**               **Page:**

Fed. R. Civ. P. 12(b)(6)                              4, 9

## PRELIMINARY STATEMENT

On December 16, 2009, the Honorable Dickinson R. Debevoise, U.S.S.D.J. rendered a decision determining that the claims asserted against Commonwealth Land Title Insurance Company ("Commonwealth"), Nations Title Insurance Company of New York ("Nations"), and Fidelity National Title Insurance Company of New York ("Fidelity") (collectively "Title Insurance Company Defendants") by plaintiff, Walsh Securities, Inc. were contractual in nature and thus held that the Title Insurance Company Defendants were precluded from filing a third party cause of action for contribution or indemnification against the third party officers, directors, and employees of Walsh Securities, Inc. See December 16, 2009 opinion of the Honorable Dickinson R. Debevoise, U.S.S.D.J. (Doc. #372) attached as Exhibit A to the Certification of Vincent P. Manning. In contravention of this Court's December 16, 2009 opinion, the Title Insurance Company Defendants are currently maintaining cross claims for Contribution under the New Jersey Joint Tortfeasors Act and Indemnification against co-defendants, National Home Funding, Inc. and Robert Skowrenski, II.

Since the Title Insurance Company Defendants' cross claims for Contribution under the New Jersey Joint Tortfeasors Act and Common Law Indemnification fail to state a claim and are clearly contrary to the law of the case, it is respectfully requested that any and all cross claims asserted by the Title Insurance Company Defendants against National Home Funding Inc. and Robert Skowrenski, II be dismissed with prejudice.

**LEGAL ARGUMENT**

I. **DEFENDANT'S MOTION TO DISMISS THE TITLE INSURANCE COMPANY DEFENDANTS' CROSS CLAIMS FOR CONTRIBUTION AND INDEMNIFICATION PURSUANT TO RULE 12(B)(6) SHOULD BE GRANTED SINCE THIS COURT HAS PREVIOUSLY DECIDED THAT THE PLAINTIFF'S CLAIMS AGAINST THE TITLE INSURANCE COMPANY DEFENDANTS SOUND ONLY IN CONTRACT AND THUS CANNOT SUPPORT A FINDING THAT THE INSURANCE COMPANY DEFENDANTS ARE LIABLE IN TORT.**

As stated by this Court in Walsh Sec., Inc. v. Cristo

Prop. Mgmt., 2009 U.S. Dist. LEXIS 116942, 10-11 (D.N.J.

Dec. 16, 2009):

> Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. The court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).
> The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its

6

face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions are not entitled to the assumption of truth." Id.

Walsh Sec., Inc. v. Cristo Prop. Mgmt., 2009 U.S. Dist. LEXIS 116942, 10-11 (D.N.J. Dec. 16, 2009).

Here, there are no facts alleged which could possibly, even if proven, entitle the Insurance Company Defendants to relief on their cross claims for Contribution and Indemnification against Robert Skowrenski, II and National Home Funding Inc., since there are no claims asserted against those defendants, which could result in them being found liable in tort. If the Title Insurance Company

7

Defendants are not alleged to have engaged in tortious conduct, they should not be able to seek contribution or indemnification against other parties as "joint tortfeasors."

As such, it is respectfully requested that the within motion be granted dismissing, with prejudice, the Title Insurance Company Defendants' cross claims against Robert Skowrenski, II and National Home Funding Inc. for Contribution under the New Jersey Joint Tortfeasors Act and Indemnification.

II. **THIS COURT'S OPINION DATED DECEMBER 16, 2009 CONSTITUTES LAW OF THE CASE, WHICH SHOULD CONTINUE TO GOVERN IDENTICAL ISSUES THAT ARISE IN SUBSEQUENT STAGES OF THE SAME CASE AND AS SUCH SHOULD RESULT IN THE DISMISSAL OF ANY AND ALL CROSS CLAIMS FOR CONTRIBUTION AND INDEMNIFICATION AGAINST THE DEFENDANTS ROBERT SKOWRENSKI, II AND NATIONAL HOME FUNDING, INC.**

In the case of <u>Arizona v. California</u>, 460 <u>U.S.</u> 605 (1983), the Supreme Court noted:

> "Unlike the more precise requirements of res judicata, law of the case is of an amorphous concept. As most commonly defined, the doctrine posits that when a Court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case".

<u>Id</u>. at 618 (internal citations omitted).

The law of the case rules have developed to determine consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. <u>Casey v. Planned Parenthood of Se. PA</u>., 14 F.3d 848, 856 (3d Cir. 1994).

Although the Court does have the power to re-visit a prior decision, Courts should be loath to do so in the absence of extraordinary circumstances, which exist where the initial decision was clearly erroneous and would make a manifest injustice. <u>Bellevue Drug Co. v. CaremarksPCS</u>, 582 <u>F.3d</u> 432, 439 (3d Cir. Pa. 2009). The . . . doctrine does

not restrict a court's power but rather governs its exercise of discretion. Id. at 439.

Exceptions that could constitute extraordinary circumstances warranting a Court's reconsideration of the issue decided earlier in the course of litigation include: new evidence; a supervening law being announced; or an ambiguous decision that is determined by the Court, in its discretion, to need clarification. Id.

Here, this Court's December 16, 2009 ruling governs as law of the case since no new evidence has become available, there has been no supervening new law that has been announced, and applying the Court's ruling to the cross claims of the Title Insurance Company Defendants would not lead to an unjust result. To the contrary, a just result would be reached if the Court's December 16, 2009 opinion were to govern the Title Insurance Companies cross claims for Contribution and Indemnification since the Plaintiff's claims still sound in contract and the Title Insurance Company Defendants should be precluded from asserting such claims under the circumstances.

As explained in the Court's December 16, 2009 opinion, any and all claims asserted by the plaintiff against the Title Insurance Company Defendants sound in contract and, as such, any and all cross claims by the Title Insurance

10

Company Defendants for Contribution and Indemnification against National Home Funding, Inc. and Robert Skowrenski, II, should be dismissed for failing to state a claim under Fed. R. Civ. P. 12(b)(6). Both the Contribution and Indemnification cross claims require the complaining party to be found liable as a joint tortfeasor, which as a matter of law can not occur in this case since there are no tort claims asserted against the Title Insurance Company Defendants.

## Conclusion

In conclusion, it is respectfully submitted that the Court Grant Summary Judgment dismissing the Title Insurance Company Defendants' cross claims for Contribution and Indemnification against the Defendants, National Home Funding, Inc. and Robert Skowrenski, II, with prejudice as since any and all claims asserted against the Title Insurance Companies by the Plaintiff have previously been held to be contractual in nature by this Court.

Respectfully submitted,

John D. Toresco, Esq.

11

**Manning, Caliendo & Thomson, P.A.**
36 West Main Street
Freehold, New Jersey  07728
Telephone: 732-462-4405
Facsimile: 732-409-0347
National Home Funding, Inc., and Robert Skowrenski, II

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WALSH SECURITIES, INC., | : | Civil Action No. 97-cv-3496 (DRD)(MAS) |
| Plaintiff, | : | Hon. Dickinson R. Debevoise |
| vs. | : | |
| CRISTO PROPERTY MANAGEMENT, a/k/a G.J.L. LIMITED; DEK HOMES OF NEW JERSEY, INC.; OAKWOOD PROPERTIES, INC.; NATIONAL HOME FUNDING, INC.; CAPITAL ASSETS PROPERTY MANAGEMENT, L.L.C.; WILLIAM KANE; GARY GRIESER; ROBERT SKOWRENSKI, II; RICHARD CALANNI; RICHARD DiBENEDETTO; JAMES R. BROWN; THOMAS BRODO; ROLAND PIERSON; STANLEY YACKER, ESQ.; MICHAEL ALFIERI, ESQ.; RICHARD PEPSNY, ESQ.; ANTHONY M. CICALESE, ESQ.; LAWRENCE CUZZI; ANTHONY D'APOLITO; DAP CONSULTING, INC.; COMMONWEALTH LAND TITLE INSURANCE CO.; NATIONS TITLE INSURANCE OF NEW YORK, INC.; FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK; COASTAL | : : : : : : : : : : : : | **CERTIFICATION OF VINCENT P. MANNING IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)** |

TITLE AGENCY; DONNA
PEPSNY; WEICHERT
REALTORS; and VECCHIO
REALTY, INC., D/B/A MURPHY
REALTY BETTER HOMES and
GARDENS,

:

:

:

         Defendants.       :

---

I, Vincent P. Manning, by way of certification, hereby says:

    1.   I am an attorney at law in the state of New Jersey and a partner of the law firm of Manning, Caliendo & Thomson, P.A., attorneys for the defendants, Robert Skowrenski II and Nation Home Funding Inc, and as such I have full knowledge of the facts herein.

    2.   On December 16, 2009, this Honorable Court entered a fourteen (14) page opinion, rendering a decision on plaintiff, Walsh Securities, Inc.'s motion to dismiss the third party complaints of Commonwealth Land Title Insurance Co. ("Commonwealth"), Fidelity National Title Insurance Co. of New York ("Fidelity"), and Nations Title Insurance of New York ("Nations") (collectively "Title Insurance Company Defendants") for Contribution and Indemnification under Fed. R. of Civ. P. 12(b)(6).  A true and accurate copy of the Court's Opinion (Doc #372) is attached hereto as Exhibit A.

    4.   In rendering the above-mentioned decision, the Honorable Dickinson R. Debevoise, U.S.S.D.J., held that Walsh

Securities, Inc.'s claims against the Title Insurance Company Defendants are contractual in nature and are so totally dissimilar from the negligence, fraud, and RICO claims asserted by plaintiff against the other defendants, that the claims against the Title Insurance Company Defendants are an inappropriate basis for a contribution claim under the New Jersey Joint Tortfeasors Act, N.J.S.A. §2A:53A-2.  See the December 16, 2009 Opinion of the Honorable Dickinson R. Debevoise, U.S.S.D.J. (Doc. #372) attached hereto as Exhibit A at page 13; see also plaintiff's fourth amended complaint (Doc. #302) attached hereto as Exhibit B.

5.    Under a similar rational, this Court held that the Title Insurance Company Defendants can not assert Cross Claims for Indemnification, as they cannot be found to be joint tortfeasors based on the claims asserted against them by the Plaintiff.  See the December 16, 2009 Opinion of the Honorable Dickinson R. Debevoise, U.S.S.D.J.  (Doc #372) attached hereto as Exhibit A at page 13; see also plaintiff's fourth amended complaint (Doc. #302) attached hereto as Exhibit B.

6.    Despite to the Court's December 16, 2009 opinion, Commonwealth, Fidelity, and Nations currently have Cross Claims for Contribution and Indemnification pending against

Defendants, Robert Skorenski II and National Home Funding Inc.

7.    Specifically, defendant, Commonwealth, filed a Cross Claim for Contribution under the New Jersey Joint Tortfeasors Act as well as a Cross Claim for Indemnification against Robert Skowrenski, II and National Home Funding. See Commonwealth's Answer to the Fourth Amended Complaint with Cross Claims for Contribution and Indemnification (Doc. #304) attached hereto as Exhibit C at page 14.

9.    Defendant, Fidelity and Nations also filed an Answer to the Fourth Amended Complaint which included a Cross Claim for Contribution and Indemnification against co-defendant, Robert Skowrenski II and National Home Funding, Inc.  See attached hereto as Exhibit D Fidelity & Nations's Answer to the Fourth Amended Complaint with Cross Claims for Contribution and Indemnification (Doc. #314) at page 17 and 18.

10.   Co-Defendant, Coastal Title Agency ("Coastal") has filed a motion to dismiss (Docs. #408-410) on the same or similar grounds and is currently scheduled to be heard on September 20, 2010.

11.   While Coastal has also asserted cross claims for contribution and indemnification against Defendants, Robert Skowrenski, II and National Home Funding Inc., said

defendants are not currently moving for dismissal as to those cross claims since the Plaintiff, Walsh Securities Inc. has asserted a claim of common-law fraud against Coastal.

12. Since the Insurance Company Defendants' Cross Claims for Contribution and Indemnification fail to state a claim pursuant to Rule 12(b)(6) for the reasons expressed in this Court's prior ruling and are clearly against the law of the case, it is respectfully requested that this Court dismiss the Title Insurance Company Defendants' Cross Claims for Contribution and Indemnification against Defendants, Robert Skowrenski and National Home Funding, Inc with prejudice.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

MANNING, CALIENDO & THOMSON,

By: VINCENT P. MANNING, Esq.
Attorneys for National
Home Funding, Inc., and
Robert Skowrenski, II

Dated: August 30, 2010

EXHIBIT "A"

<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC.,<br><br>              Plaintiff,<br><br>v.<br><br>CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, DEK HOMES OF NEW JERSEY, INC., OAKWOOD PROPERTIES INC., NATIONAL HOME FUNDING, INC., CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT CO., INC., CAPITAL ASSETS PROPERTY MANAGEMENT, L.L.C., WILLIAM J. KANE, GARY GRIESER, ROBERT SKOWRENSKI, II, RICHARD CALANNI, RICHARD DiBENEDETTO, JAMES R. BROWN THOMAS BRODO, RONALD J. PIERSON, STANLEY YACKER, ESQ., MICHAEL ALFIERI, ESQ., RICHARD PEPSNY, ESQ., ANTHONY M. CICALESE, ESQ., LAWRENCE M. CUZZI, ANTHONY D'APOLITO, DAP CONSULTING, INC., COMMONWEALTH LAND TITLE INSURANCE CO., NATIONS TITLE INSURANCE OF NEW YORK, INC., FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK, COASTAL TITLE AGENCY, and STEWART TITLE GUARANTY COMPANY, IRENE DiFEO, DONNA PEPSNY, WEICHERT REALTORS, and VECCHIO REALTY, INC. d/b/a MURPHY REALTY BETTER HOMES and GARDENS,<br><br>              Defendants. | Civ. No. 97-cv-3496 DRD<br><br><br>**O P I N I O N** |

*Appearances by:*

STONE & MAGNANINI LLP
by: Robert A. Magnanini, Esq.
Amy Walker Wagner, Esq.
Jeffery A. Shooman, Esq.
150 John F. Kennedy Parkway, Fourth Floor
Short Hills, NJ 07078

      *Attorneys for Plaintiff Walsh Securities, Inc., and Third-Party Defendant Robert Walsh*

McCARTER & ENGLISH, LLP
by: David R. Kott, Esq.
Sara F. Merin, Esq.
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07102

      *Attorneys for Defendant/Third-Plaintiff Commonwealth Land Title Insurance Co.*

FOX ROTHSCHILD LLP
by: Edward J. Hayes, Esq.
David H. Colvin, Esq.
Amy C. Purcell, Esq.
2000 Market Street, Tenth Floor
Philadelphia, PA 19103

      *Attorneys for Defendants/Third-Plaintiffs Nations Title Insurance of New York, Inc. and Fidelity National Title Insurance Co. of New York*

**DEBEVOISE, Senior District Judge**

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Walsh Securities ("Plaintiff" or "Walsh Securities"), brought this action in July

1997, alleging that in early 1996, numerous co-conspirators engaged in racketeering activity

which induced Walsh Securities to purchase mortgage loans at fraudulently inflated prices.[1]  In addition to naming the alleged perpetrators of the fraud, Walsh Securities sued three title insurance companies – Commonwealth Land Title Insurance Co. ("Commonwealth") and Fidelity National Title Insurance Co. of New York, and Nations Title Insurance of New York, Inc. ("Fidelity-Nations") (collectively, "Third-Party Plaintiffs" or "Title Insurance Company Defendants").  Walsh Securities alleged in the early versions of the Complaint that the Title Insurance Company Defendants breached their duties to Walsh Securities by failing to provide coverage under Closing Service Protection Letters and Title Insurance Policies.  Commonwealth filed a Third-Party Complaint against Walsh Securities's officers Robert Walsh ("R. Walsh") and Elizabeth Ann DeMola ("Ms. DeMola") with respect to the earlier versions of the Complaint, seeking contribution.

Walsh Securities filed a Fourth Amended Complaint.  It embellished its claims against the Title Insurance Company Defendants.  Adding to the charge of failing to provide coverage under the Closing Service Protection Letters and Title Insurance Policies, the Fourth Amended Complaint alleged that the Title Insurance Company Defendants breached the duty of good faith and fair dealing and engaged in a wrongful delay in processing Walsh Securities's claims.

Thereafter, Commonwealth filed a new Third-Party Complaint, seeking contribution from James Walsh ("J. Walsh") as well as from R. Walsh and Ms. DeMola.  Fidelity-Nations filed its first Third-Party Complaint seeking contribution and also indemnification from R. Walsh, J. Walsh and Ms. DeMola (hereinafter sometimes referred to as the "Third-Party Defendants").  Commonwealth's Third-Party Complaint is typical of these Third-Party Complaints.  It reads in its entirety as follows:

---

[1] For a full factual background, see Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd, 7 F. Supp. 2d 523 (D.N.J. 1998); see also Walsh Secs., Inc. v. Cristo Prop. Mgmt., 2007 U.S. Dist. LEXIS 22244 (D.N.J. Mar. 28, 2007).

3

Defendant/third-party plaintiff Commonwealth Land Title Insurance Company ("Commonwealth"), by way of Third Party Complaint against third-party defendants Robert Walsh, James Walsh and Elizabeth Ann DeMola says:

1.      Plaintiff has commenced an action against defendant/third-party plaintiff Commonwealth for the causes set forth in the Fourth Amended Complaint, a copy of which is attached hereto as Exhibit A.

2.      At all material times herein, third-party defendants, Robert Walsh, James Walsh and Elizabeth Ann DeMola were officers, directors and/or employees of Walsh Securities, Inc.

3.      The third-party defendants were negligent, or engaged in fraud, or breached their legal and/or fiduciary duties, or otherwise were engaged in wrongdoing or fault, which caused or contributed to the losses claimed by plaintiff in this case.

4.      As a direct result of the negligence or fraud or breach of their legal and/or fiduciary duties or the wrongdoing or the fault of third-party defendants, while defendant/third-party plaintiff Commonwealth denies any liability to plaintiff or to any other defendant, if defendant/third-party plaintiff Commonwealth is found liable, it is entitled to contribution from third-party defendants Robert Walsh, James Walsh and/or Elizabeth Ann DeMola pursuant to the New Jersey Tortfeasors Contribution Act.

WHEREFORE, defendant/third-party plaintiff Commonwealth demands judgment against third-party defendants Robert Walsh, James Walsh and Elizabeth Ann DeMola, jointly and severally.

(Commonwealth Third-Party Compl. ¶ 3.)

Commonwealth and Fidelity/Nations[2] asserted third-party complaints for contribution under New Jersey's Joint Tortfeasors Contribution Act, N.J.S.A. § 2A:53A-1, et seq., and for common law indemnification against the Third-Party Defendants as officers, directors or employees of Walsh Securities. In lieu of an answer R. Walsh moved to dismiss each of the Third-Party complaints pursuant to Fed. R. Civ. P. (12)(b)(6) for failure to state a claim upon which relief can be granted, for failure to meet the notice pleading requirements of Fed. R.Civ. P. 8(a)(2), and for failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). Ms. DeMola and J. Walsh joined in this motion.

The Title Insurance Company Defendants opposed the motions to dismiss and, in the alternative, moved for leave to file First Amended Third-Party Complaints against the Third-

---

[2] Several defendants have settled with Walsh Securities, and a default judgment was entered against several other defendants in the amount of $493,035,603.00. Six defendants remain in the case.

4

Party Defendants. The Third-Party Defendants' motion to dismiss will be granted; the Title

Insurance Company Defendants' motion for leave to file a First Amended Third-Party Complaint

will be denied as futile because it fails to state a claim for contribution or indemnification.

### III. DISCUSSION

**A. Standard for Dismissal under Fed. R. Civ. P. 12(b)(6):** Fed. R. Civ. P. 12(b)(6)

permits a court to dismiss a complaint for failure to state a claim upon which relief can be

granted. When considering a Rule 12(b)(6) motion, the court must accept the factual allegations

in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v.

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The court's inquiry, however, "is

not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be

afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr.

Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v.

Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007).

The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-

46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would

entitle him to relief." In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations

must be enough to raise a right to relief above the speculative level." Thus, the assertions in the

complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570,

meaning that the facts alleged "allow[] the court to draw the reasonable inference that the

defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v.

County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to

dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

In the present case the allegations of the Third-Party Complaints fail to state valid claims upon which relief can be granted.

**B. Sufficiency of the Third-Party Complaints:** In its four paragraph Third-Party Complaint, Commonwealth charges that the three Third-Party Defendants "were negligent, or engaged in fraud, or breached their legal and/or fiduciary duties, or otherwise were engaged in wrongdoing or fault, which caused or contributed to the losses claimed by plaintiff in this case." (Commonwealth Third-Party Compl. ¶ 3.) Fideltiy-Nations assert that the three Third-Party Defendants "participated in the fraud alleged to have occurred by Plaintiff ... Alternatively, ... were negligent and/or breached their duties to Plaintiff as officers, directors and/or employees." (Fidelity-Nations Third-Party Compl. ¶¶ 2-3.) The underlying wrongdoing out of which this case arises is set forth in the Fourth Amended Complaint in which a large number of individuals,

corporations and other entities are alleged to have engaged in a massive mortgage fraud scheme. Defendants in that case, other than the Title Insurance Company Defendants, are charged with (1) § 1962(c) RICO fraud, (2) § 1962(d) RICO fraud and (3) common law fraud. The alleged fraudulent conduct is set forth in the Complaint in great detail.

The allegations in the Third-Party Complaints of the Title Insurance Company Defendants are so deficient by the standards set forth in Fed. R. Civ. P. 12(b)(6) and 9(b), as applied in Twombly and Iqbal, that nothing further need be said. These complaints must be dismissed out of hand. The Title Insurance Company Defendants offer a pathetic excuse for this deficiency, asserting that there has been so much discovery in the past twelve years that the Third-Party Defendants must know what it is all about.

Recognizing the absurdity of that proposition, Commonwealth has attached to its brief opposing the motion to dismiss a proposed First Amended Complaint Against Robert Walsh, James Walsh and Elizabeth Ann DeMola. This too is a strange document. It includes the generalized allegations of fraud, negligence and breach of legal and/or fiduciary duties as officers, directors and/or employees of Walsh Securities. Instead of setting forth a systematic account of their alleged conduct, the "FACTUAL ALLEGATIONS" appear to be largely a collection of Ms. DeMola's allocution statements at the time she entered her plea of guilty in the criminal case against her. There follows a jumble of miscellaneous factual allegations concerning R. Walsh, J. Walsh and Ms. DeMola which might or might not have relevance at a trial. Rather than invite the parties to address the question whether this proposed First Amended Third-Party Complaint could survive a motion, to dismiss, the court will turn to the question whether the Title Insurance Company Defendants can assert a claim against the Third-Party

7

Defendants for contribution or indemnification. If they cannot, the motions for leave to file a

First Amended Third-Party Complaint would have to be denied as futile.

    **C. Claims For Contribution:** Under New Jersey law, the right of contribution exists

among joint tortfeasors. N.J.S.A. § 2A:53A-2. The term "joint tortfeasors" is defined as "two or

more persons jointly or severally liable in tort for the same injury to person or property . . . ."

N.J.S.A. § 2A:53A-1.

    In Count V of the Fourth Amended Complaint, Walsh Securities alleges that the title

insurance defendants, including Commonwealth and Fidelity-Nations:

> breached their respective duties of good faith and fair dealing by failing to process and
> pay covered claims in a reasonable time. In connection therewith, the [Title Insurance
> Company Defendants] knew or recklessly disregarded the fact that they lacked a
> reasonable basis for denying the claims. This is evidenced[.... by the [Title Insurance
> Company Defendants] reckless indifference to facts or proofs submitted by Walsh
> Securities and the [Title Insurance Company Defendants] premature terminations of
> [their] investigation upon the filing of this action against them seeking coverage.

(Fourth Am. Compl. ¶ 99.) In addition, in Count VII, Walsh Securities raises a claim for

wrongful delay and/or denial of insurance claims by Title Insurance Company Defendants,

whereby it asserts that:

> [The Title Insurance Company Defendants] failure to process and pay covered claims in a
> reasonable time was done intentionally without debatable reason and/or in reckless
> disregard of the fact that they had no valid reason for doing so.

(Fourth Am. Compl. ¶ 112.) In their Third-Party Complaints, Commonwealth and Fidelity-

Nations seek contribution from the Third-Party Defendants as joint tortfeasors who contributed

to the damages sought by Walsh Securities.[3] (Commonwealth Third-Party Compl. ¶ 4; see also

Fidelity-Nations Third-Party Compl. ¶ 4.) Despite the Court's earlier ruling in Walsh Securities,

Inc. v. Cristo Prop. Mgmt., Ltd., Civ. No. 97-3496(DRD), 2007 WL 951955 (D.N.J. March 28,

---

[3] Fidelity-Nations additionally seeks indemnification and other common law relief as the Court may deem equitable
and just. (Fidelity-Nation's Third-Party Compl. ¶ 4.)

2007), the Title Insurance Company Defendants argue that Walsh Securities's claims sound in

tort and thus they are entitled to contribution from the Third-Party Defendants. (Commonwealth

Br. at 6; see also Fidelity-Nations Br. at 8.)  Specifically, they argue that the charges found in

Walsh Securities's Fourth Amended Complaint, including the addition of the breach of good

faith and fair dealing claim and wrongful delay claim, alter the nature of Walsh Securities's

claim against the Title Insurance Company Defendants to one grounded in tort giving rise to

contribution. (Commonwealth Br. at 8.)  To support this proposition, the Title Insurance

Company Defendants urge this Court to look to the remedies sought rather than the labels

attached to the claim. (Fidelity-Nations Br. at 8.)

The court on a prior occasion addressed the contribution issue raised in the present

motions. Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd., Civ. No. 97-3496 (DRD), 2007 WL

95J955 (D.N.J. March 28, 2007). In its Third Amended Complaint Walsh Securities named

Stuart Title Guaranty Company ("Stuart Title") and Irene Di Feo ("Di Feo) as defendants,

claiming that Stewart title had failed to reimburse Walsh Securities for losses it incurred "based

on the fraud and/or misapplication of the approved attorneys as covered by the closing service

letters." Walsh Securities sought damages associated with Stuart Title's alleged breach of

contract. Commonwealth, among other defendants, filed cross-claims for contribution. On

DiFeo's motion to dismiss, the court held:

> In the present case, as the Third Party complaint indicates, and as Commonwealth
> concedes, Commonwealth has been sued in contract by Walsh.  Thus, there are no claims
> that Commonwealth is a joint tort-feasor.  Because it is not a joint tortfeasor, and because
> the facts of this case are readily distinguishable from Dunn, Commonwealth's
> contribution claim may not be maintained.

In Dunn v. Praiss, 139 N.J. 564 (1995), a physician found liable for medical malpractice

sought contribution from his HMO on the basis of its independent breach of contractual duty to

the patient-subscriber of the HMO. The Court held in that case that "it is appropriate in this case to apportion responsibility based on breach of contract that is alleged to have proximately caused personal injury." Id. At 577.

In Cristo the court cited Longport Ocean Plaza Condo, Inc. v. Robert Cato & Assocs., Civ. No. 00-cv-2231, 2002 U.S. Dist. LEXIS 16334, 2002 WL 2013925 (ED. Pa. Aug. 29, 2002). There the court limited the ruling in Dunn, holding that (1) it was limited "to cases in which harm suffered by plaintiff was personal injury," and (2) it "stressed the fact that the HMO's contractual duty was closely analogous to the tort duties imposed on the physician provider." 2002 U.S. Dist. LEXIS 16334 [WL] at *3. The court, applying New Jersey law, dismissed a contract defendant's third party claim for contribution grounded in tort.

The Title Insurance Company Defendants argue that Walsh Securities's Fourth Amended Complaint seeks damages against them not only for alleged breach of contract but also for what are, in effect, tort claims – wrongful delay and/or denial of insurance claims and breach of their respective duties of good faith and fair dealing. Consequently, they contend that Cristo is no longer good law, if it ever was.

Claims against insurance companies for breach of the duty of good faith and fair dealing and for wrongful delay "sound[ ] in both tort and contract." Pickett v. Lloyd's (A Syndicate of Underwriting Members), 131 N.J. 457, 470 (1993) quoting Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 504 (1974). Moreover, compensation is not "dependent on what label [is] place[d] on an action but rather on the nature of the injury inflicted on the plaintiff and the remedies requested." Pickett, at 470. Therefore, for contribution purposes, the crux of the analysis of whether a claim is grounded in tort or contract must focus on the nature of the injury inflicted and the remedy sought. If the damages sought are ones normally flowing from breach

of contract claims (i.e., consequential damages, lost profits, etc.) then the claim is more likely contractual in nature. Id. at 475. Treble damages and punitive damages are unlikely to be available in contract cases.

Both Dunn and Longport emphasized that the answer to the question whether a contract claim will be considered to be a tort claim for contribution purposes depends upon the circumstances of the individual case. Longport emphasized that Dunn "stressed the fact that the HMO's contractual duty was closely analogous to the tort duties imposed on the physician – provider." Dunn noted:

> In the context of this case in which the breach of contractual duty appears to parallel closely the fault based duty of care imposed on a healthcare provider it is appropriate to allow for contribution. In another case the issue might be less clear." Id. at 577. (emphasis added)

Here, Walsh Securities is pleading breach of good faith and fair dealing in conjunction with the Third-Party Plaintiffs' alleged breach of contract. (Fourth Am. Compl. ¶ 100.) In this setting, the good faith and fair dealing claim is only belatedly being pled as a supplement to the breach of contract claim. (Third Party Defs. Br. at 5.) The damages sought under this claim are identical to those sought for breach of contract and if a court were to find the existence of a breach of contract, the good faith claim would be redundant.

As for Walsh Securities's claims for wrongful delay and/or denial of insurance, the damages sought are "consequential" and are for "diminution and/or complete loss of … going concern value." (Fourth Am. Compl. ¶ 113.) These damages are closely analogous to contract damages and are the natural and probable consequences of a breach of contract, suggesting that the wrongful delay claims against the Third-Party Plaintiffs are also contractual in nature.

For approximately 12 years, during which the Title Insurance Companies have been named as defendants in the various complaints (and the Third-Party Defendants have not), Walsh

11

Securities has proceeded against the Title Insurance Company Defendants on strictly contract claims. As Fidelity-Nations points out in its brief, awareness of the nature of this case "arises from all of the activity that has taken place since the inception of the fraud alleged to have occurred" (Fidelity-Nations Br. at 13), and "as part of the mediation process, numerous depositions were taken of the participants in the underlying transactions, which depositions resulted in the disclosure of the very detailed and specific accusations regarding the conduct of the Third-Party Defendants." Yet only now, in the twelfth year of this case, two of the Title Insurance Company Defendants seek to assert a claim against the Third-Party Defendants.

More important is the total disparity between the general claims that Walsh Securities is asserting against the non-Title Insurance Company Defendants and the embellished contract claims that it asserts against the Title Insurance Defendants in its Fourth Amended Complaint. Fidelity-Nations describes the general nature of Walsh Securities's allegations against the non-Title Insurance Company Defendants'.

> Over ten years ago, plaintiff, Walsh Securities ("Walsh"), instituted this action. In various reiterations of its complaint, Walsh alleges that it was the victim of a fraudulent scheme perpetrated by a vast number of mortgage companies, real estate appraisers, and attorneys to induce Walsh to purchase approximately 223 mortgage loans on real properties with artificially inflated prices. Walsh has set forth a variety of claims against those defendants ranging from negligence to fraud to RICO violations.

(Fidelity-Nations's Br. at 2)

These wide-ranging fraudulent activities are to be contrasted to the contractual and related duties that Walsh Securities alleges the Title Insurance Company Defendants breached. In Dunn contribution was allowed because "the HMO's contractual duty was closely analogous to the tort duties imposed on the physician-provider." There is nothing analogous between the Walsh Securities fraud, negligence and RICO claims against the other defendants and its contract and related claims against the Title Insurance Company Defendants. It would be impossible to

12

allocate responsibility and damages in such disparate claims that have such different elements and such different measures of damages.

Although under New Jersey law there are occasions when a contract claim may have attributes that will permit it to give rise to a claim for contribution, this is not one of them. Walsh Securities's claims against the Title Insurance Company Defendants, even as amplified in the Fourth Amended Complaint, are essentially contractual in nature and they are so totally dissimilar from the negligence, fraud and RICO claims asserted against the other defendants, they are an inappropriate basis for a claim for contribution.

**D. Claims For Common Law Indemnification:** Only Fidelity-Nations also brings a claim for indemnification against the Third-Party Defendants. "The right of indemnity rests upon a difference between the primary and secondary liability of two persons, each of whom is made responsible under the law to an injured person." In re: Lead Paint Litigation, No. A-1946-02T3, 2005 WL 1994172, at *17 (N.J. App. Div. Aug. 17, 2005). "Indemnity is a mechanism for shifting the cost of liability from one joint tortfeasor to another." Id. "A party is not entitled to common-law indemnity from another unless it and the other party have been found liable in tort to a third party for the same harm." Id. (citing U.S. v. Manzo, 182 F. Supp. 2d 385, 411 (D.N.J. 2000)).

As stated above, the Third-Party Defendants are not joint tortfeasors, and thus, cannot be liable for common law indemnity. Furthermore, there has been no opposition to the Third-Party Defendants' motions to dismiss the Third-Party Complaint claim for indemnification.

## IV. CONCLUSION

For the reasons set forth above the Third-Party Complaints of Commonwealth and Fidelity-Nations will be dismissed for failing to comply with the pleading requirements of Fed.

13

R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b).  The motions of Commonwealth and Fidelity-

Nations for leave to file an amended complaint seeking contribution and indemnification will be

denied as futile.  The Court will file an order implementing this opinion.


                              *s/Dickinson R. Debevoise*
                              DICKINSON R. DEBEVOISE,
                              U.S.S.D.J.

Dated: December 16, 2009


                                    14

EXHIBIT "B"

Robert A. Magnanini, Esq.
STONE & MAGNANINI LLP
150 John F. Kennedy Parkway, Fourth Floor
Short Hills, New Jersey 07078
973-218-1111
Attorneys for Walsh Securities, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WALSH SECURITIES, INC., | : | Civil Action No. 97-cv-3496 (DRD)(MAS) |
| | : | |
| Plaintiff, | : | Hon. Dickinson R. Debevoise |
| | : | |
| vs. | : | |
| | : | |
| CRISTO PROPERTY MANAGEMENT, | : | |
| LTD., a/k/a G.J.L. LIMITED; DEK HOMES | : | |
| OF NEW JERSEY, INC.; OAKWOOD | : | |
| PROPERTIES, INC.; NATIONAL HOME | : | |
| FUNDING, INC.; CAPITAL ASSETS | : | |
| PROPERTY MANAGEMENT & | : | |
| INVESTMENT CO., INC.; CAPITAL | : | |
| ASSETS PROPERTY MANAGEMENT, | : | |
| L.L.C.; WILLIAM KANE; GARY GRIESER; | : | |
| ROBERT SKOWRENSKI, II; RICHARD | : | |
| CALANNI; RICHARD DiBENEDETTO; | : | |
| JAMES R. BROWN; THOMAS BRODO; | : | **FOURTH AMENDED COMPLAINT** |
| ROLAND PIERSON; STANLEY YACKER, | : | |
| ESQ.; MICHAEL ALFIERI, ESQ.; RICHARD | : | |
| PEPSNY, ESQ.; ANTHONY M. CICALESE, | : | |
| ESQ.; LAWRENCE CUZZI; ANTHONY | : | |
| D'APOLITO; DAP CONSULTING, | : | |
| INC.; COMMONWEALTH LAND TITLE | : | |
| INSURANCE CO.; NATIONS TITLE | : | |
| INSURANCE OF NEW YORK, INC.; | : | |
| FIDELITY NATIONAL TITLE INSURANCE | : | |
| CO. OF NEW YORK; COASTAL TITLE | : | |
| AGENCY; DONNA PEPSNY; WEICHERT | : | |
| REALTORS; and VECCHIO REALTY, INC. | : | |
| D/B/A MURPHY REALTY BETTER HOMES | : | |
| and GARDENS, | : | |
| | : | |
| Defendants. | : | |

1.      Plaintiff brings this action for violations of the Racketeer Influenced and Corrupt Organizations Act, common-law fraud, negligence and breaches of contract.

## PARTIES

2.      Plaintiff Walsh Securities, Inc. ("Walsh Securities") is, and was at all relevant times, a Delaware corporation and wholly-owned subsidiary of Walsh Holding Company, Inc., with its principal place of business located in Parsippany-Troy Hills, New Jersey. In April 1996, Walsh Securities became a successor in interest to GF Mortgage Corp. Walsh Securities is a wholesale mortgage banker in the business of, among other things, purchasing retail mortgage loans from other mortgage bankers or mortgage brokers, known as correspondents, and packaging those mortgage loans for use as securities in secured transactions.  Walsh Securities focuses primarily on buying mortgage loans from the segment of the mortgage market known as the "subprime" market. "Subprime" mortgage loans are made to borrowers who, because of past financial dealings or because of their credit history, are unable to obtain mortgage loans from "prime" mortgage lenders at prime lending rates. "Subprime" mortgage loans generally provide for interest rates several percentage points higher than "prime" mortgage loans.

3.      Defendant Cristo Property Management, Ltd., a/k/a G.J.L. Limited, upon information and belief, is, and was at all relevant times, a New Jersey corporation with its principal place of business in Union County, New Jersey. Cristo Property is, and was at all relevant times, owned and controlled by defendant William J. Kane.

4.      Defendant DEK Homes of New Jersey, Inc. ("DEK Homes") upon information and belief, is, and was at all relevant times, a New Jersey corporation with its principal place of business in New Jersey. Upon information and belief, DEK Homes is, and was at all relevant times, owned and controlled by defendant Kane.

1

5.      Defendant Oakwood Properties, Inc. ("Oakwood Properties") upon information and belief, is, and was at all relevant times, a New Jersey corporation with its principal place of business in New Jersey. Upon information and belief, Oakwood Properties is, and was at all relevant times, owned and controlled by defendant Kane.

6.      Defendants Cristo Property Management, Ltd. (a/k/a G.J.L. Limited), DEK Homes, and Oakwood Properties are all owned and controlled by defendant Kane and referred to herein collectively as "Cristo Property".

7.      Defendant National Home Funding, Inc. ("NHF"), upon information and belief, is, and was at all relevant times, a New Jersey corporation with its principal place of business in Monmouth County, New Jersey. NHF is, and was at all relevant times, owned and controlled by defendant Skowrenski.

8.      Defendant Capital Assets Property Management & Investment Co., Inc. and defendant Capital Assets Property Management, L.L.C. (jointly, "Capital Assets"), upon information and belief, are, and were at all relevant times, New Jersey corporations with their principal places of business in New Jersey. Both Capital Assets Property Management & Investment Co., Inc. and Capital Assets Property Management, L.L.C. are, and were at all relevant times, owned and controlled by defendant Grieser.

9.      Defendant William J. Kane ("Kane"), upon information and belief, is, and was at all relevant times, a New Jersey resident. Kane owns and controls Cristo Property, DEK Homes and Oakwood Properties. In addition, Kane is, and was at all relevant times, a licensed mortgage solicitor for NHF.

10.     Defendant Gary Grieser ("Grieser"), upon information and belief, is, and was at all relevant times, a New Jersey resident. Grieser is the owner of Capital Assets.

2

11.      Defendant Robert Skowrenski, II, ("Skowrenski"), upon information and belief,
is, and was at all relevant times, a New Jersey resident. Skowrenski is the owner of NHF.

12.      Defendant Richard Calanni ("Calanni"), upon information and belief, is, and was
at all relevant times, a New Jersey resident and a licensed real estate appraiser in New Jersey.
Calanni is, and was at all relevant times, associated with TF Certified Real Estate Appraisals.

13.      Defendant Richard DiBenedetto ("DiBenedetto"), upon information and belief, is,
and was at all relevant times, a New Jersey resident and a licensed real estate appraiser in New
Jersey. DiBenedetto is, and was at all relevant times, associated with Eastern States Appraisal
Services.

14.      Defendant James R. Brown ("Brown"), upon information and belief, is, and was
at all relevant times, a New Jersey resident and a licensed real estate appraiser in New Jersey.
Brown is, and was at all relevant times, associated with Professional Evaluators of Union.

15.      Defendant Thomas Brodo ("Brodo"), upon information and belief, is, and was at
all relevant times, a New Jersey resident and a licensed real estate appraiser in New Jersey.

16.      Defendant Roland J. Pierson ("Pierson"), upon information and belief, is, and was
at all relevant times, a New Jersey resident and a licensed real estate appraiser in New Jersey.

17.      Defendants Calanni, DiBenedetto, Brown, Brodo and Pierson (collectively, "the
Appraisers"), are, and were at all relevant times, real property appraisers hired by NHF and
Cristo Property.

18.      Defendant Stanley Yacker, Esq., ("Yacker"), upon information and belief, is, and
was at all relevant times, a New Jersey resident and an attorney admitted to practice in New
Jersey.

3

19.    Defendant Michael Alfieri, Esq., ("Alfieri"), upon information and belief, is, and was at all relevant times, a New Jersey resident and an attorney admitted to practice in New Jersey.

20.    Defendant Richard Pepsny, Esq., ("Richard Pepsny"), upon information and belief, is, and was at all relevant times, a New Jersey resident and an attorney admitted to practice in New Jersey.

21.    Defendant Anthony M. Cicalese, Esq., ("Cicalese"), upon information and belief, is, and was at all relevant times, a New Jersey resident and an attorney admitted to practice in New Jersey.

22.    Defendants Yacker and Cicalese jointly, ("the Closing Attorneys") were at all relevant times, approved attorneys by the title insurance companies involved in each transaction. The Closing Attorneys, together with defendants Alfieri and Richard Pepsny, were selected by Capital Assets and/or Cristo Property to facilitate real property closings involving mortgage loans originated by NHF and subsequently sold to Walsh Securities.

23.    Defendant Lawrence J. Cuzzi, ("Cuzzi"), upon information and belief, is, and was at all relevant times, a New York resident.

24.    Defendant Anthony D'Apolito ("D' Apolito"), upon information and belief, is, and was at all relevant times, a New Jersey resident. D' Apolito was at all relevant times an employee of Walsh Securities who was responsible for transmitting to Walsh Securities mortgage loans originated at NHF and other correspondents.

25.    Defendant DAP Consulting, Inc. ("DAP Consulting"), upon information and belief, is, and was at all relevant times, a New Jersey corporation located in Monmouth County, New Jersey. DAP Consulting is owned and controlled by defendant D' Apolito.

4

26.    Defendant Commonwealth Land Title Insurance Company, Inc. ("Commonwealth Title"), upon information and belief, is, and was at all relevant times, a Pennsylvania corporation with its principal place of business in Pennsylvania.

27.    Defendant Nations Title Insurance of New York Inc. ("Nations Title"), upon information and belief, is, and was at all relevant times, a New York corporation with its principal place of business in New York.

28.    Defendant Fidelity National Title Insurance Company of New York, Inc. ("Fidelity Title"), upon information and belief, is, and was at all relevant times, a New York corporation with its principal place of business in New York.

29.    Defendant Coastal Title Agency, Inc. ("Coastal Title"), upon information and belief, is, and was at all relevant times, a New Jersey corporation with its principal place of business in New Jersey. Coastal Title is, and was at all relevant times, a title insurance broker that was selected by Capital Assets, Cristo, and/or the Closing Attorneys to broker title insurance for the real property closings involving mortgage loans originated by NHF and subsequently sold to Walsh Securities.

30.    Defendants Commonwealth Title, Nations Title, and Fidelity Title (collectively, "the Title Insurance Defendants") are, and were at all relevant times, title insurance companies that issued closing service protection letters and title insurance policies to Walsh Securities, as the mortgage lender, which title policies and letters, among other things, indemnified Walsh Securities against fraud by the Closing Attorneys and other Defendants.

31.    Defendant Donna Pepsny ("Donna Pepsny"), upon information and belief, is, and was at all relevant times, a resident of New Jersey and a licensed real estate broker in New Jersey in an employment or agency relationship with Weichert Realtors.

5

32.     Defendant Weichert Realtors ("Weichert"), upon information and belief, is, and was at all relevant times, a New Jersey real estate services firm with its principal place of business in New Jersey in an employment or agency relationship with Donna Pepsny.

33.     Defendant Vecchio Realty, Inc. d/b/a Murphy Realty Better Homes and Gardens ("Murphy Realty"), upon information and belief, was at all relevant times, a New Jersey real estate services firm with its principal place of business in New Jersey.

**JURISDICTION**

34.     Jurisdiction is proper according to 28 U.S.C. § 1331 and 18 U.S.C. §1964(c).

**VENUE**

35.     Venue is proper according to 28 U.S.C. § 1391(b) and 18 U.S.C. §1965(a).

**INTRODUCTION**

36.     Since early 1996, defendants Cristo Property, Capital Assets, NHF, Kane, Grieser, Skowrenski, Calanni, DiBenedetto, Brown, Brodo, Pierson, Yacker, Alfieri, Richard Pepsny, Cicalese, Cuzzi, D'Apolito, DAP Consulting, and Coastal Title (collectively, "the RICO Defendants") have been engaged in a pattern of racketeering activity which has resulted in approximately two hundred twenty mortgage loans being purchased by Walsh Securities from NHF for amounts ranging up to eight times the preceding sales prices of the properties at issue. Walsh Securities was induced to purchase these mortgage loans from NHF based on fraudulent misrepresentations contained in the mortgage loan applications, including appraisals of the properties at issue. The proceeds from Walsh Securities' mortgage loans would, among other things, be distributed among the RICO Defendants as their illicit profits.

37.     The RICO Defendants engaged in a pattern of racketeering throughout the State of New Jersey and elsewhere, including in Monmouth, Essex, Union and Hudson Counties,

6

where certain of the properties are located, and in Morris County, where Walsh Securities is located.

38.     Walsh Securities remains liable for a substantial portion of the value of these mortgage loans fraudulently obtained by the RICO Defendants. Walsh Securities will not be able to recover the full amounts that have been lent through foreclosures on the properties because, due to the fraudulently inflated appraisals of the real properties that secure the mortgage loans, many of the properties are not of value equal to or greater than the amount of the mortgage loans and the fraudulent sales contracts. In addition, this fraud perpetrated against Walsh Securities has injured the business reputation of Walsh Securities and caused Walsh Securities to lose a substantial amount of business and profits, including the sale of the company for more than $400 million.

39.     With respect to these fraudulently obtained mortgage loans, the Title Insurance Defendants issued to Walsh Securities, as the mortgage lender, title insurance policies and closing service protection letters which required the Title Insurance Defendants to reimburse Walsh Securities for losses arising out of the fraudulent actions of the Closing Attorneys. Both of the Closing Attorneys, Yacker and Cicalese, were specifically approved to handle closings by the Title Insurance Defendants.

## FACTUAL ALLEGATIONS

### The Mortgage Banking Industry

40.     A mortgage loan is a loan in which real property is used as collateral for the loan. The amount of a mortgage loan is a percentage, usually 70 to 75 percent, of the actual value of the property.

41.     Mortgage bankers and brokers ("Mortgage Bankers") solicit customers interested in taking out mortgage loans to enable them to purchase real property with lenders interested in loaning money.

42.     Many Mortgage Bankers do not utilize their own funds in making the mortgage loans, but agree to sell the mortgage loans to mortgage loan wholesalers or bankers which provide the funds for the borrowers at the time of closings. In these instances, Mortgage Bankers are paid fees, generally by the borrowers, for originating the mortgage loans so that they can then be sold to other investors. Mortgage Bankers are licensed by the State of New Jersey under N.J.S.A. § 17:11B-5, *et seq*.

43.     Potential mortgage loan borrowers who cannot obtain traditional financing from "prime" Mortgage Bankers (for example, due to poor credit histories), seek out and use "subprime" Mortgage Bankers who service this segment of the mortgage market. "Subprime" mortgage loans generally provide for interest rates several percentage points higher than "prime" mortgage loans, to take account of the increased delinquency risk of such mortgage loans.

44.     After potential mortgage loan borrowers have found Mortgage Bankers from whom they will seek to obtain mortgage loans, the mortgage loan application process begins.

45.     The Mortgage Bankers who deal directly with the borrowers are said to "originate" the mortgage loans. The originating Mortgage Bankers are responsible for ensuring that all necessary paperwork is obtained from prospective borrowers and properly recorded. Included in this necessary paperwork are the mortgage loan applications, contracts of sale for the underlying properties, credit histories, statements of net worth, references, appraisals of the underlying properties, and other documents.

8

46.     Originating Mortgage Bankers usually select the appraisers who are also licensed by the State of New Jersey under N.J.S.A. § 45:14F-1, *et seq.* The appraisers are typically paid by the borrowers of the mortgage loans.

47.     The appraisal of the real property that is to be mortgaged is one of the most important steps in the mortgage loan process. The appraisal, which is supposed to reflect the true market value of the property, is relied on by lending institutions, including the mortgage loan wholesalers, to determine how much money to lend to the proposed borrower. In addition, since mortgage loans are secured by the underlying real properties, it is critical that the appraisals be accurate so that the mortgage loans are properly secured in case of defaults on the mortgage loans. In the event of a default on the mortgage loan, such as where the borrower does not make payments under the mortgage loan, the lender can foreclose on the property, sell it, and recover the value of the mortgage loan.

48.     Originating Mortgage Bankers either keep the mortgage loans or sell the mortgage loans to other entities, typically prior to or just after the closing of the properties and the mortgage loans.

49.     Originating Mortgage Bankers who initiate mortgage transactions and then sell or transfer their mortgage loans are referred to as correspondents. Correspondents often sell their mortgage loans to lenders who are known as wholesalers. Correspondents, in their contracts for sales of mortgage loans with wholesale Mortgage Bankers, typically promise that they will stand by the genuineness of the loan applications and other necessary paperwork.

50.     Mortgage Banker wholesalers typically agree to buy the mortgage loans from the correspondents in advance of the closings on the sales of the properties and the underlying mortgage loans. The wholesalers usually fund the mortgage loans with short term lines of credit

9

that they have previously established with large lending institutions. The wholesalers then either retain the mortgage loans, resell them individually to other investors, or bundle them with several hundred other mortgage loans and resell them by issuing bonds. This practice of bundling mortgage loans for use as collateral and interest for issuing bonds is quite common in the mortgage loan industry and is referred to as the securitization of mortgage loans.

51.     Wholesalers who fund mortgage loans originated by correspondents arrange for the mortgage loan funds to be deposited into the escrow accounts of closing attorneys, usually prior to or on the day of the closings. The wholesalers provide detailed instructions and pre-conditions to closing attorneys, who are responsible for ensuring that those instructions and pre-conditions are compiled with prior to the mortgage funds being released from the closing attorneys' escrow accounts.

## Title Insurance And Its Role In Real Estate Transactions

52.     Title insurance is insurance that provides for coverage, in return for premiums, for insuring, guaranteeing or indemnifying owners of real property or lenders of mortgage loans on real property against certain losses or damages as a result of defects in the titles or encumbrances on the titles of the real properties. Title insurance is usually purchased every time real property is purchased or refinanced. In most instances, mortgage lenders require that owners who will be borrowing money to finance their purchases of real property acquire title insurance coverage that also protects the mortgage loan lenders who will be lending money for the financing of the properties.

53.     In almost all instances, owners or borrowers who seek to purchase title insurance do not deal directly with the companies that provide title insurance, but rather, contact title agents who act as the brokers or middlemen between the title insurance companies and the

10

owners or borrowers. These title agents collect premiums, issue title insurance policies on behalf of the title insurance companies, and may perform other tasks relating to the transfers of interest in the properties, including filing deeds. Title agents may be, and often are, affiliated with more than one title insurance company. Title insurance companies have relationships with multiple title agencies.

54.     Here, the Title Insurance Defendants entered into agency agreements with Coastal Title as a title agent, under which Coastal Title was granted certain rights to conduct business on behalf of the Title Insurance Defendants. Pursuant to these agency agreements, the Title Insurance Defendants delegated certain responsibilities, which Coastal Title undertook to perform on behalf of and for the benefit of the Title Insurance Defendants. The responsibilities delegated to and undertaken by Coastal Title included the origination of applications for title insurance, the preparation of abstracts, the examination of titles to real estate, the preparation and issuance of commitments, binders, and reports of title, the issuance of policies of title insurance, the issuance of closing service protection letters, and the recording of all necessary papers.

55.     As part of the title insurance policies issued to owners who are borrowing money to finance their purchases of real property, title insurance companies typically issue title policies and closing service protection letters for the benefit of the mortgage loan lenders. In these closing service protection letters, the title insurance companies agree to indemnify the mortgage loan lenders against loss in connection with, among other things, fraud or misapplication by the closing attorneys. Usually, these closing service protection letters are required by mortgage loan lenders as pre-conditions to providing the mortgage loans. The title insurance companies will usually only issue such closing service protection letters, and provide indemnification against fraud, where the closings are handled by one of the companies' approved attorneys. True and

11

correct copies of sample closing service protection letters from each Title Insurance Defendant
are attached as Exhibits A, B and C.

## The New Jersey Mortgage Loan Frauds

56.     In contrast to the typical real estate transactions described above, the transactions
involved in this lawsuit were fraudulent. The participants in the frauds arranged to obtain
mortgage loans by artificially inflating the apparent values of the underlying properties, and by
deceiving Walsh Securities into financing the mortgage loans based on these inflated values. The
values were inflated through the participants' practice of purchasing the properties, and then
quickly reselling or "flipping" the properties. These subsequent resales took place immediately or
very soon after the first purchases. In some instances, the re-sales even took place the same day
as the first purchases. In all these "flips," the real properties at issue were resold for up to eight
times the immediately preceding sales prices. On the days of the closings, the Closing Attorneys
would fraudulently transfer the mortgage loan proceeds provided by Walsh Securities to
themselves and certain of the other RICO Defendants, even though the preconditions imposed by
Walsh Securities for the transfer of such proceeds had not been met.

## "The Cristo/Capital Assets" Enterprise

57.     The RICO Defendants carried out these frauds through an unlawful enterprise, an
association in fact of individuals and entities, including attorneys and appraisers (the enterprise is
hereafter referred to as "the Cristo/Capital Assets Enterprise" or "the Enterprise").

58.     The RICO Defendants formed the Cristo/Capital Assets Enterprise, among other
things, to turn real property into illicit profits generated by mortgage loan proceeds financed by
Walsh Securities, and to engage in other activities. Those loan proceeds were far in excess of the
actual value of the underlying properties because the loans were based on fraudulently inflated

12

appraisals. Each RICO Defendant personally played a role in the management and the operation of the Enterprise.

59.     The Cristo/Capital Assets Enterprise relied on the use of mortgage loan applications containing false information. Such false mortgage loan applications were reviewed, approved, and originated by William Kane and his companies using NHF, and then sold to Walsh Securities pursuant to a contract between Walsh Securities and NHF, with the understanding by members of the Cristo/Capital Assets Enterprise that Walsh Securities would rely on the fraudulent applications in deciding whether to accept the mortgage loans originated by the Cristo/Capital Assets Enterprise. A true and correct copy of the Program Participant Loan Purchase And Sale Agreement between NHF and Walsh Securities, through its predecessor in interest, is attached as Exhibit D. Apart from other illicit profits received, Skowrenski, through NHF, received fees from these transactions in excess of one million dollars.

60.     Unknown to Walsh Securities, the buyer/borrowers had secretly and fraudulently agreed to convey, after the closing on the resale of the real properties, a majority percentage of the ownership of each real property to a member of the Cristo/Capital Assets Enterprise. These secret and fraudulent conveyances constituted an act of default under the mortgage loans.

### The Pattern

61.     The Cristo/Capital Assets Enterprise carried out numerous fraudulent transactions through a pattern of frauds, as follows:

(a)     Kane, acting through Cristo Property and other entities, purchased real property located in New Jersey in, among other places, Monmouth, Essex, Union and Hudson Counties.

13

(b)     Kane, Grieser, Donna Pepsny and/or Cuzzi identified, through personal contacts, advertisements, and other means, individuals who were willing to buy these properties from Cristo Property and sign the mortgage loans. Typically, these properties were purchased as purported investment vehicles to be used as rental properties. Many of the properties, however, were abandoned and could not be rented.

(c)     Kane, acting through Cristo Property and/or NHF or other entities, had the properties appraised by licensed appraisers. In almost all instances, the property was appraised by Calanni, DiBenedetto, Brown, Brodo or Pierson.

(d)     Such appraisals were in all instances for amounts falsely inflated above what the properties were actually worth. These appraisals were for amounts up to eight times the actual value of the properties.

(e)     Mortgage loan applications for the borrowers/buyers of the properties were then compiled by the Cristo/Capital Assets Enterprise and submitted, through D'Apolito, to Walsh Securities. These applications were falsified in several material respects in order to induce Walsh Securities to finance mortgage loans well in excess of the true values of the properties.

Such false information included the following:

1) The applications included appraisals of the properties which were fraudulently inflated.

2) The applications included purported sales prices of the properties which reflected the fraudulent appraised values as opposed to the true values or sales prices of the properties.

14

3) The applications typically contained signed leases for the properties indicating that the properties would be income producing when, in fact, the properties were not leased.

4) The applications indicated that the buyers had provided the seller, Cristo Property, down payments for the properties, typically 10% of the sales price, when, in fact, no down payments were ever requested or provided.

5) The applications typically indicated that the seller, Cristo Property or other entities, had provided the buyers second mortgage loans in the properties, when, in fact, no bona fide second mortgages were provided and no second mortgage loan payments were ever made or intended to be made. These purported second mortgage loans were often never recorded by the Closing Attorneys or Coastal Title, further evidencing that they were not bona fide second mortgages.

6) The applications included representations that the buyers would own the entire properties, when, in fact, it was agreed prior to the sales that the buyers would transfer after the sales a sixty percent interest in the properties to Capital Assets under secret Joint Venture Agreements.

7) The applications indicated that the buyers would pay certain closing expenses, when, in fact, such expenses were paid by the seller, Cristo Property. In fact, the buyers bought the properties without paying any moneys to the seller, Cristo Property.

8) The applications typically contained other false information about the real estate transactions designed to present them as better credit risks.

(f)     D'Apolito received these mortgage loan applications from NHF and transmitted or caused them to be transmitted to his employer, Walsh Securities, to induce Walsh

15

Securities to finance the mortgage loans. In exchange for transmitting or causing to transmit the

applications to Walsh Securities, D'Apolito, through DAP Consulting, received cash payments

totaling at least $90,000.00 from Kane, through Cristo Property, and received cash payments in

excess of $10,000.00 from Skowrenski, through NHF. The payments were designed to, and did,

corrupt D'Apolito, place him in a conflict of interest, cause his loyalties to be divided, and cause

him to breach his obligations to Walsh Securities. The payments from NHF and Cristo Property

to D'Apolito were unknown by, and not disclosed to, Walsh Securities, which was misled into

believing that D'Apolito was acting as a faithful employee.

      (g)     On the days of the closings, the Closing Attorneys would fraudulently

transmit to themselves and certain other RICO Defendants, including Cristo Property and Capital

Assets, the proceeds of the mortgage loans illicitly obtained from Walsh Securities. The Closing

Attorneys transmitted those funds even though they were aware that one or all of the following

requirements and pre-conditions to the mortgage loans, among others, were not met: (1) the

borrowers and Cristo Property had not entered into a bona fide sales contract with a bona fide

sales price as required for closing; (2) the borrowers had not paid the down payment or deposit

required for closing; (3) Cristo Properties and the borrowers had not entered into a bona fide

second mortgage as required for closing; and (4) the borrowers had not paid certain closing

expenses required for closing. In addition, the Closing Attorneys, in furtherance of the fraud,

falsely certified at the time of the closings that the above mentioned pre-conditions to closing,

imposed by Walsh Securities, had been met. These false certifications were made on HUD-1

settlement statements, forms required by the United States Department of Housing and Urban

Development.

16

      (h)     The Closing Attorneys, along with Richard Pepsny and Alfieri, also furthered the fraud by preparing and recording or causing to be recorded various deeds involved in these transactions. These deeds included the deeds covering the sales to Cristo Property, the deeds from Cristo Property to the borrowers, and the deeds conveying an interest in sixty percent of the properties from the borrowers to Capital Assets.

      (i)     Typically, around the date designated to close these properties, the purchasers signed Powers of Attorney, secret Joint Venture Agreements with Capital Assets and deeds which conveyed sixty percent of the ownership in the properties to Capital Assets. A true and correct copy of a sample Joint Venture Agreement is attached as Exhibit E. A true and correct copy of a sample deed conveying sixty percent of the ownership in the properties to Capital Assets is attached as Exhibit F. (In Exhibit F Capital Assets is misspelled "Capital Assests.") These deeds conveying a sixty percent ownership interest were then filed or caused to be filed by either the Closing Attorneys or Coastal Title. The Joint Venture Agreements and deeds were never disclosed to Walsh Securities. Such conveyances constituted an immediate default under the terms and conditions of Walsh Securities' mortgage loans. Indeed, Walsh Securities would not have financed the mortgage loans had it been aware of the plans to reconvey interest in the properties.

      (j)     Capital Assets then collected the rents, if any, from the rental of these properties and pooled them, using funds from the pooled rents to pay Walsh Securities the mortgage loan payments when due and to pay other expenses of the properties. In addition, on information and belief, as in a classic pyramid fraud, funds from new mortgage loans were secretly used to make interest and principle payments on older loans. In this way, the Cristo/Capital Assets Enterprise misled Walsh Securities into believing that none of the loans

originated by the Cristo/Capital Assets Enterprise were delinquent. In fact, as further evidence of

a classic pyramid fraud relying on new transactions to continue to fund the older transactions,

most of the properties that were claimed to be renovated were never renovated and thus could not

be rented. Additionally, at other properties which contained individuals who could have been

renters, no attempts were made to collect rent from those individuals who were living in the

properties.

        (k)     There were several variations on the scam:

        1) Some borrowers/buyers were induced to invest $1,000.00 in a

corporation on the promises by Cuzzi that the borrowers/buyers would receive a return of

$6,000.00.  Cuzzi had these purchasers execute secret Joint Venture Agreements, deeds

conveying sixty percent of the properties to Capital Assets and Powers of Attorney and provide

their names and social security numbers. Upon information and belief, Cuzzi was an employee of

Capital Assets and was paid a fee for each mortgage loan.

        2) Another variation included simply obtaining the purchasers' names and

social security numbers. Instead of attending closings, the purchasers signed papers which were

then returned to the Closing Attorneys. The purchasers also executed the secret Joint Venture

Agreements, deeds conveying sixty percent of the properties to Capital Assets and Powers of

Attorney in exchange for payments of $1,000.00 to $3,000.00 per purchased property. Capital

Assets then purportedly managed the property including making all necessary payments,

including mortgage loan payments. Upon information and belief, an individual named Brian

Reilly on at least one occasion on behalf of the Cristo/Capital Assets Enterprise traveled to New

York to deliver closing papers which were signed by the purchasers, notarized by Reilly, and

18

then returned to Capital Assets, Cuzzi and/or Grieser without the purchasers attending any closings.

     3) Upon information and belief, Cicalese traveled to New York to deliver closing papers which were signed by the purchasers and then returned by Cicalese to Capital Assets, Cuzzi and/or Grieser without the purchasers attending any closings. Instead of attending closings, the purchasers simply signed the secret Joint Venture Agreements, deeds conveying sixty percent of the properties to Capital Assets and Powers of Attorney which were then returned to the Closing Attorneys. Capital Assets then purportedly managed the property including making all necessary payments, including mortgage loan payments.

    (l)  In sum, upon information and belief, like traditional pyramid schemes, money obtained by the Cristo/Capital Assets Enterprise through the fraudulently obtained mortgage proceeds from Walsh Securities was used to pay future investors, purchasers, and/or existing mortgage loans, as well as to provide illicit profits for the members of the Cristo/Capital Assets Enterprise.

    (m)  Since on or about June 30, 1997, certain of these properties have become delinquent in the payment of the mortgage loans. Due to the inflated amounts of the appraisals, Walsh Securities was unable to recoup the full amounts of the outstanding mortgage loans even if it foreclosed on the properties.

  62.  The operations of the Cristo/Capital Assets Enterprise are illustrated in the following examples of specific properties "flipped" by the Cristo/Capital Assets Enterprise:

    (a)  600 5th Avenue, Asbury Park, New Jersey.

1) Kane, acting through Cristo Property, purchased 600 5th Avenue, Asbury Park, New Jersey on December 10, 1996 for $90,000.00, which property was fraudulently appraised by Calanni for $182,500.00.

2) On December 27, 1996, 17 days after it was purchased by Cristo Property, 600 5th Avenue, Asbury Park, New Jersey was sold by Cristo Property to an individual borrower/buyer with the initials K.P. for the purported amount of $182,500.00. In fact, the sales contract was not a bona fide contract because K.P. never intended to pay that amount for the property and Cristo Property never intended to receive that amount for the property. The deed for that fraudulent transaction was prepared and signed by Richard Pepsny and filed by Coastal Title.

3) A mortgage loan on the property, in K.P.'s name, was originated by NHF. Walsh Securities, based on the fraudulent misrepresentations contained in the loan application, financed the mortgage loan in the amount of $127,750.00.

4) A down payment in the amount of $18,250.00 was purportedly provided by K.P. to Cristo Property. In fact, no down payment was ever made.

5) A second mortgage loan for $36,500 at a 6% interest rate was purportedly given by Cristo Property to K.P. In fact, the second mortgage was not a bona file second mortgage loan because Cristo Property never intended to receive payment from K.P. for that loan and K.P. never intended to make payment for that loan. Moreover, the second mortgage loan was never recorded.

6) In order to fraudulently represent that the property would be used as a rental property to produce income for mortgage payments, the Cristo/Capital Assets Enterprise generated false rental agreements which were attached to K.P.'s mortgage loan application.

7) Yacker was the closing attorney on this mortgage loan, and transmitted the loan proceeds to himself and to other members of the Enterprise, including Cristo Property and Capital Assets. Yacker transmitted such funds even though he knew that the following pre-conditions, among others, to the closing imposed by Walsh Securities were not met: (1) there was no bona fide sales contract or bona fide sales price; (2) K.P. had not paid a down payment or deposit; (3) there was no bona fide second mortgage; and (4) K.P. had not paid certain closing costs. Yacker certified on a HUD-1 settlement statement required by the United States Department of Housing and Urban Development that all closing pre-conditions were met, when, in fact, he knew that they were not met.

8) Prior to the closing, Fidelity Title issued a title insurance policy and a closing service protection letter to Walsh Securities, which requires Fidelity Title to reimburse Walsh Securities for loss arising out of fraud or misapplication by Coastal Title and/or Yacker, an attorney approved by Fidelity Title to perform closings, to comply with Walsh Securities' written closing instructions, or fraud of or misapplication by Coastal Title and/or Yacker in handling Walsh Securities' funds.

9) After the closing, Yacker caused Coastal Title to file a deed transferring a sixty percent interest in the property to Capital Assets.

(b)    1017-1019 Bangs Avenue, Asbury Park, New Jersey.

1) Kane, acting through Cristo Property, purchased 1017-1019 Bangs Avenue, Asbury Park, New Jersey on July 25, 1996 for $28,000.00, which Property was fraudulently appraised by Brown for $200,000.00.

2) On that same day, July 25, 1996, Cristo Property sold 1017- 1019 Bangs Avenue, Asbury Park, New Jersey for $200,000.00 to an individual borrower/buyer with

21

the initials J.M. In fact, the sales contract was not a bona fide contract because J.M. never intended to pay that amount for the property and Cristo Property never intended to receive that amount for the property. The deed for that fraudulent transaction was prepared by Richard Pepsny and filed by Coastal Title.

3) A mortgage loan on the property, in J.M.'s name, was originated by NHF. Walsh Securities, based on the fraudulent misrepresentations contained in the loan application, financed the mortgage loan in the amount of $150,000.00.

4) A down payment in the amount of $20,000.00 was purportedly provided by J.M. to Cristo Property. In fact, no down payment was ever made.

5) J.M.'s mortgage loan application contains a "gift letter" from defendant Cuzzi which states that he is the brother-in-law of J.M. This gift letter is supposed to evidence a gift of $10,500.00 towards the purchase of the property, and, upon information and belief, said gift was never made, nor was the gift that was to be part of the down payment ever given to the seller.

6) A second mortgage loan for $30,000 at a 6% interest rate was purportedly given by Cristo Property to J.M. In fact, the second mortgage was not a bona fide second mortgage loan because Cristo Property never intended to receive payment from J.M. for that loan and J.M. never intended to make payment for that loan. Moreover, the second mortgage loan was never recorded.

7) Yacker was the closing attorney on this mortgage loan, and transmitted the loan proceeds to himself and to other members of the Enterprise, including Cristo Property and Capital Assets. Yacker transmitted such funds even though he knew that the following pre-conditions, among others, to the closing imposed by Walsh Securities were not met: (1) there

22

was no bona fide sales contract or bona fide sales price; (2) J.M. had not paid a down payment or deposit; (3) there was no bona fide second mortgage; and (4) J.M. had not paid certain closing costs. Yacker certified on a HUD-1 settlement statement required by the United States Department of Housing and Urban Development that all closing pre-conditions were met, when, in fact, he knew that they were not met.

8) Prior to the closing, Commonwealth Title issued a title insurance policy and closing service protection letter to Walsh Securities, which requires Commonwealth Title to reimburse Walsh Securities for loss arising out of fraud or misapplication by Coastal Title and/or Yacker, an attorney approved by Commonwealth Title to perform closings, to comply with Walsh Securities' written closing instructions, or fraud of or misapplication by Coastal Title and/or Yacker in handling Walsh Securities' funds.

9) After the closing, Yacker caused Coastal Title to file a deed transferring a sixty percent interest in the property to Capital Assets.

63.     There are over two hundred and twenty instances of fraudulent transactions similar to the two outlined above.

## Consequences Visited Upon Walsh Securities

64.     Following proper and timely demands by Walsh Securities that their losses be covered under the closing service protection letters and/or the title insurance policies, the Title Insurance Defendants failed to process and pay the covered claims.  To date, the Title Insurance Defendants have refused to process and pay these claims.

65.     Additionally, as a result of the aforementioned acts, Walsh Securities experienced the diminution and/or complete loss of its value as a going concern, which exceeded $450 million.

## COUNT I

## VIOLATION OF 18 U.S.C. § 1962(c) (RICO)

66.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 65 as if fully set forth herein.

67.     18 U.S.C. Section 1962(c) makes it "unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ."

68.     All the RICO Defendants are persons within the meaning of 18 U.S.C. § 1961(3).

69.     In violation of the above-mentioned statute, the RICO Defendants associated with the Cristo/Capital Assets Enterprise, which was an association in fact consisting of the RICO Defendants together and with other persons not known to Plaintiff.

70.     The Cristo/Capital Assets Enterprise engaged in, and conducted activities which affected, interstate commerce.

71.     Each RICO Defendant conducted and participated in the conduct of the affairs of the Cristo/Capital Assets Enterprise and played a role in the management and operation of the enterprise through a pattern of racketeering activities, which included, but was not limited to, wire fraud and commercial bribery.

72.     This pattern of racketeering included the following illegal acts defined as predicate acts of RICO liability under 18 U.S.C. § 1961, including, but not limited to the following:

(a)     Wire fraud, as described in 18 U.S.C. § 1343, in that for the purposes of executing the RICO Defendants' scheme and artifice to defraud, and to obtain money and

property by means of false and fraudulent pretenses, representations, and promises, in each instance where Walsh Securities agreed to finance a mortgage loan originated by the Cristo/Capital Assets Enterprise, Walsh Securities wired its authorization to release funds in its line of credit to a lender in Connecticut. Walsh Securities then sent by facsimile the necessary closing service documents to a bank in Texas that acted as the custodian for the lender in Connecticut. Once satisfied that the necessary documentation was present, that bank in Texas then sent by facsimile its authorization to the Lender in Connecticut, who, in turn, then wired a bank in New York which bank then wired funds to the escrow accounts of the Closing Attorneys in New Jersey.

(b) Commercial bribery, as described in N.J.SA § 2C:21-10, in that D'Apolito, through DAP Consulting, received over $10,000.00 from Skowrenski (through NHF) and at least $90,000.00 from Kane (through Cristo Property) for transferring or causing to transfer the loans originated by the Cristo/Capital Assets Enterprise and financed by Walsh Securities.

73.   The above-mentioned predicate acts of racketeering activity conducted by the RICO Defendants through the Cristo/Capital Assets Enterprise caused Walsh Securities to finance mortgage loans based on falsely inflated appraisals for real properties and other fraudulent acts by the RICO Defendants. The members of the Cristo/Capital Assets Enterprise were illicitly enriched through the receipt of the mortgage loan proceeds financed by Walsh Securities. Many of these mortgage loans became delinquent and/or defaulted. Based on the falsely inflated appraisals for the real properties and other fraudulent acts by the RICO Defendants, Walsh Securities has been unable to recoup the full amounts of many of the outstanding mortgage loans.

74.     By reason of the aforesaid violations of 18 U.S.C. § 1962(c) plaintiff has suffered the following foreseeable losses and damages:

(a)     the losses of moneys loaned based on the falsely appraised real properties and other fraudulent representations. Many of the properties are worth far less than the mortgage loans originated by the Cristo/Capital Assets Enterprise, and, therefore, Walsh Securities has not been able to recover the full amounts loaned;

(b)     the fraud perpetrated against Walsh Securities has injured the business reputation of Walsh Securities and caused Walsh Securities to lose a substantial amount of business and profits;

(c)     other consequential, incidental and special damages.

WHEREFORE, on this COUNT, plaintiff prays that the Court find and determine that the RICO Defendants are liable to it, jointly and severally, for violations of 18 U.S.C. § 1962(c), and award treble damages, attorneys' fees and costs, and other such relief as may be appropriate.

## COUNT II

## VIOLATION OF 18 U.S.C. § 1962(d) (RICO)

75.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 74 as if fully set forth herein.

76.     18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any provisions of subsection. . . (c) of this section."

77.     Through a series of activities outlined above in Count I, the RICO Defendants conspired to violate 18 U.S.C. § 1962(d) as set forth above.

26

78.    Each of the RICO Defendants willfully and knowingly agreed and conspired with other RICO Defendants to commit the above referenced predicate acts of wire fraud and commercial bribery.

79.    By reason of the aforesaid violations of 18 U.S.C. § 1962(d) plaintiff has suffered the following foreseeable losses and damages:

(a)    the losses of moneys loaned based on the falsely appraised real properties and other fraudulent acts of the RICO Defendants. Many of the properties are worth far less than the mortgage loans originated by the Cristo/Capital Assets Enterprise, and, therefore, Walsh Securities has not been able to recover the full amounts loaned;

(b)    the fraud perpetrated against Walsh Securities has injured the business reputation of Walsh Securities and caused Walsh Securities to lose a substantial amount of business and profits;

(c)    other consequential, incidental and special damages.

WHEREFORE, on this COUNT, plaintiff prays that the Court find and determine that the RICO Defendants are liable to it, jointly and severally, for violations of 18 U.S.C. § 1962(d), and award treble damages, attorneys' fees and costs, and other such relief as may be appropriate.

## COUNT III

## COMMON-LAW FRAUD

80.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 79 as if fully set forth herein.

81.    By the illegal and fraudulent acts and schemes described above, the RICO Defendants willfully and intentionally defrauded Walsh Securities and made or caused to be made false, fraudulent and material misrepresentations and omissions to plaintiff concerning

27

mortgage loans bought by Walsh Securities from NHF. Each of these mortgage loans originated by the Cristo/Capital Assets Enterprise were fraudulently obtained in that they were based on falsely inflated appraisals. In addition, these mortgage loans also were made based on other information falsely provided to Walsh Securities including incorrect credit histories and or statements of net worth, among other things.

82.     Coastal Title issued, on behalf of the Title Insurance Defendants, closing service protection letters and title insurance commitments with the intent and purpose that Walsh Securities would rely on the same. In doing so, Coastal Title failed to disclose that the loan transactions at issue were fraudulent and that the closing documents were not timely and properly recorded.

83.     In making and carrying out these material misrepresentations, the RICO Defendants, and each of them, intended to and did deceive Plaintiff.

84.     Plaintiff believed and relied upon these material misrepresentations and omissions.

85.     As a direct and proximate result of the RICO Defendants' material misrepresentations and omissions plaintiff suffered damages substantially in excess of $400,000,000.00.

WHEREFORE, on this COUNT, plaintiff prays that the Court find and determine that the RICO Defendants are liable to it, jointly and severally, for common-law fraud and award damages, punitive damages and other such relief as may be appropriate.

### COUNT IV

### BREACH OF CONTRACT BY NHF

86.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through

85 as if fully set forth herein.

87.    On April 24, 1995, NHF and Walsh Securities (through its predecessor in interest GF Mortgage Corp.), entered into a Program Participant Loan Purchase And Sale Agreement (the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit D. The Agreement between NHF and plaintiff was entered into in exchange for consideration and contained mutual covenants. The Agreement covered the sale of mortgage loans from NHF to Walsh Securities involved in the Cristo/Capital Assets Enterprise.

88.    Plaintiff has duly performed all the conditions of the Agreement.

89.    NHF, as the seller of mortgage loans, agreed to certain "Representations, Warranties and Covenants of Seller" in Article 6 of the Agreement, including the representation that all information in the loan applications prepared by NHF was true and correct. NHF has breached its representations because the loan applications contained falsely inflated appraisals and other false information.

90.    Plaintiff has notified NHF of its breach of the Agreement and its obligation to repurchase said mortgage loans. NHF has refused to repurchase said mortgage loans, in violation of Article 6 of the Agreement.

91.    By reason of the foregoing facts, plaintiff has been damaged in excess of $400,000,000.00. WHEREFORE, on this COUNT, plaintiff prays that the Court find and determine that the NHF is liable to it for breach of contract and award damages, attorneys fees and other such relief as may be appropriate.

## COUNT V

## BREACH OF CONTRACT BY THE TITLE INSURANCE DEFENDANTS

92.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through

29

91 as if fully set forth herein.

93.    In conjunction with real property transactions involving the Cristo/Capital Assets Enterprise, borrowers of mortgage loans from plaintiff obtained title insurance from the Title Insurance Defendants. The Title Insurance Defendants, in exchange for valuable consideration, provided Walsh Securities with title insurance policies and closing service protection letters covering the conduct of the Closing Attorneys, who were specifically approved by the Title Insurance Defendants. Walsh Securities required such title insurance policies and closing service protection letters as a pre-condition to its agreeing to provide the mortgage loans.

94.    Pursuant to these title insurance policies and closing service protection letters, the Title Insurance Defendants were and are required to reimburse plaintiff for losses arising out of, among other things, "[f]ailure of the Issuing Agent or Attorney to comply with [Walsh Securities'] written closing instructions," or fraud of or misapplication by the Issuing Agents or Closing Attorneys in handling Walsh Securities' funds. True and correct copies of sample closing service protection letters from each Title Insurance Defendant are attached as Exhibits A, B and C.

95.    Coastal Title and/or the Closing Attorneys failed to comply with Walsh Securities' closing instructions and/or engaged in fraud and misapplication in connection with the Cristo/Capital Assets Enterprise. Among other things, the Closing Attorneys fraudulently transferred mortgage loan proceeds knowing that the following pre-conditions to closings imposed by Walsh Securities, among others, had not been satisfied: (1) the borrowers and Cristo Property had not entered into a bona fide sales contract with a bona fide sales price as required for closing; (2) the borrowers had not paid the down payment or deposit required for closing; (3) Cristo Properties and the borrowers had not entered into a bona fide second mortgage as required

30

for closing; (4) the borrowers had not paid certain closing expenses required for closing; and (5) the Closing Attorneys fraudulently transmitted by facsimile to Walsh Securities falsified HUD-1 Closing Statements that concealed the fact that closing funds were repeatedly being disbursed to certain RICO Defendants, in part for the seller (Cristo) to purchase the property several days after closing on the sale of the property. Walsh Securities has incurred substantial loss as a result of the fraud and/or misapplication by the Closing Attorneys.

96.     Plaintiff has duly performed all of its obligations under the closing service protection letters and title insurance policies of the Title Insurance Defendants and has notified the Title Insurance Defendants of its losses as a result of, among other things, the RICO scheme alleged herein, and Coastal Title's and/or the Closing Attorneys' noncompliance with Walsh Securities' closing instructions and their fraud and/or misapplication of Walsh Securities' funds.

97.     The Title Insurance Defendants have failed to reimburse plaintiff for the losses, which are covered under the closing service protection letters and/or the title insurance policies.

98.     The law imposes on every contract a duty of good faith and fair dealing. In the context of an insured's claim for coverage under a contract of insurance, the insurer's duty of good faith includes a duty to process and pay covered claims in a reasonable time, or to conduct a meaningful and timely investigation to determine whether a reasonable basis for denial exists.

99.     The Title Insurance Defendants breached their respective duties of good faith and fair dealing by failing to process and pay covered claims in a reasonable time. In connection therewith, the Title Insurance Defendants knew or recklessly disregarded the fact that they lacked a reasonable basis for denying the claims. This is evidenced, in part, by the Title Insurance Defendants' reckless indifference to facts or proofs submitted by Walsh Securities and

31

by the Title Insurance Defendants' premature terminations of their investigation upon the filing of this action against them seeking coverage.

100.    As a natural and probable consequence of the aforesaid breach of contract and covenant of good faith and fair dealing, Walsh Securities has been substantially damaged, including consequential damages encompassing the diminution and/or complete loss of its value as a going concern, which exceeded $450 million.

WHEREFORE, on this COUNT, plaintiff Walsh Securities prays that the Court find and determine that the closing service protection letters and/or the title insurance policies provide coverage to Walsh Securities for losses suffered in connection with the loan transactions at issue, and that the Title Insurance Defendants breached their contract and the duty of good faith and fair dealing under the closing service protection letters and/or title insurance policies and are liable for all of the natural and probable consequences of such a breach of contract, including consequential damages, attorneys' fees, and other such relief as may be appropriate.

## COUNT VI

## NEGLIGENCE BY ALFIERI, CICALESE AND RICHARD PEPSNY

101.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 100 as if fully set forth herein.

102.    Defendants Alfieri, Cicalese and Richard Pepsny were at all relevant times attorneys licensed by the New Jersey Supreme Court and engaged in the practice of law, including participation in what is generally known as real estate closings and title work.

103.    Defendant Alfieri was called upon to prepare the necessary closing documents and represent various interests including the interests of seller, purchaser, subsequent purchaser, mortgagee and to act in a professional capacity to assist in preparing documents, completing

32

required forms, reviewing title reports, and in closing various transactions of conveyance and mortgage between many of the parties described above.

104. Defendant Cicalese was called upon to prepare the necessary closing documents and represent various interests including the interests of seller, purchaser, subsequent purchaser, mortgagee and to act in a professional capacity to assist in preparing documents, completing required forms, reviewing title reports, and in closing various transactions of conveyance and mortgage between many of the parties described above.

105. Defendant Richard Pepsny was called upon to prepare the necessary closing documents and represent various interests including the interests of seller, purchaser, subsequent purchaser, mortgagee and to act in a professional capacity to assist in preparing documents, completing required forms, reviewing title reports, and in closing various transactions of conveyance and mortgage between many of the parties described above.

106. Defendants Alfieri, Cicalese and Richard Pepsny were selected by NHF, Capital Assets and/or Cristo Property to facilitate the real property closing involving mortgage loans originated by NHF and subsequently sold to Walsh Securities.

107. By virtue of the status of defendants Alfieri, Cicalese and Richard Pepsny, and by virtue of the licenses granted to them by the New Jersey Supreme Court to practice law, and based upon the ordinary practices and procedures established for the practice of law, Alfieri, Cicalese and Richard Pepsny had certain duties and obligations to carry out their closing requirements in the ordinary course in each transaction at issues in this Complaint.

108. Plaintiff Walsh Securities was within the class of persons relying upon the expertise of defendants Alfieri, Cicalese and Richard Pepsny in each transaction at issue in this Complaint.

33

109.    Notwithstanding their duties, in each transaction at issue in this Complaint,

defendants Alfieri, Cicalese and Richard Pepsny negligently failed to adhere to such standards

and by virtue of such negligence, and as a direct result thereby, Walsh Securities suffered

substantial damages. Defendants Alfieri, Cicalese and Richard Pepsny breached their respective

duties of ordinary care owed to Walsh Securities by, *inter alia*, failing to exercise that degree of

ordinary care necessary to facilitate real property closings involving mortgage loans originated

by NHF and subsequently sold to Walsh Securities. In particular, defendants Alfieri, Cicalese

and Richard Pepsny failed to meet or otherwise enforce the following mortgage loan

requirements and preconditions: (1) the borrowers and Cristo Property had not entered into a

bona fide sales contract with a bona fide sales price as required for closing; (2) the borrowers had

not paid the down payment or deposit required for closing; (3) Cristo Properties and the

borrowers had not entered into a bona fide second mortgage as required for closing; and (4) the

borrowers had not paid certain closing expenses required for closing.

110.    In addition, defendants Alfieri, Cicalese and Richard Pepsny (1) negligently failed

to alert Walsh Securities that deposit monies called for in various transactions were not actually

provided by the purchasers; (2) negligently prepared documents which by their very nature were

inconsistent with the terms of the mortgage issued in favor of Walsh Securities; (3) negligently

failed to record certain documents which were part of the transaction; and (4) negligently failed

to follow the procedures which in the ordinary closing, fee and mortgagee, should have been

followed.

WHEREFORE, on this COUNT, plaintiff Walsh Securities prays that the Court find and

determine that defendants Alfieri, Cicalese and Richard Pepsny are liable to it, jointly and

34

severally, for negligence and award damages, punitive damages and other such relief as may be appropriate.

## COUNT VII

### WRONGFUL DELAY AND/OR DENIAL OF INSURANCE CLAIM BY TITLE INSURANCE DEFENDANTS

111.   Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 110 as if fully set forth herein.

112.   The Title Insurance Defendants' failure to process and pay covered claims in a reasonable time was done intentionally without debatable reason and/or in reckless disregard of the fact that they had no valid reason for doing so.

113.   As a natural and probable consequence of the aforementioned conduct, Walsh Securities has been substantially damaged, including consequential damages encompassing the diminution and/or complete loss of its going-concern value.

WHEREFORE, on this COUNT, plaintiff Walsh Securities prays that the Court find and determine that the Title Insurance Defendants are liable to it for wrongful delay and/or denial of the insurance claims, and award damages, including consequential damages, attorneys' fees, and such other relief as may be appropriate.

## COUNT VIII

### DECLARATION OF COVERAGE AGAINST THE TITLE INSURANCE DEFENDANTS

114.   Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 113 as if fully set forth herein.

35

115.   The Title Insurance Defendants failed to reimburse Walsh Securities for the aforesaid losses, which Walsh Securities asserts are covered under the closing service protection letters and/or the loan policies.

116.   Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Walsh Securities seeks a declaration of the rights, duties, and obligations of the parties with respect to the title insurance policies and closing service protection letters and that the issuance of a declaratory judgment will terminate some or all of the existing controversy between the parties.

WHEREFORE, on this COUNT, plaintiff Walsh Securities prays that the Court declare and adjudge that the closing service letters and/or the loan policies provide coverage to Walsh Securities for losses suffered in connection with the loan transactions at issue.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against:

1.     All RICO Defendants jointly and severally awarding plaintiff the following relief:

(a)   Compensatory and consequential damages in an amount as yet undetermined, trebled pursuant to 18 U.S.C. § 1964(c); and

(b)   Costs of this action, including reasonable attorneys' fees, pursuant to 18 U.S.C. § 1 964(c); and

(c)   An award of punitive damages as a result of defendants' fraud; and

(d)   Other such relief as is just and equitable;

2.     NHF awarding plaintiff the following relief:

(a)   Compensatory and consequential damages in an amount as yet undetermined, and

(b)   Costs of this action, including reasonable attorneys' fees, and

36

       (c)      Other such relief as is just and equitable.

3.     All the Title Insurance Defendants awarding plaintiff the following relief:

       (a)      Compensatory and consequential damages in an amount as yet

undetermined,

       (b)      Costs of this action, including reasonable attorneys' fees, and

       (c)      Other such relief as is just and equitable.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury for all issues for which it has a right to a trial by jury.

Respectfully submitted,

/s/
Robert A. Magnanini
**STONE & MAGNANINI LLP**
150 John F. Kennedy Parkway, 4th floor
Short Hills, New Jersey 07078
(973) 218-1111
Counsel for Plaintiff Walsh Securities, Inc.

Dated: July 10, 2009

37

EXHIBIT "C"

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant/Third-Party Plaintiff,
Commonwealth Land Title Insurance Company

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>CRISTO PROPERTY MANAGEMENT, LTD., a/k/a<br>G.J.L. LIMITED, DEK HOMES OF NEW JERSEY,<br>INC., OAKWOOD PROPERTIES INC.,<br>NATIONAL HOME FUNDING, INC., CAPITAL<br>ASSETS PROPERTY MANAGEMENT &<br>INVESTMENT CO., INC., CAPITAL ASSETS<br>PROPERTY MANAGEMENT, L.L.C., WILLIAM J.<br>KANE, GARY GRIESER, ROBERT<br>SKOWRENSKI, II, RICHARD CALANNI,<br>RICHARD DIBENEDETTO, JAMES R. BROWN,<br>THOMAS BRODO, RONALD J. PIERSON,<br>STANLEY YACKER, ESQ., MICHAEL ALFIERI,<br>ESQ., RICHARD PEPSNY, ESQ., ANTHONY M.<br>CICALESE, ESQ., LAWRENCE M. CUZZI,<br>ANTHONY D'APOLITO, DAP CONSULTING,<br>INC., COMMONWEALTH LAND TITLE<br>INSURANCE COMPANY, NATIONS TITLE<br>INSURANCE OF NEW YORK INC., FIDELITY<br>NATIONAL TITLE INSURANCE COMPANY OF<br>NEW YORK, COASTAL TITLE AGENCY,<br>DONNA PEPSNY, WEICHERT REALTORS, and<br>VECCHIO REALTY, INC. D/B/A MURPHY<br>REALTY BETTER HOMES and GARDENS,<br><br>                    Defendants.<br><br>and<br><br>COMMONWEALTH LAND TITLE INSURANCE<br>COMPANY<br><br>            Defendant/Third-Party Plaintiff,<br><br>v.<br><br>ROBERT WALSH, JAMES WALSH and<br>ELIZABETH ANN DeMOLA,<br><br>            Third-Party Defendants. | Civil Action No. 97-cv-3496 (DRD) (MAS)<br>Honorable Dickinson R. Debevoise<br><br><br><br>**ANSWER TO FOURTH AMENDED<br>COMPLAINT, SEPARATE DEFENSES,<br>ANSWER TO CROSS-CLAIMS, CROSS-<br>CLAIM FOR CONTRIBUTION, CROSS-<br>CLAIM FOR INDEMNIFICATION AND<br>THIRD-PARTY COMPLAINT AGAINST<br>ROBERT WALSH, JAMES WALSH AND<br>ELIZABETH ANN DeMOLA** |

ME1 8783046v.1

Defendant/Third-Party Plaintiff Commonwealth Land Title Insurance Company (hereinafter "Commonwealth"), a corporation of the Commonwealth of Pennsylvania, having its principal place of business in the Commonwealth of Virginia, by way of Answer to the Fourth Amended Complaint, says:

1.     Answering the allegations of paragraph 1, insofar as they are directed at this defendant, they are denied.  This defendant is without sufficient knowledge of information to admit or deny the remaining allegations of paragraph 1.

## AS TO PARTIES

2.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 2.

3.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 3.

4.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 4.

5.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 5.

6.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 6.

7.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 7.

8.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 8.

9.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 9.

-2-

MEI 8783046v.1

10.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 10.

11.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 11.

12.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 12.

13.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 13.

14.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 14.

15.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 15.

16.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 16.

17.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 17.

18.     Answering the allegations of paragraph 18, this defendant admits that to its knowledge defendant Stanley Yacker, Esq. was an attorney admitted to practice in New Jersey. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 18.

19.     Answering the allegations of paragraph 19, this defendant admits that to its knowledge defendant Michael Alfieri, Esq. was an attorney admitted to practice in New Jersey.

-3-

ME1 8783046v.1

This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 19.

20.    Answering the allegations of paragraph 20, this defendant admits that to its knowledge defendant Richard Pepsny, Esq. was an attorney admitted to practice in New Jersey. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 20.

21.    Answering the allegations of paragraph 21, this defendant admits that to its knowledge defendant Anthony M. Cicalese, Esq. was an attorney admitted to practice in New Jersey. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 21.

22.    Answering the allegations of paragraph 22, this defendant admits that on certain transactions closing service letters were issued on behalf of defendant Yacker and defendant Cicalese. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 22.

23.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 23.

24.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 24.

25.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 25.

26.    Answering the allegations of paragraph 26, this defendant admits that at the time of the transactions referred to in the Fourth Amended Complaint it was a corporation of the Commonwealth of Pennsylvania with its principal place of business in the Commonwealth of

MEI 8783046v.1

Pennsylvania.   This defendant states that at the current time it is a corporation of the Commonwealth of Pennsylvania with its principal place of business in the Commonwealth of Virginia. The remaining allegations of paragraph 26 are denied.

27.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 27.

28.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 28.

29.    Answering the allegations of paragraph 29, this defendant admits that defendant Coastal Title Agency, Inc. engages in business in New Jersey and is and was licensed as a title insurance agent by the State of New Jersey. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 29.

30.    Answering the allegations of paragraph 30, this defendant admits that it is a title insurer and admits that defendant Coastal Title Agency, Inc. issued certain Closing Service Letters. With respect to the terms of the Closing Service Letters, they speak for themselves. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 30.

31.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 31.

32.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 32.

33.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 33.

MEI 8783046v.1

## AS TO JURISDICTION

34.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 34.

## AS TO VENUE

35.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 35.

## AS TO INTRODUCTION

36.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 36.

37.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 37.

38.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 38.

39.     Answering the allegations of paragraph 39, this defendant admits that defendant Coastal Title Agency, Inc. issued certain Closing Service Letters. Insofar as the remaining allegations of paragraph 39 are directed at this defendant, they are denied. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 39.

## AS TO FACTUAL ALLEGATIONS

### The Mortgage Banking Industry

40.     Answering the allegations of paragraph 40, this defendant admits that a loan can be made in which real property is used as collateral for the loan. The remaining allegations of paragraph 40 are denied.

41.     The allegations of paragraph 41 are admitted.

-6-

ME1 8783046v.1

42.    Answering the allegations of paragraph 42, this defendant admits that certain mortgage bankers do not utilize their own funds in making mortgage loans, and that certain mortgage bankers sell mortgage loans to other parties which provide the funds for the borrowers at the time of closings. This defendant further admits that in certain transactions mortgage bankers are paid fees by borrowers for originating mortgage loans. This defendant further admits that mortgage bankers can be licensed by the State of New Jersey. The remaining allegations of paragraph 42 are denied.

43.    Answering the allegations of paragraph 43, this defendant admits that there are certain borrowers who cannot obtain traditional financing because of an increased delinquency risk and who accordingly pay a higher than market interest rate. The remaining allegations of paragraph 43 are denied.

44.    Answering the allegations of paragraph 44, this defendant admits that mortgage loan applications are taken for mortgage loans. The remaining allegations of paragraph 44 are denied.

45.    Answering the allegations of paragraph 45, this defendant admits that there are certain mortgage bankers who deal directly with borrowers and who take certain paperwork from prospective borrowers, including mortgage loan applications and other documents. The remaining allegations of paragraph 45 are denied.

46.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 46.

47.    Answering the allegations of paragraph 47, this defendant admits that with respect to certain mortgage loans appraisals of the property securing the loan are done. This defendant

also admits that on certain mortgage loans appraisals are relied upon by certain lenders. The remaining allegations of paragraph 47 are denied.

48.    The allegations of paragraph 48 are denied.

49.    Answering the allegations of paragraph 49, this defendant admits that there are persons known as "Correspondents" who sell mortgage loans to lenders. The remaining allegations of paragraph 49 are denied.

50.    Answering the allegations of paragraph 50, this defendant admits that certain entities buy mortgage loans from correspondents and those entities fund the mortgage loans in a variety of ways, and from time to time those entities retain the mortgage loans or resell them. The remaining allegations of paragraph 50 are denied.

51.    Answering the allegations of paragraph 51, this defendant admits that certain entities who fund mortgage loans originated by correspondents provide certain instructions to closing attorneys. The remaining allegations of paragraph 51 are denied.

## AS TO TITLE INSURANCE AND ITS ROLE IN REAL ESTATE TRANSACTIONS

52.  .  Answering the allegations of paragraph 52, this defendant admits that title insurance is insurance that provides for specified coverage in return for premiums. This defendant further admits that title insurance is from time to time purchased when real property is purchased or refinanced, and that certain mortgage lenders require that owners who borrow money to finance purchases of real property acquire title insurance coverage. The remaining allegations of paragraph 52 are denied.

53.    Answering the allegations of paragraph 53, this defendant admits that from time to time owners or borrowers who seek to purchase title insurance do not deal directly with the title insurer in connection with purchase of the insurance. This defendant also admits that from time to time title agents perform certain specified tasks with respect to the purchase of title

-8-

insurance. This defendant also admits that from time to time certain agents may be affiliated with more than one title insurance company. This defendant also admits that from time to time certain title insurance companies may have relationships with more than one title agency. The remaining allegations of paragraph 53 are denied.

54.     Answering the allegations of paragraph 54, insofar as they are directed at this defendant, they are denied. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 54.

55.     Answering the allegations of paragraph 55, this defendant admits that certain title insurers and/or their agents on certain occasions issue Closing Service Letters. With respect to the terms of the Closing Service Letters, they speak for themselves. This defendant admits that Exhibit A attached to the Complaint is a Closing Service Letter issued by co-defendant Coastal Title Agency, Inc. The remaining allegations of paragraph 55 are denied.

**AS TO THE NEW JERSEY MORTGAGE LOAN FRAUDS**

56.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 56.

**AS TO "THE CRISTO/CAPITAL ASSETS" ENTERPRISE**

57.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 57.

58.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 58.

59.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 59.

60.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 60.

-9-

## AS TO THE PATTERN

61.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 61.

62.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 62.

63.     Answering the allegations of paragraph 63, insofar as they are directed at this defendant, they are denied.  This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 63.

## AS TO CONSEQUENCES VISITED UPON WALSH SECURITIES

64.     Answering the allegations of paragraph 64, this defendant admits that it has not made any payments to plaintiff.  The remaining allegations of paragraph 64 are denied.

65.     The allegations of paragraph 65 are denied.

## AS TO COUNT I

## VIOLATION OF 18 U.S.C. § 1962(c) RICO

Count I of the Fourth Amended Complaint seeks no judgment against this defendant and accordingly no answer is required of this defendant.

## AS TO COUNT II

## VIOLATION OF 18 U.S.C. § 1962(d) (RICO)

Count II of the Fourth Amended Complaint seeks no judgment against this defendant and accordingly no answer is required of this defendant.

## AS TO COUNT III

## COMMON-LAW FRAUD

Count III of the Fourth Amended Complaint seeks no judgment against this defendant and accordingly no answer is required of this defendant.

-10-

MEI 8783046v.1

## AS TO COUNT IV

### BREACH OF CONTRACT BY NHF

Count IV of the Fourth Amended Complaint seeks no judgment against this defendant and accordingly no answer is required of this defendant.

## AS TO COUNT V

### BREACH OF CONTRACT BY THE TITLE INSURANCE DEFENDANTS

92.     The answers to repeated allegations are repeated as though set forth herein.

93.     Answering the allegations of paragraph 93, this defendant admits that certain borrowers obtained title insurance issued by this defendant and that this defendant on certain loans provided plaintiff with Closing Service Letters.  The remaining allegations of paragraph 93 are denied.

94.     Answering the allegations of paragraph 94, the terms and conditions of the Closing Service Letters speak for themselves.  This defendant admits that the Closing Service Letter attached as Exhibit A to the Fourth Amended Complaint is a Closing Service Letter issued by co-defendant Coastal Title Agency, Inc.  The remaining allegations of paragraph 94 are denied.

95.     This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 95.

96.     This defendant admits that plaintiff has notified this defendant that plaintiff has allegedly sustained losses on certain loans.  The remaining allegations of paragraph 96 are denied.

97.     Answering the allegations of paragraph 97, this defendant admits that it has not made any payments to plaintiff.  The remaining allegations of paragraph 97 are denied.

98.     The allegations of paragraph 98 are denied.

-11-

MEI 8783046v.1

99.     Answering the allegations of paragraph 99, insofar as they are directed at this defendant, they are denied. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 99.

100.    Answering the allegations of paragraph 100, insofar as they are directed at this defendant, they are denied. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 100.

## AS TO COUNT VI

## NEGLIGENCE BY ALFIERI, CICALESE AND RICHARD PEPSNY

Count VI of the Fourth Amended Complaint seeks no judgment against this defendant and accordingly no answer is required of this defendant.

## AS TO COUNT VII

## WRONGFUL DELAY AND/OR DENIAL OF INSURANCE CLAIM BY TITLE INSURANCE DEFENDANTS

111.    The answers to repeated allegations are repeated as though set forth herein.

112.    Answering the allegations of paragraph 112, insofar as they are directed at this defendant, they are denied. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 112.

113.    Answering the allegations of paragraph 113, insofar as they are directed at this defendant, they are denied. This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 113.

## AS TO COUNT VIII

## DECLARATION OF COVERAGE AGAINST THE TITLE INSURANCE DEFENDANTS

114.    The answers to repeated allegations are repeated as though set forth herein.

-12-

115.    Answering the allegations of paragraph 115, insofar as they are directed at this defendant, they are denied.  This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 115.

116.    Answering the allegations of paragraph 116, insofar as they are directed at this defendant, they are denied.  This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 116.

## FIRST SEPARATE DEFENSE

The Fourth Amended Complaint fails to state claim upon which relief can be granted as to this defendant.

## SECOND SEPARATE DEFENSE

Plaintiff's Fourth Amended Complaint against this defendant is barred by its own negligent conduct and the conduct of its agents, employees and officers.

## THIRD SEPARATE DEFENSE

Plaintiff's Fourth Amended Complaint against this defendant is barred by the acts of its agents, employees and officers which constitute laches.

## FOURTH SEPARATE DEFENSE

Plaintiff's Fourth Amended Complaint against this defendant is barred by the facts of its agents, employees and officers which constitute estoppel.

## FIFTH SEPARATE DEFENSE

Plaintiff's Fourth Amended Complaint against this defendant is barred by the acts of its agents, employees and officers which constitute waiver.

## SIXTH SEPARATE DEFENSE

Plaintiff Walsh Securities, Inc., as assignee of any Closing Service Letters, would have no higher rights under those letters than the assignor of the letters.

-13-

ME1 8783046v.1

## ANSWER TO CROSS-CLAIMS

This defendant denies any cross-claims made against it including but not limited to any cross-claims for contribution and/or cross-claims for indemnity.

## CROSS-CLAIM FOR CONTRIBUTION

Defendant, Commonwealth Land Title Insurance Company, denies any liability to plaintiff or to any other defendant, but if Commonwealth Land Title Insurance Company is found liable, it demands contribution from Cristo Property Management, Ltd., a/k/a G.J.L. Limited, Dek Homes of New Jersey, Inc., Oakwood Properties, Inc., National Home Funding, Inc., Capital Assets Property Management & Investment Co., Inc., Capital Assets Property Management, L.L.C., William Kane, Gary Grieser, Robert Skowrenski, II, Richard Calanni, Richard DiBenedetto, James R. Brown, Thomas Brodo, Ronald Pierson, Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, Esq., Lawrence Cuzzi, Anthony D'Apolito, DAP Consulting, Inc., Nations Title Insurance of New York, Inc., Fidelity National Title Insurance Company of New York, Coastal Title Agency, Donna Pepsny, Weichert Realtors, and Vecchio Realty, Inc. d/b/a Murphy Realty Better Homes and Gardens pursuant to the New Jersey Tortfeasors Contribution Act.

## CROSS-CLAIM FOR INDEMNIFICATION

While denying any liability to the plaintiff or to any other defendant whatsoever, defendant Commonwealth Land Title Insurance Company nevertheless asserts that any losses sustained by plaintiff or by any other defendant were the proximate result of the actions of defendants Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, and Coastal Title Agency, which actions were primary and active, and if defendant Commonwealth Land Title Insurance Company is found liable to plaintiff with respect to such damages, such liability results solely from secondary, imputed, vicarious or passive negligence

-14-

and defendants Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, and Coastal Title Agency are liable to defendant Commonwealth Land Title Insurance Company by way of indemnification for any and all sums which defendant Commonwealth Land Title Insurance Company may be required to pay in this action.

## THIRD-PARTY COMPLAINT

Defendant/third-party plaintiff Commonwealth Land Title Insurance Company ("Commonwealth"), by way of Third Party Complaint against third-party defendants Robert Walsh, James Walsh and Elizabeth Ann DeMola says:

1.      Plaintiff has commenced an action against defendant/third-party plaintiff Commonwealth for the causes set forth in the Fourth Amended Complaint, a copy of which is attached hereto as Exhibit A.

2.      At all material times herein, third-party defendants, Robert Walsh, James Walsh and Elizabeth Ann DeMola were officers, directors and/or employees of Walsh Securities, Inc.

3.      The third-party defendants were negligent, or engaged in fraud, or breached their legal and/or fiduciary duties, or otherwise were engaged in wrongdoing or fault, which caused or contributed to the losses claimed by plaintiff in this case.

4.      As a direct result of the negligence or fraud or breach of their legal and/or fiduciary duties or the wrongdoing or the fault of third-party defendants, while defendant/third-party plaintiff Commonwealth denies any liability to plaintiff or to any other defendant, if defendant/third-party plaintiff Commonwealth is found liable, it is entitled to contribution from third-party defendants Robert Walsh, James Walsh and/or Elizabeth Ann DeMola pursuant to the New Jersey Tortfeasors Contribution Act.

-15-

WHEREFORE, defendant/third-party plaintiff Commonwealth demands judgment against third-party defendants Robert Walsh, James Walsh and Elizabeth Ann DeMola, jointly and severally.

McCARTER & ENGLISH, LLP
Attorneys for Defendant/Third-Party
Plaintiff Commonwealth Land Title
Insurance Company

By:

David R. Kott
A Member of the Firm

Dated: 7|23|09

-16-

## AFFIDAVIT OF SERVICE

STATE OF NEW JERSEY )
                     )ss.:
COUNTY OF ESSEX      )

     NANETTE R. McCALL, of full age, being duly sworn according to law, upon her oath deposes and says:

     1.     I am employed by the firm of McCarter & English, LLP, attorneys for Defendant/Third-Party Plaintiff Commonwealth Land Title Insurance Company in the within matter.

     2.     On *July 23*, 2009, I caused to be delivered by electronic filing, regular mail and/or certified mail Defendant/Third-Party Plaintiff Commonwealth Land Title Insurance Company's Answer to Fourth Amended Complaint, Separate Defenses, Answer to Cross-Claims, Cross-Claim for Contribution, Cross-Claim for Indemnification and Third-Party Complaint Against Robert Walsh, James Walsh and Elizabeth Ann DeMola upon the persons named in the attached Service List.

                                      *Nanette R. McCall*
                                       NANETTE R. McCALL

Sworn and subscribed to
before me this 23 day
of July , 2009.

**DEBRA ANNE KAUFMAN**
**A Notary Public of New Jersey**
**My Commission Expires 12/1/2010**

-17-

# EXHIBIT "D"

FOX, ROTHSCHILD LLP
FORMED IN THE COMMONWEALTH OF PENNSYLVANIA
BY:   EDWARD J. HAYES (EJH-9808)
        DAVID H. COLVIN, ESQUIRE (DHC-9909)
P. O. BOX 5231
PRINCETON, NJ 08543-5231
TEL. (609) 896-3600
FAX (609) 896-1469

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC.,           : | |
|            : | |
|       Plaintiff,       : | Civil Action No. 97-3496 (DRD)(MAS) |
|           v.       : | |

| |
|---|
CRISTO PROPERTY MANAGEMENT, LTD., :
a/k/a G.J.L. LIMITED, DEK HOMES OF NEW  :
JERSEY, INC., OAKWOOD PROPERTIES INC.,:
NATIONAL HOME FUNDING, INC., CAPITAL :
ASSETS PROPERTY MANAGEMENT &           :
INVESTMENT CO., INC., CAPITAL ASSETS  :
PROPERTY MANAGEMENT, L.L.C.,           : **ANSWER TO FOURTH AMENDED**
WILLIAM J. KANE, GARY GRIESER, ROBERT: **COMPLAINT, SEPARATE DEFENSES,**
SKOWRENSKI, II, RICHARD CALANNI,       : **ANSWERS TO CROSS CLAIMS,**
RICHARD DIBENEDETTO, JAMES R. BROWN,: **CROSS CLAIM, THIRD PARTY**
THOMAS BRODO, RONALD J. PIERSON,      : **COMPLAINT AND JURY DEMAND**
STANLEY YACKER, ESQ., MICHAEL ALFIERI:
ESQ., RICHARD PEPSNY, ESQ., ANTHONY M.:
CICALESE, ESQ., LAWRENCE M. CUZZI,     :
ANTHONY D'APOLITO, DAP CONSULTING,  :
INC., COMMONWEALTH LAND TITLE          :
INSURANCE COMPANY, NATIONS TITLE       :
INSURANCE OF NEW YORK INC., FIDELITY :
NATIONAL TITLE INSURANCE COMPANY     :
OF NEW YORK, COASTAL TITLE AGENCY,   :
and STEWART TITLE GUARANTY              :
COMPANY, IRENE DiFEO, DONNA PEPSNY,  :
WEICHERT REALTORS, AND VECCHIO         :
REALTY, INC. D/B/A MURPHY REALTY       :
BETTER HOMES and GARDENS,              :
      Defendants      :

Defendants, Fidelity National Title Insurance Company of New York and Nations Title Insurance of New York (hereafter collectively referred to as "Answering Defendants"), by way of Answer to the Fourth Amended Complaint, say:

1. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 1 of the Fourth Amended Complaint. To the extent that these allegations are conclusions of law, no responsive pleading is required. To the extent that these allegations are directed at Answering Defendants or otherwise seek to impose liability upon Answering Defendants, the allegations are denied.

<u>AS TO "PARTIES"</u>

2. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 2 of the Fourth Amended Complaint.

3. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 3 of the Fourth Amended Complaint.

4. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 4 of the Fourth Amended Complaint.

5. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 5 of the Fourth Amended Complaint.

6. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 6 of the Fourth Amended Complaint.

2

7. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 7 of the Fourth Amended Complaint.

8. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 8 of the Fourth Amended Complaint.

9. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 9 of the Fourth Amended Complaint.

10. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 10 of the Fourth Amended Complaint.

11. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 11 of the Fourth Amended Complaint.

12. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 12 of the Fourth Amended Complaint.

13. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 13 of the Fourth Amended Complaint.

14. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 14 of the Fourth Amended Complaint.

3

15. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 15 of the Fourth Amended Complaint.

16. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 16 of the Fourth Amended Complaint.

17. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 17 of the Fourth Amended Complaint.

18. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 18 of the Fourth Amended Complaint.

19. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 19 of the Fourth Amended Complaint.

20. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 20 of the Fourth Amended Complaint.

21. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 21 of the Fourth Amended Complaint.

22. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 22 of the Fourth Amended Complaint.

4

23. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 23 of the Fourth Amended Complaint.

24. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 24 of the Fourth Amended Complaint.

25. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 25 of the Fourth Amended Complaint.

26. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 26 of the Fourth Amended Complaint.

27. Admitted.

28. Admitted.

29. Admitted in part;  denied in part.  It is admitted that Coastal was a corporation operating in New Jersey and that it acted as a title insurance agent.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 29

30. Admitted in part; denied in part.  It is admitted that Answering Defendants are title insurance underwriters and that Coastal issued certain closing service letters and loan policies of title insurance to NHF on occasion. Any characterization of those letters or policies is denied as the documents are writings, the terms of which speak for themselves.  Furthermore, Answering Defendants are without knowledge or information sufficient to form a response to the allegation that closing proection letters and/or policies were issued on all of the transactions complained of

5

by Plaintiff.

31. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 31 of the Fourth Amended Complaint.

32. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 32 of the Fourth Amended Complaint.

33. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 33 of the Fourth Amended Complaint.

## AS TO "JURISDICTION"

34. Denied.   The allegations of paragraph 34 are conclusions of law to which no responsvie pleading is required.

## AS TO "VENUE"

35. Denied.   The allegations of paragraph 35 are conclusions of law to which no responsvie pleading is required.

## AS TO "INTRODUCTION"

36. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 36 of the Fourth Amended Complaint.

37. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 37 of the Fourth Amended Complaint.

38. Denied. Answering Defendants lack sufficient knowledge or information to form a

6

belief as to the truth of the allegations contained in paragraph 38 of the Fourth Amended Complaint.

39. Admitted in part; denied in part. It is admitted that Coastal issued certain closing service letters and loan policies of title insurance to NHF on occasion. Any characterization of those letters or policies is denied as the documents are writings, the terms of which speak for themselves. Furthermore, Answering Defendants are without knowledge or information sufficient to form a response to the allegation that closing proection letters and/or policies were issued on all of the transactions complained of by Plaintiff. The remaining allegations of paragraph 39 are conclusions of law to which no response is required.

## AS TO "FACTUAL ALLEGATIONS"

### The Mortgage and Banking Industry

40. Admitted in part; denied in part. It is admitted that a mortgage loan is a loan in which real property is used as collateral. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 40 of the Fourth Amended Complaint.

41. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 41 of the Fourth Amended Complaint.

42. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 42 of the Fourth Amended Complaint.

43. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 43 of the Fourth Amended Complaint.

7

44. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 44 of the Fourth Amended Complaint.

45. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 45 of the Fourth Amended Complaint.

46. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 46 of the Fourth Amended Complaint.

47. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 47 of the Fourth Amended Complaint.

48. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 48 of the Fourth Amended Complaint.

49. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 49 of the Fourth Amended Complaint.

50. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 50 of the Fourth Amended Complaint.

51. Denied.  Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 51 of the Fourth Amended Complaint.

## AS TO "TITLE INSURANCE AND ITS ROLE IN REAL ESTATE TRANSACTIONS"

52. Admitted in part; denied in part. Answering Defendants admit that in consideration for the payment of a premium, title insurance provides indemnification for owners and/or lenders of real property against certain losses covered by the policy, subject to the terms and conditions of the policy. It is further admitted that title insurance is purchased in the majority of real estate purchases and/or refinances. It is further admitted that mortgage lenders routinely require the issuance of title insurance in connection with the purchase and/or financing of real estate. It is denied that title insurance guarantees against losses or damages. Title insurance is not a policy of guaranty, but instead a policy of indemnity. It is denied that title insurance is issued on all transactions. It is further denied that title insurance is supplied to owners on each occasion when a title policy is required by the lender. The balance of the allegations contained in paragraph 52 of the Fourth Amended Complaint are denied.

53. Admitted in part; denied in part. It is admitted that title insurance customers often deal with title insurance agents as opposed to directly with a title insurance underwriter. It is further admitted that title insurance agents perform certain duties pursuant to written agency agreements executed with title insurance underwriters. It is also admitted that some title insurance agencies act as agents for more than one title insurance underwriter, while many are exclusive agents for one title insurance underwriter. The balance of the allegations contained in paragraph 53 of the Fourth Amended Complaint are denied.

54. Admitted in part; denied in part. It is admitted that agency agreements existed with Coastal. Any characterization of the terms of those agreements is denied as the agreements are writings, the terms of which speak for themselves. The allegations of paragraph 54 are further denied as conclusions of law.

55. Admitted in part; denied in part. Answering Defendants admit title insurance

9

underwriters will issue closing service letters and/or title insurance policies for the benefit of mortgage lenders. Closing service letters are not issued in connection with every transaction. It is further admitted that closing service letters are required by some lenders in connection with a closing. Answering Defendants deny the allegations contained in paragraph 55 of the Fourth Amended Complaint to the extent that the allegations characterize the content and substance of documents that speak for themselves. Answering Defendants refer the Court and the parties to the documents for their content. Furthermore, to the extent that the particular "closing service letters" are not sufficiently identified in this paragraph and are not attached to the copy of the Fourth Amended Complaint served in this matter, Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations. To the extent the allegations of paragraph 55 consitute conclusions of law, no responsive pleading is required.

## AS TO "THE NEW JERSEY MORTGAGE LOAN FRAUDS"

56. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 56 of the Fourth Amended Complaint.

## AS TO "'THE CRISTO/CAPITAL ASSETS ENTERPRISE"

57. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 57 of the Fourth Amended Complaint.

58. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 58 of the Fourth Amended Complaint.

59. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 59 of the Fourth Amended Complaint.

60. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 60 of the Fourth Amended Complaint.

## AS TO "THE PATTERN"

61. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 61 of the Fourth Amended Complaint.

62. Admitted in part; denied in part. It is admitted that Coastal issued a policy of title insurance in connection with this transaction. Answering Defendants deny the allegations contained in paragraph 62 of the Fourth Amended Complaint to the extent that the allegations characterize the content and substance of documents that speak for themselves. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 61 (inclusive of its subparts) of the Fourth Amended Complaint.

63. Denied. The allegations of paragraph 63 are denied.

## AS TO "CONSEQUENCES VISITED UPON WALSH"

64. Admitted in part; denied in part. It is admitted that no payments have been made to Plaintiff. It is denied that any payments are required or that Answering Defendants have not acted properly in this matter. Plaintiff has no claims against Answering Defendants.

65. Denied. The allegations of paragraph 65 are denied.

11

## AS TO "COUNT I"

66-74.  The allegations contained in paragraphs 66 through 74, inclusive, do not relate to Answering Defendants. Therefore, no response is required of Answering Defendants.

## AS TO "COUNT II"

75-79.  The allegations contained in paragraphs 75 through 79, inclusive, do not relate to Answering Defendants. Therefore, no response is required of Answering Defendants.

## AS TO "COUNT III"

80-85.  The allegations contained in paragraphs 80 through 85, inclusive, do not relate to Answering Defendants. Therefore, no response is required of Answering Defendants.

## AS TO "COUNT IV"

86-91.  The allegations contained in paragraphs 86 through 91, inclusive, do not relate to Answering Defendants. Therefore, no response is required of Answering Defendants.

## AS TO "COUNT V"

92.  Answering Defendants repeat and reallege each of their responses to paragraphs 1 through 91, inclusive, of the Answer to Fourth Amended Complaint.

93.  Admitted in part; denied in part. Answering Defendants admit that Coastal issued title insurance policies in connection with some of the complained-of transactions.  The title insurance polices insured NHF's lien as a first mortgage against certain real estate.  It is further admitted that Coastal issued closing service letters on some of the transactions.  It is denied that the closing service letters covered the type of conduct complained of by Plaintiff or were for Plaintiff's benefit. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the balance of the allegations contained in paragraph of the Fourth Amended Complaint.   To the extent the allegations of paragraph 93 consistute conclusions of law, no responsive pleading is required.

12

94. Denied. The allegations of paragraph 94 are conclusions of law to which no responsive pleading is required. By way of further answer, Answering Defendants deny that the title insurance policies or closing service letters covered the type of conduct complained of by Plaintiff and Answering Defendants deny the allegations contained in paragraph 94 of the Fourth Amended Complaint to the extent that the allegations characterize the content and substance of documents that speak for themselves. The allegations are further denied as conclusions of law.

95. Denied. Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 95 of the Fourth Amended Complaint concerning the conduct of the closing attorneys. To the extent that the balance of the allegations contained in paragraph 95 are conclusions of law, no responsive pleading is required.

96. Admitted in part; denied in part. It is admitted that Plaintiff has notified Answering Defendants of a potential claim. Answering Defendants deny that the title insurance policies or closing service letters cover the type of conduct complained of by Plaintiff. To the extent the allegations of paragraph 96 constitute conclusions of law, no responsive pleading is required.

97. Admitted in part; denied in part. It is admitted that Answering Defendants have not paid monies to Plaintiff. It is denied that Plaintiff is entitled to payment from Answering Defendants. It is further denied that Plaintiff has suffered any losses for which Answering Defendants are liable.

98. Denied. The allegations of paragraph 98 are conclusions of law to which no responsive pleading is required. Furthermore, Answering Defendants have acted properly in this matter.

99. Denied. The allegations of paragraph 99 are conclusions of law to which no responsive pleading is required. By way of further answer, it is denied that Plaintiff has suffered any losses for which Answering Defendants are liable or that Answering Defendants have not acted properly in this matter.

100.    Denied.  It is denied that Plaintiff has suffered any damages for which Answering Defendants are liable.

## AS TO COUNT VI

101-110.  The allegations contained in paragraphs 101 through 110, inclusive, do not relate to Answering Defendants.  Therefore, no response is required of Answering Defendants.

## AS TO COUNT VII

111.    Answering Defendants repeat and reallege each of their responses to paragraphs 1 through 110, inclusive, of the Answer to Fourth Amended Complaint.

112.    Denied.  The allegations of paragraph 112 are conclusions of law to which no responsive pleading is required.  By way of further answer, it is denied that Plaintiff has suffered any losses for which Answering Defendants are liable or that Answering Defendants have not acted properly in this matter.

113.    Denied.  It is denied that Plaintiff has suffered any damages for which Answering Defendants are liable.

## AS TO COUNT VIII

114.    Answering Defendants repeat and reallege each of their responses to paragraphs 1 through 113, inclusive, of the Answer to Fourth Amended Complaint.

115.    Denied.  The allegations of paragraph 115 are conclusions of law to which no responsive pleading is required.  By way of further answer, it is denied that Plaintiff has suffered any losses for which Answering Defendants are liable or that Answering Defendants have not acted properly in this matter.

116.    Denied.  It is denied that Plaintiff is entitled to the relief it requests.

14

WHEREFORE, Answering Defendants respectfully request that judgment be entered in their favor and against Plaintiff dismissing the Fourth Amended Complaint, together with costs of suit and attorney fees and any other relief that the Court may deem equitable and just.

## FIRST AFFIRMATIVE DEFENSE

Answering Defendants have no liability to Plaintiff under the closing service letters because:

    a. The closing letters were not issued to Plaintiff.

    b. The closing service letters do not protect against the type of conduct alleged by Plaintiff.

    c. The closing service letters are invalid on their face in that they did not make references to a particular transaction.

    d. The closing service letters are invalid on their face in that they are not dated.

    e. To the extent that the closing service letters were in force and effect, any liability under the closing service letters is limited by the terms of the documents.

    f. The closing service letters were induced by fraud.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff did not rely upon closing service letters in completing the mortgage transactions complained of in the Fourth Amended Complaint.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff, as assignee of any closing service letters, would have no higher rights under those letters than the assignor of the letters, which assignor is alleged by Plaintiff to have participated in

15

the alleged fraud.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff is charged with the knowledge and conduct of its officers, agents and/or employees in this matter. Plaintiff's officers, agents and/or employees participated in the scheme alleged in the Fourth Amended Complaint.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims arise from the conduct of individuals and/or entities over which Answering Defendants had no control

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Answering Defendant are barred by the contributory and/or comparative negligence of Plaintiff and its officers, agents and/or employees.

## SEVENTH AFFIRMATIVE DEFENSE

The Fourth Amended Complaint fails to state claim upon which relief can be granted as to Answering Defendants.

## EIGHTH AFFIRMATIVE DEFENSE

The claims asserted by Plaintiff do not arise under the title insurance policies. In each transaction pleaded in the Fourth Amended Complaint, Plaintiff maintains a valid first mortgage lien on the subject premises.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff has failed to join the borrowers as necessary parties to this action. The borrowers

16

have executed notes in favor of Plaintiff agreeing to repay the sums of money due to Plaintiff. Plaintiff should be required to exhaust the collateral prior to moving forward with this litigation.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff is estopped from the prosecution of this litigation and has unclean hands.

## ELEVENTH AFFIRMATIVE DEFENSE

The claims asserted herein are barred by the Entire Controversy Doctrine.

## TWELFTH AFFIRMATIVE DEFENSE

The claims asserted herein should be dismissed for failure to diligently prosecute this action.

## ANSWER TO CROSS-CLAIMS FOR CONTRIBUTION AND/OR INDEMNIFICATION

Answering Defendants deny any and all Cross-Claims made against them for contribution or indemnification.

## CROSS-CLAIM FOR CONTRIBUTION AND INDEMNIFICATION

Answering Defendants/Cross-claim Plaintiffs, Fidelity National Title Insurance Company of New York and Nations Title Insurance of New York, say, by way of cross-claim against the following Defendants/Cross-claim Defendants: Cristo Property Management, Ltd., A/K/A G.J.L. Limited, DEK Homes of New Jersey, Inc., Oakwood Properties, Inc., National Home Funding, Inc., Capital Assets Property Management & Investment Co., Inc., Capital Assets Property Management, L.L.C., William J. Kane, Gary Grieser, Robert Skowrenski, II, Richard Calanni,

17

Richard DiBenedetto, James R. Brown, Thomas Brodo, Ronald J. Pierson, Stanley Yacker, Esq.,

Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, Esq., Lawrence M. Cuzzi,

Anthony D'Apolito, DAP Consulting, Inc., Coastal Title Agency, Irene DiFeo, Donna Pepsny,

Weichert Realtors, and Vecchio Realty, Inc. d/b/a Murphy Realty Better Homes and Gardens

(collectively the "Cross-claim Defendants"):

## FIRST COUNT

### (Indemnification)

1. Answering Defendants/Cross-claim Plaintiffs deny any liability to Plaintiff, but if it is

determined that Answering Defendants/Cross-claim Plaintiffs or any one of them is liable to

Plaintiff in any respect, such liability is secondary, passive and vicarious, while the liability of

the Cross-claim Defendants is primary, active and direct. Any damages for which Answering

Defendants/Cross-claim Plaintiffs may be held liable are chargeable to the Cross-claim

Defendants.

2. Answering Defendants are entitled to indemnification from the Cross-claim

Defendants and/or other Fourth parties.

WHEREFORE, Answering Defendants/Cross-claim Plaintiffs demand judgment of

indemnification in their favor and against the Cross-claim Defendants, together with costs of suit

and attorney fees and any other relief that the Court may deem equitable and just.

## SECOND COUNT

### (Contribution)

3. Answering Defendants/Cross-claim Plaintiffs repeat each of its foregoing allegations

contained in the Cross-claim.

18

4. Answering Defendants/Cross-claim Plaintiffs deny any liability to Plaintiffs, and specifically deny that any such liability is joint and several as to Answering Defendants/Cross-claim Plaintiffs. If it is determined, however, that Answering Defendants/Cross-claim Plaintiffs are liable to Plaintiff in any respect, Answering Defendants/Cross-claim Plaintiffs demand contribution from all Cross-claim Defendants pursuant to the provisos of the New Jersey Joint Tortfeasors Act, N.J.S.A. 2A:53A-1 et seq., and all other statutory or common laws which may be applicable with respect to any and all damages that may be assessed against Answering Defendants/Cross-claim Plaintiffs in favor of Plaintiff, together with costs of suit.

WHEREFORE, Answering Defendants/Cross-claim Plaintiffs demand judgment of contribution in their favor and against Crossclaim Defendants, together with costs of suit and attorney fees and any other relief that the Court may deem equitable and just.

## THIRD PARTY COMPLAINT

Answering Defendants/Third Party Plaintiffs, Fidelity National Title Insurance Company of New York and Nations Title Insurance of New York, say, by way of third party complaint against Robert Walsh, James Walsh and Elizabeth Ann DeMola (collectively the "Third Party Defendants"):

1. Third Party Defendants were officers, directors and/or employees of Plaintiff.

2. In their capacity as officers, directors and/or employees of Plaintiff, Third Party Defendants participated in the fraud alleged to have occurred by Plaintiff.

3. Alternatively, Third Party Defendants were negligent and/or breached their duties to Plaintiff as officers, directors and/or employees.

4. Answering Defendants/ Third Party Plaintiffs deny any liability to Plaintiff, and specifically deny that any such liability is joint and several as to Answering Defendants/ Third

19

Party Plaintiffs. If it is determined, however, that Answering Defendants/ Third Party Plaintiffs are liable to Plaintiff in any respect, Answering Defendants/ Third Party Plaintiffs demand contribution from all Third Party Defendants pursuant to the provisos of the New Jersey Joint Tortfeasors Act, N.J.S.A. 2A:53A-1 et seq., and all other statutory or common laws which may be applicable with respect to any and all damages that may be assessed against Answering Defendants/ Third Party Plaintiffs in favor of Plaintiff, together with costs of suit.

WHEREFORE, Answering Defendants/ Third Party Plaintiffs demand judgment of indemnification in their favor and against the Third Party Defendants, together with costs of suit and attorney fees and any other relief that the Court may deem equitable and just.

David H. Colvin, Esquire (DHC-9909)
Edward J. Hayes, Esquire (EJH-9808)
FOX ROTHSCHILD LLP

Attorneys for Defendants Fidelity National
Title Insurance Company of New York and
Nations Title Insurance of New York

Dated: July 31, 2009

## JURY DEMAND

Defendants Fidelity National Title Insurance Company of New York and Nations Title Insurance of New York demands a trial by jury as to all issues so triable.

20

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a true and correct copy of the Answer to Fourth

Amended Complaint upon the individuals identified in the service list attached hereto.


Date:  July 31, 2009

_____

David H. Colvin, Esq.

## SERVICE LIST

## WALSH SECURITIES, INC. V. CRISTO PROPERTY MANAGEMENT, ER AL CIVIL ACTION NO. 97-3496 (DRD)

Robert A. Magnanini, Esq.
Stone Magnanini, LLP
150 John F. Kennedy
Short Hills, NJ 07078
Attorney for plaintiff Walsh Securities, Inc. and for third-party defendant Robert Walsh

Michael D. Schottland, Esq.
Lomurro, Davison, Eastman & Munoz, P.A.
100 Willowbrook Road
Freehold, NJ 07728
Attorney for Defendants National Home Funding, Inc. and Robert Skowrenski, II

Martin R. McGowan, Jr., Esq.
Methfessel & Werbel
3 Ethel Road
Suite 300
Edison, New Jersey 08818
Attorneys for Defendant Coastal Title Agency

Edward C. Bertucio, Jr., Esq.
Hobble, Corrigan, Bertucio Tashjy, P.C.
125 Wyckoff Road
Eatontown, NJ 07724
Attorney for Defendant Michael Alfieri, Esq.

Robert J. Reilly, III, Esq.
Reilly, Supple & Wischusen, LLC
571 Central Avenue
New Providence, NJ 07974
Attorney for defendant Michael Alfieri, Esq. on the Sixth Count

Theodore W. Daunno, Esq.
1033 Clifton Avenue
Clifton, New Jersey 07013
Attorney for Defendant Lawrence M. Cuzzi

Mark W. Catanzaro, Esq.
Blason IV Suite 208
513 Lenola Road
Moorestown, New Jersey 08057
Attorney for defendants Richard Pepsny and Donna Pepsny

Thomas D. Flinn, Esq.
Garrity, Graham, Favette & Flinn
1 Lackawanna Plaza, Box 4205
Montclair, NJ 07042
Attorney for Defendant Anthony M. Ciccalese (on certain counts of the Complaint)

Anthony M. Cicalese, Esq.
467 Long Hill Drive
Short Hills, NJ 07078
Pro se (on certain counts of the Complaint)

Anthony M. Cicalese
74C Manatiales de Belen
200 Mtrs Norte de igleseis de Ascen
San Antonio de Belen
Heredia, Costa Rica
Pro se (on certain counts of the Complaint)

Pasquale Menna, Esq.
Kauff and Menna
170 Broad Street
P.O. 762
Red Bank, New Jersey 07701
Attorneys for Defendant Roland J. Pierson

John B. McCusker, Esq.
McCusker, Anselmi, Rosen, Carvell & Walsh, PC
127 Main Street
Chatham, NJ 07928
Attorneys for Defendant Weichert Realtors

Thomas Brodo, Pro Se
139B Fort Lee Road
Teaneck, New Jersey 07666

James R. Brown, Pro Se
1089 Cedar Avenue
Union, New Jersey 07083

Richard Calanni, Pro Se
One Old Farm Road
Tinton Falls, New Jersey 07724

Anthony D'Apolito, Pro Se
909 Woodland
Wall Township, NJ 07719

Richard DiBenedetto, Pro Se
3 Loller Drive
Martinsville, NJ 08836

Stanley Yacker, Esq., Pro Se
33 Broadway, #1
Ocean Grove, NJ 07756-1397

William Kane, Pro Se
6119 Kipps Colony Drive
Gulfport, FL 33707

Ms. Elizabeth Ann DeMola
One Abedim Way
Califon, NJ 07830

Capital Assets Property Management, LLC
10 West Bergen Place
Red Bank, NJ 07701

Andrew I. Indeck, Esq.
Scarinci & Hallenbeck, LLC
1100 Valleybrook Avenue
P.O. Box 790
Lyndhurst, NJ 07071
Attorney for Garden State Indemnity Co. (Legal Malpractice carrier
                                    for defendant Michael Alfieri)

David R. Kott, Esquire
McCarter & English
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102