

David R. Kott
Partner
T. 973.622.4444
F. 973.624.7070
dkott@mccarter.com


McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102
T. 973.622.4444
F. 973.624.7070
www.mccarter.com


BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

<u>**VIA ELECTRONIC FILING & REGULAR MAIL**</u>

August 30, 2010

Hon. Michael A. Shipp, U.S.M.J.
United States District Court
District of New Jersey
M.L. King, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re:  *Walsh Securities, Inc. v. Cristo Property Management, et al.*
     Civil Action No. 97-cv-3496 (DRD) (MAS)

Dear Judge Shipp:

We represent Commonwealth Land Title Insurance Company ("Commonwealth") and write, pursuant to paragraph four of the scheduling order entered on July 22 [document 403] to oppose Plaintiff Walsh Securities' letter brief seeking the return of witness statements that were voluntarily produced to Commonwealth and other Defendants in December 2007 [document 412].

**I.      History of the Discovery Dispute**

On December 5, 2007, during the time period in which the parties in this matter were in mediation, Plaintiff's counsel voluntarily produced interview memoranda -- in redacted form presumably to remove mental impressions -- of witness statements obtained during the initial investigation of the Asbury Park fraud scheme for Walsh Securities, Inc., by Latham & Watkins.  (*See* Pl.'s Letter Br., Ex. B: Letter from R. Magnanini to D. Kott (Dec. 5, 2007) ("Dec. 5, 2007 Letter").)  The circumstances of the document production were explained by Plaintiff's counsel at the time:

> You had also asked to see the interview memos from Latham & Watkins initial investigation.  To that end, I have reviewed all the files that we received from Latham & Watkins' initial investigation of the Asbury Park fraud scheme.  As you an see, these interview notes are redacted to the least extent practicable.  I have also enclosed a copy of the September 30, 1997 letter from Latham & Watkins to [Walsh Securities, Inc.].

(*Id.*; *see* Pl.'s Letter Br., Ex. A: Letter from M. Chertoff to Walsh Securities, Inc. (Sept. 30, 1997) (referred to in quotation above).)  At the time of production, Plaintiff's counsel made no representations that these voluntarily produced,

Hon. Michael A. Shipp, U.S.M.J.
August 30, 2010
Page 2

redacted witness statements were work product or that the documents should be returned or otherwise destroyed at the conclusion of mediation or at any other time thereafter. (*See* Pl.'s Letter Br., Ex. B: Dec. 5, 2007 Letter.)

On January 9, 2008, after the mediation failed, Plaintiff's counsel requested that the redacted witness statements they produced be returned or destroyed. (*See* Pl.'s Letter Br., Ex. C: Letter from R. Magnanini to D. Kott, E. Hayes, and M. McGowan (Jan. 9, 2008).) This was the first time that this request was made. In response to the request, Commonwealth wrote to Plaintiff's counsel on January 15, 2008, explaining that the interview memos had not yet been destroyed, stating that "[i]t is our view that the interview memos are discoverable[,]" and suggesting that the issue be raised before Your Honor. (*See* Pl.'s Letter Br., Ex. D: Letter from D. Kott to R. Magnanini (Jan. 15, 2008).) The present briefing, ordered by this Court on July 22, 2010, is the result of the dispute.

**II.     Discussion and Analysis**

    **A.     The Witness Statements Are Not Protected Work Product**

The redacted witness statements provided by Plaintiffs are not protected work product. They are discoverable factual statements.

The work product doctrine shields documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" from disclosure. FED. R. CIV. P. 26(b)(3). The work product privilege is not absolute, although it provides "absolute protection" for "[t]he mental impressions, conclusions, or legal theories of a party's attorney . . . and disclosure cannot be compelled upon a showing of undue hardship." *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 422 (D.N.J. 2009) (citing *In re Cendant Corp. Litig.*, 343 F.3d 658, 662-63 (3d Cir. 2003)).

Despite the protections afforded by the doctrine, "**[u]nderlying facts are not protected by the work product doctrine**." *Id.* (citing *Stern v. O'Quinn*, 253 F.R.D. 663, 686-87 (S.D. Fla. 2008)) (emphasis added); *see also Kane v. The Mfrs. Life Ins. Co.*, No. 08-cv-4581, 2010 U.S. Dist. LEXIS 52525 *26-*27 (D.N.J. May 26, 2010) (citing *Ford Motor Co., supra*, 257 F.R.D. 418 for this principle).

Additionally, as recently explained by this Court, "[t]he party asserting the work-product privilege has the burden of demonstrating that the documents he or she claims are privileged were 'prepared in anticipation of litigation.'" *Kane, supra*, 2010 U.S. Dist. LEXIS 52525 at *21-*22 (quoting *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000)).

The issue of the parameters of the work product privilege as it relates to factual witness statements was addressed in *Ford Motor Co., supra.* In that case, a third-

Hon. Michael A. Shipp, U.S.M.J.
August 30, 2010
Page 3

party affidavit was determined not to be protected by the work product privilege. There, the Court quoted a Wisconsin District Court's reasoning, which is equally applicable here:

> Granted, [Defendant] secured those statements in anticipation of litigation. However, if it now suggests that it may interpose the work product doctrine because it then put words in the mouths of those third-party affiants as part of its litigation strategy, it misperceives the nature of the doctrine. [Plaintiff] seeks no more than factual statements of these non-party witnesses. It should not be frustrated in its ability to test the perception and credibility of these persons.

*Ford Motor Co.*, *supra*, 257 F.R.D. at 423 (quoting *Milwaukee Concrete Studios, Ltd. v. Greeley Ornamental Concrete Prods., Inc.*, 140 F.R.D. 373, 379 (E.D. Wis. 1991)).

The documents at issue are "interview memos from Latham & Watkins initial investigation" setting forth factual statements regarding the "Asbury Park fraud scheme." (Pl.'s Letter Br., Ex. B: Dec. 5, 2007 Letter.) As Plaintiff's counsel admits, the documents have already been redacted. Thus, "[t]he mental impressions, conclusions, or legal theories of a party's attorney . . ." are nowhere within the documents. *See Ford Motor Co.*, 257 F.R.D. at 422. The documents are merely factual statements of witnesses regarding the alleged fraud. This is not work product. The witness statements are the equivalent of the third-party affidavit in *Ford Motor Company* and are well beyond the protections of the work product privilege.

      **B.**    **The Work Product Doctrine Does Not Shield Purely Factual Information from Disclosure**

Notwithstanding that the documents are not work product as a matter of law, the witness statements are discoverable, because work-product protection does not extend to purely factual information that does not constitute the mental impressions or conclusions of a party's attorney or other representative. Even "where the applicability of the work-product doctrine has been established, factual material may, nevertheless, be ordered produced 'upon a showing of substantial need and inability to obtain the equivalent without undue hardship.'" *ECDC Envtl., L.C. v. N.Y. Marine and Gen. Ins. Co.*, 1998 U.S. Dist. LEXIS 8808, at *34 (S.D.N.Y. June 5, 1998) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 400, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)). The Third Circuit has expounded on that principle:

> Indisputably, . . . [work-product] protection is qualified, and demands a particularized determination with

ME1 10464643v.1

Hon. Michael A. Shipp, U.S.M.J.
August 30, 2010
Page 4

> respect to each piece of information sought. . . . [A]pplication of the rule depends upon the nature of the document, the extent to which it may directly or indirectly reveal the attorney's mental processes, the likely reliability of its reflection of witness[es]' statements, the degree of danger that it will convert the attorney from advocate to witness, and the degree of availability of the information from other sources.

*United States v. Amerada Hess Corp.*, 619 F.2d 980, 987 (3d Cir. 1980); *see Hickman*, 329 U.S. at 511, 67 S. Ct. at 394, 91 L. Ed. at 462 ("Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."); *see also* FED. R. CIV. P. 26(b)(3)(B) ("If the court orders discovery of [non-protected] materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.").

To illustrate, in *Amerada Hess Corp.*, *supra*, the Internal Revenue Service (IRS) sought production of certain documents pertaining to a corporation's internal investigation of potentially improper payments to foreign entities conducted on the advice of counsel. 619 F.2d at 982-83. Among other objections, the corporation refused to produce a list of employees who were interviewed during the investigation that was attached to the corporation's internal report, citing the work-product privilege. *Id.* at 982-83, 987. The Third Circuit held that "neither the fact that the list was compiled by [the investigative committee], nor the fact that it was attached to a report prepared in anticipation of possible litigation is dispositive." *Id.* at 987. The court ordered production of the document because "the list of interviewees is just that, a list," and as such it could "not directly or indirectly reveal the mental processes of the [corporation's] attorneys" or "convert any member of [that] firm from advocate to witness." *Id.* at 987-88. Thus, and because the IRS demonstrated that the "[a]voidance of the time and effort involved in compiling a similar list from other sources" was "a sufficient showing of need," the court affirmed the lower court's enforcement of the IRS summonses. *Id.* at 988.

Here, even putting aside that the witness statements are not work product, the type of facts contained in the witness statements are unobtainable by alternate means at this stage. Specifically, the witness statements were generated in the aftermath of the underlying incident and no investigation conducted now could duplicate their contents. Memories of the underlying incident in this case cannot be replicated in 2010 with anywhere near the accuracy and breadth of statements taken in 1997. Therefore, plaintiffs' counsel's assertion that interviews or depositions at this stage in the process will produce "the equivalent of the contents of the memos" is untenable. (Pl.'s Letter Br. at 4.) This is not an instance of "piggyback[ing] off the efforts of Plaintiff's counsel[,]" *Ibid*. The factual documents sought do not "reveal

Hon. Michael A. Shipp, U.S.M.J.
August 30, 2010
Page 5

the attorney's mental processes"; not only have they been redacted, they are factual memoranda memorializing interviews with witnesses[,]" the "likely reliability of its reflection of witness[es]' statements" is high due to the lack of a substantial lapse in time between the interviews and the recording in memoranda, there is no "danger [of] convert[ing] the attorney from advocate to witness" under the circumstances, and the information is no longer readily available at the same level of reliability from other sources. See *Amerada Hess Corp.*, *supra*, 619 F.2d at 987. In sum, the work product privilege does not shield the factual information in the witness statements from production.

> C. **The Work Product Doctrine Does Not Shield Documents Previously Produced to An Adversary From Production**

Plaintiff's counsel **voluntarily** produced the witness statements to counsel for Commonwealth. (*See* Pl.'s Letter Br., Ex. B: Dec. 5, 2007 Letter.) At the time of production, there were no caveats given stating that the information was privileged or that it would eventually have to be returned or destroyed. (*See ibid.*) By voluntarily disseminating these documents, Plaintiff's counsel waived any work product privilege that could potentially apply to the witness statements.

"The predicate of the waiver inquiry in the work-product context is not, as it is in the attorney-client context, whether the material was disclosed, but whether the material was disclosed to an adversary." *The Times of Trenton Publ'g Corp. v. Pub. Util. Serv. Corp.*, No. 03-6026, 2005 U.S. Dist. LEXIS 34624, at *13 (D.N.J. May 3, 2005) (citing *Maldonado v. New Jersey, et al.,* 225 F.R.D. 120, 131 (D.N.J. 2004); *see also Kane, supra*, 2010 U.S. Dist. LEXIS 52525 at *24 ("To demonstrate that the privilege was waived, a party must show that the privileged information was disclosed to an adversary or disclosed in a manner that will allow an adversary to gain access to same."). This is because

> [t]he work-product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent. The purpose of the work-product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation . . . .

*Times of Trenton Publ'g Corp.*, *supra*, 2005 U.S. Dist. LEXIS 34624, at *13-*14 (quoting *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

For example, in *Kane, supra*, this Court recently dealt with documents disclosed during a court-ordered mediation, finding that the work product privilege, as

Hon. Michael A. Shipp, U.S.M.J.
August 30, 2010
Page 6

applicable to Plaintiff, did not protect certain documents that were distributed by Plaintiff in his counsel's presence, that were "discussed . . . for more than two hours in counsel's presence[,]" and where "no counsel objected nor suggested that any documents were inadvertently produced[.]" *Kane* , *supra*, 2010 U.S. Dist. LEXIS 52525 at *6-*7. In contrast, unlike the situation here, where documents were not produced to adversaries in *Times of Trenton*, they remained protected. *See Times of Trenton Publ'g Corp.*, *supra*, 2005 U.S. Dist. LEXIS 34624, at *15-*16.

Here, Plaintiff voluntarily produced the witness statements to Commonwealth, waiving the work product privilege. To this end, the cases cited by Plaintiff in its opening brief do not address documents that were voluntarily given to counsel for the adversary. (*See* Pl.'s Br. at 3-4.) Given the voluntary production of these factual documents to defense counsel, Plaintiff's reliance on cases such as *In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir. 1979), is inapposite. In short, Plaintiff's production of the redacted documents was a waiver of the work product privilege, and Plaintiff cannot now put the cat back in the bag and shield these factual documents.

### III.   Conclusion

The witness statements in dispute are factual information not protected by the work product privilege, and, even if the work product privilege was determined to apply, the contents of and facts surrounding the witnesses statements require their disclosure. Accordingly, Commonwealth respectfully requests that this Court enter the proposed form of Order attached hereto and find that any and all witness statements taken during the internal investigation of Walsh Securities, Inc. and voluntarily produced during the mediation process in this case shall be also deemed as taken as part of the discovery in this case and that those witness statements may be used for any purposes that discovery depositions can be used pursuant to all applicable rules and practices.

Respectfully submitted,

*s/David R. Kott*

David R. Kott

Enclosures
cc:   Attached Service List (w/encls.)

ME1 10464643v.1