# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, et al., <br><br> Defendants. | Civil Action No. 97-cv-3496 (DRD)(MAS) <br><br> Hon. Dickinson R. Debevoise, U.S.S.D.J. <br> Hon. Michael A. Shipp, U.S.M.J. |

---

## BRIEF OF DEFENDANT COMMONWEALTH LAND TITLE INSURANCE COMPANY IN OPPOSITION TO DEFENDANT COASTAL TITLE AGENCY, INC.'S MOTION TO DISMISS COMMONWEALTH'S CROSS-CLAIMS PURSUANT TO *RULE* 12(b)(6)

---

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant
  Commonwealth Land Title
  Insurance Company

Of Counsel
    David R. Kott

On the Brief
    David R. Kott
    Sara F. Merin

1

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................3

ARGUMENT .............................................................................................................5

    I.    Commonwealth has stated a claim upon which relief may be granted ................................5

    II.   Commonwealth has Adequately Pled Its Cross-Claim Alleging that Coastal is Liable to Commonwealth in Tort for Coastal's Agents' Negligence................................6

    III.  Coastal Owes Commonwealth A Direct Duty, Because Coastal's Alleged Actions Were a Breach of the Duties Owed to Commonwealth that Caused Harm ....................................9

    IV.  Coastal's Material Breach of Its Agency Agreement Entitles Commonwealth to Contractual Indemnification .............................................................................14

CONCLUSION.......................................................................................................18

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*Allocca v. Wachovia,*
  No. 05-366, 2007 U.S. Dist. LEXIS 42375 (D.N.J. 2007) ....................................................10

*Alston v. Parker,*
  363 F.3d 229 (3d Cir. 2004)..................................................................................................5

*Blazovic v. Andrich,*
  124 N.J. 90 (1991) ...............................................................................................................11

*In re Burlington Coat Factory Sec. Litig.,*
  114 F.3d 1410 (3d Cir. 1997)................................................................................................6

*Enright v. Lubow,*
  202 N.J. Super. 58 (App. Div. 1985), *certif. denied,* 104 N.J. 376 (1986) .....................12, 13

*Fried v. Aftec, Inc.,*
  246 N.J. Super. 245 (App. Div. 1991) ..............................................................................10, 13

*Institutional Investors Group v. Avaya, Inc.,*
  564 F.3d 242 (3d Cir. 2009)................................................................................................7, 9

*Karl's Sales & Service, Inc. v. Gimbel Bros., Inc.,*
  249 N.J. Super. 487 (App. Div.), *certif. denied,* 127 N.J. 548 (1991) ...................................16

*Lee v. Kiku Restaurant,*
  127 N.J. 170 (1992) .............................................................................................................11

*Moran v. DaVita, Inc.,*
  Docket No. 06-cv-5620 (JAP), 2009 WL 792074 (D.N.J. Mar. 23, 2009) ............................16

*Morse v. Lower Merion Sch. Dist.,*
  132 F.3d 902 (3d Cir. 1997)..................................................................................................5

*N.J. Lawyers' Fund for Client Protection v. Stewart Title Guaranty Co.,*
  __ N.J. __, *2010 N.J. LEXIS 712* (Aug. 2, 2010)....................................................................9

*New Milford Bd. of Educ. v. Juliano,*
  219 N.J. Super. 182 (App. Div. 1987) ..................................................................................12

*Pryor v. Nat'l Collegiate Athletic Ass'n,*
  288 F.3d 548 (3d Cir. 2002)..................................................................................................7

*Walsh Securities, Inc. v. Cristo Prop. Mgmt, Ltd.*,
No. 97-cv-3496 (Dec. 16, 2009) .......................................................................11, 13

*Winer Family Trust v. Queen,*
503 F.3d 319 (3d Cir. 2007)...........................................................................7, 8, 14

**STATUTES**

18 U.S.C. § 1962 ..................................................................................................................3

N.J.S.A. 2A:15-5.1, *et seq.* .............................................................................................11

N.J.S.A. 2A:53A-3...............................................................................................................11

**OTHER AUTHORITIES**

FED. R. CIV. P. 8(a) .............................................................................................................5

FED. R. CIV. P. 12(b)(6) .....................................................................................................1

*Restatement (Third) of Agency* § 8.08..........................................................9, 10, 13

*Restatement (Third) of Agency* § 8.01..............................................................10, 13

ME1 10416268v.1

## PRELIMINARY STATEMENT

This brief is submitted on behalf of Defendant Commonwealth Land Title Insurance Company ("Commonwealth") in opposition to Coastal Title Agency Inc.'s ("Coastal") motion to dismiss Commonwealth's Cross-Claims Pursuant to Rule 12(b)(6) [document 410].[1] This situation is legally and factually different from those addressed by the Court in its prior two decisions regarding cross-claims, because the cross-claims at issue here are against an agent of the company and are for potential damages that would never have been incurred but for the agent's allegedly fraudulent and negligent actions.

The title insurance companies in this case, including Commonwealth, are sued under closing service protection letters and title insurance policies. As is the practice in the title insurance industry, Coastal independently issued closing service protection letters on Commonwealth's behalf and without Commonwealth's pre-clearance of the individual letters, binding Commonwealth. Thus, but for Coastal's alleged role in the fraudulent scheme alleged by Plaintiff, these closing service letters would never have been issued. Commonwealth, therefore, would have no role in this lawsuit.

In addition to the fraudulent scheme alleged, discovery had revealed that Coastal sent out two different closing service letters, one of which Plaintiff will likely argue provides broader coverage than the other. Thus, though its negligence, Coastal has increased the potential damages that could be awarded against Commonwealth. These closing service letters are the basis of Plaintiff's claims against Commonwealth, and are thus integral to the Complaint and may be considered in deciding a motion to dismiss. Moreover, the Rule 30(b)(6) representative of Coastal, Robert Agel , at his August 5, 2010 deposition, confirmed the possibility of this

---

[1] For purposes of opposition to Coastal Title Agency Inc.'s motion to dismiss, we also join in and adopt co-defendants Fidelity National Title Insurance Company of New York and Nations Title Insurance of New York, Inc.'s brief, filed on September 1, 2010.

negligence occurring by acknowledging that Coastal could have issued incorrect closing service letter by mistake. Commonwealth is therefore not alleging that Coastal is a joint tortfeasor; Coastal's negligence increased Commonwealth's exposure thus falling squarely within Commonwealth's cross-claims.

Coastal's potential liability to Commonwealth does not end with the duties in tort owed and allegedly breached by Coastal; Coastal is also liable to Commonwealth in contract under its Agency Agreement with Commonwealth. The Agreement expressly provides that the Agent, here Coastal, "agrees to be solely liable for all attorney's fees, court costs, expenses and loss or aggregate of losses resulting from (a) fraud, negligence[], or misconduct of [Coastal], its officers or employees in the performance of its duties as AGENT of COMMONWEALTH[.]" (Certification of Sara F. Merin in Support of Brief in Opposition to Coastal Title Agency's Motion to Dismiss ("Merin Certif."), Ex. A: Agency Agreement between Commonwealth Land Title Insurance Company and Coastal Title Agency Inc. (Apr. 15, 1989) ("Agency Agreement") at 2.) The conduct alleged by Plaintiff fits squarely within this provision of the Agency Agreement, entitling Commonwealth to indemnification, and further supporting its cross-claims.

In sum, Commonwealth has stated a claim for which relief can be granted in its cross-claims for contribution and indemnification against its agent, Coastal. Coastal owed Commonwealth direct duties in both tort and contract. Coastal's alleged role in the fraudulent scheme alleged by Plaintiff is the sole reason Commonwealth is in this lawsuit. Absent the alleged fraud, the closing service letters would never have been issued by Coastal and Commonwealth would not be bound by their terms. Coastal's breach of the tort and contract duties that it owed Commonwealth as Commonwealth's agent, therefore, form the basis for Commonwealth's cross-claims. Because Coastal is liable to Commonwealth in tort and in

contract, its cross-claims for contribution and indemnification state a claim for which relief can be granted.  Coastal's motion to dismiss, which seeks absolution from potential liability caused by Coastal's own actions, should be denied.

## STATEMENT OF FACTS

On July 10, 2009, Plaintiff Walsh Securities, Inc., filed its Fourth Amended Complaint [document 302] ("Fourth Amended Complaint") in which both Coastal and Commonwealth were named as Defendants.

The Fourth Amended Complaint Complaint filed by Plaintiff alleged that Coastal violated 18 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") by engaging in wire fraud and commercial bribery that "caused Walsh Securities to finance mortgage loans based on falsely inflated appraisals  for real properties and other fraudulent acts . . . " causing "Walsh Securities [to be] unable to recoup the full amounts of many of the outstanding mortgage loans." (Fourth Am. Compl. ¶¶ 71-73.)  The Complaint also alleges that Coastal conspired with certain other Defendants, not including Commonwealth, to violate 18 U.S.C. § 1962(c), thus violating 18 U.S.C. § 1962(d) of RICO.  (*Id.* at ¶¶ 76-78.)  The Complaint further alleges that Coastal engaged, with other Defendants but not Commonwealth,  in the "willful[] and intentional[] defraud[ing of] Walsh Securities and made or caused to be made false, fraudulent and material misrepresentations and omissions to plaintiff concerning mortgage loans bought by Walsh Securities from NHF." (*Id.* at ¶ 81.)  Specifically to Coastal alone, the Complaint alleges that "Coastal Title issued, on behalf of the Title Insurance Defendants, closing service protection letters and title insurance protection letters with the intent and purpose that Walsh Securities would rely on the same.  In doing so, Coastal failed to disclose that the loan transactions at issue were fraudulent and that the closing documents were not timely and properly recorded." (*Id.* at ¶ 82.)

The Fourth Amended Complaint does not allege that Commonwealth was involved in this alleged fraudulent scheme. Instead, the Complaint seeks an award of damages for claims against Commonwealth for breach of contract based on the title insurance policies and closing service protection letters issued by Coastal. (Fourth Am. Compl. ¶¶ 93-100). Specifically, the Fourth Amended Complaint alleges that Commonwealth failed to reimburse plaintiffs for the losses allegedly covered by the title insurance policies and closing service protection letters issued by Coastal. (*Id.* at ¶¶ 96-97.) For the first time in the Fourth Amended Complaint, Plaintiff alleged that Commonwealth breached its duty of good faith and fair dealing (*id.* at ¶¶ 98-100) and engaged in a wrongful delay and/or denial of the claims by Walsh Securities that are the dispute at the core of this lawsuit (*id.* at ¶¶ 112-113). The Fourth Amended Complaint also seeks a declaration of coverage against Commonwealth. (*Id.* at ¶¶ 115-116.)

In response to the allegations in the Complaint, in addition to asserting numerous defenses, on July 23, 2009, Commonwealth filed cross-claims for contribution and indemnification against Coastal and other Defendants alleged to have engaged in the underlying scheme at issue. (Commonwealth's Answer, Cross-Claim, and Defenses to the Fourth Am. Compl. and Third Party Compl. [document 304] ("Commonwealth's Answer to the Fourth Am. Compl.").) These cross-claims were similar to those filed by Commonwealth in response to previous versions of the Complaint. (*See, e.g.,* Commonwealth's Answer, Cross-Claims, and Defenses to the Third Am. Compl. (Feb. 15, 2005) [document 118]; Merin Certif., Ex. B: Commonwealth's Answer to Am. Compl., Answer to Cross-Claims, Separate Defenses, and Cross-Claims for Contribution and Indemnification (Jan. 13, 1998).) The first cross-claim seeks contribution pursuant to the New Jersey Tortfeasors Contribution Act. The second cross-claim seeks indemnification and asserts that

-4-

> any losses sustained by plaintiff or any other defendant were the
> proximate result of actions of defendants . . . Coastal Title Agency,
> which actions were primary and active, and if defendant
> [Commonwealth] is found liable to plaintiff with respect to such
> damages, such liability results solely from secondary, imputed,
> vicarious or passive negligence and defendants . . . Coastal Title
> Agency are liable to defendant [Commonwealth] by way of
> indemnification for any and all sums which defendant
> [Commonwealth] may be required to pay in this action.

(Commonwealth's Answer to the Fourth Am. Compl.)  For the first time over the course of this

lengthy matter, Coastal now moves to dismiss Commonwealth's cross-claims.

## ARGUMENT

### I.      Commonwealth has stated a claim upon which relief may be granted

Federal Rule of Civil Procedure 8(a) requires that all claims for relief must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R.

CIV. P. 8(a)(2).  All allegations in the Complaint must be taken as true and viewed in the light

most favorable to Plaintiff.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

In its cross-claims for contribution and indemnification, Commonwealth relies on the allegations

within Plaintiff's Fourth-Amended Complaint to inform co-defendants of the behavior for which

it seeks contribution and/or indemnity.  Commonwealth's cross-claims therefore rely on the

sufficiency of the underlying Complaint.

If, however, this Court deems Commonwealth's cross-claims to be insufficiently specific,

and, in turn, decides that its cross-claims fail to state a claim upon which relief may be granted,

Commonwealth requests that this Court dismiss the cross-claims against Coastal without

prejudice and permit Commonwealth to amend the pleading.

Dismissing the cross-claims without prejudice to permit a curative amendment is in

accord with Third Circuit precedent that liberally allows amendments to pleadings.  Pursuant to

the Third Circuit's opinion in *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004), "[e]ven when a

plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment unless an amendment would be inequitable or futile." Moreover, dismissal without leave to amend is only warranted on grounds of bad faith, prejudice, or futility. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Coastal will experience no prejudice by an amendment. The cross-claims pled have been raised against Coastal by Commonwealth in conjunction with previous Complaints. (*See, e.g.*, Commonwealth's Answer, Cross-Claims, and Defenses to the Third Am. Compl. (Feb. 15, 2005) [document 118]; Merin Certif., Ex. B: Commonwealth's Answer to Am. Compl., Answer to Cross-Claims, Separate Defenses, and Cross-Claims for Contribution and Indemnification (Jan. 13, 1998)). They were also filed just over a year ago on July 23, 2009. The cross-claims, as they exist, along with the facts of the underlying dispute which allege wrongdoing by Coastal, put Coastal on notice of its potential liability to Commonwealth. Given the liberal policy of allowing the amendment of pleadings, the lack of any risk of prejudice to Coastal in allowing an amendment, and the interests of justice, Commonwealth respectfully requests, if this Court grants Coastal's motion to dismiss, that dismissal be without prejudice to permit Commonwealth to amend its Complaint.

## II.   Commonwealth has Adequately Pled Its Cross-Claim Alleging that Coastal is Liable to Commonwealth in Tort for Coastal's Agents' Negligence

Coastal, Commonwealth's agent, was negligent in issuing closing service letters, so Commonwealth's cross-claims for contribution and indemnity raise a claim upon which relief can be granted against Coastal. In the title insurance industry, title agents issue closing service protection letters; while not approved by the title insurance company prior to issuance, the letters bind the insurer. Here, Coastal issued closing service letters on behalf of Commonwealth,

binding Commonwealth to the letters' terms.  Two different forms of letters were used, however, and only one contained a provision with terms limiting Commonwealth's liability.  This was negligence on Coastal's part, and it stands to increase Commonwealth's potential liability in this matter.

In deciding a motion to dismiss, a Court's review is not limited solely to the documents attached to the complaint by a plaintiff.  Review of "a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  *Winer Family Trust v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis added); *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court" (emphasis omitted)).  Courts are obligated to "consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007)).

Coastal used two different types of closing service letters on Commonwealth's behalf. (*See* Merin Certif., Ex. C: Closing Service Letter to National Home Funding by Robert F. Agel of Coastal Title Agency, Inc. (July 30, 1996) ("July 30 Closing Service Letter"); Ex. D:  Closing Service Letter to National Home Funding by Robert F. Agel of Coastal Title Agency, Inc. (March 27, 1997) ("March 27 Closing Service Letter").)  Only one of the two versions of closing service letters included a paragraph (F), which limited Commonwealth's liability under the

agreement.  (*See* Merin Certif., Ex. C: July 30 Closing Service Letter; Merin Certif., Ex. D:

March 27 Closing Service Letter.)  Paragraph (F) provides,

> F.      Liability under this letter is limited to the amount of
> insurance committed for and is subject to all of the Conditions and
> Stipulations of the policy or policies committed by the Company.
> Any payment of loss under this letter shall constitute a payment
> under the policy.

(Merin Certif., Ex. D: March 27 Closing Service Letter.)  Moreover, the Rule 30(b)(6)

representative of Coastal, Robert Agel, at his August 5, 2010 deposition, confirmed the

possibility of negligence in acknowledging that Coastal "could have" issued the wrong closing

service letter "and it could have been by mistake." (*See* Merin Certif., Ex. E: Deposition of

Robert Agel 259:16-260:3 (Aug. 5, 2010).)  Commonwealth believes that Plaintiff will assert

that, because subsection (F) was absent from certain closing service letters, damages in those

cases are larger.  Thus, Coastal's negligence increased Commonwealth's exposure.

    In the Complaint, Plaintiff alleges that "Coastal Title issued, on behalf of the Title

Insurance Defendants, closing service protection letters and title insurance commitments with the

intent and purpose that Walsh Securities would rely on the same.  In doing so, Coastal Title

failed to disclose the loan transactions at issue were fraudulent and that the closing documents

were not timely and properly recorded." (Fourth Am. Compl. ¶ 82.)  As a result of Coastal's

alleged participation in a fraudulent scheme for which closing service protection letters were

issued on Commonwealth's behalf (while Commonwealth had no role in or knowledge of the

alleged scheme), Plaintiff seeks damages from Commonwealth.  (*See, e.g. id.* at ¶¶ 92-100

(alleging breach or contract by the Title Insurance Defendants).)  Because these letters form the

basis of Commonwealth's alleged liability, they are "integral to . . . the Complaint[.]" *See Winer*

*Family Trust, supra,* 503 F.3d at 328.  Therefore, they can be considered by this Court in support

of Commonwealth's opposition to Coastal's motion to dismiss to show that Commonwealth has

ME1 10416268v.1

stated cross-claims for negligence which relief can be granted. *See Institutional Investors Group, supra*, 564 F.3d at 252.

### III.   Coastal Owes Commonwealth A Direct Duty, Because Coastal's Alleged Actions Were a Breach of the Duties Owed to Commonwealth that Caused Harm

If Plaintiff's allegations prove correct and Coastal is found to have been involved in the alleged fraud, the policies in this case would never have been issued *but for that fraud.* Commonwealth should therefore not be held solely responsible for its agent's allegedly fraudulent and negligent acts in issuing the policy. Instead, Commonwealth should be permitted to distribute the loss among the culpable parties -- namely Coastal, its agent. Coastal owed a direct duty to Commonwealth in tort, demonstrating that Commonwealth's cross-claims for contribution and indemnification state a claim upon which relief can be granted.

"An agency relationship is created 'when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, an the agent manifests assent or otherwise consents to act." *N.J. Lawyers' Fund for Client Protection v. Stewart Title Guaranty Co.*, __ N.J. __, *2010 N.J. LEXIS 712*, at *21 (Aug. 2, 2010) (quoting *Restatement (Third) of Agency* § 1.01 (2006)). The scope of an agency agreement generally only permits an agent "to bind his principal for such acts that 'are within his actual or apparent authority." *Ibid.* Actual authority only exists when the agent believes he or she is acting in accord with the principal's wishes. *Id.* at *21-*22. "Apparent authority arises 'when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'" *Id.* at *22 (quoting *Restatement (Third) of Agency* § 2.03).

General principles of agency law provide that an agent has a duty of care to a principal that, while "often overlap[ing]" with contractual duties, sound in tort. *Restatement (Third) of*

*Agency* § 8.08(b). These "are tort-law duties because they 'denote the fact that the actor is required to conduct himself in a particular manner at the risk that if he does not do so he becomes subject to liability to another to whom the duty is owed for any injury sustained by such other, of which that actor's conduct is a legal cause. *Ibid.* (quoting *Restatement (Second) of Torts* § 4). The Restatement of Agency explains that duties of care in tort are imposed on an agent "because the agent undertakes to act on behalf of the principal, because the principal's reliance on that undertaking is foreseeable by the agent, and because it is often socially useful that an agent fulfill the agent's undertaking to the principal." *Ibid.* For example, where an agent breaches the fiduciary duty owed to the principal, the "agent's breach subjects the agent to liability for loss that the breach causes the principal." *Id.* at § 8.01(d) (citing *Restatement (Second) of Torts* § 874, which provides, "One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation."). The New Jersey Appellate Division acknowledged that a tort remedy can exist in an agency situation: "[a]t most, an affirmative remedy for breach of contract or negligence exists where there is 'misconduct in negotiations with third persons,' harm to 'tangible things in the [agent's] custody,' or 'causing the principal to be subject to liability for a tort crime, or breach of contract.'" *Fried v. Aftec, Inc.*, 246 N.J. Super. 245, 259 (App. Div. 1991) (citing *Restatement (Second) of Agency* § 379(1) comment b (1956)); *but see Allocca v. Wachovia*, No. 05-366, 2007 U.S. Dist. LEXIS 42375, *53 (D.N.J. 2007) (acknowledging the general rule of agency that "an agent who acts in an unauthorized manner and subjects his principal to liability because of a negligent or other wrongful act is subject to liability for the resulting loss" and noting an exception under New Jersey law specifically for employer-employee relationships that applies only to negligence and not intentional acts).

-10-

New Jersey's legislative and judicial branches have long recognized that the "the guiding principle of comparative fault [is] to distribute the loss in proportion to the respective faults of the parties causing that loss." *Blazovic v. Andrich*, 124 N.J. 90, 107 (1991).  New Jersey's Joint Tortfeasor's Contribution Law provides that:

> Where injury or damage is suffered by any person as a result of the wrongful act, neglect, or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damages against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share . . . .

N.J.S.A. 2A:53A-3.  The Joint Tortfeasor's Contribution Act was modified by the Legislature in 1973 with the passage of the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 *et seq.*  The Comparative Negligence Act modified the apportionment of liability in accordance with the "basic principle" that "a defendant contributing to an injury caused by multiple factors should bear no more of the ultimate liability than is proportionate to that defendant's relative share of the assigned fault." *Lee v. Kiku Restaurant*, 127 N.J. 170, 186 (1992).

New Jersey's law on indemnification has similar ends: "[t]he right of indemnity rests upon a difference between primary and secondary liability of two persons, each of whom is made responsible under law to an injured person." *Walsh Securities, Inc. v. Cristo Prop. Mgmt, Ltd.*, No. 97-cv-3496, at 13 (Dec. 16, 2009) (quoting *In re Lead Paint Litig.*, No. A-1946-02, 2005 WL 1994172 (N.J. App. Div. Aug. 17, 2005)).  "'Indemnity is a mechanism for shifting the cost of liability from one joint tortfeasor to another.'  'A party is not entitled to common-law indemnity from another unless it and the other party have been found liable in tort to a third party for the same harm.'"  *Id.* (citations omitted).

-11-

However, a right of indemnity is not created by statute and is thus more flexible. A right to indemnity "may be created by contract or the courts as an equitable remedy." *New Milford Bd. of Educ. v. Juliano*, 219 N.J. Super. 182, 185 (App. Div. 1987). In extending indemnity to a subsequent tortfeasor, the New Jersey Appellate Division explained, that equitable

> indemnity is allowed ". . . to prevent a result which is regarded as unjust or unsatisfactory." This form of indemnity ". . . has been recognized in cases where equities supported it. A court's view of the equities may have been based on the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct."

*Id.* at 185-86. The Court further set out the reasons underlying the duty of a tortfeasor to indemnify another who is affected by its actions:

> The duty to indemnify may arise, and indemnity may be allowed in those fact situations where in equity and good conscience the burden of the judgment should be shifted from the shoulders of the person seeking indemnity to the one from whom indemnity is sought. The right depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him.

*Id.* at 188 (quoting *Herrero v. Atkinson*, 38 Cal. Rptr. 490, 493-94 (1964)). Thus, a right to indemnification "enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *Enright v. Lubow*, 202 N.J. Super. 58, 85 (App. Div. 1985), *certif. denied*, 104 N.J. 376 (1986). In an extension of this principal, in *Enright*, the Appellate Division found a title insurer responsible in contract to the insured but also found that a land surveyor, whose negligence in mis-locating easements was the source of the title insurer's liability, was obligated to fully indemnify the title insurer. *Id.* at 85-86.

As explained by this Court in its December 16, 2009 opinion, "the answer to the question whether a contract claim will be considered to be a tort claim for contribution purposes depends upon the circumstances of the individual case." *Walsh Securities, Inc.*, *supra*, No. 97-cv-3496, at 11. The Court classified the damages sought by Plaintiff as being those for breach of contract, foreclosing a remedy in tort and, by extension, foreclosing Commonwealth's contribution claims. *Ibid.* The Court reasoned similarly regarding indemnification claims. *Id.* at 13.

The facts at issue with the Commonwealth-Coastal relationship, however, permit contribution and indemnification claims by Commonwealth against Coastal. The situation with Coastal differs from that with Plaintiff, because Coastal owed Commonwealth a duty in tort. *See Restatement (Third) of Agency* §§ 8.01, 8.08; *Fried*, *supra*, 246 N.J. Super. at 259. Like the situation in *Enright*, Coastal's alleged actions are the sole source of Plaintiff's claims against Commonwealth. *See Enright*, *supra*, 202 N.J. Super. at 85-86. Plaintiff alleges that both Coastal and Commonwealth caused it harm, yet the sole source of Commonwealth's liability is the scheme in which Coastal allegedly took part. Absent the alleged scheme, Commonwealth's closing service protection letters would never have issued. Moreover, in the circumstances alleged by Plaintiff, Commonwealth is (correctly) never attributed any awareness of the alleged fraud as it was occurring. As such, Coastal's alleged conduct for which Plaintiff claims harm is the same conduct that, if Plaintiff succeeds in its claims, will cause Commonwealth to incur liability. Thus, unlike where this Court found that tort duties did not mutually exist to permit an allocation of fault, an allocation of damages between Coastal and Commonwealth is possible, as Coastal owed Commonwealth duties in tort. *See Walsh Securities, Inc.*, *supra*, No. 97-cv-3496, at 12 (stating no allocation is possible between tort claims against the defendants alleged to have participated in the mortgage scheme and the contract claims against Commonwealth).

-13-

**IV.   Coastal's Material Breach of Its Agency Agreement Entitles Commonwealth to Contractual Indemnification**

Coastal materially breached the plain language of the Agency Agreement that it entered into with Commonwealth, entitling Commonwealth to contractual indemnification. This court can consider the Agency Agreement in this motion to dismiss without converting the motion to one for summary judgment, because Coastal's issuing closing service protection letters on behalf of Commonwealth, thus acting Commonwealth's agent, is asserted in the Complaint. *See* Fourth Am. Compl. ¶ 82; *Winer Family Trust*, *supra*, 503 F.3d at 328. As the Agency Agreement demonstrates, Coastal's motion to dismiss should be denied.

On April 15, 1989, Coastal and Commonwealth entered into a contract whereby Commonwealth appointed Coastal as its agent for "Freehold and County of Monmouth[,]" New Jersey. (Merin Certif., Exhibit A: Agency Agreement at 1.) As Commonwealth's Agent, Coastal was authorized

> [t]o originate applications for title insurance, to prepare abstracts, to examine titles to real estate, to prepare and issue commitments, binders and reports of title, and to issue policies of title insurance on properties located in the State of New Jersey, all in accordance with the rules, regulations and instructions of COMMONWEALTH and the applicable Insurance Department.

(*Ibid.*)

The April 15, 1989 Agreement ("Agency Agreement") provides that Coastal had certain obligations to Commonwealth in exchange for operating as Commonwealth's agent. The Agency Agreement provided:

> 2.     AGENT COVENANTS AND AGREES WITH COMMONWEALTH AS FOLLOWS:
>
> (a)     To observe strictly all general instructions, rules and regulations issued by COMMONWEALTH.

(b)    To exercise due diligence and reasonable care in the abstracting and examination of title to properties examined by AGENT and to make sure that all abstracts and examinations made by partners or associates of AGENT or other parties are also made with due diligence and in the exercise of reasonable care;

*    *    *

(l)    ***AGENT agrees to be solely liable for all attorney's fees, court costs, expenses and loss or aggregate of losses resulting from (a) fraud, negligence* or misconduct of AGENT, its officers or employees in the performance of its duties as AGENT of COMMONWEALTH***; (b) escrow and/or closing loss or losses wherein AGENT fails to disburse properly or close in accordance with escrow and/or closing instructions or where such escrow and/or closing funds are misappropriated by AGENT, its officers or employees[.][2]

(Merin Certif., Ex. A: Agency Agreement at 1-2 (emphasis added).)  The Agreement further

provides, by mutual consent of Commonwealth and Coastal, that Commonwealth has the ability

to terminate the Agreement if Coastal breaches the contract:

4.    IT IS MUTUALLY AGREED

(a)    This Agreement shall continue until terminated by either party upon ninety (90) days' notice in writing to the other party at either's principal office.  This Agreement may be terminated by COMMONWEALTH immediately on notice in writing to AGENT if AGENT shall have materially breached any term or conditions hereof, or materially deviated from any instruction, rule or regulation of COMMONWEALTH or exercised any authority in conflict herewith, or in the event of insolvency, fraud or misconduct of AGENT, or in the event that the activities of AGENT or the Agency created by this Agreement shall violate, or be deemed by the Department of Insurance to violate, any law or regulation governing AGENTS for title insurance companies[.]

(*Id.* at 5-6.)

---

[2] The "*" following "negligence" references a note indicating, "Agent's liability for its negligence shall not exceed the amount covered by its E&O Policy of $250,000.00."

Provisions of general contract interpretation under New Jersey law are well settled. Determining "whether the terms of a contract are clear or ambiguous is a question of law." *Consol. Brick & Bldg. Supplies, Inc.*, Docket No. 05-1490 (MLC), 2006 WL 2135805, at *4 (July 28, 2006) (citing *Seidenberg v. Mut. Life Ins. Co.*, 949 F. Supp. 269, 274 (D.N.J. 1996), *aff'd*, 135 F.3d 76 (3d Cir. 1997)). As recently explained by a court within this District, "[w]hen interpreting the terms of [a contract], a Court must give the contract terms their 'plain and ordinary meaning.' If the terms of the agreement are clear, the Court must enforce the contract as written." *Moran v. DaVita, Inc.*, Docket No. 06-cv-5620 (JAP), 2009 WL 792074, at *11 (D.N.J. Mar. 23, 2009) (citations omitted). As such, where an unambiguous contract exists, "[t]he court has no right 'to re-write the contract merely because one might conclude that it might well have been functionally desirable to draft it differently.' Nor may the courts remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other." *Karl's Sales & Service, Inc. v. Gimbel Bros., Inc.*, 249 N.J. Super. 487, 493 (App. Div.) (citations omitted), *certif. denied*, 127 N.J. 548 (1991).

The plain language of the Agency Agreement between Commonwealth and Coastal is entirely clear and susceptible to only one reading. *See Moran*, *supra*, No. 06-cv-5620, at *11. As it is unambiguous, it should be enforced as written. *See ibid*; *Karl's Sales & Service, Inc.*, *supra*, 249 N.J. Super. at 493. Section 2 of the Agency Agreement clearly sets out the duties owed to Commonwealth by Coastal, its agent, including strict observance of Commonwealth's rules and instructions along with performing those duties with due diligence and reasonable care. (*See* Merin Certif., Ex. A: Agency Agreement at 1-2.) Section 2(l) expressly provides that,

> AGENT agrees to be solely liable for all attorney's fees, court
> costs, expenses and loss or aggregate of losses resulting from (a)

> fraud, negligence[] or misconduct of AGENT, its officers or
> employees in the performance of its duties as AGENT of
> COMMONWEALTH[.]

(*See* Merin Certif., Ex. A: Agency Agreement at 2.)  Coastal therefore, by contract, has agreed to

responsibility for "all attorney's fees, court costs, expenses and loss or aggregate of losses" for

"fraud, negligence[] or misconduct of AGENT, its officers or employees in the performance of

its duties as AGENT of COMMONWEALTH[.]" (*See ibid.*)  The mortgage scheme that

Plaintiff alleges Coastal engaged in is without question, if true, "fraud, negligence[] or

misconduct" which, if Plaintiff prevails in this lawsuit, will cause Commonwealth to incur a loss

(along with the other expenses relating with this defense to date).  (Merin Certif., Ex. A: Agency

Agreement at 2.)  This is in addition to the negligence already discussed in sections two and

three of this brief.  In short, the relief Commonwealth seeks by way of its cross-claims for

contribution and indemnification has already been contracted for between Coastal and

Commonwealth.

     Moreover, Commonwealth was unaware of Coastal's alleged fraudulent activity while it

was ongoing, permitting what Plaintiff alleges to be an ongoing scheme to continue without

Commonwealth having the ability to protect itself by terminating the agency agreement.  (*See*

Merin Certif., Ex. A: Agency Agreement at 5-6 (termination provision)).  Thus, Commonwealth

is in this lawsuit solely because, if Plaintiff's allegations are proven, of Coastal's allegedly

fraudulent activities.

     In sum, Commonwealth's role in this action is solely due to Coastal's alleged actions in

issuing fraudulent closing service protection letters and thus binding Commonwealth while

engaging in a self-enriching and wholly extra-contractual endeavor.  The activities alleged

against Coastal are a blatant breach of the duties to Commonwealth set forth in the Agency

Agreement.  If Plaintiff prevails in its claims, Commonwealth will suffer damages due to

-17-

Coastal's breach of the Agency Agreement.  Commonwealth's cross-claims for contribution and indemnification are therefore supported by the plain language of the Agency Agreement and state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, Coastal Title Agency's motion to dismiss Commonwealth's cross-claims for contribution and indemnification should be denied; however, if it is granted, dismissal should be without prejudice and Commonwealth should be permitted to amend its cross-claims.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

Attorneys for Defendant/Third-Party Plaintiff Commonwealth Land Title Insurance Company

By:    *s/David R. Kott*
    David R. Kott
    A Member of the Firm

Dated:  September 1, 2010