**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant/Third Party Plaintiff
    Commonwealth Land Title Insurance Company

|  |  |
|---|---|
| WALSH SECURITIES, INC., | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY |
| Plaintiff, | Civil Action No. 97-cv-3496 (DRD)(MAS) |
| v. | Hon. Dickinson R. Debevoise, U.S.S.D.J.<br>Hon. Michael A. Shipp, U.S.M.J. |
| CRISTO PROPERTY MANAGEMENT,<br>LTD., A/K/A G.J.L. Limited, ET AL., | **CERTIFICATION OF SARA F. MERIN IN**<br>**SUPPORT OF COMMONWEALTH LAND** |
| Defendants. | **TITLE INSURANCE COMPANY'S BRIEF**<br>**IN OPPOSITION TO COASTAL TITLE**<br>**AGENCY INC.'S MOTION TO DISMISS**<br>**COMMONWEALTH'S CROSS-CLAIMS**<br>**PURSUANT TO RULE 12(b)(6)** |

**SARA F. MERIN**, hereby certifies as follows:

1.    I am an attorney at law of the State of New Jersey and am associated with the firm of McCarter & English, LLP, attorneys for Defendant Commonwealth Land Title Insurance Company ("Commonwealth"). I make this Certification in support of Commonwealth's brief in opposition to Coastal Title Agency Inc.'s motion to dismiss Commonwealth's Cross-Claims Pursuant to Rule 12(b)(6). I am fully familiar with the facts and information set forth herein.

2.    Attached hereto as Exhibit A is a true and accurate copy of the Agency Agreement between Commonwealth and Coastal Title Agency Inc., dated April 15, 1989.

3.    Attached hereto as Exhibit B is a true and accurate copy of Commonwealth's Answer to the Amended Complaint, Answer to Cross-Claims, Separate Defenses, and Cross Claims for Contribution and Indemnification, which was filed on January 13, 1998.

4.    Attached hereto as Exhibit C is a true and accurate copy of a closing service letter on behalf of Commonwealth to National Home Funding, with a signature line for Robert F. Agel of Coastal Title Agency Inc., dated July 30, 1996.

5.    Attached hereto as Exhibit D is a true and accurate copy of a closing service letter on behalf of Commonwealth to National Home Funding, with a signature line for Robert F. Agel of Coastal Title Agency Inc., dated March 27, 1997.

6.    Attached hereto as Exhibit E is a true and accurate copy of relevant portions of the transcript of the August 5, 2010 deposition of Robert Agel.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

SARA F. MERIN

Dated:  September 1, 2010

# Exhibit A

THIS AGREEMENT made this  12th  day of   April      A. D. 1989

between COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Pennsylvania Corporation,

of 8 Penn Center, 17th JFK Blvd., Philadelphia, Pa., 19103 (hereinafter called

"COMMONWEALTH"), of the one part and

        Coastal Title Agency Inc.
        Wemrock Professional Mall
        509 Stillwell's Corner Road
        Freehold, NJ  07728

of                            (hereinafter called "AGENT"), of the other part:

WITNESSETH THAT:

The parties hereto for and in consideration of the mutual promises,

covenants and agreements herein contained, and each intending to be legally bound

hereby, do agree as follows:

1.  COMMONWEALTH hereby designates and appoints AGENT as its representative

or agent for the territory mentioned below, under the terms and conditions specified

herein.

                    Freehold and County of Monmouth


To originate applications for title insurance, to prepare abstracts, to examine

titles to real estate, to prepare and issue commitments, binders and reports of

title, including the removal of objections on commitments, binders or reports of

title, and to issue policies of title insurance on properties located in the ~~xxxx~~ State

of New Jersey

~~Mentioned above,~~ all in accordance with the rules, regulations and instructions

of COMMONWEALTH and the applicable Insurance Department.  The appointment of

AGENT hereunder is not an exclusive agency for the territory described and is

subject to the right of COMMONWEALTH to make appointments of other AGENTS or

representatives for all such territory.

2.  AGENT COVENANTS AND AGREES WITH COMMONWEALTH AS FOLLOWS:

(a) To observe strictly all general instructions, rules and regulations

issued by COMMONWEALTH;

(b) To exercise due diligence and reasonable care in the abstracting and

examination of title to properties examined by AGENT and to make sure that all

abstracts and examinations made by partners or associates of AGENT or other

parties are also made with due diligence and in the exercise of reasonable care;

(c) Not to participate in any litigation or other activity which is detrimental to the interests of COMMONWEALTH:

(d) To issue commitments, binders and reports of title and title policies in accordance with the information contained in the applications and abstracts of title produced by AGENT or filed with AGENT in satisfactory form promptly after such filing;

(e) Before final closing or settlement (1) to secure, on behalf of COMMONWEALTH, appropriate evidence justifying the removal of all objections set out in the commitment, binder or report of title, except for those not insured against, (2) to secure written approval of COMMONWEALTH for the removal of those objections as to which AGENT considers there is any reasonable doubt before removing the same, and (3) to retain evidence justifying the removal of all objections removed, which evidence may be inspected by COMMONWEALTH at its option;

(f) As AGENT for COMMONWEALTH to record all papers which should be recorded, to make payment out of escrow or closing funds of all obligations which constitute liens on the property and to be responsible for the satisfaction of such liens of record;

(g) All escrow or closing funds deposited with AGENT shall be deposited in a separate Escrow Account. The acceptance of such funds by the AGENT shall be done for the immediate disbursement of such funds in the normal course and conduct of real estate transactions. It is not to be construed that the AGENT is authorized to accept deposit of escrow funds to be held over an extended period of time, the disbursement of which is contingent upon events after the closing of the transactions and issuance of policy of title insurance. The AGENT shall not handle any matters or do any business in the name of COMMONWEALTH except as specifically authorized herein or otherwise expressly authorized by COMMONWEALTH;

(h) To collect or cause to be collected, all fees for policies, prior to the issuance thereof, on behalf of COMMONWEALTH in accordance with the Schedule of Fees approved by COMMONWEALTH;

(i) To forward weekly, or more frequently based upon volume, copies of all policies and related commitment vouchers to;

> COMMONWEALTH LAND TITLE INSURANCE COMPANY
> NATIONAL PROCESSING CENTER
> 223 South Fifth Street
> P.O. Box 35180
> Louisville, Kentucky  40232

To remit to COMMONWEALTH the net premium shown on the monthly statement provided by the National Processing Center.  It is the intention of this provision that AGENT shall be responsible and liable to COMMONWEALTH for the net fees due COMMONWEALTH;

(j) To refer to COMMONWEALTH all title questions and problems deemed doubtful by AGENT which may arise in connection with insuring of titles, and to follow the directions of COMMONWEALTH with respect to the resolution thereof;

(k) In all cases where the application is for a policy of  $ 1,000,000.00 or more, AGENT agrees to notify COMMONWEALTH and, if required, agrees to submit the commitment, binder, title report, searches, abstracts or note of title and attorney's opinion or certificate to COMMONWEALTH before delivering the commitment, binder or title report to the applicant for insurance, and if the application is for less than $1,000,000   not to increase it above $1,000,000   without the approval of COMMONWEALTH;

(l) AGENT agrees to be solely liable for all attorney's fees, court costs, expenses and loss or aggregate of losses resulting from (a) fraud, negligence or misconduct of AGENT, its officers or employees in the performance of its duties as AGENT of COMMONWEALTH; (b) escrow and/or closing loss or losses wherein AGENT fails to disburse properly or close in accordance with escrow and/or closing instructions or where such escrow and/or closing funds are misappropriated by AGENT, its officers or employees; *Agent's liability for its negligence shall not exceed the amount covered by its E&O Policy of $250,000.00.

(m) To furnish COMMONWEALTH with a certificate showing that AGENT has secured a "Lawyer's Protective Policy and/or Errors and Omissions Policy" with a Company satisfactory to COMMONWEALTH in the sum of not less than XXXXXXXXXXXX $250,000 such policy to be kept current and to cover loss or damage caused by any negligent act, error or omission of AGENT, associates or employees in the performance of services to be rendered to COMMONWEALTH hereunder;

(n) To maintain the Agent's File Register furnished by COMMONWEALTH showing all commitments, binders, reports of title and policies issued, and when requested by COMMONWEALTH, to furnish a list of all commitments, binders and policies remaining in AGENT'S possession;

(o) To keep in a manner and form prescribed or approved by COMMONWEALTH true and correct records and books of account of escrows and closings and all other transactions under this Agreement, and to carefully preserve all records, books, books of account, files, documents, correspondence and material of all kinds which shall be kept by AGENT or shall come into AGENT'S possession or under AGENT'S control, relating to transactions of COMMONWEALTH so that such books, records, and material

may be available for inspection and examination of COMMONWEALTH, and to make the same available during and after the terms of this Agreement for the purpose of auditing financial accounts or in connection with the settlement of any claim or loss.  COMMONWEALTH shall, at its option and expense, be entitled to make copies of any such books or accounts' records;

(p) To permit COMMONWEALTH, at any time, to examine or audit all books and records, files, securities and other papers and documents of AGENT relative to title insurance written on behalf of COMMONWEALTH;

(q) To immediately forward to COMMONWEALTH, by certified mail, return receipt requested, all claims or demands of any kind or nature received by AGENT in respect to the business of COMMONWEALTH or any title insurance policy, commitment, binder or report of title issued or assumed by it, including but without limitation, all legal process against COMMONWEALTH served upon or received by AGENT;

(r) If so requested by COMMONWEALTH to defend or assist in the defense of any litigation brought as a result of any claim based upon any commitment, binder, report of title, or title insurance policy issued by AGENT;

(s) To furnish COMMONWEALTH a Lost Policy Affidavit for any prenumbered forms which AGENT states have not been issued but which AGENT claims have been lost or mislaid;

(t) Not to do any business in the name of COMMONWEALTH except as specifically authorized herein or as otherwise expressly authorized by COMMONWEALTH in writing;

(u) Upon termination of this Agreement to turn over to COMMONWEALTH all forms supplied by COMMONWEALTH, accounting for all prenumbered forms, all applications for title insurance on file with AGENT, whether pending or completed, and to file a final accounting of all fees collected or due and payable;

3.  COMMONWEALTH COVENANTS AND AGREES WITH AGENT AS FOLLOWS:

(a) To designate  Robert Agel and such other persons as may be recommended by AGENT, licensed by the State of New Jersey      and approved by COMMONWEALTH as persons authorized to countersign on behalf of COMMONWEALTH all commitments, reports of title, binders, title insurance policies and endorsements thereon covering real estate located in the above described territory.  COMMONWEALTH may withdraw such authorization for just cause and make other authorizations agreeable to AGENT from time to time and its acts in this respect shall be effective when communicated to the AGENT;

-4-

(b) To supply AGENT with commitment for Title Insurance forms, reports of title forms, binders, title insurance policies and endorsements therefor in quantities as may be required and to furnish an Agent's File Register in which records shall be kept by AGENT as to the disposition of all forms.  AGENT will not print, or cause to be printed, any of the aforesaid forms and agrees that all unused forms furnished by COMMONWEALTH to AGENT are and will remain the property of COMMONWEALTH;

(c) To pay AGENT as compensation on transactions originated by AGENT for services hereunder a commission on the premium paid for title insurance on the following basis:

> See Exhibit "A" attached hereto.

The minimum premium to COMMONWEALTH shall be $15.00 for each policy. XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

AGENT not to participate with COMMONWEALTH on Mechanics' Lien or other Special Risk premium collected.

(d) Whenever it is necessary, requested or deemed advisable to purchase reinsurance or coinsurance on any single policy or aggregate of policy liability comprising one risk, the cost thereof shall be first deducted from the gross premium and the division of premium between COMMONWEALTH and the AGENT shall be made on the balance of such gross premium after such charge.

(e) To pay AGENT as compensation for services in producing commitments, binders and final reports of title, conducting settlements or otherwise servicing matters of title insurance originating by or through the offices of COMMONWEALTH, a fee to be agreed upon between COMMONWEALTH and AGENT.

4.  IT IS MUTUALLY AGREED:

(a) This Agreement shall continue until terminated by either party upon ninety (90) days' notice in writing to the other party at either's principal office.  This Agreement may be terminated by COMMONWEALTH immediately on notice in writing to AGENT if AGENT shall have materially breached any term or conditions

hereof, or materially deviated from any instruction, rule or regulation of COMMONWEALTH or exercised any authority in conflict herewith, or in the event of insolvency, fraud or misconduct of AGENT, or in the event that the activities of AGENT or the Agency created by this Agreement shall violate, or be deemed by the Department of Insurance to violate, any law or regulation governing AGENTS for title insurance companies;

(b) In the event of termination, AGENT agrees to keep available to COMMONWEALTH all searches, abstracts, and opinions of title relative to the real estate which COMMONWEALTH has insured pursuant to the provisions of this Agreement;

(c) Nothing contained in this Agreement shall preclude COMMONWEALTH from reinsuring or coinsuring with other title insurance companies the title to property located in the above described territory when COMMONWEALTH has been requested so to do by such other title insurance company or companies;

AGENT shall not be entitled to any commission in connection with any such reinsurance or coinsurance unless COMMONWEALTH shall, at its discretion, request AGENT to review titles to be reinsured or coinsured, and if such request is made, AGENT shall be entitled to a reading charge;

(d) This Agreement is not transferable or assignable by either party without the written consent of the other party; nor are any rights or interests arising hereunder in favor of either party hereto subject to transfer or assignment without such written consent. A merger or consolidation of COMMONWEALTH with another title company shall not be considered a transfer or assignment for the purpose of this paragraph;

(e) This Agreement constitutes the entire relations between the parties and there are not representations, warranties, covenants or promises, whether made as inducement to the execution hereof, or otherwise not set forth herein, all such and all prior negotiations being expressly merged and integrated herein.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

By _____
                    Vice President
                A. Roger Blauvelt

ATTEST:

_____
              Secretary

COASTAL TITLE AGENCY INC.

By: _____
                    Agent

WITNESS:

_____
         Secretary

EXHIBIT "A"


Agent shall remit to Commonwealth 20 percent of the filed rate
chargeable to the insured according to the Commonwealth Manual
of Rates and Charges, less the following amount which is retained
by Agent.

     1.  On a basic rate transaction...................$105
     2.  On a reissue rate transaction................$ 90
     3.  On a refinance rate transaction..............$ 90
     4.  On a construction rate transaction...........$105

Agent shall retain the $20 simultaneous issue loan policy charge.

# Exhibit B

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant
    Commonwealth Land Title
    Insurance Company



ORIGINAL FILED
JAN 13 1998
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---------------------------------x
WALSH SECURITIES, INC.,              :

                Plaintiff,           : Civil Action No. 97-3496
                                       Hon. William G. Bassler
v.                                   :

CRISTO PROPERTY MANAGEMENT, LTD.,    :
A/K/A G.J.L. LIMITED, DEK HOMES OF
NEW JERSEY, INC., OAKWOOD            :
PROPERTIES INC., NATIONAL HOME
FUNDING, INC., CAPITAL ASSETS        : **ANSWER TO AMENDED**
PROPERTY MANAGEMENT, L.L.C.,           **COMPLAINT, ANSWER TO CROSS-**
WILLIAM J. KANE, GARY GRIESER,       : **CLAIM OF DEFENDANTS**
ROBERT SKOWRENSKI, II, RICHARD         **NATIONAL HOME FUNDING,INC.**
CALANNI, RICHARD DIBENEDETTO, JAMES: **ROBERT SKOWRENSKI, II,**
R. BROWN, THOMAS BRODO, RONALD J.      **ANSWER TO CROSS-CLAIMS**
PIERSON, STANLEY YACKER, ESQ.,       : **FOR CONTRIBUTUTION,**
MICHAEL ALFIERI, ESQ., RICHARD         **SEPARATE DEFENSES, CROSS-**
PEPSNY, ESQ., ANTHONY M. CICALESE,   : **CLAIM FOR CONTRIBUTION**
ESQ., LAWRENCE M. CUZZI, ANTHONY       **AND CROSS-CLAIM FOR**
D'APOLITO, DAP CONSULTING, INC.,     : **INDEMNIFICATION**
COMMONWEALTH LAND TITLE INSURANCE
COMPANY, NATIONS TITLE INSURANCE     :
OF NEW YORK INC., FIDELITY NATIONAL
TITLE INSURANCE COMPANY OF NEW       :
YORK, and COASTAL TITLE AGENCY,

                                     :

                Defendants.          :
---------------------------------x

Defendant Commonwealth Land Title Insurance Company (hereafter "Commonwealth"), a corporation of the Commonwealth of Pennsylvania, having its principal place of business in the Commonwealth of Pennsylvania, by way of Answer to the Amended Complaint, says:

1.    Answering the allegations of paragraph 1, insofar as they are directed at this defendant, they are denied.  This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 1.

## AS TO PARTIES

2.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 2.

3.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 3.

4.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 4.

5.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 5.

6.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 6.

7.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 7.

8.    This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 8.

9.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 9.

10.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 10.

11.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 11.

12.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 12.

13.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 13.

14.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 14.

15.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 15.

16.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 16.

17.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 17.

18.   Answering the allegations of paragraph 18, this defendant admits that to its knowledge defendant Stanley Yacker, Esq. was an attorney admitted to practice in New Jersey.  This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 18.

19.   Answering the allegations of paragraph 19, this defendant admits that to its knowledge defendant Michael Alfieri, Esq. was an attorney admitted to practice in New Jersey.  This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 19.

20.   Answering the allegations of paragraph 20, this defendant admits that to its knowledge defendant Richard Pepsny, Esq. was an attorney admitted to practice in New Jersey.  This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 20.

21.   Answering the allegations of paragraph 21, this defendant admits that to its knowledge defendant Anthony M. Cicalese, Esq. was an attorney admitted to practice in New Jersey.  This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 21.

22.   Answering the allegations of paragraph 22, this defendant admits that on certain transactions closing service letters were issued on behalf of defendant Yacker and defendant Cicalese.  This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 22.

23.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 23.

24.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 24.

25.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 25.

26.   The allegations of paragraph 26 are admitted.

27.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 27.

28.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 28.

29.   Answering the allegations of paragraph 29, this defendant admits that defendant Coastal Title Agency, Inc. engages in business in New Jersey and has been involved in the issuance of title insurance to plaintiff Walsh Securities's assignor.   This defendant is without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 29.

30.   Answering the allegations of paragraph 30, this defendant admits that it is a title insurer and that it issued certain closing service letters to Walsh Securities.   With respect to the terms of the closing service letters issued by this defendant, they speak for themselves.   This defendant is

without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 30.

### AS TO JURISDICTION

31.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 31.

### AS TO VENUE

32.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 32.

33.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 33.

34.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 34.

35.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 35.

36.   Answering the allegations of paragraph 36, any closing service letters issued by this defendant speak for themselves. The remaining allegations of paragraph 36 are denied.

### AS TO FACTUAL ALLEGATIONS

### The Mortgage Banking Industry

37.   Answering the allegations of paragraph 37, this defendant admits that a loan can be made in which real property is used as collateral for the loan.  The remaining allegations of paragraph 37 are denied.

38.   The allegations of paragraph 38 are admitted.

39.   Answering the allegations of paragraph 39, this defendant admits that certain mortgage bankers do not utilize their own funds in making mortgage loans, and that certain mortgage bankers sell mortgage loans to other parties which provide the funds for the borrowers at the time of closings. This defendant further admits that in certain transactions mortgage bankers are paid fees by borrowers for originating mortgage loans.   This defendant further admits that mortgage bankers can be licensed by the State of New Jersey.   The remaining allegations of paragraph 39 are denied.

40.   Answering the allegations of paragraph 40, this defendant admits that there are certain borrowers who cannot obtain traditional financing because of an increased delinquency risk and who accordingly pay a higher than market interest rate. The remaining allegations of paragraph 40 are denied.

41.   Answering the allegations of paragraph 41, this defendant admits that mortgage loan applications are taken for mortgage loans.   The remaining allegations of paragraph 41 are denied.

42.   Answering the allegations of paragraph 42, this defendant admits that there are certain mortgage bankers who deal directly with borrowers and who take certain paperwork from prospective borrowers, including mortgage loan applications and

other documents.   The remaining allegations of paragraph 42 are denied.

43.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 43.

44.   Answering the allegations of paragraph 44, this defendant admits that with respect to certain mortgage loans appraisals of the property securing the loan are done.   This defendant also admits that on certain mortgage loans appraisals are relied upon by certain lenders.   The remaining allegations of paragraph 44 are denied.

45.   The allegations of paragraph 45 are denied.

46.   Answering the allegations of paragraph 46, this defendant admits that there are persons known as "Correspondents" who sell mortgage loans to lenders.   The remaining allegations of paragraph 46 are denied.

47.   Answering the allegations of paragraph 47, this defendant admits that certain entities buy mortgage loans from correspondents and those entities fund the mortgage loans in a variety of ways, and from time to time those entities retain the mortgage loans or resell them.   The remaining allegations of paragraph 47 are denied.

48.   Answering the allegations of paragraph 48, this defendant admits that certain entities who fund mortgage loans originated by correspondents provide certain instructions to

closing attorneys.  The remaining allegations of paragraph 48 are denied.

## AS TO TITLE INSURANCE AND ITS ROLE IN
## REAL ESTATE TRANSACTIONS

49.  Answering the allegations of paragraph 49, this defendant admits that title insurance is insurance that provides for specified coverage in return for premiums.  This defendant further admits that title insurance is from time to time purchased when real property is purchased or refinanced, and that certain mortgage lenders require that owners who borrow money to finance purchases of real property acquire title insurance coverage.  The remaining allegations of paragraph 49 are denied.

50.  Answering the allegations of paragraph 50, this defendant admits that from time to time owners or borrowers who seek to purchase title insurance do not deal directly with the title insurer in connection with purchase of the insurance. This defendant also admits that from time to time title agents perform certain specified tasks with respect to the purchase of title insurance.  This defendant also admits that from time to time certain agents may be affiliated with more than one title insurance company.  This defendant also admits that from time to time certain title insurance companies may have relationships

with more than one title agency.  The remaining allegations of paragraph 50 are denied.

51.  Answering the allegations of paragraph 51, this defendant admits that certain title insurers in certain occasions issue closing service letters.  With respect to the terms of the closing service letters, they speak for themselves. This defendant admits that Exhibit A attached to the Complaint is a closing service letter issued by this defendant.  The remaining allegations of paragraph 51 are denied.

## AS TO THE NEW JERSEY MORTGAGE LOAN FRAUDS

52.  This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 52.

## AS TO "THE NHF/CRISTO PROPERTY" ENTERPRISE

53.  This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 53.

54.  This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 54.

55.  This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 55.

56.  This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 56.

## AS TO THE PATTERN

57.  This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 57:

58.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 58.

59.   This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 59.

## AS TO COUNT I

## VIOLATION OF 18 U.S.C. § 1962(c)(RICO)

Count I of the Amended Complaint does not seek any judgment from this defendant and accordingly no answer is required of this defendant.

## AS TO COUNT II

## VIOLATION OF 18 U.S.C.§ 1962(d)(RICO)

Count II of the Amended Complaint does not seek any judgment from this defendant and accordingly no answer is required of this defendant.

## AS TO COUNT III

## COMMON-LAW FRAUD

Count III of the Amended Complaint does not seek any judgment from this defendant and accordingly no answer is required of this defendant.

11

## AS TO COUNT IV

### BREACH OF CONTRACT BY NHF

Count IV of the Amended Complaint does not seek any judgment against this defendant and accordingly no answer is required of this defendant.

## AS TO COUNT V

### BREACH OF CONTRACT BY THE TITLE INSURANCE DEFENDANTS

85.  The answers to repeated allegations are repeated as if though set forth herein.

86.  Answering the allegations of paragraph 86, this defendant admits that certain borrowers obtained title insurance issued by this defendant and that this defendant on certain loans provided plaintiff with closing service letters.  The remaining allegations of paragraph 86 are denied.

87.  Answering the allegations of paragraph 87, the terms and conditions of the closing service letters speak for themselves.  This defendant admits that the closing service letter attached as Exhibit A to the Amended Complaint is a closing service letter issued by this defendant.  The remaining allegations of paragraph 87 are denied.

88.  This defendant is without sufficient knowledge or information to admit or deny the allegations of paragraph 88.

89.  This defendant admits that plaintiff has notified this defendant that plaintiff has allegedly sustained losses on certain loans.  The remaining allegations of paragraph 89 are denied.

90.  Answering the allegations of paragraph 90, this defendant admits that it has not made any payments to plaintiff. The remaining allegations of paragraph 90 are denied.

91.  The allegations of paragraph 91 are denied.

### FIRST SEPARATE DEFENSE

The Amended Complaint fails to state claim upon which relief can be granted as to this defendant.

### SECOND SEPARTE DEFENSE

Plaintiff's Amended Complaint against this defendant is barred by its own negligent conduct and the conduct of its agents, employees and officers.

### THIRD SEPARATE DEFENSE

Plaintiff's Amended Complaint against this defendant is barred by the acts of its agents, employees and officers which constitute laches.

### FOURTH SEPARATE DEFENSE

Plaintiff's Amended Complaint against this defendant is barred by the facts of its agents, employees and officers which constitute estoppel.

## FIFTH SEPARATE DEFENSE

Plaintiff's Amended Complaint against this defendant is barred by the acts of its agents, employees and officers which constitute waiver.

## SIXTH SEPARATE DEFENSE

Plaintiff Walsh Securities, Inc., as assignee of any closing service letters, would have no higher rights under those letters than the assignor of the letters.

## CROSS-CLAIM FOR CONTRIBUTION

Defendant, Commonwealth Land Title Insurance Company, denies any liability to plaintiff or to any other defendant, but if Commonwealth Land Title Insurance Company is found liable, it demands contribution from Cristo Property Management, Ltd., A/K/A G.J.L. Limited, Dek Homes of New Jersey, Inc., Oakwood Properties, Inc., National Home Funding, Inc., Capital Assets Property Management, L.L.C., William J. Kane, Gary Grieser, Robert Skowrenski, II, Richard Calanni, Richard DiBenedetto, James R. Brown, Thomas Brodo, Ronald J. Pierson, Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, Esq., Lawrence M. Cuzzi, Anthony D'Apolito, DAP Consulting, Inc., Nations Title Insurance of New York, Inc., Fidelity National Title Insurance Company of New York, and

Coastal Title Agency pursuant to the New Jersey Tortfeasors

Contribution Act.

## CROSS-CLAIM FOR INDEMNIFICATION

While denying any liability to the plaintiff or to any

other defendant whatsoever, defendant Commonwealth Land Title

Insurance Company nevertheless asserts that any losses sustained

by plaintiff or by any other defendant were the proximate result

of the actions of defendants Stanley Yacker, Esq., Michael

Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, and

Coastal Title Agency, which actions were primary and active, and

if defendant Commonwealth Land Title Insurance Company is found

liable to plaintiff with respect to such damages, such liability

results solely from secondary, imputed, vicarious or passive

negligence and defendants Stanley Yacker, Esq., Michael Alfieri,

Esq., Richard Pepsny, Esq., Anthony M. Cicalese, and Coastal

Title Agency are liable to defendant Commonwealth Land Title

Insurance Company by way of indemnification for any and all sums

which defendant Commonwealth Land Title Insurance Company may be

required to pay in this action.

## AS TO CROSS-CLAIM OF DEFENDANTS NATIONAL HOME FUNDING, INC., AND ROBERT SKOWRENSKI, II

Commonwealth, by way of Answer to the Cross-Claim of

defendant National Home Funding, Inc. and Robert Skowrenski, II,

says:

## AS TO COUNT ONE

1.   Answering the allegations of paragraph 1, this defendant admits that defendants National Home Fund, Inc., and Robert Skowrenski, II, are defendants in the within action. With respect to the allegations of the Amended Complaint, the Amended Complaint speaks for itself.

2. Answering the allegations of paragraph 2, insofar as they are directed to this defendant, they are denied.  This defendant is without sufficient knowledge to admit or deny the remaining allegations of paragraph 2.

3.   Answering the allegations of paragraph 3, insofar as they are directed to this defendant, they are denied.  This defendant is without sufficient knowledge to admit or deny the remaining allegations of paragraph 3.

4.   Answering the allegations of paragraph 4, insofar as they are directed to this defendant, they are denied.  This defendant is without sufficient knowledge to admit or deny the remaining allegations of paragraph 4.

5.   Answering the allegations of paragraph 5, insofar as they are directed to this defendant, they are denied.  This defendant is without sufficient knowledge to admit or deny the remaining allegations of paragraph 5.

6.   Answering the allegations of paragraph 6, insofar as they are directed to this defendant, they are denied.  This

defendant is without sufficient knowledge to admit or deny the remaining allegations of paragraph 6.

## AS TO COUNT TWO

1.  The answers to repeated allegations are repeated as though set forth herein.

2.  This defendant denies the allegations of paragraph 2.

3.  This defendant denies the allegations of paragraph 3.

4.  This defendant denies the allegations of paragraph 4.

## AS TO COUNT THREE

Count Three of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

## AS TO COUNT FOUR

Count Four of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

## AS TO COUNT FIVE

Count Five of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

## AS TO COUNT SIX

Count Six of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

## AS TO COUNT SEVEN

Count Seven of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

### AS TO COUNT EIGHT

Count Eight of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

### AS TO COUNT NINE

Count Nine of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

### AS TO COUNT TEN

Count Ten of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

### AS TO COUNT ELEVEN

Count Eleven of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

### AS TO COUNT TWELVE

Count Twelve of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

### AS TO COUNT THIRTEEN

Count Thirteen of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant. However, insofar as Count Thirteen alleges that Stanley Yacker, Esq., committed any wrongful act that would give rise to coverage that this defendant would be responsible for, the allegations of Count Thirteen are denied.

## AS TO COUNT FOURTEEN

Count Fourteen of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant. However, insofar as Count Fourteen alleges that Michael Alfieri, Esq., committed any wrongful act that would give rise to coverage that this defendant would be responsible for, the allegations of Count Fourteen are denied.

## AS TO COUNT FIFTEEN

Count Fifteen of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant. However, insofar as Count Fifteen alleges that Richard Pepsny, Esq., committed any wrongful act that would give rise to coverage that this defendant would be responsible for, the allegations of Count Fifteen are denied.

## AS TO COUNT SIXTEEN

Count Sixteen of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant. However, insofar as Count Sixteen alleges that Anthony M. Cicalese, Esq., committed any wrongful act that would give rise to coverage that this defendant would be responsible for, the allegations of Count Sixteen are denied.

## AS TO COUNT SEVENTEEN

Count Seventeen of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

## AS TO COUNT EIGHTEEN

Count Eighteen of defendants' Cross-Claim seeks no judgment and accordingly no answer is required of this defendant.

## FIRST SEPARATE DEFENSE

The Cross-Claims of defendants National Home Funding, Inc., and Robert Skowrenski, II against this defendant fail to state claim upon which relief can be granted.

## SECOND SEPARTE DEFENSE

The Cross-Claims of defendants National Home Funding, Inc., and Robert Skowrenski, II against this defendant are barred by their own negligent conduct and the conduct of their agents, employees and officers.

## THIRD SEPARATE DEFENSE

The Cross-Claims of defendants National Home Funding, Inc., and Robert Skowrenski, II against this defendant are barred by the acts of their agents, employees and officers which constitute laches.

## FOURTH SEPARATE DEFENSE

The Cross-Claims of defendants National Home Funding, Inc., and Robert Skowrenski, II against this defendant are barred by the facts of their agents, employees and officers which constitute estoppel.

## FIFTH SEPARATE DEFENSE

The Cross-Claims of defendants National Home Funding, Inc., and Robert Skowrenski, II against this defendant are barred by the acts of their agents, employees and officers which constitute waiver.

## ANSWER TO CROSS-CLAIMS FOR CONTRIBUTION

This defendant denies any Cross-Claims made against it for contribution.

## CROSS-CLAIM FOR CONTRIBUTION

Defendant, Commonwealth Land Title Insurance Company, denies any liability to plaintiff or to any other defendant, but if Commonwealth Land Title Insurance Company is found liable, it demands contribution from Cristo Property Management, Ltd., A/K/A G.J.L. Limited, Dek Homes of New Jersey, Inc., Oakwood Properties, Inc., National Home Funding, Inc., Capital Assets Property Management, L.L.C., William J. Kane, Gary Grieser, Robert Skowrenski, II, Richard Calanni, Richard DiBenedetto, James R. Brown, Thomas Brodo, Ronald J. Pierson, Stanley Yacker,

Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, Esq., Lawrence M. Cuzzi, Anthony D'Apolito, DAP Consulting, Inc., Nations Title Insurance of New York, Inc., Fidelity National Title Insurance Company of New York, and Coastal Title Agency pursuant to the New Jersey Tortfeasors Contribution Act.

## CROSS-CLAIM FOR INDEMNIFICATION

While denying any liability to the plaintiff or to any other defendant whatsoever, defendant Commonwealth Land Title Insurance Company nevertheless asserts that any losses sustained by plaintiff or by any other defendant were the proximate result of the actions of defendants Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, and Coastal Title Agency, which actions were primary and active, and if defendant Commonwealth Land Title Insurance Company is found liable to plaintiff with respect to such damages, such liability results solely from secondary, imputed, vicarious or passive negligence and defendants Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, and Coastal Title Agency are liable to defendant Commonwealth Land Title Insurance Company by way of indemnification for any and all sums

which defendant Commonwealth Land Title Insurance Company may be
required to pay in this action.

                                        McCARTER & ENGLISH, LLP
                                        Attorneys for Defendant
                                         Commonwealth Land Title
                                        Insurance Company

By:

                                        David R. Kott
                                        A Member of the Firm

Dated: February 12, 1998

## AFFIDAVIT OF SERVICE

STATE OF NEW JERSEY    )
                     )ss.:
COUNTY OF ESSEX       )

      PATRICIA V. CUMMINS, of full age, being duly sworn according to law, upon her oath deposes and says:

      1.    I am employed by the firm of McCarter & English, LLP, attorneys for defendant Commonwealth Land Title Insurance Company in the within matter.

      2.    On February 12, 1998, I caused to be delivered by mail the Answer to the Amended Complaint, Answer to Cross-Claim, Answer to Cross-Claims for Contribution, Separate Defenses, Cross-Claim for Contribution and Cross-Claim for Indemnification upon the persons named in the attached Counsel List.

 

                           PATRICIA V. CUMMINS

SWORN AND SUBSCRIBED to
before me this 12th day
of February, 1998.

AUDREY ABDELMONEM-SAMIR
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires March 7, 2002

24

# COUNSEL LIST

## WALSH SECURITIES, INC. V. CRISTO PROPERTY MANAGEMENT, ET AL CIVIL ACTION NO. 97-3496(WGB)

### Attorney for Plaintiff Walsh Securities, Inc.

Michael Chertoff, Esq.
Latham & Watkins
One Newark Center, 16th Floor
Newark, New Jersey 07101-3174

### Attorney for defendant Coastal Title Agency

John Methfessel, Jr., Esq.
Methfessel & Werbel
1308 Pierce
P.O. Box B
Rahway, New Jersey 07065

### Attorney for defendants Cristo Property Management, LTD, DEK Homes of NJ, Inc., Oakwood Properties, Inc., William J. Kane

Ronald M. Kleinberg, Esq.
Richard A. Finkel, Esq.
Meissner, Kleinberg & Finkel
275 Madison Avenue, Suite 1000
New York, New York 10016

### Attorney for defendants National Home Funding, Inc., and Robert Skowrenski, II

Michael Schottland, Esq.
Schottland, Manning, Rosen, Callendo & Munson, PA
36 W. Main Street
Freehold, New Jersey 07728

### Attorney for defendants Capital Assets Property Management & Investment Co., Inc. Capital Assets Property Management, LLC and Gary Greiser

Ronald Lee Reisner, Esq.
Drazin & Warshaw
26 Reckless Place
P.O. Box 8909
Red Bank, New Jersey 07701-8909

**Attorney for defendant Michael Alfieri, Esq.**

Richard L. Friedman, Esq.
Giordano, Halleran & Ciesla
125 Half Mile Road
P.O. Box 190
Middletown, New Jersey 07748

**Attorney for defendant Lawrence M. Cuzzi**

Miles Feinstein, Esq.
1135 Clifton Avenue
Clifton, New Jersey  07013

**Attorney for defendants Anthony D'Apolito, DAP Consulting, Inc.**

Charles J. Uliano, Esq.
268 Norwood Avenue
W. Long Branch, New Jersey  07764

**Attorney for defendant Richard Pepsny**

Mark W. Catanzaro, Esq.
Blason IV
Suite 208
513 Lenola Road
Moorestown, New Jersey  08057

**Attorney for defendants Nations Title Insurance and Fidelity National Title Insurance**

Jon C. Martin, Esq.
Fox, Rothschild, O'Brien & Frankel
997 Lenox Drive
Lawrenceville, New Jersey  08648

Edward J. Hayes, Jr., Esq.
Fox, Rothschild, O'Brien & Frankel
2000 Market Street
10th Floor
Philadelphia, Pennsylvania  19103-3291

**Attorney for defendant Richard Calanni**

August W. Fischer, Esq.
53 Pequot Road
Ringwood, New Jersey  07456

**Attorney for defendant Stanley Yacker, Esq.**

Lawrence S. Lustberg, Esq.
James I. O'Hern, Esq.
Crummy, Del Deo, Dolan, Griffinger
   & Vecchione
One Riverfront Plaza
Newark, New Jersey  07102-5497

**Attorney for defendant Roland J. Pierson:**

Pasquale Menna, Esq.
Kauff and Menna
170 Broad Street
P.O. Box 762
Red Bank, New Jersey  07701

**Attorney for defendant Anthony M. Cicalese**

Thomas D. Flinn, Esq.
Garrity, Graham, Favette & Flinn
1 Lackawanna Plaza
Box 4205
Montclair, New Jersey  07042

**Pro Se**

Richard DiBenedetto
153 Stephens Lane
Mahway, New Jersey  07430

Thomas Brodo
139B Fort Lee Road
Teaneck, New Jersey  07666

James R. Brown, Esq.
1089 Cedar Avenue
Union, New Jersey  07083

Anthony M. Cicalese, Esq.
100 Eagle Rock Avenue
East Hanover, New Jersey  07936

# Exhibit C

**Commonwealth**
Land Title Insurance Company

Audit No. X01-015111

Date:  July 30, 1996

To: National Home Funding, Inc., its successors and/or its
    assigns
    3443 Highway 9 North
    Freehold, NJ  07728
    Attention: Closing Department

RE: Closing Service Letter
    Issuing Agent or Attorney whose conduct is covered:
      Stanley Yacker, Esq.
      330 Highway 34
      Suite 3
      Matawan, NJ 07747

    File No: CT-17955 A
    Transaction: RONALD BALOGH
    Premises: 157 VAN HORNE STREET
              JERSEY CITY

Dear Customer:

When title insurance of Commonwealth Land Title  Insurance Company is specified  for your
protection in connection with the closing of the above  described real estate transaction
in which  you are  to be  a lender  secured  by a  mortgage of an  interest in  land, the
Company, subject to the  Conditions and Exclusions set  forth below, hereby agrees to re-
imburse you for actual loss  incurred by you in connection  with  that closings when con-
ducted by the  above named Issuing Agent  (an agent  authorized to issue  title insurance
for the Company) of Commonwealth Land Title Insurance Company or the above named Attorney
and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instruc-
   tions to the extent that  they relate to:  (a) the title to said interest  in land or
   the  validity,  enforceability and  priority  of the  lien of said  mortgage on  said
   interest in land, including the obtaining of documents and the  disbursement of funds
   necessary to establish such title or lien, or (b) the collection and payment of funds
   due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in
   connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection
with a loan secured by a mortgage  on a one-to-four family dwelling,  which is the prin-
cipal residence of the borrower, shall be protected, but only to the extent of the fore-
going paragraph 2, as if this letter were addressed to your borrower.  If you are a pur-
chaser of a one-to-four  family dwelling,  including a  condominium unit,  which is your
principal residence, and are paying cash for the purchase,  you are protected,  but only
to the extent of the foregoing paragraph 2.

*NEW JERSEY LAND TITLE*                                         NJRB 6-04
*INSURANCE RATING BUREAU*                                       8/1/94

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

  1. Failure of the  Attorney to comply with your  closing instructions which require require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with  the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

  2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension,  except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

  3. Mechanics' and materialmen's liens in connection with a construction loan trans- action, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of  the Company must have been received by you  prior to the transmission  of your final closing in- strutions to the Attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be sub- rogated to all rights and  remedies which you  would have had against any  person or property had you  not been so  reimbursed.  Liability of the  Company for such reim- bursement shall be  reduced to the extent  that you have  knowingly and  voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate  transactions by an  Issuing Agent or  Attorney shall be  limited to the protection provided by this letter.  However, this letter shall not  affect the pro- tection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 8  Penn Center, Phila- delphia, Pennsylvania 19103.  When the failure to give prompt notice shall prejudice the Company, then liability of the Company  hereunder shall be reduced to the extent of such prejudice.


THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF  COMMONWEALTH LAND TITLE INSURANCE COMPANY.

The protection under this Letter is limited to the closing on the premises described in the caption of this Letter.

                              *Commonwealth Land Title Insurance Company*

                    BY: _____
                         Robert F. Agel, President
                         Coastal Title Agency, Inc.
                         Agent

*NEW JERSEY LAND TITLE*                              NJRB 6-04
*INSURANCE RATING BUREAU*                            8/1/94

# Exhibit D

**Commonwealth**
**Land Title Insurance Company**
8 Penn Center, Philadelphia, PA 19103

Audit #  X01-021182

3/27/97

To: National Home Funding, Inc., its successors and/or its assigns
3443 Highway 9 North
Freehold, NJ  07728

RE: Closing Service Letter
Issuing Agent or Attorney whose conduct is covered

Anthony Cicalese, Esq.
10 West Bergen Place
Suite 104
Red Bank, N.J. 07701 07701

File No.  Ct-19767(a)
Transaction:  Vincenzo  Piscioneri and Adelina  Piscioneri husband and wife

Premises: 31 Fifth Street
          Highlands NJ

Dear Customer:

When title insurance of Commonwealth Land Title Insurance Company is specified for your protection in connection with the closing of the above described real estate transaction in which you are to be a lender secured by a mortgage of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with that closing when conducted by the above named Issuing Agent (an agent authorized to issue title insurance for the Company) of Commonwealth Land Title Insurance Company or the above named Attorney and when such loss arises out of:

1. Failure of the issuing Agent or Attorney to comply with your written closing instructions to the extent that they relate to: (a) the title to said interest in land or the validity, enforceability, and priority of the lien of said mortgage on said interest in land including the obtaining of documents and the disbursement of funds necessary to establish such title or lien, or (b) the collection of payment of funds due you; or

2. Fraud of or misapplication by the issuing Agent or Attorney in handling your funds in connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection with a loan secured by a mortgage on a one to four family dwelling, which is the principal residence of the borrower, shall be protected, but only to the extent of the foregoing paragraph 2, as if this letter were addressed to your borrower. If you are a purchaser of a one to four family dwelling, including a condominium unit, which is your principal residence, and are paying cash for the purchase, you are protected, but only to the extent of the foregoing paragraph 2.

NEW JERSEY LAND TITLE                                    NJRB 3-05
INSURANCE RATING BUREAU                                  8/1/94

COM  01767

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

   1. Failure of the Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

   2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the issuing Agent or the Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

   3. Mechanics' and materialmen's liens in connection with a construction loan transactions, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an issuing Agent or Attorney, a title insurance binder or commitment of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Attorney.

C. When the Company shall have reimbursed pursuant to this letter, it shall be subrogated to all rights which you have against any person or property had you not been reimbursed. Liability of the Company for reimbursement shall be reduced to the extent that you knowingly and voluntarily impaired the value of right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an issuing Agent or Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 6 Century Drive, Parsippany, New Jersey 07054. When failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F. Liability under this letter is limited to the amount of insurance committed for and is subject to all of the Conditions and Stipulations of the policy or policies committed by the Company. Any payment of loss under this letter shall constitute a payment under the policy.

**THIS LETTER DOES NOT APPOINT THE NAMED ATTORNEY AS AN AGENT OF COMMONWEALTH LAND TITLE INSURANCE COMPANY.**

The protection under this Closing Service Letter is limited to the closing on the premises described in the caption of this letter.

*Commonwealth Land Title Insurance Company*

BY: _____
     Robert F. Agel, President
     Coastal Title Agency, Inc.
     Agent

**NEW JERSEY LAND TITLE**
**INSURANCE RATING BUREAU**

                                      **NJRB 3-05**
                                      **8/1/94**

# Exhibit E

ROBERT AGEL

Page 141

```
 1                   UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
 2                   Civil Action No.
                     97-cv-3496 (DRD) (MAS)
 3

 4   WALSH SECURITIES, INC.,   :
                               :
 5            Plaintiff,       :
                               :    VOLUME II
 6        vs.                  :    DEPOSITION OF:
                               :    ROBERT AGEL
     CRISTO PROPERTY MANAGEMENT,
 7   LTD., a/k/a G.J.L. LIMITED;
     OAKWOOD PROPERTIES, INC.;
 8   NATIONAL HOME FUNDING, INC.;
     CAPITAL ASSETS PROPERTY
 9   MANAGEMENT & INVESTMENT CO.,
     INC.; CAPITAL ASSETS PROPERTY
10   MANAGEMENT, L.L.C.; WILLIAM
     KANE; GARY GRIESER; ROBERT
11   SKOWRENSKI, II; RICHARD CALANNI;
     RICHARD DiBENEDETTO; JAMES R.
12   BROWN; THOMAS BRODO; ROLAND
     PIERSON; STANLEY YACKER, ESQ.;
13   MICHAEL ALFIERI, ESQ.; RICHARD
     PEPSNY, ESQ.; ANTHONY M.
14   CICALESE, ESQ.; LAWRENCE CUZZI;
     ANTHONY D'APOLITO; DAP CONSULTING,
15   INC.; COMMONWEALTH LAND TITLE
     INSURANCE CO.; NATIONS TITLE
16   INSURANCE OF NEW YORK, INC.;
     FIDELITY NATIONAL TITLE
17   INSURANCE CO. OF NEW YORK;
     COASTAL TITLE AGENCY; DONNA
18   PEPSNY; WEICHERT REALTORS; and
     VECCHIO REALTY, INC., D/B/A
19   MURPHY REALTY BETTER HOMES
     And GARDENS                :
20                              :
                 Defendants. :
21   - - - - - - - - - - - -    :

22
23
24
25
```

ROBERT AGEL

Page 142

1      TRANSCRIPT of the stenographic notes of
2 the proceedings in the above-entitled matter, as
3 taken by and before JANET BAILYN, a Certified
4 Shorthand Reporter and Notary Public of the State of
5 New Jersey, held at the office of MANNING, CALIENDO &
6 THOMSON, 36 West Main Street, Freehold, New Jersey,
7 on August 5, 2010, commencing at 10:25 in the
8 forenoon.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 143

1 A P P E A R A N C E S :
2
3    STONE & MAGNANINI, LLP
4    BY:  ROBERT MAGNANINI, ESQ.
        AMY WALKER WAGNER, ESQ.
5    150 John F. Kennedy Parkway
      Short Hills, New Jersey 07078
      Attorneys for Plaintiff
6
    McCARTER & ENGLISH, LLP
7    BY:  DAVID R. KOTT, ESQ.
      Four Gateway Center
8    100 Mulberry Street
      Newark, New Jersey 07102-4056
9    Attorneys for Defendant
      Commonwealth Land Title Insurance Co.
10
    METHFESSEL & WERBEL
11   BY:  MARTIN R. McGOWAN, ESQ.
      3 Ethel Road Box 3012
12   Edison, New Jersey 08818
      Attorneys for Defendant
13   Coastal Title Agency
14   FOX ROTHSCHILD, LLP
      BY:  IRINA B. ELGART, ESQ.
15   P.O. Box 5231
      Princeton, New Jersey 08543-5231
16   997 Lenox Drive
      Lawrenceville, New Jersey 08648-2311
17   Attorneys for Defendants, Nations Title
      Insurance of New York, Inc. and Fidelity
18   National Title Insurance Company
      Of New York
19
20
21
22
23
24
25

Page 144

1
              INDEX
2
  WITNESS     DIRECT  CROSS  REDIRECT  RECROSS
3
  ROBERT AGEL
4   BY MR. MAGNANINI  145   264
      BY MR. KOTT      252   267
5
6
7         E X H I B I T S
8 NUMBER    DESCRIPTION       PAGE
9 Coastal-7  Invoice dated 12/9/96   155
  Coastal-8  Letter dated 1/14/97   156
10 Coastal-9  Letter dated 4/9/97   156
  Coastal-10  Letter dated 1/28/97  156
11 Coastal-11  Copy of Check    156
  Coastal-12  Deed       156
12 Coastal-13  Letter dated 7/15/97  156
  Coastal-14  Letter dated 5/29/97  157
13 Coastal-15  Copy of Check dated 4/19/97  185
14
15
16
17
18
19
20
21
22
23
24
25

Page 145

1 R O B E R T  A G E L, having been duly sworn by the
2 Notary, testified as follows:
3 DIRECT EXAMINATION BY MR. MAGNANINI:
4  Q.  Good morning, Mr. Agel.  How are you?
5  A.  Fine thanks.  How are you?
6  Q.  Good.  First question:  Did you get a
7 chance to review your transcript?
8  A.  No.
9  Q.  Normally you ask the question in case
10 there's something you want to change.  Do you have
11 anything you recall you answered that you want to
12 change an answer to or add something?
13  A.  No.
14  Q.  Then we can just proceed.  I have a
15 couple of follow-up questions so we will be less
16 coherent than usual jumping ahead.
17    MR. McGOWAN:  I talked with personal
18 counsel late yesterday afternoon and indicated to him
19 that at least the beginning portion of this
20 deposition will be a continuation of the corporate
21 dep and that there may or may not come a point where
22 we're ready to go into the other.  Because of some
23 miscommunication, I don't know, I thought he was
24 going to be available this afternoon if we got to
25 this point, he is not, but he's authorized me to

2 (Pages 142 - 145)

ROBERT AGEL

Page 254

1 ironically I happen to know this fellow that was the
2 seller and he had been arrested and put his
3 property -- it was a general recognizance so it's a
4 lien against all of your real estate. He -- we
5 needed that property released from the recognizance
6 in order to insure it. There were other judgments
7 against him, money suits where he had been sued and
8 we needed the property released from that judgment or
9 it would need to be paid off and discharged. Those
10 type of things.
11    Q.    Is this a situation where the closing
12 has occurred and there's some lien on the property
13 that has not been taken care of at the closing?
14    A.    The situation we're in right now?
15    Q.    No, no, what you just referred to.
16    A.    No. These are situations where they
17 probably -- not probably. Where they did clear them,
18 they did pay things off. They just didn't get us the
19 documentation.
20    Q.    Does that include some of the liens
21 we're talking about in this case?
22    A.    Yes, it should be, yes.
23    Q.    Now, the other thing, you had mentioned
24 about Banker's Trust and Cityscape. Can you tell us
25 in lay terms what you were talking about?

Page 255

1    A.    Yeah, in those cases they were --
2 Cityscape and Banker's Trust were -- I assumed that
3 they were lenders that bought these loans from Walsh
4 Securities.
5    Q.    And I will represent to you that there's
6 been some discovery in this case indicating that
7 those lenders did purchase some of these loans from
8 Walsh.
9    A.    Right.
10    MR. MAGNANINI: Let me just clarify the
11 record. Cityscape was a whole loan purchased. They
12 purchased loans. Banker's Trust was a trustee for
13 loans that Walsh Securities securitized. So Walsh
14 issued I think about a billion five in five different
15 securities so they were a trustee and a purchaser.
16    Q.    So go ahead.
17    A.    So what would happen in those cases, and
18 in particular probably this one right here, Bustos on
19 138 Ridge, the deed and the mortgage into Bustos --
20 the Bustos deed and then the Bustos mortgage were not
21 recorded. When the loans defaulted the lender
22 started foreclosure, discovered that the deed and
23 mortgage were not recovered and their lien had not
24 been properly perfected. So they made a motion to
25 the court to have a lien -- their lien imposed as a

Page 256

1 first lien on the property so that they could
2 continue on and foreclose the property, get it back
3 ultimately on the market.
4    Q.    Did that happen with a number of the
5 loans we're talking about in this case as far as you
6 know?
7    A.    Yes. It happened with quite a few. I
8 don't know how many. Just from one -- loans or
9 properties that I insured when they sold after this
10 happened.
11    Q.    Now, you might not know the answer to
12 this question but let me ask it: Cityscape and
13 Banker's Trust in those situations I assume would
14 have had a lawyer representing them in the mortgage
15 foreclosure. Is that correct?
16    A.    Correct.
17    Q.    Do you know who hired that lawyer? And
18 what I mean by that is: Do you know whether either
19 Commonwealth or Fidelity or Nations hired a lawyer
20 for Banker's Trust or for Cityscape or whether they
21 hired their own lawyers and did it?
22    A.    I don't know.
23    Q.    Okay. Mechanically the closing -- do
24 you call it closing protection letter or closing
25 service letter?

Page 257

1    A.    Closing service letter.
2    Q.    Now, I'm going to take you back and
3 switch the time period. I'm going to take you back
4 to the time of these loans when your company was
5 dealing with it. What was it called then in your
6 lingo?
7    A.    Well, we would call it an AA letter, an
8 approved attorney letter. That was just our lingo
9 though. It became closing service letter sometime in
10 the late -- in the late '90s. Sometime around this
11 time.
12    Q.    So closing service letter?
13    A.    Yes.
14    Q.    Okay. Mechanically in your office with
15 respect to these loans, physically how did you get
16 the closing service letters? And what I'm asking is:
17 Did you print them off a computer? Did you print
18 them yourself? Were they sent to you by the title
19 insurance company?
20    A.    In the beginning they would come from
21 the title company. We would get a batch of them.
22 They were pre-numbered and we would -- the
23 old-fashioned way have to type the name of the
24 attorney and then all the pertinent information.
25 That didn't last very long. They took the control

30 (Pages 254 - 257)

ROBERT AGEL

Page 258

1 numbers away probably in less than a year, and they
2 were installed on our computer systems.
3     Q.    Is that the case when we're talking
4 about the time period here?
5     A.    Yes.
6     Q.    And how would they get installed in your
7 computer system? Let me tell you what I'm driving at
8 just so you know. In some of the loans that -- in
9 some of the Commonwealth loans that Coastal was the
10 agent in this time period there are different
11 approved attorney forms. Some have one additional
12 paragraph and others don't, and I'm trying to figure
13 out how that would have occurred. All out of your
14 agency.
15     A.    Probably we were exhausting a supply
16 that we already had. Or I would have to see them to
17 tell you whether they were preprinted or they were
18 installed in the computer. But if they were
19 installed in the computer, those would have been
20 forms that we got directly from either Commonwealth
21 or Fidelity.
22     Q.    But can you help us -- assume as true
23 just for my question, just assume it is true that in
24 this time period there are different forms for the
25 Commonwealth letters.

Page 259

1     A.    Right.
2     Q.    And I was trying to figure out how that
3 would happen.
4         MR. MAGNANINI: David, are you saying
5 different forms within Commonwealth forms, within
6 Commonwealth letters themselves?
7     Q.    If we look at the Commonwealth in this
8 case -- and by Commonwealth, the ones you would have
9 issued letters under Commonwealth's name.
10     A.    Right.
11     Q.    There's different forms, and one of the
12 differences is one of the forms has an extra
13 paragraph that the others did not and that's -- I was
14 trying to see if you could help me with how that
15 could occur.
16     A.    It could have happened. I need to see
17 those letters in order to give you a good answer, but
18 my guess is is that the ones that had the extra
19 paragraph or didn't, whichever, one of them -- one
20 was a form that was a preprinted form that we would
21 have to fill in information on it in the typewriter.
22 The other one was in the computer. So when -- we
23 would exhaust all of our forms, the preprinted forms
24 that they gave us.
25     Q.    Even if they had issued a new form,

Page 260

1 would you still use the old form?
2     A.    We could have and it could have been by
3 mistake, that's possible.
4     Q.    Let me call your attention to exhibit
5 Commonwealth 6(A) from the March -- sorry, May 27,
6 2010 deposition of a representative of Commonwealth
7 who was Donna Sullivan and it's Bates stamped WSWT
8 000505. It's a two-page document.
9         Can you tell whether that one was off
10 the computer or whether that was one of the --
11     A.    This is off the computer definitely.
12     Q.    And how would they get on your computer?
13 That is, how would this form get on your computer?
14 That is, did it go directly from a Commonwealth
15 computer to you or how did that work?
16     A.    No. It would have been coming in
17 through our software -- we all use approved software
18 providers for the title industry and it would have
19 come from that provider. They all have agreements
20 with the underwriters as to the use and installation
21 of their forms.
22     Q.    Again, even though I represent
23 Commonwealth this is not something I know. Does
24 Commonwealth hire somebody to give you software?
25     A.    No.

Page 261

1     Q.    How does that work?
2     A.    What they do is they have -- I guess
3 they would have -- my provider right now I'll use an
4 example. Title Support Software, TSS. They have I
5 guess licensing agreements with Commonwealth and all
6 the other companies to sell their -- not sell but to
7 install their forms. They have written a package, a
8 software package specific to title insurance. They
9 need those forms from the various underwriters in
10 order to install.
11         So what they do between Commonwealth and
12 TSS I don't know. All I know is that TSS and every
13 other provider I have had since we had computers
14 would come and install that package which includes
15 the closing service letter.
16     Q.    Was TSS your service provider back at
17 the time --
18     A.    No.
19     Q.    -- you were involved with these loans?
20     A.    No.
21     Q.    Did you have a service provider at the
22 time you had these loans?
23     A.    Yes.
24     Q.    Did it operate essentially the way you
25 just described TSS's operation with you?

31 (Pages 258 - 261)

ROBERT AGEL

Page 262

1    A.    Yes.
2    Q.    And do you know the mechanics of how TSS
3 would get the Commonwealth documents?
4    A.    No.
5    Q.    I have one more subject for you, and
6 again I'm going to paraphrase just to get you back
7 there.  You said -- and this is my use of the term.
8 You said if there was a break in the title you would
9 not insure the title.  And I realize "break in the
10 title" may not be the right word but you know what
11 I'm referring to?
12    A.    Yes.
13    Q.    Could you explain that to us in lay
14 terms?
15    A.    That would be where there would be the
16 case here where the deed into G.J.L., the seller, was
17 not recorded, something like that.  Just using it in
18 these terms, it's dealing where they ended up
19 closing -- selling properties before they bought
20 them.  That would be -- it was a good term, a break
21 in the chain of title.
22    Q.    And in that situation, if I understand
23 your testimony, you would have been paid but you
24 would have transmitted that to the underwriter
25 anyway?

Page 263

1    A.    Yes.
2    Q.    And the reason you would have
3 transmitted it to the underwriter anyway was the
4 assumption based on your many years in the industry
5 that that problem would be cured and then ultimately
6 a policy would be issued?
7    A.    Yes.  It would either be cured or I
8 would put it in as an exception.
9    Q.    Right.  And to the extent they were not
10 cured in this case, was that because this fraud
11 became public and everything blew up?
12    A.    Correct.
13    Q.    When you say you would have put it in
14 with an exception, what do you mean by that?
15    A.    In this case -- in G.J.L. we would have
16 put into the owner's policy, possibly the loan
17 policy, I don't know if we would have put it in the
18 loan because of the closing service letter, but we
19 would have put:  Subject to the outstanding interest
20 of G.J.L. Limited and said that because of a lack of
21 a deed from G.J.L. into Bustos.
22    Q.    And if -- withdrawn.  When you sent that
23 to your client -- here would your client be the
24 lawyer?
25    A.    Yes.

Page 264

1    Q.    When you sent the policy to the lawyer,
2 would the lawyer be able to take action that would
3 end up with that exception being removed?
4    A.    Yes.
5    Q.    How would the lawyer do that?
6    A.    You would record the deed in this case.
7 That would be the proper -- record the deed and then
8 possibly get a corrective deed from G.J.L. into
9 Bustos and then record or rerecord the deed and
10 rerecord the mortgage so that there would be proper
11 sequence.
12    Q.    Full circle from where I started.  After
13 these frauds became public when you talked about
14 Cityscape and you talked about Banker's Trust, do you
15 know whether some unrecorded earlier deeds were
16 recorded during the foreclosure process?  Thàt is,
17 somebody chased them down and got them recorded?
18    A.    I do believe so, yes.
19    Q.    To solve that problem.  Right?
20    A.    Yes.
21    Q.    Thank you.  I don't have any further
22 questions.
23        MS. ELGART:  I have no questions.
24 REDIRECT EXAMINATION BY MR. MAGNANINI:
25    Q.    Just to follow up then.  What happened

Page 265

1 when the form of the closing service letter changed,
2 the title company changed the form?  The title
3 companies would provide it to your software provider?
4    A.    Yes.
5    Q.    And then were you instructed -- was
6 Coastal Title instructed to destroy old versions,
7 delete old versions?
8    A.    Yeah.  You would either -- we are
9 getting again above my pay grade but it's -- we would
10 get a disk or a -- today we download them over the
11 Internet, which is still something I don't know
12 about, but we would then put the disk in and it would
13 do whatever it did.  It would modify the forms or it
14 would delete, whatever it did, I don't know exactly
15 what it did.
16    Q.    The reason I was following up, Mr. Agel,
17 is you said you thought you could have issued some
18 closing service letters in a different format by
19 mistake.
20    A.    Yes.
21    Q.    And I would have thought that if the
22 title company had given you new ones you would have
23 just discarded the old ones and gone from there.
24    A.    No.  They made sure -- especially if you
25 take a look at this one it has an audit number on it.

32 (Pages 262 - 265)

ROBERT AGEL

Page 266

1  Q.   6(A)?
2  A.   Yes.
3  Q.   Where is the audit number?
4  A.   Top right.  We had to account for this.
5  Q.   And is this one of the examples that --
6  with the audit number that came preprinted?
7  A.   No, this is not preprinted.
8  Q.   So your computer would generate a
9  different audit number for each CSL?
10  A.   Yes.
11  Q.   And that way the tight company knew what
12  letters --
13  A.   That's right.
14  Q.   Okay.  And one last question as a follow
15  up to what Mr. Kott said.  I think you had said you
16  would -- you started answering his second to last
17  question that said:  We would not include it in the
18  loan because of the CSL?
19  A.   I think I said we may not.
20  Q.   What did you mean by that in lay
21  people's terms?
22  A.   If it was an exception that was related
23  to the attorney's work but the attorney did something
24  wrong, in this case record the deed, we may not be --
25  I would try to put it in the mortgage policy.  I

Page 267

1  would put it in and if asked to omit it, we would
2  have to get clearance -- I would have to get
3  clearance from the underwriter.
4  Q.   Because it concerned a mistake by the
5  closing attorney?
6  A.   Yes.
7  Q.   Okay.  I think that's all I have.
8  RECROSS EXAMINATION BY MR. KOTT:
9  Q.   Are you an attorney?
10  A.   No.
11  Q.   Are you familiar with all of the New
12  Jersey cases that interpret closing service letters?
13  A.   No.
14  Q.   So when you say -- when you said, and I
15  am going to paraphrase, if it was a mistake of an
16  attorney then it would be under the closing service
17  letter, do you know whether all mistakes of attorneys
18  are covered by the closing service letter or just
19  certain types of mistakes?
20  A.   I don't know.
21  Q.   As to what the closing service letter
22  actually covers, that you would leave to judges and
23  lawyers?
24  A.   Yes.
25  Q.   Thank you.  I have no further questions.

Page 268

1  (The deposition is concluded at 3:42
2  p.m.)
3
4
5  _____
6        ROBERT AGEL
7  Subscribed and sworn to before me
8  this _____ day of _____, 2010.
9  _____
10      Notary Public
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 269

1        CERTIFICATE.
2
3      I, JANET BAILYN, a Notary Public and
4  Certified Court Reporter of the State of New Jersey,
5  do hereby certify that prior to the commencement of
6  the examination ROBERT AGEL was duly sworn by me to
7  testify the truth, the whole truth and nothing but
8  the truth.
9      I DO FURTHER CERTIFY that the foregoing
10  is a true and accurate transcript of the testimony as
11  taken stenographically by and before me at the time,
12  place and on the date hereinbefore set forth.
13      I DO FURTHER CERTIFY that I am neither a
14  relative nor employee nor attorney nor counsel of any
15  of the parties to this action, and that I am neither
16  a relative nor employee of such attorney or counsel,
17  and that I am not financially interested in the
18  action.
19
20  _____
    Notary Public of the State of New Jersey
21  My commission expires February 3, 2013
      License No. XI00970
22
      Date:  August 9, 2010
23
24
25

33 (Pages 266 - 269)