# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | : |
| Plaintiff, | : Judge Dickinson R. Debevoise |
| v. | : Magistrate Judge Michael A. Shipp |
| CRISTO PROPERTY MANAGEMENT, LTD., a/k/a | : Civ. A. No. 97-3496 |
| G.J.L. LIMITED; DEK HOMES OF NEW JERSEY, INC.; | : |
| OAKWOOD PROPERTIES, INC.; NATIONAL HOME | : Motion Return Date: |
| FUNDING, INC.; CAPITAL ASSETS PROPERTY | : **September 20, 2010** |
| MANAGEMENT & INVESTMENT CO., INC.; CAPITAL | : |
| ASSETS PROPERTY MANAGEMENT, LLC; WILLIAM | : |
| KANE; GARY GRIESER; ROBERT SKOWRENSKI, II; | : |
| RICHARD CALANNI; RICHARD DiBENEDETTO; | : |
| JAMES R. BROWN; THOMAS BRODO; ROLAND | : |
| PIERSON; STANLEY YACKER, ESQ.; MICHAEL | : |
| ALFIERI, ESQ.; RICHARD PEPSNY, ESQ.; ANTHONY | : |
| M. CICALESE, ESQ.; LAWRENCE CUZZI; ANTHONY | : |
| D'APOLITO; DAP CONSULTING, INC.; | : |
| COMMONWEALTH LAND TITLE INSURANCE CO.; | : |
| NATIONS TITLE INSURANCE OF NEW YORK, INC.; | : |
| FIDELITY NATIONAL TITLE INSURANCE CO. OF | : |
| NEW YORK; COASTAL TITLE AGENCY; STEWART | : |
| TITLE GUARANTY COMPANY; IRENE DiFEO; | : |
| DONNA PEPSNY; WEICHERT REALTORS; and | : |
| VECCHIO REALTY, INC., d/b/a MURPHY REALTY | : |
| BETTER HOMES AND GARDENS, | : |
| Defendants. | : |

---

## BRIEF OF DEFENDANTS/CROSS-CLAIM PLAINTIFFS
## NATIONS TITLE INSURANCE OF NEW YORK, INC. AND
## FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK IN
## OPPOSITION TO COASTAL TITLE AGENCY'S MOTION TO DISMISS

Edward J. Hayes, Esquire
David H. Colvin, Esquire
Amy C. Purcell, Esquire
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103
(215) 299-2092
(215) 299-2150 (facsimile)

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................... 1

II.   STATEMENT OF FACTS ...................................................................... 2

    A.    Allegations By Walsh Securities In Fourth Amended Complaint ....... 2

    B.    Coastal's Agency Relationship With Nations and Fidelity
        National.................................................................................................. 4

    C.    Fidelity's Cross-Claims Against Coastal............................................. 7

III.  LEGAL ARGUMENT ............................................................................ 8

    A.    Standard On A Motion To Dismiss ..................................................... 8

    B.    The Court Should Deny Coastal's Motion To Dismiss Fidelity's
        Cross-Claim For Indemnification......................................................... 9

    C.    The Court Should Deny Coastal's Motion To Dismiss Fidelity's
        Cross-Claim For Contribution ........................................................... 14

    D.    The Dismissal Of The Cross-Claims Against Coastal Would
        Result In A Situation Whereby Fidelity Would Be Exposed To
        Liability To Walsh, With No Ability To Pass Along That
        Liability To The Actual Alleged Wrongdoers.................................... 16

IV.   CONCLUSION ..................................................................................... 18

## TABLE OF AUTHORITIES

Page(s)

<u>CASES</u>

Adler's Quality Bakery, Inc. v. Gasteria, Inc.,
    32 N.J. 55 (1960)...................................................................... 12

Allocca v. Wachovia,
    2007 U.S. Dist. LEXIS 42375 (D.N.J. 2007)..................................... 15

Alston v. Parker,
    363 F.3d 229 (3d Cir. 2004)........................................................ 9

Enright v. Lubow,
    493 A.2d 1288 (App. Div. 1985) .............................................. 12, 13

Fried v. Aftec, Inc.,
    246 N.J. Super. 245 (App. Div. 1991) ........................................... 15

In re Burlington Coat Factory Sec. Litig.,
    114 F.3d 1410 (3d Cir. 1997).................................................... 9

N.J. Lawyers' Fund for Client Protection v. Stewart Title Guaranty Co.,
    2010 WL 2991093 (N.J. Aug. 2, 2010).......................................... 14

NN&R, Inc. v. One Beacon Ins. Group,
    362 F. Supp.2d 514 (D.N.J. 2005) .............................................. 8

Scheuer v. Rhodes,
    416 U.S. 232 (1974) ............................................................... 8

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,
    140 F.3d 478 (3d Cir. 1998)...................................................... 8

Winer Family Trust v. Queen,
    503 F.3d 319 (3d Cir. 2007)...................................................... 9

<u>STATUTES</u>

18 U.S.C. § 1961, <u>et seq.</u> .......................................................... 3

New Jersey Joint Tortfeasors Act, <u>N.J.S.A.</u> 2A:53A-1<u>et</u>........................... 7

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 8

Restatement (Second) of Torts § 4 ...................................................................... 15

Restatement (Second) Torts § 323 ...................................................................... 14

Restatement (Third) of Agency § 1.01 .................................................................. 14

Restatement (Third) of Agency § 8.08(b) ......................................................... 14, 15

Restatement (Second) of Agency § 379(1) ............................................................. 15

## I.    PRELIMINARY STATEMENT

Defendants/Cross-Claim Plaintiffs, Nations Title Insurance of New York, Inc. ("**Nations**") and Fidelity National Title Insurance Co. of New York ("**Fidelity National**") (collectively, "**Fidelity**"), by and through their undersigned counsel, Fox Rothschild LLP, respectfully submit this brief in opposition to the motion of defendant/cross-claim defendant, Coastal Title Agency ("**Coastal**"), to dismiss Fidelity's cross-claims.

Fidelity has stated cross-claims against Coastal upon which relief can be granted for indemnification and contribution.  In its motion to dismiss Fidelity's cross-claims, Coastal attempts to piggy-back on this Court's decision, entered on December 16, 2009, dismissing Fidelity's claims for indemnification and contribution against certain third-party defendants.  By asserting that the Court should dismiss Fidelity's cross-claims because Coastal and Fidelity are not "joint tortfeasors", Coastal fundamentally misconstrues Fidelity's cross-claims against it. Fidelity's cross-claims against Coastal are distinguishable from the claims for indemnification and contribution that Fidelity previously asserted against certain third-party defendants because, at all times relevant to the facts alleged in the fourth amended complaint, Coastal was acting as a policy issuing agent of Fidelity pursuant to a written agency agreement.  In light of Coastal's fraudulent conduct, as alleged in the fourth amended complaint, Fidelity states claims against Coastal

1

for indemnification and contribution because (i) Coastal is contractually obligated to indemnify Fidelity for losses arising out of Coastal's conduct, (ii) Fidelity is entitled to common law indemnity from Coastal, and (iii) Coastal breached the duty of care that an agent owes to its principal. Accordingly, for the reasons set forth below, the Court should deny Coastal's motion.

## II.   STATEMENT OF FACTS

### A.   Allegations By Walsh Securities In Fourth Amended Complaint

On July 17, 1997, plaintiff, Walsh Securities, Inc. ("**Walsh Securities**"), instituted these proceedings by filing its original complaint against various defendants [Doc. No. 1]. On November 7, 1997, Walsh Securities filed its first amended complaint, and for the first time, asserted causes of action against Fidelity and Coastal. [Doc. No. 3]. Since 1997, Walsh Securities has filed an "amendment" to the first amended complaint [Doc. No. 55], a third amended complaint [Doc. No. 108] and a fourth amended complaint [Doc. No. 302]. With the exception of certain allegations and claims asserted by Walsh Securities against Fidelity in its fourth amended complaint, the five complaints that Walsh Securities has filed in this matter allege, in sum or substance, the same facts.

In these proceedings, Walsh Securities alleges that it was the victim of an elaborate fraudulent scheme that was perpetrated by a vast number of mortgage companies, real estate appraisers, attorneys and a title insurance agency – Coastal –

which scheme was allegedly designed to induce Walsh Securities to purchase approximately 220 mortgage loans on real properties based upon artificially inflated prices. See Fourth Amended Complaint at ¶ 36. As a result, Walsh Securities has asserted a variety of claims against those defendants, including claims for negligence, breach of contract, fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), 18 U.S.C. § 1961, et seq. See Fourth Amended Complaint, Counts I, II, III, IV and VI.

With respect to its allegations against Coastal (and the other "RICO Defendants", as defined in the Fourth Amended Complaint), Walsh Securities contends that Coastal engaged in a pattern of racketeering activity, in violation of Section 1962(c) of RICO, by participating in wire fraud and commercial bribery, which "caused Walsh Securities to finance mortgage loans based on falsely inflated appraisals for real properties and other fraudulent acts by [Coastal]". See Fourth Amended Complaint ("**Fourth Am. Compl.**") at ¶¶ 71-73. As a result of Coastal's violation of Section 1962(c), Walsh Securities alleges that it "has been unable to recoup the full amounts of many of the outstanding mortgage loans". See Fourth Am. Compl. at ¶ 73. Walsh Securities also contends that, in violation of Section 1962(d) of RICO, Coastal conspired with certain other defendants – not including Fidelity – to violate Section 1962(c) of RICO. See Fourth Am. Compl. at ¶¶ 75-79.

Walsh Securities further alleges that Coastal "willfully and intentionally defrauded Walsh Securities and made or caused to be made false, fraudulent and material misrepresentations and omissions to [Walsh Securities] concerning mortgage loans bought by Walsh Securities from [National Home Funding, Inc.]". See Fourth Am. Compl. at ¶ 81. Significantly, as to Coastal, Walsh specifically alleges as follows:

> Coastal Title issued, on behalf of the Title Insurance Defendants, closing service protection letters and title insurance commitments with the intent and purpose that Walsh Securities would rely on the same. In doing so, Coastal Title failed to disclose that the loan transactions at issue were fraudulent and that the closing documents were not timely and properly recorded.

See Fourth Am. Compl. at ¶ 82 (emphasis added).

Walsh Securities has never alleged – nor could it – that Fidelity, either directly or indirectly, was in any way a participant in the alleged fraudulent scheme. Instead, Walsh Securities seeks to recover damages from Fidelity based upon the title insurance policies and closing service letters that Coastal issued to Walsh Securities purportedly on behalf of Fidelity. See Fourth Am. Compl. at ¶¶ 82, 93-100.

## B.   Coastal's Agency Relationship With Nations and Fidelity National

On or about January 1, 1991, Nations, formerly known as TRW Title Insurance of New York Inc., entered into a written agency contract with Coastal. A true and correct copy of the Agency Contract between Coastal and TRW Title

Insurance of New York, Inc. is attached to the Declaration of Edward J. Hayes as

**Exhibit "A"**.   With respect to indemnification, the agency contract between

Coastal and Nations provides as follows:

> Agent shall indemnify Principal and save Principal harmless for all
> losses, including attorneys' fees, suffered by Principal to the extent
> to which such losses are fairly attributable to any <u>dishonest,</u>
> <u>fraudulent, malicious, criminal or grossly negligent act or omission of</u>
> <u>Agent</u> in connection with the issuance of a title binder, Commitment
> to Insure Title, Title Insurance Policy or Abstract of Title on behalf of
> Principal or any failure of Agent to comply with the terms of this
> contract.

<u>See</u> Coastal/Nations Agency Contract, Rider at Paragraph 8d (emphasis added).

Similarly, on or about November 1, 1996, Fidelity National entered into a

written agency agreement with Coastal.   A true and correct copy of the Agency

Agreement between Coastal and Fidelity National is attached to the Declaration of

Edward J. Hayes as **Exhibit "B"**.   With respect to indemnification, the agency

agreement between Coastal and Fidelity National provides as follows:

> In the event that a Loss sustained or incurred for a matter arising
> under this Agreement resulted or arose from the negligent, willful
> or reckless conduct of Agent, Agent's employees or any independent
> contractor relied upon by Agent, then Agent shall reimburse Company
> for the Loss.   The instances where Agent shall be liable to Company
> under this subparagraph shall include, without limitation, the
> following:
>
> 1.   Failure of Agent to comply with the terms and conditions of
>      this Agreement or with the manuals, underwriting bulletins
>      and/or instructions given by Company.
>
> 2.   Issuance of Title Assurances which contain errors or omissions

which could reasonably have been detected by Agent from the commitment, examiner's report, title search or abstract.

3. Loss arising from escrow or Non-Title Assurance operations of Agent including, but not limited to, preparation of documents, providing abstracting services, providing accommodation services and the handling and disbursement of funds.

4. <u>Any Loss arising out of the issuance of an insured closing service letter naming Agent.</u>

5. <u>Commission of fraud, conspiracy, dishonesty, misrepresentation or defalcation by Agent or Agent's aiding and abetting therein.</u>

6. Any act, or failure to act, of Agent which results in Company sustaining Loss for bad faith, deceptive trade practices, unfair claim practices, consumer protection violations or punitive damages.

<u>See</u> Fidelity National/Coastal Agency Agreement at Paragraph 6(B)(1)-(6) (emphasis added).

Significantly, with respect to the agency relationship between Coastal and Nations, and Coastal and Fidelity National, Walsh Securities alleges:

Here, the Title Insurance Defendants entered into agency agreements with Coastal Title as a title agent, under which Coastal Title was granted certain rights to conduct business on behalf of the Title Insurance Defendants. Pursuant to these agency agreements, the Title Insurance Defendants delegated certain responsibilities, which Coastal Title undertook to perform on behalf of and for the benefit of the Title Insurance Defendants. The responsibilities delegated to and undertaken by Coastal Title included the origination of applications for title insurance, the preparation of abstracts, the examination of titles to real estate, the preparation and issuance of commitments, binders, and reports of title, the issuance of policies of title insurance, the issuance of closing service protection letters, and the recording of all necessary papers.

6

See Fourth Am. Compl. at ¶ 54. In its answer to the fourth amended complaint, Coastal admitted that it had a "business relationship" with the Title Insurance Defendants, including Nations and Fidelity National. See Coastal Answer to Fourth Amended Complaint at ¶ 54 [Doc. No. 409].

### C.    Fidelity's Cross-Claims Against Coastal

On July 31, 2009, Fidelity filed its answer to the fourth amended complaint, as well as its cross-claims against Coastal, among others. [Doc. No. 314]. Fidelity has asserted two cross-claims against Coastal. Fidelity's first cross-claim states a cause of action for indemnification, and provides as follows:

> Answering Defendants/Cross-claim Plaintiffs [Fidelity] deny any liability to Plaintiff, but if it is determined that Answering Defendants/Cross-claim Plaintiffs or any one of them is liable to Plaintiff [Walsh Securities] in any respect, such liability is secondary, passive and vicarious, while the liability of the Cross-claim Defendants [Coastal] is primary, active and direct. Any damages for which Answering Defendants/Cross-claim Plaintiffs may be held liable are chargeable to the Cross-claim Defendants [Coastal].

See Fidelity Cross-Claim at ¶ 1.

Fidelity's second cross-claim states a cause of action for contribution, and provides as follows:

> Answering Defendants/Cross-claim Plaintiffs deny any liability to Plaintiffs, and specifically deny that any such liability is joint and several as to Answering Defendants/Cross-claim Plaintiffs. If it is determined, however, that Answering Defendants/Cross-claim Plaintiffs are liable to Plaintiff in any respect, Answering Defendants/Cross-claim Plaintiffs demand contribution from all Cross-claim Defendants pursuant to the provisos of the New Jersey

> Joint Tortfeasors Act, <u>N.J.S.A.</u> 2A:53A-1<u>et</u> seq., *and all other statutory or common laws which may be applicable* with respect to any and all damages that may be assessed against Answering Defendants/Cross-claim Plaintiffs in favor of Plaintiff, together with costs of suit.

<u>See</u> Fidelity's Cross-Claim at ¶ 4 (emphasis added).

On August 10, 2010, almost one year after Fidelity filed its answer to the fourth amended complaint and cross-claims against Coastal, Coastal moved to dismiss Fidelity's cross-claims. The Court should deny Coastal's motion to dismiss.

## III.   **LEGAL ARGUMENT**

### A.   **Standard On A Motion To Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a "motion to dismiss for failure to state a claim upon which relief may be granted must be denied 'unless it appears <u>beyond doubt</u> that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>NN&R, Inc. v. One Beacon Ins. Group</u>, 362 F. Supp.2d 514, 517 (D.N.J. 2005) (emphasis added) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). Further, in deciding a motion to dismiss, "the court must view all allegations in the Complaint in the light most favorable to the plaintiff." <u>Id.</u> at 518; <u>see also</u> <u>Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.</u>, 140 F.3d 478, 483 (3d Cir. 1998) (dismissal only appropriate where "after accepting as true all of the facts alleged in the complaint, and drawing all

reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint"). Here, Fidelity's cross-claims against Coastal for indemnification and contribution easily satisfy these requirements.[1] Accordingly, the Court should deny Coastal's motion to dismiss.[2]

### B. The Court Should Deny Coastal's Motion To Dismiss Fidelity's Cross-Claim For Indemnification

The Court should deny Coastal's motion to dismiss Fidelity's cross-claim for indemnification because Coastal is *contractually obligated* to indemnify

---

[1] In the event that the Court is inclined to grant Coastal's motion to dismiss, then Fidelity respectfully requests leave to amend its cross-claims in order to set forth in more detail (as described herein) those facts that directly support Fidelity's cross-claims against Coastal. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("District Court must permit a curative amendment unless an amendment would be inequitable or futile"). In these proceedings, Coastal is well-aware of its agency relationship with Fidelity and, presumably, that such a relationship gives rise to certain claims by Fidelity against Coastal. In its own pleadings, Coastal has admitted that it had a "business relationship" with Fidelity. As such, any request for leave to amend would not be inequitable to Coastal. In addition, as set forth above and as described herein, Fidelity's cross-claims against Coastal are not futile because (i) Fidelity's cross-claim for indemnification is based on written agency agreements with Coastal that obligate Coastal to indemnify Fidelity for losses that arise from Coastal's conduct, and (ii) Fidelity's cross-claim for contribution is based on Coastal's breach of its duty of care to its principal, Fidelity. Because it is clear that facts exist to support Fidelity's cross-claims against Coastal – facts which distinguish Fidelity's cross-claims against Coastal from Fidelity's cross-claims against other defendants and third-party defendants – Fidelity is prepared to set forth those facts in greater detail should the Court deem it necessary.

[2] In deciding a motion to dismiss, a court's review is not limited solely to the documents attached to the complaint. Review of "a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Winer Family Trust v. Queen, 503 F.3d 319, 328 (3d Cir. 2007) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, the Court may consider the agency agreements between Coastal and Nations, and Coastal and Fidelity National, because those agreements are explicitly referenced and relied upon by Walsh Securities in its fourth amended complaint. See Fourth Am. Compl. at ¶ 54.

Fidelity for any losses sustained by Fidelity as a result of Coastal's alleged participation in the fraudulent scheme.   As plainly set forth in the agency agreement between Coastal and Nations, Coastal agreed to indemnify Nations for all losses that are attributable to "any dishonest, fraudulent, malicious, criminal or grossly negligent act or omission of Agent in connection with the issuance of a title binder, Commitment to Insure Title, Title Insurance Policy or Abstract of Title on behalf of Principal or any failure of Agent to comply with the terms of this contract."  In the agency agreement between Coastal and Fidelity National, Coastal agreed to indemnify Fidelity National for any losses resulting from, among other conduct, "the issuance of an insured closing service letter naming Agent," and "[c]ommission of fraud, conspiracy, dishonesty, misrepresentation or defalcation by Agent or Agent's aiding and abetting therein".   If the allegations by Walsh Securities regarding Coastal's conduct are true, then Coastal's obligations to indemnify Fidelity – as specifically set forth in the agency agreements – have been triggered.   Indeed, the only reason that Fidelity is a party to these proceedings is because Coastal – Fidelity's policy issuing agent – issued closing service letters and title insurance policies as part of an alleged scheme to defraud Walsh Securities.   Put differently, *but for* Coastal's alleged conduct as part of the fraudulent scheme, Fidelity would not be a party to this lawsuit.   Accordingly,

Fidelity has stated a claim for indemnification against Coastal upon which relief can be granted.

In its motion to dismiss, Coastal merely parrots the Court's findings when it granted the motions to dismiss Fidelity's cross-claims that had been filed by certain third-party defendants. Coastal's reliance on the Court's prior decision is misplaced. Although Fidelity respectfully disagrees with the Court's decision to grant the motions to dismiss Fidelity's cross-claims that were filed by certain third-party defendants, the relationship between Fidelity and the third-party defendants is completely distinguishable from the relationship between Fidelity and Coastal by reason of the agency agreements and the relationship between Fidelity and Coastal.

In addition, irrespective of the agency agreements between Coastal and Fidelity which made Fidelity's right to indemnification clear, Fidelity has a right of indemnification against Coastal because, but for Coastal's issuance of closing service protection letters and title insurance policies (on Fidelity's behalf) as part of an alleged fraudulent scheme that was not known to Fidelity, then Fidelity would not be a party to these proceedings and would not be potentially liable to Walsh Securities under the closing service letters and title insurance policies issued by Coastal.

"The right of indemnity rests upon a difference between the primary and secondary liability of two persons, each of whom is made responsible under the law to an injured party.  It is a right which enures to a person who, <u>without active fault on his own part</u>, has been compelled, <u>by reason of some legal obligation</u>, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." <u>Enright v. Lubow</u>, 493 A.2d 1288, 1303 (App. Div. 1985) (emphasis added) (citing <u>Adler's Quality Bakery, Inc. v. Gasteria, Inc.</u>, 32 N.J. 55, 80 (1960)).

In <u>Enright v. Lubow</u>, a title insurance company was held liable to its insured under a title insurance policy that insured the accuracy of a land survey that had been incorrectly performed by a surveyor.  Significantly, the <u>Enright</u> court held that the title insurance company was responsible to its insured "<u>by virtue of its contractual obligation on its policy of title insurance</u>," and that "<u>[t]he obligation of the Title Company to pay stems solely from the error by [the surveyor]</u> in his survey in mislocating the utility easements." <u>Enright</u>, 493 A.2d at 1303 (emphasis added).  As a result, the <u>Enright</u> court concluded that "[u]nder the circumstances the Title Company is entitled to full indemnity" from the surveyor. <u>Id.</u>  Notably, there was no finding in <u>Enright</u> that the title insurance company and the surveyor were "joint tortfeasors". <u>Id.</u>  Instead, the Court found that the loss sustained by the

title insurance company was directly attributable to the wrongful conduct of the surveyor.

The logic and reasoning of <u>Enright</u> is equally applicable here.  If Fidelity is legally obligated to Walsh Securities, then the basis of that obligation are the closing service letters and title insurance policies issued by Coastal as part of the alleged fraudulent scheme.  As such, the potential obligation of Fidelity to pay damages to Walsh Securities under the closing service letters and title insurance policies <u>stems solely</u> from Coastal's participation in the alleged fraudulent scheme and without any fault on the part of Fidelity.  Under the circumstances presented here, as distinguished from the cross-claims that the Court previously dismissed, Fidelity is entitled to common law indemnity from Coastal.

Accordingly, because (i) valid and enforceable agency agreements between Coastal and Fidelity obligate Coastal to indemnify Fidelity for losses that it may incur as a result of Coastal's alleged conduct, and (ii) Fidelity is entitled to a full indemnity from Coastal for any damages that Fidelity may be required to pay under the closing service letters and/or title insurance policies, the Court should deny Coastal's motion to dismiss.

**C.    The Court Should Deny Coastal's Motion To Dismiss Fidelity's Cross-Claim For Contribution**

The Court should deny Coastal's motion to dismiss Fidelity's cross-claim for contribution because Coastal, as Fidelity's agent, breached the duty of care that an agent owes to its principal by reason of its alleged participation in the fraudulent scheme alleged by Walsh Securities.

Under New Jersey law, "an agency relationship is created 'when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, an the agent manifests assent or otherwise consents to act." N.J. Lawyers' Fund for Client Protection v. Stewart Title Guaranty Co., 2010 WL 2991093, at *5 (N.J. Aug. 2, 2010) (quoting Restatement (Third) of Agency § 1.01 (2006)).   In an agency relationship, an agent owes its principal a duty of care "because the agent undertakes to act on behalf of the principal, because the principal's reliance on that undertaking is foreseeable by the agent, and because it is often socially useful that an agent fulfill the agent's undertaking to the principal." Restatement (Third) of Agency § 8.08(b) (citing Restatement (Second) Torts § 323).   Equally important, an agent's duties of care to a principal, while "often overlap[ing]" with contractual duties, sound in tort.  Restatement (Third) of Agency § 8.08(b).  An agent's duties to its principal "are tort-law duties because they 'denote the fact that the actor is required to conduct himself in a particular manner at the risk that if he does not do

14

so he becomes subject to liability to another to whom the duty is owed for any injury sustained by such other, of which that actor's conduct is a legal cause." Id. (quoting Restatement (Second) of Torts § 4).

Moreover, the New Jersey Appellate Division has acknowledged that a principal may seek a remedy in tort against its agent: "[a]t most, an affirmative remedy for breach of contract or negligence exists where there is 'misconduct in negotiations with third persons,' harm to 'tangible things in the [agent's] custody,' or 'causing the principal to be subject to liability for a tort crime, or breach of contract.'" Fried v. Aftec, Inc., 246 N.J. Super. 245, 259 (App. Div. 1991) (citing Restatement (Second) of Agency § 379(1) comment b (1956)); but see Allocca v. Wachovia, Civ. A. No. 05-366, 2007 U.S. Dist. LEXIS 42375, *53 (D.N.J. 2007) (acknowledging general rule of agency that "an agent who acts in an unauthorized manner and subjects his principal to liability because of a negligent or other wrongful act is subject to liability for the resulting loss" and noting exception under New Jersey law specific to employer-employee relationships applicable only to negligence and not intentional acts).

Here, Fidelity has properly asserted a cross-claim against Coastal for contribution because, under the principles of agency discussed above, Coastal owed Fidelity a duty of care that sounds in tort. Coastal's issuance of closing service letters and title insurance policies as part of its participation in the alleged

fraudulent scheme – which if true would clearly constitute a violation of its duty of care to Fidelity – is the only basis for Walsh Securities' claims against Fidelity. The Court should not foreclose Fidelity's cross-claim against the party whose conduct may cause Fidelity to incur significant liability in this case. As a result, the Court should deny Coastal's motion to dismiss Fidelity's cross-claims and permit those claims to go forward.

> **D.    The Dismissal Of The Cross-Claims Against Coastal Would Result In A Situation Whereby Fidelity Would Be Exposed To Liability To Walsh, With No Ability To Pass Along That Liability To The Actual Alleged Wrongdoers**

Based on this Court's earlier decisions relating to cross-claims asserted by Fidelity against Robert Walsh, James Walsh and Elizabeth Demola, if this Court were to grant the motion filed by Coastal, Fidelity would find itself "out on an island" with respect to the claims asserted by Walsh, and, despite the fact that Walsh does not alleged that Fidelity engaged in the alleged scheme to defraud Walsh, Fidelity would be exposed to liability for the losses alleged to have resulted from that scheme with no ability to pass along any of that liability to the actual participants in the scheme. That is certainly not a result intended by the New Jersey courts in their decisions on the subjects of contribution and indemnity.

Robert Walsh, James Walsh and/or Elizabeth Demola would benefit from any recovery obtained by Walsh in this litigation, but would bear no responsibility for the loss (even if proven to have participated in the alleged fraud), simply

because the corporate entity they control decided not to include them as defendants in this litigation. Coastal, which issued the very closing service letters and title insurance policies upon which Walsh bases its claims against Fidelity, and which is alleged to have participated as a RICO defendant in the alleged scheme, would have no liability to Fidelity despite the fact that Fidelity would not be in this case but for the conduct of Coastal, simply because Walsh was unable to style any of its claims against Fidelity as tort claims, as opposed to contract claims. This result simply makes no sense under New Jersey law when the idea of a cross-claim for indemnity and contribution is to permit an appropriate allocation of responsibility for wrongful conduct. Rather than an appropriate allocation of potential liability if Coastal's motion is denied, this Court's grant of the motion filed by Coastal would allocate all of the potential liability in this case to Fidelity. That result would be inappropriate and inconsistent with New Jersey law and should not be permitted by this Court.

## IV.   **CONCLUSION**

For all of the foregoing reasons and authority, defendant/cross-claim plaintiffs, Nations Title Insurance of New York, Inc. and Fidelity National Title Insurance Co. of New York, respectfully request that the Court deny Coastal's motion to dismiss.

Respectfully submitted,

_____
Edward J. Hayes, Esquire
David H. Colvin, Esquire
Amy C. Purcell, Esquire
Fox Rothschild LLP
2000 Market Street, Twentieth Floor
Philadelphia, PA 19103
(215) 299-2092
(215) 299-2150 (facsimile)

Attorneys for Nations Title Insurance of
New York, Inc. and Fidelity National Title
Insurance Co. of New York

Dated:  September 1, 2010

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of foregoing brief of Fidelity

National Title Insurance Co. of New York and Nations Title Insurance Co. of New

York in opposition to the motion to dismiss cross-claims filed by Coastal Title

Agency was electronically filed this day and served this day by first-class mail,

postage pre-paid, as follows:

Robert A. Magnanini, Esq.
Stone Magnanini LLP
150 John F. Kennedy
Short Hills, NJ 07078
Attorneys for Walsh Securities, Inc. and Robert Walsh

Vincent P. Manning, Esq.
Manning, Caliendo & Thomson
36 West Main Street
Freehold, NJ 07728
Attorneys for National Home Funding, Inc. and Robert Skowrenski, II

Martin R. McGowan, Jr., Esq.
Methfessel & Werbel
3 Ethel Road
Suite 300
Edison, NJ 08818
Attorneys for Coastal Title Agency

Edward C. Bertucio, Jr., Esq.
Hobbie, Corrigan, Bertucio & Tashjy, P.C.
125 Wyckoff Road
Eatontown, NJ 07724
Attorneys for Michael Alfieri, Esq.

Robert J. Reilly, III, Esq.
Reilly, Supple & Wischusen, LLC
571 Central Avenue
New Providence, NJ 07974
Attorneys for Michael Alfieri, Esq.

Mark W. Catanzaro, Esq.
Blason IV
Suite 208
513 Lenola Road
Moorestown, NJ 08057
Attorneys for Richard Pepsny and Donna Pepsny

Stephen Balsamo, Esq.
Garrity, Graham, Murphy, Garofalo & Flinn, P.C.
72 Eagle Rock Avenue, Suite 350
P.O. Box 438
East Hanover, NJ 07936
Attorneys for Anthony M. Cicalese

Anthony M. Cicalese
74C Manatiales de Belen
200 Mtrs Norte de Iglesias de Ascen
San Antonio de Belen
Heredia, COSTA RICA

Pasquale Menna, Esq.
Menna, Supko & Nelson, LLC
830 Broad Street, Suite B
Shrewsbury, NJ 07702
Attorneys for Roland J. Pierson

John B. McCusker, Esq.
McCusker, Anselmi, Rosen & Carvelli
210 Park Avenue, No. 3
Florham Park, NJ 07932
Attorneys for Weichert Realtors

David R. Kott, Esq.
McCarter & English
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102

Thomas Brodo
139B Fort Lee Road
Teaneck, NJ 07666

James R. Brown
7 Pamela Road
East Brunswick, NJ 08816

Richard Calanni
One Old Farm Road
Tinton Falls, NJ 07724

Anthony D'Apolito
909 Woodland
Wall Township, NJ 07719

Richard DiBenedetto
3 Loller Drive
Martinsville, NJ 08836

Stanley Yacker
6 Swimming River Court
Barnegat, NJ 08005

William Kane
6119 Kipps Colony Drive
Gulfport, FL 33707

_____
DAVID H. COLVIN, ESQ.

Dated:  September 1, 2010