UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., : <br> : <br> Plaintiff, : <br> : Civil Action No. 97-cv-3496 (DRD) <br> vs. : <br> : Hon. Dickinson R. Debevoise, U.S.D.J. <br> : <br> CRISTO PROPERTY MANAGEMENT, : <br> LTD., a/k/a G.J.L. LIMITED; et al., : <br> : <br> Defendants. : | |

**PLAINTIFF WALSH SECURITIES, INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION OF DEFENDANT
RICHARD CALANNI FOR SUMMARY JUDGMENT**

Respectfully submitted,

STONE & MAGNANINI LLP
Robert A. Magnanini, Esq.
150 John F. Kennedy Parkway, 4th Floor
Short Hills, New Jersey 07078
(973) 218-1111
Attorneys for Plaintiff Walsh Securities, Inc.

On the Brief:
Robert A. Magnanini, Esq.
Amy Walker Wagner, Esq.

Plaintiff Walsh Securities, Inc. ("Plaintiff" or "Walsh Securities") submits this memorandum of law in opposition to *pro se* Defendant Richard Calanni's ("Calanni") July 12, 2010 letter seeking leave to file a motion to dismiss all claims and cross-claims against him. (Docket Entry #406). Calanni was granted leave to file a motion for dismissal on or before August 11, 2010, however no such motion was ever filed. (Docket Entry #407). In the event the Court is inclined to consider Calanni's July 12 letter as his motion, and in an effort to resolve this matter, Plaintiff submits this opposition.

## INTRODUCTION

Defendant Calanni improperly filed what can only be described as a motion for summary judgment prior to the conclusion of discovery and without explicit permission from the Honorable Michael A. Shipp, U.S.M.J. Plaintiff's motion for summary judgment raises many genuine issues of material fact such that summary judgment should not be granted. Accordingly, and for the reasons set forth herein, Calanni's motion should be denied and this action should continue with discovery.

## PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS

Defendant Calanni did not file a Statement of Material Facts, however, based upon his July 12 letter to the Court and his own testimony, the facts of this case are clearly in dispute. Although discovery has not concluded, Plaintiff contends that Calanni's own testimony before the Honorable Alfred M. Wolin, U.S.D.J. evidences sufficient material facts to raise a triable issue. Calanni testified in his December 1, 1998 plea hearing that he was a licensed residential appraiser that knew underwriting decisions would be based in part upon the values set forth in his appraisals. (Exhibit A, Dec. 1, 1998 plea hearing transcript of Defendant Richard Calanni in the matter entitled *U.S. v. Thomas Brodo, et al.*, 98-cr-427 (DNJ), at 50). He also testified that

these mortgage loan proceeds were wired to the closing attorney for disbursement. (Ex. A at 51). Through his conspiracy with others, Calanni fraudulently issued appraisal reports that overstated the value of properties at issue in this case and falsely represented the condition of these properties. (*Id.*; *see also* Exhibit B, October 10, 2001 sentencing hearing transcript of Defendant, Richard Calanni in the matter entitled *U.S. v. Richard Calanni, et al.*, 98-cr-427-3 (DNJ)).

In addition, through discovery, Plaintiff has learned of at least one memorandum evidencing Calanni's connection to other individuals involved in the scheme to defraud Walsh Securities. (Exhibit C, memorandum dated December 13, 1996 from Lory King addressed to six individuals, including Defendant Richard Calanni, produced in this action by William Kane and Bates stamped WK019610).

## STATEMENT OF FACTS

This is an action originally filed July 17, 1997 by Walsh Securities, a mortgage banker, to recover direct, consequential and potentially punitive damages arising from a residential real estate flipping scheme that defrauded Walsh Securities out of an average of 14 loans per month over the course of at least 16 months, for a total of 223 loans comprising approximately $24 million in principal, over $45 million in accrued interest, over $5.5 million in attorneys' fees and costs, the loss of a sale of the company for over $420 million and finally the destruction of WSI with the loss of over 250 jobs and 14 offices in 12 states. Calanni was the appraiser on 74 of these loans and was one of five appraisers involved in this scheme.

On November 7, 1997, after the title insurance companies refused to honor their contractual obligations pursuant to the Closing Service Protection Letters, Walsh Securities amended its complaint. The action was first stayed and then administratively dismissed from June 9, 1998 until September 30, 2004 pending completion of the criminal prosecutions. A Fourth Amended Complaint was filed on July 10, 2009.

The masterminds of the scheme, along with many of the people they recruited to carry out the scheme, pled guilty to criminal charges, were jailed, and have had judgments entered against them or settled out of this civil action. Defendant Calanni is still an active defendant in this action.[1]

**ARGUMENT**

I.  **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THERE ARE QUESTIONS OF MATERIAL FACT IN DISPUTE.**

Defendant Calanni's motion for summary judgment in combination with his plea and sentencing transcripts, and the memorandum linking him to the other RICO Defendants, demonstrate there are questions of material fact in dispute which preclude entry of judgment. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The initial burden is on the moving party to

---

[1] For a more detailed factual background, see *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd*, 7 F. Supp. 2d 523 (D.N.J. 1998); *see also Walsh Secs., Inc. v. Cristo Prop. Mgmt.*, 2007 U.S. Dist. LEXIS 22244 (D.N.J. Mar. 28, 2007).

3

identify evidence that demonstrates the absence of a genuine issue of material fact. Once the moving party has properly supported its showing of no triable issue of fact and entitlement to summary judgment, it is incumbent upon the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. In determining whether there remain any actual issues of factual dispute, the court must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff's Fourth Amended Complaint asserts claims against Calanni under the federal Racketeering Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c) and (d), and common law fraud. The plain language of 18 U.S.C. § 1962(c) prohibits a "person . . . associated with any enterprise" from conducting or participating in a "pattern of racketeering activity." Section § 1962(d) prohibits any person from conspiring to violate any of the subsections of § 1962.

The record demonstrates that Calanni is a person within the meaning of 18 U.S.C. § 1961(3), and, in violation of the civil RICO statute, associated with the enterprise, which was an association in fact consisting of the RICO Defendants, including attorneys and appraisers, and other persons not known to Plaintiff. The RICO Defendants formed the enterprise, among other things, to turn real property into illicit profits generated by mortgage loan proceeds financed by Walsh Securities, and to engage in other activities. The enterprise engaged in, and conducted activities which affected interstate commerce. The mortgage loan proceeds were far in excess of the actual value of the underlying properties because the loans were based on fraudulently inflated appraisals. Along with the RICO Defendants, Calanni conducted and participated in the conduct of the affairs of the enterprise and played a role in the management and operation of the

4

enterprise through a pattern of racketeering activities.

Although Calanni now denies involvement in any conspiracy, in his December 1, 1998 plea before the Honorable Alfred M. Wolin, U.S.D.J., Calanni testified as follows:

> THE COURT: Sir, is it true that, in 1996 and 1997, you were performing appraisals as a licensed New Jersey residential real estate appraiser?
>
> DEFENDANT CALANNI: Yes, Your Honor.
>
> THE COURT: And, sir, did you generally understand that underwriting decisions as to mortgage loans would be based, at least in part, upon the values expressed in your appraisal reports?
>
> DEFENDANT CALANNI: Yes, Your Honor, I understood that.
>
> THE COURT: Did you generally understand that, in the ordinary course, at the time of closing on a property which you appraised, the mortgage loan proceeds would be sent by or through the lender to an attorney for disbursement at the closing?
>
> DEFENDANT CALANNI: Yes, Your Honor, I did.
>
> THE COURT: In this period, did you, by agreement and understanding with others, issue appraisal reports which overstated the value of the subject properties?
>
> DEFENDANT CALANNI: Yes, Your Honor.
>
> THE COURT: Were various of your reports false in that, while the properties were actually in a state of disrepair, you assigned values to them as if the properties had been repaired an improved, without disclosing that important fact in the resulting reports?

(Exhibit A at pp. 50-51).

In addition, at Calanni's sentencing, Judge Wolin stated:

> You hurt a lot of people. You did eight fraudulent appraisals. You heard me go, I know you heard before speaking about the real estate market, how destructive flips are to our society, and how it undermines public confidence in land sales and people like Mr. Grieser, who were allegedly the beneficiaries of these land flips.
>
> You weren't making the big money but you were a link in the chain that

permitted this to occur because without the fraudulent appraisals with their falsely inflated values, Banker's Trust and even Walsh Securities could not have been victimized. So, you played a role in that.

(Exhibit B at pp. 6-7). The Court did not at any time minimize the seriousness of Calanni's involvement in the conspiracy. Even a "spoke on a wheel," as Calanni described himself, is an integral part of the wheel.

Furthermore, the memorandum produced by Defendant William Kane dated December 13, 1996 further demonstrates Calanni's involvement in the scheme. The author of the memorandum, Lory King, testified at her deposition that Kane was the ringmaster of the scheme. The memorandum is addressed to Kane, Calanni, and other RICO Defendants and provides lists of properties recently closed. It clearly links together certain players in the enterprise.

Accordingly, the record demonstrates that there are material issues of fact and credibility determinations for the jury to decide.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant Calanni's motion for summary judgment.

Dated: September 1, 2010

Respectfully submitted,

_____/s/_____
Robert A. Magnanini
Amy Walker Wagner
**STONE & MAGNANINI LLP**
150 John F. Kennedy Parkway, 4th floor
Short Hills, New Jersey 07078
(973) 218-1111
Counsel for Plaintiff Walsh Securities, Inc.