EXHIBIT A

**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WALSH SECURITIES INC.,** : | Civil Action No. 97-3496 (DRD) |
| : | |
| **Plaintiff,** : | |
| : | |
| -vs- : | |
| : | OPINION & ORDER |
| **CRISTO PROPERTY, ET AL.,** : | |
| : | |
| **Defendants.** : | |

SHIPP, UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

This matter comes before the Court upon Plaintiff Walsh Securities Inc.'s ("Plaintiff" or "Walsh") Motion for Leave to Amend. Defendants opposed the motion. The Court heard oral argument on the motion on September 19, 2008. The Court has reviewed the papers and has considered the arguments of counsel. For the reasons stated herein, Plaintiff's motion is DENIED.

## II. BACKGROUND

Plaintiff filed its original Complaint in July 1997. (Doc. No. 1.) Plaintiff filed its First Amended Complaint in November 1997 and its Second Amended Complaint in February 1998. (Doc. Nos. 3, 55.) Plaintiff filed a Third Amended Complaint in January 2005. (Doc. No. 112.) On June 27, 2008, Plaintiff filed its notice of Motion for Leave to file a Fourth Amended

Complaint.[1] This case has not been continuously litigated for the entire eleven year period since the original complaint was filed.

Plaintiff is a wholesale mortgage banker whose primary focus is on the subprime mortgage market. (Pl.'s Third Amended Complaint 2:2, Doc. No. 112, Jan. 31, 2005.) Plaintiff alleges that the action arose out of a scheme to fraudulently induce it into lending $24,000,000 in purchase money while being left with defective mortgages on uncollectible notes. (Pl.'s Moving Br. 1.) In each of the variations on the Complaint, the many Defendants are grouped into two primary categories: the "RICO Defendants" and the "Title Insurance Defendants."

The following Title Insurance Defendants filed opposition to the instant motion: Commonwealth Title ("Commonwealth"), Nations Title Insurance of New York, Inc. ("Nations"), and Fidelity National Insurance Co. of New York ("Fidelity")(collectively, "Title Insurance Defendants"). Plaintiff charged the Title Insurance Defendants with breach of contract for their allegedly wrongful failure to discharge their obligations under closing service letters. (Pl.'s Third Amended Complaint 31-33.) Plaintiff asserted that, pursuant to the agreement embodied in the closing service letters, the Title Insurance Defendants are obligated to compensate Plaintiff for the losses it incurred as a result of the transactions. *Id.*

The Fourth Amended Complaint ("Proposed Fourth Amended Complaint" or "Fourth Amended Complaint") maintains the original breach of contract claim, but also levels new charges against the Title Insurance Defendants. The most fiercely opposed modification to the

---

[1] Plaintiff's Reply Brief noted that the First Amended Complaint added the Title Companies; the Second Amended Complaint was a ministerial Amendment which deleted an individual and corrected the middle initial of a party; and the Third Amended Complaint added new parties. Therefore, Plaintiff asserts that this amendment would only be the second substantive amendment to Walsh Securities' pleading. (Pl.'s Reply Br. 1, n 1.)

2

Third Amended Complaint is the inclusion of the Title Insurance Defendants in Count III, which charges them for the first time with common law fraud. (Pl.'s Proposed Fourth Amended Complaint 27.) In addition, Fidelity is charged individually with unlawful interference with a prospective economic advantage in the proposed Count VII. (Pl.'s Proposed Fourth Amended Complaint 34.)

Coastal Title Agency ("Coastal"), named in the 1997 Amended Complaint as a "RICO Defendant," also filed opposition. (Pl.'s Third Amended Complaint 8.) Coastal is a title insurance broker. Coastal was charged with willful and intentional participation in fraudulent acts and schemes. (Pl.'s Third Amended Complaint 29-30.)

In the proposed amended complaint, Coastal is charged for the first time with breach of contract and negligence. (Pl.'s Proposed Fourth Amended Complaint 32-33.) Count V of the Proposed Fourth Amended Complaint charges Coastal with breach of contract, alleging that Plaintiff was an intended third-party beneficiary of the agency agreements between Coastal and the Title Insurance Defendants. Plaintiff argues that Coastal breached the agency agreements by failing to fulfill its obligations to timely and properly record the closing documents. (Pl.'s Proposed Fourth Amended Complaint 32-33.) Count VI of the Proposed Fourth Amended Complaint charges Coastal with negligence. (Pl.'s Proposed Fourth Amended Complaint 33.) In Count VI, Plaintiff asserts that Coastal breached a duty of care owed to Plaintiff by failing to timely and properly record closing documents, and/or knowingly recording other documents that were part of the alleged RICO scheme. *Id.*

## III. DISCUSSION

As a threshold matter, the Court must determine the appropriate legal standard to apply to Plaintiff's motion for leave to amend its pleading. Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure provides that a party may amend its pleading once as a matter of course before being served with a responsive pleading. Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2).

When deciding whether to grant a motion in support of a leave to amend pursuant to Rule 15(a), "[a] general presumption exists in favor of allowing a party to amend its pleadings." *Del Sontro v. Cendant Corp.,* 223 F. Supp. 2d 563, 576 (D.N.J. 2002)(*citing Boileau v. Bethlehem Steel Corp.,* 730 F.2d 929, 938 (3d Cir. 1984), *cert den'd*, 469 U.S. 871 (1984)). Furthermore, the court should freely give leave when justice so requires. *Id.* However, leave to amend may be denied if the Court finds: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the non-moving party; or (4) futility of amendment. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki,* 227 F.3d 107, 121 (3d Cir. 2000)(citations omitted). Here, Defendants oppose the proposed amendment essentially on grounds of undue delay, undue prejudice, and futility. For the reasons discussed below, the Court does not find that the motion should be denied on the grounds of undue delay or undue prejudice to the non-moving party. However, the Court denies Plaintiff's motion for leave to file an amended complaint on the basis of futility of amendment.

1. **Undue Delay**

All Defendants assert undue delay on the part of Plaintiff. Coastal asserts that Plaintiff had over three years to amend the Complaint to include counts that Coastal breached obligations to Plaintiff by failing to disclose that the loan transactions were fraudulent and that the closing

4

documents were not timely and properly recorded. (Def. Coastal's Opp'n Br. 4.) Coastal states that Plaintiff "may have casually and blithely dangled nebulous theories of negligence in front of the defendants." Coastal also states that there "is no excuse for waiting until now to attempt to formally assert them." *Id.* Coastal cites *Lorenz v. CSX Corp.* for the proposition that delay may become undue when a movant has had previous opportunities to amend and failed to do so. (Def. Coastal's Opp'n Br. 3-4)(*citing Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)).

Defendants Nations and Fidelity both allege that Plaintiff was aware of all the factual allegations regarding the alleged fraud at the time Plaintiff filed its original complaint. Nations and Fidelity also allege that Plaintiff's purported fraud claim is not based on newly discovered facts or evidence. Furthermore, Nations and Fidelity argue that Plaintiff has not offered any reasonable explanation or justification for its failure to assert its claim for fraud as part of its three previous efforts to amend the Complaint. (Def. Nations-Fidelity's Opp'n Br. 9-10.)

Defendant Commonwealth asserts that all of the facts in support of Plaintiff's prospective common law fraud claim were known or knowable since before the original complaint was filed in 1997. Therefore, argues Commonwealth, no possible basis exists to justify the excessive delay that occurred before Plaintiff filed this motion. (Def. Commonwealth's Opp'n Br. 13, 15.) Commonwealth also notes that Plaintiff fails to suggest a purported reason for the inexcusable delay in seeking to amend the Complaint. *Id.*

Plaintiff asserts that Defendants ignore the fact that pleadings may be amended virtually at any time. (Pl.'s Reply Br. 2.) Plaintiff states that Defendants also ignore the procedural history of the matter. Plaintiff provides the Court with a detailed history of the case, which includes a stay pending prosecution, followed by an administrative stay of more than four years

5

and a stay pending mediation. *Id.* at 2-3. The mediation efforts ended on January 7, 2008 and on January 17, 2008, the Court entered an order which lifted the discovery stay. *Id.* at 3-4. On March 17, 2008, the Court entered a Scheduling Order which provided that any motions to amend the pleadings be returnable no later than July 31, 2008. *Id.* at 4.

Even though a court may deny a motion to amend the complaint if the movant's delay in seeking the amendment is undue, "[t]he mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay. In fact, delay alone is an insufficient ground to deny leave to amend." *Cureton v. National Collegiate Athletic Association*, 252 F.3d 267, 273 (2005). While the mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 2004). For example, in *Lorenz v. CSX Corp.*, 1 F.3d 1406 (3d Cir. 1993), the Court found that a three year lapse between the filing of the complaint and the proposed amendment was unreasonable delay where the plaintiff had numerous opportunities to amend.

The Court does not find undue delay in the present case. The filing date of the original Complaint is not indicative of undue delay. Although the action was instituted over eleven years ago, it has actually been litigated for a relatively limited period of time. The Court administratively dismissed the matter from May 26, 2000 until September 30, 2004, while criminal proceedings were being litigated. (*See* Ord. Reopening Case, Doc. No. 102.) In addition, the Court stayed discovery in the matter from April 11, 2006 until January 17, 2008, while the parties attended mediation. (*See* Doc. No. 214; Doc. No. 243.) The Court lifted the discovery stay on January 17, 2008 (*See* Doc. No. 243), conducted an in-person status conference

on March 14, 2008 and entered an Amended Scheduling Order on March 17, 2008. (*See* Doc. No. 247.) The Amended Scheduling Order provided that any motion to amend pleadings must be returnable no later than July 31, 2008. *Id.* Plaintiff filed its motion to amend within the time frame provided in the scheduling order. Therefore, the Court does not find undue delay on the part of Plaintiff in this matter in light of the unique procedural history of the case.

**2.   Undue Prejudice**

Defendants Coastal, Nations, and Fidelity all assert that granting leave to file the Fourth Amended Complaint would unduly prejudice them. Coastal asserts that Plaintiff's proposed legal theories would require Coastal to alter its defense strategy "at this late hour and at a time when all parties are under very strict time requirements from the Court without plaintiff providing any reasons to justify the new claims." (Def. Coastal's Opp'n Br. 5.) Coastal further asserts that "[t]his is the very essence of prejudice." *Id.* Nations Title and Fidelity state:

> Fidelity will be prejudiced if the Court permits Walsh's amendment because Walsh's amended claims will require Fidelity to alter its strategy in defense of Walsh's claims. Hundreds of files will now need to be reviewed to search for evidence of fraud on the part of Fidelity or Coastal Title. Fidelity would be required to search for potential witnesses and documents regarding the facts alleged in Walsh's proposed claims. Given that the events underlying Walsh's proposed claims occurred eleven years ago, Fidelity may not be able to locate such witnesses and/or documents and its defense of these claims would be prejudiced as a result. Had Walsh sought to pursue these claims at the time that they accrued eleven years ago, then admittedly Fidelity would have been in a better position to defend against Walsh's proposed claims. Walsh failed to do so, and the Court should not require Fidelity to suffer the consequences of Walsh's decision.

(Nations-Fidelity Opp'n Br. 16.)

Plaintiff argues that the Defendants will not be unfairly prejudiced because they have had notice of the vast majority of the facts in prior pleadings or discovery underlying the legal

7

theories now proposed. (Pl.'s Reply Br. 6.) Plaintiff asserts that the proposed Amended Complaint "does little more than clarify the legal theories upon which Walsh Securities seeks to recover against Defendants." (Pl.'s Reply Br. 7.) Plaintiff further asserts that the proposed claims could not reasonably cause any alteration in Defendants' defense strategy, especially in light of the limited discovery conducted to date. *Id.*

This Court does not find undue prejudice under the procedural posture of the present case detailed above. While the mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay, "at some point, the delay will become . . . 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould*, 739 F.2d 858, 868 (3d Cir. 1984). "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978).

Although the docket number would make it *appear* that the present case is "at a late stage of the game," in *reality* this case is in the early stages of discovery. The case is still in the fact discovery stage and is, as far as the Court is aware, proceeding within the parameters of this Court's March 17, 2008 scheduling order.[2] The Court finds that it would not be unduly prejudicial for Defendants to change their defense strategy at this time. Defense strategies often change as part of the discovery process. Therefore, the Court will not deny Plaintiff's motion on the basis of undue prejudice.

---

[2] And the only depositions that have taken place to date are the depositions that took place during the stay as part of the mediation process.

8

3. **Futility of Amendment - Relation Back**

Defendants argue that the proposed amended claims do not relate back pursuant to Fed. R. Civ. P. 15(c)(2) and are therefore barred by the Statute of Limitations. If the proposed amended claims are barred by Statute of Limitations, the claims are futile and the Court should deny Plaintiff's motion to amend.

    a. **Defendants' Arguments Regarding Asserted Failure of Proposed Amended Claims to Relate Back under Fed. R. Civ. P. 15(c)**

<u>Fraud</u>

One of Plaintiff's proposed causes of action in its Fourth Amended Complaint is that of common law fraud. Commonwealth asserts that "[t]hroughout 11 years and four versions of [P]laintiff's Complaint, Commonwealth has been sued *solely* for breach of contract." (Def. Commonwealth's Opp'n Br. 2.) The purported basis for the breach of contract claim is the allegation that Commonwealth failed to reimburse Plaintiff for losses caused by the wrongful conduct of other parties despite obligations imposed upon Commonwealth under closing service letters issued to Plaintiff. *Id.* at 2-3. According to Commonwealth, the alleged breach of contract took place *after* the alleged fraud committed by other defendants. *Id.* at 3. Commonwealth asserts that Plaintiff now seeks to allege that it defrauded Plaintiff "by affirmatively 'fail[ing] to disclose that the loan transactions at issue were fraudulent and that the closing documents were not timely and properly recorded.'" *Id.* Commonwealth further asserts:

> That allegation *does not* arise out of the same conduct (*i.e.*, Commonwealth's alleged fraudulent conduct during real estate transactions is not the same conduct as allegedly breaching a title insurance agreement). It *does not* arise out of the same transaction (*i.e.*, the consummation of a purported contract between Commonwealth and plaintiff is not the same transaction as Commonwealth's alleged fraudulent omissions). It *does not* arise out of

9

> the same occurrence (*i.e.*, Commonwealth's alleged breach of contract by failing to provide title insurance is not the same occurrence as Commonwealth's alleged earlier fraudulent omissions).

*Id.* Therefore, Commonwealth argues that Plaintiff's proposed Fourth Amended Complaint does not relate back to the original Complaint. *Id.*

Commonwealth cites *Farrell v. Einemann* for the proposition that a proposed amendment "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." (Def. Commonwealth's Opp'n Br. 21)(*citing Farrell v. Einemann*, 2006 WL 5164064 at *1 (*quoting Mayle v. Felix*, 545 U.S. 644 (2005)). Applying the *Mayle* rule, the court in *Farrell* stated that when a proposed amendment has a distinctly broader time frame than the original, and the proposed amendment alleges facts that did not form the basis of the claims against the Defendant in the original complaint, the facts are not of the same time or type and therefore do not relate back under Rule 15(c). *Farrell v. Einemann*, 2006 WL 5164064 at *2. Accordingly, the Court rejected a proposed amendment which asserted a claim based upon Defendant leaving Plaintiff in a dangerous condition, while the original complaint asserted claims arising from Defendant striking Plaintiff. *Id.*

Fidelity similarly argues that the proposed common law fraud claim against it does not relate back to Plaintiff's original claim against Fidelity for breach of contract. (Nations-Fidelity Opp'n Br. 18.) In its first amended complaint, Plaintiff asserted a claim against Fidelity solely for breach of contract. According to Fidelity, the facts asserted against it were that:

> at the time of the closings, title agents allegedly issued closing service letters covering the conduct of the closing attorneys, that well after the frauds has [sic] occurred, demands were made by Walsh under those closing service letters for reimbursement of the losses resulting from the alleged conduct of the closing attorneys and that Fidelity has refused to

10

> pay monies to Walsh. Based on these allegations, its [sic] can be seen that the claim asserted against Fidelity arose solely out of Fidelity's failure to reimburse Walsh for losses which Walsh contends are covered under the terms of the closing service letters.

*Id.*

Fidelity argues that in its Proposed Fourth Amended Complaint, Plaintiff seeks to assert a claim for fraud based on conduct distinct from the conduct that forms the basis for Plaintiff's breach of contract claim. *Id.* at 18-19. Fidelity argues that the conduct forming the basis for the fraud claim is not based on the issuance of closing service letters, but rather on Fidelity's alleged participation in a fraudulent scheme in which it failed to disclose material information to Plaintiff in specific real estate transactions. *Id.* at 19. Fidelity cites *Unicure v. Thurman* in support of the proposition that a claim against it for fraud should not relate back merely because of allegations made against other defendants. *Id.* (*citing Unicure v. Thurman*, 97 F.R.D. 1 (W.D.N.Y. 1982)).

In *Unicure*, an original complaint with ten causes of action against four defendants included claims for conspiracy, failure to disclose material information, conversion, and unfair business practices. *Id.* The complaint only contained a claim for unfair business practices against one defendant. *Id.* Unicure then moved for leave to amend its complaint against the defendant to include claims for conspiracy, failure to disclose material information and conversion. *Id.* The Court rejected the proposed amendment, "*even though Unicure mentioned [the] defendant[] throughout the factual allegations that supported its claims for conspiracy, failure to disclose material information and conversion.*" (emphasis added in original) *Id.* at 19-20.

11

Tortious Interference

In addition to the proposed fraud claim, Plaintiff seeks to assert a claim against Fidelity for tortious interference. Fidelity asserts that Walsh's alleged claim for tortious interference arose, "if at all," on August 12, 1997 when it sent a memorandum to its "Agents and Approved Attorneys." (Nations-Fidelity Opp'n Br. 11.) The memorandum advised Fidelity's agents and approved attorneys not to issue any binders, commitments, or title insurance policies to Plaintiff without the prior approval of Fidelity. *Id.* Fidelity asserts that "[i]t could not be any clearer" that the issuance of the memorandum is not connected to the facts set forth in any of the underlying complaints. *Id.* at 20. Fidelity also asserts that its issuance of the memorandum is completely unrelated to Fidelity's alleged breach of the closing service letters. *Id.* at 21.

Negligence

Coastal asserts that Plaintiff's negligence claims raised for the first time against it in Plaintiff's Fourth Amended Complaint do not relate back. (Def. Coastal's Opp'n Br. 5.) Coastal agrees with the well settled case law that "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the proceding [sic] pleading fall with [sic] Rule 15(c)." *Id.* at 6 (*citing Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)). However, Coastal argues that the proposed Fourth Amended Complaint does not restate the original claims with greater particularity and asserts that the claims should not relate back pursuant to Fed. R. Civ. P. 15(c)(2). *Id.*

12

    b.    **Plaintiff's Arguments Regarding Asserted Relation Back of Proposed Amended Claims under Fed. R. Civ. P. 15(c)**

Plaintiff argues that "[t]he few added factual allegations only clarify or amplify previous factual allegations" thereby "streamlin[ing] the Complaint to conform it to the evidence, to clarify, or to add legal theories based upon the facts previously alleged." (Pl.'s Moving Br. 1.) In its Reply Brief, Plaintiff categorizes Defendants' arguments that the claims in the Fourth Amended Complaint would be futile because they are barred by the statute of limitations. (Pl.'s Reply Br. 9-10.) Plaintiff then attempts to discredit Defendants' arguments.

Plaintiff first attempts to discredit Defendants' arguments that the facts upon which the new claims are based are different from those previously asserted and that the facts underlying the new claims were previously asserted but against different defendants. Plaintiff asserts that the new claims relate back because they are related to, or revolve around, the entry into and the consummation of the agreements between Walsh and Defendants and the actions of the Defendants' agents. (Pl.'s Reply Br. 10-11.) Plaintiff states:

> In its previous pleadings, Walsh Securities described the real estate purchase process and its role, as well as the role of Defendants and their agents, in that process. It detailed how it lent money for others to acquire mortgages and the steps it took to protect itself in these transactions, namely through the receipt of closing service protection letters issued in conjunction with certain title insurance policies, without which Walsh Securities would never have wired the mortgage proceeds to the Defendants' closing agents. The new claims are related directly to Defendants' execution of their obligations under the closing service protection letters and title insurance policies.

*Id.* at 11.

Plaintiff cites *Lind v. Vanguard Offset Printers, Inc.*, 857 F. Supp. 1060, 1068 (S.D.N.Y. 1994) for the proposition that "[w]here the original pleading involve[s] an agreement between the

13

parties, claims arising out of 'the entry into the Agreement' or 'revolving around the consummation of the Agreement' will be considered to have arisen from the same conduct under Rule 15(c)." (Pl.'s Reply Br. 10.) In *Lind*, the Court allowed a proposed amendment when the proposed amendment sought to add additional misrepresentations that occurred during the same negotiating period to a securities fraud claim. *Lind*, 857 F. Supp. at 1069. The court reasoned that the proposed amendment relates back because it incorporates additional omissions and misrepresentations concerning the nature of the agreement. *Id.*

Plaintiff cites *Brown v. Providence Gas Co.* as an example of a case in which a court found that allegations asserted for the first time in a proposed amended complaint related back because the violations related to the contract underlying the initial complaint. (Pl.'s Reply Br. 10)(*citing Brown v. Providence Gas Co.*, 445 F. Supp. 459, 462-63 (D.R.I. 1976)). According to the *Brown* Court, "[w]hen a suit is filed . . . the defendant knows that the whole transaction described in [the complaint] will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to [Plaintiff's] first statement." *Id.*

Plaintiff also attempts to discredit Defendants' argument that the new claims are legally distinct from those previously asserted. According to Plaintiff:

> [T]his is not a situation where Walsh Securities is attempting to 'expand the scope of the factual allegations against these parties or to hold them accountable for the actions of another, or seeking to assert notice via some informal means *(citation omitted)*. . . . Instead, Walsh Securities is asserting a new legal theory based on facts previously alleged or reasonably inferable from facts previously alleged; a practice which is explicitly permitted in this District *(citation omitted)*. . . . As a case cited by Defendants provides, it is not a connection between the claims that must be shown, but rather a connection between the facts forming the basis for those claims *(citation omitted)*. . . . The

14

question is not whether a new legal theory has been alleged, but whether the facts underlying the new theory are related to those originally plead (*citation omitted*).

*Id.* at 12-13.

### c. Discussion

Under Rule 15(c)(2), an amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

> In accordance with the general theory of liberalized pleading in the federal system, Rule 15(c) is premised on the notion that a party is not entitled to the protection of the statute of limitations based upon the later assertion by amendment of a claim or defense that arises out of the same conduct, transaction, or occurrence set forth in the timely filed original pleading. (citation omitted.) Thus, amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c). (citation omitted.) In essence, application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings. As such, the court looks to whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds. (citation omitted.)

*Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004).

The chief inquiry under Rule 15(c) concerns whether adequate notice has been given to the opposing party "by the general fact situation alleged in the original pleading." *Lind v. Vanguard Offset Printers, Inc.*, 857 F. Supp. 1060, 1068 (S.D.N.Y.) (*quoting In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y.1992)(*quoting Contemporary Mission, Inc. v. New York Times Co.*, 665 F. Supp. 248, 255 (S.D.N.Y.1987)). "Courts have liberally construed Rule 15(c) to allow amendments to relate back to the original pleading provided that the opposing party had notice of

15

the claim and would not be prejudiced by the amendment." *Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343, 1351 (D.N.J. 1996).

Plaintiff argues for a broad interpretation of "contract, transaction or occurrence" and asserts that the proposed new claims should be allowed since the new claims arise out of entry into the Agreement or revolve around the consummation of the Agreement. If the Court solely utilized that interpretation, it might be persuaded by Plaintiff. However, a more detailed analysis is necessary than that posited by Plaintiff.

This Court finds the *Farrell* Court's interpretation of *Mayle v. Felix,* 545 U.S. 644 (2005), instructive. *Farrell v. Einemann*, 2006 WL 5164064 *1 (D.N.J. 2006). The original complaint in *Farrell* alleged that the plaintiff was physically struck and injured by a bus driver while the two were standing outside the bus. *Id.* The proposed amended complaint included a claim based on the bus driver leaving the plaintiff in a dangerous condition. *Id.* The *Farrell* Court cited the Supreme Court's decision in *Mayle v. Felix* for its holding that an amended petition "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id. (citing Mayle,* 545 U.S. at 650).

The individual Defendants in the present case made persuasive arguments, both in their briefs and during oral argument, that Plaintiff's Fourth Amended Complaint asserts new grounds of relief supported by facts that differ in both time and type from those the original pleading set forth. For example, Defendants distinguish the time frame and types of facts relating to breach of contract as opposed to fraud. The time frame of the proposed fraud claim took place during the period the Defendants allegedly failed to disclose material information to Plaintiff in specific real

16

estate transactions. On the other hand, Plaintiff's original breach of contract claim arises later. The claim arises when the breach occurred, namely when Defendants failed to reimburse Plaintiff for losses which it claimed were covered under the closing service letters. Thus, Plaintiff's Amended Complaint as to the relevant Defendants extends the time frame beyond the original complaint. Therefore, the new claims in Plaintiff's Fourth Amended Complaint do not relate back under *Mayle*.

In addition, the facts which support the new ground of relief are based upon facts of a different type. The facts alleged in the original complaint concerned Defendants' breach of obligations under the contract. In the proposed complaint, however, the facts concern Defendants' knowledge of and participation in a fraudulent scheme to defraud Plaintiff.

A similar analysis can be made regarding Plaintiff's proposed claims of negligence and breach of contract against Coastal. In the original complaint, Coastal was named as a RICO Defendant and was charged with intentional participation in a fraudulent scheme. (Pl.'s Third Amended Complaint 28-29.) The type of facts needed to support the new claims are different from those alleged in the original complaint. The new factual allegations concern obligations and duties under a contract between Plaintiff and Coastal, while the old facts concern alleged activities which took place in furtherance of a fraudulent scheme against Plaintiff. Therefore, since Plaintiff uses facts that differ in type from those the original pleading set forth, the new claims in Plaintiff's Fourth Amended Complaint do not relate back under *Mayle*.

A *Mayle* analysis of the proposed claim against Fidelity for unlawful interference with prospective economic advantage also leads to a similar determination. The proposed claim revolves around an entirely separate incident, far removed from any facts originally asserted in

17

the Third Amended Complaint. The incident revolves around a memorandum which Fidelity disseminated to its Agents and Approved Attorneys, stating that "no binders, commitments, or title insurance polices should be issued to Walsh Securities, Inc., covering property in any state, without the prior written approval of Fidelity." (Pl.'s Proposed Fourth Amended Complaint 34.) This letter was not mentioned in the Third Amended Complaint or any prior complaint. In addition, the underlying facts for this claim are centered around different and distinct facts, separate from those previously alleged in the prior three amendments. The facts which support this new legal theory differ in both time and type.

Plaintiff notes that, "in applying Rule 15(c), courts must examine 'whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds.'" (Pl.'s Moving Br. 5)(citing *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298 (3d Cir. 2004)). Plaintiff asserts that Defendants have had notice of "*the vast majority of the facts* in prior pleadings or discovery underlying the legal theories now proposed. Specifically, *much* of the amendment charges *some* Defendants with liability for the acts of their agents alleged in prior pleadings." (emphasis added)(Pl.'s Reply Br. 6-7.) In light of the unique nature of the present case, with the numerous defendants and numerous claims against the different individual defendants in the case, this Court does not find that the opposing parties had fair notice of the general fact situation and legal theory upon which the amending party would like to proceed.

Plaintiff also cites *Bensel* for the proposition that "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)." (Pl.'s Moving Br. 5)(citing *Bensel*, 387 F.3d at 310.) Plaintiff asserts that the proposed "amendments

18

simply streamline the Complaint to conform it to the evidence, to clarify, or to add legal theories based upon the facts previously alleged. The few added factual allegations only clarify or amplify previous factual allegations." (Pl.'s Moving. Br. 1.) Plaintiff's reply brief again asserts that the amendment "restates and clarifies certain facts and legal theories alleged in prior complaints or asserts new legal theories based on the same facts previously alleged." (Pl.'s Reply Br. 1.) This Court finds that Plaintiff's Fourth Amended Complaint does far more than "streamline." Plaintiff's Fourth Amended Complaint adds facts of a different time and type.

Consideration of the proposed amended claims against the individual Defendants leads the Court to conclude that the claims do not relate back and are barred by the Statute of Limitations. Therefore, the Court must deny Plaintiff's motion for leave to file an amended complaint based on futility of amendment.

## IV. CONCLUSION

After having carefully considered the pleadings and the positions set forth during oral argument, and for the reasons set forth above,

IT IS on this 30th day of October 2008,

**ORDERED** that Plaintiff's Motion for leave to file an amended complaint is DENIED.

                                                 s/ Michael A. Shipp
                                      **HONORABLE MICHAEL A. SHIPP**
                                      **UNITED STATES MAGISTRATE JUDGE**