UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**MICHAEL A. SHIPP**
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST. ROOM 2042
NEWARK, NJ 07102
973-645-3827

Not for Publication

LETTER OPINION AND ORDER

June 28, 2011

**VIA CM/ECF**
All counsel of record

    Re:    **Walsh Securities, Inc. v. Cristo Property Management, Ltd., et al.
              Civil Action No. 97-3496 (DRD)(MAS)**

Dear Counsel:

      This matter comes before the Court on Plaintiff Walsh Securities, Inc.'s ("Plaintiff" or "Walsh Securities") informal request for an order instructing the Title Company defendants ("Defendants") to return or destroy witness interview memoranda ("Interview Memoranda") created by attorneys retained by Plaintiff as part of an internal investigation of Walsh Securities in 1997 (Docket Entry Number ("Doc. No.") 412 ("Pl.'s Moving Br.")); and on Defendant Commonwealth Land Title Insurance Company's ("Commonwealth") informal motion to compel the deposition testimony of Plaintiff's Rule 30(b)(6) deponent Robert Walsh and Commonwealth's co-defendants Michael Alfieri, Esq. and Robert Skowrenski ("Co-Defendants") about the terms of Messrs. Alfieri's and Skowrenski's respective settlements with Plaintiff ("Settlement Agreements"). (Doc. Nos. 392 ("Def.'s Moving Br.") and 411 ("Def.'s Reply Br.").)

      Having carefully reviewed and considered the relevant submissions, and for the following reasons, Plaintiff's request that Defendants destroy or return the Interview Memoranda is

GRANTED without prejudice; and Defendant Commonwealth's motion to compel deposition testimony regarding the Settlement Agreements is DENIED without prejudice.

## I.  BACKGROUND

As the parties are well versed in the facts of this matter, the Court will address only those facts relevant to the pending motions. Several years ago, when the parties were engaged in mediation to resolve the underlying claims in this matter, Plaintiff forwarded to Defendants redacted copies of the Interview Memoranda prepared by its attorneys. (Pl.'s Moving Br. 1.) When mediation proved unsuccessful, Plaintiff requested that the documents be returned or destroyed pursuant to Federal Rule of Civil Procedure 26(b)(5). (*Id.* at 2.) As the Interview Memoranda were never returned, Plaintiff now argues that they are privileged, and thus must be returned, or alternatively, destroyed by Defendants. (*Id.* at 1-2.) Defendants oppose Plaintiff's request. (Doc. No. 417 ("Def.'s Opp'n Br.").)[1]

Defendant Commonwealth moves on a separate issue and asks the Court to compel the deposition testimony of Messrs. Alfieri and Skowrenski about the terms of their respective Settlement Agreements under which the suits against them were dismissed. (*See generally* Def.'s Moving Br.) According to Commonwealth, during the depositions of Mr. Walsh and Co-Defendants, Plaintiff's counsel improperly directed the deponents not to answer questions relating to the Settlements Agreements. (Def.'s Reply Br. 2-6.) Notably, this Court previously entered an Opinion and Order sealing the Skowrenski Settlement Agreement from public disclosure pursuant to Local Civil Rule 5.3(c)(2), finding that private interests outweighed any public benefit of disclosure. (Doc. No. 395 ("June 30, 2010 Order").) Plaintiff opposes Commonwealth's motion on various grounds. (Doc No. 393 ("Pl.'s Opp'n Br.").)

---

[1] Counsel for Fidelity National Title Insurance Company joined Defendant Commonwealth's brief by letter dated August 30, 2010. (Doc. No. 418.)

## II. LEGAL DISCUSSION

### A. Work-Product Privilege

The purpose of the work-product privilege is to safeguard an attorney's work-product from disclosure to an adversary or opponent. *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998). "Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)[.]" *United Coal Co. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Under Federal Rule of Civil Procedure 26(b)(3)(A), the work-product doctrine shields the disclosure of certain documents "prepared in anticipation of litigation or for trial by or for another party or its representative." This doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975) (citing *Hickman v. Taylor*, 329 U.S. 495, 508 (1947)).

The party asserting the work-product privilege has the burden of demonstrating that the documents claimed as privileged were "prepared in 'the course of preparation for possible litigation.'" *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) (quoting *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 94 (3d Cir. 1992)). When considering whether this privilege protects the disclosure of certain documents, courts within the Third Circuit undertake a two-part assessment: (1) application of the reasonable anticipation test; and (2) a determination of whether the documents in question were prepared for the primary purpose of litigation. *La. Mun. Police Emp.'s Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008) (citing *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003)); *Paris v. R.P. Scherer Corp.*, No. 02-1044, 2006 U.S. Dist. LEXIS 47413, at *5-6 (D.N.J. July 13, 2006). To satisfy the reasonable anticipation test, first, the litigation underlying the alleged work-product

3

must "reasonably have been anticipated," and, second, based on the underlying facts and situation, the "'document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *La. Mun. Police Emp.'s Ret. Sys.*, 253 F.R.D. at 306 (internal citations omitted); *see also Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990). Even when the reasonable anticipation test is satisfied, the analysis "still depends primarily on the reason or purpose for the documents' production." *La. Mun. Police Emp.'s Ret. Sys.*, 253 F.R.D. at 307 (quoting *In re Gabapentin*, 214 F.R.D. at 184). As such, the second element in the work-product determination requires an analysis as to whether the documents were created "primarily for the purpose of litigation." *Id.* at 306 (quoting *Paris*, 2006 U.S. Dist. LEXIS 47413, at *2). Thus, even if the documents were produced for purposes other than the litigation but prove useful in the litigation at issue, the documents are not protected by the work-product privilege. *Id.* at 307 (citing *In re Gabapentin*, 214 F.R.D. at 184).

Disclosure of attorney work-product may be permitted if "the party [seeking disclosure] shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). However, if discovery is permitted, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* at 26(b)(3)(B); *see also The Times of Trenton Publ'g Corp. v. Pub. Util. Serv. Corp.*, No. 03-6026, 2005 U.S. Dist. LEXIS 34624, at *12 (D.N.J. May 3, 2005). Indeed, the Supreme Court has noted that even "where the witnesses are no longer available or can be reached only with difficulty," production of certain documents such as interview

4

memoranda may not be warranted because disclosure of such documents would lead to untenable consequences:

> [M]uch of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Upjohn Co. v. United States*, 449 U.S. 383, 398-99 (1981) (internal citations and quotations omitted).

Disclosure of attorney work-product may be warranted where the requested materials contain purely factual information. *United States v. Amerada Hess Corp.*, 619 F.2d 980, 987-88 (3d Cir. 1980). Nonetheless, the determination that a document is protected "is not a linear conclusion and is necessarily dependent on both the content of the document and the factual showing by the party seeking disclosure." *Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 57 Fed. Appx. 58, 60 (3d Cir. 2003). Indeed, the Third Circuit "accord [s]... work product almost absolute protection from discovery, because 'any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes ....'" *Haines*, 975 F.2d at 94 (citing *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985)).

Finally, disclosure may be appropriate if a party demonstrates that the work-product privilege has been waived. *Maldonado v. New Jersey*, 225 F.R.D. 120, 131-32 (D.N.J. 2004). While the work-product privilege is not absolute, waiver of the privilege is difficult to establish. *The Times of Trenton Publ'g Corp.*, 2005 U.S. Dist. LEXIS 34624, at **13-14. To demonstrate that the privilege was waived, the party seeking discovery must show that the privileged

5

information was disclosed to an adversary or disclosed in a manner that would allow an adversary to gain access to it. *Id.* at \*\*14-15.

Here, Plaintiff contends that because the Interview Memoranda were created by attorneys who were retained by Plaintiff in anticipation and for the purpose of litigation, the documents fall squarely within work-product protections. (Pl.'s Moving Br. 2.) In support of its position, Plaintiff notes that "[l]itigation [of this matter] commenced on July 17, 1997, and many of the interviews were conducted before that date and through August of 1997, prior to the filing of the Amended Complaint." (*Id.* at 2.) Additionally, Plaintiff relies on the fact that about seventeen (17) of the twenty-four (24) Interview Memoranda were marked "DRAFT," evincing the drafting attorney's expectation that the documents were created for use in litigation. (*Id.* at 2-3.)

Having asserted that the Interview Memoranda were prepared in anticipation of litigation and are thus protected under the work-product doctrine, Plaintiff next contends that Defendants have not met their burden of proving a substantial need for the documents; nor have they proved that they cannot obtain substantial equivalents of the Interview Memoranda by other means without undue hardship. (*Id.* at 4.) As to both need and undue hardship, Plaintiff contends that "[t]here is absolutely no reason why Defendants cannot interview [the same] witnesses on their own, and there is no reason why Defendants did not attempt to interview these witnesses earlier in this litigation." (*Id.*) Thus, Plaintiff contends that without establishing the degree of need and undue burden that would warrant disclosure, Defendants "are seeking to piggyback off of the efforts of Plaintiff's counsel and their failure to perform any investigation into this matter." (*Id.*)

Defendants contest Plaintiff's position, arguing that the Interview Memoranda are neither work-product nor privileged. (Def.'s Opp'n Br. 3.) Defendants assert that the documents were produced in redacted form during their mediation with Plaintiff and consist solely of factual

6

allegations. Commonwealth further argues that, even if the Interview Memoranda are protected under the work-product doctrine, they have sufficiently demonstrated substantial need and an inability to obtain the same information by other means without undue burden. (*Id.* at 4.) Specifically, Defendants argue that their need is sufficiently substantial because it would be too burdensome to re-create the interviews since "[m]emories of the underlying incident in this case cannot be replicated in 2010 with anywhere near the accuracy and breadth of statements taken in 1997." (*Id.*) Moreover, Defendants posit that because the redacted Interview Memoranda are purely factual statements, they are likely to be more reliable having been created around the same time as the interviews were conducted. (*Id.* at 4-5.) Thus, Defendants argue that even if counsel re-interviewed the same individuals, it would be impossible to elicit statements with the same degree of accuracy as that contained in the Interview Memoranda. (*Id.* at 5.)

Finally, Defendants maintain that Plaintiff waived any privilege over the Interview Memoranda by voluntarily producing redacted copies to Defendants during the parties' mediation. (*Id.* at 5-6.) According to Defendants, "Plaintiff cannot now put the cat back in the bag and shield these factual documents." (*Id.* at 6.) However, Plaintiff argues that no waiver occurred because the Interview Memoranda were provided exclusively for the purposes of mediation: "[W]e told Defendants we would provide them with redacted copies of the interview memos for the sole purpose of facilitating settlement during the mediation under Fed. R. Evid. 408." (Pl.'s Moving Br. 2.)

Initially, the Court finds it prudent to address Defendants' waiver argument. While the Interview Memoranda may not have been prepared specifically for mediation, the fact that they were produced as part of the mediation process deserves consideration nonetheless. Local Civil Rule 301.1(e)(5) provides that "[n]o statements made or documents prepared for mediation shall

be disclosed in any subsequent proceeding or construed as an admission." Even if the Court were to construe Plaintiff's production of the redacted Interview Memoranda as a voluntary act, Plaintiff clearly produced the documents in conjunction with mediation. Furthermore, Plaintiff requested that Defendants return the Interview Memoranda by letter dated January 9, 2008, immediately after this Court lifted the stay under which mediation was proceeding. (Pl.'s Moving Br. 2.) Therefore, after considering both the explicit language of Rule 301.1(e)(4) and Defendants' high burden of proving a waiver of work-product protection, the Court is not persuaded that Plaintiff waived any privilege to the Interview Memoranda by submitting a redacted version for the purposes of mediation.

The Court further finds that Plaintiff's assertions sufficiently establish that the Interview Memoranda were prepared in anticipation and for the purpose of litigation. Plaintiff has consistently maintained that the documents were protected under the work-product doctrine by: (1) retaining counsel to interview employees regarding fraud allegations directly related to the claims in this action; (2) labeling the bulk of the documents DRAFT; and (3) promptly asking for their return after mediation failed. Accordingly, the Court finds that the documents are in fact protected by the work-product doctrine.

Furthermore, Defendants have failed to establish "a far stronger showing of necessity and unavailability by other means . . . to compel disclosure" when the "work product [is] based on oral statements," such as internal memoranda. *See Upjohn*, 449 U.S. at 401-02. Specifically, Defendants have not shown that the witnesses are unavailable or are otherwise difficult to reach. Instead, Defendants argue that the witnesses' memories will not be as accurate as they were when Plaintiff's attorneys took the witness statements over a decade ago. However, this argument is undermined by the absence of any indication in the record of any attempts to

8

interview the witnesses during the several years this action was active both before and after it was stayed pending mediation. The Court is similarly not persuaded by Defendants' argument that the redacted Interview Memoranda contain mere facts that are not protected under the work-product doctrine. While Courts may compel the production of purely factual material, and indeed, the unredacted portions of the Interview Memoranda include factual material, any factual material consists of personal recollections of interviews prepared by counsel in anticipation of litigation. Thus, after careful consideration of the arguments, the Court does not find that Defendants made a sufficient showing to justify production of the Interview Memoranda. Therefore, Plaintiff's request that Defendants destroy or return the Interview Memoranda is granted without prejudice.

### B. Motion to Compel Deposition Testimony

Under Federal Rule of Civil Procedure 26(b), a court may compel discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action, provided that the Court finds good cause. In determining good cause, courts in this District interpret Federal Rule of Civil Procedure 26(b) "liberally," tending to "creat[e] a broad vista for discovery." *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The party seeking discovery bears the burden of "showing that the information sought is relevant to the subject matter of the action and may lead to [the production of] admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 105 (D.N.J. 1990). "Relevant information need not be admissible at . . . trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Accordingly, the scope of discovery is broad and may

encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Kopacz v. Del. River & Bay Auth.*, 225 F.R.D. 494, 497 (D.N.J. 2004) (quoting *Caver*, 192 F.R.D. at 159).

While the scope of discovery may be broad, it is not boundless. When the burden of a discovery request is likely to outweigh the benefits, Federal Rule of Civil Procedure 26(b)(2)(C) vests the District Court with the authority to limit a party's pursuit of otherwise discoverable information. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Thus, a discovery request may be denied if this Court finds that benefits of disclosure would likely be outweighed by the burden or expenses imposed as a consequence of the discovery after assessing the following factors: (1) the unreasonably cumulative or duplicative effect of the discovery; (2) whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery;" and (3) "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

In the instant motion, Defendant Commonwealth asks the Court to compel Messrs. Walsh, Alfieri, and Skowrenski to respond to deposition questioning regarding the terms of the respective Settlement Agreements. (*See generally* Def.'s Moving Br.; Def.'s Reply Br.) According to Commonwealth, during Co-Defendants' depositions Mr. Alfieri's attorney "was willing to waive any confidentiality provisions of th[e] settlement agreement," and Mr. Skowrenski's attorney "appeared . . . not [to] have an objection to waiving any confidentiality provision of the [S]ettlement " Agreement. (Def.'s Moving Br. 1-2.) Commonwealth maintains that because the Settlement Agreements are discoverable, Plaintiff's counsel's directions to the

Co-Defendants not to respond to deposition questions about the Settlement Agreements were improper. (Def.'s Moving Br. 1-2.)

Commonwealth argues that the terms of the Settlement Agreements are relevant for three independent reasons: (1) the information bears on the credibility of the Co-Defendants; (2) they may "include provisions which would lead to the discovery of admissible evidence concerning the involvement of the Walsh family in the frauds;" and (3) if Plaintiff won a jury verdict against the non-settling Defendants, the latter would be entitled to credits for the amounts the Co-Defendants paid out to Plaintiff pursuant to the Settlement Agreements. (Def.'s Moving Br. 2.)

With respect to the Co-Defendants' credibility, Commonwealth notes that while Plaintiff's allegations against the settling Co-Defendants in its Fourth Amended Complaint are very serious and specific, Mr. Walsh's deposition testimony indicates that Plaintiff backed away from those claims. (Def.'s Moving Br. 2.) In addition, Co-Defendant Skowrenski's attorney noted in a 1997 newspaper article that "[Mr.] Walsh and the Walsh family were involved with the frauds at issue in this case," whereas in Mr. Skowrenski's recent deposition he claimed no knowledge about the Walsh family's role in the frauds or about his prior attorney's published comments. (*Id.*) Thus, Commonwealth argues that Mr. Skowrenski has "flipped" his position regarding those issues and the information in the Settlement Agreement is necessary to bring such information to light and to uncover Mr. Skowrenski's bias against Commonwealth. (*Id.*) Commonwealth likewise argues on similar grounds for disclosure of Mr. Alfieri's settlement terms with Plaintiff. (Def.'s Reply Br. 7.)

As to any amounts paid under the Settlement Agreements, Commonwealth asserts that the existence of Co-Defendants' Settlement Agreements, without detailed information regarding the terms therein, "yield[s] the incomplete and inaccurate inference that plaintiff released [Co-

11

Defendants] from liability merely because it came to light that [they] were not involved in the events at issue." (*Id.* at 9.) Commonwealth urges the Court to allow the discovery of information pertaining to the Settlement Agreements in order to "demonstrate that . . . Mr. Skowrenski was dismissed from this case in exchange for a monetary payment." (*Id.* at 3.)

Commonwealth also asserts that this Court's June 30, 2010 Order sealing the Skowrenski Settlement Agreement from public access is not dispositive as to whether the terms of the Settlement Agreements should be subject to deposition questioning. (*Id.*) Instead, Commonwealth contends that the Court must engage in a balancing test. (*Id.* at 9-10.) Pursuant to this analysis, Commonwealth argues that Plaintiff has not shown any prejudice that would result from the disclosure of the Settlement Agreements' terms that outweigh Commonwealth's interest in undermining the credibility of the Co-Defendants, and/or in establishing an offset to any damages owed after trial. (*Id.*)

Plaintiff vehemently opposes Commonwealth's position. (*See generally* Pl.'s Opp'n Br.) Plaintiff responds to Commonwealth's challenge to Mr. Walsh's and the Co-Defendants' credibility by stating that "it is offensive that Commonwealth would suggest, without *any* evidence, such dishonest conduct." (Pl.'s Opp'n Br. 1.) In stark contrast to Commonwealth's contention, Plaintiff explains that Mr. Walsh did not "flip[]" positions; rather he was merely uncertain about whether Mr. Skowrenski was involved in the frauds at issue in this case. (Pl.'s Opp'n Br. 2.) Therefore, his deposition responses do not undermine his credibility. (*Id.*) Further, Plaintiff asserts that there is no support in the record for Commonwealth's contention that Mr. Alfieri "flipped," particularly since neither counsel for Plaintiff nor Commonwealth ever "spoke [directly] to Mr. Alfieri," and Mr. Alfieri's counsel have "maintained that Mr. Alfieri's testimony has never changed throughout the litigation." (*Id.*)

12

Plaintiff also disagrees with Commonwealth's assertion that the Fourth Amended Complaint contains "very specific allegations" against Co-Defendants Alfieri and Skowrenski. (*Id.*) Specifically, Plaintiff notes that it sought to "make it unquestionably clear that nothing in the Fourth Amended Complaint asserted new allegations against the settling [Co-Defendants]." (*Id.*) Rather, it was Commonwealth and the other defendants that urged the continued inclusion of Co-Defendants in this matter's caption because of the cross-claims asserted by the title companies. (*Id.*) Thus, Plaintiff counters that the specificity of the allegations in the Fourth Amended Complaint, and any corresponding inferences, were a product of Defendants' own insistence. (*Id.*)

As a threshold matter, Commonwealth correctly notes that the Court's June 30, 2010 Order is not dispositive. As such, Commonwealth is not necessarily precluded from discovering the information in the Settlement Agreements merely because this Court has sealed the document. However, the Court finds that Commonwealth has not provided adequate support for its contention that the confidential terms of the Settlement Agreements should be disclosed in order to demonstrate bias. Any inference that is created by the mere existence of a settlement agreement is a collateral effect of every settlement agreement entered into in cases involving both settling and non-settling defendants. Such a potential inference does not amount to good cause sufficient to render confidentiality provisions of the Settlement Agreements meaningless. Moreover, Defendants can still make and/or argue inferences irrespective of whether they are aware of the specific terms of the Settlement Agreements.

Similarly, Commonwealth's arguments supporting disclosure to gather information bearing on Plaintiff's and Co-Defendants' credibility are also unpersuasive based on the facts as presented. First, the Fourth Amended Complaint included the Co-Defendants at the behest of

Commonwealth and other defendants; Plaintiff originally omitted them from the caption. (Pl.'s Opp'n Br. 2.) Second, Mr. Skowrenski's deposition testimony that he did not know anything about his previous attorney's 1997 statements, combined with Commonwealth's other assertions, is insufficient to persuade the Court that disclosure of the confidential Settlement Agreements is warranted.

Finally, as Commonwealth seeks disclosure of the Settlement Agreements to learn the monetary amounts paid out under the Settlement Agreements in order to offset any potential damages that it would owe after a trial were completed and judgment entered, the Court is not persuaded that disclosure of the terms is appropriate at this juncture. Therefore, after a careful consideration of the arguments set forth by counsel, Defendants' motion is denied without prejudice.

### III. CONCLUSION

For the foregoing reasons, and for good cause shown:

1. Plaintiff's request that Defendants destroy or return the Interview Memoranda is GRANTED without prejudice; and
2. Defendant Commonwealth's motion to compel deposition testimony regarding the Settlement Agreements is DENIED without prejudice.

        s/ Michael A. Shipp
**HONORABLE MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**