# EXHIBIT B

Donna Sullivan

Page 1

```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW JERSEY
                    Civil Action No.
                    97-cv-3496 (DRD) (MAS)

WALSH SECURITIES, INC.,          :
                                 :
          Plaintiff,             :
                                 :
     vs.                         :   DEPOSITION OF:
                                 :   DONNA SULLIVAN
CRISTO PROPERTY MANAGEMENT,
LTD., a/k/a G.J.L. LIMITED;
OAKWOOD PROPERTIES, INC.;
NATIONAL HOME FUNDING, INC.;
CAPITAL ASSETS PROPERTY
MANAGEMENT & INVESTMENT CO.,
INC.; CAPITAL ASSETS PROPERTY
MANAGEMENT, L.L.C.; WILLIAM
KANE; GARY GRIESER; ROBERT
SKOWRENSKI, II; RICHARD CALANNI;
RICHARD DiBENEDETTO; JAMES R.
BROWN; THOMAS BRODO; ROLAND
PIERSON; STANLEY YACKER, ESQ.;
MICHAEL ALFIERI, ESQ.; RICHARD
PEPSNY, ESQ.; ANTHONY M.
CICALESE, ESQ.; LAWRENCE CUZZI;
ANTHONY D'APOLITO; DAP
CONSULTING INC.; COMMONWEALTH
LAND TITLE INSURANCE CO.;
NATIONS TITLE INSURANCE OF
NEW YORK, INC.; FIDELITY
NATIONAL TITLE INSURANCE CO.
OF NEW YORK, INC.; COASTAL
TITLE AGENCY; DONNA PEPSNY;
WEICHERT REALTORS; and VECCHIO
REALTY, INC., d/b/a MURPHY
REALTY BETTER HOMES AND
GARDENS                          :
          Defendants.            :
                                 :
     - - - - - - - - - - - - -
```

Donna Sullivan

Page 2

1       TRANSCRIPT of the stenographic notes of
2  the proceedings in the above-entitled matter, as
3  taken by and before JANET BAILYN, a Certified
4  Shorthand Reporter and Notary Public of the State of
5  New Jersey, held at the office of STONE & MAGNANINI,
6  150 John F. Kennedy Parkway, Short Hills, New Jersey,
7  on September 27, 2011, commencing at 10:05 in the
8  forenoon.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Donna Sullivan

Page 104

1   they had not been received anything from Coastal in a
2   while I think they would send the agency rep down
3   there to see -- Coastal would make copies of the
4   policies and put them in a box for whatever
5   underwriter that they were writing for or something.
6   You know, this is what I've been told, and that our
7   representative would go down and pull the Fidelity
8   policies out of the box and write the remittance
9   information and then I guess Bob would cut them a
10  check.
11       Q.    Now, you had stated before that you
12  weren't able to find a company claims manual for the
13  '96, '97 period of time?
14       A.    Right.
15       Q.    Was there a corporate policy to set a
16  reserve on claims?
17       A.    I don't have any regulations.  I mean I
18  don't have anything that was instructive to the
19  claims people at that time.
20       Q.    Was there a reserve set by Nations on
21  this claim?
22       A.    I don't recall if there was -- I think
23  at some point there were some reserves on files.
24       Q.    Presently you know --
25       A.    I don't know if it was set by Nations.

Donna Sullivan

Page 105

1  I don't know at what point it was set.
2      Q.    I don't know how to ask this next
3  question because I'm not sure -- do you know: At any
4  point in time were there two separate reserves,
5  whether there was one for Walsh's claims against
6  Fidelity and Walsh's claims against Nations?
7      A.    I think, yes, the claims -- they opened
8  a couple of claim files and they opened -- and then
9  they would put several Coastal files into each claim,
10 but they were breaking them down as to underwriter
11 and policy year and agent because they were trying to
12 keep the like ones together so that they could
13 distinguish which entities would be incurring the
14 expense or the loss.
15     Q.    So it sounds like there are multiple
16 reserves?
17     A.    I don't know that there are today but
18 there were multiple files opened, and I believe there
19 may have been multiple reserves at one time.
20     Q.    Was that done by Nations or you're not
21 sure?
22     A.    Again, since the companies were really
23 being operated by the same, you know, parties -- I
24 mean --
25     Q.    So by the time the claims rolled in, by

1  the time --
2       A.    To the extent that the claim was opened
3  by Nations' policies, I guess you would be saying it
4  was a Nations reserve, and if the claim was opened on
5  Fidelity, then the reserve would be against Fidelity.
6       Q.    At any point were those reserves rolled
7  into a single reserve?
8       A.    Looks like to me the researches are in
9  one file today.  I'm not sure when or how that
10 happened.
11      Q.    When you say reserves are in one file,
12 does that mean there's a reserve for all of Walsh's
13 claims, a single reserve, or are there still multiple
14 reserves?
15      A.    Well, there's expense and loss reserves.
16      Q.    Okay.  Was it customary for the company
17 to set up reserves on claims?
18      A.    Yeah, I would say that you would usually
19 set a reserve.  Obviously you set an expense reserve
20 based on anticipated cost and loss on anticipated --
21 you know, or what you thought could be the exposure,
22 you know, there's kind of an art, you know.
23      Q.    What about major claims?  Are reserves
24 set on all major claims?
25      A.    I mean, if you think there's going to be

Donna Sullivan

Page 107

1  no loss you probably have zero loss reserve. If
2  you're going to have if you're in litigation, you're
3  necessarily going to have an expense reserve.
4       Q.    Is there a loss reserve for this case?
5       A.    Yes.
6       Q.    What is the amount?
7             MR. HAYES: Object. And instruct you
8  not to answer. Work product. You're not entitled to
9  it.
10            MR. MEE: Okay. I am asking for the
11 fact of the amount of the reserve. I'm not asking
12 for any communications that you and your client may
13 have had as dealing with how to calculate that
14 amount.
15            MR. HAYES: Same objection. You're not
16 entitled to that information in my opinion under New
17 Jersey law.
18            MR. MEE: I think we're going to have to
19 call the judge.
20            MR. HAYES: You're going to have to.
21            MR. MEE: Off the record until we get
22 that set up.
23            (A discussion takes place off the
24 record).
25      Q.    Did you review any particular properties