

**McCARTER & ENGLISH**
ATTORNEYS AT LAW

October 5, 2011

David R. Kott
Partner
T. 973.639.2056
F. 973.624.7070
dkott@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

VIA ELECTRONIC FILING & REGULAR MAIL

Honorable Michael A. Shipp
Magistrate Judge
U.S. District Court, District of New Jersey
Martin Luther King Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

Re: <u>Walsh Securities, Inc. v. Cristo Property Management, et al.</u>
United States District Court for the District of New Jersey
Civil Action No. 97-3496 (DRD/MAS)

Dear Judge Shipp:

We represent defendant/third-party plaintiff Commonwealth Land Title Insurance Company ("Commonwealth") in this case. As Your Honor ordered during the telephone conference regarding the September 28, 2011 deposition of Donna Sullivan, Esq., this letter brief addresses the open discovery dispute as to whether plaintiff may question Ms. Sullivan regarding the amount of the loss reserve set by the "Title Defendants" (comprised of Commonwealth, Nations Title Insurance Co. of New York ("Nations") and Fidelity National Title Insurance Co. of New York ("Fidelity")). It the position of the Title Defendants that testimony regarding the amount of the loss reserve is irrelevant and protected by the work product doctrine. We have been informed by Edward Hayes, Esq., attorney for Fidelity and Nations, that he joins in this letter brief.

**I.      Background of the Discovery Dispute**

Last month, Ms. Sullivan testified as a representative of Commonwealth, Nations and Fidelity in accordance with Federal Rule of Civil Procedure 30(b)(6). Plaintiff's counsel asked her if a reserve had been set by the title insurers with regard to this matter. She testified that a reserve had indeed been set and it was set by certain in-house attorneys. The plaintiff then asked for the amount of the reserve. Ms. Sullivan was instructed not to answer based upon privilege. Counsel's objection gave rise to the discovery dispute herein.

ME1 12321793v.1

Honorable Michael A. Shipp
October 5, 2011
Page 2

## II.     Discussion and Analysis

The Title Defendants' loss reserve information is
protected by the work product doctrine
and is not discoverable under these circumstances

The work product doctrine unquestionably protects testimony regarding the amount of the loss reserve set by the Title Defendants.  In relevant part, Rule 26(b)(3) states that:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, *the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.*

(emphasis added).  Attorney work product in general enjoys "qualified immunity from discovery" but the doctrine does provide "absolute protection" for "[t]he mental impressions, conclusions, or legal theories of a party's attorney . . . and disclosure cannot be compelled upon a showing of undue hardship." *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 422 (D.N.J. 2009) (citing *In re Cendant Corp. Litigation.*, 343 F.3d 658, 662-63 (3d Cir. 2003)).

When an insurance company sets a loss reserve, it reflects an assessment of the value of a claim, specifically considering the financial impact of an adverse judgment. *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., et al.* 139 F.R.D. 609, 613 (E.D. Pa. 1991). The insurance industries' multitude of purposes and methodologies for setting loss reserves have made the inquiries into their protection as work product dependent on the specific circumstances surrounding the dispute. Not surprisingly, reserves set by an attorney or directly based on the opinions of counsel are almost uniformly held to be protected as work product.  See, *Rhone-Poulenc*, 139 F.R.D. at 614  ("The individual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim. By their very nature they are prepared in preparation of litigation, and consequently, they are protected from discovery as opinion work product."); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401-02 (8th Cir. 1987) ("[I]ndividual case reserve figures reveal

Honorable Michael A. Shipp
October 5, 2011
Page 3

the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim" and are protected opinion work product); *Certain Underwriters at Lloyds, London v. Fidelity and Casualty. Ins. Co. of New York*, 1998 WL 142409, 2 (N.D.Ill.,1998) ("[R]eserve recommendations, in this case, do reveal attorney mental impressions, thoughts, and conclusions since the reserve figures were calculated only after an attorney acting in his legal capacity carefully determined the merits and value of the underlying case."); *Sundance Cruise Corp. v. American Bureau of Shipping*, No. 87 Civ. 0819(WK), 1992 WL 75097 *1 (S.D.N.Y. Mar. 31, 1992)("[T]o the extent reserves are 'an indication of potential liability' by insurers, as argued by plaintiffs, they might be based in large part upon the opinions of counsel and would, therefore, be protected from disclosure.").

Here, as specifically stated by Ms. Sullivan, the Title Defendants' loss reserves are set directly by in-house attorneys, who calculate the amount based on a risk analysis. This analysis takes into consideration the facts of the claim as they stand after the commencement of litigation. The facts are gleamed from a preliminary investigation and the pleadings. The reserve amount reflects the attorneys' assessment of the overall economic cost of the litigation. As the court stated in *Rhone-Poulenc*, by raising the work product doctrine to apply to loss reserves, the court is asked "to protect the mental processes that go to the essence of the lawyer's expertise—establishing the value of a legal claim and the fees and expenses that may be incurred in its defense. . . it is one of the more challenging and difficult tasks a lawyer confronts." 139 F.R.D. at 614. Allowing plaintiff to discover the amount of a loss reserve would provide direct insight into the Title Defendants' internal evaluation of the case. It is precisely this information, so clearly a culmination of an attorney's mental impressions, conclusions, opinions, and legal theories, that the work product doctrine is meant to protect.

### III. Conclusion

Donna Sullivan's anticipated testimony about the amount of the loss reserves in place by the Title Defendant's is precisely the type of information that is absolutely protected by the work product doctrine, and is irrelevant. We respectful request that your Honor sustains our objection to counsel's line of questioning regarding the amount in reserve.

Respectfully Submitted,

/s/

David R. Kott, Esq.

cc: Robert A. Magnanini, Esq. (via electronic filing & email)
    Edward J. Hayes, Jr., Esq. (via electronic filing & email)