# STONE ◼ MAGNANINI
## LLP

COMPLEX COMMERCIAL LITIGATION

NEW JERSEY OFFICES    150 JFK Parkway, Short Hills, NJ 07078    P 973.218.1111    F 973.218.1106

October 11, 2011

**VIA CM/ECF and FEDERAL EXPRESS**

Honorable Michael A. Shipp, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey 07101

      Re:    *Walsh Securities, Inc. v. Cristo Property Management, LTD, et al.*
             Civil Action No. 97-3496 (DRD/MAS)

Dear Judge Shipp:

      This firm represents plaintiff Walsh Securities, Inc. ("Plaintiff" or "WSI") in the above-referenced matter. Please accept this response pursuant to the Court's instruction during the September 27, 2011 teleconference. The issue before the Court is whether defendants Commonwealth Land Title Insurance Company ("Commonwealth"), Nations Title insurance Co. of New York ("Nations") and Fidelity National Title Insurance Co. of New York ("Fidelity") (collectively, the "Title Insurance Defendants") must respond to Plaintiff's questioning about their reserves for this case.

      Despite the Court's request, the Title Insurance Defendants have not indicated exactly *who* set the reserves, *when* they were set, or *why* they were set – all of which is information that is solely in their possession. *See Conoco, Inc. v. United States DOJ*, 687 F.2d 724, 730 (3d Cir. 1982) ("The burden of demonstrating that a document is protected as work-product rests with the party asserting the doctrine.") Indeed, Ms. Sullivan's testimony only indicates that several reserves were set and revised at various times by various individuals. The Court further requested information about whether the Title Insurance Defendants are publicly traded companies, which Defendants also failed to address. Fidelity, which now owns Commonwealth and Nations, is a publicly traded company that reports certain information about its reserves in its annual disclosures. (*See* Ex. D, Relevant Portions of Fidelity's Form 10-K, dated Dec. 31, 2010, at 5-6; 57-58).[1] Moreover, Fidelity is required by state insurance laws to set these reserves. *See, e.g., North River Ins. Co. v. Greater N.Y. Mut. Ins. Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995) (noting the New York and Pennsylvania statutes); *see also* N.J.S.A. § 17:46B-18.

---

[1] The exhibits referenced herein follow those submitted with Plaintiff's moving brief. Additional exhibits are attached hereto and identified in the same order.

Hon. Michael A. Shipp
October 11, 2011
Page 2 of 6

To be clear, Plaintiff is not seeking communications or work product. How much the Defendants reserved for this litigation is an issue of fact that pertains to WSI's bad faith claim. The information is relevant to whether the Defendants acted in bad faith (a) during their investigation of WSI's claims; (b) the failed mediation and settlement negotiations in this case; and more recently, (c) in the course of the settlement with Coastal Title Agency and their subsequent position that they are entitled to all of the proceeds of that settlement despite having zero losses; and (d) their actions in light of the bankruptcy matters of WSI and its President, Robert Walsh.

## ARGUMENT

**A.     *The Federal Rules of Civil Procedure and Relevant Caselaw Allow Discovery of the Title Insurance Defendants' Reserves.***

Rule 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Notwithstanding the Title Insurance Defendants' reliance on some pre-amended version of Rule 26(b)(3),[2] there can be no dispute that the Rules allow questioning about underlying facts in a case. The reserve amount is a fact of this case that is relevant of whether the Title Insurance Defendants acted in bad faith during the course of this litigation.

Courts that have considered the discovery of reserve information when confronted with bad faith claims have roundly held that the information is both probative and discoverable. *See, e.g., North River Ins. Co. v. Greater N.Y. Mut. Ins. Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995); *U.S. Fire Ins. Co. v. Bunge North America, Inc.*, 244 F.R.D. 638, 645 (D. Kan. 2007) (amount in reserves "could, at least, lead to admissible evidence relating to . . . their good or bad faith in handling and investigating . . . claims."); *Culbertson v. Shelter Mut. Ins. Co.*, No. 97-1609, 1998 U.S. Dist. LEXIS 16932, at *2-3 (E.D. La. Oct. 21, 1998); *Consugar v. Nationwide Ins. Co. of Am.*, No. 10-2084, 2011 U.S. Dist. LEXIS 61756, at *15-16 (M.D. Pa. June 9, 2011) ("a comparison between the reserve value of the claim and defendant's actions in processing plaintiff's claim could shed light on defendant's potential liability."); *Maiden Creek T.V. Appliance, Inc. v. General Casualty Ins. Co.*, No. 05-667, 2005 U.S. Dist. LEXIS 14693, at *6 (E.D. Pa. July 21, 2005); *Forcucci v. U.S. Fidelity & Guar. Co.*, 817 F. Supp. 195 (D. Mass. 1993); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 117 (N.D. Ga. 1972) ("The information sought . . . is relevant to the question of the good or bad faith of defendant in denying the claim."); *First Nat'l Bank v. Lustig*, No. 87-5488, 1993 U.S. Dist. LEXIS 14128, at *2 (E.D. La. Oct. 4, 1993) ("Reserve information is relevant to show the insurer's state of mind in relation to its claims settlement practices."); *Champion Int'l Corp. v. Liberty Mut. Ins. Co.*, 128 F.R.D. 608, 611-12 (S.D.N.Y. 1989); *National Union Fire Ins. Co. v.*

---

[2] Although the substance of the Rule remains largely the same, Plaintiff is unable to discern exactly what version of the Federal Rules of Civil Procedure that the Defendants actually cited in their brief. The Rules have been amended three times in the last five years, but clearly they failed to cite to the operative Rule.

*Continental Illinois Group*, 1988 U.S. Dist. LEXIS 7826, 4-5 (N.D. Ill. July 21, 1988); *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100 (N.D. Cal. 2006); *Cent. Ga. Anesthesia Servs., P.C. v. Equitable Life Assur. Soc'y of the United States*, No. 06-25, 2007 U.S. Dist. LEXIS 53791, at *6 (M.D. Ga. July 25, 2007) ("The overwhelming majority of courts . . . find reserves discoverable, especially in cases involving bad faith claims").

      **B.**    ***Reserve Information is Probative and Discoverable Under Plaintiff's Bad Faith Claims.***

All of the cases cited by Defendants are silent on the topic of discovery of reserve information as it relates to bad faith claims. In fact, all but one were decided several years before *North River* and *Consugar* – cases that are on point with the issues presented here. Defendants' meager analysis is unpersuasive.[3]

The *North River* court analyzed a discovery dispute among two insurance carriers and the payment of a personal injury suit. *North River*, 872 F. Supp. 1411. The plaintiff, as the assignee of the insured's claims, argued that the defendant refused in bad faith to settle the personal injury action within its policy limits thereby resulting in a $5 million verdict. *Id.* Similarly, WSI contends that the Title Insurance Defendants refused to settle in bad faith. The plaintiff sought documents relating to the defendant's reserves, as WSI has done here. The court observed that "[o]ne of the major issues . . . is whether [the defendant] acted in bad faith in not settling the . . . case within its $1 million policy limits before trial." *Id.* at 1412. After noting that state insurance law generally requires insurance companies to set aside reserves upon notice of potential losses under their policies, it held that the information sought was "relevant to the question of whether or not [the defendant] acted in bad faith during the pretrial settlement negotiations." *Id.* The Court should grant WSI's request for the same reasons.

In *Consugar v. Nationwide Ins. Co. of Am.*, the court also analyzed the request for reserve information under a bad faith claim. *Consugar*, 2011 U.S. Dist. LEXIS 61756. The plaintiff was involved in an auto accident and sought her insurer's underinsured motorist coverage. Plaintiff's attorney provided medical records and other information to help evaluate the claim. *Id.* at *2. The defendant did not make plaintiff an offer, and the plaintiff had to bring suit alleging that that the denial of coverage was in bad faith. The defendant then refused to produce relevant information and objected on various grounds. *Id.* at *3. This scenario is similar to that faced by

---

[3] Defendants primarily rely on *Rhone-Poulenc, Inc. v. Home Indem. Co.*, 139 F.R.D. 609 (E.D. Pa. 1991). That case dealt with the discovery of written materials pertaining to reinsurance agreements that the court had deemed tenuous to the underlying litigation and to which the plaintiffs were not parties. To their detriment, Defendants also rely on *Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987). The *Simon* court actually held that the work product doctrine *did not* block risk management documents that identify the aggregate reserve information pertaining to approximately forty products liability suits and that it *was* discoverable even absent a claim of bad faith. Both the *Lloyd's* and *Sundance* courts reviewed specific documents. No documents are at issue in this case; rather, only testimony is sought regarding a fact that is relevant to Plaintiff's claim of bad faith.

WSI. Among other discovery disputes, the court granted the plaintiff's demand for the reserve amount, holding that "[s]ince plaintiff here claims that defendant acted in bad faith, a comparison between the reserve value of the claim could shed light on defendant's potential liability." *Id.* at *15.

In short, courts generally allow discovery of reserve information when confronted with bad faith claims such as the ones at issue in this case. Similar to the claims made by the plaintiffs in *North River* and *Consugar*, WSI contends that the Title Insurance Defendants have acted in bad faith by not properly investigating WSI's claims, by not settling or even taking a position on coverage over the past 14 years, and by disrupting the Coastal settlement purely for strategic advantage. If the Title Insurance Defendants are found liable, then evidence that the Defendants adjusted their reserves during these critical periods would tend to show that they were motivated by avoiding coverage rather than by the validity of WSI's claims, as these courts recognized.

      C.    *Testimony About the Title Insurance Defendants' Reserves is Not Protected by Any Privilege.*

The work product doctrine does not attach to testimony about facts of a case. *See LaBrecque v. Sch. Admin. Dist. No. 57*, 463 F. Supp. 2d. 88, 96 (D. Me. 2006). Even if it did, it is well established that documents prepared in the ordinary course of business, as they were here, are not protected. The question is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979) (emphasis added) (citing 8 C. Wright and A. Miller, Federal Practice and Procedure § 2024, at 198 (1970)). The Title Insurance Defendants have not met their burden of establishing a work product privilege. *Conoco*, 687 F.2d at 730. Documents prepared during the course of litigation are not immune from discovery unless they reflect a legal strategy or an attorney's mental impressions; underlying facts such as those sought by WSI are not protected. *Ford Motor Co. v. Edgewood Props.*, 257 F.R.D. 418, 422-23 (D.N.J. 2009). In fact, even opinion work product may be discoverable. *E.g., Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) ("[i]n a bad faith insurance claim settlement case, the 'strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue.'")

The Title Insurance Defendants were required by law to prepare reserves for this case. *See, e.g.,* NY CLS Ins § 1303 (2011); 40 Pa. Stat. Ann. § 112. *See also* N.J.S.A. § 17:46B-18 ("Each domestic title insurance company shall at all times establish and maintain . . . a reserve (1) [a]gainst unpaid losses, and (2) against loss expense, and shall calculate such reserves by making a careful estimate in each case of the loss and loss expense likely to be incurred, by reason of every claim presented, pursuant to notice from or on behalf of the insured, of a title defect in or lien or adverse claim against the title insured, that may result in a loss or cause expense to be incurred for the proper disposition of the claim. . . .") As a publicly traded company, Fidelity reports certain information about its reserves in its annual disclosures. (*See, e.g.,* Ex. D at 57-58). Additionally, Ms. Sullivan testified that Fidelity prepares reserves as a

regular course of business. (Ex. B at 106:16-22). Commonwealth did so pursuant to its claims manual, which interestingly is silent as to the involvement of counsel in formulating the reserve. (Ex. A at 226:16-23). Therefore, it can hardly be said that the Title Insurance Defendants set the reserves in anticipation of litigation. It is clear that the Defendants set the reserves based on state law and corporate policy, and then disclosed those reserves in public documents. *See National Union Fire Ins. Co. v. Continental Illinois Group*, 1988 U.S. Dist. LEXIS 7826, at *5 (N.D. Ill. July 21, 1988) (rejecting defendant's work product defense and requiring defendant's General Counsel and Executive Vice-President to answer deposition questions regarding reserves, as "business action taken on the advice of counsel is not immune from discovery merely because it reveals the thoughts of counsel"). Consequently, the amounts of Defendants' reserves are not protected by the work product doctrine because they were not prepared *because of* this litigation.

Even assuming that some of the materials used to make a determination of the reserve amount qualify as work product, the amount is properly discoverable here. How the Title Insurance Defendants handled WSI's claims and their opinions about the case *are* directly at issue. *Holmgren*, 976 F.2d 573. But the Plaintiff has not sought all of that information, only a portion of the information which is needed to assist WSI with determining the mental state with which the Title Insurance Defendants approached its case, and to determine whether and how their claims were evaluated, and if the Defendants refused to settle because of a corporate policy or because of some bias. There is simply no other source for this information.

The Title Insurance Defendants have not overcome their burden of showing that this information is protected. *Conoco*, 687 F.2d at 730. It is clearly relevant to the issue of the Title Insurance Defendants' bad faith, and the information was prepared because of corporate policy and state law, *not* because of this litigation. Accordingly, their objections should be rejected and the information should be produced.

### D.   *Defendants Waived Any Attorney-Client Privilege Arguments.*

Defendants did not address the issue of attorney-client privilege, likely because they realize that "[t]he protection of the privilege extends only to communications and not to facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). Or, perhaps they recognized that the information that they seek to protect is inherently commingled with their business activity, and that the privilege "does not protect nonlegal communications based on business advice given by a lawyer." *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y. 1988). Regardless of their reasons, they have waived the argument and the Court should reject any attempt to raise it now.

### Conclusion

The Title Insurance Defendants' attempt to shield information that addresses their bad faith in this case should be rejected. Both the Federal Rules of Civil Procedure and the relevant caselaw support this conclusion. Moreover, the Title Insurance Defendants have not overcome their burden of persuasion; they have simply slapped together three lines of argument sandwiched between inapposite string citations. Moreover, the Title Insurance Defendants have not provided any citations to the testimonial record or affidavits that would support their claims.

  Of course, this is a discovery matter and the Title Insurance Defendants would obviously remain free to argue at trial that the reserve amount is inadmissible. *See* Fed. R. Civ. P. 26(b)(1) ("Relevant information need not be admissible at the trial"). However, the information sought is pertinent to its claim that the Title Insurance Defendants acted in bad faith in their review and investigation of WSI's demand for coverage, and by their continuous stonewalling tactics. Accordingly, we respectfully request that the Court overrule all of the Title Insurance Defendants' objections as to loss reserves and allow Plaintiff to continue the depositions of their Rule 30(b)(6) witness.[4]

                Respectfully submitted,

                Robert A. Magnanini

cc: David R. Kott, Esq. (via electronic filing)
   Edward J. Hayes, Esq. (via electronic filing)

---

[4] As the Court is aware, Defendants' counsel broadened their objections to also cover other facts that are not covered by the work product doctrine or the attorney-client privilege. Those questions concerned the authority that certain employees had to set the amount of the reserves. For the same reasons as stated above, the Court should reject those objections as well.