

**McCARTER & ENGLISH**
ATTORNEYS AT LAW

October 11, 2011

VIA ELECTRONIC FILING & REGULAR MAIL

Honorable Michael A. Shipp
Magistrate Judge
U.S. District Court, District of New Jersey
Martin Luther King Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ  07102

David R. Kott
Partner
T. 973.639.2056
F. 973.624.7070
dkott@mccarter.com

Re:  Walsh Securities, Inc. v. Cristo Property Management, et al.
     United States District Court for the District of New Jersey
     Civil Action No. 97-3496 (DRD/MAS)

Dear Judge Shipp:

We represent defendant/third-party plaintiff Commonwealth Land Title Insurance Company ("Commonwealth") in this case.  Please accept the following letter brief in reply to Plaintiff's October 5, 2011 submission on behalf of the Title Defendants regarding the pending discovery dispute.  We have been informed by Edward Hayes, Esq., attorney for Fidelity and Nations, that he joins in this letter brief.

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102-4056
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

I.     **Discussion and Analysis**

The work product privilege does apply
to intangible things asked about at a deposition.

Contrary to plaintiff's assertion, the work product privilege may be invoked at deposition to protect intangible work product that is sought through deposition questions.  See *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 691 (E.D. Pa. 1986)("[A]lthough Federal Rule of Civil Procedure 26(b)(3) applies only to "documents and tangible things," the principles announced in *Hickman* protect the intangible work product which may be sought through deposition questions."); see also, *Ford v. Philips Elec. Instruments Co.*, 82 F.R.D. 359, 360 ( E.D. Pa. 1979) (work product protection applies to discovery sought through a deposition; although Rule 26(b)(3) applies to "documents and tangible things," "[ t]he Rule in no way implies that mental impressions not embodied in documents are otherwise discoverable."); *U.S. Info. Sys., Inc. v. IBEW Local Union No. 3*, 00 Civ. 4763, 2002 U.S. Dist. LEXIS 19363, at *18-* 19 (S.D.N.Y. Oct. 11, 2002) (noting that intangible work product "is immune from discovery just as if it had been reduced to writing"; otherwise, "the protection of Rule 26(b)(3) could itself be thwarted if instead of obtaining work product documents created by an attorney, the adversary could simply obtain the same information by deposing the attorney."); cf. *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (work product immunity protected discovery as to

counsel's thought processes in selecting and organizing documents to prepare a witness for deposition, even though the individual documents were not work product). Specifically, "a deponent in the course of a deposition may not be asked questions that would reveal expressly his or his lawyer's mental impressions conclusions, opinions, or legal theories concerning the instant litigation." *Hydramar, Inc. v. General Dynamics Corp.*, 119 F.R.D. 367,372 (E.D.Pa. 1988). Here, the plaintiff seeks to do just that: counsel inquired as to the amount of loss reserves set by the Title defendants, a calculation set by in-house attorneys as to their evaluation of the case. *See Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., et al.* 139 F.R.D. 609, 613 (E.D. Pa. 1991)(stating that a loss reserve reflects an assessment of the value of a claim, specifically considering the financial impact of an adverse judgment).

An Insurance loss reserve is a calculation of possible <u>risk, not an underlying fact.</u>

Plaintiff tries to sidestep the application of the work product doctrine to Ms. Sullivan's anticipated testimony by claiming that the loss reserve figure is an "underlying fact" and therefore not protected. However, it is precisely the individual case reserve amount that has been uniformly protected under the work product doctrine as it reveals the mental impressions, thoughts and conclusions of an attorney. *See*, e.g. *Rhone-Poulenc*, 139 F.R.D. at 614 ("The individual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim. By their very nature they are prepared in preparation of litigation, and consequently, they are protected from discovery as opinion work product."); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401-02 (8th Cir. 1987) ("[I]ndividual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim" and are protected opinion work product).

Plaintiff cites to *Ford Motor Company v. Edgewood Properties*, for the proposition that "underlying facts" are not protected by the work –product doctrine. 257 F.R.D. 418, 422 (D.N.J. 2009). The facts of *Ford* are completely distinguishable from the case within. In *Ford*, the defendant sought to protect a third-party witness affidavit as attorney work-product, as it was prepared by an attorney in anticipation of litigation. The defendant sought to withhold the affidavit on the theory that an attorney had "cherry-picked" which facts to put into the affidavit, therefore the document revealed the mental impressions of counsel. The court understandably rejected this argument, noting that "attorneys frequently work with witnesses to prepare their statements, and an attorney's choice to confine testimony to certain areas is inherent in their preparation." *Id.* at 423. After an in camera review of the affidavit, the court concluded that the affidavit contained a recitation of facts within the ken of the witness, rather than the mental impressions or legal theories of counsel. *Id.* at 422-423. However, here, the plaintiff does not seek to uncover which underlying facts were used by counsel to calculate the loss reserve, but the amount

Honorable Michael A. Shipp
October 11, 2011
Page 3

of the loss reserve itself. This is inherently the in-house attorney's opinion of the ultimate value of the case.

The plaintiff goes on to blatantly mischaracterize the holding in *Ford,* stating that the Court held:

> [E]ven when an attorney adds their conclusions to a discussion that produces an underlying fact, even where an attorney contributes to the bottom line business decision that generates a business judgment, that calculation that fact and that judgment are not all protected by the work product"

and that this Court has agreed. Plf. Ltr. Brief, p. 10. It is true that this Court has cited *Ford* favorably; however, both *Ford* and *Kane* deal with the admissibility of third-party witness affidavits that were prepared by attorneys. *See e.g. Kane v. Mfrs. Life Ins. Co.,* No. 08-4581, 2010 U.S. Dist. LEXIS 52525, at *26-27(D. N.J. May 26, 2010). The loss reserve numbers for the Title Defendants are set by in-house attorneys. *See* Fidelity Deposition, 48:5-7, 54:1-7, attached to Plf. Ltr. Brief at Exhibit C. The calculation itself is the culmination of the mental processes that go to the "essence of the lawyer's expertise—establishing the value of a legal claim and the fees and expenses that may be incurred in its defense. . . it is one of the more challenging and difficult tasks a lawyer confronts." *Rhone-Poulenc,* 139 F.R.D. at 614. To call the loss reserve an "underlying fact" not protected by the work-product doctrine is to miss the point: the number itself is the culmination of the attorney's mental processes as to the ultimate costs of the case. It is not a fact akin to "the traffic light was red" but rather a legal assessment akin to "if the traffic light was red, what are my client's possible exposure and expenses?"

The loss reserve amount was not communicated to any attorney;
<u>it was created by an attorney.</u>

The Title Defendants agree that the loss reserve amount is not protected under the attorney-client privilege as a communication; nor is it protected as a fact communicated to an attorney. The loss reserve amount was not set by a claims administrator based on communications with an in-house attorney; it was set by an in-house attorney himself, based on his own evaluation of the case. Whether communications with outside counsel influenced the amount of the reserve are irrelevant—it is the numeric amount that encompasses the attorney's assessment of the risk. It is this amount that is protected by the work-product doctrine, not the attorney client privilege. *See Rhone-Poulenc* and *Simon, supra.*

ME1 12365554v.1

Honorable Michael A. Shipp
October 11, 2011
Page 4

### The loss reserve amount is irrelevant to plaintiff's claims.

To the extent the Court wishes to address the relevancy of the loss reserve information, the Title Defendants assert that the amount of the loss reserve is not relevant in this first-party coverage litigation. By definition, a loss reserve is an evaluation of the potential liability for a particular claim; it does not involve an assessment of coverage. *Leksi, Inc. v. Federal Ins. Co.* 129 F.R.D. 99, 106 (D.N.J.1989). For that reason, courts have consistently held that information concerning loss reserves is irrelevant in first party coverage suits, as the information will not lead to admissible evidence. For example, in *American Protection Insurance Co. v. Helm Concentrates, Inc.,* the court held that reserve information was not discoverable, reasoning that "the policy either provides coverage for the loss or does not, the insurer's good faith is determined by the manner and depth of its investigation and the determination of whether there was a good faith factual and/or legal question as to whether the loss was covered." 140 F.R.D. 448, 450 (E.D. Cal. 1991). Similarly, in *Sundance Cruise Corp. v. American Bureau of Shipping*, the court found reserve information to be irrelevant and distracting:

> [R]eserves are, simply, not relevant. [The insurer's] assessment or its underwriter's assessment or its counsel's assessment of exposure to liability in this or prior cases has nothing to do with whether there is liability. Furthermore, to allow evidence of the amount of reserves set aside for any particular incident would get this trial into mini-litigations over what was in the minds of the persons who set the reserve to uncover why each particular reserve was set (which would likely have depended on various factors besides an assessment of potential liability).

No. 87 Civ. 0819(WK), 1992 WL 75097 *3 (S.D.N.Y. Mar. 31, 1992); *see also* Mirarchi v. Seneca Specialty Ins. Co. 2011 WL 2982401, (E.D.Pa.,2011)("Plaintiff, rather, has information regarding the "factual internal estimates" of his loss by way of estimates provided by the various claims adjusters and appraisers who visited his business. Thus, stripping away Plaintiff's assumption of what loss reserves represent, no argument for the relevance of the amount of the reserves remains"); *Union Carbide Corp. v. Traveler's Indemnity Co.*, 61 F.R.D. 411, 413 (W.D.Pa. 1973) ("The purpose of discovery—expedition of the litigation by narrowing the area of controversy or by avoiding unnecessary testimony or by providing a lead to evidence—will not be served by allowing discovery of reserves."); *Independent Petrochem. Corp. v. Aetna Casualty. & Surety. Co.,* 117 F.R.D. 283, 288 (D.D.C. 1986) (denying motion to compel production of reserve information because of the "very tenuous relevance, if any relevance at all" of that information). Plaintiff has not shown how the loss reserve amount will lead to admissible evidence.

ME1 12365554v.1

Honorable Michael A. Shipp
October 11, 2011
Page 5

## II.  Conclusion

Donna Sullivan's anticipated testimony about the amount of the loss reserves in place by the Title Defendant's is precisely the type of information that is absolutely protected by the work product doctrine. We respectful request that your Honor sustains our objection to counsel's line of questioning regarding the amount in reserve.

Respectfully Submitted,

David R. Kott, Esq.

cc:  Robert A. Magnanini, Esq. (via electronic filing & email)
     Edward J. Hayes, Jr., Esq. (via electronic filing & email)