# EXHIBIT 45

07/11/1996  18:02    1-908-298-2477          ATTORNEYS OFFICE              PAGE  05

## FIDᴵᵀ  TY NATIONAL TITLE
### Insurance Company of New York

### Schedule A

1. Effective Date:  October 11, 1996          File  No. CT-16921

2. Policy or Policies to be issued:                          Policy Amount
   (a) ALTA Residential Policy - (Plain Language)      $    138,000.00

   Proposed Insured:

   DONALD DEVINCENZO


   (b) ALTA Loan Policy                               $    103,500.00

   Proposed Insured:

   NATIONAL HOME FUNDING, INC., its successors and assigns


3. FEE SIMPLE  interest in the land described in this Commitment is owned, at the

   Commitment Date, by  D & Sons Construction Corp.   by deed from  ABC Horizon
   Home Improvements, Inc., dated October 30, 1995, recorded November 20, 1995,
   in the Monmouth County Clerk's/Register's office in deed book 5460, page 92.


4. The land referred to in this Commitment is described in Schedule A-4.


FORM 26-84-82 A (11/93)                                   ALTA COMMITMENT - PLAIN LANGUAGE
                                                          SCHEDULE A, NJRB 3-02 (10-26-82)

WS1 057264

07/11/1996  18:02    1-988-298-2477         ATTORNEYS OFFICE           PAGE  06

**FIDELITY NATIONAL TITLE**
Insurance Company of New York

### Schedule A-4

File No.  CT-16921

All that certain lot, piece of land, with the buildings and improvements thereon
erected, situate, lying and being in the  City of Asbury Park,
County of  Monmouth,        State of New Jersey:

Being known and designated as Lot Part of Lot 279 Block R, on a certain map
entitled "Map of West Asbury Park, Monmouth County, N.J. dated 1886", filed in
the Monmouth County Clerk's Office on September 22, 1887 as map number 53-7.

Said premises being also described as follows:

Beginning at a point in the northerly line of Summerfield Avenue distant
westerly 325.0 feet from the intersection of the northerly line of Summerfield
Avenue with the westerly line of Comstock Street and running thence

1.   along said northerly line of Summerfield Avenue North 65 degrees 30
minutes West 25.0 feet to a point; thence

2.   North 24 degrees 30 minutes east 100.0 feet to a point; thence

3.   South 65 degrees 30 minutes east 25.0 feet to a point; thence

4.   South 24 degrees 30 minutes West 100.0 feet to the point and place of
Beginning.

Being commonly known as Lot 4 Block 58 on the tax map of the City of Asbury
Park.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FORM 26-84-82 A-4(11/93)

ALTA COMMITMENT - PLAIN LANGUAGE
SCHEDULE A-4, NJRB 3-02 (10-26-82

WS1 057265

**FIDℓ  TY NATIONAL TITLE**
Insurance Company of New York

## Schedule B - Section I

File No.  CT-16921

The following requirements must be met:

A.  Documents satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded and properly indexed in the land records.

B.  Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

C.  Pay us the premiums, fees and charges for the policy.

D.  You must tell us in writing the name of anyone not referred to in this Commitment who will make a loan on the land. We may then make additional requirements or exceptions.

E.  Deed made by present owner(s) to the proposed insured(s) named in Schedule A, 1(a).

F.  Mortgage made by purchaser(s) to the proposed insured(s) named in Schedule A, 1(b).

G.  Proof is required as to the past and present marital status of the proposed grantors/mortgagors.

NOTE:  The spouse of the record owner must join in the proposed transaction, unless this is not the principal marital residence and was acquired subsequent to May 28, 1980.  On any property acquired prior to May 28, 1980, the spouse must join in the proposed transaction regardless of whether it is the principal marital residence or not.

H.  All taxes and other municipal liens are to be paid through and including the current quarter.

NOTE: In the event the tax search reveals a senior citizen deduction or a veteran's deduction, a proper escrow must be established to safeguard in the event the deduction is disallowed.  If it is to be disallowed, the deduction should be restored to the taxes when calculating your adjustment.

I.  Municipal Lien and Unconfirmed Assessment searches are attached hereto and made a part hereof. (update ordered; not yet received).

J.  County judgment search is clear.

K.  New Jersey Superior and U.S. District Court judgment search discloses a judgment or judgments which are to be cancelled of record or disposed of by a specific affidavit which is to be submitted.

WSI 057266

L.  Cancellation or other disposition of mortgage made by D & Sons Construction Corp. to Community Home Mortgage Corp., dated October 30, 1995, recorded November 20, 1995, in Mortgage Book 5889, Page 881, in the sum of $ 66,200.00. Said mortgage was assigned by various assignments to Norwest Mortgage Inc. by Assignment of Mortgage Book 762, Page 575. (See copy of first page of Mortgage and Assignment attached.)

M.  Receipt of proper corporate affidavit of title for D & Sons Construction Corp.

N.  Certificate as to corporate resolution authorizing the proposed deed made by the proposed grantor is to be submitted.

O.  Subject to such facts which would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

NOTE:  There is a possibility that the mortgage being insured herein must include one of the following:

a.  Variable Rate Endorsement - Renegotiable or Adjustable.
b.  Negative Amortization Endorsement

There is an additional $25.00 charge for this endorsement and, if Negative Amortization is required, possibly an increase in premium. When this has been determined we are to be notified prior to closing in order to make the necessary amendment to the Title Commitment and our invoice.

NOTE:  This Policy will insure all facsimile copies of endorsements as originals.

NOTE:  The attached ALTA 9 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.  Special comprehensive title protection is afforded by said endorsement to the Mortgagee only.  Affirmative insurance to the Owners can be given on a line by line basis.  Please see Schedule B, Section 2.

NOTE:  The attached ALTA 8.1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  We require a copy of the closing statement be submitted with the closing package.

NOTE:  The attached ALTA 1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  Flood search is attached hereto and is provided as an accomodation only.  No liability is assumed for the results of said flood search.

FORM 26-84-82 BI (11/93)

ALTA COMMITMENT - PLAIN LANGUAGE
SCHEDULE B1, NJRB 3-02 (10-26-82)

WS1 057267

07/11/1996  18:02   1-908-298-2477        ATTORNEYS OFFICE        PAGE  09

**FIDF   ; 7 NATIONAL TITLE**
Insurance Company of New York

### Schedule B - Section II

File No.  CT-16921

Any policy we issue will have the following exceptions unless they are  taken care of
to our satisfaction.

1. Rights  or claims of parties in  possession of the land  not shown by the  public
   records; and encroachments, overlaps or boundary line disputes; and other matters
   any of  which would be  disclosed by a  survey  of  the land  satisfactory  to the
   Company.

2. Any liens on your title, arising  now or later, for labor and material not shown
   by the public record.

3. Taxes, assessments and governmental utility liens as follows:

4. Mortgages of record ( See Schedule B, Section 1 )

5. Subsurface conditions or encroachments not disclosed by an instrument of
   record.  (Owner's Policy Only)

6. Lien for unpaid taxes for the year 1996.

7. Possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et
   seq.

   NOTE:  Policy insures that the alphabetical Indicies have been searched
   through the recording of the Deed and/or Mortgage, and same are properly
   indexed.

8. Subject to rights of the utility company servicing the insured property
   for water, sewer, electric, telephone and cable television.

   NOTE:  Policy insures that said rights are beneficial and appurtenant to the
   insured property and that the dwelling does not encroach on the utility lines
   and said utility lines do not interfere with the use and occupancy of the
   dwelling.

   NOTE:  This policy insures that the mortgage set forth under Schedule A
   hereof is a valid first lien on the property described therein.

FORM 26-84-82 BII (11/93)

ALTA COMMITMENT - PLAIN LANGUAGE
SCHEDULE BII, NJRB 3-02 (10-26-82

WS1 057268

**Fidelity National Title**
INSURANCE COMPANY OF NEW YORK
Two Park Avenue / New York, New York 10016 / (212) 481-5858 / Fax: (212) 481-8747

ICS 5744-10995

Date:  November 06, 1996

To: National Home Funding Inc., its successors and or assigns

Attention: Closing Department

RE: Closing Service Letter
Issuing Agent or Attorney whose conduct is covered:
Stanley Yacker, Esquire

330 Highway 34, Suite 3
Matawan, NJ    07747

File No: CT-16921
Transaction: DONALD DEVINCENZO

Premises: 1127 SUMMERFIELD AVENUE
ASBURY PARK

Dear Customer:

When title insurance of Fidelity National Title Insurance Company of New York is specified for your protection in connection with the closing of the above described real estate transaction in which you are to be a lender secured by a mortgage of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with that closing when conducted by the above named Issuing Agent (an agent authorized to issue title insurance for the Company) of Fidelity National Title Insurance Company of New York or the above named Attorney and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instructions to the extent that they relate to: (a) the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such title or lien; or (b) the collection and payment of funds due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection with a loan secured by a mortgage on a one-to-four family dwelling, which is the principal residence of the borrower, shall be protected, but only to the extent of the foregoing paragraph 2, as if this letter were addressed to your borrower. If you are a purchaser of a one-to-four family dwelling, including a condominium unit, which is your principal residence, and are paying cash for the purchase, you are protected, but only to the extent of the foregoing paragraph 2.

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

SYSW017613

Fidelity CSL -- Page 2

1. Failure of the Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics' and materialmen's liens in connection with a construction loan transaction, except to the extent that protection against such lien is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 2 Park Avenue, New York, N.Y. 10016. When failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F. Liability under this letter is limited to the amount of insurance committed for and is subject to all of the Conditions and Stipulations of the policy or policies committed to be issued by the Company. Any payment of loss under this letter shall constitute a payment under the policy.

THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK.

The protection under this Closing Service Letter is limited to the closing on the premises described in the caption of this Letter.

Fidelity National Title Insurance Company of New York

BY: _____

Robert F. Agel, President
Coastal Title Agency, Inc.
Agent

SYSW017614

# EXHIBIT 46

14/11/1996  12:48    1-908-290-2477         ATTORNEYS OFFICE                    PAGE  17

**TITLE INSURANCE C    PANY**
A Reliance Group Holdings Company

## TITLE INSURANCE COMMITMENT

### SCHEDULE A

Commitment No.

1. Commitment Date:  October 14, 1996          File No.   CT-18760(A)

2. Policy or Policies to be issued:                        Policy Amount

   (a) [ X ] ALTA Residential Title Insurance Policy              $        156,000.00
           One-to-Four Family Residences (6/1/87)
       [   ] ALTA Owner -- (4/6/92)                               $

   Proposed Insured:

   DONALD DEVINCENZO

   (b) [ X ] ALTA Loan Policy                                     $        117,000.00
           (10/17/92)

   Proposed Insured: National Home Funding, Inc., its successors and/or its
                     assigns
                     3443 Highway 9 North
                     Freehold, New Jersey 07728

3. FEE SIMPLE interest in the land described in this Commitment is owned, at the
   Commitment Date, by Cirsto Property Management, LTD   by deed from,  D & M
   Associates, dated        ,  , recorded        ,    , in the Monmouth County
   Clerk's/Register's office in deed book , page (about to be recorded).

4. The land referred to in this Commitment is in the County of Monmouth,
   Township of Neptune, State of New Jersey and is described as follows:

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660, (800) 521-0378, (908) 775-5543, FAX# (908) 308-1881

WSI 026065

14/11/1996  12:48   1-908-298-2477         ATTORNEYS OFFICE              PAGE  18

**COMMONWEALTH LAND**
**TITLE INSURANCE COMPANY**
  **A Reliance Group Holdings Company**

### TITLE INSURANCE COMMITMEN

Commitment No.

File No. CT-18760(A)

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the
Township of Neptune, County of Monmouth and state of New Jersey,
being more  particularly described as follows:

Beginning at a point on the easterly line of Fisher Avenue,
distant southerly along the same 278 feet from the intersection
with the southerly line of Holly Avenue; thence

1.  South 86 degrees 30 minutes 00 seconds East a distance of
149.89 feet to a point; thence

2.  South 03 degrees 38 minutes 15 seconds West a distance of
25 feet to a point; thence

3.  North 86 degrees 30 minutes 00 seconds West a distance of
149.83 feet to a point on the easterly line of Fischer Avenue;
thence

4.  Continuing along the same on a course of North 03 degrees
30 minutes 00 seconds East a distance of 25 feet to the point
and place of Beginning.

NOTE:  Being Lot(s) 188, Block 194, Tax Map of the Township of
Neptune.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660   (800) 521-0378   (908) 775-5543  FAX #(908) 308-1881

WSI 026066

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

**TITLE INSURANCE COMMITMENT**

## SCHEDULE B - SECTION 1

Commitment No.

File No. CT-18760(A

### REQUIREMENTS

The following requirements must be met:

(a) Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

(b) Pay us the premiums, fees and charges for the policy.

(c) Document(s) satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded:

1. Deed made by present owner(s) to the proposed insured(s) named in Schedule A, 2(a).

2. Mortgage made by purchaser(s) to the proposed insured(s) named in Schedule A, 2(b).

(d) You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

(e) Proof is required as to the past and present marital status of the proposed grantors/mortgagors.

NOTE: The spouse of the record owner must join in the proposed transaction, unless this is not the principal marital residence and was acquired subsequent to May 28, 1980. On any property acquired prior to May 28, 1980, the spouse must join in the proposed transaction regardless of whether it is the principal marital residence or not.

(f) All taxes and other municipal liens are to be paid through and including the current quarter.

NOTE: In the event the tax search reveals a senior citizen deduction or a veteran's deduction, a proper escrow must be established to safeguard in the event the deduction is disallowed. If it is to be disallowed, the deduction should be restored to the taxes when calculating your adjustment.

(g) Municipal Lien and Unconfirmed Assessment Searches have been ordered, not yet received.

(h) County judgment search is clear.

(i) New Jersey Superior and U.S. District Court judgment search discloses a judgment or judgments which are to be cancelled of record or disposed of by a specific affidavit which is to be submitted.

WSI 026067

(j) Subject to such facts which would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

(k) Receipt of proper corporate affidavit of title for Cristo Property Management, Ltd.

(l) Certificate as to corporate resolution authorizing the proposed deed made by the proposed grantor is to be submitted.

NOTE:  Flood search is attached hereto and is provided as an accomodation only.  No liability is assumed for the results of said flood search.

NOTE: It is required that a Notice of Settlement be recorded and we require that all searches be rundown prior to closing.

NOTE:  There is a possibility that the mortgage being insured herein must include one of the following:

a.  Variable Rate Endorsement - Renegotiable or Adjustable.
b.  Negative Amortization Endorsement

There is an additional $25.00 charge for this endorsement and, if Negative Amortization is required, possibly an increase in premium. When this has been determined we are to be notified prior to closing in order to make the necessary amendment to the Title Commitment and our invoice.

NOTE:  This Policy will insure all facsimile copies of endorsements as originals.

NOTE:  The attached ALTA 9 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.  Special comprehensive title protection is afforded by said endorsement to the Mortgagee only.  Affirmative insurance to the Owners can be given on a line by line basis.  Please see Schedule B, Section 2.

NOTE:  The attached ALTA 8.1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  We require a copy of the closing statement be submitted with the closing package.

NOTE:  The attached ALTA 1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  A Survey Endorsement (Without Survey), a specimen of which is attached, will be issued with the Mortgage Policy.

Schedule B-Section 1
Form No. 1106-3

WS1 026068

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

**TITLE INSURANCE COMMITMENT**

## SCHEDULE B - SECTION II

Commitment No.

File No. CT-18760(A

## EXCEPTIONS

Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction.

1. Rights or claims of parties in possession of the land not shown by the public record.

2. Easements, or claims of easements, not shown by the public record.

3. Any facts about the land which a correct survey would disclose, and which are not shown by the public record.

4. Any liens on your title, arising now or later, for labor and material not shown by the public record.

5. Taxes, charges and assessments:

6. Subsurface conditions or encroachments not disclosed by an instrument of record. (Owner's Policy Only)

7. Lien for unpaid taxes for the year 1996.

8. Possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq.

   NOTE: Policy insures that the alphabetical Indicies have been searched through the recording of the Deed and/or Mortgage, and same are properly indexed.

9. Subject to rights of the utility company servicing the insured property for water, sewer, electric, telephone and cable television.

   NOTE: Policy insures that the dwelling does not encroach on the utility lines and said utility lines do not interfere with the use and occupancy of the dwelling for residential purposes.

CONTINUED

WS1 026069

14/11/1996  12:48    1-908-296-2477          ATTORNEYS OFFICE              PAGE  22

10. Restrictions as contained in Deed Book 947 Page 235.

NOTE:  This policy insures that the mortgage set forth under Schedule A
hereof is a valid first lien on the property described therein.

Countersigned: _____
                    Authorized Signatory

Page 5

Schedule B-Section II
Form No. 1106-6

NJRB 3-02
10-15-82

WS1 026070

**Commonwealth**
Land Title Insurance Company

Audit No. X01-021014

COM 17770

**Date:** November 07, 1996

To: National Home Funding, Inc., its successors and/or its
    assigns
    3443 Highway 9 North
    Freehold, NJ  07728
    Attention: Closing Department

RE: Closing Service Letter
    Issuing Agent or Attorney whose conduct is covered:
    Stanley Yacker, Esquire
    330 Highway 34, Suite 3
    Matawan, NJ  07747


    File No: CT-18760(A)
    Transaction: DONALD DEVINCENZO
    Premises: 326 FISHER AVENUE
              NEPTUNE


Dear Customer:

When title insurance of Commonwealth Land Title  Insurance Company is specified  for your
protection in connection with the closing of the above  described real estate transaction
in which  you are  to be  a lender secured  by a  mortgage of an  interest in  land, the
Company, subject to the  Conditions and Exclusions set  forth below, hereby agrees to re-
imburse you for actual loss  incurred by you in connection  with  that closings when con-
ducted by the  above named Issuing Agent  (an agent  authorized to issue  title insurance
for the Company) of Commonwealth Land Title  Insurance Company or the above named Attorney
and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instruc-
   tions to the extent that  they relate to:  (a) the title to said interest  in land or
   the  validity,  enforceability and  priority  of the  lien of said  mortgage on  said
   interest in land, including the obtaining of documents and the  disbursement of funds
   necessary to establish such title or lien, or (b) the collection and payment of funds
   due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in
   connection with the matters set forth in numbered paragraph 1 above.



If you are a lender protected under the foregoing paragraph, your borrower in connection
with a loan secured by a mortgage  on a one-to-four family dwelling,  which is the prin-
cipal residence of the borrower, shall be protected, but only to the extent of the fore-

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

1. Failure of the Attorney to comply with your closing instructions which require require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics' and materialmen's liens in connection with a construction loan trans- action, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing in- structions to the Attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be sub- rogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reim- bursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the pro- tection provided by this letter. However, this letter shall not affect the pro- tection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 8 Penn Center, Phila- delphia, Pennsylvania 19103. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF COMMONWEALTH LAND TITLE INSURANCE COMPANY.

The protection under this letter is limited to the closing on the premises described in the caption of this letter.

Commonwealth Land Title Insurance Company

BY: _____
Robert F. Agel, President
Coastal Title Agency, Inc.
Agent

NJRB 6-04
8/1/94

*NEW JERSEY LAND TITLE*
*INSURANCE RATING BUREAU*

COM 17771



| ISSUED BY | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY | LOAN POLICY OF TITLE INSURANCE |

## Commonwealth

POLICY NUMBER

**F89-353213**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Pennsylvania corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material: (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, COMMONWEALTH LAND TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**COMMONWEALTH LAND TITLE INSURANCE COMPANY**

Attest: *James J W Lynch Jr*

Secretary

By: *[signature]*

President

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
   (i) to timely record the instrument of transfer; or
   (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

PA 20
ALTA Loan Policy (10-17-92)
**Form 1191-2A** Face Page

ORIGINAL

*Valid Only If Schedules A and B and Cover Are Attached*

Issued with Policy No. 187-082719

COMMONWEALTH LAND                                    POLICY OF TITLE INSURANCE
  TITLE INSURANCE COMPANY
    A Reliance Group Holdings Company

                                                    POLICY NUMBER    F89-353213

## SCHEDULE A

Amount of Insurance  $117,000.00                     File No.   CT-18760(a)

Premium:  Simultaneous Issue

Date of Policy  3/3/97

1.  **Name of Insured:**

    National Home Funding, Inc., its successors and/or assigns, as their interest may appear

2.  **The estate or interest in the land described in this Schedule and which is encumbered by the insured mortgage is: Fee Simple and is at Date of Policy vested in:**

    DONALD  DEVINCENZO

3.  **The mortgage, herein referred to as the insured mortgage, and the assignments thereof, if any, are described as follows:**

    Mortgage made by DONALD  DEVINCENZO  to  National Home Funding, Inc.,dated 11/18/96 and recorded 3/3/97 in the Monmouth County Clerk's Office in Mortgage Book 6148 Page 395 in the amount of $117,000.00.

4.  **The land referred to in this policy is described as set forth in the insured mortgage, is situated in the Monmouth County , Township of Neptune, State of New Jersey and is identified as follows:**

                              (SEE DESCRIPTION ATTACHED)

Countersigned: _____
                **Authorized Officer or Agent**

ALTA Loan/Construction Loan
Schedule A
FORM 1191 -13

COM  17741

**EXHIBIT 47**

ONWEALTH LAND
E INSURANCE CO! AN.
eliance Group Holdings Company

**TITLE INSURANCE COMMITMENT**

**SCHEDULE A**

Commitment No.

Certified
True
Copy

1. Commitment Date: October 20, 1996          File No.   CT-18690(A)

                                                      Policy Amount

2. Policy or Policies to be issued:

   (a) [ X ] ALTA Residential Title Insurance Policy          $          175,000.00
           One-to-Four Family Residences (6/1/87)
       [   ] ALTA Owner -- (4/6/92)                           $

   Proposed Insured:

   SUSAN VISCARDO

   (b) [ X ] ALTA Loan Policy                                 $          131,250.00
           (10/17/92)

   Proposed Insured: National Home Funding, Inc., its successors and/or its
                     assigns
                     3443 Highway 9 North
                     Freehold, NJ 07728

3. FEE SIMPLE interest in the land described in this Commitment is owned, at the
   Commitment Date, by G.J.L. Limited   by deed from, ZYX Auto Sales Corp. and
   Liberty Finance Corp., dated      , recorded in the Monmouth County
   Clerk's/Register's office in deed book , page . (about to be recorded).

4. The land referred to in this Commitment is in the County of Monmouth,
   City of Asbury Park,  State of New Jersey and is described as follows:

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660, (800) 521-0378, (908) 775-5543, FAX# (908) 308-1881

0040066979PTR

WSI 058541

**COMMONWEALTH LAND**
**TITLE INSURANCE COMPANY**
**A Reliance Group Holdings Company**

**TITLE INSURANCE COMMITMENT**

Commitment No.

File No. CT-18690(A)

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Asbury Park, County of Monmouth and state of New Jersey, being more particularly described as follows:

Beginning at a point in the northerly side line of First Avenue, distant 50.00 feet westerly therein from its intersection with the westerly side line of Emory Street and running; thence

1.  Along the northerly line of First Avenue North 67 degrees 41 minutes West a distance of 50.00 feet to a point; thence

2.  North 22 degrees 19 minutes East a distance of 150.00 feet to a point; thence

3.  South 67 degrees 41 minutes East a distance of 50.00 feet to a point; thence

4.  South 22 degrees 19 minutes West a distance of 150.00 feet to the point or place of Beginning.

NOTE:  Being Lot(s) 2, Block 155, Tax Map of the City of Asbury Park.

**Issued By:**
**COASTAL TITLE AGENCY, INC.**
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660   (800) 521-0378   (908) 775-5543   FAX #(908) 308-1881

WS1 058542

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

**TITLE INSURANCE COMMITMENT**

## SCHEDULE B – SECTION 1

Commitment No.

File No. CT-18690(A

## REQUIREMENTS

The following requirements must be met:

(a) Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

(b) Pay us the premiums, fees and charges for the policy.

(c) Document(s) satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded:

1. Deed made by present owner(s) to the proposed insured(s) named in Schedule A, 2(a).

2. Mortgage made by purchaser(s) to the proposed insured(s) named in Schedule A, 2(b).

(d) You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

(e) Proof is required as to the past and present marital status of the proposed grantors/mortgagors.

NOTE: The spouse of the record owner must join in the proposed transaction, unless this is not the principal marital residence and was acquired subsequent to May 28, 1980; On any property acquired prior to May 28, 1980, the spouse must join in the proposed transaction regardless of whether it is the principal marital residence or not.

(f) All taxes and other municipal liens are to be paid through and including the current quarter.

NOTE: In the event the tax search reveals a senior citizen deduction or a veteran's deduction, a proper escrow must be established to safeguard in the event the deduction is disallowed. If it is to be disallowed, the deduction should be restored to the taxes when calculating your adjustment.

(g) Municipal Lien and Unconfirmed Assessment searches are attached hereto and made a part hereof.

(h) New Jersey Superior and U.S. District Court and County judgment searches are clear.

(i) Subject to such facts which would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

WS1 058543

(j) Receipt of proper corporate affidavit of title for G.J.L. Limited.

(k) Certificate as to corporate resolution authorizing the proposed deed made by the proposed grantor is to be submitted.

NOTE:  Flood search is attached hereto and is provided as an accomodation only.  No liability is assumed for the results of said flood search.

NOTE: It is required that a Notice of Settlement be recorded and we require that all searches be rundown prior to closing.

NOTE:  There is a possibility that the mortgage being insured herein must include one of the following:

a.   Variable Rate Endorsement - Renegotiable or Adjustable.
b.   Negative Amortization Endorsement

There is an additional $25.00 charge for this endorsement and, if Negative Amortization is required, possibly an increase in premium. When this has been determined we are to be notified prior to closing in order to make the necessary amendment to the Title Commitment and our invoice.

NOTE:  This Policy will insure all facsimile copies of endorsements as originals.

NOTE:  The attached ALTA 9 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.  Special comprehensive title protection is afforded by said endorsement to the Mortgagee only.  Affirmative insurance to the Owners can be given on a line by line basis.  Please see Schedule B, Section 2.

NOTE:  The attached ALTA 8.1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  We require a copy of the closing statement be submitted with the closing package.

NOTE:  The attached ALTA 1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  A Survey Endorsement (Without Survey), a specimen of which is attached, will be issued with the Mortgage Policy.

Schedule B-Section 1
Form No. 1106-3

WS1 058544

**COMMONWEALTH LAND**
**TITLE INSURANCE COMPANY**
**A Reliance Group Holdings Company**

**TITLE INSURANCE COMMITMENT**

### SCHEDULE B – SECTION II

Commitment No.

File No. CT-18690(A

### EXCEPTIONS

Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction.

1. Rights or claims of parties in possession of the land not shown by the public record.

2. Easements, or claims of easements, not shown by the public record.

3. Any facts about the land which a correct survey would disclose, and which are not shown by the public record.

4. Any liens on your title, arising now or later, for labor and material not shown by the public record.

5. Taxes, charges and assessments:

6. Subsurface conditions or encroachments not disclosed by an instrument of record. (Owner's Policy Only)

7. Lien for unpaid taxes for the year 1996.

8. Possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq.

NOTE: Policy insures that the alphabetical Indicies have been searched through the recording of the Deed and/or Mortgage, and same are properly indexed.

CONTINUED

WS1 058545

9. Subject to rights of the utility company servicing the insured property for water, sewer, electric, telephone and cable television.

NOTE: Policy insures that the dwelling does not encroach on the utility lines and said utility lines do not interfere with the use and occupancy of the dwelling for residential purposes.

NOTE: This policy insures that the mortgage set forth under Schedule A hereof is a valid first lien on the property described therein.

Countersigned: _____
                Authorized Signatory

Page 5

Schedule B-Section II
Form No. 1106-6

NJRB 3-02
10-15-82

WS1 058546

ENDORSEMENT NO. 1

COMMONWEALTH LAND
   TITLE INSURANCE COMPANY
      A Reliance Group Holdings Company

RE: VISCARDO/CRISTO PROPERTY
    603 1ST STREET
    ASBURY PAR, NJ

To be annexed to and form a part of Commitment/Policy No. CT-18690(A)

insuring  VISCARDO  as set forth in said Commitment/Policy.

The said Commitment/Policy is hereby amended in the following manner:

Schedule A, Item 3, Vesting Schedule - OMIT AND SUBSTITUTE
3. FEE SIMPLE interest in the land described in this Commitment is owned, at the
Commitment Date, by Cristo Property Management, Ltd.  by deed from,  ZYX Auto
Sales Corp. and Liberty Finance Corp., dated      . recorded      in the
Monmouth County Clerk's/Register's office in deed book    , page    . (about
to be recorded).

Schedule B, Section 2, Item 10 - ADD
10. Restrictions as contained in Deed Book 305 Page 316 and Deed Book 505 page
343.

The  total liability  of the  Company under  said commitment/policy  and any endorsements
attached thereto shall not exceed,  in the aggregate,  the face amount of said policy and
costs which the  Company is obligated under  the provisions of said  commitment/policy to
pay.

This endorsement is  made a part of said commitment/policy  and is subject to the exclus-
ions,  schedules,  endorsements,  conditions,  stipulations and terms thereof,  except as
modified by the provisions hereof.

Nothing herein contained shall be . construed as extending or  changing the effective date
of said Commitment/Policy, unless otherwise expressly stated.

IN WITNESS WHEREOF COMMONWEALTH LAND TITLE INSURANCE COMPANY  has  caused  its ˙corporate
name and seal to be hereunto affixed by  its duly  authorized officers on the 7th
November A. D. 1996.

                                    COMMONWEALTH LAND TITLE INSURANCE COMPANY

Countersigned:

By _____
   Authorized Officer or Agent
   COASTAL TITLE AGENCY, INC.

Form 1013 (Rev'd 2-87)

WS1 058547

**Commonwealth**
Land Title Insurance Company

Audit No. XO1-020676

Date: November 06, 1996

To: National Home Funding, Inc., its successors and/or its
assigns
3443 Highway 9 North
Freehold, NJ  07728
Attention: Closing Department

RE: Closing Service Letter
Issuing Agent or Attorney whose conduct is covered:
Stanley Yacker, Esquire
330 Highway 34, Suite 3
Matawan, NJ  07747

File No: CT-18690(A)
Transaction: SUSAN VISCARDO
Premises: 603 1ST STREET
ASBURY PARK

Dear Customer:

When title insurance of Commonwealth Land Title Insurance Company is specified for your
protection in connection with the closing of the above described real estate transaction
in which you are to be a lender secured by a mortgage of an interest in land, the
Company, subject to the Conditions and Exclusions set forth below, hereby agrees to re-
imburse you for actual loss incurred by you in connection with that closings when con-
ducted by the above named Issuing Agent (an agent authorized to issue title insurance
for the Company) of Commonwealth Land Title Insurance Company or the above named Attorney
and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instruc-
   tions to the extent that they relate to: (a) the title to said interest in land or
   the validity, enforceability and priority of the lien of said mortgage on said
   interest in land, including the obtaining of documents and the disbursement of funds
   necessary to establish such title or lien, or (b) the collection and payment of funds
   due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in
   connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection
with a loan secured by a mortgage on a one-to-four family dwelling, which is the prin-
cipal residence of the borrower, shall be protected, but only to the extent of the fore-
going paragraph 2, as if this letter were addressed to your borrower. If you are a pur-
chaser of a one-to-four family dwelling, including a condominium unit, which is your
principal residence, and are paying cash for the purchase, you are protected, but only
to the extent of the foregoing paragraph 2.

*NEW JERSEY LAND TITLE*
*INSURANCE RATING BUREAU*

NJRB 6-04
8/1/94

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

1. Failure of the Attorney to comply with your closing instructions which require require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics' and materialmen's liens in connection with a construction loan transaction, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instrutions to the Attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 8 Penn Center, Philadelphia, Pennsylvania 19103. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF COMMONWEALTH LAND TITLE INSURANCE COMPANY.

The protection under this Letter is limited to the closing on the premises described in the caption of this Letter.

*Commonwealth Land Title Insurance Company*

BY: _____

Robert F. Agel, President
Coastal Title Agency, Inc.
Agent

NJRB 6-04
8/1/94

*NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU*

CTE 55

ISSUED BY
COMMONWEALTH LAND TITLE INSURANCE COMPANY

 **Commonwealth**

LOAN POLICY OF TITLE INSURANCE

POLICY NUMBER

F89-353171

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Pennsylvania corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, COMMONWEALTH LAND TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Attest: _James J. W. Lynch Jr._
Secretary

By: _____
President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

PA 20
ALTA Loan Policy (10-17-92)
**Form 1191-2A** Face Page

ORIGINAL

Valid Only If Schedules A and B and Cover Are Attached

CTE 5533

...ued with Policy No. 187-082864  

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

**POLICY OF TITLE INSURANCE**

**POLICY NUMBER**    F89-353171

**SCHEDULE A**

File No.  CT-18690(a)

Amount of Insurance  $131,250.00

Premium:  Simultaneous Issue

Date of Policy  4/7/97

1. Name of Insured:

    National Home Funding, Inc., its successors and/or assigns, as their interest may appear

2. The estate or interest in the land described in this Schedule and which is encumbered by the insured mortgage
   is: Fee Simple and is at Date of Policy vested in:

    SUSAN  VISCARDO SINGLE

3. The mortgage, herein referred to as the insured mortgage, and the assignments thereof, if any, are described
   as follows:

    Mortgage made by SUSAN  VISCARDO SINGLE to  National Home Funding, Inc., dated 12/18/99 and recorded 4/7/97 in
    the Monmouth County Clerk's Office in Mortgage Book 6165 Page 796 in the amount of $131,250.00.

4. The land referred to in this policy is described as set forth in the insured mortgage, is situated in the Monmouth
   County , City of Asbury Park, State of New Jersey and is identified as follows:

(SEE DESCRIPTION ATTACHED)

Countersigned:  _____
                Authorized Officer or Agent

ALTA Loan/Construction Loan
Schedule A
FORM 1191 -13

CTE 5534

OMMONWEALTH LAND
TITLE INSURANCE COMPANY
  A Reliance Group Holdings Company

**TITLE INSURANCE COMMITMENT**

Commitment No.

File No. CT-18690(A)

DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Asbury Park, County of Monmouth and state of New Jersey, being more particularly described as follows:

Beginning at a point in the northerly side line of First Avenue, distant 50.00 feet westerly therein from its intersection with the westerly side line of Emory Street and running; thence

1. Along the northerly line of First Avenue North 67 degrees 41 minutes West a distance of 50.00 feet to a point; thence

2. North 22 degrees 19 minutes East a distance of 150.00 feet to a point; thence

3. South 67 degrees 41 minutes East a distance of 50.00 feet to a point; thence

4. South 22 degrees 19 minutes West a distance of 150.00 feet to the point or place of Beginning.

NOTE: Being Lot(s) 2, Block 155, Tax Map of the City of Asbury Park.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

CTE 5535

Policy No.  F89-353171

File No.    CT-18690(a)

### SCHEDULE B

### PART I

This policy does not insure against loss or damage by reason of the following:

1.  Encroachments, overlaps, boundary line disputes, and any other matters which would be disclosed by an accurate survey and inspection of the premises. OMIT

2.  Lien for unpaid taxes for the year 1996. (Taxes paid through date of closing) (Subsequent taxes not yet due and payable)

3.  Possible  additional taxes assessed or levied under N.J.S.A.  54:4-63.1  et seq.  (None yet due and payable)

    NOTE:  Policy insures that the alphabetical Indicies have been searched through the recording of the Deed and/or Mortgage, and same are properly indexed.

4.  Subject to rights of the utility company servicing the insured property for water, sewer, electric, telephone and cable television.

    NOTE:  Policy insures that the dwelling does not encroach on the utility lines and said utility lines do not interfere with the use and occupancy of the dwelling for residential purposes.

5.  Restrictions as contained in Deed Book 305, Page 316 and Deed Book 505, Page 343.

    NOTE:  This policy insures that the mortgage set forth under Schedule A hereof is a valid first lien on the property described therein.

NOTE: Unless Schedule B Part II is attached there are no subordinate matters that affect the title to the estate or interest referred to in Schedule A.

ALTA Loan/LH Loan/Construction Loan
Schedule B-Part I (NJ)
Form 1191-38

Policy No.   F89-353171

File No.   CT-18690(a)

SCHEDULE B

PART II

In addition to the matters set forth in Part I of this Schedule, the title to the Estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to the lien or charge of the insured mortgage upon said estate or interest: NONE

PA 20
ALTA Loan/LH Loan/Construction Loan
Schedule B - Part II
Form 1191-15

CTE 5537

 

## ENDORSEMENT

Endorsement No. 779-079313

Attached to and forming a part of Policy No. F89-353171

Issued by

### Commonwealth Land Title Insurance Company

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a) any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

(b) any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

This endorsement will not insure against liens filed pursuant to the Spill Compensation and Control Act, N.J.S.A. 58: 10-23.11 et seq. subsequent to the effective date of this policy.

The endorsement is made a part of this policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated,  it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date  of the policy and any prior endorsements, nor does it increase the face amount thereof.

DATED: 6/10/97

Commonwealth Land Title Insurance Company

_____
Authorized Signatory

*Note: This  Endorsement shall not be valid or binding  until signed by an Authorized Signatory.*

ALTA Endorsement - Form No. 8.1
Loan (Environmental Protection Lien)

F.10974 (3514A N.J.) 10/87

**Commonwealth Land Title Insurance Company**

ENDORSEMENT

Endorsement No. 786-131684

Attached to and made a part of Commonwealth Land Title Insurance Company Policy No F89-353171

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1. Any incorrectness in the assurance that, at Date of Policy:
   (a) There are no covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.
   (b) Unless expressly excepted in Schedule B:
      (1) There are no present violations on the land of any enforceable covenants, conditions or restrictions, nor do any existing improvements on the land violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.
      (2) Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land does not, in addition, (i) establish an easement on the land; (ii) provide a lien for liquidated damages, (iii) provide for a private charge or assessment; (iv) provide for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.
      (3) There is no encroachment of existing improvements located on the land onto adjoining land, nor any encroachment onto the land of existing improvements located on adjoining land.
      (4) There is no encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.
      (5) There are no notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.
2. Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the insured, provided the violation results in:
   (a) invalidity, loss or priority, or unenforceability of the lien of the insured mortgage; or
   (b) loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.
3. Damage to existing improvements, including lawns, shrubbery or trees:
   (a) which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved;
   (b) resulting from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.
4. Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.
5. Any final court order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraphs 1(b)(1) and (5), the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

IN WITNESS WHEREOF , the Company has caused this Endorsement to be signed and sealed as of 6/10/97 to be valid when countersigned by an authorized officer or agent of the Company, all in accordance with its By-laws.

**Commonwealth Land Title Insurance Company**

COUNTERSIGNED:

_____

Authorized Officer or Agent

ALTA Endorsement Form 9

CTE 5539

**COMMONWEALTH LAND
TITLE INSURANCE COMPANY**
A Reliance Group Holdings Company

ALTA ENDORSEMENT- FORM 1

Endorsement Number: P07-004830

File No. CT-18690 (a)

Attached to and made a part of Policy Number F89-353171

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

any assessments for street or other municipal improvements authorized, under construction, or completed at Date of Policy not excepted in Schedule B which now have gained or hereafter may gain priority over the lien of the insured mortgage.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements. nor does it increase the face amount thereof.

IN WITNESS WHEREOF, COMMONWEALTH LAND TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed by its duly authorized officers on 6/10/97.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Countersigned:

By: _____

ALTA Endorsement - Form 1 (Street Assessment) (6-1-87)
Form 1144-6

CTE 5540

# COMMONWEALTH LAND TITLE INSURANCE COMPANY

## FNMA BALLOON MORTGAGE ENDORSEMENT

Attached to and forming a part of Policy No. F89-353171/CT-18690(a) of COMMONWEALTH LAND TITLE INSURANCE COMPANY

The Company insures the insured mortgagee against loss or damage by reason of:

1. The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for a Conditional Right to Refinance and a change in the rate of interest as set forth in the Mortgage Rider.

2. Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan, together with interest thereon, which loss of priority is caused by the exercise of the Conditional Right to Refinance and the extension of the loan term to the New Maturity Date set forth on the Rider and a change in the rate of interest, provided that all of the conditions set forth in paragraphs 2 and 5 of the Balloon Mortgage Rider have been met, and there are no other liens, defects, encumbrances, or other adverse matters affecting title arising subsequent to Date of Policy.

This endorsement does not insure against loss or damage based upon (a) usury or (b) any consumer credit protection or truth in lending law or (c) bankruptcy.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

In Witness Whereof, COMMONWEALTH LAND TITLE INSURANCE COMPANY has caused this Endorsement to be signed and sealed on its date of issue set forth herein.

DATED: 6/10/97                                      COMMONWEALTH LAND TITLE INSURANCE COMPANY

_____
**Authorized Signatory**

**Note: This endorsement shall not be valid or binding until countersigned by an authorized signature.**

FORM 26-31-FNMA BME (11/93)                                      FNMA Balloon
Mortgage Endorsement                                             NJRB 5-31

## CONDITIONS AND STIPULATIONS
### (Continued)

**PROOF OF LOSS OR DAMAGE.**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**

In case of a claim under this policy, the Company shall have the additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in these paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7. DETERMINATION AND EXTENT OF LIABILITY.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8. LIMITATION OF LIABILITY.**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10. LIABILITY NONCUMULATIVE.**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11. PAYMENT OF LOSS.**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12. SUBROGATION UPON PAYMENT OR SETTLEMENT.**

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligee (except an obligor described in Section 1(a) (i) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13. ARBITRATION.**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or a validating officer or authorized signatory of the Company.

**15. SEVERABILITY.**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16. NOTICES, WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to COMMONWEALTH LAND TITLE INSURANCE COMPANY, 1700 Market Street, Philadelphia, PA 19103-3990.

NM2          PA 20
ALTA Loan Policy (10-17-92)          ORIGINAL
Cover Page
Form 1191-3

Valid Only If Face Page and Schedules A and B Are Attached

**EXHIBIT 48**

**FI⋯⋯Y NATIONAL TITLE**
**Insurance Company of New York**

### Schedule A-4

File No.  CT-18560(A)

All that certain lot, piece of land, with the buildings and improvements thereon
erected, situate, lying and being in the  City of Asbury Park,
County of  Monmouth,     State of New Jersey:

Beginning at a point in the southerly line of Mattison Avenue said point being
distant 125.0 feet westerly from the intersection formed by the southerly
line of Mattison Avenue and the westerly line of Elizabeth Avenue and from
thence

1.  South 08 degrees 30 minutes west, 117.0 feet to a point; thence

2.  North 81 degrees 30 minutes west 42.0 feet to a point; thence

3.  North 02 degrees 02 minutes west, 119.01 feet to a point in the southerly
line of Mattison Avenue; thence

4.  South 81 degrees 30 minutes east along the southerly line of Mattison
Avenue, 63.75 feet to the point and place of Beginning.

Being No. 1422 Mattison Avenue, Asbury Park, New Jersey.

The above description is drawn in accordance with a survey prepared by Azimuth
Land Surveying Co., Inc., dated June 6, 1989.

Being Lot 25, Block 92 on the Asbury Park Tax Map.


Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

ALTA COMMITMENT - PLAIN LANGUAGE
SCHEDULE A-4, NJRB 3-02 (10-26-82

WS1 002079

**FI    .Y NATIONAL TITLE**
**Insurance Company of New York**

### Schedule A

1. Effective Date:  September 29, 1996          File  No. CT-18560(A)

2. Policy or Policies to be issued:                      **Policy Amount**

   (a) ALTA Residential Policy - (Plain Language)       $  147,000.00

      Proposed Insured:

      ~~Lawrence M. Cuzzi~~

      *Ralph Juergensen Parcel # 2*

   (b) ALTA Loan Policy                                 $  111,000.00

      Proposed Insured:                                    110,250

      National Home Funding, Inc., its successors and/or
      assigns, as their interest may appear

3. FEE SIMPLE  interest in the land described in this Commitment is owned, at the

   Commitment Date, by Cristo Property Management Ltd.  by deed from, Citicorp
   Mortgage Inc., dated  , recorded  , in the Monmouth County Clerk's/Register's
   office in deed book , page . (about to be recorded).

4. The land referred to in this Commitment is described in Schedule A-4.

FORM 26-84-82 A (11/93)                          ALTA COMMITMENT - PLAIN LANGUAGE
                                                 SCHEDULE A, NJRB 3-02 (10-26-82)

WS1 002080

**FI      TY NATIONAL TITLE**
**Insurance Company of New York**

### Schedule B – Section I

File No.  CT-18560(A)

The following requirements must be met:

A.  Documents satisfactory to us creating the interest in the land and/or the mortgage
to be insured must be signed, delivered and  recorded and properly indexed in the
land records.

B.  Pay the  agreed  amounts for the  interest in the  land and/or the  mortgage to be
insured.

C.  Pay us the premiums, fees and charges for the policy.

D.  You must tell us in writing the name of anyone not  referred to in this Commitment
who  will make a loan on  the land.  We may then  make additional  requirements or
exceptions.

E.  Deed made by Cristo Property Management Ltd to the proposed insured(s) named
in Schedule A, 2(a).

F.  Mortgage made by purchaser(s) to the proposed insured(s) named in Schedule A,
2(b).

G.  Proof is required as to the past and present marital status of the
proposed grantors/mortgagors.

NOTE:  The spouse of the record owner must join in the proposed transaction,
unless this is not the principal marital residence and was acquired subsequent
to May 28, 1980.  On any property acquired prior to May 28, 1980, the spouse
must join in the proposed transaction regardless of whether it is the
principal marital residence or not.

H.  All taxes and other municipal liens are to be paid through and including the
current quarter.

NOTE: In the event the tax search reveals a senior citizen deduction or a
veteran's deduction, a proper escrow must be established to safeguard in
the event the deduction is disallowed.  If it is to be disallowed, the
deduction should be restored to the taxes when calculating your adjustment.

I.  Municipal Lien and Unconfirmed Assessment Searches have been ordered, not yet
received.

J.  County judgment search is clear.

K.  New Jersey Superior and U.S. District Court judgment search discloses a
judgment or judgments which are to be cancelled of record or disposed of by a
specific affidavit which is to be submitted.

L. Subject to such facts which would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

NOTE:  There is a possibility that the mortgage being insured herein must include one of the following:

a.  Variable Rate Endorsement - Renegotiable or Adjustable.
b.  Negative Amortization Endorsement

There is an additional $25.00 charge for this endorsement and, if Negative Amortization is required, possibly an increase in premium. When this has been determined we are to be notified prior to closing in order to make the necessary amendment to the Title Commitment and our invoice.

NOTE:  This Policy will insure all facsimile copies of endorsements as originals.

NOTE:  The attached ALTA 9 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.  Special comprehensive title protection is - afforded by said endorsement to the Mortgagee only.  Affirmative insurance to the Owners can be given on a line by line basis.  Please see Schedule B, Section 2.

NOTE:  The attached ALTA 8.1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  We require a copy of the closing statement be submitted with the closing package.

NOTE:  The attached ALTA 1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  Flood search is attached hereto and is provided as an accomodation only.  No liability is assumed for the results of said flood search.

M. Receipt of proper corporate affidavit of title for Cristo Property Management Ltd.

N. Certificate as to corporate resolution authorizing the proposed deed made by the proposed grantor is to be submitted.

**F᠎  ᠎  ᠎TY NATIONAL TITLE**
**Insurance Company of New York**

**Schedule B - Section II**

File No.  CT-18560(A)

Any policy we issue will have the following exceptions unless they are  taken care of
to our satisfaction.

1.  Rights  or claims of parties in  possession of the land  not shown by the  public
    records; and encroachments, overlaps or boundary line disputes; and other matters
    any of  which would be  disclosed by a  survey of  the land  satisfactory to the
    Company.

2.  Any liens on your title, arising  now or later, for labor and material not shown
    by the public record.

3.  Taxes, assessments and governmental utility liens as follows:

4.  Mortgages of record ( See Schedule B, Section 1 )

5.  Subsurface conditions or encroachments not disclosed by an instrument of
    record.  (Owner's Policy Only)

6.  Lien for unpaid taxes for the year 1996.

7.  Possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq.

    NOTE:  Policy insures that the alphabetical Indicies have been searched
    through the recording of the Deed and/or Mortgage, and same are properly
    indexed.

8.  Subject to rights of the utility company servicing the insured property for
    water, sewer, electric, telephone and cable television.

    NOTE:  Policy insures that the dwelling does not encroach on the utility lines
    and said utility lines do not interfere with the use and occupancy of the
    dwelling for residential purposes.

    NOTE:  This policy insures that the mortgage set forth under Schedule A hereof
    is a valid first lien on the property described therein.

**Fidelity National Title**
INSURANCE COMPANY OF NEW Y(
Two Park Avenue / New York, New York ....16 / (212) 481-5858 / Fax: (212) 481-8747

ICS 5744-10997                                    Date:  November 07, 1996

To: National Home Funding, Inc., its successors and/or
    assigns, as their interest may appear


        Attention: Closing Department

        RE: Closing Service Letter
            Issuing Agent or Attorney whose conduct is covered:
            Stanley Yacker, Esquire

            330 Highway 34, Suite 3
            Matawan, NJ   07747

        File No: CT-18560(A)
    Transaction:  RALPH JBERGENSEN

        Premises: 1422 MATTISON AVENUE
                  Asbury Park, NJ

Dear Customer:

When  title  insurance  of Fidelity National  Title  Insurance  Company of New York is
specified for your protection in connection with the closing of the above described real
estate transaction  in which you are to be a lender secured by a mortgage of an interest
in land, the Company, subject to  the Conditions and Exclusions set  forth below, hereby
agrees to reimburse you for actual loss incurred by you in connection  with that closing
when  conducted  by  the  above named Issuing Agent  (an agent authorized to  issue title
insurance for the Company) of  Fidelity National Title Insurance  Company of New York or
the above named Attorney and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instruc-
   tions to the extent that  they relate to:  (a) the title to said interest  in land or
   the  validity,  enforceability and  priority  of the  lien of said  mortgage on  said
   interest in land, including the obtaining of documents and the  disbursement of funds
   necessary to establish such title or lien; or (b) the collection and payment of funds
   due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in
   connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection
with a loan secured by a mortgage  on a one-to-four family dwelling,  which is the prin-
cipal residence of the borrower, shall be protected, but only to the extent of the fore-
going paragraph 2, as if this letter were addressed to your borrower.  If you are a pur-
chaser of a  one-to-four  family dwelling,  including a condominium unit,  which is your
principal residence, and are paying cash for the purchase, you are protected,  but only
to the extent of the foregoing paragraph 2.

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

Fidelity CSL -- Page 2

1. Failure of the Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics' and materialmen's liens in connection with a construction loan transaction, except to the extent that protection against such lien is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 2 Park Avenue, New York, N.Y. 10016. When failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F. Liability under this letter is limited to the amount of insurance committed for and is subject to all of the Conditions and Stipulations of the policy or policies committed to be issued by the Company. Any payment of loss under this letter shall constitute a payment under the policy.

THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK.

The protection under this Closing Service Letter is limited to the closing on the premises described in the caption of this Letter.

Fidelity National Title Insurance Company of New York

BY: _____
Robert F. Agel, President
Coastal Title Agency, Inc.
Agent

WS1 002090