# EXHIBIT 53

ALTA COMMITMENT - 1982
*Issued by*



**Fidelity National Title**
INSURANCE COMPANY OF NEW YORK

## INFORMATION

The Title Insurance Commitment is a legal contract between you and the Company. It is issued to show the basis on which we will issue a Title Insurance Policy to you. The Policy will insure you against certain risks to the land title, subject to the limitations shown in the Policy.

The Company will give you a sample of the Policy form, if you ask.

The Commitment is based on the land title as of the Commitment Date. Any changes in the land title or the transaction may affect the Commitment and the Policy.

The Commitment is subject to its Requirements, Exceptions and Conditions.

THIS INFORMATION IS NOT PART OF THE TITLE INSURANCE COMMITMENT.

YOU SHOULD READ THE COMMITMENT VERY CAREFULLY.

If you have any questions about the Commitment, contact:

FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK

2 Park Avenue
New York, New York 10016

## TABLE OF CONTENTS

PAGE

AGREEMENT TO ISSUE POLICY . . . . . . . . . . . . . . . 2

SCHEDULE A . . . . . . . . . . . . . . . . . . . . . . . 3

    1. Commitment Date . . . . . . . . . . . . . . . . . 3

    2. Policies to be Issued, Amounts and Proposed Insureds . . 3

    3. Interest in the Land and Owner . . . . . . . . . . . 3

    4. Description of the Land . . . . . . . . . . . . . 3

SCHEDULE B - I - - REQUIREMENTS . . . . . . . . . . . . . 4

SCHEDULE B - II - - EXCEPTIONS . . . . . . . . . . . . . 5

SCHEDULE C - - CONTINUATION . . . . . . . . . . . . . . 6

CONDITIONS . . . . . . . . . . . 7

0040065351PTR

.AGE
NJRB 3-02 (10-26-82)

WSI 058401

**FIDELITY NATIONAL TITLE**
Insurance Company of New York

### Schedule A

1. Effective Date: November 10, 1996     File No. CT-18910(A)

2. Policy or Policies to be issued:                    Policy Amount

   (a) ALTA Residential Policy - (Plain Language)      $   188,500.00

   Proposed Insured:

   THOMAS OWENS

   (b) ALTA Loan Policy (10/17/92)                     $   141,375.00

   Proposed Insured:

   National Home Funding, Inc., its successors and/or
   assigns, as their interest may appear
   3443 Highway 9 North Freehold, New Jersey 07728

3. FEE SIMPLE  interest in the land described in this Commitment is owned, at the

   Commitment Date, by GJL Limited  by deed from, Richard W. Schwarz and Karen S.
   Schwarz, dated         ,  recorded    ,       , in the Monmouth County
   Clerk's/Register's office in deed book , page (About to be recorded).

4. The land referred to in this Commitment is described in Schedule A-4.

FORM 26-84-82 A (11/93)

ALTA COMMITMENT - PLAIN LANGUAGE
SCHEDULE A. NJRB 3-02 (10-26-8

WS1 058402

FIDELITY NATIONAL TITLE
Insurance Company of New York

### Schedule A-4

File No.  CT-18910(A)

All that certain lot, piece of land, with the buildings and improvements thereon erected, situate, lying and being in the  City of Asbury Park, County of  Monmouth,      State of New Jersey:

Beginning at a point in the northerly line of Sixth Avenue, distant one hundred (100) feet easterly from a marble stone planted at the northeast corner of Sixth Avenue and Packard Street as now located; thence

1.  Easterly along the northerly line of Sixth Avenue, fifty (50) feet; thence

2.  Northerly, at right angles with Sixth Avenue, one hundred and fifty (150) feet; thence

3.  Westerly, parallel with Sixth Avenue, fifty (50) feet; thence

4.  Southerly again at right angles with Sixth Avenue, one hundred and fifty (150) feet to the place of Beginning.

NOTE:  Being Lot(s) 3, Block 204, Tax Map of the City of Asbury Park.


Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FORM 26-84-82 A-4(11/93)

ALTA COMMITMENT - PLAIN LANGU
SCHEDULE A-4, NJRB 3-02 (10-26

WS1 058403

**FIDELITY NATIONAL TITLE**
**Insurance Company of New York**

### Schedule B - Section I

File No. CT-18910(A)

The following requirements must be met:

A. Documents satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded and properly indexed in the land records.

B. Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

C. Pay us the premiums, fees and charges for the policy.

D. You must tell us in writing the name of anyone not referred to in this Commitment who will make a loan on the land. We may then make additional requirements or exceptions.

E. Deed made by present owner(s) to the proposed insured(s) named in Schedule A, 2(a).

F. Mortgage made by purchaser(s) to the proposed insured(s) named in Schedule A, 2(b).

G. Proof is required as to the past and present marital status of the proposed grantors/mortgagors.

NOTE: The spouse of the record owner must join in the proposed transaction, unless this is not the principal marital residence and was acquired subsequent to May 28, 1980. On any property acquired prior to May 28, 1980, the spouse must join in the proposed transaction regardless of whether it is the principal marital residence or not.

H. All taxes and other municipal liens are to be paid through and including the current quarter.

NOTE: In the event the tax search reveals a senior citizen deduction or a veteran's deduction, a proper escrow must be established to safeguard in the event the deduction is disallowed. If it is to be disallowed, the deduction should be restored to the taxes when calculating your adjustment.

I. Municipal Lien and Unconfirmed Assessment searches are attached hereto and made a part hereof.

J. County judgment search is clear.

K. New Jersey Superior and U.S. District Court judgment search discloses a judgment or judgments which are to be cancelled of record or disposed of by a specific affidavit which is to be submitted.

L.   Subject to such facts which would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

NOTE:   There is a possibility that the mortgage being insured herein must include one of the following:

a.   Variable Rate Endorsement - Renegotiable or Adjustable.
b.   Negative Amortization Endorsement

There is an additional $25.00 charge for this endorsement and, if Negative Amortization is required, possibly an increase in premium. When this has been determined we are to be notified prior to closing in order to make the necessary amendment to the Title Commitment and our invoice.

NOTE:  This Policy will insure all facsimile copies of endorsements as originals.

NOTE:  The attached ALTA 9 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.   Special comprehensive title protection is afforded by said endorsement to the Mortgagee only.   Affirmative insurance to the Owners can be given on a line by line basis.   Please see Schedule B, Section 2.

NOTE:  The attached ALTA 8.1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  We require a copy of the closing statement be submitted with the closing package.

NOTE:  The attached ALTA 1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  Flood search is attached hereto and is provided as an accomodation only.  No liability is assumed for the results of said flood search.

NOTE: It is required that a Notice of Settlement be recorded and we require that all searches be rundown prior to closing.

M.   Receipt of proper corporate affidavit of title for GJL Limited.

N.   Certificate as to corporate resolution authorizing the proposed deed made by the proposed grantor is to be submitted.

WS1 058405

FIDELITY NATIONAL TITLE
Insurance Company of New York

### Schedule B - Section II

File No.  CT-18910(A)

Any policy we issue will have the following exceptions unless they are  taken care of to our satisfaction.

1. Rights  or claims of parties in  possession of the land  not shown by the  public records; and encroachments, overlaps or boundary line disputes; and other matters any of  which would be  disclosed by a  survey of  the land  satisfactory  to  the Company.

2. Any liens on your title, arising  now or later, for labor and material not shown by the public record.

3. Taxes, assessments and governmental utility liens as follows:

4. Mortgages of record ( See Schedule B, Section 1 )

5. Subsurface conditions or encroachments not disclosed by an instrument of record.  (Owner's Policy Only)

6. Lien for unpaid taxes for the year 1996.

7. Possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq.

    NOTE:  Policy insures that the alphabetical Indicies have been searched through the recording of the Deed and/or Mortgage, and same are properly indexed.

8. Subject to rights of the utility company servicing the insured property for water, sewer, electric, telephone and cable television.

    NOTE:  Policy insures that the dwelling does not encroach on the utility lines and said utility lines do not interfere with the use and occupancy of the dwelling for residential purposes.

9. Utility easement(s) as contained in Deed Book 4887, Page 687.

10. Restrictions as contained in Deed Book 348 Page 436.

    NOTE:  Said Restrictions contain a right of reverter which was released in Deed Book 468, Page 295.

11. Restrictions as contained in Deed Book 468 Page 295.

    NOTE:  This policy insures that the mortgage set forth under Schedule A hereof is a valid first lien on the property described therein.

FORM 26-84-82 811 (11/93)

ALTA COMMITMENT - PLAIN LANGU
SCHEDULE B11. NJRB 3-02 (10-2

WSI 058406

# EXHIBIT 54

**ALTA COMMITMENT - 1982**

*Issued by*



Certified
True
Copy

 **Fidelity National Title**
INSURANCE COMPANY OF NEW YORK

## INFORMATION

The Title Insurance Commitment is a legal contract between you and the Company. It is issued to show the basis on which we will issue a Title Insurance Policy to you. The Policy will insure you against certain risks to the land title, subject to the limitations shown in the Policy.

The Company will give you a sample of the Policy form, if you ask.

The Commitment is based on the land title as of the Commitment Date. Any changes in the land title or the transaction may affect the Commitment and the Policy.

The Commitment is subject to its Requirements, Exceptions and Conditions.

THIS INFORMATION IS NOT PART OF THE TITLE INSURANCE COMMITMENT.

YOU SHOULD READ THE COMMITMENT VERY CAREFULLY.

If you have any questions about the Commitment, contact:

FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK

2 Park Avenue
New York, New York 10016

## TABLE OF CONTENTS

PAGE

AGREEMENT TO ISSUE POLICY . . . . . . . . . . . . . . . . . 2

SCHEDULE A . . . . . . . . . . . . . . . . . . . . . . 3

    1. Commitment Date . . . . . . . . . . . . . . . . 3

    2. Policies to be Issued, Amounts and Proposed Insureds . . 3

    3. Interest in the Land and Owner . . . . . . . . . . . . 3

    4. Description of the Land . . . . . . . . . . . . . 3

SCHEDULE B - I - - REQUIREMENTS . . . . . . . . . . . . 4

SCHEDULE B - II - - EXCEPTIONS . . . . . . . . . . . . . . 5

SCHEDULE C - - CONTINUATION . . . . . . . . . . . . . . . 6

CONDITIONS . . . . . . . . . . . . . . . . . . . . 7

WS1 003794

FORM 26 - 84 - 82 (11/93)

ALTA COMMITMENT - PLAIN LANGUAGE
NJRB 3-02 (10-26-82)

F. . . ITY NATIONAL TITLE
Insurance Company of New York

## Schedule A

1. Effective Date: December 05, 1996          File No. CT-19154(A)

2. Policy or Policies to be issued:                    Policy Amount

    (a) ALTA Residential Policy - (Plain Language)     $   140,000.00

        Proposed Insured:

        DIMITAR D. DELIYSKI


    (b) ALTA Loan Policy (10/17/92)                    $   105,000.00

        Proposed Insured:

        National Home Funding, Inc., its successors and/or its
        assigns
        3443 Highway 9 North Freehold, NJ  07728

3. FEE SIMPLE  interest in the land described in this Commitment is owned, at the

    Commitment Date, by Cristo Property Management Ltd.  by deed from, Patricia
    Ann Denise Ambrose, dated  , recorded   , in the Monmouth County
    Clerk's/Register's office in deed book , page . (abot to be recorded).


4. The land referred to in this Commitment is described in Schedule A-4.


FORM 26-84-82 A (11/93)                              ALTA COMMITMENT - PLAIN LANGUAC
                                                     SCHEDULE A, NJRB 3-02 (10-26-82


**WS1 003795**

F͡    ITY NATIONAL TITLE
Insurance Company of New York

### Schedule A-4

File No.  CT-19154(A)

All that certain lot, piece of land, with the buildings and improvements thereon
erected, situate, lying and being in the  Borough of Red Bank,
County of Monmouth,     State of New Jersey:

Beginning at a point in the easterly side of South Pearl Street, 132.00 feet
South from the intersection of the southerly side of West Bergen Place and the
easterly side of South Pearl Street; thence

1.  along the easterly side of South Pearl Street, South 00 degrees 00 minutes
west 37.00 feet to a point; thence

2.  South 89 degrees 44 minutes east 136.35 feet to a point and the lands of
the Red Bank Board of Education; thence

3.  North 00 degrees 00 minutes east, and along the lands of the Red Bank
Board of Education 37 feet to a point which is also the southeasterly corner
of lands owned by Owen R. English; thence

4.  North 89 degrees 44 minutes west and along the lands of English, 136.35
feet to the easterly side of South Pearl Street and the point and place of
Beginning.

NOTE:  Being Lot(s) 49.02, Block 97.01, Tax Map of the Borough of Red Bank.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FORM 26-84-82 A-4(11/93)

ALTA COMMITMENT - PLAIN LANGUAC
SCHEDULE A-4, NJRB 3-02 (10-26-8

WS1 003796

F⁓ 'TY NATIONAL TITLE
Insurance Company of New York

### Schedule B - Section I

File No. CT-19154(A)

The following requirements must be met:

A. Documents satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded and properly indexed in the land records.

B. Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

C. Pay us the premiums, fees and charges for the policy.

D. You must tell us in writing the name of anyone not referred to in this Commitment who will make a loan on the land. We may then make additional requirements or exceptions.

E. Deed made by Cristo Property Management, Ltd. to the proposed insured(s) named in Schedule A, 2(a).

F. Mortgage made by purchaser(s) to the proposed insured(s) named in Schedule A, 2(b).

G. Proof is required as to the past and present marital status of the proposed grantors/mortgagors.

   NOTE: The spouse of the record owner must join in the proposed transaction, unless this is not the principal marital residence and was acquired subsequent to May 28, 1980. On any property acquired prior to May 28, 1980, the spouse must join in the proposed transaction regardless of whether it is the principal marital residence or not.

H. All taxes and other municipal liens are to be paid through and including the current quarter.

   NOTE: In the event the tax search reveals a senior citizen deduction or a veteran's deduction, a proper escrow must be established to safeguard in the event the deduction is disallowed. If it is to be disallowed, the deduction should be restored to the taxes when calculating your adjustment.

I. Municipal Lien and Unconfirmed Assessment Searches have been ordered, not yet received.

J. New Jersey Superior and U.S. District Court and County judgment searches are clear.

**WS1 003797**

K.  Subject to such facts which would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

NOTE:  There is a possibility that the mortgage being insured herein must include one of the following:

a.  Variable Rate Endorsement - Renegotiable or Adjustable.
b.  Negative Amortization Endorsement

There is an additional $25.00 charge for this endorsement and, if Negative Amortization is required, possibly an increase in premium. When this has been determined we are to be notified prior to closing in order to make the necessary amendment to the Title Commitment and our invoice.

NOTE:  This Policy will insure all facsimile copies of endorsements as originals.

NOTE:  The attached ALTA 9 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.  Special comprehensive title protection is afforded by said endorsement to the Mortgagee only.  Affirmative insurance to the Owners can be given on a line by line basis.  Please see Schedule B, Section 2.

NOTE:  The attached ALTA 8.1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  We require a copy of the closing statement be submitted with the closing package.

NOTE:  The attached ALTA 1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  Flood search is attached hereto and is provided as an accomodation only.  No liability is assumed for the results of said flood search.

L.  Receipt of proper corporate affidavit of title for Cristo Property Management Ltd.

M.  Certificate as to corporate resolution authorizing the proposed deed made by the proposed grantor is to be submitted.

FORM 26-84-82 81 (11/93)

ALTA COMMITMENT - PLAIN LANGUAGE
SCHEDULE B1, NJRB 3-02 (10-26-82

WSI 003798

F⁻  ITY NATIONAL TITLE
Insurance Company of New York

### Schedule B - Section II

File No.  CT-19154(A)

Any policy we issue will have the following exceptions unless they are  taken care of
to our satisfaction.

1.  Rights  or claims of parties in  possession of the land  not shown by the  public
    records; and encroachments, overlaps or boundary line disputes; and other matters
    any of  which would be  disclosed by a  survey of  the land  satisfactory  to the
    Company.

2.  Any liens on your title, arising  now or later, for labor and material not shown
    by the public record.

3.  Taxes, assessments and governmental utility liens as follows:

4.  Mortgages of record ( See Schedule B, Section 1 )

5.  Subsurface conditions or encroachments not disclosed by an instrument of
    record.  (Owner's Policy Only)

6.  Lien for unpaid taxes for the year 1996.

7.  Possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq.

    NOTE:  Policy insures that the alphabetical Indicies have been searched
    through the recording of the Deed and/or Mortgage, and same are properly
    indexed.

8.  Subject to rights of the utility company servicing the insured property for
    water, sewer, electric, telephone and cable television.

    NOTE:  Policy insures that the dwelling does not encroach on the utility lines
    and said utility lines do not interfere with the use and occupancy of the
    dwelling for residential purposes.

    NOTE:  This policy insures that the mortgage set forth under Schedule A hereof
    is a valid first lien on the property described therein.

WSI 003799

**Fidelity National Title**
INSURANCE COMPANY OF NEW YORK
Two Park Avenue / New York, New York 10016 / (212) 481-5858 / Fax: (212) 481-8747

ICS 5744-11175                                      Date:  December 23, 1996

To: National Home Funding, Inc., its successors and/or its
    assigns
    3443 Highway 9 North
    Freehold, NJ  07728

    Attention: Closing Department

         RE: Closing Service Letter
             Issuing Agent or Attorney whose conduct is covered:
             Stanley Yacker, Esquire

             330 Highway 34, Suite 3
             Matawan, NJ   07747

    File No: CT-19154(A)
Transaction: DIMITAR D. DELIYSKI

    Premises: 253 A PEARL STREET
              RED BANK

Dear Customer:

When title insurance of Fidelity National Title Insurance Company of New York is
specified for your protection in connection with the closing of the above described real
estate transaction in which you are to be a lender secured by a mortgage of an interest
in land, the Company, subject to the Conditions and Exclusions set forth below, hereby
agrees to reimburse you for actual loss incurred by you in connection with that closing
when conducted by the above named Issuing Agent (an agent authorized to issue title
insurance for the Company) of Fidelity National Title Insurance Company of New York or
the above named Attorney and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instruc-
   tions to the extent that they relate to: (a) the title to said interest in land or
   the validity, enforceability and priority of the lien of said mortgage on said
   interest in land, including the obtaining of documents and the disbursement of funds
   necessary to establish such title or lien; or (b) the collection and payment of funds
   due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in
   connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection
with a loan secured by a mortgage on a one-to-four family dwelling, which is the prin-
cipal residence of the borrower, shall be protected, but only to the extent of the fore-
going paragraph 2, as if this letter were addressed to your borrower. If you are a pur-
chaser of a one-to-four family dwelling, including a condominium unit, which is your
principal residence, and are paying cash for the purchase, you are protected, but only
to the extent of the foregoing paragraph 2.

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

Fidelity CSL -- Page 2

1. Failure of the Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics' and materialmen's liens in connection with a construction loan transaction, except to the extent that protection against such lien is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 2 Park Avenue, New York, N.Y. 10016. When failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F. Liability under this letter is limited to the amount of insurance committed for and is subject to all of the Conditions and Stipulations of the policy or policies committed to be issued by the Company. Any payment of loss under this letter shall constitute a payment under the policy.

THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK.

The protection under this Closing Service Letter is limited to the closing on the premises described in the caption of this Letter.

Fidelity National Title Insurance Company of New York

BY: _____
　　 Robert F. Agel, President
　　 Coastal Title Agency, Inc.
　　 Agent



**Loan Policy of Title Insurance**

# Fidelity National Title Insurance Company
## of New York
A Stock Company

**POLICY NUMBER** **5412**-518219

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, a New York corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:*

1. *Title to the estate or interest described in Schedule A being vested other than as stated therein;*
2. *Any defect in or lien or encumbrance on the title;*
3. *Unmarketability of the title;*
4. *Lack of a right of access to and from the land;*
5. *The invalidity or unenforceability of the lien of the insured mortgage upon the title;*
6. *The priority of any lien or encumbrance over the lien of the insured mortgage;*
7. *Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:*
   a. *arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or*
   b. *arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;*
8. *The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.*

*The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.*

*IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.*
*IN THE EVENT THIS POLICY IS ISSUED IN SOUTH CAROLINA NOTICE IS HEREBY GIVEN THAT THIS POLICY IS SUBJECT TO ARBITRATION PURSUANT TOT HE PROVISIONS OF CHAPTER 48 OF TITLE 15 (SEC. 15-48 10 ET. SEQ.) OF THE SOUTH CAROLINA CODE OF LAWS, 1976, AS AMENDED.)*

FIDELITY NATIONAL TITLE INSURANCE COMPANY
OF NEW YORK

Countersigned_____
**Authorized Signature**
**(PLEASE PRINT NAME)**

SEAL

By: _____
President

Attest: *Charles H. Wimer*
Secretary

FORM 5412 (5/1/93)
Reprinted (1/96)

ALTA LOAN POLICY 1992 (10-17-92)

FY 005741

# EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

   (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or

   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:

      (a) to timely record the instrument of transfer; or

      (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

# CONDITIONS AND STIPULATIONS

## 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

   (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

   (ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

   (iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, ___ee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

   (i) the Amount of Insurance stated in Schedule A;

   (ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

   (iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent ___ prejudice.

CONDITIONS AND STIPULATIONS - ( Continued and Concluded on Last Page of this Policy )

FY 005742

P-20B ALTA Loan Policy

**COASTAL TITLE AGENCY, INC.**
PO Box 740   21 West Main Street
Freehold NJ 07728
(800) 521-0378  FAX# (908) 308-1881

**FILE NO.** CT-19154(a)

### SCHEDULE A

| Policy Number | Date of Policy | Amount of Insurance |
|---|---|---|
| 5412-518219 | 2/26/97 | $105,000.00 |

1.  **Name of Insured:**

    National Home Funding, Inc., its successors and/or assigns, as their interest may appear

2.  **The estate or interest in the land which is encumbered by the insured mortgage
    is:  FEE SIMPLE**

3.  **Title to the estate or interest in the land is vested in:**

    DIMITAR D DELIYSKI, UNMARRIED

4.  **The insured mortgage and assignments thereof, if any, are described as follows:**

    Mortgage made by DIMITAR D DELIYSKI, UNMARRIED  to  National Home Funding, Inc., , dated 12/31/96 and
    recorded 2/28/97 in the Monmouth County Clerk's Office in Mortgage Book 6144 Page 220 in the amount of
    $105,000.00.

5.  **The land referred to in this policy is described in Schedule A-4.**

### (SEE DESCRIPTION ATTACHED)

### **FIDELITY
NATIONAL TITLE
Insurance Company of New York**

P.71.NJL FOR USE WITH ALTA LOAN POLICY (4-6-90)
NJRB 2-05

FY 005743

# FIDELITY NATIONAL TITLE
## Insurance Company of New York

### Schedule A-4

File No.  CT-19154(A)

All that certain lot, piece of land, with the buildings and improvements thereon erected, situate, lying and being in the  Borough of Red Bank, County of Monmouth,     State of New Jersey:

Beginning at a point in the easterly side of South Pearl Street, 132.00 feet South from the intersection of the southerly side of West Bergen Place and the easterly side of South Pearl Street; thence

1.  along the easterly side of South Pearl Street, South 00 degrees 00 minutes west 37.00 feet to a point; thence

2.  South 89 degrees 44 minutes east 136.35 feet to a point and the lands of the Red Bank Board of Education; thence

3.  North 00 degrees 00 minutes east, and along the lands of the Red Bank Board of Education 37 feet to a point which is also the southeasterly corner of lands owned by Owen R. English; thence

4.  North 89 degrees 44 minutes west and along the lands of English, 136.35 feet to the easterly side of South Pearl Street and the point and place of Beginning.

NOTE:  Being Lot(s) 49.02, Block 97.01, Tax Map of the Borough of Red Bank.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

ALTA COMMITMENT - PLAIN LANG!
SCHEDULE A-4, NJRB 3-02 (10-2

FY 005744

**SCHEDULE B**

**POLICY NUMBER:** 5412-518219

**EXCEPTIONS FROM COVERAGE**

**This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:**

**PART I**

1.  **Encroachments, overlaps, boundary line disputes, and any other matters which would be disclosed by an accurate inspection of the premises. OMIT**

2.  Lien for unpaid taxes for the year 1997. (Taxes paid through date of closing) (Subsequent taxes not yet due and payable)

3.  Possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq. (None yet due and payable)

    NOTE:  Policy insures that the alphabetical Indicies have been searched through the recording of the Deed and/or Mortgage, and same are properly indexed.

4.  Subject to rights of the utility company servicing the insured property for water, sewer, electric, telephone and cable television.

    NOTE:  Policy insures that the dwelling does not encroach on the utility lines and said utility lines do not interfere with the use and occupancy of the dwelling for residential purposes.

    NOTE:  This policy insures that the mortgage set forth under Schedule A hereof is a valid first lien on the property described therein.

**Note: If there are matters which affect the title to the estate or interest in the land described in Schedule A-4, but which are subordinate to the lien of the insured mortgage, see PART II of Schedule B.**

**FIDELITY NATIONAL TITLE**
**Insurance Company of New York**

P71.B NJL FOR USE WITH ALTA LOAN POLICY (4-6-90)
NJRB 2.05

FY 005745

**SCHEDULE B**

**POLICY NUMBER**: 5412-518219

**PART II**

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to the lien or charge of the insured mortgage upon said estate or interest: NONE

**FIDELITY NATIONAL TITLE**
**Insurance Company of New York**

P61.BII FOR USE WITH ALTA LOAN POLICY (6-1-87)
NJRB 2-03
7/2/90

FY 005746

## FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK

### ENVIRONMENTAL PROTECTION LIEN ENDORSEMENT

Attached to and forming a part of Policy No. 5412-518219 of FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and  without knowledge, or  filed in the  records of the  clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

This endorsement will not insure against liens arising pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. subsequent to the effective date of this policy.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements,  nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

IN WITNESS WHEREOF, the Company has caused its corporate name and seal to be hereunto affixed by its duly authorized officers and countersigned on the date hereinafter set forth.

### FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK

**DATED:** 6/9/97

Countersigned: By:  William P. Foley, President

Attest:  Charles H. Wimer, Secretary

BY:_____
Authorized Signatory

ALTA ENDORSEMENT - Form 8.1 (Environmental Protection Lien -
to Accompany only ALTA Loan Policies
NJRB 5-17 (3-12-88) FOR USE IN NEW JERSEY ONLY
FORM 26-31-8.1-88 (11/93)

FY 005747

## FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK

### ENDORSEMENT

Attached to and forming a part of Policy No. 5412-518219 of FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK.

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:
Any incorrectness in the assurance that, at Date of Policy:
There are no covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.
Unless expressly excepted in Schedule B:
There are no present violations on the land of any enforceable covenants, conditions or restrictions, nor do any existing improvements on the land violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.
Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land does not, in addition, (i) establish an easement on the land; (ii) provide a lien for liquidated damages; (iii) provide for a private charge or assessment; (iv) provide for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.
There is no encroachment of existing improvements located on the land onto adjoining land, nor any encroachment onto the land of existing improvements located on adjoining land.
There is no encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.
There are no notices of violation of covenants, conditions or restrictions relating to environmental protection recorded or filed in the public records.
Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the insured, provided the violation results in:
Impairment or loss of the lien of the insured mortgage; or,
Loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the mortgage.
Damage to existing improvements (including lawns, shrubbery or trees)
Which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved;
Which results from the future exercise of any right to use the surface of the land for the extraction or development minerals excepted from the description of the land or excepted in Schedule B.
Any final court order or judgment requiring the removal from any land of any encroachment excepted in Schedule B.
Any final court order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat or subdivision recorded or filed in the public records.
Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraphs 1 (b) (1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

IN WITNESS WHEREOF, the Company has caused its corporate name and seal to be hereunto affixed by its duly authorized officers and countersigned on the date hereinafter set forth.

DATED: 6/9/97
Countersigned:

FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK

By: William P. Foley, President
Attest: Charles H. Wimer, Secretary

_____
Authorized Signatory

ALTA ENDORSEMENT FORM 9 RESTRICTIONS, ENCROACHMENTS, MINERALS(REV. 3-27-92) NJRB 5-30
FORM 26-9.0-92 (11/93)

## STREET ASSESSMENT ENDORSEMENT
### (NEW JERSEY)

#### ISSUED BY

### Fidelity National Title Insurance Company
### of New York

Attached to Policy Number 5412-518219

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

      any assessments for street or other municipal improvements authorized, under construction, or completed at Date of Policy not excepted in Schedule B which now have gained or hereafter may gain priority over the lien of the insured mortgage.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

This endorsement shall not be valid or binding until signed by an authorized signature as designed below.

Signed 6/9/97.

                                       **Fidelity National Title Insurance Company**
                                       **of New York**

Countersigned:

By: _____
      Authorized Officer or Agent

2355
ALTA Endorsement - Form 1

CONDITIONS AND STIPULATIONS - ( Continued from Reverse Side of Policy Face )

**4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5. PROOF OF LOSS OR DAMAGE**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner

of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a (i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7. DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8. LIMITATION OF LIABILITY**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

FY 005750

CONDITIONS AND STIPULATIONS - ( Continued and Concluded From Reverse Side )

**10. LIABILITY NONCUMULATIVE**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11. PAYMENT OF LOSS**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12. SUBROGATION UPON PAYMENT OR SETTLEMENT**
**(a) The Company's Right of Subrogation.**

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

**(b) The Insured's Rights and Limitations.**

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

**(c) The Company's Rights Against Non-insured Obligors.**

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13. ARBITRATION**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15. SEVERABILITY**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16. NOTICES, WHERE SENT**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at:  2 Park Avenue, New York, NY 10016



Fidelity National Title Insurance Company
2 Park Avenue, New York, NY 10016

FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK

**EXHIBIT 55**

# INFORMATION SHEET

The Title Insurance Commitment is a legal contract between you and Commonwealth Land Title Insurance Company. It is issued to show the basis on which we will issue a Title Insurance Policy to you. The Policy will insure you against certain risks to the land title, subject to the limitations shown in the Policy.

The Company will give you a sample of the Policy Form, if you ask.

The Commitment is based on the land title as of the Commitment Date. Any changes in the land title or the transaction may affect the Commitment and the Policy.

The Commitment is subject to its Requirements, Exceptions and Conditions.

**THIS INFORMATION IS NOT PART OF THE TITLE INSURANCE COMMITMENT.**

**YOU SHOULD READ THE COMMITMENT VERY CAREFULLY.**

If you have any questions about the commitment, contact the Issuing Agent.

## TABLE OF CONTENTS

|  | Page |
|---|---|
| AGREEMENT TO ISSUE POLICY | 2 |
| SCHEDULE A | Insert |
| 1. Commitment Date | |
| 2. Policies to be Issued, Amounts and Proposed Insureds | |
| 3. Interest in the Land and Owner | |
| 4. Description of the Land | |
| SCHEDULE B-I — REQUIREMENTS | Insert |
| SCHEDULE B-II — EXCEPTIONS | Insert |
| CONDITIONS | 3 |

ISSUED BY
COMMONWEALTH LAND TITLE INSURANCE COMPANY

COMMITMENT FOR TITLE INSURANCE

**Commonwealth**

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Countersigned

By _____
Authorized Officer or Agent

By: _____ President

Attest: _____ Secretary

American Land Title Association Commitment - 1982
NJBR 3-02

WS1 004272

COMMONWEALTH LAND
TITLE INSURANCE CO. 'ANY
A Reliance Group Holding, Company

**TITLE INSURANCE COMMITMENT**

**SCHEDULE A**

Commitment No.

1. Commitment Date: November 10, 1996          File No.  CT-18919(A)

2. Policy or Policies to be issued:                                    Policy Amount

   (a) [ X ] ALTA Residential Title Insurance Policy         $
             One-to-Four Family Residences (6/1/87)
       [   ] ALTA Owner -- (4/6/92)                          $ 115,000.00

   Proposed Insured:

   KIMBERLY E. POWELL

   (b) [ X ] ALTA Loan Policy                                $   86,250.00
             (10/17/92)

   Proposed Insured:  National Home Funding, Inc.,
                      its successors and/or assigns
                      3443 Highway 9 North
                      Freehold, New Jersey 07728

3. FEE SIMPLE interest in the land described in this Commitment is owned, at the
   Commitment Date, by G.J.L. Ltd.   by deed from, Abdul Ghani Taha ,
   dated  , recorded  . in the Monmouth County Clerk's/Register's office
   in deed book , page . (about to be recorded).

4. The land referred to in this Commitment is in the County of Monmouth,
   City of Asbury Park,  State of New Jersey and is described as follows:

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660, (800) 521-0378, (908) 775-5543, FAX# (908) 308-1881

WS1 004273

**COMMONWEALTH LAND
TITLE INSURANCE COMPANY**
A Reliance Group Holdings Company

**TITLE INSURANCE COMMITMENT**

Commitment No.

File No. CT-18919(A)

### DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Asbury Park, County of Monmouth and state of New Jersey, being more particularly described as follows:

Beginning at an iron pin with cap set in the easterly line of DeWitt Avenue distant southerly 325.00 feet from the intersection of the easterly line of DeWitt Avenue with the southerly line of Lake Avenue and running; thence

1.  South 64 degrees 00 minutes East, 150.00 feet to an iron pin with cap set; thence

2.  South 26 degrees 00 minutes West, 25.00 feet to an iron pin with cap set; thence

3.  North 64 degrees 00 minutes West, 150.00 feet to a cap found in the easterly line of DeWitt Avenue; thence

4.  Along the easterly line of DeWitt Avenue, North 26 degrees 00 minutes East, 25.00 feet to the point and place of Beginning.

The above description is drawn in accordance with a survey prepared by Thomas M. Ernst & Associates, Inc., dated January 23, 1994.

NOTE:  Being Lot 10 in Block 91 on the Tax Map of the City of Asbury Park, Monmouth County.

**Issued By:
COASTAL TITLE AGENCY, INC.**
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

WS1 004274

**COMMONWEALTH LAND**
**TITLE INSURANCE CO.. ANY**
**A Reliance Group Holdings Company**

**TITLE INSURANCE COMMITMENT**

### SCHEDULE B - SECTION 1

Commitment No.

File No. CT-18919(A

### REQUIREMENTS

The following requirements must be met:

(a) Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

(b) Pay us the premiums, fees and charges for the policy.

(c) Document(s) satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded:

    1. Deed made by G.J.L. Ltd. to the proposed insured(s) named in Schedule A, 2(a).

    2. Mortgage made by purchaser(s) to the proposed insured(s) named in Schedule A, 2(b).

(d) You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

(e) Proof is required as to the past and present marital status of the proposed grantors/mortgagors.

    NOTE: The spouse of the record owner must join in the proposed transaction, unless this is not the principal marital residence and was acquired subsequent to May 28, 1980. On any property acquired prior to May 28, 1980, the spouse must join in the proposed transaction regardless of whether it is the principal marital residence or not.

(f) All taxes and other municipal liens are to be paid through and including the current quarter.

    NOTE: In the event the tax search reveals a senior citizen deduction or a veteran's deduction, a proper escrow must be established to safeguard in the event the deduction is disallowed. If it is to be disallowed, the deduction should be restored to the taxes when calculating your adjustment.

(g) Municipal Lien and Unconfirmed Assessment searches are attached hereto and made a part hereof.

(h) Subject to such facts which would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

WS1 004275

NOTE:  There is a possibility that the mortgage being insured herein must include one of the following:

a.  Variable Rate Endorsement - Renegotiable or Adjustable.
b.  Negative Amortization Endorsement

There is an additional $25.00 charge for this endorsement and, if Negative Amortization is required, possibly an increase in premium. When this has been determined we are to be notified prior to closing in order to make the necessary amendment to the Title Commitment and our invoice.

NOTE:  This Policy will insure all facsimile copies of endorsements as originals.

NOTE:  The attached ALTA 9 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.  Special comprehensive title protection is afforded by said endorsement to the Mortgagee only.  Affirmative insurance to the Owners can be given on a line by line basis.  Please see Schedule B, Section 2.

NOTE:  The attached ALTA 8.1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  We require a copy of the closing statement be submitted with the closing package.

NOTE:  The attached ALTA 1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE:  Flood search is attached hereto and is provided as an accomodation only.  No liability is assumed for the results of said flood search.

(i)  Receipt of proper corporate affidavit of title for G.J.L Ltd.

(j)  Certificate as to corporate resolution authorizing the proposed deed made by the proposed grantor is to be submitted.

Schedule B-Section 1
Form No. 1106-3

WS1 004276

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

**TITLE INSURANCE COMMITMENT**

## SCHEDULE B - SECTION II

Commitment No.

File No. CT-18919(A

### EXCEPTIONS

Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction.

1. Rights or claims of parties in possession of the land not shown by the public record.

2. Easements, or claims of easements, not shown by the public record.

3. Any facts about the land which a correct survey would disclose, and which are not shown by the public record.

4. Any liens on your title, arising now or later, for labor and material not shown by the public record.

5. Taxes, charges and assessments:

6. Subsurface conditions or encroachments not disclosed by an instrument of record. (Owner's Policy Only)

7. Lien for unpaid taxes for the year 1996.

8. Possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq.

NOTE: Policy insures that the alphabetical Indicies have been searched through the recording of the Deed and/or Mortgage, and same are properly indexed.

CONTINUED

WS1 004277

9.  Subject to rights of the utility company servicing the insured property for
    water, sewer, electric, telephone and cable television.

    NOTE:  Policy insures that the dwelling does not encroach on the utility lines
    and said utility lines do not interfere with the use and occupancy of the
    dwelling for residential purposes.

    NOTE:  This policy insures that the mortgage set forth under Schedule A
    hereof is a valid first lien on the property described therein.

Countersigned: _____
                     Authorized Signatory

                                    Page 5

Schedule B-Section II                                        NJRB 3-02
Form No. 1106-6                                              10-15-82

WSI 004278

**Fidelity National Title**
INSURANCE COMPANY OF NEW YORK
Two Park Avenue / New York, New York 10016 / (212) 481-5858 / Fax: (212) 481-8747

ICS 5744-11131                                             Date: December 06, 1996

To: National Home Funding, Inc., its successors and/or
    assigns, as their interest may appear
    3443 Highway 9 North
    Freehold, New Jersey 07728

    Attention: Closing Department

        RE: Closing Service Letter
            Issuing Agent or Attorney whose conduct is covered:
            Stanley Yacker, Esquire

            330 Highway 34, Suite 3
            Matawan, NJ   07747

    File No: CT-18919(A)
Transaction: KIMBERLY E. POWELL

    Premises: 30 DEWITT AVENUE


Dear Customer:

When title insurance of Fidelity National Title Insurance Company of New York is
specified for your protection in connection with the closing of the above described real
estate transaction  in which you are to be a lender secured by a mortgage of an interest
in land, the Company, subject to  the Conditions and Exclusions set  forth below, hereby
agrees to reimburse you for actual loss incurred by you in connection  with that closing
when  conducted  by the  above named Issuing Agent  (an agent authorized to  issue title
insurance for the Company) of  Fidelity National Title Insurance  Company of New York or
the above named Attorney and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instruc-
   tions to the extent that  they relate to:  (a) the title to said interest  in land or
   the validity, enforceability and priority of the  lien of said mortgage on  said
   interest in land, including the obtaining of documents and the  disbursement of funds
   necessary to establish such title or lien; or (b) the collection and payment of funds
   due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in
   connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection
with a loan secured by a mortgage  on a one-to-four family dwelling,  which is the prin-
cipal residence of the borrower, shall be protected, but only to the extent of the fore-
going paragraph 2, as if this letter were addressed to your borrower.  If you are a pur-
chaser of a  one-to-four  family dwelling,  including a condominium unit,  which is your
principal residence, and are paying cash for the purchase,  you are protected,  but only
to the extent of the foregoing paragraph 2.

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

WSWT 000680

Fidelity CSL -- Page 2     

1. Failure of the Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics' and materialmen's liens in connection with a construction loan transaction, except to the extent that protection against such lien is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 2 Park Avenue, New York, N.Y. 10016. When failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F. Liability under this letter is limited to the amount of insurance committed for and is subject to all of the Conditions and Stipulations of the policy or policies committed to be issued by the Company. Any payment of loss under this letter shall constitute a payment under the policy.

THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK.

The protection under this Closing Service Letter is limited to the closing on the premises described in the caption of this Letter.

Fidelity National Title Insurance Company of New York

BY: _____
Robert F. Agel, President
Coastal Title Agency, Inc.
Agent

WSWT 000681

**EXHIBIT 56**

# INFORMATION SHEET

The Title Insurance Commitment is a legal contract between you and Commonwealth Land Title Insurance Company. It is issued to show the basis on which we will issue a Title Insurance Policy to you. The Policy will insure you against certain risks to the land title, subject to the limitations shown in the Policy.

The Company will give you a sample of the Policy Form, if you ask.

The Commitment is based on the land title as of the Commitment Date. Any changes in the land title or the transaction may affect the Commitment and the Policy.

The Commitment is subject to its Requirements, Exceptions and Conditions.

**THIS INFORMATION IS NOT PART OF THE TITLE INSURANCE COMMITMENT.**

**YOU SHOULD READ THE COMMITMENT VERY CAREFULLY.**

If you have any questions about the commitment, contact the Issuing Agent.

## TABLE OF CONTENTS

| | Page |
|---|---|
| AGREEMENT TO ISSUE POLICY | 2 |
| SCHEDULE A | Insert |
|    1. Commitment Date | |
|    2. Policies to be Issued, Amounts and Proposed Insureds | |
|    3. Interest in the Land and Owner | |
|    4. Description of the Land | |
| SCHEDULE B-I — REQUIREMENTS | Insert |
| SCHEDULE B-II — EXCEPTIONS | Insert |
| CONDITIONS | 3 |

ISSUED BY
COMMONWEALTH LAND TITLE INSURANCE COMPANY

COMMITMENT FOR TITLE INSURANCE

**Commonwealth**

WSI 025458        COMMONWEALTH LAND TITLE INSURANCE COMPANY

Countersigned

By _____        By _____
Authorized Officer or Agent                                    President

Attest: _____
                                                      Secretary

American Land Title Association Commitment - 1982

**COMMONWEALTH LAND**
**TITLE INSURANCE COMPANY**
**A Reliance Group Holdings Company**

**TITLE  INSURANCE  COMMITMENT**

## SCHEDULE A

Commitment No.

1.  Commitment Date:  October 20, 1996         File No.  CT-18801(A)

2.  Policy or Policies to be issued:                    Policy Amount

    (a) [ X ] ALTA Residential Title Insurance Policy          $          150,000
           One-to-Four Family Residences (6/1/87)
      [   ] ALTA Owner -- (4/6/92)                               $

    Proposed Insured:

    THOMAS OWENS

    (b) [ X ] ALTA Loan Policy                                  $          105,000.
           (10/17/92)

    Proposed Insured: National Home Funding, Inc., its successors and/or
                 assigns, as their interest may appear
                 3443 Highway 9 North
                 Freehold, New Jersey 07728

3.  FEE SIMPLE interest in the land described in this Commitment is owned, at the
    Commitment Date, by Cristo Property Management, Ltd.,   by deed from
    Robert D. Marshall and Bernadetto Marshall, his wife, dated
    recorded          ,         , in the Monmouth County Clerk's/Register's office in
    deed book , page (about to be recorded).

4.  The land referred to in this Commitment is in the County of Monmouth,
    Borough of Red Bank.  State of New Jersey and is described as follows:

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660, (800) 521-0378, (908) 775-5543, FAX#-(908) 308-1881

WSI 025459

**COMMONWEALTH LAND**
**TITLE INSURANCE COMPANY**
**A Reliance Group Holdings Company**

**TITLE INSURANCE COMMITM**

Commitment No.

File No. CT-18801(A)

### DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the Borough of Red Bank, County of Monmouth and state of New Jersey, being more particularly described as follows:

Being known and designated as Lot 6 in Block 67 on the Tax Map of the Borough of Red Bank.

Beginning at a point in the southerly line of Herbert Street, distant therein 281.66 feet easterly along the same from its intersection with the easterly line of Leighton Avenue, said point being also the northwest corner of premises conveyed to Laurett Cade by DBK 439, Page 471 and running; thence

1. Along the southerly line of Herbert Street, South 86 degrees 30 minutes West 32.33 feet to a point; said point being distant 249.33 feet easterly along said southerly line of Herbert Street from its intersection with the easterly line of Leighton Avenue; thence

2. South 03 degrees 45 minutes East, 204.00 feet to a point; thence

3. North 86 degrees 30 minutes East, 32.33 feet to a point in the westerly line of said premises now or formerly of Cade; thence

4. Along the westerly line of said premises now or formerly of Cade, North 03 degrees 45 minutes West, 204.00 feet to the point and place of Beginning.

NOTE: Being Lot(s) 6, Block 67, Tax Map of the Borough of Red Bank.

**Issued By:**
**COASTAL TITLE AGENCY, INC.**
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660   (800) 521-0378   (908) 775-5543   FAX #(908) 308-1881

**WS1 025460**

**COMMONWEALTH LAND**
**TITLE INSURANCE COMPANY**
**A Reliance Group Holdings Company**

**TITLE INSURANCE COMMITMENT**

### SCHEDULE B – SECTION 1

Commitment No.

File No. CT-18801(A

### REQUIREMENTS

The following requirements must be met:

(a) Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

(b) Pay us the premiums, fees and charges for the policy.

(c) Document(s)  satisfactory to us creating the interest  in the land and/or the mortgage to be insured must be signed, delivered and recorded:

1.  Deed made by Cristo Property Mangement, Ltd., to the proposed insured(s) named in Schedule A, 2(a).

2.  Mortgage made by purchaser(s) to the proposed insured(s) named in Schedule A, 2(b).

(d) You  must tell us  in writing  the name  of anyone  not referred  to  in this Commitment  who will get an interest  in the land or who will  make a loan on the land. We may then make additional requirements or exceptions.

(e) Proof is required as to the past and present marital status of the proposed grantors/mortgagors.

NOTE:  The spouse of the record owner must join in the proposed transaction, unless this is not the principal marital residence and was acquired subsequent to May 28, 1980.  On any property acquired prior to May 28, 1980, the spouse must join in the proposed transaction regardless of whether it is the principal marital residence or not.

(f) All taxes and other municipal liens are to be paid through and including the current quarter.

NOTE: In the event the tax search reveals a senior citizen deduction or a veteran's deduction, a proper escrow must be established to safeguard in the event the deduction is disallowed.  If it is to be disallowed, the deduction should be restored to the taxes when calculating your adjustment.

(g) Municipal Lien and Unconfirmed Assessment Searches have been ordered, not yet received.

(h) County judgment search is clear.

(i) New Jersey Superior and U.S. District Court judgment search discloses a judgment or judgments which are to be cancelled of record or disposed of by a specific affidavit which is to be submitted.

WSI 025461

(j) Subject to such facts which would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

NOTE: There is a possibility that the mortgage being insured herein must include one of the following:

a. Variable Rate Endorsement - Renegotiable or Adjustable.
b. Negative Amortization Endorsement

There is an additional $25.00 charge for this endorsement and, if Negative Amortization is required, possibly an increase in premium. When this has been determined we are to be notified prior to closing in order to make the necessary amendment to the Title Commitment and our invoice.

NOTE: This Policy will insure all facsimile copies of endorsements as originals.

NOTE: The attached ALTA 9 Specimen Endorsement will be made a part of the Mortgage Policy to be issued. Special comprehensive title protection is afforded by said endorsement to the Mortgagee only. Affirmative insurance to the Owners can be given on a line by line basis. Please see Schedule B. Section 2.

NOTE: The attached ALTA 8.1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE: We require a copy of the closing statement be submitted with the closing package.

NOTE: The attached ALTA 1 Specimen Endorsement will be made a part of the Mortgage Policy to be issued.

NOTE: Flood search is attached hereto and is provided as an accomodation only. No liability is assumed for the results of said flood search.

(k) Receipt of proper corporate affidavit of title for Cristo Property Management, Ltd.

(l) Certificate as to corporate resolution authorizing the proposed deed made by the proposed grantor is to be submitted.

Schedule B-Section 1
Form No. 1106-3

WSI 025462

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

**TITLE INSURANCE COMMITMENT**

### SCHEDULE B – SECTION II

Commitment No.

File No. CT-18801(A

### EXCEPTIONS

Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction.

1. Rights or claims of parties in possession of the land not shown by the public record.

2. Easements, or claims of easements, not shown by the public record.

3. Any facts about the land which a correct survey would disclose, and which are not shown by the public record.

4. Any liens on your title, arising now or later, for labor and material not shown by the public record.

5. Taxes, charges and assessments:

6. Subsurface conditions or encroachments not disclosed by an instrument of record. (Owner's Policy Only)

7. Lien for unpaid taxes for the year 1996.

8. Possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq.

   NOTE: Policy insures that the alphabetical Indicies have been searched through the recording of the Deed and/or Mortgage, and same are properly indexed.

CONTINUED

WS1 025463

9.  Subject to rights of the utility company servicing the insured property for water, sewer, electric, telephone and cable television.

NOTE:  Policy insures that the dwelling does not encroach on the utility lines and said utility lines do not interfere with the use and occupancy of the dwelling for residential purposes.

NOTE:  This policy insures that the mortgage set forth under Schedule A hereof is a valid first lien on the property described therein.

Countersigned: _____
                Authorized Signatory

Page 5

Schedule B-Section II
Form No. 1106-6

NJRB 3-02
10-15-82

WS1 025464

**Commonwealth**
Land Title Insurance Company



Audit No. X01-021069

Date:  December 18, 1996

To: National Home Funding, Inc., its successors and/or
assigns, as their interest may appear
3443 Highway 9 North
Freehold, New Jersey 07728
Attention: Closing Department

RE: Closing Service Letter
Issuing Agent or Attorney whose conduct is covered:
Stanley Yacker, Esquire
330 Highway 34, Suite 3
Matawan, NJ   07747

File No: CT-18801(A)
Transaction: THOMAS OWENS
Premises: 101 HERBERT STREET


Dear Customer:

When title insurance of Commonwealth Land Title  Insurance Company is specified  for your
protection in connection with the closing of the above  described real estate transaction
in which  you are  to be  a lender  secured  by a  mortgage of an  interest in land, the
Company, subject to the  Conditions and Exclusions set  forth below, hereby agrees to re-
imburse you for actual loss  incurred by you in connection  with  that closings when con-
ducted by the  above named Issuing Agent  (an agent  authorized to issue  title insurance
for the Company) of Commonwealth Land Title Insurance Company or the above named Attorney
and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instruc-
   tions to the extent that  they relate to:  (a) the title to said interest  in land or
   the  validity,  enforceability and  priority  of the  lien of said  mortgage on  said
   interest in land, including the obtaining of documents and the  disbursement of funds
   necessary to establish such title or lien, or (b) the collection and payment of funds
   due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in
   connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection
with a loan secured by a mortgage  on a one-to-four family dwelling,  which is the prin-
cipal residence of the borrower, shall be protected, but only to the extent of the fore-
going paragraph 2, as if this letter were addressed to your borrower.  If you are a pur-
chaser of a one-to-four  family dwelling,  including a  condominium unit,  which is your
principal residence, and are paying cash for the purchase, you are protected,  but only
to the extent of the foregoing paragraph 2.

*NEW JERSEY LAND TITLE*                                          NJRB 6-04
*INSURANCE RATING BUREAU*                                        8/1//94


WSWT 000500



CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

1. Failure of the Attorney to comply with your closing instructions which require require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics' and materialmen's liens in connection with a construction loan transaction, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instrutions to the Attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 8 Penn Center, Philadelphia, Pennsylvania 19103. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF COMMONWEALTH LAND TITLE INSURANCE COMPANY.

The protection under this Letter is limited to the closing on the premises described in the caption of this Letter.

*Commonwealth Land Title Insurance Company*

BY: _____
Robert F. Agel, President
Coastal Title Agency, Inc.
Agent

*NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU*

NJRB 6-04
8/1/94

WSWT 000501

ISSUED BY
COMMONWEALTH LAND TITLE INSURANCE COMPANY

**Commonwealth**

LOAN POLICY OF TITLE INSURANCE

POLICY NUMBER

F89-353163

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Pennsylvania corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, COMMONWEALTH LAND TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Attest: *James J. W. Lynch Jr.*        By: *[signature]*

Secretary                                                President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

PA 20
ALTA Loan Policy (10-17-92)
**Form 1191-2A** Face Page

ORIGINAL

Valid Only If Schedules A and B and Cover Are Attached

COM 18401

Issued with Policy No. 187-082856

COMMONWEALTH LAND
  TITLE INSURANCE COMPANY
    A Reliance Group Holdings Company

POLICY OF TITLE INSURANCE

POLICY NUMBER   F89-353163

SCHEDULE A

Amount of Insurance  $105,000.00

File No.  CT-18801(a)

Premium: Simultaneous Issue

Date of Policy  4/8/97

1.  Name of Insured:

    National Home Funding, Inc., its successors and/or assigns, as their interest may appear

2.  The estate or interest in the land described in this Schedule and which is encumbered by the insured mortgage
    is: Fee Simple and is at Date of Policy vested in:

    THOMAS OWENS, UNMARRIED

3.  The mortgage, herein referred to as the insured mortgage, and the assignments thereof, if any, are described
    as follows:

    Mortgage made by THOMAS OWENS to National Home Funding, Inc., , dated 12/31/96 and recorded 4/8/97 in the
    Monmouth County Clerk's Office in Mortgage Book 6166 Page 691 in the amount of $101,500.00.

4.  The land referred to in this policy is described as set forth in the insured mortgage, is situated in the Monmouth
    County , Borough of Red Bank, State of New Jersey and is identified as follows:

    (SEE DESCRIPTION ATTACHED)

Countersigned: _____
                 Authorized Officer or Agent

ALTA Loan/Construction Loan
Schedule A
FORM 1191 -13