# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | Civil Action No. 97-cv-3496 (DRD)(MAS) |
| Plaintiff, | |
| v. | Hon. Dickinson R. Debevoise, U.S.S.D.J. |
| | Hon. Michael A. Shipp, U.S.M.J. |
| CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, et al., | |
| Defendants. | |

---

**DEFENDANT COMMONWEALTH LAND TITLE INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING PLAINTIFF'S CLAIMS FOR DAMAGES RESULTING FROM LOSS OF MERGER AND/OR FOR ITS OWN DIMINUTION IN VALUE**

---

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant
  Commonwealth Land Title
  Insurance Company

Of Counsel
    David R. Kott
    Steven A. Beckelman

On the Brief
    David R. Kott, Steven A. Beckelman,
    & Sara F. Merin

ME1 12314745v.4

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

CONCISE STATEMENT OF FACTS ....................................................................3

ARGUMENT .............................................................................................................4

I.   WALSH CANNOT RECOVER DAMAGES FOR LOSSES THAT
     WERE NOT FORESEEABLE AT THE TIME THE CLOSING
     SERVICE LETTERS WERE ISSUED ...........................................................4

     1.  No Loss of Merger Damages or Damages for Diminution in
         Walsh's Value Can be Recovered, Because Walsh Cannot
         Establish that Those Damages Were Foreseeable by Both
         Parties at the Time Each Contract Was Made ...........................................5

     2.  There is No Evidence of Foreseeability of the Loss of Merger
         Damages or of Damages from Walsh's Diminution in Value ...................9

II.  WALSH HAS NO STANDING TO PURSUE DAMAGES
     ARISING FROM THE TERMINATION OF THE WALSH/RBMG
     MERGER AGREEMENT ..........................................................................13

III. THE STANDARD OF REVIEW ON SUMMARY JUDGMENT..............16

CONCLUSION ......................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..........................................................................16

*Design Strategies, Inc., v. Davis*,
   355 F. Supp. 2d. 715 (S.D.N.Y. 2005) .........................................14, 15

*Donovan v. Bachstadt*,
   91 N.J. 434 (1982) ..............................................6, 9, 11, 12, 13

*First American Title Insurance Company v. Vision Mortgage Corp.*,
   298 N.J. Super. 138 (App. Div. 1997) .................................12

*Flag Serv. & Maint., Inc. v. Kirchner Truck & Equip.*,
   No. A-2980-08T3, 2010 N.J. Super. Unpub. LEXIS 1610
   (App. Div. July 2, 2010). .........................................7, 9, 12

*Groman v. Twp. of Manalapan*,
   47 F.3d 628 (3d Cir. 1995) .........................................16

*Jaasma v. Shell Oil Company*,
   412 F.3d 501 (3d Cir. 2005) ...........................................6

*Lockwood Graders of Idaho, Inc. v. Neibaur*,
   326 P.2d 675 (Idaho 1958) ..............................................8

*Main Road Bakery, Inc. v. Consolidated Freightways, Inc.*,
   799 F. Supp. 26 (D.N.J. 1992).......................................7, 9, 12

*Mansfield v. Trailways, Inc.*,
   732 S.W.2d 547 (Mo. Ct. App. S.D. 1987) ............................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).....................................................16

*Menorah Chapels at Millburn v. Needle*,
   386 N.J. Super. 100 (App. Div.), *certif. denied*, 188 N.J. 489 (2006) ................7

ME1 12314745v.4

*Milanowicz v. The Raymond Corp.*,
    148 F. Supp. 2d 525 (D.N.J. 2001) .................................................................... 16

*Ohoud Establishment for Trade and Contracts v. Tri-State Contracting &*
    *Trading Corp.*,
    523 F. Supp. 249 ( D.N.J. 1981) ..................................................... 8, 9, 10, 11, 12

*Pickett v. Lloyd's*,
    131 N.J. 457 (1993) .............................................................................................. 7

*Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co.*,
    191 N.J. 1 (2007) ............................................................................................. 6, 9

*Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.*,
    No. 97-cv-3496 (D.N.J. Dec. 16, 2009) (slip op.) ................................................ 5

*Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.*,
    No. 97-cv-3496 (D.N.J. Mar. 28, 2007) ............................................................... 5

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c)(2) ............................................................................................ 16

## PRELIMINARY STATEMENT

Defendant Commonwealth Land Title Insurance Company

("Commonwealth") submits this Brief, a Statement of Undisputed Material Facts,

and the Certification of Sara F. Merin in support of its motion for partial summary

judgment seeking dismissal, with prejudice, of Plaintiff Walsh Securities, Inc.'s

("Walsh") claims for damages resulting from the loss of a merger with Resource

Bancshares Mortgage Group, Inc. ("RBMG") and/or any claims for diminution of

Walsh's value.

Commonwealth issued closing service letters and title insurance policies to

National Home Funding ("NHF"), an originator of residential loans, in connection

with individual residential mortgage transactions. Walsh contends that

Commonwealth agreed to reimburse NHF if the agent or attorney failed to comply

with closing instructions or committed fraud in connection with NHF's funds or

misapplied NHF's funds. Based on the closing service letters, Walsh seeks

damages caused by fraudulent acts of closing attorneys and others. There is no

allegation that Commonwealth knew of or participated in any misconduct engaged

in by the closing attorneys and their cohorts. NHF assigned the closing service

letters to Walsh. Walsh had entered into an agreement of merger with RBMG that

was terminated after the fraudulent scheme was uncovered. Walsh claims it can

1

recover hundreds of millions in damages from Commonwealth and the other title insurance defendants for the loss of the merger with RBMG.

Walsh has not and cannot demonstrate that it is entitled to recovery of losses resulting from its failed merger with RBMG or to compensate for a diminution in value of Walsh itself.  As a matter of longstanding contract law, the merger damages were not a foreseeable consequence of a breach of the closing service letters, and the closing service letters did not expressly or otherwise indicate that the parties contemplated or allocated responsibility for such a remote risk.  Any diminution in value of Walsh is similarly remote.  Loss of merger damages or damages for Walsh's diminution in value are therefore beyond the scope of consequential damages available to Walsh.

A separate and independent basis to dismiss Walsh's claims for merger damages is lack of standing.  Plaintiff Walsh Securities, Inc. was not harmed by the failure of the merger with RBMG to be consummated – its shareholders were harmed.  Hence, Plaintiff does not have standing to recover loss of merger damages.

Partial summary judgment is therefore warranted in favor of Commonwealth on Walsh's claim for loss of merger damages and any claims for diminution in value, as Walsh cannot show an issue of material fact that would support its allegations or an award of the damages it seeks.

2

## CONCISE STATEMENT OF FACTS

Walsh alleges that it was injured by unlawful acts engaged in by a number of individuals and entities, other than Commonwealth, who arranged inflated appraisals and flip sales in order to procure mortgage loans to phony borrowers who transferred some or all of the proceeds to the malefactors.  A number of loans were "purchased by Walsh Securities from NHF [(a named defendant, now dismissed from this matter)] for amounts ranging up to eight times the preceding sales prices of the properties at issue."[1]  (*See* Fourth Am. Compl. ¶ 36 [document 302].)  Walsh claims that, after the allegations of fraud became public, Walsh and RBMG mutually agreed to terminate a merger agreement that had been in place between the two entities.  (*See* Merin Certif., Ex. A: Dep. of Robert Walsh (Apr. 9 & 23, 2010 & Sept. 30, 2011) ("R. Walsh Dep.") 609:17-610:10; Ex. C: Press

---

[1] Ironically, Walsh's own senior management and employees pleaded guilty to charges related to this scheme, with its National Sales Manager, Betty Ann DeMola, who is the sister of Walsh's principal owner, pleading guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. §371.  (*See* Merin Certif., Ex. J: Transcript of the Plea of Elizabeth Ann DeMola 17: 21-22:8 (Sept. 5, 2005); *see also* Merin Certif., Ex. K: Transcript of the Plea of Kellie O'Neill (Oct. 29, 1999) 15:22-16:3, 28:24-32:11, 38:15-23, 39:11-40:5(Oct. 29, 1999) (Ms. O'Neill was a loan processor at Walsh who pled guilty to conspiracy and wire fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 371); Ex. L: Transcript of the Plea of Anthony D'Apolito (Dec. 23, 1998) 11:14-21, 27:10-34:25 (Mr. D'Apolito was an account executive at Walsh who pled guilty to conspiracy to commit wire fraud and wire fraud).

ME1 12314745v.4

Release, "Resource Bancshares Mortgage Group, Inc. and Walsh Securities Jointly Report Termination of Merger Agreement" (Nov. 3, 1997).)

## ARGUMENT

**I.  WALSH CANNOT RECOVER DAMAGES FOR LOSSES THAT WERE NOT FORESEEABLE AT THE TIME THE CLOSING SERVICE LETTERS WERE ISSUED**

The largest component of Walsh's damage claim is based on its contention that it lost the benefit of the merger with RBMG as a result of the fraud and that, somehow, the title insurance defendants (which include Commonwealth) are liable to it for this alleged loss.  Since any loss relating to the merger – be it the loss of the merger itself or a diminution in Walsh's value – was not foreseeable when closing service letters were issued, the law will not permit this claim to be pursued. As a result, summary judgment on the damage claim relating to the proposed merger and/or any diminution in value of Walsh must be granted.

Losses from Walsh Securities' failed merger with RBMG and Walsh's diminution in value are simply too remote to be consequential damages of an alleged breach of Commonwealth's limited obligations under the closing service letters.  Each closing service letter was an individual contract between Commonwealth and mortgage originator NHF.  (*See* Pls.' Fourth Am. Compl., Ex. A: Sample Commonwealth Closing Service Letter to NHF.)  Walsh was the assignee of the loans and the closing service letters.  Each contract dealt with a

single specified property.  (*See id.*, Merin Certif, Ex. E: Summary of Loans.)

Consequently, each closing service letter related only to the actions of the closing

attorney at the specific closing.  (*See* Pls.' Fourth Am. Compl., Ex. A: Sample

Commonwealth Closing Service Letter to NHF.)  At the time each closing service

letter contract was made, future damages from a failed corporate merger of a

subsequent assignee of the letter simply were not foreseeable as a possible

consequence of a contractual breach.  A diminution of value of Walsh itself was

similarly unforeseeable as a consequence of a breach.  Such damages could not be

within the contemplation of Commonwealth or any theoretical "reasonable entity"

in its position and are not recoverable.  Nothing in the closing service letters

indicates expressly or otherwise that the parties ever contemplated or allocated

such remote risks.

### 1. No Loss of Merger Damages or Damages for Diminution in Walsh's Value Can be Recovered, Because Walsh Cannot Establish that Those Damages Were Foreseeable by Both Parties at the Time Each Contract Was Made

As established by previous decisions of this Court, Walsh's claims against

the title insurance companies sound solely in contract.  *See Walsh Securities, Inc.*

*v. Cristo Property Mgmt., Ltd.*, No. 97-cv-3496 (D.N.J. Dec. 16, 2009) (slip op. at

8-13); *Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.*, No. 97-cv-3496

(D.N.J. Mar. 28, 2007).  Contractual compensatory damages serve "to put the

injured party in as good a position as he would have had if performance had been

rendered as promised[,]" *Donovan v. Bachstadt*, 91 N.J. 434, 444 (1982), and

"[w]hat that position is depends upon what the parties reasonably expected."

*Donovan*, *supra*, 91 N.J. at 444.  As a result, "the defendant is not chargeable for

loss that he did not have reason to foresee as a probable result of the breach when

the contract was made."  *Donovan*, *supra*, 91 N.J. at 444.  As explained by the

New Jersey Supreme Court, citing common law,

> Where two parties have made a contract which one of
> them has broken, the damages which the other party
> ought to receive, in respect to such breach, should be
> such as may fairly be considered either arising naturally,
> i.e., according to the usual course of things, from such
> breach of contract itself, or such as may reasonably be
> supposed to have been in the contemplation of both
> parties at the time they made the contract, as the probable
> result of the breach of it.

*Id.* at 444-45 (quoting *Hadley v. Baxendale*, 9 Ex. 341, 354 (1854)); *see Totaro,*

*Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co.,* 191 N.J. 1, 13 (2007);

*Jaasma v. Shell Oil Company*, 412 F.3d 501, 511 n.8 (3d Cir. 2005) (recognizing

that New Jersey has adopted the traditional rule set forth in *Hadley*).

The plaintiff bears the burden of proof in its attempt to recover

compensatory damages: it must demonstrate that the loss was "a reasonably certain

consequence of the breach[.]"  *Totaro, Duffy, Cannova and Co., L.L.C.*, *supra*, 191

N.J. at 14; *see also id.* at 15 (quoting *Donovan, supra*, 91 N.J. at 445 and

explaining that the non-breaching party is "obligated to prove, by a preponderance

of the evidence, that the losses it sought to recover were 'a reasonably certain consequence of the breach'"); *see Pickett v. Lloyd's*, 131 N.J. 457, 449, 481 (1993) (applying this principle); *Menorah Chapels at Millburn v. Needle,* 386 N.J. Super. 100, 115  (App. Div.), *certif. denied*, 188 N.J. 489 (2006) (a plaintiff must be able to establish "the foreseeability at the time the contract was made that such damage will arise from the breach of contract").

New Jersey's courts and courts around the country apply these principles to foreclose awards of damages that were not reasonably foreseeable consequences of a contractual breach.  *See Flag Serv. & Maint., Inc. v. Kirchner Truck & Equip.*, No. A-2980-08T3, 2010 N.J. Super. Unpub. LEXIS 1610, *14-*15 (App. Div. July 2, 2010) (non-breaching party failed to prove that lost profits and consequential damages for rental costs were a foreseeable result of the breach of a sales contract, so appellate court reversed trial court order awarding those damages); *Main Road Bakery, Inc. v. Consolidated Freightways, Inc.*, 799 F. Supp. 26, 28-29 (D.N.J. 1992) (applying the principles of *Hadley* in a federal Carmack Amendment matter and finding that plaintiff bakery's "claim for special damages must be dismissed because [defendant freight carrier] did not have notice at the time the bill of lading contract was made, on September 5, 1990, that its inability to deliver the bake oven on September 10, 1990 would result in these special damages"); *Mansfield v. Trailways, Inc.*, 732 S.W.2d 547 (Mo. Ct. App. S.D. 1987) (bus company could not

have reasonably foreseen that the lack of a usable restroom on the bus would cause plaintiff passenger to sustain bodily injury by falling down a stairway in the bus terminal); *Lockwood Graders of Idaho, Inc. v. Neibaur*, 326 P.2d 675 (Idaho 1958) (refusing to award damages for a farm's loss of potatoes based on rented farm equipment – a potato piler – not being fit for the use presented, finding that those damages were remote, speculative, and not within the contemplation of the parties). For further example, in *Ohoud Establishment for Trade and Contracts v. Tri-State Contracting & Trading Corp.*, 523 F. Supp. 249 ( D.N.J. 1981), an importer sought damages for "loss of other future sales not yet in existence with the same and other customers" stemming from the delivery of Pepsi that arrived in a defective condition. 523 F. Supp. 249, 255-57 (1981). The Court dismissed the claims, classifying the relief sought as "remote and speculative losses" that could not have reasonably been foreseen, *ibid.*, and explaining that damages sought by the importer, "would impose a liability entirely disproportionate to the act committed or to the failure to perform the duty assumed." *Id.* at 256. In an apt analogy, the Court reasoned,

> Although not authoritative, Poor Richards Almanac (1758) is illustrative:
>
> For want of a nail the shoe was lost;
>
> For want of a shoe the horse was lost;
>
> And for want of a horse the rider was lost;

8

> For the want of a rider the battle was lost;
>
> For the want of a battle the kingdom was lost;
>
> And all for the want of a horseshoe-nail.
>
> The court would have little difficulty in submitting the loss of the shoe, the horse, and probably the rider to a jury if caused by the sale of a defective nail or the failure to deliver the nail as agreed.  The loss of the battle creates a doubtful question, but the loss of the kingdom is so remote as to bar its submission to a jury.

*Ibid*.  The Court classified the damages claim that it rejected in that case as "the loss of their respective kingdoms that the claimants seek herein."  *Ibid*

### 2.    There is No Evidence of Foreseeability of the Loss of Merger Damages or of Damages from Walsh's Diminution in Value

The over $500 million in damages sought by Walsh for the loss of its merger with RBMG and/or for Walsh's diminution in value could not have been within the contemplation of Commonwealth at the time any of the closing service letters were issued to NHF.  As a result, Walsh cannot meet (and has not met) its burden of "demonstrat[ing] that the loss was a reasonably certain consequence of the breach[.]"  *See Totaro, Duffy, Cannova and Co., L.L.C.*, *supra*, 191 N.J. at 14, 15.  Summary judgment dismissing Walsh's claims for losses from the failed merger and/or for losses from its diminution in value is therefore warranted.  *See Donovan, supra*, 91 N.J. at 444-45; *Flag Serv. & Maint., Inc.*, *supra*, 2010 N.J. Super. Unpub. LEXIS 1610, at *14-*15; *Main Road Bakery, Inc.*, *supra*, 799 F. Supp. at

9

28-29; *Ohoud Establishment for Trade and Contracts*, *supra*, 523 F. Supp. at 255-57.

The closing service letters are devoid of any language that indicates that the parties contemplated or allocated responsibility for the remote risk of Walsh's failed merger with RBMG or for Walsh's value diminishing as the result of the unlawful scheme alleged.  Coverage under a closing service letter expressly extends only to certain risks related to the single residential mortgage loan at issue.  (*See*, *e.g.*, Pls.' Fourth Am. Compl., Ex. A: Sample Commonwealth Closing Service Letter to NHF; Merin Certif., Ex. E: Summary of Loans.)  The closing service letters only provided coverage for "the actual loss incurred by you in connection with that closing[]" subject to certain conditions and are expressly limited to situations "[w]hen title insurance of Commonwealth Land Title Insurance Company is specified for your protection in connection with the closing of the above described real estate transactions in which you are to be a lender secured by a mortgage of an interest in land[.]"  (*See* Pls.' Fourth Am. Compl., Ex. A: Sample Commonwealth Closing Service Letter to NHF.)  The closing service letters further provide that "any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the protection provided by this letter" and expressly

state that "[t]he protection under this Letter is limited to the closing on the premises described in the caption of this letter." (*Id.* at 2.)

Based on this language and the fact that the closing service letters were property-specific, it could not be reasonably foreseeable to Commonwealth – or to a theoretical "reasonable" entity in its shoes – that a single closing service letter specific to a single property, issued to NHF, and which was expressly limited to "actual loss incurred by you" could in any way provide coverage for the global risk of the merger between RBMG and Walsh falling through or for Walsh's diminution in value. *See Donovan*, *supra*, 91 N.J. at 444-45. The complete absence of any contractual language addressing or allocating for the risk of a failed merger or for a diminishment in Walsh's value further demonstrates that the closing service letters' coverage extending to encompass Walsh's failed merger or diminution in value could not "reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." *See id.* (quoting *Hadley, supra*, 9 Ex. at 354.) The losses are simply too remote. As in *Ohoud Establishment for Trade and Contracts*, Walsh is seeking damages for "loss of [its] kingdom[]" "for the want of a horseshoe-nail[,]" and those damages can in no way be the foreseeable result of any alleged breach of closing service letters nor were they in any way addressed in

11

those letters.  *See Ohoud Establishment for Trade and Contracts*, *supra*, 523 F. Supp. at 255.

Moreover, none of this is changed by the New Jersey Appellate Division's decision in *First American Title Insurance Company v. Vision Mortgage Corp.*, 298 N.J. Super. 138 (App. Div. 1997).  *Vision Mortgage* does not upset the foreseeability requirement that has been routinely applied in over 150 years of American common law.  In fact, *Vision Mortgage* is consistent with *Hadley v. Baxendale*, as the Court in *Vision Mortgage*, in effect, applied the common law foreseeability rule in awarding damages that were directly related to the single property in question based on the approved attorney's fraud.  *See Vision Mortgage Corp.*, *supra*, 298 N.J. Super. at 143-44; *see also Donovan*, *supra*, 91 N.J. at 444-45 (quoting *Hadley*, *supra*, 9 Ex. at 354) (setting out the foreseeability rule); *Flag Serv. & Maint., Inc.*, *supra*, 2010 N.J. Super. Unpub. LEXIS 1610, at *14-*15 (denying unforeseeable damages); *Main Road Bakery, Inc.*, *supra*, 799 F. Supp. at 28-29 (same); *Ohoud Establishment for Trade and Contracts*, *supra*, 523 F. Supp. at 255-57 (same).

In short, no one could have contemplated at the time any of the closing service letters were issued to NHF that any performance or lack of performance under those letters would result in a loss of the merger opportunity for Walsh or the diminution of Walsh's value.  As a result, since the law does not allow a defendant

12

to be liable for a loss that it did not have reason to foresee as the probable result of the breach when the contract was made, *Donovan, supra*, 91 N.J. at 444, 453, as a matter of law, Commonwealth cannot be held liable for those losses under established New Jersey law.  Summary judgment should therefore be entered in favor of Commonwealth and against Walsh in connection with its claim for damages from the loss of the merger and/or Walsh's diminution in value.

## II.   WALSH HAS NO STANDING TO PURSUE DAMAGES ARISING FROM THE TERMINATION OF THE WALSH/RBMG MERGER AGREEMENT

Walsh seeks to impose on Commonwealth and the other Title Insurance Defendants damages resulting from the termination of an Agreement of Merger between Walsh and Resource Bankshares Mortgage Group, Inc. ("RBMG") dated as of April 18, 1997.  (*See* Merin Certif., Ex. M: Pl.'s Certified Resps. & Objections to Def./Third-Party Pl. Commonwealth Land Title Ins. Co.'s First Set of Interrogs. Addressed to Pl. Walsh Securities, Inc. at Resp. to Interrog. No. 6.) However, a review of the Agreement of Merger discloses that the only people entitled to consideration and benefits under the Agreement of Merger were the shareholders of Plaintiff Walsh Securities, Inc. – and that Plaintiff Walsh Securities, Inc. was not entitled to consideration or benefits under the Agreement of Merger.  Walsh therefore lacks standing to recover any loss resulting from termination of the Agreement of Merger because a corporation is separate and

distinct from its owners, the shareholders.  In other words, Plaintiff Walsh

Securities, Inc. does not have standing to assert claims that belong to its

shareholders.

The Agreement of Merger provided, in essence, that RBMG would create a

subsidiary and Walsh would merge with that subsidiary and be the surviving entity

as a wholly owned subsidiary of RBMG.  The consideration for the merger was

entirely in RBMG shares.  (*See* Merin Certif., Ex. D: Agreement of Merger,

Section 2.02.)  In other words, the ***shareholders*** of Walsh would have exchanged

their Walsh shares for RBMG shares.  (*See ibid.*)  No consideration would have

passed to Walsh itself under the Agreement of Merger.  (*See ibid.*)

In *Design Strategies, Inc., v. Davis*, 355 F. Supp. 2d. 715 (S.D.N.Y. 2005),

Plaintiff corporation claimed that as a result of the departure of Defendant Davis,

the corporation lost a contract, which resulted in termination of a proposed

transaction for sale of the corporation's stock to a non-party.  The District Court

held that because sale of corporate stock is not a sale of corporate property and the

harm would be incurred by the shareholders, not the corporation, the corporation

lacked legal grounds to assert a claim for damages based on the thwarted

transaction.  *Id.* at 719.  Accordingly, the court precluded that aspect of the

corporation's claim.

In *Design Strategies, Inc.,* the court noted that a corporation is separate and distinct from its owners. *Id.* at 717. The court also noted that under well-settled law in order to have standing the party itself must be damaged and the party cannot base its claim to relief on the legal rights or interests of third parties. *Ibid.* The court stated:

> "It is axiomatic that a corporation is . . . separate and distinct . . . from its owners" and that a shareholder "is not the corporation either in law or fact." *Boise Cascade Corp. v. Wheeler,* 419 F. Supp. 98, 102 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir. 1977) (internal quotation marks and citations omitted). It is also well settled that, "in order to have standing, a party must allege 'a distinct and palpable injury to himself,' and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" *Bluebird Partners, L.P. v. First Fidelity Bank, N.A. New Jersey,* 85 F.3d 970 (2d Cir. 1996) (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 499, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975)).

*Ibid.* The court applied these principles to the plaintiff in *Design Strategies, Inc.* and held that *Design Strategies, Inc.* " . . . as a corporate entity, does not have standing to assert a claim resulting from an alleged harm affecting only interests pertaining to and assertable by its shareholders." *Ibid.* Likewise here, any loss from the failure to consummate the transaction contemplated in the Agreement of Merger would be incurred by the shareholders of Walsh, who are not parties to the action. Accordingly, Plaintiff Walsh Securities, Inc. does not have standing to seek merger damages.

## III.    THE STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment is proper where, as here, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Milanowicz v. The Raymond Corp.,* 148 F. Supp. 2d 525, 527-28 (D.N.J. 2001).  Plaintiffs cannot avoid summary judgment by merely resting upon their allegations.  *Celotex Corp., supra*, 477 U.S. at 324.  Nor can plaintiffs rely on unsupported assertions or speculation.  *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995).  Instead, plaintiffs must present evidence that a genuine factual issue compels a trial on their claims, *Celotex, supra*, 477 U.S. at 324, and offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Where, as here, that showing has not been made, summary judgment is warranted.  *See* Fed. R. Civ. P. 56(c)(2).

16

## CONCLUSION

For the foregoing reasons, Commonwealth's motion for partial summary judgment dismissing Walsh's claims for damages stemming from its loss of the merger with RBMG and/or its diminution in value should be granted in its entirety.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

Attorneys for Defendant
Commonwealth Land Title
Insurance Company


By:   *s/David R. Kott*
      David R. Kott
      A Member of the Firm

Dated:  November 10, 2011

17