ECF



**McCARTER & ENGLISH**
ATTORNEYS AT LAW

December 16, 2011

**VIA ELECTRONIC FILING AND REGULAR MAIL**

Honorable Michael A. Shipp
U.S. Magistrate, United States District Court
Martin Luther King Building & US Courthouse
50 Walnut Street
Newark, NJ 07102

Re:   Walsh Securities, Inc. v. Cristo Property Management, et al.
      United States District for the District of New Jersey
      Civil Action No. 97-3496 (DRD)(MAS)

David R. Kott
Partner
T. 973.622.4444
F. 973.624.7070
dkott@mccarter.com

Dear Judge Shipp:

I write about a discovery matter. I had previously communicated with Mr. Magnanini about the subject of this discovery dispute and I do not believe that this discovery dispute can be worked out without the assistance of the Court.

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

Your Honor will recall that at one of the early status conferences in this case then Magistrate Judge Cavanaugh required the parties to place in a central Repository documents relevant to the case. In addition, from time to time the parties have also propounded separate Requests for Production of Documents.

Our office has spent a significant amount of time reviewing the documents placed in the Repository by the plaintiff. In addition, we have reviewed indices supplied by plaintiff's counsel. We do not believe that the following documents have been produced:

BOSTON

    1.   Any assignments by Walsh to whole loan purchasers or to securities with respect to any loans that were sold by Walsh;

HARTFORD

NEW YORK

    2.   Any assignments by any purchaser of the loans and/or a security assigning the loans back to Walsh when Walsh re-purchased the loans (in a very recent production Walsh produced some documentation with respect to its re-purchase of loans from Cityscape and possibly from another entity, but it does not appear that Walsh has produced assignments with respect to all of the loans that Walsh alleges it re-purchased in this case);

NEWARK

PHILADELPHIA

    3.   Any documents demonstrating or showing what Walsh paid to repurchase loans;

STAMFORD

    4.   Any documents that demonstrate any damages on the approximate 140 loans that Walsh did not re-purchase;

WILMINGTON

    5.   The individual analyses and Trustee reports referred to by Robert Walsh in his third deposition on September 30, 2011;

ME1 12679870v.1

Honorable Michael A. Shipp
December 16, 2011
Page 2

      6.     Any documents that allow a calculation as to the percentage on each of the securities on which Walsh claims a residual loss that the NHF loans played to the whole;

      7.     Any reports received from the Trustees showing which loans were foreclosed and which loans were not foreclosed on the 140 loans that were not re-purchased by Walsh;

      8.     Any title policies that Walsh received from title insurers. Despite the fact that this case involves approximately 220 loans, and that Walsh has moved for partial summary judgment on approximately 66 loans, in its Statement of Undisputed Material Facts (at ¶ 56) Walsh indicated that in discovery 27 policies had been produced; however, it appears from our review of the materials submitted by Walsh that Walsh has produced commitments for a certain number of the loans at issue but has not produced policies for almost all of the loans at issue;

      9.     With respect to any loans re-purchased by Walsh, any documents with respect to: (a) any foreclosures on those loans by Walsh or by whole loan purchasers if foreclosures were initiated prior to the loans being reassigned to Walsh; and (b) any recovery by Walsh on those loans;

      10.    The personnel file of Elizabeth Ann DeMola;

      11.    Any documents that provide the job titles and job descriptions of Elizabeth Ann DeMola;

      12.    Any documents that provide the job titles and job descriptions of James Walsh;

      13.    Any documents that provide the job titles and job descriptions of Robert Walsh;

      14.    Any documents with respect to the way that plaintiff kept track or tracked the acquisition of mortgages, including but not limited to whether plaintiff was aware, or could have been aware, of individuals applying for more than one mortgage;

      15.    Any tax returns of plaintiff for the years 1992 - 2000;

      16.    Any documents that reflect the identity of any accounting firm that supplied professional services to Walsh Securities, Inc. for the years 1992 - 2000;

      17.    Any documents that reflect the identity of any law firm that supplied professional services to Walsh Securities, Inc. for the years 1992 - 2000.

We request that the Court enter an Order requiring the plaintiff to specify whether the aforementioned documents have been produced (and if they have been produced to the Repository to specify the Bates numbers and boxes where the

Honorable Michael A. Shipp
December 16, 2011
Page 3

documents can be found). Again, based on our review of the documents in the Repository we do not believe that the aforementioned documents have been produced. However, given that there are literally hundreds of thousands of documents in the Repository if the plaintiff has produced any of the aforementioned documents, the defendants should not be required to find a "needle in the haystack" -- presumably the plaintiff knows the Bates stamps of the documents and knows what boxes they have been placed in and should be required to supply us that information.

On a related issue on October 10, 2011 (after the completion of the Rule 30(b)(6) deposition of the plaintiff) Walsh indicated for the first time that it had produced additional documents to the Repository Bates stamped WS2000000572-3364. It is unclear to us why those documents were produced at that time (rather than before the completion of the Rule 30(b)(6) deposition of the plaintiff). In fact, in making that production plaintiff indicated that the documents were received pursuant to a subpoena issued to the LeClairRyan law firm -- yet other documents produced by plaintiff (and apparently received by plaintiff pursuant to the subpoena issued to LeClairRyan) were produced before the completion of the Rule 30(b)(6) deposition of the plaintiff. In short, it appears from the record that plaintiff produced documents that it received pursuant to a subpoena at two different times, and the second production (which contained a number of significant documents) was done by the plaintiff after the completion of plaintiff's deposition. In these circumstances we think, insofar as it may relate to a continued deposition of the plaintiff, that we should be informed why documents received by the plaintiff pursuant to a subpoena issued to LeClairRyan were produced on two separate occasions, once after the completion of the deposition of the plaintiff (if we are in fact correct in our assumptions in this regard).

Respectfully submitted,

/s/

David R. Kott

DRK:tas

cc: Robert A. Magnanini, Esq. (via electronic filing & email)
    Jeffrey A. Shooman, Esq. (via email)
    Daniel I. Mee, Esq. (via email)
    Edward J. Hayes, Jr., Esq. (email and regular mail)