# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ | : |
| WALSH SECURITIES, INC., | : |
| | : |
| Plaintiff, | : Civil Action No. 97-cv-3496 (DRD)(MAS) |
| | : |
| vs. | : Hon. Dickinson R. Debevoise, U.S.D.J. |
| | : |
| CRISTO PROPERTY MANAGEMENT, | : |
| LTD., a/k/a G.J.L. LIMITED; *et al.*, | : |
| | : |
| _____Defendants._____ | : |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
## ON PLAINTIFF'S CLAIMS FOR DAMAGES RESULTING
## FROM THE LOSS OF MERGER AND DIMINUTION IN VALUE OF WSI

---

STONE & MAGNANINI LLP
150 John F. Kennedy Parkway, 4th Floor
Short Hills, New Jersey 07078
(973) 218-1111


*Attorneys for Plaintiff Walsh Securities, Inc.*


Dated:  December 22, 2011

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................. i

**TABLE OF AUTHORITIES** ....................................................................................... ii

**PRELIMINARY STATEMENT** ...................................................................................1

**COUNTERSTATEMENT OF FACTS** .........................................................................2

**LEGAL STANDARD** ....................................................................................................4

**ARGUMENT** ..................................................................................................................5

    I.    THERE ARE DISPUTED FACTUAL QUESTIONS ON THE FORESEEABILITY OF THE TERMINATION OF THE MERGER WITH RBMG RESULTING FROM DEFENDANTS' UNCONTROVERTED BREACHES OF CONTRACTS ...........................................5

        A.  *Damages as a Result of the Termination of the Merger Were Foreseeable, and, in any Event, Foreseeability is a Jury Question* ...............................7

        B.  *The Defendants' Conduct Triggered WSI's Liability, Rendering Defendants' Liable for All Resulting Damages* ........................................11

        C.  *The Destruction of the Value of WSI was an Entirely Foreseeable Consequence Flowing From the Failure to Provide Coverage Under the CPLs and Title Policies* ..................................................................................14

    II.   WSI IS THE ONLY PARTY WHICH HAS STANDING TO ASSERT DAMAGES RESULTING FROM THE TERMINATION OF THE MERGER ...........................16

**CONCLUSION** .............................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*820 Ridge Road Asscs., LLC v. Dow Jones & Co.*,
    No. 05-4320, 2008 U.S. Dist. LEXIS 64000 (D.N.J. July 31, 2008)........................ 7

*Alabama By-Products v. Cede & Co.*,
    657 A.2d 254 (Del. 1995) .......................................................................................18

*American Title Ins. Co. v. Variable Annuity Life Ins. Co.*,
    1996 Tex. App. LEXIS 4243 (Tex. App. Houston 14th Dist. Sept. 26, 1996)...........8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 255 (1986)........................................................................................5, 9

*BP Amoco Chem. Co. v. Flint Hills Res. LLC*,
    No. 05-5661, 2009 U.S. Dist. LEXIS 32708 (N.D. Ill. Apr. 17, 2009) ...................14

*Brictson v. Woodrough*,
    164 F.2d 108 (8th Cir. 1947) ..................................................................................17

*Brown v. South Carolina Ins. Co.*,
    324 S.E.2d 641 (S.C. App. 1984) ............................................................................8

*Charleston County Sch. Dist. v. State Budget & Control Bd.*,
    437 S.E.2d 6 (S.C. 1993) ........................................................................................8

*Design Strategies v. Davis,*
    355 F. Supp. 2d 715 (S.D.N.Y. 2005) ...................................................................17

*Garshamn Co. v. GE*,
    993 F. Supp. 25 (D. Mass. 1998) ......................................................................15, 16

*Harvey v. General Tire & Rubber Co.*,
    153 Cal. App. 3d 1015 (Cal. App. 1984) ...............................................................10

*Hayseeds, Inc. v. State Farm Fire & Casualty*,
    352 S.E.2d 73 (W. Va. 1986)..................................................................................8

*Hoeft v. Allstate Ins. Co.*,
    No. 08-3038, 2009 U.S. Dist. LEXIS (E.D. Wash. Mar. 2, 2009) ........................... 2

*Howard v. American Nat'l Fire Ins. Co.*,
    187 Cal. App. 4th 498 (Cal. App. 2010)..................................................................8

*In re Cendant Sec. Litig*,
   166 F. Supp. 2d 1 (D.N.J. 2001) ...........................................................................12

*In re Countrywide Fin. Corp. Derivative Litig.*,
   542 F. Supp. 2d 1160 (C.D. Cal. 2008) ................................................................18

*In re Crazy Eddie Sec. Litig.*,
   702 F. Supp. 962 (S.D.N.Y. 1988)........................................................................12

*In re Dein Host, Inc.*,
   835 F.2d 402 (1st Cir. 1987) .................................................................................17

*Kauffman v. Dreyfus Fund, Inc.*,
   434 F.2d 727 (3d Cir. 1970)..................................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).................................................................................................5

*Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*,
   No. 05-281, 2011 U.S. Dist. LEXIS 16446 (E.D. Pa. Feb. 17, 2011) .....................9

*Pac. Emplrs. Ins. Co. v. Clean Harbors Envtl. Servs., Inc.*,
   No. 08-2190, 2011 U.S. Dist. LEXIS 107987 (N.D. Ill. Sept. 21, 2011) ...............10

*Stewart Title Guaranty Co. v. Greenlands Realty, L.L.C.*,
   58 F. Supp. 2d 370 (D.N.J. 1999) ...........................................................................5

*Trico Equipment v. Manor*,
   08-5561, 2011 U.S. Dist. LEXIS 17936 (D.N.J. Feb. 22, 2011) .....................10, 11

*True N. Composites, LLC v. Trinity Indus., Inc.*,
   191 F. Supp. 2d 484 (D. Del. 2002)......................................................................14

## State Cases

*Donovan v. Bachstadt*,
   91 N.J. 434 (1982) ...................................................................................................7

*Feldman v. Jacob Branfman & Son, Inc.*,
   111 N.J.L. 37 (N.J. E & A 1933) ...........................................................................11

*First American Title Co. v. Vision Mortgage*,
   298 N.J. Super. 138 (App. Div. 1997) ...................................................................13

*Hill v. Yaskin*,
   75 N.J. 139 (1977) ...................................................................................................9

*Hornwood v. Smith's Food King No. 1*,
   772 P.2d 1284 (Nev. 1989) .........................................................................14, 15

*Potomac Aviation, LLC v. Port Authority of N.Y. and N.J.*,
   413 N.J. Super. 212 (App. Div. 2010) .........................................................9

*V.A.L. Floors v. Westminster Communities, Inc.*
   355 N.J. Super. 416 (App. Div. 2002) ......................................................11

*Zaleski v. Mart Assocs.*,
   1988 Del. Super. LEXIS 260 (Del. Super. Ct. July 25, 1988) ...................14

**<u>Federal Rules</u>**

Fed. R. Civ. P. 56.1 ..................................................................................... 1

Fed. R. Civ. P. 56(a) ....................................................................................4

## <u>PRELIMINARY STATEMENT</u>

Abjectly aware that this case is going to trial irrespective of the disposition of every partial summary judgment motion filed in this matter, the Title Insurance Defendants[1] have filed a motion for partial summary judgment in an attempt to pare down Plaintiff Walsh Securities Inc.'s ("WSI", "Walsh", or "Plaintiff") damage claims – damages that were the direct, foreseeable result of the Defendants' stark and uncontroverted breach of their closing protection letters and title insurance policies of which the Closing Protection Letter ("CPL") was part of which were paid for to insure WSI against the very type of fraud that occurred in this case. Indeed, in Defendants' Local Rule 56.1 Statement, *nowhere* do Defendants state an *undisputed* fact (let alone *any fact*) that the consequential damages sought by WSI – damages incurred as a result of a failed merger between WSI and Resource Bancshares Mortgage Group ("RBMG") – were not foreseeable by the Title Insurance Defendants at the time they breached their contracts with WSI.

The reason for this is because there is simply no record evidence that these damages were not foreseeable to the Defendants.  In fact, the evidence demonstrates that even though the Defendants were on notice as of April 21, 1997 that Walsh and RBMG were merging and after WSI placed Defendants on notice of its claims under the insurance policies the Defendants conducted basically *no investigation* of the conduct underlying WSI's claims.  Defendants were on notice of the merger and the claims, and it was thus foreseeable that failing to pay on claims to allow WSI to repurchase properties that were fraudulently funded and later transferred would

---

[1] Only Defendant Commonwealth Land Title Insurance Company filed the instant motion, but the other Title Insurance Defendants have joined it, although they failed to submit any statement of undisputed facts as to them. (Dkt. 483).

have a deleterious impact on both WSI's business and reputation.  In fact, the failure of the Defendants to pay these claims ultimately led to WSI's destruction as a viable business entity.

Defendants also seek cover from the diminution of value – destruction of the business, put more plainly – of WSI.  As explained below, a grant of summary judgment on this point would be entirely improper, given Defendants' spare submission, both in its brief and its Local Rule 56.1 Statement, where Defendants point to *no record evidence* that forecloses, as a matter of law, WSI's entitlement to diminution damages as a result of the Defendants' breaches of contract.  In fact, the law is clear that diminution damages are available in breach of contract cases where the breaching party is a sophisticated business entity that should have known that its breaches would have a financially ruinous impact on its victim.

WSI is plainly entitled to consequential damages that directly flowed from Defendants' breach of contracts.  For those reasons, and the reasons set forth in greater detail below, Defendants' Motion for Partial Summary Judgment on damages should be denied in its entirety.

## COUNTERSTATEMENT OF FACTS

WSI primarily relies on its comprehensive statement of facts in its moving brief for Partial Summary Judgment (Dkt. 478-1).  The facts recited here are germane to the Defendants' Motion to limit WSI's damages.  This is a situation where the gravamen of the facts (insofar as the factual background is concerned) are not in dispute, even though there is a genuine dispute as to the interpretation of the facts  and this situation lends itself to a denial of the motion such that *neither party* is entitled to summary judgment on this issue.  *See, e.g.*, *Hoeft v. Allstate Ins. Co.*, No. 08-3038, 2009 U.S. Dist. LEXIS, at *8 (E.D. Wash. Mar. 2, 2009) (undisputed facts yet neither side entitled to summary judgment).

2

WSI was the victim of a massive mortgage fraud perpetrated by a number of individuals and entities[2], whereby phony strawbuyers obtained mortgages from WSI that were the result of phony appraisals, making WSI pay amounts up to eight times the preceding sales price.  Much of the fraudulent conduct occurred at the closings on the properties, where Defendants' approved closing attorneys Stanley Yacker and Anthony Cicalese participated in over 220 fraudulent transactions.  Yacker testified in open court that he participated in a calculated scheme to defraud WSI, and Cicalese admitted during his deposition that he knew the transactions were fraudulent. (Dkt. 478-37; Plaintiff's L. Civ. R. 56.1 Statement  ¶¶ 85-89); Cicalese Tr., Dkt. 478-42, Ex. R. 13:12-21, 15:8-22)

WSI, however, was insured for the closing attorneys' conduct through closing protection letters (CPLs) which are part of the title insurance policy and directly promise that the insured, WSI, is to be reimbursed for all losses incurred that are as a result of the closing attorney's fraud. CPLs provide the comfort to mortgage lenders that if the insurance company's approved attorney engaged in fraud, the lender would not be left without recourse against the insurer.  In short, the CPLs are designed to protect WSI against the very conduct that occurred by the closing attorneys in this case.

WSI put Defendants on notice of its claims on July 28, 1997.  (Letter from Latham & Watkins to Commonwealth, Dkt. 479-4 pp. 94-95).  Defendants were on notice of the merger

---

[2] Defendants have persistently, in an effort to smear and taint Plaintiff's case, alluded to Betty Ann DeMola's guilty plea for wire fraud *trying to tie that to this case* by writing that the charges "were related to this scheme." (Commonwealth Br. 3 n. 1).  Indeed, Defendants call this "ironic[]."  What's really ironic is the Defendants' misstatement of fact on this point.  There is no evidence in the record that DeMola's scheme had anything to do with the properties at issue in this very litigation.  Moreover, Defendants' conflation of DeMola's conduct and the frauds at issue does not change the fact that they breached the CPLs at issue in this case and have had an obligation – for over 14 years now – to pay WSI on these claims.

between RBMG and WSI on April 21, 1997, when a press release announcing the merger hit the news wire.  (Exhibit 7 to Certification of Jeffrey A. Shooman ("Shooman Certif.")).  Defendants refused (and have refused during this entire litigation, in fact) to reimburse WSI for its losses stemming from the fraud loans, whereby WSI was in fact obligated to repurchase numerous fraud loan properties as a result of a separate contract WSI had with Cityscape, other whole loan purchasers, and securities issued by WSI.  The WSI/Cityscape relationship led to litigation, because WSI through no fault of its own breached its warranties and representations to Cityscape (which had bought a pool of whole loans from WSI) as a result of the fraud because the 60-40% joint venture deeds deeded away the majority of the property and made it unmarketable. (Transcript of Decision of Hon. Sidney Stein, U.S.D.J. (S.D.N.Y), Exhibit 8 to the Shooman Certif.).  Judge Stein ordered WSI to repurchase only certain properties that were part of this fraud.

As a result of the Defendants' refusal to pay WSI on its claims, WSI was unable to repurchase all of the fraudulent loans and the auditors withdrew their comfort letter and certified financial statements for 1996 and 1997 before the merger, leaving WSI no choice but to agree to RBMG's demand that they terminate their agreement on November 3, 1997.  (Dkt. 479-4 pp. 24-25).

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, 'its opponent must do more than simply show that there is some metaphysical doubt as to

material facts.'" *Stewart Title Guaranty Co. v. Greenlands Realty, L.L.C.*, 58 F. Supp. 2d 370, 380 (D.N.J. 1999) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "What the non-moving party must do is go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Ibid.* (citations omitted).  In evaluating whether summary judgment is warranted, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ARGUMENT

**I.**     **THERE ARE DISPUTED FACTUAL QUESTIONS ON THE FORESEEABILITY OF THE TERMINATION OF THE MERGER WITH RBMG AND THE DESTRUCTION OF WSI'S BUSINESS, RESULTING FROM DEFENDANTS' UNCONTROVERTED BREACHES OF CONTRACTS**

The Title Insurance Defendants argue that they are entitled to summary judgment on WSI's claim for damages resulting out of the collapse of the merger between WSI and RBMG, and for damages resulting from the diminution of value of WSI – indeed, the very destruction of the company.  Their principle argument is that these damages are "too remote to be consequential damages" arising out of their breach of myriad CPLs (Commonwealth Br. 4).  The Title Insurance Defendants' arguments miss the mark for two reasons: as an initial mater, foreseeability is a classic jury question, one so fact-laden that it is simply inappropriate to decide it on summary judgment; and second, there exists genuine issues of material fact with respect to whether or not it should have been foreseeable to the Defendants that failing to pay policy claims – not a single claim *but over 200 claims* – resulting from the fraud, which clearly and unequivocally implicated coverage under the CPLs, portended disastrous consequences for WSI

5

as a viable underwriter of mortgages[3], and thus, a healthy, stable company.  Moreover, as a result of the fraud, WSI was found liable to a company to whom it had sold some of the fraud loans, and as a result, WSI had to repurchase the loans because they were unmarketable.[4]  Courts have been clear that when companies breach contracts (the Title Insurance Defendants), if this triggers liability of the harmed party (WSI) to a third party (Cityscape, as will be explained in greater detail below), then the harmed party is entitled to recoup consequential damages as a result of the breach.

In the alternative, if this Court chooses to limit WSI's damages from the loss of the merger, summary judgment should nonetheless be denied on the diminution in value of WSI. Put simply, Defendants have cited no law or record evidence that entitles it to summary judgment based on this damages claim.  Indeed, it was entirely foreseeable at the time the Defendants entered into the  CPLs that denial of hundreds of claims under the clear dictates of those contracts could have a ruinous impact on WSI, as the denial of insurance effectively forced WSI to be "holding the bag" – stuck as the owner of unmarketable mortgages that it had to repurchase and unable to foreclose on as a result of the fraud.  WSI's value as a company plummeted – indeed, it was ultimately destroyed.  *But for* the Defendants' willful, bad faith breach of their obligations, WSI would have been indemnified for the losses they incurred on the properties and would have been able to maintain itself as a viable company.  The Defendants'

---

[3] Defendants try to limit WSI to the position of assignee of the loans and CPLs.  (Commonwealth Br. 4).  Walsh was, in fact, a bona fide purchaser for value and a table funder of the loans at issue.

[4] Loans which are the subject of WSI's Motion for Partial Summary Judgment currently pending before the Court.  (Dkt. 478).

persistent (to this day) denial of coverage was calamitous to the company's value and this sequence of events resulting from the denial was entirely foreseeable.

### A. *Damages as a Result of the Termination of the Merger Were Foreseeable, and, in any Event, Foreseeability is a Jury Question*

The crux of the question is whether or not certain consequential damages WSI claims as a result of the Defendants' myriad, systematic, serial breaches of their insurance contracts with WSI were foreseeable.  Defendants strenuously argue that the rule announced by the New Jersey Supreme Court in *Donovan v. Bachstadt*, 91 N.J. 434 (1982), disposes of the issue.  Defendants cite *Donovan* as if it effortlessly answers the foreseeability question in this case; this tactic is classic question-begging, and in fact, *Donovan* inheres in WSI's favor on the foreseeability issue. It is true, as Defendants write, that damages may be awarded where they "may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it."  *Id.* at 444-45.

But courts in New Jersey recognize that the basis for *Donovan*'s holding on consequential damages is that courts should be flexible in awarding contract damages.  *820 Ridge Road Asscs., LLC v. Dow Jones & Co.*, No. 05-4320, 2008 U.S. Dist. LEXIS 64000, at *12-13 (D.N.J. July 31, 2008) ("*Donovan* actually effectively defeats Dow Jones' argument, since it states the principles under which consequential damages are available.  Moreover, as Plaintiff contends, *Donovan* supports the proposition that New Jersey law allows *a flexible approach to contract damages*") (citation omitted) (emphasis added).  Under the flexible approach to awarding consequential damages, one must consider the insurance contracts breached by the Defendants here in the aggregate to discern whether or it was reasonably foreseeable to the Defendants that the result of its breaches would be calamitous to WSI and its ability to complete the merger and to effectively continue to do business.  Considering the

breaches as a whole leads inescapably to the conclusion that it most certainly should have been within the contemplation of the Defendants that they would be responsible for all resulting damages based on their wholesale failure to discharge their obligations by paying WSI any of the monies it was clearly, rightfully owed under the CPLs.  There is no other just result that stems from such a marked, stark breach of Defendants' obligations.

Indeed, courts have been perfectly clear that the failure to pay on an insurance contract when coverage is clearly triggered may warrant consequential damages.  *See, e.g.*, *Howard v. American Nat'l Fire Ins. Co.*, 187 Cal. App. 4th 498, 529 (Cal. App. 2010) (insurer who denies coverage does so at its own risk and even if its position isn't entirely baseless, the insurance company "is liable for the full amount which will compensate the insured *for all the detriment* caused by the insurer's breach . . .") (emphasis added); *Brown v. South Carolina Ins. Co.*, 324 S.E.2d 641, 647 (S.C. App. 1984) ("It is reasonably foreseeable that an insured will incur these additional economic losses if a valid claim is not promptly paid by the insurer.   Indeed, an important purpose for insuring against third-party liability *is to avoid the financially ruinous consequences of lawsuits or other economic losses*") (emphasis added), *overruled on other grounds*, *Charleston County Sch. Dist. v. State Budget & Control Bd.*, 437 S.E.2d 6 (S.C. 1993); *American Title Ins. Co. v. Variable Annuity Life Ins. Co.*, 1996 Tex. App. LEXIS 4243 (Tex. App. Houston 14th Dist. Sept. 26, 1996) (consequential damages available in action implicating closing protection letters); *cf. Hayseeds, Inc. v. State Farm Fire & Casualty*, 352 S.E.2d 73 (W. Va. 1986) (where policyholder sues insurer over a property damage claim and substantially prevails, insurer may be liable for consequential damages flowing from delay in payment and quasi-compensatory damages such as aggravation and inconvenience, attorneys' fees, and possibly punitive damages).

Given that courts have held that an insurer may be held accountable for *all* of the damages that flow from a breach of a contract, Defendants' motion should be denied. Moreover, the foreseeability inquiry is classically a jury question.

Foreseeability is a "key element in the recovery of consequential damages." *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, No. 05-281, 2011 U.S. Dist. LEXIS 16446, at *90 (E.D. Pa. Feb. 17, 2011) (alteration and quotation omitted). New Jersey law is clear that "[f]oreseeability is an issue usually reserved for the jury." *Potomac Aviation, LLC v. Port Authority of N.Y. and N.J.*, 413 N.J. Super. 212, 225 (App. Div. 2010) (citing *Hill v. Yaskin*, 75 N.J. 139, 144 (1977)). Defendants have not surmounted their burden on summary judgment, as they have offered no record evidence to take this issue away from the jury. *Anderson*, 477 U.S. at 255.

The Title Insurance Defendants should have been on notice that their denial of coverage on WSI's claims would have a calamitous impact on the company. A jury could certainly find that the denial of claims on the hundreds of fraud loans, which could only have occurred with the involvement of Defendants' approved attorneys and agents, amounting to more than $23 million would lead to deleterious injuries on a once-stable company, because the underlying reputational cachet and liquidity of that company would be (and was) necessarily depleted by the failure of three insurance companies to make good on their contractual obligations. Indeed, the Defendants' obligations were never really taken seriously by them here, as a Commonwealth employee testified that as part of her "investigation" into Walsh's claims-seven months after the fraud became public and the Defendants' were put on notice of WSI's claims, she never even spoke to anyone at Walsh Securities. (Deposition of Nancy Koch 11:14-21, Exhibit 9 to the Shooman Certif.). Indeed, Ms. Koch testified that there was an investigation into WSI's claims

but when pressed, she testified that she did not remember preparing a written summary of her

findings (*id.* 18:19-21), she had no documents related to her "investigation" (*id.* 18:22-24), and

she made no notes and authored no memos concerning the investigation (*id.* 20:7-8).  Thus, the

"investigation" by Commonwealth was that in name only – no notes were made nor reports

generated.   Defendants were on notice of the RBMG-WSI merger and had a duty to take WSI's

claims as the insured seriously.  Damages resulting from the laxness with which Defendants

undertook its "investigation" were clearly foreseeable.

 Under the flexible approach in New Jersey in awarding contract damages, a jury is

entitled to find that WSI was denied the benefit of the bargain due to the Title Insurance

Defendants' breach of myriad contracts, and thus the foreseeable harm that flowed from that

breach is compensable.[5]  Indeed, "when an insurer denies coverage for a claim for which there is

no bona fide dispute over coverage," the insurance company's actions are deemed "vexatious

and unreasonable" entitling it to other damages such as consequential damages.  *Pac. Emplrs.*

*Ins. Co. v. Clean Harbors Envtl. Servs., Inc.*, No. 08-2190, 2011 U.S. Dist. LEXIS 107987, at *4

(N.D. Ill. Sept. 21, 2011).

 Indeed, the denial of coverage necessitates consequential damages in a case like this –

"[w]hen an insurer denies coverage in bad faith the insured's reason for purchasing liability

insurance – peace of mind and security – is frustrated."  *Harvey v. General Tire & Rubber Co.*,

153 Cal. App. 3d 1015, **24 (Cal. App. 1984). As explained in WSI's Motion for Partial

Summary Judgment, there simply is not a good faith dispute over coverage here, given the clear,

plain language of the CPLs.

---

[5] Defendants argue that they have "limited obligations" under the CPLs.  (Commonwealth Br. 4).
This is an odd position for Commonwealth to take, as the Commonwealth CPL as demonstrated
at length in Plaintiff's Partial Motion for Summary Judgment actually contained no exclusions
relevant here.

The foreseeability analysis certainly, under New Jersey's flexible approach, takes into account lost profits as consequential damages.  Indeed, the court in *Trico Equipment v. Manor*, 08-5561, 2011 U.S. Dist. LEXIS 17936, at \*30-34 (D.N.J. Feb. 22, 2011) explicitly held that lost profits were available in a breach of contract action.  The court cited approvingly to the New Jersey Appellate Division's decision in *V.A.L. Floors v. Westminster Communities, Inc.*, 355 N.J. Super. 416, 425 (App. Div. 2002), which held that "[p]rofits lost by reason of breach of contract may be recovered 'if there are any criteria by which probable profits can be estimated with reasonable certainty'" (quoting *Feldman v. Jacob Branfman & Son, Inc.*, 111 N.J.L. 37, 42 (N.J. E & A 1933)).  Of course, the damages to WSI here are directly akin to lost profits – the lost business opportunity would have resulted in the hundreds of millions to the company's shareholders based on the number of shares available and the strike price of the stock.

The body of law in New Jersey is primarily concerned with the calculation of lost profits, not their availability; courts find that even when the calculation might be speculative, they are, importantly, both available and awarded.  *Trico Equipment*, 2011 U.S. Dist. LEXIS at \*32 ("The mere fact that a plaintiff cannot fix its damages with precision does not preclude recovery of damages altogether") (internal quotation marks and citation omitted).

Thus, under the clear dictates of New Jersey law, consequential damages are available for breaches of contract.  To be sure, a jury may ultimately not choose to award them—but that is why this is a jury question.  WSI has demonstrated that consequential damages are available to it as a matter of law.  Defendants' motion should be denied on this basis alone.

### B. *The Defendants' Conduct Triggered WSI's Liability, Rendering Defendants' Liable for All Resulting Damages*

Irrespective of foreseeability and lost profits, as a matter of law, there is another fundamental reason that the Title Insurance Defendants' motion should be denied.  The law in

New Jersey is also clear that if a breach of a contract triggers liability to a third party by the victim of the breach, consequential damages are absolutely permitted under the flexible approach. *See In re Cendant Sec. Litig*, 166 F. Supp. 2d 1, 11 (D.N.J. 2001) (citing *In re Crazy Eddie Sec. Litig.*, 702 F. Supp. 962 (S.D.N.Y. 1988), *vacated in part on other grounds*, 714 F. Supp. 1285 (S.D.N.Y. 1989)). In *Cendant*, the court cited approvingly the Southern District's holding in *Crazy Eddie*, to wit, that consequential damages lie when a breach of contract triggers liability to a third party:

> *Peat Marwick* [Defendant] *has not cited any authority suggesting that Crazy Eddie's* [Cross-claimant] *liability to plaintiffs, to the extent that it is caused by Peat Marwick's breach of contract, is not compensable as consequential damages.* Cross-claimant "'may recover as damages . . . only such as would naturally arise from the breach itself, or those that might reasonably be supposed to have been contemplated by the parties when the contract was made.'"

702 F. Supp. at 985 (citations omitted) (emphasis added).

When the Title Insurance Defendants breached their contracts with WSI, this triggered liability to third parties. WSI was forced to repurchase certain unmarketable fraud loans that it had previously sold to Cityscape, other whole loan purchasers, and from securities issued by WSI. Specifically, on June 30, 1996, WSI entered into a master agreement for the sale and purchase of mortgages. (Pl. 56.1 Counterstatement ¶ 7, Exhibit 8 to the Shooman Certif., at p. 3). WSI sold Cityscape seven pools of residential home mortgage totaling $128 million. (*Ibid.*). As part of their agreement, Cityscape had the right to request that WSI repurchase loans if the representations and warranties were breached. Cityscape alleged that these promises were breached because of the fraud which resulted in unmarketable properties in which a majority of the security had been deeded away. Judge Stein in the Southern District of New York granted

summary judgment to Cityscape on the New Jersey fraud loans at issue there and at issue in the case at bar.

The denial of coverage under the CPLs was thus a trigger of WSI's liability, because if the Title Insurance Defendants had not disclaimed coverage, the mortgages would have been repurchased and Cityscape's lawsuit against WSI would have been completely obviated.  WSI would have been compensated by the insurance companies which would have led to WSI repurchasing the unmarketable loans from Cityscape, and no harm would have flowed to either party.  As a result of the denial of coverage, WSI was held liable in contract.  This liability directly flowed from the breach of the CPLs and title insurance policies, and as a matter of New Jersey law, WSI is entitled to consequential damages from that breach.

The Title Insurance Defendants argue that the Appellate Division's seminal opinion in *First American Title Co. v. Vision Mortgage*, 298 N.J. Super. 138 (App. Div. 1997) compels judgment in their favor (Commonwealth Br. 12), but they are wrong as a matter of law.  The court in *Vision* simply did not address a consequential damages argument, as there was none before it.  There was no evidence in that case that there were any consequential damages stemming from breach.  Far from supporting Defendants' argument, the *Vision* court simply had no occasion to opine on the availability of consequential damages in that case.  The New Jersey common law of damages governs this action, damages which are flexibly awarded in breach of contract cases.

Given New Jersey's flexible policy on contract damages, and moreover the intrinsically fact-laden nature of the foreseeability analysis, the issue simply cannot be disposed of as a matter of law and must go to a jury.

13

**C.** *The Destruction of the Value of WSI was an Entirely Foreseeable Consequence Flowing From the Failure to Provide  Coverage Under the CPLs and Title Policies*

Defendants dedicate virtually no space in their brief, and aver no facts in their L. Civ. R. 56.1 statement, that support summary judgment on damages related to the loss of value of the company.  Summary judgment should be denied on this very basis alone.

Courts have been clear that diminution-in-value claims should go to a jury where there is a genuine issue of material fact.  *See, e.g.*, *BP Amoco Chem. Co. v. Flint Hills Res. LLC*, No. 05-5661, 2009 U.S. Dist. LEXIS 32708, at *21 (N.D. Ill. Apr. 17, 2009) ("a reasonable jury could properly award Flint Hills its claimed diminution-in-value damages); *True N. Composites, LLC v. Trinity Indus., Inc.*, 191 F. Supp. 2d 484 (D. Del. 2002), *aff'd in part, rev'd in part on other grounds*, 65 F. App'x 266 (Fed. Cir. 2003).

In *True N. Composites*, the district court explicated the law on diminution of business value, and why it is a proper measure of damages.[6]  "The proper measure of damages for destruction of a business is not lost profits, but the difference in value of the business before and after the defendant's wrongful acts."  *Id.* at 524 (quoting *Zaleski v. Mart Assocs.*, 1988 Del. Super. LEXIS 260, at *3 (Del. Super. Ct. July 25, 1988)).  The court held that the damages to the plaintiff were not speculative and permitted them, because a jury could find that the company was neither new and had a history of operations from which the jury "could [then] rationally conclude it had a likelihood of future success."  *True N. Composites*, 191 F. Supp. 2d at 524.

Courts in like instances have held for the availability of diminution-in-value damages. The Nevada Supreme Court's decision in *Hornwood v. Smith's Food King No. 1*, 772 P.2d 1284

---

[6] The Federal Circuit reversed the damages award because it found that the UCC applied, where diminution damages are unavailable, as opposed to the common law, but the Court of Appeals did nothing to disturb the District Court's elucidation on when those damages are available under common law.

(Nev. 1989) is both instructive and factually analogous to the instant case.  There, the defendant

Smith's entered into a thirty-year lease of a shopping center property owned by the Hornwoods.

772 P.2d at 1284.  Smith's, years before the lease was up, closed its business and ceased

operations. *Id.* at 1285. The Hornwoods filed suit and sought consequential damages arising as a

result of the breach, arguing that they were entitled to the diminution in value of the entire

shopping center, lost future percentage rents from Smith's and other tenants, and lost rent and

expenses associated with other tenants. *Ibid.*  The trial court held that all of these consequential

damages were unforeseeable as a matter of law. *Ibid.*

The Nevada Supreme Court disagreed and reversed.  The court emphasized that the

defendant was a sophisticated business entity and knew that its status as an anchor tenant in the

Hornwoods' shopping center "had a critical impact on the shopping center's success." *Id.* at 191.

Consequential damages were thus available to the plaintiff as a result of defendant's breach.  The

court's analysis is worth quoting in full on this point:

> Smith's is a sophisticated business entity. Smith's knew that its
> presence as the anchor tenant had a critical impact on the shopping
> center's success. Without an anchor tenant, obtaining longterm
> financing and attracting satellite tenants is nearly impossible for a
> shopping center. Perhaps most importantly, the anchor tenant
> insures the financial viability of the center by providing the
> necessary volume of customer traffic to the shopping center.
> Therefore, we find that the district court clearly erred in
> concluding, as a matter of law, that the diminution in value of the
> Hornwoods' shopping center was unforeseeable.

*Ibid.*  Thus, where the breaching party is sophisticated and it has knowledge that breaching a

contract could have a "critical impact" on the victim of the breach, consequential damages are

available as a matter of law.  Diminution damages are available in situations like this where

breaches are so critical to a business's viability.  Indeed, such damages are available because

"[a]n aggrieved party in a breach of contract action is entitled to receive damages which place it

15

in the position in which it would have been had there been no breach." *Garshamn Co. v. GE*, 993 F. Supp. 25, 28 (D. Mass. 1998).

Summary judgment is thus improper on this point. Indeed, nothing in Defendants' summary judgment motion undermines the fact that a jury could well conclude that the breach of the hundreds of CPLs at a repurchase cost of over $23 million was a direct and foreseeable cause of the destruction of the value of WSI, without even addressing the reputational damage that WSI suffered. In sum, this is a fact-laden jury question that should not be wrested away from the fact-finder, especially given the scant nature of Defendants' submission on this issue.

## II.     WSI IS THE ONLY PARTY WHICH HAS STANDING TO ASSERT DAMAGES RESULTING FROM THE TERMINATION OF THE MERGER

Defendants have advanced the baseless argument that WSI lacks standing to recover any consequential damages as a result of the failed WSI/RBMG merger. Defendants reason that it was only the shareholders of WSI who were damaged by the failed merger while they note casually in passing the fact that WSI as a corporation itself was to be a wholly owned subsidiary of RBMG. Thus, WSI the corporation would have survived, albeit under another corporate guise, and would have continued as the arm of RBMG offering sub-prime mortgages. Defendants nevertheless advocate their position, only citing one out-of-circuit district court case in support.

This fanciful argument is flatly contradicted by the longstanding law of shareholders and corporations in the Third Circuit. While Defendants argue that only Robert Walsh as an individual shareholder would have standing to assert these damage claims, the law says quite the opposite. If Robert Walsh were to have brought damage claims arising out of the failed merger as a shareholder of WSI, his case would have been swiftly dismissed, for the Third Circuit

16

addressed the concept of *shareholder* standing when corporate harm is at issue (as it is here) and, in no uncertain terms, rejected it:

> *A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares* resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue.

*Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970) (emphasis added). Indeed, where a shareholder's stock is in jeopardy – as it was in the case at bar – and the injury that arises to the shareholder is the diminishing of the value of corporate shares, this does not confer standing as a matter of law. *In re Dein Host, Inc.*, 835 F.2d 402, 405-06 (1st Cir. 1987) (quoting *Kauffman* approvingly); *see also Brictson v. Woodrough*, 164 F.2d 108, 109 (8th Cir. 1947) ("Actions to enforce corporate rights or redress injuries to the corporation cannot be maintained by a stockholder in his own name . . . even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock").

It thus stands to reason that since the shareholders of WSI would not have had standing to pursue the claim, the company itself most certainly has standing to assert a claim for damages. In the Third Circuit there simply is no claim for shareholders for their loss of a benefit when the corporation itself was harmed. WSI was harmed by the termination of the merger and it thus has the right to pursue damages as against the Title Insurance Defendants.

Defendants' citation to *Design Strategies v. Davis* and the hornbook law that a corporation is distinct from its shareholders is as unavailing as it is inapposite. WSI does not dispute the law that corporations and shareholders are distinct from each other, but the

17

distinction is of no moment here.  In the final analysis, the shareholders of WSI would not have had standing to bring a claim arising out of the failure of the merger; only WSI would have. Defendants are not entitled to summary judgment on this point because the law runs directly counter to their position in the Third Circuit and beyond.[7]

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment on WSI's foreseeable consequential damages arising from Defendants' breach of contracts should be denied in its entirety.

Respectfully submitted,

_____/s/_____
Robert A. Magnanini
Amy Walker Wagner
Daniel Ian Mee
Jeffrey A. Shooman
STONE & MAGNANINI LLP
150 JFK Parkway, 4th Floor
Short Hills, NJ  07078
(973) 218-1111

*Attorneys for Plaintiff Walsh Securities, Inc.*

Dated: December 22, 2011

---

[7] Incidentally, even if one argues that shareholders of WSI could have brought an action derivatively on behalf of the corporation, it is still black letter law, indeed, "*fundamental* that a plaintiff's derivative suit is regarded as a property right *belonging to the corporation instead of the shareholder*."  *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1175 (C.D. Cal. 2008) (quoting *Alabama By-Products v. Cede & Co.*, 657 A.2d 254, 265 (Del. 1995)) (emphasis added).  Such a suit could only proceed by the shareholders if the Board of Directors refused to pursue it on behalf of the corporation.

18