# EXHIBIT 1D

**Left document:**

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

TITLE INSURANCE COMMITMENT

SCHEDULE B - SECTION 1

Commitment No.

File No. CT-J8721

REQUIREMENTS

The following requirements must be met:

(a) Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

(b) Pay us the premiums, fees and charges for the policy.

(c) Document(s) satisfactory to us creating the interest in the land and/or mortgage to be insured must be signed, delivered and recorded:

1. Deed made by The Secretary of Housing and Urban Development to the proposed insured(s) named in Schedule A, 2(a).

(d) You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

(e) All taxes and other municipal liens are to be paid through and including the current quarter.

NOTE: In the event the tax search reveals a senior citizen deduction or a veteran's deduction, a proper escrow must be established to safeguard in the event the deduction is disallowed. If it is to be disallowed, the deduction should be restored to the taxes when calculating your adjustment.

(f) Municipal Lien and Unconfirmed Assessment searches are attached hereto and made a part hereof.

(g) County judgment search is clear.

(h) New Jersey Superior and U.S. District Court judgment search discloses a judgment or judgments which are to be cancelled of record or disposed of by a specific affidavit which is to be submitted.

(i) Receipt of proper corporate affidavit of title for Secretary of Housing and Urban Development.

(j) Certificate as to corporate resolution authorizing the proposed deed made by the proposed grantor is to be submitted.

CTB 0729

---

**Right document:**

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

TITLE INSURANCE COMMITMENT

SCHEDULE B - SECTION 1

Commitment No.

File No. CT-J8721(A

REQUIREMENTS

The following requirements must be met:

(a) Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

(b) Pay us the premiums, fees and charges for the policy.

(c) Document(s) satisfactory to us creating the interest in the land and/or mortgage to be insured must be signed, delivered and recorded:

1. Deed made by Cristo Property Management, LTD to the proposed insured(s) named in Schedule A, 2(a).

2. Mortgage made by purchaser(s) to the proposed insured(s) named in Schedule A, 2(b).

(d) You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

(e) Proof is required as to the past and present marital status of the proposed grantors/mortgagors.

NOTE: The spouse of the record owner must join in the proposed transaction, unless this is not the principal marital residence and was acquired subsequent to May 28, 1980. On any property acquired prior to May 28, 1980, the spouse must join in the proposed transaction regardless of whether it is the principal marital residence or not.

(f) All taxes and other municipal liens are to be paid through and including the current quarter.

NOTE: In the event the tax search reveals a senior citizen deduction or a veteran's deduction, a proper escrow must be established to safeguard in the event the deduction is disallowed. If it is to be disallowed, the deduction should be restored to the taxes when calculating your adjustment.

(g) Municipal Lien and Unconfirmed Assessment Searches have been ordered, not yet received.

(h) New Jersey Superior and U.S. District Court and County judgment searches are clear.

(i) Subject to such facts which would be disclosed by sellers, purchasers, and/or borrowers affidavit of title, to be submitted.

WS1 058170

# EXHIBIT 1E

Commonwealth
Land Title Insurance Company

Audit No. x01-020662

Date: October 30, 1996

To: National Home Funding, Inc., its successors and/or its
    assigns
    3443 Highway 9 North
    Freehold, NJ. 07728
    Attention: Closing Department

RE: Closing Service Letter
    Issuing Agent or Attorney whose conduct is covered:
    Stanley Yacker, Esquire
    330 Highway 34, Suite 3
    Matawan, NJ  07747

    File No: CT-18721(A)
    Transaction: PAMELA RICIGLIANO
    Premises: 1507 SUMMERFIELD AVENUE
              ASBURY PARK

Dear Customer:

When title insurance of Commonwealth Land Title Insurance Company is specified for your
protection in connection with the closing of the above described real estate transaction
in which you are to be a lender secured by a mortgage of an interest in land, the
Company, subject to the Conditions and Exclusions set forth below, hereby agrees to re-
imburse you for actual loss incurred by you in connection with that closings when con-
ducted by the above named Issuing Agent (an agent authorized to issue title insurance
for the Company) of Commonwealth Land Title Insurance Company or the above named Attorney
and when such loss arises out of:

1. Failure of the Issuing Agent or Attorney to comply with your written closing instruc-
   tions to the extent that they relate to: (a) the title to said interest in land or
   the validity, enforceability and priority of the lien of said mortgage on said
   interest in land, including the obtaining of documents and the disbursement of funds
   necessary to establish such title or lien, or (b) the collection and payment of funds
   due you; or

2. Fraud of or misapplication by the Issuing Agent or Attorney in handling your funds in
   connection with the matters set forth in numbered paragraph 1 above.

If you are a lender protected under the foregoing paragraph, your borrower in connection
with a loan secured by a mortgage on a one-to-four family dwelling, which is the prin-
cipal residence of the borrower, shall be protected, but only to the extent of the fore-
going paragraph 2, as if this letter were addressed to your borrower. If you are a pur-
chaser of a one-to-four family dwelling, including a condominium unit, which is your
principal residence, and are paying cash for the purchase, you are protected, but only
to the extent of the foregoing paragraph 2.

                                                                    NJRB 6-04
                                                                    8/1/94

NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU

CTB 0705

CONDITIONS AND EXCLUSIONS

A. The Company will not be liable to you for loss arising out of:

1. Failure of the Attorney to comply with your closing instructions which require require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics' and materialmen's liens in connection with a construction loan transaction, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its office at 8 Penn Center, Philadelphia, Pennsylvania 19103. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

THIS LETTER DOES NOT APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT OF COMMONWEALTH LAND TITLE INSURANCE COMPANY.

The protection under this Letter is limited to the closing on the premises described in the caption of this Letter.

*Commonwealth Land Title Insurance Company*

BY: _____
Robert F. Agel, President
Coastal Title Agency, Inc.
Agent

*NEW JERSEY LAND TITLE
INSURANCE RATING BUREAU*

NJRB 6-04
8/1/94

CTB 0706

# EXHIBIT 1F

# DEED

*Prepared by:*

*Lynn P. Gale*
LYNN P. GALE, ESQ.

This Deed is made on November 25, 1996

*RTL TO:*

**BETWEEN**

LAW **OFFICES** OF
MICHAEL ALFIERI, ESQ.
187 Route 34, Suite 1
Matawan, NJ 07747

WILLIAM B. HILL

whose address is P.O. Box 247, Asbury Park, New Jersey 07712,

referred to as the Grantor,

**AND**

CRISTO PROPERTY MANAGEMENT, LTD.

| COUNTY OF MONMOUTH |
|---|
| CONSIDERATION 37,500 |
| RTF 131.25 add'l RTF |
| DATE 3-5-97 BY WWBHL |

whose post office address is 25 Oakwood Drive, Parlin, New Jersey

referred to as the Grantee.

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

**Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of Thirty Seven Thousand Five Hundred Dollars ($37,500). The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (N.J.S.A. 46:15-1.1) Municipality of Asbury Park
Block No. 62              Lot No. 75              Account No.
[   ] No property tax identification number is available on the date of this Deed.

**Property.** The property consists of the land and all the buildings and structures on the land in the Township of Asbury Park, County of Monmouth and State of New Jersey. The legal description is:

BEING more particularly described on schedule "A" attached hereto and made a part hereof.

BEING commonly known as 1507 Summerfield Avenue, Asbury Park, New Jersey 07712.

BEING the same premises conveyed to the Grantor herein by deed from Terry Stewart dated October 28, 1996 and recorded in the Office of the Monmouth County Register on November 8, 1996 in Deed Book 5546, Page 580.

This property has never been occupied as the principal matrimonial residence of the grantor.

DB 5579-447

R 3-5-97

CTB 0734

SCHEDULE A

Description of property known as Lot 75 in Block 62 as shown on the official tax assessment maps of the City of Asbury Park, Monmouth County, New Jersey.

BEGINNING at a point in the northerly right of way line of Summerfield Avenue, which has a 44.5 feet wide right of way. Said point therein distant 100 feet westerly from its intersection with the extended westerly line of the 50 feet wide right of way of Dewitt Avenue, and from said point of BEGINNING; thence running,

1. Westerly along the northerly line of Summerfield Avenue, North 71 degrees 14 minutes 00 seconds West, for a distance of 50.00 feet to a point; thence,

2. North 18 degrees 46 minutes 00 seconds East, for a distance of 104.07 feet to a point; thence,

3. South 70 degrees 52 minutes 00 seconds East, for a distance of 50.00 feet to a point; thence,

4. South 18 degrees 46 minutes 00 seconds West, for a distance of 103.75 feet to a point in northerly line of Summerfield Avenue and the point and place of BEGINNING.

Being known and designated as Lot 52 as shown on a map entitled "Building Lots at West Asbury Park, New Jersey Belonging to DeNyse and Boyd", and filed in the Monmouth County Clerk's Office on August 11, 1892 in Case 53-6.

And more commonly known as 1507 Summerfield Avenue, Asbury Park, New Jersey.

Containing 5196 square feet of land, more or less, as surveyed by Professional Land Services, Incorporated, P.O. Box 217, Somerset, New Jersey, 08875-0217.

And subject to any easements, restrictions and covenants of record that may be revealed by a title search.

This property has never been occupied as the matrimonial residence of the grantor.

CTB 0735

SCHEDULE A

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Asbury Park, County of Monmouth and state of New Jersey, being more particularly described as follows:

Beginning at a point in the northerly line of Summerfield Avenue distant 100 feet westerly from the westerly line of DeWitt Avenue extended in a northerly direction and running; thence

1.  North 71 degrees 14 minutes West along the northerly line of Summerfield Avenue 50.0 feet to a point; thence

2.  North 18 degrees 46 minutes East 104.07 feet to a point; thence

3.  South 70 degrees 52 minutes East, 50.0 feet to a point; thence

4.  South 18 degrees 46 minutes West, 103.76 feet to the point and place of Beginning.

The above description is drawn in accordance with a survey made by JY Land Surveying, dated July 15, 1987.

Also known as Lot 75 in Block 62 on the City of Asbury Park Tax Map.

Issued By:
**COASTAL TITLE AGENCY, INC.**
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660   (800) 521-0378   (908) 775-5543   FAX #(908) 308-1881

CTB 0736

**EXHIBIT 1G**

COASTAL TITLE AGENCY, INC.

21 WEST MAIN STREET

P.O. BOX 740

FREEHOLD, NJ 07728

CKER, ESQ.
O BOX 991
/47-0991

Loan Number : 622633

_____[SPACE ABOVE THIS LINE FOR RECORDING DATA]_____

# MORTGAGE

THIS MORTGAGE (" Security Instrument") is given on          December   18, 1996
The mortgagor is  PAMELA RICIGLIANO, UNMARRIED

("Borrower"). This Security Instrument is given to

NATIONAL HOME FUNDING
                                                                        ,which is organized and existing
under the laws of   NEW JERSEY            , and whose principal office and mailing address is
3443 HIGHWAY 9-N; HOLIDAY PLAZA, FREEHOLD, NJ 07728

("Lender"). Borrower owes Lender the principal sum of
One Hundred Ten Thousand Six Hundred Twenty-Five Dollars And 00/100
Dollars (U.S.$      110,625.00 ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
January    1,  2012      . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security
Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date,
and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, § 1 et seq., and upon such modification,
shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security
Instrument is $    110,625.00 . For these purposes, Borrower does hereby mortgage, grant and convey to Lender the
following described property located in   MONMOUTH                                    County, New Jersey:

CLERK SEE LEGAL DESCRIPTION ATTACHED HERETO
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
L997038972
RECORDED ON
Dr 09, 1997
2:11:04 PM
BOOK:MB-6167 PG:696
Total Pages: 10

UNTY RECORDING    $31.00
ES
DICATED TRUST     $2.00
ND COMMISSION
OTAL              $33.00      which has the address of 1507 SUMMERFIELD AVENUE          ASBURY PARK
                                                       [Street]                         [City]

New Jersey      07712         ("Property Address");
               [Zip Code]

NEW JERSEY-Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3031 9/90 (page 1 of 6 pages)

* THE NOTE THIS SECURITY INSTRUMENT SECURES CONTAINS
PROVISIONS FOR A BALLOON PAYMENT.  THE ENTIRE PRINCIPAL
BALANCE OF THE LOAN AND UNPAID INTEREST IS PAYABLE
IN FULL AT MATURITY.

■Eastern
Software       ITEM 1924 (9012)
CORPORATION

CTB 0680

COMMONWEALTH LAND
 TITLE INSURANCE COMPANY
  A Reliance Group Holdings Company

**TITLE INSURANCE COMMITMENT**

Commitment No.

File No. CT-18721(A)

### DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the
City of Asbury Park, County of Monmouth and state of New Jersey,
being more particularly described as follows:

Beginning at a point in the northerly line of Summerfield
Avenue distant 100 feet westerly from the westerly line of
DeWitt Avenue extended in a northerly direction and running;
thence

1.  North 71 degrees 14 minutes West along the northerly line
of Summerfield Avenue, 50.0 feet to a point; thence

2.  North 18 degrees 46 minutes East, 104.07 feet to a point;
thence

3.  South 70 degrees 52 minutes East, 50.0 feet to a point;
thence

4.  South 18 degrees 46 minutes West, 103.76 feet to the point
and place of Beginning.

The above description is drawn in accordance with a survey made
by JY Land Surveying, dated July 15, 1987.

Also known as Lot 75 in Block 62 on the City of Asbury Park Tax
Map.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660   (800) 521-0378   (908) 775-5543  FAX #(908) 308-1881

CTB 0681

# BALLOON RIDER

LOAN # 622633

(Full Repayment Required at Maturity)

THIS BALLOON RIDER is made this 18TH    day of December, 1996.    , and is
incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed to
Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the
Borrower's Note to NATIONAL HOME FUNDING    (the "Lender") of the same date and covering the

property described in the Security Instrument and located at:

1507 SUMMERFIELD AVENUE, ASBURY PARK, NJ 07712

(Property Address)

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date".
I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who
takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under
the Note is called the "Note Holder".
The Note is a Balloon Note which means that the amount of my monthly payment is insufficient to repay the
Note in full by Maturity. Therefore, the final payment will be significantly larger than the other payments under
the Note.
I understand that the Lender is under no obligation to refinance the Note or to modify the Note or reset the
Note Rate or to extend the Note Maturity Date or the Maturity Date of this Security Instrument, and that I will
have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.
I further understand that should I not repay the Note on or before the Maturity Date, I will be in default, and
the Lender will have the right to exercise all of its rights against me because of my default, including the right to
foreclosure of the Security Instrument, or other remedies permitted by law.

BY SIGNING BELOW, BORROWER accepts and agrees to the terms and covenants contained in this
Balloon Rider.

_Pamela Ricigliano_____ (Seal)
PAMELA RICIGLIANO                        -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

(8-2-95) JC-22205-11

Balloon Rider

## 1-4 FAMILY RIDER
### Assignment of Rents

Loan Number: 622633

THIS 1-4 FAMILY RIDER is made this 18th day of December, 1996 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to                                                                                                    (the "Lender")

NATIONAL HOME FUNDING

of the same date and covering the property described in the Security Instrument and located at:

1507 SUMMERFIELD AVENUE, ASBURY PARK, NJ 07712
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property".

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Uniform Covenant 18 is deleted.

Form 3170 9/90 (page 1 of 2 pages)

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument

Eastern Software CORPORATION ITEM 1790 (9410)

CTB 0683

F. **BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

G. **ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and; (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents of the Property shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents shall terminate when all the sums secured by the Security Instrument are paid in full.

I. **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this 1-4 Family Rider.

_Pamela Ricigliano_ (Seal)
-Borrower
PAMELA RICIGLIANO

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Form 3170 9/90 (page 2 of 2 pages)

CTB 0684

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the escrow items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender

Form 3031  9/90 (page 2 of 6 pages)

CTB 0685

requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property.  If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any

Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants 9/90    (page 3 of 6 pages)

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:(a) 5 days (or such other period as applicable law may

Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT – Uniform Covenants 9/90    (page 4 of 6 pages)

CTB 0687

specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

Form 3031  9/90 (page 5 of 6 pages)

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider ☐ Condominium Rider ☒ 1-4 Family Rider

☐ Graduated Payment Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider

☒ Balloon Rider ☐ Rate Improvement Rider ☐ Second Home Rider

☒ Other(s) [specify] LEGAL DESCRIPTION

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

*Pamela Ricigliano* _____ (Seal)
PAMELA RICIGLIANO -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

STATE OF NEW JERSEY, Monmouth County ss:

On this 18th day of December , 1996 ,before me, the subscriber, personally appeared PAMELA RICIGLIANO

who, I am satisfied, is the person(s) named in and who executed the within instrument, and thereupon she acknowledged that she signed, sealed and delivered the same as her act and deed, for the purposes therein expressed.

LORRAINE E. KING
NOTARY PUBLIC OF NEW JERSEY Notary Public
My Commission Expires Feb. 21, 2001

This instrument was prepared by: SONJI OWENS

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.
Witness:

*Pamela Ricigliano* _____ (Seal)
PAMELA RICIGLIANO -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Form 3031 9/90 (page 6 of 6 pages)

CTB 0689