# EXHIBIT 2G



FY 000966

# EXHIBIT 2H





077881

Deed
Grantor's Act(s) Corp. to ind. or Corp.
Own Loan No. 50781738
RPD No. 96-00390-0
Parcel No. 73

**COASTAL TITLE AGENCY, INC.**
21 WEST MAIN STREET
P.O. BOX 740
FREEHOLD, NJ 07728

Prepared by:

John F. Lanahan, Esq.

CONSIDERATION 44,720
RTF 157.50    add'l RTF
DATE 8/ 6 /9 BY

## DEED

This Deed is made on JULY 25, 1995

BETWEEN Citicorp North America, Inc., a Delaware Corporation, having its principal office at 399 Park Avenue, New York, NY 10043, referred to as the Grantor,

AND Cristo Property Management, Ltd., whose post office address is about to be 104 West End Avenue, Neptune, NJ, referred to as the Grantee.

The word "Grantee" shall mean all Grantees listed above.

**Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of $44,720.00. The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (N.J.S.A. 46:15-2.1) Municipality of Neptune, Block No. 319.2, Lot No. 3
[X]  No property tax identification number is available on the date of this Deed. (Check box if applicable).

**Property.** The property consists of the land and all the buildings and structures on the land in the Township of Neptune, County of Monmouth, and State of New Jersey. The legal description is:

BEING MORE PARTICULARLY DESCRIBED ON SCHEDULE A ATTACHED HERETO AND MADE A PART HEREOF.

BEING the same premises conveyed to the within Grantor by deed from Bristol Oaks, L.P., dated July 25, 1996 and recorded simultaneously and just prior to the within deed.

This property is conveyed subject to easements, restrictions of record, such facts as may be disclosed by an accurate survey and zoning ordinances and other governments/regulations affecting the property and its use.

CTC 3471

ALTA COMMITMENT

## COMMITMENT FOR TITLE INSURANCE

SCHEDULE A (Description)

Commitment No. CT-17765

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Neptune, County of Monmouth , and state of New Jersey.

Known and designated as and by Lots Nos. 25, 26, 27, 28 in Block 2, as shown on map entitled Map "A", Asbury Park Terrace, Neptune Township, Monmouth County, New Jersey, owned by Louis Smadbeck, Weston Realty Company, dated June 2, 1908. Niart Rogers, C.E., which was filed in the Monmouth County Clerk's Office on August 6, 1908 as Map No. 35-16.

Beginning at the southwest intersection of West End Avenue and Central Boulevard and running; thence

1.  South 40 degrees 48 minutes 30 seconds east along the southwesterly line of Central Boulevard, 100.00 feet to a point; thence

2.  South 49 degrees 11 minutes 30 seconds west, 100.00 feet to a point; thence

3.  North 40 degrees 48 minutes 30 seconds west, 100.00 feet to a point in the southeasterly line of West End Avenue; thence

4.  North 49 degrees 11 minutes 30 seconds east along same, 100.00 feet to the point and place of Beginning.

NOTE:  Being Lot(s) 3, Block 319.02, Tax Map of the Township of Neptune.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

*NTI*

CTC 3472

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor's proper corporate officers as of the date at the top of the first page. Its corporate seal is affixed.

Citicorp North America, Inc., a Delaware Corporation, by ROBERT D. STARNES, its Attorney-in-Fact

Witnessed/Attested by:

Les W. Carter

ROBERT D. STARNES

STATE TEXAS          :
                     : ss.
COUNTY OF TRAVIS     :

I CERTIFY that on _____, 1996, _____ personally came before me and this person acknowledged under oath, to my satisfaction, that:

    (a)  this person is the _____ of _____, the corporation named in this Deed;

    (b)  this person is the attesting witness to the signing of this Deed by the proper corporate officer who is _____, the _____ of the corporation;

    (c)  this Deed was signed and delivered by the corporation as its voluntary act duly authorized by a proper resolution of its Board of Directors;

    (d)  this person knows the proper seal of the corporation which was affixed to this Deed;

    (e)  this person signed this proof to attest to the truth of these facts; and

CTC 3473

(f)   the full and actual consideration paid or to be paid for
      the transfer of title is $_____.  (Such considera-
      tion is defined in N.J.S.A. 46:15-5.)

Signed and sworn to before me
on _____, 1996

_____
(Notary Public)

STATE OF TEXAS        :
                      : ss.
COUNTY OF TRAVIS      :

    I CERTIFY that on _JULY 25___, 1996, ROBERT O. STARNES_____,
personally came before me and acknowledged under oath, to my
satisfaction, that this person (or if more than one, each person):

(a)   is an attorney in fact for Citicorp North America, Inc.,
      a Delaware Corporation;
(b)   signed, sealed and delivered this Deed as his or her act
      and deed on behalf of the corporation; and
(c)   made this Deed for $44,720.00 as the full and actual
      consideration paid or to be paid for the transfer of
      title.  (Such consideration is defined in N.J.S.A. 46:15-
      (5).

                          Signed and sworn to before
                          me on _JULY 25_____,
                          1996

                          _Sonja M. Plummer_____
                          Notary Public of Texas

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997050921
     RECORDED ON
May 06, 1997
12:16:19 PM
BOOK:DB-5593 PG:549
   Total Pages: 4

COUNTY RECORDING   $22.00
FEES
DEDICATED TRUST     $2.00
AND COMMISSION
COUNTY REALTY      $45.05
TRANSFER FEES
STATE REALTY      $112.45
TRANSFER FEES
TOTAL             $181.50

CTC 3474

# EXHIBIT 2I

EXHIBIT

OASTAL TITLE AGENCY, INC. 

21 WEST MAIN STREET

P.O. BOX 740

FREEHOLD, NJ 07728

C77862

Prepared by:

Richard J. Pepsny, Esq.

## DEED

This Deed is made on, JULY 25, 1996,

BETWEEN:

Cristo Property Management, LTD.

a corporation in the state of New Jersey, having its
principal office at 25 Oakwood Drive, Parlin, New Jersey
referred to as the Grantor,

AND:

George T. Leodis

whose post office address is about to be 104 West End
Avenue, Neptune, NJ

referred to as Grantee.

The word "Grantee" shall mean all Grantees listed above.

Transfer of Ownership.   The Grantor grants and conveys
(transfers ownership of) the property described below to the
Grantee. This transfer is made for the sum of ($125,000.00).  The
Grantor acknowledges receipt of this money.

Tax Map Reference. (N.J.S.A.46:15-1.1) Municipality of
Neptune

Block No.   319.2            Lot No.   3        Account no.

____ No Property tax identification number is available on the date
of this Deed. (check box if applicable.)

Property.  The Property consists of the land and all the
buildings and structures on the land in the Township of Neptune
County of MONMOUTH and State of New Jersey. The legal description
is: 104 West End Ave, Neptune

SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION.

BEING THE SAME PREMISES CONVEYED TO THE GRANTOR HEREIN BY DEED FROM
BRISTOL OAKS, L.P. DATED JULY 25, 1996   IN WHICH DEED IS INTENDED
TO BE RECORDED SIMULTANEOUSLY HEREWITH.

COUNTY OF MONMOUTH
CONSIDERATION 125,000
RTF 477        addl RTF
DATE 5/6/97 BY

CTC 3468

ALTA COMMITMENT

# COMMITMENT FOR TITLE INSURANCE

### SCHEDULE A (Description)

Commitment No. CT-17765

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Neptune, County of Monmouth , and state of New Jersey.

Known and designated as and by Lots Nos. 25, 26, 27, 28 in Block 2, as shown on map entitled Map' "A", Asbury Park Terrace, Neptune Township, Monmouth County, New Jersey, owned by Louis Smadbeck, Weston Realty Company, dated June 2, 1908, Niart Rogers, C.E., which was filed in the Monmouth County Clerk's Office on August 6, 1908 as Map No. 35-16.

Beginning at the southwest intersection of West End Avenue and Central Boulevard and running; thence

1.  South 40 degrees 48 minutes 30 seconds east along the southwesterly line of Central Boulevard, 100.00 feet to a point; thence

2.  South 49 degrees 11 minutes 30 seconds west, 100.00 feet to a point; thence

3. North 40 degrees 48 minutes 30 seconds west, 100.00 feet to a point in the southeasterly line of West End Avenue; thence

4.  North 49 degrees 11 minutes 30 seconds east along same, 100.00 feet to the point and place of Beginning.

NOTE:  Being Lot(s) 3, Block 319.02, Tax Map of the Township of Neptune.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

*NTI*

CTC 3469

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor's proper corporate officers as of the date at the top of the first page. Its corporate seal is affixed.

COMMONLY KNOWN AS: 104 WEST END AVENUE, NEPTUNE, NEW JERSEY

Attested by:

By:................................(SEAL)
WILLIAM KANE, PRESIDENT/SECRETARY

RICHARD J. PEPSNY
ATTORNEY AT LAW
STATE OF NEW JERSEY

STATE OF NEW JERSEY:
COUNTY OF MIDDLESEX                    ss.:

BE IT REMEMBERED, that on this 25th day of July, 1996, before the subscriber, personally appeared WILLIAM KANE, who I am satisfied is the PRESIDENT and SECRETARY of CRISTO PROPERTY MANAGEMENT, LTD., the corporation named in and which executed the within instrument, and who knows the corporate seal of the said corporation and I having first made known to him the contents of said instrument, he acknowledged that the same was signed by him as such officer of said corporation, sealed with its corporate seal and delivered by him as his voluntary act and deed and the voluntary act and deed of the said corporation, made by virtue of authority from its Board of Directors, and the full and actual consideration paid or to be paid for the transfer of title is $125,000.00. (Such consideration is defined in N.J.S.A. 46:15-5.)

Richard J. Pepsny
Attorney at Law State of New Jersey

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997050922
RECORDED ON
JUN 06, 1997
12:16:20 PM
BOOK:OR-5598 PG:556
Total Pages: 3

| | |
|---|---|
| COUNTY RECORDING FEE | $20.00 |
| DEDICATED TRUST FD COMMISSION | $2.00 |
| COUNTY REALTY TRANSFER FEES | $125.13 |
| STATE REALTY TRANSFER FEES | $312.37 |
| TAX | $459.50 |

CTC 3470

# EXHIBIT 2J

**COASTAL TITLE AGENCY, INC.**

21 WEST MAIN STREET

P.O. BOX 740

FREEHOLD, NJ 07728

077884

33  10

WHEN REC

WALSH SE

4 CAMPUS

PARSIPPA

ER, ESQ.

991

991

Loan Number : 619482

_____[SPACE ABOVE THIS LINE FOR RECORDING DATA]_____

# MORGAGE

**THIS MORTGAGE** (" Security Instrument") is given on      July      25, 1996
The mortgagor is GEORGE T. LEODIS, UNMARRIED

("Borrower"). This Security Instrument is given to

NATIONAL HOME FUNDING, INC.

, which is organized and existing

under the laws of    NEW JERSEY                , and whose principal office and mailing address is
3443 HIGHWAY 9-N HOLIDAY PLAZA, FREEHOLD, NJ 07728

("Lender"). Borrower owes Lender the principal sum of

Ninety-Three Thousand Seven Hundred Fifty Dollars And 00/100

Dollars (U.S.$      93,750.00 ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
August      1, 2011      . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security
Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date,
and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, § 1 et seq., and upon such modification,
shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security
Instrument is $   93,750.00      . For these purposes, Borrower does hereby mortgage, grant and convey to Lender the
following described property located in   MONMOUTH                                County, New Jersey:
SEE LEGAL DESCRIPTION ATTACHED HERETO

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997050924
RECORDED ON
May 06, 1997
12:16:22 PM
BOOK:MB-6186 PG:209
Total Pages: 10

COUNTY RECORDING   $31.00
FEES
DEDICATED TRUST     $2.00
FUND COMMISSION
TOTAL         $33.00   which has the address of  104 WEST END AVENUE                       NEPTUNE
                                                        [Street]                              [City]
New Jersey        07753          ("Property Address");
              [Zip Code]

* THE NOTE THIS SECURITY INSTRUMENT SECURES CONTAINS
PROVISIONS FOR A BALLOON PAYMENT. THE ENTIRE PRINCIPAL
BALANCE OF THE LOAN AND UNPAID INTEREST IS PAYABLE
IN FULL AT MATURITY.

**NEW JERSEY**-Single Family -**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3031 9/90 (page 1 of 6 pages)

■Eastern
Software     ITEM 1924 (9012)
CORPORATION

Not a Certified Copy

ALTA COMMITMENT

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE A (Description)

#### Commitment No. CT-17765(A)

ALL that certain plot, piece or parcel of land, with the buildings and improvements
thereon erected, situate, lying and being in the Township of Neputne County
of Monmouth , and state of New Jersey.

Known and designated as and by Lots Nos. 25, 26, 27, 28 in Block 2, as shown on map entitled Map "A", Asbury Park Terrace, Neptune Township, Monmouth County, New Jersey, owned by Louis Smadbeck, Weston Realty Company, dated June 2, 1908, Niart Rogers, C.E., which was filed in the Monmouth County Clerk's Office on August 6, 1908 as Map No. 35-16.

Beginning at the southwest intersection of West End Avenue and Central Boulevard and running; thence

1. South 40 degrees 48 minutes 30 seconds east along the southwesterly line of Central Boulevard, 100.00 feet to a point; thence

2. South 49 degrees 11 minutes 30 seconds west, 100.00 feet to a point; thence

3. North 40 degrees 48 minutes 30 seconds west, 100.00 feet to a point in the southeasterly line of West End Avenue; thence

4. North 49 degrees 11 minutes 30 seconds east along same, 100.00 feet to the point and place of Beginning.

NOTE: Being Lot(s) 3, Block 319.02, Tax Map of the Township of Neptune.


Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

*NTI*

# BALLOON RIDER

LOAN #  619482

### (Full Repayment Required at Maturity)

THIS BALLOON RIDER is made this 25TH     day of July     , 1996          , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to  NATIONAL HOME FUNDING, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**104 WEST END AVENUE, NEPTUNE, NJ 07753**

(Property Address)

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

The Note is a Balloon Note which means that the amount of my monthly payment is insufficient to repay the Note in full by Maturity. Therefore, the final payment will be significantly larger than the other payments under the Note.

I understand that the Lender is under no obligation to refinance the Note or to modify the Note or reset the Note Rate or to extend the Note Maturity Date or the Maturity Date of this Security Instrument, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

I further understand that should I not repay the Note on or before the Maturity Date, I will be in default, and the Lender will have the right to exercise all of its rights against me because of my default, including the right to foreclosure of the Security Instrument, or other remedies permitted by law.

BY SIGNING BELOW, BORROWER accepts and agrees to the terms and covenants contained in this Balloon Rider.

_George T. Leodis_ _____ (Seal)
GEORGE T. LEODIS                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

Balloon Rider                                        (8-2-95) JC-22205-11

# 1-4 FAMILY RIDER
### Assignment of Rents

Loan Number: 619482

THIS 1-4 FAMILY RIDER is made this 25th day of July, 1996 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

NATIONAL HOME FUNDING, INC.

(the "Lender")

of the same date and covering the property described in the Security Instrument and located at:

104 WEST END AVENUE, NEPTUNE, NJ 07753

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property".

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument        Form 3170 9/90 (page 1 of 2 pages)

Eastern
Software
CORPORATION   ITEM 1790 (9410)

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and; (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this 1-4 Family Rider.

_George T. Leodis_ _____ (Seal)     _____ (Seal)
GEORGE T. LEODIS                    -Borrower                                            -Borrower

_____ (Seal)     _____ (Seal)
                                   -Borrower                                            -Borrower

Form 3170 9/90 (page 2 of 2 pages)

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
   **1. Payment of Principal and Interest; Prepayment and Late Charges.**  Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
   **2. Funds for Taxes and Insurance.**  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the escrow items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.
   **3. Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the note.
   **4. Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.
   **5. Hazard or Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender

**Form 3031  9/90** (page 2 of 6 pages)

requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants 9/90 (page 3 of 6 pages)

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, required immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:(a) 5 days (or such other period as applicable law may

Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** – Uniform Covenants 9/90  (page 4 of 6 pages)

specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**Form 3031  9/90** (page 5 of 6 pages)

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider            ☐ Condominium Rider            ☒ 1-4 Family Rider

☐ Graduated Payment Rider          ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider

☒ Balloon Rider                    ☐ Rate Improvement Rider       ☐ Second Home Rider

☒ Other(s) [specify]   LEGAL DESCRIPTION

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____        _____ (Seal)
                                        GEORGE T. LEODIS                -Borrower

                                        _____ (Seal)
                                                                       -Borrower

_____        _____ (Seal)
                                                                       -Borrower

                                        _____ (Seal)
                                                                       -Borrower

STATE OF NEW JERSEY,            Monmouth            County ss:
        On this   25th   day of   July   , 1996        , before me, the subscriber, personally appeared
GEORGE T. LEODIS

        is      the person(s) named in and who executed the within instrument, and thereupon   he
acknowledged that   he      signed, sealed and delivered the same as         his         act and
deed, for the purposes therein expressed.

                                        _____ Notary Public

                                        LORRAINE E. KING
                                        NOTARY PUBLIC OF NEW JERSEY
                                        My Commission Expires Feb. 21, 2001

This instrument was prepared by:   CAROLYNN CZACHOR

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.
Witness:

                                        _____ (Seal)
                                        GEORGE T. LEODIS                -Borrower

                                        _____ (Seal)
                                                                       -Borrower

_____        _____ (Seal)
                                                                       -Borrower

                                        _____ (Seal)
                                                                       -Borrower

Not Certified Copy

Form 3031  9/90 (page 6 of 6 pages)

# EXHIBIT 2K

‖  ‖

P.O. Box 140
Freehold NJ 07728

077883

EXHIBIT
NATION5-14
9/23/16

Deed-Bargain & Sale

Prepared By: _____
LORRAINE E. KING

R/R STANLEY YACKER, ESQ.
330 HWY 34 - PO BOX 991
MATAWAN, NJ 07747-0991

# DEED

**This Deed,** made this 25TH day of JULY, 1996,

COUNTY OF MONMOUTH
CONSIDERATION
RTF _____ add'l RTF
DATE _____ BY _____

Between    GEORGE T. LEODIS

located at  104 WEST END AVENUE, NEPTUNE, NEW JERSEY 07753
herein designated as the Grantor,

And    GEORGE T. LEODIS AND CAPITAL ASSETS PROPERTY MANAGEMENT &
INVESTMENT, CO., INC.

GEORGE TO. LEODIS AS TO 40% INTEREST AND
CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT, CO., INC.
AS TO 60% INTEREST

located at 10 WEST BERGEN PLACE, SUITE 104, RED BANK, NEW JERSEY  07701 herein
designated as the Grantee;

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

**Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property
described below to the Grantee. This transfer is made for the sum of  UNDER ONE HUNDRED
DOLLARS. The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (*N.J.S.A.* 46:15-1.1) Municipality of NEPTUNE
Block  319.2      Lot    3      Account No.

_____ No Property tax identification number is available on the date of this Deed.  (Check this box if
applicable.)

**Property.**  The Property consists of the land and all the buildings and structures on the
land in the **TOWNSHIP of NEPTUNE**, County of **Monmouth** the State of New Jersey, and is
commonly known as **104 WEST END AVENUE, NEPTUNE, NEW JERSEY.**  The legal
description is:

**SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION.**

THE GRANTOR WILL WARRANT, SECURE AND FOREVER DEFEND THE TITLE TO
THE SUBJECT PROPERTY.

CTC 3560

ALTA COMMITMENT

COMMITMENT FOR TITLE INSURANCE

SCHEDULE A (Description)

Commitment No. CT-17765(A)

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Neptune County of Monmouth, and state of New Jersey.

Known and designated as and by Lots Nos. 25, 26, 27, 28 in Block 2, as shown on map entitled Map "A", Asbury Park Terrace, Neptune Township, Monmouth County, New Jersey, owned by Louis Smadbeck, Weston Realty Company, dated June 2, 1908, Niart Rogers, C.E., which was filed in the Monmouth County Clerk's Office on August 6, 1908 as Map No. 35-16.

Beginning at the southwest intersection of West End Avenue and Central Boulevard and running; thence

South 40 degrees 48 minutes 30 seconds east along the southwesterly line of Central Boulevard, 100.00 feet to a point; thence

South 49 degrees 11 minutes 30 seconds west, 100.00 feet to a point; thence

North 40 degrees 48 minutes 30 seconds west, 100.00 feet to a point in the southeasterly line of West End Avenue; thence

North 49 degrees 11 minutes 30 seconds east along same, 100.00 feet to the point and place of Beginning.

NOTE: Being Lot(s) 3, Block 319.02, Tax Map of the Township of Neptune.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

*NTI*

CTC 3561

Promises by Grantor.  The Grantor promises that the Grantor has done no act to encumber the property.  This promise is called a "covenant as to Grantor's acts" (*N.J.S.A.* 46:4-6).  This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

Signatures.  This Deed is signed and attested to by the Grantor who has hereunto set their hand and seal the day and year first above written.

Signed, Sealed and Delivered
in the presence of

_____                    _____
                                           GEORGE T. LEODIS

STATE OF NEW JERSEY          }
                             }  SS
COUNTY OF MONMOUTH           }

Be it Remembered, that on ___July 25___ , 1996, before me, the subscriber, a Notary Public of New Jersey, personally appeared GEORGE T. LEODIS, who I am satisfied, are the persons named. in and who executed the within Instrument, and thereupon they acknowledged that they signed, sealed and delivered the same as their act and deed, for the uses and purposes therein expressed, and that the full and actual consideration paid or to be paid for the transfer of title to realty evidenced by the within deed, as such consideration is defined in N.J.S.A. 46:15-5, is UNDER ONE HUNDRED DOLLARS.

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997050923
RECORDED ON
May 06, 1997
12:16:21 PM
BOOK:OR-5598 PG:559
Total Pages: 4

COUNTY RECORDING    $22.00
FEES
DEDICATED TRUST     $2.00
FUND COMMISSION
TOTAL               $24.00

_____
LORRAINE E. KING
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

CTC 3563

STATE OF NEW JERSEY }
                    } ss
COUNTY OF MONMOUTH }

## AFFIDAVIT OF TITLE

1. **Representations.** If only one person signs this affidavit the words 've', 'us' and 'our' shall mean 'I', 'me' and 'my'. The statements in this affidavit are true to the best of our knowledge, information and belief.

2. **Name, Age and Residence.** We have never changed our names or used any other names. We are citizens of the United States and at least 18 years old. After today, we will live at *104 West End Ave, Neptune* NJ.

3. **Ownership and Possession.** We are the only owners of property located at *104 West End Ave, Neptune* NJ, called "this property". We now mortgage this property to NATIONAL HOME FUNDING, INC.

The date of the mortgage is the same as this affidavit. This mortgage is given to secure a loan of $ *93,750*. We are in sole possession of this property. There are no tenants or other occupants of this property. We have owned this property since JULY 24, 1996. Since then no one has questioned our ownership or right to possession. We have never owned any property which is next to this property.

4. **Improvements.** No additions, alterations or improvements are now being made or have been made to this property since this date. We have always obtained all necessary permits and certificates of occupancy. All charges for municipal improvements such as sewers, sidewalks, curbs or similar improvements benefiting this property have been paid in full. We are not aware that anyone has filed or intends to file a mechanic's lien or building contract relating to this property. No one has notified us that money is due and owing for construction, alteration or repair work on this property.

5. **Liens or Encumbrances.** We have not allowed any interests (legal rights) to be created which affects our ownership or use of this property. No other persons have legal rights in this property, except the rights of utility companies to use this property along the road or for the purpose of serving this property. There are no pending lawsuits or judgments against us or other legal obligations which may be enforced against this property. No bankruptcy or insolvency proceeding have been started by or against us. We have never been declared bankrupt. No one has any security interest in any personal property or fixtures on this property. All liens (legal claims, such as judgments) listed on the attached judgment or lien search are not against us, but against others with similar names.

6. **Marital History.** (check where appropriate)

[ X ] We are not married.
[   ] We are married to each other. We were married on _____. The maiden name of _____ was.
[   ] This property has never been occupied as the principal matrimonial residence of any of us. (If it has, or if it was acquired before May 28, 1980, each spouse must sign the mortgage and affidavit N.J.S.A. 16:28-7.3.)
[   ] Our complete marital history is listed below under paragraph number 7. This includes all marriages not listed above, and any pending matrimonial actions. We include how each marriage ended. We have attached copies of any death certificates and judgment for divorce or annulment including any provisions in these judgments which relate to this property.

7. **Exceptions and Additions.** The following is a complete list of exceptions and additions to the above statements. This includes all liens or mortgages which are not being paid off as a result of this mortgage.

8. **Reliance.** We make this affidavit in order to obtain the mortgage loan. We are aware that our lender will rely on our truthfulness and the statements made in this affidavit.

Signed and sworn to before me
this *25th* day of *July*, 1996.

_____          _____
                                          GEORGE T. XXXXXX

_____
**LORRAINE E. KING**
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

CTC 3564

# EXHIBIT 2L

Promises by Grantor. The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to Grantor's acts" (*N.J.S.A.* 46:4-6). This promise meant that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

Signatures. This Deed is signed and attested to by the Grantor who has hereunto set their hand and seal the day and year first above written.

Signed, Sealed and Delivered
   in the presence of

_____                    _____
                                           GEORGE T. LEODIS

STATE OF NEW JERSEY    }
                       } SS
COUNTY OF MONMOUTH     }

Be it Remembered, that on July 25 , 1996, before me, the subscriber, a Notary Public of New Jersey, personally appeared GEORGE T. LEODIS, who I am satisfied, are the persons named, in and who executed the within Instrument, and thereupon they acknowledged that they signed, sealed and delivered the same as their act and deed, for the uses and purposes therein expressed, and that the full and actual consideration paid or to be paid for the transfer of title to realty evidenced by the within deed, as such consideration is defined in N.J.S.A. 46:15-5, is UNDER ONE HUNDRED DOLLARS.

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997050923
RECORDED ON
Nov 04, 1997
12:16:23 PM
RECEIPT-5791 PG:509
Total Pages: 6

COUNTY RECORDING   $22.00
FEES
DEDICATED TRUST    $2.00
FUND COMMISSION
TOTAL:             $24.00

_____
LORRAINE E. KING
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

---

COASTAL TITLE AGENCY, INC.
21 WEST MAIN STREET
P.O. BOX 740
FREEHOLD, NJ 07728

WALSH, SR.
4 CAMPUS
PARSIPPANI

RETURN REC'D
                    SR, ESQ.
                    991
                    991
Loan Number : 619482

33

[SPACE ABOVE THIS LINE FOR RECORDING DATA]

# MORTGAGE

THIS MORTGAGE (" Security Instrument") is given on   July   25, 1996 . The mortgagor is GEORGE T. LEODIS, UNMARRIED

("Borrower"). This Security Instrument is given to
· NATIONAL HOME FUNDING, INC.

, which is organized and existing under the laws of   NEW JERSEY , and whose principal office and mailing address is
3443 HIGHWAY 9-N HOLIDAY PLAZA, FREEHOLD, NJ 07728

("Lender"). Borrower owes Lender the principal sum of
Ninety-Three Thousand Seven Hundred Fifty Dollars And 00/100
Dollars (U.S.$   93,750.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
August   1, 2011 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1995, ch. 333, § 1 et. seq, and upon such modification, shall have the benefit of the lien priority provision of that law. The maximum principal amount secured by this Security Instrument is $   93,750.00 . For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in   MONMOUTH                                          County, New Jersey.

SEE LEGAL DESCRIPTION ATTACHED HERETO

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997050924
RECORDED ON
Nov 04, 1997
12:16:23 PM
RECEIPT-4194 PG:509
Total Pages: 10

COUNTY RECORDING   $31.00
FEES
DEDICATED TRUST    $2.00
FUND COMMISSION
TOTAL:

which has the address of   104 WEST END AVENUE
                                            [Street]
New Jersey   07753                          NEPTUNE
            [Zip Code]   ("Property Address");                    [City]

NEW JERSEY-Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3031  9/90 (page 1 of 6 pages)

• THE NOTE THIS SECURITY INSTRUMENT SECURES CONTAINS PROVISIONS FOR A BALLOON PAYMENT. THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST IS PAYABLE IN FULL AT MATURITY.

Bankers
Systems
SOFTWARE   FORM 1704 (9052)

CTC 3496

# EXHIBIT 2M





**Loan Policy of Title Insurance**

# Fidelity National Title Insurance Company
### of New York
A Stock Company

**POLICY NUMBER** 5412-518224

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, a New York corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:*

1. *Title to the estate or interest described in Schedule A being vested other than as stated therein;*
2. *Any defect in or lien or encumbrance on the title;*
3. *Unmarketability of the title;*
4. *Lack of a right of access to and from the land;*
5. *The invalidity or unenforceability of the lien of the insured mortgage upon the title;*
6. *The priority of any lien or encumbrance over the lien of the insured mortgage;*
7. *Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:*
   a. *arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or*
   b. *arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;*
8. *The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.*

*The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.*

*IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.*

*IN THE EVENT THIS POLICY IS ISSUED IN SOUTH CAROLINA NOTICE IS HEREBY GIVEN THAT THIS POLICY IS SUBJECT TO ARBITRATION PURSUANT TO THE PROVISIONS OF CHAPTER 48 OF TITLE 15 (SEC. 15-48 10 ET. SEQ.) OF THE SOUTH CAROLINA CODE OF LAWS, 1976, AS AMENDED.)*

FIDELITY NATIONAL TITLE INSURANCE COMPANY
OF NEW YORK

Countersigned _____
_____
Authorized Signature
(PLEASE PRINT NAME)

SEAL

By: _____
President

Attest: *Charles H. Wimer*
Secretary

FORM 5412 (5/1/93)
Reprinted (1/96)

ALTA LOAN POLICY 1992 (10-17-92)

FY 000758

F-20B ALTA Loan Policy

**COASTAL TITLE AGENCY, INC.**
PO Box 740  21 West Main Street
Freehold NJ  07728
(800) 521-0378  FAX# (908) 308-1881

FILE NO.  CT-17765(a)

## SCHEDULE A

| Policy Number | Date of Policy | Amount of Insurance |
|---|---|---|
| 5412-518224 | May 21, 1996 | $93,750.00 |

1. Name of Insured:

   National Home Funding, Inc., its successors and/or assigns, as their interest may appear

2. The estate or interest in the land which is encumbered by the insured mortgage
   is:  FEE SIMPLE

3. Title to the estate or interest in the land is vested in:

   George T Leodis

4. The insured mortgage and assignments thereof, if any, are described as follows:

   Mortgage made by George T Leodis  to  National Home Funding, Inc., its successors and/or assigns, dated 7/25/96
   and recorded 5/6/97 in the Monmouth County Clerk's Office in Mortgage Book 6186 Page 209 in the amount of
   $93,750.00.

5. The land referred to in this policy is described in Schedule A-4.

   (SEE DESCRIPTION ATTACHED)

**FIDELITY
NATIONAL TITLE
Insurance Company of New York**

F-71.NJL FOR USE WITH ALTA LOAN POLICY (4-6-90)
NJRB 2-05

FY 000759

ALTA COMMITMENT

<u>COMMITMENT FOR TITLE INSURANCE</u>

SCHEDULE A (Description)

Commitment No. CT-17765(A)

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Neputne County of Monmouth, and state of New Jersey.

Known and designated as and by Lots Nos. 25, 26, 27, 28 in Block 2, as shown on map entitled Map "A", Asbury Park Terrace, Neptune Township, Monmouth County, New Jersey, owned by Louis Smadbeck, Weston Realty Company, dated June 2, 1908, Niart Rogers, C.E., which was filed in the Monmouth County Clerk's Office on August 6, 1908 as Map No. 35-16.

Beginning at the southwest intersection of West End Avenue and Central Boulevard and running; thence

1. South 40 degrees 48 minutes 30 seconds east along the southwesterly line of Central Boulevard, 100.00 feet to a point; thence

2. South 49 degrees 11 minutes 30 seconds west, 100.00 feet to a point; thence

3. North 40 degrees 48 minutes 30 seconds west, 100.00 feet to a point in the southeasterly line of West End Avenue; thence

4. North 49 degrees 11 minutes 30 seconds east along same, 100.00 feet to the point and place of Beginning.

NOTE: Being Lot(s) 3, Block 319.02, Tax Map of the Township of Neptune.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FY 000760

## SCHEDULE B

**POLICY NUMBER:** 5412-518224

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees of expenses) which arise by reason of:

### PART I

1. Encroachments, overlaps, boundary line disputes, and any other matters which would be disclosed by an accurate inspection of the premises.

2. Lien for unpaid taxes for the year 1996. (Taxes paid through date of closing) (Subsequent taxes not yet due and payable)

3. Possible additional taxes assessed or levied under N.J.S.A. 54:4-63.1 et seq. (None yet due and payable)

   NOTE: Policy insures that the alphabetical Indicies have been searched through the recording of the Deed and/or Mortgage, and same are properly indexed.

4. Utility easement(s) as contained in Deed Book 3080, Page 345.

5. Restrictions as contained in Deed Book 3122 Page 427.

   NOTE: This policy insures that the mortgage set forth under Schedule A hereof is a valid first lien on the property described therein.

Note: If there are matters which affect the title to the estate or interest in the land described in Schedule A-4, but which are subordinate to the lien of the insured mortgage, see PART II of Schedule B.

### FIDELITY NATIONAL TITLE
### Insurance Company of New York

P71.B NJL FOR USE WITH ALTA LOAN POLICY (4-6-90)
NJRB 2.05

FY 000761

SCHEDULE B

POLICY NUMBER: 5412-518224

PART II

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to the lien or charge of the insured mortgage upon said estate or interest: NONE

**FIDELITY NATIONAL TITLE**
Insurance Company of New York

P61.BII FOR USE WITH ALTA LOAN POLICY (6-1-87)
NJRB 2-03
7/2/90

FY 000762

# FIDELITY NATIONAL TITLE INSURANCE COMPANY
# OF NEW YORK

## ENVIRONMENTAL PROTECTION LIEN ENDORSEMENT

Attached to and forming a part of Policy No. 5412-518224 of FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and  without knowledge, or  filed in  the  records of the  clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

any environmental protection lien provided for by any state statute in effect at Date of  Policy,  except environmental protection liens provided for by the following state statutes:

This endorsement will not insure against liens arising pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. subsequent to the effective date of this policy.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements,  nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

IN WITNESS WHEREOF, the Company has caused its corporate name and seal to be hereunto affixed by its duly authorized officers and countersigned on the date hereinafter set forth.

FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK

DATED: 7/1/97


Countersigned: By:  William P. Foley, President

Attest:  Charles H. Wimer, Secretary

BY:_____
Authorized Signatory

ALTA ENDORSEMENT - Form 8.1 (Environmental Protection Lien
to Accompany only ALTA Loan Policies
NJRB 5-17 (3-12-88) FOR USE IN NEW JERSEY ONLY
FORM 26-31-8.1-88 (11/93)

FIDELITY NATIONAL TITLE IN'' RANCE COMPANY
OF NEW YORK

### ENDORSEMENT

Attached to and forming a part of Policy No. 5412-518224 of FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK.

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:
Any incorrectness in the assurance that, at Date of Policy:
There are no covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.
Unless expressly excepted in Schedule B:
There are no present violations on the land of any enforceable covenants, conditions or restrictions, nor do any existing improvements on the land violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.
Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land does not, in addition, (i) establish an easement on the land; (ii) provide a lien for liquidated damages; (iii) provide for a private charge or assessment; (iv) provide for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.
There is no encroachment of existing improvements located on the land onto adjoining land, nor any encroachment onto the land of existing improvements located on adjoining land.
There is no encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.
There are no notices of violation of covenants, conditions or restrictions relating to environmental protection recorded or filed in the public records.
Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the insured, provided the violation results in:
Impairment or loss of the lien of the insured mortgage; or,
Loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the mortgage.
Damage to existing improvements (including lawns, shrubbery or trees)
Which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved;
Which results from the future exercise of any right to use the surface of the land for the extraction or development minerals excepted from the description of the land or excepted in Schedule B.
Any final court order or judgment requiring the removal from any land of any encroachment excepted in Schedule B.
Any final court order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat or subdivision recorded or filed in the public records.
Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraphs 1 (b) (1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

IN WITNESS WHEREOF, the Company has caused its corporate name and seal to be hereunto affixed by its duly authorized officers and countersigned on the date hereinafter set forth.

DATED:7/1/97                      FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK
Countersigned:

                                  By: William P. Foley, President
                                  Attest: Charles H. Wimer, Secretary

_____
Authorized Signatory

ALTA ENDORSEMENT FORM 9 RESTRICTIONS, ENCROACHMENTS, MINERALS(REV. 3-27-92) NJRB 5-30
FORM 26-9.0-92 (11/93)

## STREET ASSESSMENT ENDORSEMENT
## (NEW JERSEY)

### ISSUED BY

### Fidelity National Title Insurance Company
### of New York

Attached to Policy Number 5412-518224

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

any assessments for street or other municipal improvements authorized, under construction, or completed at Date of Policy not excepted in Schedule B which now have gained or hereafter may gain priority over the lien of the insured mortgage.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

This endorsement shall not be valid or binding until signed by an authorized signature as designed below.

Signed 7/1/97.

Fidelity National Title Insurance Company
of New York

Countersigned:

By: _____
Authorized Officer or Agent

2355
ALTA Endorsement - Form 1

FY 000765

# FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK

## FNMA BALLOON MORTGAGE ENDORSEMENT

Attached to and forming a part of Policy No. 5412-518224 of FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK.

The Company insures the insured mortgagee against loss or damage by reason of:

1. The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for a Conditional Right to Refinance and a change in the rate of interest as set forth in the Mortgage Rider.

2. Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan, together with interest thereon, which loss of priority is caused by the exercise of the Conditional Right to Refinance and the extension of the loan term to the New Maturity Date set forth on the Rider and a change in the rate of interest, provided that all of the conditions set forth in paragraphs 2 and 5 of the Balloon Mortgage Rider have been met, and there are no other liens, defects, encumbrances, or other adverse matters affecting title arising subsequent to Date of Policy.

This endorsement does not insure against loss or damage based upon (a) usury or (b) any consumer credit protection or truth in lending law or (c) bankruptcy.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

In Witness Whereof, FIDELITY NATIONAL TITLE INSURANCE COMPANY OF PENNSYLVANIA has caused this Endorsement to be signed and sealed on its date of issue set forth herein.

DATED: 7/1/97

FIDELITY NATIONAL TITLE INSURANCE COMPANY
OF NEW YORK

By: William P. Foley ,President

Attest:  Charles H. Wimer, Secretary

_____

Authorized Signatory

Note: This endorsement shall not be valid or binding until countersigned by an authorized signature.

FORM 26-31-FNMA BME (11/93)
Mortgage Endorsement

FNMA Balloon
NJRB 5-31

FY 000766

CONDITIONS AND STIPULATIONS - ( Continued from Reverse Side of Policy Face )

**4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5. PROOF OF LOSS OR DAMAGE**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

**(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.**

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a (i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

**(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.**

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7. DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8. LIMITATION OF LIABILITY**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

FY 000767