UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

WALSH SECURITIES, INC., :
:
    Plaintiff, : Civil Action No. 97-cv-3496 (DRD)(MAS)
:
vs. : Hon. Dickinson R. Debevoise, U.S.D.J.
:
CRISTO PROPERTY MANAGEMENT, :
LTD., a/k/a G.J.L. LIMITED; et al., :
:
    Defendants. :

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
NATIONS TITLE INSURANCE OF NEW YORK, INC.'S AND
FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE TITLE CLAIMS**

---

STONE & MAGNANINI LLP
150 John F. Kennedy Parkway, 4th Floor
Short Hills, New Jersey 07078
(973) 218-1111
*Attorneys for Plaintiff Walsh Securities, Inc.*

Dated: December 22, 2011

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................................ i

**TABLE OF AUTHORITIES** ................................................................................................ ii

**INTRODUCTION** ................................................................................................................. 1

**FACTUAL BACKGROUND** ............................................................................................... 2

**ARGUMENT** ......................................................................................................................... 7

    **I. STANDARD OF REVIEW** ........................................................................................ 7

    **II. LIABILITY UNDER THE TITLE INSURANCE POLICIES** ..................................... 8

        *A. WSI Identified Several Bases for Coverage* ......................................................... 8

        *B. WSI's Damages Were Caused By The Title Insurance Defendants'*
          *Agents and Approved Attorneys* ............................................................................ 9

        *C. The Title Insurance Defendants Are Liable for WSI's Claims* ........................ 10

**CONCLUSION** ................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Federal Cases**

*American Savings & Loan v. Lawyers Title Ins. Co.*,
   793 F.2d 780 (6th Cir. 1986) ..................................................................................14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................................8

*Martin v. Banco Popular de P.R.*,
   379 F. App'x 185 (3d Cir. 2010) ...........................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ..................................................................................................8

*Stewart Title Guar. Co. v. Greenlands Realty, LLC*,
   58 F. Supp. 2d 370 (D.N.J. 1999) .....................................................................8, 11

**State Cases**

*Clients' Sec. Fund of the Bar of N.J. v. Sec. Title & Guar. Co.*,
   134 N.J. 358 (1993) ................................................................................................13

*Keown v. West Jersey Title & Guaranty Co.*,
   161 N.J. Super. 19 (App. Div. 1978) .............................................................11, 13

*Sandler v. New Jersey Realty Title Ins. Co.*,
   36 N.J. 471 (1962) ..................................................................................................13

*Sears Mortgage Corp. v. Rose*,
   134 N.J. 326 (1993) ................................................................................................13

*Summonte v. First American Title Ins. Co.*,
   180 N.J. Super. 605 (Ch. Div.), *aff'd*, 184 N.J. Super. 96, 445 A.2d 409 (App. Div. 1981)
   *certif. denied*, 89 N.J. 418 (1982) .......................................................................12

**Federal Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................8

**Miscellaneous**

Black's Law Dictionary (9th ed. 2009).........................................................................10

7 WILLISTON ON CONTRACTS § 50:10 (4th Ed.)..........................................................12

**INTRODUCTION**

Though these claims should have been paid years ago, Plaintiff Walsh Securities, Inc. ("WSI" or "Plaintiff") is, at the very least, entitled to proceed to trial on all of its title claims. Out of thirty-nine title claims, Defendants Nations Title Insurance of New York, Inc., Fidelity National Title Insurance Co. of New York, and Commonwealth Land Title Insurance Co.[1] (collectively, "Title Insurance Defendants") only challenge twenty-nine. A mere portion of WSI's overall basis for each of these title claims is the fact that, as a result of the massive fraud, WSI's rights were extinguished through a third-party's foreclosure. Plaintiff's title claims are also premised on loss or damage sustained or incurred by WSI as assignee of National Home Funding, including but not limited to, by reason of title to the estate or interest described in Schedule A of the Title Commitment being vested other than as stated therein; defect in or lien or encumbrance on the title; unmarketability of the title; and the invalidity or unenforceability of the lien of the insured mortgage upon the title. It is merely incidental that some of the assignments of the mortgages to WSI were not recorded in the public records, which resulted in WSI not receiving notice of the foreclosure tax sales thereby precluding it from taking action to protect its interest in the properties. The problems with these properties are not the lack of recording, but, rather, the defective and unmarketable titles and invalid and unenforceable liens. Thus, the Title Insurance Defendants are erroneous when they state that "[t]he title claims presented by WSI as to the 29 identified properties are a classic case of a title problem which the insured permitted to happen and created by its own conduct." As a result, their motion for partial summary judgment should be denied in its entirety.

---

[1] Defendant Commonwealth Land Title Insurance Company filed a statement in lieu of a brief joining in this motion. (Docket Entry 481).

## FACTUAL BACKGROUND

Walsh Securities was a wholesale residential mortgage lender at the time of this fraud in 1996-1997.[2]  In April 1996, two months after the fraud began, WSI became a successor in interest to GF Mortgage Corp.  (Certification of Amy Walker Wagner ("Wagner Cert."), Ex. 7, Walsh Dep. at 43).  WSI was in the business of, among other things, purchasing retail mortgage loans from other mortgage bankers or mortgage brokers, known as correspondents, and packaging those mortgage loans for use as securities in secured transactions or reselling those mortgage loans to whole loan purchasers such as The Money Store and Cityscape Financial.  These mortgage loans were sold and purchased by whole loan purchasers, such as The Money Store, with representations and warranties requiring WSI to repurchase all loans found to be fraudulent or in default.  Similarly, each of the five securities issued by WSI, wherein some of the loans were placed, required that WSI bear the first loss position of 2% of money put up for each security and repurchase any fraudulent loans.  Ultimately, WSI repurchased as many of the fraudulent mortgages that it could and lost its millions of dollars of residual value of the securities.

In July 28, 1997, WSI put the Title Insurance Defendants on notice of losses and claims associated with over 200 properties for which WSI table funded the loans.  (Wagner Cert., Exs. 1-3).  The claims arose out of the activities of the Title Insurance Defendants' approved attorneys and was covered by the Closing Service Protection Letters, which are part and parcel of the title policies.  WSI is the assignee of National Home Funding on certain mortgages and it sustained losses on some mortgages, in part, as a result of its rights being extinguished through third party

---

[2] The factual background of this case has been more fully set forth in Plaintiff's motion for partial summary judgment and in numerous opinions by this Court, and will not be restated here except where relevant.

foreclosure tax sales on those properties. (Wagner Cert., Ex. 4, Skowrenski Dep. at 53, 171; Hayes Cert. Ex. A). WSI has not asserted that the Title Insurance Defendants were responsible for recording the assignments. Rather, the fact that some of the assignments of the mortgages to WSI were not recorded in the public records and that, as a result, WSI did not receive notice of those foreclosure tax sales thereby precluding it from taking action to protect its interest in the properties is merely part of the overall basis for those title claims and may be applicable to a damages issue. Some assignments to WSI were recorded before they were assigned to a third-party, but WSI did not receive notice when they went to foreclosure. (*See*, *e.g.*, Wagner Cert., Exs. 5-6). Simply put, WSI has not made any claim against the Title Insurance Defendants for their failure to record assignments.

      Plaintiff's title claims are premised on loss or damage sustained or incurred by WSI as assignee of National Home Funding, including but not limited to, by reason of title to the estate or interest described in Schedule A of the Title Commitment being vested other than as stated therein, a defect in or lien or encumbrance on the title, the unmarketability of the title, and/or the invalidity or unenforceability of the lien of the insured mortgage upon the title. (Hayes Cert., Ex. A).

      The standard procedure at WSI was for all loans to be closed in the name of the participant while WSI supplied the closing funds directly to the closing attorney (table funding). (Wagner Cert., Ex. 4, Skowrenski Dep. At 53; Hayes Cert., Ex. C at 3). For the properties at issue in this case, they were closed in the name of NHF, the participant. WSI required that the title insurance be issued in the name of the participant, its successors, and/or assigns. For the properties at issue in this case, the title insurance was to be issued in the name of NHF, its

successors, and/or assigns.  On the early loans at issue in this fraud, GF Mortgage Corp. was the lender, before Robert Walsh even acquired WSI.  (*See*, *e.g.*, Wagner Cert., Ex. 6).

Assignments of the notes were sent by WSI directly to NHF for execution.  After execution, assignments were returned by NHF to WSI directly.  Upon receipt of the assignment, WSI would execute an additional assignment of the loan documents in blank for the benefit of the ultimate acquirer of the loan in the secondary market.  WSI transmitted both assignments to the whole loan buyer of the mortgage and expected them to record the assignments.  As is clear from the face of an assignment, the assignments could not be recorded until they were completed with information concerning the recording of the deeds and mortgages, which could only be completed by the acquirer in the secondary market because they were promptly sold by WSI to the secondary market or were securitized.  (Wagner Cert., Ex. 7, Walsh Dep. at 341-342; Wagner Cert., Exs. 5-6).

In almost all instances, the properties at issue in this litigation contain a Joint Venture Deed whereby, with the assistance of the Title Insurance Defendants' approved closing attorney, the purchaser/strawbuyer fraudulently and secretly conveyed a 60% interest in the property to Capital Assets Property Management, Inc. ("Capital Assets"), unbeknownst to WSI.  (Wagner Cert., Ex. 8, Yacker Dep. at 117-118).  The interest in each property was not properly vested in the strawbuyer because, at the same time that the loans closed, the strawbuyers gave away a sixty percent interest in each property to Capital Assets – which was known to both the "approved attorneys" and to the Title Insurance Defendants' agent Coastal Title Agency.  (Wagner Cert., Ex. 8, Yacker Dep. at 117-118; Wagner Cert., Ex. 9, Coastal Dep. at 147-148).  The Joint Venture Deeds were recorded by the closing attorneys and Coastal Title Agency, all of whom were the agents of the Title Insurance Defendants.  (*See*, *e.g.*, Wagner Cert., Ex. 10(A)-(U)).  As

is evident from the title searches produced by the Title Insurance Defendants, GF Mortgage also closed loans in the participant's name, such as NHF, and the assignments were recorded at a later date after the deeds and mortgages were recorded.  (*See*, *e.g.*, Wagner Cert., Ex. 6).

Out of the 29 properties raised in this motion, as can be determined from the recording stamps, 21 Joint Venture Deeds were recorded before the mortgages and clearly raise title claims:

(A) 506 Asbury Avenue

(B) 1324 Asbury Avenue

(C) 1032-34 Bangs Avenue

(D) 56 Bank Street

(E) 181 Clerk Street

(F) 303 Comstock Avenue

(G) 30 Dewitt Avenue

(H) 326 Fisher Avenue

(I) 101 Herbert Street

(J) 89 Jefferson

(K) 1422 Mattison Avenue

(L) 222 Monticello Avenue

(M) 253A South Pearl Street

(N) 205 River Street

(O) 1507 Summerfield Avenue

(P) 126 Union Avenue

(Q) 701 First Avenue

5

      (R) 603 First Avenue

      (S) 612 First Avenue

      (T) 305 Second Avenue

      (U) 409 Sixth Avenue.

(Wagner Cert., Ex. 10(A)-(U)).

      By virtue of the Joint Venture Deeds being recorded prior to the mortgages, the Title Insurance Defendants admit "it was a prior conveyance of an interest in the property such that the mortgage being made couldn't encumber the entire property because it was not signed by all the owners. . . . An interest in a property had been conveyed to another party who didn't sign the mortgage, so the mortgage was not effective to encumber the interest of the party that didn't sign it." (Wagner Cert., Ex. 11, Fidelity Dep. at 103-104). Despite their admissions that these secret conveyances substantially impacted WSI's mortgage, the Title Insurance Defendants have refused to provide WSI with coverage under the plain terms of their agreements and attempt through this motion to dismiss these claims when their agents were responsible for the title problems that are wholly unrelated to the assignments being recorded or not recorded.

      Also, on February 5, 1999, the Honorable Clarkson S. Fisher, Jr., P.J.Ch. in Monmouth County, entered an Order granting summary judgment and default judgment in favor of plaintiffs, who were strawbuyers in this case, Rafael Bustos, Sr., Yolanda Bustos-Lacy, Amanda Dippolito, Michael Dippolito, Joseph Piscioneri, Hans Juergensen, Ingrid Juergensen, Alicia Juergensen and Ralph Juergensen, against Cristo, NHF, Capital Assets, and county clerks. As such, the court ordered that the deeds, promissory notes, first mortgages, and second mortgages in the names of these individuals were rescinded and cancelled and "declared unenforceable against the plaintiff named in such contract, or against his or her heirs, executors, successors,

6

assigns or transferees." (Wagner Cert., Ex. 12 (2/5/99 Order)). The Order wiped out WSI's mortgages and deprived it of any possibility of being made whole by the borrowers. This is exactly why WSI demanded a CPL and a title policy prior to funding these loan – because this is *exactly* the situation that was intended to be covered. Two of the properties at issue in this Order are among the hundreds of fraud loans and specifically include several that were repurchased by WSI. Those properties are 1422 Mattison Avenue, Asbury Park, NJ (loan #622863) and 1032-34 Bangs Avenue, Asbury Park, NJ (loan #622645). (Wagner Cert., Ex. 12 at ¶¶ z, ff).

On October 20, 2000, the Honorable Sidney H. Stein, U.S.D.J. in the Southern District of New York entered an order awarding Cityscape damages in the amount of $4,732,568.93 against WSI for the properties that it should have repurchased pursuant to a Master Agreement for Sale and Purchase of Mortgages. (Wagner Cert., Ex. 13 (10/20/00 Order)). The court previously held, on June 8, 2000, that WSI breached the Master Agreement by failing to repurchase 32 loans that were part of this fraudulent scheme because, *inter alia*, the joint venture deeds made the properties unmarketable. (*Id.*). WSI ultimately repurchased these 32 loans as part of a settlement. (Wagner Cert., Ex. 7, Walsh Dep. at 552).

Since it is clear that other courts have held that the loans at issue in this litigation were invalid and unmarketable, and the Title Insurance Defendants admit that the mortgage wasn't effective to encumber 60% of 21 of these properties, there are certainly questions of fact that justify permitting Plaintiff to proceed to trial on its title policy claims.

## ARGUMENT

**I.    STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment where there are no genuine issues of material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a). "Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, 'its opponent must do more than simply show that there is some metaphysical doubt as to material facts.'" *Stewart Title Guaranty Co. v. Greenlands Realty, L.L.C.*, 58 F. Supp. 2d 370, 380 (D.N.J. 1999) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "What the non-moving party must do is go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (citations omitted). In evaluating whether summary judgment is warranted, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II.  LIABILITY UNDER THE TITLE INSURANCE POLICIES

The Title Insurance Defendants' argument is a "red herring" and they are not "entitled to summary judgment on all title claims arising due to the lack of recording of the assignment to Walsh." After 14 years of litigation and notice about the numerous problems with the over 200 fraud properties at issue in this litigation, the Title Insurance Defendants now attempt to argue for the first time that WSI is ineligible for coverage under the lender's title policies that they wrote because some of the assignments to WSI were not recorded. Their rationale is premised on a fundamental misunderstanding of WSI's title claims, and, at most, is a damages question to be determined by the jury.

### A. *WSI Identified Several Bases for Coverage*

The primary basis articulated for every title claim was as follows:

Loss or damage sustained or incurred by WSI as assignee of National Home Funding, *including but not limited to*, by reason of title to the estate or interest

8

> described in Schedule A of the Title Commitment being vested other than as stated therein; defect in or lien or encumbrance on the title; unmarketability of the title; and the invalidity or unenforceability of the lien of the insured mortgage upon the title.

(Hayes Cert., Ex. A) (emphasis added). In multiple instances, WSI also asserted the following additional bases in support of its title claims:

> (a) a "records search reveals the borrower's deed and mortgage were never recorded" and/or
> (b) "Walsh Securities' rights were extinguished through a third-party's foreclosure."

(*Id.*).

Not one single claim asserted the latter as the <u>only</u> basis for a title claim, which was only set forth to demonstrate the current status of the property and may be applicable to damages. Notwithstanding, in the Title Insurance Defendants' own document production there are publicly recorded assignments, which dispels their theory that assignments were never recorded. In any event, the Title Insurance Defendants' motion for partial summary judgment overlooks these other bases for WSI's title claims and, by clinging to the last sliver of the title claims, they twist it into a claim that has never been asserted. Based solely on the fact that WSI has never asserted that the Title Insurance Defendants or their agents were responsible for assignments not being recorded, their motion for partial summary judgment should respectfully be denied.

### B. WSI's Damages Were Caused By The Title Insurance Defendants' Agent and Approved Attorneys

The Title Insurance Defendants' motion for partial summary judgment should also be denied because WSI did not permit title problems to occur by any oversight by WSI or a third party in recording assignments. Rather, the title problems were created by the Title Insurance Defendants' agent and Approved Attorneys, and, as set forth in WSI's motion for partial summary judgment, WSI is entitled to summary judgment. The Title Insurance Defendants' own

9

title searches, supported by their admissions, demonstrate that WSI is in fact entitled to coverage due to the fact that the Title Insurance Defendants' agents, among many other things, facilitated the execution of secret Joint Venture Deeds from the strawbuyers, who they knew were not bona fide purchasers, to Capital Assets amounting to 60% of the property. While these conveyances were automatic defaults on the mortgages, they were done unbeknownst to WSI and with full knowledge of their agents – the approved closing attorneys and Coastal Title. The effect of the secret conveyances was that WSI's mortgages only encumbered 40% of the properties.

### C. The Title Insurance Defendants Are Liable for WSI's Claims

According to the plain language of the title policies, the Title Insurance Defendants promised to insure, *inter alia*, "against loss or damage . . . sustained or incurred by the insured by reason of . . . [u]nmarketability of the title." (*Id.*). Schedule 'A' of each policy sets forth the description of the interest in the land as "Fee Simple"[3] vested in the name of the strawbuyer. (*Id.*). However, the interest in each property was not vested in the strawbuyer because at or about the same time that the loans closed, the strawbuyers secretly signed a joint venture deed that gave a sixty percent interest in each property to Capital Assets – which was known to both the "approved attorneys" and Coastal Title. (Wagner Cert., Ex. 8, Yacker Dep. at 117-118; Wagner Cert., Ex. 9, Coastal Dep. at 147-148). Despite their admissions that these secret conveyances negatively impacted WSI's mortgage, and rendered it unmarketable, the Title Insurance Defendants have refused to indemnify WSI under the plain terms of their agreements. Even more egregious is the Title Insurance Defendants' admission that where the Joint Venture Deeds were recorded after the strawbuyers' deeds but before the strawbuyers' mortgages, that "it

---

[3] Fee simple is defined as "[a]n interest in land that, being the broadest property interest allowed by law, endures until the current holder dies without heirs." Black's Law Dictionary (9th ed. 2009).

was a prior conveyance of an interest in the property such that the mortgage being made couldn't encumber the entire property because it was not signed by all the owners. . . . An interest in a property had been conveyed to another party who didn't sign the mortgage, so the mortgage was not effective to encumber the interest of the party that didn't sign it."  (Wagner Cert., Ex. 11, Fidelity Dep. at 103-104).

Solely reviewing the 29 policy claims that are it issue in this motion, there are 21 instances where the joint venture deeds were recorded before the strawbuyers' mortgages.  Thus, in those instances, Defendants admit that the mortgage did not encumber 60% of the property, which was the result of the actions of the Title Insurance Defendants' Approved Attorneys and Coastal Title – the Title Insurance Defendants' agent.

Since the policies do not define the phrase "unmarketability of the title," it is necessary to consider other sources.  New Jersey courts have uniformly held that

> A marketable title is one that is relatively free from doubt, such that in a suit for specific performance a court would compel the prospective purchaser to accept the title.  If it is reasonably probable that the purchaser would be exposed to litigation not of a frivolous nature concerning the title, or would have to bring an action to quiet title, then specific performance would be denied to the prospective seller and the title would be considered unmarketable.

*Keown v. West Jersey Title & Guaranty Co.*, 161 N.J. Super. 19, 23 (App. Div. 1978); *see also Stewart Title Guar. Co. v. Greenlands Realty, LLC*, 58 F. Supp. 2d 370, 382 (D.N.J. 1999) (defining "defect" in title insurance policies as "the want or absence of something necessary for completeness or perfection . . . a lack or absence of something essential to the property use for the purpose for which the thing is to be used.") (citation omitted); *Martin v. Banco Popular de P.R.*, 379 F. App'x 185, 189 (3d Cir. 2010) ("Title is not marketable if there is a reasonable fear that another entity . . . retains the right to use or transfer the property.").  Similarly, Williston provides the following definition of marketable title:

11

> "Merchantable title" or "marketable title" is that title which a reasonable, prudent person would accept in the ordinary course of business, after being fully apprised of the facts and the applicable law. Stated otherwise, a merchantable or marketable title is that title which enables the record owner not only to hold the land, but to hold it in peace and, if he or she wishes to sell the land, to be reasonably sure that no flaw or doubt will arise to disturb its market value.

17 WILLISTON ON CONTRACTS § 50:10 (4th Ed.).

In the case at hand, the strawbuyers conveyed a majority interest in these properties to Capital Assets, without WSI's knowledge or consent. However, the policies as well as the title commitments describe the interest in the land as vested in the strawbuyer in fee simple. Unquestionably, because the deeds were recorded by the "approved attorneys" or Coastal either *before* or *concurrently with* the WSI mortgage, both the strawbuyer *and* Capital Assets could assert viable claims of interest in the property, even though only a minority portion of that interest would be subject to WSI's lien. Therefore, if a potential buyer attempted to purchase a property at issue, it would require the consent of the *both* the strawbuyer *and* Capital Assets. Neither could lawfully convey the property without disclosing the existence of the other's partial interest. Simply stated, it cannot be said that title in these properties were "relatively free of doubt."

The Title Insurance Defendants did not exclude from coverage the defects that arose from the strawbuyers' transfer of a majority interest in the properties – despite their knowledge of it – when they sold their title policies. If the Title Insurance Defendants wanted to limit the coverage of their policies, then they were required to state those limitations on the face of the agreement *that they drafted*. Their policies contained no such limitations. Title insurance policies "must be interpreted in a way which fulfills the reasonable expectations of the insured." *Summonte v. First American Title Ins. Co.*, 180 N.J. Super. 605, 610 (Ch. Div.), aff'd, 184 N.J. Super. 96, 445 A.2d 409 (App. Div. 1981), *certif. denied*, 89 N.J. 418 (1982). Title insurance policies are not

12

ordinary contracts. "[T]hey are contracts of adhesion between parties who are not on an equal footing." *Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 347 (1993); *see also Clients' Sec. Fund of the Bar of N.J. v. Sec. Title & Guar. Co.*, 134 N.J. 358, 371-72 (1993). "In determining what a policyholder's reasonable expectations are, our courts have applied an objective standard of reasonableness." *Clients' Sec. Fund*, 134 N.J. at 372. "The language of the policy should be liberally construed in favor of the insured and strictly construed against the insurer." *Keown v. West Jersey Title & Guaranty Co.*, 161 N.J. Super. 19, 27 (App. Div. 1978). WSI's reasonable expectation was that the Title Insurance Defendants examined the title records and issued policies covering defects in title now at issue.

      WSI did not expect that the Title Insurance Defendants would act only in their own best interests by accepting premiums paid out of WSI's closing funds, and completely disregarding the interests of their insured. Their liability is certain, as indicated by their admissions that the title was not vested fee simple in the strawbuyer and that the mortgage did not control the entire property, as was contemplated by WSI. Moreover, their own agents filed the joint venture deeds that encumbered these properties. *See Sandler v. New Jersey Realty Title Ins. Co.*, 36 N.J. 471 (1962) (devisees of insured's land entitled to damages under title insurance policy where the property was partially divested prior to the conveyance to the insured). Here, contrary to the Title Insurance Defendants' argument that WSI created and/or suffered the loss it is complaining of, it is evident that it was the Title Insurance Defendants' agents that "created" the problems.

      Even if the Title Insurance Defendants' argument had some merit, which is does not, the facts do not support that the entirety of these 29 title claims are excluded from coverage for a failure to record assignments. The "[d]effects, liens, encumbrances, adverse claims or other matters" were not "created, suffered, assumed or agreed to by" WSI. Utilizing the Title

13

Insurance Defendants' own legal analysis, there is no question that WSI did not consciously or deliberately cause a title problem and it did not suffer from a title problem that was within its power to prohibit or prevent because it did not know of the fraud. (*See* Fidelity/Nations Brief at 9-10). Here, "[t]he insurer would not be insuring against events that the insured could and was obligated to prevent, but would be insuring against events that were beyond the control of the insured and that lay within the control of" the Title Insurance Defendants' agents. *See American Savings & Loan v. Lawyers Title Ins. Co.*, 793 F.2d 780, 786 (6th Cir. 1986). "This is the type of risk that insurance policies typically cover, the risk that another party, beyond the insured's control would fail to perform it obligations with injury resulting to the insured." *Id*.

As further supported by the rulings of Judge Fisher and Judge Stein in finding that the properties at issue in this litigation were a fraud, WSI contends that all of these facts support its position that the liability of the Title Insurance Defendants has been established. At the very least, in the alternative, there are questions of fact that preclude their motion for partial summary judgment.

**CONCLUSION**

For the foregoing reasons, this Court should respectfully deny the Title Insurance Defendants motion for partial summary judgment as to all of WSI's claims under the title insurance policies for the properties identified in Exhibit A to the Title Insurance Defendants' proposed orders.

Respectfully submitted,

_____/s/_____
Robert A. Magnanini
Amy Walker Wagner
Daniel Ian Mee
Jeffrey A. Shooman
STONE & MAGNANINI LLP
150 JFK Parkway, 4th Floor
Short Hills, NJ  07078
(973) 218-1111

*Attorneys for Plaintiff Walsh Securities, Inc.*

Dated: December 22, 2011