# EXHIBIT 7

1

```
        IN THE UNITED STATES DISTRICT COURT
1       FOR THE DISTRICT OF NEW JERSEY
        CIVIL NO. 97-3496 (DRD)
2

3       ---------------------------
        WALSH SECURITIES,           :
4       INC.,                       :
                                    :
5            Plaintiff,             :
                                    :
6       v.                          :
                                    :
7       CRISTO PROPERTY             :
        MANAGEMENT, LTD., a/k/a     :
8       G.J.L. LIMITED; DEK         :
        HOMES OF NEW JERSEY,        :
9       INC.; OAKWOOD               :
        PROPERTIES, INC.;           :         COPY
10      NATIONAL HOME FUNDING,      :
        INC.; CAPITAL ASSETS        :
11      PROPERTY MANAGEMENT &       :
        INVESTMENT CO., INC.;       :
12      CAPITAL ASSETS              :         DEPOSITION UPON
        PROPERTY MANAGEMENT,        :         ORAL EXAMINATION
13      L.L.C.; WILLIAM KANE;       :            OF
        GARY GRIESER; ROBERT        :         ROBERT C. WALSH
14      SKOWRENSKI, II;             :
        RICHARD CALANNI;            :
15      RICHARD DI BENEDETTO;       :
        JAMES R. BROWN; THOMAS      :
16      BRODO; ROLAND PIERSON;      :
        STANLEY YACKER, ESQ.;       :
17      MICHAEL ALFIERI, ESQ.;      :
        RICHARD PEPSNY, ESQ.;       :
18      ANTHONY M. CICALESE,        :
        ESQ.; LAWRENCE CUZZI;       :
19      ANTHONY D'APOLITO; DAP      :
        CONSULTING, INC.;           :
20      COMMONWEALTH LAND           :
        TITLE INSURANCE CO.;        :
21      NATIONS TITLE               :
        INSURANCE OF NEW YORK,      :
22      INC.;                       :
                                    :
23                                  :
                                    :
24                                  :
                                    :
25                                  :
```



Rizman
Rappaport
Dillon&Rose, LLC
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

**Page 2**

```
 1                           :
       FIDELITY NATIONAL     :
 2     TITLE INSURANCE CO. OF :
       NEW JERSEY; COASTAL   :
 3     TITLE AGENCY; DONNA   :
       PEPSNY; WEICHERT      :
 4     REALTORS and VECCHIO  :
       REALTY, INC. D/b/a    :
 5     MURPHY REALTY BETTER  :
       HOMES AND GARDENS,    :
 6                           :
            Defendants.      :
 7     ----------------------
 8
 9
10
11          T R A N S C R I P T  of the stenographic
12     notes of HOWARD A. RAPPAPORT, a Notary Public and
13     Certified Shorthand Reporter of the State of
14     New Jersey, Certificate No. XI00416, taken at the
15     offices of MC CARTER & ENGLISH, LLP, Four Gateway
16     Center, Newark, New Jersey, on Friday,
17     April 9, 2010, commencing at 9:35 a.m.
```

**Page 3**

```
 1  APPEARANCES:
 2  STONE & MAGNANINI
    150 John F. Kennedy Parkway
 3  Short Hills, New Jersey 07078
    BY: ROBERT A. MAGNANINI, ESQ.,
 4      AMY WALKER WAGNER, ESQ.,
    For the Plaintiff
 5
    MC CARTER & ENGLISH, LLP
 6  Four Gateway Center
    100 Mulberry Street
 7  Newark, New Jersey 07102-0652
    BY: DAVID R. KOTT, ESQ.,
 8  For Defendant/Third-Party Plaintiff Commonwealth Land
    Title Insurance Company
 9
    FOX, ROTHSCHILD, O'BRIEN & FRANKEL
10  997 Lenox Drive
    Lawrenceville, New Jersey 08648
11  BY: EDWARD J. HAYES, ESQ.,
    For Defendants Nations Title Insurance and
12  Fidelity National Title Insurance
13  METHFESSEL & WERBEL
    3 Ethel Road
14  Suite 300
    Edison, New Jersey 08818
15  BY: MARTIN R. MC GOWAN, ESQ.,
    For Coastal Title Agency
```

**Page 4**

```
 1
 2                    I N D E X
 3
    WITNESS                             PAGE
 4
 5  ROBERT C. WALSH
 6  Direct examination by Mr. Kott         6
    Cross-Examination by Mr. Hayes       172
 7
 8  EXHIBITS    DESCRIPTION          FOR IDENT.
 9  Robert      Notice to take oral       5
    Walsh-1     deposition of plaintiff
10              Walsh Securities
    Robert      Fourth amended complaint  5
11  Walsh-2
    Robert      Letter dated April 3,     5
12  Walsh-3     1998 from Walsh
                Securities to William T.
13              Lutz
    Robert      Letter dated July 3, 1997 107
14  Walsh-4
    Robert      Letter dated July 30,    108
15  Walsh-5     1996
    Robert      Agreement of settlement  110
16  Walsh-6
```

**Page 5**

```
 1           (Exhibits marked for identification
 2  Robert Walsh-1, Notice to take oral deposition of
 3  plaintiff Walsh Securities; Robert Walsh-2, Fourth
 4  amended complaint; Robert Walsh-3, Letter dated
 5  April 3, 1998 from Walsh Securities to William T.
 6  Lutz.)
 7           MR. KOTT: Before we swear the witness,
 8  I had marked for identification exhibit Robert
 9  Walsh-1, which is a notice to take oral deposition of
10  plaintiff Walsh Securities, Inc. which I served on
11  Mr. Magnanini.
12           Robert Walsh-2 is the fourth amended
13  complaint that is filed as document 302, filed with
14  the clerk electronically on 07/10/2009. Attached to
15  it is document number 302-2, electronically filed the
16  same day, which are the exhibits.
17           Exhibit Robert Walsh-3 is an April 3,
18  1998 letter and its enclosures written by Fred H.
19  Schlesinger, vice president and general counsel of
20  Walsh Securities, Inc., to William T. Lutz, Esquire,
21  Sedwick Law Firm, apparently making a claim under a
22  mortgage bankers bond.
23           MR. MAGNANINI: Do you have copies of
24  those? I didn't bring any.
25           MR. KOTT: Yes.
```

2 (Pages 2 to 5)


Rizman Rappaport Dillon & Rose, LLC
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

42

1  A   Walsh-1, this is noticing my deposition.
2  Q   Right.
3  A   For whatever reason, I believe Bette's
4  answer copied on this. So she saw I was being
5  deposed.
6  Q   Okay.
7  A   And that she saw me being deposed, she
8  said, is this good or bad for you?
9  Q   Why would she speak to you about that?
10 A   You sent a copy of this to her.
11 Q   But why would she have an interest in
12 what's good or bad for you?
13 A   I'm her brother.
14 Q   Okay.
15     Are you aware of any reason that Bette
16 Ann could not give a deposition?
17 A   My personal knowledge, no.
18 Q   Are you aware whether Bette Ann is
19 available for a deposition on Tuesday?
20 A   I don't know. I haven't spoken to her.
21 Q   Do you have access to Yankee tickets?
22 A   Personally, no.
23 Q   What do you mean when you say
24 "personally"?
25 A   You can buy Yankee Stadium tickets. I

43

1  don't know what you're referring to.
2  Q   You don't have like season tickets or
3  anything like that?
4  A   Myself, no.
5  Q   What was Bette Ann's -- withdrawn.
6      When was Walsh Securities, Inc. formed,
7  approximately?
8  A   Walsh Securities, Inc. was formed in
9  April of 1996.
10 Q   And were you a stockholder?
11 A   I acquired in April of 1996 GF Mortgage,
12 which then became Walsh Securities, and there was
13 four shareholders, my two daughters and myself, and
14 Grinch Capital had a warrant and we were the
15 shareholders of Walsh Securities.
16 Q   Was Bette Ann DeMola ever a shareholder
17 of Walsh Securities?
18 A   No, she was not.
19 Q   Have you ever testified under oath that
20 she was?
21 A   I did.
22 Q   When was that?
23 A   Citiscape transaction, Citiscape
24 deposition.
25 Q   What did you testify under oath there?

44

1  A   That she was a shareholder.
2  Q   And how much stock did you say she
3  owned?
4  A   Five percent.
5  Q   And why did you testify to that?
6  A   When we were doing the merger with RBMG,
7  we knew what the exchange rate for Walsh Securities
8  shares going into RBMG were going to be in the first
9  week of April of 1997.
10     I went to 19 people, some relatives
11 outside that didn't work for Walsh, some friends
12 outside of Walsh, and some Walsh people.
13     I said, listen, I'm giving you shares of
14 my stock, and you are going to be able to convert
15 these shares into RBMG shares and you are going to be
16 able to get blank number of shares, and at the
17 closing of Walsh-RBMG merger, I'm going to give you
18 the shares and you can convert them into RBMG shares.
19     That was in my mind. That stuck in my
20 mind, and to this day that's in my mind.
21     The S4 was a document that was prepared
22 by my attorneys. There were certain things in the
23 document that were going to be done once the merger
24 took place. The merger did not take place. I was
25 not giving up shares of my company to people if there

45

1  was going to be no merger.
2  Q   The S4, what is that document?
3  A   The S4 was going to be the merger
4  agreement filed with the SEC by RBMG.
5  Q   I'm not sure I understand why you
6  testified in the Citiscape deposition that Bette Ann
7  owned five percent of the stock if that was not the
8  case.
9  A   I also testified in that deposition that
10 John Arbendorf was a board member, Bill Biggs was a
11 board member and Jill Walsh was a board member, and
12 they weren't.
13     There was a period of time that was very
14 difficult from '97 to this period of time. A lot of
15 things stuck in my head. These people were getting
16 that stock. There is no question they were getting
17 the stock. I was giving them that stock. It stuck
18 in my head. I made a mistake.
19 Q   Who else — you said -- there were 19
20 people you were giving it to?
21 A   That's correct.
22 Q   Was one of those D'Apolito?
23 A   Yes, it was.
24 Q   What percentage was D'Apolito going to
25 get?

12 (Pages 42 to 45)


Rizman
Rappaport
Dillon&Rose, LLC
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

262

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
 2                     CIVIL NO. 97-3496 (DRD)

 3     ---------------------------

 4     WALSH SECURITIES,            :
       INC.,                        :
 5                                  :
            Plaintiff,              :
 6                                  :
            v.                      :
 7                                  :
       CRISTO PROPERTY              :
 8     MANAGEMENT,LTD., a/k/a       :
       G.J.L. LIMITED; DEK          :
 9     HOMES OF NEW JERSEY,         :
       INC.; OAKWOOD                :
10     PROPERTIES, INC.;            :
       NATIONAL HOME FUNDING,       :
11     INC.; CAPITAL ASSETS         :
       PROPERTY MANAGEMENT &        :
12     INVESTMENT CO., INC.;        :        CONTINUED
       CAPITAL ASSETS               :        DEPOSITION UPON
13     PROPERTY MANAGEMENT,         :        ORAL EXAMINATION
       L.L.C.; WILLIAM KANE;        :            OF
14     GARY GRIESER; ROBERT         :        ROBERT C. WALSH
       SKOWRENSKI, II;              :
15     RICHARD CALANNI;             :
       RICHARD DI BENEDETTO;        :
16     JAMES R. BROWN; THOMAS       :
       BRODO; ROLAND PIERSON;       :        PAGE 262
17     STANLEY YACKER, ESQ.;        :
       MICHAEL ALFIERI, ESQ.;       :
18     RICHARD PEPSNY, ESQ.;        :
       ANTHONY M. CICALESE,         :
19     ESQ.; LAWRENCE CUZZI;        :
       ANTHONY D'APOLITO; DAP       :
20     CONSULTING, INC.;            :
       COMMONWEALTH LAND            :
21     TITLE INSURANCE CO.;         :
       NATIONS TITLE                :
22     INSURANCE OF NEW YORK,       :
       INC.;                        :
23                                  :
                                    :
24                                  :
                                    :
25                                  :
                                    :
```



Rizman
Rappaport
Dillon&Rose, LLC
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Page 263

```
                :
FIDELITY NATIONAL       :
TITLE INSURANCE CO. OF  :
NEW JERSEY; COASTAL     :
TITLE AGENCY; DONNA     :
PEPSNY; WEICHERT        :
REALTORS and VECCHIO    :
REALTY, INC. D/b/a      :
MURPHY REALTY BETTER    :
HOMES AND GARDENS,      :
                :
    Defendants.         :
-----------------------------

      T R A N S C R I P T  of the stenographic
notes of HOWARD A. RAPPAPORT, a Notary Public and
Certified Shorthand Reporter of the State of
New Jersey, Certificate No. XI00416, taken at the
offices of MC CARTER & ENGLISH, LLP, Four Gateway
Center, Newark, New Jersey, on Friday,
April 23, 2010, commencing at 8:35 a.m.
```

Page 264

```
APPEARANCES:
STONE & MANGANINI
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
BY: DAVID STONE, ESQ.,
    AMY WALKER WAGNER, ESQ.,
For the Plaintiff

MC CARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-0652
BY: DAVID R. KOTT, ESQ.,
For Defendant/Third-Party Plaintiff Commonwealth Land
Title Insurance Company

FOX, ROTHSCHILD, O'BRIEN & FRANKEL
997 Lenox Drive
Lawrenceville, New Jersey 08648
BY: EDWARD J. HAYES, ESQ.,
For Defendants Nations Title Insurance and
Fidelity National Title Insurance
METHFESSEL & WERBEL
3 Ethel Road
Suite 300
Edison, New Jersey 08818
BY: MARTIN R. MC GOWAN, ESQ.,
For Coastal Title Agency
```

Page 265

```
                   I N D E X

WITNESS                         PAGE
ROBERT C. WALSH
  Cross-Examination by Mr. Hayes    266

EXHIBITS    DESCRIPTION           FOR IDENT.
Robert      Closing instructions        373
Walsh-7
Robert      Closing service letter      373
Walsh-8
Robert      Letter via e-mail and       409
Walsh-9     regular mail dated
            March 5, 2010
Robert      Letter via e-mail and       409
Walsh-10    regular mail dated
            April 6, 2010
Robert      Uniform settlement          420
Walsh-11    statement
Robert      Secondary mortgage loan     421
Walsh-12
Robert      Wholesale mortgage          421
Walsh-13    commitment
Robert      Contract for sale of real   433
Walsh-14    estate
Robert      Document entitled,          433
Walsh-15    "Fidelity National Title"
Robert      Review checklist            440
Walsh-16
Robert      HUD 1, Uniform Settlement   440
Walsh-17    Statement
Robert      HUD 1 review form           448
Walsh-18
Robert      Uniform underwritten        448
Walsh-19    transmittal summary form
Robert      Wholesale mortgage          453
Walsh-20    commitment
Robert      WSI common stock            476
Walsh-21    ownership, SEC filing
```

Page 266

```
 1    R O B E R T   C.   W A L S H, having been previously
 2        sworn, testifies as follows:
 3    CROSS-EXAMINATION (CONTINUING)
 4    BY MR. HAYES:
 5        Q    Good morning, Mr. Walsh.
 6        A    Good morning.
 7        Q    You recall you were sworn at the last
 8    deposition and that oath continues this morning?
 9        A    I do.
10        Q    At the last deposition, Mr. Walsh, you
11    indicated that there were any number of things that
12    you were going to do in response to questions between
13    that deposition and before this morning.
14             Do you recall that?
15        A    I do.
16        Q    Did you take steps to try to answer some
17    of the questions that you could not answer at the
18    last deposition?
19        A    I did.
20        Q    Can you tell me what you did between the
21    last deposition and today to further prepare for
22    today's deposition other than speaking with your
23    attorneys?
24             MR. STONE:  You can answer that
25    question, other than conversations with counsel.
```

2 (Pages 263 to 266)


Rizman Rappaport Dillon & Rose, LLC
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Page 339

1  Q   So my question to you is, who is making
2  the decision at Walsh? I'm not asking for an
3  individual person, but I'm trying to figure out what
4  department we are in at this point in time, that we
5  are now comfortable funding this loan.
6  A   The closing department.
7  Q   And that is done after the closing,
8  correct?
9  A   Correct.
10 Q   So that the closing department has the
11 opportunity to satisfy itself that Walsh is protected
12 before it lets its money out the door, correct?
13 A   Correct.
14 Q   You would not expect to see any file
15 funded where the closing department hadn't confirmed
16 that it had a signed closing protection letter, it
17 had an executed HUD 1, and it had a completed
18 appraisal, correct?
19 A   Some of those documents -- again, things
20 happen on an exception basis.
21 Q   I'm talking about what you would expect
22 to find in a properly handled file.
23 A   Correct.
24 Q   All of those things I mentioned,
25 correct?

Page 340

1  A   With the exception that from time to
2  time there may have been an exception.
3  Q   Can you think of any reason at all,
4  Mr. Walsh, where Walsh Securities would have made an
5  exception for not having a closing protection letter
6  in the file?
7  A   Right now, no.
8  Q   Would there be someone who would know
9  that at Walsh besides you?
10 A   Possibly Fred Schlesinger.
11 Q   Can you think of anyone -- I'm sorry,
12 strike that.
13     Can you think of any exception that
14 Walsh would make to not having a completed executed
15 HUD 1 prior to disbursing?
16 A   I do not know the answer to that.
17 Q   Is there anyone that you believe would?
18 A   Fred Schlesinger.
19 Q   Is there anything more the closer
20 handles after authorizing the wire of the money and
21 collecting the documents back from the closing? Or
22 is that the end of their function?
23 A   I believe that's the end.
24 Q   And does that then kick in the post
25 closing department?

Page 341

1  A   Yes.
2  Q   What is it the post closing department
3  does at Walsh?
4  A   Follows up on documents, making sure
5  documents are sent to the investor, if there was an
6  investor, or the trustee in case of a security.
7  Q   And the post closer would be responsible
8  for putting the file in a position where the
9  potential investor could review it and make a
10 decision about buying the paper, correct?
11 A   That would be one of their functions,
12 correct.
13 Q   And was there a general time period when
14 Walsh wanted the loan out the door?
15 A   Can you be more specific?
16 Q   Sure.
17     Walsh didn't hold loans, correct? It
18 sold them in the secondary market?
19 A   That's correct.
20 Q   Was there a time period within which
21 Walsh would have liked to dispose of its loans?
22 A   There was periods of time that we held
23 loans longer because we were forming securities,
24 whereas in loans we wanted them out quickly.
25 Q   In a perfect world, other than

Page 342

1  securities, you would have a loan out the door the
2  day you funded it?
3  A   In a perfect world, yes.
4  Q   In order to sell a loan in the secondary
5  market, did you have to have a title policy in hand?
6  A   I do not believe so, no.
7  Q   Did you have to have a marked-up
8  commitment?
9  A   I don't know the answer to that.
10 Q   Did you have to have an executed HUD 1?
11 A   To my knowledge, yes.
12 Q   Did there have to be an appraisal in the
13 file?
14 A   Yes.
15 Q   And once the loan is out the door,
16 Mr. Walsh, your involvement is completed, correct?
17 A   No.
18 Q   What do you do after it goes out the
19 door, the company?
20 A   Follow up on trailing documents.
21 Q   Walsh was not a servicer, correct?
22 A   That is correct.
23 Q   Some companies such as yours would
24 service loans afterwards, and that was another
25 mechanism by which they could make additional money

21 (Pages 339 to 342)



Rizman
Rappaport
Dillon&Rose, LLC
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

```
                                                        Page 537
```

1            UNITED STATES DISTRICT COURT
             DISTRICT OF NEW JERSEY
2            Civil Action No. 97-cv-3496 (DRD)(MAS)
3    WALSH SECURITIES, INC.,        :
4            Plaintiff,             : DEPOSITION OF:
5       v.                          : ROBERT C. WALSH
                                      (VOLUME III)
6    CRISTO PROPERTY MANAGEMENT, LTD., :
     a/k/a G.J.L. LIMITED; DEK HOMES
7    OF NEW JERSEY, INC.; OAKWOOD    :
     PROPERTIES, INC.; NATIONAL HOME
8    FUNDING, INC.; CAPITAL ASSETS   :
     PROPERTY MANAGEMENT & INVESTMENT
9    CO., INC.; CAPITAL ASSETS PROPERTY:
     MANAGEMENT, L.L.C.; WILLIAM KANE;
10   GARY GRIESER; ROBERT SKOWRENSKI, :
     II; RICHARD CALANNI; RICHARD
11   DiBENEDETTO; JAMES R. BROWN;    :
     THOMAS BRODO; ROLAND PIERSON;
12   STANLEY YACKER, ESQ.; MICHAEL   :
     ALFIERI, ESQ.; RICHARD PEPSNY,
13   ESQ.; ANTHONY M. CICALESE, ESQ.; :
     LAWRENCE CUZZI; ANTHONY D'APOLITO;
14   DAP CONSULTING, INC.; COMMONWEALTH:
     LAND TITLE INSURANCE CO.; NATIONS
15   TITLE INSURANCE OF NEW YORK, INC.;:
     FIDELITY NATIONAL TITLE INSURANCE
16   CO. OF NEW JERSEY; COASTAL TITLE :
     AGENCY; DONNA PEPSNY; WEICHERT
17   REALTORS and VECCHIO REALTY, INC. :
     d/b/a MURPHY REALTY BETTER HOMES
18   AND GARDENS,                    :
19                                   :
             Defendants.
20   X--------------------------------X
21       TRANSCRIPT of testimony as taken by and
     before CHERYL McGANN, a Certified Court Reporter
22   of the State of New Jersey, at the offices of
     McCARTER & ENGLISH, LLP, Four Gateway Center,
23   Newark, New Jersey, on Friday, September 30, 2011,
     commencing at 9:14 a.m.
24
25   Job No. NJ356367

                    Veritext/NJ Reporting Company
800-227-8440                                          973-410-4040

Page 552

1  the loans involved in this case?
2  　　A.　I don't know the answer to that.
3  　　Q.　Okay.  None to your knowledge?
4  　　A.　Yeah, I just don't know.
5  　　Q.　Okay.  So when we talk about the Cityscape
6  loans that we're talking about in this case that you
7  repurchased, those were individual loans you
8  repurchased?
9  　　A.　Well, let's go back to the Cityscape
10 transaction.  Cityscape had sued us to repurchase
11 those loans.  They also sued us to repurchase
12 approximately another $15 million worth of loans.
13 The judge, listening to all the testimony, decided
14 that 32 loans were to be repurchased by Walsh
15 Securities.  Of those loans we did not have the
16 ability to repurchase, they were able to obtain a
17 judgment against us, and they were against specific
18 loans of Asbury Park -- we'll call it Asbury Park,
19 if you don't mind.
20 　　Q.　Okay.
21 　　A.　-- and we acquired the judgment.
22 　　Q.　How much was the judgment that the judge
23 entered against you in the Cityscape litigation,
24 approximately?
25 　　A.　4.2 million.

# EXHIBIT 8

STANLEY YACKER

Page 1

```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW JERSEY
                    Civil Action No.
                    97-cv-3496 (DRD) (MAS)

WALSH SECURITIES, INC.,      :
                             :
          Plaintiff,         :
                             :
     vs.                     :   DEPOSITION OF:
                             :   STANLEY YACKER
CRISTO PROPERTY MANAGEMENT,
LTD., a/k/a G.J.L. LIMITED;
OAKWOOD PROPERTIES, INC.;
NATIONAL HOME FUNDING, INC.;
CAPITAL ASSETS PROPERTY
MANAGEMENT & INVESTMENT CO.,
INC.; CAPITAL ASSETS PROPERTY
MANAGEMENT, L.L.C.; WILLIAM
KANE; GARY GRIESER; ROBERT
SKOWRENSKI, II; RICHARD CALANNI;
RICHARD DiBENEDETTO; JAMES R.
BROWN; THOMAS BRODO; ROLAND
PIERSON; STANLEY YACKER, ESQ.;
MICHAEL ALFIERI, ESQ.; RICHARD
PEPSNY, ESQ.; ANTHONY M.
CICALESE, ESQ.; LAWRENCE CUZZI;
ANTHONY D'APOLITO; DAP CONSULTING,
INC.; COMMONWEALTH LAND TITLE
INSURANCE CO.; NATIONS TITLE
INSURANCE OF NEW YORK, INC.;
FIDELITY NATIONAL TITLE
INSURANCE CO. OF NEW YORK;
Coastal Title Agency; DONNA
PEPSNY; WEICHERT REALTORS; and
VECCHIO REALTY, INC., D/B/A
MURPHY REALTY BETTER HOMES
And GARDENS                  :
                             :
          Defendants.        :
                             :
     - - - - - - - - - - -
```

STANLEY YACKER

Page 2

1   TRANSCRIPT of the stenographic notes of
2   the proceedings in the above-entitled matter, as
3   taken by and before JANET BAILYN, a Certified
4   Shorthand Reporter and Notary Public of the State of
5   New Jersey, held at the office of STONE & MAGNANINI,
6   150 John F. Kennedy Parkway, Short Hills, New Jersey,
7   on June 1, 2010, commencing at 9:56 in the forenoon.

1   50/50 or something like that.  I certainly had other
2   real estate matters totally apart from Bill Kane and
3   I would probably say Bill -- I can't estimate.  It
4   was a significant portion of my real estate matters.
5       Q.   For the other real estate matters you
6   had, did Lorraine King do all the closing work or did
7   you do all those?
8       A.   There was a period when we soloed, we
9   started -- it was just she and I and so, yeah, I had
10  other closings and she did them.  She needed in the
11  early months a little more guidance than she later
12  did.  As I think I mentioned she was very bright and
13  picked up very fast.
14      Q.   I guess my question was:  On those other
15  real estate closings, you participated in them as
16  well as Miss King?
17      A.   Oh, yes.  Oh, yes.
18      Q.   So it was only the Kane ones that you
19  weren't involved in the actual closing process?
20      A.   Yes.
21      Q.   At the closings was there typically a
22  double closing?  By that I mean, there was a straw
23  buyer purchasing a property from Mr. Kane's companies
24  and then there was a transfer by the buyer to a joint
25  venture that was comprised of Mr. Grieser's company,

Case 2:97-cv-03496-DRD-JAD   Document 489-5   Filed 12/22/11   Page 14 of 19 PageID: 7887

STANLEY YACKER

Page 118

1  you mentioned before Capital Assets Property
2  Management and the straw buyer?
3        A.    Yes.
4        Q.    And could you explain how that occurred?
5        A.    Yes. The straw buyers, I guess when
6  they were recruited as straw buyers, and I know they
7  got paid and I've heard various estimates of a
8  thousand, 2,000, but I don't know the nitty-gritty of
9  those -- of those inner transactions.
10       Q.    Why were they paid, Mr. Yacker?
11       A.    Because what they were doing was lending
12 their name and supposedly their good credit to a
13 transaction that without them would have had to be
14 done by somebody who would probably be a repeat that
15 Walsh for whatever reason rejected or didn't want,
16 and, again, I'm not sure why as far as that goes. So
17 they were being paid.
18       Q.    Do you know that Walsh would have
19 rejected or not wanted them?
20       A.    Yeah, but, again, I'm getting a lot of
21 this secondhand. Again, the flavor I was getting was
22 that -- I don't know if it was a limitation on the --
23 well, I don't know, but they just wanted to do so
24 many with any one person before it -- before bells
25 and whistles went off. I don't know why.

VERITEXT REPORTING COMPANY
212-267-6868            www.veritext.com            516-608-2400

# EXHIBIT 9

ROBERT AGEL

Page 141

```
 1                UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
 2                      Civil Action No.
                       97-cv-3496 (DRD) (MAS)
 3
     WALSH SECURITIES, INC.,      :
 4                                :
                 Plaintiff,       :
 5                                :     VOLUME II
           vs.                    :     DEPOSITION OF:
 6                                :     ROBERT AGEL
     CRISTO PROPERTY MANAGEMENT,
 7   LTD., a/k/a G.J.L. LIMITED;
     OAKWOOD PROPERTIES, INC.;
 8   NATIONAL HOME FUNDING, INC.;
     CAPITAL ASSETS PROPERTY
 9   MANAGEMENT & INVESTMENT CO.,
     INC.; CAPITAL ASSETS PROPERTY
10   MANAGEMENT, L.L.C.; WILLIAM
     KANE; GARY GRIESER; ROBERT
11   SKOWRENSKI, II; RICHARD CALANNI;
     RICHARD DiBENEDETTO; JAMES R.
12   BROWN; THOMAS BRODO; ROLAND
     PIERSON; STANLEY YACKER, ESQ.;
13   MICHAEL ALFIERI, ESQ.; RICHARD
     PEPSNY, ESQ.; ANTHONY M.
14   CICALESE, ESQ.; LAWRENCE CUZZI;
     ANTHONY D'APOLITO; DAP CONSULTING,
15   INC.; COMMONWEALTH LAND TITLE
     INSURANCE CO.; NATIONS TITLE
16   INSURANCE OF NEW YORK, INC.;
     FIDELITY NATIONAL TITLE
17   INSURANCE CO. OF NEW YORK;
     COASTAL TITLE AGENCY; DONNA
18   PEPSNY; WEICHERT REALTORS; and
     VECCHIO REALTY, INC., D/B/A
19   MURPHY REALTY BETTER HOMES
     And GARDENS                  :
20                                :
                 Defendants.      :
21                                :
         - - - - - - - - - - - -
22
23
24
25
```

ROBERT AGEL

Page 142

1    TRANSCRIPT of the stenographic notes of
2    the proceedings in the above-entitled matter, as
3    taken by and before JANET BAILYN, a Certified
4    Shorthand Reporter and Notary Public of the State of
5    New Jersey, held at the office of MANNING, CALIENDO &
6    THOMSON, 36 West Main Street, Freehold, New Jersey,
7    on August 5, 2010, commencing at 10:25 in the
8    forenoon.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1  questions.  Yesterday we deposed Mr. Pepsny and so he
2  recalls having conversations with you about certain
3  things.  One of the questions I had asked him about
4  though was that when Coastal Title did that filing
5  of -- it turned out to be -- 150 different deeds and
6  mortgages back in April of '97, a number of the deeds
7  that were filed were what I'll call joint venture
8  deeds; that is, they were a deed from the straw buyer
9  of Kane's -- the property purchased by Mr. Kane's
10 company and it divided 60 percent of that property
11 and gave that to Capital Assets Property Management
12 Company, which was, as we said, Mr. Grieser's
13 company, and 40 percent to the mortgagee.  And
14 those --
15            MR. McGOWAN:  Not the mortgagee.
16            MR. MAGNANINI:  The mortgagor.
17            MR. McGOWAN:  Right.
18      Q.    Those deeds were recorded along with
19 these other deeds, and I had asked Mr. Pepsny if he
20 had ever had any discussions with you about those
21 joint venture deeds.  Do you recall ever discussing
22 those joint venture deeds with Mr. Pepsny?
23      A.    I don't recall whether it was Pepsny or
24 Yacker.  I did talk to someone about them because I
25 wanted to know what they were all about, but I

1    couldn't tell you whether it was Yacker or Pepsny.
2         Q.    Do you recall talking to anybody about
3    those deeds needed to be filed along with all of
4    these other documents?
5         A.    No.  I needed to know who I was
6    insuring, whether I was insuring the original
7    mortgagor or whether they were insuring the -- we
8    were insuring the second deed.
9         Q.    The 60/40 split?
10        A.    Correct.
11        Q.    And who did -- who were you ultimately
12   insuring?
13        A.    The original purchaser, the purchase
14   money mortgagor.
15        Q.    And how did you determine that?
16        A.    Through asking either Yacker or Pepsny.
17   I don't recall which one.
18        Q.    That one of the attorneys told you?
19        A.    Yes.
20        Q.    Okay.  Because of all the various
21   documents we have seen, we have seen title
22   commitments issued on the Kane Company purchase of
23   the property and then, as we talked about, the tile
24   commitment with the capital A in parenthesis --
25        A.    Right.