# EXHIBIT C



'3—DEED - BARGAIN AND SALE (Covenant as to Grantor's Acts)
IND. TO IND. OR CORP.— Plain Language
(Rev. June 1992)

© Copyright© 1982 by ALL-STATE LEGAL SUPPLY CO.
One Commerce Drive, Cranford, N.J. 07016

# DEED

This Deed is made on   October   21   , 19 96 .

Prepared by: (print signer's name below signature)

ROBERT J. SAXTON, ESQUIRE

BETWEEN

ELAINE M. SMALLS, Unmarried

whose address is   705 Berkeley Lane, Neptune, NJ 07753

referred to as the Grantor,

AND

CRISTO PROPERTY MANAGEMENT LTD.

COUNTY OF MONMOUTH
CONSIDERATION 42,500 —
RTF 148 75   add'l RTF
DATE 4 9 97 BY

whose post office address is

referred to as the Grantee.

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

Transfer of Ownership. The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of   FORTY-TWO THOUSAND FIVE HUNDRED ($42,500.00) DOLLARS AND NO/100

The Grantor acknowledges receipt of this money.

Tax Map Reference. (N.J.S.A. 46:15-1.1) Municipality of
Block No.   67   Lot No.   23   Account No.
☐ No property tax identification number is available on the date of this Deed. (Check box if applicable).

Property. The property consists of the land and all the buildings and structures on the land in the   City   of   Asbury Park
County of   Monmouth   and State of New Jersey. The legal description is:

BEING known and designated as Lot Number two hundred and twenty-one and in Block L as shown on a plan of West Asbury Park made by W. H. DeNyse, C.E. and more particularly described as follows:

BEGINNING at a point in the southerly line of Bangs Avenue distant eighty-three feet easterly from the southeasterly corner of Bangs Avenue and Comstock Street; thence

(1) Easterly along the southerly line of Bangs Avenue forty-two feet; thence

(2) Southerly at right angles to Bangs Avenue one hundred feet to the center line of the block; thence

(3) Westerly parallel with Bangs Avenue forty-two feet; thence

(4) Northerly again at right angles to Bangs Avenue one hundred feet to the place of BEGINNING.

BEING Lot 23, Block 67 on the City of Asbury Park Tax Map.

Subject to easements, restrictions, conditions and rights of way of record, and such state of facts as would be disclosed by an accurate survey of the premises.

Being the same premises conveyed to William E. Smalls and Elaine M. Smalls, husband and wife. The said William E. Smalls departed this life on March 6, 1993.



Coastal Title Agency, Inc.
31 West Main Street • PO Box 740
Freehold, NJ 07728
1-800-631-0378

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY
INSTRUMENT NUMBER
1997038978
RECORDED ON
Apr 09, 1997
2:21:00 PM
BOOK OR-5591 PAGE443
Total Pages: 3

COUNTY RECORDING FEES   $30.00
DEDICATED TRUST FUND COMMISSION   $2.00
COUNTY REALTY TRANSFER FEES   $42.54
STATE REALTY TRANSFER FEES   $106.21
TOTAL   ...

FT/NT04913

1052-34 ~~~~

# FIDELITY NATIONAL TITLE
## Insurance Company of New York

## Schedule A-4

File No.  CT-18718(A)

All that certain lot, piece of land, with the buildings and improvements thereon erected, situate, lying and being in the  City of Asbury Park, County of  Monmouth,      State of New Jersey:

Being known and designated as Lot Number 221 and in Block L as shown on a plan of West Asbury Park made by W.H. DeNyse, C.E., and more particularly described as follows:

Beginning at a point in the southerly line of Bangs Avenue distant 83 feet easterly from the southeasterly corner of Bangs Avenue and Comstock Street; thence

1.  Easterly along the southerly line of Bangs Avenue 42 feet; thence

2.  Southerly at right angles to Bangs Avenue 10 feet to the center line of the block; thence

3.  Westerly parallel with Bangs Avenue 42 feet; thence

4.  Northerly again at right angles to Bangs Avenue 100 feet to the place of Beginning.

Being Lot 23, Block 67 on the City of Asbury Park Tax Map.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FORM 26-84-82 A-4(11/93)

ALTA COMMITMENT - PLAIN LANGUAGE
SCHEDULE A-4, NJRB 3-02 (10-26-82

FT/NT04914

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.** The Grantor signs this Deed as of the date at the top of the first page.

Witnessed by:

_____ (Seal)

ROBERT J. SAXTON, ESQUIRE                    ELAINE M. SMALLS (Seal)

STATE OF NEW JERSEY, COUNTY OF   **MONMOUTH**          SS.:
I CERTIFY that on  October 23 , 19 96 ,

**ELAINE M. SMALLS**

personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a) was the maker of the attached deed;
(b) executed this deed as his or her own act; and,

(c) made this Deed for $ 42,500.00          as the full and actual consideration paid or to be paid for the transfer of title.
(Such consideration is defined in N.J.S.A. 46:15-5.)

_____
(Print name and title below signature)
ROBERT J. SAXTON, ESQUIRE

FT/NT04915



**Coastal Title Agency, Inc.**
21 West Main Street • PO Box 740
Freehold, NJ 07728
1-800-521-0576

075007



Prepared by

Richard J. Pepsny, Esq.

# <u>DEED</u>

| COUNTY OF MONMOUTH | |
|---|---|
| CONSIDERATION | 180,000 |
| RTF 638 — | add'l RTF 45 |
| DATE 4/9/97 BY | Ro |

This Deed is made on, NOVEMBER 13, 1996,

BETWEEN:

**CRISTO PROPERTY MANAGEMENT, LTD.**
a corporation in the state of NEW JERSEY, having its principal office at 952 Route 34, Matawan Mall, 2nd Floor, Matawan, New Jersey 07747  referred to as the Grantor.

AND:

**ALICIA JUERGENSEN**
whose post office address is about to be 1032-1034 BANGS AVENUE, ASBURY PARK, NEW JERSEY
referred to as Grantee.
The word "Grantee" shall mean all Grantees listed above.

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997038981
RECORDED ON
Apr 09, 1997
2:25:57 PM
BOOK-OB-5589 PG-444
Total Pages: 3

COUNTY RECORDING    $20.00
FEES
DEDICATED TRUST     $2.00
FUND COMMISSION
COUNTY REALTY       $180.18
TRANSFER FEES
STATE REALTY        $449.82
TRANSFER FEES
REALTY TRANSFER     $45.00
FEES - NPWR
TOTAL               $697.00

**Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of ONE HUNDRED EIGHTY THOUSAND DOLLARS ($180,000.00). The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (N.J.S.A. 46:15-1.1) Municipality of CITY of ASBURY PARK Block No.    67    Lot No. 23       Account no.

___ No Property tax identification number is available on the date of this Deed. (check box if applicable.)

**Property.** The Property consists of the land and all the buildings and structures on the land in the CITY of ASBURY PARK County of MONMOUTH and State of New Jersey. The legal description is:
<u>COMMONLY KNOWN AS: 1032-1034 BANGS AVENUE, ASBURY PARK, NEW JERSEY</u>

SEE ATTACHED SCHEDULE A FOR LEGAL DESCRIPTION.

BEING THE SAME PREMISES CONVEYED TO THE GRANTOR HEREIN BY DEED FROM ELAINE M. SMALLS, UNMARRIED., DATED OCTOBER 23, 1996 AND BEING INTENDED TO BE RECORDED IN THE MONMOUTH COUNTY CLERK'S OFFICE SIMULTANEOUSLY HEREWITH.

FT/NT04916

**FIDELITY NATIONAL TITLE**
Insurance Company of New York

### Schedule A-4

File No. CT-18718(A)

All that certain lot, piece of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Asbury Park, County of Monmouth,     State of New Jersey:

Being known and designated as Lot Number 221 and in Block L as shown on a plan of West Asbury Park made by W.H. DeNyse, C.E., and more particularly described as follows:

Beginning at a point in the southerly line of Bangs Avenue distant 83 feet easterly from the southeasterly corner of Bangs Avenue and Comstock Street; thence

1.  Easterly along the southerly line of Bangs Avenue 42 feet; thence

2.  Southerly at right angles to Bangs Avenue 10 feet to the center line of the block; thence

3.  Westerly parallel with Bangs Avenue 42 feet; thence

4.  Northerly again at right angles to Bangs Avenue 100 feet to the place of Beginning.

Being Lot 23, Block 67 on the City of Asbury Park Tax Map.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FORM 26-84-82 A-4(11/93)

ALTA COMMITMENT - PLAIN LANGUAGE
SCHEDULE A-4, WJRB 3-02 (10-26-82

FT/NT04917

Promises by Grantor.  The Grantor promises that the Grantor has done no act to encumber the property.  This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6).  This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

Signatures.  This Deed is signed and attested to by the Grantor's proper corporate officers as of the date at the top of the first page.  Its corporate seal is affixed.

By: _____
WILLIAM J. KANE, President

STATE OF NEW JERSEY:
                                    SS:
COUNTY OF MIDDLESEX:

I CERTIFY, that on this 13 . day of NOVEMBER 1996, WILLIAM J. KANE came before me in person and stated to my satisfaction, under oath, that:

(a)  he is the President of CRISTO PROPERTY MANAGEMENT, LTD., the entity named in the within instrument, and was fully authorized to and did execute this instrument on its behalf;

(b)  this Deed was made for the $180,000.00 as the full and actual consideration paid or to be paid for the transfer of title.  (Such consideration is defined in N.J.S.A. 46:15-5).

Signed and sworn before me
on 11.13.1996

_____
Notary Public
Richard J. Pepony
Attorney at Law
State of New Jersey

FT/NT04918

4

**Coastal Title Agency, Inc.**
21 West Main Street · PO Box 740
Freehold, NJ 07728
1-800-321-0378

075008

Prepared by: _____
LORRAINE E. KING

COUNTY OF MONMOUTH
CONSIDERATION ____
RTF _____ add
DATE _____ BY

# DEED

## This Deed, made this 13TH day of ,NOVEMBER 1996

Between    ALICIA JUERGENSEN
located at 1032-1034 BANGS AVENUE, ASBURY PARK N.J.    herein designated as Grantor

And        ALICIA JUERGENSEN & CAPITAL ASSESTS PROPERTY MANAGEMENT
           & INVESTMENT, CO., INC.

           ALICIA JUERGENSEN AS TO 40% INTEREST AND CAPITOL ASSESTS
           PROPERTY MANAGEMENT & INVESTMENT, CO., INC. AS TO 60%
           INETEREST

located at 10 WEST BERGEN PLACE, SUITE 104, RED BANK, NEW JERSEY  07701 herein
designated as the Grantee;

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

**Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the
property described below to the Grantee. This transfer is made for the sum of **UNDER ONE
HUNDRED DOLLARS.** The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (*N.J.S.A.* 46:15-1.1) Municipality of **ASBURY PARK**
Block 67    Lot 23        Account No.

_____ No Property tax identification number is available on the date of this Deed. (Check this box
if applicable.)

**Property.** The Property consists of the land and all the buildings and structures on
the land in the **CITY** of **ASBURY PARK**, County of **MONMOUTH** the State of New
Jersey, and is commonly known as1032-1034 **BANGS AVENUE, ASBURY PARK,
NEW JERSEY** The legal description is:

**SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION.**

**THE GRANTOR WILL WARRANT, SECURE AND FOREVER DEFEND THE TITLE
TO THE SUBJECT PROPERTY.**

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY
INSTRUMENT NUMBER
1997038982
RECORDED ON
Apr 09, 1997
2:25:58 PM
BOOK OR-5589 PG4448
Total Pages: 4

COUNTY RECORDING   $22.00
FEES
DEDICATED TRUST    $2.00
FUND COMMISSION
TOTAL             $24.00

FT/NT04919

1032-34 BANGS

## FIDELITY NATIONAL TITLE
Insurance Company of New York

### Schedule A-4

File No.  CT-18718(A)

All that certain lot, piece of land, with the buildings and improvements thereon erected, situate, lying and being in the  City of Asbury Park, County of Monmouth,      State of New Jersey:

Being known and designated as Lot Number 221 and in Block L as shown on a plan of West Asbury Park made by W.H. DeNyse, C.E., and more particularly described as follows:

Beginning at a point in the southerly line of Bangs Avenue distant 83 feet easterly from the southeasterly corner of Bangs Avenue and Comstock Street; thence

1.  Easterly along the southerly line of Bangs Avenue 42 feet; thence

2.  Southerly at right angles to Bangs Avenue 10 feet to the center line of the block; thence

3.  Westerly parallel with Bangs Avenue 42 feet; thence

4.  Northerly again at right angles to Bangs Avenue 100 feet to the place of Beginning.

Being Lot 23, Block 67 on the City of Asbury Park Tax Map.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FORM 26-84-82 A-4(11/93)

ALTA COMMITMENT -- PLAIN LANGUAGE
SCHEDULE A-4, NJRB 3-02 (10-26-82

FT/NT04920

RTF-1 1845   AFFIDAVIT OF CONSIDERATION
(RTF-1) (Rev. 11/86)

**STATE OF NEW JERSEY
AFFIDAVIT OF CONSIDERATION OR EXEMPTION
(c. 49, P.L. 1968)
or
PARTIAL EXEMPTION
(c. 176, P.L. 1975)**
To Be Recorded With Deed Pursuant to c. 49, P.L. 1968, as amended by c. 225, P.L. 1985 (N.J.S.A. 46:15-5 et seq.)

ALL-STATE LEGAL SUPPLY CO.
One Commerce Drive, Cranford, N. J. 07016

V 37 - 3

STATE OF NEW JERSEY
COUNTY OF   MONMOUTH   } ss.

| FOR RECORDER'S USE ONLY |
|---|
| Consideration $ |
| Realty Transfer Fee $   ~~Nempt~~ |
| Date _____  _____ 797  By _____ |
| *Use symbol "C" to indicate that fee is exclusively for county use. |

**(1) PARTY OR LEGAL REPRESENTATIVE** (See Instructions #3, 4 and 5 on reverse side)

Deponent, ____ ALICIA JUERGENSEN ____, being duly sworn according to law upon his/her oath deposes and
(Name)

says that he/she is the ____ GRANTOR ____
(State whether Grantor, Grantee, Legal Representative, Corporate Officer, Officer of Title Co., Lending Institution, etc.)

in a deed dated ____ NOVEMBER 13, 1996 ____ transferring real property identified as Block No. ____ 67 ____

Lot No. ____ 23 ____ located at ____ 1032-1034 BANGS AVENUE, ASBURY PARK, N.J. ____
(Street Address, Town/City, County)

____ MONMOUTH COUNTY ____ and annexed hereto.

**(2) CONSIDERATION** (See Instruction #6)

Deponent states that, with respect to deed hereto annexed, the actual amount of money and the monetary value of any other thing of value constituting the entire compensation paid or to be paid for the transfer of title to the lands, tenements or other realty, including the remaining amount of any prior mortgage to which the transfer is subject or which is to be assumed and agreed to be paid by the grantee and any other lien or encumbrance thereon not paid, satisfied or removed in connection with the transfer of title is $ _____

**(3) FULL EXEMPTION FROM FEE**   Deponent claims that this deed transaction is fully exempt from the Realty Transfer Fee imposed by c. 49, P.L. 1968, for the following reason(s): Explain in detail. (See Instruction #7.) Mere reference to exemption symbol is not sufficient.

CONSIDERATION IS UNDER ONE HUNDRED DOLLARS

**(4) PARTIAL EXEMPTION FROM FEE**   *NOTE: All boxes below apply to grantor(s) only. ALL BOXES IN APPROPRIATE CATEGORY MUST BE CHECKED. Failure to do so will void claim for partial exemption. (See Instructions #8 and #9)*

Deponent claims that this deed transaction is exempt from the increased portion of the Realty Transfer Fee imposed by c. 176, P.L. 1975 for the following reason(s):

**a) SENIOR CITIZEN** (See Instruction #8)
☐ Grantor(s) 62 yrs. of age or over.*
☐ One or two-family residential premises.
☐ Owned and occupied by grantor(s) at time of sale.
☐ No joint owners other than spouse or other qualified exempt owners.

**b) BLIND** (See Instruction #8)
☐ Grantor(s) legally blind.*
☐ One or two-family residential premises.
☐ Owned and occupied by grantor(s) at time of sale.
☐ No joint owners other than spouse or other qualified exempt owners.

**DISABLED** (See Instruction #8)
☐ Grantor(s) permanently and totally disabled.*
☐ One or two-family residential premises.
☐ Receiving disability payments.
☐ Owned and occupied by grantor(s) at time of sale.
☐ Not gainfully employed.
☐ No joint owners other than spouse or other qualified exempt owners.

*IN THE CASE OF HUSBAND AND WIFE, ONLY ONE
GRANTOR NEED QUALIFY.

**c) LOW AND MODERATE INCOME HOUSING** (See Instruction #8)
☐ Affordable According to H.U.D. Standards.
☐ Meets Income Requirements of Region.
☐ Reserved for Occupancy.
☐ Subject to Resale Controls.

**d) NEW CONSTRUCTION** (See Instruction #9)
☐ Entirely new improvement.
☐ Not previously used for any purpose.
☐ Not previously occupied.

Deponent makes this Affidavit to induce the County Clerk or Register of Deeds to record the deed and accept the fee submitted herewith in accordance with the provisions of c. 49, P.L. 1968.

Subscribed and Sworn to before me
this ____ 13 ____

____ day of ____
____ NOVEMBER ____ 19 96

_signature_
ATTORNEY AT LAW
STATE OF NEW JERSEY
My Commission Expires Feb. 21, 2001

_signature_ ALICIA JUERGENSEN
(Signature of Grantor type shown here)

1032-1034 BANGS AVENUE
ASBURY PARK, N.J.
(Address of Deponent)

ALICIA JUERGENSEN
(Name of Grantor type shown here)

SAME
(Address of Grantor as of date of deed)

| FOR OFFICIAL USE ONLY This space for use of County Clerk or Register of Deeds. |
|---|
| Instrument Number _____ County _____ |
| Deed Number _____ Book _____ Page _____ |
| Deed Dated _____ Date Recorded _____ |

**IMPORTANT - BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE HEREOF.**
This form is prescribed by the Director, Division of Taxation in the Department of the Treasury, as required by law, and may not be altered or amended without the approval of the Director.
ORIGINAL — White copy to be retained by County.
DUPLICATE — Yellow copy to be forwarded by County to Division of Taxation on partial exemption from fee (N.J.A.C. 18:16—8.12).
TRIPLICATE — Pink copy is your file copy.

FT/NT04921

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to Grantor's acts" (*N.J.S.A.* 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor who has hereunto set their hand and seal the day and year first above written.

Signed, Sealed and Delivered
    in the presence of

_____          _____
                                 ALICIA JUERGENSEN

STATE OF NEW JERSEY        }
                           }    SS
COUNTY OF MONMOUTH         }

**Be it Remembered,** that on NOVEMBER 13 , 1996, before me, the subscriber, a Notary Public of New Jersey, personally appeared ALICIA JUERGENSEN, who I am satisfied, is the person named in and who executed the within Instrument, and thereupon she acknowledged that she signed, sealed and delivered the same as her act and deed, for the uses and purposes therein expressed, and that the full and actual consideration paid or to be paid for the transfer of title to realty evidenced by the within deed, as such consideration is defined in N.J.S.A. 46:15-5, is UNDER ONE HUNDRED DOLLARS.

_____
        LORRAINE E. KING
   NOTARY PUBLIC OF NEW JERSEY
  My Commission Expires Feb. 21, 2001

FT/NT04922

COASTAL TITLE AGENCY, INC.
21 WEST MAIN STREET
P.O. BOX 740
FREEHOLD, NJ 07728

WHEN RECORDED MAIL
WALSH SECURITIES, 1
4 CAMPUS DRIVE
PARSIPPANY, NJ 070

Loan Number : 62264b

075009

[SPACE ABOVE THIS LINE FOR RECORDING DATA]

# MORTGAGE

**THIS MORTGAGE** (" Security Instrument") is given on November 13, 1996
The mortgagor is ALICIA JUERGENSEN

("Borrower"). This Security Instrument is given to

NATIONAL HOME FUNDING

,which is organized and existing
under the laws of NEW JERSEY , and whose principal office and mailing address is
3443 HIGHWAY 9-N HOLIDAY PLAZA, FREEHOLD, NJ 07728

("Lender"). Borrower owes Lender the principal sum of
**One Hundred Thirty-Five Thousand Dollars And 00/100**

Dollars (U.S.$ 135,000.00 ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
December 1, 2011 . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security
Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date,
and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, § 1 et seq., and upon such modification,
shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security
Instrument is $ 135,000.00 . For these purposes, Borrower does hereby mortgage, grant and convey to Lender the
following described property located in MONMOUTH County, New Jersey:
SEE LEGAL DESCRIPTION ATTACHED HERETO

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY
INSTRUMENT NUMBER
1997038988
RECORDED ON
Apr 09, 1997
2:29:24 PM
BOOK:OR-6157 PG:721
Total Pages: 10

COUNTY RECORDING FEES   $31.00
DEDICATED TRUST FUND COMMISSION   $2.00
TOTAL   $33.00

which has the address of 1032-34 BANGS AVENUE                    ASBURY PARK
                                              [Street]                                              [City]
New Jersey    07712              ("Property Address");
              [Zip Code]

* THE NOTE THIS SECURITY INSTRUMENT SECURES CONTAINS
PROVISIONS FOR A BALLOON PAYMENT. THE ENTIRE PRINCIPAL
BALANCE OF THE LOAN AND UNPAID INTEREST IS PAYABLE
IN FULL AT MATURITY.

NEW JERSEY-Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3031  9/90 (page 1 of 6 pages)

Eastern Software
ITEM 1924 (9012)

1032-34 BANGS

# FIDELITY NATIONAL TITLE
## Insurance Company of New York

## Schedule A-4

File No.  CT-18718(A)

All that certain lot, piece of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Asbury Park, County of Monmouth,    State of New Jersey:

Being known and designated as Lot Number 221 and in Block L as shown on a plan of West Asbury Park made by W.H. DeNyse. C.E., and more particularly described as follows:

Beginning at a point in the southerly line of Bangs Avenue distant 83 feet, easterly from the southeasterly corner of Bangs Avenue and Comstock Street; thence

1.  Easterly along the southerly line of Bangs Avenue 42 feet; thence

2.  Southerly at right angles to Bangs Avenue 10 feet to the center line of the block; thence

3.  Westerly parallel with Bangs Avenue 42 feet; thence

4.  Northerly again at right angles to Bangs Avenue 100 feet to the place of Beginning.

Being Lot 23, Block 67 on the City of Asbury Park Tax Map.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FORM 26-84-82 A-4(11/93)

ALTA COMMITMENT - PLAIN LANGUAGE
SCHEDULE A-4, NJRB 3-02 (10-26-82

FT/NT04924

# BALLOON RIDER

**LOAN #  622645**

## (Full Repayment Required at Maturity)

THIS BALLOON RIDER is made this 13TH    day of · November , 1996               , and is
incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed to
Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the
Borrower's Note to **NATIONAL HOME FUNDING**

(the "Lender") of the same date and covering the

property described in the Security Instrument and located at:

**1032-34 BANGS AVENUE, ASBURY PARK, NJ 07712**

(Property Address)

    The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date".
I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who
takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under
the Note is called the "Note Holder".

    The Note is a Balloon Note which means that the amount of my monthly payment is insufficient to repay the
Note in full by Maturity. Therefore, the final payment will be significantly larger than the other payments under
the Note.

    I understand that the Lender is under no obligation to refinance the Note or to modify the Note or reset the
Note Rate or to extend the Note Maturity Date or the Maturity Date of this Security Instrument, and that I will
have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

    I further understand that should I not repay the Note on or before the Maturity Date, I will be in default, and
the Lender will have the right to exercise all of its rights against me because of my default, including the right to
foreclosure of the Security Instrument, or other remedies permitted by law.

    BY SIGNING BELOW, BORROWER accepts and agrees to the terms and covenants contained in this
Balloon Rider.



_____ (Seal)
ALICIA JUERGENSEN                                -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

Balloon Rider                                                              (8-2-95) JC-22205-11

# 1-4 FAMILY RIDER
### Assignment of Rents

Loan Number: 622645

THIS 1-4 FAMILY RIDER is made this 13th day of November, 1996 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

NATIONAL HOME FUNDING

(the "Lender")

of the same date and covering the property described in the Security Instrument and located at:

1032-34 BANGS AVENUE, ASBURY PARK, NJ 07712
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property".

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Uniform Covenant 18 is deleted.

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument          Form 3170 9/90 (page 1 of 2 pages)

Eastern Software
CORPORATION   ITEM 1790 (9410)

FT/NT04926

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and; (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this 1-4 Family Rider.

_Alicia Juergensen_ _____ (Seal)          _____ (Seal)
ALICIA JUERGENSEN          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                  -Borrower

Form 3170 9/90 (page 2 of 2 pages)

FT/NT04927

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the escrow items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.
3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the note.
4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.
5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender

Form 3031  9/90 (page 2 of 6 pages)

FT/NT04928

requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants 9/90 (page 3 of 6 pages)

FT/NT04929

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, required immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:(a) 5 days (or such other period as applicable law may

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants 9/90   (page 4 of 6 pages)

FT/NT04930

specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

Form 3031  9/90 (page 5 of 6 pages)

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ Other(s) [specify]  LEGAL DESCRIPTION | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Alicia Juergensen_ _____ (Seal)
ALICIA JUERGENSEN                       -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

STATE OF NEW JERSEY,        *Monmouth*        County ss:

On this **13th** day of   November , 1996        ,before me, the subscriber, personally appeared
ALICIA JUERGENSEN

who, I am satisfied,

**is**     the person(s) named in and who executed the within instrument, and thereupon **she**
acknowledged that **she**    signed, sealed and delivered the same as **her**        act and
deed, for the purposes therein expressed.

_Lorraine E. King_
LORRAINE E. KING
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

Notary Public

This instrument was prepared by:  MICHELE MAZALA

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.
Witness:

_Lorraine E. King_              _Alicia Juergensen_ _____ (Seal)
                               ALICIA JUERGENSEN              -Borrower

_____ (Seal)
                                               -Borrower

_____ (Seal)
                                               -Borrower

_____ (Seal)
                                               -Borrower

Form 3031  9/90 (page 6 of 6 pages)

FT/NT04932

# EXHIBIT D

101—DEED : BARGAIN AND SALE
IND. TO IND. OR CORP. ▼ Plain Language

ADOR ST-1

Copyright © 1982 By ALL-STATE LEGAL SUPPLY CO.
One Commerce Drive, Cranford, N.J. 07016

# DEED

This Deed is made on **May 2** , 19 96 .

Prepared by: (Print signer's name below signature)

SEAFORD W. THOMPSON, ESQ.

BETWEEN

Ernestine Murphy

whose address is  317 Riveredge Road, Tinton Falls, NJ  07724
referred to as the Grantor,

AND

D.E.K. Homes of New Jersey, Inc.

| COUNTY OF MONMOUTH |
|---|
| CONSIDERATION 45,000 |
| RTF 159.50 ADD'L RTF |
| DATE 5/16/96 BY ESB |

whose post office address is  520 Industrial Loop, Staten Island, NJ  10309
referred to as the Grantee.

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

Transfer of Ownership.  The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of **Forty-five Thousand**

Dollars & 00/1.00 ($45,000.00)     The Grantor acknowledges receipt of this money.

Tax Map Reference.  (N.J.S.A. 46:15-2.1) Municipality of  Red Bank
Block No. 78         Lot No. /28         Account No.
☐ No property tax identification number is available on the date of this deed. (Check box if applicable.)

Property.  The property consists of the land and all the buildings and structures on the land in
the      Borough                          of  Red Bank
County of Monmouth              and State of New Jersey. The legal description is:

The property is also known as 56 Bank Street, Red Bank, NJ

Beginning at a stake at the intersection of the north side of Bank Street
and the east side of Leighton Avenue; thence

(1) South 84 degrees 00 minutes east along the north side of Bank
Street 30 feet to a stake; thence

(2) North 6 degrees 00 minutes east at right angles to Bank Street
116.5 feet to a stake; thence

(3) North 84 degrees 00 minutes west parallel to Bank Street 30 feet
to a stake in the east side of Leighton Avenue; thence

(4) South 6 degrees 00 minutes west along the east side of Leighton
Avenue 116.5 feet to the place of beginning.

Being lot 28, block 78, on the Tax Map of the Borough of Red Bank.

Being the same premises conveyed by deed from Salvatore LoPresti and
Maria LoPresti, husband and wife, to Curtis C. Murphy and Ernestine
Murphy on December 2, 1958, recorded in Monmouth County Clerk's Office
in Deed Book 2881, Page 492, on December 5, 1958.

Ernestine Murphy is surviving tenant by the entirety.  Curtis
Murphy died July 8, 1995.

DB5501-0212

FT/NT01989

Signatures.  The Grantor signs this Deed as of the date at the top of the first page.

Witnessed by:

_Ann Theresa Mahl_

_Ernestine Murphy_ (Seal)
Ernestine Murphy

_____ (Seal)

STATE OF NEW JERSEY, COUNTY OF MONMOUTH          SS.:

I CERTIFY that on    May 2    , 19 96 .
   Ernestine Murphy

                                                personally came before me
and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person):
   (a)  is named in and personally signed this Deed;
   (b)  signed, sealed and delivered this Deed as his or her act and deed; and
   (c)  made this Deed for $ 45,000.00         as the full and actual consideration paid or to be
        paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5.)

                                       Swetlana W. Thompson, Esq.

DB5501-0213

FT/NT01990



D E E D

Ernestine Murphy

                                    Grantor.
          TO

D.E.K. Homes of New Jersey, Inc.

                                    Grantee.

Dated:      May    2  , 19 96

Record and return to:

Rec'd 157.50        At 22

STANLEY YACKER, ESQ.
330 Highway 34, Suite 3
P.O. Box 991
Matawan, NJ  07747

555564
RECORDED
MAY 16 1996  2:41 PM
MONMOUTH COUNTY CLERK
JANE G. CLAYTON

END OF DOCUMENT                    DB5501-0214

FT/NT01991

*By Ac 490*
*R4R    Pa 22*

STANLEY YACKER, ESQ.
330 Highway 34, Suite 2
P.O. Box 991
Matawan, NJ 07747

COUNTY OF MONMOUTH
CONSIDERATION 149,8~
RTF   490      addt'l RTF
DATE 5/16/96   BY
Prepared by:
Richard J. Pepsny, Esq.

## DEED

388565

This Deed is made on, APRIL 30, 1996,

RECORDED
MAY 16 1996  2:47 PM
MONMOUTH COUNTY CLERK
JANE G. CLAYTON

BETWEEN:

D.E.K. HOMES OF NEW JERSEY, INC.

whose address is 520 INDUSTRIAL LOOP, STATEN ISLAND, NY, 10309
referred to as the Grantor,

AND:

THOMAS G.  AND ANNA LEODIS

whose address is 10 WEST BERGEN PLACE, RED BANK, NEW JERSEY, 07701
referred to as Grantee.

The words "Grantor" and "Grantee" shall mean all Grantors
and Grantees listed above.

Transfer of Ownership.   The Grantor grants and conveys
(transfers ownership of) the property described below to the
Grantee. This transfer is made for the sum of ONE HUNDRED FORTY
THOUSAND DOLLARS, ($140,000.00). The Grantor acknowledges receipt
of this money.

Tax Map Reference. (N.J.S.A.46:15-1.1) Municipality of
RED BANK
Block No.   78          Lot No.   28     Account no.

No Property tax identification number is available on the date
of this Deed. (check box if applicable.)

Property.   The Property consists of the land and all the
buildings and structures on the land in the BORO of RED BANK County
of MONMOUTH and State of New Jersey. The legal description is:

SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION.

BEING THE SAME PREMISES CONVEYED TO THE GRANTOR HEREIN BY DEED FROM
ERNESTINE MURPHY AS SURVIVING TENANT BY THE ENTIRETY DATED MAY 2,
1996 WHICH DEED IS INTENDED TO BE RECORDED SIMULTANEOUSLY HEREWITH.

DB5501-0215

FT/NT01992

**THOMAS M. ERNST & ASSOCIATES**
PROFESSIONAL LAND SURVEYORS, INC.
PROFESSIONAL PLANNERS & LAND SURVEYORS
P.O. BOX 221, 457 SPOTSWOOD ENGLISHTOWN ROAD
JAMESBURG, NEW JERSEY 08831

(908) 251-1001
FAX: (908) 251-9470

DEED DESCRIPTION

LOT 28   BLOCK 78

BOROUGH OF RED BANK

Beginning at a point being the intersection of the northerly line of
Bank Street with the easterly line of Leighton Avenue and running
thence;

1)   Along the northerly line of Bank Street
     S 84° - 00' E                               30' to a point thence;

2)   N 06° - 00' E                               116.50' to a point thence;

3)   N 84° - 00' W                               30' to a point in the easterly
     line of Leighton Avenue thence;

4)   Along the easterly line of Leighton Avenue
     S 06° - 00' W                               116.50' to a point and place
     of beginning.

The above description is drawn in accordance with a survey prepared by THOMAS M. ERNST
professional land surveyor, DATE: April 9, 1996.

DB5501-0216

FT/NT01993

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**COMMONLY KNOWN AS:** 56 BANK STREET, RED BANK, NEW JERSEY

**Signatures.** This Deed is signed and attested to by the Grantor's as of the date at the top of the first page.

Attested by:

JOHN DIMANG, PRESIDENT

WILLIAM KANE, SECRETARY

STATE OF NEW JERSEY:
COUNTY OF MIDDLESEX                     ss.:

I CERTIFY, that on this 30th day of April ,96 . WILLIAM KANE, came before me in person and stated to my satisfaction, under oath, that:

(a)  they are the subscribing witness(s) to the signing of the within instrument;

(b)  this Deed was signed by WILLIAM KANE, who is the Secretary of the entity named in the within instrument, and was fully authorized to and did execute this instrument on their behalf;

(c)  this Deed was made for $140,000.00 as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A 46:15-5);

(d)  the subscribing witness signed this proof under oath to attest to the truth of these facts.

WILLIAM KANE,
SECRETARY

Signed and sworn before me
on                    1996

LORRAINE E. KING
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

**END OF DOCUMENT**

DB5501-0217

FT/NT01994

*R\̸f P1 1.75*
*R\R P1. 22*

COUNTY OF MONMOUTH
CONSIDERATION *1.00*
RTF *1.75* addt'l RTF
DATE *5/16/96* BY Prepared by: ~~Lorraine E. King~~

STANLEY YACKER, ESQ
330 Highway 34, Suite 3
P.O. Box 991
Marawan, NJ 07747

LORRAINE E. KING

## DEED

*394366*

This Deed, made this 2ND    day of MAY, 1996.

RECORDED
MAY 16 1996  2:47 PM
MONMOUTH COUNTY CLERK
JANE C. CLAYTON

**Between**    THOMAS G. AND ANNA LEODIS,

located at  10 WEST BERGEN PLACE, RED BANK, NEW JERSEY  07701
herein designated as the Grantor,

**And**    THOMAS G. AND ANNA LEODIS AND CAPITAL ASSETS,

THOMAS G. AND ANNA LEODIS AS TO 40% INTEREST AND
CAPITAL ASSETS AS TO 60% INTEREST

located at 10 WEST BERGEN PLACE, RED BANK, NEW JERSEY  07701 herein designated as the
Grantee;

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

Transfer of Ownership. The Grantor grants and conveys (transfers ownership of) the property
described below to the Grantee.  This transfer is made for the sum of ($1.00)  ONE DOLLAR and
00/100 dollars.  The Grantor acknowledges receipt of this money.

Tax Map Reference.  (N.J.S.A. 46:15-1.1)  Municipality of  RED BANK
Block  78   Lot   28   Account No.

____  No Property tax identification number is available on the date of this Deed.  (Check this box if
applicable.)

Property.  The Property consists of the land and all the buildings and structures on the
land in the BOROUGH of RED BANK, County of Monmouth the State of New Jersey, and
is commonly known as 56 BANK STREET, RED BANK, NEW JERSEY.  The legal
description is:

SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION.

DB5501-0218

FT/NT01995

**THOMAS M. ERNST & ASSOCIATES**
PROFESSIONAL LAND SURVEYORS, INC.
PROFESSIONAL PLANNERS & LAND SURVEYORS
P.O. BOX 221, 457 SPOTSWOOD ENGLISHTOWN ROAD
JAMESBURG, NEW JERSEY 08831

(908) 251-1001
FAX: (908) 251-9470

DEED DESCRIPTION

LOT 28   BLOCK 78

BOROUGH OF RED BANK

Beginning at a point being the intersection of the northerly line of
Bank Street with the easterly line of Leighton Avenue and running
thence;

1)  Along the northerly line of Bank Street
    S 84° - 00' E                          30' to a point thence;

2)  N 06° - 00' E                          116.50' to a point thence;

3)  N 84° - 00' W                          30' to a point in the easterly
    line of Leighton Avenue thence;

4)  Along the easterly line of Leighton Avenue
    S 06° - 00' W                          116.50' to a point and place
    of beginning.

The above description is drawn in accordance with a survey prepared by THOMAS M. ERNST
professional land surveyor, DATE: April 9, 1996.

DB5501-0219

FT/NT01996

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to Grantor's acts" (*N.J.S.A.* 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor who has hereunto set their hand and seal the day and year first above written

Signed, Sealed and Delivered
in the presence of

_____          _____
                                    ANNA LEODIS

_____          _____
                                    THOMAS G. LEODIS

STATE OF NEW JERSEY      }
                         }   SS
COUNTY OF MONMOUTH       }

Be it Remembered, that on _May 2_ , 1996, before me, the subscriber, a Notary Public of New Jersey, personally appeared ANNA LEODIS and THOMAS G. LEODIS who I am satisfied, are the persons named in and who executed the within Instrument, and thereupon they acknowledged that they signed, sealed and delivered the same as their act and deed, for the uses and purposes therein expressed, and that the full and actual consideration paid or to be paid for the transfer of title to realty evidenced by the within deed, as such consideration is defined in PL 1968, c. 49, Sec 1(c), is $1.00.

_____
Notary Public   STANLEY YACKER
            Attorney at Law of the
            State of New Jersey

**END OF DOCUMENT**

DB5501-0220

FT/NT01997

ASSIGN
BOOK NO. 775 PAGE 166
DATE apr 16, 1997
ASSN/TO Wm A Mtg Inc.
MC FT CLERK

RECORD AND RETURN TO:                    PREPARED BY:

GF MORTGAGE CORP.
4 CAMPUS DRIVE              STANLEY YACKER, ESQ.         YNN CZACHOR
PARSIPPANY, NJ 07054       330 Highway 34, Suite 3
                                        P.O. Box 991
                                     Matawan, NJ 07747

                           [Space Above This Line For Recording Data]        616945

RECORDED
MAY 16 1996  2:49 PM
MONMOUTH COUNTY CLERK
JANE G. CLAYTON

## MORTGAGE

THE NOTE THIS SECURITY INSTRUMENT SECURES
CONTAINS PROVISIONS FOR A BALLOON PAYMENT. THE ENTIRE PRINCIPAL
BALANCE OF THE LOAN AND UNPAID INTEREST IS PAYABLE IN FULL AT MATURITY.
THIS MORTGAGE ("Security Instrument") is given on APRIL 30, 1996    . The mortgagor is
ANNA LEODIS AND
THOMAS G. LEODIS, WIFE AND HUSBAND

                                                                        ("Borrower").

This Security Instrument is given to   NATIONAL HOME FUNDING, INC.,
249
which is organized and existing under the laws of THE STATE OF NEW JERSEY        , and
whose principal office and mailing address is  3443 HIGHWAY 9 NORTH,
FREEHOLD, NEW JERSEY 07728                                              ("Lender").
Borrower owes Lender the principal sum of
ONE HUNDRED FIVE THOUSAND AND NO/100**********************************
Dollars (U.S. $   105,000.00   ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable
on MAY  1, 2011   . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced
by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance
of Borrower's covenants and agreements under this Security Instrument and the Note. This Security Instrument and the
Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms
and conditions), as defined in New Jersey Laws 1985, ch. 353, § 1 et seq., and upon such modification, shall have the
benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security Instrument is
$   105,000.00 . For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following
described property located in   MONMOUTH                             County, New Jersey:

LEGAL DESCRIPTION ATTACHED HERETO

ASSIGN
BOOK NO. 173 PAGE 836
DATE 4-3-97
ASSN/TO S F Mtg
MC French CLERK

which has the address of  56 BANK STREET,                    RED BANK,
                                          (Street)                                    (City)
New Jersey  07701      ("Property Address");
            (Zip Code)

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited
variations by jurisdiction to constitute a uniform security instrument covering real property.

NEW JERSEY - Single Family          Page 1 of 5              Form 3031 9-90
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    (1-93) JT-12200-31

MB5985-0918

ALTA COMMITMENT

## COMMITMENT FOR TITLE INSURANCE

SCHEDULE A (Description)

Commitment No. CT-16950

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Red Bank, County of Monmouth , and state of New Jersey.

Beginning at a point being the intersection of the northerly line of Bank Street with the easterly line of Leighton Avenue and running; thence

1. Along the northerly line of Bank Street, South 84 degrees 00 minutes East, 30.00 feet to a point; thence

2. North 06 degrees 00 minutes East, 116.50 feet to a point; thence

3. North 84 degrees 00 minutes West, 30.00 feet to a point in the easterly line of Leighton Avenue; thence

4. Along the easterly line of Leighton Avenue, South 06 degrees 00 minutes West, 116.50 feet to a point and place of Beginning.

The above description is drawn in accordance with a survey prepared by Thomas H. Ernst & Associates, Inc., dated April 9, 1996.

NOTE: Being Lot(s) 28, Block 78, Tax Map of the Borough of Red Bank.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

*NTI*

MB5985-0919

# 1-4 FAMILY RIDER
(Assignment of Rents)

616945

THIS 1-4 FAMILY RIDER is made this 30TH day of APRIL , 1996 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to NATIONAL HOME FUNDING, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

56 BANK STREET
RED BANK, NEW JERSEY 07701
(Property Address)

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B.  USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.  SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.  RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

**E.  "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F.  BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G.  ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.  ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take

MULTISTATE 1-4 FAMILY RIDER                    Page 1 of 2                    Form 3170 9-90
Fannie Mae/Freddie Mac Uniform Instrument                                    (4-93) FT-14779-31

Initial Here

MB5985-0920

possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I.   **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
ANNA LEODIS                                    Borrower

_____ (Seal)
THOMAS G. LEODIS                          Borrower

_____ (Seal)
                                                        Borrower

_____ (Seal)
                                                        Borrower

**MULTISTATE  1-4 FAMILY RIDER**          Page 2 of 2                     Form 3170 9-90
Fannie Mae/Freddie Mac Uniform Instrument                               (4-93) FT-14779-32

MB5985-0921

FT/NT02001

## BALLOON RIDER

LOAN # 616945

(Full Repayment Required at Maturity)

THIS BALLOON RIDER is made this 30TH day of APRIL 1996 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to NATIONAL HOME FUNDING, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

56 BANK STREET
RED BANK, NEW JERSEY 07701
(Property Address)

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

The Note is a Balloon Note which means that the amount of my monthly payment is insufficient to repay the Note in full by Maturity. Therefore, the final payment will be significantly larger than the other payments under the Note.

I understand that the Lender is under no obligation to refinance the Note or to modify the Note or reset the Note Rate or to extend the Note Maturity Date or the Maturity Date of this Security Instrument, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

I further understand that should I not repay the Note on or before the Maturity Date, I will be in default, and the Lender will have the right to exercise all of its rights against me because of my default, including the right to foreclosure of the Security Instrument, or other remedies permitted by law.

BY SIGNING BELOW, BORROWER accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)
ANNA LEODIS                        -Borrower

_____ (Seal)
THOMAS G. LEODIS                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

Balloon Rider                                      (8-2-93) JC-22203-11

MB5985-0922

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence

NEW JERSEY - Single Family  
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 2 of 5

**MB5985-0923**

Form 3031 9/90  
(1-93) JT-12200-52

for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.   Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.   Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9.   Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.   Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11.   Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.   Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.   Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded

permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

NEW JERSEY - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 4 of 5

Form 3031 9-90
(1-93) JT-12200-54

MB5985-0925

FT/NT02005

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ Other(s) [specify] EXHIBIT A | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it. Receipt of a true copy of this Instrument, provided without charge, is hereby acknowledged.

Signed, sealed and delivered in the presence of:

_____   _____ (Seal)
STANLEY YACKER                       ANNA LEODIS              Borrower

_____   _____ (Seal)
STANLEY YACKER                       THOMAS G. LEODIS        Borrower

                                   _____ (Seal)
                                                             Borrower

                                   _____ (Seal)
                                                             Borrower

———————————— [Space Below This Line For Acknowledgement] ————————————

STATE OF NEW JERSEY,   MONMOUTH                       County ss:

On this 30TH day of   APRIL , 1996   , before me, the subscriber, personally appeared
ANNA LEODIS AND THOMAS G. LEODIS

who, I am satisfied, ARE, the person(s) named in and who executed the within Instrument, and thereupon
HAVE   acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.

                                   _____
                                              Notary Public
                                          STANLEY YACKER
                                          Attorney at Law of the
                                          State of New Jersey

END OF DOCUMENT

FT/NT02006