# EXHIBIT E



# Deed

This Deed is made on February 28, 1997
BETWEEN

CHRISTINA VANGYIA, Single

whose post office address is 720 North 7th Street, Newark, New Jersey

referred to as the Grantor,
AND

CRISTO PROPERTY MANAGEMENT, LTD.

whose post office address is 809 Highway 36, Union Beach, New Jersey

referred to as the Grantee.
The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

1. Transfer of Ownership.   The Grantor grants and conveys (transfers ownership of) the property (called the "Property") described below to the Grantee. This transfer is made for the sum of FOURTY THOUSAND DOLLARS ($40,000.00)
The Grantor acknowledges receipt of this money.

2. Tax Map Reference.   (N.J.S.A. 46:15-1.1) Municipality of   Jersey City
Block No. 1999          Lot No. 26.B          Account No.
☐ No property tax identification number is available on the date of this Deed. (Check box if applicable.)

3. Property.   The Property consists of the land and all the buildings and structures on the land in the      City      of      Jersey City
County of Hudson          and State of New Jersey. The legal description is:

☒ Please see attached Legal Description annexed hereto and made a part hereof. (Check box if applicable).

Prepared by: (print signer's name below signature)

ANTHONY M. COSTA, ESQ.

101PD - Deed - Bargain and Sale
Cov. to Grantor's Act - Ind. to Ind. or Corp.
Plain Language 1/96
© 1996 by ALL-STATE Legal, a Division of
ALL-STATE® International, Inc.
(908) 272-0800
Page 1

DK5126PG056

The street address of the Property is:   101 Clerk Street, Jersey City, New Jersey

**4. Promises by Grantor.**   The Grantor promises that the Grantor has done no act to encumber the Property.  This promise is called a "covenant as to grantor's acts" (N.J.S.A.  46:4-6).  This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the Property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**5. Signatures.**   The Grantor signs this Deed as of the date at the top of the first page.  (Print name below each signature.)

Witnessed By:

_____   Christina Vangyia _____ (Seal)
ANTHONY H. COSTA, ESQ.                          CHRISTINA VANGYIA

_____   _____ (Seal)

_____   _____ (Seal)


STATE OF NEW JERSEY, COUNTY OF   ESSEX                                    SS.:
I CERTIFY that on   February 20, 1997

CHRISTINA VANGYIA, Single
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of this Deed;
(b) executed this Deed as his or her own act; and,

(c) made this Deed for $   40,000.00                   as the full and actual consideration paid or to be paid for the transfer of title.  (Such consideration is defined in N.J.S.A. 46:15-5.)

RECORD AND LAW OFFICES OF                          _____
MICHAEL ALFIERI, ESQ.                               (Print name and title below signature)
187 R.                         1                    ANTHONY H. COSTA, ESQ.
Matawan, NJ 07747                                  AN ATTORNEY AT LAW OF NEW JERSEY

LAW OFFICES OF
MICHAEL ALFIERI, ESQ.
187 Route 34, Suite 1
Matawan, NJ 07747

103PD - Deed - Bargain and Sale
Cov.  to Grantor's Act - Ind. to Ind. or Corp.
Plain Language 7/96

BK5126PG057

©1996 by ALL-STATE Legal, a Division of
ALL-STATE® International, Inc.
(908) 272-0800                    Page 2

FT/NT05123



S C H E D U L E   A
N U M B E R   4
(CONTINUED)

D E S C R I P T I O N

All that certain tract, lot and parcel of land lying and being in the
City of Jersey City County of Hudson and State of New Jersey being more
particularly described as follows:

BEGINNING AT A POINT IN THE NORTHWESTERLY LINE OF CLERK STREET DISTANT
150 FEET NORTHEASTERLY FROM THE NORTHEASTERLY LINE OF CARTERET AVENUE,
AND FROM SAID POINT RUNNING (1) NORTHWESTERLY PARALLEL WITH CARTERET
AVENUE, 100 FEET: THENCE RUNNING (2) NORTHEASTERLY PARALLEL WITH CLERK
STREET 18.75 FEET: THENCE RUNNING (3) SOUTHEASTERLY PARALLEL WITH
CARTERET AVENUE, TO, THROUGH AND BEYOND THE CENTER OF A PARTY WALL
STANDING PARTLY ON THE PREMISES HEREBY DESCRIBED AND CONVEYED AND
PARTLY ON THE PREMISES NEXT ADJOINING NORTHEASTERLY THERETO, 100 FEET
TO THE NORTHWESTERLY LINE OF CLERK STREET: THENCE RUNNING (4)
SOUTHWESTERLY ALONG THE NORTHWESTERLY LINE OF CLERK STREET 18.75 FEET
TO THE POINT OR PLACE OF BEGINNING.

THE ABOVE PREMISES IS ALSO KNOWN AS LOT 26.B IN BLOCK 1999 ON THE
OFFICIAL TAX MAP OF THE CITY OF JERSEY CITY.  (REPORTED FOR INFORMATION
ONLY)

BK5126PG058



Prepared By:
RICHARD J. PEPSNY, ESQ.

## DEED

This Deed is made on March 31, 1997

BETWEEN

Cristo Property Management

a corporation organized and existing under the laws of the State of New Jersey, with its principal office at 809 Highway 36, Union Beach, New Jersey,

AND                                                    referred to as Grantor,

Anthony W. Faria, Jr.

whose post office address is about to be c/o Capital Assets, 10 Bergen Place, Red Bank, NJ

The word "Grantee" shall mean all grantees listed above.                    referred to as Grantee.

Transfer of ownership.    The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee.    This transfer is made for the sum of One Hundred Seventy Six Thousand and 00/100 (176,000.00). The Grantor acknowledges receipt of this money.

Tax Map Reference.    (N.J.S.A. 46:15-2.1)  Municipality of Jersey City
Block: 1999    Lot: 26B                Account No.
☐  No property tax identification number is available on the date of this Deed. (Check box if applicable).

Property.  The property consists of the land and all the buildings and structures on the land in the of Jersey, City, County of Hudson and State of New Jersey.  The legal description is:

SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION
COMMONLY KNOWN AS: 181 Clerk Street, Jersey City, NJ

Being the same premises conveyed to the Grantor herein by deed from Christina VanGyia , dated February 28, 1997 and recorded on _____ in the H..son county Clerk/Register's office in Deed Book _____ at Page _____

DK5130PG220



**COMMONWEALTH LAND**
**TITLE INSURANCE COMPANY**
A Reliance Group Holdings Company

TITLE INSURANCE COMMITMENT

File No. CT-19921(a)

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Jersey City, County of Hudson County and state of New Jersey, being more particularly described as follows:

Beginning at a point in the westerly line of Clerk Street distant 150.00 feet northerly from the intersection formed by said westerly line of Clerk Street with the northerly line of Carteret Avenue; and running thence

1.  Westerly and parallel to said northerly line of Carteret Avenue, North 47 degrees 30 minutes West, 100.00 feet to a point; thence

2.  Northerly and parallel to said westerly line of Clerk Street, North 42 degrees 30 minutes East, 18.75 feet to a point opposite a certain party wall standing partly on the premises herein being described and partly on the premises adjoining same to the North and running thence

3.  Easterly to, through and beyond said party wall, and parallel to said northerly line of Carteret Avenue, South 47 degrees 30 minutes East 100.00 feet to a point in said westerly line of Clerk street; thence

4.  Southerly and along said westerly line of Clerk Street, South 42 degrees 30 minutes West, 18.75 feet to the point or place of Beginning.

Together with so much of the lot of land northeasterly of the above described lot of land as is covered by the rear portion of the most northeasterly well of the house upon said premises about 37 feet and 6 inches from the northwesterly line of Clerk Street to the end of said house a distance of about 39 feet; said strip of land so covered by said wall being about four inches in width.

The above description is in accordance with a survey prepared by Manalio & Manalio, P.L.S., dated March 7, 1986.

Also known and designated as 26B in Block 1999 on the Tax Map of the City of Jersey City.

Issued By:
**COASTAL TITLE AGENCY, INC.**
P.O. Box 730, 31 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660, (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

BK 5130 PG 221

**Promises By Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgement to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor's proper corporate officers as of the date at the top of the first page. Its proper corporate seal is affixed.

Cristo Property Management

By:

William J. Kane, President

State of New Jersey,

ss:

County of Middlesex

I CERTIFY that on March 31, 1997, William J. Kane personally appeared before me and this person acknowledged, under oath, to my satisfaction, that:

(a) this person is the President of Cristo Property Management , the corporation named in this deed, and was fully authorized to and did execute this deed on its behalf;

(b) this deed was made for 176,000.00 as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5).

Signed and sworn before me on March 31, 1997

LORRAINE E. KING
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

NB-Deed-Bargain and Sale
Corp. to Grantor's Act-Corp. to Ind. or Corp.

BK5130 PG222



003604
RECEIVED

97 APR 22 AM 11: 26

14488

Prepared by

LORRAINE E. KING

## DEED

*This Deed,* made this 4th day of *April,* 1997

*Between*   ANTHONY W. FANIA, JR.
located at   181 CLERK STREET, JERSEY CITY, NJ

herein designated as the Grantor,

*And*   ANTHONY W. FANIA, JR. and CAPITAL ASSETS PROPERTY
MANAGEMENT & INVESTMENT, CO., INC.

ANTHONY W. FANIA, JR. AS TO 40% INTEREST AND
CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT, CO.,
INC. AS TO 60% INTEREST
located at 10 WEST BERGEN PLACE, SUITE 201, RED BANK, NEW JERSEY  07701
herein designated as the Grantee;

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

**Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of)
the property described below to the Grantee. This transfer is made for the sum of UNDER
ONE HUNDRED DOLLARS. The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (N.J.S.A. 46:15-1.1) Municipality of JERSEY CITY
Block  1999  Lot   26B   Account No.

____ No Property tax identification number is available on the date of this deed. (Check this
box if applicable.)

**Property.**  The Property consists of the land and all the buildings and
structures on the land in the CITY of JERSEY CITY, County of HUDSON the State
of New Jersey, and is commonly known as 181 CLERK STREET, JERSEY CITY,
NEW JERSEY. The legal description is:

SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION.

THE GRANTOR WILL WARRANT, SECURE AND FOREVER DEFEND THE
TITLE TO THE SUBJECT PROPERTY.

BK5130PG223

Anthony M. Cicalese, Esq.

1845 - Affidavit of Consideration
RTF-1 (Rev. 1/1/86)
8/00

**STATE OF NEW JERSEY
AFFIDAVIT OF CONSIDERATION OR
EXEMPTION**
(c. 49, P.L. 1968)

ALL STATE Legal, A Division of
ALL-STATE® International, Inc.
908-272-0800

**PARTIAL EXEMPTION**
(c. 176, P.L. 1975)

To Be Recorded With Deed Pursuant to c. 49, P.L. 1968, as amended by c. 225, P.L. 1985 (N.J.S.A. 46:15-5 et seq.)

**STATE OF NEW JERSEY**                    SS.
**COUNTY OF  MONMOUTH**

FOR RECORDER'S USE ONLY
Consideration $
Realty Transfer Fee $
Date

**(1) PARTY OR LEGAL REPRESENTATIVE**   (See Instructions #3, 4 and 5 on reverse side.)

Deponent ANTHONY W. FANIA, JR. , being duly sworn according to law upon his/her oath

deposes and says that he/she is the DEPONENT                                   in a deed dated 4-1-97

transferring real property identified as Block No. 1999     Lot No. 20B

located at   181 CLERK STREET, JERSEY CITY, HUDSON                                and annexed hereto.

**(2) CONSIDERATION**   (See Instruction #6.)

Deponent states that, with respect to deed hereto annexed, the actual amount of money and the monetary value of any other thing of value constituting the entire compensation paid or to be paid for the transfer of title to the lands, tenements or other realty, including the remaining amount of any prior mortgage to which the transfer is subject or which is to be assumed and agreed to be paid by the grantee and any other lien or encumbrance thereon not paid, satisfied or removed in connection with the transfer of title is $

**(3) FULL EXEMPTION FROM FEE**   Deponent claims that this deed transaction is fully exempt from the Realty Transfer Fee imposed by c.49, P.L. 1968, for the following reason(s): Explain in detail. (See Instruction #7.)

CONSIDERATION IS UNDER ONE HUNDRED DOLLARS.

**(4) PARTIAL EXEMPTION FROM FEE**

NOTE: All boxes below apply to grantor(s) only. ALL BOXES IN APPROPRIATE CATEGORY MUST BE CHECKED. Failure to do so will void claim for partial exemption. (See Instructions #8 and #9.)

Deponent claims that this deed transaction is exempt from the increased portion of the Realty Transfer Fee imposed by c. 176, P. L. 1975 for the following reason(s):

**A)   SENIOR CITIZEN**   (See Instruction #8.)
☐ Grantor(s) 62 yrs. of age or over.
☐ One or two-family residential premises.
☐ Owned and occupied by grantor(s) at time of sale.
☐ No joint owners other than spouse or other qualified exempt owners.

**B)   BLIND**   (See Instruction #8.)
☐ Grantor(s) legally blind. *
☐ One- or two-family residential premises.
☐ Owned and occupied by grantor(s) at time of sale.
☐ No joint owners other than spouse or other qualified exempt owners.

**DISABLED**   (See Instruction #8.)
☐ Grantor(s) permanently and totally disabled. *
☐ One or two-family residential premises.
☐ Receiving disability payments.
☐ Owned and occupied by grantor(s) at time of sale.
☐ Not gainfully employed.
☐ No joint owners other than spouse or other qualified exempt owners.

* IN THE CASE OF HUSBAND AND WIFE, ONLY ONE GRANTOR NEED QUALIFY.

**C)   LOW AND MODERATE INCOME HOUSING**   (See Instruction #8.)
☐ Affordable According to HUD Standards.
☐ Meets Income Requirements of Region.
☐ Reserved for Occupancy.
☐ Subject to Resale Controls.

**D)   NEW CONSTRUCTION**   (See Instruction #8.)
☐ Entirely new improvement.
☐ Not previously used for any purpose.
☐ Not previously occupied.

Deponent makes this Affidavit to induce the County Clerk or Register of Deeds to record the deed and accept the fee submitted herewith in accordance with the provisions of c. 49, P.L. 1968.

Subscribed and sworn to before me this
4 day of April, 1997

ANTHONY W. FANIA, JR.           ANTHONY W. FANIA, JR.

181 CLERK STREET
JERSEY CITY, NJ                 SAME

FOR OFFICIAL USE ONLY This space for use of County Clerk or Register of Deeds.
Instrument Number        County
Deed Number        Book
Deed Dated        Date Recorded

IMPORTANT - BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE HEREOF.
This format is prescribed by the Director, Division of Taxation in the Department of the Treasury, as required by law, and may not be altered without the approval of the Director.
ORIGINAL - To be retained by County.
DUPLICATE - To be forwarded by County to Division of Taxation on partial exemption from fee (N.J.A.C. 18:16 - 8.12)
TRIPLICATE - Is your file copy.

BK5130PG224



**COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company**

TITLE INSURANCE COMMITMENT

File No. CT-1992l(a)

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Jersey City, County of Hudson County and state of New Jersey, being more particularly described as follows:

Beginning at a point in the westerly line of Clerk Street distant 150.00 feet northerly from the intersection formed by said westerly line of Clerk Street with the northerly line of Carteret Avenue; and running thence

1. Westerly and parallel to said northerly line of Carteret Avenue, North 47 degrees 30 minutes West, 100.00 feet to a point; thence

2. Northerly and parallel to said westerly line of Clerk Street, North 42 degrees 30 minutes East, 18.75 feet to a point opposite a certain party wall standing partly on the premises herein being described and partly on the premises adjoining same to the North and running thence

3. Easterly to, through and beyond said party wall, and parallel to said northerly line of Carteret Avenue, South 47 degrees 30 minutes East 100.00 feet to a point in said westerly line of Clerk street; thence

4. Southerly and along said westerly line of Clerk Street, South 42 degrees 30 minutes West, 18.75 feet to the point or place of Beginning.

Together with so much of the lot of land northeasterly of the above described lot of land as is covered by the rear portion of the most northeasterly well of the house upon said premises about 37 feet and 6 inches from the northwesterly line of Clerk Street to the end of said house a distance of about 39 feet; said strip of land so covered by said wall being about four inches in width.

The above description is in accordance with a survey prepared by Manalio & Manalio, P.L.S., dated March 7, 1986.

Also known and designated as 26B in Block 1999 on the Tax Map of the City of Jersey City.

Issued By:
**COASTAL TITLE AGENCY, INC.**
P.O. Box 749, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

BK5130PG225

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to Grantor's acts" (*N.J.S.A.* 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor who has hereunto set their hand and seal the day and year first above written.

Signed, Sealed and Delivered
in the presence of

_____          _____
Anthony Cicalese                         ANTHONY W. FANIA, JR.

STATE OF NEW JERSEY        }
                           }  SS
COUNTY OF MONMOUTH         }

**Be it Remembered,** that on *April 4* , 1997, before me, the subscriber, a Notary Public of New Jersey, personally appeared ANTHONY W. FANIA, JR., who I am satisfied, is the person named in and who executed the within Instrument, and thereupon he acknowledged that he signed, sealed and delivered the same as his act and deed, for the uses and purposes therein expressed, and that the full and actual consideration paid or to be paid for the transfer of title to realty evidenced by the within deed, as such consideration is defined in N.J.S.A. 46:15-5, is UNDER ONE HUNDRED DOLLARS.

_____
Anthony Cicalese
Attorney at Law
State of New Jersey

BK5130PG226



SEE Mortgage
REC
NSTR# 135715
BOOK 1121
PAGE 221

026644
RECEIVED

14488
97 APR 22 AM 11: 22

Barbara A. Donnelly
HUDSON COUNTY
REGISTER

Loan Number : 626827

[SPACE ABOVE THIS LINE FOR RECORDING DATA]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on _____ March    31, 1997
The mortgagor is ANTHONY W. FANIA JR., UNMARRIED
("Borrower"). This Security Instrument is given to
NATIONAL HOME FUNDING, Inc.,
which is organized and existing
under the laws of  THE STATE OF NEW JERSEY   , and whose principal office and mailing address is
3443 HIGHWAY 9-N HOLIDAY PLAZA, FREEHOLD, NJ 07728
("Lender"). Borrower owes Lender the principal sum of
One Hundred Thirty-Two Thousand Dollars And 00/100
Dollars (U.S.$    132,000.00 ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
April    1,   2012    . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security
Instrument and the Note secured hereby are subject to modification including changes in the interest rate, the due date,
and other terms and conditions, as defined in New Jersey Laws 1985, ch. 353, § 1 et seq, and upon such modification,
shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security
Instrument is $    132,000.00    . For these purposes, Borrower does hereby mortgage, grant and convey to Lender the
following described property located in  HUDSON    County, New Jersey
SEE LEGAL DESCRIPTION ATTACHED HERETO

which has the address of 161 CLERK ST          JERSEY CITY
                          [Street]              [City]
New Jersey    07305    ("Property Address");     * THE NOTE THIS SECURITY INSTRUMENT SECURES CONTAINS
            [Zip Code]                           PROVISIONS FOR A BALLOON PAYMENT.  THE ENTIRE PRINCIPAL
                                                 BALANCE OF THE LOAN AND UNPAID INTEREST IS PAYABLE
NEW JERSEY-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   IN FULL AT MATURITY.
ITEM 1834 (9612)                                 Form 3031  9/90 (page 1 of 6 pages)

BK 6199PG0001

407 - 200
412 - 49

**COMMONWEALTH LAND
TITLE INSURANCE COMPANY**
A Reliance Group Holdings Company

TITLE INSURANCE COMMITMENT

File No. CT-19921(s)

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Jersey City, County of Hudson County and state of New Jersey, being more particularly described as follows:

Beginning at a point in the westerly line of Clerk Street distant 150.00 feet northerly from the intersection formed by said westerly line of Clerk Street with the northerly line of Carteret Avenue; and running thence

1.  Westerly and parallel to said northerly line of Carteret Avenue, North 47 degrees 30 minutes West, 100.00 feet to a point; thence

2.  Northerly and parallel to said westerly line of Clerk Street, North 42 degrees 30 minutes East, 18.75 feet to a point opposite a certain party wall standing partly on the premises herein being described and partly on the premises adjoining same to the North and running thence

3.  Easterly to, through and beyond said party wall, and parallel to said northerly line of Carteret Avenue, South 47 degrees 30 minutes East 100.00 feet to a point in said westerly line of Clerk street; thence

4.  Southerly and along said westerly line of Clerk Street, South 42 degrees 30 minutes West, 18.75 feet to the point or place of Beginning.

Together with so much of the lot of land southeasterly of the above described lot of land as is covered by the rear portion of the most northeasterly well of the house upon said premises about 37 feet and 6 inches from the northwesterly line of Clerk Street to the end of said house a distance of about 39 feet said strip of land so covered by said wall being about four inches in width.

The above description is in accordance with a survey prepared by Manalio & Manalio, P.L.S., dated March 7, 1986.

Also known and designated as 26B in Block 1999 on the Tax Map of the City of Jersey City.

Issued By:
**COASTAL TITLE AGENCY, INC.**
P.O. Box 740, 21-W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660 (800) 521-0378 (908) 775-5543 FAX P(908) 308-1881

BK6199PG002

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the escrow items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender

BK6199PG0000

Form 3031 9/90 (page 2 of 6 pages)

requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any

Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT — Uniform Covenants 9/90 (page 3 of 6 pages)

BK 6199PG004



condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants 9/90    (page 4 of 6 pages)

BK6199PG0005



specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees and (d) takes such action as Lender may reasonably require to ensure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BK6199PG006

Form 3031 9/90 (page 5 of 6 pages)

LOAN # 626527

# BALLOON RIDER

(Full Repayment Required at Maturity)

THIS BALLOON RIDER is made this 31ST day of March , 1997 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to NATIONAL HOME FUNDING, Inc.,

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

181 CLERK ST, JERSEY CITY, NJ 07307

(Property Address)

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

The Note is a Balloon Note which means that the amount of my monthly payments is insufficient to repay the Note in full by Maturity. Therefore, the final payment will be significantly larger than the other payments under the Note.

I understand that the Lender is under no obligation to refinance the Note or to modify the Note or reset the Note Rate or to extend the Note Maturity Date or the Maturity Date of this Security Instrument, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

I further understand that should I not repay the Note on or before the Maturity Date, I will be in default, and the Lender will have the right to exercise all of its rights against me because of my default, including the right to foreclose of the Security Instrument, or other remedies permitted by law.

BY SIGNING BELOW, BORROWER accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)
ANTHONY W. FARIA JR.                -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

Balloon Rider                              (9-8-95) AC-32200-11

BK6199PG0007

## 1-4 FAMILY RIDER
### Assignment of Rents

Loan Number: 626827

THIS 1-4 FAMILY RIDER is made this 31st day of March, 1997, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

NATIONAL HOME FUNDING, Inc.,

(the "Lender")

of the same date and covering the property described in the Security Instrument and located at:

181 CLERK ST, JERSEY CITY, NJ 07307
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property".

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Uniform Covenant 18 is deleted.

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument                                Form 3170 3/93 (page 1 of 2 pages)
ITEM 1790 (9410)

BK6199PG0008

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted.  All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

G. ASSIGNMENT OF LEASES. Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.  Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.  Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and; (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.  This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this 1-4 Family Rider.

ANTHONY M. FANIA JR.                         (Seal)                                        (Seal)
                                        -Borrower                                        -Borrower

                                        (Seal)                                        (Seal)
                                        -Borrower                                        -Borrower

Form 3170 9/90 (page 2 of 2 pages)

BK6199PG009

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider ☐ Condominium Rider ☒ 1-4 Family Rider

☐ Graduated Payment Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider

☒ Balloon Rider ☐ Rate Improvement Rider ☐ Second Home Rider

☒ Other(s) [specify]  LEGAL DESCRIPTION

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____

_____   ANTHONY W. FANIA JR.   (Seal)
                                                             -Borrower
Anthony Cicalese
                                      _____ (Seal)
                                                             -Borrower

                                      _____ (Seal)
                                                             -Borrower

                                      _____ (Seal)
                                                             -Borrower

STATE OF NEW JERSEY,          Morris                County ss:

On this  31st   day of   March   1997  before me, the subscriber, personally appeared
ANTHONY W. FANIA JR.,

                         who, being by me duly sworn (or affirmed)

I,        the person(s) named in and who executed the within instrument, and thereupon        who, he satisfied,
acknowledged that   he    signed, sealed and delivered the same as   HIS           act and
deed, for the purposes therein expressed.

                                      Anthony Cicalese
                                      Attorney at Law       Notary Public
                                      State of New Jersey

This instrument was prepared by:  MARY ANN MICHALOWSKI

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.
Witness:

_____

_____   ANTHONY W. FANIA JR.   (Seal)
Anthony Cicalese                                             -Borrower

                                      _____ (Seal)
                                                             -Borrower

                                      _____ (Seal)
                                                             -Borrower

BK6199PG010                          Form 3031 9/90 (page 6 of 6 pages)

FT/NT05151

# EXHIBIT F

103—DEED - BARGAIN AND SALE (Covenant as to Gra
IND. TO IND. OR CORP. —Plain Language
(Rev. June 1992)

Copyright© 1992 by ALL-STATE LEGAL SUPPLY CO.
One Commerce Drive, Cranford, NJ 07016

## DEED

This Deed is made on *Dec 27,* , 19 96

Prepared by: (Print signer's name below signature)



Edward A. Reilly, Jr.

BETWEEN

ELOISE RAGLAND, surviving tenant by the entirety,

whose address is  18 Coral Way, Neptune, NJ 07753

referred to as the Grantor,

AND

GJL LIMITED

COUNTY OF MONMOUTH
CONSIDERATION 21,506
RTF 75.2 add'l RTF
DATE 1-30-97 BY WOM

whose post office address is  444 Ocean Avenue, Long Branch, NJ 07740

referred to as the Grantee.

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

Transfer of Ownership. The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of  TWENTY ONE THOUSAND FIVE HUNDRED ($21,500.00) DOLLARS

The Grantor acknowledges receipt of this money.

Tax Map Reference. (N.J.S.A. 46:15-1.1) Municipality of  Asbury Park
Block No.  68          Lot No.  3          Account No.
☐  No property tax identification number is available on the date of this Deed. (Check box if applicable).

Property. The property consists of the land and all the buildings and structures on the land in the City of Asbury Park
County of Monmouth     and State of New Jersey. The legal description is:

KNOWN as Part of Lot No. 261 on Map of West Asbury Park, made by W.J. DeNyse, C.E. and more particularly described as follows:

BEGINNING at a point in the westerly line of Comstock Street distant 57 feet southwardly from the southwest corner of Bangs Avenue and Comstock Street; thence (1) southwardly along the westerly line of said Comstock Street, 25 feet; thence (2) westwardly and at right angles to said Comstock Street, 50 feet; thence (3) northwardly parallel with said Comstock Street, 25 feet; thence (4) eastwardly and again at right angles to said Comstock Street 50 feet to the point or place of Beginning.

BEING also known as Block 68, Lot 3 on the tax map of the City of Asbury Park and commonly known as 303 Comstock Street, Asbury Park, NJ

BEING the same premises conveyed by Clyde C. Sargent, single, to JAMES RAGLAND and ELOISE RAGLAND, his wife, and recorded in the Monmouth County Clerk's Office in Book 4346, Page 26 of Deeds.

The said James L. Ragland died testate in Monmouth County on March 29, 1994.

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997012834
RECORDED ON
Jan 30, 1997
2:08:10 PM
BOOK:OR-5572 PG:114
Total Pages: 3

COUNTY RECORDING FEES $20.00
DEDICATED TRUST FEES $2.00
FUND, COMMISSION
COUNTY REALTY TRANSFER FEES $21.52
STATE REALTY TRANSFER FEES $53.73
TOTAL $97.25

FT/NT01649

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.** The Grantor signs this Deed as of the date at the top of the first page.

Witnessed by:

_Eloise Ragland_ _____ (Seal)
ELOISE RAGLAND

_____ (Seal)

STATE OF NEW JERSEY, COUNTY OF MONMOUTH            SS.:
I CERTIFY that on _Dec. 27_ , 19_96_ ,
ELOISE RAGLAND,

                        personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a) was the maker of the attached deed;
(b) executed this deed as his or her own act; and,

(c) made this Deed for $21,500.00      as the full and actual consideration paid or to be paid for the transfer of title.
(Such consideration is defined in N.J.S.A. 46:15-5.)

_Florence E. Reilly_
(Print name and title below signature)
Florence E. Reilly
Notary Public of NJ
My Comm. expires 8/21/97

FT/NT01650

|  | *Dated:* | *, 19* |
|---|---|---|
| *D E E D* | | |
| | *Record and return to:* | |
| TO          *Grantor,* | LAW OFFICES OF<br>MICHAEL ALFIERI, ES<br>187 Route 34, Suite 1<br>Matawan, NJ 07747 | |
| | *Grantee.* | |

FT/NT01651

**COASTAL TITLE AGENCY, INC.**
21 WEST MAIN STREET
P.O. BOX 740
FREEHOLD, NJ 07728



Prepared By: RICHARD J. PEPSNY, ESQ.

**DEED**

This Deed is made on December 30, 1996

BETWEEN

G.J.L. LIMITED ,



COUNTY OF MONMOUTH
CONSIDERATION 100,14 ~
RTF 35 25   add'l RTF
DATE 4/7/97   BY

a corporation organized and existing under the laws of the State of New Jersey, with its principal office at 444 Ocean Avenue, Long Branch, New Jersey,

referred to as Grantor,

AND

Susan Viscardo , single

whose post office address is about to be c/o Capital Assets, 10 Bergen Place, Red Bank, NJ

referred to as Grantee.

The word "Grantee" shall mean all grantees listed above.

Transfer of Ownership.   The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee.   This transfer is made for the sum of One Hundred Thousand Three Hundred Fourteen Dollars ($100,.14.00).   The Grantor acknowledges receipt of this money.

Tax Map Reference.   (N.J.S.A.46:15-2.1) Municipality of Asbury Park
Block: 68   Lot: 3                            Account No.
☐ No property tax identification number is available on the date of this Deed.  (Check box if applicable).

Property.  The property consists of the land and all the buildings and structures on the land in the CITY of Asbury Park, County of Monmouth and State of New Jersey. The legal description is:
SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION
COMMONLY KNOWN AS: 303 Comstock Street, Asbury Park, NJ

Being the same premises conveyed to the Grantor herein by deed from Eloise Ragland , surviving tenant by the entirety, dated December 29, 1996 and recorded on 1/30/97 in the Monmouth County Clerk/Register's office in Deed Book 5572 at Page 114 .

102-Deed-Bargain and Sale
Cov. to Grantor's Act-Corp. to Ind. or Corp.

5588~ 480
4/7/97

FT/NT01652

**COMMONWEALTH LAND**
**TITLE INSURANCE COMPANY**
**A Reliance Group Holdings Company**

**TITLE INSURANCE COMMITMENT**

Commitment No.

File No. CT-18848(A)

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Asbury Park, County of Monmouth and state of New Jersey, being more particularly described as follows:

Known as part of Lot No. 261 on Map of West Asbury Park, made by W.H. DeNyse, C.E. and more particularly described as follows:

Beginning at a point in the westerly line of Comstock Street distant 57 feet southwardly from the southwest corner of Bangs Avenue and Comstock Street; thence

1. Southwardly along the westerly line of said Comstock Street, 25 feet; thence

2. Westwardly and at right angles to said Comstock Street, 50 feet; thence

3. Northwardly parallel with said Comstock Street, 25 feet; thence

4. Eastwardly and again at right angles to said Comstock Street 50 feet to the point or place of Beginning.

Being also known as Block 68, Lot 3 on the tax map of the City of Asbury Park and commonly known as 303 Comstock Street, Asbury Park, New Jersey.

**Issued By:**
**COASTAL TITLE AGENCY, INC.**
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FT/NT01653

**Promises By Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgement to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor's proper corporate officers as of the date at the top of the first page. Its proper corporate seal is affixed.

G.J.L. LIMITED

By: _____
William J. Kane, president

State of New Jersey      :
                         ss:
County of Middlesex      :

I CERTIFY that on December 30, 1996, William J. Kane personally appeared before me and this person acknowledged under oath, to my satisfaction, that:
  (a) this person is the president of G.J.L. LIMITED      , the corporation named in this deed, and was fully authorized to and did execute this deed on its behalf;
  (b) this deed was made for $100,.14.00 as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5).

Signed and sworn before me on
December 30, 1996

RICHARD J. PEPSNY, ESQ.
ATTORNEY AT LAW
STATE OF NEW JERSEY

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY
INSTRUMENT NUMBER
1997037628
RECORDED ON
Apr 07, 1997
2:46:54 PM
BOOK:DB-5588 PG:480
Total Pages: 3

COUNTY RECORDING   $20.00
FEES
DEDICATED TRUST    $4.00   Deed-Bargain and Sale
FUND COMMISSION            Cov. to Grantor's Act-Corp. to Ind. or Corp.
COUNTY REALTY      $100.60
TRANSFER FEES

FT/NT01654

4

**COASTAL TITLE AGENCY, INC.**

21 WEST MAIN STREET

P.O. BOX 740

FREEHOLD, NJ 07728

Prepared by *Lorraine King*

LORRAINE E. KING



069608

COUNTY OF MONMOUTH

CONSIDERATION _____

RTF _____ add'l RTF ____

DATE 4/7/97 BY ____

# 𝔇𝔢𝔢𝔡

## This Deed, made this 6TH day of JANUARY, 1997

**Between** SUSAN VISCARDO
located at 10 WEST BERGEN PLACE, SUITE 104, RED BANK, NJ 07701
herein designated as Grantor

**And** SUSAN VISCARDO and CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT, CO., INC.

SUSAN VISCARDO AS TO 40% INTEREST and
CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT, CO., INC. AS TO
60% INTEREST

located at 10 WEST BERGEN PLACE, SUITE 104, RED BANK, NJ 07701 herein designated as the Grantee;

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

**Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of **UNDER ONE HUNDRED DOLLARS.** The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (*N.J.S.A.* 46:15-1.1) Municipality of **ASBURY PARK**
Block 68        Lot 3        Account No.

____ No Property tax identification number is available on the date of this Deed. (Check this box if applicable.)

**Property.** The Property consists of the land and all the buildings and structures on the land in the **CITY OF ASBURY PARK** County of **MONMOUTH**, the State of New Jersey, and is commonly known as **303 COMSTOCK AVENUE, ASBURY PARK, NEW JERSEY** The legal description is:

**SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION.**

THE GRANTOR WILL WARRANT, SECURE AND FOREVER DEFEND THE TITLE TO THE SUBJECT PROPERTY.

5588-489
4/7/97

FT/NT01655

**COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company**

**TITLE INSURANCE COMMITMENT**

Commitment No.

File No. CT-18848(A)

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Asbury Park, County of Monmouth and state of New Jersey, being more particularly described as follows:

Known as part of Lot No. 261 on Map of West Asbury Park, made by W.H. DeNyse, C.E. and more particularly described as follows:

Beginning at a point in the westerly line of Comstock Street distant 57 feet southwardly from the southwest corner of Bangs Avenue and Comstock Street; thence

1.  Southwardly along the westerly line of said Comstock Street, 25 feet; thence

2.  Westwardly and at right angles to said Comstock Street, 50 feet; thence

3.  Northwardly parallel with said Comstock Street, 25 feet; thence

4.  Eastwardly and again at right angles to said Comstock Street 50 feet to the point or place of Beginning.

Being also known as Block 68, Lot 3 on the tax map of the City of Asbury Park and commonly known as 303 Comstock Street, Asbury Park, New Jersey.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660   (800) 521-0378   (908) 775-5543   FAX #(908) 308-1881

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997037629
RECORDED ON
Apr 07, 1997
2:46:55 PM
BOOK10B-5588 PG:489
Total Pages: 4

| | |
|---|---|
| COUNTY RECORDING FEES | $22.00 |
| DEDICATED TRUST FUND COMMISSION | $2.00 |
| TOTAL | $24.00 |

FT/NT01656

ALL-STATE LEGAL SUPPLY CO.
One Commerce Drive, Cranford, N. J. 07016

**STATE OF NEW JERSEY**
**AFFIDAVIT OF CONSIDERATION OR EXEMPTION**
(c. 49, P.L. 1968)
or
**PARTIAL EXEMPTION**
(c. 176, P. L. 1975)

To Be Recorded With Deed Pursuant to c. 49, P.L. 1968, as amended by c. 225, P.L. 1985 (N.J.S.A. 46:15-5 et seq.)

VST - 2

| STATE OF NEW JERSEY | | FOR RECORDER'S USE ONLY |
|---|---|---|
| COUNTY OF MONMOUTH | } ss. | Consideration $ |
| | | Realty Transfer Fee $ ____ 4emp_____ |
| | | Date 4/7/97 By ___ |

*Use symbol "C" to indicate that fee is exclusively for county use.

**(1) PARTY OR LEGAL REPRESENTATIVE** (See Instructions #3, 4 and 5 on reverse side)

Deponent, ____SUSAN VISCARDO____ being duly sworn according to law upon his/her oath deposes and

says that he/she is the ____GRANTOR____

in a deed dated ____JANUARY 6, 1997____, transferring real property identified as Block No. ____68____

Lot No. ____3____ located at ____303 COMSTOCK AVENUE, ASBURY PARK, N.J.____

____MONMOUTH COUNTY____ and annexed hereto.

**(2) CONSIDERATION** (See Instruction #6)

Deponent states that, with respect to deed hereto annexed, the actual amount of money and the monetary value of any other thing of value constituting the entire compensation paid or to be paid for the transfer of title to the lands, tenements or other realty, including the remaining amount of any prior mortgage to which the transfer is subject or which is to be assumed and agreed to be paid by the grantee and any other lien or encumbrance thereon not paid, satisfied or removed in connection with the transfer of title is $ ____

**(3) FULL EXEMPTION FROM FEE**   Deponent claims that this deed transaction is fully exempt from the Realty Transfer Fee imposed by c.49, P.L. 1968, for the following reason(s). Explain in detail. (See Instruction #7.) Mere reference to exemption symbol is not sufficient.

____CONSIDERATION UNDER ONE HUNDRED DOLLARS____

**(4) PARTIAL EXEMPTION FROM FEE**   NOTE: All boxes below apply to grantor(s) only. ALL BOXES IN APPROPRIATE CATEGORY MUST BE CHECKED. Failure to do so will void claim for partial exemption. (See Instructions #8 and #9)

Deponent claims that this deed transaction is exempt from the increased portion of the Realty Transfer Fee imposed by c. 176, P.L. 1975 for the following reason(s):

a) **SENIOR CITIZEN** (See Instruction #8)
☐ Grantor(s) 62 yrs. of age or over.*
☐ One or two-family residential premises
☐ Owned and occupied by grantor(s) at time of sale.
☐ No joint owners other than spouse or other qualified exempt owners.

b) **BLIND** (See Instruction #8)
☐ Grantor(s) legally blind.*
☐ One or two-family residential premises.
☐ Owned and occupied by grantor(s) at time of sale.
☐ No joint owners other than spouse or other qualified exempt owners.

**DISABLED** (See Instruction #8)
☐ Grantor(s) permanently and totally disabled.*
☐ One or two-family residential premises.
☐ Receiving disability payments.
☐ Owned and occupied by grantor(s) at time of sale.
☐ Not gainfully employed.
☐ No joint owners other than spouse or other qualified exempt owners.

*IN THE CASE OF HUSBAND AND WIFE, ONLY ONE GRANTOR NEED QUALIFY.

c) **LOW AND MODERATE INCOME HOUSING** (See Instruction #8)
☐ Affordable According to H.U.D. Standards.
☐ Meets Income Requirements of Region.
☐ Reserved for Occupancy.
☐ Subject to Resale Controls.

d) **NEW CONSTRUCTION** (See Instruction #9)
☐ Entirely new improvement.
☐ Not previously used for any purpose.
☐ Not previously occupied.

Deponent makes this Affidavit to induce the County Clerk or Register of Deeds to record the deed and accept the fee submitted herewith in accordance with the provisions of c. 49, P.L. 1968.

Subscribed and Sworn to before me
this ____6th____
day of ____JANUARY____ 19__

____Susan Viscardo____
Name of Deponent (Print above line)

____303 COMSTOCK AVENUE____
____ASBURY PARK, N.J. 07712____
Address of Deponent

____SUSAN VISCARDO____
Name of Grantor (Print above line)

____SAME____
Address of Grantor at time of sale

____LORRAINE B. KING____
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

**FOR OFFICIAL USE ONLY** This space for use of County Clerk or Register of Deeds.
Instrument Number _____ County _____
Deed Number _____ Book _____ Page _____
Deed Dated _____ Date Recorded _____

**IMPORTANT - BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE HEREOF.**
This form is prescribed by the Director, Division of Taxation in the Department of the Treasury, as required by law, and may not be altered or amended without the approval of the Director.

FT/NT01657

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to Grantor's acts" (*N.J.S.A.* 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor who has hereunto set their hand and seal the day and year first above written.

Signed, Sealed and Delivered
in the presence of

_____        _____
                                        SUSAN VISCARDO


STATE OF NEW JERSEY          }
                             }   SS
COUNTY OF MONMOUTH           }

**Be it Remembered,** that on January 6 , 1997 , before me, the subscriber, a Notary Public of New Jersey, personally appeared SUSAN VISCARDO, who I am satisfied, is the person named in and who executed the within Instrument, and thereupon she acknowledged that she signed, sealed and delivered the same as her act and deed, for the uses and purposes therein expressed, and that the full and actual consideration paid or to be paid for the transfer of title to realty evidenced by the within deed, as such consideration is defined in N.J.S.A. 46:15-5, is UNDER ONE HUNDRED DOLLARS.

                            LORRAINE E. KING
                       NOTARY PUBLIC OF NEW JERSEY
                     My Commission Expires Feb. 21, 2001

FT/NT01658

**COASTAL TITLE AGENCY, INC.**

21 WEST MAIN STREET

P.O. BOX 740

FREEHOLD, NJ 07728

069607

Loan Number : 623846

[SPACE ABOVE THIS LINE FOR RECORDING DATA]

# MORTGAGE

**THIS MORTGAGE (" Security Instrument") is given on**       December  30, 1996
The mortgagor is  SUSAN VISCARDO

("Borrower"). This  Security Instrument is given to

NATIONAL HOME FUNDING

,which is organized and existing

under the laws of   THE STATE OF NEW JERSEY            , and whose principal office and mailing address is
3443 HIGHWAY 9-N HOLIDAY PLAZA, FREEHOLD, NJ 07728

("Lender"). Borrower owes Lender the principal sum of

**Seventy Thousand Dollars And 00/100**

Dollars (U.S.$      70,000.00 ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
January   1,  2012   . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security
Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date,
and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, § 1 et seq., and upon such modification,
shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security
Instrument is $     70,000.00  . For these purposes, Borrower does hereby mortgage, grant and convey to Lender the
following described property located in   MONMOUTH                                    County, New Jersey:
SEE LEGAL DESCRIPTION ATTACHED HERETO

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
199703763☐
RECORDED ON
Apr 07, 1997
2:46:5☐ PM
BOOK#MB-6165 PG:62☐
Total Pages: 10

COUNTY RECORDING   $31.00
FEES
DEDICATED TRUST    $2.00
FUND COMMISSION which has the address of  303 COMSTOCK AVENUE
TOTAL              $33.00                        [Street]

New Jersey       07712       ("Property Address");
                 [Zip Code]

ASBURY PARK
                                                        [City]

* THE NOTE THIS SECURITY INSTRUMENT SECURES CONTAINS
PROVISIONS FOR A BALLOON PAYMENT.  THE ENTIRE PRINCIPAL
BALANCE OF THE LOAN AND UNPAID INTEREST IS PAYABLE
IN FULL AT MATURITY.

NEW JERSEY-Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3031 9/90 (page 1 of 6 pages)

Eastern
Software      ITEM 1924 (9012)

FT/NT01659

**COMMONWEALTH LAND**
**TITLE INSURANCE COMPANY**
**A Reliance Group Holdings Company**

**TITLE INSURANCE COMMITMENT**

Commitment No.

File No. CT-18848(A)

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Asbury Park, County of Monmouth and state of New Jersey, being more particularly described as follows:

Known as part of Lot No. 261 on Map of West Asbury Park, made by W.H. DeNyse, C.E. and more particularly described as follows:

Beginning at a point in the westerly line of Comstock Street distant 57 feet southwardly from the southwest corner of Bangs Avenue and Comstock Street; thence

1. Southwardly along the westerly line of said Comstock Street, 25 feet; thence

2. Westwardly and at right angles to said Comstock Street, 50 feet; thence

3. Northwardly parallel with said Comstock Street, 25 feet; thence

4. Eastwardly and again at right angles to said Comstock Street 50 feet to the point or place of Beginning.

Being also known as Block 68, Lot 3 on the tax map of the City of Asbury Park and commonly known as 303 Comstock Street, Asbury Park, New Jersey.

Issued By:
**COASTAL TITLE AGENCY, INC.**
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660   (800) 521-0378   (908) 775-5543   FAX #(908) 308-1881

FT/NT01660

# BALLOON RIDER

LOAN # 623846

### (Full Repayment Required at Maturity)

THIS BALLOON RIDER is made this 30TH    day of December , 1996    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to **NATIONAL HOME FUNDING**    (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

### 303 COMSTOCK AVENUE, ASBURY PARK, NJ 07712

(Property Address)

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

The Note is a Balloon Note which means that the amount of my monthly payment is insufficient to repay the Note in full by Maturity. Therefore, the final payment will be significantly larger than the other payments under the Note.

I understand that the Lender is under no obligation to refinance the Note or to modify the Note or reset the Note Rate or to extend the Note Maturity Date or the Maturity Date of this Security Instrument, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

I further understand that should I not repay the Note on or before the Maturity Date, I will be in default, and the Lender will have the right to exercise all of its rights against me because of my default, including the right to foreclosure of the Security Instrument, or other remedies permitted by law.

BY SIGNING BELOW, BORROWER accepts and agrees to the terms and covenants contained in this Balloon Rider.



_____ (Seal)
SUSAN VISCARDO                              -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

Balloon Rider                                          (8-2-95) JC-22205-11

FT/NT01661

# 1-4 FAMILY RIDER
## Assignment of Rents

Loan Number: 623846

THIS 1-4 FAMILY RIDER is made this 30th day of December, 1996, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

NATIONAL HOME FUNDING

(the "Lender")

of the same date and covering the property described in the Security Instrument and located at:

303 COMSTOCK AVENUE, ASBURY PARK, NJ 07712
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property".

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument

Form 3170 9/90 (page 1 of 2 pages)

Eastern
Software
CORPORATION    ITEM 1790 (9410)

FT/NT01662

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and; (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this 1-4 Family Rider.

| | |
|---|---|
| _Susan Viscardo_ _____ (Seal) | _____ (Seal) |
| SUSAN VISCARDO                -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

Form 3170 9/90 (page 2 of 2 pages)

FT/NT01663

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the escrow items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by . Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender

**Form 3031  9/90 (page 2 of 6 pages)**

requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants 9/90   (page 3 of 6 pages)

FT/NT01665

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance by Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:(a) 5 days (or such other period as applicable law may

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants 9/90   (page 4 of 6 pages)

specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

Form 3031 9/90 (page 5 of 6 pages)

FT/NT01667

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ Other(s) [specify]   LEGAL DESCRIPTION | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Susan Viscardo_ _____ (Seal)
SUSAN VISCARDO                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

STATE OF NEW JERSEY,        Monmouth        County ss:

On this  30th  day of  December , 1996 ,before me, the subscriber, personally appeared
SUSAN VISCARDO

                                                who, I am satisfied,
is  the person(s) named in and who executed the within instrument, and thereupon she
acknowledged that  she  signed, sealed and delivered the same as  her  act and
deed, for the purposes therein expressed.

_Lorraine E. King_
                                                Notary Public

LORRAINE E. KING
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

This instrument was prepared by:  MARYANN MICHALOWSKI

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.
Witness:

_Lorraine E. King_        _Susan Viscardo_ ___ (Seal)
                          SUSAN VISCARDO          -Borrower

                          _____ (Seal)
                                                 -Borrower

                          _____ (Seal)
                                                 -Borrower

                          _____ (Seal)
                                                 -Borrower

Form 3031  9/90 (page 6 of 6 pages)

FT/NT01668