# EXHIBIT G

Fenstemaker & Fenstemaker, P.A.

||||||| 046917

# Deed

This Deed is made on January 15, 1997
BETWEEN
Abdul Ghani Teha

whose post office address is
695 Colonial Avenue, Union, New Jersey 07083

referred to as the Grantor,
AND
G. J. L. Limited

whose post office address is
444 Ocean Avenue, Long Branch, N.J. 07740

| COUNTY OF MONMOUTH |
| --- |
| CONSIDERATION 22,000 |
| RTF 77 add'l RTF |
| DATE 1-30-97 BY |

referred to as the Grantee.
The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

1. **Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property (called the "Property") described below to the Grantee. This transfer is made for the sum of
Twenty Two Thousand ($22,000.00) Dollars
The Grantor acknowledges receipt of this money.

2. **Tax Map Reference.** (N.J.S.A. 46:15-1.1) Municipality of Asbury Park
Block No. 97                    Lot No. 10                    Account No.
☐ No property tax identification number is available on the date of this Deed. (Check box if applicable.)

3. **Property.** The Property consists of the land and all the buildings and structures on the land in
the City                          of Asbury Park
County of Monmouth                and State of New Jersey. The legal description is:

☒ Please see attached Legal Description annexed hereto and made a part hereof. (Check box if applicable.)
Being the same premises conveyed to the Grantor, Abdul Ghani Teha, by deed from Frederick A. Prunetti,
dated February 1, 1994 and recorded February 14, 1994 in Deed Book 5287 page 307.

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997012853
RECORDED ON
Jan 30, 1997
2:22:25 PM

BOOK OR-5573 PAGE 140
Total Pages: 3

| | |
| --- | --- |
| COUNTY RECORDING FEES | $20.00 |
| DEDICATED TRUST FUND COMMISSION | $2.00 |
| COUNTY REALTY TRANSFER FEES | $22.02 |
| STATE REALTY TRANSFER FEES | $54.98 |
| TOTAL | $99.00 |

Prepared by: (print signer's name below signature)                    (For Recorder's Use Only)

Bill R. Fenstemaker, An Attorney at Law of the
State of New Jersey

103 - Deed - Bargain and Sale
Cov. to Grantor's Act - Ind. to Ind. or Corp.
Plain Language 7/96

△ ©1996 by ALL-STATE Legal, a Division of
ALL-STATE® International, Inc.
(908) 272-0800                    Page 1

FT/NT04547

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Asbury Park, County of Monmouth and state of New Jersey, being more particularly described as follows:

Beginning at an iron pin with cap set in the easterly line of DeWitt Avenue distant southerly 325.00 feet from the intersection of the easterly line of DeWitt Avenue with the southerly line of Lake Avenue and running; thence

1. South 64 degrees 00 minutes East, 150.00 feet to an iron pin with cap set; thence

2. South 26 degrees 00 minutes West, 25.00 feet to an iron pin with cap set; thence

3. North 64 degrees 00 minutes West, 150.00 feet to a cap found in the easterly line of DeWitt Avenue; thence

4. Along the easterly line of DeWitt Avenue, North 26 degrees 00 minutes East, 25.00 feet to the point and place of Beginning.

The above description is drawn in accordance with a survey prepared by Thomas M. Ernst & Associates, Inc., dated January 23, 1994.

NOTE: Being Lot 10 in Block 97 on the Tax Map of the City of Asbury Park, Monmouth County.

FT/NT04548

Fenstemaker & Fenstemaker, P.A.

The street address of the Property is:
24 Dewitt Avenue aka 30 Dewitt Avenue, Asbury Park, New Jersey 07712

4. Promises by Grantor.   The Grantor promises that the Grantor has done no act to encumber the Property.  This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6).  This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the Property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

5. Signatures.   The Grantor signs this Deed as of the date at the top of the first page.  (Print name below each signature.)

Witnessed By:                                          _____ (Seal)
                                                                Abdul Ghani Taha

_____                             _____ (Seal)
Bill R. Fenstemaker

_____                             _____ (Seal)

STATE OF NEW JERSEY, COUNTY OF Union                                          SS.:
I CERTIFY that on January   15   1997
Abdul Ghani Taha

personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of this Deed;
(b) executed this Deed as his or her own act; and,

(c) made this Deed for $ 22,000.00                  as the full and actual consideration paid or to be paid for the
transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5.)

| RECORD AND RETURN TO:                       | _____           |
| Richard J. Pepsny, Esq.                     | (Print name and title below signature) |
| 187 Highway No. 34                          | Bill R. Fenstemaker                   |
| Suite 1                                     | An Attorney at Law of the State of New Jersey |
| Matawan, N.J.   07747                       |                                       |

103 - Deed - Bargain and Sale
Cov. to Grantor's Act - Ind. to Ind. or Corp.
Plain Language 7/96

©1996 by ALL-STATE Legal, a Division of
ALL-STATE® International, Inc.
(908) 272-0800                    Page 2

FT/NT04549

**COASTAL TITLE AGENCY, INC.** 
21 WEST MAIN STREET
P.O. BOX 740
FREEHOLD, NJ 07728

Prepared By:
RICHARD J. PEPSNY, ESQ.

3

**DEED**

|||||| 085610

This Deed is made on January 17, 1997


COUNTY OF MONMOUTH
CONSIDERATION 115,000
RTF 402.50 add'l RTF
DATE 4/8/97 BY 26

**BETWEEN**

    **G.J.L. LIMITED** ,

a corporation organized and existing under the laws of the State of New Jersey, with its principal office at 444 Ocean Avenue, Long Branch, New Jersey,

referred to as Grantor,

**AND**

    Kimberly E. Powell , single

whose post office address is about to be c/o Capital Assets, 10 Bergen Place, Red Bank, NJ

referred to as Grantee.

The word "Grantee" shall mean all grantees listed above.

    **Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of One Hundred Fifteen THousand Dollars ($115,000.00). The Grantor acknowledges receipt of this money.

    **Tax Map Reference.** (N.J.S.A. 46:15-2.1) Municipality of Asbury Park
    **Block: 97    Lot: 10**    Account No.
☐ No property tax identification number is available on the date of this Deed. (Check box if applicable).

    **Property.** The property consists of the land and all the buildings and structures on the land in the City of Asbury Park, County of Monmouth and State of New Jersey. The legal description is:
        SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION
        <u>COMMONLY KNOWN AS: 30 Dewitt Avenue, Asbury Park, NJ</u>

Being the same premises conveyed to the Grantor herein by deed from Abdul Ghani Taha , dated January 15, 1997 and recorded on    January 30, 1997    in the Monmouth County Clerk/Register's office in Deed Book   5572   at Page   140   .



| | | |
|---|---|---|
| CLERK'S OFFICE MONMOUTH COUNTY NEW JERSEY | COUNTY RECORDING FEES | $20.00 |
| INSTRUMENT NUMBER 1997038332 | DEDICATED TRUST FUND COMMISSION | $2.00 |
| RECORDED ON Apr 08, 1997 3:29:44 PM | COUNTY REALTY TRANSFER FEES | $115.12 |
| BOOK:0B-5589 PG:243 | STATE REALTY TRANSFER FEES | $287.38 |
| Total Pages: 3 | TOTAL | $424.50 |

FT/NT04550

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

TITLE INSURANCE COMMITMENT

Commitment No.

File No. CT-18919(A)

DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the
City of Asbury Park, County of Monmouth and state of New Jersey,
being more particularly described as follows:

Beginning at an iron pin with cap set in the easterly line of DeWitt Avenue distant southerly 325.00 feet from the
intersection of the easterly line of DeWitt Avenue with the southerly line of Lake Avenue and running; thence

1. South 64 degrees 00 minutes East, 150.00 feet to an iron pin with cap set; thence

2. South 26 degrees 00 minutes West, 25.00 feet to an iron pin with cap set; thence

3. North 64 degrees 00 minutes West, 150.00 feet to a cap found in the easterly line of DeWitt Avenue; thence

4. Along the easterly line of DeWitt Avenue, North 26 degrees 00 minutes East, 25.00 feet to the point and place of Beginning.

The above description is drawn in accordance with a survey prepared by Thomas M. Ernst & Associates, Inc., dated January
23, 1994.

NOTE: Being Lot 10 in Block 97 on the Tax Map of the City of Asbury Park, Monmouth County.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FT/NT04551

**Promises By Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgement to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor's proper corporate officers as of the date at the top of the first page. Its proper corporate seal is affixed.

G.J.L. LIMITED

By:_____

William J. Kane, president

State of New Jersey　　　　:
　　　　　　　　　　　　　ss:
County of Middlesex　　　　:

I CERTIFY that on January 17, 1997, William J. Kane personally appeared before me and this person acknowledged under oath, to my satisfaction, that:

    (a) this person is the president of G.J.L. LIMITED, the corporation named in this deed, and was fully authorized to and did execute this deed on its behalf;

    (b) this deed was made for $115,000.00 as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A.46:15-5).

Signed and sworn before me on
January 17, 1997

RICHARD J. PEPSNY, ESQ.

ATTORNEY AT LAW
STATE OF NEW JERSEY

102-Deed-Bargain and Sale
Cov. to Grantor's Act-Corp. to Ind. or Corp.

FT/NT04552

15

**COASTAL TITLE AGENCY, INC.**

21 WEST MAIN STREET

P.O. BOX 740

FREEHOLD, NJ 07728

Prepared by: _~Lorraine E. King~_

LORRAINE E. KING

||||| 085611

# DEED

**COUNTY OF MONMOUTH**

CONSIDERATION _____

RTF _____ add'l RTF _____

DATE 4/8 ___ By ___

# This Deed, made this 24TH day of JANUARY, 1997

**Between**   KIMBERLY E. POWELL
located at    10 WEST BERGEN PLACE, SUITE 104, RED BANK, NJ 07701
herein designated as Grantor

**And**   KIMBERLY E. POWELL and CAPITAL ASSETS PROPERTY MANAGEMENT &
INVESTMENT, CO., INC.

KIMBERLY E. POWELL   AS TO 40% INTEREST and
CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT, CO., INC. AS TO
60% INTEREST

located at 10 WEST BERGEN PLACE, SUITE 104, RED BANK, NJ 07701 herein designated
as the Grantee;

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

**Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the
property described below to the Grantee. This transfer is made for the sum of **UNDER ONE
HUNDRED DOLLARS.** The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (*N.J.S.A.* 46:15-1.1) Municipality of **ASBURY PARK**
Block 97          Lot 10          Account No.

_____ No Property tax identification number is available on the date of this Deed. (Check this box
if applicable.)

**Property.** The Property consists of the land and all the buildings and structures on
the land in the **CITY OF ASBURY PARK** County of **MONMOUTH,** the State of New
Jersey, and is commonly known as **30 DEWITT AVENUE, ASBURY PARK, NEW
JERSEY** The legal description is:

**SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION.**

THE GRANTOR WILL WARRANT, SECURE AND FOREVER DEFEND THE TITLE
TO THE SUBJECT PROPERTY.

$589.246
4/8/97

FT/NT04553

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
   A Reliance Group Holdings Company

TITLE INSURANCE COMMITMENT

Commitment No.

File No. CT-18919(A)

DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the
City of Asbury Park, County of Monmouth and state of New Jersey,
being more particularly described as follows:

Beginning at an iron pin with cap set in the easterly line of DeWitt Avenue distant southerly 325.00 feet from the
intersection of the easterly line of DeWitt Avenue with the southerly line of Lake Avenue and running; thence

1.  South 64 degrees 00 minutes East, 150.00 feet to an iron pin with cap set; thence

2.  South 26 degrees 00 minutes West, 25.00 feet to an iron pin with cap set; thence

3.  North 64 degrees 00 minutes West, 150.00 feet to a cap found in the easterly line of DeWitt Avenue; thence

4.  Along the easterly line of DeWitt Avenue, North 26 degrees 00 minutes East, 25.00 feet to the point and place of Beginning.

The above description is drawn in accordance with a survey prepared by Thomas M. Ernst & Associates, Inc., dated January
23, 1994.

NOTE:  Being Lot 10 in Block 97 on the Tax Map of the City of Asbury Park, Monmouth County.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FT/NT04554

ID: 104B   AFFIDAVIT OF CONSIDERATION
RTF-1 (Rev. 1/1/88)

ALL-STATE LEGAL SUPPLY CO.
One Commerce Drive, Cranford, N.J. 07016

**STATE OF NEW JERSEY**
**AFFIDAVIT OF CONSIDERATION OR EXEMPTION**
(c. 49, P.L. 1968)
or
**PARTIAL EXEMPTION**
(c. 176, P.L. 1975)
To Be Recorded With Deed Pursuant to s. 49, P.L. 1968, as amended by c. 225, P.L. 1985 (N.J.S.A. 46:15-5 et seq.)

VS1 - 2

STATE OF NEW JERSEY
}ss.
COUNTY OF _____MONMOUTH_____

**FOR RECORDER'S USE ONLY**
Consideration $ _____
Realty Transfer Fee $ _____
Date _____
*Use symbol "C" to indicate that fee is exclusively for county use.

**(1) PARTY OR LEGAL REPRESENTATIVE** (See Instructions #3, 4 and 5 on reverse side)

Deponent, _____KIMBERLY E. POWELL_____ being duly sworn according to law upon his/her oath deposes and

says that he/she is the _____GRANTOR_____
(State whether Grantor, Grantee, Legal Representative, Corporate Officer, Officer of Title Co, Lending Institution, etc.)

in a deed dated _____JANUARY 24, 1997_____, transferring real property identified as Block No. _____97_____

Lot No. _____10_____ located at _____30 DEWITT AVENUE, ASBURY PARK, N.J._____
(Street Address, block/quality, County)

_____MONMOUTH COUNTY_____ and annexed hereto.

**(2) CONSIDERATION** (See Instruction #6)

Deponent states that, with respect to deed hereto annexed, the actual amount of money and the monetary value of any other thing of value constituting the entire compensation paid or to be paid for the transfer of title to the lands, tenements or other realty, including the remaining amount of any prior mortgage to which the transfer is subject or which is to be assumed and agreed to be paid by the grantee and any other lien or encumbrance thereon not paid, satisfied or removed in connection with the transfer of title is $ _____

**(3) FULL EXEMPTION FROM FEE** Deponent claims that this deed transaction is fully exempt from the Realty Transfer Fee imposed by c.49, P.L. 1968, for the following reason(s): Explain in detail. (See Instruction #7.) Mere reference to exemption symbol is not sufficient.

_____CONSIDERATION UNDER ONE HUNDRED DOLLARS_____

**(4) PARTIAL EXEMPTION FROM FEE**   NOTE: All boxes below apply to grantor(s) only. ALL BOXES IN APPROPRIATE CATEGORY MUST BE CHECKED. Failure to do so will void claim for partial exemption. (See Instructions #8 and #9.)
Deponent claims that this deed transaction is exempt from the increased portion of the Realty Transfer Fee imposed by c.176, P.L. 1975 for the following reason(s):

a) **SENIOR CITIZEN** (See Instruction #8)
☐ Grantor(s) 62 yrs. of age or over.*
☐ One or two-family residential premises.

☐ Owned and occupied by grantor(s) at time of sale.
☐ No joint owners other than spouse or other qualified exempt owners.

b) **BLIND** (See Instruction #8)
☐ Grantor(s) legally blind.*
☐ One or two-family residential premises.

☐ Owned and occupied by grantor(s) at time of sale.
☐ No joint owners other than spouse or other qualified exempt owners.

**DISABLED** (See Instruction #8)
☐ Grantor(s) permanently and totally disabled.*
☐ One or two-family residential premises.
☐ Receiving disability payments.

☐ Owned and occupied by grantor(s) at time of sale.
☐ Not gainfully employed.
☐ No joint owners other than spouse or other qualified exempt owners.

*IN THE CASE OF HUSBAND AND WIFE, ONLY ONE GRANTOR NEED QUALIFY.

c) **LOW AND MODERATE INCOME HOUSING** (See Instruction #8)
☐ Affordable According to H.U.D. Standards.
☐ Meets Income Requirements of Region.

☐ Reserved for Occupancy.
☐ Subject to Resale Controls.

d) **NEW CONSTRUCTION** (See Instruction #9)
☐ Entirely new improvement.
☐ Not previously used for any purpose.

☐ Not previously occupied.

Deponent makes this Affidavit to induce the County Clerk or Register of Deeds to record the deed and accept the fee submitted herewith in accordance with the provisions of c. 49, P.L. 1968.

Subscribed and Sworn to before me
this
24th
day of _____January_____, 1997

_____Kimberly E Powell_____
(Signature of Deponent)

_____Kimberly E Powell_____
(Signature of Grantor)

KIMBERLY E. POWELL
(Name of Grantor (typed above line))

30 DEWITT AVENUE
ASBURY PARK, N.J. 07712
(Address of Grantor)

SAME
(Name of Grantee (typed above line))

(Address of Grantee at Time of Sale)

LORRAINE E. KING
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

**FOR OFFICIAL USE ONLY** This space for use of County Clerk or Register of Deeds.
Instrument Number _____ County _____
Deed Number _____ Book _____ Page _____
Deed Dated _____ Date Recorded _____

IMPORTANT - BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE HEREOF.
This form is prescribed by the Director, Division of Taxation in the Department of the Treasury, as required by law, and may not be altered or amended without the approval of the Director.

WHITE AND YELLOW COPIES MUST BE SUBMITTED WITH DEED TO COUNTY RECORDING OFFICE

FT/NT04555

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to Grantor's acts" (*N.J.S.A.* 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor who has hereunto set their hand and seal the day and year first above written.

Signed, Sealed and Delivered
in the presence of

KIMBERLY E. POWELL

STATE OF NEW JERSEY           }
                              }  SS
COUNTY OF MONMOUTH            }

Be it Remembered, that on *January 31*, 1997, before me, the subscriber, a Notary Public of New Jersey, personally appeared KIMBERLY E. POWELL, who I am satisfied, is the person named in and who executed the within Instrument, and thereupon she acknowledged that she signed, sealed and delivered the same as her act and deed, for the uses and purposes therein expressed, and that the full and actual consideration paid or to be paid for the transfer of title to realty evidenced by the within deed, as such consideration is defined in N.J.S.A. 46:15-5, is UNDER ONE HUNDRED DOLLARS.

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997038333
RECORDED ON
Apr 08, 1997
3:24:45 PM
BOOK:DB-5589 PG:246
Total Pages: 5

LORRAINE E. KING
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

| | |
|---|---|
| COUNTY RECORDING FEES | $24.00 |
| DEDICATED TRUST FUND COMMISSION | $2.00 |
| TOTAL | $26.00 |

FT/NT04556



COASTAL TITLE AGENCY, INC.
21 West Main Street
P.O. Box 740
Freehold, NJ 07728
Toll Free in N.J. 800-521-0378
(908) 308-1860

FT/NT04557

WHEN RECORDED MAIL T~

~WALSH SECURITIES, IN~
4~CAMPUS DRIVE
PARSIPPANY, N~ 0705~

Loan Number : 624172

**COASTAL TITLE AGENCY, INC.**
21 WEST MAIN STREET
P.O. BOX 740
FREEHOLD, NJ 07728

065612

[SPACE ABOVE THIS LINE FOR RECORDING DATA]

# MORTGAGE

**THIS MORTGAGE** (" Security Instrument") is given on          January   17, 1997
The mortgagor is  KIMBERLY E. POWELL

("Borrower"). This  Security Instrument is given to

NAATIONAL HOME FUNDING
,which is organized and existing
under the laws of   NEW JERSEY          , and whose principal office and mailing address is
3443 HIGHWAY 9-N HOLIDAY PLAZA, FREEHOLD, NJ 07728

("Lender"). Borrower owes Lender the principal sum of
**Eighty Thousand Five Hundred Dollars And 00/100**

Dollars (U.S.$        80,500.00 ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**February   1, 2012**.  This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security
Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date,
and other terms and conditions), as defined in New Jersey Law 1985, ch. 353, § 1 et seq., and upon such modification,
shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security
Instrument is $   80,500.00  . For these purposes, Borrower does hereby mortgage, grant and convey to Lender the
following described property located in   MONMOUTH                        County, New Jersey:
SEE LEGAL DESCRIPTION ATTACHED HERETO

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
**1997038334**
RECORDED ON
**Apr 08, 1997**
3:24:46 PM
BOOK:MB-6166 PG1938
Total Pages: 10

COUNTY RECORDING  $31.00
FEES
DEDICATED TRUST   $2.00
FUND COMMISSION
TOTAL    $33.00

which has the address of  30 DEWITT AVENUE
[Street]

New Jersey    07712      ("Property Address");
[Zip Code]

ASBURY PARK
(City)

* THE NOTE THIS SECURITY INSTRUMENT SECURES CONTAINS
PROVISIONS FOR A BALLOON PAYMENT.  THE ENTIRE PRINCIPAL
BALANCE OF THE LOAN AND UNPAID INTEREST IS PAYABLE
IN FULL AT MATURITY.

NEW JERSEY-Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3031 9/90 (page 1 of 6 pages)

Eastern
Software
ITEM 1924 (9012)

FT/NT04558

01/31/97    15:56    COASTAL TITLE AGENCY INC → 1 908 296 2477    NO.079    003

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

TITLE INSURANCE COMMITMENT

Commitment No.

File No. CT-18919(A)

DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the
City of Asbury Park, County of Monmouth and state of New Jersey,
being more particularly described as follows:

Beginning at an iron pin with cap set in the easterly line of DeWitt Avenue distant southerly 325.00 feet from the
intersection of the easterly line of DeWitt Avenue with the southerly line of Lake Avenue and running; thence

1.  South 64 degrees 00 minutes East, 150.00 feet to an iron pin with cap set; thence

2.  South 26 degrees 00 minutes West, 25.00 feet to an iron pin with cap set; thence

3.  North 64 degrees 00 minutes West, 150.00 feet to a cap found in the easterly line of DeWitt Avenue; thence

4.  Along the easterly line of DeWitt Avenue, North 26 degrees 00 minutes East, 25.00 feet to the point and place of Beginning.

The above description is drawn in accordance with a survey prepared by Thomas M. Ernst & Associates, Inc., dated January
23, 1994.

NOTE:   Being Lot 10 in Block 97 on the Tax Map of the City of Asbury Park, Monmouth County.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378 (908) 775-5543 FAX #(908) 308-1881

FT/NT04559

# BALLOON RIDER

LOAN #  624172

### (Full Repayment Required at Maturity)

THIS BALLOON RIDER is made this 17TH    day of January , 1997        , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to  NAATIONAL HOME FUNDING

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

## 30 DEWITT AVENUE, ASBURY PARK, NJ 07712

### (Property Address)

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

The Note is a Balloon Note which means that the amount of my monthly payment is insufficient to repay the Note in full by Maturity. Therefore, the final payment will be significantly larger than the other payments under the Note.

I understand that the Lender is under no obligation to refinance the Note or to modify the Note or reset the Note Rate or to extend the Note Maturity Date or the Maturity Date of this Security Instrument, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

I further understand that should I not repay the Note on or before the Maturity Date, I will be in default, and the Lender will have the right to exercise all of its rights against me because of my default, including the right to foreclosure of the Security Instrument, or other remedies permitted by law.

BY SIGNING BELOW, BORROWER accepts and agrees to the terms and covenants contained in this Balloon Rider.


KIMBERLY E POWELL _____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Balloon Rider                                              (8-2-93) JC-22205-11

## 1-4 FAMILY RIDER
### Assignment of Rents

Loan Number: 624172

THIS 1-4 FAMILY RIDER is made this 17th day of January, 1997 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

NAATIONAL HOME FUNDING

(the "Lender")

of the same date and covering the property described in the Security Instrument and located at:

30 DEWITT AVENUE, ASBURY PARK, NJ 07712
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property".

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Uniform Covenant 18 is deleted.

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument                                    Form 3170 3/90 (page 1 of 2 pages)

Eastern
Software
ITEM 1790 (9410)

FT/NT04561

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and; (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this 1-4 Family Rider.

| | | |
|---|---|---|
| _Kimberly E Powell_ (Seal) | _____ (Seal) | |
| KIMBERLY E. POWELL -Borrower | -Borrower | |
| _____ (Seal) | _____ (Seal) | |
| -Borrower | -Borrower | |

Form 3170 9/90 (page 2 of 2 pages)

FT/NT04562

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the escrow items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender

Form 3031 9/90 (page 2 of 6 pages)

FT/NT04563

requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award of claim for damages, direct or consequential, in connection with any

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants 9/90   (page 3 of 6 pages)

FT/NT04564

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, required immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may

Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT — Uniform Covenants 9/90   (page 4 of 6 pages)

FT/NT04565

specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

Form 3031  9/90 (page 5 of 6 pages)

FT/NT04566

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider            ☐ Condominium Rider            ☒ 1-4 Family Rider

☐ Graduated Payment Rider       ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider

☒ Balloon Rider                      ☐ Rate Improvement Rider        ☐ Second Home Rider

☒ Other(s) [specify]   LEGAL DESCRIPTION

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _Kimberly E. Powell_____ (Seal)
                                                       KIMBERLY E. POWELL             -Borrower

                                                  _____ (Seal)
                                                                                           -Borrower

                                                  _____ (Seal)
                                                                                           -Borrower

                                                  _____ (Seal)
                                                                                           -Borrower

STATE OF NEW JERSEY,          Monmouth          County ss:

On this  17th  day of   January  , 1997          ,before me, the subscriber, personally appeared
KIMBERLY E. POWELL

                                                                            who, I am satisfied,
is      the person(s) named in and who executed the within instrument, and thereupon  she
acknowledged that    she      signed, sealed and delivered the same as     her           act and
deed, for the purposes therein expressed.

                                  _Lorraine E. King_____
                                  LORRAINE E. KING
                                  NOTARY PUBLIC OF NEW JERSEY        Notary Public
                                  My Commission Expires Feb. 21, 2001

This instrument was prepared by:   SONJI OWENS

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.
Witness:

_Lorraine E. King_____          _Kimberly E. Powell_____ (Seal)
                                                       KIMBERLY E. POWELL             -Borrower

                                                  _____ (Seal)
                                                                                           -Borrower

                                                  _____ (Seal)
                                                                                           -Borrower

                                                  _____ (Seal)
                                                                                           -Borrower

Form 3031  9/90 (page 6 of 6 pages)

FT/NT04567

# EXHIBIT H

056877

FRANK J. MANDIA, JR., ESQ.

R+R

# Deed

STANLEY YACKER, ESQ.
330 HIGHWAY 34 - SUITE 3
MATAWAN, NJ  07747

This Deed is made on     November 18 1996
BETWEEN

D & M ASSOCIATES, A PARTNERSHIP

whose post office address is

405 Munroe Avenue, Asbury Park, New Jersey 07712

referred to as the Grantor,
AND

CRISTO PROPERTY MANAGEMENT LTD.

| COUNTY OF MONMOUTH |
|---|
| CONSIDERATION  70,500 |
| RTF  246.75  add'l RTF |
| DATE 2/3 1-97 BY DUBA |

whose post office address is   25 OAKWOOD DRIVE, PARLIN, NJ 08859

referred to as the Grantee.
The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

1. **Transfer of Ownership.**   The Grantor grants and conveys (transfers ownership of) the property (called the "Property") described below to the Grantee. This transfer is made for the sum of
———————— SEVENTY THOUSAND FIVE HUNDRED ($70,500.00) ————————
The Grantor acknowledges receipt of this money.

2. **Tax Map Reference.**   (N.J.S.A. 46:15-1.1) Municipality of   Neptune Township
Block No.    194              Lot No.    188              Account No.
☐  No property tax identification number is available on the date of this Deed. (Check box if applicable.)

3. **Property.**   The Property consists of the land and all the buildings and structures on the land in
the     Township          of          Neptune
County of        Monmouth                and State of New Jersey. The legal description is:

☒  Please see attached Legal Description annexed hereto and made a part hereof.  (Check box if applicable.)

BEING the same premises conveyed to the Grantor herein by Deed from Robert V. Chadwick, et als, to D & M Associates dated March 9, 1989 and recorded in the Monmouth County Clerk's Office on March 14, 1989 in Deed Book 4919, page 57.

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997024515
RECORDED ON
Mar 03, 1997
3:48:36 PM
BOOK OR 5579 PG108
Total Pages: 3

COUNTY RECORDING FEES        $20.00
DEDICATED TRUST FUND COMMISSION   $2.00
COUNTY REALTY TRANSFER FEES      $70.57
STATE REALTY TRANSFER FEES      $176.18

TOTAL            $26?    Prepared by: (print signer's name below signature)          (For Recorder's Use Only)

Elizabeth J. Pagliara
ELIZABETH J. PAGLIARA, NOTARY PUBLIC

103 - Deed - Bargain and Sale
Cov. to Grantor's Act - Ind. to Ind. or Corp.
Plain Language 7/96

©1996 by ALL-STATE Legal, a Division of
ALL-STATE International, Inc.
(908) 272-0800                    Page 1

FT/NT01568

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

32L Fisher

**TITLE INSURANCE COMMITMENT**

Commitment No.

File No. CT-18760(A)

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the Township of Neptune, County of Monmouth and state of New Jersey, being more particularly described as follows:

Beginning at a point on the easterly line of Fisher Avenue, distant southerly along the same 278 feet from the intersection with the southerly line of Holly Avenue; thence

1. South 86 degrees 30 minutes 00 seconds East a distance of 149.89 feet to a point; thence

2. South 03 degrees 38 minutes 15 seconds West a distance of 25 feet to a point; thence

3. North 86 degrees 30 minutes 00 seconds West a distance of 149.83 feet to a point on the easterly line of Fischer Avenue; thence

4. Continuing along the same on a course of North 03 degrees 30 minutes 00 seconds East a distance of 25 feet to the point and place of Beginning.

NOTE: Being Lot(s) 188, Block 194, Tax Map of the Township of Neptune.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660   (800) 521-0378   (908) 775-5543   FAX #(908) 308-1881

FT/NT01569

FRANK J. MANDIA, JR., ESQ.

The street address of the Property is:

326 Fisher Avenue, Neptune, New Jersey 07753

4.  **Promises by Grantor.**   The Grantor promises that the Grantor has done no act to encumber the Property.  This promise is called a "covenant as to grantor's acts" (N.J.S.A.  46:4-6).  This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the Property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

5.  **Signatures.**   The Grantor signs this Deed as of the date at the top of the first page.  (Print name below each signature.)

Witnessed By:

                                           (Seal)

D & M ASSOCIATES, A PARTNERHSHIP

_____          _____(Seal)
ELIZABETH J. PAGLIARA                      by:
                                           ALPHONSE J. DeMARIA, Partner

                                          _____(Seal)
                                           by:
                                           FRANK J. MANDIA, JR., Partner


STATE OF NEW JERSEY, COUNTY OF    MONMOUTH        SS.:
I CERTIFY that on    November 18  1996

ALPHONSE J. DeMARIA and FRANK J. MANDIA, JR., partners of D & M ASSOCIATES, A PARTNERSHIP personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of this Deed;
(b) executed this Deed as his or her own act; and,

(c) made this Deed for $  70,500.00            as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5.)

| RECORD AND RETURN TO: | |
| --- | --- |
| |  |
| | (Print name and title below signature) |
| | ELIZABETH J. PAGLIARA |
| | NOTARY PUBLIC OF NEW JERSEY |
| | My Commission Expires Nov. 4, 1998 |

103 - Deed - Bargain and Sale
Cov. to Grantor's Act - Ind. to Ind. or Corp.
Plain Language 7/96

©1995 by ALL-STATE Legal, a Division of
ALL-STATE® International, Inc.
(908) 272-0800    Page 2

FT/NT01570

R+R

056878

STANLEY YACKER, ESQ.
330 HIGHWAY 34 - SUITE 3
MATAWAN, NJ 07747

:pared by: Richard J. Pepsny, Esq.

# DEED

| COUNTY OF MONMOUTH |
| --- |
| CONSIDERATION 156,000 |
| RTF 546     add'l RTF 9 |
| DATE 3/31-97 BY WBM |

This Deed is made on NOVEMBER   18  , 1996,

BETWEEN:

**CRISTO PROPERTY MANAGEMENT, LTD.**
a corporation in the state of NEW JERSEY, having its principal office at 952 Route 34, Matawan Mall, 2nd Floor, Matawan, New Jersey  07747 referred to as the Grantor.

AND:
DONALD DEVINCENZO whose post office address is about to be 326 FISHER AVENUE, NEPTUNE , NEW JERSEY               referred to as Grantee.

The word   "Grantee" shall mean all Grantees listed above.

**Transfer of Ownership.**  The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of **ONE HUNDRED FIFTY SIX THOUSAND DOLLARS ($156,000.00).**   The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (N.J.S.A. 46:15-1.1) Municipality of NEPTUNE
Block No.    194     Lot No   188 Account no.

____No Property tax identification number is available on the date of this Deed. (check box if applicable.)

**Property.** The Property consists of the land and all the buildings and structures on the land in the **TOWNSHIP of NEPTUNE** County of MONMOUTH and State of New Jersey. The legal description is:
COMMONLY KNOWN AS:326 FISHER AVENUE, NEPTUNE, NEW JERSEY.

SEE ATTACHED SCHEDULE A FOR LEGAL DESCRIPTION.

BEING THE SAME PREMISES CONVEYED TO THE GRANTOR HEREIN BY DEED FROM D & M ASSOCIATES, A NEW JERSEY PARTNERSHIP, DATED NOVEMBER    18   , 1996 AND INTENDED TO BE RECORDED IN THE MONMOUTH COUNTY CLERK'S OFFICE SIMULTANEOUSLY HEREWITH AND IMMEDIATELY PRIOR HERETO.

5579.111
3/3/97

FT/NT01571

**COMMONWEALTH LAND
TITLE INSURANCE COMPANY**
A Reliance Group Holdings Company

*32k Fisher*

**TITLE INSURANCE COMMITMENT**

Commitment No.

File No. CT-18760(A)

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the Township of Neptune, County of Monmouth and state of New Jersey, being more particularly described as follows:

Beginning at a point on the easterly line of Fisher Avenue, distant southerly along the same 278 feet from the intersection with the southerly line of Holly Avenue; thence

1. South 86 degrees 30 minutes 00 seconds East a distance of 149.89 feet to a point; thence

2. South 03 degrees 38 minutes 15 seconds West a distance of 25 feet to a point; thence

3. North 86 degrees 30 minutes 00 seconds West a distance of 149.83 feet to a point on the easterly line of Fischer Avenue; thence

4. Continuing along the same on a course of North 03 degrees 30 minutes 00 seconds East a distance of 25 feet to the point and place of Beginning.

NOTE:  Being Lot(s) 188, Block 194, Tax Map of the Township of Neptune.

Issued By:
**COASTAL TITLE AGENCY, INC.**
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660   (800) 521-0378   (908) 775-5543   FAX #(908) 308-1881

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY
INSTRUMENT NUMBER
1997024516
RECORDED ON
Mar 03, 1997
3:48:37 PM
BOOK#0B-5879 PG:111
Total Pages: 3

| | |
|---|---|
| COUNTY RECORDING FEES | $20.00 |
| DEDICATED TRUST FUND COMMISSION | $2.00 |
| COUNTY REALTY TRANSFER FEES | $156.16 |
| STATE REALTY TRANSFER FEES | $389.84 |
| REALTY TRANSFER FEES - NFNR | $9.00 |
| TOTAL | $577.00 |

FT/NT01572

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor's proper corporate officers as of the date at the top of the first page. Its corporate seal is affixed.

By: _____
WILLIAM J. KANE, President

STATE OF NEW JERSEY:
                              SS:
COUNTY OF MIDDLESEX:

I CERTIFY, that on this __18__ day of NOVEMBER, 1996, WILLIAM J. KANE came before me in person and stated to my satisfaction, under oath, that:

(a) he is the President of CRISTO PROPERTY MANAGEMENT, LTD., the entity named in the within instrument, and was fully authorized to and did execute this instrument on its behalf;

(b) this Deed was made for the $156,000.00 as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5).

Signed and sworn before me on
11/18/96

_____
Notary Public

LORRAINE E. KING
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

FT/NT01573

RECORD & RETURN TO:
STANLEY YACKER, ESQ.
220 HWY 34
MATAWAN, NJ 07747
Deed-Bargain & Sale

058879

Prepared by: *Lorraine E. King*
LORRAINE E. KING

# DEED

COUNTY OF MONMOUTH
CONSIDERATION _____
RTF _____ RTF
DATE 3/3/-97 BY _____

**This Deed,** made this 18th day of NOVEMBER , 1996

**Between DONALD DIVINCENZO** located at **326 FISHER AVENUE, NEPTUNE,** N.J.herein designated as Grantor

**And    DONALD DIVINCENZO & CAPITAL ASSETS PROPERTY MANAGEMENT & INVESTMENT, CO., INC.**

DONALD DIVICENZO    AS    TO 40% INTEREST AND CAPITOL ASSETS PROPERTY MANAGEMENT & INVESTMENT, CO., INC. AS TO 60% INTEREST

located at **10 WEST BERGEN PLACE, SUITE 104, RED BANK, NEW JERSEY 07701** herein designated as the Grantee;

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

**Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of **UNDER ONE HUNDRED DOLLARS.** The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (*N.J.S.A.* 46:15-1.1) Municipality of **NEPTUNE**
Block **194**            Lot **188**  Account No.

____ No Property tax identification number is available on the date of this Deed.  (Check this box if applicable.)

**Property.** The Property consists of the land and all the buildings and structures on the land in the **CITY OF NEPTUNE,** County of **MONMOUTH,** the State of New Jersey, and is commonly known as **326 FISHER AVENUE, NEPTUNE, NEW JERSEY** The legal description is:

**SEE ATTACHED SCHEDULE FOR LEGAL DESCRIPTION.**

THE GRANTOR WILL WARRANT, SECURE AND FOREVER DEFEND THE TITLE TO THE SUBJECT PROPERTY.

5579·114
3/3/97

FT/NT01574

COMMONWEALTH LAND
TITLE INSURANCE COMPANY
A Reliance Group Holdings Company

_824 Fisher_

**TITLE INSURANCE COMMITMENT**

Commitment No.

File No. CT-18760(A)

### DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the Township of Neptune, County of Monmouth and state of New Jersey, being more particularly described as follows:

Beginning at a point on the easterly line of Fisher Avenue, distant southerly along the same 278 feet from the intersection with the southerly line of Holly Avenue; thence

1. South 86 degrees 30 minutes 00 seconds East a distance of 149.89 feet to a point; thence

2. South 03 degrees 38 minutes 15 seconds West a distance of 25 feet to a point; thence

3. North 86 degrees 30 minutes 00 seconds West a distance of 149.83 feet to a point on the easterly line of Fischer Avenue; thence

4. Continuing along the same on a course of North 03 degrees 30 minutes 00 seconds East a distance of 25 feet to the point and place of Beginning.

NOTE:  Being Lot(s) 188, Block 194, Tax Map of the Township of Neptune.

Issued By:
COASTAL TITLE AGENCY, INC.
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY
INSTRUMENT NUMBER
1997024517
RECORDED ON
Mar 03, 1997
3:48:38 PM
BOOK:OR-5579 PG:114
Total Pares: 4
COUNTY RECORDING   $22.00
FEES
DEDICATED TRUST     $2.00
FUND COMMISSION
TOTAL              $24.00

FT/NT01575

ITC 1845   AFFIDAVIT OF CONSIDERATION
(RTF-1 (Rev. 1/1/88)

ALL STATE LEGAL SUPPLY CO.
One Commerce Drive, Cranford, N.J. 07016

**STATE OF NEW JERSEY**
**AFFIDAVIT OF CONSIDERATION OR EXEMPTION**
(c. 49, P.L. 1968)
or
**PARTIAL EXEMPTION**
(c. 176, P. L. 1975)
To Be Recorded With Deed Pursuant to c. 49, P.L. 1968, as amended by c. 225, P.L. 1985 (N.J.S.A. 46:15-5 et seq.)

VSI-2

| STATE OF NEW JERSEY | } ss. | FOR RECORDER'S USE ONLY |
| COUNTY OF __MONMOUTH__ | | Consideration $ _____ |
| | | Realty Transfer Fee $ _Exempt_ |
| | | Date ___.91_ By _MBN_ |

*Use symbol "C" to indicate that fee is exclusively for county use.

**(1) PARTY OR LEGAL REPRESENTATIVE** (See Instructions #3, 4 and 5 on reverse side)

Deponent, __DONALD DEVINCENZO__ , being duly sworn according to law upon his/her oath deposes and
(Name)

says that he/she is the __GRANTOR__
(Seller, Buyer, Grantor, Legal Representative, Corporate Officer, Officer of Title Co. Lending Institution, etc.)

in a deed dated __NOVEMBER 18, 1996__ , transferring real property identified as Block No. __194__
(Date of Deed)

Lot No. __188__ located at __326 FISHER AVENUE, NEPTUNE, N.J.__
(Street Address, Municipality, County)

__MONMOUTH COUNTY__ and annexed hereto.

**(2) CONSIDERATION** (See Instruction #6)

Deponent states that, with respect to deed hereto annexed, the actual amount of money and the monetary value of any other thing of value
constituting the entire compensation paid or to be paid for the transfer of title to the lands, tenements or other realty, including the remaining amount
of any prior mortgage to which the transfer is subject or which is to be assumed and agreed to be paid by the grantee and any other lien or encumbrance
thereon not paid, satisfied or removed in connection with the transfer of title is $ _____

**(3) FULL EXEMPTION FROM FEE** Deponent claims that this deed transaction is fully exempt from the Realty Transfer Fee imposed by
c.49, P.L. 1968, for the following reason(s): Explain in detail. (See Instruction #7.) More reference to exemption symbol is not sufficient.

__CONSIDERATION UNDER ONE HUNDRED DOLLARS__

**(4) PARTIAL EXEMPTION FROM FEE** NOTE: All boxes below apply to grantor(s) only. ALL BOXES IN APPROPRIATE
CATEGORY MUST BE CHECKED. Failure to do so will void claim for partial exemption. (See Instructions #8 and #9)

Deponent claims that this deed transaction is exempt from the increased portion of the Realty Transfer Fee imposed by c.176, P.L. 1975 for the
following reason(s):

a) **SENIOR CITIZEN** (See Instruction #8)
☐ Grantor(s) 62 yrs. of age or over.*
☐ One or two-family residential premises.

☐ Owned and occupied by grantor(s) at time of sale.
☐ No joint owners other than spouse or other qualified exempt owners.

b) **BLIND** (See Instruction #8)
☐ Grantor(s) legally blind.*
☐ One or two-family residential premises.

☐ Owned and occupied by grantor(s) at time of sale.
☐ No joint owners other than spouse or other qualified exempt owners.

**DISABLED** (See Instruction #8)
☐ Grantor(s) permanently and totally disabled.*
☐ One or two-family residential premises.
☐ Receiving disability payments.

☐ Owned and occupied by grantor(s) at time of sale.
☐ Not gainfully employed.
☐ No joint owners other than spouse or other qualified exempt owners.

*IN THE CASE OF HUSBAND AND WIFE, ONLY ONE
GRANTOR NEED QUALIFY.

c) **LOW AND MODERATE INCOME HOUSING** (See Instruction #8)
☐ Affordable According to H.U.D. Standards.
☐ Meets Income Requirements of Region.

☐ Reserved for Occupancy.
☐ Subject to Resale Controls.

d) **NEW CONSTRUCTION** (See Instruction #9)
☐ Entirely new improvement.
☐ Not previously used for any purpose.

☐ Not previously occupied.

Deponent makes this Affidavit to induce the County Clerk or Register of Deeds to record the deed and accept the fee submitted herewith in
accordance with the provisions of c. 49, P.L. 1968.

Subscribed and Sworn to before me
this __18th__
day of __NOVEMBER__ , 19 96

_Donald Devincenzo_ (signature)
(Signature of Deponent type above line)

_DONALD DEVINCENZO_
(Name of Grantor type above line)

326 FISHER AVENUE
NEPTUNE, N.J.
(Address of Deponent)

SAME
(Address of Grantor at Time of Sale)

_Lorraine E. King_ (signature)
**LORRAINE E. KING**
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 200_

| FOR OFFICIAL USE ONLY This space for use of County Clerk or Register of Deeds. |
| Instrument Number _____ _____ County |
| Deed Number _____ Book _____ Page _____ |
| Deed Dated _____ Date Recorded _____ |

**IMPORTANT** BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE HEREOF.
This form is prescribed by the Director, Division of Taxation in the Department of the Treasury, as required by law, and may not be altered or amended
without the approval of the Director.

ORIGINAL — White copy to be retained by County.
DUPLICATE — Yellow copy to be forwarded by County to Division of Taxation on partial exemption from fee (N.J.A.C. 18:16—8.12).
TRIPLICATE — Pink copy is your file copy.

(vertical right margin text) WHITE AND YELLOW COPIES MUST BE SUBMITTED WITH DEED TO COUNTY RECORDING OFFICER

FT/NT01576

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to Grantor's acts" (*N.J.S.A.* 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.** This Deed is signed and attested to by the Grantor who has hereunto set their hand and seal the day and year first above written.

Signed, Sealed and Delivered
in the presence of

_____     _____
                                     DONALD DEVINCENZO

STATE OF NEW JERSEY        }
                           }    SS
COUNTY OF MONMOUTH         }

**Be it Remembered,** that on NOVEMBER 18        , 1996, before me, the subscriber, a Notary Public of New Jersey, personally appeared  DONALD DEVINCENZO, who I am satisfied, is the person named in and who executed the within Instrument, and thereupon he acknowledged that he signed, sealed and delivered the same as his act and deed, for the uses and purposes therein expressed, and that the full and actual consideration paid or to be paid for the transfer of title to realty evidenced by the within deed, as such consideration is defined in N.J.S.A. 46:15-5, is UNDER ONE HUNDRED DOLLARS.

_____
LORRAINE E. KING
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 21, 2001

FT/NT01577

WHEN RECORDED MAIL T~   R&R
WALSH SECURITIES, IN        STANLEY YACKER, ESQ.
4 CAMPUS DRIVE              330 HIGHWAY 34 - SUITE 3
PARSIPPANY, NJ  0705       MATAWAN, NJ 07747

Loan Number : 622861

056880

_____[SPACE ABOVE THIS LINE FOR RECORDING DATA]_____

# MORGTAGE

**THIS MORTGAGE** (" Security Instrument") is given on        November  18, 1996
The mortgagor is  DONALD DEVINCENZO, UNMARRIED

("Borrower"). This  Security Instrument is given to

NATIONAL HOME FUNDING
,which is organized and existing
under the laws of   NEW JERSEY                              , and whose principal office and mailing address is
3443 HIGHWAY 9-N; HOLIDAY PLAZA, FREEHOLD, NJ 07728

("Lender"). Borrower owes Lender the principal sum of
One Hundred Seventeen Thousand Dollars And 00/100
Dollars (U.S.$     117,000.00 ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
December  1, 2011       . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security
Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date,
and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, § 1 et seq., and upon such modification,
shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security
Instrument is $    117,000.00      . For these purposes, Borrower does hereby mortgage, grant and convey to Lender the
following described property located in  MONMOUTH                                      County, New Jersey:
SEE LEGAL DESCRIPTION ATTACHED HERETO

CLERK'S OFFICE
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
1997024518
RECORDED ON
Mar 03, 1997
3:48:39 PM
BOOK:MB-6148 PG:395
Total Pages: 10

COUNTY RECORDING    $31.00
FEES
DEDICATED TRUST has the address of  326 FISHER AVENUE                          NEPTUNE
FUND COMMISSION  $2.00                       [Street]                        [City]
TOTAL    $33.00                                                 * THE NOTE THIS SECURITY INSTRUMENT SECURES CONTAINS
New Jersey    07753      ("Property Address");      PROVISIONS FOR A BALLOON PAYMENT.  THE ENTIRE PRINCIPAL
[Zip Code]                              BALANCE OF THE LOAN AND UNPAID INTEREST IS PAYABLE
IN FULL AT MATURITY.
**NEW JERSEY**-Single Family -Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3031 9/90 (page 1 of 6 pages)
Eastern
Software      ITEM 1924 (9012)
CORPORATION

FT/NT01578

*824 Fisher*

**COMMONWEALTH LAND
TITLE INSURANCE COMPANY**
A Reliance Group Holdings Company

**TITLE INSURANCE COMMITMENT**

Commitment No.

File No. CT-18760(A)

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the Township of Neptune, County of Monmouth and state of New Jersey, being more particularly described as follows:

Beginning at a point on the easterly line of Fisher Avenue, distant southerly along the same 278 feet from the intersection with the southerly line of Holly Avenue; thence

1.  South 86 degrees 30 minutes 00 seconds East a distance of 149.89 feet to a point; thence

2.  South 03 degrees 38 minutes 15 seconds West a distance of 25 feet to a point; thence

3.  North 86 degrees 30 minutes 00 seconds West a distance of 149.83 feet to a point on the easterly line of Fischer Avenue; thence

4.  Continuing along the same on a course of North 03 degrees 30 minutes 00 seconds East a distance of 25 feet to the point and place of Beginning.

NOTE:  Being Lot(s) 188, Block 194, Tax Map of the Township of Neptune.

Issued By:
**COASTAL TITLE AGENCY, INC.**
P.O. Box 740, 21 W. Main Street, Suite 2, Freehold, NJ 07728
(908) 308-1660  (800) 521-0378  (908) 775-5543  FAX #(908) 308-1881

FT/NT01579

# BALLOON RIDER

LOAN #   622861

### (Full Repayment Required at Maturity)

THIS BALLOON RIDER is made this 18TH   day of November , 1996   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to   NATIONAL HOME FUNDING

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

326 FISHER AVENUE, NEPTUNE, NJ 07753

(Property Address)

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

The Note is a Balloon Note which means that the amount of my monthly payment is insufficient to repay the Note in full by Maturity. Therefore, the final payment will be significantly larger than the other payments under the Note.

I understand that the Lender is under no obligation to refinance the Note or to modify the Note or reset the Note Rate or to extend the Note Maturity Date or the Maturity Date of this Security Instrument, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

I further understand that should I not repay the Note on or before the Maturity Date, I will be in default, and the Lender will have the right to exercise all of its rights against me because of my default, including the right to foreclosure of the Security Instrument, or other remedies permitted by law.

BY SIGNING BELOW, BORROWER accepts and agrees to the terms and covenants contained in this Balloon Rider.

_Donald Devincenzo_ (Seal)
DONALD DEVINCENZO                                          -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

Balloon Rider                                    (8-2-95) IC-22205-11

FT/NT01580

# 1-4 FAMILY RIDER
## Assignment of Rents

Loan Number: 622861

THIS 1-4 FAMILY RIDER is made this 18th day of November, 1996, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

NATIONAL HOME FUNDING

(the "Lender")

of the same date and covering the property described in the Security Instrument and located at:

326 FISHER AVENUE, NEPTUNE, NJ 07753

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property".

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument                    Form 3170 9/90 (page 1 of 2 pages)

Eastern
Software
CORPORATION   ITEM 1790 (9410)

FT/NT01581

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and; (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
DONALD DEVINCENZO                 -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                          -Borrower

Form 3170 9/90 (page 2 of 2 pages)

FT/NT01582

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property;

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the escrow items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the note.
4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender

**Form 3031  9/90 (page 2 of 6 pages)**

FT/NT01583

requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants 9/90 (page 3 of 6 pages)

FT/NT01584

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance by Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, required immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:(a) 5 days (or such other period as applicable law may

Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT — Uniform Covenants 9/90   (page 4 of 6 pages)

specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**Form 3031  9/90 (page 5 of 6 pages)**

FT/NT01586

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ Other(s) [specify]  LEGAL DESCRIPTION | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
                                                   DONALD DEVINCENZO                 -Borrower

                                                   _____ (Seal)
                                                                                     -Borrower

_____          _____ (Seal)
                                                                                     -Borrower

                                                   _____ (Seal)
                                                                                     -Borrower

STATE OF NEW JERSEY,              Monmouth            County ss:

   On this  18th   day of       November , 1996         ,before me, the subscriber, personally appeared
DONALD DEVINCENZO

                                                                               who, I am satisfied,
   is     the person(s) named in and who executed the within instrument, and thereupon   he
acknowledged that   he    signed, sealed and delivered the same as     his         act and
deed, for the purposes therein expressed.

                                                                               Notary Public
                                        LORRAINE E. KING
                                   NOTARY PUBLIC OF NEW JERSEY
                                   My Commission Expires Feb. 21, 2001

This instrument was prepared by:  SONJI OWENS

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.
Witness:

_____          _____ (Seal)
                                                   DONALD DEVINCENZO                 -Borrower

                                                   _____ (Seal)
                                                                                     -Borrower

                                                   _____ (Seal)
                                                                                     -Borrower

                                                   _____ (Seal)
                                                                                     -Borrower

                                                   Form 3031  9/90 (page 6 of 6 pages)

FT/NT01587