# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

WALSH SECURITIES, INC.,             :
                                     :

        Plaintiff,       :  Civil Action No. 97-cv-3496 (DRD)(MAS)
                                     :

vs.                            :  Hon. Dickinson R. Debevoise, U.S.D.J.
                                     :

CRISTO PROPERTY MANAGEMENT,   :
LTD., a/k/a G.J.L. LIMITED; *et al.*,   :
                                     :

        Defendants.        :
_____

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS WITH PREJUDICE THE BAD FAITH CLAIMS AT PARAGRAPHS 98-100 OF THE FOURTH AMENDED COMPLAINT

_____

STONE & MAGNANINI LLP
150 John F. Kennedy Parkway, 4th Floor
Short Hills, New Jersey 07078
(973) 218-1111

*Attorneys for Plaintiff Walsh Securities, Inc.*

Dated:  December 22, 2011

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................ i

**TABLE OF AUTHORITIES** ....................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................1

**COUNTERSTATEMENT OF FACTS** ......................................................................2

I.   DEFENDANT COMMONWEALTH IS LIABLE FOR WSI'S CLAIMS ON
1507 SUMMERFIELD AVENUE. ................................................................2

II.   DEFENDANT NATIONS IS LIABLE FOR WSI'S CLAIMS ON
104 WEST END AVENUE. .............................................................................6

III.   DEFENDANT FIDELITY IS LIABLE FOR WSI'S CLAIMS ON
1032-1034 BANGS AVENUE. .......................................................................8

**LEGAL STANDARD** .................................................................................................9

**ARGUMENT** ...............................................................................................................11

I.   WSI IS ENTITLED TO SUMMARY JUDGMENT ON BASED ON THE CLOSING
SERVICE PROTECTION LETTERS ISSUED BY THE TITLE INSURANCE
DEFENDANTS. .............................................................................................11

II.   WSI IS ENTITLED TO SUMMARY JUDGMENT ON THE TITLE INSURANCE
POLICIES ISSUED BY THE TITLE INSURANCE DEFENDANTS. .................................11

A.  The Title Insurance Defendants' Policies Provide Coverage Where,
As Here, Title Was Vested Other Than As Described In 'Schedule A'
Of The Policy. ..................................................................................... 12

B. The Title Insurance Defendants' Policies Provide Coverage For
Unmarketability of Title. ....................................................................15

C. WSI Is Entitled To Summary Judgment On Its Additional Title
Policy Claims. .....................................................................................16

III.   THE TITLE INSURANCE DEFENDANTS' MOTION SHOULD BE DENIED BASED
UPON THEIR UNREASONABLE PROCESSING DELAY OF WSI'S CLAIMS. .............17

IV.   THE TITLE INSURANCE DEFENDANTS ARE NOT ENTITLED TO A RULING AS A
MATTER OF LAW THAT THEY HAVE NOT BREACHED ANY FIDUCIARY DUTY TO
WSI. ................................................................................................................19

**CONCLUSION** ..........................................................................................20

i

# TABLE OF AUTHORITIES

## Federal Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................10

*Gallerstein v. Berkshire Life Ins. Co. of Am.*,
   2006 U.S. Dist. LEXIS 64487 (D.N.J. Sept. 11, 2006) .........................................20

*Martin v. Banco Popular de P.R.*,
   379 F. App'x 185 (3d Cir. 2010) ...........................................................................15

*NN&R, Inc. v. One Beacon Ins. Group*,
   2006 U.S. Dist. LEXIS 43109 (D.N.J. June 26, 2006) .......................................9, 10

*Tannerfors v. American Fidelity Fire Insurance Co.*,
   397 F. Supp. 141 (D.N.J. 1975) ...............................................................................2

*Tarsio v. Provident Ins. Co.*,
   108 F. Supp. 2d 397 (D.N.J. 2000) .........................................................................10

*United States ex rel. Don Siegel Constr. Co. v. Atul Constr. Co.*,
   85 F. Supp. 2d 414 (D.N.J. 2000) ......................................................................... 10

## State Cases

*Amidano v. Donnelly*,
   260 N.J. Super. 148 (App. Div. 1992), certif. denied, 133 N.J. 435 (1993) ............................13

*Florio v. Lawyers Title Ins. Corp.*,
   Doc. No. A-0329-04T2, 2006 N.J. Super. Unpub. LEXIS 1099 (App. Div. June 5, 2006)..13-14

*Griggs v. Bertram*,
   88 N.J. 347 (1982) ............................................................................................18, 20

*Keown v. West Jersey Title & Guaranty Co.*,
   161 N.J. Super. 19 (App. Div. 1978) .....................................................................15

*Miglicio v. HCM Claim Management Corp.*,
   288 N.J. Super. 331 (Law Div. 1995) .......................................................................9

*Pickett v. Lloyd's and Peerless Ins. Agency, Inc.*,
   131 N.J. 457 (1993) ...........................................................................2, 10, 17, 20

*Price v. N.J. Mfrs. Ins. Co.*,
   182 N.J. 519 (2005) ..............................................................................................9

*Sandler v. New Jersey Realty Title Ins. Co.*,
   36 N.J. 471 (1962) ..............................................................................................9

*Sears Mortgage Corp. v. Rose*,
   134 N.J. 326 (1993) ..............................................................................................9

*Silverstein v. Last*,
   156 N.J. Super. 145 (App. Div. 1978) ..................................................................19

*Walker Rogge, Inc. v. Chelsea Title & Guaranty Co.*,
   116 N.J. 517 (1989) ............................................................................................12

## **Federal Rules**

Fed. R. Civ. P. 56(a) ................................................................................................9

## **Miscellaneous**

1 Allan D. Windt, INSURANCE CLAIMS AND DISPUTES, 5th § 2:22 (2011) .....................17

2 Joyce Palomar, TITLE INSURANCE LAW § 5:29 (2010) ............................................13

Black's Law Dictionary (9th ed. 2009)........................................................................3

## PRELIMINARY STATEMENT

Defendants Commonwealth Land Title Insurance Co. ("Commonwealth"), Nations Title Insurance of New York, Inc. ("Nations") and Fidelity National Title Insurance Co. of New York ("Fidelity") (collectively, "Title Insurance Defendants") once again attempt to brush aside their liability, this time with a four-page brief that is utterly devoid of any evidence or citations to the record. They overlook their agent's and "approved attorneys'" continuous and necessary involvement in the mortgage fraud scheme. They avoid the fact they have not paid a single claim notwithstanding their admissions that WSI's losses were covered. And, they sidestep their haphazard investigation by reciting only *half* the law in New Jersey. Their gloss on the law and the facts should be dismissed.

The undisputed facts of this case are that the Title Insurance Defendants' agent, Coastal Title Agency ("Coastal Title"), issued title commitments, closing service protection letters ("CPLs"), and title policies that were materially misleading: Coastal Title conducted title searches prior to issuing title policies; but, the title policies issued to Walsh Securities, Inc. ("WSI") did not identify or except from coverage deeds that adversely affecting WSI's lien position and which rendered title in the properties unmarketable.

There is no question that the Title Insurance Defendants breached their fiduciary obligations to provide coverage on WSI's policy claims, which are based on the absence of the intervening deeds that were known, or should have been known, to Coastal Title. By ceasing their investigation and not examining the cause of these title defects, the Title Insurance Defendants further engaged in bad faith processing delays. Based on this record, the Title Insurance Defendants are not entitled to a ruling that they have not breached any fiduciary duty to WSI. To the contrary, any reasonable jury could find in favor of WSI's bad faith claim

because the Title Insurance Defendants have not paid or settled a single claim, and they have never attempted to rectify the material errors that were in the record as of the very date their insurance policies were issued.

## COUNTERSTATEMENT OF FACTS

The factual and procedural background of this case are described at length in WSI's Motion for Partial Summary Judgment on the Title Insurance Defendants' Liability.  (Doc. [478]).  WSI therefore incorporates by reference its affirmative brief and Rule 56.1 Statement to that Motion as though fully set forth herein.

The Title Insurance Defendants have not settled a single insurance claim made by WSI over 14 years ago.  In light of the fact that the Title Insurance Defendants have not analyzed one of those claims in their brief, WSI provides the following examples of the reoccurring fraudulent scheme indicating that the Title Insurance Defendants and their agents breached their duties of good faith and fair dealing.  As set forth in its Motion for Partial Summary Judgment, WSI is entitled to summary judgment on the exemplar properties below as well as the loans identified in its Motion for Partial Summary Judgment.

I.   DEFENDANT COMMONWEALTH IS LIABLE FOR WSI'S CLAIMS ON 1507 SUMMERFIELD AVENUE.

Notwithstanding its fiduciary obligations,[1] on October 14, 1996, Commonwealth's agent, Coastal Title, issued two different title commitments on 1507 Summerfield Avenue, Asbury Park, New Jersey ("1507 Summerfield") for two different purchasers.  The two title commitments

---

[1] It is well settled that an insurance carrier has a fiduciary relationship with its insured and the standard of conduct imposed upon the carrier in its fiduciary relationship is one of good faith and fair dealing with its insured's interests in mind.  *Tannerfors v. American Fidelity Fire Insurance Co.*, 397 F. Supp. 141, 158 (D.N.J. 1975); *see also Pickett v. Lloyd's*, 131 N.J. 457, 467 (1993). An insurer must accord the interest of its insured the same faithful consideration it gives its own interests.

were identified by similar file numbers: CT-18721 and CT-18721(A).  CT-18721 was issued to

Cristo, and CT-18721(A) was issued on the same date to strawbuyer Pamela Ricigliano and to

"National Home Funding, Inc., its successors and/or its assigns."  (Shooman Certif., Ex. 1-A,

CT-18721 title commitment; Ex. 1-B, CT-18721(A) title commitment).

Even though these documents were issued on the same day, on the same property, by the

same title agency, each commitment identifies different owners in "Fee Simple."[2]  On Schedule

A of CT-18721, 1507 Summerfield Avenue was described as being "owned [on October 14,

1996], by The Secretary of Housing and Urban Development."  However, on CT-18721(A), the

property was described as being "owned [on October 14, 1996], by Cristo.  (Shooman Certif.,

Ex. 1-C, Comparison of 'Schedule As' for CT-18721 and CT-18721(A)).

Schedule B of the commitments set forth the requirements for the issuance of a title

insurance policy.  According to CT-18721, Coastal Title represented that according to its title

search, the only documents required to create "the interest in the land . . . to be insured," was a

deed from the Secretary of HUD to Cristo.  However, on the same date, Coastal Title represented

on CT-18721(A) that the documents required to create "the interest in the land . . . to be insured,"

were a deed from Cristo to the strawbuyer and the mortgage by the strawbuyer.  As of the date

that Coastal Title issued this title commitment, however, Cristo was not the owner of 1507

Summerfield Avenue.  (Shooman Certif., Ex. 1-D, Comparison of 'Schedule Bs' for CT-18721

and CT-18721(A)).  There were reasons for these deceptive practices.

These blatant misrepresentations were designed to conceal the conspirators' fraudulent

scheme to obtain the funds used to purchase the original sale (to Cristo) before the property was

---

[2] Black's defines fee simple as "[a]n interest in land that, being the broadest property interest
allowed by law, endures until the current holder dies without heirs."  Black's Law Dictionary
(9th ed. 2009).

purchased by the strawbuyer (from Cristo).  Coastal Title admitted to adding the "(A)" because the conspirators needed to provide WSI with a "clear" or "clean" title commitment that did not disclose that Kane still needed to purchase the property that he was selling so that WSI would table fund the transaction in the belief that it would have a valid first lien; Coastal Title had never done this either before or since the fraud.  (Shooman Certif., Ex. F, Coastal 46-48, 55-56).  Cristo *did not own* 1507 Summerfield Avenue at the time that Commonwealth's agent issued these title commitments even though Schedule A and Schedule B of CT-18721(A) indicate that it did.  The CT-18721(A) commitment contained the following noteworthy promise:

> If [Commonwealth has] any liability to you for any loss you incur because of an error in this Commitment, our liability will be limited to your actual loss caused by your relying on this Commitment when you acted in good faith to: comply with the Requirements shown in Schedule B-Section 1. . ."

(Shooman Certif., Ex. 1-A at WSI 058173 (Conditions)).  On October 30, 1996, Coastal Title issued a CPL, which provided, among other things, that Commonwealth would insure losses when its title insurance "is specified for your protection" on the 1507 Summerfield Avenue transaction that were caused by Yacker's (1) "[f]ailure . . . to comply with your written closing instructions," or (2) "[f]raud or misapplication . . . in handling your funds."  (Shooman Certif., Ex. 1-E, CPL).  It is undisputed that the closing attorneys were engaged in a fraud to steal WSI's closing funds.

On November 25, 1996, several weeks after Coastal Title issued the title insurance commitments and the CPL, William B. Hill sold 1507 Summerfield Avenue to Cristo for $37,500.  (Shooman Certif., Ex. 1-F, deed from Hill to Cristo).

On December 18, 1996, WSI table funded the purchase of 1507 Summerfield Avenue pursuant to a $110,625 mortgage – nearly three times the amount as purchased by Cristo.

(Shooman Certif., Ex. 1-G, WSI mortgage).  Even though the property was sold to Cristo for

$37,500, Cristo doing-business-as G.J.L. Limited deeded 1507 Summerfield Avenue to

strawbuyer-Ricigliano for $147,500.  (Shooman Certif., Ex. 1-H, deed from G.J.L. to

strawbuyer-Ricigliano).  Had the Title Insurance Defendants' "approved attorney" not been part

of the fraudulent scheme, any attorney "worth his salt" would have disclosed this fact to WSI

before its money was wired to fund the loan.  The difference between the sale amount and

mortgage amount gave the fictitious appearance that strawbuyer-Ricigliano was using some of

her own funds to purchase 1507 Summerfield Avenue.  In fact, *no* strawbuyers provided any

down payments.  Approved closing attorney Yacker bolstered this lie with another lie that he was

holding the strawbuyer's money in escrow as a way of suggesting that the purchaser was *bona*

*fide*.  (Magnanini Certif.,[3] Ex. P, Yacker 100:7-102:9; Ex. Q, King 120:23-121:7).

On December 27, 1996, Yacker prepared a deed that gave Capital Assets a sixty percent

interest in 1507 Summerfield Avenue (the "joint venture deed"), which was an act of immediate

default under WSI's mortgages and rendered the property unmarketable.  (Shooman Certif., Ex.

1-I, Joint Venture Deed).

On April 9, 1997, the joint venture deed was recorded prior to the mortgage by Coastal

Title.[4]  (Ex. 1-J, Comparison of the Monmouth County Clerk's time stamps for the Joint Venture

Deed (Instrument Number 1997038972) and WSI's Mortgage (Instrument Number 199703897)).

The conspirators specifically directed the deeds and mortgages to be recorded in this order.

(Magnanini Certif., Ex. Q, King 80:6-25).  When confronted with this issue, the Title Insurance

---

[3] Filed in Support of Plaintiff's Motion for Summary Judgment.  (Doc. [478-5]).

[4] This was one of hundreds of documents filed by Coastal Title involving the fraudulent
transactions that had not been recorded by "approved attorney" Yacker.  Coastal Title had never
done a similar mass filing before or since the fraud.

Defendants admitted that because the joint venture deed was recorded prior to the mortgage, the mortgage was not recorded in a first lien position. (Magnanini Certif., Ex. M, Fidelity 87:2-6; 104:22-105:6).

Also on April 9, 1997, Commonwealth issued a title policy. (Shooman Certif., Ex. 1-K, Commonwealth's Title Policy). Commonwealth's title insurance policy provided coverage for, among other things, losses "sustained or incurred by the insured by reason of: 1. Title to the estate or interest described in Schedule A being vested other than as stated therein." (*Id.* at CTB 0496). At Schedule A, the policy states "[t]he estate or interest in [1507 Summerfield Avenue] . . . which is encumbered by the insured mortgage is: Fee Simple and is [on April 9, 1997] vested in Pamela Ricigliano." (*Id.* at CTB 0497).

Notwithstanding the promises and guarantees provided by Commonwealth's (a) title commitment, (b) CPL, and (c) title insurance policy, Commonwealth has refused to pay WSI's claim for indemnification for the losses on 1507 Summerfield Avenue resulting from the actions of Commonwealth's title agent and its approved attorney, Stanley Yacker.

With Coastal Title's assistance, the conspirators used the same scheme described above on numerous other properties. The following two exemplar properties outline the same assurances that were offered by Nations and Fidelity prior to and after the sale of two additional properties insured by Nations and Fidelity for which WSI table funded loans.

## II.   DEFENDANT NATIONS IS LIABLE FOR WSI'S CLAIMS ON 104 WEST END AVENUE.

May 21, 1996
- Coastal Title issued two title commitments (CT-17765 and CT-17765(A)) on 104 West End Avenue, Neptune, New Jersey, on the same day, to different proposed insureds. (Shooman Certif., Ex. 2-A, CT-17765 title commitment; Ex. 2-B, CT-17765(A) title commitment).
- **Schedule A:** CT-11765, which was issued to Cristo, correctly provides at that "Title to the Fee Simple estate . . . referred to in this Commitment is at [May 21, 1996] vested in Marjorie Hawk by deed from Primere Loiseau

and Michele Loiseau. . . ."  However, CT-11765(A), which was issued to strawbuyer George Leodis and the lender, falsely provides that "Title to the Fee Simple estate . . . referred to in this Commitment is at [May 21, 1996] vested in Cristo Property Management, Ltd. by deed from Bristol Oaks, L.P. . . ."  (Shooman Certif., Ex. 2-C, Comparison of 'Schedule As' for CT-17765 and CT-17765(A)).

- **Schedule B:** CT-11765 requires first the deed from the Sheriff of Monmouth County to Bristol Oaks and a deed by Bristol to Cristo. Whereas, CT-11765(A) provides that as of May 21, 1996, only the deed from Cristo to strawbuyer Leodis is required.  (Shooman Certif., Ex. 2-D, Comparison of 'Schedule Bs' for CT-17765 and CT-17765(A)).

July 10, 1996

- Coastal Title invoiced Richard Pepsny in the amount of $974 for, among other things, the cost of a CPL and the first premium for a title insurance policy.  (Shooman Certif., Ex. 2-E, invoice from Coastal Title).
- Coastal Title issued a CPL on behalf of Nations on the proposed sale of 104 West End Avenue to strawbuyer Leodis.  (Shooman Certif., Ex. 2-F, CPL).
- Stanley Yacker pays Coastal $974 on behalf of strawbuyer Leodis. (Shooman Certif., Ex. 2-G, check from Yacker to Coastal Title).

July 25, 1996

- Citicorp North America, Inc. sold 104 West End Avenue to Cristo for $44,720.  (Shooman Certif., Ex. 2-H, deed Citigroup to Cristo).
- WSI table funded the purchase of 104 West End Avenue by strawbuyer Leodis from Cristo with a $93,750 mortgage – over twice the amount paid by Cristo.  (Shooman Certif., Ex. 2-I, deed Cristo to Leodis; Ex. 2-J, WSI Mortgage).
- Strawbuyer Leodis deeded a sixty percent interest to defendant Capital Assets pursuant to a joint venture agreement.  (Shooman Certif., Ex. 2-K, Joint Venture Deed).

May 6, 1997

- The Leodis-Capital Assets deed giving away a sixty percent interest in the property is recorded before (Instrument Number 199705923) the WSI mortgage to Leodis is recorded last (Instrument Number 1997050924). (Shooman Certif., Ex. 2-L, Comparison of the Monmouth County Clerk's time stamps for the Joint Venture Deed and WSI's Mortgage).

July 1, 1997

- The title insurance policy states that as of May 21, 1996, the estate is vested fee simple in strawbuyer Leodis.  As of May 21, 1996, however, the 104 West End Avenue had not even been sold to Cristo.  Moreover, as of the May 6, 1997, strawbuyer Leodis had conveyed a sixty percent interest in the property to Capital Assets and was therefore not an owner in fee simple on the day the policy was issued.  (Shooman Certif., Ex. 2-M, Fidelity's Title Policy).

### III.   DEFENDANT FIDELITY IS LIABLE FOR WSI'S CLAIMS ON 1032-1034 BANGS AVENUE.

Oct. 14, 1996
- Coastal Title issued two title commitments (CT-18718 and CT-18718(A)) on 1032-1034 Bangs Avenue, Asbury Park, New Jersey, on the same day, to different proposed insureds.  (Shooman Certif., Ex. 3-A, CT-18718 title commitment; Ex. 3-B, CT-18718(A) title commitment).
- **Schedule A:** CT-18718, which was issued to Cristo, correctly provides at that "Title to the Fee Simple estate . . . referred to in this Commitment is [on May 21, 1996] vested in Elaine M. Smalls . . . by Deed from Alexander Bell . . . ."  However, CT-18718(A), which was issued to strawbuyer Alicia Juergensen and the lender, falsely provides that "Fee Simple interest in the land described in this Commitment is owned, [on Oct. 14, 1996], by Cristo . . . by deed from Elaine Smalls. . . ."  (Shooman Certif., Ex. 3-C, Comparison of 'Schedule As' for CT-18718 and CT-18718(A)).
- **Schedule B:** CT-18718 requires first the deed from Elaine Smalls to Cristo.  Whereas, CT-18718(A) provides that as of Oct. 14, 1996, only the deed from Cristo to strawbuyer Juergensen is required.  (Shooman Certif., Ex. 3-D, Comparison of 'Schedule Bs' for CT-18718 and CT-18718(A)).

Oct. 23, 1996
- Elaine Smalls sold 1032-1034 Bangs to Cristo for $42,500.  (Shooman Certif., Ex. 3-E, deed Smalls to Cristo).

Oct. 30, 1996
- Coastal invoiced Stanley Yacker in the amount of $1,185 for, among other things, the cost of a CPL and the first premium for a title insurance policy.  (Shooman Certif., Ex. 3-F, Coastal Title invoice).
- Coastal Title issued a CPL on behalf of Nations on the proposed sale of 1032-1034 Bangs to strawbuyer-Juergensen.  (Shooman Certif., Ex. 3-G, CPL).

Nov. 13, 1996
- WSI table funded the purchase of 1032-1034 Bangs by strawbuyer-Juergensen from Cristo with a $135,000 mortgage – over three times the amount paid by Cristo.  (Shooman Certif., Ex. 3-H, deed Cristo to strawbuyer-Juergensen; Ex. 3-I, WSI Mortgage).
- Strawbuyer-Juergensen deeded a sixty percent interest to defendant Capital Assets pursuant to a joint venture agreement.  (Shooman Certif., Ex. 3-J, Joint Venture Deed).

Nov. 19, 1996
- Stanley Yacker pays Coastal $1,185 on behalf of strawbuyer Juergensen.  (Shooman Certif., Ex. 3-K, Yacker payment to Coastal Title).

April 9, 1997
- The Juergensen-Capital Assets deed giving away a sixty percent interest in the property (Instrument Number 1997038982) is recorded before the WSI

mortgage to strawbuyer-Juergensen (Instrument Number 1997038988). (Shooman Certif., Ex. 3-L, Comparison of the Monmouth County Clerk's time stamps for the Joint Venture Deed and WSI's Mortgage).

May 27, 1997
- Fidelity issues a title insurance policy with an effective date of April 9, 1997.  According to the policy, 1032-1034 Bangs is vested in fee simple in strawbuyer Juergensen as of April 9.  As of the April 9, however, strawbuyer Juergensen had conveyed a sixty percent interest in the property to Capital Assets and was therefore not an owner in fee simple on the day the policy was issued.  (Shooman Certif., Ex. 3-M, Fidelity's Title Policy).

## **LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A motion or summary judgment must be denied when competent evidence in the record, read in the light most favorable to the non-moving party, would allow a reasonable finder of fact to resolve the issue in the non-moving party's favor.  *See NN&R, Inc. v. One Beacon Ins. Group*, 2006 U.S. Dist. LEXIS 43109, at *14 (D.N.J. June 26, 2006).

In New Jersey, "every insurance contract contains an implied covenant of good faith and fair dealing."  *Price v. N.J. Mfrs. Ins. Co.*, 182 N.J. 519, 526 (2005) (citing *Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 347 (1993)).  "Insurance policies, however, are not ordinary contracts.  Rather, they are contracts of adhesion between parties who are not on an equal footing."  *Sears Mortgage*, 134 N.J. at 347.  Title insurance policies "must be liberally construed in favor of the insured and strictly construed against the insurer."  *Sandler v. New Jersey Realty Title Ins. Co.*, 36 N.J. 471, 479 (1962).  "Both the agent of the insurer and the insurer owe fiduciary duties to the insured, which includes the duty of good faith and fair dealing in the performance and enforcement of the insurance contract."  *Miglicio v. HCM Claim Management Corp.*, 288 N.J. Super. 331, 339 (Law Div. 1995).

9

Under *Pickett v. Lloyd's*, the New Jersey Supreme Court held that "*the agent of the insurer owes a fiduciary duty to the insured is that the principal owes an equal duty.*"  *Pickett v. Lloyd's and Peerless Ins. Agency, Inc.*, 131 N.J. 457, 467 (1993) (emphasis added).  WSI can establish a bad faith claim where either (1) the Title Insurance Defendants lacked a "fairly debatable" reason for failing to pay a claim, or (2) where there was unreasonable delay in processing WSI's claim.  *Pickett*, 131 N.J. at 481.  *But see Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 401-402 (D.N.J. 2000) ("doubt[ing] the wisdom of" *Pickett* since "the jury may ultimately reject the insurer's evidence and find that the insurer possessed no basis to reject plaintiff's claim."); *United States ex rel. Don Siegel Constr. Co. v. Atul Constr. Co.,* 85 F. Supp. 2d 414, 420 (D.N.J. 2000) (finding that "it is possible that a reasonable jury could conclude that defendant . . . acted with bad faith.  Accordingly, an entry of summary judgment is not appropriate at this time."); *NN&R, Inc. v. One Beacon Ins. Group*, 2006 U.S. Dist. LEXIS 43109 (D.N.J. June 26, 2006) (denying summary judgment on bad faith where there existed material questions of fact as to insurer's processing delay).  In evaluating whether summary judgment is warranted, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Given the involvement of Coastal Title and the Title Insurance Defendants' "approved attorneys," WSI is entitled to summary judgment on its CPL and policy claims on 1507 Summerfield Avenue, 104 West End Avenue and 1032-1034 Bangs Avenue and therefore its bad faith claims survive.

## ARGUMENT

**I.  WSI IS ENTITLED TO SUMMARY JUDGMENT ON BASED ON THE CLOSING SERVICE PROTECTION LETTERS ISSUED BY THE TITLE INSURANCE DEFENDANTS.**

As set forth in its Motion for Partial Summary Judgment on Liability, the Title Insurance Defendants issued CPLs on 1507 Summerfield Avenue, 104 West End Avenue and 1032-1034 Bangs Avenue.  WSI incorporates herein by reference its moving brief (and its forthcoming reply brief) pertaining to its CPL claims.  The Title Insurance Defendants' motion should be denied because as set forth in its Motion for Partial Summary Judgment WSI is entitled to summary judgment on its CPL claims under *Sears Mortgage Corp. v. Rose* and its progeny.

**II.  WSI IS ENTITLED TO SUMMARY JUDGMENT ON THE TITLE INSURANCE POLICIES ISSUED BY THE TITLE INSURANCE DEFENDANTS.**

The Title Insurance Defendants issued *standard* ATLA policies.  Each of the policies provided the same coverage, protecting WSI:

- where the title or interest is vested other than as described in Schedule A;
- for unmarketability of title;
- where there is a defect in or lien or encumbrance on the title;
- where the lien of the insured mortgage is invalid or unenforceable;
- where there is a prior lien or encumbrance over the lien of the insured mortgage; and
- the invalidity or unenforceability of an assignment or the failure of the assignment to vest free and clear title to the mortgage in the assignee.

Despite their admissions that coverage was triggered under each of these clauses, for more than fourteen years the Title Insurance Defendants have refused to pay WSI's claims or offer any settlement on 1507 Summerfield Avenue, 104 West End Avenue and 1032-1034 Bangs Avenue or any of the numerous other properties on which WSI moved for partial summary judgment.

> ### A. The Title Insurance Defendants' Policies Provide Coverage Where, As Here, Title Was Vested Other Than As Described In 'Schedule A' Of The Policy.

The Title Insurance Defendants agreed to insure the mortgages on 1507 Summerfield Avenue, 104 West End Avenue and 1032-1034 Bangs Avenue against any loss or damage by reason of "Title to the estate or interest described in Schedule A being vested other than as stated therein." (Shooman Certif., Exs. 1-K; 2-M; 3-M, Title Insurance Defendants' title policies). The New Jersey Supreme Court recognizes that "[i]f the title company fails to conduct a reasonable title examination or, having conducted such an examination, fails to disclose the results to the insured, then it runs the risk of liability under the policy. *In many, if not most, cases conduct that would constitute the failure to make a reasonable title search would also result in a breach of the terms of the policy*." *Walker Rogge, Inc. v. Chelsea Title & Guaranty Co.*, 116 N.J. 517, 540 (1989) (emphasis added).

> When a mortgage lender or a purchaser of real property orders title insurance, traditionally, the title insurance company's first step has been to search the chain of title. Title insurance company employees then determine the sufficiency of each instrument in the chain of title to transfer title, and whether the title is subject to any liens or encumbrances. When a title insurance company's preliminary title search reveals a title defect or encumbrance that presents a greater risk of loss than the company is willing to assume, the company lists it in Schedule B of the commitment for title insurance (also called a title insurance binder) as a "Special Exception" from the coverage of any policy to be issued.
>
> *        *        *
>
> [If] a title insurer and title insurance applicant do agree on final terms of a policy to be issued, and the applicant proceeds to acquire the title, insurance coverage begins on the date the applicant acquires the title, though the title policy has not yet been issued. The title insurer does not normally issue a policy until after the closing of the transaction in which the insured acquires the insured title. *This practice permits the instruments through which the insured takes title, and any other items recorded between the date of the original search and the closing, to be included within the policy's coverage.*

12

2 Joyce Palomar, TITLE INSURANCE LAW § 5:29 (2010) (emphasis added).  It is undisputed that
the Title Insurance Defendants did not except the intervening joint venture deeds from their title
policies.  (Shooman Certif., Exs. 1-K; 2-M; 3-M, Title Insurance Defendants' title policies).  It is
also undisputed that the Title Insurance Defendants conducted title searches prior to issuing their
title policies.  (Magnanini Certif., Ex. B, Commonwealth 79:3-15).  It is also undisputed that the
Title Insurance Defendants' policies should be strictly construed in favor of WSI and against the
Defendants.

The Title Insurance Defendants have never stated any reason for denying coverage under
the policies or CPLs issued for 1507 Summerfield Avenue, 104 West End Avenue and 1032-
1034 Bangs Avenue, and they have failed to do so in their moving brief.  Indeed, when
confronted about the intervening joint venture deeds, they admitted that the mortgage did not
have a lien on the entire property.  (Magnanini Certif., Ex. M, Fidelity 99:19-24).   Under New
Jersey law, "exceptions to coverage are construed *strictly* against the insurer."  *Amidano v.
Donnelly*, 260 N.J. Super. 148, 154 (App. Div. 1992) (emphasis added), certif. denied, 133 N.J.
435 (1993).

In *Amidano*, the New Jersey Appellate Division examined the absence of an easement
from a title insurance policy and held that the title insurer "knew or should have known" from
the title search that it commissioned, and "having failed to specifically to except" the easement,
the title insurer "must bear the risk of loss. . . ."  *Id.* at 155.  "[The insurer's] policy did not
adequately except the . . . easement from the . . . policy, nor did [it] properly disclose existence
of that easement.  Consistent with their objectively reasonable expectations . . . and the doctrine
of liberal construction against hidden insurance contract pitfalls . . .  the [insureds] are entitled to
be covered by their title policy."  *Id.* at 158.  *See also Florio v. Lawyers Title Ins. Corp.*, Doc. No.

A-0329-04T2, 2006 N.J. Super. Unpub. LEXIS 1099 (App. Div. June 5, 2006) (title insurer liable to defend and indemnify plaintiffs in the absence of an exception in the title policy).

The same reasoning applies here. The Title Insurance Defendants' attempt to avoid liability caused by their agent is transparent and unpersuasive. Coastal Title was their authorized agent and its actions benefited the Title Insurance Defendants. The agency agreement between Commonwealth and Coastal states that Coastal was appointed "[t]o originate applications for title insurance . . . examine titles to real estate, to prepare and issue commitments . . . including the removal of objections on commitments . . . and to issue policies of title insurance." (Shooman Certif., Ex. 4, Commonwealth-Coastal Title agency agreement). In exchange, Commonwealth agreed to pay Coastal on each policy issued. (*Id.* at COM 8). Even though a premium was paid for the 1507 Summerfield Avenue title insurance policy, Commonwealth has never refunded that money to WSI.

According to their agency agreements, Fidelity and Nations appointed Coastal Title "to countersign and issue title insurance commitments, binders, guarantees, endorsements, title insurance policies of [Fidelity], or any other form whereby [Fidelity] assumes liability." (Shooman Certif., Ex. 5, Fidelity and Nations agency agreement with Coastal Title). For doing so, Fidelity agreed to pay Coastal Title a percentage of the total premiums on issued policies with a substantial bonus potential. (*Id.* at FY 13005-07). Although premiums were paid to Fidelity on 104 West End Avenue and 1032-1034 Bangs Avenue, Fidelity has never returned those funds to WSI.

As a result of their agent's actions, which were specifically authorized by contract, on the effective dates of the title insurance policies for 1507 Summerfield Avenue, 104 West End Avenue and 1032-1034 Bangs Avenue, intervening deeds (*i.e.*, the joint venture deeds) were of

record that affected WSI's insured interest.  This same scenario occurred on countless other

properties.  A sixty percent interest in those properties had been deeded away and recorded prior

to WSI's mortgage because of the conduct of the Title Insurance Defendants' "approved

attorneys" and their agent, Coastal Title.  As a result of their failure to conduct an adequate title

search, title to the interest was *not* vested as stated in Schedule A.

The Title Insurance Defendants should not be entitled to a windfall of receiving the

premiums on those properties, never returning those proceeds, and be allowed to disclaim

coverage given their agent's involvement.  Therefore, under the very terms of the policies they

issued, WSI is entitled to summary judgment against the Title Insurance Defendants and its

claims for bad faith survive.

> **B.** **The Title Insurance Defendants' Policies Provide Coverage For Unmarketability of Title.**

Without any limitations, the Title Insurance Defendants insured against the

unmarketability of the title.  As set forth in WSI's motion for partial summary judgment, which

is incorporated herein by reference, New Jersey courts have uniformly held that "[a] marketable

title is one that is *relatively free from doubt*, such that in a suit for specific performance a court

would compel the prospective purchaser to accept the title."  *Keown v. West Jersey Title &*

*Guaranty Co.*, 161 N.J. Super. 19, 23 (App. Div. 1978) (emphasis added).  *See also Martin v.*

*Banco Popular de P.R.*, 379 F. App'x 185, 189 (3d Cir. 2010) ("Title is not marketable if there is

a reasonable fear that another entity . . . retains the right to use or transfer the property.")  It is

undisputed that because of the joint venture deeds, Capital Assets could assert viable claims of

interest in the property.  If a potential buyer attempted to purchase a property at issue, it would

require the consent of the *both* the strawbuyer *and* Capital Assets.  Neither could lawfully

convey the property without disclosing the existence of the other's partial interest.  Simply stated,

it cannot be said that title in 1507 Summerfield Avenue, 104 West End Avenue and 1032-1034 Bangs Avenue were "relatively free of doubt."  It is undisputed that title in these properties was unmarketable after the title insurance policies were issued; therefore, WSI is also entitled to summary judgment and its bad faith claims should survive.

      **C.**      ***WSI Is Entitled To Summary Judgment On Its Additional Title Policy Claims.***

      For the same reasons stated above, WSI is entitled summary judgment on the additional coverages under the Title Insurance Defendants' policies, namely: (1) because there were "defect[s] in or lien[s] or encumbrance[s] on the title[s];" (2) because of "[t]he invalidity or unenforceability of the lien of the insured mortgage[s] upon the title[s];" (3) there were "lien[s] or encumbrance[s] over the lien of the insured mortgage[s];" and (4) because of "the invalidity or unenforceability of [the] assignment[s] of the insured mortgage[s]."  (Shooman Certif., Exs. 1-K; 2-M; 3-M, Title Insurance Defendants' title policies).  The Title Insurance Defendants' corporate representative admitted that WSI's mortgage did not fully encumber the property:

> . . . the fact that the mortgage is recorded after a deed that partially conveys out interest in the property, which then are not encumbered by the mortgage, I think there's a problem with the lien of the mortgage on the entire 100 percent interest in the property.
>
> *         *         *
>
> It appears that it would be covered absent any relevant exclusions or violations of other terms or conditions.

(Magnanini Certif., Ex. M, Fidelity 99:19-100:9).  They further acknowledged that the joint venture deeds were "[a]n interest in a property had been conveyed to another party who didn't sign the mortgage, so the mortgage was not effective to encumber the interest of the party that didn't sign it."  (Magnanini Certif., Ex. M, Fidelity 104:17-21).  As a result, the insured mortgages on 1507 Summerfield Avenue, 104 West End Avenue and 1032-1034 Bangs Avenue

were rendered unenforceable.  The Title Insurance Defendants' admissions alone trigger coverage under policies, and yet they have never offered a single payment on these properties.

The Title Insurance Defendants have not established *any* debatable reason for denying WSI's policy claims for the defects caused by the intervening joint venture deeds that were recorded prior to WSI's mortgages on 1507 Summerfield Avenue, 104 West End Avenue and 1032-1034 Bangs Avenue.  "When there is no dispute as to the existence of coverage for a portion of the insured's claim, the carrier should pay that amount.  It should not withhold payment on the ground that there is a dispute as to the remainder of the claim."  1 Allan D. Windt, INSURANCE CLAIMS AND DISPUTES, 5th § 2:22 (2011).  Despite their admissions that the losses were covered losses, the Title Insurance Defendants have not specified why they have not paid the claims on these properties because their actions have been indefensible.  As a result, WSI is entitled to summary judgment on these properties and its bad faith claim survives.

### III.   THE TITLE INSURANCE DEFENDANTS' MOTION SHOULD BE DENIED BASED UPON THEIR UNREASONABLE PROCESSING DELAY OF WSI'S CLAIMS.

The Title Insurance Defendants completely ignore the fact that *Pickett* identifies *two* types of bad faith by insurers.  The New Jersey Supreme Court held that insurer's conduct constitutes bad faith in *delaying the processing* of a valid claim when the insurer's conduct was unreasonable, and the insurer knew that its conduct was unreasonable or it recklessly disregarded the fact that its conduct was unreasonable.  *Pickett*, 131 N.J. at 473-74.  In *NN&R, Inc. v. One Beacon Ins. Group*, Judge Simandle dismissed a policyholder's claim alleging that the insurer had denied coverage in bad faith, but denied summary judgment on the policyholder's accompanying claim that the insurer had processed the claim in bad faith because "*there are questions of fact* as to whether any 'valid reasons existed to delay processing the claim and [whether] the insurance company knew or recklessly disregarded the fact that no valid reasons

supported the delay.'" 2006 U.S. Dist. LEXIS 43109, at *36-39, 45 (D.N.J. June 26, 2006) (emphasis added). WSI put the Title Insurance Defendants on notice of their claims in July 1997. Since then, the Title Insurance Defendants have never responded to WSI's demand for coverage, much less processed a single claim, including its claims on 1507 Summerfield Avenue, 104 West End Avenue and 1032-1034 Bangs Avenue.

Amazingly, Fidelity issued a memorandum directing all "Agents and Approved Attorneys" to cease business with WSI only days after it received WSI's notice of claims. (Magnanini Certif., Ex. N). Fidelity had not even interviewed its agent, Coastal Title, at that point – it waited another six months. (Shooman Certif., Ex. 6, Notes from Fidelity's Investigation). Nations admitted that it had not conducted title searches on every property at issue to determine whether WSI held first lien position. (Magnanini Certif., Ex. G, Nations 35:18-36:1; 36:20-37:8). Even though it considered WSI's claims a "major claim," Commonwealth neither interviewed anyone at WSI (Magnanini Certif., Ex. I, Koch 11:19-20), nor any of their "approved attorneys" who conducted the fraudulent closings. (*Id.* at 12:3-11). Commonwealth's investigators never prepared notes or a written summaries of their findings (*Id.* at 18:19-21; 20:4-8; 50:7-14; Magnanini Certif., Ex. B, Commonwealth 206:9-207:12). In fact, Commonwealth never conducted an investigation to determine how much it received in premiums and fees on the CPLs and title policies that were issued by Coastal on its behalf. (Magnanini Certif., Ex. B, Commonwealth 219:3-13). The Title Insurance Defendants ceased their internal investigation once this lawsuit was filed (*Id.* at 87:13-25), and since then, they have never advised WSI of their position regarding WSI's claims or even issued a denial of coverage. (*Id.* at 224:1-225:13). *See Griggs v. Bertram*, 88 N.J. 347, 357 (1982) ("[O]nce an insurer has had a reasonable opportunity to investigate, or has learned of grounds for questioning coverage,

18

it then is under a duty promptly to inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned."). *See also NN&R, Inc.*, 2006 U.S. Dist. LEXIS 43109, at *36-39 (delay in responding to plaintiff's claim resulted in denial of summary judgment on processing delay claim).

By deviating so profoundly from the standard of good faith and fair dealing, as the undisputed record in this case indicates, the Title Insurance Defendants are liable for their bad faith processing of WSI's policy and CPL claims on, at the very least, 1507 Summerfield Avenue, 104 West End Avenue and 1032-1034 Bangs Avenue. Therefore, the Title Insurance Defendants' Motion should be denied.

## IV.   THE TITLE INSURANCE DEFENDANTS ARE NOT ENTITLED TO A RULING AS A MATTER OF LAW THAT THEY HAVE NOT BREACHED ANY FIDUCIARY DUTY TO WSI.

The Title Insurance Defendants cannot possibly contend, much less establish that there is no dispute of fact as to whether their conduct toward WSI would satisfy their obligations as fiduciaries. In New Jersey, a fiduciary relationship is "one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits." *Silverstein v. Last*, 156 N.J. Super. 145, 152 (App. Div. 1978) (quotations omitted). The Title Insurance Defendants' agent, Coastal Title, and their "approved attorneys," Stanley Yacker and Anthony Cicalese, were intimately involved in the fraudulent scheme that capsized WSI. Not only did Coastal issue blatantly false title commitments (on which the title policies were based), but it also recorded deeds and mortgages such that WSI was deprived its first lien position. The Title Insurance Defendants have admitted that their "approved attorneys" were critical to the scheme and the last line of defense to ensuring that WSI was getting what it bargained for – a *bona fide* purchaser.

In sum, the Title Insurance Defendants failed to meet their fiduciary obligations when they ceased their investigation into the actions of their agents and refused to settle a single claim, and specifically the claims concerning the exemplar properties 1507 Summerfield Avenue, 104 West End Avenue and 1032-1034 Bangs Avenue.  *See Griggs v. Bertram*, 88 N.J. 347, 361 (1982) (acknowledging that insurance policies employ an implied "but compelling fiduciary duty to deal fairly, effectively and in good faith with the insured"); *Gallerstein v. Berkshire Life Ins. Co. of Am.*, 2006 U.S. Dist. LEXIS 64487, at *9-10 (D.N.J. Sept. 11, 2006).  *See also Pickett*, 131 N.J. at 467 ("the agent of the insurer owes a fiduciary duty to the insured is that the principal owes an equal duty.").  Accordingly, the Title Insurance Defendants' motion for partial summary judgment should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Title Insurance Defendants' Motion for Partial Summary Judgment on WSI's bad faith claims should be denied in its entirety.

Respectfully submitted,

_____/s/_____
Robert A. Magnanini
Amy Walker Wagner
Daniel Ian Mee
Jeffrey A. Shooman
STONE & MAGNANINI LLP
150 JFK Parkway, 4th Floor
Short Hills, NJ  07078
(973) 218-1111

*Attorneys for Plaintiff Walsh Securities, Inc.*

Dated: December 22, 2011

20