# EXHIBIT 5



# Fidelity National Title

INSURANCE COMPANY OF NEW YORK



EXHIBIT

Coastal - 6
6/3/10

## ISSUING AGENCY AGREEMENT

This Agreement is made this **1st** day of **November**, 19**96**, between FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, a New York corporation ("Company"), and

**Coastal Title Agency, Inc.** ("Agent") (collectively, the "Parties"). In consideration of the mutual benefits accruing and subject to the terms and conditions hereof, the Parties agree as follows:

The Schedules indicated below are attached and incorporated by reference:

[x x] Schedule A: Effective Date of Agreement, Agent's Territory, Liability Limit, Compensation, General Liability of Agent
[x x] Schedule B: Corporate Agent's Bond and Insurance Requirements
[  ] Schedule C: Attorney Agent's Bond and Insurance Requirements
[  ] Schedule D: Personal Guarantee

1. **APPOINTMENT AND AUTHORITY OF AGENT**
   Company appoints Agent solely to countersign and issue title insurance commitments, binders, guaranties, endorsements, title insurance policies of Company, or any other form whereby Company assumes liability (collectively, "Title Assurances") in Agent's Territory set forth in Schedule A.

2. **RESPONSIBILITY OF AGENT**
   A. Affirmative Covenants. Agent shall:
   1. Receive and process applications for Title Assurances in accordance with the provisions of state law, in conformity with usual and customary practices and procedures, prudent underwriting principles and in full compliance with manuals, instructions, and bulletins of Company from time to time given to Agent.
   2. Maintain a Policy Register (the "Policy Register") referencing the Agent's file number, policy number, date of issue, name of insured, amount of policy, premium charged, and the description of land insured. A legible copy of the Policy Register shall be tendered to Company upon termination of this Agreement or at any time as requested by Company.
   3. Make available for examination by Company, at any time during normal business hours and with reasonable prior notice from Company during the term of this Agreement, all financial records and records relating to the issuance of Company's Title Assurances by Agent.
   4. Provide to Company copies of any audited and any unaudited financial reports or data submitted to any regulatory agencies with jurisdiction over Agent.
   5. Permit Company and its examiners, auditors, and independent certified public accountants to enter Agent's business premises for the purpose of inspecting same or performing a financial, procedural, technical or forms audit.
   6. Comply with all applicable federal, state and local laws including statutes, ordinances, rules, regulations and judicial opinions.
   7. Obtain Company's prior approval where funds are to be held under an escrow and/or indemnity agreement in order to facilitate the issuance of a Title Assurance without exception to or with affirmative coverage over a specific defect, lien or encumbrance. The funds and property held under any such escrow and/or indemnity agreement, together with the original documents evidencing the escrow/indemnity, shall be transferred to Company on request of Company.
   8. Keep safely and segregated, in an FDIC insured escrow/trust account, which is subject to audit by Company, all monies that may be entrusted to Agent by Company, or others, in the course of: (i) Agent's business operations; and, (ii) the issuance of Company's Title Assurances hereunder. Agent shall exercise a fiduciary duty with respect to the owners of the funds so deposited. Agent shall be solely liable for any and all losses arising by reason of Agent's improper, unauthorized, reckless or premature disbursement of any escrowed funds.
   9. Retain for seven (7) years, or such other time period required by law, an original or legible copy of its file to evidence the determination of insurability.
   10. If Agent is a corporation or partnership, disclose to Company any change in the controlling interest in said corporation or partnership within five (5) business days of the change. A change in the controlling interest shall be deemed to occur when an owner of more than fifty percent (50%) of the capital stock of said corporation ceases to own more than fifty percent (50%) of said stock, or when there is a sale of substantially all of Agent's assets or when there is a change in more than fifty percent (50%) ownership of the interest(s) in the partnership.

   B. Negative Covenants. Agent shall not, without the prior written approval of Company's corporate underwriting department:
   1. Accept service of process on behalf of Company.
   2. Incur debts in the name of Company.
   3. Issue any Title Assurance in a liability amount in excess of the Risk Limit stated in Schedule A.
   4. Commit Company to insure any Extra Hazardous Risk as defined herein.
   5. Alter any Title Assurance or other form furnished by Company or commit Company to any particular interpretation of provisions or terms of any Title Assurance.
   6. Receive any funds including escrow, settlement or closing funds, in the name of Company, but shall receive funds solely in Agent's name.
   7. Use Company's name in any manner inconsistent with the terms and conditions of this Agreement.
   8. Issue any Title Assurance on land in which any officer, director, shareholder or partner of Agent has an interest.

3. **RESPONSIBILITY OF COMPANY**
   Company shall:
   A. Furnish to Agent, without cost, the then currently approved forms of Title Assurances which Agent is authorized to issue hereunder.

FY013000

    B. Provide Agent with any relevant Company manuals, underwriting bulletins and/or instructions which may now or hereafter be issued by Company.

    C. Be responsible for remitting payment of all Premium taxes.

    D. Determine all underwriting questions submitted by Agent.

    E. Arrange for reinsurance when necessary, but only to the extent reinsurance is reasonably available.

    F. Furnish its Insured Closing Service Letter to each of Agent's qualified customers requesting same.

4. **COMPENSATION**

    A. Agent shall remit to Company a percentage of the gross Premiums as set for in Schedule A on all Title Assurances issued by Agent. Agent shall hold Company's percentage of gross Premiums in trust for Company until such time as such remittances are made to Company. **(continued on attached Rider)**

    B. No later than the tenth (10th) of each calendar month Agent shall submit to company copies, with Premium charged set forth thereon, of all Title Assurances issued by Agent during the previous calendar month, remit the Company's percentage of the Premium charged for such Title Assurances and shall return all spoiled, obsolete or canceled policies accumulated during the previous calendar month.

5. **REINSURANCE AND COINSURANCE**

    If reinsurance or coinsurance is purchased, the cost shall be deducted from the Title Assurance Premium before determining the compensation due to Agent and the remaining Premium together with the cost of the reinsurance or coinsurance shall be remitted to Company, except as otherwise agreed in writing between the Parties.

6. **ALLOCATION OF LOSSES**

    A. Agent's General Liability shall be as set forth in Schedule A for any Loss sustained or incurred as a result of the issuance of Title Assurances by Agent, unless otherwise mandated by state and federal law.

    B. In the event that a Loss sustained or incurred for a matter arising under this Agreement resulted or arose from the negligent, willful or reckless conduct of Agent, Agent's employees or any independent contractor relied upon by Agent, then Agent shall reimburse Company for the Loss. The instances where Agent shall be liable to Company under this subparagraph shall include, without limitation, the following:

        1. Failure of Agent to comply with the terms and conditions of this Agreement or with the manuals, underwriting bulletins and/or instructions given to Agent by Company.

        2. Issuance of Title Assurances which contain errors or omissions which could reasonably have been detected by Agent from the commitment, examiner's report, title search or abstract.

        3. Loss arising from escrow or Non-Title Assurance operations of Agent including, but not limited to, preparation of documents, providing abstracting services, providing accommodation services and the handling and disbursement of funds.

        4. Any Loss arising out of the issuance of an insured closing service letter naming Agent.

        5. Commission of fraud, conspiracy, dishonesty, misrepresentation or defalcation by Agent or Agent's aiding and abetting therein.

        6. Any act, or failure to act, of Agent which results in Company sustaining Loss for bad faith, deceptive trade practices, unfair claim practices, consumer protection violations or punitive damages.

    C. Agent shall be liable to Company for any Loss resulting to Company by reason of Agent's failure to comply with the terms and conditions of this Agreement.

    D. Recovery of Loss under a claim will first be applied to reimbursement of Company's Loss, then the balance, if any, to reimburse Agent's loss. However, if Agent renders material assistance in achieving recovery of a Loss, then the recovered funds will be applied: (i)first, to reimburse Company's recovery related expenses; (ii) second, to Agent's recovery related expenses; and, (iii) third, to Company and Agent in accordance with the percentage of loss paid by each party.

7. **CLAIMS, LITIGATION AND ADMINISTRATIVE PROCEEDINGS**

    A. Agent shall immediately notify Company if Agent becomes aware of:

        1. Any claim, or threatened claim, under any Title Assurance issued hereunder.

        2. Any judicial action or proceeding affecting or purporting to affect: (i) Company's interest; or (ii) the rights of an insured or proposed insured under a Title Assurance issued by Agent.

        3. Any administrative proceeding, including any written complaints or inquiries, by any insurance department or regulatory agency involving: (i) one or both of the Parties; or (ii) a Title Assurance issued by Agent. Agent shall provide an initial notification to Company describing the allegations and basic known facts. This initial notification shall be provided, at the addresses and telephone numbers set forth herein, by: (i) telephone advice; and, (ii) overnight courier; or, (iii) facsimile transmission. Initial notification shall be provided to Company within three(3) business days of Agent becoming aware of any of the matters described in this subparagraph 7 A. Following this initial notification Agent shall forward, as soon as reasonably possible, all relevant documents to Company by overnight courier or certified or registered mail. Agent agrees to keep Company fully advised and to promptly forward all relevant communications and other writings or documents. Agent shall acknowledge receipt of any notice in the manner set forth by Company.

    B. Agent agrees that Company shall be fully authorized and empowered, in its absolute discretion, to control, defend, prosecute, settle, compromise, and/or dispose of any claim, litigation or proceeding for which: (i) Company may be liable; and/or (ii) an insured under a Title Assurance may be liable. Company shall have the rights to select and approve any counsel representing Company or an insured under a Title Assurance. Unless specifically authorized by Company in writing, Agent shall have no right to defend, deny, settle, compromise, or dispose of any action against Company or an insured. Company shall have no obligation to provide a defense to Agent.

8. **TERMINATION OF AGREEMENT**

    A. This Agreement may be terminated by either party without cause upon thirty (30) days' written notice to the other party.

    B. This Agreement may be terminated by Company upon ten (10) days' written notice to Agent upon the occurrence of:

FY013001

(i) A material failure of Agent to fulfill the obligations created under this Agreement, unless Agent cures such default to satisfaction of Company within such time; or

(ii) A change, not approved by Company, in the controlling interest in Agent, if Agent is a corporation or partnership.

C. This Agreement may be immediately terminated by Company if:

(i) Financial irregularities are disclosed as a result of an audit or examination of Agent's records or upon failure of Agent to allow review of its financial records or records relating to issuance of Company's Title Assurances by Agent.

(ii) Agent applies for, consents to, or commences a case seeking liquidation, insolvency, receivership or bankruptcy, voluntary or involuntary, or has a conservator or rehabilitator appointed, or has its license or permit to do business suspended or canceled, or if the State covered by this Agreement, Federal authorities or any regulatory body or court shall commence a proceeding, which proceeding if successful, would lead to cancellation of Agent's permit or license to do business.

(iii) Company ceases to transact business in Agent's territory.

D. Upon termination of this Agreement, Agent shall promptly furnish to Company all funds, property and agreements held as security for affirmative assurances given by Agent with respect to Company's Title Assurances, together with a complete accounting and immediate payment of any and all unpaid Premiums owing to Company, and Agent shall return to Company the Policy Register, all unused forms, blanks and supplies, and all manuals, bulletins and instructions furnished by Company to Agent. Should Agent fail or refuse to return any or all of the above, Company shall have the right to enter Agent's premises and remove same. Agent may retain a copy of the Policy Register for its files and for its exclusive use in complying with the surviving obligations as set forth herein.

9. PAYMENT OF COSTS AND EXPENSES

If either party shall institute an action against the other for breach of this Agreement, the unsuccessful party shall pay court costs and reasonable attorneys' fees to the successful party.

10. NOTICES

All notices permitted or required to be given under this Agreement shall be in writing addressed as shown below, and may be: (i) personally delivered; or, (ii) delivered by express courier service; or (iii) mailed by certified or registered United States Mail. The effective date of notice shall be: (i) the date of delivery for personal or express courier deliveries; (ii) the date shown on the "return card" for certified or registered mail if delivery is by certified or registered mail. Said notices shall be addressed as follows:

Original to Company:     Fidelity National Title Insurance Company of New York

                         120 South Warner Road, Suite 201
                         P. O. Box 61517
                         King of Prussia, Pennsylvania 19406-0917

With a Copy to:          Fidelity National Title Insurance Company
                         17911 Von Karman Avenue, Suite 300
                         Irvine, California 92714-5362
                         National Claims Administration

Original to Agent:       Coastal Title Agency, Inc.
                         21 West Main Street, Suite 2
                         P. O. Box 740
                         Freehold, New Jersey 07728

The person and/or address for notice may be changed by written notice. Telephone and telefax numbers are shown for purposes of preliminary claim and/or legal proceedings notice under paragraph 7 of this Agreement.

11. GENERAL PROVISIONS

A. Assignment. This Agreement is not assignable by either party without the prior written consent of the other. This Agreement is, however, binding on and inures to the benefit of any corporate successors or assigns of Company and Agent.

B. Counterparts. This Agreement may be executed in counterparts which shall collectively constitute a single agreement.

C. Waiver. By failing to exercise any of its rights hereunder, Company shall not be deemed to have waived any breach on the part of Agent or to have released Agent from any of its obligations hereunder. The waiver by either party of a breach of any provision of this Agreement shall not be deemed a continuing waiver or a waiver of any subsequent breach of any provision of this Agreement.

D. Severability. If any one or more of the terms of this Agreement shall be adjudged unenforceable, void, or voidable, the remaining terms shall not be affected thereby and shall be valid and enforceable to the full extent permitted by law.

E. Continuing Obligations. In the event this Agreement is terminated, the obligations to make any payments, including without limitation Agent's share of any Loss under paragraph 6 herein, to provide notification as to claims and to provide access to records and files shall continue beyond the date of termination.

F. Headings. The subject headings of the paragraphs and subparagraphs of this Agreement are included for convenience and shall not affect the construction or interpretation of any of their provisions.

G. Time of the Essence. Time shall be of the essence with respect to all terms of this Agreement.

H. Further Cooperation. Each of the Parties hereto shall execute and deliver any and all additional documents and other assurances and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the Parties.

I. Entire Agreement. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, supersedes all prior discussions, understandings or agreements between the Parties and shall not be amended, modified, or otherwise changed in any manner except in writing by the Parties.

12.  DEFINITION OF TERMS

A. Loss. Loss shall mean sums paid or to be paid by Company, in cash or otherwise, to settle or compromise claims under any of Company's Title Assurances issued by Agent. Loss shall include, but not be limited to, expenses, costs and attorneys' fees actually paid or incurred in connection with investigation, negotiation, litigation, or settlement of such claim which ultimately requires payment of any sum by Company. Loss, as defined herein, shall be reduced by the value of any recoveries actually realized by Company.

B. Premium. Premium shall mean the amount payable or paid in accordance with Company's rates in effect or as otherwise approved by Company in writing for the issuance of Title Assurances.

C. Extra Hazardous Risks. Extra Hazardous Risks shall mean all risks which result in a liability not normally assumed by the Company. Extra Hazardous Risks include, without limitation, the issuance of a Title Assurance without a Schedule "B" exception for any of the following matters where said matters affect the subject property:

1. Unrecorded construction/mechanics' liens which may gain priority over the interest insured where Agent is aware that the owner, general contractor or a subcontractor may not be paying its debts as they become due.

2. Any interest of the applicable state, the United States or other governmental entity in tidelands, swamp and overflow waters, existing streams or rivers or lands which currently or formerly were beneath a navigable waterbody.

3. Outstanding subsurface rights containing a right of entry.

4. Existing liens and encumbrances.

5. Bankruptcy, insolvency or creditors' rights.

6. Major encroachments.

7. Non-imputation of knowledge.

8. Indian land or restricted Indian title.

9. Pending actions and litigation.

10. Any risk involving a title about which Agent has knowledge of an existing dispute or of risks, adverse claims or questions of title known in the community.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be properly executed by their respective representatives having full authority to do so.

AGENT:
Coastal Title Agency, Inc.

BY: _____
      Robert R. Agel

ATTEST: _____

Its: _____

COMPANY:
FIDELITY NATIONAL TITLE
INSURANCE COMPANY OF NEW YORK

BY: _____
      Albert J. Gibboni, Vice President

ATTEST: _____

---

**NOTIFICATION IN COMPLIANCE WITH SECTION 606(A)**
**OF "THE FAIR CREDIT REPORTING ACT"**

In making this Agreement, it is understood that an investigative report may be made whereby information is obtained through personal interviews with third parties such as family members, business associates, financial sources, friends, neighbors or others with whom you are acquainted. This inquiry includes information as to your character, general reputation, personal characteristics, and mode of living, whichever may be applicable. You have the right to make a written request within a reasonable period of time for a complete and accurate disclosure of additional information concerning the nature and scope of the investigation.

FY013003

SCHEDULE A

Attached and made a part of the Agreement between Fidelity National Title Insurance Company of New York ("Company") and _____

__Coastal Title Agency, Inc._____ ("Agent").

EFFECTIVE DATE OF AGREEMENT, AGENT'S TERRITORY
LIABILITY LIMIT, COMPENSATION, GENERAL LIABILITY OF AGENT

1. Effective Date of Original Agreement:   _November 1_   , 1996

2. Effective Date of Extension (if any):

3. Agent's Territory:   __The State of New Jersey__

4. Liability Limit: On any Title Assurance which has liability in excess of $__1,000,000__ , Agent shall first review and obtain Company's written approval prior to issuing the Title Assurance.

5. Compensation: Agent shall pay Company   __*See Attached Rider*__   of the gross premiums on all Title Assurances issued by Agent.

6. General Liability of Agent: Subject to the provisions of subparagraph 6 B above, Agent shall be liable for the first $ _2,500_ of any Loss sustained or incurred by Company as a result of the issuance of the Title Assurances by Agent.

7. Governing Law. This Agreement is to be construed, enforced, and governed according to and by the laws of the State of New York in all respects.


SCHEDULE B
CORPORATE AGENT'S BOND AND INSURANCE REQUIREMENTS

1. Agent shall, at its own expense, maintain a blanket fidelity bond in a principal sum of at least Fifty Thousand Dollars and No Cents ($50,000.00) in a form and issued by a company acceptable to Company and naming Company as an additional insured or payee.

2. Agent shall, at its own expense, maintain errors and omissions liability insurance in a principal sum of at least Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00) per occurrence and Five Hundred Thousand Dollars and No Cents ($500,000.00) total annually. In a form and issued by a company acceptable to Company, with a deductible of no more than Five Thousand Dollars and No Cents ($5,000.00) and naming Company as an additional insured or payee.

3. Agent shall annually furnish Company with true copies of the bond(s) and policy together with current premium receipts for said bond(s) and insurance.

4. Upon request of Company, Agent agrees to notify its fidelity bond or errors and omissions insurance carrier of any claim for which Agent may be liable to Company.


SCHEDULE C
ATTORNEY AGENT'S BOND AND INSURANCE REQUIREMENTS

1. Agent shall, at its own expense, maintain Lawyer's Professional Liability Insurance coverage with Real Estate Title Agent's Errors and Omissions coverage with limits not less than Three Hundred Thousand Dollars and no cents ($300,000.00) and a maximum deductible of Five Thousand Dollars and no cents ($5,000.00).

2. Agent shall annually furnish Company with true copies of the above policy together with current premium receipts for said insurance.

3. Upon request of Company, Agent agrees to notify its errors and omissions insurance carrier of any claim for which Agent may be liable to Company.


SCHEDULE D
PERSONAL GUARANTEE

In consideration of One Dollar ($1.00) in lawful money of the United States, paid to the undersigned and as further inducement to Company to enter into the foregoing Agency Agreement, each of the undersigned acknowledges that (s)he will personally benefit from said Agency Agreement, and each of the undersigned jointly and severally does hereby personally and unconditionally undertake, guarantee and assure the full, prompt and complete performance of all the terms, agreements, covenants, conditions and undertakings of Agent as set forth in said Agency Agreement.

It is further agreed that the liability hereunder is, and shall be, a primary and personal undertaking by each of the undersigned and Company shall not be required to exercise its remedies against Agent before enforcing this undertaking against the undersigned, or any one of them.


Effective Date   _____          _____

                 _____

AGY001[26]A (1/95)                    PAGE 5 of 5                    FY013004

## RIDER

Schedule A Item 5 is deleted in its entirety and replaced as follows:

5.     a. Compensation: Agent shall pay Company 17% (seventeen percent) of the gross premiums on all Title Assurances issued by Agent.  If during any calendar year, Agent remits an amount greater than ~~$125,000.00~~, Company will pay to Agent a bonus of 5% (five percent) of the net remittance over ~~$125,000.00~~. This bonus will be payable not later than January 31 of the next calendar year.  Agent and Company agree the bonus is payable only on the amount received which is greater than ~~$125,000.00~~, and does not go back to dollar one.

*$100,000.*

   b. Agent shall retain as a work charge the sums received as payment for the following:

   Simultaneous Loan Policy
   ALTA Form 6.1 Variable Rate Mortgage Endorsement
   ALTA Form 6 Variable Rate Mortgage Endorsement
   ALTA Form 6.2 Variable Rate Mortgage Endorsement – Negative Amortization
   Revolving Loan Endorsement
   Survey Endorsement
   ALTA Form 8.1 Environmental Protection Lien Endorsement
   ALTA 4.1 Condominium Endorsement
   ALTA 5.1 Planned Unit Development Endorsement
   Convertible Adjustable Rate Mortgage Loan Endorsement
   ALTA 9 Restriction Encroachments and Minerals Endorsement
   FNMA Balloon Endorsement
   Second Mortgage Market Endorsement
   Reverse Annuity Endorsement
   ALTA Form 1 Street or Other Municipal Assessments Endorsement
   No Survey Survey Endorsement

   c. Agent shall remit to the Company the amount  collected for issuance of the Closing Service Letter.

   d. Agent shall remit 17% (seventeen percent) of the amount collected for issuance of the following:

   ALTA 10 Assignment of Mortgage Endorsement
   ALTA 10.1 Assignment of Mortgage Endorsement - Continued Priority
   Inter Vivos Trust Endorsement

   e. On the following Endorsements, the split with the Company will be determined on a case by case basis:

   Non-Imputation Endorsement
   ALTA Form 3 Zoning Endorsement
   ALTA Form 3.1 Zoning Endorsement
   Restrictions, Encroachments and Minerals Endorsement (Owner's Policy)

Item 4 Paragraph A of the Issuing Agency Agreement is amended to add the following:

   ... In accordance with Regulations of the State of New Jersey governing same.  Company hereby authorizes Agent to retain interest accrued on said premiums.

AGENT:                                                 COMPANY:
Coastal Title Agency, Inc.                            Fidelity National Title Insurance Company of New York

BY: _____                        BY: _____
        Robert F. Agel                                       Albert J. Gibboni, Vice President

ATTEST: _____                        ATTEST: _____

                                                              FY013005

RIDER

Schedule A Item 5 is deleted in its entirety and replaced as follows:

5.   a.  Compensation: Agent shall pay Company 17% (seventeen percent) of the gross premiums on all Title Assurances issued by Agent where the liability is less than $1,000,000 (One Million Dollars). On all Title Assurances greater than $1,000,000, Agent shall remit 15% (fifteen percent) of the gross premium.

b.  If during any calendar year, Agent and Black Page Title Agency, Inc. remit an amount greater than $100,000.00, Company will pay to Agent a bonus of 5% (five percent) of the net remittance over $100,000.00 based on remittances received at the 17% rate.  This bonus will be payable on only those premiums received at the 17% rate.  The bonus will be paid to Agent not later than January 31 of the next calendar year.  Agent and Company agree the bonus is payable only on the remittances received which exceed $100,000.00 and does not go back to dollar one.

c.  Agent shall retain as a work charge the sums received as payment for the following:
Simultaneous Loan Policy
ALTA Form 6.1 Variable Rate Mortgage Endorsement
ALTA Form 6 Variable Rate Mortgage Endorsement
ALTA Form 6.2 Variable Rate Mortgage Endorsement - Negative Amortization
Revolving Loan Endorsement
Survey Endorsement
ALTA Form 8.1 Environmental Protection Lien Endorsement
ALTA 4.1 Condominium Endorsement
ALTA 5.1 Planned Unit Development Endorsement
Convertible Adjustable Rate Mortgage Loan Endorsement
ALTA 9 Restriction Encroachments and Minerals Endorsement
FNMA Balloon Endorsement
Second Mortgage Market Endorsement
Reverse Annuity Endorsement
ALTA Form 1 Street or Other Municipal Assessments Endorsement
No Survey Survey Endorsement
Shared Appreciation Endorsement

d.  Agent shall remit to the Company the amount collected for issuance of the Closing Service Letter.

e.  Agent shall remit 17% (seventeen percent) of the amount collected for issuance of the following:
ALTA 10 Assignment of Mortgage Endorsement
ALTA 10.1 Assignment of Mortgage Endorsement - Continued Priority
Inter Vivos Trust Endorsement
Creditors Rights Exclusion Endorsement (Owners and Loan Policies)
Assignment of Mortgage (Updated Policy) Endorsement
Inter-Spousal Transfer Endorsement
Fairway Endorsement (Partnership and L.L.C.)
Enhanced Coverage Policies
Balloon Loan Modification Limited Policy
Tie-In Endorsement
Interest Rate Exchange "Swap" Endorsement

f.  On the following Endorsements, the remittance to Company will be determined on a case by case basis:
Non-Imputation Endorsement
ALTA Form 3 Zoning Endorsement
ALTA Form 3.1 Zoning Endorsement
Restrictions, Encroachments and Minerals Endorsement (Owner's Policy)
Application of Mortgage Payments ("Last Dollar") Endorsement
Contingent Loss ("First Loss") Endorsement

Item 4 Paragraph A of the Issuing Agency Agreement is amended to add the following:
... in accordance with Regulations of the State of New Jersey governing same.  Company hereby authorizes Agent to retain interest accrued on said premiums.

AGENT:
Coastal Title Agency, Inc.

BY: _____
      Robert F. Agel, President
      Dated · 1-4-99

COMPANY:
Fidelity National Title Insurance Company of New York

BY: _____
      Albert J. Gibboni, Vice President
      Dated 1-4-99

FY013006

<u>RIDER</u>

Schedule A Item 5 is amended to read as follows:

a.   Compensation:  Agent shall pay Company 15% (fifteen percent) of the gross premiums on all Title Assurances issued by Agent.

b.   Agent shall retain as a work charge the sums received as payment for the following:

          Simultaneous Loan Policy
          ALTA Form 6.1 Variable Rate Mortgage Endorsement
          ALTA Form 6 Variable Rate Mortgage Endorsement
          ALTA Form 6.2 Variable Rate Mortgage Endorsement - Negative Amortization
          Revolving Loan Endorsement
          Survey Endorsement
          ALTA Form 8.1 Environmental Protection Lien Endorsement
          ALTA 4.1 Condominium Endorsement
          ALTA 5.1 Planned Unit Development Endorsement
          Convertible Adjustable Rate Mortgage Loan Endorsement
          ALTA 9 Restriction Encroachments and Minerals Endorsement
          FNMA Balloon Endorsement
          Second Mortgage Market Endorsement
          Reverse Annuity Endorsement
          ALTA Form 1 Street or Other Municipal Assessments Endorsement
          No Survey Survey Endorsement
          Shared Appreciation Endorsement

c.   Agent shall remit to the Company the amount  collected for issuance of the Closing Service Letter.

d.   Agent shall remit 15% (fifteen percent) of the amount collected for issuance of the following:

          ALTA 10 Assignment of Mortgage Endorsement
          ALTA 10.1 Assignment of Mortgage Endorsement - Continued Priority
          Inter Vivos Trust Endorsement
          Creditors Rights Exclusion Endorsement (Owners and Loan Policies)
          Assignment of Mortgage (Updated Policy) Endorsement
          Inter-Spousal Transfer Endorsement
          Fairway Endorsement (Partnership and L.L.C.)
          Enhanced Coverage Policies
          Balloon Loan Modification Limited Policy
          Interest Rate Exchange "Swap" Endorsement

e.   Agent shall remit 15% (fifteen percent) of the amount collected for issuance of the following Endorsements:

          Non-Imputation Endorsement
          ALTA Form 3 Zoning Endorsement
          ALTA Form 3.1 Zoning Endorsement
          ALTA 9.1 and 9.2 - Restrictions, Encroachments and Minerals Endorsement (Owner's Policy)
          Application of Mortgage Payments ("Last Dollar") Endorsement
          Contingent Loss ("First Loss") Endorsement
          Tie-In Endorsement
          Subdivision Endorsement

AGENT:
Coastal Title Agency

BY: _____
    Robert F. Agel, President

DATED: *1-02-01*

COMPANY:
Fidelity National Title Insurance Company of New York

BY: _____
    Kevin S. Cairns, New Jersey State Manager

DATED:

FY013007



# TRW Title Insurance of New York Inc.

## AGENCY CONTRACT

THIS CONTRACT, made and entered into this ___1st___ day of ___January___, 19_91_, by and between TRW TITLE INSURANCE OF NEW YORK INC., a New York corporation, herein "Principal", the principal office of which is at 170 Jericho Turnpike, Floral Park, New York 11001, and Coastal Title Agency, Inc. a N.J. Corporation herein "Agent", who operates and maintains a title plant or is engaged in the abstract or title business at ___509 Stillwells Corner Road,___ City of ___Freehold___ ___Monmouth___ County, State of ___New Jersey___ ___07728___ (zip)

For the purpose of securing to each other the benefits to be derived herefrom and in consideration of the mutual promises hereinafter set forth, Principal and Agent hereby agree as follows:

**APPOINTMENT**

1. Principal hereby appoints Agent to act for, and in the name of, Principal in transacting the title insurance business but only for the purposes and in the manner specifically set forth in this CONTRACT and for no other purpose and in no other manner whatsoever, the authority hereby granted being subject to all of the limitations on the scope of the Agency contained in this CONTRACT.

**AUTHORITY**

2. Agent is authorized to issue, in the name of Principal, title insurance commitments, binders and policies (including endorsements thereof); provided, however, that:

a. Each of them is based upon, and in strict accordance with, a determination of insurability made in the manner specified in paragraph 3 of this CONTRACT;

b. None of them shall obligate Principal in a face amount in excess of $ ___1,000,000.00___ in the absence of specific written authority from Principal;

c. Each of them relates to land located in:

The State of New Jersey

d. Each of them is issued on a form furnished Agent by Principal, the printed portion of which form has not been altered or changed by Agent except to the extent authorized in writing by Principal;

e. Each of them is signed, personally, on behalf of Principal, by one of the approved agents designated as
Robert F. Agel
Matthew J. Maguire
Michael O'Connell
Sally Casalese
John Halverson
or by some other person designated in writing by

FY013008

**DETERMINATION OF
INSURABILITY**

3. The insurability of a title shall be determined in the following manner:

a. Agent shall compile all relevant title and tax information up to the current date which would be included in an abstract of title prepared by Agent in accordance with prudent abstracting practice and shall include therein such information as is obtained from any search of the public records which Agent or Principal shall deem appropriate. Such title and tax information may consist, in part, of a certified abstract of title or of a title insurance policy, either of which may be deemed by the Agent, in the exercise of his sound discretion, to show all relevant title and tax information up to the certification or issuance date thereof.

b. Agent, in the exercise of his sound discretion, may subject to compliance with such instructions as Principal may have given Agent in writing and after careful consideration of all relevant title and tax information compiled pursuant to subparagraph a of this paragraph 3 determine the status and insurability of the title to subject land.

c. Whenever a title insurance policy is ordered from Agent pursuant to a commitment or binder issued by Agent and whenever an endorsement of an outstanding title insurance policy is ordered from Agent, Agent shall compile and examine all relevant title and tax information (as specified in subparagraph 3, a, above) and shall determine the insurability of the title to subject land.

d. If any reasonable doubt as to the insurability or marketability of the title involved or as to the desirability of issuing any title insurance commitment, binder, endorsement or policy shall arise in the mind of Agent, full information concerning same shall be furnished to Principal and Agent shall then proceed only in accordance with the instructions of Principal. Notwithstanding any other provision of this CONTRACT, Principal shall take the full responsibility and liability for any loss arising from any title defect which the Principal, in writing, instructs the Agent to pass except as provided in paragraph 8 hereof. Principal shall furnish all reasonable counsel and advice to Agent without charge.

**PREMIUMS   XXX
            see attached
            rider**

4. Agent shall charge customers title insurance premiums determined by reference to Principal's rate schedules established for use in the geographical area in which Agent is authorized to transact business by this CONTRACT. In the event such rate schedules are changed in any way, Agent, upon receipt of notice of the change, shall follow the rate schedules as changed. Agent is authorized to receive and collect title insurance premiums for, and on behalf of, Principal and to give receipts therefor which shall be binding on Principal. Agent assumes full responsibility for collection of all title insurance premiums due. All premiums collected by Agent, less the commission to which Agent is entitled, shall be held by Agent as trustee for the use and benefit of Principal until paid to Principal.

**REPORT OF PREMIUMS**

5. Agent shall mail to Principal on or before the 15th day of each month, a report, in form prescribed or approved by Principal, of all title insurance policies and endorsements issued during the preceding calendar month. Said report shall be accompanied by Agent's remittance to Principal of the portion of the premiums to which Principal is entitled pursuant to Schedule A, Commission Schedule, attached hereto, which has been executed by both parties to this CONTRACT. As between Principal and Agent, each premium is deemed to have been received by Agent and to have become due to Principal on the date of delivery of the related policy. Said report sh—

FY013009

**RECORD RETENTION**

7. Agent shall maintain in a manner and form as prescribed or approved by the Principal, all supporting documents which enable Agent to issue a commitment, binder or policy, together with all books, books of account, files, documents, correspondence and records of all kinds which at any time shall be kept by Agent or come into Agent's possession or under Agent's control, relating to transactions conducted by Agent on behalf of the Principal. Agent shall maintain all such information in original form, or microfilm or other legible reproduction for a period of at least twenty (20) years. All such documents shall be available at all times for inspection and audit by accredited representatives of Principal.

**CLAIMS**

8. In the event that a party insured under a title insurance commitment, binder or policy written pursuant to this CONTRACT shall claim loss or threatened loss against which he is insured, or is alleged to be insured, the rights and responsibilities of the parties hereto shall be as follows:

a. Each party hereto shall give prompt notice to the other of any such claim received or rumored.

b. Agent shall furnish to Principal such additional and up-to-date title and tax information as Principal may request, shall consult with Principal concerning such claim and shall cooperate fully in investigation, negotiation and litigation in respect thereof, all with such promptness as the circumstances permit and all at no cost to Principal.

c. Principal shall proceed with such investigation, negotiation and litigation of any claim of loss as Principal shall deem appropriate and shall employ counsel of its choice to render such service as Principal shall deem desirable. Principal shall keep Agent as fully informed as shall be practicable concerning progress made toward final settlement. Principal shall have the sole right to effect a settlement of any claim of loss. If Principal claims that Agent is liable to Principal for part or all of the loss suffered, no settlement shall be effected by Principal unless Principal shall first consult with Agent in respect to the proposed settlement and seek, in good faith, to come to an agreement with Agent as to the extent of Agent's liability to Principal. The loss involved in a settlement effected by Principal shall not be deemed to fix the liability of Agent to Principal unless Agent and Principal shall so agree.

**XXX**
**see attached rider**

d. Agent shall indemnify Principal and save Principal harmless from all losses, including attorneys' fees, suffered by Principal to the extent to which such losses are fairly attributable to errors in abstracting or any failure of Agent to comply with the terms of this CONTRACT. In the event of disagreement between Agent and Principal in respect to Agent's liability or the extent thereof, the matter at issue shall be submitted to an impartial arbiter chosen by Principal and Agent and both parties shall agree to be bound by the decision of the arbiter.

FY013010

e. Except to the extent to which Agent may be liable to Principal for Agent's error in abstracting or Agent's failure to comply with this CONTRACT, or both, Principal shall be liable fully for all title insurance losses, including attorneys' fees, suffered in connection with . . .

**EFFECTIVE PERIOD**

      10. This CONTRACT shall become effective on ___February 12___ 19 91 or as soon thereafter as Agent shall obtain such Agent's license or certificate of authority as may be required by the laws of the state of Agent's domicile. This CONTRACT shall remain in full force and effect until terminated by either party hereto pursuant to paragraph 11 of this CONTRACT; provided, however, that this CONTRACT, and all authority herein granted, shall terminate immediately upon revocation, cancellation or failure to renew Agent's license or certificate of authority or if Agent shall cease to operate and maintain any title plant referred to in the initial paragraph of this CONTRACT.

**TERMINATION**

      11. This CONTRACT may be terminated as follows:

      a. Each party shall have the right to terminate the CONTRACT by giving written notice of such intent to the other, which written notice shall specify the effective date of termination of this CONTRACT, which termination date shall be not less than thirty (30) days after the mailing of such written notice.

      b. Principal, at its election, may terminate this CONTRACT should:

      (1) Agent become the subject of liquidation, receivership or bankruptcy proceedings, should a conservator or rehabilitor be appointed for Agent or should Agent be acquired or controlled by any third person, firm or corporation. Termination pursuant to this subparagraph (1) shall be effective immediately upon Agent's receipt of written notice thereof unless the notice specifies a later date, in which case it shall be effective on such later date.

      (2) Agent become more than 30 days delinquent in mailing to Principal the monthly report and remittance called for by paragraph 6 of this CONTRACT or should Agent fail, for any period of time, to comply with any other term of this CONTRACT or with any rule, regulation or instruction issued by Principal to Agent in respect to safe and acceptable underwriting practices. Principal may terminate this CONTRACT pursuant to this subparagraph (2) by mailing to Agent a written notice which specifies in reasonable detail the default or defaults of Agent which are the basis of termination and which designates the effective date of termination which shall not be less than 30 days after mailing of such written notice; provided, however, that if Agent shall cure, to the satisfaction of Principal, the default or defaults specified in such notice prior to the designated effective date of termination, termination shall not be effective and the notice shall be of no effect. Principal shall have the right, by so stating in such notice, or in a separate later notice, to suspend, effective immediately upon receipt by Agent or on any later specified date, Agent's authority to undertake new title risks by the issuance of commitments, binders, policies or endorsements.

      (3) There be any substantial change in ownership, management or control of Agent's business or of Agent's title plant. Termination pursuant to this subparagraph (3) shall be effective immediately upon Agent's receipt of written notice thereof unless the notice shall specify a later date, in which case it shall be effective on such later date.

      c. If termination is effected pursuant to subparagraphs a or b of this paragraph 11, Principal may in writing authorize Agent to continue after termination to write policies and endorsements  ...

# TRW Title Insurance
# of New York Inc.

### SCHEDULE B - INSURED CLOSING AGENCY AGREEMENT

THIS AGREEMENT made and entered into the 12th day of February 19 91 between
Coastal Title Company Inc., hereinafter called "AGENT" and TRW TITLE INSURANCE OF NEW YORK
INC., hereinafter called "TRW".

WHEREAS, Agent is authorized to issue title insurance on behalf of TRW in the State of _____
and in connection therewith, has been requested by one or more lending institutions to close real estate loans on behalf
of such lending institutions and issue title insurance in connection therewith; and

WHEREAS, such lender or lenders have or may in the future request, in connection with such loan closings, a guaranteed
loan closing letter from TRW, assuring the faithful performance of the closing instructions of such lender by Agent.

NOW, THEREFORE, in consideration of the issuance of such guaranteed closing letters in the past or hereafter by TRW,
Agent undertakes to indemnify TRW from any and all liability, loss or damage TRW may suffer as a result of claims, demands,
costs or judgments arising against it as a result of its issuance of any such guaranteed closing letters.

It is agreed that TRW may, at any time, and without notice to Agent, cancel such guaranteed closing letters.

IN WITNESS WHEREOF, the parties have executed this agreement the day and year first above written.

TRW TITLE INSURANCE OF NEW YORK INC.

BY: _Henry R Kellermann_                              BY: _____
              "TRW"                                                    "AGENT"

FY013012

e. Upon termination of this CONTRACT for any reason, Agent shall immediately account to Principal for all unpaid premiums, promptly return to Principal all unused policy forms, blanks and supplies furnished by Principal and deliver to Principal a copy of each title insurance commitment and binder then outstanding.

**AGENT'S BUSINESS**

12. Agent agrees to take all reasonable steps to solicit title insurance business and to promote the use of title insurance in the area in which he does business. Agent shall give Principal prompt notice of any substantial change in ownership, management or control of Agent's business or of Agent's title plant. Agent agrees to enter into no sale, lease or other disposition of its title plant except one which will preserve to Principal all of the rights of Principal under this CONTRACT.

**AGENT'S INSURANCE**

13. Agent, at Agent's cost and expense, shall maintain a policy insuring against hazards commonly covered in a "Title Insurance Agent's Errors and Omissions" policy, in form satisfactory to Principal, with policy limits of at least_____ and shall maintain such policy in full force during the term of this contract and, on an annual basis, furnish Principal with certificates of insurance indicating such coverage is in effect currently. Such policy shall not be cancelled without at least ten (10) days prior written notice to Principal.

**NOTICES**

14. All notices and other communications from Principal to Agent or from Agent to Principal shall be mailed to the addressee at the address which appears in the initial paragraph of this CONTRACT.

**ASSIGNMENT**

15. The rights under this CONTRACT are not transferable or assignable by either party without the written consent of the other, except, that the rights and obligations hereunder shall bind and inure to the benefit of any corporate successor of Principal.

**AMENDMENT**

16. No amendment or modification of this CONTRACT, nor any supplemental CONTRACT between the parties, nor any agreement in conflict with any of the provisions hereof shall be valid unless in writing and executed with the same formality as this CONTRACT.

EXECUTED AT _Hackensack_ State of _New Jersey_ as of the day and year first above written but actually on the ___11th___ day of _February_ 19_91_.

TRW TITLE INSURANCE
OF NEW YORK INC.
(PRINCIPAL)

By: _Henry P. Ollermann_

By: _____

FY013013

EXECUTED AT _Freehold_ State of _New Jersey_ as of the day and year first above written



# TRW Title Insurance
# of New York Inc.

SCHEDULE A - RATE AND COMMISSION SCHEDULE

*See Amendment dated 1/24/91*

Being part of a certain Agency Contract between TRW TITLE INSURANCE OF NEW YORK INC. and

Coastal Title Agency, Inc.   a New Jersey Corporation

509 Stillwells Corner Road, Freehold, NJ

dated_____ January _____ (address) ___ 1st _____ 91

day of_____ 19___

A Rate Schedule attached hereto and made a part hereof sets forth rates to be quoted and charged for title in-
surance policies in Agent's territory. The compensation Agent is to receive in full payment for his service in procur-
ing and writing direct insurance hereunder shall be computed at        80%          of
the rates quoted in the Rate Schedule. The rates to be so quoted and charged do not include the cost of making
abstracts and searches, and such cost is in no case to be charged against the remittance due Principal.

FY013014

<u>RIDER</u>

(1)   Paragraph 4 is amended in part as follows:

    4.   Agent shall....All premiums collected by Agent, less the
       commission to which Agent is entitled, shall be held by Agent,
       as trustee for the use and benefit of Principal until paid to
       Principal, <u>in accordance with Regulations of the State of</u>
       <u>New Jersey governing same.  Principal hereby authorizes</u>
       <u>Agent to retain interest accrued on said premiums.</u>

(2)   Paragraph 8d. is amended to read in part:

Agent shall indemnify Principal and save Principal harmless for
all losses, including attorneys' fees, suffered by Principal to
the extent to which such losses are fairly attributable to <u>any</u>
<u>dishonest, fraudulent, malicious, criminal or grossly negligent</u>
<u>act or omission of Agent in connection with the issuance of a</u>
<u>title binder, Commitment to Insure Title, Title Insurance Policy</u>
<u>or Abstract of Title on behalf of Principal</u> or any failure of
Agent to comply with the terms of this contract.  In the event...

FY013015

AMENDMENT TO CONTRACT

DATE  July 24, 1991

The Agency Contract between TRW Title Insurance of New York Inc. and    Coastal Title Agency, Inc.
dated the  1st  day of    January    , 19 91 is hereby amended in accordance with the following:

Agent's compensation under Schedule A~Rate and Commission Schedule shall be computed as follows:

Agent shall remit to principal   15%  of the rates quoted in the Rate Schedule for policies up to the first $2,000,000.00 of liability on each policy and $0.35 for each additional $1,000.00 of liability in excess of $2,000,000.00; the balance of the rate charged to be retained as Agent's compensation.

TRW Title Insurance of New York Inc

By _____
    Henry R. Kellermann, Vice President

Attest _____

AGENT

By _____

FY013016

## ASSIGNMENT OF AGENCY AGREEMENT

THIS ASSIGNMENT OF AGENCY AGREEMENT (the "Assignment") is made this

<u>First</u> day of <u>June</u>, 1996 between NATIONS TITLE INSURANCE OF NEW YORK

INC., a New York Corporation (NATIONS), FIDELITY NATIONAL TITLE INSURANCE

COMPANY OF NEW YORK, a New York Corporation (FNTIC-NY), and

<u>COASTAL TITLE AGENCY, INC.</u>
(AGENT) with reference to the following facts and circumstances:

### RECITALS

A.    NATIONS, as principal, and Agent, as agent have entered into a certain written Agency Agreement dated <u>JANUARY 1, 1991</u>, (AGENCY AGREEMENT) by the terms of which Agent was authorized to act as the agent of NATIONS for the purpose of issuing title insurance in the State of NEW JERSEY, and conducting all business necessarily related thereto. The Agency Agreement is acknowledged and incorporated herein by this reference.

B.    NATIONS, FNTIC-NY, and Agent desire to prescribe the terms and conditions of the required assignment as set forth herein below.

NOW, THEREFORE, in consideration of the mutual promises, covenants, and warranties contained herein, the parties agree as follows:

### TERMS

1.    INCORPORATION OF RECITALS. All of the foregoing recitals are incorporated herein by this reference and made a part hereof.

2.    ASSIGNMENT. Nations assigns and transfers to FNTIC-NY all of its right, title and interest in and to the Agency Agreement together with all extensions, renewals modifications or replacements of said Agency Agreement.

3.    ACCEPTANCE OF ASSIGNMENT. Agent agrees to and does accept the assignment and transfer. In addition, from the date of this Assignment, FNTIC-NY  expressly assumes and agrees to keep, perform and fulfill all terms, covenants, conditions and obligations, required to be kept, performed and fulfilled by Assignor under the Agency Agreement, including making of all payments due thereunder, when due and payable.

FY013017

4.  **CONSENT TO ASSIGNMENT.** For good and valuable consideration, Agent hereby acknowledges and consents to the assignment and transfer of Nations' rights and obligations under the Agency Agreement to FNTIC-NY. Agent further agrees that said transfer shall not constitute a breach of, or default under, the Agency Agreement and that Agency Agreement shall remain in full force and effect.

5.  **EXECUTION OF NEW AGENCY AGREEMENT.** FNTIC-NY and Agent further promise and covenant to negotiate and execute a new agency agreement by the terms of which Agent shall issue title insurance and perform related title services as the agent of FNTIC-NY. Upon the execution of said new agency agreement, the Agency Agreement herein assigned shall be of no further force and effect.

6.  **PARTIES BOUND.** The provisions of the Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and permitted assigns. This Assignment is a contract among the parties hereto for their mutual benefit and no third person shall have any right, claim, or interest against any of them by virtue of any provision hereof.

7.  **SEVERABILITY.** In case any one or more of the provisions contained in this Assignment shall be invalid, illegal, or unenforceable in any respect, the validity, legality, or enforceability of the remaining provisions contained herein or therein shall not in any way be affected or impaired thereby.

8.  **GOVERNING LAW.** This agreement shall in all respects be governed, construed, applied and enforced in accordance with the laws of the state of New Jersey.

9.  **MODIFICATIONS.** Neither this Assignment, nor any terms or provisions hereof, may be changed, discharged or terminated orally but only by an instrument in writing signed by the party against which enforcement of the change, discharge, or termination is sought.

10. **HEADINGS.** The section headings contained herein are intended for convenience of reference and shall not be deemed to define, limit, or describe the scope or intent of the respective provisions of the Assignment.

11. **ENTIRE AGREEMENT.** This Assignment represents the entire agreement between the parties with the respect to the subject matter hereof and supersedes all prior discussion or negotiations regarding said subject matter.

FY013018

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date
first above written.

ASSIGNOR:

Nations Title Insurance of New York, Inc.
a New York Corporation

By: _____

Title: _____

ASSIGNEE:

Fidelity National Title Insurance Company of New York,
a New York Corporation

By: _____

Title: _____

AGENT:

By: _____

Title: _____

FY013019