# EXHIBIT 8

068hcitd                                                    1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    CITYSCAPE CORP.,

4                    Plaintiff,

5          v.                            98 Civ. 223 (SHS)

6    WALSH SECURITIES,

7                    Defendant.

8    ------------------------------x

9
                                        New York, N.Y.
10                                       June 8, 2000
                                        4:10 p.m.
11
     Before:
12
                        HON. SIDNEY H. STEIN,
13
                                        District Judge
14
                              APPEARANCES
15
     GIBSON DUNN CRUTCHER, LLP
16         Attorneys for Plaintiff
     BY:   LESLIE E. MOORE
17
     ST. JOHN & WAYNE, LLC
18         Attorneys for Defendant
     BY:   ROBYN M. GNUDI
19

20

21

22

23

24

25

              SOUTHERN DISTRICT REPORTERS (212) 805-0300

068hcitd                                                          2

1            (In open court)

2            THE DEPUTY CLERK:  Cityscape Corp. v. Walsh

3    Securities, 98 Cr. 223.

4            Counsel, state your names for the record.

5            MS. MOORE:  Leslie Moore from Gibson Dunn & Crutcher.

6    I have with me my colleague Lynn Brady.  She is not admitted

7    to this court.  She is admitted to the New York Supreme.  I

8    ask your Honor's permission to let her join me at the table.

9            THE COURT:  Of course.

10           MS. GNUDI:  Robyn Gnudi from the firm of St. John &

11   Wayne for the defendant Walsh Securities.

12           THE COURT:  Good afternoon.

13           I am going to read a decision on the pending motion.

14           There is discussion in the motions of 40 loans, but

15   my notes indicate that on the appraisal variance loans,

16   because there were originally 108 and 69 of them dropped out

17   after my earlier decision that that left 39, and you keep on

18   talking about 40.  There is a loan that I think has been paid

19   off.  Is that the 40th loan?

20           MS. MOORE:  Yes, your Honor.

21           THE COURT:  That is what I thought.  So I will talk

22   then about the 39 loans that are left on the appraisal

23   variation loans.  We all understand what I am referring to.

24   One has been paid off.  There is no issue.

25           MS. GNUDI:  Yes.

068hcitd                                         Decision                                    3

1          MS. MOORE:  Yes, your Honor.

2          THE COURT:  The following is my determination on the

3   pending motions:

4          On June 30, 1996, Walsh Securities, Inc. and

5   Cityscape Corp. entered into a master agreement for sale and

6   purchases of mortgages.  We'll call that the agreement.

7   Thereafter, by letter dated July 30, 1996, Walsh and Cityscape

8   partially amended the terms of the agreement in a commitment

9   letter, which we will call the letter agreement.  Pursuant to

10  those agreements, Walsh sold and Cityscape purchased seven

11  pools of residential home mortgage loans for approximately

12  $128 million, the last pool being funded on August 23, 1996.

13         The loans upon which Cityscape is now suing at this

14  point fall into two groups.  When I say "this point," I am

15  talking about after my decision of last year.  Actually, I

16  think it was late '98.

17         The first group are 39 loans that Cityscape alleges

18  had significantly inflated property appraisals.  Those are the

19  appraisal variance loans.  The second group is 32 loans that

20  were part of a fraudulent land-flipping scheme.  We will call

21  those the New Jersey loans.

22         Section 5 of the agreement contains numerous

23  representations and warranties relating to each loan.

24  Pursuant to Section 6 of the agreement, Cityscape had the

25  right to request that Walsh repurchase the relevant loans if

068hcitd

4

Decision

1  the representations and warranties were breached.  Cityscape

2  has alleged that certain representations and warranties were

3  breached with respect to both the appraisal variance loans and

4  the New Jersey loans, and that Walsh's refusal to meet

5  Cityscape's repurchase demand was in breach of Walsh's

6  contractual obligation pursuant to Section 6 of the agreement.

7       Walsh has now moved for summary judgment pursuant to

8  Rule 56 on the grounds that Walsh was not under a contractual

9  obligation to repurchase either set of loans.  Cityscape has

10  cross-moved for partial summary judgment on the New Jersey

11  loans only.

12       By decision, dated December 23, 1998, I denied

13  Walsh's motion in part and granted it in part, ordering the

14  dismissal of Cityscape's claim on 69 appraisal variance loans.

15  Again, those are not the loans we are talking about today

16  because those loans were out of the case as of December 23,

17  1998.

18       At that time, Cityscape's motion for partial summary

19  judgment on 32 New Jersey loans was denied.  Now that

20  discovery is complete, the parties have again moved for

21  summary judgment.  You are all familiar with the standard for

22  summary judgment, which may be granted "only when the moving

23  party demonstrates that 'there is no genuine issue as to any

24  material fact and that the moving party is entitled to a

25  judgment as a matter of law.'"  That is *Allen v. Coughlin*, 64

068hcitd                              5
                         Decision

1   F.3d 77, 79, (2d Cir. 1995).

2           I must "view the evidence in the light most favorable

3   to the nonmoving party and draw all reasonable inferences in

4   its favor, and may grant summary judgment only when 'no

5   reasonable trier of fact could find in favor of the nonmoving

6   party.'" That is *Allen*, 64 F.3d at 79.

7           Now I will deal first with the appraisal variance

8   loans.

9           Pursuant to Sections V(27) and VI(G) of the

10  agreement, as amended by the letter agreement, Cityscape is

11  entitled to request repurchase of any loan for which a

12  reappraisal varies by more than 10 percent from the original

13  appraisal.  Cityscape alleges that reappraisals of the real

14  properties securing the 39 loans at issue here show a variance

15  in excess of 10 percent.  Cityscape argues that pursuant to

16  Section VI(G), Walsh was contractually obligated to repurchase

17  those 39 loans.  Walsh argues that its contractual obligation

18  to repurchase those appraisal variance loans was discharged by

19  Cityscape's failure to fulfill two of its obligations under

20  the agreement and the letter agreement:  (1) to notify Walsh

21  of the reappraisal variance and repurchase request within 120

22  days, and (2), to provide reappraisals dated as of the date of

23  the original appraisal.  Walsh has moved for summary judgment

24  on these bases.

25          First we will take the 120-day provision.  The letter

068hcitd                           Decision

1   agreement amened Section VI(G) of the agreement to require

2   that Cityscape notify Walsh of any appraisal variance

3   repurchase request "within 120 days of the date which the

4   buyer delivers the funding price proceeds to the seller."   The

5   buyer is Cityscape and the seller is Walsh.

6          The letter agreement explicitly states that if

7   Cityscape fails to comply with this condition, then the

8   "provisions respecting appraisal variances shall be waived."

9   The parties agree that Cityscape failed to comply with the

10  120-day provision, since the request for Walsh to repurchase

11  was made by Cityscape approximately one year after proceeds

12  were delivered to Walsh.  Walsh argues that Cityscape's

13  uncontested failure to comply with this provision discharged

14  Walsh's obligation to repurchase the appraisal variance loans.

15  Cityscape argues that Walsh waived the 120-day provision and

16  that, moreover, the 120-day provision in the letter agreement

17  does not apply retroactively to loans purchased before the

18  letter agreement was executed (which includes 23 of the loans

19  at issue).

20         Unless otherwise noted, the following facts are

21  undisputed:  The parties agree that on August 22, 1997

22  Cityscape sent a letter to Walsh demanding that Walsh

23  repurchase 39 of the loans, allegedly because of appraisal

24  variances exceeding 10 percent.  On August 25, '97, Steven

25  Korn of Cityscape spoke to Arnold Cohn of Walsh.  During that

068hcitd
                                  Decision

1   conversation, Mr. Cohn of Walsh confirmed that he had received

2   Cityscape's demand letter and requested that Cityscape provide

3   Walsh with the reappraisals for each property.  On August 29,

4   1997, Mr. Korn of Cityscape sent 38 of the 39 reappraisals to

5   Walsh and on September 10 of that year he sent the final

6   reappraisal.

7        Defendant argues that when Mr. Cohn received these

8   demands, he forwarded them to the quality control and legal

9   departments at Walsh.  Mr. Cohn testified that when he

10  received the demand he was unaware of the existence of the

11  120-day provision or even of the existence of the letter

12  agreement, and that when he learned of this provision in or

13  shortly after late August, he had ceased working on the

14  request.  That is Cohn's deposition, 103/24 to 107/21.

15  Mr. Cohn also testified that around this time he informed

16  Cheryl Carl at Cityscape that he had ceased working on the

17  request.  That is the Cohn deposition, 103 to 107.  Ms. Carl

18  testified that she did remember learning from Mr. Cohn that

19  Walsh had ceased working on the requests due to the 120-day

20  provision, but testified that she could not recall when they

21  had this conversation.  That is the Moore Aff., Exh. 24, at

22  277:8 to 279:8.  According to Cityscape, as late as September

23  27, 1997, Mr. Cohn asked Mr. Korn to order third-review

24  appraisals at Walsh's expense.  Moore Aff., Exh.17.  Pursuant

25  to VI(G) of the agreement, Walsh was entitled to order

068hcitd                                                                    8
                              Decision

1  third-review appraisals at its own expense upon receiving a

2  repurchase request from Cityscape.  Moreover, Cityscape also

3  alleges that from June through mid-September 1997, Cityscape

4  and Walsh were negotiating the repurchase the Vaughn loan, an

5  appraisal variance loan, for which Cityscape had also failed

6  to comply with the 120-day provision.  Moore Aff., Exh. 5.

7         In the first decision, and that is in my December

8  1998 decision, I found that there were triable issues of fact

9  as to whether defendant had waived the 120-day provision and

10 as to whether the 120-day provision applied to loans purchased

11 prior to the execution of the letter agreement.  The question

12 on this motion is whether the evidence developed in discovery

13 permits the finder of fact to conclude that Walsh

14 intentionally waived this provision.  There is no such

15 evidence in this record.

16        In order to establish a waiver under New York law

17 plaintiff must show that the party charged with the waiver

18 relinquished the right in question with both "knowledge of the

19 existence of the right and an intent to relinquish it."

20 *Christian Dior-New York v. Kort, Inc.*, 792 F.2d 34, 40 (2d

21 Cir. 1986).  In order to establish an intentional waiver,

22 plaintiff must show a "clear manifestation of intent by

23 defendant to relinquish the protection of the contractual

24 limitations period."  See *Gilbert Frank Corp. v. Federal Ins.*

25 *Corp.*, 70 N.Y.2d 966, 968, 525 N.Y.S.2d 793, 520 N.E.2d 512,

068hcitd                         Decision                          9

1    514 (N.Y. 1988).

2         In *Gilbert*, the defendant insurance company had four

3    meetings with the plaintiffs, numerous telephone

4    conversations, and eventually made an offer to settle, all

5    after the limitations period had expired.  See id.  In that

6    case, the court found that those factual allegations were

7    insufficient to support the plaintiff's contention that there

8    was a triable issue of fact regarding defendant's intent to

9    waive the limitations period.  That is *Gilbert* and *Arkin-Medo*

10   *Corp. v. St. Paul Fire and Marine Ins. Co.*, 585 F.Supp. 11

11   (E.D.N.Y. 1982), aff'd, 742 1430 (2d Cir. 1983); as well as

12   *Fox-Knapp, Inc. v. Employers Mutual Insurance, Co.*, 725

13   F.Supp. 706, 710-11 (S.D.N.Y. 1989), aff'd, 893 F.2d 14 (2d

14   Cir. 1989).

15        Like the allegations in *Gilbert*, the allegations in

16   this case are not substantial enough to survive summary

17   judgment on this issue.  Even reading all the allegations in

18   the light most favorable to the nonmoving party, the only

19   relevant evidence presented by plaintiff is Cohn's September

20   24, 1997 request for third review appraisals.  Plaintiff

21   argues that Cohn initiated this contact subsequent to learning

22   of the 120-day provision and that it is probative of Walsh's

23   intent to waive this provision.  However, this allegation is

24   no more probative of a waiver than the allegations in *Gilbert*;

25   rather in both cases plaintiff seeks to premise its waiver

068hcitd                                                           10
                           Decision

1   argument on post limitations contact which never clearly

2   evince an intent to waive the provision in question.  In both

3   cases, the evidence is simply not indicative of intent to

4   waive this provision.  Accordingly, Korn's testimony that Cohn

5   contacted him to order third review appraisals on September

6   24, 1997 is insufficient to raise a triable issue of fact.

7   Likewise the evidence that defendant was willing to negotiate

8   the Vaughn loan speaks only to the defendant's possible intent

9   to ignore the provision with regard to that particular loan.

10        Plaintiff is correct that the Second Circuit has

11  indicated that summary judgment in the context of intentional

12  waiver claims is not always appropriate, given that intent is

13  often the critical issue.  I cite *Christian Dior-New York v.*

14  *Koret Inc.*, 792 F.2d 34, 40 (2d Cir. 1986); *Voest-Alpine*

15  *International Corp. v. Chase Manhattan Bank*, 707 F.2d 680, 685

16  (2d Cir. 1983).  However, in both of those cases the

17  plaintiffs only survived summary judgment because the

18  allegations regarding defendant's waiver did constitute

19  evidence of a "clear manifestation of intent" to waive the

20  relevant provision.  See *Gilbert*, 70 N.Y.2d, at 968, 525

21  N.Y.S.2d at 795, 520 N.E.2d at 514.  In *Christian Dior*,

22  plaintiff alleged that defendant had orally promised to not

23  enforce the relevant contractual provision, despite a no oral

24  modification clause in the contract.  See 792 F.2d at 39.  The

25  Court of Appeals held that there was a triable issue of fact

068hcitd                                                                11
Decision

1   regarding whether or not the "no oral modification clause" had

2   been waived.  See *Christian Dior* at 40.  The allegation that

3   the defendant had orally promised not to enforce the

4   contractual provision is evidence of a possible intent to

5   waive the no oral modification provision.  Similarly, in

6   *Voest*, the Second Circuit held that summary judgment was

7   inappropriate on the issue of waiver where plaintiffs sought

8   to prove intention through "declaration, acts and nonfeasance

9   which permit different inferences to be drawn."  That is *Voest*

10  at 685.  However, the evidence presented by plaintiff in *Voest*

11  to establish a waiver was substantially more compelling than

12  that presented here.  In *Voest* the plaintiff presented

13  evidence of an initialed approval of the relevant documents by

14  a defendant official, as well as a letter allegedly

15  co-authored by plaintiff and defendant indicating that the

16  documents in question had been accepted.  That is *Voest*, 684.

17  The plaintiff in *Voest* presented evidence that the defendant

18  in that case had accepted the defective performance.

19          Here, however, Cityscape has presented no evidence

20  that Walsh ever manifested a clear intent to waive the 120-day

21  provision or that Cityscape's reappraisals were accepted or

22  approved by Walsh at any point.  Therefore, I am granting

23  summary judgment in defendant's favor regarding the 120-day

24  provision.

25          While this issue would otherwise entirely resolve the

068hcitd                                                          12
                          Decision

1   question of the appraisal variance loans, Cityscape argues

2   that the 120-day provision did not apply to the 23 appraisal

3   variance loans sold in June of 1996, because it was added to

4   the agreement by the letter agreement of July 30, 1996.  In my

5   December 23, 1998 opinion, I found that there is a triable

6   issue of fact as to whether or not the 120-day restriction

7   applies to the June 1996 loans.  Walsh argues here that

8   subsequent deposition testimony demonstrates that there is no

9   genuine issue of material fact regarding whether the 120-day

10  restriction applies retroactively to the June 1996 loans.

11  However, I find that there is still a genuine issue of

12  material fact regarding the retroactivity of the 120-day

13  provision.  Because the meaning of the contract in this

14  instance is ambiguous, the court is permitted to consider

15  extrinsic evidence to interpret the contractual language.

16  That is *Kepner v. Tregoe, Inc. v. Vroom*, 186 F.3d 283,387 (2d

17  Cir. 1999).  The parties have submitted conflicting evidence

18  regarding the retroactivity of this provision.

19           Thus, because there is a triable issue of fact

20  regarding the retroactivity of this provision, it is necessary

21  for the court to consider Walsh's second basis for seeking

22  summary judgment on the appraisal variance loans.

23           I should say at this time that when I have been

24  talking about "waiver," I have been talking about intentional

25  waiver, which is a waiver where a plaintiff establishes a

                 SOUTHERN DISTRICT REPORTERS (212) 805-0300

Decision

1   clear manifestation of intent by defendant to relinquish the

2   protection of the relevant contractual provision.  That is

3   from *Gilbert Frank*.  But there are two types of waiver under

4   New York law, and the second is waiver by estoppel, where a

5   plaintiff establishes that defendant by its conduct otherwise

6   lulled plaintiff into sleeping on its rights.  That behavior

7   by estoppel is not an issue in this case, but I thought I

8   should say that because the alleged waiver occurred subsequent

9   to the expiration of the limitations period making it

10  impossible for plaintiff to have detrimentally relied upon

11  Walsh's conduct.  That is directly from *Gilbert Frank*.

12          Now let's turn to the "as of" provision, which is the

13  120-day provision.

14          Section VI of the agreement provides that any

15  reappraisal is required to be "as of the date of the seller's

16  appraisal."  In my December 1998 opinion, I dismissed 69 other

17  appraisal variance claims because the reappraisals were not

18  "as of" the date of the original appraisal and subsequently

19  denied plaintiff's motion for reconsideration on this issue.

20  It is undisputed that Cityscape's reappraisals for the 39

21  loans at issue in this case were not "as of" the date of the

22  original appraisal.  Walsh argues that Cityscape's failure

23  discharges Walsh's obligation to repurchase the loans.

24  Cityscape argues, however, that Walsh waived the "as of"

25  requirement and that new evidence raises genuine issues of

068hcitd                                                        14
                          Decision

1   material fact regarding Walsh's waiver of its right to invoke

2   the "as of" provision.

3          Mr. Cohn of Walsh does not dispute that he was aware

4   of this provision when he received the reappraisals.

5   Moreover, he testified that he did not even look at the dates

6   of the appraisals when he received them.  Otherwise, the

7   factual allegations regarding the waiver of the "as of"

8   provision are substantially the same as the allegations

9   regarding the waiver of the 120-day provision.

10         Defendant's silence regarding the date of the

11  reappraisals does not provide a strong enough inference of

12  intent to waive this provision to survive summary judgment.

13  The allegation that Cohn contacted Cityscape as late as

14  September 24 for third review appraisals might indicate that

15  Walsh was considering foregoing the protection of this

16  provision, but provides little support for the argument that

17  Walsh intended to relinquish its rights.  Plaintiffs have

18  offered no evidence that would support the contention that

19  defendant intended to waive this provision or that it had

20  accepted these reappraisals.

21         Therefore, Cityscape's claims regarding the remaining

22  appraisal variance loans are dismissed.

23         Now we will turn to the New Jersey loans.

24         Cityscape has moved for partial summary judgment on

25  the 32 New Jersey loans that were part of a fraudulent

068hcitd                                                              15
                          Decision

1   land-flipping scheme.  Pursuant to the master agreement, Walsh

2   made the following representations and warranties for each of

3   the loans sold to Cityscape:

4           V.B.3.  All information set forth in any schedule of
    loans delivered is true and correct in all respects, and all
5   other information furnished to buyer by seller with respect to
    the loan(s) purchased is true and correct in all material
6   aspects as of the settlement date.

7           Section V.B.13.  There are no violations of any
    applicable state or federal law or regulation. . .
8

9           Pursuant to Section VI(A) of the agreement, which

10  provides a remedy for a breach of the two provisions I just

11  set forth, that is, V.B.3 and V.B.13, states:

12          In addition to any rights or remedies the buyer has
    in this contract, if at any time there is a breach of any
13  representation or warranty set forth herein by seller, which
    breach, in the reasonable judgment of the buyer, impairs the
14  ability of the buyer to enforce the note or mortgage, (a
    "material breach"), then the buyer shall give timely notice to
15  seller in writing, after which time seller shall have 90 days
    to cure, and if not cured the seller shall upon demand of the
16  buyer and at the sole option and absolute discretion of the
    buyer, repurchase the affected loan. . .
17

18          Cityscape argues that Walsh made several false

19  representations and breached several warranties regarding the

20  New Jersey loans and that as a result Walsh was contractually

21  obligated to repurchase the loans upon Cityscape's demand.

22  The court finds in favor of Cityscape on the New Jersey loans

23  as to liability.

24          Cityscape has submitted overwhelming evidence that

25  the New Jersey loans were fraudulent.  According to a report

                SOUTHERN DISTRICT REPORTERS (212) 805-0300

068hcitd                                                          18
                              Decision

1   regarding the existence of a fraudulent scheme underlying 32

2   New Jersey loans.

3           Walsh nonetheless contests its liability on these

4   loans and has moved for summary judgment in its favor on the

5   grounds that the plain language of the agreement does not

6   require that Walsh repurchase the 32 New Jersey loans.

7           First, as stated above, Section VI(A) permits

8   Cityscape to demand repurchase where there is a breach of

9   representation or warranty which "in the reasonable judgment

10  of [Cityscape] impairs the ability of buyer to enforce the

11  note or mortgage (a 'material breach')."  Walsh argues that

12  the meaning of this provision is that Cityscape may only

13  demand repurchase where Cityscape is unable to sue on the note

14  or foreclose on the mortgage.  Defendant points to the

15  definition of "enforce" in Black's Law Dictionary, which is

16  "to put into execution, to take effect; to make effective; as

17  to enforce a particular law, or write, a judgment or the

18  collection of a particular debt or fine, to compel obedience

19  to."  Black's Law Dictionary, 474 (7th ed. 1999).  From this

20  definition, Walsh argues that this provision meant that

21  Cityscape had to have a reasonable judgment that it would not

22  be able to sue on or foreclose on the loans in order to invoke

23  its repurchasing rights.

24          However, a plain reading of the language of this

25  unambiguous provision leads to a different interpretation.

068hcitd                                                                19
Decision

1    The definition of impair -- also from Black's, at page 754 --

2    is "to diminish the value of (property or a property right)."

3    This provision is plainly satisfied in situations in which the

4    value of the loan or property is diminished.  Indeed, the

5    "material breach" explanatory parenthetical that follows this

6    clause makes the meaning of the clause clear -- the clause

7    provides that Cityscape may only demand repurchase where a

8    breach of representation or warranty results in a diminishment

9    in value of the loan, as opposed to a technical breach which

10   does not affect the value of the loan.

11          Walsh's remaining arguments are easily disposed of.

12          Walsh contends that the representation in V.B.3 is

13   inapplicable in this context.  According to Walsh, this

14   provision applies only to the schedule of loans delivered and

15   not to the actual loan files and documents.  This

16   interpretation is contrary to the plain language of the

17   provision which warrants that in addition to the loan

18   schedule, "all other information furnished to buyer by seller

19   with respect to the loan(s) purchased is true and correct in

20   all material aspects as of the settlement date."  It is not

21   necessary to resort to extrinsic information.

22          In addition, Walsh presents evidence that Cityscape

23   did know or should have known or suspected that the loans were

24   based on fraudulent appraisals.  This evidence is not relevant

25   to the ultimate resolution of this case.  Absent evidence to

068hcitd                                                                    20
                                Decision

1   the contrary, the agreement between Cityscape and Walsh did

2   not require Cityscape to bring such information to Walsh's

3   attention.  Walsh's argument that Cityscape waived its ability

4   to seek repurchase of these loans is without merit. .

5            Finally, Walsh argues that Section V.B.13 was not

6   intended to apply to the instant situation but rather it was

7   intended to refer to laws which protect the borrower, in

8   accordance with the examples provided in the representation.

9   It is not necessary for this court to reach this question

10  given that Section V.B.3 unambiguously covers the situation.

11           For the reasons set forth above, Walsh's motion for

12  summary judgment on the appraisal variance loans is granted.

13  Cityscape's partial motion for summary judgment on the New

14  Jersey loans is granted as to liability.  Because there are

15  unresolved issues as to the extent of the loss and damages

16  suffered, I am ordering that there be an inquest on damages

17  insofar as the New Jersey loans are concerned.

18           That is my decision.  I will enter an order saying,

19  For the reasons set forth on the record today that Walsh's

20  motion for summary judgment on appraisals is granted and

21  Cityscape's partial motion for summary judgment on the New

22  Jersey loans is granted as to liability and there will be an

23  inquest on damages in regard to the New Jersey loans.

24           Now, how do the parties want to handle that inquest?

25  From my standpoint, I am prepared to do it whenever you want.

068hcitd
                              Decision                          21

1  Do you want to take some time to talk among yourselves, a few

2  weeks to decide whether you want to go forward on that?  Is

3  there anything we need in preparing?  It seems to me there

4  isn't, but I want to get the views of the parties.

5           MS. MOORE:  Your Honor, we would like you to schedule

6  the inquest in relatively short order, because if you do that

7  it will prompt the parties to speak with each other.

8           THE COURT:  All right.

9           MS. MOORE:  By that I mean a couple of weeks in order

10 to wake up my witnesses and make sure I have everybody lined

11 up.

12          THE COURT:  All right.

13          What is the position of the defense?

14          MS. GNUDI:  I would suggest that if there is going to

15 be an inquest, which I assume is some type of a hearing?

16          THE COURT:  Yes.  I will take whatever facts the

17 parties want to give me on damages.  If the parties want to do

18 it, I will certainly do it on papers instead of with

19 witnesses.  Anyone who wants to have witnesses, I see no

20 reason not to have witnesses, if you prefer it, but similarly,

21 sometimes, especially in this type of case, it often can be

22 put in on papers.  I will let you talk to each other about

23 that.

24          MS. GNUDI:  I would just like to have the opportunity

25 to speak to the attorney who is primarily handling this.  He

                SOUTHERN DISTRICT REPORTERS (212) 805-0300

```
068hcitd                                                    22
                         Decision
```

1    is not here today.

2              THE COURT:  Why don't you do this:  Talk to each

3    other within the next week.  A week from today send me either

4    a joint submission as to how you want to proceed, or if you

5    can't agree on that, separate submissions, but put it in

6    writing a week from today and then we will proceed.

7              If we do have a factual hearing as opposed to

8    submission of papers, I would think it could be done well

9    inside of a day, and I can find a day sometime by the end of

10   June or the first week of July.

11             Thank you.

12             (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25