**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant
    Commonwealth Land Title
    Insurance Company

|  |  |
|---|---|
| | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY |
| WALSH SECURITIES, INC., | Civil Action No. 97-cv-3496 (DRD)(MAS) |
|     Plaintiff, | Hon. Dickinson R. Debevoise, U.S.S.D.J.<br>Hon. Michael A. Shipp, U.S.M.J. |
|   v. | |
| CRISTO PROPERTY MANAGEMENT,<br>LTD., a/k/a G.J.L. LIMITED, et al., | **COMMONWEALTH LAND TITLE<br>INSURANCE COMPANY'S<br>RESPONSIVE STATEMENT OF<br>MATERIAL FACTS PURSUANT<br>TO LOCAL CIVIL RULE 56.1** |
|     Defendants. | |

Defendant Commonwealth Land Title Insurance Company ("Commonwealth") submits this Responsive Statement of Material Facts Pursuant to Local Civil Rule 56.1 in response to the Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 In Support of Plaintiff Walsh Securities, Inc.'s Motion for Partial Summary Judgment, filed by Plaintiff Walsh Securities, Inc. ("WSI" or "Plaintiff"):

1.    Objection. Plaintiff's statement contains no supporting citation to the record and therefore need not be considered by the Court. *See* Fed. R. Civ. P. 56(c); *see also* L. Civ. R. 56.1(a) (requiring that the separately numbered paragraphs of the statement of undisputed material fact be supported by citation to "affidavits and other documents submitted in support of that motion"). A party asserting that a fact cannot be genuinely disputed ***must support*** the assertion by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1)(A)

(emphasis added). "[A] party may not nakedly assert that a fact is or is not genuinely in dispute." 11 *Moore's Federal Practice* § 56.90 (Matthew Bender 3d Ed.). For the purposes of summary judgment, the court need consider only the cited materials. Fed. R. Civ. P. 56(c)(3)(A). "[W]here record citations are not included and are not readily apparent, a party's factual assertions may be disregarded." Lite, *N.J. Fed. Practice Rules*, Comment 2(a) to L.Civ.R. 56.1 (Gann 2011) (citing *Baker v. Hartford Life Ins.*, No. 08-cv-6382, 2010 U.S. Dist. LEXIS 52724 (D.N.J. 2010); *see also Avatar Bus. Connection, Inc. v. Uni-Marts, Inc.*, No. 04-1866, 2007 U.S. Dist. LEXIS 38775 (D.N.J. 2007) ("This court will not assume that. . . . facts exist where Plaintiff cites to none in the record.").

2.    Objection. Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

3.    Objection. Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

4.    Objection. Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

5.    Objection. Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

6.    Objection. Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

7.    Objection. Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

8.    Objection. Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

ME1 12662638v.1

9.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

10.    Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

11.    Admitted for purposes of this partial motion for summary judgment only.

12.    Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

13.    Denied.  Kane was an employee of NHF.  (*See* Merin Certif., Ex. _: WSI Fidelity Ins. Proof of Loss 3; *see also* Ex. H: Kane 2007 Dep. 25, 27 (explaining that he worked for NHF instead of just using NHF's services, because that allowed him to eliminate an added fee on each loan to another person at NHF); Ex. F: Kane 2011 Dep. 239.)

14.    Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

15.    Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

16.    Denied.  The appraisers were hired by NHF: Kane picked the appraisers that he used from a list provided to him by Skowrenski, and when Kane picked those appraisers, he was doing so in his capacity as an employee of NHF.  (*See* Merin Certif., Ex. F: Kane 2011 Dep. 240.)  Kane also testified that, as to his business dealings with WSI, he worked for NHF.  (*See* Merin Certif., Ex. H: Kane 2007 Dep. 62.)

17.    Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

3

18.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

19.     Objection to the extent that the statements regarding Capital Assets and/or Cristo selecting the closing attorneys, the use of NHF's paper, NHF's license, and table funding are not supported by any citation to the record.  Admitted that Kane was an employee of NHF and used NHF's services in his capacity as an employee.  (*See* Merin Certif., Ex. E: WSI Fidelity Ins. Proof of Loss 3; *see also* Ex. H: Kane 2007 Dep. 25, 27 (explaining that he worked for NHF instead of just using NHF's services, because that allowed him to eliminate an added fee on each loan to another person at NHF); Ex. F: Kane 2011 Dep. 239.)  The remainder of this statement is denied.

20.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

21.     Denied to the extent that the statements are not supported by the citation provided, which states that "Rick Pepsny" selected Coastal Title.  Pepsny is identified as a closing attorney by WSI in its claim to its fidelity insurer.  (*See* Merin Certif., Ex. E: WSI Fidelity Ins. Proof of Loss 3.)  Admitted to the extent that Coastal Title issued closing service letters and commitments on many of the loans which are the subject of this action.  Denied that Coastal is a title insurance broker; to the contrary, Coastal is a title insurance agent.  (*See, e.g.* Magnanini Certif, Ex. H Fidelity Agency Agreement with Coastal.)

22.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

23.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

4

24.    Admitted for purposes of this partial motion for summary judgment only.  By way of further answer, employees of WSI also pled guilty.  (*See, e.g.,* Merin Certif., Ex. D: DeMola Plea; Ex. G: O'Neill Plea; Ex. BB: D'Apolito Plea.)

25.    Admitted for purposes of this partial motion for summary judgment only.

26.    Admitted for purposes of this partial motion for summary judgment only.

27.    Admitted to the extent that "Title Insurance Defendants" is defined as including only Commonwealth Land Title Insurance Company, Fidelity National Title Insurance Company and Nations Title Insurance of New York.  Denied as to any other definition of "Title Insurance Defendants."

28.    Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

29.    Objection.  Plaintiff provides no citation in support of its statement: "In these instances, Mortgage Bankers are paid fees, generally by the borrowers, for originating mortgage loans so that they can be sold to other investors."  *See* Response No. 1, *supra.*  Further denied. The citation provided does not support the remainder of Plaintiff's statement; in the cited statement, Donna Sullivan defined the term "table funding" but did not make any statements about the prevalence of its use among mortgage bankers.

30.    Denied.  N.J.S.A. § 17:11B-5, *et seq.*, was repealed by L. 1996, c. 157 § 55.

31.    Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

32.    Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

33.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

34.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

35.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

36.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

37.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

38.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

39.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

40.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

41.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

42.     Denied.  The protections within a closing service letter are set out in the text of each letter and speak for themselves; namely, they are specifically limited to only cover discrete circumstances and are not so broad as to generally cover "an 'approved attorney's' malfeasance or their failure to comply with the lender's closing instructions[,]" as asserted by Plaintiff.  (*See* Magnanini Certif., Ex. A.)  Specifically, closing service letters only protect against loss arising

6

from "1. [f]ailure of the Issuing Agent or Attorney to comply with your written closing instructions *to the extent that they relate to: (a) the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land*, including the obtaining of documents and the disbursement of funds necessary to establish such title or lien; or (b) the collection and payment of funds due to you; or 2. [f]raud or misapplication by the Issuing Agent or Attorney in handling your funds *in connection with the matters set forth in numbered paragraph 1 above*." (*See* Magnanini Certif., Ex. A (emphasis added); *see also* Commonwealth's Br. In Opp. to Pl.'s Mot. for Partial Summ. J.; Fidelity and Nations' Br. In Opp. to Pl.'s Mot. for Partial Summ. J.).)

43.    Denied that all requirements contained within a title commitment that must be met before a title policy will issue are in Schedule B. (*See* Magnanini Certif, Ex. B at 77.) The Commitment also contains various other conditions and stipulations relating to the coverage to be provided. (*See* Magnanini Certif, Ex. A.) The remainder of this statement is admitted for purposes of this motion for partial summary judgment only.

44.    Admitted only as to title insurance policies for purposes of this motion for partial summary judgment only. Objection as to the statement "like any insurance policy" as the citation provided does not appear to support this statement.

45.    Objection. Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

46.    Objection. Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

47.    Objection. Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

ME1 12662638v.1

48.     Denied.  No list of "approved attorneys" existed in 1996 and 1997; Commonwealth only had a list of unapproved attorneys.  (*See* Magnanini Certif., Ex. B: Commonwealth 30(b)(6) Dep. at 59.)

49.     Admitted for purposes of this motion for partial summary judgment only.

50.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

51.     Denied to the extent that the quoted language is the sum of the language in a Closing Service Letter.  Closing Service Letters also contain various other provisions affecting the claims made by WSI in this case.  (*See* Magnanini Certif, Ex. A.)  Admitted only for purposes of this motion for partial summary judgment that Plaintiff's quotation is accurate.

52.     Denied.  Closing service letters do not indemnify one for their own wrongdoing.  (*See* Commonwealth's Br. In Opp. to Pl.'s Mot. for Partial Summ. J.; Fidelity and Nations' Br. In Opp. to Pl.'s Mot. for Partial Summ. J.)  Further, the citation provided does not support Plaintiff's statement, namely Fidelity's representative testified that she did not know if an exclusion for fraud of the party for whom the insurance is given is specifically stated in the closing service letter.  (*See* Magnanini Certif, Ex. M: Fidelity 30(b)(6) Dep. at 10.)  Further denied in that the current form of Closing Service Letter has not been approved for use in New Jersey.

53.     Admitted that a closing service letter provides certain protections that differ from those in a title policy.  Denied as to the scope of protections set out by Plaintiff; the protections are explicitly limited in the closing service letter at paragraphs 1 and 2 to include only loss arising from "1. [f]ailure of the Issuing Agent or Attorney to comply with your written closing instructions *to the extent that they relate to: (a) the title to said interest in land or the validity,*

8

*enforceability and priority of the lien of said mortgage on said interest in land*, including the obtaining of documents and the disbursement of funds necessary to establish such title or lien; or (b) the collection and payment of funds due to you; or 2. [f]raud or misapplication by the Issuing Agent or Attorney in handling your funds *in connection with the matters set forth in numbered paragraph 1 above*." (*See* Magnanini Certif., Ex. A (emphasis added); *see also* Commonwealth's Br. In Opp. to Pl.'s Mot. for Partial Summ. J.; Fidelity and Nations' Br. In Opp. to Pl.'s Mot. for Partial Summ. J.).)

54.      Denied that the title underwriter selects the closing attorney or that the lender could not select a different attorney and then request that a closing service letter be issued for that attorney.  Further denied to the extent Plaintiff defines the covered conduct more broadly than is set forth in the Closing Service Letter. (*See* Magnanini Certif., Ex. A (emphasis added); *see also* Commonwealth's Br. In Opp. to Pl.'s Mot. for Partial Summ. J.; Fidelity and Nations' Br. In Opp. to Pl.'s Mot. for Partial Summ. J.).)

55.      Denied.  Skowrenski testified that he knew that WSI did not get allonges to him before the loan's closing, because for years he was getting allonges and assignments after the fact. (*See* Merin Certif., Ex. _: Skowrenski Dep. 123.)  Further denied, as the cited page does not support the statements asserted. (*See* Merin Certif., Ex. I: Robert Walsh Dep. 675.)

56.      Denied.  No proof of payments has been provided in this lawsuit.  Further denied in that the Title Insurance Defendants did not directly issue commitments; they relied on their policy-issuing agents to issue commitments and policies. (*See* Magnanini Certif., Ex. A-3.) Further denied in that the Title Insurance Defendants authorizes their policy-issuing agents to issue commitments and policies; no reliance is indicated in Plaintiff's citation.

57.     Admitted as to a title agent's actions.  Objection as to the final sentence of this statement regarding the use of the information, as Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra.*

58.     Admitted.  This is a partial description of the contents of Schedule A of a Title Insurance Commitment.  (*See* Magnanini Certif., Ex. A-3.)

59.     Denied.  The testimony does not support the use of the word "should."  Admitted that, if the title agent's search indicates that there is a prior mortgage or other encumbrance on the property, then the title agent ordinarily identifies that fact in Schedule B.  Denied to the extent that Plaintiff may assert that Schedule B only includes requirements; exceptions are also enumerated.  (*See, e.g.*, Magnanini Certif., Ex. A-3.)

60.     Admitted for purposes of this motion for partial summary judgment only.

61.     Admitted that title agents perform and/or retain third parties to perform the search work and issue title commitments.

62.     Denied.  Commonwealth's 30(b)(6) representative testified that "[i]t's unlikely the policy would be issued without the deed and mortgage recorded because the usually wait for the recording information to insert in the policy and use the recording date as the date of the policy." (*See* Magnanini Certif., Ex. B: Commonwealth 30(b)(6) Dep. at 173.)

63.     Denied.  The closing service letter sets out that losses covered including only those arising from "1. [f]ailure of the Issuing Agent or Attorney to comply with your written closing instructions ***to the extent that they relate to: (a) the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land,*** including the obtaining of documents and the disbursement of funds necessary to establish such title or lien; or (b) the collection and payment of funds due to you; or 2. [f]raud or misapplication

10

by the Issuing Agent or Attorney in handling your funds *in connection with the matters set forth in numbered paragraph 1 above.*" (*See* Magnanini Certif., Ex. A (emphasis added); *see also* Commonwealth's Br. In Opp. to Pl.'s Mot. for Partial Summ. J.; Fidelity and Nations' Br. In Opp. to Pl.'s Mot. for Partial Summ. J.).)

64.     Denied to the extent that Plaintiff asserts that the title policy and title commitment are similar, as commitments are not insurance policies. (*See* Magnanini Certif., Ex. A (copies of commitments).)

65.     Denied to the extent that Plaintiff asserts that the recording information on the "insured mortgage" is the only information in Schedule A of a title policy. (*See* Magnanini Certif., Ex. A-1.) Admitted for the purposes of this motion for partial summary judgment only that the recording information is among the information in Schedule A. (*See* Magnanini Certif., Ex. A-1.)

66.     Denied. While an item in Schedule B does not render the policy unenforceable, it may affect the scope of coverage. The Title Policy must be read in its entirety. By way of further response, title policies include other limitations on coverage which are contained in the exclusions, conditions, and stipulations of the policy. (*See* Magnanini Certif., Ex. A-1.)

67.     Objection. Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

68.     Denied, as Plaintiff's citation to its own Complaint is insufficient factual support to satisfy the requirements of Local Civil Rule 56.1 or to support a motion for a motion for summary judgment. A party asserting that a fact cannot be genuinely disputed must support the assertion by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1)(A). This includes citations to "depositions, documents, electronically stored information, affidavits

or declarations, stipulations, admissions, interrogatory answers, or other materials." *Ibid*. A

plaintiff's own Complaint cannot be considered "other materials" within the meaning of Rule 56,

because this would allow parties to "nakedly assert that a fact is or is not genuinely in dispute."

11 *Moore's Federal Practice* § 56.90 (Matthew Bender 3d Ed.). Even if the movant's own

complaint qualified as "other materials," it should still be disregarded as inadmissible hearsay

pursuant to Rule 56(c)'s provision that allows objection where material cited to support or

dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ.

P. 56(c)(2). Plaintiff's own complaint is inadmissible at trial as it is an out-of-court statement

offered to prove the truth of the matter asserted. Fed R. Evid. 801(c); Fed. R. Evid. 802.

Statements supported only by citation to a complaint should therefore be disregarded in a

summary judgment motion. *See Smith v. City of Allentown*, 589 F.3d 684, 693-94 (3d Cir. 2009)

(district court properly refused to consider inadmissible hearsay evidence on motion for

summary judgment).

69.      Denied.  Plaintiff's citation to its own Complaint is insufficient factual support to

satisfy the requirements of Local Civil Rule 56.1 or to support a motion for a motion for

summary judgment. *See* Response No. 68, *supra*.

70.      Denied.  Plaintiff's citation to its own Complaint is insufficient factual support to

satisfy the requirements of Local Civil Rule 56.1 or to support a motion for a motion for

summary judgment. *See* Response No. 68, *supra*.

71.      Denied.  Plaintiff's citation to its own Complaint is insufficient factual support to

satisfy the requirements of Local Civil Rule 56.1 or to support a motion for a motion for

summary judgment. *See* Response No. 68, *supra*.

12

72.   Denied.  Plaintiff's citation to its own Complaint is insufficient factual support to satisfy the requirements of Local Civil Rule 56.1 or to support a motion for a motion for summary judgment.  *See* Response No. 68, *supra*.

73.   Denied.  Plaintiff's citation to its own Complaint is insufficient factual support to satisfy the requirements of Local Civil Rule 56.1 or to support a motion for a motion for summary judgment.  *See* Response No. 68, *supra*.

74.   Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

75.   Denied.  The citation does not support the statements asserted.  The quoted information relates to solely Coastal's knowledge and conversations.  For clarity, the execution of such a deed would not render title to the property unmarketable.  Any transfer to Capital Assets would be subject to the mortgage as Capital Assets was aware of the mortgage at the time of the recording of the deed.

76.   Denied.  The citation does not support the statements asserted.  The cited deposition testimony is a response to a question regarding why a lender has closing instructions. Further denied in that WSI has not produced proof that WSI wired loan proceeds to the attorneys at the closing.  Further denied to the extent that no list of "approved attorneys" existed in 1996 and 1997; Commonwealth only had a list of unapproved attorneys.  (*See* Magnanini Certif., Ex. B: Commonwealth 30(b)(6) Dep. at 59.)

77.   Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

78.   Denied.  The citation does not support the statements asserted.

13

79.     Denied that the sample WSI's closing instructions provided state that "a full ALTA Title policy be issued"; the instructions state that "[w]e require full ALTA Title Policy (1992 Form) delivered within 30 days of closing." (*See* Magnanini Certif., Ex. C: WSI Closing Instructions for Loan No. 622645 at 2.) The remainder of the statement at Number 79 is admitted for the purposes of this motion for partial summary judgment only.

80.     Admitted for the purposes of this motion for partial summary judgment only. (*See* Magnanini Certif., Ex. C: WSI Closing Instructions for Loan No. 622645 at 1.)

81.     Admitted for the purposes of this motion for partial summary judgment only.

82.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

83.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

84.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

85.     Admitted for purposes of this motion for partial summary judgment only. (*See* Magnanini Certif., Ex. T: Yacker Plea Tr. at 25.)

86.     Admitted for purposes of this motion for partial summary judgment only. (*See* Magnanini Certif., Ex. T: Yacker Plea Tr. at 25.)

87.     Admitted for purposes of this motion for partial summary judgment only. (*See* Magnanini Certif., Ex. T: Yacker Plea Tr. at 26.)

88.     Admitted for purposes of this motion for partial summary judgment only. (*See* Magnanini Certif., Ex. T: Yacker Plea Tr. at 26.)

14

89.     Admitted for purposes of this motion for partial summary judgment only. (*See* Magnanini Certif., Ex. T: Yacker Sentencing Tr. at 16-17.)

90.     Objection.  Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra*.

91.     Admitted that King testified as set forth in paragraph 91, but it is denied that a foundation was presented in the testimony to support the conclusory allegation made by King. Further denied in that no proof is offered as to any of the specific transactions at issue in this partial motion for summary judgment.

92.     Denied.  The cited statement explains that Ms. King was paid by Cicalese but also received funds from Kane. (*See* Magnanini Certif., Ex. Q at 41.)

93.     Denied.  The citations do not support Plaintiff's statement.  Yacker testified that he began closing loans for Kane in approximately September or October 1995. (*See* Magnanini Certif., Ex. P: Yacker Dep. at 11-12.)

94.     Admitted that Yacker tried to defend his participation in the fraud with the defense of improper practice of law by King.  Denied that King testified that she never had formal training in real estate practice; King testified that she never had formal training in real estate processing. (*See* Magnanini Certif., Ex. Q: King Dep. at 27.)

95.     Denied.  King testified that she "was working under Mr. Yacker but solely for Bill Kane closings." (*See* Magnanini Certif., Ex. Q: King Dep. at 30.)  Further denied to the extent it is asserted that King was paid solely by Kane.  King testified that she was paid by both Yacker and Kane. (*See* Magnanini Certif., Ex. Q: King Dep. at 31.)

96.     Denied that King testified that Kane controlled Yacker's trust account.  King testified that an accountant did the data entry of all past closing information on the newly

computerized system but then King "was allowed to do data entry.  And then after that [she] did most of the entries and disbursements.  This is with Mr. Yacker.  With Anthony Cicalese he did his own." (*See* Magnanini Certif., Ex. Q: King Dep. at 33.)

      97.    Admitted for purposes of this motion for partial summary judgment only.

      98.    Admitted for purposes of this motion for partial summary judgment only.

      99.    Denied to the extent that WSI has not produced any proof that the strawbuyers were not present at the closings which are the subject of its motion.  Admitted for the purposes of this motion for partial summary judgment only that Yacker, Cicalese, and King testified in their depositions as to strawbuyers often not being present for closings.

      100.    Admitted for purposes of this motion for partial summary judgment only.

      101.    Denied.  The closing service letter sets out that losses covered included only those arising from "1. [f]ailure of the Issuing Agent or Attorney to comply with your written closing instructions *to the extent that they relate to: (a) the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land*, including the obtaining of documents and the disbursement of funds necessary to establish such title or lien; or (b) the collection and payment of funds due to you; or 2. [f]raud or misapplication by the Issuing Agent or Attorney in handling your funds *in connection with the matters set forth in numbered paragraph 1 above*." (*See* Magnanini Certif., Ex. A (emphasis added); *see also* Commonwealth's Br. In Opp. to Pl.'s Mot. for Partial Summ. J.; Fidelity and Nations' Br. In Opp. to Pl.'s Mot. for Partial Summ. J.).)

      102.    Denied as to Kane instructing King not to record closing documents, as that statement is not supported by the citations provided.  The remainder of the statement is admitted for purposes of this motion for partial summary judgment only.

16

103.    Admitted for purposes of this motion for partial summary judgment only.

104.    Admitted for purposes of this motion for partial summary judgment only.

105.    Denied.  No support is provided for the statement that WSI provided funds at closing for the recording fees.  Further denied, as the citations provided do not indicate who caused the depletion of Yacker's trust account.

106.    Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

107.    Admitted for purposes of this motion for partial summary judgment only.

108.    Admitted for purposes of this motion for partial summary judgment only.

109.    Admitted for purposes of this motion for partial summary judgment only.

110.    Admitted for purposes of this motion for partial summary judgment only.

111.    Denied.  The citation provided does not support the statement that "King confirmed that Kane was selling properties that he did not own, so Cicalese did not record deed." In the citation provided, King testified that Bill Kane instructed her not to immediately send deeds for recording but to hold some, because "somebody in Monmouth County was becoming suspicious of the influx of property being bought and sold in Asbury Park and Long Branch." (*See* Magnanini Certif., Ex. Q: King Dep. at 36:7-18.)

112.    Admitted for purposes of this motion for partial summary judgment only.

113.    Admitted for purposes of this motion for partial summary judgment only.

114.    Admitted for purposes of this motion for partial summary judgment only.

115.    Admitted for purposes of this motion for partial summary judgment only.

116.    Denied.  The cited testimony states that Cicalese "wasn't sure whether [he] was representing the individual buyers at some times or whether [he] was representing Capital Assets

17

or both." No testimony is cited regarding when/if he gained knowledge that the transactions were a fraud. (*See* Magnanini Certif., Ex. R: Cicalese Dep. at 17.) Further denied in that Cicalese admitted that "there were a number of frauds and misapplication of funds in conjunction with these transactions"; he did testify as to his role in the "frauds and misapplication of funds." (*See* Magnanini Certif., Ex. R: Cicalese Dep. at 143.)

117.    Denied. In the testimony supported to cite this statement, Cicalese admitted that either Kane or Greiser told him not to deposit a check. (*See* Magnanini Certif., Ex. R: Cicalese Dep. at 171-173.)

118.    Denied. The citation provided does not support the statement that "Yacker and Cicalese knew the properties were being closed before the Cristo-to-strawbuyer closing occurred. (*See* Magnanini Certif., Ex. Q: King Dep. at 85:1-86:21.) King testified that "we started making major mistakes like closing on properties we did not own already" and testified that she then made lists and faxed them to "the players" to keep them apprised of what was going on and to avoid closing on properties they did not yet own. (*See* Magnanini Certif., Ex. Q: King Dep. at 85:1-86:21.) The remainder of this statement is admitted for the purposes of this summary judgment motion only.

119.    Denied. The cited testimony does not refer to all "approved attorneys." The only attorney who is discussed as disbursing mortgage proceeds before documents were properly executed is Yacker. (*See* Magnanini Certif., Ex. Q: King Dep. at 109-110.) Admitted as to Yacker only.

120.    Denied. Plaintiff's citation to its own Complaint is insufficient factual support to satisfy the requirements of Local Civil Rule 56.1 or to support a motion for a motion for summary judgment. *See* Response No. 68, *supra*.

121.     Denied.  Plaintiff's citation to its own Complaint is insufficient factual support to satisfy the requirements of Local Civil Rule 56.1 or to support a motion for a motion for summary judgment.  *See* Response No. 68, *supra*.

122.     Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

123.     Denied.  The citations provided do not support the statement regarding Monmouth Title Agency.  Admitted for the purposes of this motion for partial summary judgment that Coastal Title Agency was a policy-issuing agent of the Title Insurance Defendants.

124.     Admitted for the purposes of this motion for partial summary judgment only.

125.     Denied.  Fidelity's corporate representative testified that "the agent will receive . . . the premium payment and endorsement fees . . . directly and they will hold on to that and remit the company's percentage, which in this case looks like it was 17 percent, and this paragraph provides a bonus if the total remittances to the company are over 100,000.  Gives them a certain percentage of that amount over 100,000.  (*See* Magnanini Certif., Ex. M: Fidelity 30(b)(6) Dep. at 74.)

126.     Denied.  Coastal's 30(b)(6) representative testified that Coastal used a system, instituted due to his being informed that there was confusion at the lender WSI, that allowed WSI to review a clear title commitment for the lender to use, marked as an "A" file.  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 46-48, 153.)  Further denied in that Coastal's 30(b)(6) representative also explained that he believed that, by the time the second sale would take place, all of the title problems would be cleared up, thus the actual (original) title commitment would not issue until everything was cleared up..  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 22, 46-48.)  Further denied in that Coastal's 30(b)(6) representative did

19

not admit to Coastal engaging in any improper conduct. (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 22, 46-48, 153.)

127.    Denied.  The citation provided does not exist in Exhibit S, nor does the statement at the cited pages in Coastal's 30(b)(6) deposition support the quoted statement. (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 47-49.)  Further denied, Coastal's 30(b)(6) representative testified that Coastal used a system, instituted due to his being informed that there was confusion at the lender WSI, that allowed WSI to review a clear title commitment for the lender to use, marked as an (a) file. (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 46-48, 153.)  Coastal's 30(b)(6) representative also explained that he believed that, by the time the second sale would take place, all of the title problems would be cleared up, thus the actual (original) title commitment would not issue until everything was cleared up.. (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 22, 46-48.)  Further denied in that Coastal's 30(b)(6) representative did not admit to Coastal engaging in any improper conduct. (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 22, 46-48, 153.)

128.    Objection.  Plaintiff provides no citation in support of its statement. *See* Response No. 1, *supra.*

129.    Denied.  Coastal's 30(b)(6) representative testified that Coastal used a system, per Kane's request to streamline the commitment process, that allowed WSI to review a clear title commitment for the lender to use, marked as an "A" file.  However, Coastal's 30(b)(6) representative explained that the actual (original) title commitment would not issue until everything was cleared up. (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 46-48.)

130.    Denied.  In his 30(b)(6) deposition, Robert Agel testified that he "never had contact with anyone at [WSI].  We weren't the closing agent so we wouldn't deal with the

lender." (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 179.)  Further denied, as the testimony cited by Plaintiff does not include a discussion about Agel contacting WSI.

131.    Denied.  The citations do not support the classification of unrecorded deeds as "countless" in number.  Further denied in that Coastal's 30(b)(6) representative testified that the deeds could not be recorded but because "Yacker didn't have money in his trust account to pay transfer taxes and recording fees." (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 224.) Further denied in that the testimony cited includes no reference to whether WSI was – or even could have been – notified of the files going to the FBI and also contains no reference indicating whether the files were voluntarily given to the FBI.  Further denied in that the obligation to record ordinarily belonged to the attorneys, Coastal did not believe it was asked to record for Yacker or Cicalese, and Coastal was never paid the funds with which to record, outside of the $50,000 from Cicalese, discussed at response number 132 below.  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 114-15, 225.)  Further denied in that Coastal's 30(b)(6) representative did not admit to Coastal engaging in any improper conduct.  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 22, 46-48, 153.)  Objection as to the statement "Consequently, these deeds and mortgages have never been identified or recorded."  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

132.    Admitted that Coastal was given a $50,000 check dated April 1, 1997 from Cicalese's account to pay recording fees.  Denied as to the remainder of the statement, as it is unsupported by the citations given regarding the number of deeds recorded, the dates of recording, and which mortgages were recorded.

133.    Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

ME1 12662638v.1

134.     Objection.  Plaintiff provides no citation in support of its statement.  *See*
Response No. 1, *supra*.

135.     Denied.  Mr. Agel did not testify that he was in daily contact with Commonwealth
regarding the loans at issue in this lawsuit.  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep.
at 33-34, 43.)  Mr. Agel testified that he, as a general matter, speaks to underwriters at
Commonwealth daily on underwriting issues associated with all of the matters he works on as a
matter of general practice to discuss issues but not specific properties.   (*See* Magnanini Certif.,
Ex. F: Coastal 30(b)(6) Dep. at 33-34.)  He then testified that at some point in 1997, possibly
March, he decided to no longer use Yacker after it was discovered that he was not timely
recording documents and then spoke to Commonwealth's underwriters about the unrecorded
documents and his decision.  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 42.)
Notably, Mr. Agel testified he spoke to Commonwealth (1) very late in the fraud; (2) after WSI
was already on notice of the lack of recordings (*see* Merin Certif., Ex. Ex. F: Kane 2011 Dep.
174 (stating that WSI's in-house counsel was "going crazy" about the lack of recording); and (3)
three months after WSI received a January 31, 1997 letter from its warehouse lender, Greenwich
Capital, informing it of a possible fraud (*see* Merin Certif., Ex. S) and an internal quality control
memorandum was issued at WSI (*see* Merin Certif, Ex. U).

136.     Denied to the extent that Plaintiff asserts Commonwealth was specifically
informed of the fraud by Coastal.  Mr. Agel testified that at some point in 1997, possibly March,
he decided to no longer use Yacker after it was discovered that he was not timely recording
documents and then spoke to Commonwealth's underwriters about the unrecorded documents
and his decision.  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 42.)

137.    Denied to the extent that Plaintiff's statement is unlimited in scope regarding the time period at issue.  Admitted for purposes of this motion for partial summary judgment only.  Mr. Agel testified that at some point in 1997, possibly March, he decided to no longer use Yacker after it was discovered that he was not timely recording documents and then spoke to Commonwealth's underwriters about the unrecorded documents and his decision.  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 42.)

138.    Denied.  The citation provided does not support the statement made.  The cited testimony indicates that documents Agel learned that were not being recorded by the closing attorneys and that Kane provided money to pay recording fees.  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 40-42, 167.)  No statements are made regarding flip transactions, informing WSI, or Kane selling properties he did not own.  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 40-42, 167.)  Further denied, as Coastal did not have direct involvement with WSI under any circumstances: in his 30(b)(6) deposition, Robert Agel testified that he "never had contact with anyone at [WSI].  We weren't the closing agent so we wouldn't deal with the lender."  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 179.)  Further denied in that Coastal's 30(b)(6) representative did not admit to Coastal engaging in any improper conduct.  (*See* Magnanini Certif., Ex. F: Coastal 30(b)(6) Dep. at 40-42, 167.)

139.    Admitted for purposes of this motion for summary judgment only.

140.    Objection.  Plaintiff provides no citation in support of its statement.  *See* Response No. 1, *supra*.

141.    Denied.  Plaintiff has not produced any evidence that it was obligated to repurchase the mortgages.  Further denied to the extent Plaintiff states that it "lost its residual value of the securities," as (a) the Title Insurance Defendants are not liable for the "residual

value of the securities" (*see, e.g.,* Magnanini Certif., Ex. A (closing service letters, title commitments, and title policies)), and (b) any loss in residual value is likely due to matters other than those raised in this action (*see* Merin Certif, Ex. I: Robert Walsh Dep. 351-58 (discussing residuals)).

142.    Objection to the statement that "[t]he properties at issue in this Order are among the hundreds of fraud loans and specifically include several that were repurchased by WSI[,]" as Plaintiff provides no citation in support of this statement. *See* Response No. 1, *supra.* Admitted that the motion for summary judgment and default judgment was granted.

143.    Admitted as to the content of the October 10, 2000 Order only.  Objection to final two sentences of statement number 143 regarding the court's previous holding and the repurchase of loans, as Plaintiff provides no citation in support of this statement. *See* Response No. 1, *supra.*

ME1 12662638v.1