# Exhibit AA

A. CICALESE

Page 1

1          UNITED STATES DISTRICT COURT
                DISTRICT OF NEW JERSEY

2

3       Civil Action No. 97-cv-3496(DRD)(MAS)

4

WALSH SECURITIES, INC.,

5

            Plaintiff,

6

vs.

7

CRISTO PROPERTY MANAGEMENT,

8    LTD., a/k/a G.J.L.LIMITED; DEK HOMES
     OF NEW JERSEY, INC., et al.,

9

            Defendants.

10   _____/

11                      Avenue 16 Calle Jose Martin
                        San Jose, Costa Rica

12                      Wednesday, September 29, 2010
                        9:55 a.m. - 3:19 p.m.

13

14

15      VIDEO TAPE DEPOSITION OF ANTHONY M. CICALESE

16

17

18          Taken on behalf of the Plaintiff before

19   Diana Santos, Shorthand Reporter and Notary Public

20   in and for the State of Florida at Large, pursuant

21   to Notice of Taking Deposition filed in the above

22   cause.

23

24

25



A. CICALESE

Page 2

```
 1   APPEARANCES:
 2        ROBERT A. MAGNANINI, ESQUIRE
          AMY WALKER WAGNER, ESQUIRE
 3        STONE & MAGNANINI LLP
          150 John F. Kennedy Parkway
 4        Fourth Floor
          Short Hills, New Jersey 07078
 5        Attorneys for Walsh Securities, Inc.
 6        MARTIN R. MCGOWAN, ESQUIRE
          METHFESSEL & WERBE
 7        3 Ethel Road, Suite 300
          Edison, NJ 08818
 8        Attorney for Coastal Title Insurance Company
 9        DAVID R. KOTT, ESQUIRE
          MCCARTER & ENGLISH
10        Four Gateway Center
          Newark, NJ 07101
11        Attorney for Commonwealth Land Title Insurance Company
12        LAUREN J. TALAN, ESQUIRE
          FOX ROTHSCHILD
13        75 Eisenhower Parkway
          Roseland, NJ 07068
14        Attorney for Title Insurance Co. of New York and
          Fidelity National Title
15        Insurance Co. of New York
16        RICHARD CALANNI, PRO SE
          1 Old Farm Road
17        Tinton Falls, NJ 07724
18
19   ALSO PRESENT:
20        JASON STAPLETON, VIDEOGRAPHER
21
22
23
24
25   *Exhibits retained by counsel.
```

A. CICALESE

Page 28

1      Q    Do you recall if you ever spoke to any

2  representatives of a title insurance company?

3      A    No.

4      Q    And the -- just so -- I will give you the

5  names.  One of the defendants in the suit is

6  Commonwealth Land Title Insurance Company; did you

7  ever speak to any representative of Commonwealth?

8      A    I don't believe I did.  I may have.  I

9  really can't remember.

10     Q    And then the other two title companies are

11  Fidelity and Nations Title.

12     A    I recognize all the names from the

13  documents, but I don't know if I ever actually spoke

14  to anyone in their offices.

15     Q    Okay.  Did you recall ever speaking to

16  Robert Walsh?

17     A    I never spoke Mr. Walsh or his brother

18  Jim, I believe.  The only person I think I ever

19  spoke to over the phone at Walsh Securities was

20  Betty Ann Walsh.

21     Q    Betty Ann Demola?

22     A    Okay.

23     Q    She was the national sales manager; why

24  would you speak to Ms. Demola?

25     A    Well, there was a point in time where, you

A. CICALESE

1    know, that the procedures that were being used to

2    close these properties didn't exactly sit right with

3    me and I called Betty Ann, because she was the one

4    that I was referred to that I needed to speak to

5    over there, and who was constantly on the phone with

6    either Lori or myself, and about when these deals

7    would come.

8          So I called her and asked her if she was

9    aware of, you know, the way the properties were

10   being flipped and whatnot at the closings and she

11   said, yes, this is the way that we have been doing

12   it.  Just go ahead and do it, because I was worried

13   about disbursing the funds.

14         Q    When was that?

15         A    I really couldn't give you a date.

16         Q    Was it towards the end of --

17         A    I don't think that it was towards the end.

18   I would think it was more in the beginning.

19         Q    And how many times did you -- who else did

20   you speak to at Walsh Securities?

21         A    I really couldn't give you any other

22   names.  I was taken there one time for, I guess,

23   Gary Grieser and Bill Kane had a meeting or it might

24   have been Anthony D'Apolito.  I know Gary was there.

25   I can't remember who the other person was that was

A. CICALESE

Page 156

1    transactions, called Walsh Securities and was

2    referred to Betty Ann Demola, correct?

3        A    Right.

4        Q    Who did you speak to initially at Walsh

5    Securities?

6        A    I don't know.

7        Q    And do you know why you ended up speaking

8    to Ms. Demola?

9        A    No, I was just transferred around to her.

10       Q    Okay.  And then you said the substance of

11   your conversation was you were -- well, I will just

12   ask you:  What was the substance of your

13   conversation?

14       A    Basically, I was a little concerned that

15   at the closings they were -- they were basically

16   selling off 60 percent of the property to Capital

17   Assets, and there was no paperwork indicating that

18   sale to Walsh, who was the lender who had an

19   interest, you know, now in only 40 percent of a

20   property that they had an interest in 100 percent of

21   before and they told me they were okay with that

22   and...

23       Q    And Ms. Demola said that?

24       A    Yeah.

25       Q    Did Walsh Securities receive copies of the

# Exhibit BB

1

```
1

2    ORIGINAL          UNITED STATES DISTRICT COURT
3                      DISTRICT OF NEW JERSEY

4
     UNITED STATES OF AMERICA    : TRANSCRIPT OF
5                                : PROCEEDINGS
     VS.                         :
6                                :
     ANTHONY D'APOLITO           : Martin Luther King
7    ----------------------------- Building
                                   50 Walnut Street
8                                  Newark, NJ  07102
                                   December 23, 1998
9                                  10:10 a.m.

10   B E F O R E :

11       THE HONORABLE ALFRED M. WOLIN

12   A P P E A R A N C E S :

13       U.S. DEPARTMENT OF JUSTICE
         UNITED STATES ATTORNEY'S OFFICE
14       BY:  ROBERT M. HANNA, ESQ.
         Assistant United States Attorney
15       District of New Jersey

16       CHAMLIN, ROSEN, ULIANO & WITHERINGTON, ESQS.
         BY:  CHARLES J. ULIANO, ESQ.
17       Attorneys for Defendant, Anthony D'Apolito

18   Reported By:

19       NADINE C. FUSCO, C.S.R., R.P.R.

20

21

22

23

24

25
```

5 BECKER FARM ROAD
ROSELAND, N.J.  07068
973-740-1100

DOERNER & GOLDBERG, INC.
CERTIFIED SHORTHAND REPORTERS

2 INDUSTRIAL WAY WEST
EATONTOWN, N.J.  07724
732-542-8330

11

1

2    here?

3              MR. D'APOLITO:  Yes.

4              THE COURT:  Did you read what Mr.

5    Uliano wrote?

6              MR. D'APOLITO:  Yes.

7              THE COURT:  Do you accept it as if you

8    had written it with your own hand?

9              MR. D'APOLITO:  Yes.

10             THE COURT:  Is it true?

11             MR. D'APOLITO:  Yes.

12             THE COURT:  I want to go over just a

13   few of the entries.

14             Going over to entry number eight, it

15   indicates that the charge here in Count One is the

16   conspiracy to commit wire fraud in violation of

17   federal statute, and then the substantive offense

18   of wire fraud in violation of other federal

19   statutes.  Those are the charges as you understand

20   them; correct?

21             MR. D'APOLITO:  Yes.

22             THE COURT:  Going over to entry number

23   24, it indicates that for each of those charges

24   you face a term of five years imprisonment, a

25   maximum $250,000, so if you were put that

5 BECKER FARM ROAD
ROSELAND, N.J.  07068
973-740-1100

DOERNER & GOLDBERG, INC.
CERTIFIED SHORTHAND REPORTERS

2 INDUSTRIAL WAY WEST
EATONTOWN, N.J.  07724
732-542-8330

15

1

2          THE COURT:  And did he answer the

3    questions to your satisfaction?

4          MR. D'APOLITO:  Yes.

5          THE COURT:  I just want to go over this

6    agreement just very briefly.  And it indicates

7    that you are going to plead guilty to a two-count

8    felony, and under the charge section, it specifies

9    the two counts you're going to plead guilty to.

10         The government says that you are

11   entering a plea of guilty on all the above charges

12   and if you fully comply with all the terms of this

13   agreement, then they will not initiate any further

14   charges against you arising out of or related to

15   fraudulent mortgage loans during the years 1996

16   and 1997 involving properties located in the

17   District of New Jersey, which fraudulent mortgage

18   loans you facilitated using your position as an

19   executive at Walsh Securities; is that correct?

20         MR. D'APOLITO:  Yes.

21         THE COURT:  And the scope of protection

22   that they cover is limited to the criminal

23   activity that you have revealed to the Office of

24   the U.S. Attorney as of the date of this

25   agreement?

5 BECKER FARM ROAD
ROSELAND, N.J.  07068
973-740-1100

**DOERNER & GOLDBERG, INC.**
CERTIFIED SHORTHAND REPORTERS

2 INDUSTRIAL WAY WEST
EATONTOWN, N.J.  07724
732-542-8330

27

1
2          THE COURT:  And, lastly, I will repeat

3    that I'm not bound by the stipulations or

4    agreements that you've entered into by the

5    government if I find that they're inaccurate or

6    the pre-sentence report indicates to me they're

7    inaccurate.

8          Do you understand that?

9          MR. D'APOLITO:  Yes.

10         THE COURT:  I would now like to discuss

11   with you, if I may, the factual basis for the

12   entering of your plea.

13         Have you had an opportunity to review

14   the memorandum that was forwarded to this court --

15         MR. D'APOLITO:  Yes.

16         THE COURT:  -- dated December 22nd,

17   1998, and a copy went to your counsel, Mr.

18   Uliano?

19         MR. D'APOLITO:  Yes.

20         THE COURT:  Am I correct, sir, that

21   during 1996 and 1997 you were employed as an

22   account executive at Walsh Securities Inc., a

23   wholesale mortgage lender with offices in

24   Parsippany, New Jersey?

25         MR. D'APOLITO:  Yes.

5 BECKER FARM ROAD
ROSELAND, N.J.  07068
973-740-1100

DOERNER & GOLDBERG, INC.
CERTIFIED SHORTHAND REPORTERS

2 INDUSTRIAL WAY WEST
EATONTOWN, N.J.  07724
732-542-8330

28

1
2          THE COURT:   Did Walsh Securities pay
3    you a base salary and commissions based upon the
4    total principal amount of closed mortgage loans
5    you generated and, on occasion, bonuses for
6    meeting certain targets set by Walsh Securities?
7          MR. D'APOLITO:   Yes.
8          THE COURT:   Did you generally
9    understand that underwriting decisions as to
10   mortgage loans were based, at least in part, on
11   information contained in the mortgage application,
12   supporting documentation submitted with the
13   application, and appraisal reports on the
14   property?
15         MR. D'APOLITO:   Yes.
16         THE COURT:   In early 1996, did you, by
17   agreement and understanding with various persons
18   including William Kane, prepare fictitious leases
19   and take other actions in connection with mortgage
20   applications submitted to and later approved by
21   Walsh Securities?
22         MR. D'APOLITO:   Yes.
23         THE COURT:   Were those fictitious
24   leases designed to show that the multi-family
25   properties that were the subject of the mortgage

5 BECKER FARM ROAD
ROSELAND, N.J. 07068
973-740-1100

**DOERNER & GOLDBERG, INC.**
CERTIFIED SHORTHAND REPORTERS

2 INDUSTRIAL WAY WEST
EATONTOWN, N.J. 07724
732-542-8330

29

1

2      application were occupied by rent-paying tenants

3      and therefore would generate rental income?

4              MR. D'APOLITO:  Yes.

5              THE COURT:  Did you generally

6      understand that in 1996 and 1997 numerous mortgage

7      applications accompanied by similiarly fictitious

8      leases and other false supporting documents, such

9      as fraudulent pay stubs and IRS Forms W-2, were

10     used to generate mortgage loans by Walsh

11     Securities which were funded by Greenwich Capital?

12             MR. D'APOLITO:  Yes.

13             THE COURT:  Did you also at that time

14     generally understand -- and I'm speaking about

15     1996 and 1997 --  that the transactions generating

16     those mortgage loans were, quote, "land flips,"

17     close quote.  That is, the properties that secured

18     the loans had been purchased or were under

19     contract to be purchased by William Kane and other

20     persons and entities at a relatively low price and

21     were resold shortly thereafter to another at a

22     significantly higher price?

23             MR. D'APOLITO:  Yes.

24             THE COURT:  Did you accept payments

25     from William Kane in connection with hundreds of

5 BECKER FARM ROAD
ROSELAND, N.J. 07068
973-740-1100

DOERNER & GOLDBERG, INC.
CERTIFIED SHORTHAND REPORTERS

2 INDUSTRIAL WAY WEST
EATONTOWN, N.J. 07724
732-542-8330

30

1      fraudulent land flip transactions that generated

2      mortgage loans for Walsh Securities?

3           MR. D'APOLITO: Yes.

4           THE COURT: In early 1997, did you

5      forge notarizations on various closing documents

6      for a number of fraudulent land flips?

7           MR. D'APOLITO: Yes.

8           THE COURT: In early 1997 did Betty Ann

9      Demola, the national sales manager of Walsh

10     Securities, direct you to alert William Kane that

11     a loan reviewer from Greenwich Capital intended to

12     examine properties that secured recent mortgage

13     loans, and did you then relay Demola's message

14     that, in substance, Kane should make the

15     properties look lived-in prior to the arrival of

16     the reviewer?

17          MR. D'APOLITO: Yes.

18          THE COURT: Did Betty Ann Demola direct

19     that loans for which you were the account

20     executive be approved and funded based upon verbal

21     representations of market value by an appraiser,

22     without having received a written appraisal

23     report?

24          MR. D'APOLITO: Yes.

5 BECKER FARM ROAD
ROSELAND, N.J. 07068
973-740-1100

**DOERNER & GOLDBERG, INC.**
CERTIFIED SHORTHAND REPORTERS

2 INDUSTRIAL WAY WEST
EATONTOWN, N.J. 07724
732-542-8330

31

1

2          THE COURT:  With regard to loans for

3    which you were the account executive, did Betty

4    Ann Demola direct loan underwriters to overlook

5    suspicious loan application documents such as pay

6    stubs and IRS Forms W-2?

7          MR. D'APOLITO:  Yes.

8          THE COURT:  Did you prepare the

9    fictitious leases identified in overt act

10    paragraph 28(a) of Count 1 and in Count 2 of the

11    Information?

12          MR. D'APOLITO:  Yes.

13          THE COURT:  Have you had an opportunity

14    to look over at paragraph 28(a) of Count 1 and

15    Count 2?

16          MR. D'APOLITO:  Yes.

17          THE COURT:  Did you do all of these

18    things that we just discussed voluntarily, meaning

19    of your own free will?

20          MR. D'APOLITO:  Yes.

21          THE COURT:  Did you do them knowingly,

22    meaning you understood that which you were doing?

23          MR. D'APOLITO:  Yes.

24          THE COURT:  Did you do them willfully,

25    meaning you intended to bring about the result

5 BECKER FARM ROAD
ROSELAND, N.J.  07068
973-740-1100

DOERNER & GOLDBERG, INC.
CERTIFIED SHORTHAND REPORTERS

2 INDUSTRIAL WAY WEST
EATONTOWN, N.J.  07724
732-542-6330

32

1
2      that occurred?

3              MR. D'APOLITO:  Yes.

4              THE COURT:  Any further questions, Mr.

5      Hanna, in order to secure the factual basis?

6              MR. HANNA:  No, your Honor.

7              THE COURT:  I take it that if this

8      matter were to go to trial, that the government

9      would be able to prove that the wire fraud was

10     accomplished by the use of interstate wire

11     communications in furtherance of the fraud or

12     scheme?

13             MR. D'APOLITO:  Yes.

14             THE COURT:  And, Mr. Uliano, I take it

15     that you're satisfied that the government could

16     prove that?

17             MR. ULIANO:  Yes, sir, they can.

18             THE COURT:  Why are you entering your

19     plea of guilty here today?

20             MR. D'APOLITO:  Because I'm guilty.

21             THE COURT:  Mr. Uliano, are you

22     satisfied that the plea here is entirely voluntary

23     and it's being entered by your client with full

24     knowledge of his rights and all of his

25     responsibilities?

5 BECKER FARM ROAD
ROSELAND, N.J.  07068
973-740-1100

DOERNER & GOLDBERG, INC.
CERTIFIED SHORTHAND REPORTERS

2 INDUSTRIAL WAY WEST
EATONTOWN, N.J.  07724
732-542-8330

# Exhibit CC

# In The Matter Of:

*Walsh Securities v.*
*Cristo Property Management*

---

*Paul J. Del Rosso*
*September 24, 2011*

---

*Rizman Rappaport Dillon & Rose*
*66 W. Mt. Pleasant Ave.*
*Livingston, N.J. 07039*
*(973) 992-7650*



Min-U-Script® with Word Index

1

1    IN THE UNITED STATES DISTRICT COURT
2    FOR THE DISTRICT OF NEW JERSEY
     CIVIL NO. 97-3407 (DRD)
3
     ---------------------------
4    WALSH SECURITIES,                :
     INC.,                            :
5                                     :
             Plaintiff,               :   DEPOSITION UPON
6                                     :   ORAL EXAMINATION
         v.                           :        OF
7                                     :   PAUL J. DEL ROSSO
     CRISTO PROPERTY                  :
8    MANAGEMENT,LTD.,                 :
     et al,                           :
9                                     :
                                      :
10   ---------------------------

11

12

13          T R A N S C R I P T  of the stenographic

14   notes of HOWARD A. RAPPAPORT, a Notary Public and

15   Certified Shorthand Reporter of the State of

16   New Jersey, Certificate No. XI00416, taken at the

17   offices of STONE & MAGNANINI, 150 John F. Kennedy

18   Parkway, Short Hills, New Jersey, on Saturday,

19   September 24, 2011, commencing at 7:55 a.m.

20

21

22

23

24

25

2

```
 1 | A P P E A R A N C E S:

 2 | STONE & MAGNANINI
   | 150 John F. Kennedy Parkway
 3 | Short Hills, New Jersey 07078
   | BY:  DANIEL I. MEE, ESQ.,
 4 | For the Plaintiff

 5 | MC CARTER & ENGLISH, LLP
   | Four Gateway Center
 6 | 100 Mulberry Street
   | Newark, New Jersey 07102-0652
 7 | BY:  DAVID R. KOTT, ESQ.,
   | For Commonwealth Land Title Insurance Company

 8 |
   | FOX, ROTHSCHILD, O'BRIEN & FRANKEL
 9 | 997 Lenox Drive
   | Lawrenceville, New Jersey  08648
10 | BY:  EDWARD J. HAYES, ESQ.,
   | For Nations Title Insurance and
11 | Fidelity National Title Insurance

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |
```

DelRosso - cross

118

1    A    I did at some level, and then Arnold

2    Cohn, I believe.

3    Q    Anyone else?

4    A    And I would think Jim Walsh did with

5    Arnold.

6    Q    How about Robert Walsh?

7    A    I don't believe Mr. Walsh was ever

8    involved in the actual loans.

9    Q    How about Fred Schlesinger?

10   A    Possibly.  I don't know.

11   Q    How about Bette Ann Demola?

12   A    I don't believe she had any approval

13   authority.

14   Q    There has been testimony in this case,

15   for lack of a better term, Bette Ann bullied people

16   within the office.  Is that a fair statement?

17            MR. MEE:  Objection to the form of the

18   question.

19   A    I guess.

20   Q    She wanted things done her way.  Is that

21   a fair statement?

22            MR. MEE:  Objection to the form of the

23   question.

24   A    Yes.

25   Q    You are aware, are you not, that her

DelRosso - cross

119

1   compensation was based on the number of loans that

2   closed at Walsh?

3           MR. MEE:  Objection to the form of the

4   question.

5       A      That I didn't know.

6       Q      Did you understand her to be the

7   national sales manager?

8           MR. MEE:  Objection to the form the

9   question.

10      A      At some point, yes.

11      Q      There was also some testimony that she

12  often bullied you and other underwriters into making

13  exceptions to allow certain loans to go through.

14          Do you recall her ever engaging in that

15  type of conduct with you?

16          MR. MEE:  Objection.

17      A      She tried.

18      Q      Was she ever successful?

19      A      On the ones that I think I needed to

20  stand my ground, I went to Arnold Cohn and turned the

21  loan over to him, and he and Bette Ann hacked it out,

22  or Jim Walsh got it involved.  I don't know.  It was

23  above me at that point.

24      Q      This is the boss' sister, right?

25      A      Yes, sir.

DelRosso - cross

120

1       Q       If she were bullying you in asking you

2   to approve a loan that didn't meet the guidelines and

3   you felt that bullying was inappropriate, you

4   referred it higher up the chain to let them deal with

5   her.

6               Is that a fair characterization?

7               MR. MEE:  Objection to the form of the

8   question.  That's not exactly how he responded to

9   your last question.

10              MR. HAYES:  He can tell me if I

11  mischaracterized what he said.

12      A       I guess that's the way it would be.  I

13  would go above me.

14      Q       Because you didn't want to get into a

15  fight with her?

16              MR. MEE:  Objection.

17      A       It wasn't a fight.  I thought the loan

18  was approved properly and the exception was made

19  properly, and if it was above me, it was above me.

20      Q       How many other sales persons came in and

21  attempted to bully you regarding exceptions?

22              MR. MEE:  Objection.

23      A       I don't know.

24      Q       Any of them?

25      A       Some.  I don't recall.

# Exhibit DD

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL NO. 93-3496

WALSH SECURITIES, INC.,          )
                                 )
            Plaintiff,           )       **ORIGINAL**
                                 )
      v.                         )     DEPOSITION UPON
                                 )     ORAL EXAMINATION
CRISTO PROPERTY                  )          OF
MANAGEMENT, LTD., et al.,        )     THOMAS BRODO
                                 )
            Defendants.          )
                                 )
      and                        )
                                 )
COMMONWEALTH LAND TITLE          )
INSURANCE,                       )
                                 )
            Defendant/           )
      Third-Party Plaintiff,     )
                                 )
      v.                         )
                                 )
ROBERT WALSH and ELIZABETH       )
ANN DE MOLA,                     )
                                 )
            Third-Party          )
            Defendants.          )

       T R A N S C R I P T  of the stenographic
notes of AUDREY ZABAWA, a Notary Public and
Certified Court Reporter of the State of New
Jersey, Certificate No. XI00141000, taken at the
offices of BOIES, SCHILLER & FLEXNER, LLP, 150 JFK
Parkway, Short Hills, New Jersey, on Tuesday,
April 24, 2007, commencing at 10:25 a.m.



**Rizman Rappaport Dillon&Rose,LLC**
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650  Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Page 2

1   A P P E A R A N C E S:

2       BOIES, SCHILLER & FLEXNER, LLP
        150 John F. Kennedy Parkway
3       Short Hills, New Jersey  07078
        BY:  ROBERT A. MAGNANINI, ESQ.
4            AMY WALKER WAGNER, ESQ.
        Counsel for the Plaintiff

5

6       MC CARTER & ENGLISH, LLP
        Four Gateway Center
7       100 Mulberry Street
        Newark, New Jersey  07102-0652
        BY:  DAVID R. KOTT, ESQ.
8       Counsel for Defendant/Third-Party
        Plaintiff Commonwealth Land Title Insurance
9       Company

10      FOX ROTHSCHILD, LLP
        997 Lenox Drive
11      Lawrenceville, New Jersey  08648
        BY:  JOEL M. FERDINAND, ESQ.
12      Counsel for Defendants Nations Title
        Insurance and Fidelity National Title
13      Insurance

14      METHFESSEL & WERBEL
        3 Ethel Road
15      Suite 300
        Edison, New Jersey  08818
16      BY:  MARTIN R. MC GOWAN, ESQ.
        Counsel for Coastal Title Agency

17

18

19

20

21

22

23

24

25



**Rizman**
**Rappaport**
**Dillon&Rose,** LLC
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Brodo - Direct/Kott

Page 26

1          MR. MAGNANINI:   Objection to form.

2          MR. KOTT:    Your objection is it's

3    leading?

4          MR. MAGNANINI:  Well, not only

5    leading, but you dropped out in between the

6    commas, and said, Did she in substance?  There's

7    nothing in here saying that that's exactly what

8    she said.

9          MR. KOTT:  That's why my question was

10   not tied to the transcript.  I was fairly careful

11   of not tying it to the transcript.

12         MR. MAGNANINI:  You quoted the comma

13   section.

14         MR. KOTT:    Yeah.

15      Q     And did Betty Ann DeMola, in fact,

16   verbally abuse you trying to get you to raise the

17   appraised values you assigned the properties?

18   A     If everyone agrees that calling you some

19   names is verbal abuse, yes.  She never threatened

20   me physically, but yet she would use some, you

21   know, sticky language sometimes.

22      Q     Did you ever determine or were you

23   able to determine what her incentive was?  You

24   talked about the incentive getting loans closed by

25   the end of the month, but what her incentive was



**Rizman**
**Rappaport**
**Dillon&Rose,** LLC
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Brodo - Cross/Magnanini

Page 47

1    of fraud loans, the first one was -- actually the

2    appraisal was done January 15th of 1996, and the

3    last of Mr. DiBenedetto's appraisals were done

4    August 4th of 1996, and then what Mr. DiBenedetto

5    had testified to was that he thought there was

6    something fishy with this, so he stopped doing

7    appraisals completely as of what would have been

8    August 4th, 1996, but you had previously testified

9    that you thought he continued doing appraisals

10   through the whole time?

11   A      My recollection is that he continued on,

12   that we were still working together at that time.

13          Q      Okay.  And then --

14   A      Because we still had contact.  Whether we

15   were still working together at the time Kane had

16   alerted him to the fact that they there was a

17   federal investigation, I am not sure, but my

18   recollection is that Rich was still working with

19   me at the time that the Asbury Park Press articles

20   started to come out.

21          Q      And then when we looked at the

22   appraisals you had done, we had 36 of those that

23   we found in this pile of loans, and the first

24   appraisal date under your name, I don't want to

25   say conveniently, coincidentally, was August 15th

**Rizman Rappaport Dillon&Rose, LLC**
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650  Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Brodo - Cross/Magnanini

Page 48

1  of 1996, 11 days after the last appraisal by

2  Mr. DiBenedetto, and then the last appraisal that

3  you turned in was actually April 11 of 1997, and

4  my question was your testimony is that

5  Mr. DiBenedetto continued not just -- continued

6  doing appraisals, or at least working with you on

7  appraisals, beyond August 4th of 1996 and all the

8  way up through April of 1997?

9  A    Whether it went all the way up to April of

10 '97, I am not sure, but I know that after August,

11 after we stopped using his name and started using

12 mine, we were still working together.

13        Q    Okay.  And then did who else worked

14 with you at Eastern States Appraisal or Brodo &

15 Associates?

16 A    Well, the only other person that worked in

17 the beginning was Rich's sister.  She did typing

18 for us, and I don't remember her name offhand.

19 Her name didn't appear on anything.  We just paid

20 her to do typing.  Let's see.  I don't know that

21 we had anyone else on a regular service working

22 for us.

23        Q    So all the appraisals you would have

24 done would have either been signed by

25 Mr. DiBenedetto or by yourself?



**Rizman Rappaport Dillon&Rose,** LLC
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Brodo - Cross/Magnanini

Page 72

1    for.  We did do some good work.

2        Q    Well, I don't want to categorize it

3    as good, but legitimate?

4    A    We weren't -- yeah.

5        Q    Okay.  So when you were doing work

6    for those other mortgage companies, did you ever

7    give them verbal appraisals before you sent in the

8    written appraisals?

9    A    Yeah, it wouldn't be uncommon for someone

10   to call and say, "What do you think this house is

11   going to come in at?  What kind of number do you

12   think?"  They are preparing their paperwork for

13   whether people were going to qualify for the loan,

14   but particularly if it was a sale, is it going to

15   appraise for the sale value, or do we have to do

16   something else to make this deal.

17       Q    You had said earlier that Betty Ann

18   DeMola had called you up and verbally abused you

19   at end of the month.

20   A    Um-hum.

21       Q    Did you get similar calls like that

22   from the other companies you did business for?

23   A    It would not be unusual for someone to call

24   and want to discuss the amounts.  Betty Ann was a

25   little more -- quite a bit more verbal --



**Rizman Rappaport Dillon&Rose, LLC**
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650  Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Brodo - Cross/Magnanini

Page 73

1       Q       Over the top?

2    A       -- about her displeasure with the numbers

3    than some other people on that.  It was partially

4    her nature.  I think she was just that kind of

5    abusive person.

6       Q       Did she talk to you about the numbers

7    also or about the getting the appraisals done in a

8    timely manner?

9    A       Well, I'm sure that would have been one of

10   her objections, yeah, if we weren't turning it out

11   fast enough.

12      Q       But you said you did get similar

13   calls from other mortgage brokers?

14   A       Yeah.

15              MR. KOTT:  Similar to what?

16      Q       Similar calls asking you to look at

17   the numbers or increase the numbers or get the

18   maximum value or get the appraisals done?   Do you

19   need that --

20   A       Yes.

21              MR. MAGNANINI:   Could you read that?

22              (Record read.)

23              MR. KOTT:  I object to the form of

24   the question as being a compound question.

25      Q       Let me break it down.  I'll take


**Rizman Rappaport Dillon&Rose, LLC**
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650  Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Brodo - Cross/Magnanini

1    Mr. Kott's objection to similar.   Did you get

2    calls from other mortgage clients, mortgage banker

3    broker clients you had, asking you or pushing you

4    to get the appraisals done in a timely manner?

5    A       Yes.

6            Q       And did you also get calls from those

7    clients asking you to maximize the value or

8    increase the value of the appraisal?

9    A       Yes.

10           Q       Do you recall when in the appraisal

11   process you had gotten these telephone calls from

12   Betty Ann DeMola?  Was it when you first began --

13   let me clarify the question.  Was it when you

14   first began the appraisals or --

15   A       Do you mean any specific appraisal or all

16   of the appraisals?

17           Q       Any specific appraisal you can recall

18   her calling you about?

19   A       It wouldn't necessarily come -- it wouldn't

20   normally come at the beginning, because we didn't

21   know what the number we were coming in at yet, and

22   what would prompt it is we were getting towards

23   the end of the month, and they had to close out

24   before the end of the month, or we had advised

25   Kane as to the number, and there were times where

**Rizman**
**Rappaport**
**Dillon&Rose, LLC**
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Brodo - Cross/Magnanini

Page 75

1  we would get a call from Betty Ann saying, This

2  number doesn't work, this number doesn't work with

3  this deal, so that's what really would prompt it,

4  so it wouldn't happen immediately.  It would be

5  more towards the end of the appraisal process.

6      Q      So at the end of the month at closing

7  time?

8  A      Or even with an appraisal that wasn't at

9  the end of the month, if the appraisal came in and

10  the number wasn't, you know, what they needed, it

11  would sometimes prompt a call.

12      Q      And how many times do you recall

13  Betty Ann DeMola calling you on these appraisals?

14  A      I don't recall how many times, and it

15  was -- I don't -- I am not here to defend Betty

16  Ann DeMola, but she wasn't always abusive.  It

17  wasn't always a yelling and screaming

18  conversation, but there were times when it was,

19  and there were times when there was pressure

20  applied to bring the number in, but like I said,

21  she would do it in a more abusive way than anybody

22  I had ever dealt with before, a louder way than

23  anybody else I had ever dealt with before, but I

24  can't say she was the only person that ever did

25  it.  I think it's endemic in the industry, and


**Rizman
Rappaport
Dillon&Rose, LLC**
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650  Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Brodo - Recross/Magnanini

Page 102

1   was told, to run a criminal history check, and you

2   had to divulge any licenses that you had that had

3   been taken away.  You know, anything like that you

4   had to divulge on the major application to become

5   an apprentice.

6        Q     Do you know if that was the practice

7   by the State of New Jersey in the 1980s?

8   A        I have no idea what they did in the '80s,

9   but all I know is when I started they were doing

10  it.

11             MR. MAGNANINI:   Okay.  No further

12  questions.

13             MR. MC GOWAN:   Just one.

14  RECROSS-EXAMINATION BY MR. MC GOWAN:

15       Q     These conversations that you had with

16  Betty Ann DeMola where she would complain about

17  the figure, that's what I am going to focus on.  I

18  take it from your answers to Mr. Kott's questions

19  that you don't really ever recall having met her

20  face to face?

21  A        Correct.

22       Q     So those conversations would have

23  taken place over the phone?

24  A        Yes.

25       Q     Were those conversations in



**Rizman**
**Rappaport**
**Dillon&Rose,LLC**
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650  Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Brodo - Recross/McGowan

Page 103

1    connection with appraisals, written appraisals,

2    physical documents that she had already received,

3    or were those conversations in connection with

4    verbals that you had given her pending her receipt

5    of the written document?

6    A      My recollection is it was a little bit of

7    both.

8           Q      Okay.  So on the ones where you had

9    only given her a verbal, if you had assented to

10   her request, you could have just written the

11   higher number on the form; is that right?

12   A      Or made some changes that would justify

13   that number.  There is a process of adjustments

14   where you come down to at least three comparables.

15          Q      So would you come up with the right

16   number?

17   A      Yeah.

18          Q      And you could have done that

19   physically because you hadn't finished that form

20   yet?

21   A       Correct.  It was all on the computer, so

22   even if it had been printed out, you could easily

23   print it out again.

24          Q      That was the next question.  On the

25   ones where you had already physically done it and



**Rizman Rappaport Dillon&Rose, LLC**
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650  Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

Brodo - Recross/McGowan

Page 104

1   she had the apraisal in her possession, the hard

2   copy, and she asked you to change it, how would

3   you go about that?

        MR. MAGNANINI:   Objection to form.

4

5   A        Basically you would say -- either --

6   normally we would ask for that old appraisal back,

7   and we would give her a replacement one.

8        Q     Does the second piece of paper

9   reflect it as a rescission, alteration or anything

10  like that?

11  A        No.

12       Q     So if someone were to look at that,

13  they would have no clue that there had been

14  previously a lower number as to that very same

15  appraisal?

16  A        Correct.

17           MR. MC GOWAN:   I have nothing else.

18  Thank you.

19  RECROSS-EXAMINATION BY MR. MAGNANINI:

20       Q     Mr. Brodo, how did you know it was

21  Betty Ann DeMola on the phone other than it was a

22  woman I assume you spoke with?

23  A        Yes.

24       Q     And she said she was Betty Ann

25  DeMola?

**Rizman**
**Rappaport**
**Dillon&Rose,**LLC
**Certified Court Reporters**

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

# Exhibit EE

AL:2002R00141

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA    :   Hon.

       v.               :   Criminal No. 02-508 (KSH)

ELIZABETH A. DEMOLA      :   Title 18, United States Code,
a/k/a "Betty Ann" Demola        Sections 371, 1343, and 2

### <u>I N D I C T M E N T</u>

     The Grand Jury in and for the District of New Jersey,
sitting at Newark, charges as follows:

### <u>COUNT 1</u>
### (Conspiracy to commit wire fraud)

#### <u>Background</u>

     1.  At all times relevant to this Indictment:

         a.  Defendant **ELIZABETH A. DEMOLA**, also known as
"Betty Ann" Demola, was the National Sales Manager of Walsh
Securities, Inc. ("Walsh Securities"), a company whose other
principals were her brothers.  Walsh Securities was engaged
primarily in the business of funding residential mortgage loans,
with its main office in Parsippany, New Jersey and with numerous
branch offices throughout the United States.  **DEMOLA** was also a
shareholder in Walsh Securities.

         b.  Walsh Securities was a wholesale mortgage
lender, whose loan programs were made known to companies which
functioned as mortgage originators.  Those loan programs featured

various interest rates and other terms on which Walsh Securities
was prepared to provide financing for borrowers.  Mortgage
originators would generally complete a loan application and take
other information from a prospective borrower, among other steps,
and then forward the loan application and other information about
the borrower and property purchase to Walsh Securities.  Mortgage
originators were paid fees for bringing a loan to Walsh
Securities, in addition to any fees paid by the borrower directly
to the mortgage originator.

2.  At all times relevant to this Indictment,  Walsh
Securities would then, in a process known as underwriting, review
materials concerning a mortgage loan, which included an appraisal
of the value of the property and credit and income information as
to the borrower, in deciding whether or not to make the loan.

3.  At all times relevant to this Indictment,
Greenwich Capital Markets, Inc., of Greenwich, Connecticut
("Greenwich Capital"), which is not named here as a co-
conspirator, was a source of funds for most mortgage loans made
by Walsh Securities in New Jersey.  Walsh Securities would fund
those mortgage loans by drawing down on a credit facility, called
a "warehouse" credit line, with Greenwich Capital.  The funds of
Greenwich Capital were often transferred by wire from a bank
account outside New Jersey directly to the escrow or trust
account of a New Jersey attorney participating in the closing of

-2-

title on the property, to be disbursed according to instructions provided to the attorney by Walsh Securities.

4.   At all times relevant to this Indictment, Walsh Securities pursued one or both of the following courses of action with regard to mortgage loans acquired from mortgage originators: (a) Walsh Securities resold individual loans or groups of loans to other entities in transactions known as "whole loan sales," and (b) Walsh Securities, beginning in or around September 1996, pooled together large numbers of loans and sold interests in the pools to investors in a process called "securitization."

**Fraudulent real estate practices**

5.   At all times relevant to this Indictment:

a.   A "land flip" was a transaction in which real property was purchased or was under contract to be purchased at a relatively low price and was to be resold shortly thereafter to another at a significantly higher price.  In a fraudulent land flip: (i) the higher price on resale did not fairly represent the market value of the property in an arms-length transaction, but was an artificially high price, generally supported by an inflated and false appraisal; and (ii) the higher, fraudulent resale price was used to generate a mortgage loan, the proceeds of which were disbursed for purposes including completion of the initial purchase of the property and distribution to the participants in the scheme.

-3-

b.   Generally, fraudulent land flips involved two categories of buyer-borrowers.  One category consisted of persons who had a genuine interest in owning and holding title to a particular property.  Another category concerned persons who were identified as the buyer-borrower on the resale of the property but who had no genuine interest in owning, occupying, or holding title to the particular property and were often unaware that a property was being purchased, and a mortgage loan obtained, in their name.

### THE CONSPIRACY

6.   From in or around 1996 to at least as late as in or around August 1997, in the District of New Jersey and elsewhere, defendant

### ELIZABETH A. DEMOLA

knowingly and wilfully combined, conspired, confederated, and agreed with others to commit an offense against the United States, that is, to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and to do so by means of interstate wire communications, contrary to 18 U.S.C. § 1343.

- 4 -

## OBJECTS OF THE CONSPIRACY

7. · The objects of the conspiracy included: (a) allowing various co-conspirators to benefit from fraudulently participating in sales of properties utilizing falsified transaction documents; and (b) allowing Walsh Securities to fraudulently increase its inventory of mortgage loans, to the anticipated benefit of defendant **ELIZABETH A. DEMOLA** and other co-conspirators.

## MEANS AND METHODS OF THE CONSPIRACY

8. In furtherance of the conspiracy, defendant **ELIZABETH A. DEMOLA** and her co-conspirators sought to cause Walsh Securities to fund an increasing number of mortgage loans initiated by various mortgage originators and others, including persons participating in fraudulent land flips. Their purpose in doing so was to enlarge Walsh Securities' inventory of mortgage loans to permit Walsh Securities to profitably securitize its loan pools. **DEMOLA** and her co-conspirators planned thereby to make Walsh Securities appear financially more successful and attractive, in order to benefit themselves by facilitating either an initial public offering of the company's stock or an acquisition by, or merger with, another mortgage company.

9. In order to facilitate fraudulent land flipping activity and to generate the resulting mortgage loans for Walsh Securities, defendant **ELIZABETH A. DEMOLA** and her co-

- 5 -

conspirators took the following actions, among others:

    a.   accepting kickbacks from land flippers in connection with the processing of fraudulent mortgage applications and related documents on properties sold by such persons;

    b.   preparing fictitious leases designed to show that multi-family properties which were the subject of loan applications were occupied by rent-paying tenants and therefore would appear to generate rental income sufficient to support a mortgage loan;

    c.   agreeing to have the fraudulent land flipping seller and others create second mortgage documents in order to conceal the absence of actual down payments by buyers;

    d.   approving and funding loans knowing that buyers had not made the down payments reflected in the loan documents;

    e.   preparing fictitious attorney escrow letters showing non-existent down payments by buyers;

    f.   pressuring appraisers to inflate their valuations of properties to justify higher mortgage loans;

    g.   pressuring and demanding that loan originators and others submit their loan applications and related documents to Walsh Securities, particularly towards the end of each month;

h.   improperly eliminating underwriting conditions which were not met;

i.   directing loan underwriters and others to overlook suspicious loan applications and supporting documentation;

j.   approving and funding loans without first having obtained an accurate, written appraisal;

k.   approving, funding, reselling and securitizing loans supported by appraisals they knew contained inflated market values and other false information;

l.   approving, funding, reselling and securitizing loans supported by escrow letters and second mortgages which were not genuine;

m.   approving, funding, reselling and securitizing loans knowing that mortgage payments would be made not by the buyer-borrower but by co-conspirators; and

n.   directing and participating in the purging of documents from loan files and the alteration of documents in loan files.

10.   When Greenwich Capital sought to have its representatives inspect various properties which stood as the collateral for Walsh Securities' mortgage loans, defendant **ELIZABETH A. DEMOLA** and her co-conspirators took steps to forestall those inspections and to conceal problems with the

-7-

properties by, among other things, causing persons to temporarily and cosmetically cover up defects in the properties and physically delaying inspections by a Greenwich Capital representative in order to allow that concealment activity to be completed.

11.  As a result of the increased loan volume generated through the fraudulent land flipping activity, in or around early 1997, the principals of Walsh Securities were able to induce Resource Bancshares Mortgage Group, Inc. ("RBMG"), a large South Carolina mortgage company, to enter into an agreement to merge with Walsh Securities.  Under the terms of the proposed merger, shareholders of Walsh Securities, including defendant **ELIZABETH A. DEMOLA**, were to receive substantial and valuable shareholdings in RBMG when the merger was concluded.  In addition, **DEMOLA** was to become an Executive Vice-President of the merged entity, with a substantial salary, as well as bonuses, commissions, and benefits.

12.  Beginning in or around late June 1997 the fraudulent land flipping activity and the corresponding number of mortgage loans funded by Walsh Securities began to decline, as the result of a law enforcement investigation into the fraudulent activity and a series of newspaper articles concerning the allegations.

13.   Defendant **ELIZABETH A. DEMOLA** and her co-conspirators sought for their benefit to preserve the proposed merger with RBMG and the warehouse credit line with Greenwich Capital -- both of which were threatened by the law enforcement investigation and the press disclosures of the allegations of fraud -- by causing Walsh Securities to issue false, lulling communications to outside parties concerning the nature and scope of the fraud and the purported lack of involvement of management personnel at Walsh Securities.  In those communications and by other means, Walsh Securities falsely ascribed sole blame for the fraud to persons outside the company and to lower-level employees of the company.

14.   For a period of time defendant **ELIZABETH A. DEMOLA** and her co-conspirators were able through these communications and other means to successfully delay action by RBMG and Greenwich Capital which would have threatened the financial windfall anticipated by **DEMOLA** and her co-conspirators. Ultimately, however, and despite those efforts, RBMG terminated the proposed merger and Greenwich Capital terminated its warehouse line of credit.

- 9 -

## OVERT ACTS

15.   In furtherance of the conspiracy and in order to effect the objects thereof, defendant **ELIZABETH A. DEMOLA** and her co-conspirators caused the following overt acts to be committed in the District of New Jersey and elsewhere:

a.   In 1996 and 1997 **DEMOLA** instructed lower-level employees at Walsh Securities to approve and fund mortgage loans without written appraisals.

b.   In 1996 and 1997 **DEMOLA** caused Greenwich Capital Markets on various occasions to wire transfer, through various bank accounts outside New Jersey into attorneys' bank accounts in New Jersey, monies to fund mortgage loans being approved and funded on the basis of falsified documents.

c.   In January 1997 **DEMOLA** participated in meetings at Walsh Securities with co-conspirators to discuss fraudulent loan activity.

d.   In June 1997 **DEMOLA** participated in meetings at Walsh Securities with co-conspirators to discuss fraudulent loan activity.

e.   On or about July 3, 1997 **DEMOLA** caused a letter, sent from Walsh Securities to Greenwich Capital Markets, to falsely describe the fraudulent loan activity.

- 10 -

f.  On or about July 10, 1997 **DEMOLA** caused a letter, sent from Walsh Securities to parties including Greenwich Capital Markets, to falsely describe the fraudulent loan activity.

g.  On or about July 24, 1997 **DEMOLA** caused a letter, sent from Walsh Securities to parties including Greenwich Capital Markets, to falsely describe the fraudulent loan activity.

h.  On or about August 27, 1997 **DEMOLA** caused a letter, sent from Walsh Securities to parties including RBMG and Greenwich Capital Markets, to falsely describe the fraudulent loan activity.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-4
### (Wire fraud)

1.   The allegations contained in paragraphs 1 through 5 and 8 through 14 of Count 1 of this Indictment are reiterated as if set forth at length.

2.   From in or around 1996 to at least as late as in or around August 1997, in the District of New Jersey and elsewhere, defendant

### ELIZABETH A. DEMOLA,

having knowingly and wilfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as set forth in Count 1 of this Indictment, did, on or about the dates set forth below, for the purpose of executing the scheme and artifice and attempting to do so, cause to be transmitted by means of wire in interstate commerce writings, signs, signals, and sounds, that is, **DEMOLA** caused materially false statements and half-truths, and the concealment of material information, to be made in lulling letters and communications sent by Walsh Securities to various parties concerning the nature and scope of the fraud and the purported lack of involvement of management personnel at

Walsh Securities, as set forth below:

| Count | Approx. Date | Nature of wire transmission |
|-------|--------------|------------------------------|
| 2 | July 3, 1997 | Facsimile transmittal of letter from Walsh Securities in New Jersey to Greenwich Capital Markets in Connecticut |
| 3 | July 10, 1997 | Facsimile transmittal of letter from Walsh Securities in New Jersey to Greenwich Capital Markets in Connecticut |
| 4 | August 27, 1997 | Facsimile transmittal of letter from Walsh Securities in New Jersey to RBMG in South Carolina |

In violation of Title 18, United States Code, Sections 1343 and 2.

A TRUE BILL

*Aon N Bittler*

FOREPERSON

*Christopher J. Christie*
CHRISTOPHER J. CHRISTIE
United States Attorney

- 13 -

# Exhibit FF

# WALSH SECURITIES, INC.

## RESULTS OF OPERATIONAL REVIEW

PREPARED BY:

AGS FINANCIAL CORPORATION
555 FIFTH AVENUE
17TH FLOOR
NEW YORK, NY 10017
PHONE: 212-296-9574
FAX: 212-296-9576

OCTOBER 9, 1997



AGS FINANCIAL
CORPORATION

WSI 87100

## EXECUTIVE SUMMARY

AGS Financial Corporation ("AGS") was retained by Walsh and Smith Barney to review the underwriting and origination practices of Walsh in light of loans recently purchased by Walsh which were suspected to be fraudulently originated by National Home Funding. AGS conducted the engagement with the assistance of Prime Financial, who performed the due diligence review, and The Clayton Group who provided data analysis.

The engagement focused on the policies, procedures and operation of Walsh's loan origination and underwriting practices. AGS in cooperation with Prime, reviewed the fraudulently originated loans from National Home Funding to identify common characteristics and completed a review of a sample of loans from Walsh 1997-3 and 1997-4.

Walsh established operations by selling loans in the whole loans market. Once Walsh shifted to securitization executions the underwriting guidelines, due diligence, quality control and post closing reviews provided by the whole loan buyer were eliminated. Walsh has been very slow to develop these functions internally and the quality of mortgage loan underwriting has deteriorated.

Walsh has recently seen an increase in their mortgage origination volume. This additional volume appears to have strained Walsh's operational capabilities. This is evidenced by poorly documented loan files, inadequate follow-up and insufficient post closing analysis. Additionally, the quality of loans appears to have declined between Walsh 1997-3 and 1997-4.

The loan files are characterized by minimal documentation. Often, the documentation contained in the file is insufficient to allow for an independent review of the underwriting decision. Based upon the documents in the file, it is often difficult to determine if the underwriter adequately addressed the risks associated with the loan.

The underwriting guidelines provide little guidance in evaluating certain risk characteristics of the loans. The guidelines were also found to be somewhat confusing and subject to interpretation. Two loan programs, the No Seasoning Program and the Mortgage Only Program should be evaluated to determine if these are prudent risks for Walsh.

The credit analysis of Walsh's underwriting process is inconsistent and widely interpreted. Some underwriters generally refer only to mortgage credit in determining the loan grade. Very little emphasis is place on consumer credit if the borrowers mortgage credit is acceptable. Walsh should consider incorporating the use of credit scores into the underwriting process.

Several operational deficiencies are evident in the relationship between Walsh and the servicer Temple Inland. These deficiencies are resulting in poor initial set-up of the loans and problems initiating contact with borrowers.

AGS reviewed the loans suspected to be fraudulently originated by National Home Funding. The majority of the loans were fraudulently conceived and assembled in such a manner that detection was unlikely. However a more thorough analysis of the loan files and basic risk management procedures may have identified this fraudulent trend at an earlier time.

In conclusion, once Walsh changed from a whole loan seller to a securitization execution, the proper risk management functions were not in place to adequately manage the business. The lack of risk management combined with increased origination volume elevated Walsh's susceptibility to poor underwriting decisions and fraud.

WSI 87103

4

# Exhibit GG

HUD UNIFORM SETTLEMENT STATEMENT

**A.** U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**SETTLEMENT STATEMENT**

**B. TYPE OF LOAN**

1. _ FHA   2. _ FMHA   3. X CONV. UNINS.
4. _ VA   5. _ CONV. INS.

6. File Number:

7. Loan Number:
625402

8. Mortgage Insurance Case Number:

**C.** NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

NOTE: TIN = Taxpayer's Identification Number.

| D. NAME AND ADDRESS OF BORROWER: | E. NAME, ADDRESS AND TIN OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| CRUS CRESPO        206 | CRISTO PROPERTY MANAGEMENT, LTD | National Home Funding |
| JULIO CRESPO | | 3443 Route 9 North |
| 335 WATSON AVENUE | 809 HWY 36 | Freehold, NJ  07728 |
| PERTH AMBOY, NJ | UNION BEACH, NJ  07735 | |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: NAME AND TIN | PLACE OF SETTLEMENT: |
|---|---|---|
| 206 SHERMAN STREET | Stanley Yacker, Esq. | 330 State Highway 34 |
| PERTH AMBOY, NJ | | P.O. Box 329 |
| | I. SETTLEMENT DATE: 04/25/97 | Matawan, New Jersey 07747 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract sales price | 124,000.00 | 401. Contract sales price | 124,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (ln 1400) | 1,186.18 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes   03/01 to 04/25 | 409.36 | 406. City/town taxes   03/01 to 04/25 | 409.36 |
| 107. County taxes    to | | 407. County taxes    to | |
| 108. Assessments    to | | 408. Assessments    to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 125,595.54 | 420. GROSS AMOUNT DUE TO SELLER | 124,409.36 |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | 1,000.00 | 501. Excess deposit (see instructions) | 1,000.00 |
| 202. Principal amount of new loan(s) | 93,000.00 | 502. Settlement charges to seller (ln 1400) | 15,568.65 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. 2ND MORTGAGE | 31,000.00 | 504. Payoff of first mortgage loan | 75,419.93 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. 2ND MORTGAGE | 31,000.00 |
| 207. CLOSING COSTS ADVANCED BY SELLER | 595.54 | 507. WATER/SEWER AMOUNT DUE | 325.24 |
| 208. | | 508. ESCROW FOR FINAL WATER READING | 500.00 |
| 209. | | 509. CLOSING COSTS ADVANCED BY SELLER | 595.54 |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes    to | | 510. City/town taxes    to | |
| 211. County taxes    to | | 511. County taxes    to | |
| 212. Assessments    to | | 512. Assessments    to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 125,595.54 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 124,409.36 |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER | | 600. CASH AT SETTLEMENT TO/FROM SELLER | |
| 301. Gross amount due from borrower (ln 120) | 125,595.54 | 601. Gross amount due to seller (ln 420) | 124,409.36 |
| 302. Less amts paid by/for borrower (ln 220) | 125,595.54 | 602. Less reduct in amt due seller (ln 520) | 124,409.36 |
| 303. CASH  TO  FROM  BORROWER | | 603. CASH  TO  FROM  SELLER | |

SUBSTITUTE FORM 1099 SELLER STATEMENT

The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, line 403 and 404) is important to information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. If this real estate is your principal residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return, for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (1040). You are required to provide the Settlement Agent (named above) with your correct taxpayer identification number. If you do not provide this number to the Settlement Agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

CRISTO PROPERTY MANAGEMENT, LTD    WSI 053833

COM/WALSH 009337

| | | | | Page 2 |
|---|---|---|---|---|
| **L. SETTLEMENT CHARGES** | | | **PAID FROM BORROWER'S FUNDS AT SETTLEMENT** | **PAID FROM SELLER'S FUNDS AT SETTLEMENT** |
| **700. TOTAL SALES/BROKER'S COMMISSION** based on price $ 124,000.00 @ % = 0.00 | | Division of commission (line 700) as follows: | | |
| 701. $ to | | | | |
| 702. $ to | | | | 8,100.00 |
| 703. Commission paid at Settlement | | | | |
| 704. | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | 3,255.00 |
| 801. Loan origination fee % | | | | |
| 802. Loan discount % | | | | |
| 803. Appraisal fee to NATIONAL HOME  POC $450 | | | | |
| 804. Credit report to | | | | |
| 805. Lender's inspection fee | | | | |
| 806. Mortgage insurance application fee to | | | | |
| 807. Assumption fee | | | | 72.00 |
| 808. TAX SERVICE FEE | | | | 250.00 |
| 809. COMMITMENT FEE TO WALSH | | | | 25.00 |
| 810. COURIER FEE FROM WALSH | | | | 300.00 |
| 811. APPLICATION FEE TO NATIONAL | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest from 04/25 to 05/01 @ $ 31.53/day | | | | 189.18 |
| 902. Mortgage insurance premium for months to | | | | |
| 903. Hazard insurance premium for years to | | | | 350.00 |
| 904. COMMITMENT FEE TO NATIONAL | | | | |
| 905. NATIONAL HOME FUNDING      POC $930.00 | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | |
| 1001. Hazard insurance months @ $ per month | | | | |
| 1002. Mortgage insurance months @ $ per month | | | | |
| 1003. City property taxes months @ $ per month | | | | |
| 1004. County property taxes months @ $ per month | | | | |
| 1005. Annual assessments months @ $ per month | | | | |
| 1006. months @ $ per month | | | | |
| 1007. months @ $ per month | | | | |
| 1008. months @ $ per month | | | | |
| **1100. TITLE CHARGES** | | | | 680.00 |
| 1101. Settlement or closing fee to RICHARD PEPSNY + $30 Bank & Fax Fees | | | | |
| 1102. Abstract or title search to | | | | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | 100.00 |
| 1105. Document preparation to | | | | |
| 1106. Notary fees to | | | | 650.00 |
| 1107. Attorney's fees to Stanley Yacker | | | | 1,094.00 |
| (includes above item numbers: ) | | | | |
| 1108. Title insurance to MONMOUTH TITLE AGENCY | | | | |
| (includes above item numbers: ) | | | | |
| 1109. Lender's coverage $ 93,000.00 | | | | |
| 1110. Owner's coverage $ 124,000.00 | | | | |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | 190.00 |
| 1201. Recording Fees: Deed $ 50.00;Mortgage $ 100.00;Releases $ 40.00 | | | | |
| 1202. City/county tax/stamps: Deed $ ; Mortgage $ | | | | 434.00 |
| 1203. State tax/stamps: Deed $ 124,000.00 ; Mortgage $ | | | | |
| 1204. | | | | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | 375.00 |
| 1301. Survey to MID ATLANTIC SERVICE | | | | |
| 1302. Pest inspection to | | | | |
| 1303. | | | | 25.00 |
| 1304. Express Mail to Walsh | | | | |
| 1305. INSURANCE    POC | | | | 665.65 |
| 1306. 2ND QTR TAXES | | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103, Section J and 503, Section K) | | | 1,186.18 | 15,568.65 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower: _____        Seller: _____
CRUZ CRESPO                                              CRISTO PROPERTY MANAGEMENT, LTD

JULIO CRESPO

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____     Date 04/25/97
Stanley Yacker, Esq

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

WS1 053834

COM/WALSH 009338

Exhibit HH

# LATHAM & WATKINS

ATTORNEYS AT LAW
ONE NEWARK CENTER
NEWARK, NEW JERSEY 07101-3174
TELEPHONE (201) 639-1234
FAX (201) 639-7298

PAUL R. WATKINS (1899-1973)
DANA LATHAM (1898-1974)

CHICAGO OFFICE
SEARS TOWER, SUITE 5800
CHICAGO, ILLINOIS 60606
TELEPHONE (312) 876-7700
FAX (312) 993-9767

HONG KONG OFFICE
23RD FLOOR
STANDARD CHARTERED BANK BUILDING
4 DES VOEUX ROAD CENTRAL, HONG KONG
TELEPHONE + 852-2905-6400
FAX + 852-2905-6940

LONDON OFFICE
ONE ANGEL COURT
LONDON EC2R 7HJ ENGLAND
TELEPHONE + 44-171-374 4444
FAX + 44-171-374 4460

LOS ANGELES OFFICE
633 WEST FIFTH STREET, SUITE 4000
LOS ANGELES, CALIFORNIA 90071-2007
TELEPHONE (213) 485-1234
FAX (213) 891-8763

MOSCOW OFFICE
113/1 LENINSKY PROSPECT, SUITE C200
MOSCOW, RUSSIA 117198
TELEPHONE + 7-503 956-5555
FAX + 7-503 956-5556

NEW YORK OFFICE
885 THIRD AVENUE, SUITE 1000
NEW YORK, NEW YORK 10022-4802
TELEPHONE (212) 906-1200
FAX (212) 751-4864

ORANGE COUNTY OFFICE
650 TOWN CENTER DRIVE, SUITE 2000
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 540-1235
FAX (714) 755-8290

SAN DIEGO OFFICE
701 "B" STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8197
TELEPHONE (619) 236-1234
FAX (619) 696-7419

SAN FRANCISCO OFFICE
505 MONTGOMERY STREET, SUITE 1900
SAN FRANCISCO, CALIFORNIA 94111-2562
TELEPHONE (415) 391-0600
FAX (415) 395-8095

TOKYO OFFICE
INFINI AKASAKA, MINATO-KU
TOKYO 107, JAPAN
TELEPHONE +813-3423-3970
FAX +813-3423-3971

WASHINGTON, D.C. OFFICE
1001 PENNSYLVANIA AVE., N.W., SUITE 1300
WASHINGTON, D.C. 20004-2505
TELEPHONE (202) 637-2200
FAX (202) 637-2201

July 28, 1997

**VIA U.S. CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Commonwealth Land Title Insurance Company
8 Penn Center
Philadelphia, PA  19103

> Re:   Claims Based On Closing Service Letters to Walsh Securities Inc.
> As Successors And/Or Assigns To National Home Funding, Inc.

To Whom It May Concern:

The purpose of this letter is to put you on notice that our client Walsh Securities Inc. ("Walsh Securities") has retained us to seek recovery for losses or claims covered by Closing Service Letters issued by Commonwealth Land Title Insurance Company to Walsh Securities as the successors and/or assigns of National Home Funding, Inc. in a series of real estate transactions. These losses or claims arise out of activities by closing attorneys ("Attorneys") whose conduct is covered by your Closing Service Letters. The losses or claims arise out of:

1. Failure of the Attorneys to comply with Walsh Securities' written closing instructions relating to the collection of payments and funds due to Walsh Securities, and/ or

2. Fraud of or misapplication by the Attorneys in handling Walsh Securities' funds in connection with the collection of payments and funds due to Walsh Securities.

Commonwealth Land Title Insurance Company
July 28, 1997
Page

       The Attorneys and the closings or transactions covered by this letter are described in Schedule A which is attached to this letter.  Because Walsh Securities is still investigating certain mortgage loan transactions, Walsh Securities reserves its right to supplement this notice letter and the list of closing attorneys and the closings or transactions described in Schedule A with additional closing attorneys and closings or transactions insured by Commonwealth Land Title Insurance Company.

       Please contact me to discuss Walsh Securities' recovery of funds owed to it.

Sincerely,

Jeffrey M. Goodman*
of LATHAM & WATKINS

Attachment

cc:    Walsh Securities Inc.

      Donna Sullivan, Esq. **(Via Telecopy)**
      Commonwealth Land Title Insurance Company

*Admitted in New York State Only

Schedule A

| Claim No. | Claimant (Last, First) | Claim Amt | Law Firm | Attorney | Close Date | Date | Title Company Claim | Amount | Street Address | City | St | Zip | Amount | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 619444 | LEDOS, GEORGE T | 82500 | NATIONAL HOME | STANLEY YACKER, ESQ. | 24-Jul-98 | 23-Aug-98 | 220000 | COMMONWEALTH | CT-11852 | RIDGE AVENUE | 402 | ASBURY PARK | NJ | 07712 | $16,500.00 | COASTAL |
| 619497 | SALVATORELLO, T | 81000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 24-Jul-98 | 30-Sep-98 | 150000 | COMMONWEALTH | CT-11851 | 1114 MONROE AVE | 31 | ASBURY PARK | NJ | 07712 | $15,500.00 | COASTAL |
| 621425 | MONTANTE, BILLY A | 97500 | NATIONAL HOME | STANLEY YACKER, ESQ. | 25-Jul-98 | 30-Sep-98 | 80000 | COMMONWEALTH | CT-11789-A | MONROE AVENUE | 523 | ASBURY PARK | NJ | 07712 | $19,500.00 | COASTAL |
| 618589 | SALVATORELLO, A | 93750 | NATIONAL HOME | STANLEY YACKER, ESQ. | 26-Jul-98 | 23-Aug-98 | 150000 | COMMONWEALTH | CT-11853 | ROOSEVELT AVE | 211 | ABERDEEN | NJ | | $18,750.00 | COASTAL |
| 618590 | SALVATORELLO, | 97500 | NATIONAL HOME | STANLEY YACKER, ESQ. | 26-Jul-98 | 23-Aug-98 | 130000 | COMMONWEALTH | CT-11783-A | 7TH AVE | 1308 | NEPTUNE | NJ | 07753 | $19,500.00 | COASTAL |
| 619942 | BALOGH JR, RONALD C. | 90000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 20-Aug-98 | 23-Aug-98 | 120000 | COMMONWEALTH | CT-11756-A | CENTRAL AVE | 272 | LONG BRANCH | NJ | 07740 | $18,000.00 | COASTAL |
| 619543 | BALOGH, RONALD C. JR | 90000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 20-Aug-98 | 23-Aug-98 | 120000 | COMMONWEALTH | CT-11869 | WILBUR RAY AVENUE | 251 | LONG BRANCH | NJ | 07740 | $18,000.00 | COASTAL |
| 619544 | BALOGH JR, RONALD C. | 90000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 20-Aug-98 | 23-Aug-98 | 120000 | COMMONWEALTH | CT-11800-A | WILBUR RAY AVENUE | 251 | LONG BRANCH | NJ | 07740 | $18,000.00 | COASTAL |
| 619543 | BALOGH, RONALD C. JR | 101250 | NATIONAL HOME | STANLEY YACKER, ESQ. | 20-Aug-98 | 23-Aug-98 | 135000 | COMMONWEALTH | CT-11799-A | 20TH STREET | 929 | IRVINGTON | NJ | 07111 | $22,500.00 | COASTAL |
| 618617 | LEDOS, GEORGE T | 161250 | NATIONAL HOME | STANLEY YACKER, ESQ. | 20-Aug-98 | 23-Aug-98 | 225000 | COMMONWEALTH | CT-11757-A | 2ND AVE | 408 | LONG BRANCH | NJ | 07740 | $33,750.00 | COASTAL |
| 620311 | DICARO, LOUIS | 84000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 16-Oct-98 | 27-Apr-97 | 120000 | COMMONWEALTH | CT-11837-A | ABBOTTSFORD AVE | 105 | LONG BRANCH | NJ | 07740 | $17,800.00 | COASTAL |
| 622717 | HRISTOV, PLAMEN | 84000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 16-Oct-98 | 27-Apr-97 | 120000 | COMMONWEALTH | CT-11921 | MATTISON AVENUE | 1408 | NEPTUNE | NJ | 07712 | $16,800.00 | COASTAL |
| 620925 | ALA, JAMES | 97500 | NATIONAL HOME | STANLEY YACKER, ESQ. | 22-Oct-98 | 17-Jan-97 | 130000 | COMMONWEALTH | CT-11833 | BRIANNA AVENUE | 622 | NEPTUNE CITY | NJ | 07834 | $19,500.00 | COASTAL |
| 620853 | DEVENPIRIO, DONALD | 96000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 16-Nov-98 | 27-Apr-97 | 155000 | COMMONWEALTH | CT-11845-A | EMORY STREET | 1083 | JERSEY CITY | NJ | 07305 | $19,000.00 | COASTAL |
| 12458 | FARGA, THOMAS | 150000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 31-Dec-98 | 30-Jan-97 | 190000 | COMMONWEALTH | CT-11801-A | HERBERT ST | 101 | RED BANK | NJ | 07701 | $30,500.00 | COASTAL |
| 618124 | SR DERRICK MORRIS | 84500 | NATIONAL HOME | STANLEY YACKER, ESQ. | | | 130000 | COMMONWEALTH | CT-11919 | IVY STREET | 1507 | NEPTUNE | NJ | 07753 | $32,500.00 | COASTAL |
| 623945 | VISCARDO, SUSAN | 78000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 20-Dec-98 | 07-Apr-97 | 114345 | COMMONWEALTH | | 1117 ASBURY AVE | 1117 | ASBURY PARK | NJ | 07712 | | COASTAL |
| 624111 | CAMPOLI, DEBRA | 113400 | NATIONAL HOME | STANLEY YACKER, ESQ. | 31-Dec-98 | 07-Apr-97 | 160000 | COMMONWEALTH | CT-11903-A | FRANKLIN AVE | 43 | SEASIDE | NJ | 09751 | $132,400.00 | COASTAL |
| 624698 | KITOVONTCH, MILOSH H | 91000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 23-Jan-97 | 07-Apr-97 | 140000 | COMMONWEALTH | CT-11914-A | RANDOLPH AVENUE | 242 | JERSEY CITY | NJ | 07305 | | COASTAL |
| 620251 | RIZZUTO, PATRICIA | 90125 | NATIONAL HOME | STANLEY YACKER, ESQ. | 31-Jan-97 | 07-Apr-97 | 130000 | COMMONWEALTH | CT-11911-A | MC 4000 AVE | 35 | JERSEY CITY | NJ | 07307 | $122,000.00 | COASTAL |
| 624117 | RIZZUTO, LORETTA | 93000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 31-Jan-97 | 07-Apr-97 | 130000 | COMMONWEALTH | CT-11945-A | FISK STREET | 35 | JERSEY CITY | NJ | 07307 | $124,000.00 | COASTAL |
| 624826 | PELADOS, TSAMBIKOS | 88500 | NATIONAL HOME | ANTHONY M. OCALESE | 31-Mar-97 | 27-Jun-97 | 118000 | COMMONWEALTH | CT-11801 | WILLIAM STREET | 1082 | ELIZABETH | NJ | 07201 | $29,500.00 | COASTAL |
| 624527 | FARIA JR, ANTHONY W. | 120000 | NATIONAL HOME | ANTHONY M. OCALESE | 31-Mar-97 | 27-Jun-97 | 160000 | COMMONWEALTH | CT-11921A | CLERK ST | 181 | JERSEY CITY | NJ | 07307 | $30,000.00 | COASTAL |
| 623849 | FREBISH, BARBARA | 102000 | NATIONAL HOME | ANTHONY M. OCALESE | 31-Mar-97 | 27-Jun-97 | 140000 | COMMONWEALTH | CT-11888-A | WILLIAM STREET | 25 | JERSEY CITY | NJ | 07310 | | COASTAL |
| 621290 | WHITE, JOANNA M. | 127000 | NATIONAL HOME | ANTHONY M. OCALESE | 15-Apr-97 | 27-Jun-97 | 180000 | COMMONWEALTH | CT-11883A | FIFTH STREET | 25 | EAST ORANGE | NJ | 07018 | $20,000.00 | COASTAL |
| 621435 | RIZZUTO, PATRICIA | 129750 | NATIONAL HOME | ANTHONY M. OCALESE | 15-Apr-97 | 27-Jun-97 | 172000 | COMMONWEALTH | CT-11885-A | 1116 5TH AVENUE | 1116 | ASBURY PARK | NJ | 07712 | $143,750.00 | COASTAL |
| 622755 | LENTINO, JOAN | 140000 | NATIONAL HOME | ANTHONY M. OCALESE | 16-Apr-97 | 27-Jun-97 | 175000 | COMMONWEALTH | CT-15567-A | BANGS AVE | 1703 | NEPTUNE | NJ | 07753 | $35,000.00 | COASTAL |
| 621945 | DELVAL, RALPH JOSEPH | 132000 | NATIONAL HOME | ANTHONY M. OCALESE | 30-Apr-97 | 27-Jun-97 | 165000 | COMMONWEALTH | CT-15531A | EAST 6TH STREET | 428 | PLAINFIELD | NJ | 07060 | | COASTAL |
| 621415 | OSGERS, FRED | 79750 | NATIONAL HOME | ANTHONY M. OCALESE | 13-May-97 | 27-Jun-97 | 150000 | COMMONWEALTH | CT-15511-A | MONTICELLO AVE | 253 | JERSEY CITY | NJ | 07305 | $18,750.00 | COASTAL |
| 622697 | VILARDI, JANICE | 115500 | NATIONAL HOME | ANTHONY M. OCALESE | 07-May-97 | 27-Jun-97 | 161000 | COMMONWEALTH | CT-15331A | MYRTLE AVENUE | 226 | NEPTUNE TWP | NJ | 07753 | $18,250.00 | COASTAL |
| 622563 | FUSCO, FRED | 79750 | NATIONAL HOME | ANTHONY M. OCALESE | 28-May-97 | 27-Jun-97 | 106000 | COMMONWEALTH | CT-20775A | PASSAIC STREET | 263 | CARTERET | NJ | 07008 | $123,000.00 | COASTAL |
| 623819 | OSGERS, NATALIE M. | 84000 | NATIONAL HOME | ANTHONY M. OCALESE | 28-May-97 | 27-Jun-97 | 80000 | COMMONWEALTH | CT-16044A | CENTER STREET | 826 | UNION BEACH | NJ | 07735 | $116,000.00 | COASTAL |
| 623742 | FREEDEN, JAMES B. | 78750 | NATIONAL HOME | ANTHONY M. OCALESE | 28-May-97 | 27-Jun-97 | 105000 | COMMONWEALTH | CT-15942 | BALDWIN STREET | 101 | NEW | NJ | 08901 | $28,150.00 | COASTAL |
| 622740 | VELLLA, KENNETH J. | 148000 | NATIONAL HOME | ANTHONY M. OCALESE | 28-May-97 | 27-Jun-97 | 185000 | COMMONWEALTH | CT-20202A | 438 THIRD AVE | 408 | ASBURY PARK | NJ | 07712 | $37,000.00 | COASTAL |
| 623243 | BATTZ, ROBIN C. | 144000 | NATIONAL HOME | ANTHONY M. OCALESE | 29-May-97 | 27-Jun-97 | 180000 | COMMONWEALTH | CT-11987-A | PROSPECT AVENUE | 253 | JERSEY CITY | NJ | 07307 | $28,500.00 | COASTAL |
| A38010 | FUSCO, FRED | 56250 | NATIONAL HOME | ANTHONY M. OCALESE | 29-May-97 | 07-May-97 | 75000 | COMMONWEALTH | CT-11791-A | UPPINGCOTT AVENUE | 127 | LONG BRANCH | NJ | 07740 | $23,750.00 | COASTAL |
| 624923 | PELARISS, GEORGE | 116000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 29-May-97 | 17-Jan-97 | 161000 | COMMONWEALTH | CT-20402-A | ARLINGTON AVE | 203 | JERSEY CITY | NJ | 07305 | $140,250.00 | COASTAL |
| 624407 | MONTANTE, JILL A. | 112000 | NATIONAL HOME | ANTHONY M. OCALESE | 04-May-97 | 27-Jun-97 | 170000 | COMMONWEALTH | CT-17987A | ARLINGTON AVENUE | 268 | JERSEY CITY | NJ | 07305 | $38,250.00 | COASTAL |
| 625832 | DASILVA, PAUL | 90375 | NATIONAL HOME | STANLEY YACKER, ESQ. | 02-Jun-97 | 17-Jan-97 | 158000 | COMMONWEALTH | CT-16644A | VAN HORNE ST | 157 | JERSEY CITY | NJ | 07304 | $23,750.00 | COASTAL |
| 625825 | RUSSO, JOHN GLENN | 71250 | NATIONAL HOME | STANLEY YACKER, ESQ. | 30-May-97 | 17-Jan-97 | 95000 | COMMONWEALTH | CT-14988 | COLES ST | 89 | JERSEY CITY | NJ | 07302 | $17,250.00 | COASTAL |
| 623824 | VILARDI, JANICE | 108500 | NATIONAL HOME | ANTHONY M. OCALESE | 30-May-97 | 27-Jun-97 | 140000 | COMMONWEALTH | CT-11905A | JEFFERSON STREET | 119-20 | PATERSON | NJ | 01523 | $17,750.00 | COASTAL |
| A29031 | JALINO, JORGE | 156000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 31-May-97 | 07-May-97 | 110000 | Commonwealth Ti | CT-15398 | PRINCETON AVENUE | 748 | JERSEY CITY | NJ | 07305 | $92,000.00 | COASTAL |
| 623720 | APGAR, RAYMOND C. | 93750 | NATIONAL HOME | STANLEY YACKER, ESQ. | 15-Oct-98 | 17-Jan-97 | 170000 | Commonwealth Ti | CT-16190A | BERGH AVE | 1084 | ASBURY PARK | NJ | 08850 | $22,500.00 | COASTAL |
| 623705 | POLARIS, GEORGE | 123000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 15-Oct-98 | 17-Jan-97 | 120000 | Commonwealth Ti | CT-16180A | KNOLL PLACE | 24 | RICHMOND | NJ | 07106 | $100,000.00 | COASTAL |
| 621894 | BALOGH JR, RONALD C. | 94125 | NATIONAL HOME | STANLEY YACKER, ESQ. | 20-Aug-97 | 12-Jan-97 | 125000 | Commonwealth Ti | CT-16181A | HENDRICKSON AVENUE | 460 | LONG BRANCH | NJ | 07740 | $118,425.00 | COASTAL |
| 622009 | HRISTOV, PLAMEN | 84125 | NATIONAL HOME | STANLEY YACKER, ESQ. | 15-Oct-98 | 12-Jan-97 | 168500 | Commonwealth Ti | CT-16235A | 706 1ST AVENUE | 706 | ASBURY PARK | NJ | 07712 | $25,350.00 | COASTAL |
| 622051 | RIZZUTO, LORETTA | 120375 | NATIONAL HOME | STANLEY YACKER, ESQ. | 18-Oct-98 | 12-Jan-97 | 160500 | Commonwealth Ti | CT-16111A | 700 SECOND AVENUE | 709 | ASBURY PARK | NJ | 07712 | $26,750.00 | COASTAL |
| 622011 | RIZZUTO, LORETTA | 93750 | NATIONAL HOME | STANLEY YACKER, ESQ. | 18-Oct-98 | 12-Jan-97 | 125000 | Commonwealth Ti | CT-16117A | 700 FIRST AVENUE | 700 | ASBURY PARK | NJ | 07712 | $22,500.00 | COASTAL |
| 622022 | RIZZUTO, LORETTA | 96000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 14-Oct-98 | 12-Jan-97 | 120000 | Commonwealth Ti | CT-16172A | 1200 MONROE AVENUE | 1200 | ASBURY PARK | NJ | 07712 | $22,500.00 | COASTAL |
| 621718 | RIZZO, LORETTA | 97500 | NATIONAL HOME | STANLEY YACKER, ESQ. | 20-Aug-97 | 30-Dec-97 | 125000 | Commonwealth Ti | CT-16230A | 817 FIRST AVENUE | 812 | ASBURY PARK | NJ | 07712 | $20,250.00 | COASTAL |
| 622014 | JUERGENSEN, ALICA | 97690 | NATIONAL HOME | STANLEY YACKER, ESQ. | 21-Oct-98 | 17-Jan-97 | 130000 | Commonwealth Ti | CT-16230A | 104 SECOND AVE | 1014 | ASBURY PARK | NJ | 07712 | $19,400.00 | COASTAL |
| 622023 | ALA, JAMES | 99750 | NATIONAL HOME | STANLEY YACKER, ESQ. | 22-Oct-98 | 17-Jan-97 | 125000 | Commonwealth Ti | CT-16377A | HAMILTON PLACE | 1222 | PATERSON | NJ | 07501 | | COASTAL |
| 622018 | DICARO JR, LOUIS | 106000 | NATIONAL HOME | STANLEY YACKER, ESQ. | 24-Oct-98 | 17-Jan-97 | 115000 | Commonwealth Ti | CT-16231A | 1313 SPRINGWOOD AVE | 1315 | ASBURY PARK | NJ | 07712 | $22,500.00 | COASTAL |

Page 1

| CLAIM NO | CLAIMANT/PETITIONER | SALE TYPE | CAPITAL AMT | CLOSING DATE | CLOSING ATTORNEY | SOLD DATE | PURCH PRICE | TITLE COMPANY | CT NO | REF | STREET ADDRESS | TOWN | NJ | TITLE AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 622015 | JUERGENSEN, ALICIA | NATIONAL HOME | 112500 | 30-Oct-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 150000 | Commonwealth Tit | CT-18191(A) | 1292 | 1292 WASHINGTON | ASBURY PARK | NJ | $22,500.00 COASTAL TITLE |
| 622694 | BUSTOS-LACY, YOLANDA | NATIONAL HOME | 129000 | 05-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 172000 | Commonwealth Tit | CT-18172(A) | 1313 | 1313 MONROE | ASBURY PARK | NJ | $25,800.00 COASTAL TITLE |
| 622622 | | NATIONAL HOME | 105000 | 06-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 140000 | Commonwealth Tit | CT-18173(A) | 20 | 20-22 RIDGE AVENUE | ASBURY PARK | NJ | $21,000.00 COASTAL TITLE |
| 622625 | BUSTOS, SR, RAFAEL | NATIONAL HOME | 14250 | 08-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 190000 | Commonwealth Tit | CT-18177(A) | 509 | 509 RIDGE AVENUE | ASBURY PARK | NJ | $28,500.00 COASTAL TITLE |
| 622627 | BUSTOS, SR, RAFAEL | NATIONAL HOME | 91500 | 04-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 122000 | Commonwealth Tit | CT-18181(A) | 703 | 703 FOURTH AVENUE | ASBURY PARK | NJ | $18,300.00 COASTAL TITLE |
| 622558 | RELLY, BRIAN G. | NATIONAL HOME | 112500 | 08-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 50000 | Commonwealth Tit | CT-18164(A) | 126 | UON AVENUE | LONG BRANCH | NJ | $18,300.00 COASTAL TITLE |
| 622632 | APGAR, RAYMOND | NATIONAL HOME | 138750 | 08-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 185000 | Commonwealth Tit | CT-18161(A) | 1043 | 1043 SUMMERFIELD AVE | ASBURY PARK | NJ | $27,750.00 COASTAL TITLE |
| 622619 | DIDONNA, THOMAS J. | NATIONAL HOME | 112500 | 08-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 50000 | Commonwealth Tit | CT-18165(A) | 1914 | NORTH & EAST CENTRAL | SEASIDE PARK | NJ | $22,500.00 COASTAL TITLE |
| 622647 | DIDONNA, THOMAS J. | NATIONAL HOME | 138750 | 08-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 125000 | Commonwealth Tit | CT-18154(A) | 704 | 704 PINE STREET | SEASIDE PARK | NJ | $23,500.00 COASTAL TITLE |
| 622661 | AMADOR, JOSEPH L. | NATIONAL HOME | 112500 | 18-Nov-98 | STANLEY YACKER, ESQ. | 30-Jun-97 | 150000 | Commonwealth Tit | CT-18178(A) | 326 | FISHER AVENUE | NEPTUNE | NJ | $23,900.00 COASTAL TITLE |
| 622660 | GRANDEROTO, DOTALD O | NATIONAL HOME | 138500 | 18-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 184000 | Commonwealth Tit | CT-18554(A) | | 406 SEWALL AVENUE | ASBURY PARK | NJ | $27,300.00 COASTAL TITLE |
| 622681 | PISCIONERI, JOSEPH | NATIONAL HOME | 135000 | 21-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 180000 | Commonwealth Tit | CT-18552(A) | 113 | WEST BERGEN PLACE | RED BANK | NJ | $27,000.00 COASTAL TITLE |
| 622554 | ALA, JAMES | NATIONAL HOME | 102500 | 21-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 130000 | Commonwealth Tit | CT-18187(A) | 1778 | 1778 WASHINGTON | ASBURY PARK | NJ | $24,400.00 COASTAL TITLE |
| 622557 | RELLY, BRIAN G. | NATIONAL HOME | 105000 | 22-Nov-98 | STANLEY YACKER, ESQ. | 17-Jun-97 | 140000 | Commonwealth Tit | CT-18167(A) | 1041 | 1041 BANGS STREET | ASBURY PARK | NJ | $15,500.00 COASTAL TITLE |
| 22554 | DICARO JR, LOUIS | NATIONAL HOME | 7300 | 22-Nov-98 | STANLEY YACKER, ESQ. | 30-Jun-97 | 178250 | Commonwealth Tit | CT-18184(A) | 305 | 305 SECOND AVENUE | ASBURY PARK | NJ | $33,661.00 COASTAL TITLE |
| 33448 | CUZA, LAWRENCE M. | NATIONAL HOME | 124500 | 30-Dec-98 | STANLEY YACKER, ESQ. | 30-Jun-97 | 195000 | Commonwealth Tit | CT-18186(A) | 140 | FRANKLIN PL | PLAINFIELD | NJ | $19,800.00 COASTAL TITLE |
| 624110 | DILEVISA, DMITAR D. | NATIONAL HOME | 18500 | 30-Dec-98 | STANLEY YACKER | 30-Jun-97 | | Commonwealth Tit | CT-18887(A) | | | PLAINFIELD | NJ | $11,100.00 COASTAL TITLE |
| 624414 | OWENS, THOMAS | NATIONAL HOME | 109200 | 17-Jun-97 | STANLEY YACKER | 07-Mar-97 | 160000 | Commonwealth Tit | CT-19153(A) | | | ASBURY PARK | NJ | $18,300.00 COASTAL TITLE |
| 619999 | CISGARES, NICHOLAS J. | NATIONAL HOME | 78000 | 21-May-98 | STANLEY YACKER | 27-Mar-97 | 104000 | Commonwealth Tit | CT-17909 | 512 | SEWALL AVENUE | ASBURY PARK | NJ | $18,200.00 COASTAL TITLE |
| 624010 | DIDONNA JR, THOMAS J. | NATIONAL HOME | 141750 | 30-Dec-98 | ANTHONY M. DCALESE | 07-Mar-97 | 189000 | Commonwealth Tit | CT-18274A | 246 | BAYSIDE DRIVE | FREEHOLD | NJ | $28,500.00 COASTAL TITLE |
| 624180 | CAMPOLI, DEBRA | NATIONAL HOME | 111675 | 31-Dec-98 | STANLEY YACKER | 07-Mar-97 | 133000 | Commonwealth Tit | CT-18301A | 95 | JACKSON STREET | FREEHOLD | NJ | $27,375.00 COASTAL TITLE |
| 624055 | BUSTOS, SR, RAFAEL | NATIONAL HOME | 139875 | 31-Dec-98 | STANLEY YACKER, ESQ. | 27-Mar-97 | 186500 | Commonwealth Tit | CT-18274(A) | 138 | 138 RIDGE AVENUE | ASBURY PARK | NJ | $38,000.00 COASTAL TITLE |
| 624176 | HRISTOV, LAURE | NATIONAL HOME | 133000 | 31-Dec-98 | STANLEY YACKER, ESQ. | 07-Mar-97 | 190000 | Commonwealth Tit | CT-18848(A) | 609 | 609 3RD AVE | ASBURY PARK | NJ | $38,000.00 COASTAL TITLE |
| 624260 | VISCARDO, SUSAN | NATIONAL HOME | 128250 | 13-Jan-97 | STANLEY YACKER | 27-Mar-97 | 195000 | Commonwealth Tit | CT-18904A | 515 | 515 7TH AVENUE | ASBURY PARK | NJ | $36,700.00 COASTAL TITLE |
| 624112 | POWELL, KIMBERLY E. | NATIONAL HOME | 80000 | 17-Jun-97 | STANLEY YACKER | 07-Mar-97 | 118000 | Commonwealth Tit | CT-18919A | | 281 WEST AVENUE | LONG BRANCH | NJ | $38,250.00 COASTAL TITLE |
| 624440 | PISCIONERI, JOSEPH | NATIONAL HOME | 84000 | 17-Jun-97 | ANTHONY M. DCALESE | 07-Mar-97 | 100000 | Commonwealth Tit | CT-19059A | 136 | JAMES ST | | NJ | $141,200.00 COASTAL TITLE |
| 624414 | SZKUTHIAN, CARMEN | NATIONAL HOME | 140700 | 17-Jun-97 | ANTHONY M. DCALESE | 07-Mar-97 | | Commonwealth Tit | CT-19187A | 1110 | 1110 5TH AVENUE | ASBURY PARK | NJ | $136,000.00 COASTAL TITLE |
| 624495 | OWENS, THOMAS | NATIONAL HOME | 136000 | 17-Jun-97 | ANTHONY M. DCALESE | 07-Mar-97 | 183000 | Commonwealth Tit | CT-19221A | | 503 RIDGE AVENUE | ASBURY PARK | NJ | $33,500.00 COASTAL TITLE |
| 624404 | DOPPOLITO, MICHAEL | NATIONAL HOME | 114450 | 23-Jan-97 | STANLEY YACKER | 07-Mar-97 | 133000 | Commonwealth Tit | CT-18901A | 56 | SEASIDE STREET | SEASIDE | NJ | $33,700.00 COASTAL TITLE |
| 624495 | DOPPOLITO, AMANDA | NATIONAL HOME | 111750 | 23-Jan-97 | STANLEY YACKER, ESQ. | 07-Mar-97 | 186500 | Commonwealth Tit | CT-18924A | 24 | 101A STREET | SEASIDE | NJ | 124,750.00 COASTAL TITLE |
| 624698 | PELARGIS, GEORGE | NATIONAL HOME | 61000 | 23-Jan-97 | STANLEY YACKER | 07-Mar-97 | 88000 | Commonwealth Tit | CT-19303A | | W RIDGE AVENUE | ASBURY PARK | NJ | 124,750.00 COASTAL TITLE |
| 624697 | PELARGIS, GEORGE | NATIONAL HOME | 98000 | 22-Jan-97 | STANLEY YACKER | 27-Mar-97 | 140000 | Commonwealth Tit | CT-18815A | 806 | 806 BANGS STREET | ASBURY PARK | NJ | $24,000.00 COASTAL TITLE |
| 622650 | PISCIONERI, JOSEPH | NATIONAL HOME | 123750 | 24-Jan-97 | ANTHONY M. DCALESE | 07-Mar-97 | 185000 | Commonwealth Tit | CT-18390A | 19 | BELMONT AVENUE | JERSEY CITY | NJ | $46,300.00 COASTAL TITLE |
| 623048 | CUZA, PATRICIA | NATIONAL HOME | 97500 | 11-Mar-97 | ANTHONY DCALESE | 27-Jun-97 | 130000 | Commonwealth Tit | CT-19015A | 209 | RICHMOND STREET | PLAINFIELD | NJ | $24,500.00 COASTAL TITLE |
| 624714 | SZKUTHIAN, CARMEN | NATIONAL HOME | 87000 | 11-Mar-97 | ANTHONY DCALESE | 27-Jun-97 | 120000 | Commonwealth Tit | CT-19083A | 274 | CENTRAL AVE | | NJ | $22,000.00 COASTAL TITLE |
| 624822 | FRANCISCO, ANN | NATIONAL HOME | 108750 | 31-Mar-97 | ANTHONY DCALESE | 27-Jun-97 | 133000 | Commonwealth Tit | CT-19104A | 165 | PEARL ST | LONG BRANCH | NJ | $38,250.00 COASTAL TITLE |
| 624847 | VELIA, KENNETH J. | NATIONAL HOME | 67500 | 02-Apr-97 | ANTHONY M. DCALESE | 27-Jun-97 | 90000 | Commonwealth Tit | CT-19080A | 29 | PEARL ST | LONG BRANCH | NJ | $23,250.00 COASTAL TITLE |
| 628850 | CHRISTIANO, STEPHEN | NATIONAL HOME | 108750 | 02-Apr-97 | STANLEY YACKER, ESQ. | 27-Jun-97 | 145000 | Commonwealth Tit | CT-19988A | 1010 | 1010 BANGS AVENUE | ASBURY PARK | NJ | $26,100.00 COASTAL TITLE |
| 624974 | ZLATATA, ALINA A | NATIONAL HOME | 109500 | 07-Apr-97 | STANLEY YACKER, ESQ. | 27-Jun-97 | 140000 | Commonwealth Tit | CT-19085A | | SUMMERFIELD AVE | | NJ | $40,000.00 COASTAL TITLE |
| 627146 | FUSCO, FRED | NATIONAL HOME | 80000 | 30-May-97 | ANTHONY M DCALESE | 27-Jun-97 | 107000 | Commonwealth Tit | CT-20089 | 1728 | W 3RD ST | ASBURY PARK | NJ | $11,250.00 COASTAL TITLE |
| 628997 | DASILVA, PAUL | NATIONAL HOME | 90000 | 30-May-97 | ANTHONY M. DCALESE | 27-Jun-97 | 128000 | Commonwealth Tit | CT-20211A | 127 | RED PARK AVE | RED BANK | NJ | $30,000.00 COASTAL TITLE |
| 623074 | JULIAO, JORGE | NATIONAL HOME | 53750 | 30-May-97 | STANLEY YACKER | 07-Mar-97 | 294000 | Commonwealth Tit | CT-18130A | 27 | LAUREL AVE | LONG BRANCH | NJ | $11,250.00 COASTAL TITLE |
| 624974 | JUBROGNER, RALPH | NATIONAL HOME | 122500 | 30-May-97 | STANLEY YACKER, ESQ. | 07-Mar-97 | 160000 | Commonwealth Tit | CT-19300A | 803 | 3RD AVE | ASBURY PARK | NJ | $30,000.00 COASTAL TITLE |
| 625555 | DERISCSTO, ANDREA | NATIONAL HOME | 87500 | 21-Feb-97 | STANLEY YACKER | 27-Mar-97 | 160000 | Commonwealth Tit | CT-19221(A) | 1230 | WESTERVELT AVE | JERSEY CITY | NJ | $34,100.00 COASTAL TITLE |
| 623082 | GRIGORYAN, ARMEN | NATIONAL HOME | 67500 | 31-Dec-97 | STANLEY YACKER | 07-Mar-97 | 148000 | Commonwealth Tit | CT-18911A | 28 | ARLINGTON AVENUE | PLAINFIELD | NJ | $27,700.00 COASTAL TITLE |
| 624174 | LIUBROGNER, RALPH | NATIONAL HOME | 87500 | 31-Dec-97 | STANLEY YACKER | 27-Mar-97 | 148000 | Commonwealth Tit | CT-19223(A) | 28 | BLANE AVENUE | PLAINFIELD | NJ | $27,700.00 COASTAL TITLE |
| 622416 | LIUBROGNER, RALPH | NATIONAL HOME | 150000 | 09-Mar-97 | ANTHONY DCALESE | | 200000 | Commonwealth Tit | CT-19223(A) | 7112 | BLANE AVENUE | | NJ | $30,000.00 COASTAL TITLE |
| 628932 | DASILVA, PAUL | NATIONAL HOME | 82500 | 10-May-97 | ANTHONY DCALESE | 17-Jun-97 | 110000 | Commonwealth Tit | CT-18349 | 196 | DIVISON LN | LONG BRANCH | NJ | $27,500.00 COASTAL TITLE |

# Exhibit II

# McCarter & English

## ATTORNEYS AT LAW

FOUR GATEWAY CENTER
100 MULBERRY STREET
P.O. BOX 652
NEWARK, NJ 07101-0652

(973) 622-4444

TELECOPIER (973) 624-7070
CABLE "MCCARTER" NEWARK

September 29, 1997

BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Re:  Walsh Securities, Inc.
     Commonwealth Claim No. 97-0-2735

Mr. Fred Schlesinger
Walsh Securities, Inc.
Corporate Office
4 Campus Drive
Parsippany, New Jersey  07054

Dear Mr. Schlesinger:

        We have been retained to represent Commonwealth Land Title Insurance Company with respect to your claim. However, in order for Commonwealth to evaluate and respond to your claim, we need additional information. Accordingly, please provide the following information with respect to the above referenced claim:

        1.  As to each loan, identify the name, address and position/title of any employee of Walsh Securities, including but not limited to Robert Walsh, having knowledge of the acts, events and/or circumstances which you contend gives rise to coverage and the date that the employee acquired the knowledge;

        2.  As to each loan, identify the precise act or omission you claim gives rise to coverage;

WS2000001280
W 000029

# MCCARTER & ENGLISH

Mr. Fred Schlesinger
September 29, 1997
Page 2

3.    Explain in detail the current status of each of
the loans identified in your letter dated September 5, 1997.
That is, identify what loans, if any, are in default and what
loans, if any, are in foreclosure, etc.;

4.    As to each loan, identify the attorney who closed
the loan (if it would be an attorney other than the attorney
listed on the chart you supplied to Commonwealth with your
September 5, 1997 letter to Donna Sullivan, Esq.);

5.    As to each loan, identify the in-house person(s)
who reviewed the loans prior to closing with Walsh Securities;

6.    As to each loan, identify the specific fraudulent
statement listed on the HUD-1 settlement statement;

7.    As to each loan, identify and define what is meant
by the term "closing pre-conditions imposed by Walsh Securities,
Inc." and identify and attach any "closing pre-conditions" that
were not followed;

8.    As to each loan explain how the violations of
"closing pre-conditions" caused a loss to Walsh Securities and
specify the amount of loss;

9.    As to each loan, identify and supply any written
underwriting standards that would apply to the loan; and

10.    Confirm that you have forwarded the entire
mortgage loan file for each of the Commonwealth loans identified
in your letter dated September 5, 1997.  If you have not
forwarded the complete loan files, identify those documents which
have been removed and/or withheld from the loan file.

Upon receipt of such information, we will respond to
your claim.

Very truly yours,

David R. Kott

DRK/yt

ME4:228579.1

Exhibit JJ

1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


UNITED STATES OF AMERICA,                    PLEA

    vs.

WILLIAM KANE,

       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - -
                              June 14, 2002
                              Newark, New Jersey


B E F O R E:  HONORABLE ALFRED M. WOLIN, USDJ


A P P E A R A N C E S:


    CHRISTOPHER J. CHRISTIE, United States Attorney
    970 Broad Street
    Newark, NJ 07102
    BY:  ALAIN LEIBMAN, Assistant U.S. Attorney
    For the Government


    MICHAEL WASHOR, ESQ.,
    275 Madison Avenue
    New York, NY 10016
    For the Defendant.


Pursuant to Section 753 Title 28 United States Code, the
following transcript is certified to be an accurate record
as taken stenographically in the above-entitled proceedings.

_____
JACQUELINE KASHMER
Official Court Reporter


JACQUELINE KASHMER, C.S.R.
OFFICIAL COURT REPORTER
P. O. Box 12
Pittstown, NJ 08867
(973) 297-4889

1   habitable?

2   A.   Yes, they did, your Honor.

3   Q.   Did you and your co-conspirators fraudulently

4   participate in and benefit from, A, sales of certain

5   properties to actual buyers utilizing falsified transaction

6   documents and generating inflated mortgage loans?

7   A.   Yes, your Honor.

8   Q.   And, B, sales of other properties to persons acting as

9   straw buyers also utilizing falsified transaction documents

10  and generating inflated mortgage loans?

11  A.   Yes, your Honor.

12  Q.   Did you act and agree with others to commit fraud in

13  these transactions by various means, including the

14  following, A, listing properties for resale with real estate

15  agents Irene DiFeo and Donna Pepsny, who made various

16  misrepresentations to buyers, falsified documents, and

17  failed to disclose important information about the property

18  to buyers?

19  A.   Yes, we did, your Honor.

20  Q.   Acting with Richard Pepsny, a lawyer, as the seller's

21  attorney, in which capacity he falsified dates on deeds so

22  that one of your companies was able to convey title to

23  properties which it had not yet acquired?

24  A.   Yes, we did, your Honor.

25  Q.   And two, disbursed mortgage loan proceeds to you on

1  several transactions where Cristo did not actually complete

2  the conveyance to a straw buyer and should not have received

3  any proceeds?

4  A.    Yes, your Honor.

5  Q.    Acting with Stanley Yacker, an attorney, as an actual

6  buyer's attorney or settlement agent in straw buyer

7  transactions, in which capacity Mr. Yacker made various

8  representations to buyers, falsified documents, and failed

9  to disclose important information about the properties to

10 buyers?

11 A.    Yes, your Honor.

12 Q.    Did you act with Vincent Applegate as a loan officer

13 at Selective Finance where he falsified loan applications

14 for actual buyers of properties?

15 A.    Yes, I did, your Honor.

16 Q.    Did you act with several residential real estate

17 appraisers who inflated and falsified their appraisals in

18 order to inflate the properties' market values and the

19 resulting mortgage loan amounts?

20 A.    Yes, I did, your Honor.

21 Q.    As to straw buyer transactions involving Gary Grieser,

22 using falsified pay stubs and Forms W-2 and fictitious

23 leases in connection with fraudulent loan applications, and

24 participating in the payment to certain straw buyers for the

25 use of their names and credit histories to secure mortgage

1    loans?

2    A.    Yes, I did, your Honor.

3    Q.    As to straw buyer transactions, paying Lawrence Cuzzi,

4    an associate of Gary Grieser, to locate straw buyers or

5    otherwise obtain the necessary names and credit histories

6    for use in the transactions?

7    A.    Yes, we did, sir.

8    Q.    Making payments to Anthony D'Apolito and Kellie

9    O'Neill, employees of Walsh Securities, for their assistance

10   in facilitating the processing of loans on these properties

11   and in creating false documents to further the loan

12   applications?

13   A.    Yes, I did, your Honor.

14   Q.    And agreeing and acting with one or more principals

15   and officers of Walsh Securities to falsify documents in

16   connection with loans and to conceal the true conditions of

17   properties from representatives of Walsh's warehouse credit

18   facility, among other activities?

19   A.    Yes, I did, your Honor.

20   Q.    As to the Information arising out of the Eastern

21   District of New York, as of late 1993, did you own

22   approximately eight properties located in Brooklyn and

23   Staten Island for which you lacked the funds to make the

24   required mortgage payments and to make repairs?

25   A.    Yes, your Honor.