# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | Civil Action No. 97-cv-3496 (DRD)(MAS) |
| Plaintiff, | Hon. Dickinson R. Debevoise, U.S.S.D.J. |
| v. | Hon. Michael A. Shipp, U.S.M.J. |
| CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, et al., | |
| Defendants. | |

---

**DEFENDANT COMMONWEALTH LAND TITLE INSURANCE COMPANY'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS, WITH PREJUDICE, THE BAD FAITH CLAIMS AT PARAGRAPHS 98 TO 100 OF THE FOURTH AMENDED COMPLAINT**

---

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant
  Commonwealth Land Title
  Insurance Company

Of Counsel
    David R. Kott
On the Brief
    David R. Kott
    Sara F. Merin

ME1 12757976v.1

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT.................................................................1

ARGUMENTS

PLAINTIFF'S BREACH OF THE DUTY OF GOOD FAITH
AND FAIR DEALING CLAIMS FAIL AS A MATTER OF LAW .......................2

     A.    BECAUSE WSI IS NOT ENTITLED TO SUMMARY
            JUDGMENT, ITS BAD FAITH CLAIMS REGARDING
            INSURANCE COVERAGE FAIL AS A MATTER OF LAW............2

     B.    WSI'S PROCESSING DELAY CLAIMS SIMILARLY FAIL...........6

     C.    WSI'S FIDUCIARY DUTY ARGUMENT IS IRRELEVANT
            AND SHOULD BE DISREGARDED................................................ 12

CONCLUSION      .................................................................................... 15

ME1 12757976v.1

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Am. Gen. Life Ins. Co. v. Ellman Sav. Irrevocable Trust*,
No. 08-cv-5364, 2010 U.S. Dist. LEXIS 133713 (D.N.J. 2010)..........................3

*Dare Invs., LLC v. Chicago Title Ins. Co.*,
No. 10-cv-6088(DRD), 2011 U.S. Dist. LEXIS 70080
(D.N.J. June 29, 2011) ....................................................................................3

*Enright v. Farm Family Cas. Ins. Co.*,
No. 03-cv-4850, 2005 U.S. Dist. LEXIS 37544 (D.N.J. Dec. 29, 2005) .............7

*Ketzner v. John Hancock Mut. Life Ins. Co.*,
118 Fed. App'x 594 (3d Cir. 2004)........................................................ 2, 5, 13

*New Jersey Title Ins. Co v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
No. 11-cv-0630 (D.N.J. Dec. 27, 2011)................................................................3

*NN&R, Inc. v. One Beacon Ins. Group*,
No. 03-cv-5011, 2006 U.S. Dist. LEXIS 43109
(D.N.J. June 26, 2006) ................................................................ 3, 6, 7, 12

*Polizzi Meats v. Aetna Life & Cas. Co.*,
931 F. Supp. 328 (D.N.J. 1996) ....................................................................3

*Tarsio v. Provident Ins. Co.*,
108 F. Supp. 2d 397 (D.N.J. 2000) ............................................................ 2, 3, 5

*United States v. Atul Constr. Co.*,
85 F. Supp. 2d 414 (D.N.J. 2000) ..................................................................3

**STATE CASES**

*Blake v. Bianchi*,
No. A-2607-09, 2010 N.J. Super. Unpub. LEXIS 3096
(App. Div. Dec. 27, 2010)............................................................................ 7, 12

ME1 12757976v.1

*Pickett v. Lloyd's,*
131 N.J. 457 (1993)............................................................... 2, 5, 7, 13

*Wood v. New Jersey Mfrs. Ins. Co.,*
206 N.J. 562 (2011)............................................................... 13

iii

## PRELIMINARY STATEMENT

This brief is submitted on behalf of Defendant Commonwealth Land Title Insurance Company ("Commonwealth") in further support of its motion for partial summary judgment seeking dismissal, with prejudice, of the bad faith claims asserted at paragraphs 98 to 100 of the Fourth Amended Complaint.[1]

The simple fact here is that because Plaintiff is not entitled to summary judgment on its substantive claims, its bad faith claims must fail as a matter of law. Moreover, Plaintiff's bad faith claims for nonpayment and an alleged delay of payment similarly fail because the extensive evidence of Plaintiff's involvement in the fraud constitutes, at the very least, a "fairly debatable" reason for the Title Insurance Defendants not paying Plaintiff's claims and a valid reason for any asserted delay in paying the claims.

Plaintiff's opposition papers misconstrue the bad faith standard applied in New Jersey, argue a series of irrelevant factual assertions to try to confuse a straightforward legal question, and attempt to impute fraudulent conduct to the Title Insurance Defendants despite such allegations being wholly absent from any one of Plaintiff's numerous complaints.  These irrelevant diversions should be disregarded, and summary judgment in Commonwealth's favor should be granted

---

[1] Commonwealth also adopts and incorporates all arguments within the reply brief submitted on January 13, 2012 by Defendants Fidelity National Title Insurance Co. of New York and Nations Title Insurance of New York, Inc.

- 1 -

on Walsh's bad faith claims, dismissing the claims in their entirety with prejudice.[2]

## ARGUMENTS

## PLAINTIFF'S BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING CLAIMS FAIL AS A MATTER OF LAW

**A.    Because WSI is Not Entitled to Summary Judgment, Its Bad Faith Claims Regarding Insurance Coverage Fail as a Matter of Law**

To have a cause of action for bad faith failure to pay an insurance claim, the insured must show that "(1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 Fed. App'x 594, 599, (3d Cir. 2004); *Pickett v. Lloyd's*, 131 N.J. 457, 473 (1993).  Plaintiff has not disputed that, under New Jersey law,

> [t]o establish a bad faith claim, plaintiff must be able to establish, as a matter of law, a right to summary judgment on the substantive claim; if plaintiff cannot establish a right to summary judgment, the bad faith claim fails.  In other words, *if there are material issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith.*

*Ketzner, supra*, 118 Fed. App'x at 599 (emphasis added) (citing *Pickett v. Lloyd's*, 131 N.J. 457, 473 (1993); *Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 400-

---

[2] At page 11 of its opposition brief, Plaintiff states that it incorporates, in opposition to the motion at hand, its moving brief in support of its motion for partial summary judgment and also incorporates its forthcoming reply brief. Commonwealth objects to Plaintiff's relying in any way on a brief that has not yet been submitted to the Court or served on the parties.

MEI 12757976v.1

01 (D.N.J. 2000); *Polizzi Meats v. Aetna Life & Cas. Co.*, 931 F. Supp. 328, 335

(D.N.J. 1996)); *Am. Gen. Life Ins. Co. v. Ellman Sav. Irrevocable Trust*, No. 08-

cv-5364, 2010 U.S. Dist. LEXIS 133713, *19-*20 (D.N.J. 2010). Indeed, this

Court has so held. *Dare Invs., LLC v. Chicago Title Ins. Co.,* No. 10-cv-

6088(DRD), 2011 U.S. Dist. LEXIS 70080, *34-*35 (D.N.J. June 29, 2011); *see

also New Jersey Title Ins. Co v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No.

11-cv-0630, 14 (D.N.J. Dec. 27, 2011) (citing *Dare* as "dismissing Plaintiff's bad

faith claim because Plaintiff could not prevail on summary judgment for the

underlying insurance claim. . .").

The cases cited by WSI in an attempt to cast doubt on this unquestioned

standard fail to do so.  For instance, while WSI highlights a statement by a court

within this District "doubt[ing] the wisdom" of the standard above, WSI fails to

fully quote the statement, in which the court applied the standard to grant the

insurer's motion for summary judgment on the bad faith claim: "[a]lthough the

Court doubts the wisdom of this standard, the New Jersey Supreme Court has

spoken" and "this Court, as a federal court sitting in diversity, must apply the

substantive law of New Jersey as determined by the state's highest court." *Tarsio,

supra*, 108 F. Supp. 2d at 401; *see also United States v. Atul Constr. Co.*, 85 F.

Supp. 2d 414, 420 (D.N.J. 2000) (applying New Jersey law and using the summary

judgment standard to analyze a bad faith claim); *NN&R, Inc. v. One Beacon Ins.*

- 3 -

*Group*, No. 03-cv-5011, 2006 U.S. Dist. LEXIS 43109, * 38 (D.N.J. June 26,

2006) (granting summary judgment to the insurer on the bad faith claim based on

denial of benefits and explaining, "[u]nder the 'fairly debatable' standard, a

claimant who could not have established as a matter of law a right to summary

judgment on the substantive claim would not be entitled to assert a claim for an

insurer's bad faith refusal to pay the claim[,]" quoting *Pickett*, *supra*, 131 N.J. at

473).

Here, as set forth in Commonwealth, Fidelity, and Nations' briefs in support

of partial summary judgment, Plaintiff is not entitled to summary judgment on its

coverage claim, because

    (1)    Plaintiff's officers and employees were involved in the fraud;

    (2)    The named insured's (NHF) officers and employees were
involved in the fraud;

    (3)    Coverage on title insurance claims is barred due to Plaintiff's
late notice; and

    (4)    Plaintiff has not shown damages on the policies.

(*See* Commonwealth's Brs. at documents 479, 480, 492; Fidelity and Nations' Brs.

at documents 477, 493; Fidelity and Nations' Jan. 13, 2012 Reply Br.; *see also*

Certification of Sara F. Merin in Support of Commonwealth's Reply Br. ("Merin

Reply Certif."), Ex. B: Conditions & Stipulations to ALTA Loan Policy (10-17-92)

issued by Commonwealth (the form "Conditions and Stipulations" pages were not

included with the Commonwealth title policy in the Shooman Certification).)  This

- 4 -

unavailability of summary judgment is even acknowledged by Plaintiff, as it only moved for summary judgment on a limited number of claims. (*See* WSI's Br. in Mot. for Partial Summ. J. [document 478-1].)

Plaintiff's extensive discussion in its brief (*see, e.g.,* pp. 2-9, 11-15) of three specific properties on which closing service letters and title insurance policies were issued is irrelevant to whether Plaintiff is entitled to summary judgment due to its and NHF's involvement in and knowledge of the fraud.[3] (*See* Commonwealth's Br. at document 492-1.) Thus, Plaintiff's discussion of these properties is of no moment, because no coverage exists due to WSI's involvement in and knowledge of the fraud and/or Plaintiff's late notice.[4]

In short, since summary judgment in WSI's favor is inappropriate, Walsh's bad faith claims against the Title Insurance Defendants should be dismissed. *See Pickett, supra,* 131 N.J. at 473; *Tarsio, supra,* 108 F. Supp. 2d at 401; *Ketzner,*

---

[3] WSI makes the bald assertion that the Title Insurance Defendants have admitted "that coverage was triggered under each of these clauses[,]" which it quotes from form ATLA title insurance policies. As WSI offers no support for this statement, it should be disregarded. WSI's later quotation of part of a statement by Fidelity's corporate representative, despite being cast as an admission by WSI, does not provide the definitive statement ascribed. (*See* Magnanini Certif., Ex. M at 99:19-100:9.)

[4] Because the discussion is irrelevant to the motion at hand, Commonwealth is not addressing a number of the policy-specific arguments made by WSI in its brief. This is not a tacit acceptance of WSI's arguments, an acknowledgement that the three discussed properties are appropriate exemplars for all of the properties at issue, or an admission that any of its uncited assertions are, in fact, true.

- 5 -

*supra,* 118 Fed. App'x at 599.

**B.    WSI's Processing Delay Claims Similarly Fail**

Just as WSI's bad faith claims related to payment under policies and closing

service letters must fail, so must its processing delay claims also fail.  First,

Plaintiff has not shown that it is entitled to summary judgment since coverage is

"fairly debatable": even if this Court finds that WSI has stated an issue of material

fact that the processing was delayed, any delay was not unreasonable in view of the

evidence of Walsh employees' and officers' involvement in the fraud.  Second,

Commonwealth's claims processing was not unreasonably delayed: WSI made its

first claims (under closing service letters *only*) on a limited number of properties

on July 28, 1997, Commonwealth timely responded and asked for additional

information (which was not provided), WSI sued Commonwealth just over three

months after its initial claims notice (and did not allege late payment at that time),

and Commonwealth then denied WSI's claims when it timely filed an answer

denying the allegations of the Complaint.

Where bad faith is alleged due to a delay in processing an insurance claim,

plaintiff must show "that no valid reasons existed to delay processing the claim and

the insurance company knew or recklessly disregarded the fact that no valid

reasons supported the delay." *NN&R, Inc., supra,* 2006 U.S. Dist. LEXIS 43109,

at * 38 (quoting *Pickett, supra,* 131 N.J. at 481).  The New Jersey Supreme Court

- 6 -

explained that the test applied to allegations of bad faith delay in processing claims

"appears to be essentially the same" as that applied to an alleged bad faith denial of

claims. *Pickett*, *supra*, 131 N.J. at 473-74. "[N]o liability can arise if the validity

of the claim is 'fairly debatable[.]'" *Blake v. Bianchi*, No. A-2607-09, 2010 N.J.

Super. Unpub. LEXIS 3096, *7 (App. Div. Dec. 27, 2010) (citing *Pickett*, *supra*,

131 N.J. at 473). Proof of "[n]egligence or mistake is not sufficient to show bad

faith." *Enright v. Farm Family Cas. Ins. Co.*, No. 03-cv-4850, 2005 U.S. Dist.

LEXIS 37544, *26 (D.N.J. Dec. 29, 2005). For example, in *Enright*, a court within

this district found that, where the insurance company responded to the first notice

of the claim within ten days and then was in frequent contact with the plaintiff for

the following year regarding specific claims, no bad faith delay in processing

claims existed. *See Enright, supra*, 2005 U.S. Dist. LEXIS 37544, at *30.

Here, the validity of WSI's claims is "fairly debatable" and valid reasons

supported the Title Insurance Defendants' timing in denying WSI's claims, so

WSI's bad faith processing claims must fail. *See Blake, supra*, 2010 N.J. Super.

Unpub. LEXIS 3096, at *7; *NN&R, Inc., supra*, 2006 U.S. Dist. LEXIS 43109, at *

38. No questions of fact exist that the Title Insurance Defendants had absolutely

"valid reasons to delay processing the claim." *See NN&R, Inc., supra*, 2006 U.S.

Dist. LEXIS 43109, at * 38. WSI's corporate witness, Robert Walsh, testified that

facts adduced and statements made in this litigation and in the related criminal

- 7 -

proceedings regarding the involvement of senior WSI management in the fraud were sufficient to create concern for a title insurer regarding payment of claims. (*See* Merin Reply Certif., Ex. A: Tr. of the Dep. of Robert Walsh (Sept. 30, 2011) at 577-96.) Specifically, Mr. Walsh admitted that newspaper articles regarding the fraud that were published in the *Asbury Park Press* and the *Star Ledger* in July 1997 suggested that Robert Walsh was personally involved in the fraud. (*See id.* at 581:12-583:1.) As a result of these articles, Mr. Walsh admitted that he thought it was "acceptable" for a title insurance company to want to know whether the senior management of WSI were aware of the frauds or were involved in the frauds before they became public, because the title insurance company was "looking to do [its] due diligence and understand." (*See id.* at 586:9-22.) Mr. Walsh also admitted that this case was stayed for a long period of time at the request of the United States Attorney, to permit criminal prosecutions related to the fraud. (*See id.* at 589:19-23; *see also* ECF Docket document 94, document 102 (the stay ran from May 26, 2000 to September 30, 2004).) Mr. Walsh further admitted that, in 2008, the U.S. Attorney suggested that Mr. Walsh was either involved in the frauds or aware of the frauds before they became public. (*See* Merin Reply Certif., Ex. A: Tr. of the Dep. of Robert Walsh at 595:8-14.) Mr. Walsh admitted that, earlier than 2008, a number of people involved in the fraud pled guilty to a variety of federal crimes associated with the fraud and that some of them pointed the finger at

- 8 -

Betty Ann DeMola and some pointed the finger at Mr. Walsh himself. (*See id.* at

595:16-596:25.) Given all of this information, Mr. Walsh testified as follows:

> Q.     And would you agree that it is reasonable for a title
> insurer to have concern about in this situation the senior
> management and shareholders of the company being
> involved?
>
> *          *          *
>
> A.     Yes.

(*Id.* at 597:1-7.) Further, Betty Ann DeMola, WSI's national sales manager, and

two WSI employees, Anthony D'Apolito and Kellie O'Neill, also pled guilty to

federal charges stemming from participation in the scheme. (*See* Certif. of Sara F.

Merin in Supp. of Commonwealth's Opp. Br. [documents 492-4 to 492-8], Ex. D:

Tr. of Plea Hearing, *U.S. v. DeMola* (Sept. 9, 2005); Ex. G: Tr. of Proceedings,

*U.S. v. King & O'Neill* (Oct. 29, 1999); Ex. BB: Tr. of Plea Hearing, *U.S. v.

D'Apolito* (Dec. 23, 1998).)

Further, no delay in processing can be claimed on the title insurance policy

claims as ***those claims were first made in July 2009*** in the Fourth Amended

Complaint. (*See* Fourth Am. Compl. (July 10, 2009) at Count V [document 302];

Third Am. Compl. (Jan. 28, 2005) at Count V [document 108].) Also of note, WSI

waited until filing its Fourth Amended Complaint to plead the existence of an

allegedly unreasonable delay in the processing of its claims. (*See* Fourth Am.

Compl. (July 10, 2009) at Count V [document 302]; Third Am. Compl. (Jan. 28,

- 9 -

2005) at Count V [document 108].)

A claim of delay in processing closing service letter claims is similarly specious, as Commonwealth timely responded to WSI's demand for coverage, seeking information through which the claims could be investigated, but when, as part of its investigation, Commonwealth requested information regarding WSI's knowledge of the fraud, instead of answering, WSI simply sued Commonwealth. As set out in Commonwealth's statement of material facts in support of this motion, WSI first made a claim to Commonwealth under the closing service letters by letter dated July 28, 1997, which was received by Commonwealth on August 12, 1997. (*See* Certif. of Sara F. Merin in Supp. of Commonwealth's Mots. for Partial Summ. J. ("Merin Nov. 10, 2011 Certif.") [document 480-4], Ex. F: Letter from Jeffrey M. Goodman of Latham & Watkins to Commonwealth Land Title Ins. Co. (July 28, 1997); Ex. A: Walsh Dep. 587:13-19.) By letter dated August 12, 1997, Commonwealth promptly responded to the July 28, 1997 letter from WSI that put it on notice of the claims, sought additional information, and explained that Commonwealth was unable to process WSI's claim at the time due to the July 28 letter containing no "detail as to how the closing attorneys violated the closing instructions, how such violation caused a loss to Walsh or the amount of the loss." (*See* Merin Nov. 10, 2011 Certif., Ex. G: Letter from Donna M. Sullivan of Commonwealth to Jeffrey M. Goodman of Latham & Watkins (Aug. 12, 1997).)

- 10 -

By letter dated September 5, 1997, Fred H. Schlesinger of WSI responded to Commonwealth's request for additional information by providing limited information on 113 mortgage loan files on which it alleged the closing attorneys committed fraud. (*See* Merin Nov. 10, 2011 Certif., Ex. H: Letter from Fred H. Schlesinger of Walsh to Donna M. Sullivan of Commonwealth (Sept. 5, 1997).) An additional request by Commonwealth, by way of its attorney David R. Kott of McCarter & English, was sent on September 29, 1997 seeking detailed information as to the individual loans, the individual frauds alleged, and the WSI employees with knowledge as to the alleged "acts, events and/or circumstances which [WSI] contend[s] gives rise to coverage and the date that the employee acquired the knowledge." (*See* Merin Nov. 10, 2011 Certif., Ex. I: Letter from David R. Kott of McCarter & English to Fred Schlesinger of Walsh (Sept. 29, 1997).)  WSI never responded to this letter in any way. (*See* Merin Reply Certif., Ex. A: Walsh Dep. 587:25-589:18.)  Instead, without ever explaining its knowledge as to the frauds, WSI filed the Amended Complaint, adding the title insurance companies as defendants in this matter. (*See* Merin Reply Certif., Ex. A: Walsh Dep. 587:25-589:18.)  The Amended Complaint alleged that WSI was entitled to coverage under the closing service letters. (*See* Am. Compl. ¶ 90 [document 3].) Commonwealth denied that allegation – and liability on the whole – in its February 13, 1998 Answer. (*See* Answer to Am. Comp. ¶ 90 [document 56].)  Thus, on

February 13, 1998, Commonwealth denied WSI's claims. (*See id.*)

In sum, in addition to the processing of the claims not having been delayed, if delay is found, valid reasons abounded for the Title Insurance Defendants to delay processing claims based on WSI's lack of cooperation and numerous allegations from multiple different sources that implicated WSI, its officers, and its employees in the fraud. *See NN&R, Inc.*, *supra*, 2006 U.S. Dist. LEXIS 43109, at * 39 (citing *Pickett*, *supra*, 131 N.J. at 481); *see also Blake*, *supra*, 2010 N.J. Super. Unpub. LEXIS 3096, at * 7. Thus, due to the abundance of valid reasons supporting the purported delay, WSI cannot prove that the Title Insurance Defendants "knew or recklessly disregarded the fact that no valid reasons supported the delay[.]" Commonwealth's motion for summary judgment should therefore be granted on any and all processing delay claims.

## C.   WSI's Fiduciary Duty Argument is Irrelevant and Should Be Disregarded

Claims by insureds alleging breach of fiduciary duty are the same as claims alleging breach of the implied covenant of good faith and fair dealing:

> Despite language in the case law referring to the relationship between the insurer and its insured as something akin to a "fiduciary relationship," it remains unmistakable that, at its core, a *Rova Farms* bad faith claim is a simple breach of contract claim, one that perforce must assert that, by failing in bad faith to compromise a claim within the policy limits prior to a verdict, the insurer has breached the implied contractual covenant of good faith and fair dealing. . . .

- 12 -

*Wood v. New Jersey Mfrs. Ins. Co.*, 206 N.J. 562, 577 (2011).

While *Wood* addressed *Rova Farms* bad faith claims, it is equally applicable

here.  For example, in *Pickett*, the terms "fiduciary duty" and "bad faith" were used

interchangeably in the court's explanation that first party claims for bad faith are

governed by the "fairly debatable" standard. *See Pickett, supra*, 131 N.J. at 466-

73.  Thus, in the insurance context, "breach of fiduciary duty" and "bad faith"

claims are identical. *See Pickett, supra*, 131 N.J. at 466-73.  Therefore, in order for

WSI to prevail on its claim that the Title Insurance Defendants breached a

"fiduciary duty," it must show bad faith: "the absence of a reasonable basis for

denying benefits of the policy and the defendant's knowledge or reckless disregard

of the lack of a reasonable basis for denying the claim." *Wood, supra*, 206 N.J. at

577; *Pickett, supra*, 131 N.J. at 473 (stating the quoted bad faith standard).

While *Wood* addressed *Rova Farms* As explained above, Plaintiff has no right to summary judgment, because it

was involved in the fraud.  Since plaintiff is not entitled to summary judgment, the

Title Insurance Defendants had a "fairly debatable" reason to deny WSI's claim,

and the Title Insurance Defendants are entitled to summary judgment on the issue

of bad faith. *See Ketzner, supra,* 118 Fed. App'x at 599.

If the Court finds that the standard for fiduciary duty is different than

described by the *Wood* court, Plaintiff's fiduciary duty arguments should still be

disregarded, because breach of fiduciary duty was never pled in any complaint.

- 13 -

This case is over 14 years old, and the complaint has been amended multiple times. The Fourth Amended Complaint contains bad faith claims against the Title Insurance Defendants but has no claims alleging a breach of fiduciary duty. Plaintiff cannot now raise a breach of fiduciary duty claim for the first time in its opposition to a motion for partial summary judgment.

Finally, if a fiduciary duty to settle claims existed, every time an insurer wrongfully – but in good faith – denied a claim, it would breach that duty. Plaintiff's allegation that the Title Insurance Defendants violated a fiduciary duty by refusing to settle claims – despite there being an issue of material fact as to WSI's liability and numerous questions of proof (as discussed at length in the Title Insurance Defendants' briefs in opposition to WSI's motion for partial summary judgment) – is simply untenable. [5]

---

[5] Additionally, the Title Insurance Defendants have never been named as "RICO Defendants" in any Complaint nor has WSI alleged they played any part in the fraudulent scheme; thus, any such allegations are being raised for the first time and should be disregarded. (*See* Fourth Am. Compl. [document 302].)  Further, the facts asserted in support of WSI's fiduciary duty argument are devoid of citation and should also be disregarded. (*See* WSI Br. 19-20.)

MEI 12757976v.1

## CONCLUSION

In sum, due to WSI's involvement in the fraud coverage of WSI's claims was "fairly debatable" and WSI is not entitled to summary judgment. Because WSI is not entitled to summary judgment on its coverage claims, the Title Insurance Defendants are entitled to summary judgment on WSI's bad faith claims. Commonwealth's motion for partial summary judgment seeking dismissal, with prejudice, of WSI's bad faith claims should therefore be granted.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

Attorneys for Defendant
Commonwealth Land Title
Insurance Company

By:  *s/David R. Kott*
David R. Kott
A Member of the Firm

Dated:  January 13, 2012

- 15 -

ME1 12757976v.1