# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, et al., <br><br> Defendants. | Civil Action No. 97-cv-3496 (DRD)(MAS) <br><br> Hon. Dickinson R. Debevoise, U.S.S.D.J. <br> Hon. Michael A. Shipp, U.S.M.J. |

## DEFENDANT COMMONWEALTH LAND TITLE INSURANCE COMPANY'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING PLAINTIFF'S CLAIMS FOR DAMAGES RESULTING FROM LOSS OF MERGER OR FOR ITS DIMINUTION IN VALUE

                                                          **McCARTER & ENGLISH, LLP**
                                                          Four Gateway Center
                                                          100 Mulberry Street
                                                          Newark, New Jersey 07102
                                                          (973) 622-4444
                                                          Attorneys for Defendant
                                                            Commonwealth Land Title
                                                            Insurance Company

Of Counsel
    David R. Kott
    Steven A. Beckelman

On the Brief
    David R. Kott, Steven A. Beckelman,
    & Sara F. Merin

ME1 12761460v.2

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENTS ................................................................................................................1

I.   PLAINTIFF LACKS STANDING TO ASSERT A CLAIM FOR DAMAGES FROM LOSS OF THE MERGER...............................................1

II.  PLAINTIFF CANNOT RECOVER DAMAGES FOR LOSSES THAT WERE NOT FORESEEABLE AT THE TIME THE CLOSING SERVICE LETTERS WERE ISSUED ........................................................................6

   A. At the Time the Closing Service Letters Were Issued, Loss of Merger and/or Diminution of Value Damages for WSI Were Not Reasonably Foreseeable as a Result of any Possible Breach, Precluding Recovery ..........7

   B. Eventual Liability to Third Parties Does Not Obviate the Foreseeability Requirement................................................................................................ 14

CONCLUSION ............................................................................................................. 15

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*American Title Ins. Co. v. Variable Annuity Life Ins. Co.,*
1996 Tex. App. LEXIS 4243 (Tex. App. Sept. 26, 1996) .................................. 10

*Brictson v. Woodrough,*
164 F.2d 108 (8th Cir. 1947) ................................................................................ 4

*Brown v. South Carolina Ins. Co.,*
324 S.E.2d 641 (S.C. App. 1984) ....................................................................... 10

*In re Cendant,*
166 F. Supp. 2d 1 (D.N.J. 2001) ................................................................... 14, 15

*In Re Dein Host, Inc.,*
835 F.2d 402 (1st Cir. 1987) ................................................................................ 4

*Design Strategies, Inc., v. Davis,*
355 F. Supp. 2d 715 (S.D.N.Y. 2005) ............................................................... 4, 5

*Donovan v. Bachstadt,*
91 N.J. 434 (1982) ........................................................... 7, 9, 10, 11, 14, 15

*Exxon Co., U.S.A. v. Sofec, Inc.,*
517 U.S. 830 (1996) ............................................................................................. 8

*Harvey v. General Tire & Rubber Co.,*
153 Cal. App. 1015, 200 Cal. Rptr. 722 (Cal. App. 1984) ................................. 13

*Hayseeds, Inc. v. State Farm Fire & Cas.,*
352 S.E.2d 73 (W. Va. 1986) ............................................................................. 10

*Howard v. Am. Nat'l Fire Ins. Co.,*
187 Cal. App. 4th 498 (Cal. App. 2010) ............................................................. 10

*Kauffman v Dreyfus Fund,*
434 F.2d 727 (3d Cir. 1970) ................................................................................. 4

*Maine Rubber Int'l v. Environ. Mgmt. Group, Inc.,*
324 F. Supp. 2d 32 (D. Me. 2004) ................................................................. 8, 12

*Moran Foods, Inc. v. Mid-Atl. Mkt. & Dev. Co.*,
  476 F.3d 436 (7th Cir. 2004) .................................................................. 8, 12

*Nisselson v. Lernout*,
  No. 03-10843, 2004 WL 3953998 (D. Mass 2004) ........................................ 5

*Pacific Employers Insurance Co. v. Clean Harbors Environmental Services, Inc.*,
  2011 U.S. Dist. LEXIS 107987 (N.D. Ill. Sept. 21, 2011) ............................... 13

*Pickett v. Lloyd's*,
  131 N.J. 457 (1993) ................................................................................ 9

*Potomac Aviation, LLC v. Port Authority of N.Y. and N.J.*,
  413 N.J. Super. 212 (App. Div. 2010) ........................................................ 9

*820 Ridge Road Assocs., LLC v. Dow Jones & Co.*,
  No. 05-cv-4320, 2008 U.S. Dist. LEXIS 64000 (D.N.J. July 31, 2008) ........... 11

*Strougo v. Bassini*,
  282 F.3d 162 (2d Cir. 2002) .................................................................... 3

*Totaro, Duffy, Cannova and Co., L.L.C. v. Lane, Middleton & Co.*,
  191 N.J. 1 (2007) ................................................................................... 8

*Trico Equipment, Inc. v. Manor*,
  No. 08-cv-5561, 2011 U.S. Dist. LEXIS 17936 (D.N.J. Feb. 22, 2011) ..... 13, 14

*V.A.L. Floors, Inc. v. Westminster Communities, Inc.*,
  355 N.J. Super. 416 (App. Div. 2002) ...................................................... 14

**OTHER AUTHORITIES**

9A Carol A. Jones, *Fletcher Cyclopedia Corporations* §4469 (2008 ed.) ................ 3

*Restatement (Second) of Contracts* § 351 (1979) ........................................ 7, 8, 12

ME1 12761460v.2

PRELIMINARY STATEMENT

Defendant Commonwealth Land Title Insurance Company ("Commonwealth") submits this reply brief in further support of its motion for partial summary judgment seeking dismissal, with prejudice, of Plaintiff Walsh Securities, Inc.'s ("Plaintiff" or "WSI") claims for damages resulting from the loss of a merger with Resource Bancshares Mortgage Group, Inc. ("RBMG") or any claims for diminution of Plaintiff's value. Plaintiff lacks standing to pursue a claim for damages, because any damages would have inured to another company's shareholders, not to the corporation itself. Plaintiff is also precluded from recovering damages for loss of the merger with RBMG and/or diminution in value, because any such damages were not foreseeable at the time each individual closing service letter was issued.

ARGUMENTS

I. PLAINTIFF LACKS STANDING TO ASSERT A CLAIM FOR DAMAGES FROM LOSS OF THE MERGER

The documentary evidence proves that the Plaintiff was not harmed by the failure of the merger. Plaintiff was to receive nothing from the merger. The only people who could have been deprived of any benefit were the shareholders of Walsh Holdings Co., Inc. ("Walsh Holdings"), the corporate parent of Plaintiff. Therefore Plaintiff lacks standing to assert a claim for damages from termination of the Agreement of Merger with RBMG.

1

ME1 12761460v.2

Robert Walsh and other members of the Walsh family (including his sister, Betty Ann DeMola) owned the shares of Walsh Holdings. (*See* Certif. of Sara F. Merin in Support of Commonwealth's Reply Brs. ("Merin Reply Certif."), Ex. C: Irrevocable Proxy Agreement, Recitals One and Two). The Plaintiff is not a party to the merger agreement. The actual party is Walsh Holdings (which is not a party to this action).[1] (*See* Merin Nov. 10, 2011 Certif., Ex. D: Agreement of Merger at 1 (listing parties to the Agreement as: RBMG, Carolina Merger Sub, Inc, "Walsh Holding Co., Inc., a Delaware Corporation ("WSI")" and Robert Walsh).) The Agreement of Merger provided that Walsh Holdings would merge with and continue as a subsidiary of RBMG. (*See id.* at § 1.02.) The Agreement of Merger also shows that the parties who would receive consideration were the shareholders of Walsh Holdings, who were given the right to exchange their Walsh Holdings shares for shares of RBMG. (*See id.* at §§ 2.02, 2.05 ("Such holder shall be entitled upon such surrender to receive in exchange therefor a certificate or certificates representing the number of full shares of RBMG Common Stock (together with the applicable Escrow Stock Rights) into which the Shares

---

[1] Even if the Plaintiff were a party to the Agreement of Merger (as it erroneously insinuates), it would lack standing to assert the claims of shareholders for the reasons set forth herein. The actual identity of the parties confirms that the termination of the Agreement of Merger could have no effect of the Plaintiff, as the Agreement of Merger did not deal with any rights or property of the Plaintiff.

2

ME1 12761460v.2

theretofore represented by the certificate or certificates so surrendered shall have been converted in accordance with the provisions of Section 2.02 hereof . . .").) Thus the Agreement of Merger would have conferred certain rights and benefits on the Walsh Holding Co., Inc. shareholders. Nothing in the Agreement of Merger would give any rights or consideration to Plaintiff.[2]

Plaintiff's opposition relies on cases stating that corporations, not the shareholders, have standing to seek damages for harm to corporations. That is true but irrelevant here. Injury from failure of a sale of stock or a merger as an exchange of stock in the target for consideration is injury to the shareholders, so the corporation lacks standing to sue. As stated in *Strougo v. Bassini*, 282 F.3d 162, 171 (2d Cir. 2002): "Where shareholders suffer an injury that does not stem from an injury to the corporation's business or property, by contrast, the corporation lacks standing to sue. . . ." As recognized in a leading corporate treatise: "[a] corporation ordinarily cannot sue where the subject of the cause of action are rights belonging to [] shareholders, or to the corporation's officers." 9A

---

[2] Plaintiff admits that the shareholders were the parties it claims were harmed, not the corporation itself. The Fourth Amended Complaint (¶ 38) refers to a loss of profits, "including sale of the company for more than $400 million." But Plaintiff obviously could not have obtained a profit from sale of its parent's shares. Further, in Plaintiff's opposition brief Plaintiff states: "Of course, the damages to WSI here are directly akin to lost profits – the lost business opportunity would have resulted in the hundreds of millions *to the company's shareholders* based on the number of shares available and the strike price of the stock." (WSI Br. 11 (italics supplied).)

3

Carol A. Jones, *Fletcher Cyclopedia Corporations* §4469 (2008 ed.).

None of the decisions relied on by Plaintiff relate to the merger or sale of corporate stock rather, they involved injury to the corporation. *Kauffman v Dreyfus Fund*, 434 F.2d 727 (3d Cir. 1970), involved claims of shareholders in mutual funds that certain mutual funds, investment advisors and their directors had harmed the funds by a conspiracy to fix fees and monopolize the management market. The rule stated was that the shareholder has no standing where "the only injury is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets." *Id.* at 732. Here, by contrast, the termination of the Agreement of Merger had no effect on the corporate assets of the Plaintiff. Similarly, *In Re Dein Host, Inc.*, 835 F.2d 402 (1st Cir. 1987), involved a shareholder of a landlord corporation asserting claims of the corporation with respect to a bankrupt tenant. *Brictson v. Woodrough*, 164 F.2d 108 (8th Cir. 1947), involved claims of a conspiracy to disseminate negative information about the corporation.

By contrast, *Design Strategies, Inc., v. Davis*, 355 F. Supp. 2d 715 (S.D.N.Y. 2005), holding that the shareholders, not the corporation, have standing to assert a claim for damages from the termination of an agreement for sale of a corporation's stock, is directly on point. The court in *Design Strategies* distilled the key question in discerning if a corporation has standing for damages such as

4

those sought here: "[t]he important point for standing purposes is whether or not Design was a party to the proposed sale such that the failure of the sale resulted in a harm to it." *Id.* at 718 n.3.

The same rule applies with respect to a merger involving an exchange of stock as in a stock sale. In *Nisselson v. Lernout*, No. 03-10843, 2004 WL 3953998 (D. Mass 2004), Dictaphone merged into a subsidiary of Lernout & Hauspie NV ("L&H"). *Id.* at *6. The merger was effected by an exchange of Dictaphone stock for L & H stock. *Ibid.* Shortly thereafter, the shares of L & H became worthless as the result of a fraud. *Id.* at *7. Nisselson as Trustee of the Dictaphone Litigation Trust sued SG Cowen Securities ("Cowen"), claiming that Cowen participated in the scheme and defrauded Dictaphone. *Id.* at *8. Cowen moved to dismiss, asserting that, since there was no asset purchase as part of the merger, only the shareholders and not the corporation had standing. *Id.* at *9. The court agreed that *only* the shareholders had standing and dismissed the Trustee's action. *Id.* at *19.

The Agreement of Merger provided for an exchange of Walsh Holding shares for RBMG shares. (*See* Merin Nov. 10, 2011 Certif., Ex. D: Agreement of Merger.) Therefore, as in *Nisselson*, the plaintiff corporation has no claim for the loss of the value of the merger. *See Nisselson, supra,* 2004 WL 3953998, at *19.

## II. PLAINTIFF CANNOT RECOVER DAMAGES FOR LOSSES THAT WERE NOT FORESEEABLE AT THE TIME THE CLOSING SERVICE LETTERS WERE ISSUED

Even if Plaintiff had standing to bring a claim for damages arising from the failure of the merger, which it does not as shown above, summary judgment against WSI is still appropriate for another wholly independent reason – loss of merger and/or diminution in value damages were not and could not have been foreseeable to the Title Insurance Defendants at the time they issued individual closing service letters, each of which related to a specific property and were issued to an entity other than WSI, National Home Funding ("NHF"). Further, the cases cited by WSI are irrelevant to the question before this Court: whether damages resulting from the loss of a merger with RBMG and/or any claims for diminution in WSI's value were foreseeable to the Title Insurance Defendants at the time the closing service letters were issued to NHF. This remains the sole question at issue despite WSI's dogged focus in its brief on valuation and questions of proof as to the amount of alleged damages.[3] In short, loss of merger and/or diminution in

---

[3] For this reason, the argument at Point I(C) of WSI's brief, is irrelevant. Despite its heading, WSI's Point I(C) does not address foreseeability, but instead addresses the availability, in general, of diminution-in-value damages and cites no New Jersey state or federal (or Third Circuit) law in support of its argument. (*See* WSI Br. 14-16.) Here, the losses for which WSI claims damages were not foreseeable, so the question of calculating diminution-in-value damages need never be reached.

6

value damages were not foreseeable at the time of entry into the contracts.[4]

A.  **At the Time the Closing Service Letters Were Issued, Loss of Merger and/or Diminution of Value Damages for WSI Were Not Reasonably Foreseeable as a Result of any Possible Breach, Precluding Recovery**

WSI's claim for damages for loss of the Kingdom was not foreseeable at the time closing service letters were issued to cover the finite risk of misappropriation of proceeds in ordinary low six figure residential mortgage transactions. WSI does not dispute that, under New Jersey law, a "defendant is not chargeable for loss that he did not have reason to foresee as a probable result of the breach *when the contract was made*." *Donovan v. Bachstadt*, 91 N.J. 434, 444 (1982) (emphasis added); *Restatement (Second) of Contracts* § 351 (1979). A plaintiff bears the burden of proving, "by a preponderance of the evidence, that the losses it sought to recover were 'a reasonably certain consequence of the breach.'" *Totaro, Duffy, Cannova and Co., L.L.C. v. Lane, Middleton & Co.*, 191 N.J. 1, 15 (2007). This

---

[4] WSI's statement that WSI was insured "through closing protection letters (CPLs) which are part of the title insurance policy and directly promise that the insured, WSI, is to be reimbursed for all losses incurred that are as a result of the closing attorney's fraud" (*see* WSI Br. 3) is incorrect on a number of grounds. (1) Closing service letters are *not* part of a title insurance policy; they require a separate premium, are issued at a separate time, and offer coverage that is separate and apart from policy coverage. (*See, e.g.* Magnanini Certif, Ex. A-3: Commonwealth Closing Service Letter; Ex. B: Tr. of Dep. of Donna Sullivan (May 27, 2010) 55 ($25 is charged for a closing service letter), 75-77 (closing service letters and title policies are not issued at the same time and provide separate coverage).) (2) Coverage under the closing service letters issued to NHF was expressly limited by the terms of the letters and New Jersey's common law. (*See* Commonwealth's Opp. Br. [document 492-1]; Fidelity & Nations' Opp. Br. [document 493].)

7

"requirement of foreseeability is a more severe limitation of liablity than is the requirement of substantial or 'proximate' cause in the case of an action in tort or for breach of warranty." *Restatement (Second) of Contracts* § 351 cmt. a; *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840 (1996) (same). Further, even if this court were to find that the damages claimed by WSI were foreseeable at the time each closing service letter was entered into by NHF, "[i]t is not always in the interest of justice to require a party in breach to pay damages for all of the foreseeable loss he has caused. . . . One such circumstance is an extreme disproportion between the loss and the price charged by the party whose liability for that loss is in question. The fact that the price is relatively small suggests that it was not intended to cover the risk of such liability." *Restatement (Second) of Contracts* § 351 cmt. f; *see also Maine Rubber Int'l v. Environ. Mgmt. Group, Inc.*, 324 F. Supp. 2d 32, 36 (D. Me. 2004) (stating "the low contract price for performing the site assessment, $1,900, suggests that the parties never contemplated the risk of liability for lost profits, here $486,600" and finding loss of profit damages not recoverable due to the absence of evidence that those damages were contemplated at the time of entry into the contract or any evidence that such damages would generally be expected); *Moran Foods, Inc. v. Mid-Atl. Mkt. & Dev. Co.*, 476 F.3d 436, 439-40 (7th Cir. 2004) (finding losses unforeseeable based on a summary judgment record and noting "[g]enerally . . . the lower the insurance

8

premium the narrower the coverage of the policy"). Foreseeabilty is an entirely appropriate question for a summary judgment motion; for example, the seminal New Jersey decision on foreseeablity of contract damages, *Donovan v. Bachstadt*, was a summary judgment determination. *See Donovan, supra*, 91 N.J. at 437-39.[5]

Here, WSI pins its argument on the Title Insurance Defendants having supposedly acted in "bad faith" in refusing its demands for coverage under the closing service letters and focuses any foreseeability analysis on the time of the alleged breach, as opposed to the time of entry into the contracts. However, only where it is found that an insurer breached an insurance contract in bad faith does this inquiry shift from what was foreseeable at the time of the contract to what was foreseeable at the time of the breach. *Pickett v. Lloyd's*, 131 N.J. 457, 475 (1993). And, as shown in Commonwealth's briefs in support of its motion for partial summary judgment on WSI's bad faith claims, bad faith simply does not exist here.[6] The cases cited by WSI in support of its argument that "failure to pay on an

---

[5] WSI's citation of *Potomac Aviation, LLC v. Port Authority of N.Y. and N.J.*, 413 N.J. Super. 212, 225 (App. Div. 2010), for the statement that "[f]oreseeability is an issue usually reserved for the jury" has no bearing on the foreseeability analysis here, as (1) *Potomac Aviation* was a tort matter and (2) the court in that case reached the question of foreseeability, finding that the injury was not foreseeable and affirming the trial court's decision on a summary judgment motion below. *See id.* at 217, 225, 227-28.

[6] WSI's assertion that the closing service letters do not contain any relevant exclusions is incorrect. As explained in Commonwealth's brief in opposition to

9

insurance contract *when coverage is clearly triggered* may warrant consequential damages" – none of which involve the application of New Jersey law – all address bad faith and are therefore irrelevant to the foreseeability analysis here.[7] (*See, e.g.,* WSI Br. 8-9.) The sole question here is application of the standard contractual principle articulated in *Donovan* and the Restatement: what loss the Title Insurance Defendants had "reason to foresee as a probable result of the breach *when the contract was made*[,]" *Donovan, supra,* 91 N.J. at 444.

WSI's repeated reference to New Jersey's "flexible appoach to contract

---

WSI's motion for partial summary judgment, the closing service letters do not cover damages from a fraud in which WSI, its officers, and employees participated and of which they had knowledge.

[7] *Howard v. Am. Nat'l Fire Ins. Co.,* 187 Cal. App. 4th 498 (Cal. App. 2010), which involved third-party coverage, is cited for the proposition that an insurer denies coverage at its own risk and can be held liable for the detriment caused by non-payment, even if the denial is not baseless. (*See* WSI Br. 8.) However, *Howard* states that the standard applied in third party coverage disputes is not the same as the standard applied in first party coverage disputes (which is what exists here under the closing service letters). *Howard, supra,* 187 Cal. App. 4th at 529-30 (noting, "[i]n first party cases, where payment is sought for the insured's direct losses, an insurer may raise a reasonable dispute over coverage without being guilty of bad faith"). Similarly, *Brown v. South Carolina Ins. Co.,* 324 S.E.2d 641, 647 (S.C. App. 1984), involves a third party claim on which an insurer refused to defend. *Id.* at 646-47. In *American Title Ins. Co. v. Variable Annuity Life Ins. Co.,* 1996 Tex. App. LEXIS 4243 (Tex. App. Sept. 26, 1996), plaintiff insurer was adjudicated by the court to have breached the closing service letter as a matter of Texas law. *See id.* at *1-*15. Finally, *Hayseeds, Inc. v. State Farm Fire & Cas.,* 352 S.E.2d 73 (W. Va. 1986), an arson case, does not address foreseeability and rejects any bad faith analysis, instead awarding attorneys fees and consequential damages as a matter of West Virginia law whenever the insured prevails in a suit against its insurance company. *See id.* at 80.

10

Case 2:97-cv-03496-DRD-JAD   Document 501-1   Filed 01/13/12   Page 15 of 19 PageID: 9586

damages," also has nothing to do with this threshold foreseeabilty inquiry. (*See, e.g.* WSI Br. 9.) Only after a plaintiff shows that a loss was foreseeable as a reasonably certain consequence of a breach, does flexibility enter the calculus: "the proper elements of damage [] depend upon the particular circumstances surrounding the transaction, especially the terms, conditions, and nature of the agreement." *See Donovan, supra,* 91 N.J. at 445-46, *820 Ridge Road Assocs., LLC v. Dow Jones & Co.*, 2008 U.S. Dist. LEXIS 64000, *13 (D.N.J. July 31, 2008).

Each closing service letter is an individual contract, and Commonwealth is only chargeable for losses that it had "reason to foresee as a probable result of the breach" of each individual closing service letter at the time that individual, property-specific contract was made. *See ibid.* As the closing service letters were issued on single properties over the course of a two-year period for amounts that generally were between $100,000 and $200,000 (*see, e.g.,* Magnanini Certif. in Supp. of WSI's Partial to Dismiss, Ex. A [documents 478-6 to -19]) for a fee of $25 per letter (*see id.* at Ex. B: Sullivan Dep. at 55 ($25 is charged for a closing service letter)) and were limited to "actual loss incurred by you in connection with that closing" (*see, e.g.,* Fourth Am. Compl, Ex. B at 1, *see also id.* at 2, ¶ f (containing further limitations)), it was not foreseeable at the time each contract was entered into that a breach of any one of those closing service letters – all of which were issued to NHF, as opposed to WSI – could cause the loss of merger

11

ME1 12761460v.2

and/or diminution in value damages now claimed by WSI (*see, e.g.* Fourth Am. Compl., Exs. A, B (sample closing service letters, all issued to NHF)). *See Maine Rubber Int'l, supra,* 324 F. Supp. 2d at 36. Further, NHF sold mortgages to companies other than WSI, so the Title Insurance Defendants had no way of foreseeing the damages now sought by WSI based on a subset of those closing service letters. (*See* Merin Reply Certif., Ex. D: Tr. of Dep. of Robert Skowrenski (May 25, 2010) at 108.) There are simply no facts in the record that supports the Title Insurance Defendants reasonably foreseeing, at the time of entry into the closing service letters, that a breach of those contracts would cause WSI, asserted to have been at the time a multi-million dollar corporation (*see* Fourth Am. Comp. ¶ 65), to fail as an entity. Further, those losses are in "extreme disproportion" to the price charged for each closing service letter, indicating that the Title Insurance Defendants did not contemplate the potential of a claim for hundreds of millions of dollars arising from the closing service letters. *See Restatement (Second) of Contracts* § 351 cmt. f; *Maine Rubber Int'l, supra,* 324 F. Supp. 2d at 36; *Moran Foods, Inc., supra,* 476 F.3d 436, 439-40 (7th Cir. 2004).

Moreover, WSI's argument – bolstered by very limited citation to the record – that Commonwealth was somehow deficient in its investigation of WSI's claims and that the Title Insurance Defendants' "obligations were never really taken seriously by them" is irrelevant to foreseeability ***and*** simply incorrect.

12

ME1 12761460v.2

Commonwealth timely and reasonably responded to WSI's claims. (*See* Opening Bad Faith Br. [document 480]; Jan. 13, 2012 Reply Br. Regarding Bad Faith.)

Similarly, WSI's attempt to tie together its misstatement of the foreseeability analysis with its incorrect statement that no reasonable dispute exists over coverage (thus, the denial was in bad faith) fails. The additional cases cited in support of WSI's premise that the denials of coverage "necessitate[d]" consequential damages again incorrectly focus on bad faith, do not apply New Jersey law, and do not offer the support indicated.[8] The New Jersey cases cited in support of WSI's argument that foreseeability "takes into account lost profits as consequential damages" are also unavailing, as they are irrelevant to the threshold inquiry of whether such damages were foreseeable. *Trico Equipment, Inc. v. Manor,* No. 08-cv-5561, 2011 U.S. Dist. LEXIS 17936, (D.N.J. Feb. 22, 2011), contains no foreseeability analysis but instead discusses the valuation of lost profit damages (not the availability thereof) and concluded with the court's denying plaintiff's motion for

---

[8] *Pacific Employers Insurance Co. v. Clean Harbors Environmental Services, Inc.,* 2011 U.S. Dist. LEXIS 107987, *4 (N.D. Ill. Sept. 21, 2011), discusses the application of an Illinois statute under which "attorneys fees and other damages" are permitted when an insurer denies a claim in bad faith, but also notes that no such damages are available when the insurer acts with reasonable cause, and, on the facts of that case – which focused on defenses presented to the court at trial – refused to award damages. *See id.* at *4-*7. Similarly inapplicable, in *Harvey v. General Tire & Rubber Co.,* 153 Cal. App. 1015, 200 Cal. Rptr. 722, 730 (Cal. App. 1984), the California court found that an insurer's bad faith conduct negated a mandatory arbitration clause in a health insurance contract. *See id.* at 730-31.

13

summary judgment on damages. *See id.* at *7, *30-*34. *V.A.L. Floors, Inc. v. Westminster Communities, Inc.*, 355 N.J. Super. 416 (App. Div. 2002), relates solely to the standard for recovering lost profits and again never addresses the threshold question in the case at hand: the foreseeability of the alleged losses. *See id.* at 423, 425. Thus, WSI has not shown an issue of material fact as to whether it is entitled to lost merger and/or diminution of value damages.

### B.  Eventual Liability to Third Parties Does Not Obviate the Foreseeability Requirement

Despite WSI's argument, WSI's subsequent obligation to repurchase certain loans from third parties does not automatically rewrite the closing service letters as third party coverage or trigger consequential damages. Foreseeability remains the key inquiry. Although not included in WSI's quotation of *In re Cendant*, 166 F. Supp. 2d 1, 11 (D.N.J. 2001), the court applied the foreseeability standard in refusing to dismiss claims alleging an injury as a result of an accountant's failure to review a public company's financial statements:

> Liability of a corporation to purchasers of its shares naturally arises from the breach of an accountant's duty of due care to the corporate client in connection with public offerings. The effect of Peat Marwick's opinion on those purchasers was undoubtedly contemplated by the parties when the contract was made. That liability . . . is certainly an injury to the corporation and foreseeable to Peat Marwick.

*Id.* at 11. Thus, the discussion in *In re Cendant* utilizes the same foreseeability

standard applied in *Donovan*; the fact that the insured may become liable to a third party is irrelevant unless that liability was reasonably foreseeable "at the time the contract was made." *See ibid.*; *Donovan*, *supra*, 91 N.J. at 444. Here, any liability incurred by WSI to third parties based on the fraudulent loans was a not foreseeable result of a breach at the time of entry into each closing service letter.[9]

## CONCLUSION

For the foregoing reasons and the reasons set forth in Commonwealth's opening brief, Commonwealth's motion for partial summary judgment dismissing Walsh's claims for damages stemming from its loss of the merger with RBMG and/or its diminution in value should be granted in its entirety.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

Attorneys for Defendant
  Commonwealth Land Title
  Insurance Company

By:  *s/David R. Kott*
     David R. Kott
     A Member of the Firm

Dated: January 13, 2012

---

[9] Plaintiff's assertion that the alleged breach "triggered liability" to third parties is also irrelevant and erroneous. WSI's liability to third parties was triggered by its resale with recourse of the loans and its participation in and knowledge of the fraudulent scheme. WSI's own failure to respond to Commonwealth's September 29, 1997 letter seeking information regarding the claim-specific facts of WSI's losses and WSI's employees' knowledge of the fraud was a cause of the denial of coverage. (*See*, *supra*, Point II(A).) WSI's discussion of *Vision Mortgage* also requires no response, as Commonwealth's observation that the principles applied in *Vision* are consistent with New Jersey's foreseeability analysis is not challenged.