# EXHIBIT A

```
                           IN THE UNITED STATES DISTRICT COURT
 1                         FOR THE DISTRICT OF NEW JERSEY
                           CIVIL ACTION NO. 97-3407 (DRD)
 2

 3
     WALSH SECURITIES, INC.,        :
 4                                  :
                  Plaintiff,        :   DEPOSITION UPON
 5                                  :   ORAL EXAMINATION
          v.                        :        OF
 6                                  :   ROBERT WALTER
     CRISTO PROPERTY MANAGEMENT,    :   SKOWRENSKI, II
 7   LTD., et al.,                  :
                                    :
 8                Defendants.       :
     - - - - - - - - - - - - - - - -
 9
                    T R A N S C R I P T  of the
10
     stenographic notes of STANLEY B. RIZMAN, a Notary
11
     Public and Certified Shorthand Reporter of the State
12
     of New Jersey, Certificate No. XI00304, taken at the
13
     offices of Manning, Caliendo & Thomson, PA, 36 West
14
     Main Street, Freehold, New Jersey, on Tuesday, May
15
     25, 2010, commencing at 10:12 a.m.
16
```

COPY



Rizman
Rappaport
Dillon&Rose, LLC
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com

50

1  Q  Which individuals?
2  A  The loan originators.
3  Q  How would the loan originators make
4  that decision? Why would they choose Walsh? Why
5  would they choose Aimes?
6  A  That was one of the responsibilities of
7  the wholesale Account Executive. There was an
8  Anthony D'Apolito for every one of these lenders
9  that would come and solicit my guys' business.
10 Either through the combination of the
11 relationship -- if pricing, for example, fit.
12 Either doing business. They would make a selection.
13 Q  Did Walsh have any programs that were
14 unique to Walsh?
15 A  I don't recall particularly the
16 program.
17 Q  Were all of Kane's loans sold to Walsh?
18 A  I don't believe all of them. No.
19 Q  Where else were Kane's loans sold to?
20 A  I don't recall who. I believe there
21 was a couple that went to or some that went to
22 Coastal, though.
23 Q  The "Coastal" you're referring to is
24 not the title insurance agent?
25 A  Yes. Correct.

51

1  Q  Another entity that happens to be
2  called Coastal?
3  A  The wholesale lender.
4  Q  How did National Home Funding make
5  money on loans it sold to Walsh? Sorry. Shall I
6  call it "broker"?
7  A  How we make money in a scenario like
8  that. A typical wholesale-retail relationship. We
9  are giving pricing in a wholesale model that is
10 marked up, for all intents and purposes, and that
11 spread is our profit.
12 Q  With respect to Walsh in particular,
13 were the financial incentives on National Home
14 Funding to sell somebody a loan that was more
15 expensive than the person needed?
16 A  No.
17 Q  Why do you say that?
18 A  It was no different than any of the
19 lenders in the sub-prime world. I don't
20 differentiate them. It was just sub-prime paper.
21 Q  If a particular lender -- withdrawn.
22 I'm sorry. If a particular borrower --
23         MR. MANNING: I have to get that call.
24 Sorry.
25         (Recess.)

52

1  BY MR. KOTT:
2  Q  My words might be unartful. Let me
3  tell you what I'm trying to ask you. If a lender --
4  withdrawn.
5         If a broker came in and he would
6  qualify for one type of loan but National Home
7  Funding put him in a more expensive loan for him,
8  would Walsh compensate National Home more than they
9  would than if they put him in the loan that he
10 qualified for?
11         MR. MAGNANINI: Objection to form.
12 A  This one I can answer?
13 Q  Yes. Unless your attorney tells you
14 you can't.
15 A  I don't believe so.
16 Q  Why do you say that?
17 A  Because I don't have any recollection
18 of how it worked back then.
19         You have to understand I'm measuring
20 today's knowledge with 14 years ago.
21 Q  You described the structure of what
22 Walsh funded and Walsh underwrote. Do you remember
23 all of that?
24 A  Yes.
25 Q  To whom was the title insurance policy

53

1  issued? Was it issued to Walsh or was it issued to
2  National Home Funding?
3  A  I believe the way they were funded
4  through Walsh -- we were cable funding. So that
5  meant we closed in NHF's name with Walsh's money.
6  So we would do an assignment, an allonge, prior to
7  closing. That would mean we were the -- NHF was the
8  lender of record. So I believe that the title
9  policy should be in NHF's name.
10 Q  You used the word "allonge." Can you
11 put that in lay terms, what that is?
12 A  The allonge in the assignment gave all
13 rights instantly in that loan over to the funder.
14 Q  Did Walsh set up its relationship with
15 National Home Funding such that National Home
16 Funding would be the named insured under the title
17 policy?
18 A  I believe that was their model at the
19 time.
20 Q  If I refer to a closing service letter
21 or closing-protection letter, do you know what I'm
22 referring to?
23 A  By name and by look, yes.
24 Q  Calling your attention, for instance,
25 to Skowrenski Exhibit 2. Exhibit B, which is a

14 (Pages 50 to 53)

Rizman
Rappaport
Dillon&Rose, LLC
Certified Court Reporters

66 W. Mt. Pleasant Avenue
Livingston, NJ 07039
(973) 992-7650   Fax (973) 992-0666
1-888-444-DEPS
E-mail: reporters@rrdrcsr.com