**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant
    Commonwealth Land Title
    Insurance Company

|  |  |
|---|---|
| WALSH SECURITIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRISTO PROPERTY MANAGEMENT, LTD., A/K/A G.J.L. Limited, ET AL., <br><br> Defendants. | UNITED STATES DISTRICT COURT <br> FOR THE DISTRICT OF NEW JERSEY <br><br> Civil Action No. 97-cv-3496 (DRD)(MAS) <br><br> Hon. Dickinson R. Debevoise, U.S.S.D.J. <br> Hon. Michael A. Shipp, U.S.M.J. <br><br> **CERTIFICATION OF SARA F. MERIN PROVIDING A CORRECT COPY OF THE DOCUMENT REFERENCED AS "EXHIBIT S" TO THE DECEMBER 23, 2011 MERIN CERTIFICATION [DOCUMENT 492]** |

**SARA F. MERIN**, hereby certifies as follows:

1. I am an attorney at law of the State of New Jersey and am associated with the firm of McCarter & English, LLP, attorneys for Defendant Commonwealth Land Title Insurance Company ("Commonwealth"). I make this Certification to provide the Court and all parties with a copy of a letter that was referenced in, but unintentionally omitted from, my Certification dated December 23, 2011 in support of Commonwealth's Supplemental Statement of Disputed Material Facts Filed Pursuant to Local Civil Rule 56.1 [documents 492-4 to -8].

2. Attached hereto is a true and accurate copy of a January 31, 1997 letter from Don Lawson of Greenwich Capital Markets, Inc. to James Walsh and Arnold Cohn of Walsh Securities, Inc. This letter is referred to in the aforementioned December 23, 2011 Certification as Exhibit S but was not appended to the Certification at Exhibit S. The contents of this letter were discussed and quoted at paragraphs 64-68 of Commonwealth's Supplemental Statement of Disputed Material Facts Filed Pursuant to Local Civil Rule 56.1 [document 492-3].

3. In making this Certification, we do not withdraw from the record the document that was originally attached as Exhibit S, which was a January 6, 1997 letter from Don Lawson of Greenwich Capital Markets, Inc. to Robert Walsh of Walsh Securities, Inc. identifying problems with Walsh Securities, Inc.'s loan programs and procedures that Greenwich Capital identified as "causing the majority of the issues that we have noted in the past three months" and providing suggestions on protocols to adopt in order to improve Walsh Securities, Inc.'s loan quality. We are simply providing the Court with a copy of the January 31, 1997 letter – which was already cited extensively – to correct the record on the pending motions for partial summary judgment.

_____
SARA F. MERIN

Dated: January 17, 2012

GREENWICH CAPITAL MARKETS, INC.
600 STEAMBOAT ROAD
GREENWICH, CONNECTICUT 06830

January 31, 1997

Mr. James Walsh
Mr. Arnold Cohn
Walsh Securities
4 Campus Drive
Parsippany, NJ 07054

Dear Jim and Arnold:

January 29 and 30, I reviewed 17 loans from a universe of loans closed by one of two closing agents (Yacker or Cicalese); a list of the loans reviewed is attached. All loans closed in the name of National Home Funding. All loans were purchase money transactions with the seller of the properties being Cristo Property Management or its subsidiary, GJL Ltd. All but one purchase transaction was a flip (seller acquiring concurrently with resale). The one exception was a property acquired 2 months previously. Of the 17 properties, 3 were probably recently foreclosed REO ( the seller to Cristo being Fleet or Ocwyn). The other 14 were acquired by Cristo (GJL) from individual property owners per the title work in the file.

All properties were appraised by Richard Calanni (15) or Thomas Brodo (2). The only remodeling or rehab mentioned in the 17 appraisals was a new roof on one property. All properties were rated as average condition with no repairs required. Even though most of the properties were 2-4 units, virtually all were vacant per the appraiser. I could find no reference to Cristo's acquisition or acquisition cost in the files.

The 17 loans are to 8 borrowers who are buying multiple investment properties from Cristo (usually 4 per each borrower). 7 of the 8 borrowers currently rent as their primary residence at $500 to $800 per month and these 7 have apparently never owned real estate. All loans were done under the no income verification program. 2 borrowers had prior bankruptcies, although they both stated they had not had prior bankruptcies on their loan application. One borrower had no prior credit history. None of the loan applications had the name of the interviewer at National Home (person taking loan application) on the loan application. No file had verification of funds to close in the file other than a letter from the closing agent saying he was holding a check for the deposit. 6 of the 8 borrowers had no assets listed on the loan application other than the deposit with the attorney. The other 2 listed a bank account each, one with $5300 and the other with $1900. Neither of these accounts were verified. Keep in mind each borrower needs around $60K to $80K in down payments to close their 4 transactions.

DFC002364

Given the credit history and life style of the borrowers, the fact that the deposits with the attorney were never verified as being the borrower's own funds (or that the borrowers had any verified assets), and the flip nature of the transactions, I believe that there is a good chance that these are no down payment purchase transactions and possibly are straw buyers used to facilitate very large cash back transactions to Cristo Property Management.

Please call me at your earliest convenience to discuss these loans and this originator in detail.

Sincerely,

Don Lawson

cc Champ Meyercord
  Jay Levine
  Bill Gallagher

DFC002365

Loans Reviewed:

| | |
|---|---|
| Hristov | 624174 |
| | 624175 |
| | 624176 |
| | 624177 |
| Campoli | 624178 |
| | 624179 |
| | 624180 |
| | 624181 |
| Deliyski | 624488 |
| DiCaro | 624489 |
| Piscioneri | 624490 |
| Kitchovitch | 624491 |
| | 624492 |
| | 624493 |
| Owens | 624494 |
| | 624486 |
| Pelardis | 624495 |

DFC002366