

## McCARTER & ENGLISH
ATTORNEYS AT LAW

January 19, 2012

VIA ELECTRONIC FILING AND REGULAR MAIL

Honorable Michael A. Shipp
U.S. Magistrate, United States District Court
Martin Luther King Building & US Courthouse
50 Walnut Street
Newark, NJ 07102

Re: Walsh Securities, Inc. v. Cristo Property Management, et al.
United States District for the District of New Jersey
Civil Action No. 97-3496 (DRD)(MAS)

**David R. Kott**
Partner
T. 973.622.4444
F. 973.624.7070
dkott@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

Dear Judge Shipp:

We represent the defendants Commonwealth Land Title Insurance Company in this case. Co-defendants Fidelity National Title Insurance Company of New York and Nations Title Insurance of New York Inc. are represented by Edward J. Hayes, Jr., Esq. Mr. Hayes and I had previously filed a December 16, 2011 letter to Your Honor making a discovery application with respect to production of documents and related issues by the plaintiff [Docket No. 487]. Thereafter, on January 3, 2012, Your Honor entered a Text Order requiring that the parties meet and confer regarding the issues raised in our discovery application and that counsel e-file a joint letter by January 19, 2012.

In Your Honor's January 3, 2012 Text Order the Court required a joint letter be filed today. On January 5, 2012 I supplied plaintiff's counsel with a draft of our proposed submission and requested that they supply us with their section of the letter by January 12, 2012. We have not received their submission. I know that until this past Tuesday (1/17/12) at 1:30 pm plaintiff's counsel was probably consumed with the motions for partial summary judgment that had been filed. Since the oral argument on those motions was concluded on Tuesday, yesterday I spoke with one of plaintiff's attorneys and asked for their section and today I called again and left a message for all four of the plaintiff's attorneys to call me but have not heard back from them. While I know the Court ordered a joint letter I also did not want to violate the deadline set by the Court that the submission be provided today.

The attorneys for the parties met and conferred by telephone on January 3, 2012. At that time, the parties were unable to resolve any of the issues in our pending discovery application; it was the view of plaintiff's attorney that defendants were not entitled to any of the relief sought in the discovery application.

### DEFENDANTS' POSITION

Your Honor will recall that at one of the early status conferences in this case then-Magistrate Judge Cavanaugh required the parties to place in a central Repository documents relevant to the case. In addition, from time to time the parties have also propounded separate Requests for Production of Documents.

ME1 12772720v.1

Honorable Michael A. Shipp
January 19, 2012
Page 2

Our office has spent a significant amount of time reviewing the documents placed in the Repository by the plaintiff. In addition, we have reviewed indices supplied by plaintiff's counsel. We do not believe that the following documents have been produced:

1. Any assignments by Walsh to whole loan purchasers or to securities with respect to any loans that were sold by Walsh;

2. Any assignments by any purchaser of the loans and/or a security assigning the loans back to Walsh when Walsh re-purchased the loans (in a very recent production Walsh produced some documentation with respect to its re-purchase of loans from Cityscape and possibly from another entity, but it does not appear that Walsh has produced assignments with respect to all of the loans that Walsh alleges it re-purchased in this case);

3. Any documents demonstrating or showing what Walsh paid to repurchase loans;

4. Any documents that demonstrate any damages on the approximate 140 loans that Walsh did not re-purchase;

5. The individual analyses and Trustee reports referred to by Robert Walsh in his third deposition on September 30, 2011;

6. Any documents that allow a calculation as to the percentage on each of the securities on which Walsh claims a residual loss that the NHF loans played to the whole;

7. Any reports received from the Trustees showing which loans were foreclosed and which loans were not foreclosed on the 140 loans that were not re-purchased by Walsh;

8. Any title policies that Walsh received from title insurers. Despite the fact that this case involves approximately 220 loans and that Walsh has moved for partial summary judgment on approximately 66 loans, in its Statement of Undisputed Material Facts (at ¶ 56) Walsh indicated that in discovery 27 policies had been produced; however, it appears from our review of the materials submitted by Walsh that Walsh has produced commitments for a certain number of the loans at issue but has not produced policies for almost all of the loans at issue;

9. With respect to any loans re-purchased by Walsh, any documents with respect to: (a) any foreclosures on those loans by Walsh or by whole loan purchasers if foreclosures were initiated prior to the loans being reassigned to Walsh; and (b) any recovery by Walsh on those loans;

10. The personnel file of Elizabeth Ann DeMola;

11. Any documents that provide the job titles and job descriptions of Elizabeth Ann DeMola;

ME1 12772720v.1

Honorable Michael A. Shipp
January 19, 2012
Page 3

  12. Any documents that provide the job titles and job descriptions of James Walsh;

  13. Any documents that provide the job titles and job descriptions of Robert Walsh;

  14. Any documents with respect to the way that plaintiff kept track or tracked the acquisition of mortgages, including but not limited to whether plaintiff was aware, or could have been aware, of individuals applying for more than one mortgage;

  15. Any tax returns of plaintiff for the years 1992 - 2000;

  16. Any documents that reflect the identity of any accounting firm that supplied professional services to Walsh Securities, Inc. for the years 1992 - 2000;

  17. Any documents that reflect the identity of any law firm that supplied professional services to Walsh Securities, Inc. for the years 1992 - 2000.

We request that the Court enter an Order requiring the plaintiff to specify whether the aforementioned documents have been produced and, if they have been produced to the Repository, to specify the Bates numbers and boxes where the documents can be found. Again, based on our review of the documents in the Repository we do not believe that the aforementioned documents have been produced. However, given that there are literally hundreds of thousands of documents in the Repository, if the plaintiff has produced any of the aforementioned documents, the defendants should not be required to find a "needle in the haystack" -- presumably the plaintiff knows the Bates stamps of the documents and knows what boxes they have been placed in and should be required to supply us that information.

When we raised the issue with plaintiff's counsel as to whether the documents in question had been placed in the Repository (and we raised that issue because we were unable to find the documents in the Repository) plaintiff's counsel was unable to tell us -- one way or the other -- whether the documents exist at all and whether or not they had been placed in the Repository. Rather, plaintiff's counsel has told us that "if the documents exist they are in the Repository" and we can go and search for them.

The problem is compounded by the following: the Repository is located at plaintiff's attorney's office. During the course of the litigation from time to time when plaintiff's counsel has placed documents in the Repository he has written us a letter telling us that the documents have been placed in the Repository and provided us with the Bates stamped number of the documents. This allowed us to look at documents as they had been placed in the Repository. However, for the documents set forth above we did not receive any such letter. In this regard it is important to repeat that the Repository is kept at the plaintiff's attorney's office. Hence, each time our law firm places documents in the Repository plaintiff's attorneys are aware of it -- because they are delivered to plaintiff's attorney's law office. On the other hand, it seems to be the position of plaintiff's attorney that, from time to time, they can place documents in the Repository without informing us, and then we periodically must somehow re-inspect the Repository to try to figure out whether any additional documents had been added. This is wholly contrary to the letter and spirit of the Federal Rules of Civil Procedure.

Honorable Michael A. Shipp
January 19, 2012
Page 4

Moreover, with respect to the documents referred to in paragraphs 9-17 above, part of the problem arises because of the way that plaintiff responded to our Second Request for Production of Documents. In that response, plaintiff stated that documents responsive to our request " . . . will be produced to the Walsh Document Repository." However, plaintiff has not sent us a letter indicating that the documents were placed in the Repository, so we do not know whether that occurred -- and plaintiff's response when we asked whether the documents were placed in the Repository was that we can search for them in the Repository. And, again, it is plain that the Repository contains hundreds of thousands of documents.

*   *   *

We also request that the Rule 30(b)(6) deposition of the plaintiff be continued. Specifically, we request that we receive an additional two hours to depose the plaintiff. We do so because after the deposition of the plaintiff was completed, the plaintiff produced additional documents. And there is a long history on the documents in question.

Many of the documents produced by the plaintiff after the completion of its 30(b)(6) witness's deposition were corporate books and records of the plaintiff. We had made numerous earlier applications to Your Honor seeking to compel the plaintiff to produce those documents. The first application was in July, 2010. [*See* document No. 399, filed 07/14/10 at p. 3, Paragraph 10.] Your Honor granted our application in a July 22, 2010 Amended Scheduling Order [Docket No. 403 filed 07/22/10 at Paragraph 3]. Plaintiff did not comply with Your Honor's July 22, 2010 Amended Scheduling Order. Hence, on July 7, 2011, we again asked the Court to compel that plaintiff produce those documents within 30 days [Docket No. 454, filed 07/07/11 at p. 2]. On July 19, 2011, Your Honor granted (for the second time) our application and ordered that, within 45 days, the plaintiff was to produce these corporate records [Docket No. 458 Filed 07/19/11 at Paragraph 7]. In fact, before the continued deposition of the plaintiff on September 30, 2011, the plaintiff produced a portion of the corporate records of the plaintiff. However, after that deposition occurred (in early October 2011), the plaintiff produced additional corporate records. There are documents in the October 2011 production by the plaintiff that had never been produced in the litigation regarding which we desire to depose the plaintiff. It should be noted in this regard that it is our understanding from speaking with plaintiff's counsel that plaintiff's counsel was aware of the existence of those documents before the September 30, 2011 deposition of the plaintiff but never informed us of the existence of those documents or that they would be produced after the completion of the plaintiff's deposition. Had we been informed that there were additional documents to be produced in accordance with the Court's two orders, we would not have completed the deposition of the plaintiff until those documents were produced.

The Federal Rules of Civil Procedure are intended to promote both fairness and efficiency. Against this background, the Court should require the continued deposition of the plaintiff. It simply is unreasonable for the plaintiff to fail to produce documents that are clearly discoverable, for the Court to enter two orders compelling production of those documents, for plaintiff's attorney to be aware that the documents have not been produced and not to inform defendant's attorneys of this fact, and to allow defendants

ME1 12772720v.1

Honorable Michael A. Shipp
January 19, 2012
Page 5

to complete the deposition of the plaintiff without having an opportunity to depose the plaintiff on the documents.

*   *   *

We also request that the Court enter an Order requiring production of internal investigation reports. Specifically, during discovery plaintiff supplied an internal investigation report dated September 30, 1997 rendered by the Latham law firm. The September 30, 1997 Latham internal investigation report stated that it supplied Latham's "preliminary findings" and that as Latham completed its internal review of certain loans Latham would "... supplement our findings as appropriate."

On December 15, 2011 I emailed plaintiff's attorney and requested any supplemental reports rendered by Latham, and plaintiff's attorney on that day indicated that he did not recall another report but he would look into it and get back to us. Yesterday I emailed plaintiff's attorney again on this subject and indicated that I was going to include this subject in the letter I was sending to Your Honor today. Again, I have not heard back from plaintiff's attorney.

<u>**PLAINTIFF'S INSERT WHICH DEFENDANTS DO NOT JOIN**</u>

<u>**NOT SUPPLIED TO DEFENSE COUNSEL BY PLAINTIFF'S ATTORNEYS**</u>

Respectfully submitted,

*/s/ David R. Kott*

David R. Kott

DRK:yms

cc:   Robert A. Magnanini, Esq. (via electronic filing & email)
      Jeffrey A. Shooman, Esq. (via email)
      Daniel I. Mee, Esq. (via email)
      Edward J. Hayes, Jr., Esq. (email and regular mail)