# STONE 🅼 MAGNANINI
## LLP

COMPLEX COMMERCIAL LITIGATION

**NEW JERSEY OFFICES**   150 JFK Parkway, Short Hills, NJ 07078   P 973.218.1111   F 973.218.1106

January 19, 2012

**VIA CM/ECF**

Honorable Michael A. Shipp, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey 07101

      Re:    *Walsh Securities, Inc. v. Cristo Property Management, LTD, et al.*
               Civil Action No. 97-3496 (DRD/MAS)

Dear Judge Shipp:

## PLAINTIFF'S POSITION

      As Your Honor can see, civility in this case has broken down on the Defendants' side. With no other reason than to gain a tactical advantage, Defendants filed their "joint" letter at 3:26 p.m. this afternoon, while I was reviewing old files to respond to Defendants' inquiries, in order to provide Defendants with another soapbox to demand discovery long out of time and to again demand that counsel for Plaintiff be required to do Defendants' work for them. As Your Honor is well aware, this case is now fifteen years old. During the entire length of this case, going back to the Fall of 1997 when then-Magistrate Judge Cavanaugh ordered that all parties produce documents into two repositories, documents relevant to the case were available in a repository in Newark and a repository in Freehold. During the time the repository was at the offices of the law firm of Latham & Watkins LLP ("LW"), Defendants did not avail themselves of reviewing any of these documents.

      Subsequently, after I had left LW and moved to Boies, Schiller & Flexner ("BSF"), BSF was retained by Walsh Securities, Inc. ("WSI") to pursue its litigation. In early 2005, the repository was sent from storage at LW to the offices of BSF in Short Hills, New Jersey. Mr. Schottland's former law office hosted the second repository in Freehold. Mr. Schottland communicated to me that due to him leaving his firm, they would no longer be able to host the repository. The documents in the repository in Freehold were then moved to the offices of BSF and consolidated with those documents in the repository. Mr. Schottland advised me that during the time he hosted the repository, very few, if any, of the Defendants visited to review the documents at issue.

      Once the case was removed from administrative termination and placed back on the active docket, the repository at BSF's offices was available for use and inspection by any party at any time with reasonable notice. Between 2005 and 2010, the repository was visited a very few times by the Defendants, mostly in connection with the failed mediation held before Judge Boyle. Beginning in June 2010, Defendants began to send associates to review documents in the repository and photocopy them. Plaintiff's counsel made every effort to accommodate their requests and allowed counsel for Defendants to review documents as long as they wanted in Plaintiff's counsel's office and to take as many documents as they wanted and photocopy them. Plaintiff also photocopied numerous documents requested by Defendants. Their effort to review and photocopy documents intensified as the end of fact discovery drew near on October 10, 2011 and continues to this day.

      Before the end of fact discovery, Defendants' counsel asked for consent from the Plaintiff to extend fact discovery two additional months. Due to the fourteen-year long history of the case and the fact that Defendants' delay tactics had driven Plaintiff into bankruptcy, Plaintiff could not consent to a further extension of fact discovery. However, even after fact discovery concluded, Defendants continued to come to the repository to review and copy documents. Certain documents were removed from the repository and returned only last week, as Plaintiff's counsel was trying to complete its reply brief in support of its motion for partial summary judgment.

      Defendants have been down this road before with this Court, with the same documents, with the same issue. They lost their argument before Your Honor in the Summer of 2011 and now try it again. Despite the fact discovery is closed and four motions for summary judgment have been briefed, argued, and are pending before Judge Debevoise, Defendants once again attempt to put the shoe on the other foot and have Plaintiff undertake what are quintessentially *Defendants' discovery obligations*. Writing that "[w]e do not believe that the following documents have been produced," Defendants place the onerous, undue burden on Plaintiff to undertake a search at this late stage for documents that have been *at their disposal for years* even though they only recently conducted their own document review.

      Defendants instead shift the burden of conducting their document review on to Plaintiff. Per the order of the court, WSI made its production to the repository. But Defendants ignore this fact and request that WSI cull through the repository and hand them personnel files of certain employees, tax returns, documents that provide job titles and job descriptions, among other things. Basically, Defendants ask WSI to conduct their searches and then hand it over on a silver platter. Judge Cavanaugh was prescient in his order establishing the repository, making it very clear that Defendants' request to search, copy, and produce is entirely baseless. Indeed, the order [Dkt. 46] clearly and unequivocally provides that "[i]t will then be *the responsibility of each party* to make arrangements to review the documents and request and pay for specific copies they deem appropriate." [Id. ¶ 14] (emphasis added). Again, the Court should note that Defendants did not request or copy documents until very late in discovery.

      Defendants' request for an order requiring that Plaintiff identify whether certain documents have been produced, and then to identify where they are in the repository would

violate the entire purpose of the document repository. Defendants, as has been the case all along, have unfettered access to the repository. Whenever Defendants have requested access to the repository it has been freely granted. There is simply no issue of Defendants' access and any suggestion otherwise should be disregarded. Moreover, Plaintiff has strived to advise Defendants every time it has placed documents in the repository, and if it did not do so in a timely manner in one instance it was entirely inadvertent. In any event, notice of every one of Plaintiff's productions has been made and Defendants have not and cannot show that they were prejudiced by any late notice.

Defendants' gripe seems to be their contention that the documents they seek *must* exist. Aside from the loan files that were produce many years ago, the bulk of Plaintiff's production to the repository was made nearly two years ago. Defendants complain that searching for these documents is akin to trying to find the proverbial "needle in a haystack," but for better or worse, this was the procedure that then-Magistrate Judge Cavanaugh had in mind when he created the repository. It was the lesser of all the other evils involved given the number of documents involved in this case. It was never contemplated, by either the letter or spirit of Judge Cavanaugh's order, that a party could unilaterally ask for a specific document from the other side and compel them to produce that document. *That* is exactly the "needle in the haystack" argument flatly *rejected* by the order establishing the repository. Changing the requirements set forth in that order well after the conclusion of discovery would be incredibly prejudicial to Plaintiff. If Defendants needed additional time for discovery, to review or search the documents in the repository, or make other demands on Plaintiff for additional information, then they should have moved the Court for an order extending the discovery end-date. Because they did not do so, they should not be allowed to place their onerous demands on Plaintiff at this late stage.

Defendants come perilously close to accusing Plaintiff of bad faith in producing these documents – such nefarious speculation "has not moved several courts, nor will it move this one, to grant burdensome discovery requests late in the game." *Ford Motor Co. v. Edgewood Props.*, 257 F.R.D. 418, 427 (D.N.J. 2009) (Salas, J.) (emphasis added) (citing *Margel v. E.G.L. Gem Lab Ltd.*, No. 04-1514, 2008 U.S. Dist. LEXIS 41754, at *3 (S.D.N.Y. May 29, 2008) ("Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production").

We also object to the continuation of the Rule 30(b)(6) deposition of the Plaintiff. Defendants have already deposed Mr. Robert Walsh, the corporate representative of WSI, for the full amount of time allowed under the Federal Rules of Civil Procedure over four days. As a matter of fact, as Mr. Walsh's deposition drew to a close, Mr. Kott asked the court reporter how much time was left, and she responded, "Ten minutes." Mr. Kott said then that he would continue to question Mr. Walsh until the ten minutes was concluded so that he could ask questions for every second of the time he was allotted.

The documents about which they complain were produced in response to a subpoena issued by Plaintiff, not Defendants, on LeClair Ryan, WSI's former corporate counsel. Nothing prevented Defendants from subpoenaing LeClair Ryan, as they did in fact subpoena other law

Honorable Michael A. Shipp
January 19, 2012
Page 4 of 4

firms with matters related to WSI. There was also nothing that prevented Defendants from noticing the deposition of WSI's former corporate attorneys who were located across the street from the offices of McCarter & English. Instead, in response to Plaintiff's subpoena for the books and records of WSI, LeClair Ryan produced a number of other boxes of materials related to its prior work for WSI. Counsel for Plaintiff was forced to go to LeClair Ryan's offices and review the various documents for privilege and relevance to this matter. LeClair Ryan photocopied the documents and produced them to Plaintiff's counsel, who Bates-stamped them and alerted Defendants to their existence. However, prior to the continuation of WSI's 30(b)(6) deposition, the corporate books and records, which were the primary focus of Defendants' demand and Plaintiff's subpoena, were obtained by counsel for Plaintiff, copied, Bates-stamped and delivered to defense counsel. Although defense counsel were fully able, they only asked a very few questions about the books and records of Plaintiff. Therefore, Plaintiff should not be prejudiced or penalized for having done Defendants' work in obtaining additional documents that were as readily available to the Defendants as they were to the Plaintiff from former counsel for Plaintiff.

Furthermore, Defendants had ample time to depose the corporate representative and ask questions until the very last minute of time allotted to them. This demand, like this document demand request, is another example of Defendant's continued tactics throughout this litigation – which is to continuously delay the case from moving forward and harass the Plaintiff by trying to force the Court to order the Plaintiff to do work for defense counsel and to continuously re-litigate issues that they already lost.

Defendants also request the Court enter an order requiring production of internal investigation reports. Defendants fail to cite to any law that internal investigation reports, which were prepared by attorneys retained by Plaintiff to determine who defrauded it so a lawsuit could be filed to recover damages, would not be protected. Since defense counsel cites to no reason that they should be entitled to internal investigation reports prepared by counsel as a basis for the lawsuits filed by WSI beyond what was previously supplied to counsel for Defendants, the Court should not overturn long-standing work product protections in the District of New Jersey and order the production of any further internal investigation reports to the Defendants.

Lastly, Plaintiff respectfully requests that the Court intervene in the distribution of the Coastal settlement funds that are being held in Stone & Magnanini's trust account. Plaintiff submitted confidential settlement letters to the Court on this issue on August 12, 2011, September 14, 2011, and December 1, 2011 and, at the Court's request, can resubmit copies of these letters.

Respectfully submitted,

/s/Robert A. Magnanini
Robert A. Magnanini