*EXHIBIT A*

01/20/98   14:57   ☎312 559 0187        PMI CHICAGO                    ☒002/008

**GENERAL STAR**

# GENERAL STAR INDEMNITY COMPANY
Stamford, Connecticut — A Stock Company
(hereinafter called the Company)

## BUSINESS ERRORS OR OMISSIONS LIABILITY POLICY
### THIS IS A CLAIMS MADE POLICY — PLEASE READ IT CAREFULLY

### DECLARATIONS

Policy #   **IYA281269**              Previous Policy # IYA281026

Item 1:  Named Insured:   COASTAL TITLE AGENCY, INC.
                          COASTAL ABSTRACT COMPANY, INC.
         Mailing Address:  21 WEST MAIN STREET, SUITE 2
                          FREEHOLD, NJ  07728

Item 2:  Policy Period: From  **11/14/97**                    To: **11/14/98**
                        Inception Date                              Expiration Date
                 at 12:01 a.m. standard time at the address of the Named Insured

Item 3:  Limit of Liability (including damages and claim expenses — See Section 4) for all      $   **1,000,000.00**
         claims but not to exceed an annual aggregate of:

         The Limit of Liability shall be reduced by payments made for damages and claim
         expenses.

         Deductible amount (see Section 4, LIMIT OF LIABILITY, 2. DEDUCTIBLE) to be           $   **5,000.00**
         applied to each claim for damages and/or claim expenses.

Item 4:  Retroactive Date: This policy does not apply to claims arising from act(s), error(s),
         or omission(s) which took place prior to the Retroactive Date as shown below. The
         absence of a date means that the policy does not afford coverage for negligent acts,
         errors or omissions committed prior to the Inception Date stated in Item 2.

                                                            Retroactive date:  **11/14/95**

Item 5:  Covered services:
                TITLE SEARCH/ABSTRACT, TITLE INSURANCE AGENT AND RELATED
                ESCROW AGENT SERVICES FOR OTHERS.

Item 6:  Endorsements attached at inception:
                EO-99(11/91); GSI-52-I 600(1/89)
                EO-100(10/91);EO-101(10/91)

Item 7:  Premium:
                GROSS PREMIUM                                    $8,214.00

         NEW JERSEY SURPLUS LINES PROCESSING SYSTEM (SLPS):     00766-97-00113

         These Declarations, Form GSI-52-26EOD (10/91), together with the Policy, Form GSI-52-26EOJ (10/91) and endorsements specified
         in Item 6 and any endorsements issued to form a part hereof, complete this BUSINESS ERRORS OR OMISSIONS LIABILITY
         POLICY.

         Countersigned on  **11/25/97  DG**                    _____
                                                                     Authorized Representative

         At: CHICAGO, ILLINOIS                                 1h890      **735AA**
                                                                          Code Number
         GSI-52-26EOD  (10/91)

*Mailed 1/16/98*

01/20/98   14:57   ☎312 330 0187        PMI CHICAGO                    Ø 003/003

**General Star Indemnity Company**

**THIS ENDORSEMENT CHANGES THE POLICY – PLEASE READ IT CAREFULLY**

Named Insured:

Policy Number:   IYA 281 269          Endorsement Number:        1

Effective Date: _____  (If no date is specified herein
                        this endorsement shall take effect as of the policy
                        Inception Date)

This endorsement modifies insurance provided under the
BUSINESS ERRORS OR OMISSIONS LIABILITY POLICY.

TITLE AGENTS ENDORSEMENT

The following EXCLUSIONS are added:

(m)  any willful or intentional failure on the part of the Insured
     to comply with escrow instructions;

(n)  defects in title of which the Named Insured had knowledge at
     the date of issuance of such title insurance;

(o)  an Insured making a payment in connection with building
     constructions without prior receipt of an architect's
     certificate, where such certificate is required as a condition
     of payment;

(p)  an Insured making a payment for work or materials that have
     been supplied by subcontractors without prior receipt of
     appropriate waivers or releases of lien from the
     subcontractors involved;

(q)  faulty workmanship or defective materials or breaches of
     contract on the part of contractors or subcontractors;

(r)  the performance of services as an Attorney at Law;

(s)  the activities of any Insured in handling any joint control
     escrow responsibilities;

(t)  the conduct of any business enterprise or performance of
     services other than as a Title Insurance Agent, Escrow Agent
     or Title Abstractor/Searcher, including but not limited to,
     any activities as a Life Insurance Agent or Broker, Property
     or Casualty Insurance Agent or Broker or as a Real Estate
     Agent or Broker;

(u)  or attributable to or contributed to by an Opinion of title
     that is rendered on or from a Title Abstract or Search, which
     Title Abstraction or Search was performed or prepared by
     anyone who is not or was not at the time said abstraction or
     search an actual employee of the Named Insured acting within
     the scope of their duties as such;

Form EO-99(11/91)               Page 1 of 2

General Star Indemnity Company

### THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the
BUSINESS ERRORS OR OMISSIONS LIABILITY POLICY.

### TITLE AGENTS ENDORSEMENT - CONTINUED

(v)  or attributable to or contributed to by any actual or alleged
exposure of persons or property to asbestos, lead,
formaldehyde, or any other toxic or hazardous substance,
including any Insured's failure to inspect, discover or report
such exposure or any alleged damage resulting therefrom;

(w)  insolvency, liquidation or rehabilitation of any insurer,
reinsurer, self-insured program, trust, risk retention group
or purchasing group.

Nothing herein contained shall be held to vary, alter, waive, or
extend any of the terms, conditions, limitations or declarations of
the policy to which this endorsement is attached, other than as
stated above.

This endorsement shall not be binding upon the Company unless
countersigned below by an authorized representative of the Company.

Page 2 of 2

Issued: _____

Form EO-99(11/91)                    Authorized Representative

 **GENERAL STAR**

## GENERAL STAR INDEMNITY COMPANY
Stamford, Connecticut — A Stock Company
(hereinafter called the Company)

# BUSINESS ERRORS OR OMISSIONS LIABILITY POLICY
### THIS IS A CLAIMS MADE POLICY — PLEASE READ IT CAREFULLY

## DECLARATIONS

Policy #   **IYA281026**           Previous Policy #   **IYA280803**

Item 1:  Named Insured:      **COASTAL TITLE AGENCY, INC.**
**COASTAL ABSTRACT COMPANY, INC.**

Mailing Address:   **21 WEST MAIN STREET, SUITE 2**
**FREEHOLD, NJ 07728**

Item 2:  Policy Period: From   **11/14/96**          To:   **11/14/97**
Inception Date                              Expiration Date
at 12:01 a.m. standard time at the address of the Named Insured.

Item 3:  Limit of Liability (including damages and claim expenses — See Section 4) for all
claims but not to exceed an annual aggregate of:          $      **500,000.00**

The Limit of Liability shall be reduced by payments made for damages and claim
expenses.

Deductible amount (see Section 4. LIMIT OF LIABILITY. 2. DEDUCTIBLE) to be
applied to each claim for damages and/or to claim expenses:      $       **5,000.00**

Item 4:  Retroactive Date: This policy does not apply to claims arising from act(s), error(s),
or omission(s) which took place prior to the Retroactive Date as shown below. The
absence of a date means that the policy does not afford coverage for negligent acts,
errors or omissions committed prior to the inception Date stated in Item 2.

Retroactive date:   **11/14/95**

Item 5:  Covered services:
**TITLE SEARCH/ABSTRACT, TITLE INSURANCE AGENT AND RELATED
ESCROW AGENT SERVICES FOR OTHERS.**

Item 6:  Endorsements attached at inception:
**EO-99(11/91); GSI-52-I 600(1/89)
EO-100(10/91);EO-101(10/91)**

Item 7:  Premium:

**GROSS PREMIUM**                      **$7,143.00**

**NEW JERSEY SURPLUS LINES PROCESSING SYSTEM (SLPS):     00091-96-01452**

These Declarations, Form GSI-52-26EOD (10/91), together with the Policy, Form GSI-52-26EOJ (10/91), and endorsements specified
in Item 6 and any endorsements issued to form a part hereof, completes this BUSINESS ERRORS OR OMISSIONS LIABILITY
POLICY.

Countersigned on:   **11/19/96   DG**                     by _____
Authorized Representative

At:   **CHICAGO, ILLINOIS**                          **10890          73548**
Code Number

GSI-52-26EOD  (10/91)

General Star Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY

Named Insured:

Policy Number:  ___IYA 281 026___        Endorsement Number:  ___1___

Effective Date:  _____  (If no date is specified herein
                                   this endorsement shall take effect as of the policy
                                   Inception Date)

This endorsement modifies insurance provided under the
BUSINESS ERRORS OR OMISSIONS LIABILITY POLICY.

TITLE AGENTS ENDORSEMENT

The following EXCLUSIONS are added:

(m)   any willful or intentional failure on the part of the Insured
      to comply with escrow instructions;

(n)   defects in title of which the Named Insured had knowledge at
      the date of issuance of such title insurance;

(o)   an Insured making a payment in connection with building
      constructions without prior receipt of an architect's
      certificate, where such certificate is required as a condition
      of payment;

(p)   an Insured making a payment for work or materials that have
      been supplied by subcontractors without prior receipt of
      appropriate waivers or releases of lien from the
      subcontractors involved;

(q)   faulty workmanship or defective materials or breaches of
      contract on the part of contractors or subcontractors;

(r)   the performance of services as an Attorney at Law;

(s)   the activities of any Insured in handling any joint control
      escrow responsibilities;

(t)   the conduct of any business enterprise or performance of
      services other than as a title insurance agent, escrow agent
      or title abstractor/searcher, including but not limited to,
      any activities as a Life Insurance Agent or Broker, Property
      or Casualty Insurance Agent or Broker or as a Real Estate
      Agent or Broker;

(u)   or attributable to or contributed to by an Opinion of title
      that is rendered on or from a Title Abstract or Search, which
      Title Abstraction or Search was performed or prepared by
      anyone who is not or was not at the time said abstraction or
      search an actual employee of the Named Insured acting within
      the scope of their duties as such;

General Star Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the
BUSINESS ERRORS OR OMISSIONS LIABILITY POLICY.

AMENDATORY EXCLUSION ENDORSEMENT - CONTINUED

(v) or attributable to or contributed to by any actual or alleged
exposure of persons or property to asbestos, lead,
formaldehyde, or any other toxic or hazardous substance,
including any Insured's failure to inspect, discover or report
such exposure or any alleged damage resulting therefrom;

(w) insolvency, liquidation or rehabilitation of any insurer,
reinsurer, self-insured program, trust, risk retention group
or purchasing group.

Nothing herein contained shall be held to vary, alter, waive, or
extend any of the terms, conditions, limitations or declarations of
the policy to which this endorsement is attached, other than as
stated above.

This endorsement shall not be binding upon the Company unless
countersigned below by an authorized representative of the Company.

Page 2 of 2

Issued: _____

Form EO-99(11/91)                    Authorized Representative

General Star Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY

Insured:

Policy Number: ____HA 481 326____      Endorsement Number: _____2_____

Effective Date: _____ (If no date is specified herein this
      endorsement shall take effect as of the policy Inception Date)

This endorsement modifies insurance provided under the
BUSINESS ERRORS OR OMISSIONS LIABILITY POLICY.

SERVICE OF SUIT

Pursuant to any statute of any state, territory or district of the United States
which make provision therefor, the Company hereby designates the Superintendent,
Commissioner or Director of Insurance or other office, as their true and lawful
attorney upon whom may be served any lawful process in any action, suit or
proceeding instituted by or on behalf of the Insured or any beneficiary
hereunder arising out of this contract of insurance, and hereby designates the
above named as the person to whom the said officer is authorized to mail process
or a true copy thereof.

It is further agreed that the service of process in such suit may be made upon
President, or his nominee, of the Company at Financial Centre, 695 East Main
Street, Stamford, Connecticut 06904-2354, and that in any suit instituted
against any one of them upon this Policy, the Company will abide by the final
decision of such Court or of any Appellate Court in the event of an appeal.

It is agreed that in any state requiring a standard form of policy, insurance
hereunder on values or properties in such state shall attach and cover in
accordance with the terms and conditions of such standard form.

All other terms and conditions of this Policy remain unchanged.

Nothing herein contained shall be held to vary, alter, waive, or extend any of
terms, conditions, limitations or declarations of the policy to which this
endorsement is attached, other than as stated above.

This endorsement shall not be binding upon the Company unless countersigned
below by an authorized representative of the Company.

Page 1 of 1

Attached:
  GSI-52-I 600(1/89)

_____
      Authorized Representative

**GENERAL STAR INDEMNITY COMPANY**
A STOCK COMPANY
(A NON-ADMITTED INSURER, EXCEPT IN CONNECTICUT)

Any correspondence relating to this Application should be directed to:

## PROFESSIONAL MANAGERS
## INCORPORATED

SUITE 1460, 2 NORTH RIVERSIDE PLAZA
CHICAGO, ILLINOIS  60606-2640
312-559-0101   TELEX: 27-0625
FAX #: 312/559-0167

### BUSINESS ERRORS OR OMISSIONS LIABILITY -
### APPLICATION FOR CLAIMS MADE INSURANCE

NOTICE: This is an application for CLAIMS MADE INSURANCE. Such insurance, if accepted by the Company, applies only to claims first made against the insured during the policy period and may additionally limit coverage applicable to negligent acts, errors, omissions or offenses made prior to the inception of the policy period. The limit of liability shall be reduced by amounts paid for legal defense and such payments for legal defense shall also be applied against the deductible amount. Receipt by the Company and submission by the applicant of the completed application incurs no obligation to purchase or bind insurance.

### INSTRUCTIONS TO THE APPLICANT:

A. Please answer all the questions. The information is required to make an underwriting and pricing evaluation. Your answers are considered legally material to that evaluation.

B. If a question is not applicable, state "not applicable", (not N/A). If more space is required to answer a question continue on applicant's letterhead.

C. The application must be signed and dated by an owner, partner, officer or director of the applicant's organization.

D. Attach (1) brochures, pamphlets, advertisements or other descriptive literature of operations and services; (2) Financial statement, 10k and/or annual report; and (3) Copies of standard contract(s) with clients, if applicable.

---

1. Applicant's name to be used on policy, if issued:

   COASTAL  TITLE  Agency, INC.

2. Home office address:  91  WEST  MAIN  ST.  SuiTe #2
   _No._  _Street_

   FreeHold  N.J.          07728      Tel. No. ( 905) 305-1660
   _city_      _state_      _zip_

3. Address of all branch offices and/or subsidiaries and a brief description of their operations:

   NOT APPLicAble

4. Applicant is:  ☐ Individual    ☐ Partnership    ☒ Corporation    ☐ Other _____

A. Is the applicant firm controlled, owned, affiliated or associated with any other firm, corporation or company?

☐ YES    ☒ NO   If "Yes", explain below or in an attachment.

B. Are any services provided to such business enterprises?

☐ YES    ☒ NO   If "Yes", explain:

3. During the past five years has the name of the firm been changed, or has any other business been purchased, merged or consolidated with the applicant?    ☐ YES    ☒ NO
If yes, please describe significant changes in the firm's personnel and operations:

7. Date firm was established: _2/17/87_ .  Where is firm licensed or registered? _New Jersey_ .

8. Provide a narrative of all the services performed for others.  Continue on an attachment if necessary:

PROVIDE CUSTOMERS WITH TITLE INSURANCE.

9. Indicate the exposure, in detail, for which you require coverage?

IF DURING A SEARCH WE MISS AN ISSUE and ISSUE CLEAR
TITLE and policy where There may be a judgement, lien
or other reason for which CLEAR TITLE should not have
been Assigned

10. What kinds of claims might possibly result from these services?

To Pay off An Existing mortgage, judgement, etc.

11. Describe any procedures, precautions or protections the firm uses to avoid such losses:

Competent Title search Examiners

12. List your five largest projects or jobs during the past three years and indicate service performed and approximate revenue from each:

| NAME | SERVICE PERFORMED | REVENUE |
|------|-------------------|---------|
| 1. | Confidential | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

13. Does the applicant have written contracts or agreements with each client?

☐ YES  If yes, please attach a copy of standard contract.

☒ NO  If no:

A.  What percentage of the time are written contracts not used /00 %.

B.  If written contracts are not used, how are responsibilities defined between the applicant and their clients?

Insurance Department Regulations

14. Do the applicant's contracts contain:

|  |  | |  |
|---|---|---|---|
| A. | Hold harmless or indemnity agreements inuring to applicant's benefit? | ☐ YES | ☒ NO |
| B. | Hold harmless or indemnity agreements inuring to the benefit of applicant's clients? | ☐ YES | ☒ NO |
| C. | Guarantees or warranties? | ☐ YES | ☒ NO |
| D. | A specific description of the services applicant will provide to client? | ☐ YES | ☒ NO |

15. Have your contracts and operating procedures been reviewed by a law firm with experience in your field?

A.  CONTRACTS:          ☒ YES    ☐ NO

B.  OPERATING PROCEDURES:  ☐ YES    ☒ NO

16. Applicant's Fiscal year:  From 1/1/96 mo/yr    To 12/31/96 mo/yr

Firm's total gross fees and receipts (including foreign)
projected for the coming year:        1997 : 2,300,000  (EST.)
current year:                          1996 : 2,100,000  (EST.)
past two years:      1995 : 1,668,150  1994 : 1,465,225

Give the percentage projected for foreign operations  —0— %

Are any gross fees and receipts contingent upon cost reductions? ☐ YES  ☒ NO.  If yes, please describe.

17. A. What percentage of the firm's business involves subcontracting of work to others? _- 0 -_ %.

    B. What services are subcontracted? _____

18. Please give:
    A. Total number of principals, partners, and officers in firm: ___3.___
        Total number of skilled and technical employees: ___4___
        Total number of unskilled and clerical employees: _- 0 -_

    B. Describe the qualifications of key personnel or attach an experience resume:

    C. Does the applicant or its employees belong to any professional organizations
       or associations?              ☒ YES    ☐ NO
       If yes, please describe   New Jersey Land Title Association

19. Claims Experience: Please attach a list of claims made or suits brought in the last 5 years against the
    applicant firm, its predecessors, subsidiaries, employees and/or against any other proposed insured. Provide
    description and status of each claim, and include date of claim, date of error, amount of claim, deductible,
    payments and reserves.
    If none, please check here: __X__ NONE

20. Does the applicant have any knowledge, information or is the applicant aware of any alleged errors,
    omissions, offenses, or circumstances which may reasonably be expected to result in a claim being made
    against the applicant, any proposed insured or any person or entity listed above?    ☐ YES ☒ NO
    If yes, explain:

21. A. Has the applicant, its subsidiaries, affiliates or business predecessors been the subject of disciplinary
       action or investigation by any authority or regulatory agency?    ☐ YES    ☒ NO

    B. Have any partners, principals officers, or key employees?    ☐ YES    ☒ NO
       If yes to either, explain below or in an attachment.

22. A. List any similar insurance carried during the past five years. If none check here:    ☐ NONE

| | Policy Period | Insurer | Retroactive Date | Claims made or occurrence? | Limit | Deductible | Premium |
|---|---|---|---|---|---|---|---|
| 1. | 1/14/95 - 1/14/96 | General Star | - 0 - | 500,000.00 | 5,000.00 | 5,618.00 |
| 2. | | | | | | | |
| 3. | | | | | | | |
| 4. | | | | | | | |
| 5. | | | | | | | |

    B. Please attach a copy of current policy form.

23. Has any application for similar insurance made on behalf of the applicant or any of its predecessors in
    business been declined or has any such insurance ever been rescinded, cancelled or has renewal been
    refused? If yes, please explain below or on an attachment.    ☐ YES ☒ NO

24. Does applicant firm have comprehensive general liability coverage currently in force?   ☒ YES   ☐ NO

Does the policy include coverage for all classes/operations under the products/completed operations hazards?  If no, which are excluded?   ☒ YES   ☐ NO

Please provide a copy of the policy, if available.  Otherwise, please provide below the:  A. name of the insurer;   B. policy number;   C. policy period and   D. limit of liability:  *(illegible handwriting)*

25. Limit of Liability:   ☐ $100,000   ☐ $250,000   ☐ $500,000   ☐ $1,000,000   Other _____

Deductible desired:   ☐ $2,500   Other _____

THIS APPLICATION DOES NOT BIND THE APPLICANT OR THE COMPANY, NOR DOES IT OBLIGATE THE COMPANY TO ISSUE A POLICY OR INSURE ANY SERVICES.  SUCH POLICY MAY BE CANCELLED BY THE COMPANY FROM INCEPTION UPON DISCOVERY THAT THE POLICY WAS OBTAINED THROUGH FRAUDULENT STATEMENTS, OMISSIONS OR CONCEALMENT OF THE FACTS MATERIAL TO THE ACCEPTANCE OF THE RISK OR HAZARD ASSUMED BY THE COMPANY.

NOTICE:

THE LIMIT OF LIABILITY IN THE POLICY, IF ISSUED, MAY BE REDUCED OR COMPLETELY EXHAUSTED BY CLAIM COSTS AND/OR LEGAL DEFENSE. IN SUCH EVENT, THE COMPANY SHALL NOT BE LIABLE FOR ANY JUDGMENT, SETTLEMENT OR CLAIM COSTS OR LEGAL DEFENSE COSTS WHICH ARE IN EXCESS OF THE LIMIT OF LIABILITY STATED ON THE DECLARATIONS PAGE OF THE POLICY.

THE DEDUCTIBLE IN THE POLICY, IF ISSUED, APPLIES TO CLAIM COSTS AND LEGAL DEFENSE AS WELL AS TO JUDGMENTS AND SETTLEMENTS.

THE APPLICANT REPRESENTS THAT THE STATEMENTS AND RESPONSES TO THE QUESTIONS ON THIS APPLICATION ARE ACCURATE AND COMPLETE.  THE APPLICANT ALSO WARRANTS THAT SUCH STATEMENTS AND RESPONSES ARE TRUE, CONTAIN NO MISREPRESENTATIONS AND THAT IF THE INFORMATION SUPPLIED ON THIS APPLICATION OR ATTACHMENTS CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE INCEPTION DATE OF THE POLICY, THE APPLICANT WILL IMMEDIATELY NOTIFY THE COMPANY OF SUCH CHANGES.

WARNING: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY FALSE INFORMATION, OR WHO CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

DATE __11/8__

SIGNED BY AUTHORIZED OFFICER OF PARTNER

TITLE _____

## BUSINESS ERRORS OR OMISSIONS LIABILITY POLICY

### THIS IS A CLAIMS MADE POLICY

BE READ THIS POLICY IN ITS ENTIRETY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVER-
SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE RIGHTS AND DUTIES. SEE SECTION 3 DEFINITIONS. FOR
MEANING OF WORDS AND PHRASES WHICH ARE UNDERLINED.

nsideration of the payment of the Premium, the Named Insured's obligation to pay any Deductible amount stated in the
raration and in reliance upon the truth and accuracy of the statements and representations made in the application incorpo-
ted in this policy by reference, and subject to all of the terms and conditions of this policy, the Company agrees with the
lo Insured as follows:

PAGE

RRORS OR OMISSIONS LIABILITY: The Company will pay on behalf of any Insured all sums up to the Limit of Liability
which such Insured shall become legally obligated to pay as damages and/or claim expenses by reason of a claim for
amages to which this insurance applies.

his policy applies only to claims for damages first made against an Insured and also reported to the Company by notice
iven during the Policy Period or any applicable extended reporting period, arising out of a negligent act, error or omission in
he performance of covered services, specified in Item 5 of the Declarations, rendered or which should have been rendered
by any Insured, or by any other person for whose acts the Named Insured is legally liable:

1.  During the Policy Period; or

2.  Which took place prior to the Inception Date of this insurance, and after any Retroactive Date set forth in Item 4 of the
    Declarations, provided that:

    (i)   an Insured had no knowledge or information of any claim or suit, or any such negligent act, error or omission or
          circumstances which might reasonably be expected to result in a claim or suit, as of the Inception Date of this
          policy; and

    (ii)  an Insured has no other insurance coverage for such claim or suit, unless the available limits of that insurance are
          insufficient, in which event this policy will be excess over such coverage.

A claim will be deemed to have been "first made" against an Insured when: (a) written notice of such claim is first mailed to
or filed against an Insured or (b) when written notice is received by the Company of specific circumstances involving a
particular person or legal entity which may result in a claim, whichever comes first.

POLICY TERRITORY: This policy further applies only to covered claims arising from a negligent act, error or omission in the
performance of covered services rendered, or which should have been rendered, anywhere in the world, provided that such
claims are made and any suits thereon are brought within the territorial limits of the United States, Puerto Rico or Canada.

DEFENSE, PAYMENT OF CLAIM EXPENSES: With respect to such insurance as is afforded by this policy and subject to
Section 4, LIMIT OF LIABILITY, if no other insurer is obligated to do so, the Company has the right and duty to defend any
covered claims against any Insured, to pay damages and claim expenses on account thereof, and has the sole right to select
legal council in the defense of any Insured. The Company shall not be obligated to defend any Insured with respect to claims
which are not covered under this policy, nor shall the Company be obligated to pay any damages or claim expenses after its
Limit of Liability has been exhausted by payment of damages and/or claim expenses.

OPTION FOR AN EXTENDED REPORTING PERIOD
a.   Any extended reporting period hereunder does not:

     (i)    increase the Limit of Liability of this policy;

     (ii)   reinstate any exhausted Limits of Liability of this policy;

     (iii)  change coverage beyond allowing additional time for the reporting of claims; nor

     (iv)   extend the Policy Period.

     The extended reporting period extends the time to report covered claims for damages arising out of negligent acts,
     errors or omissions committed after the Retroactive Date and before the Expiration Date of this policy.

The Company will provide the Named Insured an automatic extended reporting period of sixty (60) days from the end of the Policy Period or, if the Named Insured purchases it, a one year extended reporting period endorsement, provided that:

   (i)  the Company has not cancelled or not renewed this policy for nonpayment of Premium or non-reimbursement of Deductible; or

   (ii)  the Company renews or replaces this policy with similar claims made insurance which has a retroactive date later than the one shown in Item 6 of the Declarations.

The option to buy an extended reporting period endorsement may only be elected by the Named Insured by written request made to the Company. Such request and payment for the option must be received by the Company within 60 days of the end of the Policy Period of this policy. The Premium for the option shall be calculated by the Company upon receipt of the Named Insured's written request which shall, in no event, be more than 300% of the policy Premium. Upon acceptance of the Premium for the option by the Named Insured, the Company will issue an extended reporting period endorsement. The Premium for the extended reporting period endorsement shall be fully earned on its effective date and the endorsement cannot be cancelled.

  c.  Claims made during the extended reporting period will be deemed to have been made on the last day of the Policy Period.

  e.  The extended reporting period shall apply only if no subsequent insurance available to an Insured applies to a claim or would apply but for the exhaustion of the applicable limit of such subsequent insurance.

  f.  The term of the extended reporting period endorsement shall not be greater than one year from the effective date of cancellation or non-renewal of the policy and will not take effect unless the additional Premium is paid when due.

## SECTION 2
## EXCLUSIONS

The Company is not obligated to defend or indemnify any Insured for, and this policy does not apply to any claims for or arising out of:

  (a)  acts or omissions committed by an insured or any person, for whose acts or omissions an Insured is legally responsible, which are judicially determined to be: (i) dishonest, fraudulent or criminal, or (ii) acts of willful misconduct committed with reckless disregard or with knowledge that such willful misconduct is a tort or is unlawful;

  (b)  bodily injury to or sickness, disease or death of any person, including but not limited to mental or emotional distress, shock, loss of consortium or loss of services; or injury to or destruction of any tangible property, including the loss of use thereof, or loss of use of tangible property which has not been physically injured;

  (c)  alleged or actual violations in the sale or transfer of any securities, or any violation of the Securities Act of 1933 as amended or the Securities Exchange Act of 1934 as amended or any State Blue Sky or Securities Law or similar state or federal statutes;

  (d)  Claims made by or against or arising out of the operations of any person or legal entity not named in the Declarations:

     (i)  which is wholly or partly owned by any Insured,

     (ii)  which wholly or partly owns any Insured,

     (iii)  which is a parent, subsidiary, affiliated or sister company of any Insured,

     (iv)  which controls, operates or manages any Insured,

     (v)  in which any Insured is a partner, employee, officer, director, sole proprietor, stockholder or trustee; or to any claim made against any Insured solely because an Insured is a partner, employee, officer, director, sole proprietor, stockholder or trustee for any person or legal entity;

  (e)  (i)  Claims regarding any commingling, conversion, misappropriation or defalcation of funds or other property; or

     (ii)  the inability or the failure to pay or collect funds, premium, taxes, or claim money;

  (f)  alleged or actual unlawful restraint of trade, antitrust or unfair business or trade practices, price fixing, fee splitting, kickbacks, illegal rebates, or injunctive relief relating to same, under any federal or state law, statute, rule or regulation;

  (g)  (i)  any claim made by any employee or former employee arising out of a contract of employment with an Insured and alleging breach thereof, including but not limited to wrongful termination or discharge,

     (ii)  alleged or actual violation of duties, responsibilities, or obligations of an Insured regarding an employee benefit plan, pension plan, trust, profit sharing plan or under the Employee Retirement Income Security Act of 1974, Public Law 93-406 (referred to as the Pension Reform Act of 1974), or any amendments, orders or regulations issued pursuant thereto.

     (iii)  any obligation for which an Insured may be held liable under a workers' compensation, unemployment compensation or disability benefits law, or any similar law,

(v) bodily injury to any employee of an Insured arising out of or in the course of such employee's employment by an Insured regardless of the capacity in which an Insured may be found liable or held to share in damages with t' other because of such injury;

(vi) alleged or actual libel, slander, defamation of character, false arrest, detention, or imprisonment, wrongful entry or eviction or other invasion of the right of private occupancy, or publications or utterances in violation of an individual's right of privacy, malicious prosecution or abuse of process, or

(vii) alleged or actual misconduct, humiliation, harassment or unlawful discrimination;

(d) any claim made by an Insured under this policy against any other Insured;

(e) liability of others assumed by an Insured under any contract or agreement, unless such liability would have been covered in the absence of such contract or agreement, or

(f) alleged or actual breach of an express contract, guarantee or warranty;

(g) alleged or actual infringement of copyright, title, slogan, patent, trade name, trademark, service name, or service mark;

(h) the insolvency or bankruptcy of any Insured;

## SECTION 3
## DEFINITIONS

Wherever used in this policy, the following words will have the following meanings:

Claim means either:

1. a demand received by an Insured for money or services; or

2. a notice received by an Insured alleging a breach of duty by any Insured; or

3. service of suit, or notice received of the initiation of arbitration or other proceedings against an Insured;

Claim expenses means the Company's cost of investigation, settlement, negotiation and defense of a specific claim for damages, including suit or arbitration, whether paid by the Company or by an Insured with the Company's consent, and shall include:

1. reasonable attorney's fees;

2. premiums on bonds to release attachments or to prevent execution on any judgment in any defended suit, provided that the Company shall not be obligated to pay:

   (i) the amount of any such premium which is for bond amounts in excess of the Limit of Liability of this policy, or

   (ii) that portion of any such premium for bond amounts to release attachments or prevent execution of any judgment that represents liability which is not covered by this policy;

   provided further, that the Company shall not be obligated to apply for or furnish any bonds or become obligated under such bonds as a principal or guarantor;

3. costs taxed against an Insured in any suit, and interest accruing after entry of judgment until the Company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability hereon;

4. reasonable expenses incurred by an Insured at the Company's request, to assist the Company in the investigation or defense of a suit or claim, but such expenses shall not include loss of earnings, salaries or other compensation paid to anyone employed by an Insured; and

5. all other fees, costs and expenses reasonably and necessarily incurred resulting from the investigation, defense and appeal of a claim, suit or proceeding;

Claim expenses do not include (i) salary charges or expenses of regular employees or officials of the Company; (ii) the fees and expenses of independent adjusters; or (iii) the fees and expenses of attorneys or investigators retained by the Company to represent the Company's sole and separate interests in the investigation and determination of coverage issues concerning this policy;

Covered services means the only services to which this insurance applies as specified in Item 5 of the Declarations.

Damages means a monetary amount: (a) that an Insured becomes legally obligated to pay because of a judgment or award, except those for which insurance is prohibited by law, or (b) for a settlement negotiated with the written consent of the Company, but does not include:

a. punitive or exemplary damages, civil, criminal or administrative fines or penalties, any judgments or awards which are a multiple of compensatory damages or any other fine or penalty;

- the restitution of consideration or expense paid to an insured for services rendered or which should have been rendered;

- injunctive relief, declaratory relief or any recovery or relief other than monetary damages;

- disputes over fees, commissions, deposits, charges made for services or products, costs of reca..., withdrawing, reclaiming, scrapping, correcting, reprocessing, restoring, repleting, reprinting, or reproduction of material or data which has been returned, stopped or damaged;

... means the following persons or legal entities:

- the Named Insured;

- a partner, principal, shareholder, officer, director, or employee of the Named Insured, while acting within the scope of their duties as such in the business of the Named Insured;

- the authorized legal representative of any insured upon appointment by a court of competent jurisdiction in the event of death, mental or physical incapacity of such insured, but only while acting within the scope of their duties as such;

Named Insured means the person or legal entity named in Item 1 of the Declarations of this policy;

Notice to the Company whenever required by this policy means written notice addressed to:

General Star Indemnity Company
P.O. Box 10354
695 East Main Street
Stamford, CT 06904-2354

which notice shall be deemed received by the Company on the date of actual delivery or on the date such notice is deposited in the United States mail, postage prepaid by an Insured or an Insured's authorized representative;

- Person or legal entity means a natural person, partnership, firm, association or corporation or any other kind of business or organization, public or private, its agents and employees;

1. Policy address means the address of the Named Insured as stated in the Declarations, or any change of address after the Inception Date of the policy which an Insured shall be required to report to the Company in writing pursuant to the provisions of the policy Conditions;

SECTION 4
LIMIT OF LIABILITY

1. LIMIT OF LIABILITY: Regardless of the number of: (a) Insureds, (b) persons or legal entities who sustain damages or (c) claims made against all Insureds entitled to coverage by this policy, the Company's maximum Limit of Liability shall not exceed the amount stated in Item 3 of the Declarations. This maximum Limit of Liability shall apply to payment of both damages and/or claim expenses arising from all claims for damages during the Policy Period.

2. DEDUCTIBLE: The Company's obligation to pay damages or claim expenses on behalf of any Insured applies only to the amount of such damages and claim expenses in excess of the Named Insured's obligation to pay the Deductible amount stated in the Declarations. Such Deductible amount shall apply to each and every claim and/or to claim expenses. The Company may pay any part or all of the Deductible amount to settle a claim or suit and, upon notice of the action taken, the Named Insured shall immediately reimburse the Company for such part of the Deductible amount paid by the Company. The Company may incur claim expenses in the defense of an Insured as the Company deems expedient, and the determination of the reasonableness of such claim expenses shall be conclusive upon any Insured. The Named Insured shall immediately pay any claim expenses within the amount of the Deductible at the time such claim expenses are incurred.

3. MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS: The inclusion herein of more than one Insured or the making of claims or the bringing of suits by more than one person or legal entity shall not increase the Company's Limit of Liability. All claims, whenever made, shall be considered first made during the Policy Period or extended reporting period in which the earliest claim arising out of such acts, errors or omissions was first made, and all such claims shall be subject to the single Limit of Liability stated in Item 3 of the Declarations.

SEPARATE CLAIMS AND CLAIMANTS. SEPARATE DEDUCTIBLE. Two or more claims arising out of separate and unrelated acts, errors or omissions, or unrelated transactions involving different claimants, shall be treated as separate claims, regardless of whether such separate claims are joined in a single suit or class action. A separate Deductible amount is stated in the Declarations shall be paid by the Named Insured for each separate claim. All claims made during the Policy Period or extended reporting period shall be subject to the annual aggregate Limit of Liability stated in the Declarations.

NOTICE OF CLAIM OR SUIT: An insured shall, as a condition of this insurance, give notice in writing to the Company of any claim made during the Policy Period of any negligent act, error, omission or circumstance likely to result in a claim

In the event claim is made or suit is brought against an insured, such insured shall immediately forward to the Company every demand, notice, summons or other process received by any insured or insured's representative.

SETTLEMENT: The Company may make such investigation and settlement of any claim or suit as it deems expedient, and shall not be obligated to pay any claim or judgment or to defend any suit after the Company's Limit of Liability has been exhausted by payment of damages or claim expenses as defined herein.

ASSISTANCE AND COOPERATION: An Insured shall cooperate with the Company and upon the Company's request submit to examination and interrogation by the Company's representative, under oath if required, and shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits.

An insured shall not admit liability for or make any voluntary settlement or incur any costs or expenses in connection with any claim, which involves or may involve payment by the Company, except with the prior written consent of the Company.

SUBROGATION: In the event of any payment under this policy, the Company shall be subrogated to the amount of such payment to an Insured's rights of recovery, therefor against any person or legal entity, and such Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the loss to prejudice such rights.

LEGAL ACTION AGAINST THE COMPANY: No legal action may be brought against the Company by a person or legal entity who is not an Insured hereunder until the Company agrees in writing that an Insured has an obligation to pay or until that obligation has been finally determined by judgment after trial and conclusion of any appeal therefrom. No person or legal entity has any right under this policy to bring the Company into any action to determine the liability of an Insured.

FALSE OR FRAUDULENT CLAIMS: If an Insured makes any claim that is false or fraudulent, this insurance shall become void and entitlement to coverage for all claims hereunder shall be forfeited with regard to such Insured.

AUDIT: The Company may examine and audit the books and records of any Insured at any time during the Policy Period and within three (3) years after the final termination of this policy.

OTHER INSURANCE: If other insurance is available to an Insured covering a claim also covered under this policy, this policy shall be in excess of the sum of the applicable Deductible as stated in the Declarations and the limits of liability of such other insurance whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limit of Liability provided in this policy.

CHANGES TO THIS POLICY: This policy contains all the agreements existing between the Named Insured and the Company. Notice to any agent or broker or knowledge possessed by an agent or by any other person shall not effect a waiver or a change in any part of this policy nor estop the Company from asserting any right under the terms of this policy. The terms of this policy cannot be waived or changed, except by endorsement issued to form a part of the policy that has been signed by an authorized representative of the Company.

ASSIGNMENT: No assignment of interest under this policy shall be valid, unless the Company consents by written endorsement to this policy.

CANCELLATION: This policy may be cancelled by the first Named Insured by surrender of the policy to the Company or by mailing written notice to the Company stating when thereafter such cancellation shall be effective. This policy may also be cancelled by the Company by mailing to the first Named Insured, at the policy address, written notice stating when, not less than ten (10) days thereafter, such cancellation shall become effective if the Company cancels for nonpayment of Premium or nonpayment of Deductible. Or such cancellation shall become effective not less than thirty (30) days thereafter when the Company cancels for any other reason. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation in such notice shall become the end of the Policy Period.

If this policy is cancelled by the Named Insured, the earned Premium will be the pro rata earned Premium plus 10% of the pro rata unearned Premium. If the Company cancels, the earned Premium shall be the pro rata earned Premium. The return of unearned Premium will be made as soon as practicable after the effective date of the cancellation but the cancellation date shall not be affected by the date Premium is paid or tendered by the Company. Cancellation by the Company for nonpayment of Premium or nonpayment of Deductible shall be deemed to be a cancellation requested by the Named Insured.

NAMED INSURED'S ADDITIONAL DUTIES AND AUTHORIZATION: The first Named Insured designated in Item 1 of the Declarations is responsible for the payment of Premiums and Deductibles. The first Named Insured is also authorized to receive any return Premiums and to act on behalf of all Insureds with respect to: the giving and receiving of notice of cancellation and non-renewal, accepting endorsements changing the terms of the policy and all other matters pertaining to this policy.

CHANGE OF POLICY ADDRESS: an Insured shall, as a condition of this insurance, immediately give notice in writing to the Company of any change in the policy address during the Policy Period and during the pendency of any claim until such claim has been concluded. Any notice by the Company to any Insured required under this policy may be transmitted to the policy address last indicated by the Named Insured.

INSOLVENCY OR BANKRUPTCY OF INSURED: The insolvency or bankruptcy of any Insured shall not relieve the Company of any of its obligations hereunder.

WITNESS WHEREOF The General Star Indemnity Company has caused this policy to be signed by its President and Secretary at Stamford, Connecticut, but the same shall not be binding upon the Company unless countersigned on the Declarations Page by an authorized representative of the Company.

GENERAL STAR INDEMNITY COMPANY

_____                    _____
Secretary                                  President

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## NUCLEAR ENERGY LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the Business Errors or Omissions Liability Policy.

It is agreed that this policy does not apply to claims for damages.

Under any liability coverage, to injury, disease, death or destruction

1. a. With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   b. resulting from the hazardous properties of nuclear material and with respect to which (1) any person or legal entity is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or legal entity.

I   Under any medical payments coverage, or under any Supplementary Payments provisions relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear facility by any person or legal entity.

II   Under any liability coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear materials, if

   a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

   b) the nuclear material is contained in spent fuel or waste at any time handled, used, processed, stored, transported, or disposed of by or on behalf of any insured; or

   c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

V.   As used in this endorsement

hazardous properties include radioactive, toxic or explosive properties; nuclear material means source material, special material or byproduct material;

source material, special nuclear material, and byproduct material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

waste means any waste material (1) containing byproduct material other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content and (2) resulting from the operation by any person or legal entity of any nuclear facility included under the definition of nuclear facility under paragraph (a) or (b) thereof;

nuclear facility means,

   (a)   any nuclear reactor,

   (b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

with respect to injury to or destruction of property, the word "injury or destruction" includes all forms of radioactive contamination of property.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

endorsement modifies insurance provided under the Business Errors or Omissions Liability Policy.

greed that this policy does not apply to claims for damages:

Any, which have occurred in whole or part out for the actual, alleged or threatened discharge, dispersal, seepage, migra-
lease or escape of pollutants at any time, or

....... of evidence arising out of any:

Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or
neutralize, or in any way respond to, or assess the effects of pollutants; or

Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning
up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of
pollutants.

tants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alka-
nemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.