*EXHIBIT B*

THIS AGREEMENT made this /2th day of April A. D. 1989 between COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Pennsylvania Corporation, of 8 Penn Center, 17th JFK Blvd., Philadelphia, Pa., 19103 (hereinafter called "COMMONWEALTH"), of the one part and

                        Coastal Title Agency Inc.
                        Wemrock Professional Mall
                        509 Stillwell's Corner Road
                        Freehold, NJ  07728

of                     (hereinafter called "AGENT"), of the other part:

WITNESSETH THAT:

The parties hereto for and in consideration of the mutual promises, covenants and agreements herein contained, and each intending to be legally bound hereby, do agree as follows:

1. COMMONWEALTH hereby designates and appoints AGENT as its representative or agent for the territory mentioned below, under the terms and conditions specified herein.

                    Freehold and County of Monmouth

To originate applications for title insurance, to prepare abstracts, to examine titles to real estate, to prepare and issue commitments, binders and reports of title, including the removal of objections on commitments, binders or reports of title, and to issue policies of title insurance on properties located in the State of New Jersey, all in accordance with the rules, regulations and instructions of COMMONWEALTH and the applicable Insurance Department. The appointment of AGENT hereunder is not an exclusive agency for the territory described and is subject to the right of COMMONWEALTH to make appointments of other AGENTS or representatives for all such territory.

2. AGENT COVENANTS AND AGREES WITH COMMONWEALTH AS FOLLOWS:

(a) To observe strictly all general instructions, rules and regulations issued by COMMONWEALTH;

(b) To exercise due diligence and reasonable care in the abstracting and examination of title to properties examined by AGENT and to make sure that all abstracts and examinations made by partners or associates of AGENT or other parties are also made with due diligence and in the exercise of reasonable care;

-1-

(c) Not to participate in any litigation or other activity which is detrimental to the interests of COMMONWEALTH;

(d) To issue commitments, binders and reports of title and title policies in accordance with the information contained in the applications and abstracts of title produced by AGENT or filed with AGENT in satisfactory form promptly after such filing;

(e) Before final closing or settlement (1) to secure, on behalf of COMMONWEALTH, appropriate evidence justifying the removal of all objections set out in the commitment, binder or report of title, except for those not insured against, (2) to secure written approval of COMMONWEALTH for the removal of those objections as to which AGENT considers there is any reasonable doubt before removing the same, and (3) to retain evidence justifying the removal of all objections removed, which evidence may be inspected by COMMONWEALTH at its option;

(f) As AGENT for COMMONWEALTH to record all papers which should be recorded, to make payment out of escrow or closing funds of all obligations which constitute liens on the property and to be responsible for the satisfaction of such liens of record;

(g) All escrow or closing funds deposited with AGENT shall be deposited in a separate Escrow Account. The acceptance of such funds by the AGENT shall be done for the immediate disbursement of such funds in the normal course and conduct of real estate transactions. It is not to be construed that the AGENT is authorized to accept deposit of escrow funds to be held over an extended period of time, the disbursement of which is contingent upon events after the closing of the transactions and issuance of policy of title insurance. The AGENT shall not handle any matters or do any business in the name of COMMONWEALTH except as specifically authorized herein or otherwise expressly authorized by COMMONWEALTH;

(h) To collect or cause to be collected, all fees for policies, prior to the issuance thereof, on behalf of COMMONWEALTH in accordance with the Schedule of Fees approved by COMMONWEALTH;

(i) To forward weekly, or more frequently based upon volume, copies of all policies and related commitment vouchers to;

        COMMONWEALTH LAND TITLE INSURANCE COMPANY
        NATIONAL PROCESSING CENTER
        223 South Fifth Street
        P.O. Box 35180
        Louisville, Kentucky 40232

To remit to COMMONWEALTH the net premium shown on the monthly statement provided by the National Processing Center. It is the intention of this provision that AGENT shall be responsible and liable to COMMONWEALTH for the net fees due COMMONWEALTH;

(j) To refer to COMMONWEALTH all title questions and problems deemed doubtful by AGENT which may arise in connection with insuring of titles, and to follow the directions of COMMONWEALTH with respect to the resolution thereof;

(k) In all cases where the application is for a policy of $ 1,000,000.00 or more, AGENT agrees to notify COMMONWEALTH and, if required, agrees to submit the commitment, binder, title report, searches, abstracts or note of title and attorney's opinion or certificate to COMMONWEALTH before delivering the commitment, binder or title report to the applicant for insurance, and if the application is for less than $1,000,000 not to increase it above $1,000,000 without the approval of COMMONWEALTH;

(l) AGENT agrees to be solely liable for all attorney's fees, court costs, expenses and loss or aggregate of losses resulting from (a) fraud, negligence* or misconduct of AGENT, its officers or employees in the performance of its duties as AGENT of COMMONWEALTH; (b) escrow and/or closing loss or losses wherein AGENT fails to disburse properly or close in accordance with escrow and/or closing instructions or where such escrow and/or closing funds are misappropriated by AGENT, its officers or employees; *Agent's liability for its negligence shall not exceed the amount covered by its E&O Policy of $250,000.00.

(m) To furnish COMMONWEALTH with a certificate showing that AGENT has secured a "Lawyer's Protective Policy and/or Errors and Omissions Policy" with a Company satisfactory to COMMONWEALTH in the sum of not less than ~~XXXXXXXXXXXX~~ $250,000 such policy to be kept current and to cover loss or damage caused by any negligent act, error or omission of AGENT, associates or employees in the performance of services to be rendered to COMMONWEALTH hereunder;

(n) To maintain the Agent's File Register furnished by COMMONWEALTH showing all commitments, binders, reports of title and policies issued, and when requested by COMMONWEALTH, to furnish a list of all commitments, binders and policies remaining in AGENT'S possession;

(o) To keep in a manner and form prescribed or approved by COMMONWEALTH true and correct records and books of account of escrows and closings and all other transactions under this Agreement, and to carefully preserve all records, books, books of account, files, documents, correspondence and material of all kinds which shall be kept by AGENT or shall come into AGENT'S possession or under AGENT'S control, relating to transactions of COMMONWEALTH so that such books, records, and material

may be available for inspection and examination of COMMONWEALTH, and to make the same available during and after the terms of this Agreement for the purpose of auditing financial accounts or in connection with the settlement of any claim or loss. COMMONWEALTH shall, at its option and expense, be entitled to make copies of any such books or accounts' records;

(p) To permit COMMONWEALTH, at any time, to examine or audit all books and records, files, securities and other papers and documents of AGENT relative to title insurance written on behalf of COMMONWEALTH;

(q) To immediately forward to COMMONWEALTH, by certified mail, return receipt requested, all claims or demands of any kind or nature received by AGENT in respect to the business of COMMONWEALTH or any title insurance policy, commitment, binder or report of title issued or assumed by it, including but without limitation, all legal process against COMMONWEALTH served upon or received by AGENT;

(r) If so requested by COMMONWEALTH to defend or assist in the defense of any litigation brought as a result of any claim based upon any commitment, binder, report of title, or title insurance policy issued by AGENT;

(s) To furnish COMMONWEALTH a Lost Policy Affidavit for any prenumbered forms which AGENT states have not been issued but which AGENT claims have been lost or mislaid;

(t) Not to do any business in the name of COMMONWEALTH except as specifically authorized herein or as otherwise expressly authorized by COMMONWEALTH in writing;

(u) Upon termination of this Agreement to turn over to COMMONWEALTH all forms supplied by COMMONWEALTH, accounting for all prenumbered forms, all applications for title insurance on file with AGENT, whether pending or completed, and to file a final accounting of all fees collected or due and payable;

3. COMMONWEALTH COVENANTS AND AGREES WITH AGENT AS FOLLOWS:

(a) To designate Robert Agel and such other persons as may be recommended by AGENT, licensed by the State of New Jersey and approved by COMMONWEALTH as persons authorized to countersign on behalf of COMMONWEALTH all commitments, reports of title, binders, title insurance policies and endorsements thereon covering real estate located in the above described territory. COMMONWEALTH may withdraw such authorization for just cause and make other authorizations agreeable to AGENT from time to time and its acts in this respect shall be effective when communicated to the AGENT;

(b) To supply AGENT with commitment for Title Insurance forms, reports of title forms, binders, title insurance policies and endorsements therefor in quantities as may be required and to furnish an Agent's File Register in which records shall be kept by AGENT as to the disposition of all forms. AGENT will not print, or cause to be printed, any of the aforesaid forms and agrees that all unused forms furnished by COMMONWEALTH to AGENT are and will remain the property of COMMONWEALTH;

(c) To pay AGENT as compensation on transactions originated by AGENT for services hereunder a commission on the premium paid for title insurance on the following basis:

See Exhibit "A" attached hereto.

The minimum premium to COMMONWEALTH shall be $15.00 for each policy.
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

AGENT not to participate with COMMONWEALTH on Mechanics' Lien or other Special Risk premium collected.

(d) Whenever it is necessary, requested or deemed advisable to purchase reinsurance or coinsurance on any single policy or aggregate of policy liability comprising one risk, the cost thereof shall be first deducted from the gross premium and the division of premium between COMMONWEALTH and the AGENT shall be made on the balance of such gross premium after such charge.

(e) To pay AGENT as compensation for services in producing commitments, binders and final reports of title, conducting settlements or otherwise servicing matters of title insurance originating by or through the offices of COMMONWEALTH, a fee to be agreed upon between COMMONWEALTH and AGENT.

4. IT IS MUTUALLY AGREED:

(a) This Agreement shall continue until terminated by either party upon ninety (90) days' notice in writing to the other party at either's principal office. This Agreement may be terminated by COMMONWEALTH immediately on notice in writing to AGENT if AGENT shall have materially breached any term or conditions

hereof, or materially deviated from any instruction, rule or regulation of COMMONWEALTH or exercised any authority in conflict herewith, or in the event of insolvency, fraud or misconduct of AGENT, or in the event that the activities of AGENT or the Agency created by this Agreement shall violate, or be deemed by the Department of Insurance to violate, any law or regulation governing AGENTS for title insurance companies;

(b) In the event of termination, AGENT agrees to keep available to COMMONWEALTH all searches, abstracts, and opinions of title relative to the real estate which COMMONWEALTH has insured pursuant to the provisions of this Agreement;

(c) Nothing contained in this Agreement shall preclude COMMONWEALTH from reinsuring or coinsuring with other title insurance companies the title to property located in the above described territory when COMMONWEALTH has been requested so to do by such other title insurance company or companies;

AGENT shall not be entitled to any commission in connection with any such reinsurance or coinsurance unless COMMONWEALTH shall, at its discretion, request AGENT to review titles to be reinsured or coinsured, and if such request is made, AGENT shall be entitled to a reading charge;

(d) This Agreement is not transferable or assignable by either party without the written consent of the other party; nor are any rights or interests arising hereunder in favor of either party hereto subject to transfer or assignment without such written consent. A merger or consolidation of COMMONWEALTH with another title company shall not be considered a transfer or assignment for the purpose of this paragraph;

(e) This Agreement constitutes the entire relations between the parties and there are not representations, warranties, covenants or promises, whether made as inducement to the execution hereof, or otherwise not set forth herein, all such and all prior negotiations being expressly merged and integrated herein.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

                COMMONWEALTH LAND TITLE INSURANCE COMPANY

By _____
         Vice President
        A. Roger Blauvelt

ATTEST:

_____
    Secretary

                COASTAL TITLE AGENCY INC.

By: _____
          Agent

WITNESS:

_____
Secretary

-7-

EXHIBIT "A"

Agent shall remit to Commonwealth 20 percent of the filed rate chargeable to the insured according to the Commmonwealth Manual of Rates and Charges, less the following amount which is retained by Agent.

1. On a basic rate transaction....................$105
2. On a reissue rate transaction.................$ 90
3. On a refinance rate transaction...............$ 90
4. On a construction rate transaction............$105

Agent shall retain the $20 simultaneous issue loan policy charge.