*EXHIBIT D*



# TRW Title Insurance of New York Inc.

## AGENCY CONTRACT

THIS CONTRACT, made and entered into this ___1st___ day of __January__, 19_91_, by and between TRW TITLE INSURANCE OF NEW YORK INC., a New York corporation, herein "Principal", the principal office of which is at 170 Jericho Turnpike, Floral Park, New York 11001, and * __Coastal Title Agency, Inc. a N.J. Corporation__,
herein "Agent", who operates and maintains a title plant or is engaged in the abstract or title business at __509 Stillwells Corner Road,__
City of __Freehold__, __Monmouth__ County, State of __New Jersey__
__07728__
(zip)

For the purpose of securing to each other the benefits to be derived herefrom and in consideration of the mutual promises hereinafter set forth, Principal and Agent hereby agree as follows:

**APPOINTMENT**

1. Principal hereby appoints Agent to act for, and in the name of, Principal in transacting the title insurance business but only for the purposes and in the manner specifically set forth in this CONTRACT and for no other purpose and in no other manner whatsoever, the authority hereby granted being subject to all of the limitations on the scope of the Agency contained in this CONTRACT.

**AUTHORITY**

2. Agent is authorized to issue, in the name of Principal, title insurance commitments, binders and policies (including endorsements thereof); provided, however, that:

   a. Each of them is based upon, and in strict accordance with, a determination of insurability made in the manner specified in paragraph 3 of this CONTRACT;

   b. None of them shall obligate Principal in a face amount in excess of $ __1,000,000.00__, in the absence of specific written authority from Principal;

   c. Each of them relates to land located in:

   The State of New Jersey

   d. Each of them is issued on a form furnished Agent by Principal, the printed portion of which form has not been altered or changed by Agent except to the extent authorized in writing by Principal;

   e. Each of them is signed, personally, on behalf of Principal, by one of the approved agents designated as
   Robert F. Agel
   Matthew J. Maguire
   Michael O'Connell
   Sally Casalese
   John Halverson
   or by some other person designated in writing b...

FY013008

**DETERMINATION OF INSURABILITY**

3. The insurability of a title shall be determined in the following manner:

   a. Agent shall compile all relevant title and tax information up to the current date which would be included in an abstract of title prepared by Agent in accordance with prudent abstracting practice and shall include therein such information as is obtained from any search of the public records which Agent or Principal shall deem appropriate. Such title and tax information may consist, in part, of a certified abstract of title or of a title insurance policy, either of which may be deemed by the Agent, in the exercise of his sound discretion, to show all relevant title and tax information up to the certification or issuance date thereof.

   b. Agent, in the exercise of his sound discretion, may subject to compliance with such instructions as Principal may have given Agent in writing and after careful consideration of all relevant title and tax information compiled pursuant to subparagraph a of this paragraph 3 determine the status and insurability of the title to subject land.

   c. Whenever a title insurance policy is ordered from Agent pursuant to a commitment or binder issued by Agent and whenever an endorsement of an outstanding title insurance policy is ordered from Agent, Agent shall compile and examine all relevant title and tax information (as specified in subparagraph 3, a, above) and shall determine the insurability of the title to subject land.

   d. If any reasonable doubt as to the insurability or marketability of the title involved or as to the desirability of issuing any title insurance commitment, binder, endorsement or policy shall arise in the mind of Agent, full information concerning same shall be furnished to Principal and Agent shall then proceed only in accordance with the instructions of Principal. Notwithstanding any other provision of this CONTRACT, Principal shall take the full responsibility and liability for any loss arising from any title defect which the Principal, in writing, instructs the Agent to pass except as provided in paragraph 8 hereof. Principal shall furnish all reasonable counsel and advice to Agent without charge.

**PREMIUMS**  XXX
see attached rider

4. Agent shall charge customers title insurance premiums determined by reference to Principal's rate schedules established for use in the geographical area in which Agent is authorized to transact business by this CONTRACT. In the event such rate schedules are changed in any way, Agent, upon receipt of notice of the change, shall follow the rate schedules as changed. Agent is authorized to receive and collect title insurance premiums for, and on behalf of, Principal and to give receipts therefor which shall be binding on Principal. Agent assumes full responsibility for collection of all title insurance premiums due. All premiums collected by Agent, less the commission to which Agent is entitled, shall be held by Agent as trustee for the use and benefit of Principal until paid to Principal.

**REPORT OF PREMIUMS**

5. Agent shall mail to Principal on or before the 15th day of each month, a report, in form prescribed or approved by Principal, of all title insurance policies and endorsements issued during the preceding calendar month. Said report shall be accompanied by Agent's remittance to Principal of the portion of the premiums to which Principal is entitled pursuant to Schedule A, Commission Schedule, attached hereto, which has been executed by both parties to this CONTRACT. As between Principal and Agent, each premium is deemed to have been received by Agent and to have become due to Principal on the date of delivery of the related policy. Said report shall

FY013009

RECORD RETENTION

7. Agent shall maintain in a manner and form as prescribed or approved by the Principal, all supporting documents which enable Agent to issue a commitment, binder or policy, together with all books, books of account, files, documents, correspondence and records of all kinds which at any time shall be kept by Agent or come into Agent's possession or under Agent's control, relating to transactions conducted by Agent on behalf of the Principal. Agent shall maintain all such information in original form, or microfilm or other legible reproduction for a period of at least twenty (20) years. All such documents shall be available at all times for inspection and audit by accredited representatives of Principal.

CLAIMS

8. In the event that a party insured under a title insurance commitment, binder or policy written pursuant to this CONTRACT shall claim loss or threatened loss against which he is insured, or is alleged to be insured, the rights and responsibilities of the parties hereto shall be as follows:

a. Each party hereto shall give prompt notice to the other of any such claim received or rumored.

b. Agent shall furnish to Principal such additional and up-to-date title and tax information as Principal may request, shall consult with Principal concerning such claim and shall cooperate fully in investigation, negotiation and litigation in respect thereof, all with such promptness as the circumstances permit and all at no cost to Principal.

c. Principal shall proceed with such investigation, negotiation and litigation of any claim of loss as Principal shall deem appropriate and shall employ counsel of its choice to render such service as Principal shall deem desirable. Principal shall keep Agent as fully informed as shall be practicable concerning progress made toward final settlement. Principal shall have the sole right to effect a settlement of any claim of loss. If Principal claims that Agent is liable to Principal for part or all of the loss suffered, no settlement shall be effected by Principal unless Principal shall first consult with Agent in respect to the proposed settlement and seek, in good faith, to come to an agreement with Agent as to the extent of Agent's liability to Principal. The loss involved in a settlement effected by Principal shall not be deemed to fix the liability of Agent to Principal unless Agent and Principal shall so agree.

XXX
see attached rider

d. Agent shall indemnify Principal and save Principal harmless from all losses, including attorneys' fees, suffered by Principal to the extent to which such losses are fairly attributable to errors in abstracting or any failure of Agent to comply with the terms of this CONTRACT. In the event of disagreement between Agent and Principal in respect to Agent's liability or the extent thereof, the matter at issue shall be submitted to an impartial arbiter chosen by Principal and Agent and both parties shall agree to be bound by the decision of the arbiter.

FY013010

e. Except to the extent to which Agent may be liable to Principal for Agent's error in abstracting or Agent's failure to comply with this CONTRACT, or both, Principal shall be liable fully for all title insurance losses, including attorneys' fees, suf-

**EFFECTIVE PERIOD**

10. This CONTRACT shall become effective on _____February 12_____, 19 91 or as soon thereafter as Agent shall obtain such Agent's license or certificate of authority as may be required by the laws of the state of Agent's domicile. This CONTRACT shall remain in full force and effect until terminated by either party hereto pursuant to paragraph 11 of this CONTRACT; provided, however, that this CONTRACT, and all authority herein granted, shall terminate immediately upon revocation, cancellation or failure to renew Agent's license or certificate of authority or if Agent shall cease to operate and maintain any title plant referred to in the initial paragraph of this CONTRACT.

**TERMINATION**

11. This CONTRACT may be terminated as follows:

　　a. Each party shall have the right to terminate the CONTRACT by giving written notice of such intent to the other, which written notice shall specify the effective date of termination of this CONTRACT, which termination date shall be not less than thirty (30) days after the mailing of such written notice.

　　b. Principal, at its election, may terminate this CONTRACT should:

　　　　(1) Agent become the subject of liquidation, receivership or bankruptcy proceedings, should a conservator or rehabilitor be appointed for Agent or should Agent be acquired or controlled by any third person, firm or corporation. Termination pursuant to this subparagraph (1) shall be effective immediately upon Agent's receipt of written notice thereof unless the notice specifies a later date, in which case it shall be effective on such later date.

　　　　(2) Agent become more than 30 days delinquent in mailing to Principal the monthly report and remittance called for by paragraph 6 of this CONTRACT or should Agent fail, for any period of time, to comply with any other term of this CONTRACT or with any rule, regulation or instruction issued by Principal to Agent in respect to safe and acceptable underwriting practices. Principal may terminate this CONTRACT pursuant to this subparagraph (2) by mailing to Agent a written notice which specifies in reasonable detail the default or defaults of Agent which are the basis of termination and which designates the effective date of termination which shall not be less than 30 days after mailing of such written notice; provided, however, that if Agent shall cure, to the satisfaction of Principal, the default or defaults specified in such notice prior to the designated effective date of termination, termination shall not be effective and the notice shall be of no effect. Principal shall have the right, by so stating in such notice, or in a separate later notice, to suspend, effective immediately upon receipt by Agent or on any later specified date, Agent's authority to undertake new title risks by the issuance of commitments, binders, policies or endorsements.

　　　　(3) There be any substantial change in ownership, management or control of Agent's business or of Agent's title plant. Termination pursuant to this subparagraph (3) shall be effective immediately upon Agent's receipt of written notice thereof unless the notice shall specify a later date, in which case it shall be effective on such later date.

　　c. If termination is effected pursuant to subparagraphs a or b of this paragraph 11, Principal may in writing authorize Agent to continue after termination to write policies and endorsements...

FY013011

# TRW Title Insurance of New York Inc.

## SCHEDULE B - INSURED CLOSING AGENCY AGREEMENT

THIS AGREEMENT made and entered into the 12th day of February 19 91 between Coastal Title Agency, Inc. hereinafter called "AGENT" and TRW TITLE INSURANCE OF NEW YORK INC., hereinafter called "TRW".

WHEREAS, Agent is authorized to issue title insurance on behalf of TRW in the State of _____, and in connection therewith, has been requested by one or more lending institutions to close real estate loans on behalf of such lending institutions and issue title insurance in connection therewith; and

WHEREAS, such lender or lenders have or may in the future request, in connection with such loan closings, a guaranteed loan closing letter from TRW, assuring the faithful performance of the closing instructions of such lender by Agent.

NOW, THEREFORE, in consideration of the issuance of such guaranteed closing letters in the past or hereafter by TRW, Agent undertakes to indemnify TRW from any and all liability, loss or damage TRW may suffer as a result of claims, demands, costs or judgments arising against it as a result of its issuance of any such guaranteed closing letters.

It is agreed that TRW may, at any time, and without notice to Agent, cancel such guaranteed closing letters.

IN WITNESS WHEREOF, the parties have executed this agreement the day and year first above written.

TRW TITLE INSURANCE OF NEW YORK INC.

BY: _____  BY: _____
         "TRW"                         "AGENT"

FY013012

e. Upon termination of this CONTRACT for any reason, Agent shall immediately account to Principal for all unpaid premiums, promptly return to Principal all unused policy forms, blanks and supplies furnished by Principal and deliver to Principal a copy of each title insurance commitment and binder then outstanding.

**AGENT'S BUSINESS**

12. Agent agrees to take all reasonable steps to solicit title insurance business and to promote the use of title insurance in the area in which he does business. Agent shall give Principal prompt notice of any substantial change in ownership, management or control of Agent's business or of Agent's title plant. Agent agrees to enter into no sale, lease or other disposition of its title plant except one which will preserve to Principal all of the rights of Principal under this CONTRACT.

**AGENT'S INSURANCE**

13. Agent, at Agent's cost and expense, shall maintain a policy insuring against hazards commonly covered in a "Title Insurance Agent's Errors and Omissions" policy, in form satisfactory to Principal, with policy limits of at least_____ and shall maintain such policy in full force during the term of this contract and, on an annual basis, furnish Principal with certificates of insurance indicating such coverage is in effect currently. Such policy shall not be cancelled without at least ten (10) days prior written notice to Principal.

**NOTICES**

14. All notices and other communications from Principal to Agent or from Agent to Principal shall be mailed to the addressee at the address which appears in the initial paragraph of this CONTRACT.

**ASSIGNMENT**

15. The rights under this CONTRACT are not transferable or assignable by either party without the written consent of the other, except, that the rights and obligations hereunder shall bind and inure to the benefit of any corporate successor of Principal.

**AMENDMENT**

16. No amendment or modification of this CONTRACT, nor any supplemental CONTRACT between the parties, nor any agreement in conflict with any of the provisions hereof shall be valid unless in writing and executed with the same formality as this CONTRACT.

EXECUTED AT _Hackensack_ State of _New Jersey_ as of the day and year first above written but actually on the _11th_ day of _February_ 19_91_.

TRW TITLE INSURANCE
OF NEW YORK INC.
(PRINCIPAL)

By: _Henry R Kollermann_

By: _____

FY013013

EXECUTED AT _Freehold_ State of _New Jersey_ as of the day and year first above written



# TRW Title Insurance of New York Inc.

SCHEDULE A - RATE AND COMMISSION SCHEDULE

*See Amendment dated 7/24/91*

Being part of a certain Agency Contract between TRW TITLE INSURANCE OF NEW YORK INC. and Coastal Title Agency, Inc. a New Jersey Corporation 509 Stillwells Corner Road, Freehold, NJ

dated January day of 1st 19 91.

A Rate Schedule attached hereto and made a part hereof sets forth rates to be quoted and charged for title insurance policies in Agent's territory. The compensation Agent is to receive in full payment for his service in procuring and writing direct insurance hereunder shall be computed at 80% of the rates quoted in the Rate Schedule. The rates to be so quoted and charged do not include the cost of making abstracts and searches, and such cost is in no case to be charged against the remittance due Principal.

FY013014

## RIDER

(1) Paragraph 4 is amended in part as follows:

    4. Agent shall....All premiums collected by Agent, less the commission to which Agent is entitled, shall be held by Agent, as trustee for the use and benefit of Principal until paid to Principal, <u>in accordance with Regulations of the State of New Jersey governing same. Principal hereby authorizes Agent to retain interest accrued on said premiums.</u>

(2) Paragraph 8d. is amended to read in part:

Agent shall indemnify Principal and save Principal harmless for all losses, including attorneys' fees, suffered by Principal to the extent to which such losses are fairly attributable to <u>any dishonest, fraudulent, malicious, criminal or grossly negligent act or omission of Agent in connection with the issuance of a title binder, Commitment to Insure Title, Title Insurance Policy or Abstract of Title on behalf of Principal</u> or any failure of Agent to comply with the terms of this contract. In the event...

FY013015

# AMENDMENT TO CONTRACT

DATE  July 24, 1991

The Agency Contract between TRW Title Insurance of New York Inc. and Coastal Title Agency, Inc. dated the 1st day of January, 19 91 is hereby amended in accordance with the following:

Agent's compensation under Schedule A-Rate and Commission Schedule shall be computed as follows:

Agent shall remit to principal 15% of the rates quoted in the Rate Schedule for policies up to the first $2,000,000.00 of liability on each policy and $0.35 for each additional $1,000.00 of liability in excess of $2,000,000.00; the balance of the rate charged to be retained as Agent's compensation.

TRW Title Insurance of New York Inc

By _____
   Henry R. Kellermann, Vice President

Attest _____

AGENT

By _____

FY013016