# STONE M MAGNANINI
## LLP

COMPLEX COMMERCIAL LITIGATION

**NEW JERSEY OFFICES**   150 JFK Parkway, Short Hills, NJ 07078   P 973.218.1111   F 973.218.1106

March 5, 2012

**VIA CM/ECF AND REGULAR MAIL**

Honorable Michael A. Shipp, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey 07101

    Re:    *Walsh Securities, Inc. v. Cristo Property Management, LTD, et al.*
             Civil Action No. 97-3496 (DRD/MAS)

Dear Judge Shipp:

    We represent Plaintiff Walsh Securities, Inc. ("Plaintiff" or "WSI") in the above-entitled action. Please accept this letter brief in further support of WSI's motion for turnover of the funds currently held in escrow from the settlement with Coastal Title Agency ("Coastal"). Defendants Commonwealth Land Title Insurance Co. ("Commonwealth"), Fidelity National Title Insurance Co. of New York ("Fidelity") and Nations Title Insurance of New York, Inc. ("Nations") (collectively, "the Title Insurance Defendants") submitted a joint opposition brief that is nothing but smoke and mirrors. First, the majority of the arguments they raise are irrelevant based on the one document they made sure not to include in their opposition – the settlement agreement with Coastal and its carrier General Star. The reason there is no mention or inclusion is that the settlement agreement covers "all claims" and goes on to state that General Star has no duty to indemnify the parties for "any of the claims." (Exhibit A). The parties further agreed to stipulations of dismissal with each party to bear its own costs. Secondly, the cross-claims contemplated that there would first be a finding of liability as to the Title Insurance Defendants; that has not yet occurred. In fact, WSI's proposal generously provides them with an offset. Nonetheless, under the law of the case, the contribution claims would have certainly been dismissed and it is possible even the indemnification claims would have been dismissed. Simply put, the Title Insurance Defendants are bound by the language contained in their cross-claims, the law of the case, and the terms of the settlement agreement. Under each of these scenarios, WSI respectfully requests that the Court enter an Order awarding the Coastal settlement funds to Plaintiff, with an offset to the Title Insurance Defendants for that portion of damages for which they are deemed, by the fact finder, jointly and severally liable for Coastal's conduct.

## ARGUMENT

### The Settlement

    Under the law of the case, the Title Insurance Defendants' cross-claims for contribution and indemnification were going to be dismissed in response to Coastal's motion to dismiss.

(Dkt. 410). To prevent that, the Title Defendants, specifically Mr. Kott, suggested that the parties try to negotiate with General Star for its wasting policy. Regardless of whether General Star disclaimed coverage for Coastal's acts (and it certainly never agreed to indemnify any party for unalleged breach of contract claims), it agreed to defend Coastal and its coverage limits were being consumed by this litigation. Coastal and General Star agreed to a mediation to have the claims against Coastal dismissed and agreed to settle for less than the amount remaining on the policy. Mr. Kott initially suggested WSI receive the money and give an offset to the Title Defendants. Part of the reason for that discussion was that WSI has suffered losses as a result of the fraud, but the Title Insurance Defendants had not. While WSI holds a judgment for more than $500 million entered by this Court, the Title Insurance Defendants have not suffered a loss and are not entitled to a windfall.

Thus, instead of a trial in which Coastal may have been found liable to WSI under its direct claims the parties settled their claims with Coastal for $425,000 and Judge Winfield in the Bankruptcy Court approved the settlement on May 26, 2011. *See* No. 10-44845-NLW, Dkt. 45 (Bankr. D.N.J.). The Title Insurance Defendants' argument[1] that WSI is not entitled to the settlement proceeds because WSI's claims against Coastal were in tort and Coastal's insurance carrier denied coverage based on an intentional acts exclusion is absurd. It is elementary that parties can have various business reasons for entering into settlements when they fundamentally believe there is no liability. The Title Insurance Defendants lead the Court on a frolic and detour by making summary judgment arguments about liability that are completely irrelevant because the parties settled these claims. In this instance, the Coastal settlement agreement states: "the Parties understand and acknowledge that General Star has taken the position that there is no duty to indemnify Coastal Title for any of the claims asserted against it in the Underlying Litigation." (Exhibit A at 2). It only "agreed to defend Coastal Title in the Underlying Litigation under a full reservation of rights." (Exhibit A at 1-2). The settlement agreement further provided that "the Parties to this Agreement, without any admission of liability on any of their part but to the contrary denying same, desire to amicably resolve <u>all claims</u> between and amongst them stemming from the Underlying Litigation." (Exhibit A at 2, emphasis added). There can be no doubt about this because the settlement agreement also stated:

> "The Settlement Payment and the relinquishment of claims by, between and among the Parties have been agreed to by way of compromise of the disputed claims, and such payment and relinquishment of claims are not to be construed as admissions of liability by any party, by whom liability is expressly denied."
> (Exhibit A at 9).

---

[1] The reason Fidelity/Nations did not file their own brief is that neither title company has alleged, nor has Coastal admitted, that it may have used the wrong form for their specific CPLs, as occurred with Commonwealth. Thus, Commonwealth did not attach any Fidelity or Nations CPL forms in the hopes that the Court would overlook that there are no "negligence" or "gross negligence" contribution or indemnification claims by Fidelity or Nations against Coastal.

"It is agreed that none of the Parties shall be deemed a "prevailing party" or "successful" party for purposes of any further claim for statutory or contractual attorney fees or costs." (Exhibit A at 10).

What is also notable is that in its Answer to WSI's Fourth Amended Complaint, Coastal asserted cross-claims against the Title Insurance Defendants. (Dkt. 309). Thus, in addition to WSI and the Title Insurance Defendants agreeing to dismiss Coastal with Prejudice, Coastal also agreed to "execute a stipulation of dismissal with prejudice of all claims against the Title Insurance Defendants." (Exhibit A at 7). Additionally, the provision provided that each party was to bear its own costs and fees. (*Id.*). It is inconceivable how they can agree to bear their own "costs and fees" and then tell the Court that they have been damaged because by virtue of Coastal's breach of its agency contracts because they "have expended significant legal fees and expenses in defending the action." (Opp. Br. at 12). As discussed in more detail below, the Title Insurance Defendants did not file a Third Party Complaint against Coastal, rather they filed cross-claims for contribution and indemnification that are virtually identical to cross-claims asserted against the other tortfeasors. These cross-claims contemplated indemnification resulting from a finding of liability as to the Title Insurance Defendants and did not contemplate attorneys' fees accruing under the American Rule prior to a settlement where there was no admission of liability. The Title Insurance Defendants are not entitled to a windfall because Coastal and WSI resolved their dispute and a credit for that portion of damages attributable to Coastal's conduct for which the Title Insurance Defendants are ultimately deemed joint and severally liable is more than sufficient. Besides, they agreed to bear their own costs and fees.

**The Cross-Claims for Contribution and Indemnification**

Though the Title Insurance Defendants provide no explanation for why they did not file a Third Party Complaint against Coastal, they are bound by the cross-claims for contribution and indemnification that they filed, which are quoted in their entirety below for the convenience of the Court. While Commonwealth only asserted an indemnification claim against Coastal and the attorneys alleged to have participated in the fraud, Fidelity/Nations asserted indemnification claims against all of the tortfeasors, including Mr. Calanni. Nevertheless, as can be gleaned from a reading of the indemnification claims, the indemnification claims both contemplate that there will be a finding of liability against the Title Insurance Defendants that will trigger the cross-claims for indemnification. Commonwealth's indemnification claim states: "for any and all sums which defendant Commonwealth Land Title Insurance Company may be required to pay in this action." Similarly, Fidelity/Nations' indemnification claim states: "Any damages for which Answering Defendants/Cross-claim Plaintiffs may be held liable are chargeable to the Cross-claim Defendants." There is simply nothing in these cross-claims that justifies an award of damages to the Title Insurance Defendants before they are found liable to Plaintiff.

*Commonwealth's Cross-Claim for Contribution states:*

Defendant, Commonwealth Land Title Insurance Company, denies any liability to plaintiff or to any other defendant, but if Commonwealth Land Title Insurance

> Company is found liable, it demands contribution from Cristo Property Management, Ltd., a/k/a G.J.L. Limited, DEK Homes of New Jersey, Inc., Oakwood Properties, Inc., National Home Funding, Inc., Capital Assets Property Management & Investment Co., Inc., Capital Assets Property Management, L.L.C., William Kane, Gary Grieser, Robert Skowrenski, II, Richard Calanni, Richard DiBenedetto, James R. Brown, Thomas Brodo, Ronald Pierson, Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, Esq., Lawrence Cuzzi, Anthony D' Apolito, DAP Consulting, Inc., Nations Title Insurance of New York, Inc., Fidelity National Title Insurance Company of New York, Coastal Title Agency, Donna Pepsny, Weichert Realtors, and Vecchio Realty, Inc. d/b/a Murphy Realty Better Homes and Gardens pursuant to the New Jersey Tortfeasors Contribution Act.

(Dkt. 304).

*Commonwealth's Cross-Claim for Indemnification states:*

> While denying any liability to the plaintiff or to any other defendant whatsoever, defendant Commonwealth Land Title Insurance Company nevertheless asserts that any losses sustained by plaintiff or by any other defendant were the proximate result of the actions of defendants Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, and Coastal Title Agency, which actions were primary and active, and if defendant Commonwealth Land Title Insurance Company is found liable to plaintiff with respect to such damages, such liability results solely from secondary, imputed, vicarious or passive negligence and defendants Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, and Coastal Title Agency are liable to defendant Commonwealth Land Title Insurance Company by way of indemnification for any and all sums which defendant Commonwealth Land Title Insurance Company may be required to pay in this action.

(Dkt. 304).

*Fidelity/Nations' Cross-Claims for Contribution and Indemnification state:*

> Answering Defendants/Cross-claim Plaintiffs, Fidelity National Title Insurance Company of New York and Nations Title Insurance of New York, say, by way of cross-claim against the following Defendants/Cross-claim Defendants: Cristo Property Management, Ltd., a/k/a G.J.L. Limited, DEK Homes of New Jersey, Inc., Oakwood Properties, Inc., National Home Funding, Inc., Capital Assets Property Management & Investment Co., Inc., Capital Assets Property Management, L.L.C., William J. Kane, Gary Grieser, Robert Skowrenski, II, Richard Calanni, Richard DiBenedetto, James R. Brown, Thomas Brodo, Ronald J. Pierson, Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq.,

> Anthony M. Cicalese, Esq., Lawrence M. Cuzzi, Anthony D'Apolito, DAP Consulting, Inc., Coastal Title Agency, Irene DiFeo, Donna Pepsny, Weichert Realtors, and Vecchio Realty, Inc. d/b/a Murphy Realty Better Homes and Gardens (collectively the "Cross-claim Defendants"):
>
> FIRST COUNT (Indemnification)
>
> 1. Answering Defendants/Cross-claim Plaintiffs deny any liability to Plaintiff, but if it is determined that Answering Defendants/Cross-claim Plaintiffs or anyone of them is liable to Plaintiff in any respect, such liability is secondary, passive and vicarious, while the liability of the Cross-claim Defendants is primary, active and direct. Any damages for which Answering Defendants/Cross-claim Plaintiffs may be held liable are chargeable to the Cross-claim Defendants.
>
> 2. Answering Defendants are entitled to indemnification from the Cross-claim Defendants and/or other Fourth parties.
>
> WHEREFORE, Answering Defendants/Cross-claim Plaintiffs demand judgment of indemnification in their favor and against the Cross-claim Defendants, together with costs of suit and attorney fees and any other relief that the Court may deem equitable and just.
>
> SECOND COUNT (Contribution)
>
> 3. Answering Defendants/Cross-claim Plaintiffs repeat each of its foregoing allegations contained in the Cross-claim.
>
> 4. Answering Defendants/Cross-claim Plaintiffs deny any liability to Plaintiffs, and specifically deny that any such liability is joint and several as to Answering Defendants/Cross-claim Plaintiffs. If it is determined, however, that Answering Defendants/Cross-claim Plaintiffs are liable to Plaintiff in any respect, Answering Defendants/Cross-claim Plaintiffs demand contribution from all Cross-claim Defendants pursuant to the provisos of the New Jersey Joint Tortfeasors Act, NJ.S.A. 2A:53A-l et seq., and all other statutory or common laws which may be applicable with respect to any and all damages that may be assessed against Answering Defendants/Cross-claim Plaintiffs in favor of Plaintiff, together with costs of suit.
>
> WHEREFORE, Answering Defendants/Cross-claim Plaintiffs demand judgment of contribution in their favor and against Crossclaim Defendants, together with costs of suit and attorney fees and any other relief that the Court may deem equitable and just.

(Dkt. 314).

In addition, Robert Agel, the owner of Coastal, testified that the Title Insurance Defendants never proceeded in making a claim against Coastal under the indemnification provision contained in the agency agreements. Had the Title Insurance Defendants been serious about proceeding under the terms of their agency agreements, they surely would have done more than lump Coastal among other tortfeasors in a generic cross-claim. In fact they had considered it and then backed off. Agel explained this in his testimony as the corporate representative of Coastal:

> Q. Did Commonwealth ever make a claim against Coastal under the agreement under paragraph L?
> A. No. There was a threat of a -- actually it wasn't even a threat of that. I got a letter from them I think that said to put my carrier on notice that they were coming after me and I made a big stink about it and they backed off.
>
> Q. When was that?
> A. I don't recall when. During relatively early stages of this, I recall that, after the claims started coming in.
>
> Q. Do you still have a copy of the letter?
> A. No.
>
> Q. Do you recall who it was from?
> A. That would have been from Nancy Koch.
>
> Q. Did you converse with Miss Koch about that?
> A. No, no, I went over her head. I wasn't a happy camper.
>
> Q. Who did you speak to at Commonwealth?
> A. It wasn't Commonwealth. I went to Lawyer's Title because they bought Commonwealth by the time that all happened so I went directly there.
>
> Q. Who did you speak to at Lawyer's Title?
> A. His name was Ron Owen.
>
> Q. What was his position?
> A. He was a senior vice president and I think he ran the northeast.
>
> Q. And what did he tell you?
> A. "I'll take care of it." I was a very big remitter and, you know, my -- I said to them: Do you want to lose a half million dollar a year agent over this and their answer was no.

(Exhibit B, Coastal 30(b)(6) Dep., 6/23/10, at 122:21-124:4).

Honorable Michael A. Shipp
March 5, 2012
Page 7 of 7

  Thus, it was a conscious decision by the Title Insurance Defendants not to file a Third Party Complaint against Coastal because their relationship with Coastal, at least at that time, was very lucrative. Consequently, there was never any affirmative claim against Coastal under the indemnification agreement that would justify the Title Insurance Defendants receiving a recovery for their attorneys' fees expended in this action.

  In addition, in an effort to facilitate settlement, Coastal withdrew its motion on the eve of the agreement to mediate. Had the settlement not occurred, the Title Insurance Defendants' cross-claims for contribution that allegedly arose under the New Jersey Tortfeasors Contribution Act were bound to be dismissed under the law of the case. *See Walsh Securities Inc. v. Cristo Prop. Mgmt., Ltd.,* Civ. No. 97-3496 (DRD), 2007 WL 951955 (D.N.J. March 28, 2007); *Walsh Securities Inc. v. Cristo Prop. Mgmt., Ltd.,* Civ. No. 97-3496 (DRD), 2009 WL 5064757 (D.N.J. Dec. 16, 2009). This Court has repeatedly held, in accordance with well established New Jersey case law, that because the Title Insurance Defendants were sued in contract and not in tort they could not cross-claim for contribution against parties sued in tort.

  Since this Court has not yet held the Title Insurance Defendants liable to Plaintiff for the asserted contract based claims, it would be premature to award the Title Insurance Defendants damages on their cross-claims for contribution and indemnification. Because there is no loss, the Title Insurance Defendants have no legal or equitable claim to contribution or indemnification at this juncture. Therefore, it is only appropriate that WSI, the party who *has* suffered losses due to the Title Insurance Defendants' breach of contract and Coastal's fraudulent conduct, which gave rise to the settlement, receive the settlement proceeds. WSI has repeatedly agreed, as Mr. Kott had first suggested to the undersigned before the mediation, to provide the Title Insurance Defendants with an offset that would accomplish the purpose behind their cross-claims against Coastal. The fact that they will not agree to this and are dragging WSI through this briefing is further evidence of WSI's bad faith claim against them.

## **CONCLUSION**

  Accordingly, Plaintiff respectfully requests that the Court enter an order requiring that the Coastal settlement proceeds be turned over to Plaintiff and provide that the Title Insurance Defendants receive an offset for that portion of damages for which they are deemed, by the fact finder, jointly and severally liable for Coastal's conduct in this matter.

             Respectfully submitted,

             /s/ Robert A. Magnanini
             Robert A. Magnanini

cc:  All Counsel of Record (via CM/ECF)
    Richard Calanni (via regular mail)