# STONE ▩ MAGNANINI
### LLP

COMPLEX   COMMERCIAL   LITIGATION

**NEW JERSEY OFFICES**   150 JFK Parkway, Short Hills, NJ 07078   P 973.218.1111   F 973.218.1106

April 19, 2012

**VIA CM/ECF**

Honorable Michael A. Shipp, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey 07101

> Re:   *Walsh Securities, Inc. v. Cristo Property Management, LTD, et al.*
>        Civil Action No. 97-3496 (DRD/MAS)

Dear Judge Shipp:

This firm represents plaintiff Walsh Securities Inc. ("WSI") in the above-referenced action. As we advised Your Honor's law clerk yesterday, we write in response to Mr. Kott's recent improper submission.

As Mr. Kott is aware, in this District there is a long-standing practice of conferring with your adversary before briefing discovery disputes. *See, e.g.*, Lite, N.J. Federal Practice Rules, Survey of Judicial Officers, Honorable Michael A. Shipp ("It is expected that parties will have conferred prior to each conference, will be prompt and will abide by traditional rules of civility and professionalism"). Nevertheless, on April 18th Mr. Kott wrote a letter suggesting that he was simply advising Your Honor of Judge Debevoise's published decision, which is obviously quite unnecessary. To the contrary, the letter is intended to remind Your Honor of the Title Insurance Defendants' argument concerning the loss reserves dispute. Mr. Kott's supplemental briefing was uninvited and inappropriate, but more importantly it highlights the Defendants' faulty reasoning.

The Title Insurance Defendants made numerous attempts to sidestep their "burden of showing that the materials in question were prepared in the course of preparation for possible litigation." Dkt. 494 (citing *Holmes v. Pension Plain of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). In their latest iteration, the Defendants now contend for the first time that the amount of their loss reserves is only relevant to the issue of bad faith. Their attempt to redefine the boundaries of discovery by WSI's bad faith claim misses the point.

In the first instance, the information is not protected by the work product doctrine because the reserves numbers were set in the ordinary course of business, and because the Defendants cannot overcome their burden of showing otherwise. *See, e.g.*, *Holmes*, 213 F.3d at 139 ("[t]he mere fact that the memorandum was prepared 'in connection with' [Plaintiff's]

Honorable Michael A. Shipp
January 19, 2012
Page 2 of 2

administrative claim . . . hardly establishes that it was prepared *in anticipation of litigation*." (emphasis added)). *See also United States v. Amerada Hess*, 619 F.2d 980, 987 (3d Cir. 1980). Your Honor's January 3rd Letter Order cited both *Holmes* and *Amerada Hess* as a reminder that the burden is on the Defendants. The work product doctrine analysis, as these cases point out, does not turn on *how* the information will be used, but rather whether the moving party is entitled to benefit from the doctrine. Since the Defendants are unable to overcome their burden, they are not entitled to the protection of the doctrine.

Additionally, as Walsh Securities stated during oral argument, one of the issues that will likely arise during trial on its breach of contract claim is whether the Defendants properly followed their own claims manual. While this issue is only one brick in developing the wall of WSI's case against the Defendants, it does not evaporate simply because WSI's bad faith claim was dismissed, as Mr. Kott now suggests. In fact, the reserves amount is directly relevant to other issues, particularly the Defendants' credibility, and WSI is therefore entitled to it under the broad discovery rules. *See, e.g., U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 645 (D. Kan. 2007) ("loss reserves--including any changes to those amounts--could, at the least, lead to admissible evidence relating to the Insurers' own beliefs about coverage and their liability"). For instance, the Defendants' witness might be asked:

(1)     Did the insurance company follow its claims manual?
(2)     Does the claims manual state that a claim reserve should be set, and did the company do that?

These are underlying facts in the case that could tend to show Defendants' state of mind and belief about WSI's claims. The Defendants' witness could answer in the affirmative to these questions leaving the jury with only half of the story. Importantly, the Court need not decide any evidentiary matters at this stage. The Defendants are still free to argue that this evidence is inadmissible at trial. Nonetheless, WSI is entitled to discovery on evidence that could impeach the witness for Defendants; however, without the information concerning the amount of Defendants' loss reserves, WSI's ability to do so is prejudiced.

The Defendants cannot establish that they are entitled to the protection of the work product doctrine, and the evidence sought is clearly material and relevant. Accordingly, the Court should order that the amount of Defendants' loss reserves, the date the reserves were set and changed, and the identity of the individual who set or changed the reserve amounts (all of which Defendants have withheld from WSI and the Court) is discoverable and must be provided by the Defendants.

Respectfully submitted,

/s/ Robert A. Magnanini
Robert A. Magnanini

cc:     David R. Kott, Esq. (via CM/ECF)
        Edward J. Hayes, Esq. (via CM/ECF)