## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC.,<br><br>           Plaintiff,<br><br><br>   v.<br><br><br>CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, et al.,<br><br>           Defendants. | Civil Action No. 97-cv-3496 (DRD)(MAS)<br><br><br>Hon. Dickinson R. Debevoise, U.S.S.D.J.<br>Hon. Michael A. Shipp, U.S.M.J. |

COMMONWEALTH LAND TITLE INSURANCE CO., FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK, AND NATIONS TITLE INSURANCE OF NEW YORK, INC.'S BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S APRIL 17, 2012 DECISION DENYING, IN PART, THEIR MOTIONS FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR CERTIFICATION TO THE THIRD CIRCUIT

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant
  Commonwealth Land Title
  Insurance Company

**FOX ROTHSCHILD, LLP**
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Attorneys for Defendants
  Fidelity National Title Insurance Co. of
  New York, and Nations Title Insurance of
  New York, Inc.

Of Counsel
    David R. Kott & Edward J. Hayes

On the Brief
    David R. Kott, Edward J. Hayes,
    & Sara F. Merin

ME1 13364076v.1

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT ................................................................................................3

I.    The Decision That Plaintiff Has Standing to Pursue Its Loss of Merger Claim Was a Clear Error, So Reconsideration is Warranted ..........................................................3

II.   If This Court Does Not Grant Reconsideration of Its April 17 Decision as to Standing, the Question of Standing Should be Certified to the Third Circuit ...............................7

CONCLUSION .......................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Biase v. Nevoso, Pivirotto & Foster, P.A. (In re Barsan Contrs., Inc.)*,
   No. 10-3081, 2010 U.S. Dist. LEXIS 104623 (D.N.J., Sept. 30, 2010).......... 7, 8

*Design Strategies, Inc., v. Davis*,
   355 F. Supp. 2d 715 (S.D.N.Y. 2005) ......................................................... 4, 9

*Dunn v. Reed Group*,
   No. 08-cv-1632, 2010 U.S. Dist. LEXIS 2438 (D.N.J. Jan 13, 2010) .................3

*Grand St. Artists v. GE*,
   No. 96-3774, 2000 U.S. Dist. LEXIS 7076 (D.N.J. 2000)...................................8

*Grant v. Coca-Cola Bottling Co.*,
   780 F. Supp. 246 (D.N.J. 1991)........................................................................6

*Harsco Corp. v. Zlotnicki*,
   779 F.2d 906 (3d Cir. 1985)..............................................................................3

*Hoechst Marion Roussel, Inc. v. Par Pharm.*,
   No. 95-3673, 1996 U.S. Dist. LEXIS 11388 (D.N.J. Mar. 14, 1996) .................9

*Lamont v. Woods*,
   948 F.2d 825 (2d Cir. 1991)..............................................................................8

*Leja v. Schmidt Mfg., Inc.*,
   743 F. Supp. 2d 444 (D.N.J. 2010) ...................................................................3

*Leja v. Schmidt Mfg., Inc.*,
   No. 01-50422005, U.S. Dist. LEXIS 18144 (D.N.J. Aug. 15, 2005)...................8

*Max's Seafood Cafe v. Quinteros*,
   176 F.3d 669 (3d Cir. 1999)..............................................................................3

*Nisselson v. Lernout*,
   No. 03-10843, 2004 WL 3953998 (D. Mass 2004)............................................9

ME1 13364076v.1

**STATUTES**

28 U.S.C. § 1292(b) ................................................................................... 7, 8, 10

**RULES**

Local Civil Rule 7.1(i) ........................................................................................1

ME1 13364076v.1

## PRELIMINARY STATEMENT

This brief is respectfully submitted on behalf of Defendants Commonwealth Land Title Insurance Company ("Commonwealth"), Fidelity National Title Insurance Co. of New York ("Fidelity"), and Nations Title Insurance of New York, Inc. ("Nations") (collectively, the "Title Defendants") in support of their motion, pursuant to Local Civil Rule 7.1(i), for partial reconsideration of the Court's April 17, 2012 Opinion [document 533] and Order [document 534] denying, in part, the Motions for Summary Judgment filed by the Title Defendants or, in the alternative, in support of their request for certification to the Third Circuit of the question of whether Plaintiff Walsh Securities, Inc. ("Plaintiff") has standing to pursue a claim for damages for the unconsummated merger transaction between Plaintiff's parent corporation and Resource Bancshares Mortgage Group ("RBMG") (addressed at pages 35 to 38 of the Opinion).

The Title Defendants respectfully submit that the Court overlooked record facts when it found that Plaintiff has such standing and thus committed an error of law.

If the Court does not deem reconsideration appropriate, the Title Defendants respectfully request that the Court certify to the Third Circuit the question of whether Plaintiff has standing to pursue said claim.

ME1 13364076v.1

The record facts – most notably the terms of the Merger Agreement itself (Ex. D to the Nov. 10, 2011 Certification of Sara F. Merin in Support of Commonwealth's Motions for Partial Summary Judgment [document 479-4]) – establish that Plaintiff did not stand to benefit from the merger and could not suffer damages by reason of the non-consummation of the merger. Plaintiff was not a party to the Merger Agreement, and, as noted below, the Merger Agreement expressly *excluded* non-parties from having any rights or remedies under or by reason of that Agreement.

The Merger Agreement shows that the transaction with RBMG would have been effected through the creation of a new RBMG subsidiary to be merged with and into Walsh Holding Co., Inc. ("Walsh Holding"). The shareholders of Walsh Holding (the Walsh family) would receive stock in RBMG in exchange for their stock in Walsh Holding. As a consequence of the merger, the stock of the surviving entity, Walsh Holding, would have been wholly owned by RBMG. Notably, the merger would *not* have resulted in any sale or transfer of Plaintiff's assets. Rather, the merger involved the Walsh family's transfer of *their* Walsh Holding stock, *not* Walsh Holding's assets, much less any assets of Plaintiff. Plaintiff was a subsidiary of Walsh Holding before the merger and would have remained a subsidiary of Walsh Holding after the merger. The assets and liabilities of Plaintiff before the merger would be unchanged after the merger. And, as noted,

2

the shares of Walsh Holding that were to be exchanged were the assets of Walsh

Holding's shareholders, **not** Plaintiff's assets.  To the extent there was a loss by

reason of the non-consummation of the merger, the **only** persons that could have

been injured were Plaintiff's parent's shareholders.

## ARGUMENT

I.     **THE DECISION THAT PLAINTIFF HAS STANDING TO PURSUE ITS LOSS OF MERGER CLAIM WAS A CLEAR ERROR, SO RECONSIDERATION IS WARRANTED**

Reconsideration of whether Plaintiff has standing to pursue this claim is

warranted, because the Court overlooked clear and dispositive facts in the record.

Reconsideration may be granted where needed "to correct a clear error of

law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*,

176 F.3d 669, 677 (3d Cir. 1999); *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d

Cir. 1985); *Leja v. Schmidt Mfg., Inc.*, 743 F. Supp. 2d 444, 456 (D.N.J. 2010).

Reconsideration is also appropriate "upon a showing that dispositive factual

matters or controlling decisions of law were overlooked by the court in reaching its

prior decision." *Dunn v. Reed Group*, No. 08-cv-1632, 2010 U.S. Dist. LEXIS

2438 (D.N.J. Jan 13, 2010).

The Opinion acknowledges that the Merger Agreement was between Walsh

Holding (Plaintiff's sole shareholder) and RBMG and that, "[a]ccording to the

[merger] agreement, Walsh Holding would merge with a RBMG merger

3

subsidiary, rendering Walsh Holding the surviving corporation, although it would

be renamed BCA."[1]   (*See* Opinion at 17.)   The Opinion also notes that Plaintiff

"was not a party to the merger agreement[.]"   Thus, the Court acknowledged that

both before and after the merger, Plaintiff would have remained a subsidiary of

Walsh Holding.

The Opinion recognized that the decision of Judge Marrero in *Design*

*Strategies, Inc., v. Davis*, 355 F. Supp. 2d 715 (S.D.N.Y. 2005) was on point, but

then sought to distinguish that case on the basis that the agreement in *Design*

*Strategies* did not indicate "that the property of the corporation was an intended

subject of that transaction[,]." (Opinion at 38 (quoting *Design Strategies*, 355 F.

Supp. 2d at 717).)   The Opinion then considered that this case differed from

*Design Strategies* because, supposedly here, "the agreement contemplated the sale

of *its* [*i.e.* Plaintiff's] corporate assets to RBMG" (Opinion at 38 (emphasis

added).) That conclusion, however, was incorrect on two levels.

First, the Merger Agreement in fact contemplated *only* the transfer by the

Walsh family of their stock in Walsh Holding, *not* the transfer of Walsh Holding's

---

[1] Technically, Walsh Holding would not have been "renamed BCA." Walsh
Holding would have become the surviving corporation of the merger between a
specially-created RBMG merger subsidiary and Walsh Holding, but then RBMG
(the parent) was to change its name to BCA Financial Corp. (See Merger
Agreement § 1.01 (forming RBMG merger subsidiary), § 1.02 (merger between
Walsh Holdings and RBMG merger subsidiary), § 1.07 (renaming RBMG).)

MEI 13364076v.1

corporate asset, namely, its shares in Plaintiff.  (*See* Merger Agr., Article II.) Second, even if *arguendo* Walsh Holding be deemed to have transferred its corporate asset (*i.e.*, its shares in Plaintiff), Plaintiff **still** would have received nothing.  Only Walsh Holding's shareholders would have benefited, not Plaintiff itself.  In sum, this case is identical to *Design Strategies*, and the Title Defendants respectfully submit that the Opinion's distinction was based on factual error.

Plaintiff's own pleadings show that the claim for loss of merger damages belongs, if to anyone, to its parent's shareholders.   The Fourth Amended Complaint (at Paragraph 38) claims a loss of the "profits" that would have stemmed from a "sale of the company for more than $400 million."   But it is obvious that Plaintiff would not have gained any "profit" from sale of its parent or its parent's shares – only the parent's shareholders could have profited.  Further, Plaintiff **admits** that the damages it seeks were to those shareholders – not losses to Plaintiff itself: "the damages to [Plaintiff] here are directly akin to lost profits – *the lost business opportunity would have resulted in the hundreds of millions [of dollars]* **to the company's shareholders** *based on the number of shares available and the strike price of the stock.*"   (Pl.'s Opp. Br. at 11 (emphasis added) [document 488].)   These acknowledgements in Plaintiff's pleadings – that the supposed loss was to the shareholders of Walsh Holding, **not** to Plaintiff itself – appear to have been overlooked.

ME1 13364076v.1

Furthermore, we note that the Opinion concluded that Plaintiff might have benefitted from the merger, "as it would have been able to "tak[e] advantage of RBMG's national reach and substantial account relationships[.]" (Opinion at 38.) That conclusion, however, was without any admissible factual support in the record, as it relied only on a hearsay press release which, in any event, purported to tout the proposed transaction as being potentially beneficial to ***Walsh Holding***, not Plaintiff.

Finally, any supposed "benefit" to Plaintiff would have been, at most, an incidental benefit of consummation of the Merger Agreement. But the terms of the Merger Agreement make clear that Plaintiff was not to have any rights under or by reason of that Agreement. The Merger Agreement provides (in relevant part) that "nothing in this Agreement, express or implied, is intended to confer on any person other than the parties hereto or their respective successors, heirs and executors and permitted assigns [which did not include Plaintiff] any rights, remedies, obligations or liabilities under or by reason of this Agreement." (Merger Agr. § 9.05.)

Thus, Plaintiff could not even sue RBMG if RBMG had breached the Merger Agreement. *See Grant v. Coca-Cola Bottling Co.*, 780 F. Supp. 246, 249 (D.N.J. 1991) ("A third-party who merely stands to benefit from a contract is no more than an incidental beneficiary who incurs no contractual right to enforce the contract"). Yet, the Opinion upheld Plaintiff's standing to sue the Title Defendants

6

for supposed losses resulting from the non-consummation of that very same Merger Agreement. Since that yields a manifestly illogical and unjust result, the Title Defendants respectfully submit that reconsideration of the decision that Plaintiff has standing to pursue loss of merger damages is warranted.

## II.   IF THIS COURT DOES NOT GRANT RECONSIDERATION OF ITS APRIL 17 DECISION AS TO STANDING, THE QUESTION OF STANDING SHOULD BE CERTIFIED TO THE THIRD CIRCUIT

If this Court does not deem reconsideration appropriate, the Title Defendants respectfully request that this Court certify its April 17, 2012 Order as to the question of Plaintiff's standing to pursue its claim for loss of merger damages as meeting the statutory requirements for discretionary appeals pursuant to 28 U.S.C. § 1292(b). As demonstrated in Section I above, the standing issue is "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.*

First, a controlling question of law exists here. A question does not need to be determinative to qualify for certification: "[i]t is not required that reversal of the order terminate the litigation. . . ." *Biase v. Nevoso, Pivirotto & Foster, P.A. (In re Barsan Contrs., Inc.)*, No. 10-3081, 2010 U.S. Dist. LEXIS 104623, *7 (D.N.J., Sept. 30, 2010) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)). In *Katz*, the Third Circuit stated that "[a] controlling question of law must

7

encompass at the very least every order which, if erroneous, would be reversible error on final appeal" and looked to the legislative history of § 1292(b) to find that "'controlling' means serious to the conduct of the litigation, either practically or legally." *Biase, supra*, 2010 U.S. Dist. LEXIS 104623, at *7. Additionally, whether a plaintiff has standing to bring an action qualifies as a "controlling question of law" for the purposes of § 1292(b). *See, e.g., Lamont v. Woods*, 948 F.2d 825, 827 (2d Cir. 1991) (standing question was dispositive and therefore "controlling" within the meaning of § 1292(b)).

Second, here, there is "substantial ground for difference of opinion" on the question of law. 28 U.S.C. § 1292(b). "[T]he 'difference of opinion' must arise out of genuine doubt as to the correct legal standard." *Leja v. Schmidt Mfg., Inc.*, No. 01-50422005, U.S. Dist. LEXIS 18144, *14-15 (D.N.J. Aug. 15, 2005) (citing *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996)). Thus, where the law is clear, there is not a "substantial ground for difference of opinion" under § 1292(b). *See Grand St. Artists v. GE*, No. 96-3774, 2000 U.S. Dist. LEXIS 7076 (D.N.J. 2000). The question of law at issue here, briefly, is: where a parent corporation has an agreement to merge into another corporation, can a subsidiary of that corporation recover damages if the merger fails? This is a novel issue in the Third Circuit; Commonwealth's papers in support of its Motion demonstrate that neither New Jersey's courts nor the Third Circuit have ruled on

8

this precise question – which is directly addressed in *Design Strategies, Inc., v. Davis*, 355 F. Supp. 2d 715 (S.D.N.Y. 2005), and *Nisselson v. Lernout*, No. 03-10843, 2004 WL 3953998 (D. Mass 2004), among other cases from foreign jurisdictions.

Finally, an interlocutory appeal here would "materially advance the ultimate termination of the litigation[.]"  This requirement generally looks to the practical realities of the litigation, with an eye towards reducing the likelihood of unnecessary, duplicative, or wasteful litigation and expense.  *See, e.g., Hoechst Marion Roussel, Inc. v. Par Pharm.*, No. 95-3673, 1996 U.S. Dist. LEXIS 11388, *8 (D.N.J. Mar. 14, 1996) ("An immediate appeal would prevent the considerable waste of time and resources that would occur if Appellant's claims were fully adjudicated in the Bankruptcy Court (and on appeal in this Court) only to be dismissed on jurisdictional grounds by the Court of Appeals.").  Here, an appeal would prevent "the considerable waste of time and resources that would occur" if Plaintiff's loss of merger damage claim – which makes up approximately ninety percent of the overall damages sought by Plaintiff – were fully adjudicated in this Court only for that issue to be dismissed by the Court of Appeals for lack of standing. *See id.*

In short, if the Court chooses not to reconsider the issue of Plaintiff's standing, the question of whether Plaintiff has standing to pursue its loss of merger

9

damages claim meets the requirements of 28 U.S.C. § 1292(b) for discretionary appeals and therefore should be certified to the Third Circuit for interlocutory appeal.

## CONCLUSION

For the foregoing reasons, Commonwealth's motion for reconsideration should be granted in its entirety. The April 17, 2012 decision finding that Plaintiff has standing to pursue a merger damages claim should be reversed, and Plaintiff's such claims should be stricken, with prejudice. In the alternative, this question should be certified to the Third Circuit for review.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**
Attorneys for Defendant
   Commonwealth Land Title
   Insurance Company

By: *s/David R. Kott*
David R. Kott
A Member of the Firm

**FOX ROTHSCHILD, LLP**
Attorneys for Defendants
   Fidelity National Title Insurance Co.
   of New York, and Nations Title
   Insurance of New York, Inc.

By:
   Edward J. Hayes

Dated: May 1, 2012

10