**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**MICHAEL A. SHIPP**
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.   ROOM 2042
NEWARK, NJ 07102
973-645-3827

**Not for Publication**

**REPORT AND RECOMMENDATION**

July 25, 2012

**VIA CM/ECF**
All counsel of record

    Re:    *Walsh Securities, Inc. v. Cristo Property Management, LTD, et al.*
            Civil Action No. 97-3496 (DRD)(MAS)

Dear Counsel:

       This matter comes before the Court by way of Plaintiff Walsh Securities, Inc.'s ("Plaintiff") Motion for Disbursement of Funds from the Settlement with Coastal Title Agency ("Motion"), with an offset to Defendants Nations Title Insurance of New York, Inc., Commonwealth Land Title Insurance Company, and Fidelity National Title Insurance Company of New York (collectively, "Defendants") (Docket Entry Number ("Doc. No.") 516 ("Pl.'s Moving Br.").) Defendants oppose the Motion. (Doc. No. 519 ("Defs.' Opp'n Br.").) This Report and Recommendation is based on 28 U.S.C. § 636 (b)(1)(B). For the reasons set forth below, the Undersigned respectfully recommends that the District Court deny Plaintiff's Motion without prejudice.

**I.    RELEVANT FACTS**

       As the Parties to this matter are well-versed in the surrounding facts, this Report and Recommendation will only address those facts relevant to the instant Motion. Plaintiff and

Defendants entered into a Settlement Agreement and Release (Doc. No. 528-1 ("Settlement Agreement")) with Defendant Coastal Title Agency ("Coastal"). General Star Indemnity Company ("General Star") covered Coastal under two policies, which provided the entirety of the settlement funds. The Settlement Agreement provided that General Star would pay $425,000.00 into an escrow account in exchange for dismissal of all claims against it and a release of liability. The Settlement Agreement specifically states:

> General Star shall issue payment collectively to Walsh and Title Insurance Defendants in the aggregate amount of Four Hundred and Twenty-Five Thousand Dollars ($425,000.00) (the "Settlement Payment"), with monies being deposited by General Star into an escrow account which requires the written approval of General Star, Walsh Securities and the Title Insurance Defendants for the release of funds from the escrow account.

(Settlement Agreement ¶ 1). While the Settlement Agreement memorializes a number of terms, it lacks any terms regarding the distribution percentages of the settlement proceeds. Additionally, the Settlement Agreement fails to contain any dispute resolution terms.

Following execution of the Settlement Agreement, the Parties failed to reach an agreement regarding disbursement of the proceeds. According to Plaintiff, Defendants unreasonably refuse to permit Plaintiff to receive the funds from the escrow account. (Pl.'s Moving Br. 5.) However, Defendants assert that they may be entitled to a portion of the settlement proceeds. (Defs.' Opp'n Br. 12.) As such, Defendants argue that the settlement funds should not be released to Plaintiff, as Plaintiff will deplete the funds for attorneys' fees, leaving nothing available for Defendants. (*Id.* at 13.) Defendants also argue that this would constitute unjust enrichment for Plaintiff in the event a jury finds for Defendants. (*Id.*)

2

## II. DISCUSSION

### A. Legal Standard

A district court sitting in diversity jurisdiction usually applies the substantive law of the state in which it sits; therefore, New Jersey law applies in the instant case. *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1265 (3d Cir. 1991) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 90 (1938)). New Jersey law provides that, "if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992). "A settlement between parties to a lawsuit is a contract like any other contract which may be freely entered into and which a court, absent a demonstration of fraud or other compelling circumstances, should honor and enforce as it does other contracts." *Jennings v. Reed*, 885 A.2d 482, 488 (N.J. Super. Ct. App. Div. 2005) (internal citations omitted). Furthermore, there is a strong public policy in favor of settlements, and courts will "strain to give effect to the terms of a settlement wherever possible." *Bistricer v. Bistricer*, 555 A.2d 45, 47 (N.J. Super. Ct. Ch. Div. 1987) (quoting *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Utils.*, 503 A.2d 331, 333 (N.J. Super. Ct. App. Div. 1985).

A court may reform a contract where "'the written instrument fails to express the real agreement or transaction,' either through a mistake common to both parties, or through the mistake of one party accompanied by the fraudulent knowledge and procurement of the other." *Bruenn v. Switlik*, 447 A.2d 583, 586 (N.J. Super. Ct. App. Div. 1982) (citation omitted). "In evaluating claims of mutual mistake and fraud, a court necessarily must look beyond the four corners of the contract." *Conforti v. Guliadis*, 608 A.2d 225, 230 (N.J. 1992). However, to allow for reformation, there must be proof that the reformed contract represents the parties' original understanding, but for a mistake. *Bruenn*, 447 A.2d at 586. *See Lederman v. Prudential*

3

*Life Ins. Co.*, 897 A.2d 373, 385 (N.J. Super. Ct. App. Div. 2006) *cert. denied*, 907 A.2d 1013 (Table) (N.J. 2006) (reformation requires clear and convincing proof that the original written agreement does not reflect intent of the parties).

Where the parties have approved of the essential terms, the settlement is binding and the court may deduce additional practical terms that are necessary to enforce the settlement. *See Hagrish v. Olson*, 603 A.2d 108, 110 (N.J. Super. Ct. App. Div. 1992). If the plain reading of the settlement would lead to an unusual or unreasonable outcome, "a court may construe the contract otherwise in order to reach a more sensible and reasonable result." *Format Corp. v. Widewaters Prop. Dev. Corp., Inc.*, 162 F. App'x 168, 170 (3d Cir. 2006). However, "[c]ourts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made." *Kampf v. Franklin Life Ins. Co.*, 161 A.2d 717, 720 (N.J. 1960).

In the Third Circuit, motions for the enforcement of settlement agreements are treated similarly to motions for summary judgment, and the court must use a similar standard of review. *Tiernan v. Devoe*, 923 F.2d 1024, 1031–32 (3d Cir. 1991). Furthermore, a court should not enforce a settlement agreement without an evidentiary hearing if the material facts of the agreement are in dispute. *Id.* (citing *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)). Moreover, a court may not "supply any material stipulations or conditions which contravene the agreements of the parties." *In re Cendant Corp. Sec. Litig.*, 569 F. Supp. 2d 440, 443 (D.N.J. 2008) (quoting *Marini v. Ireland*, 265 A.2d 526, 533 (N.J. 1970)).

**B.     Analysis**

In the instant matter, neither party claims that they failed to agree on essential terms of the Settlement Agreement. Plaintiff claims that it is entitled to the full amount of the settlement proceeds due to the real injury it has suffered. (Pl.'s Moving Br. 5.) Furthermore, Plaintiff

4

claims that any disbursement of the settlement proceeds to Defendants would be a "windfall," as Defendants have allegedly not suffered any injury. (*Id.* at 5-6.) Additionally, Plaintiff claims that Defendants cannot claim damages for attorney's fees and costs as the Settlement Agreement provided that each party was to bear its own fees and costs.[1] (Doc. No. 528 ("Pl.'s Reply Br." 3.) Finally, Plaintiff claims that the only equitable method of distribution is to provide Plaintiff with the "monies paid by its tortfeasor," and to award the Defendants a damages offset. (*Id.* at 7.)

However, Defendants assert that they have suffered actual, documented damages. Specifically, Defendants claim to have incurred substantial legal fees and expenses. (Defs.' Opp'n Br. 12.) Defendants also claim that they are entitled to proceeds of the settlement through their cross-claims for indemnification, which they withdrew as part of the Settlement Agreement. (*Id.*) Lastly, Defendants spend considerable time arguing about the nature of the claims involved in this litigation, the type of coverage provided by Coastal, and the strength of Plaintiff's claim against Coastal. (*Id.* at 2-12.)

Here, after careful consideration of the arguments and a detailed review of the Settlement Agreement, the Undersigned cannot recommend that the District Court provide the relief requested by Plaintiff. The Settlement Agreement at issue expressly requires the written approval of General Star, Plaintiff and the Defendants for the release of funds from the escrow

---

[1] The settlement agreement provides, "[f]or and in consideration of the Settlement Payment, Walsh Securities and the Title Insurance Defendants for themselves . . . do hereby release, discharge and acquit Coastal Title and General Star . . . from any and all past, present, potential, or future claims . . . attorneys' fees, costs, expenses . . . ." (Settlement Agreement ¶ 3.) Additionally, "[w]ithin five (5) days of General Star's payment of the Settlement Payment . . . the Title Insurance Defendants, acting through each of their respective counsel, shall file a dismissal with prejudice of all cross-claims against Coastal in the Underlying Litigation, each party bearing its own costs and fees." (Settlement Agreement ¶ 8.)

5

account, and provides no other method of disbursement. (Settlement Agreement ¶ 1.) Plaintiff argues that counsel for Defendants mentioned the concept of an offset against a potential judgment (Pl.'s Moving Br. 5). However, the Settlement Agreement contains the following relatively standard provision: "The Parties expressly understand and agree that this Agreement is the complete settlement of the matters set forth herein, and that there exist no written or oral understandings, representations or agreements, directly or indirectly, connected with this Agreement which are not incorporated herein." (Settlement Agreement ¶ 15.)

Notably, the Settlement Agreement provides that "General Star shall issue payment *collectively* to Walsh and Title Insurance Defendants . . . ." (*Id.* at ¶ 1) (emphasis added). Based on the various provisions of the Settlement Agreement, it is reasonable to infer that the Parties anticipated the need to finalize certain issues relating to the actual disbursement of the proceeds. However, conspicuously absent from the Settlement Agreement are dispute resolution terms that could address the impasse at hand.

Additionally, the motion papers in the present matter reflect issues with the interpretation of the Settlement Agreement's language. After a careful consideration of the arguments, the Undersigned finds that Plaintiff's arguments make inherent sense. For example, the Undersigned strains to understand how the Defendants may claim injury when the plain language of the Settlement Agreement specifically provides that each party was to bear its own fees and costs. As such, it appears counterintuitive to infer that Defendants intended the settlement funds to be utilized as an offset to any of its attorneys' fees and costs. Rather, an award to Plaintiff with an offset against any potential judgment to Defendants is more plausible to the Undersigned than Defendants' arguments.

6

However, the Undersigned cannot recommend that the Court award the proceeds to Plaintiff with an offset to Defendants simply because its arguments are persuasive. Plaintiff's Motion goes beyond a mere request to enforce a Settlement Agreement. Plaintiff appears to request that the Court reform the Settlement Agreement but fails to meet the standard for reformation. Additionally or alternatively, Plaintiff may just be invoking general equitable principles. However, if the Court is not able to even ascertain the specific legal theory/theories, it certainly is not prepared to recommend the requested relief.[2]

### III.  CONCLUSION

For the foregoing reasons, the Undersigned respectfully recommends that the District Court deny Plaintiff's Motion without prejudice.

_____
Honorable Michael A. Shipp
United States Magistrate Judge

---

[2] Unfortunately, it appears that counsel took particular care in drafting the Settlement Agreement in such a way that it would be approved by the Bankruptcy Court but neglected to include provisions that would apply to the current circumstances. While the Undersigned believes that counsel are fully capable of resolving this issue in a professional manner, if counsel does not drastically change course an evidentiary hearing will most likely be required in the future. However, the Undersigned is not inclined to recommend one based on the current pleadings.