# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | Civil Action No. 97-cv-3496 |
| Plaintiff, | Hon. Dickinson R. Debevoise, U.S.D.J. |
| v. | |
| CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED; *et al*., | |
| Defendants. | |

___

### PLAINTIFF'S OBJECTIONS TO JUDGE SHIPP'S
### REPORT AND RECOMMENDATION FILED JULY 26, 2012
___

                                        Robert A. Magnanini
                                        Amy Walker Wagner
                                        Daniel Ian Mee
STONE & MAGNANINI LLP
150 JFK Parkway, 4th Floor
Short Hills, New Jersey 07078
Tel.:  (973) 218-1111

*Attorneys for Plaintiff*
*Walsh Securities, Inc.*

Dated:  August 9, 2012

## SUMMARY OF OBJECTION

Plaintiff Walsh Securities Inc. ("WSI" or "Plaintiff") respectfully submits this objection to the July 25, 2012 Report and Recommendation ("R&R") submitted to this Court by the Honorable Michael A. Shipp in his capacity, at the time, as United States Magistrate Judge.  [Doc. No. 546 and attached to the Certification of Robert A. Magnanini ("Magnanini Cert.") at Exhibit E].[1]

In the R&R, Judge Shipp acknowledged the merits of WSI's arguments in support of its motion for disbursement of the settlement proceeds that were set forth in its briefs, (Magnanini Cert., Ex. B, D), and found them "persuasive," to "make inherent sense," and to be  "more plausible . . . than Defendants' arguments," (Magnanini Cert., Ex. E, R&R at 6-7).  However, in recommending that the Court deny the motion *without prejudice* and suggesting that "counsel are fully capable of resolving this issue in a professional manner," (*id*. at 7, n.2), Judge Shipp failed to take into consideration the tortured procedural history of WSI's requests for court intervention regarding the distribution of $425,000 in settlement proceeds from a settlement with former Defendant Coastal Title Agency ("Coastal") in January 2011.  The R&R also incorrectly focused on the lack of a

---

[1] The facts of this case and settlement will only be set forth herein to the extent they are necessary as the Court is fully familiar with the case and the background of the settlement is described in detail in WSI's moving brief and reply brief, which are attached to the Magnanini Certification at Exhibits B and D.

provision in the settlement agreement providing for a procedure in which WSI and Defendants Commonwealth Land Title Insurance Company ("Commonwealth"), Fidelity National Title Insurance Co. of New York ("Fidelity"), and Nations Title Insurance of New York, Inc. ("Nations") (collectively the "Title Insurance Defendants"), would resolve disputes concerning the distribution of the settlement proceeds.

The settlement among WSI, Coastal, and the Title Insurance Defendants resulted in releases of claims against Coastal and cross-claims by Coastal against the Title Insurance Defendants. (Magnanini Cert., Ex. D, at ex. A). While it is undisputed that the settlement agreement with Coastal did not set forth the manner in which WSI and Title Insurance Defendants would distribute the settlement proceeds of $425,000 among themselves, which WSI does not believe would have been a material term to the settlement agreement with Coastal, the Title Insurance Defendants have not denied that they agreed to mediate the disbursement of the settlement proceeds if that became necessary. As set forth in a letter from counsel for the Title Insurance Defendants to counsel for Coastal's insurer, General Star, it was always anticipated that WSI and the Title Insurance Defendants would have to later resolve "how the settlement proceeds are divided between and among the plaintiff and the title insurers." (Magnanini Cert., Ex. F at 1).

3

After repeated requests to the Court and Defendants to engage in mediation or settlement discussions and these requests being rebuffed by the Title Insurance Defendants (Magnanini Cert., Ex. G, H, I), and with Judge Shipp instructing WSI to file a motion (Magnanini Cert., Ex. A), WSI was left with no option but to move for a disbursement of the Coastal settlement funds sitting in the attorney trust account for over a year.

It is respectfully submitted that the R&R should not be rejected by this Court. Reviewing this issue on a *de novo* basis, the Court could hold an evidentiary hearing, as Judge Shipp contemplated, or find on the papers that based upon the law and facts set forth in this objection and as argued in WSI's moving brief and reply brief that the Title Insurance Defendants have failed to set forth any rational basis for an award of the settlement proceeds when their claim for damages stems solely from their own legal expenses that they cannot recover under the American Rule. Any argument that they are entitled to recoup legal expenses under an agency agreement with Coastal is contradicted by the fact that they did not file any claim against Coastal on the basis of an agency agreement. Finally, their argument that it would be against public policy for the insurance carrier to settle a matter, containing tort claims, on behalf of its insured is undermined by their own words acknowledging that WSI and the Title Insurance Defendants would later determine a division of the settlement proceeds. Therefore, WSI

respectfully requests that the Court reject the R&R and enter an Order awarding WSI the full amount of the Coastal settlement funds for its losses, with an offset to the Title Insurance Defendants for that portion of damages for which a fact finder concludes that they are jointly and severally liable for Coastal's conduct.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 72(b) and L. Civ. R. 72.1(c)(2), the Court's review of a Magistrate Judge's report and recommendation on a dispositive motion is subject to a *de novo* review. In conducting a *de novo* review, the Court

> may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The Judge, however, need not normally conduct a new hearing and may consider the record developed before the Magistrate Judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

L. Civ. R. 72.1(c). The enforcement of a settlement agreement concerns dispositive relief. *See Saber v. Finance Am. Credit Corp.*, 843 F. 2d 697, 702-03 (3d Cir. 1988).

## ARGUMENT

**I. The Distribution of the Settlement Funds Should Not Be Held in Abeyance**

To prevent the Title Insurance Defendants' cross-claims for contribution and indemnification from being dismissed in response to Coastal's motion to dismiss under the law of the case, [Doc. No. 410], the Title Insurance Defendants

suggested, through counsel, that the parties try to negotiate with Coastal's insurer, General Star, for the remainder of its wasting policy. Coastal and General Star agreed to a mediation to have the claims, primarily those of WSI which continued to drain the policy, against Coastal dismissed and agreed to settle for less than the amount remaining on the policy with WSI and the Title Insurance Defendants. Counsel for Commonwealth initially suggested that WSI receive the money and give an offset to the Title Insurance Defendants. While WSI holds a judgment for more than $500 million entered by this Court and has suffered substantial losses, the Title Insurance Defendants have not yet been found liable, have suffered no loss, and are not entitled to a windfall.

The R&R correctly states that WSI and the Title Insurance Defendants have failed to reach an agreement regarding disbursement of the settlement proceeds. Before resorting to the present motion, WSI sought the assistance of the Court in resolving this matter, after negotiations between counsel failed and the Title Companies reneged on their agreement to mediate the matter in good faith. The parties submitted letters to the Court regarding the disbursement (Magnanini Cert., Ex. G, H, I), submitted confidential settlement memoranda to Judge Shipp regarding the disbursement on August 12, 2012, September 14, 2011, and January 19, 2012, and, although no settlement conference ever took place, was advised on a telephone status conference on January 25, 2012 that a motion should be filed for

this issue to be properly before the Court and a briefing schedule was set (Magnanini Cert., Ex. A).

As the Court is well aware, every contract contains a covenant of good faith and fair dealing. WSI has engaged in good faith and fair dealing by proposing that the parties engage in a mediation to amicably resolve this dispute. In accordance with their pattern and practice throughout this litigation, the Title Insurance Defendants have failed to act in good faith by unreasonably delaying the distribution of the settlement funds. It is inconceivable how they could originally agree to mediate the distribution of the settlement funds, contemplate the distribution of these funds in communications with Coastal's insurance carrier's counsel regarding the drafting of the settlement agreement (Magnanini Cert., Ex. F), and then wholly refuse WSI's request to participate in a mediation (Magnanini Cert., Ex. G at ex. A and B), and argue to Judge Shipp that New Jersey law would not permit Coastal's insurance carrier to settle WSI's tort claims (Magnanini Cert., Ex. C at 2-6).

In arguing why Judge Shipp should not entertain settlement negotiations or mediation, in a July 27, 2011 letter, the Title Insurance Defendants wrote that:

> With respect to the settlement with Coastal, that settlement has been effectuated and Coastal has paid the settlement and it is being held in escrow. Both the plaintiff and the title insurance defendants contend that they are entitled to the proceeds of that settlement.

7

> I do not think that the Court could assist the plaintiff and the title insurance companies in resolving their dispute on this issue. Preliminarily, I would note that irrespective of how the proceeds of the settlement with Coastal are divided between the plaintiff and the title insurance companies, the main lawsuit will continue. In other words, a resolution of the claims of the plaintiff and the claims of the title insurance companies to the proceeds of the Coastal settlement will not resolve the entire case and will not assist in resolving the entire case.

(Magnanini Cert., Ex. H). When this letter was written, the Title Insurance Defendants knew that WSI was in bankruptcy and that it would obviously need the money from the settlement to assist with litigation expenses. It is inconceivable how anything other than bad faith could justify their obstructionist attitude toward settlement monies sitting in escrow for years, other than the perceived tactical advantage that they gain. Without court intervention, when do they expect to ever get a resolution to the distribution of settlement funds? They may not care because they are not entitled to the funds and they gain the same benefit from keeping the funds from WSI. To the extent that they think a jury will find that they are liable for Coastal's acts, there is simply no valid reason why they will not accept a set off.

As correctly set forth in the R&R, WSI and the Title Insurance Defendants do not argue that the settlement agreement needs to be reformed or that it is missing essential terms. The settlement agreement provided for payment of $425,000 by Coastal and its carrier General Star to WSI and the Title Insurance

Defendants collectively, which was paid, as agreed, into an attorney trust account. (Magnanini Cert., Ex. D at ex. A, Settlement Agmt. ¶ 1). The manner in which the distribution would occur was the subject of a verbal agreement between WSI and the Title Insurance Defendants in which it was agreed that if the parties could not decide upon a distribution that they would engage in a separate mediation and was not a missing material term to the settlement with Coastal. Indeed, by letter dated February 1, 2011, counsel for the Title Insurance Defendants specifically acknowledged that WSI and the Title Insurance Defendants would be discussing "how the settlement proceeds are divided between and among the plaintiff and the title insurers" following the conclusion of the Coastal settlement and following approval by the bankruptcy court. (Magnanini Cert., Ex. F).

    The reason the parties are now at an impasse is because counsel for WSI and the Title Insurance Defendants separately agreed to engage in private settlement negotiations to avoid protracted discussions with Coastal and General Star. In bad faith, the Title Insurance Defendants refuse to engage in settlement discussions or mediation as had been agreed. The Title Insurance Defendants propose no resolution to this issue other than for the Court to award the settlement funds to them. Thus, the R&R simply placed unnecessary emphasis on the lack of a dispute resolution provision in the settlement agreement. While it certainly would have been helpful in hindsight, the settlement with Coastal and General Star hinged on

9

them paying the remainder of a wasting policy and the manner in which WSI and the Title Insurance Defendants would ultimately distribute the funds was not material.

Therefore, WSI files this objection to Judge Shipp's R&R, and respectfully requests this Court hold a settlement conference, hold a hearing, order the parties to submit to mediation, or decide an equitable distribution of the Coastal settlement funds. It is irrational for this money to be indefinitely held in escrow.

## II. Plaintiff is Entitled to the Settlement Funds

The Title Insurance Defendants have taken an obstructionist stance in which they refuse, in bad faith, to counter WSI's proposed distribution or request to engage in mediation or settlement discussions (Magnanini Cert., Ex. G, exhibits A and B attached thereto), and ultimately for the first time argued to the Court in their February 21, 2012 opposition brief that they are somehow entitled to the full $425,000 because they have incurred attorneys' fees (Magnanini Cert., Ex. C). In agreeing to engage in a mediation or a settlement conference, WSI acknowledges that it might give up a portion of the $425,000, and said as much in confidential settlement memoranda submitted to the Court. But WSI does not believe that it should cede the entire $425,000 to the Title Insurance Defendants. Moreover, the offer to provide the Title Insurance Defendants an offset for the entire $425,000, as first suggested by defense counsel, against a judgment is more than generous and

as Judge Shipp stated: "more plausible to the Undersigned than Defendants' arguments." (Magnanini Cert., Ex. E, R&R at 6).

    The R&R articulates that the Title Insurance Defendants contend "that they may be entitled to a portion of the settlement proceeds" and "argue that the settlement funds should not be released to Plaintiff, as Plaintiff will deplete the funds for attorneys' fees, leaving nothing available for Defendants." (Magnanini Cert., Ex. E, R&R at 2; Magnanini Cert., Ex. C, Defs.' Opp'n Br. at 12-13). This would not, however, "constitute unjust enrichment for Plaintiff in the event a jury finds for Defendants," (*id*.), because these are settlement proceeds and Coastal made a decision to settle with Plaintiff and the Title Insurance Defendants. Furthermore, a jury verdict in favor of the Title Insurance Defendants on Plaintiff's breach of contract claims would result in no money passing to the Title Insurance Defendants. There is no justification for the Title Insurance Defendants to state that they would be entitled to this money if a jury found in their favor.[2] They keep throwing arguments at the wall hoping something sticks and, as a result, have

---

[2] As discussed in detail in WSI's reply brief, the Title Insurance Defendants did not file a Third Party Complaint against Coastal. They filed boilerplate cross-claims for contribution and indemnification that are virtually identical to cross-claims asserted against the other tortfeasors. The cross-claims did not set forth any basis for relief under the terms of their agency agreement with Coastal that would have arisen out of acts that occurred fifteen years ago. Thus, there was never any affirmative claim against Coastal under the indemnification agreement that would justify the Title Insurance Defendants receiving a recovery for their attorneys' fees expended in this action.

successfully delayed any distribution of the settlement proceeds for more than 18 months. Even if the parties were to wait for trial and a jury found in favor of the Title Insurance Defendants, the parties would be in the same situation as they are today with the $425,000 sitting in an attorney trust account waiting for the parties to determine how it should be distributed. This is simply unreasonable.

Additionally, the settlement agreement provided that each party was to bear its own costs and fees. (*Id*. at 7). The Title Insurance Defendants offer no explanation as to how they can agree to bear their own "costs and fees" while telling the Court that they have been damaged by virtue of Coastal's breach of its agency contracts because they "have expended significant legal fees and expenses in defending the action." (Magnanini Cert., Defs.' Opp'n Br. at 12). As Judge Shipp fittingly stated in the R&R:

> the Undersigned strains to understand how the Defendants may claim injury when the plain language of the Settlement Agreement specifically provides that each party was to bear its own fees and costs. As such, it appears counterintuitive to infer that Defendants intended the settlement funds to be utilized as an offset to any of its attorneys' fees and costs. Rather, an award to Plaintiff with an offset against any potential judgment to Defendants is more plausible to the Undersigned than Defendants' arguments.

(R&R at 6).

The Title Insurance Defendants' argument that WSI is not entitled to the settlement proceeds because WSI's claims against Coastal were in tort and Coastal's insurance carrier denied coverage based on an intentional acts exclusion

is equally absurd. Similarly, their argument that it would be against public policy for the insurance carrier to settle this matter on behalf of its insured, Coastal, is undercut by the settlement with both WSI and the Title Insurance Defendants and their statements acknowledging that WSI and the Title Insurance Defendants would later determine a division of the settlement proceeds.

The parties agreed to resolve their disputes without any admission of liability, that no party was a prevailing or successful party, and General Star took the position that it had no duty to indemnify Coastal for any of the claims. (Settlement Agmt. at 1-2, 9-10). Furthermore, the parties executed mutual releases, including a release of Coastal's cross-claims against the Title Insurance Defendants.

Accordingly, the Court should reject Judge Shipp's recommendation to deny WSI's motion without prejudice as the Title Insurance Defendants are bound by the language contained in their cross-claims, the law of the case, the American Rule, and the terms of the settlement agreement. Since the Title Insurance Defendants refuse to participate in settlement discussions or mediation on this issue, and they have failed to articulate any legitimate legal argument for their entitlement to the settlement funds, it is respectfully requested that WSI's motion be granted.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court reject the R&R, which recommended that the Court deny the motion *without prejudice*, and enter an Order requiring that the Coastal settlement proceeds be turned over to Plaintiff and provide that the Title Insurance Defendants receive an offset for that portion of damages for which they are deemed, by the fact finder, jointly and severally liable for Coastal's conduct in this matter.

Respectfully submitted,

/s/ Robert A. Magnanini
Robert A. Magnanini
Amy Walker Wagner
Daniel Ian Mee
STONE & MAGNANINI LLP
150 JFK Parkway, 4th Floor
Short Hills, NJ  07078
Tel.:  (973) 218-1111

*Attorneys for Plaintiff Walsh Securities, Inc.*

Dated: August 9, 2012