# EXHIBIT B

# STONE ᛘ MAGNANINI
## LLP

COMPLEX COMMERCIAL LITIGATION

**NEW JERSEY OFFICES**    150 JFK Parkway, Short Hills, NJ 07078    P 973.218.1111    F 973.218.1106

February 10, 2012

**VIA CM/ECF**

Honorable Michael A. Shipp, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey 07101

      Re:    *Walsh Securities, Inc. v. Cristo Property Management, LTD, et al.*
              Civil Action No. 97-3496 (DRD/MAS)

Dear Judge Shipp:

      We represent Plaintiff Walsh Securities, Inc. ("Plaintiff" or "WSI") in the above-entitled action. Please accept this letter brief in support of Plaintiff's motion to disburse the Coastal settlement proceeds in accordance with Your Honor's Order dated February 3, 2012. As the Court is aware, Plaintiff and Commonwealth Land Title Insurance Co. ("Commonwealth"), Fidelity National Title Insurance Co. of New York ("Fidelity") and Nations Title Insurance of New York, Inc. ("Nations") (collectively, "the Title Insurance Defendants") entered into a settlement agreement with Coastal Title Agency ("Coastal"). Plaintiff requests that the Court enter an order requiring that the Coastal settlement proceeds be turned over to Plaintiff and provide that the Title Insurance Defendants receive an offset for that portion of damages for which they are deemed, by the fact finder, jointly and severally liable for Coastal's conduct in this matter.

## I.    WSI'S RICO SUIT AGAINST COASTAL, AND THE SETTLEMENT THEREOF

###     A.    *Coastal Title's Role As An Agent For The Title Insurance Defendants And As A Central Player In The RICO Scheme*

      Coastal Title Agency was at all relevant times a title insurance broker for the real property closings involving mortgage loans that were sold to WSI. Coastal was the preferred title insurance broker for the orchestrators of the RICO scheme to defraud WSI, and it worked closely with the Title Insurance Defendants' approved closing attorneys to procure title insurance and Closing Service Protection Letters ("CPLs"). Without the title insurance and CPLs from the Title Insurance Defendants, WSI would not have wired the funds for the fraudulent real estate closings. As an agent for each of the Title Insurance Defendants, Coastal chose which insurance

Honorable Michael A. Shipp
February 10, 2012
Page 2 of 6

company provided the required coverage – rotating between Fidelity, Nations and Commonwealth. Indeed, the Title Insurance Defendants had written agency agreements with Coastal Title that granted it certain rights to conduct business on behalf of the Title Insurance Defendants. Pursuant to these agency agreements, the Title Insurance Defendants delegated certain responsibilities, which Coastal Title undertook to perform on behalf of and for the benefit of the Title Insurance Defendants. The responsibilities delegated to and undertaken by Coastal Title included the origination of applications for title insurance, the preparation of abstracts, the examination of titles to real estate, the preparation and issuance of commitments, binders, and reports of title, the issuance of policies of title insurance, the issuance of closing service protection letters, and the recording of all necessary papers.

As part of the title insurance policies issued to owners who are borrowing money to finance their purchases of real property, title insurance companies issue title policies and CPLs for the benefit of the mortgage loan lenders. In these CPLs, the title insurance companies agree to indemnify the mortgage loan lenders against loss in connection with, among other things, fraud or misapplication by the closing attorneys. These CPLs are usually required by mortgage loan lenders as pre-conditions to providing the mortgage loans. The title insurance companies will only issue CPLs and provide indemnification against fraud where the closings are handled by one of the companies' approved attorneys.

### B. *WSI's RICO And Fraud Claims Against Coastal*

In its Fourth Amended Complaint ("FAC"), WSI alleged that Coastal engaged in a pattern of racketeering activity in violation of 18 U.S.C. 1962. Specifically, WSI alleged that Coastal and other defendants in this lawsuit induced WSI to purchase mortgage loans for up to 8 times the value of the properties at issue, and that the proceeds from WSI's mortgage loans were then distributed among the RICO defendants as illicit profits. This was, simply stated, a fraudulent "land-flipping" scheme based on inflated, fraudulent appraisals, straw-buyers who signed on to buy properties they had no intention of utilizing, dirty closing attorneys who knew of the fraud and perpetuated it, and other malfeasants who wound up destroying WSI through their pernicious scheme.

The process played out as follows:

> Using Coastal as its agent, Fidelity Title (one of the Title Insurance Defendants) issued a title insurance policy and a closing service protection letter to WSI. The policy and CPL issued through Coastal required Fidelity Title to reimburse WSI for the following losses: (1) those arising out of fraud or misapplication by its agent (Coastal Title) and/or by its approved attorney (Stanley Yacker) for failing to comply with WSI's written closing instructions; or (2) those arising out of fraud or misapplication by Coastal or Yacker in handling WSI's funds.

> Notably, Mr. Yacker is one of several settling defendants who went to prison for several years for perpetrating the fraud at issue in this case.

Honorable Michael A. Shipp
February 10, 2012
Page 3 of 6

> Coastal committed fraud by, among other things, failing to disclose that the loan transactions were fraudulent and that the closing documents were not timely and properly recorded. Coastal's President and owner, Bob Agel, admitted during his deposition that Coastal issued two title insurance commitments on each property. One title commitment was issued to Mr. Kane (another convicted felon involved in the scheme) and his companies that purchased the issue properties for small amounts of money. The title commitments issued to Mr. Kane detailed the numerous problems with the property's title. A second commitment, however, was issued to WSI bearing a nearly identical file number apart from the addition of an (A). This title commitment issued to WSI, however, showed no title defects. Mr. Agel also testified that in April 1997, Mr. Kane came to him with several hundred deeds, mortgages and joint venture agreements and a check for $50,000 to file the documents that had never been filed by Mr. Yacker after the closings with the straw buyers. Mr. Agel further testified that this was not a customary business or industry practice. Finally, Mr. Agel testified that he spoke to attorneys and underwriters for the Title Insurance Defendants on an almost daily basis because of the numerous problems with the properties.

Coastal filed had two insurance policies which provided $1 million in total coverage. While Coastal's insurance carrier claimed that it did not have an obligation to indemnify Coastal for its intentional actions, the carrier did agree to provide its policy limits to pay Coastal's legal defense in this matter. As the case has progressed, the insurance policies have continued to waste away, reducing the amount available to either pay a settlement or fund a defense to approximately $450,000. The parties agreed to mediate in January 2011 during the middle of fact discovery, in part because Coastal's carrier realized that the remaining fact discovery, expert discovery, summary judgment motions and trial would exhaust its policy.

In answering WSI's FAC, the Title Insurance Defendants asserted cross-claims against Coastal for contribution and indemnification. Coastal moved to dismiss the cross-claims under Fed. R. Civ. P. 12(b)(6). Specifically, Coastal argued (at Dkt. 409, p. 19) that it could not, as a legal matter, be liable to the Title Insurance Defendants because Judge Debevoise had specifically foreclosed liability *in tort* where the underlying claims on which contribution would be based sounded *in contract*. *Walsh Securities Inc. v. Cristo Prop. Mgmt., Ltd.*, Civ. No. 97-3496 (DRD), 2007 WL 951955 (D.N.J. March 28, 2007); *Walsh Securities Inc. v. Cristo Prop. Mgmt., Ltd.*, Civ. No. 97-3496 (DRD), 2009 WL 5064757 (D.N.J. Dec. 16, 2009)  Indeed, under the law of the case doctrine, Coastal was undoubtedly correct that liability would not flow to Coastal where WSI's claims against the Title Insurance Defendants are strictly contractual in nature and the claims against Coastal sound in tort.[1] "The law of the case doctrine posits that

---

[1] This motion was never decided by the District Court, as Coastal withdrew the motion because the claims against it were going to be mediated. They were, of course, mediated successfully

Case 2:97-cv-03496-DRD-JAD Document 549-3 Filed 08/09/12 Page 5 of 7 PageID: 10416
Case 2:97-cv-03496-DRD-MAS Document 516-1 Filed 02/10/12 Page 4 of 6 PageID: 10033

Honorable Michael A. Shipp
February 10, 2012
Page 4 of 6

when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Farina v. Nokia, Inc.*, 625 F.3d 97, 117 n. 21 (3d Cir. 2010) (internal quotation marks and citation omitted). The doctrine plainly would have applied resulting in a dismissal of the Title Insurance Defendants' cross-claims against Coastal.

### C. *WSI's Settlement Of Its RICO And Fraud Claims Against Coastal*

The parties settled their claims with Coastal for $425,000 and Judge Winfield in the Bankruptcy Court approved the settlement on May 26, 2011. *See* No. 44845-NLW Dkt. 45 (Bankr. D.N.J.). Thereafter, Coastal's carrier, General Star Indemnity Company, remitted to WSI the $425,000 in settlement proceeds, after waiting until the time to appeal the Bankruptcy Court's approval had expired. The distribution of those monies is at the center of this dispute. The monies are currently being held in escrow, in the attorney trust account of Stone & Magnanini LLP, pursuant to the agreement of the parties.

On July 8, 2011, WSI informed the Title Insurance Defendants demanding that it was entitled to the entire $425,000 based on the litigation reality that WSI suffered losses due to Coastal's actions and the Title Insurance Defendants had neither a claim on the proceeds under the law of the case nor suffered any losses and were not entitled to a windfall. WSI offered to credit this sum to the Title Insurance Defendants for that portion of damages for which they are deemed jointly and severally liable for Coastal's conduct. As part of WSI's demand letter, pursuant to an agreement between counsel that if the parties could not negotiate the distribution of the Coastal settlement proceeds, they would enter into a half-day mediation, WSI offered mediation as a sensible, amicable way to resolve the dispute among the parties. Counsel for WSI was induced to settle with Coastal by this promise to mediate by the Title Insurance Defendants' counsel and repeatedly explained this procedure to Judge Debevoise, Judge Shipp and Judge Winfield in discussing the status of the case and the settlement with Coastal. In fact, counsel for Commonwealth first proposed trying to settle with Coastal and having Walsh receive the remaining proceeds of a wasting insurance policy in exchange for an offset credit to be provided to the Title Insurance Defendants. The Title Insurance Defendants, however, responded that they did not agree that WSI should receive the proceeds of the settlement in return for a set off and, for the first time, refused to mediate the issue.

## II. WSI IS ENTITLED TO THE ENTIRETY OF THE PROCEEDS

The Title Insurance Defendants have not yet suffered any loss related to this litigation. Because there is no loss, they have no legal or equitable claim to contribution or indemnification at this juncture. The most sensible way to resolve this dispute is to afford immediate compensation to WSI – the party who *has* suffered the losses due to the Defendants' breach of contract and Coastal's fraudulent conduct, which gave rise to the settlement.

---

and as a result the Title Insurance Defendants have now taken this opportunity to frustrate this litigation by stalling the disbursement of the settlement proceeds.

Honorable Michael A. Shipp
February 10, 2012
Page 5 of 6

      WSI settled with Coastal in exchange for not proceeding to trial. The Title Insurance Defendants are not entitled to a windfall because Coastal and WSI resolved their dispute. A credit for that portion of damages attributable to Coastal's conduct for which they are deemed joint and severally liable is more than sufficient. A damages credit would compensate the Title Insurance Defendants for any losses they suffered as a result of Coastal's conduct. This is, indeed, precisely what these Defendants want. But they also want it both ways: as a litigation tactic to stall WSI from receiving these proceeds, they reject the notion of a damages offset in favor of cash. It is pure litigation gamesmanship that is vexatiously designed to deny WSI its right to settlement monies. Even more astounding, this was the position initially espoused by Mr. Kott when he suggested that WSI and the Title Insurance Defendants settle with Coastal before its motion to dismiss was granted.

      Balancing the equities, compensating WSI in this case from monies paid by its tortfeasor is the *only* equitable method of distribution. The Defendants want to hold up any payment to WSI to gain leverage in this litigation. Defendants essentially take the position that the plaintiff is invisible and never had live RICO and fraud claims against Coastal. Plaintiff is not invisible and has well documented losses; Defendants' position betrays the facts of this case, is concomitantly lawless given the law of the case, and therefore should not be countenanced. Furthermore, until Defendant's response to WSI's July 8 letter, all parties had discussed and agreed at the mediation and during settlement discussions with Judge Debevoise that if the distribution of the Coastal settlement funds could not be negotiated, they would be mediated.

      The Title Insurance Defendants' claim that WSI is not entitled to the settlement proceeds because Coastal's insurance carrier denied coverage based on an intentional acts exclusion is preposterous. It is entirely ancillary and irrelevant to the question of an insurance carrier's duty to provide coverage of an underlying litigation. It is also irrelevant to the insurer's decision to settle. The position is essentially that a carrier's decision to defend/pay or not goes to the measure of plaintiff's damages. This, of course, is not the law. The insurance carrier and the defendant are in privity with one another, and the positions they take with each other are irrelevant to a plaintiff's underlying damage claim. *Cf. Jewell v. Catherine Cannon & State Farm Fire & Cas. Co.*, No. 1:09cv244, 2010 U.S. Dist. LEXIS 13871, at *12 (N.D. Miss. Feb. 17, 2010) (liability for damages irrelevant to the issue of coverage).

      It should be noted what an odd position the Title Insurance Defendants have taken here. Based on dubious previously thrice dismissed cross-claims they held against a settling defendant, they claim that they are entitled to contribution and indemnification when they have suffered *zero loss*. They seek to deny WSI the settlement monies that directly flowed from the damage that Coastal caused WSI – not any damage that Coastal caused the Title Insurance Defendants. Indeed, during settlement discussions before the Title Insurance Defendants changed their position to "no pay", all parties had discussed and agreed that WSI would receive all of the Coastal settlement monies as part of a global settlement. The most equitable method of resolving this dispute is to award the Title Insurance Defendants a damages offset – which would entirely make them whole in their claims. The Title Insurance Defendants, instead, want the windfall of the entire *rem* so as to deny WSI any recovery before this matter goes to trial. Their position is untenable, both as a matter of equity, and as a matter of law. For those reasons, WSI

Honorable Michael A. Shipp
February 10, 2012
Page 6 of 6

is entitled to the whole of the settlement monies, and for purposes of settlement, WSI takes the position that the Defendants are entitled to a damages offset only.

## III. CONCLUSION

Accordingly, Plaintiff respectfully requests that the Court enter an Order awarding the Coastal settlement funds to Plaintiff, with an offset to the Title Insurance Defendants for that portion of damages for which they are deemed, by the fact finder, jointly and severally liable for Coastal's conduct.

Respectfully submitted,

/s/Robert A. Magnanini
Robert A. Magnanini