# EXHIBIT D

# STONE 🅼 MAGNANINI
## LLP

### COMPLEX COMMERCIAL LITIGATION

**NEW JERSEY OFFICES**   150 JFK Parkway, Short Hills, NJ 07078   P 973.218.1111   F 973.218.1106

March 5, 2012

### VIA CM/ECF AND REGULAR MAIL

Honorable Michael A. Shipp, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey 07101

> Re:   *Walsh Securities, Inc.  v. Cristo Property Management, LTD, et al.*
>        Civil Action No. 97-3496 (DRD/MAS)

Dear Judge Shipp:

We represent Plaintiff Walsh Securities, Inc. ("Plaintiff" or "WSI") in the above-entitled action.  Please accept this letter brief in further support of WSI's motion for turnover of the funds currently held in escrow from the settlement with Coastal Title Agency ("Coastal").  Defendants Commonwealth Land Title Insurance Co. ("Commonwealth"), Fidelity National Title Insurance Co. of New York ("Fidelity") and Nations Title Insurance of New York, Inc. ("Nations") (collectively, "the Title Insurance Defendants") submitted a joint opposition brief that is nothing but smoke and mirrors.  First, the majority of the arguments they raise are irrelevant based on the one document they made sure not to include in their opposition – the settlement agreement with Coastal and its carrier General Star.  The reason there is no mention or inclusion is that the settlement agreement covers "all claims" and goes on to state that General Star has no duty to indemnify the parties for "any of the claims."  (Exhibit A).  The parties further agreed to stipulations of dismissal with each party to bear its own costs.  Secondly, the cross-claims contemplated that there would first be a finding of liability as to the Title Insurance Defendants; that has not yet occurred.  In fact, WSI's proposal generously provides them with an offset.  Nonetheless, under the law of the case, the contribution claims would have certainly been dismissed and it is possible even the indemnification claims would have been dismissed.  Simply put, the Title Insurance Defendants are bound by the language contained in their cross-claims, the law of the case, and the terms of the settlement agreement.  Under each of these scenarios, WSI respectfully requests that the Court enter an Order awarding the Coastal settlement funds to Plaintiff, with an offset to the Title Insurance Defendants for that portion of damages for which they are deemed, by the fact finder, jointly and severally liable for Coastal's conduct.

## ARGUMENT

### The Settlement

Under the law of the case, the Title Insurance Defendants' cross-claims for contribution and indemnification were going to be dismissed in response to Coastal's motion to dismiss.

Honorable Michael A. Shipp
March 5, 2012
Page 2 of 7

(Dkt. 410). To prevent that, the Title Defendants, specifically Mr. Kott, suggested that the parties try to negotiate with General Star for its wasting policy. Regardless of whether General Star disclaimed coverage for Coastal's acts (and it certainly never agreed to indemnify any party for unalleged breach of contract claims), it agreed to defend Coastal and its coverage limits were being consumed by this litigation. Coastal and General Star agreed to a mediation to have the claims against Coastal dismissed and agreed to settle for less than the amount remaining on the policy. Mr. Kott initially suggested WSI receive the money and give an offset to the Title Defendants. Part of the reason for that discussion was that WSI has suffered losses as a result of the fraud, but the Title Insurance Defendants had not. While WSI holds a judgment for more than $500 million entered by this Court, the Title Insurance Defendants have not suffered a loss and are not entitled to a windfall.

Thus, instead of a trial in which Coastal may have been found liable to WSI under its direct claims the parties settled their claims with Coastal for $425,000 and Judge Winfield in the Bankruptcy Court approved the settlement on May 26, 2011. *See* No. 10-44845-NLW, Dkt. 45 (Bankr. D.N.J.). The Title Insurance Defendants' argument[1] that WSI is not entitled to the settlement proceeds because WSI's claims against Coastal were in tort and Coastal's insurance carrier denied coverage based on an intentional acts exclusion is absurd. It is elementary that parties can have various business reasons for entering into settlements when they fundamentally believe there is no liability. The Title Insurance Defendants lead the Court on a frolic and detour by making summary judgment arguments about liability that are completely irrelevant because the parties settled these claims. In this instance, the Coastal settlement agreement states: "the Parties understand and acknowledge that General Star has taken the position that there is no duty to indemnify Coastal Title for any of the claims asserted against it in the Underlying Litigation." (Exhibit A at 2). It only "agreed to defend Coastal Title in the Underlying Litigation under a full reservation of rights." (Exhibit A at 1-2). The settlement agreement further provided that "the Parties to this Agreement, without any admission of liability on any of their part but to the contrary denying same, desire to amicably resolve all claims between and amongst them stemming from the Underlying Litigation." (Exhibit A at 2, emphasis added). There can be no doubt about this because the settlement agreement also stated:

> "The Settlement Payment and the relinquishment of claims by, between and among the Parties have been agreed to by way of compromise of the disputed claims, and such payment and relinquishment of claims are not to be construed as admissions of liability by any party, by whom liability is expressly denied." (Exhibit A at 9).

---

[1] The reason Fidelity/Nations did not file their own brief is that neither title company has alleged, nor has Coastal admitted, that it may have used the wrong form for their specific CPLs, as occurred with Commonwealth. Thus, Commonwealth did not attach any Fidelity or Nations CPL forms in the hopes that the Court would overlook that there are no "negligence" or "gross negligence" contribution or indemnification claims by Fidelity or Nations against Coastal.

Honorable Michael A. Shipp
March 5, 2012
Page 3 of 7

"It is agreed that none of the Parties shall be deemed a "prevailing party" or "successful" party for purposes of any further claim for statutory or contractual attorney fees or costs." (Exhibit A at 10).

What is also notable is that in its Answer to WSI's Fourth Amended Complaint, Coastal asserted cross-claims against the Title Insurance Defendants. (Dkt. 309). Thus, in addition to WSI and the Title Insurance Defendants agreeing to dismiss Coastal with Prejudice, Coastal also agreed to "execute a stipulation of dismissal with prejudice of all claims against the Title Insurance Defendants." (Exhibit A at 7). Additionally, the provision provided that each party was to bear its own costs and fees. (*Id.*). It is inconceivable how they can agree to bear their own "costs and fees" and then tell the Court that they have been damaged because by virtue of Coastal's breach of its agency contracts because they "have expended significant legal fees and expenses in defending the action." (Opp. Br. at 12). As discussed in more detail below, the Title Insurance Defendants did not file a Third Party Complaint against Coastal, rather they filed cross-claims for contribution and indemnification that are virtually identical to cross-claims asserted against the other tortfeasors. These cross-claims contemplated indemnification resulting from a finding of liability as to the Title Insurance Defendants and did not contemplate attorneys' fees accruing under the American Rule prior to a settlement where there was no admission of liability. The Title Insurance Defendants are not entitled to a windfall because Coastal and WSI resolved their dispute and a credit for that portion of damages attributable to Coastal's conduct for which the Title Insurance Defendants are ultimately deemed joint and severally liable is more than sufficient. Besides, they agreed to bear their own costs and fees.

## The Cross-Claims for Contribution and Indemnification

Though the Title Insurance Defendants provide no explanation for why they did not file a Third Party Complaint against Coastal, they are bound by the cross-claims for contribution and indemnification that they filed, which are quoted in their entirety below for the convenience of the Court. While Commonwealth only asserted an indemnification claim against Coastal and the attorneys alleged to have participated in the fraud, Fidelity/Nations asserted indemnification claims against all of the tortfeasors, including Mr. Calanni. Nevertheless, as can be gleaned from a reading of the indemnification claims, the indemnification claims both contemplate that there will be a finding of liability against the Title Insurance Defendants that will trigger the cross-claims for indemnification. Commonwealth's indemnification claim states: "for any and all sums which defendant Commonwealth Land Title Insurance Company may be required to pay in this action." Similarly, Fidelity/Nations' indemnification claim states: "Any damages for which Answering Defendants/Cross-claim Plaintiffs may be held liable are chargeable to the Cross-claim Defendants." There is simply nothing in these cross-claims that justifies an award of damages to the Title Insurance Defendants before they are found liable to Plaintiff.

*Commonwealth's Cross-Claim for Contribution states:*

Defendant, Commonwealth Land Title Insurance Company, denies any liability to plaintiff or to any other defendant, but if Commonwealth Land Title Insurance

Case 2:97-cv-03496-DRD-MAS   Document 528   Filed 03/05/12   Page 4 of 7 PageID: 10241

Honorable Michael A. Shipp
March 5, 2012
Page 4 of 7

> Company is found liable, it demands contribution from Cristo Property
> Management, Ltd., a/k/a G.J.L. Limited, DEK Homes of New Jersey, Inc.,
> Oakwood Properties, Inc., National Home Funding, Inc., Capital Assets Property
> Management & Investment Co., Inc., Capital Assets Property Management,
> L.L.C., William Kane, Gary Grieser, Robert Skowrenski, II, Richard Calanni,
> Richard DiBenedetto, James R. Brown, Thomas Brodo, Ronald Pierson, Stanley
> Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese,
> Esq., Lawrence Cuzzi, Anthony D' Apolito, DAP Consulting, Inc., Nations Title
> Insurance of New York, Inc., Fidelity National Title Insurance Company of New
> York, Coastal Title Agency, Donna Pepsny, Weichert Realtors, and Vecchio
> Realty, Inc. d/b/a Murphy Realty Better Homes and Gardens pursuant to the New
> Jersey Tortfeasors Contribution Act.

(Dkt. 304).

*Commonwealth's Cross-Claim for Indemnification states:*

> While denying any liability to the plaintiff or to any other defendant whatsoever,
> defendant Commonwealth Land Title Insurance Company nevertheless asserts
> that any losses sustained by plaintiff or by any other defendant were the
> proximate result of the actions of defendants Stanley Yacker, Esq., Michael
> Alfieri, Esq., Richard Pepsny, Esq., Anthony M. Cicalese, and Coastal Title
> Agency, which actions were primary and active, and if defendant Commonwealth
> Land Title Insurance Company is found liable to plaintiff with respect to such
> damages, such liability results solely from secondary, imputed, vicarious or
> passive negligence and defendants Stanley Yacker, Esq., Michael Alfieri, Esq.,
> Richard Pepsny, Esq., Anthony M. Cicalese, and Coastal Title Agency are liable
> to defendant Commonwealth Land Title Insurance Company by way of
> indemnification for any and all sums which defendant Commonwealth Land Title
> Insurance Company may be required to pay in this action.

(Dkt. 304).

*Fidelity/Nations' Cross-Claims for Contribution and Indemnification state:*

> Answering Defendants/Cross-claim Plaintiffs, Fidelity National Title Insurance
> Company of New York and Nations Title Insurance of New York, say, by way of
> cross-claim against the following Defendants/Cross-claim Defendants: Cristo
> Property Management, Ltd., a/k/a G.J.L. Limited, DEK Homes of New Jersey,
> Inc., Oakwood Properties, Inc., National Home Funding, Inc., Capital Assets
> Property Management & Investment Co., Inc., Capital Assets Property
> Management, L.L.C., William J. Kane, Gary Grieser, Robert Skowrenski, II,
> Richard Calanni, Richard DiBenedetto, James R. Brown, Thomas Brodo, Ronald
> J. Pierson, Stanley Yacker, Esq., Michael Alfieri, Esq., Richard Pepsny, Esq.,

Honorable Michael A. Shipp
March 5, 2012
Page 5 of 7

Anthony M. Cicalese, Esq., Lawrence M. Cuzzi, Anthony D'Apolito, DAP Consulting, Inc., Coastal Title Agency, Irene DiFeo, Donna Pepsny, Weichert Realtors, and Vecchio Realty, Inc. d/b/a Murphy Realty Better Homes and Gardens (collectively the "Cross-claim Defendants"):

FIRST COUNT (Indemnification)

1. Answering Defendants/Cross-claim Plaintiffs deny any liability to Plaintiff, but if it is determined that Answering Defendants/Cross-claim Plaintiffs or anyone of them is liable to Plaintiff in any respect, such liability is secondary, passive and vicarious, while the liability of the Cross-claim Defendants is primary, active and direct. Any damages for which Answering Defendants/Cross-claim Plaintiffs may be held liable are chargeable to the Cross-claim Defendants.

2. Answering Defendants are entitled to indemnification from the Cross-claim Defendants and/or other Fourth parties.

WHEREFORE, Answering Defendants/Cross-claim Plaintiffs demand judgment of indemnification in their favor and against the Cross-claim Defendants, together with costs of suit and attorney fees and any other relief that the Court may deem equitable and just.

SECOND COUNT (Contribution)

3. Answering Defendants/Cross-claim Plaintiffs repeat each of its foregoing allegations contained in the Cross-claim.

4. Answering Defendants/Cross-claim Plaintiffs deny any liability to Plaintiffs, and specifically deny that any such liability is joint and several as to Answering Defendants/Cross-claim Plaintiffs. If it is determined, however, that Answering Defendants/Cross-claim Plaintiffs are liable to Plaintiff in any respect, Answering Defendants/Cross-claim Plaintiffs demand contribution from all Cross-claim Defendants pursuant to the provisos of the New Jersey Joint Tortfeasors Act, NJ.S.A. 2A:53A-l et seq., and all other statutory or common laws which may be applicable with respect to any and all damages that may be assessed against Answering Defendants/Cross-claim Plaintiffs in favor of Plaintiff, together with costs of suit.

WHEREFORE, Answering Defendants/Cross-claim Plaintiffs demand judgment of contribution in their favor and against Crossclaim Defendants, together with costs of suit and attorney fees and any other relief that the Court may deem equitable and just.

(Dkt. 314).

Honorable Michael A. Shipp
March 5, 2012
Page 6 of 7

In addition, Robert Agel, the owner of Coastal, testified that the Title Insurance Defendants never proceeded in making a claim against Coastal under the indemnification provision contained in the agency agreements. Had the Title Insurance Defendants been serious about proceeding under the terms of their agency agreements, they surely would have done more than lump Coastal among other tortfeasors in a generic cross-claim. In fact they had considered it and then backed off. Agel explained this in his testimony as the corporate representative of Coastal:

> Q.    Did Commonwealth ever make a claim against Coastal under the agreement under paragraph L?
> A.    No. There was a threat of a -- actually it wasn't even a threat of that. I got a letter from them I think that said to put my carrier on notice that they were coming after me and I made a big stink about it and they backed off.
>
> Q.    When was that?
> A.    I don't recall when. During relatively early stages of this, I recall that, after the claims started coming in.
>
> Q.    Do you still have a copy of the letter?
> A.    No.
>
> Q.    Do you recall who it was from?
> A.    That would have been from Nancy Koch.
>
> Q.    Did you converse with Miss Koch about that?
> A.    No, no, I went over her head. I wasn't a happy camper.
>
> Q.    Who did you speak to at Commonwealth?
> A.    It wasn't Commonwealth. I went to Lawyer's Title because they bought Commonwealth by the time that all happened so I went directly there.
>
> Q.    Who did you speak to at Lawyer's Title?
> A.    His name was Ron Owen.
>
> Q.    What was his position?
> A.    He was a senior vice president and I think he ran the northeast.
>
> Q.    And what did he tell you?
> A.    "I'll take care of it." I was a very big remitter and, you know, my -- I said to them: Do you want to lose a half million dollar a year agent over this and their answer was no.

(Exhibit B, Coastal 30(b)(6) Dep., 6/23/10, at122:21-124:4).

Honorable Michael A. Shipp
March 5, 2012
Page 7 of 7

Thus, it was a conscious decision by the Title Insurance Defendants not to file a Third Party Complaint against Coastal because their relationship with Coastal, at least at that time, was very lucrative. Consequently, there was never any affirmative claim against Coastal under the indemnification agreement that would justify the Title Insurance Defendants receiving a recovery for their attorneys' fees expended in this action.

In addition, in an effort to facilitate settlement, Coastal withdrew its motion on the eve of the agreement to mediate. Had the settlement not occurred, the Title Insurance Defendants' cross-claims for contribution that allegedly arose under the New Jersey Tortfeasors Contribution Act were bound to be dismissed under the law of the case. *See Walsh Securities Inc. v. Cristo Prop. Mgmt., Ltd.,* Civ. No. 97-3496 (DRD), 2007 WL 951955 (D.N.J. March 28, 2007); *Walsh Securities Inc. v. Cristo Prop. Mgmt., Ltd.,* Civ. No. 97-3496 (DRD), 2009 WL 5064757 (D.N.J. Dec. 16, 2009). This Court has repeatedly held, in accordance with well established New Jersey case law, that because the Title Insurance Defendants were sued in contract and not in tort they could not cross-claim for contribution against parties sued in tort.

Since this Court has not yet held the Title Insurance Defendants liable to Plaintiff for the asserted contract based claims, it would be premature to award the Title Insurance Defendants damages on their cross-claims for contribution and indemnification. Because there is no loss, the Title Insurance Defendants have no legal or equitable claim to contribution or indemnification at this juncture. Therefore, it is only appropriate that WSI, the party who *has* suffered losses due to the Title Insurance Defendants' breach of contract and Coastal's fraudulent conduct, which gave rise to the settlement, receive the settlement proceeds. WSI has repeatedly agreed, as Mr. Kott had first suggested to the undersigned before the mediation, to provide the Title Insurance Defendants with an offset that would accomplish the purpose behind their cross-claims against Coastal. The fact that they will not agree to this and are dragging WSI through this briefing is further evidence of WSI's bad faith claim against them.

<u>CONCLUSION</u>

Accordingly, Plaintiff respectfully requests that the Court enter an order requiring that the Coastal settlement proceeds be turned over to Plaintiff and provide that the Title Insurance Defendants receive an offset for that portion of damages for which they are deemed, by the fact finder, jointly and severally liable for Coastal's conduct in this matter.

Respectfully submitted,

/s/ Robert A. Magnanini
Robert A. Magnanini

cc:   All Counsel of Record (via CM/ECF)
      Richard Calanni (via regular mail)

# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter "Agreement") is made by and among Commonwealth Land Title Insurance Company, Nations Title Insurance of New York, Inc., Fidelity National Title Insurance Company of New York (collectively, the "Title Insurance Defendants"), Coastal Title Agency ("Coastal"), Walsh Securities, Inc. ("Walsh"), and General Star Indemnity Company ("General Star"). All of these parties are collectively referred to herein as the "Parties."

**WHEREAS,** General Star Indemnity Company issued to Coastal a claims-made insurance policy bearing policy number IYA281269 for the Policy Period of November 14, 1997 and November 14, 1998 (the "Policy");

**WHEREAS,** Walsh filed a lawsuit against various defendants, including Coastal and the Title Insurance Defendants, in the United States District Court of New Jersey, Civil Action No. 97-CV-3496, captioned <u>Walsh Securities, Inc. v. Cristo Property Management, Ltd. Et al.</u>, (the "Underlying Litigation");

**WHEREAS,** the Title Insurance Defendants filed certain cross-claims against Coastal in the Underlying Litigation;

**WHEREAS,** Fidelity National Title Insurance Company of New York and Nations Title Insurance of New York, Inc. have now merged and are jointly known as Fidelity National Title Insurance Company of New York;

**WHEREAS,** Coastal sought coverage from General Star for the Underlying Litigation under the Policy, and General Star denied coverage for same;

**WHEREAS,** Coastal and General Star subsequently reached an agreement, whereby General Star agreed to defend Coastal Title in the Underlying Litigation under a full reservation

of rights;

WHEREAS, the Parties understand and acknowledge that General Star has taken the position that there is no duty to indemnify Coastal Title for any of the claims asserted against it in the Underlying Litigation;

WHEREAS, Walsh has filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court), which bankruptcy is captioned In re: Walsh Securities, Inc., Case No. 10-44845;

WHEREAS, the Parties to this Agreement, without any admission of liability on any of their part but to the contrary denying same, desire to amicably resolve all claims between and amongst them stemming from the Underlying Litigation; and

NOW, THEREFORE, in consideration of the foregoing agreements of the Parties, and of the mutual promises contained herein, the Parties understand, covenant and agree as follows:

1.      General Star shall issue payment collectively to Walsh and the Title Insurance Defendants in the aggregate amount of Four Hundred and Twenty Five Thousand Dollars ($425,000.00) (the "Settlement Payment"), with monies being deposited by General Star into an escrow account which requires the written approval of General Star, Walsh Securities and the Title Insurance Defendants for the release of funds from the escrow account. The Settlement Payment shall be made by General Star within fourteen (14) business days following the later of (a) full execution by all Parties of this Agreement; (b) entry of a "final" order by the Bankruptcy Court approving this Agreement, pursuant to Paragraph 6 below; and (c) receipt by General Star of a completed W-9 form from the payees. Upon General Star's payment of the Settlement Payment provided for herein, General Star shall have no further payment obligations, of any kind or any nature, whether under the Policy or applicable law, with regard to the Underlying

Litigation. It is agreed and understood by all Parties that upon General Star's payment of the Settlement Payment, the Policy shall be deemed fully exhausted.

2.      In the event approval has not been obtained from the bankruptcy court for the settlement agreed to herein within thirty (30) days of the execution of this agreement by all parties, the settlement monies set forth in paragraph one (1) shall be paid into an interest bearing escrow or trust account or, if unavailable, a non-interest bearing account requiring the written signature of General Star, Walsh Securities, and the Title Defendants for the distribution of proceeds from the trust account.

3.      For and in consideration of the Settlement Payment, Walsh Securities and the Title Insurance Defendants for themselves and for each of their respective parents, subsidiaries, affiliates, shareholders, directors, officers, employees, successors, heirs, insurers, reinsurers, agents, insurance brokers, administrators, trustees, executors, representatives, former or present dependents, spouses, partners, principals, attorneys and other legal representatives and assigns (collectively, the "Plaintiff Releasors"), do hereby release, discharge and acquit Coastal Title and General Star and each of its parents, subsidiaries, affiliates, shareholders, directors, officers, employees, successors, heirs, insurers, reinsurers, agents, insurance brokers, administrators, trustees, executors, representatives, former or present dependents, partners, principals, successors in interest, predecessors in interest, attorneys and other legal representatives and assigns (collectively, the "Defendant Releasees") from any and all past, present, potential, or future claims, demands, actions, rights, causes of action, attorneys' fees, costs, expenses, judgments, settlements, liabilities, and damages against the Defendant Releasees or against the Policy, of whatever nature, whether known or unknown, foreseen or unforeseen, in connection with, in any way relating to, arising out of, directly or indirectly resulting from, or in consequence of:

a.   the Underlying Litigation;

b.   any of the acts, facts, circumstances or situations alleged directly or indirectly in, related to, or that are the subject of the Underlying Litigation;

c.   any insurance claim made, or could have been made, to General Star in any way relating to, arising out of, directly or indirectly resulting from, or in consequence of the Underlying Litigation;

d.   any allegations, facts, circumstances, situations, claims, defenses, cross-claims, or causes of action that were pleaded or could have been pleaded in the Underlying Litigation; and

e.   any cost, expense, fee or other expenditure of funds, including but not limited to attorneys' fees and costs, relating directly or indirectly to the Underlying Litigation.

f.   any liability, responsibility or coverage under any policy of insurance issued by General Star to Coastal Title.

4.      For and in consideration of the Settlement Payment, Coastal and its parents, subsidiaries, affiliates, shareholders, directors, officers, employees, successors, heirs, insurers, reinsurers, owners, agents, insurance brokers, administrators, trustees, executors, representatives, former or present dependents, spouses, partners, principals, attorneys and other legal representatives and assigns (collectively, the "Coastal Releasors"), do hereby release, discharge and acquit General Star and each of its parents, subsidiaries, affiliates, shareholders, directors, officers, employees, successors, heirs, insurers, reinsurers, agents, insurance brokers, administrators, trustees, executors, representatives, former or present dependents, partners, principals, successors in interest, predecessors in interest, attorneys and other legal

representatives and assigns (collectively, the "General Star Releasees") from any and all past, present, potential, or future claims, demands, actions, rights, causes of action, attorneys' fees, costs, expenses, judgments, settlements, liabilities, and damages against the General Star Releasees or against the Policy, of whatever nature, whether known or unknown, foreseen or unforeseen, in connection with, in any way relating to, arising out of, directly or indirectly resulting from, or in consequence of:

     a. the Underlying Litigation;

     b. any of the acts, facts, circumstances or situations alleged directly or indirectly in, related to, or that are the subject of the Underlying Litigation;

     c. any insurance claim made, or could have been made, to General Star in any way relating to, arising out of, directly or indirectly resulting from, or in consequence of the Underlying Litigation;

     d. any cost, expense, fee or other expenditure of funds, including but not limited to attorneys' fees and costs, relating directly or indirectly to the Underlying Litigation; and

     e. any aspect of General Star's performance (or lack of performance) under the Policy of any duties or obligations, whether contractual, extra-contractual, tort, or otherwise that relate to the Underlying Litigation or any claim made to General Star relating to the Underlying Litigation, including, without limitation, any claims, demands or causes of action relating to any alleged claims handling, claims adjustment, actual or failed exhaustion, negligence, breach of contract, tort, intentional tort, breach of duty or duties, breach of good faith and fair dealing, breach of implied covenant, bad faith, statutory bad faith,

actual or constructive fraud, interference with contractual relationships, deceptive trade practices, unfair insurance trade practices, conduct in violation of any insurance code or any other alleged misconduct, omission or wrongdoing of any kind.

f.  any liability, responsibility or coverage under any policy of insurance issued by General Star to Coastal Title.

5.      For and in consideration of this settlement and the mutual releases herein, Coastal and General Star and their parents, subsidiaries, affiliates, shareholders, directors, officers, employees, successors, heirs, insurers, reinsurers, owners, agents, insurance brokers, administrators, trustees, executors, representatives, former or present dependents, spouses, partners, principals, attorneys and other legal representatives and assigns, do hereby release, discharge and acquit Walsh and the Title Insurance Defendants and each of their parents, subsidiaries, affiliates, shareholders, directors, officers, employees, successors, heirs, insurers, reinsurers, agents, insurance brokers, administrators, trustees, executors, representatives, former or present dependents, partners, principals, successors in interest, predecessors in interest, attorneys and other legal representatives and assigns from any and all past, present, potential, or future claims, demands, actions, rights, causes of action, attorneys' fees, costs, expenses, judgments, settlements, liabilities, and damages against Walsh and the Title Insurance Defendants of whatever nature, whether known or unknown, foreseen or unforeseen, in connection with, or in any way relating to, arising out of, directly or indirectly resulting from, or a consequence of:

    a.   the Underlying Litigation;

    b.   any of the acts, facts, circumstances or situations alleged directly or indirectly in, related to, or that are the subject of the Underlying Litigation

    c.   any cost, expense, fee or other expenditure of funds, including but not limited to attorneys' fees and costs, relating directly or indirectly to the Underlying Litigation; and

6.    This settlement is conditioned upon the Bankruptcy Court approving this Agreement. Within ten (10) days of execution of this Agreement, Walsh, acting through counsel, shall file with the Bankruptcy Court a motion for entry of an order approving this Agreement, said order to become "final" after the time to appeal any such order has expired or, if an appeal is filed, after such time the appeal is conclusively decided.

7.    Should the bankruptcy court deny any motion to approve the settlement agreement, then (a) all monies in the escrow or trust account, inclusive of any interest shall be promptly returned to General Star within ten (10) days of any such order, (b) the releases herein shall not be effective and (c) the parties shall be returned to their respective status as it existed prior to the execution of this agreement.

8.    Within five (5) days of General Star's payment of the Settlement Payment, Walsh, acting through its counsel, shall file a dismissal with prejudice of Coastal from the Underlying Litigation, each party bearing its own costs and fees, and the Title Insurance Defendants, acting through each of their respective counsel, shall file a dismissal with prejudice of all cross-claims against Coastal in the Underlying Litigation, each party bearing its own costs and fees. Coastal Title will also execute a stipulation of dismissal with prejudice of all claims against the Title Insurance Defendants, each party bearing its own costs and fees.

9.      The Plaintiff Releasors represent and warrant that they have not made any assignment of any of their purported claims in the Underlying Litigation and that they have not sold, assigned, transferred, conveyed or otherwise disposed of, and will not sell, assign, transfer, convey or otherwise dispose of any claim, demand, right, obligation, cause of action and/or damage arising out of or in any way involving, relating to or resulting from the Underlying Litigation.  The Plaintiff Releasors further each represents and warrants that no liens, claims, demands, rights, obligations, causes of action or damages have been asserted against it/them with regard to, in connection with, or relating to the Underlying Litigation and that each of them is authorized to receive the funds set forth in Paragraph 1 of this Agreement.

10.      The Title Insurance Defendant Releasors represent and warrant that they have not made any assignment of any of their purported claims in the Underlying Litigation and that they have not sold, assigned, transferred, conveyed or otherwise disposed of, and will not sell, assign, transfer, convey or otherwise dispose of any claim, crossclaim, demand, right, obligation, cause of action and/or damage arising out of or in any way involving, relating to or resulting from the Underlying Litigation.  The Title Insurance Defendant Releasors further each represent and warrant that no liens, claims, crossclaim, demands, rights, obligations, causes of action or damages have been asserted against it/them with regard to, in connection with, or relating to the Underlying Litigation and that each of them is authorized to receive the funds set forth in Paragraph 1 of this Agreement.

11.      The Coastal Releasors each represents and warrants that it/they have not made any assignment of any of their purported claims in the Underlying Litigation or under the Policy and that it/they have not sold, assigned, transferred, conveyed or otherwise disposed of, and will not sell, assign, transfer, convey or otherwise dispose of any claim, demand, right, obligation,

cause of action and/or damage arising out of or in any way involving, relating to or resulting from the Underlying Litigation or the Policy. The Coastal Releasors further each represents and warrants that no liens, claims, demands, rights, obligations, causes of action or damages have been asserted against it/them with regard to, in connection with, or relating to the Underlying Litigation or the Policy.

12.     General Star, by entering into this Agreement, makes no admission regarding the availability of insurance coverage under its Policy, makes no admission of liability to Coastal or the Plaintiff Releasors, and makes no admission of liability for the Underlying Litigation.

13.     The Parties acknowledge and agree that this settlement does not constitute any ratification by General Star, and that this Agreement shall not be deemed or construed to constitute any acceptance or acknowledgment of any obligation by General Star, to defend, indemnify or otherwise provide coverage to any of the Parties herein for any claim made or that could be made under the Policy.

14.     The Settlement Payment and the relinquishment of claims by, between and among the Parties have been agreed to by way of compromise of the disputed claims, and such payment and relinquishment of claims are not to be construed as admissions of liability by any party, by whom liability is expressly denied.

15.     The Parties expressly understand and agree that this Agreement is the complete settlement of the matters set forth herein, and that there exist no written or oral understandings, representations or agreements, directly or indirectly, connected with this Agreement which are not incorporated herein.   All prior or contemporaneous understandings, discussions or agreements with respect to said subject matter are expressly superseded by this Agreement. This Agreement may be amended only in writing, signed by or on behalf of all parties.

16.     This Agreement shall be construed in accordance with the laws of the State of New Jersey.

17.     Each of the persons signing this Agreement declares and represents that the party for which he or she is signing has taken all necessary action to approve the making and performance of this Agreement, that he or she is competent to execute this instrument and that he or she is duly authorized, that he or she has the full right and authority to execute this Agreement on such party's behalf, and that he or she has signed the Agreement of his or her own free act, with advice of counsel, and has not been influenced in making this settlement by any representation of a party or parties released.

18.     It is agreed that none of the Parties shall be deemed a "prevailing party" or "successful" party for purposes of any further claim for statutory or contractual attorney fees or costs.

19.     This Agreement may be executed in one or more counterparts, each of which shall be considered an original, but all of which taken together shall constitute one and the same Agreement.  This Agreement may also be executed and delivered by facsimile signature and in one or more counterparts, each of which shall be considered an original, but all of which taken together shall constitute one and the same Agreement.

20.     The Parties agree that the terms of this Agreement are contractual and are not a mere recital, and it is the purpose of this Agreement to evidence a full and complete compromise settlement of the matters herein set forth.  The Parties warrant that they have carefully read all the terms of this Agreement, that they know the contents therein, that they understand them, that they sign the same freely and voluntarily and that they intend to be legally bound thereby.

21.     It is further understood and agreed that each of the parties to this Agreement

expressly acknowledges that it participated in the drafting of this Agreement.  Accordingly, the language contained within and comprising the substance of this Agreement shall not be presumptively construed either in favor of or against any one party on the grounds that said party or parties drafted this Agreement.

** Remainder of Page Left Blank **

Coastal Title Agency, Inc.

Dated: 4/25/11

By: _____

Robert F. Agel, President
Coastal Title Agency, Inc.

Walsh Securities, Inc.

Dated: _____

By: _____

Its: _____

Commonwealth Land Title Insurance Company

Dated: April 19, 2011

By: VINCENT J SHARKEY JR

Its: SENIOR VICE PRESIDENT

Fidelity National Title Insurance Company of New York

Dated: April 19, 2011

By: VINCENT J SHARKEY JR

Its: SENIOR VICE PRESIDENT

SETTLEMENT AGREEMENT AND RELEASE
Page 12 of 13

Coastal Title Agency, Inc.

Dated: _____

By: _____

Walsh Securities, Inc.

_____

Dated: 4/18/11

By: Robert Walsh

Its: President

Commonwealth Land Title Insurance Company

_____

Dated: _____

By: _____

Its: _____

Fidelity National Title Insurance Company of New York

_____

Dated: _____

By: _____

Its: _____

SETTLEMENT AGREEMENT AND RELEASE

Page 12 of 13

General Star Indemnity Company

Dated: _4/22/2011_

By: _Alexandra Kowalski_

Its: _Second V.P. Claims_

06/2160863.v4

# Exhibit B

Page 1

```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW JERSEY
                    Civil Action No.
                    97-cv-3496 (DRD) (MAS)

WALSH SECURITIES, INC.,   :
                          :
          Plaintiff,      :
                          :
     vs.                  :      DEPOSITION OF:
                          :      ROBERT AGEL
CRISTO PROPERTY MANAGEMENT,
LTD., a/k/a G.J.L. LIMITED;
OAKWOOD PROPERTIES, INC.;
NATIONAL HOME FUNDING, INC.;
CAPITAL ASSETS PROPERTY
MANAGEMENT & INVESTMENT CO.,
INC.; CAPITAL ASSETS PROPERTY
MANAGEMENT, L.L.C.; WILLIAM
KANE; GARY GRIESER; ROBERT
SKOWRENSKI, II; RICHARD CALANNI;
RICHARD DiBENEDETTO; JAMES R.
BROWN; THOMAS BRODO; ROLAND
PIERSON; STANLEY YACKER, ESQ.;
MICHAEL ALFIERI, ESQ.; RICHARD
PEPSNY, ESQ.; ANTHONY M.
CICALESE, ESQ.; LAWRENCE CUZZI;
ANTHONY D'APOLITO; DAP CONSULTING,
INC.; COMMONWEALTH LAND TITLE
INSURANCE CO.; NATIONS TITLE
INSURANCE OF NEW YORK, INC.;
FIDELITY NATIONAL TITLE
INSURANCE CO. OF NEW YORK;
COASTAL TITLE AGENCY; DONNA
PEPSNY; WEICHERT REALTORS; and
VECCHIO REALTY, INC., D/B/A
MURPHY REALTY BETTER HOMES
And GARDENS                :
                           :
          Defendants. :
                           :
  - - - - - - - - - - - -
```

Page 122

1   writing.  What does that mean?

2        A.     I couldn't hold myself out as being a

3   representative of Commonwealth Title for anything

4   other than the issuance of the title policy.

5        Q.     What else could you hold yourself out

6   as?

7        A.     I suppose I could probably try to do

8   something terrible and -- but I guess there are a

9   whole myriad of things, but I am not allowed to bind

10  my title insurance underwriters to anything other

11  than issuing a title policy.

12       Q.     A policy.  Okay.  And then if you could

13  turn back to page three, Mr. Agel, it says

14  subparagraph L, the agent agrees to be solely liable

15  for all attorneys' fees, court costs, expenses and

16  loss or aggregate losses resulting from, and then

17  there's a little (a) and in parenthesis (fraud),

18  negligence, with a star, or MISCONDUCT OF AGENT, all

19  caps, its officers or employees in the performance of

20  its duties as AGENT of COMMONWEALTH, and agent and

21  Commonwealth are all capitalized, and then:  Did

22  Commonwealth ever make a claim against Coastal under

23  the agreement under paragraph L?

24       A.     No.  There was a threat of a -- actually

25  it wasn't even a threat of that.  I got a letter from

Page 123

1   them I think that said to put my carrier on notice

2   that they were coming after me and I made a big stink

3   about it and they backed off.

4          Q.     When was that?

5          A.     I don't recall when.  During relatively

6   early stages of this, I recall that, after the claims

7   started coming in.

8          Q.     Do you still have a copy of the letter?

9          A.     No.

10         Q.     Do you recall who it was from?

11         A.     That would have been from Nancy Koch.

12         Q.     Did you converse with Miss Koch about

13   that?

14         A.     No, no, I went over her head.  I wasn't

15   a happy camper.

16         Q.     Who did you speak to at Commonwealth?

17         A.     It wasn't Commonwealth.  I went to

18   Lawyer's Title because they bought Commonwealth by

19   the time that all happened so I went directly there.

20         Q.     Who did you speak to at Lawyer's Title?

21         A.     His name was Ron Owen.

22         Q.     What was his position?

23         A.     He was a senior vice president and I

24   think he ran the northeast.

25         Q.     And what did he tell you?

Page 124

1      A.      "I'll take care of it."  I was a very
2  big remitter and, you know, my -- I said to them:  Do
3  you want to lose a half million dollar a year agent
4  over this and their answer was no.
5              (A discussion takes place off the
6  record).
7      Q.      Before you filed -- you made that -- I
8  don't know what to call it -- the filing of those
9  various papers that had not been filed by Mr. Yacker
10  did you speak with anyone at Commonwealth, or I'm not
11  sure who it was, Nations or Fidelity at that point in
12  time, about doing the filing?
13      A.      I don't recall.  It is very possible.
14  It's very possible, and in all likelihood it would
15  have been just Commonwealth.
16      Q.      Why just Commonwealth?
17      A.      I did most of my business through them
18  at the time.
19      Q.      Okay.  Another thing I noticed, and we
20  weren't quite sure how the business was handed out,
21  but the loans at issue here are -- Mr. Kott or Mr.
22  Hayes, one of the two will object, but they're about
23  50/50, like half of them were Commonwealth and then
24  there's a Nations/Fidelity, but so you would have
25  more likely called Commonwealth than Fidelity is what