# EXHIBIT G

# STONE M MAGNANINI
LLP

COMPLEX COMMERCIAL LITIGATION

**NEW JERSEY OFFICES**   150 JFK Parkway, Short Hills, NJ 07078   P 973.218.1111   F 973.218.1106

July 24, 2011

**VIA CM/ECF and U.S. MAIL**

Honorable Michael A. Shipp, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey 07101

      Re:    *Walsh Securities, Inc. v. Cristo Property Management, LTD, et al.*
             Civil Action No. 97-3496 (DRD/MAS)

Dear Judge Shipp:

      We represent Plaintiff Walsh Securities Inc. ("Plaintiff" or "WSI") in the above entitled action. We are writing to apprise the Court of a dispute between the parties in which we need the Court's assistance in mediating, or in appointing a mediator for resolution. We also write in response to the Title Insurance Defendants' letter filed with the Court on Friday.

      **I.**      **The Settlement With Coastal**

      One of the Defendants remaining in this case was Coastal Title Agency ("Coastal"), the title agent for the Title Insurance Defendants. The parties settled their claims with Coastal and the Judge Winfield in the Bankruptcy Court approved the settlement on May 26, 2011. *See* No. 44845-NLW Dkt. 45 (Bankr. D.N.J.). Thereafter, Coastal's carrier, General Star Indemnity Company, remitted to WSI the $425,000 in settlement proceeds, after waiting until the time to appeal the Bankruptcy Court's approval had expired. The distribution of those monies is at the center of this dispute. The monies are currently being held in escrow, in the attorney trust account of Stone & Magnanini LLP, pursuant to the agreement of the parties.

      On July 8, 2011, WSI wrote to the Title Insurance Defendants demanding that it receive the entire $425,000. (Exhibit A). The demand was grounded in this litigation reality that WSI suffered losses due to Coastal's actions. WSI offered to credit this sum to The Title Insurance Defendants for that portion of damages for which the Title Insurance Defendants are deemed jointly and severally liable for Coastal's conduct. Defendants, however, take a remarkable, untenable position with respect to the settlement. Although as of this date the Title Insurance Defendants have not suffered any loss whatsoever with respect to the facts underlying this litigation, they assert that because they had live cross-claims against Coastal and that those were

Honorable Michael A. Shipp, U.S.M.J
July 24, 2011
Page 2 of 5

resolved in the settlement, they are entitled to a windfall. They reason that because they are entitled to contribution from Coastal, they are entitled to a portion of these monies *now*.

The Title Insurance Defendants are entitled to take erroneous positions in this litigation; they are not, however, entitled to be patently unreasonable. Indeed, as part of WSI's demand letter, pursuant to an agreement between counsel that if the parties could not negotiate the distribution of the Coastal settlement proceeds, they would enter into a half-day mediation, WSI offered mediation as a sensible, amicable way to resolve the dispute among the parties. Counsel for WSI was induced to settle with Coastal by this promise to mediate by the Title Insurance Defendants' counsel and repeatedly explained this procedure to Judge Debevoise, Judge Shipp and Judge Winfield in discussing the status of the case and the settlement with Coastal. Inexplicably, counsel for the Title Insurance Defendants cryptically "reject[ed] [our] offer to mediate the issue of how the $425,000 in settlement proceeds are divided . . ." (Exhibit B).

It again bears noting that these Defendants have not suffered a loss for which they are entitled to contribution, and thus, their claim to the Coastal settlement monies is meritless at this juncture. Nevertheless, in the interest of resolving this discrete issue, WSI offered to mediate. Indeed, throughout these proceedings in front of Judge Winfield, Judge Debevoise, and Your Honor, it was *always* contemplated that this issue be mediated given the Defendants' immovable position. Not once, neither in pleadings nor in correspondence, did the Defendants object to mediation or otherwise suggest alternative means to resolve this dispute. It would be an abject waste of judicial resources to litigate this issue anew in a separate action. The Title Insurance Defendants' counsel have reneged on their agreement in a transparent attempt to gain another tactical advantage.

This vexatious course of litigation (*e.g.*, stonewalling until Court issues orders, taking indefensible positions to delay the case, making unreasonable discovery requests that tax this Court's resources) by the Defendants is neither a new nor a surprising tactic in this action. WSI and the Defendants engaged in an *eighteen month long* mediation, at Defendants' request, with Judge (Ret.) Jack Boyle. The mediation lasted so long because the Title Insurance Defendants asserted that they needed to conduct depositions and other discovery in order to mediate the matter. While the mediation was successful as to certain parties, the Title Insurance Defendants made a settlement offer so unrealistic and unproductive in light of WSI's demand, and particularly in light of the clear evidence of an abject fraud perpetrated on WSI and the clear abdication of the Title Insurance Defendants' legal duties resulting in their breach of myriad contracts related to the closings of the sham real estate transactions at issue in this case. Instead, the *eighteen month long* mediation resulted in a *twenty-two month* long stay that only slightly narrowed the case.

More recently before Judge Debevoise, and perhaps hoping that WSI's bankruptcy would take its toll, the Title Insurance Defendants again caused settlement negotiations with WSI to be unnecessarily prolonged. It appears that the Title Insurance Defendants simply have no designs on meaningfully trying to settle the action and are now trying to unreasonably hold up the

Honorable Michael A. Shipp, U.S.M.J
July 24, 2011
Page 3 of 5

distribution of the Coastal settlement proceeds. As such, WSI requests the Court's assistance in mediating, or in appointing a mediator for resolution of this particular matter.

## II. The Amended Scheduling Order

The Court entered an Amended Scheduling Order on July 19, 2011. In that Order, the Court granted Defendants' request to compel WSI to inform Defendants "whether Plaintiff will have any experts and the subject of the testimony of those experts."[1] Although WSI had opposed Defendants' request in its entirety, having received the Court's Order and realizing that there is only an obligation on behalf of Plaintiff to notify Defendants whether it will have an expert, whereas the Court's Order describes expert discovery as commencing with affirmative expert reports (not just Plaintiff's expert reports), the undersigned contacted counsel for the Defendants to request that they agree to also notify Plaintiff if they intend to have any affirmative experts. To our dismay, counsel for the Defendants summarily declined to provide this reciprocal information that they had themselves demanded from Plaintiff. Accordingly, WSI respectfully requests that the Court clarify whether it contemplated that all parties notify each other whether they will have any "affirmative" experts and the subject of the testimony of those "affirmative" experts.

On a separate note, Defendants filed a letter with this Court today in which they asserted that this Court failed to either "grant or deny the relief we sought" with respect to certain items they had proposed be entered into a scheduling order. As Your Honor is aware, WSI vigorously opposed such a burden of production where the documents have already been produced by the Title Insurance Defendants, are in their custody/control/possession, and are available in the document repository established by Judge Cavanaugh more than 10 years ago.

This Court carefully crafted the Amended Scheduling Order (adopting some of WSI's positions and some of the Defendants') which did not include Defendants' prayers for relief. We submit this was a wholesale rejection of Defendants' paragraphs 3, 4, 7, and 8. The Court is not charged with writing reasons for denial or adoption in a scheduling order unlike a written opinion. Defendants, without warrant, are simply seeking this Court to reconsider its clear rejection of Defendants' request. This second bite at the apple should properly be rejected by this Court, as Defendants make no new or original arguments this time around but merely reiterate the arguments that Your Honor considered and rejected in the first instance.

## III. The Interview Memos

In the letter Defendants filed with this Court today, Defendants assert that the undersigned "has now taken the position that [Defendants] cannot interview six of the witnesses who had given the written statements in question because they are within the plaintiff's control group." This is incorrect and a blatant misrepresentation of the facts on a number of grounds.

---

[1] WSI presumes this is directed only at affirmative experts because it is premature to identify responsive experts.

As the Court is well aware, Defendants were ordered to destroy or return the Interview Memoranda, which were memoranda drafted by attorneys for WSI in the course of litigation to summarize the attorneys' thoughts about an interview with a witness and were not, as defense counsel describes them, a witness' "written statements." While the Title Insurance Defendants have failed to certify that they have complied with the Court's Order and destroyed the memorandum: nevertheless, contrary to Defendants' recitation of WSI's current position, WSI continues to maintain that Defendants may interview or depose any of these individuals. In speaking with defense counsel about certain witnesses that they seek to interview, it was made clear that WSI would not permit Defendants to conduct *ex parte* interviews of any individuals that fall into WSI's litigation control group. This discussion extended beyond the individuals who were the subjects of the interview memos. It was explained that WSI considered its officers and department heads (*e.g.*, General Counsel, Chief Operating Officer, Chief Financial Officer, Head of Underwriting, Head of Quality Control, etc.) to be in its litigation control group. This is not to say that Defendants cannot interview them, WSI merely asserts that counsel for WSI must be present. The sheer fact that Defendants were not permitted to keep the interview memos does not circumvent case law, or allow the Defendants to violate the Rules of Professional Conduct, specifically, R.P.C. 4.2 and R.P.C. 1.13.

Turning to the Title Insurance Defendants' misrepresentations concerning the interview memos, there are five individuals that were former WSI employees, not six. Two of these former employees were already twice deposed (one in 2006 and 2010 and the other in 2007 and 2010), and only one of these five former employees even falls into the category of WSI's litigation control group. That single former employee, who was the Head of Quality Control, is the only individual who is really at issue here. Defendants certainly cannot in good faith contend that they are entitled to conduct an *ex parte* interview of this individual, who is part of WSI's litigation control group, on the basis that they were ordered to destroy an internal attorney memorandum that summarized his interview during the investigatory phase of this case. A similar situation arose where counsel for WSI reached out to a former employee of Defendant Commonwealth that counsel did not believe was in the litigation control group. She indicated that she did not want to speak with us without counsel and we directed her to contact Mr. Kott. As a result, we issued a subpoena for her deposition, which Mr. Kott accepted. The present situation is not made any different merely because Defendants were compelled to destroy the interview memos.[2]

Therefore, because WSI has never indicated that Defendants could not interview or depose the foregoing witnesses, WSI respectfully requests that the Court deny Defendants' request.

---

[2] Although counsel for Defendants has represented that they destroyed the interview memos, WSI has yet to receive any certification that they have been destroyed, as was requested.

Honorable Michael A. Shipp, U.S.M.J
July 24, 2011
Page 5 of 5

                Respectfully submitted,

                /s/Robert A. Magnanini
                Robert A. Magnanini

cc:    David Kott (via CM/ECF only)
       Edward J. Hayes (via CM/ECF only)
       Richard Calanni (via U.S. Mail)
       Richard DiBenedetto (via U.S. Mail)

# EXHIBIT A

# STONE ⋈ MAGNANINI
LLP

COMPLEX COMMERCIAL LITIGATION

**NEW JERSEY OFFICES**   150 JFK Parkway, Short Hills, NJ 07078   P 973.218.1111   F 973.218.1106

July 8, 2011

**VIA ELECTRONIC AND REGULAR MAIL**

David R. Kott, Esq.
McCarter & English
Four Gateway Center
Newark, NJ 07101

Edward J. Hayes, Esq.
Fox Rothchild
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291

      Re:    **Walsh Securities, Inc. v. Cristo Property Management, Ltd., et al.**
               **Civil Action No.: 97-3496 (DRD)(MAS)**

Gentlemen:

      We have received the $425,000 settlement proceeds from Coastal Title Agency's ("Coastal") insurance carrier, General Star Indemnity Company. We are currently holding those proceeds in escrow. We wish to distribute these monies as soon as possible to Walsh Securities, Inc ("WSI"). Since the Title Insurance Defendants have not suffered any loss, and they are not entitled to a windfall, WSI hereby demands that it receive the entire $425,000. WSI will then credit this sum against that portion of the damages in this action for which Coastal is deemed liable, or for that portion of the damages for which the Title Insurance Defendants are deemed jointly and severally liable for Coastal's conduct. The Title Insurance Defendants have not suffered any losses or damages to date and they are surely not entitled to a windfall based on the losses and damages suffered by WSI. Accordingly, this is the most equitable distribution of the proceeds.

      Please let me know whether you agree with WSI's proposal within two weeks. Also, please provide a list of potential mediators to us by July 15, 2011 so that if we cannot resolve this issue, we will have chosen a mediator and scheduled a mediation to resolve this issue.

Very truly yours,

Robert A. Magnanini

**NEW YORK OFFICES**   575 Lexington Avenue, New York NY 10022   P 212.644.5854
www.stonemagnalaw.com   www.false-claims.net

# EXHIBIT B



**McCARTER & ENGLISH**
ATTORNEYS AT LAW

July 13, 2011

VIA EMAIL AND REGULAR MAIL

Robert A. Magnanini, Esq.
Stone Magnanini LLP
150 JFK Parkway
Short Hills, NJ 07078

David R. Kott
Partner
T. 973.622.4444
F. 973.624.7070
dkott@mccarter.com

Re:   Walsh Securities, Inc. v. Cristo Property Management, et al.
      Civil Action No. CV 97-3496 (DRD)

Dear Mr. Magnanini:

I acknowledge receipt of your July 8, 2011 letter to Ed Hayes and me with respect to the settlement proceeds your office has received from Coastal's insurance carrier, General Star. We reject your suggestion that Walsh receive the entire $425,000. Obviously it is our view and the view of our clients that our clients are entitled to all or the bulk of the settlement proceeds. After all, the claims set forth by Walsh in its Complaint and its Amended Complaints against Coastal were not covered under the General Star policy at all.

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

Ed Hayes and I as well as our clients also reject your offer to mediate the issue of how the $425,000 in settlement proceeds are divided between your client and between the title insurance defendants.

Very truly yours,

David R. Kott
DRK:mma

BOSTON

HARTFORD

NEW YORK

cc:   Amy Walker Wagner, Esq. (via email)
      Jeffrey A. Shooman, Esq. (via email)
      Edward J. Hayes, Jr., Esq.(via email and regular mail)

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

ME1 11977995v.1