**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WALSH SECURITIES, INC.,

               Plaintiff,

v.

CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, et al.,

               Defendants.

Civ. No. 97-3496 (DRD)

**O P I N I O N**

*Appearances by:*

STONE & MAGNANINI LLP
by: Robert A. Magnanini, Esq.
    Amy Walker Wagner, Esq.
    Daniel Ian Mee, Esq.
    Jeffrey A. Shooman, Esq.
150 JFK Parkway, 4th Floor
Short Hills, New Jersey 07078

    *Attorneys for Plaintiff,*

FOX ROTHSCHILD LLP
by: Edward J. Hayes, Esq.
    David H. Colvin, Esq.
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103

    *Attorneys for Defendants Fidelity National Title Insurance Co. of New York and Nations Title Insurance of New York, Inc.*

MCCARTER & ENGLISH, LLP
by: David R. Kott, Esq.
    Sara F. Merin, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

*Attorneys for Defendant Commonwealth Land Title Insurance Company*

**DEBEVOISE, Senior District Judge**

This matter arises out of a mortgage fraud scheme that took place between April 1996 and June 1997. Earlier this year, Defendants Commonwealth Land Title Insurance Company, Fidelity National Title Insurance Co. of New York, and Nations Title Insurance of New York (collectively referred to as "the Title Insurers"), among other things, moved for Summary Judgment in their favor on Plaintiff Walsh Securities Inc.'s ("WSI") claim for compensatory damages arising out of a failed merger between Walsh Holding Co., Inc. ("Walsh Holding"), WSI's parent company, and Resource Bancshares Mortgage Group ("RBMG"). The Court denied the motion.

The Title Insurers now move for reconsideration of the Court's ruling. For the reasons set forth blow, their motion is GRANTED.

## I. BACKGROUND

The facts of this case are fully set forth in the Court's April 17, 2012 Opinion. See Walsh Secs. v. Cristo Prop. Mgmt., Ltd., Civ. No. 97-3496, 2012 WL 1512506 (D.N.J. Apr. 17, 2012). Thus, for the sake of brevity, the Court will repeat only those facts that are necessary to the disposition of the Title Insurers' Motion for Reconsideration.

WSI was a wholesale residential mortgage lender in the business of, among other things, purchasing subprime retail mortgage loans from other mortgage bankers or mortgage brokers,

2

known as correspondents, and packaging those mortgage loans for use as securities in secured transactions, or reselling the loans to whole loan purchasers. As the mortgage loan wholesaler, WSI purchased mortgage loans from a correspondent known as National Home Funding ("NHF") by funding them at the time of their closing—a process called table funding. Through NHF, the Title Insurers issued title policies to WSI on the mortgages that it table funded. WSI then sold the mortgage loans to entities called whole loan purchasers, or to a Trust on behalf of note holders in securities issued by WSI. WSI's sale of mortgage loans included representations and warranties requiring WSI to repurchase all loans found to be unmarketable or fraudulent.

Between April 1996 and June 1997, approximately two hundred and twenty mortgages that WSI table funded fell victim to a fraudulent scheme. Consequently, WSI had to repurchase a number of them.[1] During the time of the fraud, Walsh Holding, WSI's parent company, and RBMG were in discussions regarding a merger. On April 18, 1997, Walsh Holding, Robert Walsh, and RBMG entered into a Merger Agreement. See (Merin Cert., Ex. D.) According to the Agreement, Walsh Holding would merge with a RBMG merger subsidiary—rendering Walsh Holding the surviving corporation—and Walsh Holding stockholders would receive RBMG stock in exchange for their shares in Walsh Holding. As a result, Walsh Holding would become a wholly owned subsidiary of RBMG. RBMG would then change its name to BCA Financial Corp ("BCA"). WSI would remain a subsidiary of Walsh Holding.

The merger was revealed in the press on April 21, 1997. See (Shooman Cert., Ex. 7.) According to one article, BCA "will be among the nation's largest full-service correspondent mortgage lenders, combining RBMG's strong national presence in the agency—eligible segment of the mortgage marketplace with Walsh's position as a leading originator in the subprime and

---

[1] In addition, as a result of litigation, a number of these mortgages were rescinded and cancelled.

3

home equity market." (Id.) Indeed, [t]he combination of RBMG's 3,200 and Walsh's 1,500 approved account relationships will create a unique and powerful full-service mortgage lender." (Id.) However, both RBMG and Walsh Holding "will maintain their separate corporate identities for marketing purposes." (Id.)

On November 3, 1997, after the fraud became public, Walsh Holding and RBMG agreed to terminate the merger due to the fraud and WSI's inability to repurchase all the fraudulent mortgage loans that it transferred to the secondary market, which rendered WSI unable to produce accurate financial statements for 1996 and 1997. WSI continued to lose revenue and ultimately filed for bankruptcy.

Shortly after revelation of the fraud, WSI asserted coverage claims against the Title Insurers under the title insurance policies that WSI took out on the mortgages found to be fraudulent. The Title Insurers refused to approve WSI's claims, leading WSI to file a lawsuit for breach of contract. In its Fourth Amended Complaint, WSI alleged, among other things, that the Title Insurers' failure to approve WSI's coverage claims resulted in more than $450 million in damages, most of which arises from lost "business and profits, including the sale of the company for more than $400 million." (Fourth Amend. Compl. ¶ 38.)

After substantial discovery, WSI moved for summary judgment in favor of its coverage claims on sixty-six of the approximately two hundred and twenty fraudulent mortgage loans, while the Title Insurers moved for summary judgment against WSI's coverage claims on twenty-nine mortgage loans.[2] In addition, the Title Insurers moved for summary judgment on WSI's claim for damages arising out of diminution of WSI's value and the failed merger between Walsh Holding and RBMG, arguing, among other things, that WSI does not have standing to seek

---

[2] The Title Insurers also moved for summary judgment in their favor on WSI's claim for bad faith, which the Court granted.

damages for the failed merger with RBMG because only WSI's shareholders, not WSI itself, would have benefited from the merger.

On April 17, 2012, The Court issued an Opinion and Order denying the motions for summary judgment. With respect to WSI's claim for damages arising out of the failed merger between Walsh Holding and RBMG, the Court found that, while WSI was not a party to the merger agreement, it nonetheless suffered damages from its rescission because "the agreement contemplated the sale of its corporate assets to RBMG—specifically providing for the sale of 'all the property rights, privileges, powers and franchises of [Walsh Holding],' which includes WSI, its main operating subsidiary, to RBMG to become RBMG's 'direct wholly owned subsidiary.'" Walsh Secs., Inc., 2012 WL 1512506, at *20 (quoting (Merin Cert., Ex. D)). The Court also found that "the intent of the merger agreement was to combine 'RBMG's strong national presence . . . with Walsh's position as a leading originator in the subprime' mortgage market, as well as the two companies' 'approved account relationships[,][to] create a unique and powerful full-service mortgage lender.'" Id. (quoting (Shooman Cert., Ex. 7)). The Court concluded that "WSI was set to benefit enormously from the merger, as it would have been able to continue its subprime lending operations through Walsh Holding, while taking advantage of RBMG's national reach and substantial account relationships," and therefore "WSI ha[d] standing to claim damages from the failed merger between Walsh Holding and RBMG." Id. at *21.

## II. DISCUSSION

The Title Insurers now move for reconsideration, pursuant to Local Civil Rule 7.1(i), of the Court's finding that WSI has standing to seek damages arising out of the failed merger between Walsh Holding and RBMG. In doing so, they argue that the Court's ruling that WSI has standing to pursue such damages was clear error. They further argue that, should the Court

not grant reconsideration, the question of a subsidiary's standing to seek damages from a failed merger between its parent company and another company should be certified to the Court of Appeals.

**A.     Standard of Review**

"[I]t is well-established in this district that a motion for reconsideration is an extremely limited procedural vehicle." Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992). As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a motion for reconsideration may not be premised on legal theories that could have been adjudicated or evidence which was available but not presented prior to the earlier ruling. See id. Local Civil Rule 7.1(i), which governs such motions, provides that they shall be confined to "matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has 'overlooked.'" The word "overlooked" is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." Resorts Int'l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

A decision suffers from "clear error" only if the record cannot support the findings that led to that ruling. United States v. Grape, 549 F.3d 591, 603-04 (3d Cir. 2008) (citations

omitted). Thus, a party must do more than allege that portions of a ruling were erroneous in order to obtain reconsideration of that ruling; it must demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in "manifest injustice" if not addressed. See Grape, 549 F.3d at 603-04; N. River Ins., 52 F.3d 1218. Mere "disagreement with the Court's decision" will not suffice. P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp., 161 F. Supp.2d 349, 353 (D.N.J. 2001).

**B.     The Title Insurers' Motion for Reconsideration**

The Title Insurers contend that, in denying their Motion for Summary Judgment on WSI's claim for damages arising out of the failed merger between Walsh Holding and RBMG, the Court committed clear error in two respects. First, the Court overlooked the fact that the Merger Agreement "contemplated only the transfer by the Walsh family of their stock in Walsh Holding, not the transfer of Walsh Holding's corporate asset, namely, its shares in [WSI]." (Defs' Br. 4-5) (emphasis omitted). Second, the Court overlooked the fact that WSI's theory of damages arising out of the failed merger are lost profits from the sale of Walsh Holding to RBMG that would have only gone to Walsh Holding's shareholders, not WSI.

These contentions are persuasive. The Merger Agreement contemplates an exchange of shares in Walsh Holding for shares in RBMG, resulting in Walsh Holding becoming a wholly owned subsidiary in RBMG and Walsh Holding's shareholders becoming RBMG shareholders. See (Merin Cert., Ex. D.) In addition, contrary to the Court's prior finding, the Agreement does not include the sale of WSI's assets to RMBG. While the merger contemplates that WSI—as the main operating subsidiary of Walsh Holding—will come under the RBMG umbrella, the Agreement makes clear that "all the property, rights, privileges, powers, and franchises of [Walsh Holding]," including those of WSI, "shall vest in [Walsh Holding] as the Surviving

7

Corporation." (Id.) Thus, WSI would retain its corporate assets as the main operating subsidiary of Walsh Holding.

To be sure, in its prior opinion, the Court also found that, notwithstanding whether the merger contemplated the sale of WSI's corporate assets, "WSI was set to benefit enormously from the merger, as it would have been able to continue its subprime lending operations through Walsh Holding, while taking advantage of RBMG's national reach and substantial account relationships," Walsh Secs., Inc., 2012 WL 1512506, at *21, and therefore suffered substantial lost business opportunity from the rescission of the merger. However, the Fourth Amended Complaint makes clear that WSI's theory of damages arising out the failed merger was not rooted in lost business opportunity from being able to table fund mortgage loans with the resources of RBMG, but rather lost "business and profits," from "the sale of [Walsh Holding] for more than $400 million" to RBMG.[3] (Fourth Amend. Compl. ¶ 38.) Only Walsh Holding's shareholders—not WSI or Walsh Holding—have standing to pursue such damages because, as previously discussed, the Merger Agreement contemplates an exchange of shares in Walsh Holding for shares in RBMG. See 9A Fletcher Cyc. Corp. § 4469 (2012) ("A corporation ordinarily cannot sue where the subject of the cause of action are rights belonging to a shareholder or shareholders, or to the corporation's officers."). Consequently, WSI lacks standing to assert its claim for damages arising out of the failed merger between Walsh Holding and RBMG.

---

[3] Moreover, in its opposition papers to the Title Insurers' Motion for Summary Judgment on WSI's claims for damages arising out of the failed merger, WSI stated that "the damages to WSI here are directly akin to lost profits – the lost business opportunity would have resulted in the hundreds of millions to the company's shareholders based on the number of shares available and the strike price of the stock." (Pl.'s Opp. Br. 11.)

8

## III. CONCLUSION

For the foregoing reasons, the Title Insurers' Motion for Reconsideration is GRANTED. Consequently, WSI's claim for damages arising out of the failed merger between Walsh Holding and RBMG is dismissed with prejudice.

The Court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: August 10, 2012