**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WALSH SECURITIES, INC., | Civil Action No. 97-cv-3496 (DRD)(JAD) |
| Plaintiff, | Hon. Dickinson R. Debevoise, U.S.S.D.J. |
| | Hon. Joseph A. Dickson, U.S.M.J. |
| v. | |
| CRISTO PROPERTY MANAGEMENT, LTD., a/k/a G.J.L. LIMITED, et al., | |
| Defendants. | |

**COMMONWEALTH LAND TITLE INSURANCE CO., FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK AND NATIONS TITLE INSURANCE OF NEW YORK, INC.'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO JUDGE SHIPP'S JULY 26, 2012 REPORT & RECOMMENDATION**

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

**LOEB & LOEB LLP**
345 Park Avenue
New York, New York 10154
(212) 407-4823
Attorneys for Defendant
  Commonwealth Land Title
  Insurance Company

**FOX ROTHSCHILD, LLP**
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291
Attorneys for Defendants
  Fidelity National Title Insurance Co. of
  New York, and Nations Title Insurance of
  New York, Inc.

Of Counsel
  David R. Kott, David M. Satnick, & Edward J. Hayes

On the Brief
  David R. Kott, David M. Satnick, & Sara F. Merin

ME1 13986042v.5

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

    A.   Background to the Coastal/General Star Settlement Agreement........................3

    B.   Post-Settlement Agreement Discussions ..........................................................5

ARGUMENT...........................................................................................................6

I.     ANY REQUIREMENT FOR DISTRIBUTION OF ESCROWED FUNDS
      WHILE THIS CASE IS ONGOING WOULD REQUIRE AN IMPROPER
      RE-WRITING OF THE FULLY-INTEGRATED COASTAL SETTLEMENT
      AGREEMENT..............................................................................................6

II.    THE TITLE DEFENDANTS WILL BE LEGALLY ENTITLED TO THE
      ENTIRETY OF THE SETTLEMENT PROCEEDS AND PLAINTIFF WILL
      NOT BE ENTITLED TO ANY PORTION THEREOF ...................................12

III.   DISBURSEMENT OF THE SETTLEMENT FUNDS TO WSI WITH AN
      "OFF-SET" AGAINST ANY POTENTIAL JUDGMENT TO THE TITLE
      DEFENDANTS INCORRECTLY ASSUMES A RESOLUTION OF THIS
      MATTER IN WSI'S FAVOR AND WOULD BE  PREJUDICIAL TO THE
      TITLE DEFENDANTS ...............................................................................14

CONCLUSION........................................................................................................17

ME1 13986042v.5

## TABLE OF AUTHORITIES

Page(s)

CASES

*In re Estate of Vayda*,
    184 N.J. 115 (2005) ....................................................................................12

*Harker v. McKissock*,
    12 N.J. 310 (1953) ..............................................................................8, 9, 10

*Luscko v. Southern Container Corp.*,
    408 Fed. App'x 631 (3d Cir. 2010)..................................................10, 11

*Panaccione v. Holowiak*,
    No. A-5461-06, 2008 N.J. Super. Unpub. LEXIS 1809 (App. Div. Nov. 12, 2008).......8, 9, 10

*Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.*,
    No. 97-cv-3496 (D.N.J. Dec. 16, 2009) (slip op.) ...........................15, 16

*Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.*,
    No. 97-cv-3496 (D.N.J. Mar. 28, 2007) (slip op.) ...........................15, 16

OTHER AUTHORITIES

Pressler & Verniero, *Current N.J. Court Rules*, comment 2.10 on R. 4:42-9 ...............................12

## PRELIMINARY STATEMENT

This brief is respectfully submitted on behalf of Defendants Commonwealth Land Title Insurance Company, Fidelity National Title Insurance Co. of New York, and Nations Title Insurance of New York, Inc. (collectively, the "Title Defendants") in response to Plaintiff Walsh Securities, Inc.'s ("WSI") Objections to Judge Shipp's Report and Recommendation filed July 26, 2012 [document 549] ("Pl.'s Obj.").

Judge Shipp recommended denial of WSI's motion to release to itself certain monies held in escrow pursuant to a Settlement Agreement entered into between Defendant Coastal Title Agency ("Coastal"), its insurer, General Star Indemnity Company ("General Star"), WSI, and the Title Defendants. As discussed more fully below, Judge Shipp's recommendation should be adopted, and WSI's objections overruled, for several reasons.

First, it is indisputable that the Settlement Agreement (a) does not authorize the release of the escrowed funds – to any party – absent the written approval of General Star, WSI, and the Title Defendants (*see* Settlement Agreement and Release ¶ 1 (attached as Ex. A to Magnanini Certif. in Supp. of Pl.'s Objections [document 549-5] ("Settlement Agreement")) and (b) such written approval has *not* been given here. Second, it is also indisputable that the Settlement Agreement does not contain any provisions regarding the allocation, payment, or release of the

1

escrowed funds between or among WSI and the Title Defendants, and no agreement regarding such allocation, payment, or release – or the timing thereof – exists. Third, nothing in the Settlement Agreement provides for the release of the escrowed funds prior to the final adjudication of WSI's claims. Fourth, nothing in the Settlement Agreement requires or even suggests that the parties must engage in mediation (which would be non-binding in any event) if they are unable to reach agreement on the distribution of the funds prior to the conclusion of this case.

Indeed, WSI's objections overlook the dispositive facts that (1) WSI, the Title Defendants, and General Star agreed that the funds were to be held in escrow precisely *because* neither WSI nor the Title Defendants was entitled to the immediate receipt of the funds, and (2) nothing has happened in this case since the escrow was established to suddenly entitle WSI to the immediate receipt of the funds.[1] Thus, WSI's objection should be overruled and its motion seeking the immediate release of the escrowed funds to it should be denied. Denial is warranted even with WSI's proposal to "offset to the Title Insurance Defendants for that portion of damages for which a fact finder concludes they are jointly and severally liable for Coastal's conduct." Indeed, as WSI's "offset" request would

---

[1]   Given that General Star's written approval is also required for the release of the escrowed funds under the Settlement Agreement (at ¶ 1), WSI's failure to have served its original application and its current objections on General Star mandates that its motion be denied for this reason alone.

require a factual determination at the conclusion of the case, it is at best premature. In sum, WSI has *no* legal or equitable right to the immediate release of all of the escrowed proceeds from the settlement with Coastal and its insurance carrier, General Star.

**A.     Background to the Coastal/General Star Settlement Agreement**

Defendant Coastal was insured under a Business Errors or Omissions Liability Policy (the "E&O Policy") issued by General Star.  The E&O Policy insured Coastal for acts of negligence in the performance of its duties as a title policy-issuing agent.  Throughout this litigation, General Star took the position that it had no obligation to indemnify Coastal in regard to the intentional tort claims asserted by WSI against Coastal in this action by virtue (i) of the terms of the E&O Policy and (ii) well-settled public policy in New Jersey.[2]

In stark contrast, General Star never denied that it had a duty to indemnify Coastal for the claims asserted against Coastal *by the Title Defendants*.  Unlike WSI's intentional tort claims, here, the Title Defendants had claims for indemnity arising from Coastal's breach of the agency agreements by reason of Coastal's negligence in the performance of its duties in the subject transactions, which were

---

[2] All of WSI's claims against Coastal were for intentional torts, *namely,* that Coastal violated RICO and committed common law fraud.  (*See* Fourth Am. Compl. [document 302] Counts I-III.)

3

covered by the E&O Policy. These claims are precisely the types of claims for which a policy-issuing agent such as Coastal would be covered under the General Star's E&O Policy. Indeed, the reason that title insurers require policy-issuing agents to obtain such policies is to protect themselves against the very types of claims asserted against them by WSI here.

Consequently, had WSI prevailed in its claims against Coastal in this action, Coastal would not be covered under the General Star policy and WSI would have no right to the proceeds under that policy, since General Star had no duty to indemnify Coastal for intentional tort claims. On the other hand, because the claims against Coastal made by the Title Defendants are covered by the General Star policy, the insurance proceeds would be recoverable by the Title Defendants. However, because General Star's E&O Policy was a wasting policy, the parties agreed to settle their respective claims against Coastal and have the remaining portion of General Star's policy "collectively" paid to WSI and the Title Defendants, with the "monies being deposited by General Star into an escrow account which requires the written approval of General Star, [WSI] and the Title [] Defendants for the release of the funds from the escrow account." As noted above, it is indisputable that no written approval has been given to the release of the funds from the escrow account by the Title Defendants (or General Star for that matter).

ME1 13986042v.5

B.    **Post-Settlement Agreement Discussions**

As Judge Shipp found and as WSI admits (as it must), the parties to the Settlement Agreement did not elect to provide for a mechanism regarding the allocation, payment, or release of the escrowed settlement proceeds, or the timing thereof, nor did they include any dispute resolution provisions.  *See* Report and Recommendation at 2 (July 25, 2012) [document 546].  Although in the course of their settlement discussions and thereafter, the parties discussed the possibility of resorting to mediation as a potential means by which the parties might come to an agreement on those issues, no such agreement was ever reached and, as noted above, the Settlement Agreement contains nothing which even suggests that the parties must mediate (which would not be binding in any event) should they fail to reach agreement.

On its application below and in its objections, WSI repeatedly attempts to color the Title Defendants' actions and motivations as being in "bad faith" because they have elected not to engage in mediation.  But the Title Defendants have every right to rely on the express provisions of the Settlement Agreement – to which WSI agreed – requiring *their* written approval to the release of any portion of the escrowed funds.  They are certainly justified in declining to consent to the release of the escrowed funds to WSI prior to the final adjudication of the parties' claims herein given (1) the Title Defendants' superior claim to the funds and (2) the very

5

real prospect that all of WSI's claims will be barred by, among other things, the doctrine of *in pari delicto* given WSI's management's incontrovertible involvement in the very fraud upon which it bases its claims. Thus, at the end of the day, the Title Defendants will be entitled to receive ***all*** of the escrowed funds paid under the Settlement Agreement but, at the very least, the relief sought by WSI, if granted, would eliminate the potential for that recovery.

## ARGUMENT

### I.   ANY REQUIREMENT FOR DISTRIBUTION OF ESCROWED FUNDS WHILE THIS CASE IS ONGOING WOULD REQUIRE AN IMPROPER RE-WRITING OF THE FULLY-INTEGRATED COASTAL SETTLEMENT AGREEMENT

As noted above, WSI concedes that the Settlement Agreement does not contemplate or authorize the release, payment, or allocation of the escrowed settlement funds at any time prior to the final adjudication of the parties' respective claims in this case, absent the written approval of WSI, the Title Defendants, and General Star. Obviously, it was precisely because the parties could not agree to a division or allocation of the settlement funds that the Settlement Agreement provided for the proceeds to be placed into escrow in the first place. In effect, then, WSI's motion seeks to re-write the Settlement Agreement to give it all of the escrowed funds now, ***despite the fact that nothing has occurred in this case since the making of the Settlement Agreement that has "perfected" WSI's claim to the immediate receipt of those funds***.

6

Hence, Judge Shipp correctly rejected WSI's attempt to re-write the fully-integrated Settlement Agreement to include a provision allowing the release of the escrowed funds prior to the adjudication of the parties' rights to the escrowed proceeds.

As further noted above, it is incontrovertible that the Settlement Agreement does not contain any provision for distribution of settlement proceeds. *See, e.g.,* Pl.'s Obj. at 3 (". . . it is undisputed that the settlement agreement with Coastal did not set forth the manner in which WSI and the Title [] Defendants would distribute the settlement proceeds of $425,000 among themselves"); *see also* Settlement Agreement.   It is also indisputable that the Settlement Agreement expressly provides that the settlement proceeds were paid "***collectively*** to [WSI] ***and*** the Title [] Defendants . . . , with monies being deposited by General Star into an escrow account which requires the written approval of General Star, [WSI] and the Title [] Defendants for the release of funds from the escrow account." Settlement Agreement ¶ 1 (emphasis added); *see also* Pl.'s Obj. at 8-9.  No provision for the early release of the escrowed funds, or for the resolution of any dispute concerning the timing or allocation of the release of the escrowed funds is included in the Agreement. *See* Settlement Agreement.  Further, the Settlement Agreement is a fully integrated contract:

> The parties expressly understand and agree that this
> Agreement is the complete settlement of the matters set

7

forth herein, and that there exist no written or oral understandings, representations or agreements, directly or indirectly, connected with this Agreement which are not incorporated herein.   All prior or contemporaneous understandings, discussions or agreements with respect to said subject matter are expressly superseded by this Agreement.   This Agreement may be amended only in writing, signed by or on behalf of all parties.

Settlement Agreement ¶ 15.

"Where a contract demonstrates that the parties have merged all prior negotiations and agreements in writing, the parol evidence rule bars evidence of prior negotiations and agreements tending to add or vary the terms of the writing being considered.  This tenet is especially true when the contract itself contains an integration clause." *Panaccione v. Holowiak*, No. A-5461-06, 2008 N.J. Super. Unpub. LEXIS 1809, *21 (App. Div. Nov. 12, 2008) (citations omitted) (interpreting a contract containing a release and an integration clause); *Harker v. McKissock*, 12 N.J. 310, 321-22 (1953) ("The essence of voluntary integration is the intentional reduction of the act to a single memorial; and where such is the case the law deems the writing to be the sole and indisputable repository of the intention of the parties.").

WSI attempts to introduce parol evidence (and makes conclusory assertions of "bad faith") regarding statements made by one of the Title Defendants' counsel in the course of settlement negotiations (*i.e.*, that counsel "mentioned" the concept of an offset against a potential judgment or expressed a willingness to consider

8

mediation if the parties could not reach agreement on the release of the escrowed funds prior to the conclusion of the case). WSI's effort must fail. As noted above, the Settlement Agreement contains nothing that even suggests such offsets or mediation and any amendment to the Settlement Agreement requires the written consent signed by or on behalf of *all* parties. *See* Settlement Agreement ¶ 15 ("This Agreement may be amended only in writing, signed by or on behalf of all parties.").

In addition, since the Settlement Agreement is a fully integrated contract, any statements made during negotiations and/or WSI's contentions as to the motivations ascribed to the Title Defendants in entering into the Settlement Agreement are inadmissible and irrelevant here. *See Panaccione*, *supra*, 2008 N.J. Super. Unpub. LEXIS 1809, at *21; *Harker*, *supra*, 12 N.J. at 321-22 (1953). No statements made during the settlement negotiations regarding the timing of the release and/or allocation of the escrowed funds are contained in the Settlement Agreement and the integration clause prohibits any such statements from being used to re-write the agreement now. *See Panaccione*, *supra*, 2008 N.J. Super. Unpub. LEXIS 1809, at *21; *Harker*, *supra*, 12 N.J. at 321-22 (1953); *see also* Settlement Agreement ¶ 15.

WSI contends that the Title Defendants' purpose of pursuing settlement with Coastal was "[t]o prevent the Title Insurance Defendants' cross-claims for

contribution and indemnification from being dismissed in response to Coastal's motion . . ." *See* Pl.'s Obj. at 5. That contention is not only wrong, but irrelevant given the integration clause. *See Panaccione, supra*, 2008 N.J. Super. Unpub. LEXIS 1809, at *21; *Harker, supra*, 12 N.J. at 321-22 (1953). Furthermore, the Coastal settlement was consummated *before* the motion was decided by the Court and included, as consideration for the settlement, the dismissal of the Title Defendants' claims against Coastal. Hence, no liability was decided; indeed, the settlement expressly disclaimed any finding of liability. *See* Settlement Agreement ¶ 14 (settlement payment and relinquishment of claims among the parties are the result of compromise and "are not to be construed as admissions of liability by any party, by whom liability is expressly denied"); *id.* at ¶ 12 (noting that no admissions of liability were made by Coastal or General Star in settling the matter).

Nor is there any merit to WSI's contention that the Title Defendants have breached the implied covenant of good faith and fair dealing. That claim can only arise when a party "engag[es] in acts in bad faith or inequitable conduct in the performance of a contractual obligation." *Luscko v. Southern Container Corp.*, 408 Fed. App'x 631, 636 (3d Cir. 2010) (citing *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000)). Here, as noted above, there is *no* obligation under the Settlement Agreement that the parties mediate any

MEI 13986042v.5

dispute they may have regarding the release, payment, or allocation of the escrowed funds. *See* Settlement Agreement. Thus, the Title Defendants' decision not to pursue mediation cannot constitute a breach of any implied covenant of good faith and fair dealing under the Settlement Agreement, especially given the Title Defendants' superior claim to the escrowed settlement proceeds.[3] *See Luscko*, 408 Fed. App'x at 636. Nor can there be any "bad faith" on the part of the Title Defendants in seeking to preserve the fund for their future reimbursement.

There also is no merit to WSI's contention (or to Judge Shipp's dictum) that the Title Defendants have no remaining claim to the escrowed funds because the Settlement Agreement provides for the dismissal of the Title Defendants' claims against Coastal, with each party bearing their own legal fees. That contention ignores the fact that the Title Defendants waived their right to recover their attorneys' fees incurred in this action by reason of Coastal's negligence, which caused the Title Defendants to be sued, *in consideration for* Coastal's insurer's payment of the settlement proceeds, all or a portion of which will go to reimburse the Title Defendants for such costs. The contention also ignores the fact that WSI

---

[3] Indeed, it was WSI's insistence that it receive *all* of the escrowed settlement proceeds prior to the final adjudication of the parties' claims in this case – a position WSI asserts in its instant motion – that caused the Title Defendants to conclude that mediation would be fruitless at this juncture. *See* Letter to Hon. Michael A. Shipp, U.S.M.J. from David Kott (July 27, 2011) [document 462] (also submitted as Exhibit H to the Magnanini Certif. in Supp. of Pl.'s Objections).

*itself also* waived its claims against Coastal, including for attorneys' fees, by entering into the Settlement Agreement. Any interpretation that ignores these facts and awards all of the settlement proceeds to WSI before the final adjudication of the parties' respective claims makes the placing of the settlement proceeds into escrow, and the requirement of mutual written consent, meaningless.

## II. THE TITLE DEFENDANTS WILL BE LEGALLY ENTITLED TO THE ENTIRETY OF THE SETTLEMENT PROCEEDS AND PLAINTIFF WILL NOT BE ENTITLED TO ANY PORTION THEREOF

The facts of this case demonstrate that the Title Defendants will be legally entitled to receive all of the escrowed funds, because WSI lacks any legal entitlement to such funds. As explained in the papers below, the Title Defendants' indemnity claims against Coastal included contractual claims under their agency agreements with Coastal. *See* Letter to Hon. Michael A. Shipp from David Kott (Feb. 21, 2012), with supporting Affidavit of David Kott ("Title Defendants' Opp.") [documents 519 (letter brief) and 519-1 to -8 (affidavit, with exhibits)]. Hence, contrary to WSI's assertions, the "American Rule" has no application here, since that rule recognizes a party's right to recover attorneys' fees where such recovery is expressly authorized by contract. *See, e.g., In re Estate of Vayda*, 184 N.J. 115, 123 n.7 (2005) (quoting *Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 504 (1983) ("express authorization by statute, court rule or contract" permit a departure from the "American Rule"); Pressler & Verniero, *Current N.J. Court*

12

*Rules*, comment 2.10 on *R.* 4:42-9 ("[a]ttorney's fees may be allowed where parties have agreed thereto in advance by . . . contract or where there is a . . . contractual indemnity so providing"). In contrast, all of WSI's claims allege intentional torts and therefore do not fall within the scope of General Star's E&O policy.

A detailed analysis of why the Title Defendants will be entitled to all or, at the very least, a substantial portion of the escrowed funds is set out at length in the Title Defendants' Opposition Papers, and will not be repeated here. *See* Title Defendants' Opp. at 2-12. The Title Defendants' damages suffered to date – all of which are reimbursable under their agency agreements with Coastal – are also set out at length in the Title Defendants' Opposition Papers (at page 12), and that discussion is also incorporated here.

Independently, WSI's claim that it is entitled to the immediate release of all of the escrowed funds is refuted by the incontrovertible fact that it agreed in the first place that the settlement proceeds would be held in escrow. *See* Settlement Agreement ¶ 1. Obviously, WSI could have insisted that the settlement proceeds be immediately paid to it rather than to be held in escrow to abide the event. WSI could also have filed a motion when the settlement was reached, and before the Settlement Agreement was signed, to compel Coastal's insurer to pay the settlement monies to WSI at that time. WSI did neither. Instead, WSI expressly agreed under the Settlement Agreement that all of the settlement funds would be

13

placed in escrow and not released absent the written approval of General Star, WSI and the Title Defendants. Under these circumstances, and absent the written consent of the parties to the contrary, the release of the escrowed funds would be inappropriate until after resolution of all of the parties' competing claims upon the conclusion of this action.

**III. DISBURSEMENT OF THE SETTLEMENT FUNDS TO WSI WITH AN "OFF-SET" AGAINST ANY POTENTIAL JUDGMENT TO THE TITLE DEFENDANTS INCORRECTLY ASSUMES A RESOLUTION OF THIS MATTER IN WSI'S FAVOR AND WOULD BE PREJUDICIAL TO THE TITLE DEFENDANTS**

WSI admits (Pl. Obj. at 3) that "it was always anticipated that WSI and the Title [] Defendants would have to later resolve 'how the settlement proceeds are divided between and among the plaintiff and the title insurers.'" That admission is fatal to the relief sought by WSI here. Furthermore, WSI's attempt to receive the immediate disbursement of all of the escrowed proceeds now – by its proposal to provide an "off-set" to the Title Defendants against any potential judgment – *assumes* that WSI will, at the end of the day, prevail in this case. That assumption is entirely unwarranted. Given this Court's ruling on the parties' summary judgment motions dismissing two of WSI's claims as well as noting the "mountain of evidence" showing WSI's management's active participation in the wrongdoing of which it complains, a more likely outcome is that the WSI will be awarded nothing and the Title Defendants will prevail. When that occurs, there will be no

14

judgment to "offset." More important, if the funds were to be released from escrow now, WSI will have received a windfall since it will have been found not to be entitled to anything.

Equally meritless is WSI's contention that it is entitled to the immediate release of the escrowed funds because it supposedly sustained losses evidenced by *default* judgments entered against third parties. Those default judgments are irrelevant: they are not against Coastal, they were not the result of adjudications on the merits, and most importantly, they have nothing to do with the Settlement Agreement.

Further, WSI's proposed offer that the Title Defendants receive an "offset" for that portion of damages for which they are deemed by the fact-finder to be "jointly and severally" liable for Coastal's conduct in this matter is also frivolous for another reason: WSI's claims against the Title Defendants sounded only in contract, while WSI's claims against Coastal were only in tort.[4]   *See Walsh*

---

[4] Because the Title Defendants were only sued in contract and their now-settled claims against Coastal sounded in contract, the claims against Coastal were legally sufficient under the law of this case. *See Walsh Securities, Inc., supra,* No. 97-cv-3496 (D.N.J. Dec. 16, 2009) (slip op. at 8-13) [document 372]; *Walsh Securities, Inc., supra,* No. 97-cv-3496 (D.N.J. Mar. 28, 2007) (slip op. at 4-6) [document 237]. Specifically, the Court dismissed Third Party and cross-claims by Title Defendants that sounded in tort, reasoning that the Title Defendants had never been sued in tort and therefore could not obtain contribution or indemnification. *See Walsh Securities, Inc., supra,* No. 97-cv-3496 (D.N.J. Dec. 16, 2009) (slip op. at 8-13); *Walsh Securities, Inc., supra,* No. 97-cv-3496 (D.N.J. Mar. 28, 2007) (slip op.

15

*Securities, Inc. v. Cristo Property Mgmt., Ltd.,* No. 97-cv-3496 (D.N.J. Dec. 16, 2009) (slip op. at 8-13) [document 372] and *Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.,* No. 97-cv-3496 (D.N.J. Mar. 28, 2007) [document 237]. Thus, the Title Defendants, which are sued only in contract and not in tort, could never be held "jointly and severally" liable with Coastal.

Finally, when WSI's claims are successfully defeated at trial, there would be no liability against which to "offset" the escrowed funds. Instead, should the escrowed funds be released to WSI now, WSI will have received the insurance proceeds that it never had any right to recover in the first place. Yet the Title Defendants, who will have successfully defeated WSI's claims, will have paid substantial attorney's fees and costs, which Coastal was obligated to reimburse under their agency agreements, and for which there will be no recourse since the settlement proceeds will have been expended by WSI. Thus, not only is there no obligation on the part of the Title Defendants to accept WSI's "offset" proposal, the proposal itself simply makes no sense.

---

at 4-6). These previous holdings by the Court, therefore, did not bar the Title Defendants' contractual cross-claims against Coastal based on Coastal's agency agreements with the Title Defendants.

ME1 13986042v.5

## CONCLUSION

For the foregoing reasons, WSI's objections to Judge Shipp's July 26, 2012

Report and Recommendation should be overruled and its motion for the release of

the escrowed funds should be denied in all respects.

Respectfully submitted,

By:  *s/David R. Kott*
   David R. Kott
   **McCARTER & ENGLISH, LLP**
   Four Gateway Center
   100 Mulberry Street
   Newark, New Jersey 07102
   (973) 622-4444

   David M. Satnick
   **LOEB & LOEB LLP**
   345 Park Avenue
   New York, New York 10154
   (212) 407-4823
   Attorneys for Defendant
    Commonwealth Land Title
    Insurance Company

By:  *Edward J. Hayes*
   Edward J. Hayes
   **FOX ROTHSCHILD, LLP**
   Attorneys for Defendants
    Fidelity National Title Insurance Co.
    of New York, and Nations Title
    Insurance of New York, Inc.

Dated:  August 23, 2012

MEI 13986042v.5