**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WALSH SECURITIES, INC.,

                        Plaintiff,

v.

CRISTO PROPERTY MANAGEMENT,
LTD., a/k/a G.J.L. LIMITED, et al.,

                        Defendants.

Civ. No. 97-3496 (DRD)

**O P I N I O N**

*Appearances by:*

STONE & MAGNANINI LLP
by: Robert A. Magnanini, Esq.
    Amy Walker Wagner, Esq.
    Daniel Ian Mee, Esq.
150 JFK Parkway, 4th Floor
Short Hills, New Jersey 07078

    *Attorneys for Plaintiff,*

FOX ROTHSCHILD LLP
by: Edward J. Hayes, Esq
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103

    *Attorneys for Defendants Fidelity National Title Insurance Co. of New York and Nations Title Insurance of New York, Inc.*

MCCARTER & ENGLISH, LLP
by: David R. Kott, Esq.
    Sara F. Merin, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

LOEB & LOEB LLP
By: David M. Satnick, Esq.
345 Park Avenue
New York, New York 10154

*Attorneys for Defendant Commonwealth Land Title Insurance Company*

**DEBEVOISE, Senior District Judge**

This matter arises out of a failure to agree on a distribution of settlement proceeds. In April 2011, Plaintiff Walsh Securities, Inc. ("WSI") and Defendants Commonwealth Land Title Insurance Company, Fidelity National Title Insurance Co. of New York and Nations Title Insurance of New York, Inc. (the "Title Insurers") entered into a settlement agreement with Defendant Coastal Title Agency ("Coastal"). The agreement provided, among other things, that $425,000.00 would be deposited into an escrow account whose distribution requires written approval from both WSI and the Title Insurers.

Since that time, the WSI and the Title Insurers have failed to agree on how to distribute the proceeds among themselves. Consequently, WSI filed a motion requesting this Court to enter an order that the settlement proceeds be turned over to WSI, and providing the Title Insurers with a damages offset for the amount they are found jointly and severally liable for Coastal's conduct in this matter. The Title Insurers opposed the motion, arguing that they have a superior claim to the proceeds.

On July 25, 2012, Magistrate Judge Michael A. Shipp entered a Report and Recommendation denying WSI's motion, without prejudice. WSI now asks the Court to reject Judge Shipp's Report and Recommendation and, once again, to enter an order requiring that the

settlement proceeds be turned over to WSI, and provide the Title Insurers with a damages offset for the amount they are found jointly and severally liable for Coastal's conduct in this matter. For the reasons set forth below, Judge Shipp's Report and Recommendation is adopted and WSI's motion is DENIED.

## I.  BACKGROUND

The facts of this case are fully set forth in several prior opinions.  Thus, for the sake of brevity, the Court will repeat only those facts that are necessary to the disposition of WSI's motion to disburse.

WSI was a wholesale residential mortgage lender in the business of, among other things, purchasing subprime retail mortgage loans from other mortgage bankers or mortgage brokers, known as correspondents, and packaging those mortgage loans for use as securities in secured transactions, or reselling the loans to whole loan purchasers.  WSI purchased mortgage loans from a correspondent known as National Home Funding ("NHF") by funding them at the time of their closing—a process called table funding.  Through NHF, the Title Insurers issued title policies and closing protection letters ("CPLs") to WSI on the mortgages that it table funded. WSI then sold the mortgage loans to entities called whole loan purchasers, or to a Trust on behalf of note holders in securities issued by WSI.  WSI's sale of mortgage loans included representations and warranties requiring WSI to repurchase all loans found to be unmarketable or fraudulent.

The title policies and CPLs were brokered and issued on behalf of the Title Insurers by Coastal Title Agency, Inc. ("Coastal") and Monmouth Title Agency, Inc. ("Monmouth"). The Title Insurers had agency agreements with Coastal and Monmouth.  The agency agreements with

Coastal required it to indemnify the Title Insurers against all losses arising out of Coastal's fraud, negligence, or misconduct while acting as their title agent.

Between April 1996 and June 1997, approximately two hundred and twenty mortgages that WSI table funded fell victim to a fraudulent scheme. Consequently, WSI had to repurchase a number of them.[1] Shortly after revelation of the fraud, WSI asserted coverage claims against the Title Insurers under the title insurance policies and CPLs that WSI took out on the mortgages found to be fraudulent. The Title Insurers refused to approve WSI's claims, leading WSI to file a lawsuit for breach of contract. WSI also sued Coastal for RICO violations and common law fraud as a result of Coastal's alleged involvement in the fraudulent scheme, while the Title Insurers asserted cross-claims against Coastal for indemnification and contribution.[2]

At that time, Coastal was insured by General Star Indemnity Company ("General Star") under a Business Errors or Omissions Policy (the "E&O Policy") that provided up to $1 million of coverage for acts of negligence in the course of Coastal's duties as a policy-issuing agent. General Star refused to indemnify Coastal for WSI's claims but agreed to fund its defense against them up to the policy limit.

WSI and the Title Insurers ultimately agreed to settle their claims against Coastal in exchange for nearly all of the remaining proceeds of the E&O Policy—approximately $425,000.00— pursuant to a settlement agreement.[3] The agreement provides that, while "General Star has taken the position that there is no duty to indemnify Coastal title for any of the claims asserted against it," it will nonetheless "issue payment collectively to Walsh and the Title

---

[1] In addition, as a result of litigation, a number of these mortgages were rescinded and cancelled.

[2] These cross-claims name a number of other defendants from whom the Title Insurers seek contribution and indemnification.

[3] The remaining proceeds on the E&O Policy amounted to approximately $450,000.

Insurance Defendants in the aggregate amount of Four Hundred and Twenty Five Thousand Dollars ($425,000.00) . . . with monies being deposited by General Star into an escrow account which requires the written approval of General Star, Walsh Securities and the Title Insurance Defendants for the release of funds from the escrow account."[4] (Magnanini Cert., Ex. D.) The agreement also provides that, within five days of General Star's deposit of these funds into an escrow account, Walsh and the Title Insurers "shall file a dismissal with prejudice" of their claims against Coastal, "each party bearing its own costs and fees." (Id.) Finally, the agreement contains a merger clause.[5]

Since April 2011, when Coastal, WSI, General Star, and the Title Insurers entered into the settlement agreement, WSI and the Title Insurers have failed to reach an agreement on how to distribute the settlement proceeds amongst themselves. Indeed, they have taken diametrically opposing positions, each contending exclusive entitlement to the entire $425,000.00. Consequently, on February 10, 2012, WSI filed a motion to disburse the entire settlement proceeds to WSI and provide a $425,000.00 damages offset against the amount that the Title Insurers would be found joint and severably liable to WSI for Coastal's conduct. In doing so, WSI argued that it suffered clear losses are a result of Coastal's conduct, while the Title Insurers did not.

The Title Insurers opposed the motion, contending that (1) WSI asserted intentional tort claims against Coastal that are not covered by the terms of the General Star E&O Policy; (2)

---

[4] The agreement also makes clear that General star "makes no admission regarding the availability of insurance coverage under its Policy, makes no admission of liability to Coastal or the Plaintiff Releasors, and makes no admission of liability for the underlying litigation." (Magnanini Cert., Ex. D.)

[5] The merger clause states that "[t]he parties expressly understand and agree that this Agreement is the complete settlement of matters set forth herein, and that there exists no written or oral understandings, representations or agreements, directly or indirectly, connected with this Agreement which are not incorporated herein." (Magnanini Cert., Ex. D.)

5

their cross-claims against Coastal are based in part on the agency agreements between them and Coastal that require Coastal to assume all liability for all losses resulting from its negligence in the course of its duties as their title agent; (3) WSI has not proven the merits of its claims against Coastal; (4) they suffered losses as a result of Coastal's conduct in the form of attorneys' fees; and (5) if WSI's claims against them are defeated at trial, there will be no liability to offset with the settlement proceeds.

On July 25, 2012, Magistrate Judge Shipp issued a Report and Recommendation that WSI's motion be denied. In doing so, he noted that "[b]ased on the various provisions of the Settlement, it is reasonable to infer that the Parties anticipated the need to finalize certain issues relating to the actual disbursement of the proceeds. However, conspicuously absent from the Settlement Agreement are dispute resolution terms that could address the impasse at hand." (ECF No. 546 at 6.) Judge Shipp also noted that WSI's position "make[s] inherent sense. For example, the Undersigned strains to understand how the Defendants may claim injury when the plain language of the Settlement Agreement specifically provides that each party was to bear its own fees and costs." (Id.)

Consequently, Judge Shipp opined that "it appears counterintuitive to infer that Defendants intended the settlement funds to be utilized as an offset to any of its attorneys' fees and costs. Rather, an award to Plaintiff with an offset against any potential judgment to Defendants is more plausible . . . ." (Id.) Nonetheless, he could not "recommend that the Court award the proceeds to Plaintiff with an offset to Defendants . . . [because] Plaintiff's Motion goes beyond a mere request to enforce a Settlement Agreement. Plaintiff appears to request that the Court reform the Settlement Agreement but fails to meet the standard for reformation." (Id. at 7.) In addition, he found that, to the extent WSI was "invoking general equitable principals," its

6

"specific legal theory/theories" were unclear and therefore the Court "certainly is not prepared to recommend the requested relief."[6]  (Id.)

## II.  DISCUSSION

WSI now objects to Judge Shipp's Report and Recommendation denying its motion to disburse the settlement proceeds.  In doing so, it contends that (1) the equitable distribution of the settlement proceeds requires court intervention because the Title Insurers have unequivocally refused to engage in discussions or mediation to resolve the issue; and (2) WSI is entitled to the entirety of the settlement proceeds because the Title Insurers have failed to set forth a legitimate reason why they should receive any portion thereof.

The Title Insurers counter that (1) any ruling regarding the distribution of the settlement proceeds would amount to an improper rewriting of the fully integrated settlement agreement; (2) they have a superior claim to the settlement proceeds; and (3) WSI is entitled to none of the proceeds.

**A.     WSI's Motion to Disburse**

"A settlement agreement between parties to a lawsuit is a contract."  Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (citation omitted).  Thus, "a settlement agreement is governed by principles of contract law."  Thompson v. City of Atlantic City, 190 N.J. 359, 379 (2007) (citation omitted).  "As a general rule, courts should enforce contracts as the parties intended.  Similarly, it is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties."  Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (citations omitted).  "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the expressed general

---

[6] Judge Shipp also noted that "if counsel does not drastically change course an evidentiary hearing will most likely be required in the future.  However, the Undersigned is not inclined to recommend one based on the current pleadings."  (ECF No. 546 at 7 n. 2.)

purpose." Id. (quotation and citation omitted); see also Town of Kearny PBA Local # 21 v. Kearny, 81 N.J. 208, 221 (1979) (In ascertaining the intent of the parties to a contract, courts may consider, in addition to the text, "the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct.").

WSI contends that (1) that the Title Insurers engaged in bad faith under the settlement agreement by refusing to engage in mediation or discussions regarding how to distribute the settlement proceeds; (2) the Title Insurers suffered no loss from Coastal's conduct that would entitle them to any portion of the settlement proceeds, and their contribution and indemnification claims would have been dismissed under the law of the case doctrine; and (3) the American Rule bars the Title Insurers' claim for attorneys' fees.

The Title Insurers counter that they (1) were under no obligation to engage in mediation or discussions regarding apportionment of the settlement proceeds; (2) are entitled to at least a portion of the settlement proceeds because they waived their right to recover attorneys' fees incurred in this action as a result of Coastal's negligence in exchange for settlement; and (3) are entitled to attorney's fees for their cross-claims against Coastal pursuant to their agency agreements with Coastal. They further argue that WSI has no claim to the settlement proceeds because (1) its claim is not covered under General Star's E&O Policy, whereas their cross-claims against Coastal for negligence under their agency agreements are covered by the policy; and (2) a damages offset would amount to an inappropriate windfall to WSI should they be found not liable for any of WSI's losses at trial.

As an initial matter, the parties' contentions regarding the merits of each other's settled claims against Coastal are irrelevant. Parties settle claims, meritorious or not, for a variety of

8

reasons. Indeed, the settlement agreement in this case makes clear that, without any admission of liability or indemnification on the part of Coastal or General Star, Coastal will pay $425,000 out of the General Star E&O Policy collectively to WSI and the Title Insurers in exchange for settlement of their claims against it arising out of the aforementioned mortgage fraud. Consequently, whether (1) the Title Insurers' contribution and indemnification claims would have ultimately been dismissed; (2) WSI's RICO and fraud claims against Coastal would have been covered under the General Star E&O Policy; or (3) whether a claim for negligence against Coastal under an agency agreement would have been covered under the General Star E&O Policy, are of no moment.

In addition, WSI's contention that the Title Insurers engaged in bad faith under the settlement agreement is unavailing. There is no indication of any dispute resolution provision in the settlement agreements, much less any requirement that the parties engage in mediation to resolve disagreements regarding distribution of the settlement proceeds. While it would have been prudent to include such a provision, the Court cannot rewrite the terms of the settlement agreement.[7]

Also unavailing is WSI's contention that the Title Insurers suffered no cognizable loss arising out of Coastal's participation in the fraudulent scheme that the settlement proceeds could serve to reimburse. To be sure, as WSI points out, under both the terms of the settlement agreement and the American Rule, the proceeds cannot serve to reimburse the Title Insurers for their attorneys' fees in prosecuting their cross-claims against Coastal. However, the proceeds may serve to reimburse the Title Insurers' attorneys' fees and expenses arising out of having to

---

[7] WSI suggests that, in verbal discussions, the Title Insurers offered to engage in mediation to resolve the issue of how to distribute the settlement proceeds. However, the settlement contains a clear merger clause, and therefore any such suggestion amounts to inadmissible parol evidence.

defend against WSI's claims for coverage under the CPLs and Title Policies that are based, in part, on Coastal's participation in the fraudulent scheme as the Title Insurers' title agent. See New Jersey v. Ventron Corp., 194 N.J. 473, 504-05 (1983) (American Rule inapplicable where "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person . . . .") (quotation and citation omitted). Indeed, notwithstanding the provision that WSI and the Title Insurers bear their own costs and fees with respect to their claims against Coastal, the settlement agreement contemplates, in exchange for the $425,000.00, Coastal's release from "any cost, expense, fee or other expenditure of funds, including but not limited to attorneys' fees and costs, relating directly or indirectly to" WSI's lawsuit, which includes its coverage claims against the Title Insurers. (Magnanini Cert., Ex. D.)

Consequently, Judge Shipp's Report and Recommendation is adopted and WSI's Motion to Disburse is denied. The settlement proceeds will be held in abeyance until the parties can reach an agreement regarding on how to distribute them.

### III.  CONCLUSION

For the foregoing reasons, Judge Shipp's Report and Recommendation is adopted and WSI's Motion to Disburse is DENIED. The settlement proceeds will be held in abeyance until the parties can reach an agreement regarding on how to distribute them.

The Court will enter an order implementing this opinion.

                                       _/s/ Dickinson R. Debevoise_____
                                       DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: September 14, 2012