UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALSH SECURITIES, INC., | : Civil Action No. 97-3496 (DRD) (JAD) |
| Plaintiff, | : Hon. Dickinson R. Debevoise |
| vs. | : |
| CRISTO PROPERTY MANAGEMENT, LTD., *et al.* | : |
| Defendants. | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO CLARIFY THIS COURT'S AUGUST 10, 2012 OPINION AND ORDER**

STONE & MAGNANINI LLP
150 John F. Kennedy Parkway,
4th Floor
Short Hills, New Jersey 07078
(973) 218-1111

*Attorneys for Plaintiff Walsh Securities, Inc.*

Dated: November 13, 2012

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ............................................................................................................ i

**TABLE OF AUTHORITIES** .................................................................................................... ii

**INTRODUCTION** ......................................................................................................................1

**ARGUMENT** .............................................................................................................................3

**CONCLUSION** .........................................................................................................................8

# TABLE OF AUTHORITIES

**Federal Cases**

*Polito v. Continental Casualty Co.*,
   689 F.2d 457 (3d Cir. 1982) ............................................................................................. 7

*Trico Equipment v. Manor*,
   No. 08-5561, 2011 U.S. Dist. LEXIS 17936 (D.N.J. Feb. 22, 2011) ...................................... 6, 7

**State Cases**

*Donovan v. Bachstadt*,
   91 N.J. 434 (1982) ............................................................................................................. 6

*Johansen v. Cal. State Auto. Assn. Inter-Ins. Bureau*,
   538 P.2d 744 (CA 1975) .................................................................................................... 8

*Nanavati v. Horizon Blue Cross/Blue Shield*,
   2009 N.J. Super. Unpub. LEXIS 986 (App. Div. Apr. 9, 2009) ......................................... 6-7

*Pickett v. Lloyd's*,
   131 N.J. 457 (1993) ........................................................................................................... 7

*V.A.L. Floors v. Westminster Communities, Inc.*,
   355 N.J. Super. 416 (App. Div. 2002) ................................................................................ 6

## INTRODUCTION

At the September 5, 2012 settlement conference this Court instructed Plaintiff Walsh Securities Inc. ("WSI", "Walsh" or "Plaintiff") to submit a motion for clarification of the Court's August 10, 2012 Opinion and Order [Docket Entry Nos. 550-551] because of a disagreement among the parties concerning the extent of that ruling on the motion for reconsideration and its applicability to Plaintiff's damages claim for the lost diminution in value to Plaintiff that is unrelated to the loss of the merger. Defendants Commonwealth Land Title Insurance Company ("Commonwealth"), Fidelity National Title Insurance Co. of New York ("Fidelity"), and Nations Title Insurance of New York, Inc. ("Nations") (collectively the "Title Insurance Defendants") opposed this motion and, in doing so, admitted that their May 1, 2012 Motion for Partial Reconsideration of the Court's April 17, 2012 Decision Denying, in Part, their Motions for Summary Judgment or, in the Alternative, for Certification to the Third Circuit [Docket Entry No. 540] <u>and</u> the Court's August 10 Opinion and Order did not address Plaintiff's request for "diminution in value damages" and addressed only Plaintiff's request for the recovery of "loss of merger damages." Accordingly, there is nothing for this Court to clarify in that regard and Plaintiff's motion should be granted as unopposed.

The Title Insurance Defendants now improperly attempt to reargue this Court's April 2012 decision, which clearly held:

> a jury could reasonably find that the Title Insurers failure to indemnify WSI would foreseeably hinder its ability to (1) offset its losses and (2) repurchase the fraudulent mortgage loans from the secondary market, thereby causing WSI to be in a state of financial disarray and leading to the . . . diminution of WSI's value.

(April 17 Opinion, Doc. No. 533, at 37). The Title Insurance Defendants are now using this opportunity to take a third bite at the apple by dubiously asserting that the April 2012 Opinion

1

and Order disposed of the "diminution in value" damages when it dismissed Plaintiff's "bad faith" claim. This change of course is dubious because the Court's April 2012 Opinion, at 35-38, provides a thoughtful analysis of these very issues. Tellingly, the Title Insurance Defendants would have had no reason to file their motion for reconsideration under their newly formed theory that this type of damages can only tied to bad faith claims.

This is further supported by the parties' joint case status letter to Judge Dickson, filed on August 21, 2012, which stated in relevant part:

> Judge Debevoise recently granted one motion for partial summary judgment filed by the title insurance defendants (dismissing plaintiff's bad faith claims). <u>Judge Debevoise denied a motion for partial summary judgment filed by the title insurance defendants dismissing certain of the damage claims of the plaintiff.</u> Judge Debevoise also denied the plaintiff's motion for partial summary judgment on liability. <u>The title companies moved for reconsideration of Judge Debevoise's order denying a portion of their motion for partial summary judgment on certain damage claims, and, on August 10, 2012, Judge Debevoise granted the motion for reconsideration and dismissed certain of plaintiff's damage claims. (Document Nos. 550 & 551, filed 08/10/12).</u> In preparing this joint letter, it has become evident that there is a disagreement concerning the meaning of Judge Debevoise's ruling on the motion for reconsideration in which it was held "…WSI's claim for damages arising out of the failed merger between Walsh Holding and RBMG is dismissed with prejudice." (Doc. No. 551). It is plaintiff's position that Judge Debevoise's opinion concluded that WSI does not have standing to assert damages arising out of the failed merger between Walsh Holding and RBMG, thus only these claims for damages were dismissed with prejudice.

(Doc. No. 553 (emphasis added)). Without a doubt, this Court has only dismissed Plaintiff's loss of merger damages.

The Title Insurance Defendants' time to move for reconsideration on this issue is long passed and the Court's April 2012 decision that Plaintiff may proceed on its claim for diminution in value damages is law of the case. Their attempt to change tactics and create a new defense should be wholly disregarded.

2

## ARGUMENT

The law of the case is simple -- Plaintiff may proceed before a jury with its claim for the diminution in value of the company. The Title Insurance Defendants never moved for reconsideration or clarification on this issue, even though they did move for reconsideration on whether Plaintiff had standing to pursue the loss of merger damages. If, as the Title Insurance Defendants now argue for the first time, the Court's dismissal of Plaintiff's bad faith claim served as a dismissal of the diminution in value damages, the Title Insurance Defendants would not have needed to move for reconsideration on the loss of merger damages and the Court would not have devoted several pages in its April 2012 Opinion to the foreseeability of Plaintiff's damages. As the Court explained in its Opinion, a jury could find that the diminution in value damages flowing from the breaches of hundreds of closing service protection letters and title policies at issue in this case were foreseeable, and thus compensable.

The Title Insurance Defendants moved for partial summary judgment on (1) lost profits from the merger between Walsh Holding and RBMG and (2) the loss of the entire value of WSI, amounting to in excess of $400 million. The Title Insurance Defendants framed their motion for partial summary judgment with two arguments:[1]

I. WALSH CANNOT RECOVER DAMAGES FOR LOSSES THAT WERE NOT FORESEEABLE AT THE TIME THE CLOSING SERVICE LETTERS WERE ISSUED

\* \* \*

---

[1] On this present motion, Plaintiff sought for the Court to clarify that the August 10 Opinion and Order only covered the merger damages claim and did not impact Plaintiff's claims for damages from its diminution in value. In their opposition the Title Insurance Defendants concede this point, thus Plaintiff's motion is unopposed and should respectfully be granted. Since it has now been conclusively established that their motion for reconsideration addressed solely the second argument, this brief will focus on the first argument that the Title Insurance Defendants have untimely raised.

3

## II. WALSH HAS NO STANDING TO PURSUE DAMAGES ARISING FROM THE TERMINATION OF THE WALSH/RBMG MERGER AGREEMENT

(*See* Defendants' Motion for Partial Summary Judgment ("Mtn. for PSJ"), Docket Entry No. 479, at i, 4, 13). The Title Insurance Defendants never claimed that diminution in value damages were tied to the bad faith claim in their motion for partial summary judgment. Their sole argument was that these two types of damages were not foreseeable for a breach of contract.

As the Court and the Title Insurance Defendants are fully aware, WSI's damages claims included both the loss of the merger and also the diminution in value of the company. In moving for partial summary judgment, the Title Insurance Defendants argued that WSI could not recover either the loss of merger damages or diminution in value damages for losses that were not foreseeable at the time the closing service letters were issued. (*Id*. at 4-12). After stating that the merger damages were not a foreseeable consequence of the Title Insurance Defendants' breach of contract, they added that "Any diminution in value of Walsh is similarly remote." (*Id*. at 2).

In its April 17, 2012 Opinion, as to the foreseeability of the damages, this Court ruled that a jury could find it was foreseeable. This Court explained:

> at the time WSI and the Title Insurers entered into one of the CPLs and title policies in this case, a jury could reasonably find that the parties should have reasonably contemplated that a fraudulent scheme affecting hundreds of mortgage loans would give rise to substantial losses. And to the extent that WSI is entitled to coverage under the CPLs and title policies for those losses, a jury could reasonably find that the Title Insurers' failure to indemnify WSI would foreseeably hinder its ability to (1) offset its losses and (2) repurchase the fraudulent mortgage loans from the secondary market, thereby causing WSI to be in a state of financial disarray and leading to the breakdown of the merger between Walsh Holding (WSI's parent company) and RBMG and diminution of WSI's value.

(April 17 Opinion at 36-37). This Court's Order specifically articulated that "[t]he Title Insurers' Motion for Summary Judgment is DENIED with respect to WSI's claims for breach of

4

contract and compensatory damages. . . ." (April 17 Order). This decision was not dicta, has never been challenged, was indisputably not part of any motion for reconsideration, and is law of the case.

In moving for reconsideration on the loss of merger damages, the Title Insurance Defendants never asserted that the damages had been dismissed as part of the Court's April 2012 decision to dismiss the bad faith claim. In fact, the Title Insurance Defendants' opposition brief calls into question the necessity of their needing to file that motion for reconsideration if in fact the Court's dismissal of the bad faith claim effectively eliminated these damages. In reversing its earlier decision "that WSI has standing to seek damages arising out of the failed merger between Walsh Holding and RBMG," (Aug. 10 Opinion at 5), the Court concluded that based upon the terms of the merger agreement, not the dismissal of the bad faith claim, only Walsh Holding's shareholders had standing to purse damages from lost merger because the merger agreement contemplated an exchange of Walsh Holding's shares for shares in RBMG, (*id.* at 8). Certainly if the Court's April 2012 decision to dismiss Plaintiff's bad faith claim truly had any effect on Plaintiff's damages, that would have been raised in the Title Insurance Defendants' motion for reconsideration and the Court's August 2012 Opinion. But it was not.

When the Title Insurance Defendants moved for partial summary judgment they argued that these damages were not a foreseeable result of a breach of a closing service protection letter ("CPL") or a title policy. They never asserted that these damages were premised upon the now-dismissed bad faith claim, as they now do almost one year later. These damages are premised on the contractual breaches and existed in this litigation even before the bad faith claim was added in the Fourth Amended Complaint. It was the Title Insurance Defendants' contractual breaches of the insurance policies and closing service protection letters that they issued that foreseeably

drove down the value of WSI's business. (See Fourth Amended Complaint ¶¶ 64-65; Pl.'s Certified Resps. & Objections to Def./Third-Party Pl. Commonwealth Land Title Ins. Co.'s First Set of Interrogs. Addressed to Pl. Walsh Securities, Inc. dated Oct. 15, 2005 at Resp. to Interrog. No. 6, attached to Merin Certif. at Ex. M [Docket Entry No. 479-4]). Moreover, as Plaintiff argued in opposition to the Title Insurance Defendants' motion for partial summary judgment:

> if this Court chooses to limit WSI's damages from the loss of the merger, summary judgment should nonetheless be denied on the diminution in value of WSI. Put simply, Defendants have cited no law or record evidence that entitles it to summary judgment based on this damages claim. Indeed, it was entirely foreseeable at the time the Defendants entered into the CPLs that denial of hundreds of claims under the clear dictates of those contracts could have a ruinous impact on WSI, as the denial of insurance effectively forced WSI to be "holding the bag" – stuck as the owner of unmarketable mortgages that it had to repurchase and unable to foreclose on as a result of the fraud. WSI's value as a company plummeted – indeed, it was ultimately destroyed.

(Plaintiff's Opposition to Motion for Partial Summary Judgment ("Opp. to Mtn. for PSJ"), Docket Entry No.488, at 6-7).

The Title Insurance Defendants do not cite to any new cases that were unavailable at the time of their original motion for partial summary judgment. In fact, this Court already clearly outlined New Jersey law regarding judicial remedies for breach of contract, which the Title Insurance Defendants have not challenged. (April 17 Opinion at 36-37). Thus, the Title Insurance Defendants' attempt to reargue that which they already lost should be wholly disregarded by this Court. Nonetheless, New Jersey law is clear that remedies for breach of contract can include restitution, compensatory damages, performance, lost profits, legal fees and interest. (See Opinion at 36, citing *Donovan v. Bachstadt*, 91 N.J. 434, 443 (1982); *see also V.A.L. Floors v. Westminster Communities, Inc.*, 355 N.J. Super. 416, 425 (App. Div. 2002); *Trico Equipment v. Manor*, No. 08-5561, 2011 U.S. Dist. LEXIS 17936, at *30-34 (D.N.J. Feb. 22, 2011)). "Compensatory damages put the innocent party into the position he or she would

6

have achieved had the contract been completed." *Nanavati v. Horizon Blue Cross/Blue Shield*, 2009 N.J. Super. Unpub. LEXIS 986 (App. Div. Apr. 9, 2009). In *Trico*, the court explained that "[p]rofits lost by reason of breach of contract may be recovered 'if there are any criteria by which probable profits can be estimated with reasonable certainty.' 'Past experience of an ongoing, successful business provides a reasonable basis for the computation of lost profits 'with a satisfactory degree of definiteness.'"" *Trico Equip.*, 2011 U.S. Dist. LEXIS 17936, at *32 (citations omitted).

The Title Insurance Defendants' new found reliance on first-party insurance law regarding consequential damages and bad faith is not dispositive of this issue and should certainly not be considered since it was never before raised. In any event, title insurance is inherently different from typical first-party insurance such as casualty insurance. With title insurance, the title insurers identify and eliminate risks in advance of issuing the title policy. The closing service protection letter insures against the fraudulent acts of the closing attorney who is the agent of the title insurance company. Typical first-party insurance protects against the risk of unknown future losses such as with a fire (*see Polito v. Continental Casualty Co.*, 689 F.2d 457 (3d Cir. 1982)) or a tractor-trailer accident (*see Pickett v. Lloyd's*, 131 N.J. 457 (1993)). Thus, with title policies and closing service protection letters, the risk of loss is in the hands of the title insurance company and it is the title insurance company's responsibility to resolve any title defects in advance of the closing or include them in exceptions to the policy. Here, the agents of the title insurance companies were involved in creating sham transactions and failed to eliminate the title defects. While there may not be any cases discussing the unique facts that are present in this case, this Court clearly analyzed the facts and held that "at the time WSI and the Title Insurers entered into one of the CPLs and title policies in this case, a jury could reasonably find

that the parties should have reasonably contemplated that a fraudulent scheme affecting hundreds of mortgage loans would give rise to substantial losses . . . [including] diminution of WSI's value." (April 17 Opinion at 36-37). These damages are not punitive, they are to make the company whole.[2]

Even before this Court at the settlement conference on September 5, 2012, when the Title Insurance Defendants improperly attempted to ask this Court to reconsider another issue from its April 17, 2012 Opinion (that they had never previously moved for reconsideration on), they still did not ask the Court for clarification or reconsideration on the issue of these damages. The Federal Rules do not contemplate that a party can just hire a new lawyer, with different viewpoints and legal strategies, and somehow circumvent the rules of procedure.

It is simply too late for the Court to reconsider its April 17, 2012 Opinion, considering that the Title Insurance Defendants never asked for an extension of time to file a motion for reconsideration, and particularly given that the Title Insurance Defendants did move for reconsideration and specifically chose not to move on this issue of diminution in value or foreseeability. Accordingly, while the plain terms of this Court's April 17 Opinion and Order are clear to Plaintiff, it would aid this litigation for the Court to unambiguously clarify that pursuant to the April 17 Opinion and Order that Walsh Securities is entitled to pursue its claim for damages resulting from its diminution in value.

## CONCLUSION

For the foregoing reasons, Plaintiff Walsh Securities, Inc. requests that the Court clarify

---

[2] The Title Insurance Defendants could have made payments on the closing protection letters and title policies while asserting a defense of noncoverage to avoid these damages, and then if they were to subsequently establish the noncoverage they could have sought reimbursement from Plaintiff. *See, e.g., Johansen v. Cal. State Auto. Assn. Inter-Ins. Bureau*, 538 P.2d 744, 750 (CA 1975).

8

that its Opinions and Orders do not bar Plaintiff from pursuing its claims seeking damages related to its own diminution in value. In addition, Plaintiff respectfully requests that this Court impose sanctions on the Title Insurance Defendants to compensate it for being forced into unnecessary motion practice on an issue that is clearly contrary to this Court's holdings.

Respectfully submitted,

/s/ Robert A. Magnanini
Robert A. Magnanini
Amy Walker Wagner
Daniel Ian Mee
STONE & MAGNANINI LLP
150 JFK Parkway, 4th Floor
Short Hills, NJ  07078
(973) 218-1111

*Attorneys for Plaintiff Walsh Securities, Inc.*

Dated: November 13, 2012