1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEW JERSEY
2                 CIVIL ACTION NO.97-cv-03496-DRD-JAD

3

4     WALSH SECURITIES, INC.,                    MOTION FOR
                                               RECONSIDERATION
5          vs.

6     CRISTO PROPERTY MANAGEMENT, LTD.,
      et al.,
7
              Defendants.
8     _____

9                                    November 19, 2012
                                     Newark, New Jersey
10

11
      B E F O R E:   HONORABLE DICKINSON R. DEBEVOISE, USDJ
12

13
      Pursuant to Section 753 Title 28 United States Code, the
14    following transcript is certified to be an accurate record
      as taken stenographically in the above-entitled
15    proceedings.

16
      S/Jacqueline Kashmer
17    JACQUELINE KASHMER
      Official Court Reporter
18

19

20

21
                         JACQUELINE KASHMER, C.S.R.
22                        OFFICIAL COURT REPORTER
                              P. O. Box 12
23                        Pittstown, NJ 08867
                             (908) 200-1040
24

25

1    A P P E A R A N C E S:

2

3            STONE & MAGNANINI, LLP
             150 John F. Kennedy Parkway
             Short Hills, NJ 07078
4            BY:  DAVID STONE, ESQ.
                      and
5                AMY W. WAGNER, ESQ.
             For the Plaintiffs

6

7

             FOX, ROTHSCHILD, O'BRIEN & FRANKEL, LLP
8            2000 Market Street
             Philadelphia, PA
9            BY:  EDWARD J. HAYES, ESQ.
             For the Defendants Fidelity National Title Insurance
10           Company and Nations Title Insurance Company

11

12           MC CARTER & ENGLISH, LLP
             Four Gateway Center
13           100 Mulberry Street
             Newark, NJ 07101
14           BY:  DAVID R. KOTT, ESQ.
             For the Defendant Commonwealth Land Title Insurance
15           Company

16

17           LOEB & LOEB, LLP
             345 Park Avenue
18           New York, NY 10154
             BY DAVID SATNICK, ESQ.
19           For the Defendant Commonwealth Land Title Insurance
             Company

20

21

22

23

24

25

1          THE COURT: We're ready to go ahead with Walsh

2     Securities against Cristo.  Who's going to argue the motion

3     for clarification?

4          MR. STONE:  Your Honor, David Stone from the firm of

5     Stone & Magnanini.

6          THE COURT:  Speak into the microphone directly.

7          MR. STONE:  I'll try.

8          THE COURT:  If I look away from you, I'm just reading

9     you on the reader here.

10          MR. STONE:  Okay.  Your Honor, it's David Stone from

11     the firm of Stone & Magnanini for the plaintiff.  We filed

12     the motion for clarification.  Mr. Magnanini sends his

13     regrets.  Unfortunately, as a result of the storm, he was

14     ordered to do court-ordered depositions today in Long

15     Island, so, I'm covering for him.

16          THE COURT:  Well, tell him we missed him.

17          MR. STONE:  So, I think it's important to understand

18     how we got to this point for this motion for clarification.

19     This is a motion to clarify the Court's August 10th, 2012

20     order, which dealt with a motion for reconsideration that

21     was filed by the defendants which covered the decision in

22     April of 2012, April 17th of the Court, that we could seek

23     damages under the -- for the loss of the merger agreement

24     that Walsh Securities had, so, that was the decision in

25     August 10, 2012.  And that is the motion for clarification

1    that we filed here.

2          The reason we filed a motion for clarification, I

3    think it's important to understand this, the Court, in

4    April of 2012, entered a detailed opinion after extensive

5    briefing of the motions for summary judgment of the

6    parties.

7          On pages 34 and 35 of that opinion, the Court

8    dismissed our claim for bad faith against the insurance

9    companies.  On pages 36 and 37, the Court went on to hold

10   that despite it had dismissed our bad-faith claims, that

11   under contract damages, we were entitled to seek both the

12   loss, the diminution in value of the company, Walsh

13   Securities, as a result of its inability to buy back the

14   loans as a result of the title company's refusing to pay on

15   the title closing letters and their title insurance on

16   several hundred properties.  The Court found that was

17   foreseeable.

18         The Court noted that in New Jersey, citing Donovan

19   vs. Bachstadt, "Compensatory damages are designed to put

20   the injured party in as good a position as he would have

21   had if performance had been rendered as promised."

22         The Court went on to say, "Damages should be such as

23   may fairly be considered either arising naturally, i.e.,

24   according to the usual course of things from such breach of

25   contract itself or such as may reasonably supposed to have

1    been in the contemplation of both parties at the time they

2    made the contract as a probable result of the breach of

3    it."

4        So, the Court, citing this law for breach of

5    contract, not bad faith, for breach of contract, held that

6    the court must consider the damages flowing from the

7    breaches of these approximately 220 CPLs and title policies

8    at issue in this case.

9        It said, the Court held -- I'm sorry -- that "A jury

10   could reasonably find that the parties should have

11   reasonably contemplated that a fraudulent scheme affecting

12   hundreds of mortgage loans would give rise to substantial

13   losses and to the extent that WSI is entitled to coverage

14   under the CPLs and title policies for those losses, a jury

15   could reasonably find that the title insurance failure to

16   indemnify WSI would foreseeably hinder its ability to, one,

17   offset its losses and, two, repurchase the fraudulent

18   mortgage loans from the secondary market, thereby causing

19   WSI to be in a state of financial disarray and leading to

20   the breakdown of the merger between Walsh Holdings and

21   diminution of WSI's value."

22       So, as of April 17, 2012, the Court had held that we

23   could pursue both damages for the loss of the merger and

24   damages for diminution of value at pages 36 and 37 of its

25   opinion.  That was after the Court dismissed our bad-faith

1    claims.

2         So, it was clear from the Court's opinion, and that's

3    law of the case, that we could pursue diminution in value.

4         Then the defendants at that point had an opportunity

5    to move for reconsideration.  They elected only to move for

6    reconsideration on the issue of the merger, which they did.

7    They moved for reconsideration on the issue of the merger

8    and the Court granted that motion on the basis of standing,

9    that Walsh Securities did not have standing.

10        That did not in any way affect the Court's decision

11   that Walsh Securities could sue based on the foreseeable

12   fact that a jury could find that its diminution in value

13   was foreseeable.  That motion for reconsideration did not

14   address that issue by the defendants.  The Court did not

15   address that issue in its order.

16        So, as of August 10, 2012, as far as the plaintiffs

17   were concerned, we had an opinion of your Honor, law of the

18   case, we can pursue diminution in value.  What happened

19   was --

20        THE COURT:  Not the damages arising out of the failed

21   merger.

22        MR. STONE:  Correct.  And we understand that.  But we

23   could use the fact that another company was willing to pay

24   us 400 million dollars to buy our company as some evidence

25   of the fact of what the value of our company was worth at

1     that time.

2          THE COURT:  That's an evidential question we can

3     address later.

4          MR. STONE:  Right, I agree with that.  That's an

5     evidential question.  But in any event, we agreed that we

6     could not pursue the loss of the merger.

7          The Court has always distinguished in its opinions,

8     the parties have always distinguished in their motions,

9     that there's two different things here.  There's the loss

10    of the merger and then there's the loss of the value of the

11    company which occurred no matter whether there was a merger

12    or not.

13         I mean, the company had a value.  It was an ongoing,

14    very successful company before all of this happened, and

15    now it's in bankruptcy.  So, in any event, that was the law

16    of the case.

17         Now, when we came for our mediation settlement

18    conference before your Honor, it was our view that we had a

19    case that, based on your Honor's opinion, we had potential

20    damages of 440 million dollars, 400 million dollars for the

21    loss of diminution in value and somewhere between 20 and 40

22    million dollars, depending on how you do the math, for the

23    properties that we had to buy back and the damages that we

24    suffered as a result of that.

25         The defendants took the position in that conference

1    that we did not have a claim for the 400 million, and we

2    said to them, Well, we don't see where you're getting that

3    from.  It was our understanding, and I think that's what

4    they said to us, and I think that's what we said to your

5    Honor in fact, was that they were saying that somehow your

6    August 10th, 2012 opinion on the merger had somehow

7    impacted your original decision in April that we could seek

8    diminution of value.

9         We said we don't see how that could be because you

10   didn't move on that issue.  That issue wasn't briefed.  You

11   didn't move for reconsideration on it.  You moved only on

12   the standing issue relating to the merger.

13        So that's where we thought we were and we advised

14   your Honor of that, and there was a discussion about that,

15   and your Honor made the determination that we should move

16   for clarification on that issue, did your August 10th, 2012

17   opinion somehow modify your opinion in April of 2012, and

18   that's what we did.

19        We moved on that issue and that's what we said in our

20   brief and that's what we've said in our order and, in fact,

21   what we said was, at page five of our brief, we said,

22   "Plaintiff only seeks for the Court to clarify for the

23   title insurance defendants that the August 10th opinion and

24   order only covered the merger and damages" -- "merger

25   damages claimed, they moved on and did not impact

1    plaintiff's claim for damages from its diminution in

2    value."  So, that was what we moved on and that's what we

3    understood the issue was.

4        In their opposition brief to our motion, somewhat

5    surprisingly to us, the defendants say on page two,

6    "Defendants agree that the August 10th opinion and order

7    addressed only WSI's request for the recovery of loss of

8    merger damages, finding that WSI lacks standing to seek

9    those damages."

10       Based on that statement, we win.  We win our motion

11   for clarification because our motion for clarification was

12   only that that order in August -- on August 10, dealt only

13   with the merger, so, that should be the end of this, your

14   Honor, because that's the only motion that's in front of

15   you right now.

16       However, the defendants, in an attempt to essentially

17   reargue or attempt to argue late reconsideration of your --

18   excuse me -- of your April 17th order, are in opposition to

19   our motion for clarification.  They go on to argue that

20   somehow in your April 17th order, you held that we could

21   not pursue diminution in value, even though you

22   specifically said that we could, and that's really what

23   their argument is.

24       Their argument is somehow that even though your

25   opinion just read, you know, practically the words that are

1    in the opinion says we can pursue diminution in value, that

2    it's an appropriate contract damage that's foreseeable,

3    that somehow, because two pages earlier you dismissed our

4    bad-faith claim, you were actually holding that we

5    couldn't.

6         Well, first of all, they're wrong.  You know, your

7    Honor's opinion is accurate, correct, is appropriate under

8    the law of New Jersey but, more importantly, they don't

9    have standing to make that argument now.  They had an

10   opportunity to make that motion for reconsideration.  They

11   never made it.  They made a motion on the merger.

12        They had that opportunity to make that argument in

13   their summary judgment motion papers.  They never made it

14   in their summary judgment motion papers, your Honor.  We

15   went over every single argument they made in those many

16   different --

17            THE COURT:  They have new counsel now.

18            MR. STONE:  Well, unfortunately, new counsel can't

19   come in and reargue all the decisions in the case, although

20   they may like to do it because they may not be happy with

21   those decisions.  That isn't the law.  Those aren't the

22   rules.

23        The rules are very clear, your decision is law of the

24   case and your decision is correct.

25        And I would point your Honor to the cases that we've

1    cited, in particular, the Vision Mortgage case and the

2    Sears case.

3         New Jersey has said that with the client protection

4    letters that were in place during this case and with the

5    title insurance policies that were in place, that title

6    insurance companies are going to be responsible for these

7    kind of damages.  They're going to be responsible for

8    necessarily direct damages that occur as a result of their

9    failure to pay, and that's not under bad faith, your Honor.

10   Those cases aren't under bad faith.  Those cases are cases

11   which simply say that as a contractual matter, they're

12   going to be obligated to do that.

13        They cited a bunch of cases about bad faith.  They

14   cited a bunch of cases from outside of New Jersey which

15   have no relevance here but, moreover, they have no right to

16   be making any of these arguments because they don't have a

17   motion in front of your Honor and their time to make that

18   motion is long past.

19        So, for all of those reasons, we respectfully submit

20   your Honor should grant our motion for clarification.

21   Thank you.

22        THE COURT:  All right.  Thank you very much.

23   Defense.

24        MR. HAYES:  Good morning, your Honor.  Edward Hayes

25   representing Fidelity and Nations in this case.  Your

1    Honor, we see this as relatively simple, also.  We see this

2    as to whether or not consequential damages, not

3    compensatory damages which are provided for under a breach

4    of contract claim, but consequential damages can survive in

5    this case after your Honor's determination that there was

6    insufficient evidence to establish a bad-faith claim in

7    this case based on the ample evidence which existed of the

8    participation of the plaintiff in the case.

9        The pleadings in this case, your Honor, that the

10   plaintiff has filed, and the responses that it's filed to

11   the various motions in this case, all tie these diminution-

12   in-value damages, which are consequential damages, into one

13   thing, bad faith.  They did not tie them into breach of

14   contract, we believe, because there's a recognition that

15   under New Jersey law, a breach of contract provides for

16   certain damages, the debt plus interest.

17       The Vision Mortgage case and the Sears case which Mr.

18   Stone cites didn't change that principle.  It didn't change

19   the principle that you recover more than debt or interest.

20   It took away some of the defendants' -- the title

21   defendants' claims in those cases to limit those damages.

22       For example, in Vision, your Honor may recall one of

23   the defenses that was raised by the title company in that

24   case was that the loss that had been sustained in that case

25   was sustained because after the foreclosure, there was

1    still a debt due, and the argument that the title company

2    made was the fallacy of your loan here was the appraisal

3    that was done.  You loaned too much money on a property

4    that didn't have sufficient value.  And what the court in

5    Vision said -- it didn't say you're entitled to

6    consequential damages.  What the court in Vision said,

7    you're liable for debt plus interest and you're not going

8    to be able to excuse your responsibility and liability

9    under a closing protection letter.

10        Every pleading in this case, Judge, talks about

11   diminution-in-value damages flowing from bad faith, flowing

12   from breach of good faith and fair dealing, which your

13   Honor dismissed in your April 2012 order.

14        We believed, your Honor, and we still believe today,

15   that when your Honor threw out the bad-faith claim, your

16   Honor threw out the only basis upon which consequential

17   damages could be recovered in this case.

18        While Mr. Stone talks about foreseeability,

19   foreseeability is the second prong, your Honor, that would

20   have to be established in order for recovery in this case

21   of consequential damages.  The first prong is that it's an

22   element of damages recoverable under the cause of action

23   that's sought.  If it is something which is recoverable,

24   then the plaintiff would have to prove foreseeability.

25        This is not a recoverable claim under New Jersey law

1    against a first-party insurance carrier absent a

2    determination of bad faith, and --

3           THE COURT:  But I think Mr. Stone is objecting to the

4    timing of your raising this argument.  This is water over

5    the dam and this was decided some months ago and you're

6    belatedly raising it now.

7           MR. HAYES:  But with all due respect to Mr. Stone,

8    your Honor, my understanding of a reconsideration request

9    is to make sure that the proper issues are before the Court

10   for determination, to make sure there's not a manifest

11   injustice as a result of a decision issued by the Court.

12          We believe this is not a compensable element of

13   damages and whether we got it right before, Judge, or we're

14   getting it right now, the ultimate decision is one that we

15   believe you already made.  There is no bad faith in this

16   case.

17          If there is no bad faith in this case, your Honor,

18   there can be no consequential damages.  This relief that

19   they're asking for is an element of consequential damages

20   which no New Jersey court has recognized as a viable

21   recovery against an insurance company except, except when

22   there is bad faith.

23          So, our position, your Honor, is that when your Honor

24   dismissed the bad-faith claim, regardless of your

25   subsequent discussions in that case about merger and

1    diminution-in-value damages, when your Honor took bad faith
2    out, you cut the legs out from under the plaintiff on that
3    claim.

4        We don't believe we're rearguing or arguing new
5    issues here.  We believe that what the plaintiff is
6    attempting to do is to get around controlling New Jersey
7    law which says those elements of damages are not
8    recoverable.

9        Our request, your Honor, is that you stand by the
10   decision that you made in April, at which time you ruled
11   that there was no bad faith, because unless there is some
12   case law cited by the plaintiffs, and there is none, in a
13   first-party context, absent the ability to establish a bad-
14   faith claim, consequential damages are not recoverable.

15       What they can recover, your Honor, is the loss under
16   the title policy, which is the debt plus the interest.
17   What they cannot do is bootstrap a consequential damage
18   claim into the case without bad faith.

19       When your Honor reviews their pleadings in this case,
20   your Honor will see bad faith was always the basis upon
21   which they were looking for consequential damages.  So,
22   when we took the position that we did after your Honor's
23   decision that consequential damages were out of this case
24   and that the diminution in value was not recoverable, we
25   thought we had a legitimate and bona fide basis for it.

1    When we contested your Honor's decision on the

2    merger, we did so, your Honor, because we believed separate

3    and apart from the fact that consequential damages were not

4    recoverable, we had a separate basis upon which to point

5    out what we believe was an error in your Honor's prior

6    opinion, that is, the standing issue, and your Honor

7    obviously agreed with us in issuing that decision.

8        So, what we're asking this Court to do is not to put

9    the defendants in a position, Judge, where we're fighting a

10   claim that New Jersey law does not recognize.  We're

11   prepared to fight with respect to compensatory damages and

12   raise all our defenses.

13       What we should not have to fight and what should not

14   be placed before a jury based on New Jersey law is the

15   diminution-in-value damages which are solely consequential.

16       So, we would respectfully request that your Honor

17   deny their request for clarification as there's simply no

18   basis for that recovery.  Thank you, sir.

19       THE COURT:  All right.  Thank you very much.  Mr.

20   Stone, do you want to reply?  Excuse me.  Yes, Mr. Kott, go

21   ahead.

22       MR. KOTT:  Thank you, your Honor.  David Kott,

23   K-o-t-t, McCarter & English, LLP, for the defendant

24   Commonwealth.

25       I want to respond to one of the Court's questions to

1    Mr. Hayes, and the question was, are you too late on a

2    motion for reconsideration?  And the answer to that is no.

3         In fact, I would submit it's the plaintiff who is

4    seeking reconsideration and they're too late, and let me

5    explain what I mean by that, your Honor.

6         We did seek reconsideration of the loss of merger

7    damages.  We did that because we thought the Court

8    overlooked some precedents that indicated that the

9    plaintiff did not have standing to make that argument.

10   That's all we needed to move for reconsideration because we

11   prevailed on the diminution-in-value argument.  And what I

12   mean by we prevailed on that is that when the Court granted

13   the motion dismissing the claims for bad faith, that, as a

14   matter of law and that by virtue of the complaint the

15   plaintiff had filed, dismissed the claims for diminution of

16   value.

17        And specifically, what I mean by that, referring to

18   the complaint, there are about five or six paragraphs where

19   the plaintiffs say they seek diminution of value for our

20   bad faith.  The paragraphs are 64 and 65, 110 and 111 and

21   113.  In all of those paragraphs of the complaint, the

22   plaintiff's basis for loss of -- for diminution of value

23   was bad faith.

24        Therefore, when the Court dismissed the bad-faith

25   claim, the Court dismissed the claim that gave rise to the

1    diminution of value.  And we submit your Honor was correct

2    when you dismissed the loss -- the bad-faith claim.

3         We have 30 years of precedent in the Third Circuit,

4    that's the Polito case, 20 years of precedent in the state

5    Supreme Court, where the Court has said -- both courts have

6    said under New Jersey law, once the claim for bad faith is

7    dismissed, therefore, the claim for consequential damages

8    fails as a matter of law.

9         So, the reason I started by saying it is the

10   plaintiffs who are seeking reconsideration at this time, we

11   won.  When the Court dismissed the bad-faith claim, it

12   dismissed the basis for the damage claim that we're talking

13   about today.

14        The plaintiffs now are saying to the Court, yes, you

15   dismissed the bad-faith claim but we can get consequential

16   damages despite the fact that you dismissed the claim that

17   forms the basis for the consequential damages.

18        So, I agree with Mr. Hayes, we did not move for

19   reconsideration on the bad-faith ruling because we won.  I

20   can't imagine how we would come in and say you should

21   reconsider that.  And once your Honor dismissed the bad-

22   faith claim, all of the other claims failed because that's

23   what they pled in their fourth amended complaint, and all

24   the other claims failed under the Third Circuit and New

25   Jersey Supreme Court precedent.

1    THE COURT:  All right.  Thank you, Mr. Kott.  Mr.

2  Stone, go ahead.

3    MR. STONE:  Thank you, Judge.  Let me translate that

4  into English, your Honor.  They are too late.  They didn't

5  move for reconsideration.  They admit they didn't move for

6  reconsideration.

7    They're trying to say that your Honor's decision,

8  which specifically says that we can pursue loss of

9  diminution of value, which the decision says is based on

10  compensatory damages, it does not say it is based on

11  consequential damages.  It does not say it is based upon

12  bad faith.

13    Your decision cites to compensatory damages and the

14  definition of compensatory damages in contract in New

15  Jersey, which is dealing with a case with over 200 title

16  closing letters and policies where the title insurance

17  company agents were actually allegedly involved in and

18  facilitated the fraud, and your Honor correctly held that

19  under that rather unique set of facts, the definition of

20  compensatory damages, which is what your Honor says in your

21  opinion, includes and subsumes that a jury could find as a

22  matter of fact that these title insurance companies, having

23  issued over 200 of these insurance policies to one lender,

24  would understand when they failed to pay on any of them,

25  that that would cause tremendous financial loss to the

1   lender.

2       I'd also point out that the case that they rely on --

3   well, actually, they rely on in their brief, Pickett, your

4   Honor, which is a Supreme Court of New Jersey case from

5   1992, it actually cites the same language, your Honor.  It

6   says, on page nine of that opinion, it says, "Under

7   contract law, a party who breaches a contract is liable for

8   all of the natural and probable consequences of the breach

9   of that contract.  Compensatory damages are designed to put

10  the injured party in as good a position as he would have

11  had if performance had been rendered as promised," and it

12  cites a number of cases.  So, that is compensatory damages.

13      This constant reference to consequential damages I

14  think is a straw man.  It's not a point.  The point is that

15  your Honor ruled in your opinion that we could -- a jury

16  could find that we could get this as compensatory damages.

17  That was accurate.  They never moved to reconsider it and

18  they don't have the ability to move to reconsider it now.

19  And they admit now that even though they didn't have a

20  motion to reconsider it, that that's what they're doing.

21      Secondly, we did in our pleadings, in our motion

22  for -- I'm sorry -- in our amended complaint, our fourth

23  amended complaint, paragraphs 92 through 100 are breach-of-

24  contract allegations, they are not bad-faith allegations,

25  and we do seek within that diminution of value.

1      So, it's untrue that in our pleadings we did not put

2   them on notice that we're seeking diminution of value based

3   on breach of contract.

4      We also told them that in our answers to

5   interrogatories and in all the various mediations --

6   worthless mediations that we've been going through for

7   years with these people.  So, the idea that they were not

8   noticed that we were seeking that is completely wrong.

9      Finally, they take out-of-context statements from

10  briefs we have where we were arguing bad faith because bad

11  faith was one of the claims we had in the case, but simply

12  because we, in briefs at certain points, say that we get

13  certain damages as a result of bad faith does not mean that

14  that somehow changed the law in New Jersey or affects your

15  Honor's opinion.

16     Your Honor's opinion was that we were entitled to

17  seek these damages.  They never sought to reconsider it.

18  They're too late now and the opinion is correct.

19     So, for all those reasons, we believe your Honor

20  should grant our motion and make it clear that we do have a

21  right to seek those damages at this point.

22     THE COURT:  All right. Thank you very much.

23     MR. HAYES:  Very briefly, your Honor.  Your Honor,

24  the size of the case, the size of the fraud, the number of

25  transactions is really irrelevant for purposes of

1    determining what New Jersey law provides.  And the fact

2    that the plaintiff may say that it's entitled to

3    consequential damages under a breach-of-contract theory

4    doesn't change the law that it's not.

5         Compensatory damages are the benefit-of-the-bargain

6    damages and New Jersey cases say that's the debt plus

7    interest.  Consequential damages are separate damages which

8    flow from the wrong, assuming they are foreseeable.

9         Your Honor's already concluded that these damages

10   might very well have been foreseeable, but they're not the

11   debt and the interest in this case.  They are separate

12   damages which the plaintiff claims arose from the wrongful

13   conduct.

14        We believe we framed the issue for your Honor

15   correctly and, that is, if this is not debt plus interest,

16   which it is not, if these are consequential damages,

17   they're simply not recoverable in a breach-of-contract

18   claim under New Jersey law.  They're only recoverable in a

19   bad-faith claim, which your Honor has already ruled does

20   not exist in this case.  Thank you, sir.

21        THE COURT:  All right.  Thank you very much.

22        MR. STONE:  How many lawyers do they get?

23        THE COURT:  This seems to be endless.  Why are we

24   coming back again?

25        MR. KOTT:  Could I just have one brief point, your

1    Honor?

2         THE COURT:  All right.  Seems to me you've had your

3    turn.

4         MR. KOTT:  I want to respond to something Mr. Stone

5    said.

6         THE COURT:  Go ahead and respond, and they can

7    respond to your response.

8         MR. KOTT:  What I wanted to say is that what we're

9    talking about, their claim, is consequential damages, not

10   compensatory, and their claim for consequential damages

11   arises from our alleged bad faith of not paying the claims

12   in a timely fashion.

13        And when you look at their complaint, particularly

14   paragraphs 64 and 65, they couldn't be clearer that what

15   they're pleading for is consequential damages for our

16   failure to pay the claim in a timely fashion.

17        THE COURT:  All right.  Did that inspire you, Mr.

18   Stone?

19        MR. STONE:  I'll rest.

20        THE COURT:  All right.  Well, I'll reserve decision

21   and let you know.  Thanks very much.

22        (Whereupon the proceedings are adjourned.)

23

24

25