# STONE M MAGNANINI
### LLP

---

COMPLEX COMMERCIAL LITIGATION

**NEW JERSEY OFFICES**   150 JFK Parkway, Short Hills, NJ 07078   P 973.218.1111   F 973.218.1106

---

October 25, 2013

**<u>VIA CM/ECF & REGULAR MAIL</u>**

Hon. Dickinson R. Debevoise, U.S.S.D.J.   Hon. Joseph A. Dickson, U.S.M.J.
United States District Court for the         United States District Court for the
District of New Jersey                       District of New Jersey
Martin Luther King, Jr. Federal Building     Martin Luther King, Jr. Federal Building
50 Walnut Street                             50 Walnut Street
Newark, New Jersey 07101                     Newark, NJ 07101

          Re:   *Walsh Securities, Inc. v. Cristo Property Management, Ltd., et al.*
                Case No.: 97-3496 (DRD/JAD)

Dear Judge Debevoise and Judge Dickson:

      This firm represents Plaintiff Walsh Securities Inc. ("WSI") in the above-referenced action and submits this letter pursuant to the Court's October 18, 2013 Text Order. (Doc. 578). WSI has reviewed Defendant Richard Calanni's letter dated October 12, 2013 regarding Mr. Calanni's counterclaims and cross-claims to Plaintiff's Amended Complaint. Mr. Calanni's "Answer To Amended Complaint, Cross-Claim and Counter-Claim" filed on December 3, 1997 in no longer an operative pleading because Mr. Calanni filed two subsequent answers in response to amended complaints and it should not, as a matter of law, be considered by the Court. Since neither of the subsequently filed answers contained any counterclaims and Mr. Calanni has made no attempts to prosecute any purported counterclaims, because he wanted to be dismissed from this case, Mr. Calanni's belated attempt to resurrect counterclaims from 16 years ago should be denied. Accordingly, Mr. Calanni should welcome WSI's offer to voluntarily dismiss its claims against him with prejudice instead of seeking to obtain summary judgment against him,[1] which, based upon his allocution referenced below, would not be a high hurdle.[2]

**<u>Richard Calanni's Involvement in the Fraud</u>**

      Mr. Calanni, who at the time of the fraud in 1997 was a licensed appraiser, wrote grossly inflated appraisals on the properties at issue in this litigation. WSI would not have provided funds at the closings if it had known the true dilapidated condition of these valueless properties.

---

[1] WSI already has default judgments against numerous defendants, who reportedly have no money, for $509,092,378. (Doc. 290).

[2] Even a cursory review of Mr. Calanni's original Answer reveals that there are absolutely no counterclaim allegations against WSI, which purport to be for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and common law fraud, that would withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or 9(b).

---

Hon. Dickinson R. Debevoise
Hon. Joseph A. Dickson
October 25, 2013
Page 2 of 5

Indeed, Mr. Calanni was forced to surrender his appraiser's license and ultimately pled guilty on December 1, 1998 before the Honorable Alfred M. Wolin, U.S.D.J. (ret.). In his allocution, under oath, Mr. Calanni admitted that he conspired with others and issued appraisal reports that overstated the values of properties (the same properties at issue in this litigation), that he assigned values to the properties as if they were repaired without disclosing their true state of disrepair, that the properties in their "as is" condition did not need any repairs, and that these appraisals were for properties in which WSI was the lender. *See* Ex. A, Dec. 1, 1998 Transcript of Proceedings ("Calanni Plea") 51:7-24. In addition, at his sentencing and under oath, Mr. Calanni conceded that he engaged in this "criminal activity." *See* Ex. B, October 10, 2001 Sentence ("Calanni Sentence") 5:19-20. In sentencing Mr. Calanni to probation, Judge Wolin stated in part: "You weren't making the big money but you were a link in the chain that permitted this to occur because without the fraudulent appraisals with their falsely inflated values, Banker's Trust and even Walsh Securities could not have been victimized. So, you played a role in that." *Id.* at 6:25-7:5. Incredibly, in Mr. Calanni's deposition he claimed that he didn't think he was under oath during his plea and sentencing and that he told his "answers were truthful according to the description the way the federal law was told to" him. *See* Ex. C, January 10, 2007 Deposition Transcript of Richard Calanni ("Calanni I Tr.") 5:15-17; Ex. D, January 22, 2007 Deposition Transcript of Richard Calanni ("Calanni II Tr.") 305:2-306:5.

After questions arose about Mr. Calanni's appraisals at WSI, he was terminated as an approved appraiser in February 1997. He then paid another appraiser, Roland Pierson, to sign fraudulent appraisal reports prepared by Mr. Calanni. Mr. Pierson also pled guilty to this fraud. In his deposition, which Mr. Calanni did not attend, Mr. Pierson explained how he became involved in the fraud:

> Mr. Calanni gave me a call. A few years prior to that I had done some appraisals for him, and he had asked me initially if I would do some review appraisals for him. He said he was doing a lot of appraisals for one company, and because of the amount of them, they wanted a second signature. I agreed to do this on there.
>
> Later on it came in that they needed different people, they wanted more than just him signing on the appraisals, which is not uncommon. Banks and mortgage companies don't generally like too many of their appraisals done by one person. So he asked if I would do some, and particularly out of the area that he was working in primarily.
>
> As a result of that I did, oh, geez, two or three, I think, appraisals in Trenton, and I did one or two Red Bank, one of which was a redo of one that he had done.
>
> <u>He then said that he needed and wanted me to sign the appraisals that he was doing in Asbury Park because he had to sign too many of them with his name, and I very foolishly agreed.</u>

Hon. Dickinson R. Debevoise
Hon. Joseph A. Dickson
October 25, 2013
Page 3 of 5

*See* Ex. E, February 16, 2007 Deposition Transcript of Roland Pierson ("Pierson Tr.") 17:9-18:6 (emphasis added). Mr. Pierson's testimony was that, among other things, Mr. Calanni paid him to sign appraisals performed by Mr. Calanni on loans being funded by WSI. This is clearly unlawful and they were both convicted for their participation in this fraud.

**Procedural History**

As a result of the recent dismissal of the contract claims against the Title Insurance Defendants, the only claims remaining in the case are civil RICO and fraud allegations against two appraisers – Mr. Calanni and Richard DiBenedetto.[3] Having listened to Mr. Calanni repeatedly ask the Court and Plaintiff's counsel to let him out of the case, WSI kindly agreed at this point in the litigation to allow Plaintiff's counsel to advise Mr. Calanni that WSI was going to issue a voluntary dismissal with prejudice. This was truly Mr. Calanni's luck day. Mr. Calanni's shocking response was that he had his own claims against WSI, filed years ago by his former attorney, that he wanted to recover. An assertion that is even contradicted by his present submission to the Court that states: "Judge Debevoise if you recall I begged to be released from the case and both Mr. Magnanini and Mr. Kott refused." (Doc. 577-2).

To understand what Mr. Calanni is alleging to be the state of his counterclaims, the Court must look back at the docket, which contains 578 entries spanning 16 years. To alleviate that burden, the following are the essential dates. Plaintiff's Complaint was originally filed on July 17, 1997. As a result of the investigation it was amended on multiple occasions, specifically November 7, 1997, January 28, 2005, and July 10, 2009. (Doc. 1, 3, 108, 302). Mr. Calanni, with the assistance of counsel, filed a ten page Answer that contained cross-claims and counterclaims on December 3, 2007, and then filed *pro se* Answers that, while much more detailed than his first Answer, only contained cross-claims (and no counter-claim) on May 30, 2008 and September 29, 2009. (Doc. 7, 256, 353). In response to Mr. Calanni's counterclaims asserted in his first Answer, WSI timely responded on December 22, 1997 with an Answer and Affirmative Defenses. *See* Ex. F, WSI's Answer and Affirmative Defenses to the Counterclaim of Defendant Richard Calanni, filed Dec. 22, 1997.[4] However, until now, Mr. Calanni never filed anything with the Court indicating that he intended to pursue any counterclaims that were set forth in a prior answer that was no longer operative.

In addition, throughout discovery, Mr. Calanni has never indicated an intent to prosecute counterclaims against WSI. There have been 24 depositions in this case that have spanned a total of 37 days of testimony. Mr. Calanni never noticed any depositions and attended just 7 of

---

[3] It has unofficially been reported to us that Mr. DiBenedetto passed away. Although the estate was never substituted in, WSI is willing to voluntarily dismiss the estate and Mr. DiBenedetto.

[4] Inexplicably, the Answer does not appear on CM/ECF though it should be in the Court's hard copy files since it pre-dates electronic filing and the attached copy is file stamped by the Clerk. Moreover, it was served on all parties, including Mr. Calanni.

those depositions, all of which involved RICO defendants, asking questions concerning his own defense against the RICO claims, such as whether the deponent had conspired with him, whether the deponent paid him, and whether he was ever informed by the deponent of certain aspects of the fraud. At no time did Mr. Calanni ask the deponents any questions concerning his counterclaims, namely that WSI participated in the fraud. In fact, the only WSI employees that he deposed were Anthony D'Apolito and Kellie Fumarola, nee O'Neill, who were both low level employees at WSI that WSI terminated for their involvement and had been prosecuted for this fraud. Mr. Calanni did not even attend the depositions of Betty Ann Demola, Paul Del Rosso, Peter Trebour, James Walsh, or Robert Walsh, all of whom were more senior employees at WSI. Moreover, there is no record that Mr. Calanni issued any document requests or interrogatories to WSI, nor did he ever review the files in the document repository that this firm has maintained.

**The Law Favors a Finding That The Counterclaims Were Waived**

Mr. Calanni's failure to add his alleged counterclaims to any of his subsequent, very detailed, answers deems them waived or abandoned.[5] According to Rule 13(a)(1)(A) of the Federal Rules of Civil Procedure, "A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; . . . ." Additionally, it is hornbook law that an amended pleading supersedes a previous pleading. *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (An "amended complaint supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.") (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (1996)); *Doe v. Williston Northampton Sch.*, 766 F. Supp. 2d 310, 313 (D. Mass. 2011) ("An amended pleading takes precedence over an earlier pleading.") (citing Wright, et al. Fed. Prac. & Proc. § 1476 (3d ed. 2010)).

As the Hon. Noel L. Hillman has explained, an amended complaint supersedes an original "complaint so the answer to the original complaint is no longer operative." *Certain Underwriters at Lloyd's v. Alesi*, 843 F. Supp. 2d 517, 534 (D.N.J. 2011). Similarly, in

---

[5] Mr. Calanni's cross-claims for contribution and indemnification against the Title Insurance Defendants are also meritless as the parties are not joint tortfeasors. As this Court has held on multiple occasions, "Walsh Securities's claims against the Title Insurance Company Defendants, even as amplified in the Fourth Amended Complaint, are essentially contractual in nature and they are so totally dissimilar from the negligence, fraud and RICO claims asserted against the other defendants [such as Mr. Calanni], they are an inappropriate basis for a claim for contribution." *Walsh Sec., Inc. v. Cristo Prop. Mgmt.*, Civ. No. 97-3496 (DRD), 2009 U.S. Dist. LEXIS 116942, at *13-23 (D.N.J. Dec. 16, 2009); *see also Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, Civ. No. 97-3496 (DRD), 2007 U.S. Dist. LEXIS 22244, at *4-8 (D.N.J. Mar. 28, 2007).

Hon. Dickinson R. Debevoise
Hon. Joseph A. Dickson
October 25, 2013
Page 5 of 5

*Williston*, 766 F. Supp. 2d at 313, the district court held that because the defendant "failed to reassert any counterclaims in his answers to the first and second amended complaints, it would be possible to conclude that the counterclaims have simply vanished from the currently operative pleadings, and no need therefore exists to dismiss them." *See also General Mills, Inc. v. Kraft Foods Global, Inc.*, 495 F.3d 1378, 1380-81 (8th Cir. 2007) (deeming a counterclaim that was not repled in an answer to an amended complaint as "to no longer have been pending."); *Settlement Capital Corp. v. Pagan*, 649 F. Supp. 2d 545, 562 (N.D. Tex. 2009) (holding that counterclaims were abandoned when they were asserted in an original answer but not reasserted in an amended answer); *Bremer Bank, Nat. Ass'n v. John Hancock Life Ins. Co.*, Civil No. 06-1534, 2009 U.S. Dist. LEXIS 21055, at *40-41 (D. Minn. Mar. 13, 1009) (the failure to replead the counterclaim, coupled with two years passing without discovery on the counterclaim cast doubt on whether the counterclaim was ever viewed as meritorious, and the court also found the counterclaim failed as a matter of law); *Johnson v. Berry*, 228 F. Supp. 2d 1071, 1079 (E.D. Mo. 2002) ("By failing to plead in response to the first amended complaint, and therein to replead his counterclaim, Berry abandoned his counterclaim, which effectively dropped from the case."); *but see Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 706 (D. Md. 2011) (concluding that revisions to a complaint do not require revisions to a counterclaim, particularly where the counterclaimant manifested intent to pursue same throughout the case history by defending against a motion to dismiss and by moving to amend); *Dunkin' Donuts v. Romanias*, Civ. No. 00-1886, 2002 U.S. Dist. LEXIS 28405, at *1-2 (W.D. Pa. May 29, 2009) (failure to include counterclaims in amended answer does not waive them).

      The significance of the clear majority of these cases, and consistent with Judge Hillman's decision, is that failure to reassert a counterclaim in a new answer to an amended complaint results in a waiver or abandonment of the counterclaim. At the very least, the Eighth Circuit, in *General Mills*, would hold that the counterclaims are no longer pending. Mr. Calanni never reasserted his counterclaims (which had no merit), he never prosecuted his counterclaims, and, until recently, he was begging counsel and the Court to dismiss him from this case. Accordingly, WSI respectfully requests that this Court find as a matter of law that Mr. Calanni's counterclaims asserted in 1997, but not reasserted in his subsequent answers filed in 2008 and 2009, are no longer pending, waived, or abandoned. WSI will then proceed to dismiss Mr. Calanni and Mr. DeBenedetto. In the alternative, WSI respectfully requests that the Court issue a briefing schedule for it to file a summary judgment motion and a motion to dismiss.

                                                  Respectfully submitted,

                                                  _s/ Amy Walker Wagner_
                                                  Amy Walker Wagner

cc:      All counsel of record (*via CM/ECF*)
           Richard Calanni (*via E-Mail & Federal Express*)